11/14/2023 4:59 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81640266
By: Bonnie Lugo
Filed: 11/14/2023 4:59 PM

## CAUSE NO. 2023-22748

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | **281ST JUDICIAL DISTRICT** |

### NOTICE OF INJUNCTION HEARING

PLEASE TAKE NOTICE that an Injunction hearing on Plaintiff's Application seeking injunctive relief will be held in person at the following location, date and time:

|  |  |
|---|---|
| **COURTROOM:** | 281st Judicial District Court |
| | 201 Caroline St, 14h Floor |
| | Houston, Texas 77002 |
| **DATE:** | Friday, November 17, 2023 |
| **TIME:** | 2:30 P.M. |

Respectfully Submitted,

/s/ James Q. Pope
James Q. Pope
THE POPE LAW FIRM
TBN: 24048738
6161 Savoy Dr, Suite 1125
Houston, Texas 77036
Phone: 713.449.4481
Fax: 281.657.9693
jamesp@thepopelawfirm.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice of Hearing was served on November 14, 2023 to interested parties by electronic delivery.

/s/ James Q. Pope
James Q. Pope

## Automated Certificate of eService
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 81640266
Filing Code Description: No Fee Documents
Filing Description: Notice of Hearing
Status as of 11/15/2023 9:14 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/14/2023 4:59:21 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/14/2023 4:59:21 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/14/2023 4:59:21 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/14/2023 4:59:21 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/14/2023 4:59:21 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/14/2023 4:59:21 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/14/2023 4:59:21 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/14/2023 8:09 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81644121
By: Bonnie Lugo
Filed: 11/14/2023 8:09 PM

**CAUSE NO. <u>2023-22748</u>**

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| *Defendants.* | § | **281ST JUDICIAL DISTRICT** |

**<u>PLAINTIFF'S AMENDED PETITION & EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANT NATIONAL BANK OF KUWAIT S.A.K.P.</u>**

Galleria 2425 Owner, LLC ("***Plaintiff***") files this Amended Petition and Emergency Application for Temporary Restraining Order against National Bank of Kuwait S.A.K.P., New York Branch (individually as "***NBK***", or collectively as "***Defendants***"), and Azeemeh Zaheer (individually as "***Zaheer***", or collectively as "***Defendants***") and, in support, submit the following:

**I.**
**<u>DISCOVERY PLAN</u>**

1. Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

**II.**
**<u>PARTIES</u>**

2. Galleria 2425 Owner, LLC ("***Plaintiff***") is a limited liability company doing business in Texas and is the owner of the building located at 2425 West Loop S., Houston, Texas ("***2425 Building***").

3.      National Bank of Kuwait, S.A.K.P., New York Branch ("***NBK***") is a banking corporation organized under the laws of Kuwait, acting through its New York Branch. NBK HAS APPEARED WITH COUNSEL.

4.      Azeemeh Zaheer ("**Zaheer**"), is an individual who resides, and may be personally served at 5513 Kansas Street, Houston, Texas 77007.  CITATION IS HEREBY REQUESTED.

5.      Rodney Drinnon ("**Drinnon**"), is an individual who can be personally served at his office address at 2000 West Loop South, Suite 1850, Houston, Texas 77027. CITATION IS HEREBY REQUESTED.

6.      David Tang ("**Tang**"), is an individual who can be personally served at his home address at 202 Maybrook Dr. Houston, TX 77015, or wherever he may be found. CITATION IS HEREBY REQUESTED.

### III.
### INTRODUCTION

7.      This suit was originally filed against NBK, a party who has been shown to be willing to engage in bad faith actions, and who repeatedly attempts to make outside deals with third parties, specifically to deprive the plaintiff of its ownership interest in the 2425 Building in any way it can.

8.      Plaintiff, Galleria 2425 Owner, LLC, filed bankruptcy to preserve the asset, which NBK vehemently opposed, and fought to have dismissed from the bankruptcy court. However, at the hearing on NBK's motion to dismiss, Plaintiff was successful in defending against dismissal, and the bankruptcy case moved forward.

9.      Plaintiff promptly proposed a plan in the bankruptcy court, which was characterized as a "really smart" plan that "check[ed] all the boxes" for plan confirmation, according to Judge Lopez.

10.      Then, after NBK lost its motion to dismiss, it engaged in more bad faith actions by conspiring with Azeemeh Zaheer, David Tang, and Rodney Drinnon, to create confusion that caused havoc and further disrupted the bankruptcy case.

11.      First, NBK filed a letter in the bankruptcy case (Document 77) which made the bankruptcy court aware of litigation that was irrelevant to Galleria 2425 Owner, LLC's pursuit of its ongoing bankruptcy case. The state court litigation referenced by NBK is, in the words of Judge Lopez "an unrelated case involving Ms. Zahire [sic] and Naissance and Mr. Choudhri". The case is about a dispute over control of an entity called Naissance Galleria, LLC, which does not have any membership in, or control over Galleria 2425 Owner, LLC, or any of its members or managers.

12.      The claims of forgery being raised in the state court litigation by Ms. Zaheer are being handled by her lawyers, David Tang and Rodney Drinnon, and this is not the first time that this kind of novel forgery claim has been raised as soon as David Tang enters into a case. In fact, there is at least one other case Plaintiff is aware of in which Mr. Tang entered as the attorney representing a party around a year after it was originally filed, and all of the sudden brand new allegations of forgery were raised for the first time, that had not been present in the pleadings prior to his appearance as counsel.

13.      Notably, the state court, in the litigation referenced in NBK's letter to Judge Lopez, did issue a Temporary Injunction, which maintained the status quo of Choudhri's management and control of Naissance Galleria, LLC, but limited any actions that could be taken by Choudhri on

behalf of Naissance Galleria, LLC to only those which are also approved by Zaheer, until a trial resolves the issue once and for all.

14.     After the Temporary Injunction was in place establishing Choudhri's control of Naissance Galleria, LLC, Azeemeh Zaheer, David Tang and Rodney Drinnon, purporting to act for Naissance Galleria, LLC, appeared at two separate hearings in the bankruptcy court, on or about October 12th, 2023 and November 1st, 2023. Even more egregiously, these same parties, again acting in express violation of the Temporary Injunction, filed a motion to lift the stay in the bankruptcy court, requesting for Judge Lopez to rule against the state court and find that Zaheer had control of, and could act for Naissance Galleria, LLC.

15.     When the parties to the state court litigation returned to appear before Judge Manor on November 13th, 2023, Judge Manor confirmed that her Temporary Injunction did not give Zaheer any right to act as the manager of Naissance Galleria, LLC, and confirmed that Choudhri was in control, subject to Zaheer's approval during the pendency of trial.

16.     All of these actions, including the actions taken by Zaheer, Tang and Drinnon in direct violation of Judge Manor's temporary injunction, gave rise to Judge Lopez's serious concerns about the ability to move forward with the bankruptcy case without resolution in the state court action. Judge Lopez stated in the November 1st, 2023 Status Conference the following:

"I don't have anything to qualify it in state court issues. I don't know. There's just a lot of confusing stuff, and my gut tells me that I need to dismiss this case and let you all go figure this out in State Court, because there's not enough here, and there's real concerns that I have…".

17.     However, since Naissance Galleria, LLC has no ownership or control over the Plaintiff or any of its members or managers, these filings and appearances by Zaheer, Tang and

Page **4** of **30**

Drinnon are just a smoke screen. The fact that they were also filed in violation of the Temporary Injunction not only makes these actions by Zaheer, Tang and Drinnon unlawful, but there could be no other purpose aside from attempting to cause the dismissal of the bankruptcy case brought by Galleria 2425 Owner, LLC, which is an action that, logically, would be counter to the company's interests.

18.     In its letter, NBK cleverly attempts to confuse the court by implying that Ms. Zaheer had control of Naissance Galleria, LLC because the order says that management decisions could not be made without her approval. This is exact same argument Zaheer, Tang and Drinnon made before being shut down by Judge Manor, herself, stating that her Temporary Injunction left Mr. Choudhri in control, subject to Zaheer's approval, in order to freeze all actions of the parties until trial.

19.     As this Court has handled cases related Galleria 2425 Owner, LLC for years, it is well aware that Ms. Zaheer has been entirely absent from any of these proceedings until on or about July 5th, 2023, when Mr. Tang appeared, allegedly for Naissance Galleria, LLC, before this Court's ancillary docket, attempting to stop the foreclosure by NBK, at which hearing this Court itself questioned the absence of Ms. Zaheer over the last several years.

20.     Ms. Zaheer signed the assignment of Naissance Galleria, LLC on July 3rd, 2020. Ms. Zaheer did not make any claims of control over Naissance Galleria, LLC, did not attempt to object to or interfere with Mr. Choudhri's management of the company, and did not make allegations of forgery regarding the assignment of the company to Choudhri for three (3) years. These allegations are absurd, as Ms. Zaheer has been entirely absent from the company's management for years.

21.     As a result of this conspiracy by the defendants, the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case.

22.     What's interesting is that, if Ms. Zaheer was sincerely the manager of Naissance Galleria, LLC, and Drinnon and Tang were sincerely lawyers acting in the best interests of the company, they would not have worked tirelessly to have the bankruptcy case dismissed.

23.     Such actions, if they had been taken by a legitimate manager for Naissance Galleria, LLC, would be a breach of fiduciary duty to the company, _unless there was a back room deal between Zaheer, Drinnon, Tang and NBK_.

24.     Now that NBK has re-posted the 2425 Building for foreclosure, Plaintiff will suffer irreparable harm as a result of the defendants' actions.

## IV.
## FACTUAL BACKGROUND

25.     In 2018, NBK loaned certain funds to Plaintiff.  NBK has continually interfered with the Plaintiff's ability to lease the 2425 Building to produce revenue and Plaintiff's ability to sell the 2425 Building to pay NBK off.  Every time NBK has so interfered, it has then blamed the Plaintiff for its inability supposedly to meet some of the loan terms.

26.     For example, in January 2021, Plaintiff Ali Choudhri, who is vilified by NBK in various pleadings, had the building at 2425 West Loop South, Houston, Texas, the asset of the Plaintiff, has serious parties interested in building for a purchase price of $85 million, more than enough to clear NBK's debt.  A letter dated January 15, 2021 from SIBS International and two purchase contracts which would have paid off not only NBK, but left the Plaintiff with a great deal of value.  **NBK, rather than facilitate this sale, issued a formal notice of default to the Plaintiff**

**and its intent to accelerate the loan on June 29, 2021**, while the SIBS International deal was in progress, killing that deal.

27.     **The same was true with regard to NBK's interference with the Plaintiff's attempt to lease space in the building to provide revenue so it could operate and make loan payments.**  By August 2021, this situation had become untenable due to NBK's refusal to approve new tenants and new leases, prompting the Plaintiff on August 13, 2021 to send NBK a detailed letter regarding lease-up and renewal prospects for discussions, none of which, it seemed NBK would approve.

- **Healthcare Service Organization**

    - •Size: 130,000+ RSF – large client requirement in their preliminary planning stages: •Industry: Healthcare Service Organization •Type of use: Administration Offices •Direct/Sublease •Commencement date: Q3/2023 •Term:5-10 yrs.  They are specifically VERY interested in amenities available, for example: deli, gym, day care, conference center (# of seats), training center (# of seats).

- **Invesco**

    - We met with the team twice and are actively pursuing them for 2425.  They are interested in a 157-month lease term for 208,830 SF of Net Rental Area.

- **Financial Services Firm**

    - Office •AREA: West Houston (610 West, Hwy 290, Beltway 8) •SPACE: Open Concept •SIZE: Approximately 20,000 – 25,000 rsf •PARKING: 5/1000 ratio •OCCUPANCY: Late 2Q22/Early3Q22 •TERM: 36-60 months with renewal options •This tenant is currently at 24 Greenway on their top floor and have been looking at other A buildings.

- **Beyond Finance**

    - We are discussing a 68-month lease term for +/- 40,000 rentable SF.

- **Banco Affirme**

    - We submitted a 64-month lease term for 4,545 SF of Net Rental Area.

- **Walls Bank (existing tenant)**

  - Renew 3,054 SF of rental space for 60-month term starting January 1, 2022.

- **Others (working directly with ownership)**

  - ResMed (https://www.resmed.com/en-us/), interested in the entire building, working directly with Dr. Peter Farrell, Founder and Chairman

  - Healthstore Holdings (https://www.healthstore.com/), interested in a 15-year term with 80,000 SF in phase 1 and 75,000 SF in 12 months as phase 2.

  - Immunicom (https://immunicom.com/), interested in at least two full floors, moving HQ from San Diego, CA

28.    Below is an August 16, 2021 email from counsel for the Plaintiff to NBK forwarding multiple leases for approval that **NBK had failed to approve or even respond to.**



manny.gardberg@hklaw.com <manny.gardberg@hklaw.com>
To: mona.dajani@pillsbury.com
Cc: ali@jetallcompanies.com, Bruce.Merwin@hklaw.com, Charles.Jackson@hklaw.com

Mona, Please see attached. Best, Manny

**Manny Gardberg | Holland & Knight**
Associate
Holland & Knight LLP
811 Main Street, Suite 2500 | Houston, Texas 77002
Phone 713.653.8615 | Fax 713.654.1871
manny.gardberg@hklaw.com | www.hklaw.com

Add to address book | View professional biography

7 attachments
  _HK Letter re Notice - 8 13 2021.pdf
  52K
  _Unanimous Consent - January 2021.pdf
  854K
  2425 Galleria Owner - Operating Budget 2021 (July).pdf
  232K

ttps://mail.google.com/?ik=37856133f6&view=pt&search=all&permmsgid=msg-f%3A170828057t

'15/22, 8:10 PM                                          Jetall Companies Mail - National Bank of

  NBK - 2425WLS Leasing Prospect List.pdf
  100K
  NBK - Proposal 2021.08.13 final.pdf
  562K
  PSA - 2425 West Loop South.pdf
  535K
  Purchase - SIBS - 2425 West Loop South Offer letter Updated.pdf
  42K

29.     This lack of approval, or finding obstacles to approve, was not new.  In September 2019, Related Group had reached out to lease the parking garage located at the 2425 Building to be used for overflow, for parking up to 110 spaces.  **NBK's authorized representative Michael Carter would not approve this lease** (note "nbkny" email address below– *i.e.* National Bank of Kuwait, New York Branch), which would have generated a great deal of revenue for the Plaintiff.

> **From:** Michael Carter <Michael.Carter@nbkny.com>
> **Date:** Monday, 23 September 2019 at 13:22
> **To:** Azeemeh Zaheer <azeemeh@naissancecapital.co.uk>, Lisa Walker <Lisa.Walker@nbkny.com>
> **Subject:** RE: LOI
>
> My primary concern is that the tenant determines when the commencement date is, presumably because they have zoning and building department approvals to complete as well as financing to arrange, which is understandable, however there does not appear to be an outside expiration date for the Commencement date. It appears they could tie up these space permanently without having to pay rent. I think you should have an outside date for Commencement.

30.     The situation became so untenable that in September 2021, Plaintiff initiated a lawsuit against NBK.

31.     In good faith, even during the pendency of this litigation, the Plaintiff was still trying to get tenants into the building and get NBK's approval to do so, so it would not claim additional breaches of loan agreements.  **On July 2, 2022, the Plaintiff sent NBK five leases for approval, which NBK did not approve.**

32.     *The parties litigated for eleven (11) months until August 22, 2022, when they entered into a Confidential Settlement Agreement.*  The entire Confidential Settlement Agreement will be submitted to the Court *in camera* at the appropriate time, and the Plaintiff should be allowed to use it in this Adversary since the breach of that Settlement Agreement by NBK is not only

actionable, but was also devastating to Plaintiff.  Because NBK has a way of interpreting any action of the Plaintiff as one to breach or avoid some purported contractual obligation or other, when the reverse is entirely true, the Confidential Settlement Agreement has not been attached.  **NBK has prevented Plaintiff's successful performance under any and all agreements it has with NBK, including the Confidential Settlement Agreement.**

33.     The Confidential Settlement Agreement permitted a timeframe in which Plaintiff could sell the 2425 Building, and Plaintiff was successful in receiving a hard Letter of Intent dated January 17, 2023 to purchase the building from Caldwell Soames.  Again, while these negotiations were ongoing, **NBK took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure on March 29, 2023 in breach of the Confidential Settlement Agreement, which Plaintiff believes was done intentionally to prevent the sale.**  The sale would have cleared the Bank of Kuwait debt as it stood at that time and left great value for the other Plaintiff.  Plaintiff believes that Bank of Kuwait recognized that greater value and wanted to take it for itself by foreclosure in a "loan to own" gambit.

34.     There are tremendous factual inaccuracies that NBK represents to state and federal courts and they continue into these proceedings.  For example, in its Motion to Dismiss the Plaintiff's Bankruptcy, while it is absolutely true that temporary restraining orders were filed to attempt to prevent a foreclosure by NBK and its takeover of the 2425 Building, they were also **granted by this Court**.  The **facts presented that NBK had not allowed the Plaintiff to lease up the building to generate revenue, and had killed two transactions that Plaintiff was working on that would have cleared NBK and left value for the Plaintiff.**

35.     Additionally, NBK posted for foreclosure in 2023 early, and against an extended grace period that this Court had given Plaintiff, which silenced the bidding process and interest in

the 2425 Building completely.  No one wants to buy a building posted for foreclosure.  **Plaintiff believes that NBK knew this and did it on purpose to prevent the Plaintiff from successfully selling the property and paying off the loan, so NBK could foreclose and become the owner of the 2425 Building.**

36.     Not the least of the misstatements that NBK makes about the Plaintiff are those hard statements that the Plaintiff has not made any payments to NBK since March 6, 2021.  This is stated both in paragraph 13 of NBK's Motion to Dismiss Plaintiff's Bankruptcy, and in NBK's Mr. Carter's Declaration (paragraph 8 of Declaration of Michael Carter).

37.     The absolute opposite is true.  Representatives of NBK have admitted in writing that the following substantial payments have been made to NBK well after March 6, 2021:

    a)      $801,509.42 paid by Plaintiff to NBK on August 27, 2022;

    b)      $80,000 paid by Plaintiff to NBK on April 18, 2023;

    c)      $80,000 paid by Plaintiff to NBK on May 10, 2023.

This is almost One Million Dollars ($1,000,000) that not only does NBK not give credit to the Plaintiff for having made the payments, but again, it vilifies it, saying exactly the opposite that no payments (zero) have been made since March 6, 2021.

38.     After NBK's disclosures of the situation created by the Confidential Settlement and the wrongful posting for foreclosure during an extension of that agreement, potential buyers of the property who would otherwise become good prospects to negotiate a sale with Plaintiff, became potential purchasers of the NBK Note and began negotiating with NBK.  NBK interfered with these potential purchases and with these business relationships.  At least the following were interfered with in this fashion:

    a)      Globix Investment,

b)      Ironwood Commercial Realty,

c)      Shah Firm, LLC, and

d)      Jeb Brown Law.

**B.**     **Azeemeh Zaheer Decides She Wants the Building.**

39.     On June 26, 2023, Zaheer, acting through her lawyer David Tang, filed a lawsuit in the name of Naissance Galleria, LLC ("*Naissance*"), which she purported to control, in the 157th Judicial District Court in Harris County, Texas referenced by case number 2023-39006 against Brad Parker ("*Parker*") as an initial step in Zaheer, Tang and Drinnon's pursuit of a hostile takeover of the 2425 Building.

40.     On July 5, 2023, Zaheer, acting through attorneys David Tang and Rodney Drinnon and also in the name of Naissance, filed a second lawsuit in the 129th Judicial District Court in Harris County, Texas referenced by case number 2023-41091 against Parker and NBK at the request of Zaheer, to further the defendants' hostile takeover attempt of the 2425 Building.  Zaheer sought injunctive relief, but that request for an emergency temporary restraining order was denied.

41.     On or about July 5, 2023, Plaintiff commenced a Chapter 11 bankruptcy proceeding in the Southern District of Texas, referenced by case number 23-60036.  NBK sought to dismiss the bankruptcy proceeding, but its motion to dismiss was denied on September 26, 2023.  The Chapter 11 Plan should have been approved and would have substantially reduced the value of Bank of Kuwait's secured debt, which Bank of Kuwait decided it would not allow, just as it had decided not to allow the prior sales of the building that had been lined up by Plaintiff.

**C.     Azeemeh Zaheer is a False Representative of Naissance.**

42.     Azeemeh Zaheer at one time had a business and personal relationship with Ali Choudhri, both of which appeared to have ended mutually for a time.  Azeemeh Zaheer filed an Application for Temporary Injunction in the 80th Judicial District Court for Harris County against Naissance Galleria, LLC, which was a mezzanine lender to an LLC ("***LLC***") two steps up in the building's ownership chain.

43.     Azeemeh Zaheer had signed, as the authorized representative of the Managing Member of Naissance Galleria, LLC an Assignment of the management rights of that LLC to Ali Choudhri.  In response, Mr. Choudhri stepped into Naissance's shoes, covered its expenses, and did a miraculous job of negotiating the aforementioned settlement with Bank of Kuwait after the Assignment.  Azeemeh Zaheer made this assignment for a number of reasons, but most of them stemmed from her ineffective management of the building and her fear of exposure to Bank of Kuwait and certain individuals affiliated with the Bank of Kuwait because of her poor performance.

44.     After Mr. Choudhri received the Assignment and had negotiated the successful settlement with Bank of Kuwait and the building looked as if it might succeed (a period of years), Azeemeh Zaheer decided she wanted to misappropriate the value that Mr. Choudhri had just preserved and to an extent had just created.  First, she claimed the Assignment was invalid and sought and received a Temporary Injunction on September 21, 2023 from the 80th Judicial District Court in Harris County.  This Temporary Injunction basically only created a stalemate with respect to the management of Naissance Galleria, LLC to preserve the status quo until a trial in January. Mr. Choudhri is still the manager of Naissance Galleria, LLC, not Azeemeh Zaheer, although she did have some approval rights under the injunction.  Mr. Choudhri, as the manger of Naissance

Galleria LLC and is only required to obtain approval from Zaheer for his actions.  Zaheer DOES

NOT have any control of the entity.  Moreover, this was confirmed at a hearing on November 13,

2023 before Judge Manor in the 80th Judicial District Court.

**D.      Azeemeh Decides to Conspire with Bank of Kuwait So It Could Foreclose On the Building.**

45.      After the September 21, 2023 entry of the Temporary Injunction, some ironic, if

not strange, events start taking place with respect to Ms. Zaheer and the Plaintiff.  First, it is against

Azeemeh Zaheer and Naissance's financial interests if the Bank of Kuwait forecloses.

46.      Second, on information and belief, Zaheer caused a copy of the Temporary

Injunction Entered on September 21, 2023 by the 80th Judicial District Court in Harris County to

be sent to counsel for the Bank of Kuwait, who used it to interfere with the Plaintiff's ability to

confirm a chapter 11 plan.

47.      Third, Zaheer's attorneys (Mr. Tang and Mr. Drinnon) show up without any

forewarning at the October 12, 2023 status conference in the Bankruptcy Court about the plan,

claiming Azeemeh Zaheer now is the manager of Naissance Galleria, LLC and they have been

hired by her to represent Naissance Galleria, LLC, all by virtue of the Temporary Injunction.

48.      They again made pleas to the court regarding Zaheer's desire to take over the 2425

Building, stating the Temporary Injunction gave them sole authority to represent Naissance, and

Naissance did not want to sue the Bank of Kuwait for breach of the Settlement Agreement as it

had already done under Mr. Choudhri's rightful management.  Also, at the status conference Mr.

Drinnon also claimed to represent Zaheer/Naissance in her hostile takeover pursuit, but admitted

to also representing Mr. Abdullatif.

```
6        MR. DRINNON:  Okay.  I represent Mr. Abdullatif in
7   other cases but not this one.  I tend to get hired because I
8   have sued Mr. Choudhri successfully in numerous
9   jurisdictions and cases . . . .
```

**E.    Zaheer Changes Sides to Make a Deal with the Bank of Kuwait and Extort Money from Mr. Choudhri.**

49.    Progressively, Azeemeh Zaheer's behavior becomes more inexplicable as she instructs her attorneys to: (1) take the position that the Temporary Injunction put her in charge of Naissance (it did not);[1] (2) that Naissance Galleria, LLC could or had already become the owner of the Debtor building (2425 Galleria Owner, LLC, Plaintiff herein) and as the new owner, they might want to take the bankruptcy in another direction.

50.    <u>**The only explanation for Zaheer's extraordinary behavior, which appears self-destructive, is Zaheer sees the opportunity to make a deal with the Bank of Kuwait or extort Mr. Choudhri, who will lose millions of dollars of equity in the building if a foreclosure takes place**</u>.

51.    This created an environment of confusion for the Bankruptcy Court, which was by Defendants' design, and it was a concerted effort by the Defendants to have the bankruptcy case dismissed, allowing the Bank of Kuwait to foreclose.  Defendant NBK would not be impeded by

---

[1] At a hearing had in the issuing court (the 80th Judicial District Court) on Monday, November 13, 2023, the Court confirmed her Temporary Injunction Order had not turned control of Naissance over to Zaheer and Zaheer had no authority to authorize attorneys to make the filing and take the action they had on behalf of Naissance Galleria, LLC in the Bankruptcy.

the bankruptcy and Zaheer could tell Mr. Choudhri: "I will not go along with your reorganization plan unless you pay me millions of dollars" while making a deal with the Bank of Kuwait to block the Plan of Reorganization in the event no payment was received from Mr. Choudhri.

52.     The Defendants are working in concert, to achieve the same end.  Specifically, the Defendants have devised, and intended to devise, a scheme or artifice to seize the 2425 Building by any means necessary.  Defendants will stop at nothing to see the Plaintiff lose possession of the 2425 Building, and upon information and belief, the driving force behind their efforts is Osama Abdullatif ("*Abdullatif*"), whose lawyers, Drinnon and Tang, are now appearing in the Bankruptcy Court, purporting to represent Naissance Galleria, LLC, an LLC managed by Mr. Choudhri.

53.     Defendants' scheme has involved false representations of material information, including but not limited to misrepresentations concerning the Plaintiff and the purpose and effects of the Temporary Injunction.

**F.     False Representations by Zaheer's Agents are Successful in Getting Plaintiff's Bankruptcy Dismissed.**

54.     The Bankruptcy Court scheduled a Status Conference for the Plaintiff's Bankruptcy Case for November 1, 2023.  Azeemeh's agents, on October 31, 2023, only hours before the Status Conference, filed an Emergency Motion.  This Motion contained many misrepresentations, some of which follow:

a)     Even though Zaheer had no right to or standing necessary to file anything on behalf of Naissance, and the Temporary Injunction gave Zaheer no such rights, statements were made in their Emergency Motion directly to the contrary, stating Azeemeh Zaheer was in, Choudhri was out.

b)     The filing stated flatly at one point that the Assignment had been found to be forged – it had not.

c)     The filing stated that, because of the Temporary Injunction, Naissance was now controlled exclusively by Zaheer, who could make Naissance become

the Owner of the Bankrupt.  (The issuing court on Monday, November 13, 2023, ruled from the bench it said no such thing.)

These misrepresentations had the desired effect, and the Bankruptcy Court dismissed the Bankruptcy, green-lighting the Bank of Kuwait to foreclose.

**G.    Abdullatif is Choudhri's Competitor and Wants to Ruin Him.**

55.    Choudhri has been in the real estate investment and management business for the last 20 years.  The regular course of Choudhri's business involves numerous aspects of real estate development.   These activities include real estate and business acquisitions and dispositions, seeking and obtaining financing, and developing and managing commercial and residential properties.  He regularly raises capital for these activities through the issuance of equity and/or debt.  It is also within his normal course of business to enter into transactions with borrowers, lenders, and investors to support the purchase, development, and operations of real estate properties.

56.    Choudhri at times conducts his real estate investment and management business through the use of special purpose entities, such as Plaintiff Galleria Owner 2425, LLC.  Choudhri runs a management company, Jetall ("*Jetall*"), to provide employees and management services to entities for purposes of operating real estate investments.

57.    Abdullatif has provided financing for numerous third-party claims against Choudhri, including interfering with Choudhri's final divorce proceedings in both Pakistan Supreme Court and Harris County District Court by soliciting Choudhri's ex-wife for her legal claims against Choudhri and/or his entities and to gain access to Choudhri's protected financial disclosures.  Abdullatif has filed several dozen Lis Pendens against Choudhri and his properties, and has sponsored litigation against Choudhri in several dozen cases.

58.     Upon information and belief, Abdullatif is also financing the litigation expenses of Zaheer against Choudhri in the dispute over the building owned by Plaintiff.  Zaheer, Tang and Drinnon have all agreed to the enterprise course of action aimed at destroying Choudhri's business, and either taking possession of the 2425 Building or extorting money from him to agree to a plan of reorganization.

59.     On more than one occasion, Abdullatif resorted to violence and threats against Choudhri and/or his family, friends, and associates.  Mr. Choudhri had another real estate venture involving an entity called Dalio.  Abdullatif was present at Dalio's foreclosure proceeding, where a friend accompanying him assaulted one of Choudhri's lawyers. On another occasion, Abdullatif and his associates used firearms to hold Choudhri and his associates hostage.

60.     Abdullatif also formed an association with others in his illegal efforts to destroy Choudhri's business.  These individuals include but are not limited to Chris Wyatt, former paralegal of Jetall ("**Wyatt**").

61.     Wyatt was hired by Jetall in 2019.  In the course of his employment, Wyatt oversaw legal and litigation matters for Jetall. He was provided confidential information concerning Jetall's and its client's real estate transactions, finances and debt leverage on properties, and litigation management strategies.  As a Jetall representative, Wyatt was regularly involved in and provided access to privileged information and communications, including information subject to attorney-client and work product privileges.  Wyatt signed a non-disclosure agreement at the beginning of his employment prohibiting him from disclosing confidential information and requiring him to return all files upon his termination.

62.     Wyatt's employment at Jetall ended in December 2020.  When he left Jetall, Wyatt stole corporate files including electronic communications and secretly recorded privileged phone communications between Choudhri and his attorneys.

63.     Jetall obtained a restraining order in January 2021 enjoining Wyatt from disclosing or divulging confidential information obtained through his course of employment with Jetall.

64.     Abdullatif met with Wyatt before, during and after Wyatt's departure from Jetall. Abdullatif, directly and through his lawyers, received confidential and privileged information from Wyatt.   This information included but is not limited to illegal recordings of Choudhri's conversations with attorneys.

65.     Upon information and belief, Abdullatif and his lawyers were aware that Wyatt was a former employee of Jetall who was involved in confidential and privileged communications and that a restraining order was entered enjoining Wyatt from disclosing confidential information.

66.     Abdullatif and his agents have used the illegally obtained information and recordings as part of Abdullatif's scheme to destroy Choudhri's business.  Abdullatif retained Wayne Dolcefino ("***Dolcefino***") as a "consultant" to publish on the internet a series of hit pieces on Choudhri.  Dolcefino advertises that his services included "litigation support," and Abdullatif has utilized Dolcefino in the course of his numerous lawsuits asserted against Choudhri and his businesses.

67.     Information illegally obtained from Wyatt is included in many of Dolcefino's hit pieces.  Dolcefino continues to publish these hit pieces on the internet, including videos posted in May 2023.

68.     Abdullatif, with the assistance of Drinnon, now representing Azeemeh Zaheer, has made several false claims against his competitor, Choudhri, in many ways, two of the most egregious being:

a)     Hiring Dolcefino to create video "hit pieces" about Choudhri, his business, his marital status, and inappropriate character based upon his actions during that marital status. This video contained "over the top" falsehoods, e.g. that he was still married and had been for years. It was commercial speech designed to designate a competitor (Choudhri) and give Abdullatif a competitive advantage, and was introduced into interstate commerce by release to major television (broadcast and cable) networks and by placing on the internet where it still resides today, making it available to the potential customers and lenders that are competed for; and

b)     Placing multiple improper Lis Pendens on the record title to properties owned by Choudhri or his business entities, which created a double negative effect on Choudhri's ability to conduct business by hampering his ability to find new lenders or renewing existing loans because the security for them was impaired and making it impossible to sell those properties to raise new capital on his own. These Lis Pendens were "over the top" misrepresentations because they were illegal and did not assert valid interests in the subject properties. The Lis Pendens were also introduced into interstate commerce because they were filed of record and were available "online" over the internet to any potential customer for commercial real estate in the Houston area.

## V.
## CAUSES OF ACTION

## COUNT 1:  BREACHES OF CONFIDENTIAL SETTLEMENT AGREEMENT

69.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

70.     Plaintiff and Defendant reached a valid and enforceable agreement expressly set forth in the Confidential Settlement Agreement.  Pursuant to the Confidential Settlement Agreement, Defendant agreed to keep the contents and terms of the parties' agreement completely confidential.  Plaintiff dismissed its very good claims in the Lawsuit against Defendant in reliance

upon Defendant's promise to uphold the confidentiality obligations set forth in the Confidential Settlement Agreement.

71.    Defendant breached the Confidential Settlement Agreement by disclosing its contents and terms to third parties in violation of the agreement's express confidentiality provisions. These disclosures prevented Plaintiff from closing on the sale of the 2425 Building and chilled the market for other buyers for Plaintiff's property. The same is true for NBK's wrongful, early filing of a notice of foreclosure on the 2425 Building, also in violation of the Confidential Settlement Agreement.

72.    Plaintiff hereby sues NBK for these breaches of the Confidential Settlement Agreement. The damages for these breaches are the amounts of money that the Plaintiff would have made from the contemplated transaction, which is in excess of Fifty Million Dollars ($50,000,000).

## COUNT 2:  <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>

73.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

74.    As alleged, NBK tortiously interfered with the SIBS International contract and the Caldwell Soames Inc. contract, causing damages to the Plaintiff in the net amounts of the contracts which, but for NBK's interference, would have been paid to the Plaintiff. These damages are in excess of Fifty Million Dollars ($50,000,000), for which the Plaintiff hereby sues NBK.

75.    Zaheer, Tang and Drinnon have tortiously interfered with Plaintiff's contract with NBK, and with Plaintiff's bankruptcy proceeding. The damages are in excess of Fifty Million Dollars ($50,000,000), for which the Plaintiff hereby sues Zaheer, Tang & Drinnon and Bank of Kuwait.

**COUNT 3:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

76.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

77.     After NBK's disclosures of the situation created by the confidential settlement and the wrongful posting for foreclosure during a judicial extension of the grace period contained in that agreement, potential buyers of the property who would otherwise have become good prospects to negotiate a sale with Plaintiff, became instead potential purchasers from NBK of the NBK note and began contacting and negotiating or attempting to negotiate with NBK instead of the Plaintiff. NBK interfered with these potential purchasers and with these potential business relationships.  At least the following were interfered with in this fashion:

        a)    Globix Investment,
        b)    Ironwood Commercial Realty,
        c)    Shah Firm, LLC, and
        d)    Jeb Brown Law.

78.     Zaheer, Tang and Drinnon have interfered with the Plaintiff's relationship with NBK and/or entered into a relationship with Zaheer and their antics caused the dismissal of Plaintiff's Chapter 11 bankruptcy proceeding, that was otherwise on the road to confirming a Chapter 11 plan of reorganization that would have saved the Plaintiff millions of dollars.

79.     This interference by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

**COUNT 4:  FRAUD AND FRAUDULENT INDUCEMENT/LENDER LIABILITY**

80.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

81. NBK never had any intention of living up to the Confidential Settlement Agreement. The Plaintiff was winning the lawsuit against NBK, so NBK induced the Plaintiff into dismissing its lawsuit and entering into the Confidential Settlement Agreement which NBK had no intention of living up to. This fraud works an estoppel against NBK (see Count 6, "ESTOPPEL"). Plaintiff hereby sues NBK for fraud and fraudulent inducement and alleges it constitutes the basis for an action for Lender Liability.

82. NBK knew at the time it entered into the Confidential Settlement Agreement it would deflect and tortiously interfere with the Plaintiff's attempts to sell the 2425 Building so NBK would be able to foreclose on the building and take all of the value instead of just the value of the amounts otherwise owed at the time. The fraud, fraud in the inducement, lender liability, and subsequent interference for all of which Plaintiff hereby sues NBK. These actions by NBK have damaged the Plaintiff in an amount of at least Thirty Million Dollars ($30,000,000).

## COUNT 5:  FRAUDULENT CONVEYANCE

83. Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

84. The funds paid by the Plaintiff to NBK:

a) $801,509.42 paid Plaintiff to NBK on August 27, 2022;

b) $80,000 paid by Plaintiff to NBK on April 18, 2023; and

c) $80,000 paid by Plaintiff to NBK on May 10, 2023

were fraudulently induced by NBK and were payments for which the Plaintiff received nothing in return and constitute fraudulent conveyances in violation of U.S.C. § 544, 548, and 550 and TEX. BUS. & COMM. CODE §§ 24.001, *et seq.*, for which the Plaintiff hereby sues NBK to recover all such amounts.

## COUNT 6:  ESTOPPEL

85.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

86.    NBK is estopped from claiming Plaintiff owes any more than the amount stated and agreed to in the Confidential Settlement Agreement because of its fraud and fraudulent inducement alleged previously.

## COUNT 7:  BUSINESS DISPARAGEMENT

87.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

88.    The posting of the 2425 Building during any negotiation periods and/or the extended grace period when actual buyers were moving toward concluding a deal and when other potential buyers were expressing interest in the 2425 Building, constituted business disparagement against the Plaintiff for which Plaintiff hereby sues NBK.

89.    The efforts of Zaheer, Tang and Drinnon to make false accusations and representations about the Plaintiff's ownership interests, management, and decision making abilities constituted business disparagement against the Plaintiff for which the Plaintiff hereby sues Zaheer, Tang and Drinnon.

90.    The business disparagement by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

## COUNT 8:  BREACH OF GOOD FAITH AND FAIR DEALING

91.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

92.     Every contract has a duty of good faith and fair dealing engrafted upon it, especially in a lender/borrower relationship, and even more so when the lender is based in the State of New York as NBK is.

93.     NBK breached its duty of good faith and fair dealing by:

a)      Inducing Plaintiff to dismiss their State Court lawsuit;

b)      Inducing Plaintiff to enter into the Confidential Settlement Agreement;

c)      Tortiously interfering with Plaintiff's performance under the Confidential Settlement Agreement;

d)      Tortiously interfering with third-party contracts;

e)      Not approving tenant leases or contracts for sale; and

f)      deflecting buyers so Plaintiff could not sell the 2425 Building.

94.     Plaintiff hereby sues NBK for breach of duty of good faith and fair dealing.  The damages are for the value of the amounts that would have been recovered in the state court litigation and/or the value of the deals lost for leases and/or sales of the 2425 Building.

### COUNT 9: UNJUST ENRICHMENT

95.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

96.     If NBK is allowed to foreclose on the 2425 Building it will make an unconscionable profit and succeed in its "loan to own" gambit.  The amount of its unjust enrichment for which Plaintiff hereby sues NBK is the difference between what NBK would have been owed (but for its breaches of the Confidential Settlement Agreement) under the Confidential Settlement Agreement and the true value of the building, for which Plaintiff hereby sue NBK.

Page **25** of 30

## COUNT 10:  CONSPIRACY

97.     Defendants Zaheer, Drinnon, and Tang, in combination with NBK, agreed to work in concert with each other in order to interfere with Plaintiff's bankruptcy case, and to have it dismissed by making fraudulently claiming they had control over Naissance Galleria, LLC.

98.     Defendants Zaheer, Drinnon and Tang and NBK acted with the intent to harm plaintiff.

99.     To accomplish the object of their agreement Zaheer, Drinnon, Tang and NBK intentionally or negligently mischaracterized the effect of the state court temporary injunction, in order to confuse and disrupt Plaintiff's bankruptcy case, which resulted in dismissal.

100.    The agreement to engage in this conduct proximately caused injury to plaintiff. Plaintiff's sole asset, instead of being protected through its bankruptcy action, has now been posted for foreclosure on December 5th, 2023, which will irreparably harm Plaintiff, and Naissance Galleria, LLC.

## COUNT 11:  ATTORNEYS' FEES

101.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

102.    Plaintiff hereby sue Defendants for their reasonable and necessary attorneys' fees under breach of contract and under any statutory or common law right to recover same.

## VI.
## APPLICATION FOR TEMPORARY INJUNCTION OR ORDER

103.    The Defendants have conspired with each other and others, or worked in parallel courses to get the bankruptcy of Plaintiff 2425 Galleria Owner, LLC dismissed so that Bank of Kuwait is not prohibited by the automatic stay from foreclosing.  If a foreclosure takes place, the

equity of Plaintiff will be wiped out and Plaintiff will have no assets and no adequate remedy at law to return the retrieve the assets or its value.

104.    Temporary injunctive relief is necessary until such time as the merits of this case can be decided and the status quo is maintained pending resolution on the merits.

## **APPLICATION FOR TEMPORARY RESTRAINING ORDER**

105.    Plaintiff's application for a temporary restraining order is authorized by Tex. Civ. Prac. & Rem. Code §65.011(1) which allows applicants to the relief sought to restrain the Defendants from prejudicial acts; by Tex. Civ. Prac. & Rem. Code §65.011(3) which allows applicants to the relief sought under the principles of equity and laws of Texas related to injunctions; by Tex. Civ. Prac. & Rem. Code § 65.011(5) which allows applicants to the relief sought when irreparable injury to business, good will, reputation and personal property is threatened; and by Tex. Bus. Orgs. Code § 152.211(b), allowing partners in a partnership to obtain an injunction to enforce rights under the Texas Business Organizations Code.

106.    As set forth above, an emergency hearing on Plaintiff's Application for Temporary Restraining Order is necessary to conserve the Plaintiff's business status and maintain the status quo during the pendency of this lawsuit. Plaintiff would suffer material injury by the delay necessary to give notice. Any delay necessary for notice would lead to imminent and irreparable injury to property.

107.    It is probable that Plaintiff will recover from Defendants after a trial on the merits because the facts set forth are verified and sets forth the Defendants wrongful conduct; and actions including seeking the sale of the business by the Defendants are wrongful and must be stopped.

108.    If Plaintiff's application is not granted, harm is imminent because 1) Plaintiff's sole asset will be foreclosed as a result of defendants harmful actions on December 5th, 2023; 2)

Defendants will continue to conspire with each other in a manner that is counter to the true interests of Naissance Galleria, LLC; and 3) Defendants will continue to violate the Temporary Injunction, as they have already done on at least three occasions, in order to interfere with Plaintiff's lawful attempts to preserve the 2425 Building. These harms are imminent and would cause irreparable injury with no other adequate legal remedy.

109.    The harm that will result if the temporary restraining order is not issued is irreparable because Plaintiff owns a unique piece of real estate which it will be deprived of in the event of foreclosure. Texas Courts repeatedly rule that "every piece of **real estate** is innately [**8] unique. *See, e.g., Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.--Houston [14th [*58] Dist.] 1982, no writ) ("It is well established law that each and every piece of **real estate** is unique. Therefore, if appellants were allowed to foreclose appellees would be irreparably harmed, since **real estate** is so unique."); *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex. App.--Corpus Christi 1987, no writ) ("Every piece of **real estate** is unique, and if foreclosure were allowed before a full determination of the usury claim, appellee would be irreparably harmed."). *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 57-58 (Tex. App.—San Antonio 2010, no pet.).

## VII. <u>JURY DEMAND</u>

110.    Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII. <u>PRAYER</u>

111.    For the reasons set forth above, Plaintiff asks that the Court enter a Temporary Restraining Order, and after a hearing, a Temporary Injunction, enjoining the Defendants in the following manners:

a) NBK is restrained from 1) Foreclosing on, posting, reposting, or otherwise selling at auction the 2425 Building; and 2) transferring any Note and/or lien it holds or may hold relating to the 2425 Building;

b) Actual damages including economic injuries & consequential damages;

c) Attorney's fees;

d) Exemplary damages;

e) Prejudgment and post judgment interest;

f) Court costs; and

g) All other relief to which Plaintiff is entitled under both law and equity.

112. Plaintiff is willing to post bond.

Respectfully submitted,

The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
Ph: 713-449-4481
Fx: 281-657-9693
jamesp@thepopelawfirm.com

By: /s/ James Q. Pope
James Q. Pope
TBN: 24048738
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on November 14th, 2023, a copy of the foregoing was served on the National Bank of Kuwait S A K P – New York by electronic service using the court's electronic noticing system.

By: /s/ James Q. Pope
James Q. Pope

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 81644121
Filing Code Description: Amended Filing
Filing Description: Amended Petition and Emergency Application for Temporary Restraining Order Against Defendant
Status as of 11/15/2023 9:23 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| James Pope | | jamesp@thepopelawfirm.com | 11/14/2023 8:09:43 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/14/2023 8:09:43 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/14/2023 8:09:43 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/14/2023 8:09:43 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/14/2023 8:09:43 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/14/2023 8:09:43 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/14/2023 8:09:43 PM | SENT |

Unofficial Copy Official Records of Marilyn Burgess District Clerk

11/16/2023 3:43 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81730649
By: Patricia Gonzalez
Filed: 11/16/2023 3:43 PM

CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | HARRIS COUNTY, TEXAS |
| S.A.K.P., NEW YORK BRANCH, et al. | § | |
| | § | |
| *Defendants.* | § | 281st JUDICIAL DISTRICT |

**DEFENDANT RODNEY DRINNON'S MOTION TO DISMISS
PURSUANT TO THE TEXAS CITIZENS PARTICIPATION ACT (TCPA)**

COMES NOW, Defendant Rodney Drinnon ("Drinnon") and pursuant to the Texas

Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.003 ("TCPA"), files this Motion to

Dismiss the claims made against him by Plaintiff Galleria 2425 Owner, LLC ("Galleria 2425"),

and in support shows the Court as follows:

## I.     SUMMARY OF TCPA MOTION TO DISMISS

1.     Drinnon is an attorney with McCathern Houston who was retained by Azeemeh

Zaheer ("Zaheer") to represent her interests in and to the building located at 2425 West Loop S.,

Houston, Texas 77027 ("2425 Property"). Despite Drinnon's appearance and status as Zaheer's

attorney, Galleria 2425 filed its Amended Petition in this case two (2) days ago, joining Drinnon

as an individual Defendant, while knowingly asserting baseless claims and causes of action

against him for (a) Tortious Interference with Contract, (b) Tortious Interference with Business

Relations, (c) Business Disparagement, and (d) Conspiracy.[1]

---

[1] *See* Plaintiff Galleria 2425's November 14, 2023 Amended Petition & Emergency Application for Temporary
Restraining Order, particularly Counts 2 (Tortious Interference with Contract, 3 (Tortious Interference with
Business Relations), 7 (Business Disparagement), and 10 (Conspiracy).

2.      Pursuant to the TCPA, these salacious claims are asserted to chill Drinnon's exercise of the right to petition. Furthermore, each of these claims necessarily fails based on the attorney immunity doctrine. Galleria 2425's claims against Drinnon must be dismissed. Drinnon seeks recovery of his costs, reasonable and necessary attorney's fees incurred as to Galleria 2425's baseless claims, and sufficient sanctions sufficient to deter Galleria 2425 from bringing similar actions again in the future, specifically in consideration of Galleria 2425 and its principal Ali Choudhri's ("Choudhri") "history of litigation [and] 'penchant' for suing opposing counsel in an effort to chill their zealous representation of clients and petitioning activity."[2]

## II.      RELEVANT FACTS AND HISTORY

3.      On or about October 11, 2023, Zaheer and her representatives contacted Drinnon to inquire about his interest in appearing as counsel for Zaheer in the case captioned *Naissance Galleria, LLC v. Azeemah Zaheer*, Case No. 2023-43755, pending in the 80th Judicial District Court of Harris County, Texas ("State Court Case"), after the plaintiff, Naissance Galleria, LLC ("Naissance LLC"), sought reconsideration of a Motion to Disqualify David Tang ("Tang") and Omar Khawaja ("Khawaja") as counsel for Zaheer.[3]

4.      Prior to October 11, 2023, Drinnon was not involved in the present disputes between Galleria 2425, Choudhri, Zaheer, Naissance, Naissance Capital Real Estate, LLC and/or Naissance Capital Real Estate, Ltd. Following the requisite conflict check, Drinnon, on the behalf of the law firm McCathern Houston, agreed to appear as co-counsel for Zaheer both in the State Court Case, as well as the case *In re Galleria 2425 Owner, LLC*, Case No. 23-60036 (CML),

---

[2] *See generally Jetall Companies, Inc. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778, *7 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020). Ali Choudhri, the principal of Galleria 2425, is also the principal owner of Jetall Companies, Inc. Choudhri is a well-known litigant throughout the Harris County judicial system.

[3] *See generally* **Exhibit A**, November 16, 2023 Affidavit of Rodney Drinnon (factual statements made by Drinnon's Affidavit are incorporated throughout this Motion without further reference).

currently pending in the United States Federal Bankruptcy Court in the Southern District of Texas (the "Bankruptcy Case"). In the Bankruptcy Case, Drinnon acted as co-counsel along with Aaron Power ("Power"), Tang, and Khawaja.

5.     On October 12, 2023, Drinnon made his *first* appearance in the Bankruptcy Case, specifically to participate in an expedited remote status conference requested by the Hon. Christopher Lopez. Prior to the status conference, Drinnon was not involved in any purported discussions regarding the drafting and filing of the National Bank of Kuwait's ("NBK") October 6, 2023 letter requesting a status conference and attaching the Temporary Injunction Order entered in the State Court Case. At all times during the remote status conference, Drinnon acted in his capacity as legal counsel for Zaheer.

6.     On October 31, 2023, with the assistance of bankruptcy counsel, Power, Drinnon filed Naissance Galleria, LLC's Emergency Motion for (I) Order Confirming That The Automatic Stay Does Not Apply, or (II) Alternatively, Granting Relief From Automatic Stay ("Motion for Relief"). The Motion for Relief was filed on Naissance LLC's behalf because Zaheer maintains her position that she never relinquished her authority as managing member of Naissance LLC and remains in control of the entity. Importantly, the Motion for Relief did not seek dismissal of the Bankruptcy Case nor the corresponding adversary proceeding purportedly brought by Naissance LLC against NBK. At all times during the drafting and filing of the Motion for Relief, Drinnon acted in his capacity as legal counsel for Zaheer.

7.     Drinnon did not attend the hearing on the Debtor's Motion to Employ Melissa Hayward ("Hayward") of Hayward PLLC. Nor was Drinnon in attendance when Judge Lopez dismissed the Bankruptcy Case and the corresponding adversary proceeding.

8.      On November 3, 2023, Drinnon appeared at a mediation involving Choudhri and his counsel. Drinnon participated in the mediation on Zaheer's behalf. At all times during the mediation, he acted in his capacity as retained legal counsel for Zaheer.

9.      On November 13, 2023, Drinnon appeared in the State Court Case following the receipt of a late-filed notice of hearing purportedly related to Naissance Galleria, LLC's Application Seeking Injunctive Relief. Judge Manor terminated the hearing because plaintiff's counsel failed to properly serve Zaheer. However, during that hearing, Plaintiff's counsel, James Pope ("Pope"), presented a threatened Motion to Disqualify Drinnon as Zaheer's counsel, in direct violation of the Temporary Injunction Order entered in the State Court Case. Following the hearing, Hayward threatened to file suit against Drinnon in his individual capacity, despite Drinnon always acting in his capacity as legal counsel for Zaheer.

10.     On November 14, 2023, Pope followed through on Hayward's threat and filed the Amended Petition, joining Drinnon as a party and as a named Defendant, while asserting the four (4) previously identified claims and causes of action against him.

11.     On November 15, 2023, Drinnon obtained a copy of Plaintiff's Amended Petition in this case (the "Second State Court Case"). The Amended Petition was not verified. In reviewing and responding to the Amended Petition, Drinnon always acted in his capacity as legal counsel for Zaheer and now Drinnon, individually.

12.     On November 15, 2023, Drinnon called Pope to confirm he signed the Amended Petition. Drinnon asked Pope to reconsider adding him as a party to the Second State Court Case, citing the Texas Citizens Protection Act. Drinnon provided Pope a 10:00 a.m. deadline the following day to further amend the live pleadings and dismiss Drinnon as a Defendant in the Second State Court Case or else risk the filing of a TCPA Motion along with a request for

sanctions against Plaintiff and its signatory counsel, Pope. In communicating with Pope, Drinnon always acted in his capacity as legal counsel for Zaheer and now Drinnon, individually.

13.     On November 16, 2023, Pope contacted Drinnon by telephone. At 11:15 a.m. CST, Pope confirmed that he would *not* reconsider adding Drinnon as a named Defendant in the Second State Court Case. Pope further stated that "I stand by filing it," in reference to the Amended Petition joining Drinnon as a Defendant. In communicating with Pope, Drinnon acted in his capacity as legal counsel for Zaheer and himself.

14.     Pope and Galleria 2425 admit and concede Drinnon's status as an attorney acting in the scope of discharging his duties in representing his client when they write that "Zaheer's attorneys (Mr. Tang and Mr, Drinnon) show up without any forewarning at the October 12, 2023 status conference in the Bankruptcy Court about the plan, claiming Azeemeh Zaheer now is the manager of Naissance Galleria, LLC and they have been hired by her to represent Naissance Galleria, LLC *and they have been hired by her* to represent Naissance LLC, all by virtue of the Temporary Injunction" (emphasis added).[4]

15.     Drinnon and McCathern Houston continue to represent Zaheer (and now Drinnon) as their retained legal counsel in this above-captioned lawsuit.

### III.     LEGAL STANDARDS

**A.     TCPA Motions to Dismiss**

16.     The Texas Citizens Participation Act protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (citing House Comm. on Judiciary & Civil Jurisprudence, Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011)). The TCPA provides a special procedure for the

---

[4] Amended Petition at ¶ 47.

expedited dismissal of such suits. A two-step process is initiated by the motion of a defendant who believes that the lawsuit responds to his valid exercise of First Amendment rights. *Id.*

17.     Under the first step, the defendant need only show by a preponderance of the evidence that the plaintiff's claim "is based on, relates to, or is in response to the defendant's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 27.005(b)). If the movant successfully demonstrates the plaintiff's claim implicates one of these rights, the burden then shifts to the plaintiff.

18.     Once the TCPA is implicated, the plaintiff bears the burden to establish by clear and specific evidence a prima facie case for each essential element of the claim(s) in question. *Id.* (citing TCPA § 27.005(c)). In determining whether the plaintiff's claim should be dismissed, the court is to consider the pleadings and any supporting and opposing affidavits. *Id.* (citing TCPA § 27.006(a)). If the plaintiff shows prima facie evidence, the defendant may still prove each essential element of a valid defense by a preponderance of the evidence and obtain a dismissal. *Smith Robertson, L.L.P. v. Hamlin*, No. 03-18-00754-CV, 2019 WL 3023304, *2 (Tex. App.—Austin July 11, 2019, no pet.) (citing TCPA § 27.005(d)).

19.     Clear and specific evidence is not a recognized evidentiary standard. Although it sounds similar to clear and convincing evidence, the phrases are not legally synonymous. The Texas Legislature understands the clear-and-convincing evidence standard and uses that standard when it so intends. *Lipsky*, 460 S.W.3d at 589. In contrast to "clear and specific evidence," a "prima facie case" has a traditional legal meaning. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Id.* at 590.

20.     The TCPA applies to "legal action against a party that is based on, related to, or in response to the party's making or submitting of a statement or document in or pertaining to a

judicial proceeding." *Jetall*, 2020 WL 6435778, at *4 (citing *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018)).

## B.  Attorney Immunity as Complete Affirmative Defense

21.     Texas courts have developed a comprehensive affirmative defense protecting individual attorneys from liability to non-clients, stemming from the broad declaration over a century ago that "attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). In accordance with this purpose, there is consensus among the courts of appeals that, as a general rule, attorneys are immune from civil liability to non-clients "for actions taken in connection with representing a client in litigation." *Id.* (citing *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

22.     An attorney is given latitude to "pursue legal rights that he deems necessary and proper" precisely to avoid the inevitable conflict that would arise if he were "forced constantly to balance his own potential exposure against his client's best interest." *Id.* at 483 (citing *Alpert*, 178 S.W.3d at 405). Attorney immunity focuses on the *kind* of conduct at issue, rather than the *alleged wrongfulness* of said conduct. *Youngkin*, 546 S.W.3d at 681. When applying attorney immunity, we have stated that otherwise wrongful conduct by an attorney "is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client. *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 47 (Tex. 2021) (citing *Toles v. Toles*, 113 S.W.3d 899, 911 (Tex. App.—Dallas 2003, no pet.)).

23.     Even if Galleria 2425 is somehow able to show clear and specific evidence for its claims against Drinnon for tortious interference with contract, tortious interference with business

relations, business disparagement, and/or conspiracy, the attorney immunity doctrine would still entitle Drinnon to dismissal under the TCPA as a valid affirmative defense. *See Jetall*, 2020 WL 6435778, at *4 (citing TCPA § 27.005(d)).

24.     Negotiation and facilitation of agreements is a "paradigmatic function of an attorney representing a client in litigation." *Id*. Moreover, "acts taken and communications made to facilitate the rendition of legal services to [the client]" are also protected conduct under the attorney immunity defense. *Id.* (citing *Youngkin*, 546 S.W.3d at 681-82). The only facts required to support an attorney-immunity defense are the type of conduct at issue and the existence of an attorney client relationship at the time. A court would then decide the legal question of whether said conduct was within the scope of representation. *Hamlin*, 2019 WL 3023304, at *3 (citing *Youngkin*, 546 S.W.3d at 683).

25.     Any acts by Drinnon "undertaken within the scope of [his] representation" of Zaheer (or others) is subject to dismissal. *See* TCPA § 27.005(d). Drinnon "did not do these things for his own health; he did them to advance his clients' interests." *Moore v. Anson Fin., Inc.*, No. 02-19-00201-CV, 2020 WL 1293695, *4 (Tex. App.—Fort Worth Mar. 19, 2020, reh'g denied) (citing *Johnson v. Ashmore*, 681 Fed. App'x 345, 347 (5th Cir. 2017)).

## IV.     ARGUMENT AND AUTHORITIES

26.     Courts must construe the TCPA according to its text. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam)). Courts are to decide the TCPA's applicability based on a holistic review of the pleadings. Section 26.006(a) provides that when considering a TCPA motion to dismiss, the court "shall consider the pleadings and supporting and opposing affidavits." *Id.* at 897. "When it is clear from the plaintiff's pleadings that the action is covered by

the [TCPA], the defendant need show no more." *Id.* (citing *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)). *See also Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 27 (Tex. App.—Houston [14th Dist.] 2020, reh'g denied) (TCPA clearly impacted by plaintiff's pleadings).

27.     As demonstrated by the similar facts in *Jetall Companies, Inc. v. Johanson*,[5] Choudhri and Galleria 2425 are well aware of the TCPA's reach and the risk of sanctions for improperly seeking to restrict Drinnon's ability to represent his clients as an attorney advocate. ___**They have been sanctioned before.**___ Each of Galleria 2425's claims against Drinnon arise from his appearance as counsel for Zaheer and his participation in proceedings in the Bankruptcy Case and/or the first State Court Case. *See* Amended Petition at ¶¶ 10, 12, 14, 16-17, 23, 39-40, 46-48, 52-53, 58-60, and 68. Based on the express language of the TCPA, it is directly implicated by Galleria 2425's claims against Drinnon. Each of these causes of action must be dismissed under the TCPA because (a) Galleria 2425 cannot establish a prima facie case with specific and convincing evidence of Drinnon's purported unlawful conduct, and/or (b) Drinnon is wholly shielded under the doctrine of attorney immunity, as all his actions were in the scope of his representation of Zaheer as her lawyer.

A.     **Tortious Interference With Contract**

28.     To establish its claims that Drinnon (as an individual not acting in the scope of his role as Zaheer's attorney) tortiously interfered with a contract, Galleria 2425 must show specific and convincing evidence to prove: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused injury and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d

---

[5] No. 01-19-00305-CV, 2020 WL 6435778 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020). *See also Jetall Companies, Inc. v. Sonder USA, Inc.*, NO. 01-21-00378-CV, 2022 WL 17684340 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022) (another TCPA case involving Choudhri and his cadre of attorneys).

74, 77 (Tex. 2000). *See also Serafine v. Blunt*, 466 S.W.3d 352, 361 (Tex. App.—Austin 2015, no pet.) (considering tortious interference claims under the TCPA).

29.     Galleria 2425 claims without evidence that Drinnon "tortiously interfered with Plaintiff's contract with NBK, and with Plaintiff's bankruptcy proceeding." It is axiomatic that Drinnon's appearance at a bankruptcy proceeding cannot be the tortious interference of a contract – Galleria 2425 has no contract with the bankruptcy court that could be interfered with. Nor does Galleria 2425 identify any specific acts by Drinnon that constitute a "willful and intentional act of interference" with the NBK contract above and beyond Drinnon appearing as Zaheer's counsel and representing her interests in the Bankruptcy Case.

30.     Meanwhile, to establish interference with a contract, "the plaintiff must present evidence that some obligatory provision of a contract has been breached." *McDonald Oilfield Operations*, 582 S.W.3d at 750 (citing *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 361 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Galleria 2425's Amended Petition is devoid of such an assertion. General statements about the supposed contract with NBK do not present clear and specific evidence of the existence of the contract, its specific terms at issue, or how it was breached. It therefore is not evidence sufficient to establish a prima facie case for the contract element of a tortious interference claim. *John Moore Servs.*, 441 S.W.3d at 361 (dismissing claim under TCPA). Despite its lack of facts, evidence, or a colorable claim, Galleria 2425 nevertheless seeks fifty million dollars ($50,000,000.00) in damages from Drinnon for his alleged tortious interference with contract(s). Furthermore, any claimed damages are speculative and hypothetical as Galleria 2425 has not suffered any actual damages to date. Plaintiff's tortious interference claim is not only baseless but premature.

10

31.    Galleria 2425's claim for tortious interference with contract as asserted against Drinnon must be dismissed under the TCPA.

**B.    Tortious Interference with Business Relations**

32.    A party asserting a claim for tortious interference with a prospective business relationship must prove: (1) a reasonable probability that there would have been a contractual relationship; (2) an "independently tortious or unlawful" act by the interfering party that prevented the relationship from occurring; (3) the interfering party did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the claimant suffered actual harm or damage proximately caused by the interference. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). *See also Enter. Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 307 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (applying TCPA analysis).

33.    Galleria 2425's entire tortious interference claim against Drinnon is based on a speculative presumption that he and others had a "back room deal" with NBK.[6] There is no evidence to support such a claim because it is baseless. Nevertheless, allegations of "[c]onduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." *Sturges*, 52 S.W.3d at 726. Conclusory statements of tortious interference are not probative evidence and accordingly will not suffice to establish a prima facie case. *Sealy Partners*, 614 S.W.3d at 307 (citing *John Moore Servs.*, 441 S.W.3d at 355). Thus, any claim that certain "antics" caused a federal bankruptcy judge to dismiss the Bankruptcy Case and upsetting Plaintiff's plan to reorganize and save "millions of dollars" is not a basis for a tortious interference with business relations claim against an attorney.

---

[6] Amended Petition at ¶ 23.

34.     Galleria 2425's claim for tortious interference with business relations as asserted against Drinnon must be dismissed under the TCPA.

**C.     Business Disparagement**

35.     To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 750 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003)). Galleria 2425 fails to identify a specific allegation made by Drinnon that was made with malice or without privilege (either litigation privilege or through attorney immunity). The Amended Petition only broadly refers to "bad faith actions," "forgery claims," "back room deal[s]," "hostile takeover attempt[s]," and unidentified "false representations of material information."[7] None of these supposed statements are even directly attributed to Drinnon himself.

36.     Nor is there any evidence directly supporting any claims for special damages to the Plaintiff, much less a precise calculation of damages that ostensibly were caused by such disparagement. More importantly, Drinnon was not Zaheer or Naissance's counsel until October 11, 2023, nor did he participate during any of the "negotiation periods and/or the extended grace period" cited by Galleria 2425 in its Count 7.[8]

37.     Galleria 2425's bare, baseless claims in the Amended Petition do not constitute clear and specific evidence required to support a prima facie case under the TCPA. *McDonal Oilfield Operations*, 124 S.W.3d at 170. The Amended Petition attaches no affidavits or supporting evidence to corroborate Drinnon's purported business disparagement.

---

[7] Amended Petition at ¶¶ 10, 12, 23, 39, and 53.
[8] *See* Amended Petition at ¶¶ 87-90.

38.     Galleria 2425's claim for business disparagement as asserted against Drinnon must be dismissed under the TCPA.

**D.     Conspiracy**

39.     Conspiracy is a theory to secure joint and several liability against a member of a conspiracy for the harm caused by any one member of the conspiracy. *Cooper v. Trent*, 551 S.W.3d 325, 335 (Tex. App. —Houston [14th Dist.] 2018, pet. denied); *Energy Maint. Servs. Grp. I, LLC v. Sandt*, 401 S.W.3d 204, 220 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). *See also Sealy Partners*, 614 S.W.3d at 308 (applying TCPA to conspiracy claims). A defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Id.*

40.     The elements of civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *PAS, Inc. v. Engel*, 350 S.W.3d 602, 616 (Tex. App.— Houston [14th Dist.] 2011, no pet.) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). Simply put, there is no evidence that Drinnon participated in a civil conspiracy that engaged in "one or more unlawful, overt acts." Zaheer has colorable claims regarding her interest in Naissance LLC and the 2425 Property. Zaheer hired Drinnon to be her attorney to represent her interests accordingly.

41.     Plaintiff disingenuously refers to Drinnon's involvement in the Bankruptcy Case as "making fraudulent claim[s] that [Zaheer] had control over Naissance." This is ostensibly to avoid TCPA liability under the common law fraud exception. *See* TCPA § 27.010(a)(12). However, the conspiracy claim against Drinnon necessarily fails because Galleria 2425 cannot make a prima facie case against Drinnon for any underlying torts, notwithstanding his status as

Zaheer's attorney and the right to argue colorable claims in a legal context. *Sealy Partners*, 614 S.W.3d at 308-09. *See also Sacks v. Zimmerman*, 401 S.W.3d 336, 342 (Tex. App.—Houston [14th Dist.] 2013) (applying litigation privilege because statements made in motions and hearings on those motions cannot be fraud nor are they "entirely foreign to the duties of an attorney").

42.     Based on the foregoing, Galleria 2425's efforts to dress up its claims against Drinnon under an indirect "fraud" allegation – while not pleading a cause of action against him for common law fraud – does not provide it safe harbor from the TCPA.

43.     Galleria 2425's claim for conspiracy as asserted against Drinnon must be dismissed under the TCPA.

## V.     REQUESTS FOR COSTS, FEES, AND SANCTIONS

44.     Galleria 2425 and its principal, Choudhri, are well-versed in the consequences of actions which implicate the TCPA. Despite the risk of dismissal and sanctions, Choudhri has continually abused the judicial system by filing baseless, groundless, frivolous, and harassing pleadings – including filing lawsuits against attorneys in their individual capacity. *See generally Jetall Companies, Inc. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020).

45.     Following the dismissal of Galleria 2425's claims against him, Drinnon requests the recovery of his costs incurred, plus his reasonable and necessary attorney's fees in filing this Motion to Dismiss under the TCPA.

46.     Drinnon further requests this Court look at the totality of the circumstances giving rise to Galleria 2425's Amended Petition, and then award him the most severe sanctions allowable against Galleria 2425, Choudhri, and their attorney of record (James Q. Pope).

47.     A successful TCPA movant is entitled to sanctions "sufficient to deter the party who brought the legal action from bringing similar actions" in the future. TCPA § 27.009(a)(2). Choudhri and his various alter ego entities have been making a mockery of the judicial system for over a decade. No monetary sanction to date has been substantial enough to deter these abuses. This Court has broad discretion to determine the amount that is sufficient to achieve the statutory goal of deterrence. *Jetall*, 2020 WL 6435778, at *6.

48.     As previously established by the Texas Court of Appeals, Jetall [and therefore Choudhri, and thus Galleria 2425] "has filed similar actions in the past. *Id.* at *7. Choudhri has previously sued other attorneys who represented opposing parties in unrelated litigation. *Id.* Additionally "[Choudhri's] history of litigation is at least some evidence of a "penchant" for suing opposing counsel in an effort to chill their zealous representation of clients and petitioning activity." *Id.* Sanctions far in excess of Drinnon's attorney's fees are **_necessary_** to deter future and further actions by Galleria 2425, Choudhri, Pope, and Choudhri's litany of other attorneys who may appear in this case. *Id.* (citing TCPA § 27.009(a)(2)).

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Rodney Drinnon respectfully asks this Court to grant his Motion to Dismiss under the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code §§ 27.001 *et seq*., award him his costs and reasonable and necessary attorney's fee, and to award severe sanctions in Drinnon's favor sufficient to deter Galleria 2425 Owner, LLC, Ali Choudhri, and their attorney, James Q. Pope, from bringing similar actions in the future, and to award Drinnon all such other and further relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

**McCathern Houston**

By: */s/ Rodney L. Drinnon*

**Rodney L. Drinnon**
Texas Bar No. 24047841
rdrinnon@mccathernlaw.com
**David L. Clark**
Texas Bar No. 24103974
dclark@mccathernlaw.com
**Danielle Chester**
Texas Bar No. 24101615
dchester@mccathernlaw.com
**Haseeb Dada**
Texas Bar No. 24132578
hdada@mccathernlaw.com
2000 West Loop South, Suite 1850
Houston, Texas 77027
Tel. 832.533.8689
Fax 832.213.4842

**ATTORNEYS FOR DEFENDANT
RODNEY DRINNON**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of November, 2023, a true and correct copy of the foregoing and/or attached was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure as follows:

*/s/Rodney L. Drinnon*
Rodney L. Drinnon

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Simone Nunez on behalf of Rodney  Drinnon
Bar No. 24047841
snunez@mccathernlaw.com
Envelope ID: 81730649
Filing Code Description: Motion (No Fee)
Filing Description: Drinnon's Motion to Dismiss Pursuant to TCPA
Status as of 11/16/2023 4:28 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/16/2023 3:43:05 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/16/2023 3:43:05 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/16/2023 3:43:05 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/16/2023 3:43:05 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/16/2023 3:43:05 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/16/2023 3:43:05 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/16/2023 3:43:05 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/16/2023 3:43:05 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/16/2023 3:43:05 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/16/2023 3:43:05 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/16/2023 3:43:05 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/16/2023 3:43:05 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/16/2023 3:43:05 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/16/2023 3:43:05 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 81730649
By: GONZALEZ, PATRICIA
Filed: 11/16/2023 3:43:05 PM

CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *v.* | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | HARRIS COUNTY, TEXAS |
| S.A.K.P., NEW YORK BRANCH, et al. | § | |
| | § | |
| *Defendants*. | § | 281st JUDICIAL DISTRICT |

**ORDER GRANTING RODNEY DRINNON'S MOTION TO DISMISS
PURSUANT TO THE TEXAS CITIZENS PARTICIPATION ACT (TCPA)**

On December 12, 2023, a hearing was held on Defendant Rodney Drinnon's ("Drinnon")

Motion to Dismiss under the Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code §

27.003 ("TCPA"), filed on November 16, 2023 in response to Plaintiff Galleria 2425 Owner,

LLC's ("Galleria 2425") November 14, 2023 Amended Petition joining Drinnon as a named

Defendant and asserting four causes of action against him: (a) tortious interference with contract,

(b) tortious interference with business relations, (c) business disparagement, and (d) conspiracy.

Upon review of Plaintiff's Amended Petition, Drinnon's Motion to Dismiss under the

TCPA, Galleria 2425's Response thereto, the evidence in the record, and the arguments of

counsel, the Court finds that Drinnon's Motion to Dismiss under the TCPA has merit and is

**GRANTED**. The Court further finds as follows:

Galleria 2425's causes of action against Drinnon for (a) tortious interference with contract,

(b) tortious interference with business relations, (c) business disparagement, and (d) conspiracy

are without merit. Galleria 2425 did not present specific and convincing evidence to support a

prima facie case against Drinnon for any of these claims under the TCPA;

Ali Choudhri ("Choudhri") is the principal and sole owner of Galleria 2425 and operates the entity as his alter ego;

Drinnon and his law firm, McCathern Houston, have represented parties adverse to the interests of Galleria 2425 and its principal, Choudhri, in the past;

Galleria 2425 and Choudhri have previously sued individual attorneys related to similar or the same subject matter as in this lawsuit;

Choudhri has sued opposing attorneys, who represent parties adverse to him and his business interests, on multiple occasions in the past;

Choudhri has been sanctioned multiple times in past litigation for engaging in improper and repugnant actions in courts of law;

Galleria 2425 and its signatory counsel of record, James Q. Pope, brought this lawsuit against Drinnon for an improper purpose, which was to harass and increase the costs of litigation, and to cause opposing counsel to personally incur unnecessary expenses so as to dissuade its opposing counsel from representing parties adverse to Galleria 2425 and Choudhri; and

Sanctions of the most severe degree and of the highest order are justified in the present matter pursuant to Tex. Civ. Prac. & Rem. Code §§ 27.005(b) and 27.009(a).

IT IS THEREFORE

ORDERED that Galleria 2425's causes of action against Drinnon for (a) tortious interference with contract, (b) tortious interference with business relations, (c) business disparagement, and (d) conspiracy are dismissed WITH PREJUDICE. It is further

ORDERED that pursuant to Section 27.009(a)(1) of the TCPA, McCathern Houston shall have and recover from Plaintiff Galleria 2425 Owner, LLC in the amount of $_____ reflecting Drinnon's reasonable attorney's fees and court costs incurred herein. It is further

ORDERED that pursuant to Section 27.009(a)(2) of the TCPA, McCathern Houston shall have and recover as sanctions from Plaintiff Galleria 2425 Owner, LLC, Ali Choudhri, and James Q. Pope, jointly-and-severally the sum of $_____, which the Court finds is sufficient to deter Galleria 2425 Owner, LLC, Ali Choudhri, and James Q. Pope from bringing similar actions that violate the TCPA. It is further

ORDERED that Galleria 2425 Owner, LLC, Ali Choudhri, and James Q. Pope shall individually and/or collectively pay the sums listed above to McCathern Houston within ten (10) days of the signing of this Order and that execution shall issue for all other amounts and relief awarded herein, consistent with Texas law. It is further

ORDERED that in the event of an appeal of this Order in favor Drinnon is taken to the Court of Appeals and this Order is affirmed, McCathern Houston shall recover the additional sum of $_____ from Galleria 2425 Owner, LLC, as reasonable attorney's fees on appeal. It is further

ORDERED that in the event this Order is affirmed in favor of Drinnon by the Court of Appeals, and is subsequently a subject of a petition for review in the Texas Supreme Court and such petition is denied or dismissed, McCathern Houston shall recover the additional sum of $_____ from Galleria 2425 Owner, LLC, as reasonable attorney's fees on appeal. It is further

ORDERED that in the event this Order is affirmed in favor of Drinnon by the Court of Appeals, and the Texas Supreme Court calls for briefing on the merits, McCathern Houston shall recover the additional sum of $_____ from Galleria 2425 Owner, LLC, as reasonable attorney's fees on appeal. It is further

ORDERED that in the event this Order is affirmed in favor of Drinnon by the Court of Appeals, and is subsequently affirmed following the grant of a petition for review by the Texas Supreme Court, McCathern Houston shall recover the additional sum of $_____ from Galleria 2425 Owner, LLC, as reasonable attorney's fees on appeal in the completion of representation before the Supreme Court. It is further

ORDERED that interest shall accurse on the amounts awarded in this Order at the rate of ____ percent (__%) per annum per Tex. Fin. Code § 304.003(c). Such post-Order interest shall accrue on the amount awarded from the date of this Order until paid. It is further

ORDERED that all costs of court are taxed against Galleria 2425 Owner, LLC.

Date: _____          _____
                                          JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

**MCCATHERN HOUSTON**

By: */s/ Rodney L. Drinnon*
**Rodney L. Drinnon**
Texas Bar No. 24047841
rdrinnon@mccathernlaw.com
**David L. Clark**
Texas Bar No. 24103974
dclark@mccathernlaw.com
**Danielle Chester**
Texas Bar No. 24101615
dchester@mccathernlaw.com
**Haseeb Dada**
Texas Bar No. 24132578
hdada@mccathernlaw.com
2000 West Loop South, Suite 1850
Houston, Texas 77027
Tel. 832.533.8689
Fax 832.213.4842

**ATTORNEYS FOR DEFENDANT**
**RODNEY DRINNON**

4

EXHIBIT

A

CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | HARRIS COUNTY, TEXAS |
| S.A.K.P., NEW YORK BRANCH, et al. | § | |
| | § | |
| *Defendants.* | § | 281st JUDICIAL DISTRICT |

## <u>AFFIDAVIT OF RODNEY L. DRINNON</u>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared RODNEY L. DRINNON, who is personally known to me, and first being duly sworn according to law upon oath deposed and said:

1.      My name is Rodney L. Drinnon. I am over eighteen (18) years of age and I am the managing partner of McCathern Houston, a law firm.  I have personal knowledge of the facts contained in this Affidavit.  For over thirty (30) years, I have made my living as a lawyer focusing primarily on trial advocacy.  I am not a commercial real estate developer, although I have represented several commercial real estate developers in the past.

2.      Prior to October 11, 2023, I was *not* involved in the dispute between Galleria 2425 Owner, LLC ("Galleria Owner"), Ali Choudhri ("Choudhri"), Azeemah Zaheer ("Zaheer"), Naissance Galleria, LLC ("Naissance LLC"), Naissance Capital Real Estate, LLC and Naissance Capital Real Estate, LTD.

3.      On or about October 11, 2023, I was asked whether I would consider stepping in as counsel for Zaheer in the case captioned *Naissance Galleria, LLC v. Azeemah Zaheer*, Case No. 2023-43755 pending in the District Court of Harris County, Texas, 80th Judicial District ("State Court Case"), after the plaintiff, Naissance LLC, sought reconsideration of its Motion to Disqualify David Tang ("Tang") and Omar Khawaja ("Khawaja") as counsel for Zaheer.

4.      After completing the requisite conflict check, I, on the behalf of McCathern Houston, agreed to appear as co-counsel for Zaheer both in the State Court Case, as well as the as the case captioned *In re Galleria 2425 Owner, LLC*, Case No. 23-60036 (CML) pending in the United States Bankruptcy Court (the "Bankruptcy Case").  In the Bankruptcy Case, I was co-counsel along with Aaron Power ("Power"), Tang and Khawaja.

5.     On October 12, 2023, I made my *first* appearance on the behalf of Zaheer, Naissance LLC, Naissance Capital Real Estate, LLC and Naissance Capital Real Estate, LTD in the Bankruptcy Case participating in an expedited remote status conference requested by the Hon. Christopher Lopez ("Judge Lopez"). Prior to the status conference, I had not spoken with counsel for the National Bank of Kuwait, S.A.K.P., New York Branch ("NBK"), Charles Conrad ("Conrad") and was not involved in any discussions leading up to the drafting and filing of NBK's October 6, 2023 letter requesting a status conference attaching the Temporary Injunction Order entered in the State Court Case. At all times during the remote status conference, I was acting in my capacity as legal counsel for Zaheer.

6.     On October 31, 2023, with the assistance of bankruptcy counsel, Power, I filed Naissance Galleria, LLC's Emergency Motion For (1) Order Confirming That The Automatic Stay Does Not Apply, Or (II) Alternatively, Granting Relief From Automatic Stay ("Motion for Relief"). The Motion for Relief was filed on behalf of Naissance LLC because it is Zaheer's position that she never relinquished her authority as managing member of Naissance LLC and remains in control of the entity. Importantly, the Motion for Relief did not seek dismissal of the Bankruptcy Case nor the corresponding adversary proceeding purportedly brought by Naissance LLC against NBK. At all times during the drafting and filing of the Motion for Relief, I was acting in my capacity as legal counsel for Zaheer.

7.     I did not attend the hearing on the Debtor's Motion to Employ Mellissa Hayward ("Hayward") of Hayward PLLC. Nor was I in attendance when Judge Lopez dismissed the Bankruptcy and the corresponding adversary proceeding.

8.     On November 3, 2023, I appeared at a mediation with Choudhri and his counsel before R. Jack Cagle along with Zaheer, Tang and Khawaja. At all times during the mediation, I acted in my capacity as legal counsel for Zaheer.

9.     On November 13, 2023, I appeared in the State Court Case along with Tang following the receipt of a late-filed notice of hearing purportedly related to Plaintiff Naissance Galleria, LLC's Application Seeking Injunctive Relief. Judge Manor terminated the hearing after it was discovered that plaintiff's counsel had failed to properly serve Zaheer. At the hearing, Plaintiff's counsel, James Pope ("Pope") presented me with a Motion to Disqualify me as Zaheer's counsel in direct violation of the Temporary Injunction Order entered in the State Case. Following the hearing, Hayward, threatened to file suit against Tang and me in our individual capacities now that the Bankruptcy Case had been dismissed. At all times during the hearing and during our brief conference with Hayward, I acted in my capacity as legal counsel for Zaheer.

10.     On November 15, 2023 I obtained a copy of Plaintiff's Amended Petition & Emergency Application for Temporary Restraining Order Against Defendant National Bank of Kuwait S.A.K.P. ("Amended Petition") adding me as a party to the case captioned Galleria 2425 Owner, LLC v. National Bank of Kuwait, S.A.K.P., New York Branch, Case No. 2023-22748 pending in the District Court of Harris County, Texas, 281st Judicial District (the "Second State Court Case"). The Amended Petition was not verified. In reviewing the Amended Petition, I acted in my capacity as legal counsel for Zaheer, and now, for myself.

2

11.　　On November 15, 2023, I called Pope who signed the Amended Petition and asked him to reconsider adding me as a party to the suit citing the Texas Citizen's Protection Act ("TCPA").  I gave him until 10:00 a.m. the following day to do so or I informed him I would be filing a TCPA Motion and seeking sanctions.  In communicating with Pope, I acted in my capacity as legal counsel for Zaheer, and now, for myself.

12.　　On November 16, 2023, Pope called me and confirmed at 11:15 a.m. that he would not reconsider adding me as a party to the Second State Court Case and stated, "I stand by may pleading."  In communicating with Pope, I acted in my capacity as legal counsel for Zaheer, and now, for myself.

13.　　At all times, relevant mentioned in the Amended Petition, I acted in my capacity as legal counsel for Zaheer.  Pope admits as much when he writes, "[t]hird, Zaheer's attorney's (Mr. Tang and Mr, Drinnon) show up without any forewarning at the October 12, 2023 status conference in the Bankruptcy Court about the plan, claiming Azemah Zaheer is now the manager of Naissance Galleria, LLC and *they have been hired by her* to represent Naissance LLC, all by virtue of the Temporary Injunction." (emphasis added).

FURTHER AFFIANT SAYETH NOT.

Rodney L. Drinnon

SWORN TO AND SUBSCRIBED BEFORE ME, on the 16th day of November 2023, which witness my hand and seal of office.

SIMONE A. NUNEZ
Notary Public, State of Texas
Comm. Expires 11-29-2025
Notary ID 133465490

Notary Public in and for
the State of Texas

3

11/16/2023 2:00 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81721438
By: Lewis John-Miller
Filed: 11/16/2023 2:00 PM

CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *v.* | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | HARRIS COUNTY, TEXAS |
| S.A.K.P., NEW YORK BRANCH, et al. | § | |
| | § | |
| *Defendants*. | § | 281st JUDICIAL DISTRICT |

## <u>NOTICE OF HEARING</u>

Please take notice that *Defendant Rodney Drinnon's Motion to Dismiss Pursuant to the Texas Citizens Participation Act (TCPA)* which was filed with the Court and served on all parties on November 16, 2023, is set for an in person **ORAL HEARING** on **December 12, 2023** at **8:30a.m.** in the 281st Judicial District Court in Harris County, Texas.

Respectfully submitted,

**McCathern Houston**

By: */s/ Rodney L. Drinnon*
**Rodney L. Drinnon**
Texas Bar No. 24047841
rdrinnon@mccathernlaw.com
**David L. Clark**
Texas Bar No. 24103974
dclark@mccathernlaw.com
**Danielle Chester**
Texas Bar No. 24101615
dchester@mccathernlaw.com
**Haseeb Dada**
Texas Bar No. 24132578
hdada@mccathernlaw.com
2000 West Loop South, Suite 1850
Houston, Texas 77027
Tel. 832.533.8689
Fax 832.213.4842

**ATTORNEYS FOR DEFENDANT**

**RODNEY DRINNON**

### CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of November, 2023, a true and correct copy of the foregoing and/or attached was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure.

*/s/Rodney L. Drinnon*
Rodney L. Drinnon

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Simone Nunez on behalf of Rodney  Drinnon
Bar No. 24047841
snunez@mccathernlaw.com
Envelope ID: 81721438
Filing Code Description: Notice
Filing Description:
Status as of 11/16/2023 2:22 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/16/2023 2:00:22 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/16/2023 2:00:22 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/16/2023 2:00:22 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/16/2023 2:00:22 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/16/2023 2:00:22 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/16/2023 2:00:22 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/16/2023 2:00:22 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/16/2023 2:00:22 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/16/2023 2:00:22 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/16/2023 2:00:22 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/16/2023 2:00:22 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/16/2023 2:00:22 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/16/2023 2:00:22 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/16/2023 6:10 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81740048
By: Patricia Gonzalez
Filed: 11/16/2023 6:10 PM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| *Defendant.* | § | **281ST JUDICIAL DISTRICT** |

### <u>UNSWORN DECLARATION OF ALI CHOUDHRI</u>

My Name is Ali Choudhri.  My office address is 1001 West Loop South, Suite 700, Houston, Texas 77027, and my date of birth is January 24, 1980.  I declare under penalty of perjury that the facts and events set forth in the Plaintiff's Amended Petition & Emergency Application for Temporary Restraining Order Against Defendant National Bank of Kuwait S.A.K.P., as filed on November 16, 2023, are within my personal knowledge and are true and correct.

Executed in Harris County, State of Texas, on November 16, 2023.

By: /s/ Ali Choudhri
Ali Choudhri

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 81740048
Filing Code Description: No Fee Documents
Filing Description: Unsworn Declaration of Ali Choudhri
Status as of 11/17/2023 7:55 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| James Pope | | jamesp@thepopelawfirm.com | 11/16/2023 6:10:14 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/16/2023 6:10:14 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/16/2023 6:10:14 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/16/2023 6:10:14 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/16/2023 6:10:14 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/16/2023 6:10:14 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/16/2023 6:10:14 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/16/2023 6:10:14 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/16/2023 6:10:14 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/16/2023 6:10:14 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/16/2023 6:10:14 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/16/2023 6:10:14 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/16/2023 6:10:14 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/16/2023 5:08 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81738106
By: Patricia Gonzalez
Filed: 11/16/2023 5:08 PM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| *Defendant.* | § | **281ST JUDICIAL DISTRICT** |

### <u>PLAINTIFF'S AMENDED PETITION & EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AGAINST DEFENDANT NATIONAL BANK OF KUWAIT S.A.K.P.</u>

Galleria 2425 Owner, LLC ("***Plaintiff***") files this Amended Petition and Emergency Application for Temporary Restraining Order against National Bank of Kuwait S.A.K.P., New York Branch (individually as "***NBK***", or collectively as "***Defendants***"), and Azeemeh Zaheer (individually as "***Zaheer***", or collectively as "***Defendants***") and, in support, submit the following:

### I.
### <u>DISCOVERY PLAN</u>

1.     Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

### II.
### <u>PARTIES</u>

2.     Galleria 2425 Owner, LLC ("***Plaintiff***") is a limited liability company doing business in Texas and is the owner of the building located at 2425 West Loop S., Houston, Texas ("***2425 Building***").

Page **1** of 28

3.     National Bank of Kuwait, S.A.K.P., New York Branch ("*NBK*") is a banking corporation organized under the laws of Kuwait, acting through its New York Branch. NBK HAS APPEARED WITH COUNSEL.

4.     Azeemeh Zaheer ("**Zaheer**"), is an individual who resides, and may be personally served at 5513 Kansas Street, Houston, Texas 77007.  CITATION IS HEREBY REQUESTED.

### III.
### INTRODUCTION

5.     This suit was originally filed against NBK, a party who has been shown to be willing to engage in bad faith actions, and who repeatedly attempts to make outside deals with third parties, specifically to deprive the plaintiff of its ownership interest in the 2425 Building in any way it can.

6.     Plaintiff, Galleria 2425 Owner, LLC, filed bankruptcy to preserve the asset, which NBK vehemently opposed, and fought to have dismissed from the bankruptcy court. However, at the hearing on NBK's motion to dismiss, Plaintiff was successful in defending against dismissal, and the bankruptcy case moved forward.

7.     Plaintiff promptly proposed a plan in the bankruptcy court, which was characterized as a "really smart" plan that "check[ed] all the boxes" for plan confirmation, according to Judge Lopez.

8.     Then, after NBK lost its motion to dismiss, it filed a letter in the bankruptcy case (Document 77) which made the bankruptcy court aware of litigation that was irrelevant to Galleria 2425 Owner, LLC's pursuit of its ongoing bankruptcy case. The state court litigation referenced by NBK is, in the words of Judge Lopez "an unrelated case involving Ms. Zahire [sic] and Naissance and Mr. Choudhri". The case is about a dispute over control of an entity called

Page **2** of **28**

Naissance Galleria, LLC, which does not have any membership in, or control over Galleria 2425 Owner, LLC, or any of its members or managers.

9.      Notably, the state court, in the litigation referenced in NBK's letter to Judge Lopez, did issue a Temporary Injunction, which maintained the status quo of Choudhri's management and control of Naissance Galleria, LLC, but limited any actions that could be taken by Choudhri on behalf of Naissance Galleria, LLC to only those which are also approved by Zaheer, until a trial resolves the issue once and for all.

10.     After the Temporary Injunction was in place establishing Choudhri's control of Naissance Galleria, LLC, Zaheer directed counsel, while purporting to act for Naissance Galleria, LLC, to appear at two separate hearings in the bankruptcy court, on or about October 12th, 2023 and November 1st, 2023, and later filed a motion to lift the stay in the bankruptcy court, requesting for Judge Lopez to rule against the state court and find that Zaheer had control of, and could act for Naissance Galleria, LLC.

11.     When the parties to the state court litigation returned to appear before Judge Manor on November 13th, 2023, Judge Manor confirmed that her Temporary Injunction did not give Zaheer any right to act as the manager of Naissance Galleria, LLC, and confirmed that Choudhri was in control, subject to Zaheer's approval during the pendency of trial.

12.     All of these actions, gave rise to Judge Lopez's serious concerns about the ability to move forward with the bankruptcy case without resolution in the state court action. Judge Lopez stated in the November 1st, 2023 Status Conference the following:

"I don't have anything to qualify it in state court issues. I don't know. There's just a lot of

confusing stuff, and my gut tells me that I need to dismiss this case and let you all go figure

this out in State Court, because there's not enough here, and there's real concerns that I have…".

13.     However, since Naissance Galleria, LLC has no ownership or control over the Plaintiff or any of its members or managers, these filings and appearances are just a smoke screen. The fact that they were also filed in violation of the Temporary Injunction not only makes these actions unlawful, but there could be no other purpose aside from attempting to cause the dismissal of the bankruptcy case brought by Galleria 2425 Owner, LLC, which is an action that, logically, would be counter to the company's interests.

14.     In its letter, NBK cleverly attempts to confuse the court by implying that Ms. Zaheer had control of Naissance Galleria, LLC because the order says that management decisions could not be made without her approval.

15.     As this Court has handled cases related Galleria 2425 Owner, LLC for years, it is well aware that Ms. Zaheer has been entirely absent from any of these proceedings until on or about July 5th, 2023, when Naissance Galleria, LLC appeared, allegedly controlled by Azeemeh Zaheer, before this Court's ancillary docket, attempting to stop the foreclosure by NBK, at which hearing this Court itself questioned the absence of Ms. Zaheer over the last several years.

16.     Ms. Zaheer signed the assignment of Naissance Galleria, LLC on July 3rd, 2020. Ms. Zaheer did not make any claims of control over Naissance Galleria, LLC, did not attempt to object to or interfere with Mr. Choudhri's management of the company, and did not make allegations of forgery regarding the assignment of the company to Choudhri for three (3) years. These allegations are absurd, as Ms. Zaheer has been entirely absent from the company's management for years.

17.     As a result of this conspiracy by the defendants, the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case.

18.     What's interesting is that, if Ms. Zaheer was sincerely the manager of Naissance Galleria, LLC, she would not have worked to have the bankruptcy case dismissed.

19.     Such actions, if they had been taken by a legitimate manager for Naissance Galleria, LLC, would be a breach of fiduciary duty to the company, *unless there was a back room deal NBK*.

20.     Now that NBK has re-posted the 2425 Building for foreclosure, Plaintiff will suffer irreparable harm as a result of the defendants' actions.

## IV.
## FACTUAL BACKGROUND

21.     In 2018, NBK loaned certain funds to Plaintiff.  NBK has continually interfered with the Plaintiff's ability to lease the 2425 Building to produce revenue and Plaintiff's ability to sell the 2425 Building to pay NBK off.  Every time NBK has so interfered, it has then blamed the Plaintiff for its inability supposedly to meet some of the loan terms.

22.     For example, in January 2021, Plaintiff Ali Choudhri, who is vilified by NBK in various pleadings, had the building at 2425 West Loop South, Houston, Texas, the asset of the Plaintiff, has serious parties interested in building for a purchase price of $85 million, more than enough to clear NBK's debt.  A letter dated January 15, 2021 from SIBS International and two purchase contracts which would have paid off not only NBK, but left the Plaintiff with a great deal of value.  **NBK, rather than facilitate this sale, issued a formal notice of default to the Plaintiff and its intent to accelerate the loan on June 29, 2021**, while the SIBS International deal was in progress, killing that deal.

Page **5** of **28**

23.    **The same was true with regard to NBK's interference with the Plaintiff's attempt to lease space in the building to provide revenue so it could operate and make loan payments.**  By August 2021, this situation had become untenable due to NBK's refusal to approve new tenants and new leases, prompting the Plaintiff on August 13, 2021 to send NBK a detailed letter regarding lease-up and renewal prospects for discussions, none of which, it seemed NBK would approve.

- ◆ **Healthcare Service Organization**

  - ▪ •Size: 130,000+ RSF – large client requirement in their preliminary planning stages: •Industry: Healthcare Service Organization •Type of use: Administration Offices •Direct/Sublease •Commencement date: Q3/2023 •Term:5-10 yrs.  They are specifically VERY interested in amenities available, for example: deli, gym, day care, conference center (# of seats), training center (# of seats).

- ◆ **Invesco**

  - ▪ We met with the team twice and are actively pursuing them for 2425.  They are interested in a 157-month lease term for 208,830 SF of Net Rental Area.

- ◆ **Financial Services Firm**

  - ▪ Office •AREA: West Houston (610 West, Hwy 290, Beltway 8) •SPACE: Open Concept •SIZE: Approximately 20,000 – 25,000 rsf •PARKING: 5/1000 ratio •OCCUPANCY: Late 2Q22/Early3Q22 •TERM: 36-60 months with renewal options •This tenant is currently at 24 Greenway on their top floor and have been looking at other A buildings.

- ◆ **Beyond Finance**

  - ▪ We are discussing a 68-month lease term for +/- 40,000 rentable SF.

- ◆ **Banco Affirme**

  - ▪ We submitted a 64-month lease term for 4,545 SF of Net Rental Area.

- ◆ **Walls Bank (existing tenant)**

  - ▪ Renew 3,054 SF of rental space for 60-month term starting January 1, 2022.

- ◆ **Others (working directly with ownership)**

    - ▪ ResMed (https://www.resmed.com/en-us/), interested in the entire building, working directly with Dr. Peter Farrell, Founder and Chairman

    - ▪ Healthstore Holdings (https://www.healthstore.com/), interested in a 15-year term with 80,000 SF in phase 1 and 75,000 SF in 12 months as phase 2.

    - ▪ Immunicom (https://immunicom.com/), interested in at least two full floors, moving HQ from San Diego, CA

24.     Below is an August 16, 2021 email from counsel for the Plaintiff to NBK forwarding multiple leases for approval that **NBK had failed to approve or even respond to.**



25.     This lack of approval, or finding obstacles to approve, was not new.  In September 2019, Related Group had reached out to lease the parking garage located at the 2425 Building to

be used for overflow, for parking up to 110 spaces.  **NBK's authorized representative Michael Carter would not approve this lease** (note "nbkny" email address below– *i.e.* National Bank of Kuwait, New York Branch), which would have generated a great deal of revenue for the Plaintiff.

From: Michael Carter <Michael.Carter@nbkny.com>
Date: Monday, 23 September 2019 at 13:22
To: Azeemeh Zaheer <azeemeh@naissancecapital.co.uk>, Lisa Walker
<Lisa.Walker@nbkny.com>
Subject: RE: LOI

My primary concern is that the tenant determines when the commencement date is, presumably because they have zoning and building department approvals to complete as well as financing to arrange, which is understandable, however there does not appear to be an outside expiration date for the Commencement date. It appears they could tie up the space permanently without having to pay rent. I think you should have an outside date for Commencement.

26.    The situation became so untenable that in September 2021, Plaintiff initiated a lawsuit against NBK.

27.    In good faith, even during the pendency of this litigation, the Plaintiff was still trying to get tenants into the building and get NBK's approval to do so, so it would not claim additional breaches of loan agreements.  **On July 2, 2022, the Plaintiff sent NBK five leases for approval, which NBK did not approve.**

28.    *The parties litigated for eleven (11) months until August 22, 2022, when they entered into a Confidential Settlement Agreement.*  The entire Confidential Settlement Agreement will be submitted to the Court *in camera* at the appropriate time, and the Plaintiff should be allowed to use it in this Adversary since the breach of that Settlement Agreement by NBK is not only actionable, but was also devastating to Plaintiff.  Because NBK has a way of interpreting any action of the Plaintiff as one to breach or avoid some purported contractual obligation or other, when the

reverse is entirely true, the Confidential Settlement Agreement has not been attached.  **NBK has prevented Plaintiff's successful performance under any and all agreements it has with NBK, including the Confidential Settlement Agreement.**

29.    The Confidential Settlement Agreement permitted a timeframe in which Plaintiff could sell the 2425 Building, and Plaintiff was successful in receiving a hard Letter of Intent dated January 17, 2023 to purchase the building from Caldwell Soames.  Again, while these negotiations were ongoing, **NBK took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure on March 29, 2023 in breach of the Confidential Settlement Agreement, which Plaintiff believes was done intentionally to prevent the sale.**  The sale would have cleared the Bank of Kuwait debt as it stood at that time and left great value for the other Plaintiff.  Plaintiff believes that Bank of Kuwait recognized that greater value and wanted to take it for itself by foreclosure in a "loan to own" gambit.

30.    There are tremendous factual inaccuracies that NBK represents to state and federal courts and they continue into these proceedings.  For example, in its Motion to Dismiss the Plaintiff's Bankruptcy, while it is absolutely true that temporary restraining orders were filed to attempt to prevent a foreclosure by NBK and its takeover of the 2425 Building, they were also **granted by this Court.  The facts presented that NBK had not allowed the Plaintiff to lease up the building to generate revenue, and had killed two transactions that Plaintiff was working on that would have cleared NBK and left value for the Plaintiff.**

31.    Additionally, NBK posted for foreclosure in 2023 early, and against an extended grace period that this Court had given Plaintiff, which silenced the bidding process and interest in the 2425 Building completely.  No one wants to buy a building posted for foreclosure.  **Plaintiff believes that NBK knew this and did it on purpose to prevent the Plaintiff from successfully**

**selling the property and paying off the loan, so NBK could foreclose and become the owner of the 2425 Building.**

32.     Not the least of the misstatements that NBK makes about the Plaintiff are those hard statements that the Plaintiff has not made any payments to NBK since March 6, 2021.  This is stated both in paragraph 13 of NBK's Motion to Dismiss Plaintiff's Bankruptcy, and in NBK's Mr. Carter's Declaration (paragraph 8 of Declaration of Michael Carter).

33.     The absolute opposite is true.  Representatives of NBK have admitted in writing that the following substantial payments have been made to NBK well after March 6, 2021:

a)      $801,509.42 paid by Plaintiff to NBK on August 27, 2022;

b)      $80,000 paid by Plaintiff to NBK on April 18, 2023;

c)      $80,000 paid by Plaintiff to NBK on May 10, 2023.

This is almost One Million Dollars ($1,000,000) that not only does NBK not give credit to the Plaintiff for having made the payments, but again, it vilifies it, saying exactly the opposite that no payments (zero) have been made since March 6, 2021.

34.     After NBK's disclosures of the situation created by the Confidential Settlement and the wrongful posting for foreclosure during an extension of that agreement, potential buyers of the property who would otherwise become good prospects to negotiate a sale with Plaintiff, became potential purchasers of the NBK Note and began negotiating with NBK.  NBK interfered with these potential purchases and with these business relationships.  At least the following were interfered with in this fashion:

a)      Globix Investment,

b)      Ironwood Commercial Realty,

c)      Shah Firm, LLC, and

d)      Jeb Brown Law.

**B.      Azeemeh Zaheer Decides She Wants the Building.**

35.     On June 26, 2023, Zaheer, filed a lawsuit in the name of Naissance Galleria, LLC ("*Naissance*"), which she purported to control, in the 157th Judicial District Court in Harris County, Texas referenced by case number 2023-39006 against Brad Parker ("*Parker*") as an initial step in Zaheer's pursuit of a hostile takeover of the 2425 Building.

36.     On July 5, 2023, Zaheer, acting in the name of Naissance, filed a second lawsuit in the 129th Judicial District Court in Harris County, Texas referenced by case number 2023-41091 against Parker and NBK, to further the defendants' hostile takeover attempt of the 2425 Building. Zaheer sought injunctive relief, but that request for an emergency temporary restraining order was denied.

37.     On or about July 5, 2023, Plaintiff commenced a Chapter 11 bankruptcy proceeding in the Southern District of Texas, referenced by case number 23-60036.  NBK sought to dismiss the bankruptcy proceeding, but its motion to dismiss was denied on September 26, 2023.  The Chapter 11 Plan should have been approved and would have substantially reduced the value of Bank of Kuwait's secured debt, which Bank of Kuwait decided it would not allow, just as it had decided not to allow the prior sales of the building that had been lined up by Plaintiff.

**C.      Azeemeh Zaheer is a False Representative of Naissance.**

38.     Azeemeh Zaheer at one time had a business and personal relationship with Ali Choudhri, both of which appeared to have ended mutually for a time.  Azeemeh Zaheer filed an Application for Temporary Injunction in the 80th Judicial District Court for Harris County against

Naissance Galleria, LLC, which was a mezzanine lender to an LLC ("***LLC***") two steps up in the building's ownership chain.

39.     Azeemeh Zaheer had signed, as the authorized representative of the Managing Member of Naissance Galleria, LLC an Assignment of the management rights of that LLC to Ali Choudhri.  In response, Mr. Choudhri stepped into Naissance's shoes, covered its expenses, and did a miraculous job of negotiating the aforementioned settlement with Bank of Kuwait after the Assignment.  Azeemeh Zaheer made this assignment for a number of reasons, but most of them stemmed from her ineffective management of the building and her fear of exposure to Bank of Kuwait and certain individuals affiliated with the Bank of Kuwait because of her poor performance.

40.     After Mr. Choudhri received the Assignment and had negotiated the successful settlement with Bank of Kuwait and the building looked as if it might succeed (a period of years), Azeemeh Zaheer decided she wanted to misappropriate the value that Mr. Choudhri had just preserved and to an extent had just created.  First, she claimed the Assignment was invalid and sought and received a Temporary Injunction on September 21, 2023 from the 80th Judicial District Court in Harris County.  This Temporary Injunction basically only created a stalemate with respect to the management of Naissance Galleria, LLC to preserve the status quo until a trial in January.  Mr. Choudhri is still the manager of Naissance Galleria, LLC, not Azeemeh Zaheer, although she did have some approval rights under the injunction.  Mr. Choudhri, as the manger of Naissance Galleria LLC and is only required to obtain approval from Zaheer for his actions.  Zaheer DOES NOT have any control of the entity.  Moreover, this was confirmed at a hearing on November 13, 2023 before Judge Manor in the 80th Judicial District Court.

Page **12** of 28

**D.     Azeemeh Decides to Conspire with Bank of Kuwait So It Could Foreclose On the Building.**

41.     After the September 21, 2023 entry of the Temporary Injunction, some ironic, if not strange, events start taking place with respect to Ms. Zaheer and the Plaintiff.  First, it is against Azeemeh Zaheer and Naissance's financial interests if the Bank of Kuwait forecloses.

42.     Second, on information and belief, Zaheer caused a copy of the Temporary Injunction Entered on September 21, 2023 by the 80th Judicial District Court in Harris County to be sent to counsel for the Bank of Kuwait, who used it to interfere with the Plaintiff's ability to confirm a chapter 11 plan.

43.     Third, Zaheer's directed her counsel to appear without any forewarning at the October 12, 2023 status conference in the Bankruptcy Court about the plan, claiming Azeemeh Zaheer now is the manager of Naissance Galleria, LLC and they have been hired by her to represent Naissance Galleria, LLC, all by virtue of the Temporary Injunction.

```
6          MR. DRINNON:  Okay.  I represent Mr. Abdullatif in
7     other cases but not this one.  I tend to get hired because I
8     have sued Mr. Choudhri successfully in numerous
9     jurisdictions and cases . . . .
```

**E.    Zaheer Changes Sides to Make a Deal with the Bank of Kuwait and Extort Money from Mr. Choudhri.**

44.    Progressively, Azeemeh Zaheer's behavior becomes more inexplicable as she: (1) takes the position that the Temporary Injunction put her in charge of Naissance (it did not);[1] (2) that Naissance Galleria, LLC could or had already become the owner of the Debtor building (2425 Galleria Owner, LLC, Plaintiff herein) and as the new owner, they might want to take the bankruptcy in another direction.

45.    <u>The only explanation for Zaheer's extraordinary behavior, which appears self-destructive, is Zaheer sees the opportunity to make a deal with the Bank of Kuwait or extort Mr. Choudhri, who will lose millions of dollars of equity in the building if a foreclosure takes place</u>.

46.    This created an environment of confusion for the Bankruptcy Court, which was by Defendants' design, and it was a concerted effort by the Defendants to have the bankruptcy case dismissed, allowing the Bank of Kuwait to foreclose.  Defendant NBK would not be impeded by the bankruptcy and Zaheer could tell Mr. Choudhri: "I will not go along with your reorganization plan unless you pay me millions of dollars" while making a deal with the Bank of Kuwait to block the Plan of Reorganization in the event no payment was received from Mr. Choudhri.

47.    The Defendants are working in concert, to achieve the same end.  Specifically, the Defendants have devised, and intended to devise, a scheme or artifice to seize the 2425 Building

---

[1] At a hearing had in the issuing court (the 80th Judicial District Court) on Monday, November 13, 2023, the Court confirmed her Temporary Injunction Order had not turned control of Naissance over to Zaheer and Zaheer had no authority to authorize attorneys to make the filing and take the action they had on behalf of Naissance Galleria, LLC in the Bankruptcy.

by any means necessary.  Defendants will stop at nothing to see the Plaintiff lose possession of the 2425 Building, and upon information and belief, the driving force behind their efforts is Osama Abdullatif ("***Abdullatif***").

48.     Defendants' scheme has involved false representations of material information, including but not limited to misrepresentations concerning the Plaintiff and the purpose and effects of the Temporary Injunction.

**F.     False Representations by Zaheer's Agents are Successful in Getting Plaintiff's Bankruptcy Dismissed.**

49.     The Bankruptcy Court scheduled a Status Conference for the Plaintiff's Bankruptcy Case for November 1, 2023.  Azeemeh's agents, on October 31, 2023, only hours before the Status Conference, filed an Emergency Motion.  This Motion contained many misrepresentations, some of which follow:

a)     Even though Zaheer had no right to or standing necessary to file anything on behalf of  Naissance, and the Temporary Injunction gave Zaheer no such rights, statements were made in their Emergency Motion directly to the contrary, stating Azeemeh Zaheer was in, Choudhri was out.

b)     The filing stated flatly at one point that the Assignment had been found to be forged – it had not.

c)     The filing stated that, because of the Temporary Injunction, Naissance was now controlled exclusively by Zaheer, who could make Naissance become the Owner of the Bankrupt.  (The issuing court on Monday, November 13, 2023, ruled from the bench it said no such thing.)

These misrepresentations had the desired effect, and the Bankruptcy Court dismissed the Bankruptcy, green-lighting the Bank of Kuwait to foreclose.

**G.     Abdullatif is Choudhri's Competitor and Wants to Ruin Him.**

50.     Choudhri has been in the real estate investment and management business for the last 20 years.  The regular course of Choudhri's business involves numerous aspects of real estate

Page **15** of 28

development.  These activities include real estate and business acquisitions and dispositions, seeking and obtaining financing, and developing and managing commercial and residential properties.  He regularly raises capital for these activities through the issuance of equity and/or debt.  It is also within his normal course of business to enter into transactions with borrowers, lenders, and investors to support the purchase, development, and operations of real estate properties.

51.     Choudhri at times conducts his real estate investment and management business through the use of special purpose entities, such as Plaintiff Galleria Owner 2425, LLC.  Choudhri runs a management company, Jetall ("***Jetall***"), to provide employees and management services to entities for purposes of operating real estate investments.

52.     Abdullatif has provided financing for numerous third-party claims against Choudhri, including interfering with Choudhri's final divorce proceedings in both Pakistan Supreme Court and Harris County District Court by soliciting Choudhri's ex-wife for her legal claims against Choudhri and/or his entities and to gain access to Choudhri's protected financial disclosures.  Abdullatif has filed several dozen Lis Pendens against Choudhri and his properties, and has sponsored litigation against Choudhri in several dozen cases.

53.     Upon information and belief, Abdullatif is also financing the litigation expenses of Zaheer against Choudhri in the dispute over the building owned by Plaintiff.  Zaheer have all agreed to the enterprise course of action aimed at destroying Choudhri's business, and either taking possession of the 2425 Building or extorting money from him to agree to a plan of reorganization.

54.     On more than one occasion, Abdullatif resorted to violence and threats against Choudhri and/or his family, friends, and associates.  Mr. Choudhri had another real estate venture involving an entity called Dalio.  Abdullatif was present at Dalio's foreclosure proceeding, where

Page **16** of 28

a friend accompanying him assaulted one of Choudhri's lawyers. On another occasion, Abdullatif and his associates used firearms to hold Choudhri and his associates hostage.

55.     Abdullatif also formed an association with others in his illegal efforts to destroy Choudhri's business.  These individuals include but are not limited to Chris Wyatt, former paralegal of Jetall ("**Wyatt**").

56.     Wyatt was hired by Jetall in 2019.  In the course of his employment, Wyatt oversaw legal and litigation matters for Jetall.  He was provided confidential information concerning Jetall's and its client's real estate transactions, finances and debt leverage on properties, and litigation management strategies.  As a Jetall representative, Wyatt was regularly involved in and provided access to privileged information and communications, including information subject to attorney-client and work product privileges.  Wyatt signed a non-disclosure agreement at the beginning of his employment prohibiting him from disclosing confidential information and requiring him to return all files upon his termination.

57.     Wyatt's employment at Jetall ended in December 2020.  When he left Jetall, Wyatt stole corporate files including electronic communications and secretly recorded privileged phone communications between Choudhri and his attorneys.

58.     Jetall obtained a restraining order in January 2021 enjoining Wyatt from disclosing or divulging confidential information obtained through his course of employment with Jetall.

59.     Abdullatif met with Wyatt before, during and after Wyatt's departure from Jetall. Abdullatif, directly and through his lawyers, received confidential and privileged information from Wyatt.  This information included but is not limited to illegal recordings of Choudhri's conversations with attorneys.

60.     Upon information and belief, Abdullatif and his lawyers were aware that Wyatt was a former employee of Jetall who was involved in confidential and privileged communications and that a restraining order was entered enjoining Wyatt from disclosing confidential information.

61.     Abdullatif and his agents have used the illegally obtained information and recordings as part of Abdullatif's scheme to destroy Choudhri's business.  Abdullatif retained Wayne Dolcefino ("**Dolcefino**") as a "consultant" to publish on the internet a series of hit pieces on Choudhri.  Dolcefino advertises that his services included "litigation support," and Abdullatif has utilized Dolcefino in the course of his numerous lawsuits asserted against Choudhri and his businesses.

62.     Information illegally obtained from Wyatt is included in many of Dolcefino's hit pieces.  Dolcefino continues to publish these hit pieces on the internet, including videos posted in May 2023.

63.     Abdullatif has made several false claims against his competitor, Choudhri, in many ways, two of the most egregious being:

a)     Hiring Dolcefino to create video "hit pieces" about Choudhri, his business, his marital status, and inappropriate character based upon his actions during that marital status. This video contained "over the top" falsehoods, e.g. that he was still married and had been for years. It was commercial speech designed to designate a competitor (Choudhri) and give Abdullatif a competitive advantage, and was introduced into interstate commerce by release to major television (broadcast and cable) networks and by placing on the internet where it still resides today, making it available to the potential customers and lenders that are competed for; and

b)     Placing multiple improper Lis Pendens on the record title to properties owned by Choudhri or his business entities, which created a double negative effect on Choudhri's ability to conduct business by hampering his ability to find new lenders or renewing existing loans because the security for them was impaired and making it impossible to sell those properties to raise new capital on his own. These Lis Pendens were "over the top" misrepresentations because they were illegal and did not assert valid

interests in the subject properties.  The Lis Pendens were also introduced into interstate commerce because they were filed of record and were available "online" over the internet to any potential customer for commercial real estate in the Houston area.


**V.**
**CAUSES OF ACTION**

**COUNT 1:  BREACHES OF CONFIDENTIAL SETTLEMENT AGREEMENT**

64.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

65.     Plaintiff and Defendant reached a valid and enforceable agreement expressly set forth in the Confidential Settlement Agreement.  Pursuant to the Confidential Settlement Agreement, Defendant agreed to keep the contents and terms of the parties' agreement completely confidential.  Plaintiff dismissed its very good claims in the Lawsuit against Defendant in reliance upon Defendant's promise to uphold the confidentiality obligations set forth in the Confidential Settlement Agreement.

66.     Defendant breached the Confidential Settlement Agreement by disclosing its contents and terms to third parties in violation of the agreement's express confidentiality provisions.  These disclosures prevented Plaintiff from closing on the sale of the 2425 Building and chilled the market for other buyers for Plaintiff's property.  The same is true for NBK's wrongful, early filing of a notice of foreclosure on the 2425 Building, also in violation of the Confidential Settlement Agreement.

67.     Plaintiff hereby sues NBK for these breaches of the Confidential Settlement Agreement.  The damages for these breaches are the amounts of money that the Plaintiff would

have made from the contemplated transaction, which is in excess of Fifty Million Dollars ($50,000,000).

COUNT 2:  <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>

68.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

69.     As alleged, NBK tortiously interfered with the SIBS International contract and the Caldwell Soames Inc. contract, causing damages to the Plaintiff in the net amounts of the contracts which, but for NBK's interference, would have been paid to the Plaintiff.  These damages are in excess of Fifty Million Dollars ($50,000,000), for which the Plaintiff hereby sues NBK.

70.     Zaheer have tortiously interfered with Plaintiff's contract with NBK, and with Plaintiff's bankruptcy proceeding.   The damages are in excess of Fifty Million Dollars ($50,000,000), for which the Plaintiff hereby sues the Defendants.

COUNT 3:  <u>TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS</u>

71.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

72.     After NBK's disclosures of the situation created by the confidential settlement and the wrongful posting for foreclosure during a judicial extension of the grace period contained in that agreement, potential buyers of the property who would otherwise have become good prospects to negotiate a sale with Plaintiff, became instead potential purchasers from NBK of the NBK note and began contacting and negotiating or attempting to negotiate with NBK instead of the Plaintiff. NBK interfered with these potential purchasers and with these potential business relationships.  At least the following were interfered with in this fashion:

a)      Globix Investment,

b)    Ironwood Commercial Realty,
c)    Shah Firm, LLC, and
d)    Jeb Brown Law.

73.    Zaheer have interfered with the Plaintiff's relationship with NBK and/or entered into a relationship with Zaheer and their antics caused the dismissal of Plaintiff's Chapter 11 bankruptcy proceeding, that was otherwise on the road to confirming a Chapter 11 plan of reorganization that would have saved the Plaintiff millions of dollars.

74.    This interference by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

**COUNT 4:**  <u>**FRAUD AND FRAUDULENT INDUCEMENT/LENDER LIABILITY**</u>

75.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

76.    NBK never had any intention of living up to the Confidential Settlement Agreement.  The Plaintiff was winning the lawsuit against NBK, so NBK induced the Plaintiff into dismissing its lawsuit and entering into the Confidential Settlement Agreement which NBK had no intention of living up to.  This fraud works an estoppel against NBK (see Count 6, "ESTOPPEL").  Plaintiff hereby sues NBK for fraud and fraudulent inducement and alleges it constitutes the basis for an action for Lender Liability.

77.    NBK knew at the time it entered into the Confidential Settlement Agreement it would deflect and tortiously interfere with the Plaintiff's attempts to sell the 2425 Building so NBK would be able to foreclose on the building and take all of the value instead of just the value of the amounts otherwise owed at the time.  The fraud, fraud in the inducement, lender liability, and subsequent interference for all of which Plaintiff hereby sues NBK.  These actions by NBK have damaged the Plaintiff in an amount of at least Thirty Million Dollars ($30,000,000).

## COUNT 5:  FRAUDULENT CONVEYANCE

78.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

79.     The funds paid by the Plaintiff to NBK:

a)      $801,509.42 paid Plaintiff to NBK on August 27, 2022;

b)      $80,000 paid by Plaintiff to NBK on April 18, 2023; and

c)      $80,000 paid by Plaintiff to NBK on May 10, 2023

were fraudulently induced by NBK and were payments for which the Plaintiff received nothing in return and constitute fraudulent conveyances in violation of U.S.C. § 544, 548, and 550 and TEX. BUS. & COMM. CODE §§ 24.001, *et seq.*, for which the Plaintiff hereby sues NBK to recover all such amounts.

## COUNT 6:  ESTOPPEL

80.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

81.     NBK is estopped from claiming Plaintiff owes any more than the amount stated and agreed to in the Confidential Settlement Agreement because of its fraud and fraudulent inducement alleged previously.

## COUNT 7:  BUSINESS DISPARAGEMENT

82.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

83.     The posting of the 2425 Building during any negotiation periods and/or the extended grace period when actual buyers were moving toward concluding a deal and when other

potential buyers were expressing interest in the 2425 Building, constituted business disparagement against the Plaintiff for which Plaintiff hereby sues NBK.

84.     The efforts of Zaheer to make false accusations and representations about the Plaintiff's ownership interests, management, and decision making abilities constituted business disparagement against the Plaintiff for which the Plaintiff hereby sues Zaheer.

85.     The business disparagement by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

## COUNT 8:  BREACH OF GOOD FAITH AND FAIR DEALING

86.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

87.     Every contract has a duty of good faith and fair dealing engrafted upon it, especially in a lender/borrower relationship, and even more so when the lender is based in the State of New York as NBK is.

88.     NBK breached its duty of good faith and fair dealing by:

a)      Inducing Plaintiff to dismiss their State Court lawsuit;

b)      Inducing Plaintiff to enter into the Confidential Settlement Agreement;

c)      Tortiously interfering with Plaintiff's performance under the Confidential Settlement Agreement;

d)      Tortiously interfering with third-party contracts;

e)      Not approving tenant leases or contracts for sale; and

f)      deflecting buyers so Plaintiff could not sell the 2425 Building.

89.     Plaintiff hereby sues NBK for breach of duty of good faith and fair dealing.  The damages are for the value of the amounts that would have been recovered in the state court litigation and/or the value of the deals lost for leases and/or sales of the 2425 Building.

<strong>COUNT 9:  <u>UNJUST ENRICHMENT</u></strong>

90.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

91.     If NBK is allowed to foreclose on the 2425 Building it will make an unconscionable profit and succeed in its "loan to own" gambit.  The amount of its unjust enrichment for which Plaintiff hereby sues NBK is the difference between what NBK would have been owed (but for its breaches of the Confidential Settlement Agreement) under the Confidential Settlement Agreement and the true value of the building, for which Plaintiff hereby sue NBK.

<strong>COUNT 10:  <u>CONSPIRACY</u></strong>

92.     Defendants agreed to work in concert with each other in order to interfere with Plaintiff's bankruptcy case, and to have it dismissed by making fraudulently claiming they had control over Naissance Galleria, LLC.

93.     Defendants acted with the intent to harm plaintiff.

94.     To accomplish the object of their agreement Defendants intentionally or negligently mischaracterized the effect of the state court temporary injunction, in order to confuse and disrupt Plaintiff's bankruptcy case, which resulted in dismissal.

95.     The agreement to engage in this conduct proximately caused injury to plaintiff. Plaintiff's sole asset, instead of being protected through its bankruptcy action, has now been posted for foreclosure on December 5th, 2023, which will irreparably harm Plaintiff, and Naissance Galleria, LLC.

## COUNT 11:  ATTORNEYS' FEES

96.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

97.     Plaintiff hereby sue Defendants for their reasonable and necessary attorneys' fees under breach of contract and under any statutory or common law right to recover same.

## VI.
## APPLICATION FOR TEMPORARY INJUNCTION OR ORDER

98.     The Defendants have conspired with each other and others, or worked in parallel courses to get the bankruptcy of Plaintiff 2425 Galleria Owner, LLC dismissed so that Bank of Kuwait is not prohibited by the automatic stay from foreclosing.  If a foreclosure takes place, the equity of Plaintiff will be wiped out and Plaintiff will have no assets and no adequate remedy at law to return the retrieve the assets or its value.

99.     Temporary injunctive relief is necessary until such time as the merits of this case can be decided and the status quo is maintained pending resolution on the merits.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

100.     Plaintiff's application for a temporary restraining order is authorized by Tex. Civ. Prac. & Rem. Code §65.011(1) which allows applicants to the relief sought to restrain the Defendants from prejudicial acts; by Tex. Civ. Prac. & Rem. Code §65.011(3) which allows applicants to the relief sought under the principles of equity and laws of Texas related to injunctions; by Tex. Civ. Prac. & Rem. Code § 65.011(5) which allows applicants to the relief sought when irreparable injury to business, good will, reputation and personal property is threatened; and by Tex. Bus. Orgs. Code § 152.211(b), allowing partners in a partnership to obtain an injunction to enforce rights under the Texas Business Organizations Code.

101.     As set forth above, an emergency hearing on Plaintiff's Application for Temporary Restraining Order is necessary to conserve the Plaintiff's business status and maintain the status quo during the pendency of this lawsuit. Plaintiff would suffer material injury by the delay necessary to give notice. Any delay necessary for notice would lead to imminent and irreparable injury to property.

102.     It is probable that Plaintiff will recover from Defendants after a trial on the merits because the facts set forth are verified and sets forth the Defendants wrongful conduct; and actions including seeking the sale of the business by the Defendants are wrongful and must be stopped.

103.     If Plaintiff's application is not granted, harm is imminent because 1) Plaintiff's sole asset will be foreclosed as a result of defendants harmful actions on December 5th, 2023; 2) Defendants will continue to conspire with each other in a manner that is counter to the true interests of Naissance Galleria, LLC; and 3) Defendants will continue to violate the Temporary Injunction, as they have already done on at least three occasions, in order to interfere with Plaintiff's lawful attempts to preserve the 2425 Building. These harms are imminent and would cause irreparable injury with no other adequate legal remedy.

104.     The harm that will result if the temporary restraining order is not issued is irreparable because Plaintiff owns a unique piece of real estate which it will be deprived of in the event of foreclosure. Texas Courts repeatedly rule that "every piece of **real estate** is innately [**8] unique. *See, e.g., Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.--Houston [14th [*58] Dist.] 1982, no writ) ("It is well established law that each and every piece of **real estate** is unique. Therefore, if appellants were allowed to foreclose appellees would be irreparably harmed, since **real estate** is so unique."); *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex. App.--Corpus Christi 1987, no writ) ("Every piece of **real estate** is unique,

and if foreclosure were allowed before a full determination of the usury claim, appellee would be irreparably harmed."). *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 57-58 (Tex. App.—San Antonio 2010, no pet.).

## VII. JURY DEMAND

105. Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII. PRAYER

106. For the reasons set forth above, Plaintiff asks that the Court enter a Temporary Restraining Order, and after a hearing, a Temporary Injunction, enjoining the Defendants in the following manners:

a) NBK is restrained from 1) Foreclosing on, posting, reposting, or otherwise selling at auction the 2425 Building; and 2) transferring any Note and/or lien it holds or may hold relating to the 2425 Building;

b) Actual damages including economic injuries & consequential damages;

c) Attorney's fees;

d) Exemplary damages;

e) Prejudgment and post judgment interest;

f) Court costs; and

g) All other relief to which Plaintiff is entitled under both law and equity.

107. Plaintiff is willing to post bond.

Unofficial Copy Office of Marilyn Burgess District Clerk

Respectfully submitted,

The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
Ph: 713-449-4481
Fx: 281-657-9693
jamesp@thepopelawfirm.com

By: /s/ James Q. Pope
     James Q. Pope
     TBN: 24048738
     Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on November 16th, 2023, a copy of the foregoing was served on the National Bank of Kuwait S A K P – New York by electronic service using the court's electronic noticing system.

By: /s/ James Q. Pope
     James Q. Pope

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 81738106
Filing Code Description: Amended Filing
Filing Description: Plaintiff Second Amended Petition and Emergency Application for Temporary Restraining Order
Status as of 11/17/2023 7:59 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/16/2023 5:08:05 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/16/2023 5:08:05 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/16/2023 5:08:05 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/16/2023 5:08:05 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/16/2023 5:08:05 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/16/2023 5:08:05 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/16/2023 5:08:05 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/16/2023 5:08:05 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/16/2023 5:08:05 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/16/2023 5:08:05 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/16/2023 5:08:05 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/16/2023 5:08:05 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/16/2023 5:08:05 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/17/2023 3:17 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81774234
By: Patricia Gonzalez
Filed: 11/17/2023 3:17 PM

### CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **v.** | § | |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., - NEW YORK BRANCH** | § | **281ST JUDICIAL DISTRICT** |
| *Defendant.* | § | |

<u>**NOTICE OF RESET INJUNCTION HEARING**</u>

PLEASE TAKE NOTICE that the injunction hearing on Plaintiff's Application seeking

injunctive relief will be held in person, and has been reset to the following date, time, and location:

**COURTROOM**:    281st Judicial District Court
                       201 Caroline St., 14th Floor
                       Houston, Texas 77002

**DATE:**            Wednesday, November 22, 2023
**TIME:**            2:30 P.M.

Respectfully Submitted,

/s/ James Q. Pope
James Q. Pope
THE POPE LAW FIRM
TBN: 24048738
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
Phone: 713-449-4481
Fax: 281-657-9693
jamesp@thepopelawfirm.com
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served on November 17, 2023 to interested parties by electronic delivery.

/s/James Q. Pope
James Q. Pope

Unofficial Copy Office of Marilyn Burgess District Clerk

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 81774234
Filing Code Description: Notice
Filing Description: Notice of Reset Hearing
Status as of 11/17/2023 4:12 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/17/2023 3:17:42 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/17/2023 3:17:42 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/17/2023 3:17:42 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/17/2023 3:17:42 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/17/2023 3:17:42 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/17/2023 3:17:42 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/17/2023 3:17:42 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/17/2023 3:17:42 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/17/2023 3:17:42 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/17/2023 3:17:42 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/17/2023 3:17:42 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/17/2023 3:17:42 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/17/2023 3:17:42 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/19/2023 2:20 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81792424
By: Bonnie Lugo
Filed: 11/20/2023 12:00 AM

CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | HARRIS COUNTY, TEXAS |
| S.A.K.P., NEW YORK BRANCH, et al. | § | |
| | § | |
| *Defendants.* | § | 281st JUDICIAL DISTRICT |

**DEFENDANT RODNEY DRINNON'S EMERGENCY MOTION
TO CONDUCT THE DEPOSITIONS OF THE CORPORATE
REPRESENTATIVE OF GALLERIA 2425 OWNER, LLC
AND ALI CHOUDHRI PURSUANT TO CPRC § 27.006(B)**

NOW COMES Defendant, Rodney Drinnon ("**Drinnon**"), and file this Emergency Motion

Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC

("**Galleria 2425**") and Ali Choudhri ("**Choudhri**") Pursuant to Tex. Civ. Prac. & Rem. Code

("**CPRC**") § 27.006(b), and respectfully show as follows:

## I.    SUMMARY OF MOTION

1.    Choudhri likes to sue opposing parties' lawyers.  Apparently, he believes that he

can intimidate the judiciary, the bar and opposing parties with the specter of tying them up in

litigation for years. Drinnon would know. Since filing his first lawsuit against Choudhri in *Star*

*Elec., Inc. v. Northpark Off. Tower, LP*[1] in 2010, he has successfully represented a number of

parties who have been swindled by the "Nate Paull" of Houston.[2]  But Choudhri should know

better.  A little less than three (3) years ago, he was required to pay $184,128.90 to two (2) lawyers

Choudhri sued based upon the representation of their clients against him in violation.[3]  Undeterred,

---

[1] *Star Elec., Inc. v. Northpark Off. Tower, LP*, No. 01-17-00364-CV, 2020 WL 3969588 (Tex. App. July 14, 2020).
[2] *See e.g. W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461 (Tex. App. 2022), *reh'g denied* (May 19, 2022), *review denied* (Sept. 23, 2022).
[3] *Jetall Companies, Inc. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778 (Tex. App. Nov. 3, 2020).

Choudhri has returned to his "old" ways and sued Drinnon for $50,000,000 for representing his former partner, Azeemah Zaheer ("**Zaheer**").

2.      Choudhri has grown recently more desperate.  Over the past eighteen (18) months, Drinnon has secured over $10,000,000 dollars in judgments against him personally for his various clients.  One of those cases is similar to the present one where Choudhri was found liable for attempting to defraud Osama Abdullatif ("**Abdullatif**") by attaching a signature page from another promissory note to one in payable to Choudhri.[4]  Consequently, Choudhri is desperate to either disqualify Drinnon, or otherwise intimidate him with the present lawsuit.

3.      So Choudhri sued Drinnon individually and in doing so flirts with the "third rail" of litigation – you don't sue the lawyers representing your opponent for doing their job.  As Choudhri was well aware, the complainant will almost assuredly draw a motion to dismiss filed pursuant to Texas Citizens Participation Act, Tex. Civ. Prac. & Rem. Code § 27.003 ("**TCPA**").  And that is exactly what happened.  Drinnon filed his Motion to Dismiss Pursuant to the Texas Citizens Participation Act ("**Motion to Dismiss**") two (2) days after Choudhri filed Amended Petition & Emergency Application for Temporary Restraining Order ("**Amended Petition**") naming him as a defendant on November 14, 2023.  Drinnon's Motion to Dismiss is set to be heard on December 12, 2023.

4.      The TCPA provides a mechanism to allow movants to complete the depositions of the corporate representative of Galleria 2425, Choudhri and James Pope ("**Pope**") the lawyer who filed the offending Amended Petition. Specifically, CPRC § 27.006(b) permits this Court to allow specified discovery *relevant to the motion*.[5] Considering the Motion to Dismiss attacks the all the

---

[4] *Osama Abdullatif et al. v. Ali Choudhri, et al.*, Case No. 2013-41273, In the District Court of Harris County, Texas 55th Judicial District.
[5] Tex. Civ. Prac. & Rem. Code § 27.006(b).

allegations asserted in Amended Petition, Drinnon is entitled to a complete exploration of the "facts" behind each claim for relief, including those pleaded "upon information and belief." Drinnon requires these depositions on an expedited basis because they need to be completed by the December 12, 2023 hearing. Accordingly, this Court should grant this emergency relief requested and order the depositions of the corporate representative of 2425 Galleria, Choudhri and Pope within the next fourteen (14) days.

## II.    REQUEST FOR EMERGENCY HEARING

5.    Drinnon seeks emergency relief for the following reasons:

- Oral discovery must be completed in such a manner that Drinnon may use the transcripts at the December12, 2023 hearing;

- Choudhri routinely avoids service of process and Drinnon expects it will take some time to serve him with a subpoena to appear at his deposition before December 12, 2023;

- Expedited depositions will prevent Choudhri from manufacturing documents as he has proven to do; and

- Choudhri continues his pattern of litigation misconduct by continuing to bring suit against his opponent's lawyers. He needs to provide the facts allegedly supporting his claims in the Amended Petition.

## III.    FACTUAL BACKGROUND

1.    On or about October 11, 2023, Zaheer and her representatives contacted Drinnon to inquire about his interest in appearing as counsel for Zaheer in the case captioned *Naissance Galleria, LLC v. Azeemah Zaheer*, Case No. 2023-43755, pending in the 80th Judicial District Court of Harris County, Texas ("**State Court Case**"), after the plaintiff, Naissance Galleria, LLC ("**Naissance LLC**"), sought reconsideration of a Motion to Disqualify David Tang ("**Tang**") and Omar Khawaja ("**Khawaja**") as counsel for Zaheer.

2.    Prior to October 11, 2023, Drinnon was not involved in the present disputes between Galleria 2425, Choudhri, Zaheer, Naissance, Naissance Capital Real Estate, LLC and/or Naissance Capital Real Estate, Ltd. Following the requisite conflict check, Drinnon, on the behalf of the law firm McCathern Houston, agreed to appear as co-counsel for Zaheer both in the State Court Case, as well as the case *In re Galleria 2425 Owner, LLC*, Case No. 23-60036 (CML), currently pending in the United States Federal Bankruptcy Court in the Southern District of Texas (the "**Bankruptcy Case**"). In the Bankruptcy Case, Drinnon acted as co-counsel along with Aaron Power ("**Power**"), Tang, and Khawaja.

3.    On October 12, 2023, Drinnon made his *first* appearance in the Bankruptcy Case, specifically to participate in an expedited remote status conference requested by the Hon. Christopher Lopez. Prior to the status conference, Drinnon was not involved in any purported discussions regarding the drafting and filing of the National Bank of Kuwait's ("**NBK**") October 6, 2023 letter requesting a status conference and attaching the Temporary Injunction Order entered in the State Court Case. At all times during the remote status conference, Drinnon acted in his capacity as legal counsel for Zaheer.

4.    On October 31, 2023, with the assistance of bankruptcy counsel, Power, Drinnon filed Naissance Galleria, LLC's Emergency Motion for (I) Order Confirming That The Automatic Stay Does Not Apply, or (II) Alternatively, Granting Relief From Automatic Stay ("**Motion for Relief**"). The Motion for Relief was filed on Naissance LLC's behalf because Zaheer maintains her position that she never relinquished her authority as managing member of Naissance LLC and remains in control of the entity. Importantly, the Motion for Relief did not seek dismissal of the Bankruptcy Case nor the corresponding adversary proceeding purportedly brought by Naissance

4

LLC against NBK. At all times during the drafting and filing of the Motion for Relief, Drinnon acted in his capacity as legal counsel for Zaheer.

5.      Drinnon did not attend the hearing on the Debtor's Motion to Employ Melissa Hayward ("Hayward") of Hayward PLLC. Nor was Drinnon in attendance when Judge Lopez dismissed the Bankruptcy Case and the corresponding adversary proceeding. His Motion for Relief was not on the docket.

6.      On November 3, 2023, Drinnon appeared at a mediation involving Choudhri and his counsel. Drinnon participated in the mediation on Zaheer's behalf. At all times during the mediation, he acted in his capacity as retained legal counsel for Zaheer.

7.      On November 13, 2023, Drinnon appeared in the State Court Case following the receipt of a late-filed notice of hearing purportedly related to Naissance Galleria, LLC's Application Seeking Injunctive Relief. Judge Manor terminated the hearing because plaintiff's counsel failed to properly serve Zaheer. However, during that hearing, Plaintiff's counsel, Pope, presented a threatened Motion to Disqualify Drinnon as Zaheer's counsel, in direct violation of the Temporary Injunction Order entered in the State Court Case. Following the hearing, Hayward threatened to file suit against Drinnon in his individual capacity, despite Drinnon always acting in his capacity as legal counsel for Zaheer for "interfering" in the bankruptcy proceeding.

8.      On November 14, 2023, Pope followed through on Hayward's threat and filed the Amended Petition, joining Drinnon as a party and as a named Defendant, while asserting the four (4) previously identified claims and causes of action against him.

9.      On November 15, 2023, Drinnon obtained a copy of Plaintiff's Amended Petition in this case (the "Second State Court Case"). The Amended Petition was not verified. In reviewing

and responding to the Amended Petition, Drinnon always acted in his capacity as legal counsel for Zaheer and now Drinnon, individually.

10.     On November 15, 2023, Drinnon called Pope to confirm he signed the Amended Petition. Drinnon asked Pope to reconsider adding him as a party to the Second State Court Case, citing the TCPA. Drinnon provided Pope a 10:00 a.m. deadline the following day to further amend the live pleadings and dismiss Drinnon with prejudice as a Defendant in the Second State Court Case or else risk the filing of a TCPA Motion along with a request for sanctions against Plaintiff and its signatory counsel, Pope. In communicating with Pope, Drinnon always acted in his capacity as legal counsel for Zaheer and now Drinnon, individually.

11.     On November 16, 2023, Pope contacted Drinnon by telephone. At 11:15 a.m. CST, Pope confirmed that he would *not* reconsider adding Drinnon as a named Defendant in the Second State Court Case. Pope further stated that "I stand by filing it," in reference to the Amended Petition joining Drinnon as a Defendant. Clearly, Pope was not willing to dismiss Drinnon as a party *with prejudice*.  In communicating with Pope, Drinnon acted in his capacity as legal counsel for Zaheer and himself.

12.     Pope and Galleria 2425 admitted to Drinnon's status as an attorney acting in the scope of discharging his duties in representing his client when they wrote that "Zaheer's attorneys (Mr. Tang and Mr. Drinnon) show up without any forewarning at the October 12, 2023 status conference in the Bankruptcy Court about the plan, claiming Azeemeh Zaheer now is the manager of Naissance Galleria, LLC and they have been hired by her to represent Naissance Galleria, LLC *and they have been hired by her* to represent Naissance LLC, all by virtue of the Temporary Injunction" (emphasis added).[6]

---

[6] Amended Petition at ¶ 47.

13.     Regardless, Drinnon contacted this Court and obtained a hearing date for his Motion to Dismiss of December 12, 2023.  He filed his Notice of Hearing at 2:00 p.m. on November 16, 2023. In communicating with the Court, Drinnon acted in his capacity as legal counsel for Zaheer and himself.

14.     An hour and thirty-five minutes later, Pope emailed Drinnon miraculously reversing course and claimed, "I am amending the petition in this case to remove you both as named defendants."  He did not state, however, that he was dismissing Drinnon *with prejudice*.

15.     Eight (8) minutes later, Drinnon filed his Motion to Dismiss at 3:43 p.m. on November 16, 2023. In filing his Motion to Dismiss, Drinnon acted in his capacity as legal counsel for Zaheer and himself.

16.     At 5:08 p.m. Galleria 2425 filed its Second Amended Petition and Emergency Application for Temporary Restraining Order ("**Second Amended Petition**") purportedly removing Drinnon as a defendant.  The Second Amended Petition did not dismiss Drinnon *with prejudice* consistent with the relief he sought under the TCPA.

17.     At 6:10 p.m. Galleria 2425 filed the Unsworn Declaration of Ali Choudhri ("**Choudhri Declaration**") where he declared under penalty of perjury the accuracy of the facts and events set forth in the Amended Petition, but not the Second Amended Petition.  Choudhri appears to have doubled down on the factual basis of his claims against Drinnon.

18.     Drinnon and McCathern Houston continue to represent Zaheer (and now Drinnon) as their retained legal counsel in this above-captioned lawsuit.

## IV.    ARGUMENTS AND AUTHORITIES

**A.    CPRC § 27.006(b) Permits This Court To Require The Depositions Of The Corporate Representative Of 2425 Galleria, Choudhri and Pope.**

6.     CPRC § 27.006(b) permits this Court to allow the parties to engage in limited discovery regarding the merits of the Motion.[7] Drinnon should be permitted to complete the discovery depositions of the corporate representative of Galleria, 2425, Choudhri and Pope to support his claims that each of them violated the TCPA.  Specifically, Drinnon should be permitted to depose Choudhri who declared under a penalty of perjury the following:

a)    That Drinnon conspired with NBK, Zaheer, and Tang to "create havoc and further disrupted the bankruptcy case;"

b)    That Drinnon acted in direct violation of Judge Manor's temporary injunction by appearing on the behalf of Naissance in the bankruptcy proceeding;

c)    As a result of this conspiracy by the defendants (including Drinnon), the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case;

d)    That Drinnon "worked tirelessly" to get the bankruptcy dismissed;

e)    A "backroom deal" exists between *Zaher, Drinnon, Tang and NBK*;

f)    Drinnon was involved in the filing of the lawsuit on June 26, 2023 on the behalf of Naissance Galleria, LLC;

g)    Choudhri is still the manager of Naissance;

h)    Drinnon's admission that he represents Abdullatif in other matters;

i)    Drinnon is working in concert with NBK, Zaheer and Tang to seize the building located at 2425 West Loop "by any means necessary;"

j)    The driving force behind Drinnon's efforts is Abdullatif;

k)    Drinnon's Motion for Relief contained many "misrepresentations;"

---

[7] Tex. Civ. Prac. & Rem. Code § 27.006(b)

l)  The bankruptcy court dismissed the bankruptcy and corresponding adversary action solely because of Drinnon's Motion for Relief;

m)  Choudhri conducted his real estate business through special purpose entities *such as Galleria 2425*;

n)  Choudhri runs Jetall Companies, Inc. to provide management services to entities for the purpose of running real estate investments;

o)  Abdullatif has sponsored litigation against Choudhri in several dozen cases;

p)  Abdullatif is financing the litigation expenses of Zaheer in the takeover of 2425 Galleria;

q)  Drinnon has entered into an enterprise course of action to destroy Choudhri's businesses;

r)  Drinnon is aiming to take possession of the building located at 2425 West Loop;

s)  Drinnon wants to extort money from Choudhri;

t)  Abdullatif and his associates used firearms to hold Choudhri and his associates hostage;

u)  Abdullatif retained Wayne Dolcefino to publish on the internet a number of hit pieces on Choudhri;

v)  Abdullatif with the assistance of Drinnon has made several false claims against Choudhri

w)  Drinnon tortiously interfered with a contract with NBK causing damages of $50,000,000;

x)  Drinnon made false accusations about Galleria 2425 ownership interests, management and decision making abilities; and

y)  Drinnon has conspired to interfere with Galleria 2425's bankruptcy case,

7.  Clearly, Drinnon should be permitted to ask detailed questions of the deponents regarding the entirety of the allegations contained in the Amended Petition. This Court should place no restrictions upon the topics that deponents should be required to testify to as long as they relate to the allegations contained in the Amended Petition.

8.     **Drinnon willing to bear the risk of completing an early deposition of the corporate representative of Galleria 2425 and Choudhri.** Choudhri should be thrilled to give an early deposition in the present case. Were Drinnon's counsel to receive documents in discovery after their depositions, then they would only be able to re-depose him after receiving leave of Court. This should be a significant reason to submit themselves for deposition now rather than later.

9.     The depositions of Galleria 2425, Choudhri and Pope are necessary for Drinnon to demonstrate that the Amended Petition filed against him was done in "bad faith" and with no factual support.  Moreover, he must be permitted to gather information that could be used to rebut Galleria 2425's shifted burden of clear and convincing evidence of Drinnon's alleged wrongdoing. Further, Choudhri must be dissuaded from the use of these intimidation tactics.  The requested discovery will go a long way in doing so.

**B.     Choudhri's Filing Of A Second Amended Petition Does Not Affect Drinnon's Right To Pursue His TCPA Motion**

10.     Galleria 2425, Choudhri and Pope will likely argue that Galleria 2425's Second Amended Petition removing Drinnon as a party to the suit *after* he filed his Motion to Dismiss renders the present Motion moot.  Nothing could be farther from the truth.

11.     Texas law is settled, a motion to dismiss filed pursuant to the TCPA survives the nonsuit of the offending parties' claims.[8]  Drinnon seeks a dismissal with prejudice, his attorney's fees and sanctions for Galleria 2425's attempt to intimidate him pursuant to the TCPA.  Galleria 2425's attempt to non-suit him without prejudice has *no effect* on Drinnon's Motion to Dismiss.

---

[8] *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 752 (Tex. App. [1st Dist.] 2019). *see also The Iola Barker v. Hurst*, No. 01-17-00838-CV, 2018 WL 3059795, at *5 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.) (holding that TCPA motion to dismiss, seeking dismissal with prejudice and attorney's fees, costs, and sanctions, constituted "pending claim for affirmative relief" within meaning of Rule 162); *Walker v. Hartman*, 516 S.W.3d 71, 80 (Tex. App.—Beaumont 2017, pet. denied) (recognizing that TCPA motion to dismiss survives nonsuit).

You can't file suit against an attorney for simply doing his job and when called on the carpet say "oops, my bad."

## CONCLUSION

12.    How long is the District Court going to let Choudhri get away with harassing the attorneys who represent the parties opposite him? Particularly those lawyers who have found success against him.  Now is the time. The Court should order the requested depositions to allow Drinnon to demonstrate just how baseless Galleria 2425's claims are against him, and just how far Choudhri would stoop to stop Drinnon from doing his job.

## PRAYER

Based on the foregoing, Rodney Drinnon respectfully asks this Court to grant his Emergency Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri, as follows:

a.    A corporate representative of Galleria 2425 Owner, LLC who has personal knowledge of the facts supporting the allegations contained in the Amended Petition or has obtained knowledge of the fact supporting the contained in the Amended Petition must appear for his deposition in the offices of McCathern Houston within fourteen (14) days and sit until it is complete pursuant to the TRCP;

b.    Three (3) days prior to the scheduled deposition, Galleria 2425 Owner, LLC shall identify via email to Drinnon the identity or identities of its corporate representative(s);

c.    Ali Choudhri must comprehensively appear for his deposition in the offices of McCathern Houston within seven (14) days and sit until it is complete pursuant to the TRCP;

d.    James Pope must comprehensively appear for his deposition if requested by Drinnon in the offices of McCathern Houston within seven (14) days and sit until it is complete pursuant to the TRCP;

11

e.     The scope of the depositions shall be limited to <u>all</u> of the facts supporting the allegations contained in the Amended Petition; and

f.     Drinnon be awarded all other relief, at law or in equity, to which he is entitled;

Respectfully Submitted,

McCATHERN HOUSTON

By: */s/ Rodney Drinnon*
**Rodney L. Drinnon**
Texas Bar No. 24047841
rdrinnon@mccathernlaw.com
**David L. Clark**
Texas Bar No. 24036367
dclark@mccathernlaw.com
2000 West Loop S., Suite 1850
Houston, Texas 77027
Tel. (832) 533-8689
Fax (832) 213-4842

**ATTORNEYS FOR PLAINTIFFS
OSAMA ABDULLATIF AND
ABDULLATIF & COMPANY, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November, 2023, a true and correct copy of the foregoing and/or attached was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure.

***Via E-Service***

*/s/ Rodney L. Drinnon*
Rodney L. Drinnon

## CERTIFICATE OF CONFERENCE

Pursuant to Tex. R. Civ. P. 191.2, I hereby certify that on November 16, 2023, I spoke to Choudhri's counsel via email to request dates for the deposition of the corporate representative of

Galleria 2425, Choudhri and himself.  I also called the following day and left a message that was not returned.  I received no response to either.  This Motion necessarily followed.

*/s/ Rodney L. Drinnon*
Rodney L. Drinnon

Unofficial Copy Office of Marilyn Burgess District Clerk

**Automated Certificate of eService**
This automated certificate of eService was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Simone Nunez on behalf of Rodney  Drinnon
Bar No. 24047841
snunez@mccathernlaw.com
Envelope ID: 81792424
Filing Code Description: Motion (No Fee)
Filing Description: Drinnon's Emergency Motion to Conduct the
Depositions of the Corp. Rep of Galleria 2425 Owner, LLC and Ali
Choudhri
Status as of 11/20/2023 11:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/19/2023 2:20:50 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/19/2023 2:20:50 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/19/2023 2:20:50 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/19/2023 2:20:50 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/19/2023 2:20:50 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/19/2023 2:20:50 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/19/2023 2:20:50 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/19/2023 2:20:50 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/19/2023 2:20:50 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/19/2023 2:20:50 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/19/2023 2:20:50 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/19/2023 2:20:50 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/19/2023 2:20:50 PM | SENT |

Unofficial Copy from Maryann Burgess District Clerk

11/20/2023 2:28 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81824253
By: LISA COOPER
Filed: 11/20/2023 2:28 PM

# MCCATHERN

RODNEY L. DRINNON
Managing Partner
rdrinnon@mccathernlaw.com

November 20, 2023

The Honorable Judge Weems                                    *Via Electronic Filing*
c/o Bonnie Lugo, Clerk
201 Caroline, 14th Floor
Houston, Texas 77002

      Re: Cause No. 2023-22748; *Galleria 2425 Owner, LLC v. National Bank of Kuwait,*
      *S.A.K.P, New York Branch, et al;* In the 218st Judicial District Court of Harris
      County, Texas.

Dear Judge Weems:

      I am writing to request an expedited hearing on my Emergency Motion to Conduct the
Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri
pursuant to CPRC § 27.006(B) ("Motion") to be set concomitant with the Motion for Temporary
Injunction set for hearing by Galleria 2425 Owner, LLC on Wednesday, November 22, 2023. I
have set forth the reasons for the emergency bases of my Motion in the body thereof but have
been instructed by your clerk to present them in a letter to you.

      Galleria 2425 Owner, LLC ("2425 Galleria") filed suit against me in my individual
capacity on Wednesday, November 14, 2023 seeking $50,000,000 in damages for my conduct in
representing my client Azeemah Zaheer. The Amended Petition was verified by Ali Choudhri
("Choudhri"). A day later, I contacted James Pope, Galleria 2425's attorney, and asked him to
dismiss me immediately. My team and I worked through the night of November 15, 2023 to
draft a Motion to Dismiss Pursuant to the Texas Citizens Participation Act ("Motion to Dismiss")
seeking a dismissal with prejudice, attorney's fees and sanctions.

      The following day, I called Mr. Pope again and asked him to dismiss me. Mr. Pope
returned my call and confirmed that he would *not* reconsider adding me as a named defendant in
the present case. He further stated that "I stand by filing it," in reference to the Amended
Petition joining me as a defendant. Clearly, Pope was not willing to dismiss me as a party
*with prejudice.*

      Shortly thereafter, I contacted this Court and obtained a hearing date for my Motion
to Dismiss of December 12, 2023. I filed my Notice of Hearing at 2:00 p.m. on November
16, 2023. I filed my Motion to Dismiss at 3:43 p.m. the same day. At 5:08 p.m., Galleria 2425
filed a Second Amended Petition and Emergency Application for Temporary Restraining Order

---

purportedly removing me as a defendant ("Second Amended Petition"). However, Galleria 2425 did not dismiss me with prejudice.  As a result, my Motion to Dismiss survived the Galleria 2425's attempted nonsuit of the claims asserted against me.

Pursuant to CPRC § 27.006(B), I am entitled to specified and limited discovery relevant to my Motion to Dismiss.  I have asked the Court for two (2) and possibly three (3) depositions of the corporate representative of Galleria 2425, Choudhri and Mr. Pope *if necessary* limited to inquiry as to the facts supporting the allegations contained in the Amended Petition.  The purpose of which is to support my Motion to Dismiss and demonstrate that Galleria 2425 filed the Amended Petition in bad faith.

The emergent nature of the present motion is as follows:

1.  Oral discovery must be completed in such a manner that Drinnon may use the transcripts to rebut any attempt by Galleria 2425, Choudhri or Mr. Pope to present "clear and convincing evidence" of their claims asserted against Drinnon;

2.  Choudhri routinely avoids service of process and Drinnon expects it will take some time to serve him with a subpoena for his deposition unless this Court orders him to appear;

3.  Expedited depositions will prevent Choudhri from manufacturing "facts" in support of his pleading as he has proven to do; and

4.  The hearing should take no longer than ten (10) or fifteen (15) minutes to complete before Galleria 2425's Emergency Temporary Injunction hearing.

For these reasons, I request a brief in-person hearing ten (10) 0r fifteen (15) minutes before Galleria 2425's Emergency Temporary Injunction hearing.

Regards,

*/s/Rodney Drinnon*

Rodney Drinnon

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Simone Nunez on behalf of Rodney Drinnon
Bar No. 24047841
snunez@mccathernlaw.com
Envelope ID: 81824253
Filing Code Description: No Fee Documents
Filing Description: Letter to Court
Status as of 11/20/2023 4:31 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/20/2023 2:28:25 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/20/2023 2:28:25 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/20/2023 2:28:25 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/20/2023 2:28:25 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/20/2023 2:28:25 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/20/2023 2:28:25 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/20/2023 2:28:25 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/20/2023 2:28:25 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/20/2023 2:28:25 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/20/2023 2:28:25 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/20/2023 2:28:25 PM | SENT |
| Averyll Mauch | | amauch@Mccathernlaw.com | 11/20/2023 2:28:25 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/20/2023 2:28:25 PM | SENT |

11/21/2023 2:29 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81872968
By: Bonnie Lugo
Filed: 11/21/2023 2:29 PM

**CAUSE NO. 2023-22748**

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| **Defendant.** | § | **281ST JUDICIAL DISTRICT** |

### NATIONAL BANK OF KUWAIT'S
### RESPONSE TO GALLERIA 2425 OWNER, LLC'S APPLICATION
### FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR SANCTIONS

National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") files this Response to

Galleria 2425 Owner, LLC's ("Galleria" or "Borrower") Application for Temporary Restraining

Order and, pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of

the Texas Rules of Civil Procedure, its Motion for Sanctions, respectfully showing as follows:

### SUMMARY OF MOTION

On July 5, 2023, this Court denied Galleria's <u>fourth</u> TRO and ordered that NBK could

foreclose on the Property that is the subject of this dispute. Less than five (5) minutes after the

Court issued that order, Galleria filed for chapter 11 bankruptcy to effectively appeal this Court's

decision through the automatic stay. However, at a status conference before the bankruptcy court

on November 1, 2023, Judge Christopher Lopez dismissed Galleria's bankruptcy case finding that

it could not proceed for numerous reasons, including, principally, that Galleria has insufficient

funds rendering the case "administratively insolvent."

At the end of the status conference, Galleria attempted to challenge Judge Lopez's decision

by suggesting that his decision might have been influenced by the issues surrounding control over

the Galleria's mezzanine lender, Naissance Galleria, LLC. However, Judge Lopez flatly rejected

this very argument saying, "it's not being dismissed for Mr. Tang and Mr. Drinnon, it's being

dismissed – it's being dismissed for far more than that.  If that's the case, [Galleria] haven't heard me."  After Judge Lopez's order of dismissal was entered, Galleria could have filed an appeal to the United States District Court within fourteen (14) days, and it could have sought that the bankruptcy stay be reinstituted pending that appeal.

Galleria chose to do nothing further with its bankruptcy case, and because it was dismissed, NBK re-noticed its intent to sell the property at public auction for December 5, 2023. Now, Galleria has apparently decided to go back to this Court seeking a fifth TRO – despite this Court's strict and unequivocal warnings that "**there will not be any TROs to enjoin the foreclosure**" otherwise "**we're going to talk about sanctions for the cost of everybody's time.**" Galleria's allegations in its latest TRO are the exact same arguments it made before Judge Lopez, who rejected them. It appears that Galleria wants to have a second shot, or effectively have this Court now serve as the appellate court for the bankruptcy proceeding. Despite there being no dispute about Galleria being in default of its contractual obligations to NBK, Galleria's allegations deliberately misrepresent the record in the bankrtucpy court to have this Court believe that that matter was dismissed on grounds that do not exist.

Galleria also seeks to relitigate the very claims it previously dismissed against NBK, with prejudice, pursuant to the August 22, 2022 Settlement Agreement – by making the outlandish claim that it was fraudulently induced to enter into that agreement. But while all of Galleria's claims to undermine the Settlement Agreement are demonstrably false, the Settlement Agreement also contains an express merger clause and expressly disclaims reliance on any "alleged" representations in forming that agreement. Moreover, none of these arguments are new – and were rejected by this Court prior to its final ruling on July 5, 2023. If the aforementioned is not enough, Galleria is now harassing NBK's counsel – subpoenaing its lawyers in their personal capacity on

2

the eve of the temporary injunction original hearing date – in what appears to be an attempt to dissuade NBK's counsel from zealously representing its client's best interests.

To be clear, the *status quo* has not changed since this Court determined (for the final time) that NBK could foreclose on the Property on July 5, 2023. What has changed does not involve a change in fact or law, but that Galleria's bankruptcy filing – to override this Court's order – was rejected outright. No appeal of that dismissal was filed and the deadline to do so has expired. Respectfully, this Court has a long history with this case, and it should be readily apparent by now that all Galleria wants to do is continuously use the courts by asserting whatever claims it can in order to prevent NBK from exercising its contractually agreed upon rights to foreclose. This Court has previously warned Galleria that the filing of more TROs would warrant sanctions for the cost of everyone's time. That time has come.

## BACKGROUND

1. **Galleria files a lawsuit against NBK in 2021 to Prevent Foreclosure of the Property.**

As the Court is well aware, NBK made a $51.6 million loan (the "Loan") to Galleria in March of 2018. This Loan was made pursuant to a Loan Agreement (the "Loan Agreement"), Promissory Note (the "Note"), and a Deed of Trust (the "Deed of Trust") (together the "Loan Documents") secured by a commercial building located at 2425 West Loop South, Houston, Texas 77027 (the "Property").

Galleria defaulted on the Loan in April 2021. NBK, as the holder of the Note, then exercised its right to accelerate the maturity of the debt and to commence foreclosure of the Property in July 2021. Galleria then filed a lawsuit on September 29, 2021 and obtained a temporary injunction order preventing foreclosure on March 30, 2022 (the "TI Order").

As the Court is also well aware, on August 22, 2022, the parties entered into the Settlement Agreement and, in accordance with that document, Galleria filed a notice of nonsuit as to all of its

4853-6915-5474.v1

claims against NBK with prejudice and moved to permanently dissolve the TI Order. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

On September 1, 2022, NBK filed its Motion to Abate NBK's Counterclaims ("Motion to Abate"). On September 6, 2022, this Court entered an order granting the Motion to Abate (the "Stay Order").

**2.      After Defaulting on the Settlement Agreement, Galleria then filed this Lawsuit, a Second TRO, Seeking More Time to Comply with the Settlement Agreement.**

It is undisputed that Galleria never fulfilled its obligations under the Settlement Agreement. Seven days after failing to make its payment to NBK, on March 27, 2023[1], NBK noticed the Property for foreclosure with the sale to occur on May 2, 2023.[2] The following day, NBK moved the Court to lift the Stay Order and to appoint a receiver over the subject Property until it could be sold at public auction.

However, the day before NBK's hearing on its lift stay and receivership application could be heard, Galleria filed this lawsuit (under a different cause number and in a different court) on April 11, 2023 seeking yet another TRO to prevent this Court from appointing a receiver over the Property and to stop the impending foreclosure. The lawsuit was quickly transferred to this Court on April 11, 2023.

---

[1]   NBK issued an amended notice of foreclosure on March 29, 2023.

[2]   Galleria's TRO makes yet another false statement that NBK "took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure on March 29, 2023 in breach of the Confidential Settlement Agreement, which Plaintiff believes was done intentionally to prevent the sale." This is false. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████

3.      **The Court grants Galleria additional time to comply with the Settlement Agreement but warns "there are no more excuses."**

The following day after filing its TRO, a hearing was held on NBK's motion to lift stay and to appoint a receiver. At the hearing, counsel for Galleria made the nonsensical allegation that NBK breached the Settlement Agreement because apparently some unidentified person at NBK disclosed the contents of the unspecified details of the Settlement Agreement to an unnamed third-party at some unknown time. Counsel for Galleria, just as they do again in their most recent TRO, argued that NBK did this to prevent Galleria from honoring its contractual obligations to pay NBK. Galleria presented no evidence for these truly absurd statements. Notwithstanding, counsel for Galleria admitted that whatever "breach" that had occurred, the granting of more time by the Court to comply with the Settlement Agreement would allow Galleria to recover from that breach.

While NBK warned the Court this was yet another delay tactic (in the long history of delay tactics), the Court, given Galleria's attorney's representations as an officer of the Court, granted Galleria a total of one hundred and five (105) additional days (from March 20, to July 3) under the Settlement Agreement to make its settlement payment to NBK, stating: "***because you said on the record as an officer of the court that given more time, that if they can't get it done, then [NBK] can foreclose. I'm taking you to your word, Mr. Wetwiska***." (emphasis added).[3]

In exchange for the additional time, the Court then required Galleria to make three individual payments of $80,000 to NBK on the 15th of April, May, and June, respectively. The Court then stated that: "***failure to timely make a payment – I'm saying this on the record -- will allow [NBK] to immediately -- whatever the next opportune time is ... to file foreclosure, they can go do it***." (emphasis added).[4]

---

[3]     *See* **Exhibit A**, the April 12, 2023 Hearing Transcript at 72:19-22.

[4]     *Id.* at 80:14-19.

5

The Court then warned Galleria that any more TROs or filings related to the Settlement Agreement will result in the award of NBK's attorney fees, stating:

> **You're getting 60 days. If you don't -- there are no more excuses. And I will say this. If there are other filings relating to this issue of the settlement agreement, like the resolution of this issue and the foreclosure, we may start talking about fees.... I'll say it out loud. We're going to talk about sanctions for the cost of everybody's time.**[5]
>
> **\*\*\***
>
> **On the record, there will not be any TROs to enjoin the foreclosure. Any TRO you try to file is going to end up in front of me, and I know the whole history of this case.**[6]

4. **Galleria fails to make the last $80,000 payment and amended Settlement Payment and then files for Chapter 11 Bankruptcy.**

Galleria then failed to fulfill its obligations under the Settlement Agreement by the Court's amended deadline. Galleria never made the third $80,000 payment to NBK by June 15, 2023 (or anytime thereafter) nor did it make the amended settlement payment to NBK by July 3, 2023. Accordingly, NBK noticed the Property for foreclosure and notified Galleria that the Property would be sold at public auction on July 5, 2023.

Despite the warnings from this Court, Galleria filed two more TROs to forestall the July 5, 2023, foreclosure sale of the Property. In the first TRO, filed on July 3, 2023, Galleria made the ludicrous claim that it was "unable to remit [the settlement payment] as a result of the bank's inability to process wire transfers [that day]."[7] In the second TRO, filed on July 5, 2023, Galleria

---

[5]   *Id*. at 76:17-77:5.

[6]   *Id*. at 79:3-6.

[7]   *See* Borrower's July 3, 2023, Amended Original Petition, Emergency Application for Temporary Restraining Order and Jury Demand.

4853-6915-5474.v1

made no new allegations and only argued that the Court should stop the foreclosure under a theory of "unjust enrichment."[8]

As the Court will recall, both TRO's were immediately denied. After the Court denied the July 5 TRO, at approximately 9:50 am that morning, Galleria filed for Chapter 11 bankruptcy – once again preventing NBK from enforcing its right to foreclose on the Property via the automatic stay.

**5.      At the outset of the bankruptcy case, the bankrtucpy court stressed that it had a "fundamental problem with this case" and gave Galleria thirty days to "market test" their Plan of Reorganization to determine whether the case should proceed.**

On July 24, 2023, NBK moved to dismiss the Chapter 11 Bankruptcy for cause – on the basis it was filed in bad faith (*i.e.*, to thwart this Court's order allowing NBK to foreclose on the Property) and because there was never a reasonable hope of a successful reorganization (*i.e.*, the Borrower had no going concern to preserve).

At the September 22, 2023 hearing on NBK's motion to dismiss, the Honorable Judge Lopez repeatedly stressed his discomfort with Galleria's chapter 11 plan of reorganization (the "Plan"), particularly because it relied entirely on a theoretical infusion of cash from Galleria 2425's principal, Ali Choudhri ("Choudhri"). Indeed, Judge Lopez, throughout the hearing, stressed that Mr. Choudhri's dual role as both the manager of Galleria and as Galleria's largest unsecured secured creditor presented a "conflict" and created a "fundamental problem with [the] case" that was unlikely to be fixed:

> **THE COURT:     [If] [s]omebody disagrees with Mr. Choudhri in connection with the assets of the estate.  Who makes that call?  Nobody. So we're going to, <u>it's a fundamental problem</u>.  The largest -- one of the largest unsecured creditors, at least on the Schedules.  I'm not saying he's done anything bad. I don't know, Mr. Choudhri.  I'm just looking**

---

[8]     *See* Borrower's July 5, 2023, Second Amended Petition, Emergency Application for Temporary Restraining Order and Jury Demand.

4853-6915-5474.v1

**at what I'm looking at.   A large -- The largest unsecured creditor with almost $1 million claim.   Now -- was also on some other papers. So who's going to make decisions about what's in the best interest of the Debtor to file a plan?   There's a fundamental problem with this case. I'm not sure it can be fixed.   And that's where we're going.**[9]
\*\*\*

**I'm like, and I'm really uncomfortable.   It's driving all of these problems that I have with the budget, which is, you know, is rent supposed to be free for Jetall?   Is it, you know, are they not supposed to be collected 19,000, you know, is the $19,000 fee really a pass through fee?   I don't trust what I'm seeing.   And it makes me uncomfortable that I don't have an independent party telling me these answers.**[10]
\*\*\*

**I'm just telling you I'm uncomfortable with the lack of transparency. And I'm not saying it'' there, but there's -- we don't have an independent here, and I don't know how to proceed. And it's going to flow.  It's going to get worse as my inquiry goes on.... We haven't talked about feasibility of a plan.**[11]
\*\*\*

**I don't trust the numbers. I don't trust the books. I don't have a true independent who can tell me what we've got going on here.**[12]

Judge Lopez ultimately denied NBK's motion to dismiss without prejudice. However, Judge Lopez emphasized that this denial was "just an extension" of time so that Galleria could "market test" their Plan over the next thirty (30) days and, after that time expired, the Court would make a decision as to whether the case should proceed:

> **I do have that Jetall is everywhere. And Mr. Choudhri is everywhere on these documents in some sense or another. I don't have enough today to get me comfortable, but when it comes to -- so I'm going to deny the motion to dismiss without prejudice. If I find out that I get uncomfortable and say what you already know, that I'm already on edge, I won't hesitate to convert the case or do something on my own and I have the authority to do it**.[13]
> \*\*\*

---

[9]  *See* **Exhibit B** the September 22, 2023 Hearing Transcript from the United States Bankruptcy Court for the Southern District of Texas, Case No. 23-60036-11 at 117:21-118:8.

[10]  *Id*. at 119:9-16.

[11]  *Id*. at 123:3-10.

[12]  *Id*. at 123:1-18.

[13]  *Id*. at 215:5-12.

4853-6915-5474.v1

So this case continues, but the case continues under really tight timelines and under really strict costs. And I don't like the position that I put you in. I just don't. I don't like the position I put others in. I do know as we get closer to the 90 days, they didn't raise it. But someone's going to have to start talking about interest payments and where this goes on that. If this case – I know there's a plan on file and I know what the Code says. I <u>got to make sure if we get there in the next two months. That is really, really a good market test, and [a] true independent looked at this.</u>[14]

\*\*\*

<u>And maybe we can all meet in about 30 days and see what this case really goes in the same way. It's just a – It's an extension. I don't really know what I'm going to do yet, but I do know what I'm not doing today.</u>[15]

6.    Approximately five weeks later, and after Galleria failed to market test the Plan, the bankruptcy court dismisses Galleria's bankruptcy case because it was "administratively insolvent."

On November 1, 2023, the bankruptcy court then held a "status conference" to determine, *inter alia*, whether Galleria had "market tested" their Plan. To no surprise, Galleria failed to do so. (*THE COURT: Right. But I said you couldn't go forward, the plan as proposed, because you have -- you've got to be able to market test it. So how do plan on proceeding*?).[16]

Judge Lopez then dismissed the bankruptcy proceeding, for cause, citing Galleria's insolvency and inability to make interest payments to NBK:

> THE COURT: The Court's already held a hearing on a motion to dismiss the case based upon, among other things, the amount of money it would take to continue this case. The Court denied it based on the evidence presented to the Court at the time... But for this case to continue there's going to have to be a lot of money. <u>I'm going to have to require NBK to get paid interest.</u> There's just not enough money in the budget, this Debtor is going to run out of money really fast...The only way this case survives is if I don't require NBK to be paid any interest on that loan pending the resolution of State Court matters, the matters of plan

---

[14]    *Id*. at 217:23-218:8.

[15]    *Id*. at 219:19-22.

[16]    *See* **Exhibit C** the November 1, 2023 Hearing Transcript from the United States Bankruptcy Court for the Southern District of Texas, Case No. 23-60036-11 at 7:2-4.

4853-6915-5474.v1

**confirmation, and I'm unwilling to do that, <u>which makes this case immediately administratively insolvent</u>.[17]**

**\*\*\***

**This Debtor doesn't have enough money to pay even a half a month of interest on the secured loan and it would take until early 2024 to go deal with that. <u>I'm dismissing this case effective today under Section 1112(b) for cause</u>.[18]**

7.     **Galleria's TRO falsely represents the basis for Judge Lopez's dismissal of Galleria's bankruptcy case.**

Despite the bankruptcy court's clear reasons for dismissal provided above, Galleria now would have the Court believe that Judge Lopez dismissed the bankruptcy case due to the ongoing litigation between Galleria's owner, Choudhri, and Azeemah Zaheer ("Zaheer") – along with Ms. Zaheer's lawyers (David Tang and Rodney Drinnon). That litigation, pending in the 80th Judicial District, involves a dispute between Mr. Choudhri and Ms. Zaheer over the rights to control Galleria's mezzanine lender, Naissance Galleria, LLC ("Naissance"). In its temporary injunction, Galleria makes the false accusation that the aforementioned individuals, along with NBK, apparently conspired to use the Naissance litigation to somehow "*confuse and disrupt Plaintiff's bankruptcy case*" and that this ultimately "*resulted in the dismissal of the bankruptcy case*." Galleria states, specifically, that:

> "All of these actions, including the actions taken by Zaheer, Tang and Drinnon in direct violation of Judge Manor's temporary injunction, gave rise to Judge Lopez's serious concerns about the ability to move forward with the bankruptcy case without resolution in the state court action...As a result of this conspiracy by the defendants, the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case.[19]

---

17     *Id.* at 64:8-65:8.

18     *Id*. at 68:19-23.

19     TRO paras. 16 & 21.

4853-6915-5474.v1

This is demonstrably false. Indeed, Judge Lopez addressed this exact argument just minutes after dismissing the case, stating unequivocally that he did not put any weight on the allegations made in the Naissance dispute and that his order was based solely on Galleria's insolvency and inability to make interest payments to NBK:

> **And I don't put any weight to what Mr. Drinnon told me. I don't put any weight to what Mr. Tang told me. I don't put any weight to anything else. I haven't taken a lick of evidence. It's just like a pleading, people get to say stuff.**[20]
> **\*\*\***
> **MS. HAYWARD: If this case gets dismissed because of Mr. Tang and Mr. Drinnon –**
>
> **THE COURT: <u>It's not being dismissed for Mr. Tang and Mr. Drinnon, it's dismissed -- it's being dismissed for far more than that. If that's the case, you haven't heard me.</u> I'm saying we -- it's going to take time and money to resolve a lot of issues, and it's entirely based on me saying no interest [payments] to NBK. Not 1, not 1, not 1/2, not 100, not 200 grand, nothing. And if that's the case, then no money – no administrative costs to you, or to anyone else who works on this case. Or to anyone else who would be hired to provide valuation testimony. And I'm unwilling to do that. I'm unwilling to do that. And the plan proposes, you know, that an insider is going to receive -- is going to make a \$2-1/2 million contribution and they're going to get the equity. And that's going to require some time and work to get me comfortable. If that's the case, then that's going to require interest payments. People are entitled to adequate protection. And everything hinges on me holding everything and not doing anything until I decide this issue, and we run out of money really fast, and I'm unwilling to do it. So you have my reasons, they'll be on the Record, and I'll just enter an order saying for the reasons stated on the Record this case is dismissed. And it's not about Mr. Tang, it's about the allegations. <u>It's about allegations, it's about interest, time, market testing under a plan,</u> a lawyer who's willing to go out there and risk not being paid, but that doesn't mean that there's not an administrative expense.**[21]

---

[20]   Exhibit C at 76:20-23.

[21]   *Id*. at 78:3-79:8.

Galleria also makes the false statement to this Court that Judge Lopez dismissed Galleria's case at an "emergency status conference requested by NBK."[22] The basis for this misstatement is unclear, but there was never an "emergency hearing" filed by NBK. And the aforementioned "status conference" was voluntarily set by Judge Lopez (and not NBK) so Judge Lopez could obtain an update on Galleria's efforts to "market test" their Plan.[23]

Despite Judge Lopez expressing serious concerns about the Plan and Galleria's bankruptcy from the outset, Galleria would also have this Court believe Judge Lopez initially showed approval of Galleria's Plan – before eventually changing his mind due to NBK's supposed "bad faith actions." Galleria states:

> Plaintiff promptly proposed a plan in the bankruptcy court, which was characterized as a "really smart" plan that "check[ed] all the boxes" for plan confirmation, according to Judge Lopez. Then, after NBK lost its motion to dismiss, it engaged in more bad faith actions by conspiring with Azeemeh Zaheer, David Tang, and Rodney Drinnon, to create confusion that caused havoc and further disrupted the bankruptcy case.[24]

Not so. Judge Lopez, at the status conference on November 1, 2023 – *after* he had already dismissed Galleria's bankruptcy case for cause – actually stated that Galleria's Plan was "really smart, it's just not market tested" and confirmed the case ought to be dismissed, emphasizing that Galleria could never get to plan confirmation due to the lack of capital. He stated:

> **THE COURT: -- we're just going to agree to disagree, Ms. Hayward. I got it, it's -- I'm not saying -- it's really smart, it's just not market tested. It's really smart on paper, it checks all the boxes. This checks -- it checks all the boxes. I got you. You're**

---

[22]   *See* para. 21.

[23]   As previously shown, at the September 22, 2023 hearing on NBK's motion to dismiss, Judge Lopez sated "**maybe we can all meet in about 30 days and see what this case really goes in the same way. It's just a – It's an extension. I don't really know what I'm going to do yet, but I do know what I'm not doing today.**" All parties then met for a "status hearing" on November 1, 2023 wherein Judge Lopez proceeded to outline his basis for dismissing the case "for cause."

[24]   *See* TRO at paras. 9-10.

4853-6915-5474.v1

**going to run out of money. You won't get there. You won't get to plan confirmation. You can't even survive on a contested plan confirmation based on the amount of money that we've got here.** You don't. You don't, because they're going to have pay interest [to NBK] till we get there. [25]

8.    **Galleria is now attempting to harass NBK's lawyers in an apparent attempt to dissuade them from pursing foreclosure.**

Making false statements to this Court is apparently not enough – as Galleria is resorting to harassing and intimidating NBK's counsel. On November 16, 2023, the day before Galleria's initial TRO hearing setting, Galleria sent a process server to the Houston office of Pillsbury to personally serve a subpoena on Mr. Charles Conrad – NBK's lead counsel in this matter. Galleria's process server also unsuccessfully attempted to serve a second subpoena on Ms. Amanda Halter, the Managing Partner of Pillsbury's Houston office.

There is obviously no basis, let alone a good faith basis, to claim that Pillsbury's attorneys are fact witnesses divorced from the litigation. To the contrary, Mr. Conrad's work in representing NBK in the Lawsuit is squarely related to and in furtherance of his defense of NBK against Plaintiff's baseless claims. Ms. Halter, as the Court knows, has never once appeared in this litigation as counsel for NBK.

There is simply no reason for Galleria to resort to this conduct – apart from seeking to thwart Pillsbury's diligent and successful representation of NBK in this matter. These actions are inexcusable and should not be tolerated.

For these reasons, and as explained herein, the TRO should be denied, and Galleria must be sanctioned. The Court should quash the subpoena and sanction Galleria for this inexplicable and inexcusable conduct.

---

[25]   Exhibit C at 76:3-12.

## II.
## ARGUMENT AND AUTHORITIES

**A.**     **There is No Basis for the Court to Grant Galleria's Temporary Injunction.**

This Court's warning to Galleria on April 12, 2023 was clear: "**there will not be any TROs to enjoin the foreclosure**" otherwise "**we're going to talk about sanctions for the cost of everybody's time.**" And since that time, Galleria has filed two more TROs – on July 3 and 5, 2023 – both of which the Court immediately denied. So, what has materially changed since then? Nothing.

Instead, Galleria filed bankruptcy to effectively appeal the Court's July 5, 2023, decision – but the bankruptcy court dismissed that action on November 1, 2023. Rather than appeal that decision (the deadline to appeal expired on November 15, 2023), Galleria has returned to this Court seeking yet another temporary injunction.

To begin and to be sure, nothing has actually changed since this Court ordered that NBK can proceed with its foreclosure on July 5, 2023.  What is before the Court now is yet another blatant attempt by Galleria to obtain an alternative outcome from where it presently finds itself facing foreclosure.  Galleria would now lead this Court to believe that Judge Lopez dismissed the bankruptcy case because NBK, sometime after September 21, 2023, conspired with Ms. Zaheer and her lawyers (Mr. Tang and Mr. Drinnon) to "confuse" Judge Lopez into dismissing the case by referring to ongoing litigation involving Mr. Choudhri and Ms. Zaheer over the control of Naissance. As shown herein, this assertion is simply and easily debunked by reviewing the bankruptcy court's transcript.  Ms. Hayward, Galleria's bankruptcy counsel, advanced these *very same* arguments to the bankruptcy court – and Judge Lopez strongly rejected them:

14

> And I don't put any weight to what Mr. Drinnon told me. I don't put any weight to what Mr. Tang told me. I don't put any weight to anything else. I haven't taken a lick of evidence. It's just like a pleading, people get to say stuff. [26]
>
> \*\*\*
>
> MS. HAYWARD: If this case gets dismissed because of Mr. Tang and Mr. Drinnon –
>
> THE COURT: <u>It's not being dismissed for Mr. Tang and Mr. Drinnon, it's dismissed -- it's being dismissed for far more than that. If that's the case, you haven't heard me.</u> I'm saying we -- it's going to take time and money to resolve a lot of issues, and it's entirely based on me saying no interest [payments] to NBK. [27]

That is, while these new allegations are false and deceptive, they were already addressed, and rejected, by the bankruptcy court.

In sum, Galleria sought to challenge this Court's July 5 order by filing for Chapter 11 bankruptcy. That didn't work, and rather than appeal that decision, Galleria is back before this Court to effectively challenge the bankruptcy court's order – and has done so by deliberately fabricating the record and the events that occurred in that case. But make no mistake, the *status quo* has not changed since July 5, 2023. Instead, what has changed is that Galleria has prolonged this lawsuit even further, adding even more expense litigating a case that should have never been filed. For these reasons, the temporary injunction must be denied.

**B.    The Court Can Award Sanctions Under both Chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13.**

Chapter 10 of the Texas Civil Practice and Remedies Code allows for sanctions for pleadings filed with an improper purpose that lacks legal or factual support. *Nath v. Tex.*

---

[26]    *Id.* at p. 76:20-23.

[27]    *Id*. at 78:3-10.

4853-6915-5474.v1

*Children's Hosp.*, 446 S.W.3d 355, 362 (Tex. 2014). Upon signing a pleading or motion, a signatory attests that:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal or existing law or the establishment of new law; [and]
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidential support after a reasonable opportunity for further investigation or discovery . . .;

TEX. CIV. PRAC. & REM. CODE § 10.001, *et. seq*. Pleadings that violate these requirements are sanctionable. *Id*.

Texas Rule of Civil Procedure 13 provides that pleadings that are groundless and in bad faith, intended to harass or are false when made are also sanctionable:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, [**14] and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who . . . make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt . . . .
>
> Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law . . . .
>
> TEX. R. CIV. P. 13. Rule 13 does not permit sanctions on groundlessness alone; pleadings must be groundless and brought in bad faith, for the purpose of harassment or be false when made. *Id*.

16

C.    **The Court Should Issue Sanctions for Galleria's Repeated, and Vexatious TROs Meant to Impede NBK's Foreclosure Rights and Increase Costs of this Litigation.**

This Court has repeatedly ruled NBK could foreclose on the Property and, moreover, it has warned Galleria that any future TROs to prevent NBK's foreclosure efforts would warrant sanctions. Yet, since issuing that warning, Galleria has filed *three* more TROs (not including the filing of its chapter 11 bankruptcy) to impede NBK's foreclosure rights.

Where, as here, a plaintiff flagrantly abuses the judicial system by filing frivolous claims to avoid a foreclosure, the Court is well within its discretion to impose monetary sanctions and dismiss the plaintiff's claims. *See Welch v. Specialized Loan Servicing, LLC*, No. 01-21-00704-CV, 2023 Tex. App. LEXIS 1257 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, no pet. h.) (affirming district court's imposition of sanctions dismissing claims and awarding attorney fees against a successor of borrower in favor of lender when borrower and subsequently its successor filed multiple lawsuits to stop foreclosure, raising substantially the same claims in each and none of the lawsuits was successful); *DTND Sierra Invs., L.L.C. v. HSBC Bank USA, N.A.*, 627 F. App'x 285 (5th Cir. 2015) (applying Texas law and affirming the lower court's imposition of sanctions upon a finding that the sanctioned party "engaged in a scheme to delay foreclosure by petitioning for temporary restraining orders in state court and dismissing those claims upon removal" and the sanctioned party was "also party to four materially identical actions that were dismissed on the merits" which showed that the sanctioned party "had knowledge its claims were meritless but nevertheless filed to delay foreclosure."); *DTND Sierra Invs., L.L.C. v. CitiMortgage, Inc.*, 624 F. App'x 846 (5th Cir. 2015) (applying Texas law and affirming lower court's imposition of sanctions where the court described the sanctioned party as "a frequent litigator in Texas federal and state courts" whose "business model appears to consist entirely of purchasing deeply discounted homes at homeowners association foreclosure sales, collecting rental income from the properties, and

17

then, when superior purchase-money mortgage lien holders attempt to foreclose, filing civil actions in state court attempting to halt the foreclosure."); *Frank v. Wells Fargo Bank*, No. 4:22-cv-00065, 2023 U.S. Dist. LEXIS 134914 (S.D. Tex. 2023) (applying Texas law and affirming the imposition of sanctions where debtor repeatedly interfered with foreclosure by filing bankruptcy petitions and state court actions in a "years-long campaign to prevent foreclosure.").

There is no doubt that Galleria's latest temporary injunction bears the hallmarks of a bad faith filing as to warrant sanctions. First, this Court already warned Galleria that any more TROs would warrant sanctions. Second, Galleria is attempting to relitigate claims it already dismissed with prejudice pursuant to the Settlement Agreement. Third, Galleria's arguments to get around the Settlement Agreement are demonstrably false and have been repeatedly rejected as a basis to stop NBK's foreclosure efforts. Fourth, Galleria has gone out of its way to misinform this Court regarding the posture of its bankruptcy case – going so far as to misquote and misrepresent the bankruptcy court's statements.

It appears that Galleria is not, in the slightest bit, concerned with the truth – but instead, interested in harassing NBK (and now its lawyers) and causing unnecessary delays to increase the costs of litigation. The Court should put an end to this, once and for all, and reject Galleria's latest TRO and dismiss Galleria's claims. The Court should also sanction Galleria for its vexatious and inexcusable actions and award NBK its attorney's fees for having to continuously respond to these bad faith filings.

4853-6915-5474.v1

PRAYER

For the forgoing reasons, NBK prays that the Court deny Galleria's TRO in its entirety.

NBK also respectfully prays that this Court sanction Galleria, dismiss Galleria's claims, award

NBK its costs as well as reasonable and necessary attorney fees, and grant it all other relief to

which it is entitled.

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: _/s/ Charles Conrad_
        Charles C. Conrad
        State Bar No. 24040721
        Elizabeth Klingensmith
        State Bar No. 24046496
        Ryan Steinbrunner
        State Bar No. 24093201
        Two Houston Center
        909 Fannin, Suite 2000
        Houston, Texas 77010-1018
        Telephone: (713) 276-7600
        Facsimile: (281) 276-7634
        charles.conrad@pillsburylaw.com
        liz.klingensmith@pillsburylaw.com
        ryan.steinbrunner@pillsburylaw.com

*Attorneys for National Bank of Kuwait, S.A.K.P.,*
*New York Branch*

## CERTIFICATE OF SERVICE

In accordance with Rule 21 of the Texas Rules of Civil Procedure, I certify that on this 21st day of November 2023, a true and correct copy of the foregoing document was served on all counsel of record through electronic service.

_/s/ Charles C. Conrad_
        Charles C. Conrad

19

4853-6915-5474.v1

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 81872968
Filing Code Description: No Fee Documents
Filing Description: NBK Response to Plaintiff's TRO Application and Motion for Sanctions
Status as of 11/21/2023 4:01 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 11/21/2023 2:29:48 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/21/2023 2:29:48 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/21/2023 2:29:48 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/21/2023 2:29:48 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/21/2023 2:29:48 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/21/2023 2:29:48 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/21/2023 2:29:48 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/21/2023 2:29:48 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/21/2023 2:29:48 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/21/2023 2:29:48 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/21/2023 2:29:48 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/21/2023 2:29:48 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/21/2023 2:29:48 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

# **EXHIBIT A**

## **To be filed under seal**

# EXHIBIT B

## To be filed under seal

Unofficial Copy Office of Marilyn Burgess District Clerk

# **EXHIBIT C**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-60036-11 |
| | § | HOUSTON, TEXAS |
| GALLERIA 2425 OWNER, LLC, | § | WEDNESDAY, |
| | § | NOVEMBER 1, 2023 |
| DEBTOR. | § | 10:04 A.M. TO 11:40 A.M. |

**STATUS CONFERENCE**

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    SEE NEXT PAGE

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
(281) 277-5325 (office)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

Unofficial Copy Office of Marilyn Burgess District Clerk

**APPEARANCES**:

| | |
|---|---|
| FOR DEBTOR, GALLERIA 2425 OWNER, LLC: | HAYWARD, PLLC<br>Melissa S. Hayward, Esq.<br>10501 N. Central Expressway<br>Suite 106<br>Dallas, TX 75231<br>972-755-7100 |
| FOR NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH: | PILLSBURY WINTHROP SHAW PITTMAN<br>Charles C. Conrad, Esq.<br>909 Fannin Street,<br>Suite 2000<br>Houston, TX 77010<br>713-276-7626 |
| | PILLSBURY WINTHROP SHAW PITTMAN<br>Patrick Fitzmaurice, Esq.<br>Kwame Akuffo, Esq.<br>31 West 52nd Street<br>New York NY 10016<br>212-858-1171 |
| FOR THE US TRUSTEE: | OFFICE OF THE US TRUSTEE<br>Jayson B. Ruff, Esq.<br>515 Rusk Avenue, Suite 3516<br>Houston, TX 77002<br>713-718-4650 |
| FOR ARI CHOUDHRI: | AKIN GUMP STRAUSS HAUER & FELD<br>Jim Wetwiska, Esq.<br>1111 Louisiana Street<br>44th Floor<br>Houston, TX 77002<br>713-220-5899 |
| FOR NAISSANCE GALLERIA, LLC: | ATTORNEY AT LAW<br>David Tang, Esq.<br>9801 Westheimer Road<br>Houston, TX 77042<br>832-287-3227 |
| | THE POPE LAW FIRM<br>James Q. Pope, Esq.<br>6161 Savoy Drive, Suite 1125<br>Houston, TX 77036<br>713-449-4481 |
| ALSO PRESENT: | Sarah Cox |

Unofficial Copy Office of Marilyn Burgess District Clerk

3

**HOUSTON, TEXAS; WEDNESDAY, NOVEMBER 1, 2023; 10:04 A.M.**

1

2          THE COURT:  All right.  Good morning, everyone.

3     This is Judge Lopez.  I'm going to call the 10:00 a.m. case.

4     Today is November 1, you know, 23-60036, Galleria 2425 Owner,

5     LLC, here on a status conference, an application to employ,

6     and I'm sure other stuff.  Why don't we just take appearances

7     in the courtroom, and then we'll continue?

8          MS. HAYWARD:  Good morning, Your Honor.  Melissa

9     Hayward here for the Debtor.

10          THE COURT:  Okay.  Good morning, Mr. Hayward.  Good

11     to see you.

12          Mr. Ruff, good morning.

13          MR. RUFF:  Good morning, Your Honor.  Jayson Ruff on

14     behalf of the United States Trustee.

15          THE COURT:  Good morning.

16          MR. CONRAD:  Good morning, Your Honor.  Charles

17     Conrad on behalf of National Bank of Kuwait, along with

18     (indiscernible).

19          THE COURT:  Good morning to both of you.

20          MR. WETWISKA:  Good morning, Your Honor.  I'm Jim

21     Wetwiska, Akin Gump.  I am here for Mr. Choudhri, and I don't

22     know if I'll need to speak, not speak today.  But as I've

23     witnessed in this proceeding and other proceedings that some

24     of these lawyers are involved in, you don't know how things

25     are going to unfold.  So I'm just here today --

1    have a setting on the disclosure statement for November 29.

2         THE COURT:  Right.  But I said you couldn't go

3    forward, the plan as proposed, because you have -- you've got

4    to be able to market test it.  So how do plan on proceeding?

5         MS. HAYWARD:  Well, Your Honor, I guess --

6         THE COURT:  In other words, I'm not letting you put

7    that out there without it being market tested.

8         MS. HAYWARD:  When Your Honor says market tested,

9    I'm a little unclear as to --

10        THE COURT:  In other words, there's an equity

11   contribution in there that -- there has to be disclosure as to

12   how you reach that number in the analysis that was done to

13   reach it.

14        MS. HAYWARD:  Your Honor, it's not an equity -- I

15   mean it's not -- it's not purchasing -- I mean there is no

16   equity.  Right?  We have a debtor --

17        THE COURT:  If he retains the ownership.  Right?

18   Right?  There's an absolutely priority rule.  Right?

19        MS. HAYWARD:  Yes, Your Honor.

20        THE COURT:  We all know it applies -- so how does --

21   how does Choudhri own the entity?  That's the essence.  Right?

22   So he's essentially going to make a contribution.

23        MS. HAYWARD:  Well, I believe the way the plan's

24   structured there's a new entity that's coming in --

25        THE COURT:  Right.

1   any right to anything, whether she's done everything right, I

2   don't -- I have no idea and are making no findings one way or

3   the other about what Ms. Zahire's rights are.  If it turns out

4   that she didn't have a right to do any of what she did, that's

5   going to be a real problem, and I think the State Court would

6   be in a position to address those issues here.

7          (Pause in the proceedings.)

8          THE COURT:  The Court's already held a hearing on a

9   motion to dismiss the case based upon, among other things, the

10  amount of money it would take to continue this case.  The

11  Court denied it based on the evidence presented to the Court

12  at the time.

13         NBK now seeks and files objections along with the

14  United States Trustee as to whether Ms. Hayward's qualified to

15  serve as Debtor's counsel under Section 327 of the Bankruptcy

16  Code.  The Court has not taken that issue up.

17         But for this case to continue there's going to have

18  to be a lot of money.  I'm going to have to require NBK to get

19  paid interest.  There's just not enough money in the budget,

20  this Debtor is going to run out of money really fast.  And the

21  Court's in the position where it's going to have to take it

22  all, or none, even if we're going to take it up all and deal

23  with allegations where somebody has made a representation to

24  this Court, or potentially made -- maybe say potentially made

25  representations to this Court that could be really tricky.

1    Interest on the loan to NBK at the non-default rate

2    is about $353,000 a month.  On the default based on the

3    evidence presented at the cash collateral, it was about

4    $447,000 a month.  The only way this case survives is if I

5    don't require NBK to be paid any interest on that loan pending

6    the resolution of State Court matters, the matters of plan

7    confirmation, and I'm unwilling to do that, which makes this

8    case immediately administratively insolvent.

9    No way this place could proceed.  The Court would

10   have to deal with serious allegations that were made in this

11   Court.  The Court would have to deal with whether there's

12   certain debt, whether this Debtor is subject to certain -- is

13   collateral under the debt, who the owner, who controls the

14   parent, what the parent wants to do, a lot going on here.

15   The allegations that are alleged, the Court would

16   have to really do a lot of finding and it would require a lot

17   more investigation.  I don't know.  Mr. Choudhri's involved in

18   litigation at the State Court level involving Naissance

19   alleging some strong allegations, I don't need to get into

20   them because I don't want to, but here Mr. Choudhri is listed

21   as an unsecured creditor to the tune of $960,000.  He also

22   controls a number of entities that are owed nmoney, and

23   Mr. Darjon (sic) filed these under penalty of perjury,

24   assuming he did his diligence.  He's a good man.

25   The Debtor has filed a plan but that plan cannot

1      plan, because you can't confirm this plan quickly.

2            You can't get quickly to plan confirmation based

3 upon the issues that I've identified.  And there would have to

4 be investigations.  All right.  Some Court's going to have to

5 do it.  The State Court's already taking it up.  And this

6 Debtor is in no position to pay one month, or even a half a

7 month of interest to secured creditor.  Secured creditor

8 hadn't been paid in quite some time.

9            I don't -- before the Court spends the time and the

10 expense questioning, and I would note that the only way

11 secured creditor -- you know, while the Court spends the time

12 and the money taking up lawyer fees where Ms. Hayward would

13 have to defend herself, and I believe in her success, will

14 have a right to be paid.

15            Maybe she wins, maybe she loses.  If she loses, then

16 this case gets immediately dismissed, I've got to give --

17 because to then take time to go find new counsel, and you

18 still have to pay interest.  But if Ms. Hayward wins they've

19 now taken enough money.  This Debtor doesn't have enough money

20 to pay even a half a month of interest on the secured loan and

21 it would take until early 2024 to go deal with that.

22            I'm dismissing this case effective today under

23 Section 1112(b) for cause.  I would also note that this case

24 was filed in Victoria.  In connection with this I don't see a

25 connection with Victoria as well.  The cost to transfer this

1          THE COURT:  Well --

2          MS. HAYWARD:  So that's the --

3          THE COURT:   -- we're just going to agree to

4     disagree, Ms. Hayward.  I got it, it's -- I'm not saying --

5     it's really smart, it's just not market tested.  It's really

6     smart on paper, it checks all the boxes.  This checks -- it

7     checks all the boxes.  I got you.  You're going to run out of

8     money.  You won't get there.  You won't get to plan

9     confirmation.  You can't even survive on a contested plan

10    confirmation based on the amount of money that we've got here.

11    You don't.  You don't, because they're going to have pay

12    interest till we get there.

13          I'm going to have to figure out what's happening in

14    the adversary proceeding.  And if somebody lied to me on the

15    stand, I'm not saying anybody did, but if somebody did, it

16    turns out that something happened, somebody lied to me on the

17    stand, things get really uncomfortable around here.  And I

18    think everybody ought to go figure all that stuff out in State

19    Court.

20          And I don't put any weight to what Mr. Drinnon told

21    me.  I don't put any weight to what Mr. Tang told me.  I don't

22    put any weight to anything else.  I haven't taken a lick of

23    evidence.  It's just like a pleading, people get to say stuff.

24    I take it seriously though.  We have to think of it here, but

25    that's not happening.  Those are allegations that the lawyers

1    we're trying to save this asset.

2              THE COURT:  No, I know, and you can --

3              MS. HAYWARD:  If this case gets dismissed because of

4    Mr. Tang and Mr. Drinnon --

5              THE COURT:  It's not being dismissed for Mr. Tang

6    and Mr. Drinnon, it's dismissed -- it's being dismissed for

7    far more than that.  If that's the case, you haven't heard me.

8    I'm saying we -- it's going to take time and money to resolve

9    a lot of issues, and it's entirely based on me saying no

10   interest to NBK.  Not 1, not 1, not 1/2, not 100, not 200

11   grand, nothing.

12             And if that's the case, then no money -- no

13   administrative costs to you, or to anyone else who works on

14   this case.  Or to anyone else who would be hired to provide

15   valuation testimony.  And I'm unwilling to do that.  I'm

16   unwilling to do that.  And the plan proposes, you know, that

17   an insider is going to receive -- is going to make a $2-1/2

18   million contribution and they're going to get the equity.  And

19   that's going to require some time and work to get me

20   comfortable.

21             If that's the case, then that's going to require

22   interest payments.  People are entitled to adequate

23   protection.  And everything hinges on me holding everything

24   and not doing anything until I decide this issue, and we run

25   out of money really fast, and I'm unwilling to do it.

1        So you have my reasons, they'll be on the Record,

2    and I'll just enter an order saying for the reasons stated on

3    the Record this case is dismissed.  And it's not about

4    Mr. Tang, it's about the allegations.  It's about allegations,

5    it's about interest, time, market testing under a plan, a

6    lawyer who's willing to go out there and risk not being paid,

7    but that doesn't mean that there's not an administrative

8    expense.

9        I don't know.  And I do know we can't proceed on the

10    adversary because of Naissance, and that issue has to get

11    resolved.  And I have an adversary proceeding right now where

12    all 3 are still there, and that can't proceed.  There's a

13    State Court injunction saying Naissance can't proceed.  I

14    don't -- why don't you all go fight about it.  Maybe they come

15    back -- it's just a freeze, but you can't -- but the problem

16    is they freeze the whole thing because they're involved in it.

17        So that's my ruling.  Thank you.

18        UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

19    (Hearing adjourned 11:40 a.m.)

20

21

22

23

24

25                          * * * * *

1          I certify that the foregoing is a correct transcript

2      to the best of my ability produced from the electronic sound

3      recording of the proceedings in the above-entitled matter.

4      ___/S./  MARY D. HENRY_____

5      CERTIFIED BY THE AMERICAN ASSOCIATION OF

6      ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

7      JUDICIAL TRANSCRIBERS OF TEXAS, LLC

8      JTT TRANSCRIPT #67838

9      DATE FILED:  NOVEMBER 7, 2023

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

11/21/2023 3:13 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81877077
By: Bonnie Lugo
Filed: 11/21/2023 3:13 PM

**CAUSE NO. 2023-22748**

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC,<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | HARRIS COUNTY, TEXAS |
| NATIONAL BANK OF KUWAIT,<br>S.A.K.P., NEW YORK BRANCH, | §<br>§<br>§<br>§ | |
| Defendant. | §<br>§ | 281ST JUDICIAL DISTRICT |

**NATIONAL BANK OF KUWAIT'S
RESPONSE TO GALLERIA 2425 OWNER, LLC'S APPLICATION
FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR SANCTIONS**

National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") files this Response to Galleria 2425 Owner, LLC's ("Galleria" or "Borrower") Application for Temporary Restraining Order and, pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure, its Motion for Sanctions, respectfully showing as follows:

**SUMMARY OF MOTION**

On July 5, 2023, this Court denied Galleria's <u>fourth</u> TRO and ordered that NBK could foreclose on the Property that is the subject of this dispute. Less than five (5) minutes after the Court issued that order, Galleria filed for chapter 11 bankruptcy to effectively appeal this Court's decision through the automatic stay. However, at a status conference before the bankruptcy court on November 1, 2023, Judge Christopher Lopez dismissed Galleria's bankruptcy case finding that it could not proceed for numerous reasons, including, principally, that Galleria has insufficient funds rendering the case "administratively insolvent."

At the end of the status conference, Galleria attempted to challenge Judge Lopez's decision by suggesting that his decision might have been influenced by the issues surrounding control over the Galleria's mezzanine lender, Naissance Galleria, LLC. However, Judge Lopez flatly rejected this very argument saying, "it's not being dismissed for Mr. Tang and Mr. Drinnon, it's being

dismissed – it's being dismissed for far more than that.  If that's the case, [Galleria] haven't heard me."  After Judge Lopez's order of dismissal was entered, Galleria could have filed an appeal to the United States District Court within fourteen (14) days, and it could have sought that the bankruptcy stay be reinstituted pending that appeal.

Galleria chose to do nothing further with its bankruptcy case, and because it was dismissed, NBK re-noticed its intent to sell the property at public auction for December 5, 2023. Now, Galleria has apparently decided to go back to this Court seeking a fifth TRO – despite this Court's strict and unequivocal warnings that "**there will not be any TROs to enjoin the foreclosure**" otherwise "**we're going to talk about sanctions for the cost of everybody's time.**" Galleria's allegations in its latest TRO are the exact same arguments it made before Judge Lopez, who rejected them. It appears that Galleria wants to have a second shot, or effectively have this Court now serve as the appellate court for the bankruptcy proceeding. Despite there being no dispute about Galleria being in default of its contractual obligations to NBK, Galleria's allegations deliberately misrepresent the record in the bankrtucpy court to have this Court believe that that matter was dismissed on grounds that do not exist.

Galleria also seeks to relitigate the very claims it previously dismissed against NBK, with prejudice, pursuant to the August 22, 2022 Settlement Agreement – by making the outlandish claim that it was fraudulently induced to enter into that agreement. But while all of Galleria's claims to undermine the Settlement Agreement are demonstrably false, the Settlement Agreement also contains an express merger clause and expressly disclaims reliance on any "alleged" representations in forming that agreement. Moreover, none of these arguments are new – and were rejected by this Court prior to its final ruling on July 5, 2023. If the aforementioned is not enough, Galleria is now harassing NBK's counsel – subpoenaing its lawyers in their personal capacity on

the eve of the temporary injunction original hearing date – in what appears to be an attempt to dissuade NBK's counsel from zealously representing its client's best interests.

To be clear, the *status quo* has not changed since this Court determined (for the final time) that NBK could foreclose on the Property on July 5, 2023. What has changed does not involve a change in fact or law, but that Galleria's bankruptcy filing – to override this Court's order – was rejected outright. No appeal of that dismissal was filed and the deadline to do so has expired. Respectfully, this Court has a long history with this case, and it should be readily apparent by now that all Galleria wants to do is continuously use the courts by asserting whatever claims it can in order to prevent NBK from exercising its contractually agreed upon rights to foreclose. This Court has previously warned Galleria that the filing of more TROs would warrant sanctions for the cost of everyone's time. That time has come.

## BACKGROUND

**1.      Galleria files a lawsuit against NBK in 2021 to Prevent Foreclosure of the Property.**

As the Court is well aware, NBK made a $51.6 million loan (the "Loan") to Galleria in March of 2018. This Loan was made pursuant to a Loan Agreement (the "Loan Agreement"), Promissory Note (the "Note"), and a Deed of Trust (the "Deed of Trust") (together the "Loan Documents") secured by a commercial building located at 2425 West Loop South, Houston, Texas 77027 (the "Property").

Galleria defaulted on the Loan in April 2021. NBK, as the holder of the Note, then exercised its right to accelerate the maturity of the debt and to commence foreclosure of the Property in July 2021. Galleria then filed a lawsuit on September 29, 2021 and obtained a temporary injunction order preventing foreclosure on March 30, 2022 (the "TI Order").

As the Court is also well aware, on August 22, 2022, the parties entered into the Settlement Agreement and, in accordance with that document, Galleria filed a notice of nonsuit as to all of its

Unofficial Copy Office of Marilyn Burgess District Clerk

4853-6915-5474.v1

claims against NBK with prejudice and moved to permanently dissolve the TI Order. ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

On September 1, 2022, NBK filed its Motion to Abate NBK's Counterclaims ("Motion to Abate"). On September 6, 2022, this Court entered an order granting the Motion to Abate (the "Stay Order").

**2.    After Defaulting on the Settlement Agreement, Galleria then filed this Lawsuit, a Second TRO, Seeking More Time to Comply with the Settlement Agreement.**

It is undisputed that Galleria never fulfilled its obligations under the Settlement Agreement. Seven days after failing to make its payment to NBK, on March 27, 2023[1], NBK noticed the Property for foreclosure with the sale to occur on May 2, 2023.[2] The following day, NBK moved the Court to lift the Stay Order and to appoint a receiver over the subject Property until it could be sold at public auction.

However, the day before NBK's hearing on its lift stay and receivership application could be heard, Galleria filed this lawsuit (under a different cause number and in a different court) on April 11, 2023 seeking yet another TRO to prevent this Court from appointing a receiver over the Property and to stop the impending foreclosure. The lawsuit was quickly transferred to this Court on April 11, 2023.

---

[1]    NBK issued an amended notice of foreclosure on March 29, 2023.

[2]    Galleria's TRO makes yet another false statement that NBK "took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure on March 29, 2023 in breach of the Confidential Settlement Agreement, which Plaintiff believes was done intentionally to prevent the sale." This is false. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████

**3.     The Court grants Galleria additional time to comply with the Settlement Agreement but warns "there are no more excuses."**

The following day after filing its TRO, a hearing was held on NBK's motion to lift stay and to appoint a receiver. At the hearing, counsel for Galleria made the nonsensical allegation that NBK breached the Settlement Agreement because apparently some unidentified person at NBK disclosed the contents of the unspecified details of the Settlement Agreement to an unnamed third-party at some unknown time. Counsel for Galleria, just as they do again in their most recent TRO, argued that NBK did this to prevent Galleria from honoring its contractual obligations <u>to pay NBK</u>. Galleria presented no evidence for these truly absurd statements. Notwithstanding, counsel for Galleria admitted that whatever "breach" that had occurred, the granting of more time by the Court to comply with the Settlement Agreement would allow Galleria to recover from that breach.

While NBK warned the Court this was yet another delay tactic (in the long history of delay tactics), the Court, given Galleria's attorney's representations as an officer of the Court, granted Galleria a total of one hundred and five (105) additional days (from March 20, to July 3) under the Settlement Agreement to make its settlement payment to NBK, stating: "***because you said on the record as an officer of the court that given more time, that if they can't get it done, then [NBK] can foreclose. I'm taking you to your word, Mr. Wetwiska***." (emphasis added).[3]

In exchange for the additional time, the Court then required Galleria to make three individual payments of $80,000 to NBK on the 15th of April, May, and June, respectively. The Court then stated that: "***failure to timely make a payment – I'm saying this on the record -- will allow [NBK] to immediately -- whatever the next opportune time is ... to file foreclosure, they can go do it***." (emphasis added).[4]

---

[3]     *See* **Exhibit A**, the April 12, 2023 Hearing Transcript at 72:19-22.

[4]     *Id*. at 80:14-19.

5

The Court then warned Galleria that any more TROs or filings related to the Settlement Agreement will result in the award of NBK's attorney fees, stating:

> **You're getting 60 days. If you don't -- there are no more excuses. And I will say this. If there are other filings relating to this issue of the settlement agreement, like the resolution of this issue and the foreclosure, we may start talking about fees.... I'll say it out loud. We're going to talk about sanctions for the cost of everybody's time.**[5]
>
> \*\*\*
>
> **On the record, there will not be any TROs to enjoin the foreclosure. Any TRO you try to file is going to end up in front of me, and I know the whole history of this case.**[6]

**4.    Galleria fails to make the last $80,000 payment and amended Settlement Payment and then files for Chapter 11 Bankruptcy.**

Galleria then failed to fulfill its obligations under the Settlement Agreement by the Court's amended deadline. Galleria never made the third $80,000 payment to NBK by June 15, 2023 (or anytime thereafter) nor did it make the amended settlement payment to NBK by July 3, 2023. Accordingly, NBK noticed the Property for foreclosure and notified Galleria that the Property would be sold at public auction on July 5, 2023.

Despite the warnings from this Court, Galleria filed two more TROs to forestall the July 5, 2023, foreclosure sale of the Property. In the first TRO, filed on July 3, 2023, Galleria made the ludicrous claim that it was "unable to remit [the settlement payment] as a result of the bank's inability to process wire transfers [that day]."[7] In the second TRO, filed on July 5, 2023, Galleria

---

[5]    *Id*. at 76:17-77:5.

[6]    *Id*. at 79:3-6.

[7]    *See* Borrower's July 3, 2023, Amended Original Petition, Emergency Application for Temporary Restraining Order and Jury Demand.

4853-6915-5474.v1

made no new allegations and only argued that the Court should stop the foreclosure under a theory of "unjust enrichment."[8]

As the Court will recall, both TRO's were immediately denied. After the Court denied the July 5 TRO, at approximately 9:50 am that morning, Galleria filed for Chapter 11 bankruptcy – once again preventing NBK from enforcing its right to foreclose on the Property via the automatic stay.

**5.    At the outset of the bankruptcy case, the bankrtucpy court stressed that it had a "fundamental problem with this case" and gave Galleria thirty days to "market test" their Plan of Reorganization to determine whether the case should proceed.**

On July 24, 2023, NBK moved to dismiss the Chapter 11 Bankruptcy for cause – on the basis it was filed in bad faith (*i.e.*, to thwart this Court's order allowing NBK to foreclose on the Property) and because there was never a reasonable hope of a successful reorganization (*i.e.*, the Borrower had no going concern to preserve).

At the September 22, 2023 hearing on NBK's motion to dismiss, the Honorable Judge Lopez repeatedly stressed his discomfort with Galleria's chapter 11 plan of reorganization (the "Plan"), particularly because it relied entirely on a theoretical infusion of cash from Galleria 2425's principal, Ali Choudhri ("Choudhri"). Indeed, Judge Lopez, throughout the hearing, stressed that Mr. Choudhri's dual role as both the manager of Galleria and as Galleria's largest unsecured secured creditor presented a "conflict" and created a "fundamental problem with [the] case" that was unlikely to be fixed:

> **THE COURT:    [If] [s]omebody disagrees with Mr. Choudhri in connection with the assets of the estate.  Who makes that call?  Nobody. So we're going to, it's a fundamental problem.  The largest -- one of the largest unsecured creditors, at least on the Schedules.  I'm not saying he's done anything bad. I don't know, Mr. Choudhri.  I'm just looking**

---

[8]    *See* Borrower's July 5, 2023, Second Amended Petition, Emergency Application for Temporary Restraining Order and Jury Demand.

4853-6915-5474.v1

at what I'm looking at.  A large -- The largest unsecured creditor with almost $1 million claim.  Now -- was also on some other papers. So who's going to make decisions about what's in the best interest of the Debtor to file a plan?  **There's a fundamental problem with this case. I'm not sure it can be fixed.  And that's where we're going.**[9]

\*\*\*

**I'm like, and I'm really uncomfortable.  It's driving all of these problems that I have with the budget, which is, you know, is rent supposed to be free for Jetall?  Is it, you know, are they not supposed to be collected 19,000, you know, is the $19,000 fee really a pass through fee?  I don't trust what I'm seeing.  And it makes me uncomfortable that I don't have an independent party telling me these answers.**[10]

\*\*\*

**I'm just telling you I'm uncomfortable with the lack of transparency. And I'm not saying it'' there, but there's -- we don't have an independent here, and I don't know how to proceed. And it's going to flow.  It's going to get worse as my inquiry goes on.... We haven't talked about feasibility of a plan.**[11]

\*\*\*

**I don't trust the numbers. I don't trust the books. I don't have a true independent who can tell me what we've got going on here.**[12]

Judge Lopez ultimately denied NBK's motion to dismiss without prejudice. However, Judge Lopez emphasized that this denial was "just an extension" of time so that Galleria could "market test" their Plan over the next thirty (30) days and, after that time expired, the Court would make a decision as to whether the case should proceed:

> I do have that Jetall is everywhere. And Mr. Choudhri is everywhere on these documents in some sense or another. I don't have enough today to get me comfortable, but when it comes to -- so I'm going to deny the motion to dismiss without prejudice. **If I find out that I get uncomfortable and say what you already know, that I'm already on edge, I won't hesitate to convert the case or do something on my own and I have the authority to do it**.[13]

\*\*\*

[9]   *See* **Exhibit B** the September 22, 2023 Hearing Transcript from the United States Bankruptcy Court for the Southern District of Texas, Case No. 23-60036-11 at 117:21-118:8.

[10]  *Id*. at 119:9-16.

[11]  *Id*. at 123:3-10.

[12]  *Id*. at 123:1-18.

[13]  *Id*. at 215:5-12.

So this case continues, but the case continues under really tight timelines and under really strict costs. And I don't like the position that I put you in. I just don't. I don't like the position I put others in. I do know as we get closer to the 90 days, they didn't raise it. But someone's going to have to start talking about interest payments and where this goes on that. If this case – I know there's a plan on file and I know what the Code says. I <u>got to make sure if we get there in the next two months. That is really, really a good market test, and [a] true independent looked at this.</u>[14]

\*\*\*

<u>And maybe we can all meet in about 30 days and see what this case really goes in the same way. It's just a – It's an extension.</u> I don't really know what I'm going to do yet, but I do know what I'm not doing today.[15]

6.    **Approximately five weeks later, and after Galleria failed to market test the Plan, the bankruptcy court dismisses Galleria's bankruptcy case because it was "administratively insolvent."**

On November 1, 2023, the bankruptcy court then held a "status conference" to determine,

*inter alia*, whether Galleria had "market tested" their Plan. To no surprise, Galleria failed to do so.

(*THE COURT: Right. But I said you couldn't go forward, the plan as proposed, because you have -- you've got to be able to market test it. So how do plan on proceeding*?).[16]

Judge Lopez then dismissed the bankruptcy proceeding, for cause, citing Galleria's

insolvency and inability to make interest payments to NBK:

> **THE COURT: The Court's already held a hearing on a motion to dismiss the case based upon, among other things, the amount of money it would take to continue this case. The Court denied it based on the evidence presented to the Court at the time... But for this case to continue there's going to have to be a lot of money. I'm going to have to require NBK to get paid interest. There's just not enough money in the budget, this Debtor is going to run out of money really fast...The only way this case survives is if I don't require NBK to be paid any interest on that loan pending the resolution of State Court matters, the matters of plan**

---

[14]   *Id*. at 217:23-218:8.

[15]   *Id*. at 219:19-22.

[16]   *See* **Exhibit C** the November 1, 2023 Hearing Transcript from the United States Bankruptcy Court for the Southern District of Texas, Case No. 23-60036-11 at 7:2-4.

**confirmation, and I'm unwilling to do that, <u>which makes this case immediately administratively insolvent</u>.[17]**

**\*\*\***

**This Debtor doesn't have enough money to pay even a half a month of interest on the secured loan and it would take until early 2024 to go deal with that. <u>I'm dismissing this case effective today under Section 1112(b) for cause</u>.[18]**

7.    **Galleria's TRO falsely represents the basis for Judge Lopez's dismissal of Galleria's bankruptcy case.**

Despite the bankruptcy court's clear reasons for dismissal provided above, Galleria now would have the Court believe that Judge Lopez dismissed the bankruptcy case due to the ongoing litigation between Galleria's owner, Choudhri, and Azeemah Zaheer ("Zaheer") – along with Ms. Zaheer's lawyers (David Tang and Rodney Drinnon). That litigation, pending in the 80th Judicial District, involves a dispute between Mr. Choudhri and Ms. Zaheer over the rights to control Galleria's mezzanine lender, Naissance Galleria, LLC ("Naissance"). In its temporary injunction, Galleria makes the false accusation that the aforementioned individuals, along with NBK, apparently conspired to use the Naissance litigation to somehow "*confuse and disrupt Plaintiff's bankruptcy case*" and that this ultimately "*resulted in the dismissal of the bankruptcy case*." Galleria states, specifically, that:

> "All of these actions, including the actions taken by Zaheer, Tang and Drinnon in direct violation of Judge Manor's temporary injunction, gave rise to Judge Lopez's serious concerns about the ability to move forward with the bankruptcy case without resolution in the state court action...As a result of this conspiracy by the defendants, the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case.[19]

---

[17]    *Id.* at 64:8-65:8.

[18]    *Id*. at 68:19-23.

[19]    TRO paras. 16 & 21.

4853-6915-5474.v1

This is demonstrably false. Indeed, Judge Lopez addressed this exact argument just minutes after dismissing the case, stating unequivocally that he did not put any weight on the allegations made in the Naissance dispute and that his order was based solely on Galleria's insolvency and inability to make interest payments to NBK:

> And I don't put any weight to what Mr. Drinnon told me. I don't put any weight to what Mr. Tang told me. I don't put any weight to anything else. I haven't taken a lick of evidence. It's just like a pleading, people get to say stuff.[20]
>
> ***
>
> MS. HAYWARD: If this case gets dismissed because of Mr. Tang and Mr. Drinnon –
>
> THE COURT: It's not being dismissed for Mr. Tang and Mr. Drinnon, it's dismissed -- it's being dismissed for far more than that. If that's the case, you haven't heard me. I'm saying we -- it's going to take time and money to resolve a lot of issues, and it's entirely based on me saying no interest [payments] to NBK. Not 1, not 1, not 1/2, not 100, not 200 grand, nothing. And if that's the case, then no money -- no administrative costs to you, or to anyone else who works on this case. Or to anyone else who would be hired to provide valuation testimony. And I'm unwilling to do that. I'm unwilling to do that. And the plan proposes, you know, that an insider is going to receive -- is going to make a $2-1/2 million contribution and they're going to get the equity. And that's going to require some time and work to get me comfortable. If that's the case, then that's going to require interest payments. People are entitled to adequate protection. And everything hinges on me holding everything and not doing anything until I decide this issue, and we run out of money really fast, and I'm unwilling to do it. So you have my reasons, they'll be on the Record, and I'll just enter an order saying for the reasons stated on the Record this case is dismissed. And it's not about Mr. Tang, it's about the allegations. It's about allegations, it's about interest, time, market testing under a plan, a lawyer who's willing to go out there and risk not being paid, but that doesn't mean that there's not an administrative expense.[21]

---

[20]  Exhibit C at 76:20-23.

[21]  *Id*. at 78:3-79:8.

4853-6915-5474.v1

Galleria also makes the false statement to this Court that Judge Lopez dismissed Galleria's case at an "emergency status conference requested by NBK."[22] The basis for this misstatement is unclear, but there was never an "emergency hearing" filed by NBK. And the aforementioned "status conference" was voluntarily set by Judge Lopez (and not NBK) so Judge Lopez could obtain an update on Galleria's efforts to "market test" their Plan.[23]

Despite Judge Lopez expressing serious concerns about the Plan and Galleria's bankruptcy from the outset, Galleria would also have this Court believe Judge Lopez initially showed approval of Galleria's Plan – before eventually changing his mind due to NBK's supposed "bad faith actions." Galleria states:

> Plaintiff promptly proposed a plan in the bankruptcy court, which was characterized as a "really smart" plan that "check[ed] all the boxes" for plan confirmation, according to Judge Lopez. Then, after NBK lost its motion to dismiss, it engaged in more bad faith actions by conspiring with Azeemeh Zaheer, David Tang, and Rodney Drinnon, to create confusion that caused havoc and further disrupted the bankruptcy case.[24]

Not so. Judge Lopez, at the status conference on November 1, 2023 – *after* he had already dismissed Galleria's bankruptcy case for cause – actually stated that Galleria's Plan was "really smart, it's just not market tested" and confirmed the case ought to be dismissed, emphasizing that Galleria could never get to plan confirmation due to the lack of capital. He stated:

> **THE COURT: -- we're just going to agree to disagree, Ms. Hayward. I got it, it's -- I'm not saying -- it's really smart, it's just not market tested. It's really smart on paper, it checks all the boxes. This checks -- it checks all the boxes. I got you. You're**

---

[22]  *See* para. 21.

[23]  As previously shown, at the September 22, 2023 hearing on NBK's motion to dismiss, Judge Lopez sated "**maybe we can all meet in about 30 days and see what this case really goes in the same way. It's just a – It's an extension. I don't really know what I'm going to do yet, but I do know what I'm not doing today.**" All parties then met for a "status hearing" on November 1, 2023 wherein Judge Lopez proceeded to outline his basis for dismissing the case "for cause."

[24]  *See* TRO at paras. 9-10.

**going to run out of money. You won't get there. You won't get to plan confirmation. You can't even survive on a contested plan confirmation based on the amount of money that we've got here.** You don't. You don't, because they're going to have pay interest [to NBK] till we get there. [25]

8.      **Galleria is now attempting to harass NBK's lawyers in an apparent attempt to dissuade them from pursing foreclosure.**

Making false statements to this Court is apparently not enough – as Galleria is resorting to harassing and intimidating NBK's counsel. On November 16, 2023, the day before Galleria's initial TRO hearing setting, Galleria sent a process server to the Houston office of Pillsbury to personally serve a subpoena on Mr. Charles Conrad – NBK's lead counsel in this matter. Galleria's process server also unsuccessfully attempted to serve a second subpoena on Ms. Amanda Halter, the Managing Partner of Pillsbury's Houston office.

There is obviously no basis, let alone a good faith basis, to claim that Pillsbury's attorneys are fact witnesses divorced from the litigation. To the contrary, Mr. Conrad's work in representing NBK in the Lawsuit is squarely related to and in furtherance of his defense of NBK against Plaintiff's baseless claims. Ms. Halter, as the Court knows, has never once appeared in this litigation as counsel for NBK.

There is simply no reason for Galleria to resort to this conduct – apart from seeking to thwart Pillsbury's diligent and successful representation of NBK in this matter. These actions are inexcusable and should not be tolerated.

For these reasons, and as explained herein, the TRO should be denied, and Galleria must be sanctioned. The Court should quash the subpoena and sanction Galleria for this inexplicable and inexcusable conduct.

---

[25]   Exhibit C at 76:3-12.

## II.
## ARGUMENT AND AUTHORITIES

**A.      There is No Basis for the Court to Grant Galleria's Temporary Injunction.**

This Court's warning to Galleria on April 12, 2023 was clear: "**there will not be any TROs to enjoin the foreclosure**" otherwise "**we're going to talk about sanctions for the cost of everybody's time.**" And since that time, Galleria has filed two more TROs – on July 3 and 5, 2023 – both of which the Court immediately denied. So, what has materially changed since then? Nothing.

Instead, Galleria filed bankruptcy to effectively appeal the Court's July 5, 2023, decision – but the bankruptcy court dismissed that action on November 1, 2023. Rather than appeal that decision (the deadline to appeal expired on November 15, 2023), Galleria has returned to this Court seeking yet another temporary injunction.

To begin and to be sure, nothing has actually changed since this Court ordered that NBK can proceed with its foreclosure on July 5, 2023.  What is before the Court now is yet another blatant attempt by Galleria to obtain an alternative outcome from where it presently finds itself facing foreclosure.  Galleria would now lead this Court to believe that Judge Lopez dismissed the bankruptcy case because NBK, sometime after September 21, 2023, conspired with Ms. Zaheer and her lawyers (Mr. Tang and Mr. Drinnon) to "confuse" Judge Lopez into dismissing the case by referring to ongoing litigation involving Mr. Choudhri and Ms. Zaheer over the control of Naissance. As shown herein, this assertion is simply and easily debunked by reviewing the bankruptcy court's transcript.  Ms. Hayward, Galleria's bankruptcy counsel, advanced these *very same* arguments to the bankruptcy court – and Judge Lopez strongly rejected them:

> And I don't put any weight to what Mr. Drinnon told me. I don't put any weight to what Mr. Tang told me. I don't put any weight to anything else. I haven't taken a lick of evidence. It's just like a pleading, people get to say stuff. [26]
>
> ***
>
> MS. HAYWARD: If this case gets dismissed because of Mr. Tang and Mr. Drinnon –
>
> THE COURT: <u>It's not being dismissed for Mr. Tang and Mr. Drinnon, it's dismissed -- it's being dismissed for far more than that. If that's the case, you haven't heard me.</u> I'm saying we -- it's going to take time and money to resolve a lot of issues, and it's entirely based on me saying no interest [payments] to NBK. [27]

That is, while these new allegations are false and deceptive, they were already addressed, and rejected, by the bankruptcy court.

In sum, Galleria sought to challenge this Court's July 5 order by filing for Chapter 11 bankruptcy. That didn't work, and rather than appeal that decision, Galleria is back before this Court to effectively challenge the bankruptcy court's order – and has done so by deliberately fabricating the record and the events that occurred in that case. But make no mistake, the *status quo* has not changed since July 5, 2023. Instead, what has changed is that Galleria has prolonged this lawsuit even further, adding even more expense litigating a case that should have never been filed. For these reasons, the temporary injunction must be denied.

**B.     The Court Can Award Sanctions Under both Chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13.**

Chapter 10 of the Texas Civil Practice and Remedies Code allows for sanctions for pleadings filed with an improper purpose that lacks legal or factual support. *Nath v. Tex.*

---

[26]   *Id.* at p. 76:20-23.

[27]   *Id*. at 78:3-10.

15

*Children's Hosp.*, 446 S.W.3d 355, 362 (Tex. 2014). Upon signing a pleading or motion, a signatory attests that:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal or existing law or the establishment of new law; [and]
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidential support after a reasonable opportunity for further investigation or discovery . . . .

TEX. CIV. PRAC. & REM. CODE § 10.001, *et. seq*. Pleadings that violate these requirements are sanctionable. *Id*.

Texas Rule of Civil Procedure 13 provides that pleadings that are groundless and in bad faith, intended to harass or are false when made are also sanctionable:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, [**14] and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who . . . make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt . . . .
>
> Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law . . . .
>
> TEX. R. CIV. P. 13. Rule 13 does not permit sanctions on groundlessness alone; pleadings must be groundless and brought in bad faith, for the purpose of harassment or be false when made. *Id*.

16

**C.     The Court Should Issue Sanctions for Galleria's Repeated, and Vexatious TROs Meant to Impede NBK's Foreclosure Rights and Increase Costs of this Litigation.**

This Court has repeatedly ruled NBK could foreclose on the Property and, moreover, it has warned Galleria that any future TROs to prevent NBK's foreclosure efforts would warrant sanctions. Yet, since issuing that warning, Galleria has filed *three* more TROs (not including the filing of its chapter 11 bankruptcy) to impede NBK's foreclosure rights.

Where, as here, a plaintiff flagrantly abuses the judicial system by filing frivolous claims to avoid a foreclosure, the Court is well within its discretion to impose monetary sanctions and dismiss the plaintiff's claims. *See Welch v. Specialized Loan Servicing, LLC*, No. 01-21-00704-CV, 2023 Tex. App. LEXIS 1257 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, no pet. h.) (affirming district court's imposition of sanctions dismissing claims and awarding attorney fees against a successor of borrower in favor of lender when borrower and subsequently its successor filed multiple lawsuits to stop foreclosure, raising substantially the same claims in each and none of the lawsuits was successful); *DTND Sierra Invs., L.L.C. v. HSBC Bank USA, N.A.*, 627 F. App'x 285 (5th Cir. 2015) (applying Texas law and affirming the lower court's imposition of sanctions upon a finding that the sanctioned party "engaged in a scheme to delay foreclosure by petitioning for temporary restraining orders in state court and dismissing those claims upon removal" and the sanctioned party was "also party to four materially identical actions that were dismissed on the merits" which showed that the sanctioned party "had knowledge its claims were meritless but nevertheless filed to delay foreclosure."); *DTND Sierra Invs., L.L.C. v. CitiMortgage, Inc.*, 624 F. App'x 846 (5th Cir. 2015) (applying Texas law and affirming lower court's imposition of sanctions where the court described the sanctioned party as "a frequent litigator in Texas federal and state courts" whose "business model appears to consist entirely of purchasing deeply discounted homes at homeowners association foreclosure sales, collecting rental income from the properties, and

17

then, when superior purchase-money mortgage lien holders attempt to foreclose, filing civil actions in state court attempting to halt the foreclosure."); *Frank v. Wells Fargo Bank*, No. 4:22-cv-00065, 2023 U.S. Dist. LEXIS 134914 (S.D. Tex. 2023) (applying Texas law and affirming the imposition of sanctions where debtor repeatedly interfered with foreclosure by filing bankruptcy petitions and state court actions in a "years-long campaign to prevent foreclosure.").

There is no doubt that Galleria's latest temporary injunction bears the hallmarks of a bad faith filing as to warrant sanctions. First, this Court already warned Galleria that any more TROs would warrant sanctions. Second, Galleria is attempting to relitigate claims it already dismissed with prejudice pursuant to the Settlement Agreement. Third, Galleria's arguments to get around the Settlement Agreement are demonstrably false and have been repeatedly rejected as a basis to stop NBK's foreclosure efforts. Fourth, Galleria has gone out of its way to misinform this Court regarding the posture of its bankruptcy case – going so far as to misquote and misrepresent the bankruptcy court's statements.

It appears that Galleria is not, in the slightest bit, concerned with the truth – but instead, interested in harassing NBK (and now its lawyers) and causing unnecessary delays to increase the costs of litigation. The Court should put an end to this, once and for all, and reject Galleria's latest TRO and dismiss Galleria's claims. The Court should also sanction Galleria for its vexatious and inexcusable actions and award NBK its attorney's fees for having to continuously respond to these bad faith filings.

## PRAYER

For the forgoing reasons, NBK prays that the Court deny Galleria's TRO in its entirety. NBK also respectfully prays that this Court sanction Galleria, dismiss Galleria's claims, award NBK its costs as well as reasonable and necessary attorney fees, and grant it all other relief to which it is entitled.

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: _/s/ Charles Conrad_
        Charles C. Conrad
        State Bar No. 24040721
        Elizabeth Klingensmith
        State Bar No. 24046496
        Ryan Steinbrunner
        State Bar No. 24093201
        Two Houston Center
        909 Fannin, Suite 2000
        Houston, Texas 77010-1018
        Telephone: (713) 276-7600
        Facsimile: (281) 276-7634
        charles.conrad@pillsburylaw.com
        liz.klingensmith@pillsburylaw.com
        ryan.steinbrunner@pillsburylaw.com

*Attorneys for National Bank of Kuwait, S.A.K.P., New York Branch*

## CERTIFICATE OF SERVICE

In accordance with Rule 21 of the Texas Rules of Civil Procedure, I certify that on this 21st day of November 2023, a true and correct copy of the foregoing document was served on all counsel of record through electronic service.

_/s/ Charles C. Conrad_
        Charles C. Conrad

4853-6915-5474.v1

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 81877077
Filing Code Description: No Fee Documents
Filing Description: NBK Motion for Sanctions
Status as of 11/21/2023 4:12 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 11/21/2023 3:13:33 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/21/2023 3:13:33 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/21/2023 3:13:33 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/21/2023 3:13:33 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/21/2023 3:13:33 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/21/2023 3:13:33 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/21/2023 3:13:33 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/21/2023 3:13:33 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/21/2023 3:13:33 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/21/2023 3:13:33 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/21/2023 3:13:33 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/21/2023 3:13:33 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/21/2023 3:13:33 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

# **<u>EXHIBIT A</u>**

## **To be filed under seal**

# EXHIBIT B

## To be filed under seal

Unofficial Copy Office of Marilyn Burgess District Clerk

# **EXHIBIT C**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-60036-11 |
| | § | HOUSTON, TEXAS |
| GALLERIA 2425 OWNER, LLC, | § | WEDNESDAY, |
| | § | NOVEMBER 1, 2023 |
| DEBTOR. | § | 10:04 A.M. TO 11:40 A.M. |

**STATUS CONFERENCE**

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    SEE NEXT PAGE

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
(281) 277-5325 (office)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**APPEARANCES**:

| | |
|---|---|
| FOR DEBTOR, GALLERIA 2425 OWNER, LLC: | HAYWARD, PLLC<br>Melissa S. Hayward, Esq.<br>10501 N. Central Expressway<br>Suite 106<br>Dallas, TX 75231<br>972-755-7100 |
| FOR NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH: | PILLSBURY WINTHROP SHAW PITTMAN<br>Charles C. Conrad, Esq.<br>909 Fannin Street,<br>Suite 2000<br>Houston, TX 77010<br>713-276-7626<br><br>PILLSBURY WINTHROP SHAW PITTMAN<br>Patrick Fitzmaurice, Esq.<br>Kwame Akuffo, Esq.<br>31 West 52nd Street<br>New York NY 10016<br>212-858-1171 |
| FOR THE US TRUSTEE: | OFFICE OF THE US TRUSTEE<br>Jayson B. Ruff, Esq.<br>515 Rusk Avenue, Suite 3516<br>Houston, TX 77002<br>713-718-4650 |
| FOR ARI CHOUDHRI: | AKIN GUMP STRAUSS HAUER & FELD<br>Jim Wetwiska, Esq.<br>1111 Louisiana Street<br>44th Floor<br>Houston, TX 77002<br>713-220-5899 |
| FOR NAISSANCE GALLERIA, LLC: | ATTORNEY AT LAW<br>David Tang, Esq.<br>9801 Westheimer Road<br>Houston, TX 77042<br>832-287-3227<br><br>THE POPE LAW FIRM<br>James Q. Pope, Esq.<br>6161 Savoy Drive, Suite 1125<br>Houston, TX 77036<br>713-449-4481 |
| ALSO PRESENT: | Sarah Cox |

Unofficial Copy Office of Marilyn Burgess, Harris County District Clerk

| | |
|---|---|
| 1 | **HOUSTON, TEXAS; WEDNESDAY, NOVEMBER 1, 2023; 10:04 A.M.** |
| 2 | THE COURT:  All right.  Good morning, everyone. |
| 3 | This is Judge Lopez.  I'm going to call the 10:00 a.m. case. |
| 4 | Today is November 1, you know, 23-60036, Galleria 2425 Owner, |
| 5 | LLC, here on a status conference, an application to employ, |
| 6 | and I'm sure other stuff.  Why don't we just take appearances |
| 7 | in the courtroom, and then we'll continue? |
| 8 | MS. HAYWARD:  Good morning, Your Honor.  Melissa |
| 9 | Hayward here for the Debtor. |
| 10 | THE COURT:  Okay.  Good morning, Mr. Hayward.  Good |
| 11 | to see you. |
| 12 | Mr. Ruff, good morning. |
| 13 | MR. RUFF:  Good morning, Your Honor.  Jayson Ruff on |
| 14 | behalf of the United States Trustee. |
| 15 | THE COURT:  Good morning. |
| 16 | MR. CONRAD:  Good morning, Your Honor.  Charles |
| 17 | Conrad on behalf of National Bank of Kuwait, along with |
| 18 | (indiscernible). |
| 19 | THE COURT:  Good morning to both of you. |
| 20 | MR. WETWISKA:  Good morning, Your Honor.  I'm Jim |
| 21 | Wetwiska, Akin Gump.  I am here for Mr. Choudhri, and I don't |
| 22 | know if I'll need to speak, not speak today.  But as I've |
| 23 | witnessed in this proceeding and other proceedings that some |
| 24 | of these lawyers are involved in, you don't know how things |
| 25 | are going to unfold.  So I'm just here today -- |

1    have a setting on the disclosure statement for November 29.

2          THE COURT:  Right.  But I said you couldn't go

3    forward, the plan as proposed, because you have -- you've got

4    to be able to market test it.  So how do plan on proceeding?

5          MS. HAYWARD:  Well, Your Honor, I guess --

6          THE COURT:  In other words, I'm not letting you put

7    that out there without it being market tested.

8          MS. HAYWARD:  When Your Honor says market tested,

9    I'm a little unclear as to --

10          THE COURT:  In other words, there's an equity

11    contribution in there that -- there has to be disclosure as to

12    how you reach that number in the analysis that was done to

13    reach it.

14          MS. HAYWARD:  Your Honor, it's not an equity -- I

15    mean it's not -- it's not purchasing -- I mean there is no

16    equity.  Right?  We have a debtor --

17          THE COURT:  If he retains the ownership.  Right?

18    Right?  There's an absolutely priority rule.  Right?

19          MS. HAYWARD:  Yes, Your Honor.

20          THE COURT:  We all know it applies -- so how does --

21    how does Choudhri own the entity?  That's the essence.  Right?

22    So he's essentially going to make a contribution.

23          MS. HAYWARD:  Well, I believe the way the plan's

24    structured there's a new entity that's coming in --

25          THE COURT:  Right.

1    any right to anything, whether she's done everything right, I

2    don't -- I have no idea and are making no findings one way or

3    the other about what Ms. Zahire's rights are.  If it turns out

4    that she didn't have a right to do any of what she did, that's

5    going to be a real problem, and I think the State Court would

6    be in a position to address those issues here.

7          (Pause in the proceedings.)

8          THE COURT:  The Court's already held a hearing on a

9    motion to dismiss the case based upon, among other things, the

10   amount of money it would take to continue this case.  The

11   Court denied it based on the evidence presented to the Court

12   at the time.

13         NBK now seeks and files objections along with the

14   United States Trustee as to whether Ms. Hayward's qualified to

15   serve as Debtor's counsel under Section 327 of the Bankruptcy

16   Code.  The Court has not taken that issue up.

17         But for this case to continue there's going to have

18   to be a lot of money.  I'm going to have to require NBK to get

19   paid interest.  There's just not enough money in the budget,

20   this Debtor is going to run out of money really fast.  And the

21   Court's in the position where it's going to have to take it

22   all, or none, even if we're going to take it up all and deal

23   with allegations where somebody has made a representation to

24   this Court, or potentially made -- maybe say potentially made

25   representations to this Court that could be really tricky.

1          Interest on the loan to NBK at the non-default rate

2    is about $353,000 a month.  On the default based on the

3    evidence presented at the cash collateral, it was about

4    $447,000 a month.  The only way this case survives is if I

5    don't require NBK to be paid any interest on that loan pending

6    the resolution of State Court matters, the matters of plan

7    confirmation, and I'm unwilling to do that, which makes this

8    case immediately administratively insolvent.

9          No way this place could proceed.  The Court would

10   have to deal with serious allegations that were made in this

11   Court.  The Court would have to deal with whether there's

12   certain debt, whether this Debtor is subject to certain -- is

13   collateral under the debt, who the owner, who controls the

14   parent, what the parent wants to do, a lot going on here.

15         The allegations that are alleged, the Court would

16   have to really do a lot of finding and it would require a lot

17   more investigation.  I don't know.  Mr. Choudhri's involved in

18   litigation at the State Court level involving Naissance

19   alleging some strong allegations, I don't need to get into

20   them because I don't want to, but here Mr. Choudhri is listed

21   as an unsecured creditor to the tune of $960,000.  He also

22   controls a number of entities that are owed nmoney, and

23   Mr. Darjon (sic) filed these under penalty of perjury,

24   assuming he did his diligence.  He's a good man.

25         The Debtor has filed a plan but that plan cannot

1    plan, because you can't confirm this plan quickly.

2         You can't get quickly to plan confirmation based

3    upon the issues that I've identified.  And there would have to

4    be investigations.  All right.  Some Court's going to have to

5    do it.  The State Court's already taking it up.  And this

6    Debtor is in no position to pay one month, or even a half a

7    month of interest to secured creditor.  Secured creditor

8    hadn't been paid in quite some time.

9         I don't -- before the Court spends the time and the

10   expense questioning, and I would note that the only way

11   secured creditor -- you know, while the Court spends the time

12   and the money taking up lawyer fees where Ms. Hayward would

13   have to defend herself, and I believe in her success, will

14   have a right to be paid.

15        Maybe she wins, maybe she loses.  If she loses, then

16   this case gets immediately dismissed, I've got to give --

17   because to then take time to go find new counsel, and you

18   still have to pay interest.  But if Ms. Hayward wins they've

19   now taken enough money.  This Debtor doesn't have enough money

20   to pay even a half a month of interest on the secured loan and

21   it would take until early 2024 to go deal with that.

22        I'm dismissing this case effective today under

23   Section 1112(b) for cause.  I would also note that this case

24   was filed in Victoria.  In connection with this I don't see a

25   connection with Victoria as well.  The cost to transfer this

1          THE COURT:  Well --

2          MS. HAYWARD:  So that's the --

3          THE COURT:   -- we're just going to agree to

4    disagree, Ms. Hayward.  I got it, it's -- I'm not saying --

5    it's really smart, it's just not market tested.  It's really

6    smart on paper, it checks all the boxes.  This checks -- it

7    checks all the boxes.  I got you.  You're going to run out of

8    money.  You won't get there.  You won't get to plan

9    confirmation.  You can't even survive on a contested plan

10   confirmation based on the amount of money that we've got here.

11   You don't.  You don't, because they're going to have pay

12   interest till we get there.

13          I'm going to have to figure out what's happening in

14   the adversary proceeding.  And if somebody lied to me on the

15   stand, I'm not saying anybody did, but if somebody did, it

16   turns out that something happened, somebody lied to me on the

17   stand, things get really uncomfortable around here.  And I

18   think everybody ought to go figure all that stuff out in State

19   Court.

20          And I don't put any weight to what Mr. Drinnon told

21   me.  I don't put any weight to what Mr. Tang told me.  I don't

22   put any weight to anything else.  I haven't taken a lick of

23   evidence.  It's just like a pleading, people get to say stuff.

24   I take it seriously though.  We have to think of it here, but

25   that's not happening.  Those are allegations that the lawyers

1        we're trying to save this asset.

2                THE COURT:  No, I know, and you can --

3                MS. HAYWARD:  If this case gets dismissed because of

4        Mr. Tang and Mr. Drinnon --

5                THE COURT:  It's not being dismissed for Mr. Tang

6        and Mr. Drinnon, it's dismissed -- it's being dismissed for

7        far more than that.  If that's the case, you haven't heard me.

8        I'm saying we -- it's going to take time and money to resolve

9        a lot of issues, and it's entirely based on me saying no

10       interest to NBK.  Not 1, not 1, not 1/2, not 100, not 200

11       grand, nothing.

12               And if that's the case, then no money -- no

13       administrative costs to you, or to anyone else who works on

14       this case.  Or to anyone else who would be hired to provide

15       valuation testimony.  And I'm unwilling to do that.  I'm

16       unwilling to do that.  And the plan proposes, you know, that

17       an insider is going to receive -- is going to make a $2-1/2

18       million contribution and they're going to get the equity.  And

19       that's going to require some time and work to get me

20       comfortable.

21               If that's the case, then that's going to require

22       interest payments.  People are entitled to adequate

23       protection.  And everything hinges on me holding everything

24       and not doing anything until I decide this issue, and we run

25       out of money really fast, and I'm unwilling to do it.

1        So you have my reasons, they'll be on the Record,

2   and I'll just enter an order saying for the reasons stated on

3   the Record this case is dismissed.  And it's not about

4   Mr. Tang, it's about the allegations.  It's about allegations,

5   it's about interest, time, market testing under a plan, a

6   lawyer who's willing to go out there and risk not being paid,

7   but that doesn't mean that there's not an administrative

8   expense.

9        I don't know.  And I do know we can't proceed on the

10  adversary because of Naissance, and that issue has to get

11  resolved.  And I have an adversary proceeding right now where

12  all 3 are still there, and that can't proceed.  There's a

13  State Court injunction saying Naissance can't proceed.  I

14  don't -- why don't you all go fight about it.  Maybe they come

15  back -- it's just a freeze, but you can't -- but the problem

16  is they freeze the whole thing because they're involved in it.

17       So that's my ruling.  Thank you.

18       UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

19  (Hearing adjourned 11:40 a.m.)

20

21

22

23

24

25                    * * * * *

I certify that the foregoing is a correct transcript to the best of my ability produced from the electronic sound recording of the proceedings in the above-entitled matter.

/S/  MARY D. HENRY

CERTIFIED BY THE AMERICAN ASSOCIATION OF

ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

JTT TRANSCRIPT #67838

DATE FILED:  NOVEMBER 7, 2023

11/21/2023 4:33 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81884511
By: Bonnie Lugo
Filed: 11/21/2023 4:33 PM

## CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC,<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | HARRIS COUNTY, TEXAS |
| NATIONAL BANK OF KUWAIT,<br>S.A.K.P., NEW YORK BRANCH, | §<br>§<br>§<br>§ | |
| Defendant. | §<br>§ | 281ST JUDICIAL DISTRICT |

## NOTICE OF HEARING

Please take notice that on December 12, 2023, beginning at 8:30 a.m. in the 281st Judicial District Court of Harris County, Texas, 201 Caroline Street, 14th Floor, Houston, Texas 77002, an oral, in-person hearing will be held on Defendant National Bank of Kuwait S.A.K.P., New York Branch's Motion for Summary Judgment, which was filed June 9, 2023.

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:    */s/ Charles C. Conrad*
　　　　Charles C. Conrad
　　　　State Bar No. 24040721
　　　　Elizabeth Klingensmith
　　　　State Bar No. 24046496
　　　　Ryan Steinbrunner
　　　　State Bar No. 24093201
　　　　Two Houston Center
　　　　909 Fannin, Suite 2000
　　　　Houston, Texas 77010-1018
　　　　Telephone: (713) 276-7600
　　　　Facsimile: (281) 276-7634
　　　　charles.conrad@pillsburylaw.com
　　　　liz.klingensmith@pillsburylaw.com
　　　　ryan.steinbrunner@pillsburylaw.com

*Attorneys for National Bank of Kuwait, S.A.K.P., New York Branch*

Unofficial Copy Office of Marilyn Burgess District Clerk

4856-7193-5378.v1

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 21 of the Texas Rules of Civil Procedure, I certify that on this 21st day of November 2023, a true and correct copy of the foregoing document was served on all counsel of record through electronic service.

*/s/ Charles C. Conrad*
Charles C. Conrad

2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 81884511
Filing Code Description: No Fee Documents
Filing Description: Notice of Hearing on NBK's Motion for Summary Judgment filed June 9, 2023
Status as of 11/21/2023 4:54 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 11/21/2023 4:33:05 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/21/2023 4:33:05 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/21/2023 4:33:05 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/21/2023 4:33:05 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/21/2023 4:33:05 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/21/2023 4:33:05 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/21/2023 4:33:05 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/21/2023 4:33:05 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/21/2023 4:33:05 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/21/2023 4:33:05 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/21/2023 4:33:05 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/21/2023 4:33:05 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/21/2023 4:33:05 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/21/2023 4:37 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81884887
By: Bonnie Lugo
Filed: 11/21/2023 4:37 PM

**CAUSE NO. 2023-22748**

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| **Defendant.** | § | **281ST JUDICIAL DISTRICT** |

**ORDER ON PLAINTIFF'S AMENDED PETITION AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

ON THIS THE ____ day of _____, 2023, the Court considered Plaintiff, Galleria 2425 Owner, LLC's Amended Petition & Emergency Application for Temporary Restraining Order ("Application"). The Court, having considered the Plaintiff's Application, the response and any reply, the arguments of counsel, and the pleadings on file, has determined that Plaintiff's Application is without merit and should be denied, and Defendant National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") is permitted to foreclose on the property located at 2425 West Loop South, Houston, Texas 77027.

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED** that:

1.     The Amended Petition and Emergency Application for Temporary Restraining Order is **DENIED**.  It is further,

2.     **ORDERED, ADJUDGED AND DECREED** that NBK may proceed with its foreclosure on December 5, 2023, or any date thereafter in accordance with the provisions of Chapter 51 of the Texas Property Code, on the property located at 2425 West Loop South, Houston, Texas 77027. It is further,

4888-8732-6866.v2

3.      **ORDERED** that Plaintiff appear on _____, 2023 at _____ a.m./p.m. to show cause as to why sanctions should not be levied against Plaintiff and counsel for Plaintiff pursuant to TEX. CIV. PRAC. REM. CODE §10.001. *et seq.* and TEX. R. CIV. P. 13.  It is further,

4.      **ORDERED** that NBK appear on _____, 2023 at _____ a.m./p.m. to present or submit evidence of all attorney's fees and costs incurred related to responding to the Amended Petition and Emergency Application for Temporary Restraining Order.

SIGNED this the _____ day of _____, 2023.

_____
HONORABLE JUDGE PRESIDING

**RESPECTFULLY SUBMITTED:**

By: ___*/s/ Charles C. Conrad*___
        Charles C. Conrad
        State Bar No. 24040721
        Elizabeth Klingensmith
        State Bar No. 24046496
        Ryan Steinbrunner
        State Bar No. 24093201
        Two Houston Center
        909 Fannin, Suite 2000
        Houston, Texas 77010-1018
        Telephone: (713) 276-7600
        Facsimile: (281) 276-7634
        charles.conrad@pillsburylaw.com
        liz.klingensmith@pillsburylaw.com
        ryan.steinbrunner@pillsburylaw.com

***Attorneys for Defendant National Bank of Kuwait,***
***S.A.K.P., New York Branch***

2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 81884887
Filing Code Description: Proposed Order
Filing Description: Proposed Order on Plaintiff's Amended Petition and Emergency Application for Temporary Restraining Order and Order to Show Cause
Status as of 11/21/2023 4:54 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 11/21/2023 4:37:37 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/21/2023 4:37:37 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/21/2023 4:37:37 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/21/2023 4:37:37 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/21/2023 4:37:37 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/21/2023 4:37:37 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/21/2023 4:37:37 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/21/2023 4:37:37 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/21/2023 4:37:37 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/21/2023 4:37:37 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/21/2023 4:37:37 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/21/2023 4:37:37 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/21/2023 4:37:37 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/21/2023 5:22 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81887658
By: Patricia Gonzalez
Filed: 11/21/2023 5:22 PM

## CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC,<br>　　　Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | HARRIS COUNTY, TEXAS |
| NATIONAL BANK OF KUWAIT,<br>S.A.K.P., NEW YORK BRANCH,<br>　　　Defendant. | §<br>§<br>§<br>§ | 281ST JUDICIAL DISTRICT |

### NOTICE OF APPEARANCE OF ADDITIONAL COUNSEL

COMES NOW, Defendant National Bank of Kuwait, S.A.K.P., New York Branch ("NBK" or "Defendant"), by and through its attorneys of record in the above-styled cause, and files this Notice of Appearance of Additional Counsel reflecting that Elizabeth Klingensmith (Texas Bar No. 24046496), of PILLSBURY WINTHROP SHAW PITTMAN LLP, 909 Fannin, Suite 2000, Houston, Texas, 77010, Tel. (713) 276-7600, hereby enters an appearance as counsel for Defendant.

It is agreed that Charles C. Conrad (Texas Bar No. 24040721) and Ryan Steinbrunner (Texas Bar. No. 24093201), of PILLSBURY WINTHROP SHAWN PITTMAN, LLP, 909 Fannin, Suite 2000, Houston, Texas 77010, Tel. (713) 276-7600, will remain as lead counsel and co-counsel for Defendant, respectively.

4891-1854-3505.v1

Dated: November 21, 2023

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:    */s/ Elizabeth Klingensmith*

        Charles C. Conrad
        State Bar No. 24040721
        Elizabeth Klingensmith
        State Bar No. 24046496
        Ryan Steinbrunner
        State Bar No. 24093201
        Two Houston Center
        909 Fannin, Suite 2000
        Houston, Texas 77010-1018
        Telephone: (713) 276-7600
        Facsimile: (281) 276-7634
        charles.conrad@pillsburylaw.com
        liz.klingensmith@pillsburylaw.com
        ryan.steinbrunner@pillsburylaw.com

        *Attorneys for Defendant National Bank of*
        *Kuwait, S.A.K.P., New York Branch*

## CERTIFICATE OF SERVICE

       I hereby certify that on November 21, 2023, a copy of the foregoing was served on counsel of record for all parties by electronic service using the court's electronic noticing system and in accordance with the Texas Rules of Civil Procedure.

                    */s/ Elizabeth Klingensmith*
                    Elizabeth Klingensmith

4891-1854-3505.v1

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Elizabeth Klingensmith
Bar No. 24046496
nancy.jones@pillsburylaw.com
Envelope ID: 81887658
Filing Code Description: Notice
Filing Description: Notice of Appearance of Additional Counsel
Status as of 11/22/2023 8:19 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 11/21/2023 5:22:09 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/21/2023 5:22:09 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/21/2023 5:22:09 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/21/2023 5:22:09 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/21/2023 5:22:09 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/21/2023 5:22:09 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/21/2023 5:22:09 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/21/2023 5:22:09 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/21/2023 5:22:09 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/21/2023 5:22:09 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/21/2023 5:22:09 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/21/2023 5:22:09 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/21/2023 5:22:09 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/21/2023 5:22:09 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/21/2023 5:39 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81888184
By: Bonnie Lugo
Filed: 11/21/2023 5:39 PM

# pillsbury

Pillsbury Winthrop Shaw Pittman LLP
Two Houston Center 909 Fannin, Suite 2000 | Houston, TX 77010-1018 | tel 713.276.7600 | fax 713.276.7673

Charles C. Conrad
tel: +1.713.276.7626
charles.conrad@pillsburylaw.com

November 21, 2023

The Honorable Christine Weems
Judge, 281st Civil Court
Harris County Civil Courthouse
201 Caroline, 14th Floor
Houston, TX 77002

> Re:   Cause No. 2023-22748; Galleria 2425 Owner, LLC v. National
> Bank of Kuwait

Dear Judge Weems,

   This is to notify the Court and counsel of record that an unredacted and unsealed copy of *National Bank of Kuwait's Response to Galleria 2425 Owner, LLC's Application for Temporary Restraining Order and Motion for Sanctions*, filed November 21, 2023, in the above matter, was delivered to the Court via hand delivery and to counsel of record identified below (and no others) via email.

Sincerely,

Charles C. Conrad

James Pope – jamesp@thepopelawfirm.com
Robin Harrison – rharrison@hicks-thomas.com

Copy of this letter to all parties via e-service in accordance with Texas Rules of Civil Procedure.

    4889-4172-2002.v1

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 81888184
Filing Code Description: No Fee Documents
Filing Description: Letter to Court regarding redacted/sealed response and exhibits
Status as of 11/22/2023 10:12 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 11/21/2023 5:39:27 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/21/2023 5:39:27 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/21/2023 5:39:27 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/21/2023 5:39:27 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/21/2023 5:39:27 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/21/2023 5:39:27 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/21/2023 5:39:27 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/21/2023 5:39:27 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/21/2023 5:39:27 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/21/2023 5:39:27 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/21/2023 5:39:27 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/21/2023 5:39:27 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/21/2023 5:39:27 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/21/2023 5:39:27 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/21/2023 6:51 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81889248
By: Bonnie Lugo
Filed: 11/21/2023 6:51 PM

**James Q. Pope**
THE POPE LAW FIRM
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
713-449-4481
jamesp@thepopelawfirm.com

November 21, 2023

**Hon. Judge Christine Weems**
281st Judicial District Court
201 Caroline, 14th Floor,
Houston, Texas 77002

      RE:   Cause No.: 2023-22748, Galleria 2425 Owner, LLC v. National Bank of Kuwait

Dear Judge Weems,

      I am writing this letter in response to Mr. Rodney Drinnon's letter requesting an expedited hearing on an Emergency Motion to conduct depositions as they relate to his Motion to Dismiss Pursuant to the Texas Citizens Participation Act.

      When a Motion to Dismiss pursuant to the Texas Citizens Participation Act is filed, all discovery is stayed, and no good cause exists to conduct depositions in this case. Merely arguing that limited depositions are necessary in order to defend Drinnon's motion to dismiss is not sufficient to show good cause for discovery under the TCPA[1].  Furthermore:

1. Plaintiff never served Rodney Drinnon with a copy of Plaintiff's Amended Petition filed on November 14, 2023, and service is necessary to invoke the Texas Citizens Participation Act;

2. On November 16, 2023, at 3:35pm, I sent an email to Rodney Drinnon, and his co-counsel, David Tang, advising that the Amended Petition would once again be amended to remove them both as named defendants.  The email was sent before Drinnon's Motion to Dismiss was filed; and

3. On November 16, 2023, at 5:08pm, Plaintiff's Second Amended Petition removing Drinnon as a named defendant was filed with the court.

      Drinnon is not currently a party to this suit, and the court should not entertain Rodney Drinnon's request for an expedited hearing on his motion requesting depositions.

      Thank you for your time and consideration in advance.

                  Best Regards,

                  /s/ James Q. Pope
                  James Q. Pope

---

[1] In re D.C., No. 05-13-00944-CV, 2013 WL 4041507, at *1 (Tex. App.—Dallas Aug. 9, 2013, orig. proceeding)

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 81889248
Filing Code Description: No Fee Documents
Filing Description: Letter to 281st Court from Plaintiff
Status as of 11/22/2023 10:13 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/21/2023 6:51:12 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/21/2023 6:51:12 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/21/2023 6:51:12 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/21/2023 6:51:12 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/21/2023 6:51:12 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/21/2023 6:51:12 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/21/2023 6:51:12 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/21/2023 6:51:12 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/21/2023 6:51:12 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/21/2023 6:51:12 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/21/2023 6:51:12 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/21/2023 6:51:12 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/21/2023 6:51:12 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/21/2023 6:51:12 PM | SENT |

11/21/2023 10:51 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81890600
By: Bonnie Lugo
Filed: 11/21/2023 10:51 PM

# MCCATHERN

RODNEY L. DRINNON
Managing Partner
rdrinnon@mccathernlaw.com

November 21, 2023

The Honorable Judge Weems                                    *Via Electronic Filing*
c/o Bonnie Lugo, Clerk
281st Judicial District Court
201 Caroline, 14th Floor
Houston Texas 77002

> Re: Cause No.2023-22748; *Galleria 2425 Owner, LLC v. National Bank of Kuwait,*
> *S.A.K.P., New York Branch;* In the 281st Judicial District Court of Harris County,
> Texas.

Dear Judge Weems:

I am writing in reply to James Q. Pope's letter filed this evening in response to my request for an expedited hearing on my Emergency Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri pursuant to CPRC § 27.006(B) ("**Emergency Motion**") to be set concomitant with the Motion for Temporary Injunction set for hearing by Galleria 2425 Owner, LLC ("Galleria 2425") on Wednesday, November 22, 2023.  Put bluntly, the arguments set forth therein are unsupported in both fact and law.

Service is not required to invoke the TCPA.  Laura Lee Prather & Justice Jane Bland, *The Developing Jurisprudence of the Texas Citizens Participation Act*, 50 Tex. Tech L. Rev. 633, 648 (2018). The filing of a TCPA Motion constitutes a general appearance.  "A party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Electronics Co. v. Trejo,* 142 S.W.3d 302, 304–05 (Tex.2004) (per curiam).

Without question, I sought "affirmative action" from this Court when I filed my Motion to Dismiss Pursuant to the TCPA ("**Motion to Dismiss**") seeking a dismissal with prejudice, sanctions and attorney's fees.  I made a general appearance.  Only after I set my Motion to Dismiss for hearing did counsel for Galleria 2425, James Pope ("Pope"), email me claiming he was going to dismiss me as a party.  He *never* indicated that he was going to nonsuit Galleria 2425's claims against me <u>with prejudice</u>.  Consequently, I filed my Motion to Dismiss an hour-and-a-half ***before*** Galleria 2425 attempted to nonsuit me <u>without prejudice</u>.

**MᴄCᴀᴛʜᴇʀɴ Hᴏᴜꜱᴛᴏɴ**
November 21, 2023
Page 2

___

As stated in my Motion, Texas law is settled, a motion to dismiss filed pursuant to the TCPA survives the nonsuit of the offending parties' claims. *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 752 (Tex. App. [1ˢᵗ Dist.] 2019). *see also The Iola Barker v. Hurst*, No. 01-17-00838-CV, 2018 WL 3059795, at *5 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.) (holding that TCPA motion to dismiss, seeking dismissal with prejudice and attorney's fees, costs, and sanctions, constituted "pending claim for affirmative relief" within meaning of Rule 162); *Walker v. Hartman*, 516 S.W.3d 71, 80 (Tex. App.—Beaumont 2017, pet. denied) (recognizing that TCPA motion to dismiss survives nonsuit). Galleria 2425's attempt to nonsuit me without prejudice has no effect on my Motion to Dismiss. Again, you can't file suit against an attorney for simply doing his job and when called on the carpet say "oops, my bad."

For these reasons, I remain a party to this action until my Motion to Dismiss has been heard. Again, I am humbly asking for a brief in-person hearing ten (10) or fifteen (15) minutes before Galleria 2425's Emergency Temporary Injunction hearing.

Regards,

*/s/Rodney Drinnon*

Rodney Drinnon

Unofficial Copy Office of Marilyn Burgess District Clerk

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Simone Nunez on behalf of Rodney  Drinnon
Bar No. 24047841
snunez@mccathernlaw.com
Envelope ID: 81890600
Filing Code Description: No Fee Documents
Filing Description: Drinnon's Response Letter to Court
Status as of 11/22/2023 10:13 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/21/2023 10:51:07 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/21/2023 10:51:07 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/21/2023 10:51:07 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/21/2023 10:51:07 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/21/2023 10:51:07 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/21/2023 10:51:07 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/21/2023 10:51:07 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/21/2023 10:51:07 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/21/2023 10:51:07 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/21/2023 10:51:07 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/21/2023 10:51:07 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/21/2023 10:51:07 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/21/2023 10:51:07 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/21/2023 10:51:07 PM | SENT |

11/22/2023 2:42 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 81915723
By: Bonnie Lugo
Filed: 11/22/2023 2:42 PM



# MACGEORGE LAW FIRM
A PROFESSIONAL LAW CORPORATION

1001 West Loop South                                          Phone: 512-215-4129
Suite 700                                                         Fax: 512-212-5399
Houston, TX 77027

November 22, 2023

Ms. Bonnie Lugo
281st Civil District Court
201 Caroline, 14th Floor
Houston, TX 77002

**Re:  Cause No. 2023-22748 - Galleria 2425 Owner, LLC v. National Bank of Kuwait S A K P - New York Branch - 2425 West Loop South, Houston, TX 77027**

Dear Ms. Lugo:

Please accept the attached as Plaintiff's Proposed Order for the Temporary Injunction Hearing on November 22, 2023.

Respectfully submitted,

MacGeorge Law Firm, PLLC
1001 W Loop S, Ste 700
Houston, TX 77027
P: 512.729.0261
F: (512) 212-5399
jmac@jlm-law.com

By: /s/*Jennifer MacGeorge*
    Jennifer MacGeorge
    Attorney for Plaintiff
    SBN: 24093627

Unofficial Copy Office of Marilyn Burgess District Clerk

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jennifer MacGeorge
Bar No. 24093627
jmac@jlm-law.com
Envelope ID: 81915723
Filing Code Description: No Fee Documents
Filing Description: Proposed Order Granting TI
Status as of 11/22/2023 3:06 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 11/22/2023 2:42:36 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/22/2023 2:42:36 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/22/2023 2:42:36 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/22/2023 2:42:36 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/22/2023 2:42:36 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/22/2023 2:42:36 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/22/2023 2:42:36 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/22/2023 2:42:36 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/22/2023 2:42:36 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/22/2023 2:42:36 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/22/2023 2:42:36 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/22/2023 2:42:36 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/22/2023 2:42:36 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/22/2023 2:42:36 PM | SENT |

Case 23-03263   Document 1-2   Filed in TXSB on 12/18/23   Page 199 of 947

11/22/2023 2:42:36 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 81915723
By: LUGO, BONNIE
Filed: 11/22/2023 2:42:36 PM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT** | § | |
| **S.A.K.P., NEW YORK BRANCH** | § | |
| | § | |
| **Defendant.** | § | **281st JUDICIAL DISTRICT** |

## <u>TEMPORARY INJUNCTION</u>

On this day, the Court considered Galleria 2425 Owner, LLC's ("Plaintiff") Emergency Application seeking injunctive relief against National Bank of Kuwait S.A.K.P. – New York Branch ("Defendant"). After considering Plaintiff's request for injunctive relief, exhibits, and arguments of counsel, the Court finds that there is evidence that harm is imminent if Defendant is not enjoined from foreclosing on the Property located at 2425 West Loop South, Houston, Texas 77027, Plaintiff will suffer irreparable injury for which there is no other adequate remedy at law. The Court finds that there is a colorable, valid dispute between the parties concerning the rights of the parties to unique, valuable real estate, and the dispute remains unresolved.

If not restrained, Defendant will, in all likelihood, foreclose on the real property and improvements located at 2425 West Loop South, Houston, Texas 77027 (the "Property") and convey and alienate the Property which will cause immediate and irreparable injury to the Plaintiff. The Property is unique and extremely valuable, and the equities demand that imminent foreclosure sale and/or other actions affecting the Property be enjoined in order to preserve the *status quo ante* and maintain the Court's jurisdiction over the Property. Plaintiff demonstrates a reasonable likelihood of success upon final trial.

Page | 1

The Court, therefore, GRANTS Plaintiff's Application for Temporary Injunction. It is, therefore,

**ORDERED, ADJUDGED, AND DECREED** that:

Plaintiff will be irreparably harmed unless the Court grants Plaintiff's Application seeking injunctive relief and one of the irreparable harms this Order seeks to prevent is the loss and injury to Plaintiff's business and/or business reputation and/or business goodwill with tenants and prospective tenants, among others.

Defendant NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH, A, BANKING CORPORATION ORGANIZED UNDER THE LAWS OF KUWAIT, ACTING THROUGH ITS NEW YORK BRANCH, its successor and/or assigns, and any and all trustees and/or substitute trustees acting by, through, or under them, are immediately RESTRAINED and BARRED from committing the following actions until further order of this court:

1. Taking any action, or steps, to cause the Property to be sold at a foreclosure sale, including but not limited to, posting the property for a future foreclosure sale, having a receiver, or any other third party, appointed that would adversely affect Plaintiff's interest in, or access to, the Property, and shall not in any way interfere, or cause an interference, with Plaintiff's quiet use and enjoyment of the Property, without further order of this court; and not to interfere with existing or prospective business relations.

2. Transferring any Note and/or lien it holds, or may hold relating to the Property.

**IT IS FURTHER ORDERED** that the District Clerk shall immediately issue a writ of injunction as set forth above pursuant to Texas Rule of Civil Procedure 687.

**IT IS FURTHER ORDERED** that the bond is set at _____, and the case is

hereby set for trial on the following date: _____ and time: _____.


Signed: _____


_____
PRESIDING JUDGE

11/28/2023 4:24 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82024820
By: Bonnie Lugo
Filed: 11/28/2023 4:24 PM

CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC., | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *v.* | § | |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | HARRIS COUNTY, TEXAS |
| S.A.K.P., NEW YORK BRANCH, et al. | § | |
| | § | |
| *Defendants*. | § | 281st JUDICIAL DISTRICT |

## NOTICE OF HEARING

Please take notice that *Defendant Rodney Drinnon's Emergency Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri Pursuant to CPRC § 27.006(B)* which was filed with the Court and served on all parties on November 19, 2023, is set for an in person **ORAL HEARING** on **November 29, 2023** at **10:00a.m.** in the 281st Judicial District Court in Harris County, Texas.

Respectfully submitted,

**MᶜCATHERN HOUSTON**

By: */s/ Rodney L. Drinnon*
**Rodney L. Drinnon**
Texas Bar No. 24047841
rdrinnon@mccathernlaw.com
**David L. Clark**
Texas Bar No. 24103974
dclark@mccathernlaw.com
**Danielle Chester**
Texas Bar No. 24101615
dchester@mccathernlaw.com
**Haseeb Dada**
Texas Bar No. 24132578
hdada@mccathernlaw.com
2000 West Loop South, Suite 1850
Houston, Texas 77027
Tel. 832.533.8689
Fax 832.213.4842

**ATTORNEYS FOR DEFENDANT
RODNEY DRINNON**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 28th day of November, 2023, a true and correct copy of the foregoing and/or attached was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure.

_/s/Rodney L. Drinnon_
Rodney L. Drinnon

2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Simone Nunez on behalf of Rodney  Drinnon
Bar No. 24047841
snunez@mccathernlaw.com
Envelope ID: 82024820
Filing Code Description: Notice
Filing Description: Notice of Hearing
Status as of 11/28/2023 4:37 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/28/2023 4:24:31 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/28/2023 4:24:31 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/28/2023 4:24:31 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/28/2023 4:24:31 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/28/2023 4:24:31 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/28/2023 4:24:31 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/28/2023 4:24:31 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/28/2023 4:24:31 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/28/2023 4:24:31 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/28/2023 4:24:31 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/28/2023 4:24:31 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/28/2023 4:24:31 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/28/2023 4:24:31 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/28/2023 4:24:31 PM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

11/29/2023 8:41 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82036176
By: Bonnie Lugo
Filed: 11/29/2023 8:41 AM

## CAUSE NO.: 2023-22748

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT OF** |
| **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT S A K P** | § | |
| **- NEW YORK BRANCH** | § | |
| **DEFENDANT** | § | **281ˢᵗ JUDICIAL DISTRICT** |

---

### RESPONSE IN OPPOSITION TO MOTION TO CONDUCT DEPOSITIONS OF THE CORPORATE REPRESENTATIVE OF GALLERIA 2425 OWNER, LLC AND ALI CHOUDHRI PURSUANT TO CPRC 27.006(B)

---

Plaintiff, Galleria 2425 Owner, LLC, asks the Court to deny Rodney Drinnon's Emergency Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri Pursuant to CPRC § 27.006(b).

### INTRODUCTION

1. Plaintiff, Galleria 2425 Owner, LLC, sued Defendant, National Bank of Kuwait S A K P - New York Branch, for lender liability, among other claims.

2. On November 14, 2023, Plaintiff filed its Amended Petition and Emergency Application for Temporary Restraining order Against Defendant National Bank of Kuwait S.A.K.P ("**1ˢᵗ Amended Petition**"). Therein, Azeemeh Zaheer ("**Zaheer**"), was added as a defendant, and Rodney Drinnon ("**Drinnon**") and David Tang ("**Tang**") while added by name, **citation was never requested, and service was never effected**.

3. On or about November 16ᵗʰ, 2023 at 3:35 P.M, Attorney James Pope wrote: "I talked with Rodney earlier today, but did not get a chance to speak with David. I am amending the petition in

this case to remove you both as named defendants. I am working on the amendment now, and will have it filed as soon as possible." *See*, EXHIBIT A.

4.   Despite this, and on or about November 16, 2023 at 3:43 P.M, Drinnon filed Defendant Rodney Drinnon's Motion to Dismiss Pursuant to the Texas Citizens Participation Act ("**Emergency Motion**"). Drinnon was made aware that the petition was being amended, but rushed to file his "emergency" motion in order to forcibly enter the litigation.

5.   On November 16, one hour and twenty-five minutes later, on or about 5:08 P.M., Plaintiff filed its Second Amended Petition & Emergency Application for Temporary Restraining Order Against Defendant National Bank of Kuwait S.A.K.P ("**Second Amended Petition**") wherein the names of Drinnon and Tang were removed from the pleading.

## ARGUMENT & AUTHORITIES

**A. If he was ever in the matter, Drinnon has been dismissed, yet demands that he is a party, all so that he may seek dismissal.**

6.   27.003(a) of the TCPA empowers parties to approach the courts in order to *dismiss* legal actions that infringe on their constitutional rights to free speech, right to petition (pertinent here) or right of association. The Texas Citizens Participation Act ("**TCPA**") "provides a procedure for expeditiously dismissing a non-meritorious legal action that 'is based on, relates to, or is in response to the party's exercise'" of free-speech, petition, or associational rights. *Hersh v. Tatum*, 526 S.W.3d 462, 466 (Tex. 2017) (quoting Tex Civ. Prac. & Rem. Code §§ 27.001(3), 27.005(b)(1)).

7.   Under Texas Law an amended pleading supersedes and supplants all previous pleadings. Tex. R. Civ. P. 65 ("Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the

Unofficial Copy Office of Marily Burgess District Clerk

record of the cause").

8.   Omitting a party from an amended petition effectively non-suits that party. *Randolph v. Jackson Walker L.L.P.,* 29 S.W.3d 271, 274 (Tex.App.-Houston [14th Dist.] 2000, pet. denied)( When a party's name is omitted from an amended pleading, he is as effectively dismissed as where a formal order of dismissal is entered.), *CIGNA Ins. v. TPG Store, Inc*., 894 S.W.2d 431, 434 (Tex. App.—Austin 1995, no writ) ("[I]t is well established that an amended petition that omits a defendant operates as a voluntary dismissal as to that defendant."), *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex.1972) ("The court, by its order dismissing the hospital, correctly followed the rule that the amended petition, by omitting a defendant, operated as a voluntary dismissal as to that party.").

9.   Furthermore, removal of a party in an amended petition is indicative of intention to non-suit the removed party. *American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 831 (Tex.1994) (Normally, omission of a party from an amended petition indicates an intent to non-suit).

10. A written order of nonsuit is not required to effect the non-suit of a party. Tex. R. Civ. P. 162; *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex.2011). When the court signs an order granting a nonsuit, it is simply a ministerial act. *Klein v. Hernandez*, 315 S.W.3d 1, 4 (Tex.2010).

11. The Amended Petition was supplanted by the Second Amended Petition which, under Tex. R. Civ. P. 65, replaced the prior petition in its entirety. The Second Amended Petition unequivocally removed the names of Drinnon (and Tang) from the pleadings. If Drinnon is a party to this suit then this amendment would, without question, not only non-suit Drinnon per *Randolph, CIGNA Ins.,* and *Webb,* but it also indicates to Drinnon that Plaintiff *intended* to non-suit him.

12. A non-suit is effective the moment an amended petition is filed, there is no need for Plaintiff (or Defendant) to seek an order from the Court to that effect, per Tex. R. Civ. P. 162 and

*Epps*. Thus, Plaintiff's Second Amended Petition effectively non-suited Drinnon, to the extent he was ever a party to the case.

13. A most curious sequence of events has unfolded. Drinnon has filed a motion under the TCPA to have himself dismissed from the instant case, despite having been nonsuited in the Second Amended Petition; and despite having been nonsuited, both in pleadings and in aversions by counsel in open court, yet insists on remaining in the instant matter so that he may be… dismissed.

14. Drinnon's refusal to accept dismissal while himself seeking dismissal goes beyond mere farce. In the instant matter a Temporary Injunction is sought, irreparable harm looms on the horizon, and due to Drinnon's obstinance a quagmire has been created. This quagmire drains the Court of time, energy and resources. Perhaps this is by design.

**B.  Drinnon seeks to stay discovery while demanding discovery.**

15. In many ways the operation of the TCPA is like that of a No Evidence Motion for Summary Judgement, the threshold to be met by the movant is that there is no evidence, thereafter the non-movant bears the burden of demonstrating that a prima facie case exists. In terms of the TCPA, the movant must establish the applicability of the TCPA on a preponderance of evidence, thereafter the burden shifts to the non-movant who must establish a prima facie case for each essential element of their claim, *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.) (The Act imposes the initial burden on the movant to establish by a preponderance of the evidence "that the legal action is based on, relates to, or is in response to the party's exercise of . . . the right to petition." Id. § 27.005(b). The Act then shifts the burden to the nonmovant, allowing the nonmovant to avoid dismissal only by "establish[ing] by clear and specific evidence a [**6] prima facie case for each essential element of the claim in question.)

16. Where the operation of the TCPA differs from a No Evidence Motion for Summary Judgment is that once a Motion to Dismiss under the TCPA has been filed, per section 27.003(c), *all discovery in the action is suspended* until the court has ruled on the motion to dismiss.

17. While discovery in the case at large has been stayed, the question of proof to support or deny the motion to dismiss is dealt with in terms of section 27.006 of the TCPA. Therein two mechanisms exist; the first is under section 27.006(a), and provides that "[i]n determining whether a legal action is subject to or should be dismissed under this chapter, the court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and the supporting and opposing affidavits stating the facts on which the liability of defense is based".

18. The second mechanism, under section 27.006(b), provides that "[o]n a motion by a party or on the court's own motion and on a *showing of good cause*, the court may allow specified and limited discovery *relevant to the motion*" (emphasis added).

19. Discovery under section 27.006(b) is normally sought by the non-movant. *In re Spex Grp. US LLC*, No. 05-18-00208-CV, 2018 Tex. App. LEXIS 1884, at *12-13 (Tex. App.—Dallas Mar. 14, 2018, no pet.) (Some merits-based discovery may also be relevant, however, to the extent it seeks information to assist the [*13] **non-movant** to meet its burden to present a prima facie case for each element of the non-movant's claims to defeat the motion to dismiss.)(emphasis added); See also; *Lane v. Phares*, No. 02-17-00190-CV, 544 S.W.3d 881, 2018 Tex. App. LEXIS 1314, 2018 WL 895455, at *4 (Tex. App.—Fort Worth Feb. 15, 2018, no pet. h.) (allowing three-hour **deposition of TCPA movant**)(emphasis added); *Warner Bros. Entm't, Inc. v. Jones*, No. 03-16-00009-CV, 538 S.W.3d 781, 2017 Tex. App. LEXIS 11828, 2017 WL 6757187, at *1 (Tex. App.—Austin Dec. 21, 2017, pet. filed) (allowing "limited discovery, including document production" and the **deposition of one of the TCPA movants**) (emphasis added); *Abraham v.*

*Greer*, 509 S.W.3d 609, 615-16 (Tex. App.—Amarillo 2016, pet. denied) (limited discovery under section 27.006(b) could include deposing witnesses having relevant information).

20. The purpose of the discovery under section 27.006(b) and the inclusion of term "specific and limited" is to allow for merits-based discovery that would allow the *non-movant* to present its prima facie case but should be limited to only the amount needed to develop the minimum amount of evidence necessary to support a rational inference that the factual allegation is true. *In re SSCP Mgmt.,* 573 S.W.3d at 472.

21. Thus, the applicable standard for Drinnon's motion is found under section 27.006(a), not section 27.006(b), as the standard that is applicable to the movant's Motion to Dismiss is that of a preponderance of evidence that "the legal action is based on, relates to, or is in response to the party's exercise of . . . the right to petition". *Serafine* at 352, 357. Movant's burden can easily be met by pleadings, as well as affidavits and declarations as provided for by Tex. R. Civ. P. 166a, which does not require discovery. After the burden shifts to the non-movant, however, it heightens to a standard that could trigger the need for discovery (if good cause is shown) under 27.006(b), to allow non-movant to establish the prima facie elements for each claim. This is clearly demonstrated by the plethora of case law detailed in ¶18, where we see that it is the non-movant that is allowed discovery in the TCPA context, not the movant.

22. But even then, the heightened burden that rests on the non-movant is not prima facie grounds for the operation of section 27.006(b), because the non-movant would still have to plead *good cause* to justify limited discovery to meet their burden. Thus, discovery under section 27.006(b) would be and should be sought by non-movant alone.

23. Drinnon's motion and request for discovery has led us to yet another farce. In Drinnon's Emergency Motion at ¶4, Drinnon states "Considering the Motion to Dismiss attacks the all [sic]

allegations asserted in the Amended Petition, Drinnon is entitled to a complete exploration of the "facts" behind each claim for relief, including those pleaded "upon information and belief"".[1]  Per section 27.003(c) of the TCPA, discovery has been stayed, yet Drinnon now seeks discovery. Drinnon has contradictory objectives, as he both seeks and refuses dismissal, and both seeks and wants to stay discovery.

24. The farce, unfortunately, does not end there.  Per *Serafine* at 352, 357 the non-movant must establish a prima facie case for each essential element of the claims. There are at present no claims against Drinnon as he is not a party to the instant matter.

25. With regards to good cause, per *Serafine* the only hurdle that Drinnon must overcome is to demonstrate by a preponderance of evidence that the legal action (that he is not a party to) relates to his right to petition. If there is no evidence that could meet even a "preponderance of evidence" standard in the pleadings, or that could be provided by affidavit or declaration, Drinnon concedes that his Motion to Dismiss is spurious.

**C.  Drinnon's "emergency" is wholly self-inflicted.**

26. Pursuant to section 27.004(a) a hearing for a motion under section 27.003 of the TCPA must be set no later than the 60th day after the date of service, this may be extended under certain circumstances but "in no event shall the hearing occur more than 90 days after the service of the motion under section 27.003".

27. The Amended Petition that added Drinnon's name was filed on November 16, 2023. Thus, complying with the 60 day requirement would mean that hearing could be concluded at any time prior to January 15, 2024. If one were to apply the 90 day requirement then Drinnon's motion

---

[1] Drinnon is applying the wrong standard for the scope of permissible discovery under the TCPA; it is not the facts relevant to the matters pled or the causes of action as a whole, which would be a very broad scope, it is the more specific and limited scope to show that "the legal action is based on, relates to, or is in response to the party's exercise of . . . the right to petition". Infra at ¶20

could be heard at any time prior to February 14, 2024.

28. Despite this Drinnon has set a hearing for December 12, 2023. He then uses this date, of his choosing, as justification to expedite discovery.

**PRAYER**

29. For these reasons, Plaintiff asks the Court to DENY Rodney Drinnon's emergency motion to conduct the depositions of the corporate representative of Galleria 2425 Owner, LLC, Ali Choudhri and James Pope.

Respectfully Submitted,

/s/ James Q. Pope
James Q. Pope
TBN: 24048738
The Pope Law firm
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
Ph: 713-449-4481
Fax: 281-657-9693
jamesp@thepopelawfirm.com

Matias J. Adrogue, PLLC
Matias J. Adrogue
1629 W. Alabama St.
Houston, TX 77006
P: (713) 425-7270
F: (713) 425-7271
mja@mjalawyer.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure on **November 29, 2023**, to interested parties by electronic delivery.

/s/ James Pope
James Pope

Page **8** of **8**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 82036176
Filing Code Description: Answer/ Response / Waiver
Filing Description: Response in Opposition to Motion to Conduct Depositions
Status as of 11/29/2023 8:54 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Pope | | jamesp@thepopelawfirm.com | 11/29/2023 8:41:07 AM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/29/2023 8:41:07 AM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/29/2023 8:41:07 AM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/29/2023 8:41:07 AM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/29/2023 8:41:07 AM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/29/2023 8:41:07 AM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/29/2023 8:41:07 AM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/29/2023 8:41:07 AM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/29/2023 8:41:07 AM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/29/2023 8:41:07 AM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/29/2023 8:41:07 AM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/29/2023 8:41:07 AM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/29/2023 8:41:07 AM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/29/2023 8:41:07 AM | SENT |

Amended Petition, 202322748, GALLERIA 2425 OWNER LLC v NATIONAL BANK OF KUWAIT S A K P NEW YORK BRANCH

From:   James Q. Pope (jamesp@thepopelawfirm.com)
To:     dtangattorney@gmail.com; rdrinnon@mccathernlaw.com
Date:   Thursday, November 16, 2023 at 03:35 PM CST

David and Rodney,

I talked with Rodney earlier today, but did not get a chance to speak with David.  I am amending the petition in this case to remove you both as named defendants.  I am working on the amendment now, and will have it filed as soon as possible.

James Q. Pope
Attorney at Law
The Pope Law Firm
6161 Savoy, Suite 1125
Houston, Texas 77036
PH: 713-449-4481
FX: 281-657-9693

**CONFIDENTIALITY/PRIVILEGE NOTICE**: The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and/or its attachments, if any, or the information contained herein is strictly prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system. Thank You.

11/29/2023 8:41:07 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 82036176
By: LUGO, BONNIE
Filed: 11/29/2023 8:41:07 AM

## CAUSE NO.: 2023-22748

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT OF** |
| **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT S A K P** | § | |
| **- NEW YORK BRANCH** | § | |
| **DEFENDANT** | § | **281st JUDICIAL DISTRICT** |

### ORDER DENYING
### RODNEY DRINNON'S EMERGENCY MOTION TO CONDUCT THE DEPOSITIONS OF THE CORPORATE REPRESENTATIVE OF GALLERIA 2425 OWNER, LLC AND ALI CHOUDHRI PURSUANT TO CPRC § 27.006(B)

Came on for consideration Rodney Drinnon's Emergency Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri Pursuant to CPRC § 27.006(b), and the Response in Opposition filed thereto.  The Court being apprised of the premises is of the opinion that the Emergency Motion should be denied.  Therefore it is:

**ORDERED** that Rodney Drinnon's Emergency Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri Pursuant to CPRC § 27.006(b) is hereby denied.

SIGNED:_____

_____
JUDGE PRESIDING

11/29/2023 11:24 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82048353
By: Wanda Chambers
Filed: 11/29/2023 10:00 AM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **ALI CHOUDHRI** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| *Intervenor – Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **NATIONAL BANK OF KUWAIT** | § | |
| **S.A.K.P., NEW YORK BRANCH** | § | |
| **and AZEEMEH ZAHEER** | § | |
| | § | |
| *Defendants.* | § | **281ˢᵗ JUDICIAL DISTRICT** |

## <u>ALI CHOUDHRI'S PETITION IN INTERVENTION</u>

ALI CHOUDHRI ("Intervenor-Plaintiff") files this Petition in Intervention against Defendant Azeemah Zaheer ("Defendant") and hereby states and alleges the following:

### I.
### <u>DISCOVERY PLAN</u>

1.     Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

### II.
### <u>RELIEF SOUGHT</u>

2.     Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiff is presently seeking monetary relief over $1,000,000. The damages sought are within the jurisdictional limits of the Court.

### III.
### <u>PARTIES</u>

3.     Plaintiff Galleria 2425 Owner, LLC is a limited liability company doing business in Texas.

4.      Intervenor-Plaintiff, Ali Choudhri, is an individual who resides in Harris County, Texas.

5.      Defendant Azeemah Zaheer, is an individual who resides, and may be personally served at 5513 Kansas Street, Houston, Texas 77007. Plaintiff requests that the clerk issue citation at this time.

## IV.
## JURISDICTION AND VENUE

6.      The Court has jurisdiction over the parties and claims which are the subject of this suit.

7.      Venue is mandatory in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.020 because the assignment that forms the basis of this lawsuit constitutes a "major transaction," is in writing, and the parties are in Harris County, Texas.  Venue is additionally proper in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.0115 because the Defendant transacted business in and around Harris County, Texas.

## V.
## FACTS

8.       Defendant has made false allegations against the Intervenor-Plaintiff and breached the terms of the contract.

9.       Defendant breached agreements and has committed fraud against the Intervenor-Plaintiff.

## VI.
## CAUSES OF ACTIONS

### FRAUD

10.     The allegations contained in the preceding and subsequent paragraphs are incorporated herein by reference for all purposes.

11.     Defendant, either directly or through her counsel, has made gross misrepresentations

to third parties, including the court in case number 2023-41091 filed in the Harris County District Court, that were blatantly false, concerning her ability or authority to act on behalf of the Plaintiff, and authority to act on behalf of the Plaintiff.

12.     Defendant statements are untrue, deceptive, and a clear effort of the Defendant to reap benefits of management of the Plaintiff, to which she is not entitled.   Defendant knew the statements, and assertions, were false when she allowed them to be made to third parties and the court.  Defendant is blatantly disregarding the law, the prior assignment and the truth of the matter, which is that she has no power or authority to take any of the recent actions she has taken in the name of the Plaintiff.

13.     Azeemeh Zaheer and National Bank of Kuwait have interfered with Intervenors rights and interests.

## PROMISSORY ESTOPPEL

14.     The allegations contained in the preceding and subsequent paragraphs are incorporated herein by reference for all purposes.  Defendant made promises to the Intervenor-Plaintiff, upon which the Intervenor-Plaintiff relied.   Intervenor Plaintiff's reliance on such promises were foreseeable and Intervenor-Plaintiff detrimentally relied on such promises.   Intervenor-Plaintiff, accordingly seeks to recover damages from the Defendant for such detrimental reliance in this suit.

## VII.
## PRAYER

WHEREFORE, Intervenor-Plaintiff respectfully requests that he be awarded damages resulting from Defendant's wrongful acts, costs and fees, along with any other and further relief to which Intervenor-Plaintiff may be justly entitled at law or in equity.

Respectfully Submitted:

/s/ Ali Choudhri
Ali Choudhri

Page 3 of 3

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 82048353
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description:
Status as of 11/29/2023 11:32 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/29/2023 11:24:53 AM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/29/2023 11:24:53 AM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/29/2023 11:24:53 AM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/29/2023 11:24:53 AM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/29/2023 11:24:53 AM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/29/2023 11:24:53 AM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/29/2023 11:24:53 AM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/29/2023 11:24:53 AM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/29/2023 11:24:53 AM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/29/2023 11:24:53 AM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/29/2023 11:24:53 AM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/29/2023 11:24:53 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

P2
TINJY

CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC, | § | IN THE DISTRICT COURT OF |
|     Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| NATIONAL BANK OF KUWAIT, | § | |
| S.A.K.P., NEW YORK BRANCH, | § | |
|     Defendant. | § | 281ST JUDICIAL DISTRICT |

**ORDER ON PLAINTIFF'S ~~AMENDED~~ PETITION AND EMERGENCY APPLICATION**
**FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

*Second an* [handwritten]

ON THIS THE ____ day of _____, 2023, the Court considered Plaintiff,

Galleria 2425 Owner, LLC's ~~Amended~~ Petition & Emergency Application for Temporary

*Second an* [handwritten]

Restraining Order ("Application"). The Court, having considered the Plaintiff's Application, the

response and any reply, the arguments of counsel, and the pleadings on file, has determined that

Plaintiff's Application is ~~without merit and should~~ be denied, ~~and Defendant National Bank of~~

~~Kuwait, S.A.K.P., New York Branch ("NBK") is permitted to foreclose on the property located at~~

~~2425 West Loop South, Houston, Texas 77027.~~

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that:**

1.      The ~~Amended~~ Petition and Emergency Application for Temporary Restraining

*Second an* [handwritten]

Order is **DENIED.** ~~It is further,~~

2.      **ORDERED, ADJUDGED AND DECREED** that NBK may proceed with its

foreclosure on ~~December 5, 2023,~~ or any date thereafter in accordance with the provisions of

Chapter 51 of the Texas Property Code, on the property located at 2425 West Loop South, Houston,

Texas 77027. It is further,

**F I L E D**
**Marilyn Burgess**
**District Clerk**

NOV 2 9 2023

Time: ____2:57 PM____

By _____
    Bonnie Lugo

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.

4888-8732-6866.v2

3.   **ORDERED** that Plaintiff appear on _____, 2023 at _____ a.m./p.m. to show cause as to ~~why sanctions should not be levied against Plaintiff and counsel for Plaintiff pursuant to TEX. CIV. PRAC. REM. CODE §10.001. *et seq.* and TEX. R. CIV. P. 13.~~ It is further,

4.   ~~**ORDERED**~~ that NBK appear on _____, 2023 at _____ a.m./p.m. to present or ~~submit evidence of all attorney's fees and costs incurred related to responding to the Amended Petition and Emergency Application for Temporary Restraining Order.~~

SIGNED this the ~~29~~ 29th day of ~~November~~ November, 2023. @ 2:51 PM

_____
HONORABLE JUDGE PRESIDING

**RESPECTFULLY SUBMITTED:**

By:   */s/ Charles C. Conrad*
      Charles C. Conrad
      State Bar No. 24040721
      Elizabeth Klingensmith
      State Bar No. 24046496
      Ryan Steinbrunner
      State Bar No. 24093201
      Two Houston Center
      909 Fannin, Suite 2000
      Houston, Texas 77010-1018
      Telephone: (713) 276-7600
      Facsimile: (281) 276-7634
      charles.conrad@pillsburylaw.com
      liz.klingensmith@pillsburylaw.com
      ryan.steinbrunner@pillsburylaw.com

*Attorneys for Defendant National Bank of Kuwait,*
*S.A.K.P., New York Branch*

2

4888-8732-6866.v2

11/29/2023 1:28 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82056692
By: Rhonda Momon
Filed: 11/29/2023 1:03 PM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **ALI CHOUDHRI** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| *Intervenor – Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **NATIONAL BANK OF KUWAIT** | § | |
| **S.A.K.P., NEW YORK BRANCH** | § | |
| **and AZEEMEH ZAHEER** | § | |
| | § | |
| *Defendants.* | § | **281ˢᵗ JUDICIAL DISTRICT** |

### <u>ALI CHOUDHRI'S AMENDED PETITION IN INTERVENTION</u>

ALI CHOUDHRI ("Intervenor-Plaintiff") files this Petition in Intervention against Defendant Azeemah Zaheer ("Defendant") and hereby states and alleges the following:

### I.
### <u>DISCOVERY PLAN</u>

1.     Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

### II.
### <u>RELIEF SOUGHT</u>

2.     Pursuant to Texas Rule of Civil Procedure 47(c), Plaintiff is presently seeking monetary relief over $1,000,000.  The damages sought are within the jurisdictional limits of the Court.

### III.
### <u>PARTIES</u>

3.     Plaintiff Galleria 2425 Owner, LLC is a limited liability company doing business in Texas.

4.     Intervenor-Plaintiff, Ali Choudhri, is an individual who resides in Harris County, Texas.

5.     Defendant Azeemah Zaheer, is an individual who resides, and may be personally served at 5513 Kansas Street, Houston, Texas 77007. Plaintiff requests that the clerk issue citation at this time.

6. Defendant National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") is a banking corporation organized under the laws of Kuwait, acting through its New York Branch. NBK has not designated a registered agent for service of process in the State of Texas, but the Texas Secretary of State shall be NBK's agent for service.

## IV.
## JURISDICTION AND VENUE

6.     The Court has jurisdiction over the parties and claims which are the subject of this suit.

7.     Venue is mandatory in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.020 because the assignment that forms the basis of this lawsuit constitutes a "major transaction," is in writing, and the parties are in Harris County, Texas.  Venue is additionally proper in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.0115 because the Defendant transacted business in and around Harris County, Texas.

## V.
## FACTS

8.     Defendant has made false allegations against the Intervenor-Plaintiff and breached the terms of the contract.

9.     Defendant breached agreements and has committed fraud against the Intervenor-Plaintiff.

## VI.
## CAUSES OF ACTIONS

### FRAUD

10.     The allegations contained in the preceding and subsequent paragraphs are incorporated herein by reference for all purposes.

11.     Defendant, either directly or through her counsel, has made gross misrepresentations

to third parties, including the court in case number 2023-41091 filed in the Harris County District Court, that were blatantly false, concerning her ability or authority to act on behalf of the Plaintiff, and authority to act on behalf of the Plaintiff.

12.     Defendant statements are untrue, deceptive, and a clear effort of the Defendant to reap benefits of management of the Plaintiff, to which she is not entitled.   Defendant knew the statements, and assertions, were false when she allowed them to be made to third parties and the court.  Defendant is blatantly disregarding the law, the prior assignment and the truth of the matter, which is that she has no power or authority to take any of the recent actions she has taken in the name of the Plaintiff.

13.     Azeemeh Zaheer and National Bank of Kuwait have interfered with Intervenors rights and interests.

## PROMISSORY ESTOPPEL

14.     The allegations contained in the preceding and subsequent paragraphs are incorporated herein by reference for all purposes.  Defendant made promises to the Intervenor-Plaintiff, upon which the Intervenor-Plaintiff relied.   Intervenor Plaintiff's reliance on such promises were foreseeable and Intervenor-Plaintiff detrimentally relied on such promises.  Intervenor-Plaintiff, accordingly seeks to recover damages from the Defendant for such detrimental reliance in this suit.

## CONSPIRACY

Defendants, National Bank of Kuwait and  Azeemeh Zaheer sought to accomplish the breach of the Confidential Settlement Agreement and the foreclosure of the building. The Defendants reached a meeting on this objective and took take one  or more unlawful acts in pursuit of this.

## BREACH OF CONTRACT

Defendants, National Bank of Kuwait and  Azeemeh Zaheer are acting in concert breached the Confidential Settlement Agreement to the determent of Plaintiff. The Bank has breached its  fiduciary duty.

## VII.  PRAYER

WHEREFORE,  Intervenor-Plaintiff respectfully requests that he be awarded damages resulting from Defendant's wrongful acts, costs and fees, along with any other and further relief to which Intervenor-Plaintiff may be justly entitled at law or in equity.

Respectfully Submitted:

/s/ Ali Choudhri
Ali Choudhri

Page **3** of **3**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 82056692
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description:
Status as of 11/29/2023 3:37 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/29/2023 1:28:22 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/29/2023 1:28:22 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/29/2023 1:28:22 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/29/2023 1:28:22 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/29/2023 1:28:22 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/29/2023 1:28:22 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/29/2023 1:28:22 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/29/2023 1:28:22 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/29/2023 1:28:22 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/29/2023 1:28:22 PM | SENT |
| Jerry CAlexander | | alexanderj@passmanjones.com | 11/29/2023 1:28:22 PM | SENT |
| Ruth NVera | | verar@passmanjones.com | 11/29/2023 1:28:22 PM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 11/29/2023 1:28:22 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/29/2023 1:28:22 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/29/2023 1:28:22 PM | SENT |

11/29/2023 8:41:07 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 82036176
By: LUGO, BONNIE
Filed: 11/29/2023 8:41:07 AM

CAUSE NO.: 2023-22748

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT OF** |
| **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT S A K P** | § | |
| **- NEW YORK BRANCH** | § | |
| **DEFENDANT** | § | **281ˢᵗ JUDICIAL DISTRICT** |

**ORDER DENYING
RODNEY DRINNON'S EMERGENCY MOTION TO CONDUCT THE DEPOSITIONS
OF THE CORPORATE REPRESENTATIVE OF GALLERIA 2425 OWNER, LLC AND
ALI CHOUDHRI PURSUANT TO CPRC § 27.006(B)**

Came on for consideration Rodney Drinnon's Emergency Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri Pursuant to CPRC § 27.006(b), and the Response in Opposition filed thereto. The Court being apprised of the premises is of the opinion that the Emergency Motion should be denied. Therefore it is:

**ORDERED** that Rodney Drinnon's Emergency Motion to Conduct the Depositions of the Corporate Representative of Galleria 2425 Owner, LLC and Ali Choudhri Pursuant to CPRC § 27.006(b) is hereby denied.

SIGNED: _____

Signed:
11/29/2023

_____
JUDGE PRESIDING

11/30/2023 4:55 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82123103
By: Bonnie Lugo
Filed: 11/30/2023 4:55 PM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| *Defendant.* | § | **281ST JUDICIAL DISTRICT** |

### <u>PLAINTIFF'S FIFTH AMENDED PETITION</u><br><u>AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER</u><br><u>AND TEMPORARY INJNUCTION AGAINST DEFENDANT NATIONAL BANK OF</u><br><u>KUWAIT S.A.K.P. NEW YORK BRANCH</u>

Galleria 2425 Owner, LLC ("***Plaintiff***") files this Fifth Amended Petition and Emergency

Application for Temporary Restraining Order and Temporary Injunction against Defendant

National Bank of Kuwait S.A.K.P., New York Branch (individually as "***NBK***", or collectively as

"***Defendants***"), and Azeemeh Zaheer (individually as "***Zaheer***", or collectively as "***Defendants***")

and, in support, submit the following:

### I.
### <u>DISCOVERY PLAN</u>

1.     Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas

Rules of Civil Procedure.

### II.
### <u>PARTIES</u>

2.     Galleria 2425 Owner, LLC ("***Plaintiff***") is a limited liability company doing

business in Texas and is the owner of the building located at 2425 West Loop S., Houston, Texas

("***2425 Building***").

Page **1** of 29

3.      National Bank of Kuwait, S.A.K.P., New York Branch ("**NBK**") is a banking corporation organized under the laws of Kuwait, acting through its New York Branch. NBK HAS APPEARED WITH COUNSEL.

4.      Azeemeh Zaheer ("**Zaheer**"), is an individual who resides, and may be personally served at 5513 Kansas Street, Houston, Texas 77007.  CITATION IS HEREBY REQUESTED.

### III.
### INTRODUCTION

5.      This suit was originally filed against NBK, a party who has been shown to be willing to engage in bad faith actions, and who repeatedly attempts to make outside deals with third parties, specifically to deprive the plaintiff of its ownership interest in the 2425 Building in any way it can.

6.      Plaintiff, Galleria 2425 Owner, LLC, filed bankruptcy to preserve the asset, which NBK vehemently opposed, and fought to have dismissed from the bankruptcy court. However, at the hearing on NBK's motion to dismiss, Plaintiff was successful in defending against dismissal, and the bankruptcy case moved forward.

7.      Plaintiff promptly proposed a plan in the bankruptcy court, which was characterized as a "really smart" plan that "check[ed] all the boxes" for plan confirmation, according to Judge Lopez.

8.      Then, after NBK lost its motion to dismiss, it filed a letter in the bankruptcy case (Document 77) which made the bankruptcy court aware of litigation that was irrelevant to Galleria 2425 Owner, LLC's pursuit of its ongoing bankruptcy case. The state court litigation referenced

by NBK is, in the words of Judge Lopez "an unrelated case involving Ms. Zahire [sic] and Naissance and Mr. Choudhri". The case is about a dispute over control of an entity called Naissance Galleria, LLC, which is an entity that provided a mezzanine loan to Galleria 2425 Owner, LLC's sole member and is party to an intercreditor agreement with NBK.  Upon information and belief, certain of the investors in Naissance Galleria LLC are substantial clients of or investors in NBK.  Naissance Galleria LLC was also a party to the very settlement agreement with NBK at issue in this suit.  Importantly, Naissance Galleria, LLC does not have any membership in, or control over Galleria 2425 Owner, LLC, or any of its members or managers.

9.     Notably, the state court, in the litigation referenced in NBK's letter to Judge Lopez, did issue a Temporary Injunction, which maintained the status quo of Choudhri's management and control of Naissance Galleria, LLC, but limited any actions that could be taken by Choudhri on behalf of Naissance Galleria, LLC to only those which are also approved by Zaheer, until a trial resolves the issue once and for all.

10.     After the Temporary Injunction was in place establishing Choudhri's control of Naissance Galleria, LLC, Zaheer directed her counsel, while purporting to act for Naissance Galleria, LLC, to appear at two separate hearings in the bankruptcy court, on or about October 12, 2023 and November 1, 2023, and on the eve of a November 1 status conference filed an emergency motion in the bankruptcy court, requesting for Judge Lopez to rule against the state court and find that Zaheer had control of, and could act for Naissance Galleria, LLC. Judge Lopez thereafter sua sponte dismissed the bankruptcy case during the November 1, 2023 status conference.

11.     When the parties to the state court litigation returned to appear before Judge Manor on November 13, 2023, Judge Manor confirmed that her Temporary Injunction did not give Zaheer

any right to act as the manager of Naissance Galleria, LLC, and confirmed that Choudhri was in control, subject to Zaheer's approval during the pendency of trial.

12.     All of these actions, gave rise to Judge Lopez's serious concerns about the ability to move forward with the bankruptcy case without resolution in the state court action. Judge Lopez stated, in the Status Conference held on November 1, 2023, the following:

> "I don't have anything to qualify it in state court issues. I don't know. There's just a lot of confusing stuff, and my gut tells me that I need to dismiss this case and let you all go figure this out in State Court, because there's not enough here, and there's real concerns that I have…".

13.     However, since Naissance Galleria, LLC has no ownership or control over the Plaintiff or any of its members or managers, these filings and appearances are just a smoke screen. The fact that they were also filed in violation of the Temporary Injunction not only makes these actions unlawful, but there could be no other purpose aside from attempting to cause the dismissal of the bankruptcy case brought by Galleria 2425 Owner, LLC, which is an action that, logically, would be counter to the company's interests.

14.     In its letter inviting the Naissance dispute and Ms. Zaheer's counsel into the bankruptcy proceedings, NBK cleverly attempts to confuse the court by implying that Ms. Zaheer had control of Naissance Galleria, LLC because the order says that management decisions could not be made without her approval. Ms. Zaheer's counsel then accepted NBK's invitation to create confusion and disruption, appearing at the October 13 emergency status conference purporting to represent Naissance Capital LLC.

15.     As this Court has handled cases related to Galleria 2425 Owner, LLC for years, it is well aware that Ms. Zaheer has been entirely absent from any of these proceedings until on or

about July 5th, 2023, when Naissance Galleria, LLC appeared, allegedly controlled by Azeemeh Zaheer, before this Court's ancillary docket, attempting to stop the foreclosure by NBK, at which hearing this Court itself questioned the absence of Ms. Zaheer over the last several years.

16.     Ms. Zaheer signed the assignment giving control over Naissance Galleria, LLC to Mr. Choudhri on July 3rd, 2020. Ms. Zaheer did not make any claims of control over Naissance Galleria, LLC, did not attempt to object to Mr. Choudhri's management of the company for three (3) years. These allegations are absurd, as Ms. Zaheer has been entirely absent from the company's management for years.

17.     As a result of this conspiracy by the defendants, the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case.

18.     What's interesting is that, if Ms. Zaheer was sincerely the manager of Naissance Galleria, LLC, she would not have worked to have the bankruptcy case dismissed.

19.     Such actions, if they had been taken by a legitimate manager for Naissance Galleria, LLC, would be a breach of fiduciary duty to the company, _unless there was a back room deal NBK_.

20.     Now that NBK has re-posted the 2425 Building for foreclosure, Plaintiff will suffer irreparable harm as a result of the defendants' actions.

## IV.
## FACTUAL BACKGROUND

21.     In 2018, NBK loaned certain funds to Plaintiff.  NBK has continually interfered with the Plaintiff's ability to lease the 2425 Building to produce revenue and Plaintiff's ability to sell the 2425 Building to pay NBK off.  Every time NBK has so interfered, it has then blamed the Plaintiff for its inability supposedly to meet some of the loan terms.

22.     For example, in January 2021, Plaintiff Ali Choudhri, who is vilified by NBK in various pleadings, had serious parties interested in acquiring interests in the building more than enough to clear NBK's debt.  A letter dated January 15, 2021, from SIBS International, and two purchase contracts would have paid off not only NBK, but left the Plaintiff with a great deal of value.  **NBK, rather than facilitate this sale, issued a formal notice of default to the Plaintiff and its intent to accelerate the loan on June 29, 2021**, while the SIBS International deal was in progress, killing that deal.

23.     **The same was true with regard to NBK's interference with the Plaintiff's attempt to lease space in the building to provide revenue so it could operate and make loan payments.**  By August 2021, this situation had become untenable due to NBK's refusal to approve new tenants and new leases, prompting the Plaintiff, on August 13, 2021, to send NBK a detailed letter regarding lease-up and renewal prospects for discussions, none of which, it seemed NBK would approve.

- **Healthcare Service Organization**

    - •Size: 130,000+ RSF – large client requirement in their preliminary planning stages:  •Industry: Healthcare Service Organization •Type of use: Administration Offices •Direct/Sublease •Commencement date: Q3/2023 •Term:5-10 yrs.  They are specifically VERY interested in amenities available, for example: deli, gym, day care, conference center (# of seats), training center (# of seats).

- **Invesco**

    - We met with the team twice and are actively pursuing them for 2425.  They are interested in a 157-month lease term for 208,830 SF of Net Rental Area.

- **Financial Services Firm**

    - Office •AREA: West Houston (610 West, Hwy 290, Beltway 8) •SPACE: Open Concept •SIZE: Approximately 20,000 – 25,000 rsf •PARKING: 5/1000 ratio •OCCUPANCY: Late 2Q22/Early3Q22 •TERM: 36-60 months with

renewal options •This tenant is currently at 24 Greenway on their top floor and have been looking at other A buildings.

- **Beyond Finance**

    - We are discussing a 68-month lease term for +/- 40,000 rentable SF.

- **Banco Affirme**

    - We submitted a 64-month lease term for 4,545 SF of Net Rental Area.

- **Walls Bank (existing tenant)**

    - Renew 3,054 SF of rental space for 60-month term starting January 1, 2022.

- **Others (working directly with ownership)**

    - ResMed ([https://www.resmed.com/en-us/](https://www.resmed.com/en-us/)), interested in the entire building, working directly with Dr. Peter Farrell, Founder and Chairman

    - Healthstore Holdings ([https://www.healthstore.com/](https://www.healthstore.com/)), interested in a 15-year term with 80,000 SF in phase 1 and 75,000 SF in 12 months as phase 2.

    - Immunicom ([https://immunicom.com/](https://immunicom.com/)), interested in at least two full floors, moving HQ from San Diego, CA

24.    Below is an August 16, 2021 email from counsel for the Plaintiff to NBK forwarding multiple leases for approval that **NBK had failed to approve or even respond to.**



25.     This lack of approval, or finding obstacles to approve, was not new.  In September

2019, Related Group had reached out to lease the parking garage located at the 2425 Building to

be used for overflow, for parking up to 110 spaces.  **NBK's authorized representative Michael**

**Carter would not approve this lease** (note "nbkny" email address below– *i.e.* National Bank of

Kuwait, New York Branch), which would have generated a great deal of revenue for the Plaintiff.

> **From:** Michael Carter <Michael.Carter@nbkny.com>
> **Date:** Monday, 23 September 2019 at 13:22
> **To:** Azeemeh Zaheer <azeemeh@naissancecapital.co.uk>, Lisa Walker
> <Lisa.Walker@nbkny.com>
> **Subject:** RE: LOI
>
> My primary concern is that the tenant determines when the commencement date, presumably
> because they have zoning and building department approvals to complete as well as financing to
> arrange, which is understandable, however there does not appear to be an outside expiration date
> for the Commencement date. It appears they could tie up these space permanently without having
> to pay rent. I think you should have an outside date for Commencement.

26.     The situation became so untenable that in September 2021, Plaintiff initiated a lawsuit against NBK.

27.     In good faith, even during the pendency of this litigation, the Plaintiff was still trying to get tenants into the building and get NBK's approval to do so, so it would not claim additional breaches of loan agreements.  **On July 2, 2022, the Plaintiff sent NBK five leases for approval, which NBK did not approve.**

28.     *The parties litigated for eleven (11) months until August 22, 2022, when they entered into a Confidential Settlement Agreement.*  **NBK has prevented Plaintiff's successful performance under any and all agreements it has with NBK, including the Confidential Settlement Agreement.**

29.     The Confidential Settlement Agreement permitted a timeframe in which Plaintiff could sell the 2425 Building, or seek refinancing, and Plaintiff was successful in obtaining a buyer for the building.  Upon closing this transaction, Plaintiff would have retained a forty-five (45%) ownership interest in the 2425 Building. However, **NBK again took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure**

**on March 29, 2023 in breach of the Confidential Settlement Agreement, which Plaintiff believes was done intentionally to prevent the sale.**  The sale would have cleared the NBK debt as it stood at that time and left great value for the Plaintiff.  Plaintiff believes that NBK recognized that greater value and wanted to take it for itself by foreclosure in a "loan to own" gambit.

30.     There are tremendous factual inaccuracies that NBK represents to state and federal courts and they continue into these proceedings.  For example, in its Motion to Dismiss the Plaintiff's Bankruptcy, while it is absolutely true that temporary restraining orders were filed to attempt to prevent a foreclosure by NBK and its takeover of the 2425 Building, NBK fails to note that such requests were also **granted by this Court** based upon showings that **NBK had not allowed the Plaintiff to lease up the building to generate revenue, and had killed at least two transactions that Plaintiff was working on that would have cleared NBK and left value for the Plaintiff.**

31.     Additionally, NBK posted for foreclosure in 2023 early, and against an extended grace period that this Court had given Plaintiff, which silenced the bidding process and interest in the 2425 Building completely.  No one wants to buy a building posted for foreclosure.  **Plaintiff believes that NBK knew this and did it on purpose to prevent the Plaintiff from successfully selling the property and paying off the loan, so NBK could foreclose and take the 2425 Building for itself so it can open a Houston location.**

32.     After NBK's disclosures of the situation created by the Confidential Settlement and the wrongful posting for foreclosure during an extension of that agreement, potential buyers of the property who would otherwise become good prospects to negotiate a sale with Plaintiff, became potential purchasers of the NBK Note and began negotiating with NBK.  NBK interfered with

these potential purchases and with these business relationships.  At least the following were interfered with in this fashion:

a)      Globix Investment,

b)      Ironwood Commercial Realty,

c)      Shah Firm, LLC, and

d)      Jeb Brown Law.

**B.      Azeemeh Zaheer Decides She Wants the Building.**

33.      On June 26, 2023, Zaheer, filed a lawsuit in the name of Naissance Galleria, LLC ("*Naissance*"), despite having assigned control over such entity several years prior., in the 157th Judicial District Court in Harris County, Texas referenced by case number 2023-39006 against Brad Parker ("*Parker*") as an initial step in Zaheer's pursuit of a hostile takeover of the 2425 Building.

34.      On July 5, 2023, Zaheer, again acting in the name of Naissance, filed a second lawsuit in the 129th Judicial District Court in Harris County, Texas referenced by case number 2023-41091 against Parker and NBK, to further her hostile takeover attempt of the 2425 Building. Zaheer sought injunctive relief, but that request for an emergency temporary restraining order was denied.

35.      On or about July 5, 2023, Plaintiff commenced a Chapter 11 bankruptcy proceeding in the Southern District of Texas, referenced by case number 23-60036.  NBK sought to dismiss the bankruptcy proceeding, but after a full day evidentiary hearing its motion to dismiss was denied on September 26, 2023.  The Chapter 11 Plan could have been approved and would have substantially reduced the value of NBK's secured debt. So, after its motion to dismiss was denied,

NBK changed tactics and decided to invite Ms. Zaheer and her counsel into the bankruptcy case to cause confusion and disruption. NBK decided it could not allow its debt to be restructured under the bankruptcy code, just as it had decided it could not allow the prior sales of the building that had been lined up by Plaintiff.

**C.      Azeemeh Zaheer is a False Representative of Naissance.**

36.      Azeemeh Zaheer at one time had a business and personal relationship with Ali Choudhri, both of which appeared to have ended mutually for a time. Azeemeh Zaheer sought injunctive relief in the 80th Judicial District Court for Harris County against Naissance Galleria, LLC, which was a mezzanine lender to an LLC ("***LLC***") two steps up in the chain.

37.      Azeemeh Zaheer had signed, as the authorized representative of the Managing Member of Naissance Galleria, LLC an Assignment of the management rights of that LLC to Ali Choudhri. In response, Mr. Choudhri stepped into Naissance's shoes, covered its expenses, and did a miraculous job of negotiating the aforementioned settlement with NBK after the Assignment. Azeemeh Zaheer made this assignment for a number of reasons, but most of them stemmed from her ineffective management of the building and her fear of exposure to NBK and certain individuals affiliated with NBK because of her poor performance.

38.      After Mr. Choudhri received the Assignment and had negotiated the successful settlement with NBK and the building looked as if it might succeed (a period of years), Azeemeh Zaheer decided she wanted to misappropriate the value that Mr. Choudhri had just preserved and to an extent had just created. First, she claimed the Assignment was invalid and sought and received a Temporary Injunction, on September 21, 2023, from the 80th Judicial District Court in Harris County. This Temporary Injunction basically only created a stalemate with respect to the management of Naissance Galleria, LLC to preserve the status quo until a trial in January. Mr.

Choudhri is still the manager of Naissance Galleria, LLC, not Azeemeh Zaheer, although she did have some approval rights under the injunction.  Mr. Choudhri, as the manager of Naissance Galleria LLC and is only required to obtain approval from Zaheer for his actions.  Zaheer DOES NOT have any control of the entity.  Moreover, this was confirmed at a hearing on November 13, 2023 before Judge Manor in the 80th Judicial District Court.

**D.    Azeemeh Decides to Conspire with NBK So It Could Foreclose On the Building.**

39.    After the September 21, 2023 entry of the Temporary Injunction, some ironic, if not strange, events start taking place with respect to Ms. Zaheer and the Plaintiff.  First, it is against Azeemeh Zaheer and Naissance's financial interests if NBK forecloses.

40.    Second, on information and belief, Zaheer caused a copy of the Temporary Injunction Entered on September 21, 2023 by the 80th Judicial District Court in Harris County to be sent to counsel for NBK, who used it to interfere with the Plaintiff's ability to reorganize under the bankruptcy code and confirm a chapter 11 plan.

41.    Third, Zaheer's directed her counsel to appear without any forewarning at the October 12, 2023 status conference, in the Bankruptcy Court about the plan, claiming Azeemeh Zaheer now is the manager of Naissance Galleria, LLC and they have been hired by her to represent Naissance Galleria, LLC, all by virtue of the Temporary Injunction.

```
6        MR. DRINNON:  Okay.  I represent Mr. Abdullatif in
7   other cases but not this one.  I tend to get hired because I
8   have sued Mr. Choudhri successfully in numerous
9   jurisdictions and cases . . . .
```

**E.      Zaheer Changes Sides to Make a Deal with the NBK**

42.      Progressively, Azeemeh Zaheer's behavior becomes more inexplicable as she: (1) takes the position that the Temporary Injunction put her in charge of Naissance (it did not);[1] (2) that Naissance Galleria, LLC could or had already become the owner of the Debtor building (2425 Galleria Owner, LLC, Plaintiff herein) and as the new owner, they did not wish to pursue claims asserted in the bankruptcy case against NBK by Plaintiff and Naissance for breaching the settlement agreement  and would want to take the bankruptcy in another direction.

43.      This created an environment of confusion for the Bankruptcy Court, which was by Defendants' design, and it was a concerted effort by the Defendants to have the bankruptcy case dismissed, allowing NBK to foreclose.  Defendant NBK would not be impeded by the bankruptcy and Zaheer could tell Mr. Choudhri: "I will not go along with your reorganization plan unless you pay me millions of dollars" while making a deal with NBK to block the Plan of Reorganization in the event no payment was received from Mr. Choudhri.

44.      The Defendants are working in concert, to achieve the same end.  Specifically, the Defendants have devised, and intended to devise, a scheme or artifice to seize the 2425 Building by any means necessary.  Defendants will stop at nothing to see the Plaintiff lose possession of the 2425 Building, and upon information and belief, the driving force behind their efforts is Osama Abdullatif ("*Abdullatif*").

---

[1] At a hearing had in the issuing court (the 80th Judicial District Court) on Monday, November 13, 2023, the Court confirmed her Temporary Injunction Order had not turned control of Naissance over to Zaheer and Zaheer had no authority to authorize attorneys to make the filing and take the action they had on behalf of Naissance Galleria, LLC in the Bankruptcy.

45.     Defendants' scheme has involved false representations of material information, including but not limited to misrepresentations concerning the Plaintiff and the purpose and effects of the Temporary Injunction.

46.     On November 29, 2023, Azeemeh appeared, through counsel, at an emergency hearing where Naissance Galleria, LLC's Application for Temporary Restraining Order was being heard before the Harris County District Court Ancillary Judge.  Naissance Galleria, LLC sought an emergency temporary restraining order, to enjoin NBK from proceeding with the foreclosure sale scheduled for December 5, 2023, in an effort to protect its interests in the 2425 Building. However, Azeemeh, through counsel, argued against entry of the temporary restraining order, and worked alongside NBK to ensure its denial, leaving the 2425 Building subject to foreclosure. Azeemeh's stance is bizarre, considering Azeemeh, improperly acting as manager for Naissance Galleria, LLC, sought an emergency temporary restraining order to stop NBK from foreclosing on the 2425 Building in July 2023[2].

**F.     False Representations by Zaheer's Agents are Successful in Getting Plaintiff's Bankruptcy Dismissed.**

47.     The Bankruptcy Court scheduled a Status Conference for the Plaintiff's Bankruptcy Case for November 1, 2023. Azeemeh's agents, on October 31, 2023, only hours before the Status Conference, filed an Emergency Motion.  This Motion contained many misrepresentations, some of which follow:

    a)    Even though Zaheer had no right to or standing necessary to file anything on behalf of Naissance, and the Temporary Injunction gave Zaheer no such rights, statements were made in their Emergency Motion directly to the contrary, stating Azeemeh Zaheer was in, Choudhri was out.

---

[2] See Cause No. 2023-41091: Naissance Galleria LLC v. National Bank of Kuwait S.A.K.P., New York Branch, transcript from the July 5, 2023 Temporary Restraining Order hearing is attached.

b)   The filing stated flatly at one point that the Assignment had been found to be forged – it had not.

c)   The filing stated that, because of the Temporary Injunction, Naissance was now controlled exclusively by Zaheer, who could make Naissance become the Owner of the Bankrupt.  (The issuing court on Monday, November 13, 2023, ruled from the bench it said no such thing.)

These misrepresentations had the desired effect, and the Bankruptcy Court dismissed the Bankruptcy, green-lighting NBK to foreclose.

### G.   Abdullatif is Choudhri's Competitor and Wants to Ruin Him.

48.   Choudhri has been in the real estate investment and management business for the last 20 years.  The regular course of Choudhri's business involves numerous aspects of real estate development.  These activities include real estate and business acquisitions and dispositions, seeking and obtaining financing, and developing and managing commercial and residential properties.  He regularly raises capital for these activities through the issuance of equity and/or debt.  It is also within his normal course of business to enter into transactions with borrowers, lenders, and investors to support the purchase, development, and operations of real estate properties.

49.   Choudhri at times conducts his real estate investment and management business through the use of special purpose entities, such as Plaintiff Galleria Owner 2425, LLC.  Choudhri runs a management company, Jetall ("*Jetall*"), to provide employees and management services to entities for purposes of operating real estate investments.

50.   Abdullatif has provided financing for numerous third-party claims against Choudhri, including interfering with Choudhri's final divorce proceedings in both Pakistan Supreme Court and Harris County District Court by soliciting Choudhri's ex-wife for her legal claims against Choudhri and/or his entities and to gain access to Choudhri's protected financial

disclosures.  Abdullatif has filed several dozen Lis Pendens against Choudhri, and his properties, and has sponsored litigation against Choudhri in several dozen cases.

51.     Upon information and belief, Abdullatif is also financing the litigation expenses of Zaheer against Choudhri in the dispute over the building owned by Plaintiff.  Abdullatif, Zaheer, and others have all agreed to the enterprise course of action aimed at destroying Choudhri's business, including taking possession of the 2425 Building.

52.     On more than one occasion, Abdullatif resorted to violence and threats against Choudhri and/or his family, friends, and associates.  Mr. Choudhri had another real estate venture involving an entity called Dalio.  Abdullatif was present at Dalio's foreclosure proceeding, where a friend accompanying him assaulted one of Choudhri's lawyers. On another occasion, Abdullatif and his associates used firearms to hold Choudhri, and his associates, hostage.

53.     Abdullatif also formed an association with others in his illegal efforts to destroy Choudhri's business.   These individuals include but are not limited to Chris Wyatt, former paralegal of Jetall ("**Wyatt**").

54.     Wyatt was hired by Jetall in 2019.  In the course of his employment, Wyatt oversaw legal and litigation matters for Jetall.  He was provided confidential information concerning Jetall's and its client's real estate transactions, finances and debt leverage on properties, and litigation management strategies.  As a Jetall representative, Wyatt was regularly involved in and provided access to privileged information and communications, including information subject to attorney-client and work product privileges.  Wyatt signed a non-disclosure agreement at the beginning of his employment prohibiting him from disclosing confidential information and requiring him to return all files upon his termination.

55.     Wyatt's employment at Jetall ended in December 2020.  When he left Jetall, Wyatt stole corporate files including electronic communications and secretly recorded privileged phone communications between Choudhri and his attorneys.

56.     Jetall obtained a restraining order in January 2021 enjoining Wyatt from disclosing or divulging confidential information obtained through his course of employment with Jetall.

57.     Abdullatif met with Wyatt before, during and after Wyatt's departure from Jetall. Abdullatif, directly and through his lawyers, received confidential and privileged information from Wyatt.   This information included but is not limited to illegal recordings of Choudhri's conversations with attorneys.

58.     Upon information and belief, Abdullatif and his lawyers were aware that Wyatt was a former employee of Jetall who was involved in confidential and privileged communications and that a restraining order was entered enjoining Wyatt from disclosing confidential information.

59.     Abdullatif and his agents have used the illegally obtained information and recordings as part of Abdullatif's scheme to destroy Choudhri's business.  Abdullatif retained Wayne Dolcefino ("***Dolcefino***") as a "consultant" to publish on the internet a series of hit pieces on Choudhri.  Dolcefino advertises that his services included "litigation support," and Abdullatif has utilized Dolcefino in the course of his numerous lawsuits asserted against Choudhri and his businesses.

60.     Information illegally obtained from Wyatt is included in many of Dolcefino's hit pieces.  Dolcefino continues to publish these hit pieces on the internet, including videos posted in May 2023.

61.     Abdullatif has made several false claims against his competitor, Choudhri, in many ways, two of the most egregious being:

a)   Hiring Dolcefino to create video "hit pieces" about Choudhri, his business, his marital status, and inappropriate character based upon his actions during that marital status. This video contained "over the top" falsehoods, e.g. that he was still married and had been for years. It was commercial speech designed to designate a competitor (Choudhri) and give Abdullatif a competitive advantage, and was introduced into interstate commerce by release to major television (broadcast and cable) networks and by placing on the internet where it still resides today, making it available to the potential customers and lenders that are competed for; and

b)   Placing multiple improper Lis Pendens on the record title to properties owned by Choudhri or his business entities, which created a double negative effect on Choudhri's ability to conduct business by hampering his ability to find new lenders or renewing existing loans because the security for them was impaired and making it impossible to sell those properties to raise new capital on his own. These Lis Pendens were "over the top" misrepresentations because they were illegal and did not assert valid interests in the subject properties.  The Lis Pendens were also introduced into interstate commerce because they were filed of record and were available "online" over the internet to any potential customer for commercial real estate in the Houston area.

## V.
## CAUSES OF ACTION

## COUNT 1:  BREACHES OF CONFIDENTIAL SETTLEMENT AGREEMENT

62.   Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

63.   Plaintiff and NBK reached a valid and enforceable agreement expressly set forth in the Confidential Settlement Agreement.  Pursuant to the Confidential Settlement Agreement, NBK agreed to keep the contents and terms of the parties' agreement completely confidential.  Plaintiff dismissed its very good claims in the Lawsuit against NBK in reliance upon NBK's promise to uphold the confidentiality obligations set forth in the Confidential Settlement Agreement.

64.   NBK breached the Confidential Settlement Agreement by disclosing its contents and terms to third parties in violation of the agreement's express confidentiality provisions.  These

disclosures prevented Plaintiff from closing on the sale of the 2425 Building and chilled the market for other buyers for Plaintiff's property.  The same is true for NBK's wrongful, early filing of a notice of foreclosure on the 2425 Building, also in violation of the Confidential Settlement Agreement.

65.   Plaintiff hereby sues NBK for these breaches of the Confidential Settlement Agreement, including monetary damages for such breaches and  injunctive relief preventing NBK from foreclosing on the building because Civil Practices & Remedies Code Section 65.011 authorizes injunction relief when: 1) the applicant is entitled to a writ of injunction under the principles of equity and the laws of Texas relating to injunctions. Texas Civil Practices & Remedies Code Section 65.011(3); See Butnaru v. Ford Motor Co., 84 S.W.3rd 198, 210 (Tex. 20002); and 2) when irreparable injury to real or personal is threatened, irrespective of any remedy of law. Tex. Civ. Practice & Remedies Code Section 65.011(5).

66.   Plaintiff requests injunctive relief as allowed pursuant to *CytoGenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex.App.—Houston, [1st Dist.] 2006, pet. denied), and *L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 876 (Tex.App.—Fort Worth 2019, pet. denied) due to Defendant's breach.

## COUNT 2: TORTIOUS INTERFERENCE WITH CONTRACT

67.   Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

68.   As alleged, NBK tortiously interfered with the SIBS International contract and the Caldwell Soames Inc. contract, causing damages to the Plaintiff in the net amounts of the contracts which, but for NBK's interference, would have been paid to the Plaintiff.

69.     Zaheer has tortiously interfered with Plaintiff's contract with NBK, and abused process by interfering in Plaintiff's bankruptcy proceeding.

**COUNT 3:  <u>TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS</u>**

70.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

71.     After NBK's disclosures of the situation created by the confidential settlement and the wrongful posting for foreclosure during a judicial extension of the grace period contained in that agreement, potential buyers of the property who would otherwise have become good prospects to negotiate a sale with Plaintiff, became instead potential purchasers from NBK of the NBK note and began contacting and negotiating or attempting to negotiate with NBK instead of the Plaintiff. NBK interfered with these potential purchasers and with these potential business relationships.  At least the following were interfered with in this fashion:

a)     Globix Investment,
b)     Ironwood Commercial Realty,
c)     Shah Firm, LLC, and
d)     Jeb Brown Law.

72.     Zaheer have interfered with the Plaintiff's relationship with NBK and/or entered into a relationship with Zaheer, and their antics caused the dismissal of Plaintiff's Chapter 11 bankruptcy proceeding, which was otherwise proceeding to a cram-down restructuring under Chapter 11 of the bankruptcy code

73.     This interference by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

**COUNT 4:  COMMON LAW FRAUD/LENDER LIABILITY**

74.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

75.     NBK never had any intention of living up to the Confidential Settlement Agreement.  The Plaintiff was winning the lawsuit against NBK, so NBK induced the Plaintiff into dismissing its lawsuit and entering into the Confidential Settlement Agreement which NBK had no intention of living up to.  This fraud works an estoppel against NBK (see Count 6, "ESTOPPEL").  Plaintiff hereby sues NBK for fraud and fraudulent inducement and alleges it constitutes the basis for an action for Lender Liability.

76.     NBK knew at the time it entered into the Confidential Settlement Agreement it would deflect and tortiously interfere with the Plaintiff's attempts to sell the 2425 Building so NBK would be able to foreclose on the building and take all of the value instead of just the value of the amounts otherwise owed at the time.  Plaintiff accordingly sues NBK for its fraud, fraud in the inducement, lender liability, and subsequent interference with the settlement agreement. Plaintiff seeks benefit of the bargain damages for the fraud related to the enforceable contract. Plaintiff requests injunctive relief as allowed pursuant to *CytoGenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex.App.—Houston, [1st Dist.] 2006, pet. denied), and *L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 876 (Tex.App.—Fort Worth 2019, pet. denied) due to Defendant's breach.

**COUNT 5:  FRAUDULENT TRANSFER**

77.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

78.     The funds paid by the Plaintiff to NBK:

a)      $801,509.42 paid Plaintiff to NBK on August 27, 2022;

b)      $80,000 paid by Plaintiff to NBK on April 18, 2023; and

c)      $80,000 paid by Plaintiff to NBK on May 10, 2023

were fraudulently induced by NBK and were payments for which the Plaintiff received nothing in

return and constitute fraudulent conveyances in violation of U.S.C. § 544, 548, and 550 and TEX.

BUS. & COMM. CODE §§ 24.001, *et seq.*, for which the Plaintiff hereby sues NBK to recover all

such amounts.  In addition, the Loan Agreement between NBK and Plaintiff set aside reserve funds

to cover certain events of default related to the anchor tenant. Due to COVID-19, this provision of

the Loan Agreement activated, and Plaintiff's loan payments were being drawn down from the

reserve funds. However, NBK intentionally depleted Plaintiff's reserve funds, and transferred

Plaintiff's funds to itself prior to the time when they were actually due. Plaintiff requests an

injunction pursuant to Sec. 24.008.

## COUNT 6:  <u>ESTOPPEL</u>

79.     Plaintiff repeats and realleges the allegations set forth in all preceding and

subsequent paragraphs of this Complaint, as if fully set forth herein.

80.     NBK is estopped from claiming Plaintiff owes any more than the amount stated and

agreed to in the Confidential Settlement Agreement because of its fraud and fraudulent inducement

alleged previously.

## COUNT 7:  <u>BUSINESS DISPARAGEMENT</u>

81.     Plaintiff repeats and realleges the allegations set forth in all preceding and

subsequent paragraphs of this Complaint, as if fully set forth herein.

82.     The posting of the 2425 Building during any negotiation periods and/or the

extended grace period when actual buyers were moving toward concluding a deal and when other

potential buyers were expressing interest in the 2425 Building, constituted business disparagement against the Plaintiff for which Plaintiff hereby sues NBK.

83.     The efforts of Zaheer to make false accusations and representations about the Plaintiff's ownership interests, management, and decision-making abilities constituted business disparagement against the Plaintiff for which the Plaintiff hereby sues Zaheer.

84.     The business disparagement by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

### COUNT 8:  BREACH OF GOOD FAITH AND FAIR DEALING

85.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

86.     Every contract has a duty of good faith and fair dealing engrafted upon it, especially in a lender/borrower relationship, and even more so when the lender is based in the State of New York as NBK is.

87.     NBK breached its duty of good faith and fair dealing by:

   a)     Inducing Plaintiff to dismiss their State Court lawsuit;

   b)     Inducing Plaintiff to enter into the Confidential Settlement Agreement;

   c)     Tortiously interfering with Plaintiff's performance under the Confidential Settlement Agreement;

   d)     Tortiously interfering with third-party contracts;

   e)     Not approving tenant leases or contracts for sale; and

   f)     deflecting buyers so Plaintiff could not sell the 2425 Building.

88.     Plaintiff hereby sues NBK for breach of duty of good faith and fair dealing.  The damages are for the value of the amounts that would have been recovered in the state court litigation and/or the value of the deals lost for leases and/or sales of the 2425 Building.

## COUNT 9:  UNJUST ENRICHMENT

89.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

90.     If NBK is allowed to foreclose on the 2425 Building it will make an unconscionable profit and succeed in its "loan to own" gambit.  The amount of its unjust enrichment for which Plaintiff hereby sues NBK is the difference between what NBK would have been owed (but for its breaches of the Confidential Settlement Agreement) under the Confidential Settlement Agreement and the true value of the building, for which Plaintiff hereby sue NBK.

## COUNT 10:  CONSPIRACY

91.     Defendants agreed to work in concert with each other in order to interfere with Plaintiff's bankruptcy case, and to have it dismissed by making fraudulently claiming Azeemeh had control over Naissance Galleria, LLC.

92.     Defendants acted with the intent to harm plaintiff by disrupting its bankruptcy proceedings and ultimately obtaining a sua-sponte dismissal of such proceeding based upon their allegations

93.     To accomplish the object of their agreement Defendants intentionally or negligently mischaracterized the effect of the state court temporary injunction, in order to confuse and disrupt Plaintiff's bankruptcy case, which resulted in dismissal.

94.     The agreement to engage in this conduct proximately caused injury to plaintiff. Plaintiff's sole asset and its ability to reorganize its affairs under Chapter 11 of the bankruptcy

code, has now been posted for foreclosure on December 5th, 2023, instead of being protected through its reorganization proceedings. A foreclosure will irreparably harm Plaintiff.

## COUNT 11:  ATTORNEYS' FEES

95.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

96.     Plaintiff hereby sues Defendants for its reasonable and necessary attorneys' fees under breach of a written contract under Civil Practice and Remedies Code §38.001, under the fee shifting agreement of the contract, and under any statutory or common law right to recover same.

## VI.
## APPLICATION FOR TEMPORARY INJUNCTION OR ORDER

97.     The Defendants have conspired with each other, and others, or worked in parallel courses to present the bankruptcy court with false allegations that caused the bankruptcy case of Plaintiff 2425 Galleria Owner, LLC to be dismissed. Such actions were undertaken to prevent Plaintiff from reorganizing under chapter 11 of the bankruptcy code and allow NBK to foreclose. If a foreclosure takes place, Plaintiff will lose its sole asset, a unique piece of real estate.

98.     If Plaintiff's application for temporary injunction is not granted, harm is imminent because 1) Plaintiff's sole asset will be foreclosed as a result of defendants harmful actions on December 5th, 2023; 2) Defendants will continue to conspire with each other in a manner that is counter to the true interests of Naissance Galleria, LLC; and 3) Defendants will continue to  violate the Temporary Injunction, as they have already done on at least three occasions, in order to interfere with Plaintiff's lawful attempts to preserve the 2425 Building. These harms are imminent and would cause irreparable injury with no other adequate legal remedy.

99.     The harm that will result if the temporary injunction is not issued is irreparable because Plaintiff owns a unique piece of real estate which it will be deprived of in the event of foreclosure.   Texas   Courts   repeatedly   rule   that   "every   piece   of **real   estate** is innately  [**8] unique. *See, e.g., Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.--Houston [14th [*58] Dist.] 1982, no writ) ("It is well established law that each and every piece of **real estate** is unique. Therefore, if appellants were allowed to foreclose appellees would be irreparably harmed, since **real estate** is so unique."); *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex. App.--Corpus Christi 1987, no writ) ("Every piece of **real estate** is unique, and if foreclosure were allowed before a full determination of the usury claim, appellee would be irreparably harmed."). *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 57-58 (Tex. App.—San Antonio 2010, no pet.).

100.    Temporary injunctive relief preventing foreclosure is necessary until such time as the merits of this case can be decided to maintain the status quo pending resolution on the merits.

## VII. JURY DEMAND

101.    Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII. PRAYER

102.    For the reasons set forth above, Plaintiff asks that the Court enter a Temporary Injunction, enjoining NBK from foreclosing upon the Plaintiff's unique real estate and granting additional relief in the following manners:

a)      NBK is restrained from 1) foreclosing on, posting, reposting, or otherwise selling at auction the 2425 Building; and 2) transferring any note and/or lien it holds or may hold relating to the 2425 Building;

Page **27** of 29

b)      Actual damages including economic injuries & consequential damages;

c)      Attorney's fees;

d)      Exemplary damages;

e)      Prejudgment and post judgment interest;

f)      Court costs; and

g)      All other relief to which Plaintiff is entitled under both law and equity.

103.    Plaintiff is willing to post bond.

Respectfully submitted,

The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
Ph: 713-449-4481
Fx: 281-657-9693
jamesp@thepopelawfirm.com

By: /s/ James Q. Pope
        James Q. Pope
        TBN: 24048738
        Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on November 30, 2023, a copy of the foregoing was served on interested

parties by electronic service using the court's electronic noticing system.

By: /s/ James Q. Pope
        James Q. Pope

**JURAT**

My Name is Ali Choudhri.  My office address is 1001 West Loop South, Suite 700, Houston, Texas 77027, and my date of birth is January 24, 1980.  I declare under penalty of perjury that the facts and events set forth in the Fifth Amended Petition and Emergency Application for Temporary Restraining Order and Temporary Injunction against Defendant National Bank of Kuwait S.A.K.P., New York Branch, as filed on November 30, 2023, are within my personal knowledge and are true and correct.

Executed in Harris County, State of Texas, on November 30, 2023.

By: /s/ Ali Choudhri
Ali Choudhri

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 82123103
Filing Code Description: Amended Filing
Filing Description: Plaintiff Fifth Amended Petition and Emergency Application for Temporary Injunction
Status as of 11/30/2023 5:14 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jerry CAlexander | | alexanderj@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| Ruth NVera | | verar@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/30/2023 4:55:12 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/30/2023 4:55:12 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/30/2023 4:55:12 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |

Associated Case Party: Ali Choudhri

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Choudhri | | legal@jetallcompanies.com | 11/30/2023 4:55:12 PM | SENT |

Unofficial Copy Office of Harris County District Clerk

**EXHIBIT 1**

```
 1                    REPORTER'S RECORD

 2                  CAUSE NO. 2023-41091

 3  NAISSANCE GALLERIA, LLC     ) IN   THE   DISTRICT   COURT OF
                                )
 4  VS.                         ) HARRIS   COUNTY,   T E X A S
                                )
 5  NATIONAL BANK OF KUWAIT,    )
    SAKP, NEW YORK BRANCH,      )
 6  ET AL.                      ) 281ST   JUDICIAL   DISTRICT

 7

 8

 9    _____

10                TEMPORARY RESTRAINING ORDER

11                      JULY 5, 2023

12                     VOLUME 1 OF 1

13    _____

14

15

16

17

18       On the 5th day of July, 2023, the following

19  proceedings came on to be held in the above-titled and

20  numbered cause before the Honorable Christine Weems,

21  Judge Presiding, held in Houston, Harris County, Texas.

22

23       Proceedings reported by computerized stenotype

24  machine.

25
```

1                          **APPEARANCES**

2  Mr. David Tang
   ATTORNEY AT LAW
3  6711 Stella Link, Suite 343
   West University Place, Texas  77005
4  Telephone:  832-287-2129
                - and -
5  Mr. Omar Khawaja
   LAW OFFICES OF OMAR KHAWAJA, PLLC
6  5177 Richmond Avenue, Suite 1065
   Houston, Texas  77056
7  Telephone:  281-888-2339
   **Counsel for Plaintiff**

8

9  Mr. Charles C. Conrad
   Mr. Ryan Steinbrunner
10 PILLSBURY WINTHROP SHAW PITTMAN LLP
   909 Fannin Street, Suite 2000
11 Houston, Texas  77010
   Telephone:  713-276-7600
12 **Counsel for Defendant National Bank of Kuwait**

13

14

15

16

17

18

19

20

21

22

23

24

25

Unofficial Copy Office of Marilyn Burgess District Clerk

```
 1                  P R O C E E D I N G S
 2              THE COURT:  2023-41091, Naissance
 3   Galleria, LLC, versus National Bank of Kuwait.
 4              Counsel, please make your appearances for
 5   the record.
 6              MR. TANG:  Good morning, Your Honor.
 7   David Tang for Naissance Galleria, LLC.  And I have
 8   Mr. Omar Khawaja as co-counsel for Naissance Galleria,
 9   LLC, Plaintiff, Your Honor.
10              MR. CONRAD:  And this is Charles Conrad
11   and Ryan Steinbrunner for the National Bank of Kuwait.
12              And I would start by asking Mr. Tang to
13   show proof of authority to -- I challenge his proof of
14   authority and capacity to represent Naissance Capital.
15              MR. TANG:  Your Honor, that would be a
16   TRCP, I think, 10 or 11 motion.  A motion to show
17   authority requires ten days' notice for my client to come
18   in there and give you the affidavit.
19              But I do -- as an officer of the court, I
20   will tell you, Mr. Khawaja and I both have authority to
21   represent Naissance Galleria, LLC.  The principal is out
22   of the country right now visiting her family, as I
23   understand it, in -- I don't know if it's Bangkok or
24   Malaysia but one of the countries over there, Your Honor.
25              THE COURT:  Well, so --
```

```
 1              MR. CONRAD:  Again, the reason I bring
 2  this up, Your Honor -- sorry for the interruption -- is
 3  that Mr. Choudhri, who's in the courtroom today, has made
 4  affirmative representations to the National Bank of
 5  Kuwait that he represents, solely and exclusively,
 6  Naissance Capital.  So that's the reason --
 7              Again, this is not our dispute.  This is a
 8  dispute between Mr. Tang, whoever his client is and
 9  Mr. Choudhri, not the Bank of Kuwait.
10              But, again, because of the exigent
11  circumstances and the relief, that this was just filed
12  15 minutes ago -- you know, I understand he's alleging
13  that an attempt was made on Monday.  It's true that we
14  were made aware of it, that I brought it to your
15  attention --
16              THE COURT:  Right.
17              MR. CONRAD:  -- on Monday.  But, again,
18  these are issues that we have -- they're asking for an
19  injunction to stop the foreclosure sale that the court --
20              THE COURT:  -- that's going to happen in,
21  like --
22              MR. CONRAD:  -- ordered in 40 minutes.
23              THE COURT:  Yeah.  So --
24              MR. CONRAD:  And it's interesting Mr. Pope
25  also deferred because he has nothing new whatsoever.  I
```

1  mean, this is just, again, sanctionable conduct by him

2  and his client.

3            THE COURT:  Well, let's focus on

4  Naissance.

5            So --

6            MR. TANG:  Your Honor, I will say this.  I

7  went through the file a little bit.  And you're right.

8  This is very records-worthy.  I think that's a nice way

9  of putting it by Your Honor.

10            But I will say this.  I understand -- I

11  can kind of appreciate Mr. Conrad's hesitancy on this;

12  but I can assure you, you know, Naissance Galleria, LLC,

13  has nothing to do with Ali Choudhri.  We want nothing to

14  do with Ali Choudhri.  We're but the second lienholder of

15  that building in which Mr. Choudhri has defaulted on the

16  loan, and that's why we're here today.

17            Upon Mr. Choudhri's default of the loan --

18            Before I get to that, Your Honor, I will

19  say this on the record, because we're on the record, and

20  as an officer of the court, Mr. Khawaja and I both

21  represent other entities and individuals suing

22  Mr. Choudhri in other lawsuits, you know, all sprinkled

23  throughout Texas, it seems like, through bankruptcy

24  court, JP court, county court and district court.

25            So Naissance and any of Mr. Choudhri's

1  companies, we have no alignment, and we don't want any

2  alignment with him at all, Your Honor, on it.

3                    In fact, I believe --

4                    If I'm over-speaking, here, Mr. Khawaja --

5                    I believe Mr. Khawaja even holds a

6  judgment against Mr. Choudhri or one of Choudhri's

7  companies.

8                    And so I get Mr. Conrad's --

9                    THE COURT:  So what is your basis for them

10  wanting to stop the foreclosure?

11                    MR. TANG:  Because, Your Honor, once

12  Mr. Choudhri's company -- right -- has defaults on that

13  second note -- right -- it's pledged by 100 percent

14  collateral of Galleria 2425 Owner, the entity in your

15  court right now, the other one.  Right?

16                    We have 100 percent of the collateral.

17  Right?

18                    And upon the default, we actually are

19  operating that company; but if the primary lender calls

20  the note, the primary, which they did, we have an option

21  in there to go in there and take the note and buy the

22  building.

23                    We have never been given notice of this

24  foreclosure for us to work with them on the remedies on

25  getting the building.  Right?

```
 1                    THE COURT:  Okay.  But I guess -- I feel
 2   like y'all are a little late to the party because there
 3   was -- this all stems from an underlying litigation that
 4   started -- that was filed in 2021 that was literally set
 5   for trial last September; so that's how I know about
 6   Naissance, because y'all came up a whole lot in that
 7   case.
 8                    MR. TANG:  Yes, Your Honor.
 9                    THE COURT:  So knowing that they were
10   filing a notice of acceleration with an intent to
11   foreclose and that we were in full-blown litigation about
12   it --
13                    MR. TANG:  Yes, Your Honor.
14                    THE COURT:  -- I find it hard to believe
15   that that never would have -- nobody ever would have told
16   Naissance that all of this was going on.
17                    MR. TANG:  I can probably -- I think the
18   assumption is correct, that Naissance had an idea of
19   litigation.  That is absolutely -- probably true,
20   Your Honor.
21                    THE COURT:  Well, it's not just about
22   litigation; it was about litigation over whether or not
23   there was a proper acceleration on National Bank of
24   Kuwait's note and whether or not they had the right to
25   foreclose on it.
```

```
 1                    MR. TANG:  We --

 2                    THE COURT:  And --

 3                    MR. TANG:  Sorry.  Go ahead.

 4                    THE COURT:  Just one more thing.

 5                    MR. TANG:  Yeah.

 6                    THE COURT:  There was actually a

 7   foreclosure listing on this property, like, four months

 8   ago, in March, or at least a filing in March for April;

 9   so I don't know why then you wouldn't have come forward

10   and said, "Hey, I see that it is now listed for

11   foreclosure."

12                    I've seen alleged articles where it talked

13   about that this property that we're talking about is set

14   up for foreclosure; so I find it hard to believe that you

15   then didn't know, "Hey, they're going to foreclose on it.

16   We probably should jump in now and try to work something

17   out," other than waiting for -- I don't know -- two days

18   before it was actually going to be foreclosed on, when

19   notice for the foreclosure, I know for a fact, probably

20   went out June 13 --

21                    MR. CONRAD:  Correct.

22                    THE COURT:  -- sometime when I was not

23   here, so --

24                    MR. TANG:  And, Your Honor, that may be

25   so.  I'm not trying to argue with you too much on that.
```

 1                    But on the May -- all the notices of

 2    foreclosure, we never got notice of it as the secondary

 3    lender on it.

 4                    THE COURT:  And who was supposed to give

 5    you notice of it?

 6                    MR. TANG:  NBK.

 7                    And there's an address in the

 8    intercreditor agreement and all the loan -- there's a

 9    700-page loan document that --

10                    MR. CONRAD:  Can I interrupt real quick?

11                    MR. TANG:  Well, let me finish real quick.

12                    THE COURT:  You'll get your moment,

13    Mr. Conrad.

14                    MR. CONRAD:  Okay.

15                    MR. TANG:  I mean, he can talk, if he

16    wants, Your Honor.  I don't want to --

17                    THE COURT:  No, go ahead.  Just make your

18    full argument because I'm going to let him make his full

19    argument.

20                    MR. TANG:  Well, fair enough, Your Honor.

21                    And so they never gave us notice of it.

22    Right?

23                    And so part of your proceedings, as I

24    understand just reading it -- right -- is a lot of it was

25    abated.

1          And also there was a motion to seal the
2   records, also, and so, you know, I don't think we could
3   have fully understood exactly what was going on in the
4   case.

5          We still don't understand 100 percent
6   what's going on in the case.  But we noticed that the
7   foreclosure was set today.  Nobody filed anything on it
8   to stop it necessarily, and so we're just here to assert
9   our rights on it.  If we lose -- and we have a right --

10         If they would have sent us a June 13
11  letter like they're supposed to, we would have said,
12  "Okay.  These guys are in default on our second note as
13  of May of 2023."  Right?  We would have negotiated and
14  tried to work something out with them.

15         We're still trying to do that here today
16  with them, but we did not get notice -- my client didn't
17  get notice of the foreclosure until -- by Sunday morning,
18  Your Honor, before she was scheduled to go out of town.

19         THE COURT:  Now, how did she find out
20  about it Sunday morning?

21         MR. TANG:  I believe that one of the
22  realtors she was working with said, "Hey, 1001 is up for
23  foreclosure."

24         And so she had somebody look it up, and
25  they found that 2425 was also up for foreclosure.

1          There's a -- I mean, I think 1001 has
2    nothing to do with this case; but that's what stirred the
3    conversation.  And then she asked around some more, and
4    then she found out that it was.  And here we are today.
5          And I filed it as soon as -- well, I tried
6    to file it as soon as I got it; but I can't scan it in
7    properly.  It's on me, Your Honor.
8          And so like I said, part of the rights
9    that we have once they posted for foreclosure -- and it
10   says it in the 700-page document that everybody agreed
11   to, that we have a right to assume the note or work
12   something out with them.
13          In fact --
14          THE COURT:  Let me ask you this.  Why does
15   this not just become a breach of contract deal and then
16   you just sue them over the money?
17          MR. TANG:  Because it's a building.  We
18   would have an equitable interest in the building.
19   That's -- you know, that's not something that you can
20   quantify damages as a matter of law.
21          Mr. Choudhri is apparently already in
22   breach of it -- of whatever agreements he had.
23          THE COURT:  But how is it not literally --
24   I mean, yeah, it's a building.  But, I mean, literally
25   how is it not just reduced down to money?  Because

12

1  ultimately -- right -- was what you were getting was

2  money as a secondary lender on the property; so what

3  you're out, if it gets sold, is --

4              MR. TANG:  Well, we're out of --

5              THE COURT:   -- the collateral interest,

6  but still somebody would still owe you money.

7              MR. TANG:  Right.

8              THE COURT:  So then ultimately, you could

9  go sue somebody -- whoever you believe owes you money for

10 the money.

11             MR. TANG:  But how much is this building

12 worth?  I mean, you can't quantify the damages.  That's

13 the issue with real estate.  Right?  You can't quantify

14 it.

15             I mean, he can laugh all he wants; but

16 that's what the case law says, that, you know, buildings,

17 property, the right to purchase buildings, the equitable

18 interest in it, you can't quantify with -- you know, with

19 monetary damages, just like a -- it would be like a --

20 like in a TREC contract where you try to get the other

21 party to sell it to you -- right -- in lieu of seeking

22 damages.  Right?  In lieu of taking the earnest money,

23 you can, you know, get that equitable right to get them

24 to sell you the property.

25             Here, we have a lien.  They have a deed of

 1  trust -- they have a lien on it.  In the contract, it
 2  says we have a right to go in there and try to negotiate
 3  and get that lien out and, you know, take over the
 4  building.
 5              And so ownership of a building, you know,
 6  what's the value of that?  Ownership of buying the
 7  building, I mean, what's the value of that?
 8              And that's been part of the dispute in
 9  y'all's underlying case.  As I understand from the
10  pleadings is -- you know, people say the value of the
11  building is here.  Some people say it's, like, near the
12  Titanic.  Right?  It's under water, that low.  Right?
13              THE COURT:  Right.  And part of the reason
14  we were going to go to trial was to resolve the fact
15  issue as to what the value of the building was.
16              MR. TANG:  So, Your Honor, let me offer
17  something up.  Right?  And I'm not trying to give
18  credence to what Mr. Conrad is saying.  I'm just trying
19  to understand what he's saying, to a certain degree.
20              He's arguing now for Mr. Choudhri.  Right?
21  He goes, "Oh, there's something goofy about this
22  assignment."  I mean, they're fighting over the
23  assignment --
24              THE COURT:  I don't know.  I haven't heard
25  his argument yet.

```
 1              MR. CONRAD:  I haven't made one yet, just
 2  so the record's clear.
 3              THE COURT:  Let him make an argument, and
 4  then you can counter it with what time that you've got.
 5              But go ahead --
 6              MR. TANG:  Oh, you're right.
 7              THE COURT:  Yeah.  You're on the clock.
 8              Mr. Conrad?
 9              MR. CONRAD:  All right.  So just a bunch
10  of things here.  I started with a motion to show
11  authority because of the same issue here.  He's
12  complaining lack of notice.  Right?  That's his argument.
13              His argument is -- and, again,
14  Mr. Choudhri has sworn that he is the representative of
15  Naissance, and they're taking issue with that.  That's
16  not an issue for the bank at all.  Mr. Choudhri waived
17  notice on behalf of Naissance.  Okay?  This is not,
18  again, an issue for the bank.
19              And so his whole issue here is that he's
20  seeking an injunction.  What is Mr. Choudhri seeking?  An
21  injunction.  Mr. Pope deferred to Mr. Tang here to let
22  this hearing go first because they all want the same
23  thing.  He says he's adverse to Mr. Choudhri in a bunch
24  of different lawsuits.  Well, guess what?  They're on the
25  same side this morning.  They're asking for the exact
```

1  same thing.  They want this foreclosure proceeding and

2  auction that's set for 30 minutes from now to begin

3  toward -- enjoined by this court, so they're on the same

4  team here.

5              The issue is is that he still has

6  fundamentally -- and because of the exigent circumstances

7  cannot show a capacity or authority on behalf of his

8  client.  That is a major material issue regarding the

9  major and extraordinary relief that they're seeking here

10 this morning.

11             And I will say regarding the relief, it's

12 not what he says it is.  He can't enjoin this.  This was

13 a secondary loan to the bank -- National Bank of Kuwait's

14 first loan.

15             There were risks.  All he has under the

16 loan documents in particular is a right to step into the

17 shoes to pay.

18             What is the issue?  If he wants to, you

19 know, take over this building or whatever, let the

20 foreclosure go.  He can call -- his client can call the

21 bank after the foreclosure occurs.  Anybody can call the

22 bank after the foreclosure occurs.

23             This court ordered repeatedly that this

24 foreclosure could go forward this morning at 10:00 a.m.,

25 repeatedly over the last several months.

1          Regarding the notice issue, it was public.
2 We issued it -- right -- I believe, on the end of March,
3 March 28.  It was posted for the May 5th or 6th
4 foreclosure, whatever the Tuesday was in May.  Then it
5 was just issued again to the public.  He said he went
6 online.
7          If they were so concerned about this
8 building and their note, why aren't they always checking
9 the public notices?  It's a public notice.  There was
10 nothing private, clandestine, secretive about this.
11          The only thing that seemed clandestine and
12 secretive is the timing of this lawsuit filing and
13 Mr. Choudhri also stating that, you know, he wants
14 another injunction for, like, the fifth or sixth time.
15 God knows how many times he's sought it.
16          But, again, I will tell you his lawyer
17 called me this morning, Mr. Pope.  I know that they're
18 contemplating the issues, but it's important to bring it
19 up now because he's in the courtroom.  He said if this
20 foreclosure is not enjoined -- he'll give one last shot
21 at it -- they're filing bankruptcy.
22          So, I mean, again, I think I've made that
23 representation to the court, that that was likely to
24 happen.  Mr. Tang knows that that's likely to happen.
25          But, again, why are we here if that's the

1  remedy he's going to seek?  That's going to put a stop to

2  all of this.  Otherwise, we just need to move forward

3  with the foreclosure.

4              THE COURT:  The thing, Mr. Tang, is that I

5  do recall -- because Naissance became an issue --

6  unfortunately for you, I'm the judge that just happens to

7  be on ancillary right now and I'm the judge who's dealt

8  with this entire case the whole time.  Not yours but

9  theirs.

10             MR. TANG:  Oh, no, I know that,

11  Your Honor, yes.

12             THE COURT:  Right.

13             And so I do recall, because there was an

14  issue as to whether or not Naissance was going to become

15  a problem -- and I might be wrong; but I also recall a

16  representation by Mr. Choudhri about it, that it would

17  not be an issue because of that.

18             MR. TANG:  It might be true, Your Honor.

19  If he said that, then he obviously lied to the court,

20  Your Honor, because he does not run Naissance Galleria,

21  LLC.  Just -- I'm going to tange [sic] with Mr. Conrad

22  here in what he's saying.

23             May I show her the assignment that he's

24  been parading around as some kind of assignment of

25  Naissance?

 1                    May I show you that, Your Honor?

 2                    THE COURT:  Yes.

 3                    MR. CONRAD:  That's between you guys.

 4                    MR. TANG:  I agree with you.  You brought

 5  it up, but I just want to show it to the court?  Right?

 6                    So they brought this up.

 7                    This is the assignment they're talking

 8  about, Your Honor, that somehow my client, Naissance,

 9  assigned overall interest to Mr. Choudhri, just that

10  little simple document.

11                    If you notice on that document,

12  Your Honor, just cursory --

13                    THE COURT:  Hold on.  Give me one second.

14                    MR. TANG:  I'm going to be quiet, yeah.

15                    THE COURT:  All right.

16                    MR. TANG:  And so, Your Honor, if you look

17  at that document, the signatures aren't even the same,

18  what's purported to be hers.  Right?

19                    And, No. 2, it's not even a dated

20  document.

21                    And so we made -- I believe previous

22  counsel to me, a couple of months ago, made this known, I

23  think, to the law firm -- I'm not 100 percent sure --

24  that this was a forged assignment, that there's nothing

25  good about it.  It was forged, manipulated.

1          THE COURT:  Okay.  But then let me ask you

2 this.  At some point, then, y'all had to have known that

3 this litigation was going on -- right -- that this was an

4 issue.

5          MR. TANG:  Yes.  I think a couple of

6 months ago.

7          THE COURT:  Right.  So then why did not, a

8 couple of months ago, you try to get in and figure out

9 what the heck is going on?

10          MR. TANG:  Because everything has been

11 sealed.  It was in their confidentiality order and

12 everything.

13          THE COURT:  I get it.  But shouldn't that

14 have given you even more concern, that you couldn't see

15 what was going on, and you didn't reach out to either of

16 the parties until now to figure out what was happening or

17 alternatively, check the public records to determine

18 whether or not this property that there is litigation --

19 sealed litigation about?

20          MR. TANG:  So a couple of months ago --

21 I'm trying to read between the lines of what my client

22 told me.  Right -- if they would have resolved everything

23 with these guys, the second note would have been taken

24 care of.  Right?  We wouldn't even be here.

25          But May came and went.  May 23, 2023 was

1  the principal balloon payment of $60 million that

2  Mr. Choudhri, his company, was supposed to make to us.

3  Right?

4            Once that got defaulted on -- right -- we

5  took over now his company.  That's pledge of security.

6            And so we're in a better position to

7  prevent whatever Mr. Conrad is thinking of happening, the

8  bankruptcy, this, that and the other; so we --

9            THE COURT:  Okay.  But see -- and that's

10  the crazy part because now you're saying that you've

11  taken over running the company, but I have heard numerous

12  times from counsel in the other litigation -- and there's

13  a whole lot of counsel -- saying that they were running

14  the company and they were getting it into shape and they

15  were working on getting it sold and all those kind of

16  things.

17            MR. TANG:  No.

18            THE COURT:  So there's a huge issue as to

19  who is running the company.

20            MR. TANG:  They were saying, as I

21  understand it from talking to Mr. Conrad and just

22  reading -- today now, looking at this document, is that

23  they took over Naissance Capital -- right -- not the

24  primary debtor.

25            What we're saying is he never took over

1  Naissance.  But because of the May 23 default, the --
2  100 percent of the membership interest of Galleria 2425
3  was pledged to Naissance.  Once that was defaulted -- it
4  had already been pre-pledged and assigned to the loan
5  documents.
6          We are now -- as of May 24, 2023, we are
7  the owners of Galleria 2425 to the exclusion of
8  Mr. Choudhri and his other companies running it.  And so
9  that's what I'm saying.
10          THE COURT:  Okay.  Then what have you done
11  to assert that since, like, from May 24 to -- I don't
12  know -- right now?  Other than filing a temporary
13  restraining order, what have you done to assert the fact
14  that you're running this building?
15          MR. TANG:  We've activated the banking
16  accounts, checking accounts on it.  You know, we've
17  sent -- we've even filed a guarantor -- a lawsuit that
18  gives the guarantor the note that was due on it, and so
19  we've been -- we're trying to get ahead of it.
20          What we didn't know, Your Honor, is this
21  foreclosure was happening.  I mean, that's --
22          THE COURT:  I find that hard to believe
23  when you say in one breath, "We've taken over running the
24  building," and in the other breath saying, "But there's a
25  massive foreclosure on it where" -- that's literally

1  being extensively litigated until literally the Sunday

2  before the foreclosure is going to happen.

3           So either -- do you see to me how that

4  does not jibe?  You're either running it and you know

5  what's going on, which means that you knew about it so

6  why did you wait until, like, literally right now, or you

7  didn't know, which means that you weren't running it.

8           MR. TANG:  No, Your Honor.  On May 23,

9  '24 [sic] -- right -- they hadn't noticed the building

10  for foreclosure.  They noticed --

11           THE COURT:  They did.

12           MR. TANG:  No.  On June 13, they filed the

13  notice.

14           THE COURT:  But there actually was a

15  previous notice of foreclosure.

16           MR. TANG:  Well, no, I agree with that.  I

17  can't speak about the previous ones because I don't know

18  enough about it.  All I'm saying is this notice of

19  foreclosure was noticed on June 10 or 13.

20           THE COURT:  13.

21           MR. TANG:  Right.  And so we hadn't -- if

22  they would have sent notice of this, as required --

23  right -- it's to us in -- somewhere and then cc'd to

24  Polsinelli, which is the other counsel -- all they had to

25  do was just send the notice of this foreclosure to us on

1   June 13 --

2               MR. CONRAD:  We gave notice to Galleria,

3   as required under the loan documents; the Galleria 2425

4   Owner, LLC, we did.

5               MR. TANG:  Your Honor, may I show you

6   this?

7               THE COURT:  But that agreement is not

8   between National Bank of Kuwait and y'all.

9               MR. TANG:  It is, Your Honor.

10              MR. CONRAD:  This is the --

11              MR. TANG:  No, Your Honor.  Look.  This is

12  the intercreditor agreement.  This is Exhibit D, I

13  believe.

14              I'm sorry.  I'm not going to approach.

15              MR. CONRAD:  Where this is going off the

16  rails --

17              MR. TANG:  So, Your Honor --

18              MR. CONRAD:  Hold on.

19              -- is because he's trying to say, like,

20  "Look, this is" -- like he's standing in the shoes now of

21  Galleria 2425.

22              MR. TANG:  No, I'm not.

23              MR. CONRAD:  He's also saying that he's

24  Naissance, which he hasn't shown authority for.  These

25  are issues between him and Mr. Choudhri, his client and

 1  Mr. Choudhri, whoever these people are.  This is all

 2  just -- it certainly appears to be concocted, potentially

 3  collusive, just for the purposes of stopping this

 4  foreclosure.

 5              This has nothing to do with the bank.  The

 6  bank complied with all the representations that were

 7  based upon it.  They sat on their rights.  They did

 8  nothing.  If they admittedly knew about this in May --

 9  they said they --

10              MR. TANG:  No, we didn't.

11              MR. CONRAD:  -- knew about their rights to

12  stand in the shoes of Galleria 2425 based on the default

13  of the loan, the mezz loan, that they could take over

14  Galleria 2425, exercise all of these rights -- they sat

15  on it.  They filed a claim against Mr. Parker, the

16  guarantor, last week on, I think, June 26.

17              I mean, everything was done literally at

18  the last second, 11th hour, where all of this has been on

19  public notice.  All of this is -- it's public record.

20              If they knew about this and had issues,

21  get -- one, it -- disputes between it and Mr. Choudhri

22  based on a representation of who represents whom, not the

23  bank's concern.

24              In any event, it was all public as far as

25  this foreclosure since the last 21 days plus to move

1  forward with it.

2           MR. TANG:  Your Honor, I will say this.

3  It's Exhibit D, Section 16 --

4           THE COURT:  I'm looking at it; but

5  Exhibit D is, like, 26 pages.

6           MR. TANG:  Right.

7           THE COURT:  And literally you just threw

8  it in front of me.

9           MR. TANG:  That is my fault, Your Honor.

10  I can grab it here for you off of my documents.

11           That's an intercreditor -- we're not suing

12  as Galleria 2425, LLC, Your Honor.  We're suing as the

13  mezz lender, Your Honor, which has its own certain rights

14  to the property.  I just want that to be clear.  He's

15  kind of --

16           MR. CONRAD:  I think that's really a court

17  issue about what are the rights that they are seeking

18  under the -- I'm not disputing the intercreditor

19  agreement.  Okay?

20           MR. TANG:  And here's what --

21           THE COURT:  Hold on.

22           MR. CONRAD:  The rights that he's seeking

23  are not to stop a foreclosure.  It's basically to protect

24  its interest financially, which Your Honor was asking

25  those questions about, which are the exact -- that's the

1  only relief that they can seek there.  They can't --

2  they're over-asking on the relief.  Everything that they

3  can get is monetary damages.  You heard them yourself, is

4  that that's what he's looking at for protecting his

5  rights.

6              MR. TANG:  So, Your Honor, I will read the

7  consequence of the foreclosure to us, the mezz lender --

8  I mean, the -- yeah, the mezz lender -- right -- not

9  Mr. Choudhri.  It says --

10             And this is in Exhibit D also, "The right

11 of the mezz lender" --

12             THE COURT:  Tell me where you are.

13             MR. TANG:  Oh, boy.  Exhibit D,

14 Your Honor.

15             THE COURT:  I got you.  But where in

16 Exhibit D?  It's, like, 26 pages long.

17             MR. CONRAD:  Do you have a courtesy copy?

18             MR. TANG:  I do.  I'll give you one in a

19 second.

20             Your Honor, I'm looking at Page 17.

21 That's the notice.  Right?

22             THE COURT:  Yep.

23             MR. TANG:  And then --

24             THE COURT:  So it says -- right.  It says

25 that, "All notices, demands and requests required to be

1 given hereunder shall be in writing."

2             So tell me under -- prior to that or after

3 that where it shows that there needs -- where that

4 matters.

5             MR. TANG:  I'm sorry.  What do you mean

6 "where that matters"?

7             THE COURT:  Okay.  So you say that they've

8 got to give you notice.  Tell me under what provision

9 they have to give you notice that they are going to, say,

10 foreclose on the property.

11             MR. TANG:  Well, it's defined, "All

12 demands and requests required to be given hereunder."

13             THE COURT:  Right.  So where -- show me

14 where in the contract it requires that there be a notice

15 of this particular thing.

16             It says, "Hey, if you have to give notice,

17 this is how you do it."  That's the paragraph you're

18 showing me.  The paragraph I want to know is where does

19 it show they have to give you notice.

20             MR. TANG:  Right.  Section 12, Your Honor.

21             THE COURT:  Okay.  That's what I'm asking

22 you for.

23             MR. TANG:  I apologize, Your Honor.

24             THE COURT:  It's all right.

25             MR. TANG:  I'll let you read it.  I don't

1  need to read it to you.

2              THE COURT:  All right.

3              MR. TANG:  And, Your Honor, I would add

4  just that the last sentence of that section, that's what

5  we're -- this says the rights of the mezz lender to

6  purchase the senior loan shall automatically terminate

7  upon a transfer of the premises by foreclosure sale.  So

8  whoever gets it, we can't call and renegotiate again with

9  them.

10             He said we can call them afterwards.  They

11 don't have a duty to talk to us after it terminates.

12 They can just put me to voicemail like they did a couple

13 of times, you know, on Monday.

14             But -- so that's what we're trying to

15 fight for, is the right to jump in there, not even as

16 2425 but as the mezz lender.  We have our own separate

17 rights to that, Your Honor.

18             THE COURT:  All right.  So what are the

19 damages for failure to do this?

20             MR. TANG:  Their damages to us?

21             THE COURT:  No.  Like, what are your

22 rights?  You say they've got to do this.  All right.  So

23 what happens when they don't?

24             MR. TANG:  We lose the right to assume

25 the --

```
1                    THE COURT:  Right.
2                    MR. TANG:  -- and --
3                    THE COURT:  But you have -- so there's --
4                    MR. TANG:  -- an equitable interest in the
5    building, which is to foreclose on --
6                    THE COURT:  Okay.  So --
7                    MR. TANG:  With the note -- with the deed
8    of trust, with the note and everything comes a bundle of
9    rights -- right -- that we would have.  One is to take
10   back the building.  Right?  We could do that.  Right?
11                   And so that's what the TRO is for.  We
12   have lost our right to take back the building,
13   Your Honor.
14                   And that's the only bundle of rights that
15   you can't quantify in damages.  Right?  I mean, you can
16   go in there and operate it.  You can go in there and
17   receive the rent and all this and all that.  We don't
18   have any idea what the rents are, but we're not suing for
19   those damages.  In fact, those are de minimis to the
20   right to go in there and assert ownership of the
21   building, Your Honor.
22                   THE COURT:  Well, you know, you have the
23   right to --
24                   MR. TANG:  -- buy it.
25                   THE COURT:  -- purchase it.
```

```
 1                    MR. TANG:  The note.

 2                    THE COURT:  Right.

 3                    MR. TANG:  Right, which comes with a

 4   bundle of -- the deed of trust comes with the note.

 5   Right?  All the -- everything comes with the note.

 6                    THE COURT:  So I guess part of my

 7   question, then, is:  Why couldn't you just now buy it at

 8   the foreclosure sale?

 9                    MR. TANG:  What's that, Your Honor?

10                    THE COURT:  Why -- so it's not like you

11   would have had the right to assert it for free and, like,

12   you could just assume and jump in.  You would have to

13   have paid for the right for the note.  Right?

14                    MR. CONRAD:  Correct.

15                    MR. TANG:  Sure.  We would have to

16   negotiate with them to purchase the note.  Right.

17                    THE COURT:  So why couldn't you just --

18   regardless of whether or not you negotiate or not, if

19   there's a foreclosure sale, why couldn't you just go buy

20   it now?

21                    MR. TANG:  They haven't given us any

22   information about how much the note is.  Before this, we

23   could have asserted that right --

24                    MR. CONRAD:  The note is of public record.

25                    MR. TANG:  It's not of public record.
```

 1                   MR. CONRAD:  It is.

 2                   MR. TANG:  Well, we haven't found it if it

 3  is.  I -- we don't know what the acceleration amount is

 4  or anything like that, Your Honor.  We don't know what

 5  the fees are they have in it.  All I know is it's

 6  about -- 51 million?

 7                   MR. CONRAD:  There's plenty of pleadings

 8  on file.

 9                   THE COURT:  I was going to say, you said

10  you've looked at all the pleadings.  That would have been

11  in their damages for the lawsuit, and it would have

12  literally -- I mean, if that was the concern and you said

13  you looked at it extensively, I find it hard to believe

14  that with everything that's been filed in the

15  Galleria 2425 2021 case that there would not have been

16  information.  The only information that has been sealed

17  goes to not that.

18                   MR. TANG:  I agree.  And, Your Honor,

19  you're assuming that they gave us notice of the

20  foreclosure.  Had they given us notice of the

21  foreclosure, we could have engaged in those

22  conversations.  But what I'm saying is they never gave us

23  notice of it as required under the intercreditor

24  agreement for us to even negotiate with them.

25                   Certainly I guess we could -- I wouldn't

1  know where it's scheduled for, maybe the town hall down

2  there.

3                But, I mean, we have a right to purchase

4  it prior to the foreclosure.  If they would have just

5  given us notice, we would have engaged with them on it.

6                THE COURT:  All right.  But my big -- I

7  still have a very real concern about your ability to be

8  here representing Naissance because that's a huge

9  conflict.  And I guess my concern is, if you had gotten

10  here sooner than 20 minutes before the sale, then you

11  might have been able to get what you needed to have

12  this --

13                Do you see my concern?  I've got

14  testimony -- and if I recollect correctly -- Mr. Choudhri

15  was under oath during the temporary injunction hearing,

16  and we actually took testimony from him -- that this was

17  not an issue.  And you've shown me a document -- whether

18  it's fraudulent or not, that is not an issue before me

19  right now; but that is what --

20                I don't recall seeing it, but I remember

21  that this was not an issue.  Right?  And in part, I

22  believe it was because of the document that you've shown

23  me.

24                So it's hard for me for you to just say,

25  "Well, it's a forgery."  I don't know that.  We've been

1 operating that it's an effective document for the last

2 two years.

3                  MR. TANG:  Your Honor, I do have a power

4 of attorney for Ms. Zaheer.  Right?

5                  THE COURT:  That doesn't get past the

6 issue of -- you have the ability --

7                  That's fine.  You can represent her.  You

8 can speak on her behalf.  But that doesn't get past a

9 very difficult factual hurdle that you do not have

10 personal knowledge of.

11                  MR. TANG:  Of what, Your Honor?

12                  THE COURT:  Well, her authority.

13                  MR. TANG:  No, I do have knowledge of her

14 authority.  I've seen the records.  I've -- attached here

15 is the assignment that she signed over -- I'm sorry.

16 Attached here is the pledge of the collateral to all

17 the --

18                  I've seen the documents.  I've talked to

19 Ms. Zaheer about the case.  I've seen her corporate

20 books.  I've seen the e-mails going back and forth on

21 Sunday regarding it.  So I do have personal knowledge of

22 it.  I wouldn't file a pleading knowing it was false or

23 frivolous or anything like that, Your Honor.

24                  What he's asserting is a Rule 10 motion,

25 which requires ten days' notice so I don't get surprised

1  by it like this; but I do have the authority to represent

2  Naissance Galleria, LLC.

3          THE COURT:  Right.  You say that you do --

4  right -- but I have conflicting testimony that I've seen

5  under oath that says that somebody else is operating it.

6  And you've shown me a document that says that they don't.

7  So in absence of that conflict --

8          MR. TANG:  But the TRO is just based on

9  the pleadings right now, Your Honor.

10          THE COURT:  I get that.

11          MR. TANG:  I know.

12          THE COURT:  You have the misfortune,

13  though, of being stuck with a judge who has heard all of

14  this; so I can't just set aside the fact that I have

15  listened to all aspects of this case for literally the

16  last two years.

17          MR. TANG:  I realize I can't unring the

18  bell, Your Honor.

19          I don't think it's a misfortune we're in

20  front of you, Your Honor.  I think it's a good --

21          THE COURT:  Probably saving another judge

22  in this courtroom -- courthouse a whole lot of headache.

23          MR. TANG:  The other judge would think

24  it's a good thing.  Right?

25          No.  But, no, I think, you know, it just

1  goes back to -- you know, we'd have to redo this over

2  again.  We'll have to reset -- set aside the foreclosure

3  sale because they didn't give us proper notice of it.

4  And we're going to be back on this again and again and

5  again regarding the foreclosure sale.

6              I get what he's saying, we can call them

7  after the foreclosure and this, that and the other.  But

8  they don't have to call me back.  Right?

9              My fault was I talked to Mr. Conrad

10 outside, was, "Let's figure something out," you know, and

11 then -- you know, "We may not even, you know, stop" --

12 "We may not even file anything to stop the next

13 foreclosure.  Let's see if we can work something out in

14 30 days."

15             We've got the money to do what we need to

16 do to step in there and be done with it and then, you

17 know, move on.  But if a TRO is not granted -- and this

18 is my way of mitigating my damages, too, Your Honor.  I

19 have to come down here and try to mitigate them.  Right?

20 I'm going to have to ask some court -- we may end up back

21 in your court, which is perfectly fine with us,

22 Your Honor.  I'm not --

23             THE COURT:  I'm happy to have you.

24             MR. TANG:  -- you know, to set aside the

25 sale, too, Your Honor, and so I don't want to go through

1  that step and burn that property any more if we had a

2  right to purchase the note and they foreclosed on it

3  against proper notice.

4            Now, I will say that --

5            I'll just be quiet because I think my time

6  is running out, Your Honor.

7            THE COURT:  Yeah, your time is really

8  running out.  You have ten minutes left.

9            The temporary restraining order is denied.

10            MR. CONRAD:  Do you want to take up

11  Mr. Pope's --

12            THE COURT:  Yes.  I will need to --

13            If you are not here on Galleria 2425, I'll

14  need you to step outside for just a moment.

15            (Proceedings concluded)

16

17

18

19

20

21

22

23

24

25

```
 1                    CAUSE NO. 2023-41091

 2  NAISSANCE GALLERIA, LLC    )  IN  THE  DISTRICT  COURT OF
                               )
 3  VS.                        )  HARRIS  COUNTY,  T E X A S
                               )
 4  NATIONAL BANK OF KUWAIT,   )
    SAKP, NEW YORK BRANCH,     )
 5  ET AL.                     )  281ST  JUDICIAL  DISTRICT
    ****************************************************************
 6
            I, SHEILA R. SKIDMORE, Official Court Reporter
 7  in and for the 281st Judicial District Court of
    Harris County, Texas, do hereby certify that the
 8  foregoing contains a true and correct transcription of
    all portions of evidence and other proceedings requested
 9  in writing by counsel for the parties to be included in
    this volume of the Reporter's Record in the above-styled
10  and numbered cause, all of which occurred in open court
    or in chambers and were reported by me.
11
            I further certify that the total cost for the
12  preparation of this Reporter's Record is $691.00 and will
    be paid by Mr. Ali Choudhri.
13
            WITNESS MY OFFICIAL HAND this the 5th day of
14  July, 2023.

15

16

17

18

19                         /s/Sheila R. Skidmore
                           _____
20                         Sheila R. Skidmore, CSR No. 2346
                           Official Court Reporter
21                         281st District Court
                           Expiration Date:  05-31-2024
22                         201 Caroline, 14th Floor
                           Houston, Texas  77002
23                         Tel 832-927-2128

24

25
```

11/30/2023 4:55:12 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 82123103
By: LUGO, BONNIE
Filed: 11/30/2023 4:55:12 PM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT** | § | |
| **S.A.K.P., NEW YORK BRANCH** | § | |
| | § | |
| **Defendant.** | § | **281st JUDICIAL DISTRICT** |

## <u>TEMPORARY INJUNCTION</u>

On this day, the Court considered Galleria 2425 Owner, LLC's ("Plaintiff") Fifth Amended Petition and Emergency Application for Temporary Restraining Order and Temporary Injunction against Defendant National Bank of Kuwait S.A.K.P., New York Branch ("Defendant").  After considering Plaintiff's request for injunctive relief, exhibits, and arguments of counsel, the Court finds that there is evidence that harm is imminent if Defendant is not enjoined from foreclosing on the Property located at 2425 West Loop South, Houston, Texas 77027, Plaintiff will suffer irreparable injury for which there is no other adequate remedy at law. The Court finds that there is a colorable, valid dispute between the parties concerning the rights of the parties to unique, valuable real estate, and the dispute remains unresolved.

If not restrained, Defendant will, in all likelihood, foreclose on the real property and improvements located at 2425 West Loop South, Houston, Texas 77027 (the "Property") and convey and alienate the Property which will cause immediate and irreparable injury to the Plaintiff. The Property is unique and extremely valuable, and the equities demand that imminent foreclosure sale and/or other actions affecting the Property be enjoined in order to preserve the *status quo ante*

and maintain the Court's jurisdiction over the Property. Plaintiff demonstrates a reasonable likelihood of success upon final trial.

The Court, therefore, GRANTS Plaintiff's Application for Temporary Restraining Order. It is, therefore,

**ORDERED, ADJUDGED, AND DECREED** that:

Plaintiff will be irreparably harmed unless the Court grants Plaintiff's Application seeking injunctive relief and one of the irreparable harms this Order seeks to prevent is the loss and injury to Plaintiff's business and/or business reputation and/or business goodwill with tenants and prospective tenants, among others.

Defendant NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH, A, BANKING CORPORATION ORGANIZED UNDER THE LAWS OF KUWAIT, ACTING THROUGH ITS NEW YORK BRANCH, its successor and/or assigns, and any and all trustees and/or substitute trustees acting by, through, or under them, are immediately RESTRAINED and BARRED from committing the following actions until further order of this court:

1. Taking any action, or steps, to cause the Property to be sold at a foreclosure sale, including but not limited to, posting the property for a future foreclosure sale, having a receiver, or any other third party, appointed that would adversely affect Plaintiff's interest in, or access to, the Property, and shall not in any way interfere, or cause an interference, with Plaintiff's quiet use and enjoyment of the Property, without further order of this court; and

2. Transferring any Note and/or lien it holds, or may hold relating to the Property.

**IT IS FURTHER ORDERED** that the District Clerk shall immediately issue a writ of injunction as set forth above pursuant to Texas Rule of Civil Procedure 687.

**IT IS FURTHER ORDERED** that the bond is set at _____ and the case is hereby set for trial on the following date: _____ and time: _____.

Signed: _____

_____
PRESIDING JUDGE

Unofficial Copy Office of Marilyn Burgess District Clerk

11/30/2023 4:55 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82123103
By: Bonnie Lugo
Filed: 11/30/2023 4:55 PM

**James Q. Pope**
THE POPE LAW FIRM
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
713-449-4481
jamesp@thepopelawfirm.com


November 30, 2023


**Hon. Judge Christine Weems**
281st Judicial District Court
201 Caroline, 14th Floor,
Houston, Texas 77002

      **RE:**   Cause No.: 2023-22748, Galleria 2425 Owner, LLC v. National Bank of Kuwait

Dear Judge Weems,

     Galleria 2425 Owner, LLC ('Plaintiff') has filed its Fifth Amended Petition and Emergency Application for Temporary Restraining Order and Temporary Injunction against Defendant National Bank of Kuwait S.A.K.P., New York Branch, and requests an emergency temporary injunction hearing to be held immediately.

     Plaintiff owns the property located at 2425 West Loop South, Houston, Texas 77027 (the "Property"), and the National Bank of Kuwait has scheduled the Property for the December 5, 2023 foreclosure sale. If an emergency hearing is not held, the National Bank of Kuwait will, in all likelihood, foreclose on the Property on December 5, 2023, and convey and alienate the Property which will cause immediate and irreparable injury to the Plaintiff.

     On November 29, 2023, Naissance Galleria, LLC, sought an emergency temporary restraining order, to enjoin NBK from proceeding with the foreclosure sale, in an effort to protect its own interests in the 2425 Building.  However, to our surprise, Azeemeh Zaheer ("Azeemeh") appeared, through her counsel, and argued against entry of the temporary restraining order. Azeemeh continues to work alongside NBK to ensure denial of the temporary restraining order, leaving the 2425 Building subject to foreclosure. Azeemeh's stance is a complete 180, and contrary to her own interests, considering Azeemeh, improperly acting as manager for Naissance Galleria, LLC, sought an emergency temporary restraining order to stop NBK from foreclosing on the 2425 Building in July 2023.

     Plaintiff believes its amended petition, filed on November 30, 2023, contains facts and causes of action that would entitle it to injunctive relief.  If allowed to put on evidence, Plaintiff intends to show that its claims support enjoining the National Bank of Kuwait from foreclosing on the 2425 Building.

     The harm that will result if the temporary injunction is not considered on an emergency basis is irreparable, because Plaintiff owns a unique piece of real estate which it will be deprived of in the event of foreclosure.

For these reasons, Plaintiff would ask that this court set its Fifth Amended Petition and Emergency Application for Temporary Restraining Order and Temporary Injunction against Defendant National Bank of Kuwait S.A.K.P for an emergency temporary injunction hearing, before the foreclosure sale is conducted.

Best Regards,

James Q. Pope

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 82123103
Filing Code Description: Amended Filing
Filing Description: Plaintiff Fifth Amended Petition and Emergency Application for Temporary Injunction
Status as of 11/30/2023 5:14 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jerry CAlexander | | alexanderj@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| Ruth NVera | | verar@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/30/2023 4:55:12 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/30/2023 4:55:12 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Averyll Mauch | | amauch@Mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/30/2023 4:55:12 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |

Associated Case Party: Ali Choudhri

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Choudhri | | legal@jetallcompanies.com | 11/30/2023 4:55:12 PM | SENT |

Unofficial Copy Office of Harris County District Clerk

12/1/2023 8:23 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82130420
By: Tonisha Ricks
Filed: 12/1/2023 8:23 AM

**CAUSE NO. <u>2023-22748</u>**

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| *Defendant.* | § | **281ST JUDICIAL DISTRICT** |

<u>**PLAINTIFF'S NOTICE OF INTERLOCUTORY APPEAL**</u>

Galleria 2425 Owner, LLC, Plaintiff in the above-styled and numbered cause, files this their Notice of Interlocutory Appeal. In support of this Notice, Plaintiff shows as follows:

1. The Trial Court is the 281st Judicial District Court, Harris County, Texas. The Honorable Christine Weems is the Trial Judge. The case is styled *Galleria 2425 Owner, LLC vs. National Bank of Kuwait S.A.K.P., New York Branch*. The cause number is 2023-22748.

2. Plaintiff desires to appeal the Trial Court's November 29, 2023 Order denying Plaintiff's application for temporary injunction and from any orders or rulings subsidiary to or subsumed within that Order.

3. Plaintiff appeals to either the First or Fourteenth Courts of Appeals in Houston, Texas.

4. Galleria 2425 Owner, LLC is the party filing this Notice of Appeal.

5. This appeal is accelerated under Rule 28.1, as it is a statutory interlocutory appeal under TEX. CIV. PRAC. & REM. CODE § 51.014.

Respectfully submitted,

CLOUTHIER LAW, PLLC

By: /s/ Gage S. Fender
Susan J. Clouthier
Tex. Bar No. 24062673
Gage S. Fender
Tex. Bar No. 24093590
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 77380
Tel: (832) 849-5410
Fax: (832) 514-6215
susan@clouthierlaw.com
gage@clouthierlaw.com

James Q. Pope
The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
Ph: 713-449-4481
Fx: 281-657-9693
jamesp@thepopelawfirm.com

### CERTIFICATE OF SERVICE

I certify that on December 1, 2023, a copy of the foregoing was served on interested parties by electronic service using the court's electronic noticing system.

/s/ Gage S. Fender

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Mike Rhue on behalf of Gage Fender
Bar No. 24093590
mike@clouthierlaw.com
Envelope ID: 82130420
Filing Code Description: Notice of Appeal
Filing Description: Notice of Appeal
Status as of 12/1/2023 9:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 12/1/2023 8:23:05 AM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 12/1/2023 8:23:05 AM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 12/1/2023 8:23:05 AM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 12/1/2023 8:23:05 AM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 12/1/2023 8:23:05 AM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/1/2023 8:23:05 AM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 12/1/2023 8:23:05 AM | SENT |
| Jerry CAlexander | | alexanderj@passmanjones.com | 12/1/2023 8:23:05 AM | SENT |
| Ruth NVera | | verar@passmanjones.com | 12/1/2023 8:23:05 AM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 12/1/2023 8:23:05 AM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 12/1/2023 8:23:05 AM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 12/1/2023 8:23:05 AM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 12/1/2023 8:23:05 AM | SENT |
| David Clark | | dclark@mccathernlaw.com | 12/1/2023 8:23:05 AM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 12/1/2023 8:23:05 AM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 12/1/2023 8:23:05 AM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 12/1/2023 8:23:05 AM | SENT |
| Gage Fender | | gage@clouthierlaw.com | 12/1/2023 8:23:05 AM | SENT |
| Clouthier Law | | info@clouthierlaw.com | 12/1/2023 8:23:05 AM | SENT |

12/5/2023 8:25 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82228758
By: Patricia Gonzalez
Filed: 12/5/2023 8:25 AM

## CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC,<br>    Plaintiff, | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| NATIONAL BANK OF KUWAIT,<br>S.A.K.P., NEW YORK BRANCH, | § | |
| | § | |
| Defendant. | § | 281ST JUDICIAL DISTRICT |

### ORDER ON ALI CHOUDHRI'S EMERGENCY APPLICATION
### FOR TEMPORARY RESTRAINING ORDER

HAVING CONSIDERED Ali Choudhri's Emergency Application for Temporary Restraining Order, any responses thereto and the argument of counsel, if any, the Court, for the reasons stated on the record, DENIES the Emergency Application.

SIGNED on the _____ day of December 2023.

_____
JUDGE PRESIDING

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 82228758
Filing Code Description: Proposed Order
Filing Description: Order regarding Ali Choudhri's Emergency Application for Temporary Restraining Order
Status as of 12/5/2023 8:37 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Charles Conrad | | charles.conrad@pillsburylaw.com | 12/5/2023 8:25:32 AM | SENT |
| Jerry CAlexander | | alexanderj@passmanjones.com | 12/5/2023 8:25:32 AM | SENT |
| Ruth NVera | | verar@passmanjones.com | 12/5/2023 8:25:32 AM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 12/5/2023 8:25:32 AM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 12/5/2023 8:25:32 AM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 12/5/2023 8:25:32 AM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 12/5/2023 8:25:32 AM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 12/5/2023 8:25:32 AM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 12/5/2023 8:25:32 AM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 12/5/2023 8:25:32 AM | SENT |
| David Clark | | dclark@mccathernlaw.com | 12/5/2023 8:25:32 AM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 12/5/2023 8:25:32 AM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 12/5/2023 8:25:32 AM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 12/5/2023 8:25:32 AM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 12/5/2023 8:25:32 AM | SENT |
| Clouthier Law | | info@clouthierlaw.com | 12/5/2023 8:25:32 AM | SENT |
| Gage Fender | | gage@clouthierlaw.com | 12/5/2023 8:25:32 AM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/5/2023 8:25:32 AM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 12/5/2023 8:25:32 AM | SENT |
| Ali Choudhri | | ali@jetallcompanies.com | 12/5/2023 8:25:32 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

12/4/2023 11:52 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82226340
By: Patricia Gonzalez
Filed: 12/4/2023 11:52 PM

## CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC,<br>　　　Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | HARRIS COUNTY, TEXAS |
| NATIONAL BANK OF KUWAIT,<br>S.A.K.P., NEW YORK BRANCH, | §<br>§<br>§<br>§ | |
| 　　　Defendant. | §<br>§ | 281ST JUDICIAL DISTRICT |

### NATIONAL BANK OF KUWAIT'S
### RESPONSE TO PLAINTIFF'S FIFTH AMENDED PETITION AND EMERGENCY
### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
### TEMPORARY INJUNCTION

National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") files this Response to

Galleria 2425 Owner, LLC's ("Plaintiff" or "Galleria") Fifth Amended Petition and Emergency

Application for Temporary Restraining Order and Temporary Injunction ("Amended Petition"),

respectfully showing as follows:

### SUMMARY OF RESPONSE

In response to this Court's denial of Galleria's request for temporary injunction on

November 29, 2023, Galleria filed the Amended Petition on November 30, 2023 in attempt to cure

certain pleading defects that warranted this Court's denial of Galleria's Application for Temporary

Injunction. But rather than pleading the requisite facts to establish irreparable harm or no adequate

remedy at law necessary to support injunctive relief, Plaintiff merely tacked on a request for

injunctive relief to its breach of contract claim against NBK for an alleged breach of the

Confidential Settlement Agreement.   However, Plaintiff nevertheless "sues NBK for these

breaches of the Confidential Settlement Agreement, including monetary damages for such

breaches." [1] Likewise, Plaintiff's Common Law Fraud/Lender Liability claim similarly seeks

---

[1] Ex. 1, Fifth Amended Petition at 20.

"benefit of the bargain damages," but "requests injunctive relief."[2] And once again, Plaintiff claims "conspiracy" based not on any underlying tort, but a separate accusation that NBK interfered "with Plaintiff's bankruptcy case … to have it dismissed by making fraudulently [sic] claiming Azeemeh had control over Naissance Galleria, LLC."[3] There are no claims in the Amended Petition that support injunctive relief.

All of the causes of action asserted against NBK give rise to an adequate remedy at law, namely, money damages. And Galleria's allegations related to any conspiracy to interfere with the bankruptcy are *per se* specious when the Bankruptcy Court dismissed the bankruptcy based on numerous concerns expressed by Judge Lopez during the November 1, 2023 status conference.[4] For these reasons, the Court should deny Galleria's request for injunctive relief.

## ARGUMENT AND AUTHORITIES

**A.   There is No Basis for the Court to Grant Galleria a Temporary Restraining Order or Temporary Injunction.**

"The decision whether to grant a preliminary injunction is within the discretion of the court, but it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden." *Lee v. Verizon Communications Inc.*, 3:12-CV-4834-D, 2012 WL 6089041, at *2 (N.D. Tex. Dec. 7, 2012) (quoting *John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, 861 F.Supp.2d 792, 794 (N.D. Tex. 2012) (citing *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985))). Further, the fact that the matter involves the foreclosure of real estate does not warrant injunctive relief when there was an adequate remedy at law. *See Sw. Sav. & Loan Ass'n v. Mullaney Const. Co., Inc.*, 771 S.W.2d 205, 207 (Tex. App.—El Paso 1989, no writ)

---

[2] *Id*. at 22.

[3] *Id*. at 25.

[4] Ex. 2, Nov. 1, 2023, Bankruptcy Court Hearing Transcript.

4873-7461-8005.v1

("Matters involving the foreclosure of real estate generally concern remedies of law. Equity can intervene, but only where there is an inadequate remedy of law established by the evidence, and the mere fact that the subject matter is real estate does not satisfy this requirement.") (emphasis added).

The only claim for relief that sought anything *other* than monetary damages is a new claim for "conspiracy" asserted by Galleria. However, conspiracy is a derivative tort, not an independent cause of action, that requires "participation in some underlying tort." *Nguyen v. Watts*, 605 S.W.3d 761, 793 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Galleria made no such allegations against NBK, and so it was not entitled to injunctive relief as a matter of law. The sole basis for Plaintiff's conspiracy claims is a vague allegation that NBK "conspired" to "interfere with [Galleria's] bankruptcy case, and to have it dismissed by making fraudulently [sic] claiming Azeemeh had control over Naissance Galleria, LLC." As the Court noted, there was nothing inappropriate about NBK pointing out to the Bankruptcy Court that there was concern about who actually had controlling authority to run Naissance:[5]

---

[5] Ex. 3, Nov. 29, 2023 Transcript at 106:3-24.

4873-7461-8005.v1

02:30PM 3    Wednesday before Thanksgiving, I do not think it was

02:30PM 4    inappropriate for them to point out that there is some

02:30PM 5    dispute or concern over who actually has controlling

02:30PM 6    authority to run Naissance when Naissance, I believe,

02:30PM 7    was a party to that bankruptcy.

02:30PM 8            I don't think they -- because somebody over

02:30PM 9    on this side kept -- I believe it was Ms. MacGeorge kept

02:30PM 10   referring to it as throwing a grenade into the

02:30PM 11   bankruptcy -- no, no, it was the bankruptcy lawyer,

02:30PM 12   sorry -- kept referring to it as throwing a grenade into

02:30PM 13   the bankruptcy proceeding.  At the same time, I don't

02:30PM 14   think it was inappropriate, because I think it is fully

02:30PM 15   appropriate if there is litigation involving a company,

02:30PM 16   and there are issues over who controls the company,

02:30PM 17   whether it's Mr. Choudhri or Ms. Zaheer.

02:30PM 18           And so, which set of lawyers actually has

02:30PM 19   control over what Naissance has -- is doing, I don't

02:31PM 20   think it was inappropriate for them to tell the

02:31PM 21   bankruptcy court Hey, just so you know, Judge, they

02:31PM 22   just -- this is what's happening, and that's a question,

02:31PM 23   because we don't know who we should be dealing with

02:31PM 24   here.

There simply is no basis in law or in fact to suggest that NBK and Zaheer conspired to interfere in Galleria's bankruptcy when NBK merely alerted the bankruptcy court to an ongoing dispute regarding the control of Naissance Galleria, LLC.

Moreover, a plain reading of the Amended Petition reveals nothing other than monetary damages. Specifically, Galleria has pled the following as it damages: "Plaintiff hereby sues NBK for these breaches of the Confidential Settlement Agreement, including monetary damages for such breaches" (Count 1); no claim against NBK (Count 2); "this interference by Defendants

damaged Plaintiff in amounts to be determined after discovery" (Count 3); "Plaintiff seeks benefit of the bargain damages for the fraud related to the enforceable contract" (Count 4); "Plaintiff hereby sues NBK to recover all such amounts." (Count 5); no damages alleged (Count 6); "The business disparagement by the Defendants damaged Plaintiff in amounts to be determined after discovery" (Count 7); "[t]he damages are for the value of the amounts that would have been recovered in the state court litigation and/or the value of the deals lost for leases and/or sales of the 2425 Building" (Count 8); "The amount of [NBK's] unjust enrichment for which [Galleria] hereby sues NBK is the difference between what NBK would have been owed … under the Confidential Settlement Agreement and the true value of the building, for which [Galleria] hereby sue [sic] NBK" (Count 9).[6]

Despite involving real estate, these damages do not warrant equitable relief as a matter of law. *See Sw. Sav. & Loan Assn*, 771 S.W.2d at 207 (Tex. App.—El Paso 1989, no writ) (stating that "[t]he builders interruption of business and its loss of profits can be adequately addressed by remedies of law" while further finding that "there is no probative evidence that the bank interfered with the builder's effort to dispose of the property other than its commencement of foreclosure proceedings."). This Court has repeatedly heard, considered, and denied the multitude of specious claims filed by Galleria in an attempt to stop NBK from enforcing its rights to foreclose on the property. Galleria has not pled anything that would warrant injunctive relief.

---

[6] *Id*. at 19-26.

4873-7461-8005.v1

## Prayer

For the forgoing reasons, NBK prays that the Court deny Galleria's Temporary Restraining Order in its entirety and grant it all other relief to which it is entitled.

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: _/s/ Charles Conrad_

Charles C. Conrad
State Bar No. 24040721
Elizabeth Klingensmith
State Bar No. 24046496
Ryan Steinbrunner
State Bar No. 24093201
Two Houston Center
909 Fannin, Suite 2000
Houston, Texas 77010-1018
Telephone: (713) 276-7600
Facsimile: (281) 276-7634
charles.conrad@pillsburylaw.com
liz.klingensmith@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

**Attorneys for National Bank of Kuwait, S.A.K.P., New York Branch**

## CERTIFICATE OF SERVICE

In accordance with Rule 21 of the Texas Rules of Civil Procedure, I certify that on this 4th day of December 2023, a true and correct copy of the foregoing document was served on all counsel of record through electronic service.

_/s/ Charles C. Conrad_

Charles C. Conrad

6

4873-7461-8005.v1

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 82226340
Filing Code Description: No Fee Documents
Filing Description: NBK Response to Galleria Fifth Amended Petition and Emergency Application for TRO and Temporary Injunction
Status as of 12/5/2023 9:00 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 12/4/2023 11:52:08 PM | SENT |
| Jerry CAlexander | | alexanderj@passmanjones.com | 12/4/2023 11:52:08 PM | SENT |
| Ruth NVera | | verar@passmanjones.com | 12/4/2023 11:52:08 PM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 12/4/2023 11:52:08 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 12/4/2023 11:52:08 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 12/4/2023 11:52:08 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 12/4/2023 11:52:08 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 12/4/2023 11:52:08 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 12/4/2023 11:52:08 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 12/4/2023 11:52:08 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 12/4/2023 11:52:08 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 12/4/2023 11:52:08 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 12/4/2023 11:52:08 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 12/4/2023 11:52:08 PM | SENT |
| Clouthier Law | | info@clouthierlaw.com | 12/4/2023 11:52:08 PM | SENT |
| Gage Fender | | gage@clouthierlaw.com | 12/4/2023 11:52:08 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 12/4/2023 11:52:08 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/4/2023 11:52:08 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 12/4/2023 11:52:08 PM | SENT |
| Ali Choudhri | | ali@jetallcompanies.com | 12/4/2023 11:52:08 PM | SENT |

# **EXHIBIT 1**

11/30/2023 4:55 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82123103
By: Bonnie Lugo
Filed: 11/30/2023 4:55 PM

### CAUSE NO. 2023-22748

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| *Defendant.* | § | **281ST JUDICIAL DISTRICT** |

### PLAINTIFF'S FIFTH AMENDED PETITION AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJNUCTION AGAINST DEFENDANT NATIONAL BANK OF KUWAIT S.A.K.P. NEW YORK BRANCH

Galleria 2425 Owner, LLC ("***Plaintiff***") files this Fifth Amended Petition and Emergency Application for Temporary Restraining Order and Temporary Injunction against Defendant National Bank of Kuwait S.A.K.P., New York Branch (individually as "***NBK***", or collectively as "***Defendants***"), and Azeemeh Zaheer (individually as "***Zaheer***", or collectively as "***Defendants***") and, in support, submit the following:

### I.
### DISCOVERY PLAN

1.      Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

### II.
### PARTIES

2.      Galleria 2425 Owner, LLC ("***Plaintiff***") is a limited liability company doing business in Texas and is the owner of the building located at 2425 West Loop S., Houston, Texas ("***2425 Building***").

Page **1** of 29

3.      National Bank of Kuwait, S.A.K.P., New York Branch ("*NBK*") is a banking corporation organized under the laws of Kuwait, acting through its New York Branch. NBK HAS APPEARED WITH COUNSEL.

4.      Azeemeh Zaheer ("**Zaheer**"), is an individual who resides, and may be personally served at 5513 Kansas Street, Houston, Texas 77007.  CITATION IS HEREBY REQUESTED.

### III.
### INTRODUCTION

5.      This suit was originally filed against NBK, a party who has been shown to be willing to engage in bad faith actions, and who repeatedly attempts to make outside deals with third parties, specifically to deprive the plaintiff of its ownership interest in the 2425 Building in any way it can.

6.      Plaintiff, Galleria 2425 Owner, LLC, filed bankruptcy to preserve the asset, which NBK vehemently opposed, and fought to have dismissed from the bankruptcy court. However, at the hearing on NBK's motion to dismiss, Plaintiff was successful in defending against dismissal, and the bankruptcy case moved forward.

7.      Plaintiff promptly proposed a plan in the bankruptcy court, which was characterized as a "really smart" plan that "check[ed] all the boxes" for plan confirmation, according to Judge Lopez.

8.      Then, after NBK lost its motion to dismiss, it filed a letter in the bankruptcy case (Document 77) which made the bankruptcy court aware of litigation that was irrelevant to Galleria 2425 Owner, LLC's pursuit of its ongoing bankruptcy case. The state court litigation referenced

by NBK is, in the words of Judge Lopez "an unrelated case involving Ms. Zahire [sic] and Naissance and Mr. Choudhri". The case is about a dispute over control of an entity called Naissance Galleria, LLC, which is an entity that provided a mezzanine loan to Galleria 2425 Owner, LLC's sole member and is party to an intercreditor agreement with NBK.  Upon information and belief, certain of the investors in Naissance Galleria LLC are substantial clients of or investors in NBK.  Naissance Galleria LLC was also a party to the very settlement agreement with NBK at issue in this suit.  Importantly, Naissance Galleria, LLC does not have any membership in, or control over Galleria 2425 Owner, LLC, or any of its members or managers.

9.     Notably, the state court, in the litigation referenced in NBK's letter to Judge Lopez, did issue a Temporary Injunction, which maintained the status quo of Choudhri's management and control of Naissance Galleria, LLC, but limited any actions that could be taken by Choudhri on behalf of Naissance Galleria, LLC to only those which are also approved by Zaheer, until a trial resolves the issue once and for all.

10.    After the Temporary Injunction was in place establishing Choudhri's control of Naissance Galleria, LLC, Zaheer directed her counsel, while purporting to act for Naissance Galleria, LLC, to appear at two separate hearings in the bankruptcy court, on or about October 12, 2023 and November 1, 2023, and on the eve of a November 1 status conference filed an emergency motion in the bankruptcy court, requesting for Judge Lopez to rule against the state court and find that Zaheer had control of, and could act for Naissance Galleria, LLC. Judge Lopez thereafter sua sponte dismissed the bankruptcy case during the November 1, 2023 status conference.

11.    When the parties to the state court litigation returned to appear before Judge Manor on November 13, 2023, Judge Manor confirmed that her Temporary Injunction did not give Zaheer

any right to act as the manager of Naissance Galleria, LLC, and confirmed that Choudhri was in control, subject to Zaheer's approval during the pendency of trial.

12.      All of these actions, gave rise to Judge Lopez's serious concerns about the ability to move forward with the bankruptcy case without resolution in the state court action. Judge Lopez stated, in the Status Conference held on November 1, 2023, the following:

"I don't have anything to qualify it in state court issues. I don't know. There's just a lot of confusing stuff, and my gut tells me that I need to dismiss this case and let you all go figure this out in State Court, because there's not enough here, and there's real concerns that I have…".

13.      However, since Naissance Galleria, LLC has no ownership or control over the Plaintiff or any of its members or managers, these filings and appearances are just a smoke screen. The fact that they were also filed in violation of the Temporary Injunction not only makes these actions unlawful, but there could be no other purpose aside from attempting to cause the dismissal of the bankruptcy case brought by Galleria 2425 Owner, LLC, which is an action that, logically, would be counter to the company's interests.

14.      In its letter inviting the Naissance dispute and Ms. Zaheer's counsel into the bankruptcy proceedings, NBK cleverly attempts to confuse the court by implying that Ms. Zaheer had control of Naissance Galleria, LLC because the order says that management decisions could not be made without her approval. Ms. Zaheer's counsel then accepted NBK's invitation to create confusion and disruption, appearing at the October 13 emergency status conference purporting to represent Naissance Capital LLC.

15.      As this Court has handled cases related to Galleria 2425 Owner, LLC for years, it is well aware that Ms. Zaheer has been entirely absent from any of these proceedings until on or

about July 5th, 2023, when Naissance Galleria, LLC appeared, allegedly controlled by Azeemeh Zaheer, before this Court's ancillary docket, attempting to stop the foreclosure by NBK, at which hearing this Court itself questioned the absence of Ms. Zaheer over the last several years.

16.     Ms. Zaheer signed the assignment giving control over Naissance Galleria, LLC to Mr. Choudhri on July 3rd, 2020. Ms. Zaheer did not make any claims of control over Naissance Galleria, LLC, did not attempt to object to Mr. Choudhri's management of the company for three (3) years. These allegations are absurd, as Ms. Zaheer has been entirely absent from the company's management for years.

17.     As a result of this conspiracy by the defendants, the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case.

18.     What's interesting is that, if Ms. Zaheer was sincerely the manager of Naissance Galleria, LLC, she would not have worked to have the bankruptcy case dismissed.

19.     Such actions, if they had been taken by a legitimate manager for Naissance Galleria, LLC, would be a breach of fiduciary duty to the company, _unless there was a back room deal NBK_.

20.     Now that NBK has re-posted the 2425 Building for foreclosure, Plaintiff will suffer irreparable harm as a result of the defendants' actions.

**IV.**
**FACTUAL BACKGROUND**

21.     In 2018, NBK loaned certain funds to Plaintiff.  NBK has continually interfered with the Plaintiff's ability to lease the 2425 Building to produce revenue and Plaintiff's ability to sell the 2425 Building to pay NBK off.  Every time NBK has so interfered, it has then blamed the Plaintiff for its inability supposedly to meet some of the loan terms.

22.     For example, in January 2021, Plaintiff Ali Choudhri, who is vilified by NBK in various pleadings, had serious parties interested in acquiring interests in the building more than enough to clear NBK's debt.  A letter dated January 15, 2021, from SIBS International, and two purchase contracts would have paid off not only NBK, but left the Plaintiff with a great deal of value.  **NBK, rather than facilitate this sale, issued a formal notice of default to the Plaintiff and its intent to accelerate the loan on June 29, 2021**, while the SIBS International deal was in progress, killing that deal.

23.     **The same was true with regard to NBK's interference with the Plaintiff's attempt to lease space in the building to provide revenue so it could operate and make loan payments.**  By August 2021, this situation had become untenable due to NBK's refusal to approve new tenants and new leases, prompting the Plaintiff, on August 13, 2021, to send NBK a detailed letter regarding lease-up and renewal prospects for discussions, none of which, it seemed NBK would approve.

- **Healthcare Service Organization**

  - •Size: 130,000± RSF – large client requirement in their preliminary planning stages:  •Industry: Healthcare Service Organization •Type of use: Administration Offices •Direct/Sublease •Commencement date: Q3/2023 •Term:5-10 yrs.  They are specifically VERY interested in amenities available, for example: deli, gym, day care, conference center (# of seats), training center (# of seats).

- **Invesco**

  - We met with the team twice and are actively pursuing them for 2425.  They are interested in a 157-month lease term for 208,830 SF of Net Rental Area.

- **Financial Services Firm**

  - Office •AREA: West Houston (610 West, Hwy 290, Beltway 8) •SPACE: Open Concept •SIZE: Approximately 20,000 – 25,000 rsf •PARKING: 5/1000 ratio •OCCUPANCY: Late 2Q22/Early3Q22 •TERM: 36-60 months with

renewal options •This tenant is currently at 24 Greenway on their top floor and have been looking at other A buildings.

- **Beyond Finance**

  - We are discussing a 68-month lease term for +/- 40,000 rentable SF.

- **Banco Affirme**

  - We submitted a 64-month lease term for 4,545 SF of Net Rental Area.

- **Walls Bank (existing tenant)**

  - Renew 3,054 SF of rental space for 60-month term starting January 1, 2022.

- **Others (working directly with ownership)**

  - ResMed (https://www.resmed.com/en-us/) interested in the entire building, working directly with Dr. Peter Farrell, Founder and Chairman

  - Healthstore Holdings (https://www.healthstore.com/), interested in a 15-year term with 80,000 SF in phase 1 and 75,000 SF in 12 months as phase 2.

  - Immunicom (https://immunicom.com/), interested in at least two full floors, moving HQ from San Diego, CA

24.   Below is an August 16, 2021 email from counsel for the Plaintiff to NBK forwarding multiple leases for approval that **NBK had failed to approve or even respond to.**



manny.gardberg@hklaw.com <manny.gardberg@hklaw.com>
To: mona.dajani@pillsburylaw.com
Cc: ali@jetallcompanies.com, Bruce.Merwin@hklaw.com, Charles.Jackson@hklaw.com

Mona, Please see attached. Best, Manny

**Manny Gardberg | Holland & Knight**
Associate
Holland & Knight LLP
811 Main Street, Suite 2500 | Houston, Texas 77002
Phone 713.653.8615 | Fax 713.654.1871
manny.gardberg@hklaw.com | www.hklaw.com

Add to address book | View professional biography

7 attachments

- _HK Letter re Notice - 8 13 2021.pdf
  52K
- _Unanimous Consent - January 2021.pdf
  854K
- 2425 Galleria Owner - Operating Budget 2021 (July).pdf
  232K

ttps://mail.google.com/mail/u/0/?ik=37856133f6&view=pt&search=all&permmsgid=msg-f%3A1708280571

/15/22, 8:10 PM                                     Jetall Companies Mail - National Bank of

- NBK - 2425WLS Leasing Prospect List.pdf
  100K
- NBK - Proposal 2021.08.13 final.pdf
  562K
- PSA - 2425 West Loop South.pdf
  535K
- Purchase - SIBS - 2425 West Loop South Offer letter Updated.pdf
  42K

25.     This lack of approval, or finding obstacles to approve, was not new.  In September

2019, Related Group had reached out to lease the parking garage located at the 2425 Building to

be used for overflow, for parking up to 110 spaces.  **NBK's authorized representative Michael**

**Carter would not approve this lease** (note "nbkny" email address below– *i.e.* National Bank of

Kuwait, New York Branch), which would have generated a great deal of revenue for the Plaintiff.

From: Michael Carter <Michael.Carter@nbkny.com>
Date: Monday, 23 September 2019 at 13:22
To: Azeemeh Zaheer <azeemeh@naissancecapital.co.uk>, Lisa Walker <Lisa.Walker@nbkny.com>
Subject: RE: LOI

My primary concern is that the tenant determines when the commencement date, presumably because they have zoning and building department approvals to complete as well as financing to arrange, which is understandable, however there does not appear to be an outside expiration date for the Commencement date. It appears they could tie up these space permanently without having to pay rent. I think you should have an outside date for Commencement.

26.     The situation became so untenable that in September 2021, Plaintiff initiated a lawsuit against NBK.

27.     In good faith, even during the pendency of this litigation, the Plaintiff was still trying to get tenants into the building and get NBK's approval to do so, so it would not claim additional breaches of loan agreements.  **On July 2, 2022, the Plaintiff sent NBK five leases for approval, which NBK did not approve.**

28.     *The parties litigated for eleven (11) months until August 22, 2022, when they entered into a Confidential Settlement Agreement.*  **NBK has prevented Plaintiff's successful performance under any and all agreements it has with NBK, including the Confidential Settlement Agreement.**

29.     The Confidential Settlement Agreement permitted a timeframe in which Plaintiff could sell the 2425 Building, or seek refinancing, and Plaintiff was successful in obtaining a buyer for the building.  Upon closing this transaction, Plaintiff would have retained a forty-five (45%) ownership interest in the 2425 Building. However, **NBK again took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure**

**on March 29, 2023 in breach of the Confidential Settlement Agreement, which Plaintiff believes was done intentionally to prevent the sale.**  The sale would have cleared the NBK debt as it stood at that time and left great value for the Plaintiff.  Plaintiff believes that NBK recognized that greater value and wanted to take it for itself by foreclosure in a "loan to own" gambit.

30.     There are tremendous factual inaccuracies that NBK represents to state and federal courts and they continue into these proceedings.  For example, in its Motion to Dismiss the Plaintiff's Bankruptcy, while it is absolutely true that temporary restraining orders were filed to attempt to prevent a foreclosure by NBK and its takeover of the 2425 Building, NBK fails to note that such requests were also **granted by this Court** based upon showings that **NBK had not allowed the Plaintiff to lease up the building to generate revenue, and had killed at least two transactions that Plaintiff was working on that would have cleared NBK and left value for the Plaintiff.**

31.     Additionally, NBK posted for foreclosure in 2023 early, and against an extended grace period that this Court had given Plaintiff, which silenced the bidding process and interest in the 2425 Building completely.  No one wants to buy a building posted for foreclosure.  **Plaintiff believes that NBK knew this and did it on purpose to prevent the Plaintiff from successfully selling the property and paying off the loan, so NBK could foreclose and take the 2425 Building for itself so it can open a Houston location.**

32.     After NBK's disclosures of the situation created by the Confidential Settlement and the wrongful posting for foreclosure during an extension of that agreement, potential buyers of the property who would otherwise become good prospects to negotiate a sale with Plaintiff, became potential purchasers of the NBK Note and began negotiating with NBK.  NBK interfered with

these potential purchases and with these business relationships.  At least the following were interfered with in this fashion:

        a)     Globix Investment,

        b)     Ironwood Commercial Realty,

        c)     Shah Firm, LLC, and

        d)     Jeb Brown Law.

**B.**    **Azeemeh Zaheer Decides She Wants the Building.**

33.    On June 26, 2023, Zaheer, filed a lawsuit in the name of Naissance Galleria, LLC ("*Naissance*"), despite having assigned control over such entity several years prior., in the 157th Judicial District Court in Harris County, Texas referenced by case number 2023-39006 against Brad Parker ("*Parker*") as an initial step in Zaheer's pursuit of a hostile takeover of the 2425 Building.

34.    On July 5, 2023, Zaheer, again acting in the name of Naissance, filed a second lawsuit in the 129th Judicial District Court in Harris County, Texas referenced by case number 2023-41091 against Parker and NBK, to further her hostile takeover attempt of the 2425 Building. Zaheer sought injunctive relief, but that request for an emergency temporary restraining order was denied.

35.    On or about July 5, 2023, Plaintiff commenced a Chapter 11 bankruptcy proceeding in the Southern District of Texas, referenced by case number 23-60036.  NBK sought to dismiss the bankruptcy proceeding, but after a full day evidentiary hearing its motion to dismiss was denied on September 26, 2023.  The Chapter 11 Plan could have been approved and would have substantially reduced the value of NBK's secured debt. So, after its motion to dismiss was denied,

NBK changed tactics and decided to invite Ms. Zaheer and her counsel into the bankruptcy case to cause confusion and disruption. NBK decided it could not allow its debt to be restructured under the bankruptcy code, just as it had decided it could not allow the prior sales of the building that had been lined up by Plaintiff.

**C.      Azeemeh Zaheer is a False Representative of Naissance.**

36.      Azeemeh Zaheer at one time had a business and personal relationship with Ali Choudhri, both of which appeared to have ended mutually for a time. Azeemeh Zaheer sought injunctive relief in the 80th Judicial District Court for Harris County against Naissance Galleria, LLC, which was a mezzanine lender to an LLC ("**LLC**") two steps up in the chain.

37.      Azeemeh Zaheer had signed, as the authorized representative of the Managing Member of Naissance Galleria, LLC an Assignment of the management rights of that LLC to Ali Choudhri. In response, Mr. Choudhri stepped into Naissance's shoes, covered its expenses, and did a miraculous job of negotiating the aforementioned settlement with NBK after the Assignment. Azeemeh Zaheer made this assignment for a number of reasons, but most of them stemmed from her ineffective management of the building and her fear of exposure to NBK and certain individuals affiliated with NBK because of her poor performance.

38.      After Mr. Choudhri received the Assignment and had negotiated the successful settlement with NBK and the building looked as if it might succeed (a period of years), Azeemeh Zaheer decided she wanted to misappropriate the value that Mr. Choudhri had just preserved and to an extent had just created. First, she claimed the Assignment was invalid and sought and received a Temporary Injunction, on September 21, 2023, from the 80th Judicial District Court in Harris County. This Temporary Injunction basically only created a stalemate with respect to the management of Naissance Galleria, LLC to preserve the status quo until a trial in January. Mr.

Choudhri is still the manager of Naissance Galleria, LLC, not Azeemeh Zaheer, although she did have some approval rights under the injunction.  Mr. Choudhri, as the manager of Naissance Galleria LLC and is only required to obtain approval from Zaheer for his actions.  Zaheer DOES NOT have any control of the entity.  Moreover, this was confirmed at a hearing on November 13, 2023 before Judge Manor in the 80th Judicial District Court.

**D.    Azeemeh Decides to Conspire with NBK So It Could Foreclose On the Building.**

39.    After the September 21, 2023 entry of the Temporary Injunction, some ironic, if not strange, events start taking place with respect to Ms. Zaheer and the Plaintiff.  First, it is against Azeemeh Zaheer and Naissance's financial interests if NBK forecloses.

40.    Second, on information and belief, Zaheer caused a copy of the Temporary Injunction Entered on September 21, 2023 by the 80th Judicial District Court in Harris County to be sent to counsel for NBK, who used it to interfere with the Plaintiff's ability to reorganize under the bankruptcy code and confirm a chapter 11 plan.

41.    Third, Zaheer's directed her counsel to appear without any forewarning at the October 12, 2023 status conference in the Bankruptcy Court about the plan, claiming Azeemeh Zaheer now is the manager of Naissance Galleria, LLC and they have been hired by her to represent Naissance Galleria, LLC, all by virtue of the Temporary Injunction.

```
 6        MR. DRINNON:  Okay.  I represent Mr. Abdullatif in

 7   other cases but not this one.  I tend to get hired because I

 8   have sued Mr. Choudhri successfully in numerous

 9   jurisdictions and cases . . . .
```

### E.    Zaheer Changes Sides to Make a Deal with the NBK

42.    Progressively, Azeemeh Zaheer's behavior becomes more inexplicable as she: (1) takes the position that the Temporary Injunction put her in charge of Naissance (it did not);[1] (2) that Naissance Galleria, LLC could or had already become the owner of the Debtor building (2425 Galleria Owner, LLC, Plaintiff herein) and as the new owner, they did not wish to pursue claims asserted in the bankruptcy case against NBK by Plaintiff and Naissance for breaching the settlement agreement and would want to take the bankruptcy in another direction.

43.    This created an environment of confusion for the Bankruptcy Court, which was by Defendants' design, and it was a concerted effort by the Defendants to have the bankruptcy case dismissed, allowing NBK to foreclose. Defendant NBK would not be impeded by the bankruptcy and Zaheer could tell Mr. Choudhri: "I will not go along with your reorganization plan unless you pay me millions of dollars" while making a deal with NBK to block the Plan of Reorganization in the event no payment was received from Mr. Choudhri.

44.    The Defendants are working in concert, to achieve the same end. Specifically, the Defendants have devised, and intended to devise, a scheme or artifice to seize the 2425 Building by any means necessary. Defendants will stop at nothing to see the Plaintiff lose possession of the 2425 Building, and upon information and belief, the driving force behind their efforts is Osama Abdullatif ("**Abdullatif**").

---

[1] At a hearing had in the issuing court (the 80th Judicial District Court) on Monday, November 13, 2023, the Court confirmed her Temporary Injunction Order had not turned control of Naissance over to Zaheer and Zaheer had no authority to authorize attorneys to make the filing and take the action they had on behalf of Naissance Galleria, LLC in the Bankruptcy.

45.     Defendants' scheme has involved false representations of material information, including but not limited to misrepresentations concerning the Plaintiff and the purpose and effects of the Temporary Injunction.

46.     On November 29, 2023, Azeemeh appeared, through counsel, at an emergency hearing where Naissance Galleria, LLC's Application for Temporary Restraining Order was being heard before the Harris County District Court Ancillary Judge.  Naissance Galleria, LLC sought an emergency temporary restraining order, to enjoin NBK from proceeding with the foreclosure sale scheduled for December 5, 2023, in an effort to protect its interests in the 2425 Building. However, Azeemeh, through counsel, argued against entry of the temporary restraining order, and worked alongside NBK to ensure its denial, leaving the 2425 Building subject to foreclosure. Azeemeh's stance is bizarre, considering Azeemeh, improperly acting as manager for Naissance Galleria, LLC, sought an emergency temporary restraining order to stop NBK from foreclosing on the 2425 Building in July 2023[2].

**F.     False Representations by Zaheer's Agents are Successful in Getting Plaintiff's Bankruptcy Dismissed.**

47.     The Bankruptcy Court scheduled a Status Conference for the Plaintiff's Bankruptcy Case for November 1, 2023. Azeemeh's agents, on October 31, 2023, only hours before the Status Conference, filed an Emergency Motion.  This Motion contained many misrepresentations, some of which follow:

a)     Even though Zaheer had no right to or standing necessary to file anything on behalf of Naissance, and the Temporary Injunction gave Zaheer no such rights, statements were made in their Emergency Motion directly to the contrary, stating Azeemeh Zaheer was in, Choudhri was out.

---

[2] See Cause No. 2023-41091: Naissance Galleria LLC v. National Bank of Kuwait S.A.K.P., New York Branch, transcript from the July 5, 2023 Temporary Restraining Order hearing is attached.

    b)    The filing stated flatly at one point that the Assignment had been found to be forged – it had not.

    c)    The filing stated that, because of the Temporary Injunction, Naissance was now controlled exclusively by Zaheer, who could make Naissance become the Owner of the Bankrupt.  (The issuing court on Monday, November 13, 2023, ruled from the bench it said no such thing.)

These misrepresentations had the desired effect, and the Bankruptcy Court dismissed the Bankruptcy, green-lighting NBK to foreclose.

## G.     Abdullatif is Choudhri's Competitor and Wants to Ruin Him.

48.     Choudhri has been in the real estate investment and management business for the last 20 years.  The regular course of Choudhri's business involves numerous aspects of real estate development.   These activities include real estate and business acquisitions and dispositions, seeking and obtaining financing, and developing and managing commercial and residential properties.  He regularly raises capital for these activities through the issuance of equity and/or debt.  It is also within his normal course of business to enter into transactions with borrowers, lenders, and investors to support the purchase, development, and operations of real estate properties.

49.     Choudhri at times conducts his real estate investment and management business through the use of special purpose entities, such as Plaintiff Galleria Owner 2425, LLC.  Choudhri runs a management company, Jetall ("*Jetall*"), to provide employees and management services to entities for purposes of operating real estate investments.

50.     Abdullatif has provided financing for numerous third-party claims against Choudhri, including interfering with Choudhri's final divorce proceedings in both Pakistan Supreme Court and Harris County District Court by soliciting Choudhri's ex-wife for her legal claims against Choudhri and/or his entities and to gain access to Choudhri's protected financial

disclosures.  Abdullatif has filed several dozen Lis Pendens against Choudhri, and his properties, and has sponsored litigation against Choudhri in several dozen cases.

51.     Upon information and belief, Abdullatif is also financing the litigation expenses of Zaheer against Choudhri in the dispute over the building owned by Plaintiff.  Abdullatif, Zaheer, and others have all agreed to the enterprise course of action aimed at destroying Choudhri's business, including taking possession of the 2425 Building.

52.     On more than one occasion, Abdullatif resorted to violence and threats against Choudhri and/or his family, friends, and associates.  Mr. Choudhri had another real estate venture involving an entity called Dalio.  Abdullatif was present at Dalio's foreclosure proceeding, where a friend accompanying him assaulted one of Choudhri's lawyers. On another occasion, Abdullatif and his associates used firearms to hold Choudhri, and his associates, hostage.

53.     Abdullatif also formed an association with others in his illegal efforts to destroy Choudhri's business.  These individuals include but are not limited to Chris Wyatt, former paralegal of Jetall ("**Wyatt**").

54.     Wyatt was hired by Jetall in 2019.  In the course of his employment, Wyatt oversaw legal and litigation matters for Jetall.  He was provided confidential information concerning Jetall's and its client's real estate transactions, finances and debt leverage on properties, and litigation management strategies. As a Jetall representative, Wyatt was regularly involved in and provided access to privileged information and communications, including information subject to attorney-client and work product privileges.  Wyatt signed a non-disclosure agreement at the beginning of his employment prohibiting him from disclosing confidential information and requiring him to return all files upon his termination.

55.     Wyatt's employment at Jetall ended in December 2020.  When he left Jetall, Wyatt stole corporate files including electronic communications and secretly recorded privileged phone communications between Choudhri and his attorneys.

56.     Jetall obtained a restraining order in January 2021 enjoining Wyatt from disclosing or divulging confidential information obtained through his course of employment with Jetall.

57.     Abdullatif met with Wyatt before, during and after Wyatt's departure from Jetall. Abdullatif, directly and through his lawyers, received confidential and privileged information from Wyatt.  This information included but is not limited to illegal recordings of Choudhri's conversations with attorneys.

58.     Upon information and belief, Abdullatif and his lawyers were aware that Wyatt was a former employee of Jetall who was involved in confidential and privileged communications and that a restraining order was entered enjoining Wyatt from disclosing confidential information.

59.     Abdullatif and his agents have used the illegally obtained information and recordings as part of Abdullatif's scheme to destroy Choudhri's business.  Abdullatif retained Wayne Dolcefino ("**_Dolcefino_**") as a "consultant" to publish on the internet a series of hit pieces on Choudhri.  Dolcefino advertises that his services included "litigation support," and Abdullatif has utilized Dolcefino in the course of his numerous lawsuits asserted against Choudhri and his businesses.

60.     Information illegally obtained from Wyatt is included in many of Dolcefino's hit pieces.  Dolcefino continues to publish these hit pieces on the internet, including videos posted in May 2023.

61.     Abdullatif has made several false claims against his competitor, Choudhri, in many ways, two of the most egregious being:

a)      Hiring Dolcefino to create video "hit pieces" about Choudhri, his business, his marital status, and inappropriate character based upon his actions during that marital status. This video contained "over the top" falsehoods, e.g. that he was still married and had been for years. It was commercial speech designed to designate a competitor (Choudhri) and give Abdullatif a competitive advantage, and was introduced into interstate commerce by release to major television (broadcast and cable) networks and by placing on the internet where it still resides today, making it available to the potential customers and lenders that are competed for; and

b)      Placing multiple improper Lis Pendens on the record title to properties owned by Choudhri or his business entities, which created a double negative effect on Choudhri's ability to conduct business by hampering his ability to find new lenders or renewing existing loans because the security for them was impaired and making it impossible to sell those properties to raise new capital on his own. These Lis Pendens were "over the top" misrepresentations because they were illegal and did not assert valid interests in the subject properties.  The Lis Pendens were also introduced into interstate commerce because they were filed of record and were available "online" over the internet to any potential customer for commercial real estate in the Houston area.

## V.
## CAUSES OF ACTION

## COUNT 1:  BREACHES OF CONFIDENTIAL SETTLEMENT AGREEMENT

62.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

63.     Plaintiff and NBK reached a valid and enforceable agreement expressly set forth in the Confidential Settlement Agreement.  Pursuant to the Confidential Settlement Agreement, NBK agreed to keep the contents and terms of the parties' agreement completely confidential.  Plaintiff dismissed its very good claims in the Lawsuit against NBK in reliance upon NBK's promise to uphold the confidentiality obligations set forth in the Confidential Settlement Agreement.

64.     NBK breached the Confidential Settlement Agreement by disclosing its contents and terms to third parties in violation of the agreement's express confidentiality provisions.  These

disclosures prevented Plaintiff from closing on the sale of the 2425 Building and chilled the market for other buyers for Plaintiff's property.  The same is true for NBK's wrongful, early filing of a notice of foreclosure on the 2425 Building, also in violation of the Confidential Settlement Agreement.

65.     Plaintiff hereby sues NBK for these breaches of the Confidential Settlement Agreement, including monetary damages for such breaches and  injunctive relief preventing NBK from foreclosing on the building because Civil Practices & Remedies Code Section 65.011 authorizes injunction relief when: 1) the applicant is entitled to a writ of injunction under the principles of equity and the laws of Texas relating to injunctions. Texas Civil Practices & Remedies Code Section 65.011(3); See Butnaru v. Ford Motor Co., 84 S.W.3rd 198, 210 (Tex. 20002); and 2) when irreparable injury to real or personal is threatened, irrespective of any remedy of law. Tex. Civ. Practice & Remedies Code Section 65.011(5).

66.     Plaintiff requests injunctive relief as allowed pursuant to *CytoGenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex.App.—Houston, [1st Dist.] 2006, pet. denied), and *L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 876 (Tex.App.—Fort Worth 2019, pet. denied) due to Defendant's breach.

## COUNT 2: TORTIOUS INTERFERENCE WITH CONTRACT

67.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

68.     As alleged, NBK tortiously interfered with the SIBS International contract and the Caldwell Soames Inc. contract, causing damages to the Plaintiff in the net amounts of the contracts which, but for NBK's interference, would have been paid to the Plaintiff.

69.     Zaheer has tortiously interfered with Plaintiff's contract with NBK, and abused process by interfering in Plaintiff's bankruptcy proceeding.

**COUNT 3:  <u>TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS</u>**

70.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

71.     After NBK's disclosures of the situation created by the confidential settlement and the wrongful posting for foreclosure during a judicial extension of the grace period contained in that agreement, potential buyers of the property who would otherwise have become good prospects to negotiate a sale with Plaintiff, became instead potential purchasers from NBK of the NBK note and began contacting and negotiating or attempting to negotiate with NBK instead of the Plaintiff. NBK interfered with these potential purchasers and with these potential business relationships.  At least the following were interfered with in this fashion:

- a)     Globix Investment,
- b)     Ironwood Commercial Realty,
- c)     Shah Firm, LLC, and
- d)     Jeb Brown Law.

72.     Zaheer have interfered with the Plaintiff's relationship with NBK and/or entered into a relationship with Zaheer, and their antics caused the dismissal of Plaintiff's Chapter 11 bankruptcy proceeding, which was otherwise proceeding to a cram-down restructuring under Chapter 11 of the bankruptcy code

73.     This interference by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

### COUNT 4:  COMMON LAW FRAUD/LENDER LIABILITY

74.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

75.     NBK never had any intention of living up to the Confidential Settlement Agreement.  The Plaintiff was winning the lawsuit against NBK, so NBK induced the Plaintiff into dismissing its lawsuit and entering into the Confidential Settlement Agreement which NBK had no intention of living up to.  This fraud works an estoppel against NBK (see Count 6, "ESTOPPEL").  Plaintiff hereby sues NBK for fraud and fraudulent inducement and alleges it constitutes the basis for an action for Lender Liability.

76.     NBK knew at the time it entered into the Confidential Settlement Agreement it would deflect and tortiously interfere with the Plaintiff's attempts to sell the 2425 Building so NBK would be able to foreclose on the building and take all of the value instead of just the value of the amounts otherwise owed at the time.  Plaintiff accordingly sues NBK for its fraud, fraud in the inducement, lender liability, and subsequent interference with the settlement agreement. Plaintiff seeks benefit of the bargain damages for the fraud related to the enforceable contract. Plaintiff requests injunctive relief as allowed pursuant to *CytoGenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex.App.—Houston, [1st Dist.] 2006, pet. denied), and *L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 876 (Tex.App.—Fort Worth 2019, pet. denied) due to Defendant's breach.

### COUNT 5:  FRAUDULENT TRANSFER

77.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

78.     The funds paid by the Plaintiff to NBK:

    a)     $801,509.42 paid Plaintiff to NBK on August 27, 2022;

b)      $80,000 paid by Plaintiff to NBK on April 18, 2023; and

c)      $80,000 paid by Plaintiff to NBK on May 10, 2023

were fraudulently induced by NBK and were payments for which the Plaintiff received nothing in return and constitute fraudulent conveyances in violation of U.S.C. § 544, 548, and 550 and TEX. BUS. & COMM. CODE §§ 24.001, *et seq.*, for which the Plaintiff hereby sues NBK to recover all such amounts.  In addition, the Loan Agreement between NBK and Plaintiff set aside reserve funds to cover certain events of default related to the anchor tenant. Due to COVID-19, this provision of the Loan Agreement activated, and Plaintiff's loan payments were being drawn down from the reserve funds. However, NBK intentionally depleted Plaintiff's reserve funds, and transferred Plaintiff's funds to itself prior to the time when they were actually due. Plaintiff requests an injunction pursuant to Sec. 24.008.

## COUNT 6:  ESTOPPEL

79.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

80.    NBK is estopped from claiming Plaintiff owes any more than the amount stated and agreed to in the Confidential Settlement Agreement because of its fraud and fraudulent inducement alleged previously.

## COUNT 7:  BUSINESS DISPARAGEMENT

81.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

82.    The posting of the 2425 Building during any negotiation periods and/or the extended grace period when actual buyers were moving toward concluding a deal and when other

potential buyers were expressing interest in the 2425 Building, constituted business disparagement against the Plaintiff for which Plaintiff hereby sues NBK.

83.     The efforts of Zaheer to make false accusations and representations about the Plaintiff's ownership interests, management, and decision-making abilities constituted business disparagement against the Plaintiff for which the Plaintiff hereby sues Zaheer.

84.     The business disparagement by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

## COUNT 8:  BREACH OF GOOD FAITH AND FAIR DEALING

85.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

86.     Every contract has a duty of good faith and fair dealing engrafted upon it, especially in a lender/borrower relationship, and even more so when the lender is based in the State of New York as NBK is.

87.     NBK breached its duty of good faith and fair dealing by:

a)      Inducing Plaintiff to dismiss their State Court lawsuit;

b)      Inducing Plaintiff to enter into the Confidential Settlement Agreement;

c)      Tortiously interfering with Plaintiff's performance under the Confidential Settlement Agreement;

d)      Tortiously interfering with third-party contracts;

e)      Not approving tenant leases or contracts for sale; and

f)      deflecting buyers so Plaintiff could not sell the 2425 Building.

88.     Plaintiff hereby sues NBK for breach of duty of good faith and fair dealing.  The damages are for the value of the amounts that would have been recovered in the state court litigation and/or the value of the deals lost for leases and/or sales of the 2425 Building.

### COUNT 9:  <u>UNJUST ENRICHMENT</u>

89.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

90.     If NBK is allowed to foreclose on the 2425 Building it will make an unconscionable profit and succeed in its "loan to own" gambit.  The amount of its unjust enrichment for which Plaintiff hereby sues NBK is the difference between what NBK would have been owed (but for its breaches of the Confidential Settlement Agreement) under the Confidential Settlement Agreement and the true value of the building, for which Plaintiff hereby sue NBK.

### COUNT 10:  <u>CONSPIRACY</u>

91.     Defendants agreed to work in concert with each other in order to interfere with Plaintiff's bankruptcy case, and to have it dismissed by making fraudulently claiming Azeemeh had control over Naissance Galleria, LLC.

92.     Defendants acted with the intent to harm plaintiff by disrupting its bankruptcy proceedings and ultimately obtaining a sua-sponte dismissal of such proceeding based upon their allegations

93.     To accomplish the object of their agreement Defendants intentionally or negligently mischaracterized the effect of the state court temporary injunction, in order to confuse and disrupt Plaintiff's bankruptcy case, which resulted in dismissal.

94.     The agreement to engage in this conduct proximately caused injury to plaintiff. Plaintiff's sole asset and its ability to reorganize its affairs under Chapter 11 of the bankruptcy

code, has now been posted for foreclosure on December 5th, 2023, instead of being protected through its reorganization proceedings. A foreclosure will irreparably harm Plaintiff.

## COUNT 11:  ATTORNEYS' FEES

95.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

96.     Plaintiff hereby sues Defendants for its reasonable and necessary attorneys' fees under breach of a written contract under Civil Practice and Remedies Code §38.001, under the fee shifting agreement of the contract, and under any statutory or common law right to recover same.

## VI.
## APPLICATION FOR TEMPORARY INJUNCTION OR ORDER

97.     The Defendants have conspired with each other, and others, or worked in parallel courses to present the bankruptcy court with false allegations that caused the bankruptcy case of Plaintiff 2425 Galleria Owner, LLC to be dismissed. Such actions were undertaken to prevent Plaintiff from reorganizing under chapter 11 of the bankruptcy code and allow NBK to foreclose. If a foreclosure takes place, Plaintiff will lose its sole asset, a unique piece of real estate.

98.     If Plaintiff's application for temporary injunction is not granted, harm is imminent because 1) Plaintiff's sole asset will be foreclosed as a result of defendants harmful actions on December 5th, 2023; 2) Defendants will continue to conspire with each other in a manner that is counter to the true interests of Naissance Galleria, LLC; and 3) Defendants will continue to violate the Temporary Injunction, as they have already done on at least three occasions, in order to interfere with Plaintiff's lawful attempts to preserve the 2425 Building. These harms are imminent and would cause irreparable injury with no other adequate legal remedy.

99.     The harm that will result if the temporary injunction is not issued is irreparable because Plaintiff owns a unique piece of real estate which it will be deprived of in the event of foreclosure. Texas Courts repeatedly rule that "every piece of **real estate** is innately [**8] unique. *See, e.g., Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.--Houston [14th [*58] Dist.] 1982, no writ) ("It is well established law that each and every piece of **real estate** is unique. Therefore, if appellants were allowed to foreclose appellees would be irreparably harmed, since **real estate** is so unique."); *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex. App.--Corpus Christi 1987, no writ) ("Every piece of **real estate** is unique, and if foreclosure were allowed before a full determination of the usury claim, appellee would be irreparably harmed."). *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 57-58 (Tex. App.—San Antonio 2010, no pet.).

100.     Temporary injunctive relief preventing foreclosure is necessary until such time as the merits of this case can be decided to maintain the status quo pending resolution on the merits.

## VII. JURY DEMAND

101.     Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VIII. PRAYER

102.     For the reasons set forth above, Plaintiff asks that the Court enter a Temporary Injunction, enjoining NBK from foreclosing upon the Plaintiff's unique real estate and granting additional relief in the following manners:

      a)     NBK is restrained from 1) foreclosing on, posting, reposting, or otherwise selling at auction the 2425 Building; and 2) transferring any note and/or lien it holds or may hold relating to the 2425 Building;

Page **27** of 29

b)    Actual damages including economic injuries & consequential damages;

c)    Attorney's fees;

d)    Exemplary damages;

e)    Prejudgment and post judgment interest;

f)    Court costs; and

g)    All other relief to which Plaintiff is entitled under both law and equity.

103.    Plaintiff is willing to post bond.

Respectfully submitted,

The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
Ph: 713-449-4481
Fx: 281-657-9693
jamesp@thepopelawfirm.com

By: /s/ James Q. Pope
     James Q. Pope
     TBN: 24048738
     Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on November 30, 2023, a copy of the foregoing was served on interested parties by electronic service using the court's electronic noticing system.

By: /s/ James Q. Pope
     James Q. Pope

## **JURAT**

My Name is Ali Choudhri.  My office address is 1001 West Loop South, Suite 700, Houston, Texas 77027, and my date of birth is January 24, 1980.  I declare under penalty of perjury that the facts and events set forth in the Fifth Amended Petition and Emergency Application for Temporary Restraining Order and Temporary Injunction against Defendant National Bank of Kuwait S.A.K.P., New York Branch, as filed on November 30, 2023, are within my personal knowledge and are true and correct.

Executed in Harris County, State of Texas, on November 30, 2023.


By: /s/ Ali Choudhri
Ali Choudhri

Page **29** of **29**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 82123103
Filing Code Description: Amended Filing
Filing Description: Plaintiff Fifth Amended Petition and Emergency Application for Temporary Injunction
Status as of 11/30/2023 5:14 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jerry CAlexander | | alexanderj@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| Ruth NVera | | verar@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 11/30/2023 4:55:12 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 11/30/2023 4:55:12 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 11/30/2023 4:55:12 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 11/30/2023 4:55:12 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 11/30/2023 4:55:12 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 11/30/2023 4:55:12 PM | SENT |

Associated Case Party: Ali Choudhri

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Choudhri | | legal@jetallcompanies.com | 11/30/2023 4:55:12 PM | SENT |

**EXHIBIT 1**

1                    REPORTER'S RECORD

2                  CAUSE NO. 2023-41091

3  NAISSANCE GALLERIA, LLC      ) IN   THE   DISTRICT   COURT OF
                                )
4  VS.                          ) HARRIS   COUNTY,   T E X A S
                                )
5  NATIONAL BANK OF KUWAIT,     )
   SAKP, NEW YORK BRANCH,       )
6  ET AL.                       ) 281ST   JUDICIAL   DISTRICT

7

8

9  _____

10             **TEMPORARY RESTRAINING ORDER**

11                **JULY 5, 2023**

12                **VOLUME 1 OF 1**

13 _____

14

15

16

17

18      On the 5th day of July, 2023, the following

19  proceedings came on to be held in the above-titled and

20  numbered cause before the Honorable Christine Weems,

21  Judge Presiding, held in Houston, Harris County, Texas.

22

23      Proceedings reported by computerized stenotype

24  machine.

25

**APPEARANCES**

Mr. David Tang
ATTORNEY AT LAW
6711 Stella Link, Suite 343
West University Place, Texas   77005
Telephone:  832-287-2129
          - and -
Mr. Omar Khawaja
LAW OFFICES OF OMAR KHAWAJA, PLLC
5177 Richmond Avenue, Suite 1065
Houston, Texas   77056
Telephone:  281-888-2339
**Counsel for Plaintiff**


Mr. Charles C. Conrad
Mr. Ryan Steinbrunner
PILLSBURY WINTHROP SHAW PITTMAN LLP
909 Fannin Street, Suite 2000
Houston, Texas   77010
Telephone:  713-276-7600
**Counsel for Defendant National Bank of Kuwait**

Unofficial Copy Office of Marilyn Burgess District Clerk

```
 1                P R O C E E D I N G S
 2                THE COURT:  2023-41091, Naissance
 3  Galleria, LLC, versus National Bank of Kuwait.
 4                Counsel, please make your appearances for
 5  the record.
 6                MR. TANG:  Good morning, Your Honor.
 7  David Tang for Naissance Galleria, LLC.  And I have
 8  Mr. Omar Khawaja as co-counsel for Naissance Galleria,
 9  LLC, Plaintiff, Your Honor.
10                MR. CONRAD:  And this is Charles Conrad
11  and Ryan Steinbrunner for the National Bank of Kuwait.
12                And I would start by asking Mr. Tang to
13  show proof of authority to -- I challenge his proof of
14  authority and capacity to represent Naissance Capital.
15                MR. TANG:  Your Honor, that would be a
16  TRCP, I think, 10 or 11 motion.  A motion to show
17  authority requires ten days' notice for my client to come
18  in there and give you the affidavit.
19                But I do -- as an officer of the court, I
20  will tell you, Mr. Khawaja and I both have authority to
21  represent Naissance Galleria, LLC.  The principal is out
22  of the country right now visiting her family, as I
23  understand it, in -- I don't know if it's Bangkok or
24  Malaysia but one of the countries over there, Your Honor.
25                THE COURT:  Well, so --
```

Unofficial Copy Office of Marilyn Burgess Distict Clerk

1          MR. CONRAD:  Again, the reason I bring

2   this up, Your Honor -- sorry for the interruption -- is

3   that Mr. Choudhri, who's in the courtroom today, has made

4   affirmative representations to the National Bank of

5   Kuwait that he represents, solely and exclusively,

6   Naissance Capital.  So that's the reason --

7          Again, this is not our dispute.  This is a

8   dispute between Mr. Tang, whoever his client is and

9   Mr. Choudhri, not the Bank of Kuwait.

10          But, again, because of the exigent

11  circumstances and the relief, that this was just filed

12  15 minutes ago -- you know, I understand he's alleging

13  that an attempt was made on Monday.  It's true that we

14  were made aware of it, that I brought it to your

15  attention --

16          THE COURT:  Right.

17          MR. CONRAD:  -- on Monday.  But, again,

18  these are issues that we have -- they're asking for an

19  injunction to stop the foreclosure sale that the court --

20          THE COURT:  -- that's going to happen in,

21  like --

22          MR. CONRAD:  -- ordered in 40 minutes.

23          THE COURT:  Yeah.  So --

24          MR. CONRAD:  And it's interesting Mr. Pope

25  also deferred because he has nothing new whatsoever.  I

1   mean, this is just, again, sanctionable conduct by him

2   and his client.

3                    THE COURT:  Well, let's focus on

4   Naissance.

5                    So --

6                    MR. TANG:  Your Honor, I will say this.  I

7   went through the file a little bit.  And you're right.

8   This is very records-worthy.  I think that's a nice way

9   of putting it by Your Honor.

10                   But I will say this.  I understand -- I

11  can kind of appreciate Mr. Conrad's hesitancy on this;

12  but I can assure you, you know, Naissance Galleria, LLC,

13  has nothing to do with Ali Choudhri.  We want nothing to

14  do with Ali Choudhri.  We're but the second lienholder of

15  that building in which Mr. Choudhri has defaulted on the

16  loan, and that's why we're here today.

17                   Upon Mr. Choudhri's default of the loan --

18                   Before I get to that, Your Honor, I will

19  say this on the record, because we're on the record, and

20  as an officer of the court, Mr. Khawaja and I both

21  represent other entities and individuals suing

22  Mr. Choudhri in other lawsuits, you know, all sprinkled

23  throughout Texas, it seems like, through bankruptcy

24  court, JP court, county court and district court.

25                   So Naissance and any of Mr. Choudhri's

1  companies, we have no alignment, and we don't want any

2  alignment with him at all, Your Honor, on it.

3                    In fact, I believe --

4                    If I'm over-speaking, here, Mr. Khawaja --

5                    I believe Mr. Khawaja even holds a

6  judgment against Mr. Choudhri or one of Choudhri's

7  companies.

8                    And so I get Mr. Conrad's --

9                    THE COURT:  So what is your basis for them

10 wanting to stop the foreclosure?

11                   MR. TANG:  Because, Your Honor, once

12 Mr. Choudhri's company -- right -- has defaults on that

13 second note -- right -- it's pledged by 100 percent

14 collateral of Galleria 2425 Owner, the entity in your

15 court right now, the other one.  Right?

16                   We have 100 percent of the collateral.

17 Right?

18                   And upon the default, we actually are

19 operating that company; but if the primary lender calls

20 the note, the primary, which they did, we have an option

21 in there to go in there and take the note and buy the

22 building.

23                   We have never been given notice of this

24 foreclosure for us to work with them on the remedies on

25 getting the building.  Right?

```
 1                    THE COURT:  Okay.  But I guess -- I feel
 2  like y'all are a little late to the party because there
 3  was -- this all stems from an underlying litigation that
 4  started -- that was filed in 2021 that was literally set
 5  for trial last September; so that's how I know about
 6  Naissance, because y'all came up a whole lot in that
 7  case.
 8                    MR. TANG:  Yes, Your Honor.
 9                    THE COURT:  So knowing that they were
10  filing a notice of acceleration with an intent to
11  foreclose and that we were in full-blown litigation about
12  it --
13                    MR. TANG:  Yes, Your Honor.
14                    THE COURT:  -- I find it hard to believe
15  that that never would have -- nobody ever would have told
16  Naissance that all of this was going on.
17                    MR. TANG:  I can probably -- I think the
18  assumption is correct, that Naissance had an idea of
19  litigation.  That is absolutely -- probably true,
20  Your Honor.
21                    THE COURT:  Well, it's not just about
22  litigation; it was about litigation over whether or not
23  there was a proper acceleration on National Bank of
24  Kuwait's note and whether or not they had the right to
25  foreclose on it.
```

Unofficial Copy Office of Marilyn Burgess District Clerk

```
1                    MR. TANG:  We --

2                    THE COURT:  And --

3                    MR. TANG:  Sorry.  Go ahead.

4                    THE COURT:  Just one more thing.

5                    MR. TANG:  Yeah.

6                    THE COURT:  There was actually a

7    foreclosure listing on this property, like, four months

8    ago, in March, or at least a filing in March for April;

9    so I don't know why then you wouldn't have come forward

10   and said, "Hey, I see that it is now listed for

11   foreclosure."

12                   I've seen alleged articles where it talked

13   about that this property that we're talking about is set

14   up for foreclosure; so I find it hard to believe that you

15   then didn't know, "Hey, they're going to foreclose on it.

16   We probably should jump in now and try to work something

17   out," other than waiting for -- I don't know -- two days

18   before it was actually going to be foreclosed on, when

19   notice for the foreclosure, I know for a fact, probably

20   went out June 13 --

21                   MR. CONRAD:  Correct.

22                   THE COURT:  -- sometime when I was not

23   here, so --

24                   MR. TANG:  And, Your Honor, that may be

25   so.  I'm not trying to argue with you too much on that.
```

 1                    But on the May -- all the notices of

 2   foreclosure, we never got notice of it as the secondary

 3   lender on it.

 4                    THE COURT:  And who was supposed to give

 5   you notice of it?

 6                    MR. TANG:  NBK.

 7                    And there's an address in the

 8   intercreditor agreement and all the loan -- there's a

 9   700-page loan document that --

10                    MR. CONRAD:  Can I interrupt real quick?

11                    MR. TANG:  Well, let me finish real quick.

12                    THE COURT:  You'll get your moment,

13   Mr. Conrad.

14                    MR. CONRAD:  Okay.

15                    MR. TANG:  I mean, he can talk, if he

16   wants, Your Honor.  I don't want to --

17                    THE COURT:  No, go ahead.  Just make your

18   full argument because I'm going to let him make his full

19   argument.

20                    MR. TANG:  Well, fair enough, Your Honor.

21                    And so they never gave us notice of it.

22   Right?

23                    And so part of your proceedings, as I

24   understand just reading it -- right -- is a lot of it was

25   abated.

1           And also there was a motion to seal the
2  records, also, and so, you know, I don't think we could
3  have fully understood exactly what was going on in the
4  case.
5           We still don't understand 100 percent
6  what's going on in the case.  But we noticed that the
7  foreclosure was set today.  Nobody filed anything on it
8  to stop it necessarily, and so we're just here to assert
9  our rights on it.  If we lose -- and we have a right --
10          If they would have sent us a June 13
11 letter like they're supposed to, we would have said,
12 "Okay.  These guys are in default on our second note as
13 of May of 2023."  Right?  We would have negotiated and
14 tried to work something out with them.
15          We're still trying to do that here today
16 with them, but we did not get notice -- my client didn't
17 get notice of the foreclosure until -- by Sunday morning,
18 Your Honor, before she was scheduled to go out of town.
19          THE COURT:  Now, how did she find out
20 about it Sunday morning?
21          MR. TANG:  I believe that one of the
22 realtors she was working with said, "Hey, 1001 is up for
23 foreclosure."
24          And so she had somebody look it up, and
25 they found that 2425 was also up for foreclosure.

1          There's a -- I mean, I think 1001 has

2    nothing to do with this case; but that's what stirred the

3    conversation.  And then she asked around some more, and

4    then she found out that it was.  And here we are today.

5          And I filed it as soon as -- well, I tried

6    to file it as soon as I got it; but I can't scan it in

7    properly.  It's on me, Your Honor.

8          And so like I said, part of the rights

9    that we have once they posted for foreclosure -- and it

10   says it in the 700-page document that everybody agreed

11   to, that we have a right to assume the note or work

12   something out with them.

13          In fact --

14          THE COURT:  Let me ask you this.  Why does

15   this not just become a breach of contract deal and then

16   you just sue them over the money?

17          MR. TANG:  Because it's a building.  We

18   would have an equitable interest in the building.

19   That's -- you know, that's not something that you can

20   quantify damages as a matter of law.

21          Mr. Choudhri is apparently already in

22   breach of it -- of whatever agreements he had.

23          THE COURT:  But how is it not literally --

24   I mean, yeah, it's a building.  But, I mean, literally

25   how is it not just reduced down to money?  Because

1  ultimately -- right -- was what you were getting was

2  money as a secondary lender on the property; so what

3  you're out, if it gets sold, is --

4              MR. TANG:  Well, we're out of --

5              THE COURT:  -- the collateral interest,

6  but still somebody would still owe you money.

7              MR. TANG:  Right.

8              THE COURT:  So then ultimately, you could

9  go sue somebody -- whoever you believe owes you money for

10 the money.

11             MR. TANG:  But how much is this building

12 worth?  I mean, you can't quantify the damages.  That's

13 the issue with real estate.  Right?  You can't quantify

14 it.

15             I mean, he can laugh all he wants; but

16 that's what the case law says, that, you know, buildings,

17 property, the right to purchase buildings, the equitable

18 interest in it, you can't quantify with -- you know, with

19 monetary damages, just like a -- it would be like a --

20 like in a TREC contract where you try to get the other

21 party to sell it to you -- right -- in lieu of seeking

22 damages.  Right?  In lieu of taking the earnest money,

23 you can, you know, get that equitable right to get them

24 to sell you the property.

25             Here, we have a lien.  They have a deed of

1  trust -- they have a lien on it.  In the contract, it

2  says we have a right to go in there and try to negotiate

3  and get that lien out and, you know, take over the

4  building.

5              And so ownership of a building, you know,

6  what's the value of that?  Ownership of buying the

7  building, I mean, what's the value of that?

8              And that's been part of the dispute in

9  y'all's underlying case.  As I understand from the

10 pleadings is -- you know, people say the value of the

11 building is here.  Some people say it's, like, near the

12 Titanic.  Right?  It's underwater, that low.  Right?

13             THE COURT:  Right.  And part of the reason

14 we were going to go to trial was to resolve the fact

15 issue as to what the value of the building was.

16             MR. TANG:  So, Your Honor, let me offer

17 something up.  Right?  And I'm not trying to give

18 credence to what Mr. Conrad is saying.  I'm just trying

19 to understand what he's saying, to a certain degree.

20             He's arguing now for Mr. Choudhri.  Right?

21 He goes, "Oh, there's something goofy about this

22 assignment."  I mean, they're fighting over the

23 assignment --

24             THE COURT:  I don't know.  I haven't heard

25 his argument yet.

1          MR. CONRAD:  I haven't made one yet, just

2 so the record's clear.

3          THE COURT:  Let him make an argument, and

4 then you can counter it with what time that you've got.

5          But go ahead --

6          MR. TANG:  Oh, you're right.

7          THE COURT:  Yeah.  You're on the clock.

8          Mr. Conrad?

9          MR. CONRAD:  All right.  So just a bunch

10 of things here.  I started with a motion to show

11 authority because of the same issue here.  He's

12 complaining lack of notice.  Right?  That's his argument.

13          His argument is -- and, again,

14 Mr. Choudhri has sworn that he is the representative of

15 Naissance, and they're taking issue with that.  That's

16 not an issue for the bank at all.  Mr. Choudhri waived

17 notice on behalf of Naissance.  Okay?  This is not,

18 again, an issue for the bank.

19          And so his whole issue here is that he's

20 seeking an injunction.  What is Mr. Choudhri seeking?  An

21 injunction.  Mr. Pope deferred to Mr. Tang here to let

22 this hearing go first because they all want the same

23 thing.  He says he's adverse to Mr. Choudhri in a bunch

24 of different lawsuits.  Well, guess what?  They're on the

25 same side this morning.  They're asking for the exact

1  same thing.  They want this foreclosure proceeding and

2  auction that's set for 30 minutes from now to begin

3  toward -- enjoined by this court, so they're on the same

4  team here.

5              The issue is is that he still has

6  fundamentally -- and because of the exigent circumstances

7  cannot show a capacity or authority on behalf of his

8  client.  That is a major material issue regarding the

9  major and extraordinary relief that they're seeking here

10 this morning.

11             And I will say regarding the relief, it's

12 not what he says it is.  He can't enjoin this.  This was

13 a secondary loan to the bank -- National Bank of Kuwait's

14 first loan.

15             There were risks.  All he has under the

16 loan documents in particular is a right to step into the

17 shoes to pay.

18             What is the issue?  If he wants to, you

19 know, take over this building or whatever, let the

20 foreclosure go.  He can call -- his client can call the

21 bank after the foreclosure occurs.  Anybody can call the

22 bank after the foreclosure occurs.

23             This court ordered repeatedly that this

24 foreclosure could go forward this morning at 10:00 a.m.,

25 repeatedly over the last several months.

1                Regarding the notice issue, it was public.

2      We issued it -- right -- I believe, on the end of March,

3      March 28.   It was posted for the May 5th or 6th

4      foreclosure, whatever the Tuesday was in May.   Then it

5      was just issued again to the public.   He said he went

6      online.

7                If they were so concerned about this

8      building and their note, why aren't they always checking

9      the public notices?   It's a public notice.   There was

10     nothing private, clandestine, secretive about this.

11               The only thing that seemed clandestine and

12     secretive is the timing of this lawsuit filing and

13     Mr. Choudhri also stating that, you know, he wants

14     another injunction for, like, the fifth or sixth time.

15     God knows how many times he's sought it.

16               But, again, I will tell you his lawyer

17     called me this morning, Mr. Pope.   I know that they're

18     contemplating the issues, but it's important to bring it

19     up now because he's in the courtroom.   He said if this

20     foreclosure is not enjoined -- he'll give one last shot

21     at it -- they're filing bankruptcy.

22               So, I mean, again, I think I've made that

23     representation to the court, that that was likely to

24     happen.   Mr. Tang knows that that's likely to happen.

25               But, again, why are we here if that's the

1  remedy he's going to seek?  That's going to put a stop to

2  all of this.  Otherwise, we just need to move forward

3  with the foreclosure.

4  THE COURT:  The thing, Mr. Tang, is that I

5  do recall -- because Naissance became an issue --

6  unfortunately for you, I'm the judge that just happens to

7  be on ancillary right now and I'm the judge who's dealt

8  with this entire case the whole time.  Not yours but

9  theirs.

10  MR. TANG:  Oh, no, I know that,

11  Your Honor, yes.

12  THE COURT:  Right.

13  And so I do recall, because there was an

14  issue as to whether or not Naissance was going to become

15  a problem -- and I might be wrong; but I also recall a

16  representation by Mr. Choudhri about it, that it would

17  not be an issue because of that.

18  MR. TANG:  It might be true, Your Honor.

19  If he said that, then he obviously lied to the court,

20  Your Honor, because he does not run Naissance Galleria,

21  LLC.  Just -- I'm going to tange [sic] with Mr. Conrad

22  here in what he's saying.

23  May I show her the assignment that he's

24  been parading around as some kind of assignment of

25  Naissance?

1            May I show you that, Your Honor?

2            THE COURT:  Yes.

3            MR. CONRAD:  That's between you guys.

4            MR. TANG:  I agree with you.  You brought

5  it up, but I just want to show it to the court, Right?

6            So they brought this up.

7            This is the assignment they're talking

8  about, Your Honor, that somehow my client, Naissance,

9  assigned overall interest to Mr. Choudhri, just that

10 little simple document.

11           If you notice on that document,

12 Your Honor, just cursory --

13           THE COURT:  Hold on.  Give me one second.

14           MR. TANG:  I'm going to be quiet, yeah.

15           THE COURT:  All right.

16           MR. TANG:  And so, Your Honor, if you look

17 at that document, the signatures aren't even the same,

18 what's purported to be hers.  Right?

19           And, No. 2, it's not even a dated

20 document.

21           And so we made -- I believe previous

22 counsel to me, a couple of months ago, made this known, I

23 think, to the law firm -- I'm not 100 percent sure --

24 that this was a forged assignment, that there's nothing

25 good about it.  It was forged, manipulated.

Unofficial Copy Office of Marilyn Burgess District Clerk

1            THE COURT:  Okay.  But then let me ask you

2  this.  At some point, then, y'all had to have known that

3  this litigation was going on -- right -- that this was an

4  issue.

5            MR. TANG:  Yes.  I think a couple of

6  months ago.

7            THE COURT:  Right.  So then why did not, a

8  couple of months ago, you try to get in and figure out

9  what the heck is going on?

10           MR. TANG:  Because everything has been

11  sealed.  It was in their confidentiality order and

12  everything.

13           THE COURT:  I get it.  But shouldn't that

14  have given you even more concern, that you couldn't see

15  what was going on, and you didn't reach out to either of

16  the parties until now to figure out what was happening or

17  alternatively, check the public records to determine

18  whether or not this property that there is litigation --

19  sealed litigation about?

20           MR. TANG:  So a couple of months ago --

21  I'm trying to read between the lines of what my client

22  told me.  Right -- if they would have resolved everything

23  with these guys, the second note would have been taken

24  care of.  Right?  We wouldn't even be here.

25           But May came and went.  May 23, 2023 was

1  the principal balloon payment of $60 million that

2  Mr. Choudhri, his company, was supposed to make to us.

3  Right?

4              Once that got defaulted on -- right -- we

5  took over now his company.  That's pledge of security.

6              And so we're in a better position to

7  prevent whatever Mr. Conrad is thinking of happening, the

8  bankruptcy, this, that and the other; so we --

9              THE COURT:  Okay.  But see -- and that's

10  the crazy part because now you're saying that you've

11  taken over running the company, but I have heard numerous

12  times from counsel in the other litigation -- and there's

13  a whole lot of counsel -- saying that they were running

14  the company and they were getting it into shape and they

15  were working on getting it sold and all those kind of

16  things.

17              MR. TANG:  No.

18              THE COURT:  So there's a huge issue as to

19  who is running the company.

20              MR. TANG:  They were saying, as I

21  understand it from talking to Mr. Conrad and just

22  reading -- today now, looking at this document, is that

23  they took over Naissance Capital -- right -- not the

24  primary debtor.

25              What we're saying is he never took over

 1  Naissance.  But because of the May 23 default, the --
 2  100 percent of the membership interest of Galleria 2425
 3  was pledged to Naissance.  Once that was defaulted -- it
 4  had already been pre-pledged and assigned to the loan
 5  documents.
 6                 We are now -- as of May 24, 2023, we are
 7  the owners of Galleria 2425 to the exclusion of
 8  Mr. Choudhri and his other companies running it.  And so
 9  that's what I'm saying.
10                 THE COURT:  Okay.  Then what have you done
11  to assert that since, like, from May 24 to -- I don't
12  know -- right now?  Other than filing a temporary
13  restraining order, what have you done to assert the fact
14  that you're running this building?
15                 MR. TANG:  We've activated the banking
16  accounts, checking accounts on it.  You know, we've
17  sent -- we've even filed a guarantor -- a lawsuit that
18  gives the guarantor the note that was due on it, and so
19  we've been -- we're trying to get ahead of it.
20                 What we didn't know, Your Honor, is this
21  foreclosure was happening.  I mean, that's --
22                 THE COURT:  I find that hard to believe
23  when you say in one breath, "We've taken over running the
24  building," and in the other breath saying, "But there's a
25  massive foreclosure on it where" -- that's literally

1  being extensively litigated until literally the Sunday

2  before the foreclosure is going to happen.

3           So either -- do you see to me how that

4  does not jibe?  You're either running it and you know

5  what's going on, which means that you knew about it so

6  why did you wait until, like, literally right now, or you

7  didn't know, which means that you weren't running it.

8           MR. TANG:  No, Your Honor.  On May 23,

9  '24 [sic] -- right -- they hadn't noticed the building

10 for foreclosure.  They noticed --

11          THE COURT:  They did.

12          MR. TANG:  No.  On June 13, they filed the

13 notice.

14          THE COURT:  But there actually was a

15 previous notice of foreclosure.

16          MR. TANG:  Well, no, I agree with that.  I

17 can't speak about the previous ones because I don't know

18 enough about it.  All I'm saying is this notice of

19 foreclosure was noticed on June 10 or 13.

20          THE COURT:  13.

21          MR. TANG:  Right.  And so we hadn't -- if

22 they would have sent notice of this, as required --

23 right -- it's to us in -- somewhere and then cc'd to

24 Polsinelli, which is the other counsel -- all they had to

25 do was just send the notice of this foreclosure to us on

1   June 13 --

2   　　　　　　MR. CONRAD:  We gave notice to Galleria,

3   as required under the loan documents; the Galleria 2425

4   Owner, LLC, we did.

5   　　　　　　MR. TANG:  Your Honor, may I show you

6   this?

7   　　　　　　THE COURT:  But that agreement is not

8   between National Bank of Kuwait and y'all.

9   　　　　　　MR. TANG:  It is, Your Honor.

10  　　　　　　MR. CONRAD:  This is the --

11  　　　　　　MR. TANG:  No, Your Honor.  Look.  This is

12  the intercreditor agreement.  This is Exhibit D, I

13  believe.

14  　　　　　　I'm sorry.  I'm not going to approach.

15  　　　　　　MR. CONRAD:  Where this is going off the

16  rails --

17  　　　　　　MR. TANG:  So, Your Honor --

18  　　　　　　MR. CONRAD:  Hold on.

19  　　　　　　-- is because he's trying to say, like,

20  "Look, this is" -- like he's standing in the shoes now of

21  Galleria 2425.

22  　　　　　　MR. TANG:  No, I'm not.

23  　　　　　　MR. CONRAD:  He's also saying that he's

24  Naissance, which he hasn't shown authority for.  These

25  are issues between him and Mr. Choudhri, his client and

1  Mr. Choudhri, whoever these people are.  This is all

2  just -- it certainly appears to be concocted, potentially

3  collusive, just for the purposes of stopping this

4  foreclosure.

5                 This has nothing to do with the bank.  The

6  bank complied with all the representations that were

7  based upon it.  They sat on their rights.  They did

8  nothing.  If they admittedly knew about this in May --

9  they said they --

10                 MR. TANG:  No, we didn't.

11                 MR. CONRAD:  -- knew about their rights to

12  stand in the shoes of Galleria 2425 based on the default

13  of the loan, the mezz loan, that they could take over

14  Galleria 2425, exercise all of these rights -- they sat

15  on it.  They filed a claim against Mr. Parker, the

16  guarantor, last week on, I think, June 26.

17                 I mean, everything was done literally at

18  the last second, 11th hour, where all of this has been on

19  public notice.  All of this is -- it's public record.

20                 If they knew about this and had issues,

21  get -- one, it -- disputes between it and Mr. Choudhri

22  based on a representation of who represents whom, not the

23  bank's concern.

24                 In any event, it was all public as far as

25  this foreclosure since the last 21 days plus to move

1  forward with it.

2            MR. TANG:  Your Honor, I will say this.

3  It's Exhibit D, Section 16 --

4            THE COURT:  I'm looking at it; but

5  Exhibit D is, like, 26 pages.

6            MR. TANG:  Right.

7            THE COURT:  And literally you just threw

8  it in front of me.

9            MR. TANG:  That is my fault, Your Honor.

10 I can grab it here for you off of my documents.

11            That's an intercreditor -- we're not suing

12 as Galleria 2425, LLC, Your Honor.  We're suing as the

13 mezz lender, Your Honor, which has its own certain rights

14 to the property.  I just want that to be clear.  He's

15 kind of --

16            MR. CONRAD:  I think that's really a court

17 issue about what are the rights that they are seeking

18 under the -- I'm not disputing the intercreditor

19 agreement.  Okay?

20            MR. TANG:  And here's what --

21            THE COURT:  Hold on.

22            MR. CONRAD:  The rights that he's seeking

23 are not to stop a foreclosure.  It's basically to protect

24 its interest financially, which Your Honor was asking

25 those questions about, which are the exact -- that's the

1  only relief that they can seek there.  They can't --

2  they're over-asking on the relief.  Everything that they

3  can get is monetary damages.  You heard them yourself, is

4  that that's what he's looking at for protecting his

5  rights.

6  MR. TANG:  So, Your Honor, I will read the

7  consequence of the foreclosure to us, the mezz lender --

8  I mean, the -- yeah, the mezz lender -- right -- not

9  Mr. Choudhri.  It says --

10  And this is in Exhibit D also, "The right

11  of the mezz lender" --

12  THE COURT:  Tell me where you are.

13  MR. TANG:  Oh, boy.  Exhibit D,

14  Your Honor.

15  THE COURT:  I got you.  But where in

16  Exhibit D?  It's, like, 26 pages long.

17  MR. CONRAD:  Do you have a courtesy copy?

18  MR. TANG:  I do.  I'll give you one in a

19  second.

20  Your Honor, I'm looking at Page 17.

21  That's the notice.  Right?

22  THE COURT:  Yep.

23  MR. TANG:  And then --

24  THE COURT:  So it says -- right.  It says

25  that, "All notices, demands and requests required to be

1  given hereunder shall be in writing."

2                So tell me under -- prior to that or after

3  that where it shows that there needs -- where that

4  matters.

5                MR. TANG:  I'm sorry.  What do you mean

6  "where that matters"?

7                THE COURT:  Okay.  So you say that they've

8  got to give you notice.  Tell me under what provision

9  they have to give you notice that they are going to, say,

10  foreclose on the property.

11                MR. TANG:  Well, it's defined, "All

12  demands and requests required to be given hereunder."

13                THE COURT:  Right.  So where -- show me

14  where in the contract it requires that there be a notice

15  of this particular thing.

16                It says, "Hey, if you have to give notice,

17  this is how you do it."  That's the paragraph you're

18  showing me.  The paragraph I want to know is where does

19  it show they have to give you notice.

20                MR. TANG:  Right.  Section 12, Your Honor.

21                THE COURT:  Okay.  That's what I'm asking

22  you for.

23                MR. TANG:  I apologize, Your Honor.

24                THE COURT:  It's all right.

25                MR. TANG:  I'll let you read it.  I don't

1  need to read it to you.

2              THE COURT:  All right.

3              MR. TANG:  And, Your Honor, I would add

4  just that the last sentence of that section, that's what

5  we're -- this says the rights of the mezz lender to

6  purchase the senior loan shall automatically terminate

7  upon a transfer of the premises by foreclosure sale.  So

8  whoever gets it, we can't call and renegotiate again with

9  them.

10             He said we can call them afterwards.  They

11 don't have a duty to talk to us after it terminates.

12 They can just put me to voicemail like they did a couple

13 of times, you know, on Monday.

14             But -- so that's what we're trying to

15 fight for, is the right to jump in there, not even as

16 2425 but as the mezz lender.  We have our own separate

17 rights to that, Your Honor.

18             THE COURT:  All right.  So what are the

19 damages for failure to do this?

20             MR. TANG:  Their damages to us?

21             THE COURT:  No.  Like, what are your

22 rights?  You say they've got to do this.  All right.  So

23 what happens when they don't?

24             MR. TANG:  We lose the right to assume

25 the --

```
 1                    THE COURT:  Right.
 2                    MR. TANG:  -- and --
 3                    THE COURT:  But you have -- so there's --
 4                    MR. TANG:  -- an equitable interest in the
 5    building, which is to foreclose on --
 6                    THE COURT:  Okay.  So --
 7                    MR. TANG:  With the note -- with the deed
 8    of trust, with the note and everything comes a bundle of
 9    rights -- right -- that we would have.  One is to take
10    back the building.  Right?  We could do that.  Right?
11                    And so that's what the TRO is for.  We
12    have lost our right to take back the building,
13    Your Honor.
14                    And that's the only bundle of rights that
15    you can't quantify in damages.  Right?  I mean, you can
16    go in there and operate it.  You can go in there and
17    receive the rent and all this and all that.  We don't
18    have any idea what the rents are, but we're not suing for
19    those damages.  In fact, those are de minimis to the
20    right to go in there and assert ownership of the
21    building, Your Honor.
22                    THE COURT:  Well, you know, you have the
23    right to --
24                    MR. TANG:  -- buy it.
25                    THE COURT:  -- purchase it.
```

```
 1                    MR. TANG:  The note.

 2                    THE COURT:  Right.

 3                    MR. TANG:  Right, which comes with a

 4  bundle of -- the deed of trust comes with the note.

 5  Right?  All the -- everything comes with the note.

 6                    THE COURT:  So I guess part of my

 7  question, then, is:  Why couldn't you just now buy it at

 8  the foreclosure sale?

 9                    MR. TANG:  What's that, Your Honor?

10                    THE COURT:  Why -- so it's not like you

11  would have had the right to assert it for free and, like,

12  you could just assume and jump in.  You would have to

13  have paid for the right for the note.  Right?

14                    MR. CONRAD:  Correct.

15                    MR. TANG:  Sure.  We would have to

16  negotiate with them to purchase the note.  Right.

17                    THE COURT:  So why couldn't you just --

18  regardless of whether or not you negotiate or not, if

19  there's a foreclosure sale, why couldn't you just go buy

20  it now?

21                    MR. TANG:  They haven't given us any

22  information about how much the note is.  Before this, we

23  could have asserted that right --

24                    MR. CONRAD:  The note is of public record.

25                    MR. TANG:  It's not of public record.
```

1          MR. CONRAD:  It is.

2          MR. TANG:  Well, we haven't found it if it

3 is.  I -- we don't know what the acceleration amount is

4 or anything like that, Your Honor.  We don't know what

5 the fees are they have in it.  All I know is it's

6 about -- 51 million?

7          MR. CONRAD:  There's plenty of pleadings

8 on file.

9          THE COURT:  I was going to say, you said

10 you've looked at all the pleadings.  That would have been

11 in their damages for the lawsuit, and it would have

12 literally -- I mean, if that was the concern and you said

13 you looked at it extensively, I find it hard to believe

14 that with everything that's been filed in the

15 Galleria 2425 2021 case that there would not have been

16 information.  The only information that has been sealed

17 goes to not that.

18          MR. TANG:  I agree.  And, Your Honor,

19 you're assuming that they gave us notice of the

20 foreclosure.  Had they given us notice of the

21 foreclosure, we could have engaged in those

22 conversations.  But what I'm saying is they never gave us

23 notice of it as required under the intercreditor

24 agreement for us to even negotiate with them.

25          Certainly I guess we could -- I wouldn't

1  know where it's scheduled for, maybe the town hall down

2  there.

3              But, I mean, we have a right to purchase

4  it prior to the foreclosure.  If they would have just

5  given us notice, we would have engaged with them on it.

6              THE COURT:  All right.  But my big -- I

7  still have a very real concern about your ability to be

8  here representing Naissance because that's a huge

9  conflict.  And I guess my concern is, if you had gotten

10 here sooner than 20 minutes before the sale, then you

11 might have been able to get what you needed to have

12 this --

13             Do you see my concern?  I've got

14 testimony -- and if I recollect correctly -- Mr. Choudhri

15 was under oath during the temporary injunction hearing,

16 and we actually took testimony from him -- that this was

17 not an issue.  And you've shown me a document -- whether

18 it's fraudulent or not, that is not an issue before me

19 right now; but that is what --

20             I don't recall seeing it, but I remember

21 that this was not an issue.  Right?  And in part, I

22 believe it was because of the document that you've shown

23 me.

24             So it's hard for me for you to just say,

25 "Well, it's a forgery."  I don't know that.  We've been

1 operating that it's an effective document for the last

2 two years.

3                    MR. TANG:  Your Honor, I do have a power

4 of attorney for Ms. Zaheer.  Right?

5                    THE COURT:  That doesn't get past the

6 issue of -- you have the ability --

7                    That's fine.  You can represent her.  You

8 can speak on her behalf.  But that doesn't get past a

9 very difficult factual hurdle that you do not have

10 personal knowledge of.

11                    MR. TANG:  Of what, Your Honor?

12                    THE COURT:  Well, her authority.

13                    MR. TANG:  No, I do have knowledge of her

14 authority.  I've seen the records.  I've -- attached here

15 is the assignment that she signed over -- I'm sorry.

16 Attached here is the pledge of the collateral to all

17 the --

18                    I've seen the documents.  I've talked to

19 Ms. Zaheer about the case.  I've seen her corporate

20 books.  I've seen the e-mails going back and forth on

21 Sunday regarding it.  So I do have personal knowledge of

22 it.  I wouldn't file a pleading knowing it was false or

23 frivolous or anything like that, Your Honor.

24                    What he's asserting is a Rule 10 motion,

25 which requires ten days' notice so I don't get surprised

1  by it like this; but I do have the authority to represent

2  Naissance Galleria, LLC.

3              THE COURT:  Right.  You say that you do --

4  right -- but I have conflicting testimony that I've seen

5  under oath that says that somebody else is operating it.

6  And you've shown me a document that says that they don't.

7  So in absence of that conflict --

8              MR. TANG:  But the TRO is just based on

9  the pleadings right now, Your Honor.

10             THE COURT:  I get that.

11             MR. TANG:  I know.

12             THE COURT:  You have the misfortune,

13  though, of being stuck with a judge who has heard all of

14  this; so I can't just set aside the fact that I have

15  listened to all aspects of this case for literally the

16  last two years.

17             MR. TANG:  I realize I can't unring the

18  bell, Your Honor.

19             I don't think it's a misfortune we're in

20  front of you, Your Honor.  I think it's a good --

21             THE COURT:  Probably saving another judge

22  in this courtroom -- courthouse a whole lot of headache.

23             MR. TANG:  The other judge would think

24  it's a good thing.  Right?

25             No.  But, no, I think, you know, it just

1  goes back to -- you know, we'd have to redo this over

2  again.  We'll have to reset -- set aside the foreclosure

3  sale because they didn't give us proper notice of it.

4  And we're going to be back on this again and again and

5  again regarding the foreclosure sale.

6              I get what he's saying, we can call them

7  after the foreclosure and this, that and the other.  But

8  they don't have to call me back.  Right?

9              My fault was I talked to Mr. Conrad

10 outside, was, "Let's figure something out," you know, and

11 then -- you know, "We may not even, you know, stop" --

12 "We may not even file anything to stop the next

13 foreclosure.  Let's see if we can work something out in

14 30 days."

15             We've got the money to do what we need to

16 do to step in there and be done with it and then, you

17 know, move on.  But if a TRO is not granted -- and this

18 is my way of mitigating my damages, too, Your Honor.  I

19 have to come down here and try to mitigate them.  Right?

20 I'm going to have to ask some court -- we may end up back

21 in your court, which is perfectly fine with us,

22 Your Honor.  I'm not --

23             THE COURT:  I'm happy to have you.

24             MR. TANG:  -- you know, to set aside the

25 sale, too, Your Honor, and so I don't want to go through

1  that step and burn that property any more if we had a

2  right to purchase the note and they foreclosed on it

3  against proper notice.

4              Now, I will say that --

5              I'll just be quiet because I think my time

6  is running out, Your Honor.

7              THE COURT:  Yeah, your time is really

8  running out.  You have ten minutes left.

9              The temporary restraining order is denied.

10             MR. CONRAD:  Do you want to take up

11  Mr. Pope's --

12             THE COURT:  Yes.  I will need to --

13             If you are not here on Galleria 2425, I'll

14  need you to step outside for just a moment.

15             (Proceedings concluded)

16

17

18

19

20

21

22

23

24

25

CAUSE NO. 2023-41091

NAISSANCE GALLERIA, LLC       )  IN   THE   DISTRICT   COURT OF
                              )
VS.                           )  HARRIS   COUNTY,   T E X A S
                              )
NATIONAL BANK OF KUWAIT,      )
SAKP, NEW YORK BRANCH,        )
ET AL.                        )  281ST   JUDICIAL   DISTRICT
**********************************************************

         I, SHEILA R. SKIDMORE, Official Court Reporter
in and for the 281st Judicial District Court of
Harris County, Texas, do hereby certify that the
foregoing contains a true and correct transcription of
all portions of evidence and other proceedings requested
in writing by counsel for the parties to be included in
this volume of the Reporter's Record in the above-styled
and numbered cause, all of which occurred in open court
or in chambers and were reported by me.

         I further certify that the total cost for the
preparation of this Reporter's Record is $691.00 and will
be paid by Mr. Ali Choudhri.

         WITNESS MY OFFICIAL HAND this the 5th day of
July, 2023.


                         /s/Sheila R. Skidmore
                         Sheila R. Skidmore, CSR No. 2346
                         Official Court Reporter
                         281st District Court
                         Expiration Date:  05-31-2024
                         201 Caroline, 14th Floor
                         Houston, Texas  77002
                         Tel 832-927-2128

11/30/2023 4:55:12 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 82123103
By: LUGO, BONNIE
Filed: 11/30/2023 4:55:12 PM

CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT** | § | |
| **S.A.K.P., NEW YORK BRANCH** | § | |
| | § | |
| **Defendant.** | § | **281ˢᵗ JUDICIAL DISTRICT** |

<u>**TEMPORARY INJUNCTION**</u>

On this day, the Court considered Galleria 2425 Owner, LLC's ("Plaintiff") Fifth Amended

Petition and Emergency Application for Temporary Restraining Order and Temporary Injunction

against Defendant National Bank of Kuwait S.A.K.P., New York Branch ("Defendant").  After

considering Plaintiff's request for injunctive relief, exhibits, and arguments of counsel, the Court

finds that there is evidence that harm is imminent if Defendant is not enjoined from foreclosing on

the Property located at 2425 West Loop South, Houston, Texas 77027, Plaintiff will suffer

irreparable injury for which there is no other adequate remedy at law. The Court finds that there is

a colorable, valid dispute between the parties concerning the rights of the parties to unique,

valuable real estate, and the dispute remains unresolved.

If not restrained, Defendant will, in all likelihood, foreclose on the real property and

improvements located at 2425 West Loop South, Houston, Texas 77027 (the "Property") and

convey and alienate the Property which will cause immediate and irreparable injury to the Plaintiff.

The Property is unique and extremely valuable, and the equities demand that imminent foreclosure

sale and/or other actions affecting the Property be enjoined in order to preserve the *status quo ante*

and maintain the Court's jurisdiction over the Property. Plaintiff demonstrates a reasonable likelihood of success upon final trial.

The Court, therefore, GRANTS Plaintiff's Application for Temporary Restraining Order. It is, therefore,

**ORDERED, ADJUDGED, AND DECREED** that:

Plaintiff will be irreparably harmed unless the Court grants Plaintiff's Application seeking injunctive relief and one of the irreparable harms this Order seeks to prevent is the loss and injury to Plaintiff's business and/or business reputation and/or business goodwill with tenants and prospective tenants, among others.

Defendant NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH, A, BANKING CORPORATION ORGANIZED UNDER THE LAWS OF KUWAIT, ACTING THROUGH ITS NEW YORK BRANCH, its successor and/or assigns, and any and all trustees and/or substitute trustees acting by, through, or under them, are immediately RESTRAINED and BARRED from committing the following actions until further order of this court:

1. Taking any action, or steps, to cause the Property to be sold at a foreclosure sale, including but not limited to, posting the property for a future foreclosure sale, having a receiver, or any other third party, appointed that would adversely affect Plaintiff's interest in, or access to, the Property, and shall not in any way interfere, or cause an interference, with Plaintiff's quiet use and enjoyment of the Property, without further order of this court; and

2. Transferring any Note and/or lien it holds, or may hold relating to the Property.

**IT IS FURTHER ORDERED** that the District Clerk shall immediately issue a writ of injunction as set forth above pursuant to Texas Rule of Civil Procedure 687.

**IT IS FURTHER ORDERED** that the bond is set at _____ and the case is hereby set for trial on the following date: _____ and time: _____

Signed: _____

_____
PRESIDING JUDGE

# EXHIBIT 2

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-60036-11 |
| | § | HOUSTON, TEXAS |
| GALLERIA 2425 OWNER, LLC, | § | WEDNESDAY, |
| | § | NOVEMBER 1, 2023 |
| DEBTOR. | § | 10:04 A.M. TO 11:40 A.M. |

**STATUS CONFERENCE**

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                              SEE NEXT PAGE

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
(281) 277-5325 (office)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

Unofficial Copy Office of Marilyn Burgess District Clerk

**APPEARANCES:**

| | |
|---|---|
| FOR DEBTOR, GALLERIA 2425 OWNER, LLC: | HAYWARD, PLLC<br>Melissa S. Hayward, Esq.<br>10501 N. Central Expressway<br>Suite 106<br>Dallas, TX 75231<br>972-755-7100 |
| FOR NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH: | PILLSBURY WINTHROP SHAW PITTMAN<br>Charles C. Conrad, Esq.<br>909 Fannin Street,<br>Suite 2000<br>Houston, TX 77010<br>713-276-7626 |
| | PILLSBURY WINTHROP SHAW PITTMAN<br>Patrick Fitzmaurice, Esq.<br>Kwame Akuffo, Esq.<br>31 West 52nd Street<br>New York NY 10016<br>212-858-1171 |
| FOR THE US TRUSTEE: | OFFICE OF THE US TRUSTEE<br>Jayson B. Ruff, Esq.<br>515 Rusk Avenue, Suite 3516<br>Houston, TX 77002<br>713-718-4650 |
| FOR ARI CHOUDHRI: | AKIN GUMP STRAUSS HAUER & FELD<br>Jim Wetwiska, Esq.<br>1111 Louisiana Street<br>44th Floor<br>Houston, TX 77002<br>713-220-5899 |
| FOR NAISSANCE GALLERIA, LLC: | ATTORNEY AT LAW<br>David Tang, Esq.<br>9801 Westheimer Road<br>Houston, TX 77042<br>832-287-3227 |
| | THE POPE LAW FIRM<br>James Q. Pope, Esq.<br>6161 Savoy Drive, Suite 1125<br>Houston, TX 77036<br>713-449-4481 |
| ALSO PRESENT: | Sarah Cox |

Unofficial Copy Office of Marilyn Burgess District Clerk

Unofficial Copy Office of Marilyn Burgess District Clerk

1       **HOUSTON, TEXAS; WEDNESDAY, NOVEMBER 1, 2023; 10:04 A.M.**

2       THE COURT:  All right.  Good morning, everyone.

3   This is Judge Lopez.  I'm going to call the 10:00 a.m. case.

4   Today is November 1, you know, 23-60036, Galleria 2425 Owner,

5   LLC, here on a status conference, an application to employ,

6   and I'm sure other stuff.  Why don't we just take appearances

7   in the courtroom, and then we'll continue?

8       MS. HAYWARD:  Good morning, Your Honor.  Melissa

9   Hayward here for the Debtor.

10      THE COURT:  Okay.  Good morning, Mr. Hayward.  Good

11  to see you.

12      Mr. Ruff, good morning.

13      MR. RUFF:  Good morning, Your Honor.  Jayson Ruff on

14  behalf of the United States Trustee.

15      THE COURT:  Good morning.

16      MR. CONRAD:  Good morning, Your Honor.  Charles

17  Conrad on behalf of National Bank of Kuwait, along with

18  (indiscernible).

19      THE COURT:  Good morning to both of you.

20      MR. WETWISKA:  Good morning, Your Honor.  I'm Jim

21  Wetwiska, Akin Gump.  I am here for Mr. Choudhri, and I don't

22  know if I'll need to speak, not speak today.  But as I've

23  witnessed in this proceeding and other proceedings that some

24  of these lawyers are involved in, you don't know how things

25  are going to unfold.  So I'm just here today --

1        THE COURT:  In his personal capacity?

2        MR. WETWISKA:  In his personal capacity.  And I've

3    represented him in his personal capacity in the underlying --

4    well, not in his personal capacity, but I was involved in the

5    underlying lawsuit.

6        THE COURT:  The State Court litigation?

7        MR. WETWISKA:  Yes.

8        THE COURT:  Okay.

9        MR. WETWISKA:  So in the State Court litigation

10   between Galleria 2425 and the Bank of Kuwait.

11       THE COURT:  Oh, that underlying lawsuit.

12       MR. WETWISKA:  That underlying case.

13       THE COURT:  Got it.

14       MR. WETWISKA:  So I'm --

15       THE COURT:  There's another one out there with

16   Naissance and I just wanted to be sure --

17       MR. WETWISKA:  Exactly.

18       THE COURT:  -- just wanted to make sure I was

19   clear.

20       MR. WETWISKA:  I'm not involved in the Naissance and

21   I'm not a counsel for Naissance, and frankly I see that there

22   is competing people claiming they are counsel for Naissance,

23   which is a motion that was filed yesterday too.

24       THE COURT:  Yeah.

25       MR. WETWISKA:  So I may be able to get some

1    clarification of that also.

2             THE COURT:  Okay.  Perfect.  Thank you very much.

3             MR. WETWISKA:  Thank you, Your Honor.

4             THE COURT:  Anyone else on the line with to make an

5    appearance?

6             MR. TANG:  Your Honor, this is David Tang for

7    Naissance Galleria.  I'm just observing today, but I saw

8    Mr. Wetwiska make an appearance.  So I'm just observing, but

9    if the Court has any questions regarding the Naissance part of

10   it today, I'm here to answer it if you need me, Your Honor.

11            THE COURT:  Thank you very much.  I do have a couple

12   of questions.

13            MR. TANG:  Yes, Your Honor.

14            THE COURT:  You know, we're just here on a status

15   conference on some of this stuff and so I need to kind of

16   understand.

17            Anyone else wish to make an appearance?

18            MS. COX:  Sarah Cox, Your Honor, appearing on behalf

19   of (indiscernible).

20            THE COURT:  Okay.  Good morning.

21            Anyone else?

22            MR. FITZMAURICE:  Good morning, Your Honor.  Patrick

23   Fitzmaurice also on the line from Pillsbury for National Bank

24   of Kuwait.  And also on the line with me is my colleague,

25   Kwame Akuffo also from Pillsbury for National Bank of Kuwait.

6

1          THE COURT:  All right.  Good morning.

2          Okay.  Why don't we -- yes, that's the smart thing,

3    why don't I turn things over to you, Ms. Hayward.  Good

4    morning.

5          MS. HAYWARD:  Your Honor, I love to be in control.

6       (Laughter.)

7          MS. HAYWARD:  Well, Your Honor, I guess we're here

8    on both the status conference and obviously my contested

9    employment application.

10          THE COURT:  Uh-huh.

11          MS. HAYWARD:  So I'm not sure how Your Honor wishes

12    to take up those issues.

13          THE COURT:  Why don't we talk status conference

14    first.

15          MS. HAYWARD:  Sure.

16          THE COURT:  I have thoughts on your employment

17    application and -- but maybe we can just kind of just talk at

18    the 10,000 foot level kind of where things are and --

19          MS. HAYWARD:  Very well.

20          THE COURT:   -- and how this -- anyway, yeah, why

21    don't we.

22          MS. HAYWARD:  So from the Debtor's perspective, you

23    know, we are in a Chapter 11 bankruptcy.  We are looking to

24    move forward and confirm a plan of reorganization.  So we have

25    filed that plan, we have filed a disclosure statement and we

1     have a setting on the disclosure statement for November 29.

2          THE COURT:  Right.  But I said you couldn't go

3     forward, the plan as proposed, because you have -- you've got

4     to be able to market test it.  So how do plan on proceeding?

5          MS. HAYWARD:  Well, Your Honor, I guess --

6          THE COURT:  In other words, I'm not letting you put

7     that out there without it being market tested.

8          MS. HAYWARD:  When Your Honor says market tested,

9     I'm a little unclear as to --

10          THE COURT:  In other words, there's an equity

11     contribution in there that -- there has to be disclosure as to

12     how you reach that number in the analysis that was done to

13     reach it.

14          MS. HAYWARD:  Your Honor, it's not an equity -- I

15     mean it's not -- it's not purchasing -- I mean there is no

16     equity.  Right?  We have a debtor --

17          THE COURT:  If he retains the ownership.  Right?

18     Right?  There's an absolutely priority rule.  Right?

19          MS. HAYWARD:  Yes, Your Honor.

20          THE COURT:  We all know it applies -- so how does --

21     how does Choudhri own the entity?  That's the essence.  Right?

22     So he's essentially going to make a contribution.

23          MS. HAYWARD:  Well, I believe the way the plan's

24     structured there's a new entity that's coming in --

25          THE COURT:  Right.

1          MS. HAYWARD:   -- to take over the equity.

2          THE COURT:  Right.

3          MS. HAYWARD:  But the --

4          THE COURT:  So tell me -- tell me where that number

5    comes from.

6          MS. HAYWARD:  The number comes from is because

7    that's the amount needed to fund the plan.

8          THE COURT:  That's why I'm saying.  So but is there

9    someone that's willing to put more.  In other words, that's

10   why I'm saying, is it market tested.

11         MS. HAYWARD:  Well, to put more for what purpose I

12   guess.  The money --

13         THE COURT:  A provided rate of distribution.

14         MS. HAYWARD:  Well, if that's --

15         THE COURT:  In other words, if somebody wants to go

16   out and buy this entity, put money in to control it, how do --

17   who's the -- who's the -- that's what I said at the last

18   hearing, who's the right -- who's the owner.  Right?  Why does

19   someone get to choose the amount of money that they need to

20   put in just to fund it, and you're going to own a building

21   that everyone is saying is worth a lot of money.  Right?  So

22   what are you -- so in other words that has to get market

23   tested.

24         MS. HAYWARD:  Well, Your Honor, I guess the building

25   everyone is saying is worth $18 million.  Right?

1          THE COURT:  Uh-huh.

2          MS. HAYWARD:  So it's worth less than -- and so --

3          THE COURT:  But everybody's saying it's worth 18

4    million now but in other words why -- I'm not letting anyone -

5    - you don't just get to come in as a new buyer to come in and

6    say, Here's what's going to get to come in without that piece

7    getting market tested.  In every Chapter 11 case somebody

8    wants to come in and buy the entity, buy the equity of the

9    company, it's got to get market tested.

10         And so here in this case we don't -- we didn't have

11   a robust procedure, we're having someone come in and they're

12   saying, Here's how much it's going to cost to run it, I got

13   that, I'm not disputing the number, but maybe they want to put

14   more money in, maybe there's -- there has to be a process

15   where it gets market tested.

16         MS. HAYWARD:  Isn't that process a competing plan,

17   or --

18         THE COURT:  No.

19         MS. HAYWARD:   -- something along those lines?

20         THE COURT:  No, no, because the Debtor -- how are

21   you going to put together a competing plan when you're the

22   only one that can propose one?

23         MS. HAYWARD:  Well, that's certainly a fair point,

24   Your Honor, at this point.

25         THE COURT:  I'm also really concerned about the

1      adversary.  And I will tell you, why don't I just get to it, I

2      think your -- I think your retention application could have

3      used additional disclosure, but I'm not sure based upon

4      everything that I've read, and maybe people can convince me

5      otherwise, that that creates such a conflict that I think you

6      should be disqualified.

7           I think it would have been good to know that, you

8      know, there was an entity that filed and that you may have had

9      a connection with, some even tangential connection with an

10     entity that filed in the Western District, and that entity

11     being listed.  I think I'd like to know what most judges want

12     to know about all that stuff on the front end so that you can

13     avoid stuff on the back end.  But you did disclose in a

14     sentence that there were other connections.  I just think that

15     sometimes it's probably even easier to just say, by the way,

16     one of them is one that filed in the Western District so

17     that --

18          MS. HAYWARD:  Understood.

19          THE COURT:  And I think -- I think you've been, as

20     you've always been, incredibly straight up and very

21     forthcoming with the Court.  So I don't question your

22     credibility, I don't question what you put on paper.  Whether

23     that influences you one way or the other, right, is a question

24     that we would need to decide.

25          But I think the lack of disclosure itself I'm not

1    sure is disqualifying.  It's not like -- you said it, you just

2    didn't say it in such a -- in a more robust way and I think it

3    probably could have suffered from that.

4          But I'm more concerned -- in other words, at today's

5    hearing if someone could tell me that because that sentence

6    wasn't in there and that somehow you were hiding it, someone's

7    going to have to really tell me that you were hiding it

8    intentionally, and that, you know, bad things were

9    consequences of it.  You know, it would have to be a really

10   strong allegation for me to get really uncomfortable on 327

11   grounds.

12          Okay?  I've just got --

13          MS. HAYWARD:  Sure, Your Honor.

14          THE COURT:  -- so I'll say that up front.

15          MS. HAYWARD:  Yeah, and I appreciate that, Your

16   Honor, and I think in my original application I disclosed that

17   I had represented --

18          THE COURT:  No, no, you did.

19          MS. HAYWARD:  -- you know, other single asset real

20   estate entities in their own Chapter 7 and --

21          THE COURT:  There are --

22          MS. HAYWARD:  -- Chapter 11 case.

23          THE COURT:  -- yeah, there I am.  I'm more

24   concerned about the amount of cash that this Debtor has.  It's

25   gone up for sure when you look at the MORs.

1          I'm concerned about the amount of cash that this

2    Debtor has.  The adversary itself, I was really concerned

3    about Mr. Pope's letter that he wrote back.  I'm really, you

4    know, I'm really concerned about some of the statements

5    Mr. Pope made, and if it turns out to be true, and I've got --

6    I have questions, maybe Mr. Tang and others can answer them

7    for me, when the State Court litigation was filed, the timing

8    between the hearing that the State Court had and when the

9    adversary proceeding was filed.

10          In other words, I got it, I know why this case was

11    filed, there was a foreclosure scheduled.

12          There's someone that needs to put their phone on

13    mute, it sounds like there's an ambulance in the back.  If

14    that's you, that's you.

15          There was an adversary -- I know why this case was

16    filed.

17          Folks, if that's you with an ambulance in the back,

18    which tells me that you're likely in New York because I grew

19    up there --

20          (Laughter.)

21          THE COURT:   -- put your phone on mute.  It's not

22    that complicated.  Hold on a second --

23          (Pause in the proceedings.)

24          THE COURT:  There was a -- I know why this case was

25    filed, and there was an adversary proceeding started in this

1    court on September 19.  I know who you represented, so that's

2    not really my --  but Naissance is a party to that lawsuit,

3    but Naissance also has filed -- or --

4            MS. HAYWARD:  Right.

5            THE COURT:   -- again, depending on who controls

6    Naissance also started a State Court action, and I don't know

7    when the State Court action started.  But presumably there was

8    a hearing which then prompted the State Court to then kind of

9    tweak a proposed order and issue a temporary injunction.

10           MS. HAYWARD:  Yes, Your Honor.

11           THE COURT:  I want to know when that State Court

12    hearing started and when that hearing was held. That helps me

13    understand it because there was an adversary started at 5:49

14    p.m. on September 19.  What I need to understand is when that

15    State Court hearing was held.  Was it held on the 20th, was it

16    held on the 19th that someone held a hearing and said, We

17    better get something in before the Judge rules.  Those are 2

18    different issues, so I just need to understand the timing of

19    when that hearing occurred.

20          I'm muting all the lines because -- hold on a

21    second.  There's a 917 number, I've un-muted you, if there's

22    another party that wishes to be heard?

23       (No audible response.)

24           THE COURT:  But you've got to place your phone on

25    mute if un-mute you.

1          So as part of this status conference I need to

2     understand when that State Court lawsuit was filed and who

3     were the lawyers representing I guess the opposition to -- I

4     forgot Mr. Tang's client's name -- oh, there it is --

5          MS. HAYWARD:  Well, let me back up, Your Honor.  My

6     understanding is that the lawsuit was actually filed by

7     Naissance under Mr. Choudhri's control to obtain a temporary

8     restraining order against Azeema Zahire (phonetic) --

9          THE COURT:  Okay.

10         MS. HAYWARD:   -- from representing that she --

11         THE COURT:  Was the owner.

12         MS. HAYWARD:   -- was the owner.  Right.  And so

13    there was -- and Mr. Pope is here, he can certainly speak to

14    this, but --

15         THE COURT:  Mr. Pope, why don't you come on up?

16         MS. HAYWARD:   -- Jerry Alexander I believe was the

17    lawyer representing Naissance in that State Court action.  The

18    Court had a hearing I believe and then the TI was issued the

19    day that --

20         THE COURT:  When was the hearing held, Mr. Pope?

21         (Pause in the proceedings.)

22         MR. POPE:  Okay.  It lasted for a few days, the TI

23    hearing was held on I think it was the 5th --

24         THE COURT:  When did it end?

25         MR. POPE:  The 7th of September.

1          THE COURT:  It ended on September 7?

2          MR. POPE:  It ended on September 7, Your Honor.  But

3    we had competing requests for injunctive relief.  If I can

4    back it up just a little so you could have some context.  We

5    were in efforts to protect the building and went down and

6    sought a temporary retraining order in State Court.  While

7    there, and I was representing the Galleria 2425 in that

8    application for a temporary restraining order.

9          THE COURT:  There's a couple of them, which one, the

10   JD?

11         MS. HAYWARD:  This Debtor.

12         THE COURT:  This Debtor.

13         MR. POPE:  Oh, this debtor, Your Honor.

14         THE COURT: Okay.

15         MS. HAYWARD:  This was to stop the foreclosure that

16   NBK and those did.

17         THE COURT:  Ah.  Got it.  Got it.  Okay.

18         MR. POPE:  Okay.  And I was representing the Debtor

19   at that time.  While present at that hearing it was -- we had

20   to come back another day, David Tang appeared on behalf of

21   Naissance claiming an interest in the Debtor and also

22   attempting to stop the foreclosure by way of his own temporary

23   restraining order.  That was the first time we had any notice

24   that there was someone else claiming an interest in Naissance,

25   let alone claiming that Naissance had an interest in the

1    Debtor.

2         So once we left that proceeding we did some digging

3    on the Harris County District Clerk and found out that David

4    Tang had not only appeared in that case, but had filed 2 other

5    lawsuits on behalf of Naissance suing 2 other entities.  One

6    was suing the Bank of Kuwait, so there's a Naissance versus

7    Bank of Kuwait happening in the State Court, then there's 1

8    Naissance versus Brad Parker in the State Court -- in State

9    Court right now also.  Each had -- 1 had been filed in June, 1

10   in July.

11        THE COURT:  No, Brad Parker is -- does he have -- is

12   it just an independent lawsuit or is it something connecting

13   with --

14        MS. HAYWARD:  It's connected here, Your Honor.

15   There's, like I said, a lot of water under this bridge.

16        THE COURT:  Okay.  So Brad Parker --

17        MS. HAYWARD:  Mr. Parker was the -- if Your Honor

18   has looked at some of the exhibits and part of the

19   employment --

20        THE COURT:  I know the name rang a bell.

21        MS. HAYWARD:  Yes, he was the person who assigned

22   his interest to Mr. Choudhri in 2019.

23        THE COURT:  Okay, got it, got it, got it, got it,

24   got it.  Yeah, okay.  Thank you.

25        MR. POPE:  So those things were happening.  So once

1    we found out those things were happening and in light of the

2    assignment that we knew that we had that said Mr. Choudhri had

3    the control of Naissance, we then went and filed an

4    application for temporary restraining order against Azeema

5    Zahire, because during that hearing as we're observing she

6    mentions that she has opened bank accounts in the name of

7    Naissance recently, after being silent for years, after having

8    other litigation happening that included NBK, that included

9    the other parties where Naissance had come up and who owns

10   Naissance had come up for years.

11           Unfortunately for Mr. Tang and his client, when they

12   showed up for the application for emergency TRO, it happened

13   to be in front of Judge Weems who had also been presiding over

14   the matters with NBK and she was familiar with the Naissance

15   issue and told Mr. Tang, I am not inclined to believe you that

16   your client has any control over Naissance because we've been

17   here for years.

18           Where was she when they attempted to foreclose,

19   where was she when Mr. Choudhri was throwing all of his money

20   toward this Debtor to protect it and preserve it, where was

21   she when he was making the building better, where was she when

22   he was doing all these things to make this Debtor in the

23   position where it can actually sustain itself and propose a

24   confirmable plan, where was she?  It appeared that she had

25   been lurking in the shadows until Mr. Choudhri spends all his

1    hard earned time and money getting it together and then pops

2    up and says, Hey, I have some type of control.

3            They even tried to do a motion to show authority

4    against us in the State Court action recently, to which we

5    replied and said no.  that temporary injunction did not grant

6    Azeema Zahire any control.  It merely did its best, as poorly

7    drafted as it is, to preserve the status quo.

8            THE COURT:  Poorly drafted enough to get the

9    control.

10           MR. POPE:  It doesn't give the control.

11           THE COURT:  Well, it says she can't -- you all can't

12   do anything without here.

13           MR. POPE:  It does not change ownership, it does not

14   change who the managing member is.

15           THE COURT:  No, but it just -- it tells me that

16   there has to be a fight about that at some point.

17           MR. POPE:  There is a fight, and the judge set a

18   trial for January to finish that fight, and the judge denied

19   the motion to show authority.

20           THE COURT:  So --

21           MR. POPE:  I have a copy of that --

22           THE COURT:  No, no, no, I know that -- well, I

23   didn't know that, but what I'm saying is I agree with you, it

24   just says one cannot go forward -- you can't take any actions

25   without her --

1      MR. POPE:  Which is what --

2      THE COURT:  That's why I was trying to figure out

3  why this was -- in other words, yet the Court indicated -- so

4  the court hearings end on the 7th, is that right, somewhere

5  around the 9th, 7th?

6      MR. POPE:  That's correct.  But she took her time

7  putting an order in because we had also a competing TI she had

8  to decide if she was going to hear, we had motions to

9  disqualify (indiscernible) --

10     THE COURT:  Right.  But I'm saying, in other words

11 she didn't -- she didn't rule from the bench, she just said --

12 she took the matter under advisement and then issued something

13 on the 21st?

14     MR. POPE:  Issued something on the 21st.  And we

15 assumed, because we had been asking several times that she not

16 enter any order for either party until she heard our competing

17 temporary injunction.  She did agree on the Record that we

18 still had our temporary injunction, we had only defended

19 against Azeema Zahire's request for relief.  And our hearing

20 on our temporary injunction is actually set now for November

21 13.  We have been waiting to have that happen.

22     THE COURT:  What are you requesting in your

23 competing TI?

24     MR. POPE:  We're requesting in our competing TI that

25 her attorneys and Ms. Azeema Zahire quits doing what they're

1    doing now, showing up in Bankruptcy Court and claiming that

2    she has an ownership interest, claiming that they continue to

3    open bank accounts.

4         THE COURT:  Why don't people have the ability to

5    come into court and claim stuff before me?  I don't understand

6    what that means.

7         MR. POPE:  Well, in the same sense that they would

8    like for us to not file any adversary proceedings without her

9    permission, we don't think they should be filing any lawsuits

10   or proceedings, making any declarations when that --

11        THE COURT:  Do you think 2 wrongs make it right?

12        MR. POPE:  No, and that's why we have done nothing

13   else.  Once the judge issued that order --

14        THE COURT:  But you're asking a party not to avail

15   itself, or not to -- you're asking a State Court to say, Don't

16   come -- don't do anything in front of Lopez is what you're

17   asking.

18        MR. POPE:  Well, what I'm asking is that we have our

19   opportunity to finish adjudicating that issue in the State

20   Court proceeding.

21        THE COURT:  Mr. Pope, did you understand what you

22   just said?  Did you really understand what you just said?  I

23   think you want an order preventing someone from making an

24   argument, and what if I say come in, are they -- do they --

25   are they just -- are you going to tell me that State Court's

1  going to stop me from telling someone to come in if I have

2  questions?

3          MR. POPE:  Let me -- let me correct what I'm saying.

4  I may have worded it very poorly.

5          THE COURT:  Okay.

6          MR. POPE:  Because what I'm saying is not that they

7  can't come here and make an argument before Your Honor.  What

8  we don't want is they filed 2 State Court actions already in

9  addition.  We want to make sure they're not out there filing

10  any other State Court actions in the name of Naissance.  We're

11  not certain if that's happening or not, you know, we don't

12  know what they're doing.

13          THE COURT:  You're saying someone has to ultimately

14  adjudicate the Naissance issue and everything ought to pause

15  until the Naissance issue is -- I guess the ownership of

16  Naissance is resolved.

17          MR. POPE:  Right.  In the same sense that we're here

18  airing our concerns about who controls, I believe they can air

19  their concerns about who controls, but as far as filing

20  lawsuits --

21          THE COURT:  But you all filed a lawsuit knowing that

22  a judge could rule the other way, in front of me.

23          MR. POPE:  We did, Your Honor, before --

24          THE COURT:  I'm just saying, right, so whether it

25  was a TI.  So and then it gets issued and then no one informs

1     me.  I've got to wait for another party to come into court to

2     tell me that there's a State Court order out there.  I've got

3     to wait for NBK to come in and tell me that there's a State

4     Court order saying that you all can't proceed without a third

5     party.  That's what happened.

6          That is exactly what happened, and that's what

7     troubles me.  Right?  Like how come, you know, how come you

8     didn't come in here -- you, who appear in front of me all the

9     time, how come you didn't come in here and write a letter and

10    say, Judge, full disclosure to the Court, this adversary

11    proceeding, we're going to have to have at least a status

12    conference on it because this order got issued and it affects

13    my ability to proceed, to do anything in connection with my

14    client.  But I've got to wait for NBK to file something a

15    couple of days later to then come and tell me, and you weren't

16    even at -- it just -- I don't understand that.  That's what

17    troubles me.

18         I agree with you somebody's going to have to decide

19    the issue.  And you all are writing letters back and forth

20    about what can happen and what can't happen, but no one is

21    coming in front of me saying, Here's how we're going to decide

22    the issue, here's what we're going to do.  And that's --

23    that's disappointing to me.

24         Mr. Ruff, anybody reach out to you about when this

25    issue got issued?  Like knowing -- knowing --

1          MR. RUFF:  No.

2          THE COURT:   -- it's the --

3          MR. RUFF:  No, Your Honor.

4          THE COURT:   -- it's just --

5          MR. RUFF:  We saw it when it was filed with the

6     Court.

7          THE COURT:  Yeah.  And so I mean to me that's

8     different than the issue in front of -- the issue with

9     Ms. Hayward's application where she writes a sentence and

10    someone is saying, Well, hey, you could have said more.  But

11    you said something, you certainly disclosed that you

12    represented -- you haven't hid anything from me.

13          I just feel like that part is just -- I'm not sure

14    it's -- I don't know what to do with the adversary but we

15    can't go forward with it until somebody decides the issue, I

16    agree with you there.  But now I'm stuck with an adversary

17    proceeding where nothing can happen because a State Court has

18    to finally adjudicate the issue, because it won't be me.

19          There's not money in this estate to go adjudicate that

20    issue.  The estate maybe has 100 grand in there, minus Ms. --

21    minus about 135 in cash.  Someone still needs to back out the

22    utility deposit that I've asked for for months.  Now we take

23    out 20 something grand, you've got 100 grand, back out

24    Ms. Hayward's work.  I don't know.  Can't prosecute the

25    adversary proceeding, so what do we do?  I don't want to spend

1    a whole lot of time on the Hayward application, I want to

2    spend the time on, assuming we get past that, what am I

3    looking at?  I'm looking at a case that can't go forward on

4    any front.

5              MS. HAYWARD:  Your Honor, well --

6              THE COURT:  I'm not letting you go forward on plan

7    confirmation because if the Naysmith [phonetic 10:27:28] issue

8    gets decided the other way, and maybe the State Court says

9    more than what she -- maybe more than what she or he said

10   before.  And maybe Naysmith -- I don't know, maybe Naissance

11   comes back and says more.

12             I don't know where -- I don't know what I don't

13   know, I just know that this case freezes and then it creates

14   an issue as to what happens.  Do I let the building just sit

15   out there and like control -- or what do we do with this case.

16   That's the real crux of the issue.  That's the real crux, and

17   who's going to start paying interest on the loan?  Now we've

18   got to start getting into adequate protection issues.

19             MR. RUFF:  Your Honor, I've been thinking a lot of

20   the same thing.  Jayson Ruff on behalf of the United States

21   Trustee's office just for the Record.  I've been thinking a

22   lot of the same things, and I mean I don't --

23             THE COURT:  Let me just correct, I keep saying

24   Naysmith, I've been thinking of the Heissman trophy recently.

25   It's Naissance, Naissance, Naissance, Naissance, Naissance --

1          (Laughter.)

2          MR. RUFF:  I'd rather be thinking about football,

3     Your Honor.

4          I don't know how this case moves forward quite

5     frankly, and depending on what happens today we very well may

6     just make it a little easy for Your Honor and file a motion to

7     dismiss or convert depending on, you know, where we're at.  If

8     the Debtor -- if I am able to convince Your Honor today that,

9     you know, on my motion and the Debtor's without counsel, then

10    maybe we can stage it as -- or the Court can set a show cause

11    in a short period of time ahead to allow the Debtor to get

12    replacement counsel if that happens.

13         Either way, Your Honor, I think we have a bunch of

14    issues that make this case very, very difficult to go forward

15    because at the end of the day you take the counsel issue out

16    of it, I don't think this estate has an independent fiduciary

17    acting on its behalf.  What we have is, and some of that

18    evidence has come out in prior hearings and I think some of

19    the evidence will come out today, is we have Mr. Choudhri at

20    the end of the road who's pulling the strings for the mezz

21    lender, for the Debtor, for the Debtor's management company,

22    for interrelated parties, and -- but we don't have anybody

23    who's just deciding solely for the Debtor.

24         We don't have a chief restructuring -- we don't have

25    a trustee that's just looking out for the interests of the

1    Debtor alone and not thinking how do they impact the equity

2    and the equity alone.  I don't know how we get around that

3    given where we're at and what we've already learned in this

4    case from prior hearings, from evidence that has been put into

5    the Record in prior hearings.

6          THE COURT:  Ms. Hayward would tell me that if that's

7    the case, then there can be no single asset real estate cases.

8    That's what she's going to say.  I don't even have to look at

9    her, I don't what she's going to say because at some point

10   you've got the owner of Sam's Pizza, right, Sam is running the

11   show and so, you know, you -- Sam is an independent fiduciary,

12   Sam's got -- right?  Sam may own the building and so Sam's

13   Pizza may own the building and so Sam's -- the only thing

14   Sam's got is the building and so you've got Sam.  But that's

15   the case.

16         MS. HAYWARD:  Your Honor, I think we engaged in this

17   discussion at the hearing on the motion to dismiss that --

18         THE COURT:  I am also right that Sam doesn't get to

19   tell me, I'm going to form a new entity and then that new

20   entity's going to put this amount of money in and that's what

21   I'm going to go forward on the plan and everybody can vote on

22   it because I've structured it in a way that the plan works.

23         MR. RUFF:  Your Honor, if I may, every case --

24         THE COURT:  Right.  Sam in a SubChapter 5 went up

25   and put all of his disposal income for the next 3 to 5 years

1    to go pay off debt, unless Sam can convince me that NBK's debt

2    isn't good, but that's litigation that Sam then got in this

3    budget.

4              MR. RUFF:  Your Honor, again, if I may, every case

5    is unique and has its own facts and circumstances.  I'm not

6    trying to say that every single asset real estate case where

7    you just have an owner and it's just a small thing or whatever

8    can't file and confirm a plan.  That's not at all what I'm

9    saying.  I'm talking about the --

10             THE COURT:  I know.

11             MR. RUFF:   -- unique facts and circumstances --

12             THE COURT:  The unique facts and circumstances --

13             MR. RUFF:   -- of this case.

14             THE COURT:  -- of this case is that Sam can't, in

15   my hypo Sam can't pay the rent.

16             MR. RUFF:  Correct.

17             THE COURT:  Sam can't pay the loan while the case is

18   pending, because that's a big loan that's at issue.  And in

19   this case --

20             MR. RUFF:  And I think Your Honor's --

21             THE COURT:   -- Galleria wants to unwind a really

22   severely prejudiced -- this isn't like I admit that I owe 50

23   million bucks, this is there's issues related to the 50

24   million and I need to have a full out litigation on it, and at

25   the same time layered on top of it I have a party -- or

1     there's a temporary injunction where the -- where someone
2     theoretically could pull the plug on this entire case and who
3     owns that entity who controls the string will ultimately be
4     decided by a State Court and I don't know when.  That's the
5     problem I've got with this case, and that could be early 2024.
6     And I'm not keeping this case going, I'm not keeping -- I'm
7     not going to confirm a plan knowing that ownership is a
8     dispute.  Can't go forward on that.  Right?

9          Can't go forward on an adversary proceeding with
10    Naissance, and I can't keep NBK out there without any payments
11    on their loan, not even any interest on adequate protection.
12    But the minute that opens up, the minute I start settling
13    scheduling this case gets really expensive and this case
14    becomes administratively insolvent before we even know
15    anything.

16         In other words, this case really needs to get the
17    issues that are before this Court, and then the other thing is
18    I don't decide any of that stuff.  Somebody's going to have to
19    decide all that stuff, but it's already teed up in front of a
20    State Court who's already set hearings.

21         Therein I think lies the issue.  I think it's the --
22    I agree with you, it's the factors, it's the layer and
23    ownership and fights about it and I don't want to -- I don't
24    want to -- Naissance's owner, who it is I don't know.
25    Mr. Tang's client has a dispute with Mr. Choudhri.  I don't

1    know who's right or wrong, I haven't heard a thing, I don't

2    know what is going on.

3            I know that there's State Courts who are hearing it.

4    Right?  It's a little troubling in an order that someone says

5    that a check could be fraud but that doesn't mean it is.  It

6    means she just said, I'm going to issue -- she or he issued a

7    temporary order and said, We're going to come back and figure

8    it out.  Right?  Just means that let's just freeze things,

9    that's what -- that's what the State Court did was just kind

10   of freeze stuff and say, Okay, nobody can do anything on their

11   own, which is why you're coming in saying, By the way, that

12   means you too, to the other side.  That means you all can't do

13   anything either.

14           And I've got someone who wrote a disclosure

15   statement that I'm sure if I put on the stand would be

16   uncomfortable answering questions about the disclosure

17   statement and so I'm -- but he's a really good person and I

18   don't want to do that.  But if I asked him the intricate parts

19   on what 1129 stand for, he'd be a really good person who would

20   have a really hard time answering those questions and the

21   intricacies and the treatment of certain creditors under a

22   plan, and I don't want to subject that individual to that

23   stuff.

24           My gut tells me I need to dismiss this case and

25   allow you all to refile it when those issues get resolved, and

1   you all can fight in the State Court and let that go away and

2   let this case refile in the Houston Division and everybody can

3   kind of tee it up when it's ready.

4          And I don't want to make findings, I think -- I

5   don't think -- Ms. Hayward's an excellent lawyer, I don't want

6   to take that issue up, and I think she would win anyway.  I

7   don't think -- I think you would win on a retention

8   application fight.  I think it's just 70 grand and a whole lot

9   of stuff to happen, and I can't deal -- I can't touch this

10  till 2024, but NBK is stuck out there without the ability to

11  do that, no one's going to pay interest on that loan, it's way

12  too much.

13         Can't proceed on the adversary.  But I would need to

14  proceed on the adversary, and I can't put out a plan -- how do

15  I decide what a plan issue is when Naissance -- the State

16  Court could come back and say, You know what, Azeema runs

17  everything, and she's going to file something after plan

18  confirmation and then come back and say, Hey, by the way, I

19  didn't want to do any of this.  We've got problems.

20         MR. RUFF:  Your Honor, I think you're correct on

21  that and I think you're 100 percent correct on the market

22  testing.  How do you get -- you can't just, the owner, say,

23  I'm going to pay this for it and not -- I mean how does that

24  serve the interest of the other creditors who are losing?

25  Someone else might be able to come in and say, Well, no, I'll

1      take more for it.  NBK might say, No, I would love to be able

2      to credit bid on the property and just take the property,

3      because it is a single asset real estate case, that is the

4      asset.

5              THE COURT:  And they're saying like, By the way,

6      like I own this thing already.

7              MR. RUFF:  Right.

8              THE COURT:  Yeah, it's just layered in.  But the

9      ultimately person who -- the question is who do they negotiate

10     with?  While this issue gets decided who does NBK deal with.

11     Right?  Who does any creditor deal with?  Who does

12     Mr. Choudhri deal with, you know, and me?

13             Like who has -- who has the ultimate authority here

14     is a real issue and I don't want to -- you know, the last

15     thing I want is to try something in front of me where people

16     then come out and put people on the stand but what they're

17     really trying is the fight in front of State Court.  That's

18     going to trouble me to death, and that's what you don't want

19     either.

20             They're going to -- because Mr. Choudhri's going to

21     hit the stand and then it's going to be -- but really what --

22     the questions that somebody could ask him have everything to

23     do with nothing in front of me, it's to try to get stuff so

24     they can role a transcript out there and say, This is what

25     happened in State Court, and vice versa.

1          That's where we're headed, because the lawsuit

2     that's going to get tried isn't the one that's going to deal

3     with plan confirmation.  It's going to deal with -- or in

4     connection with this case.  Everybody's going to try to look

5     for gems that they can then run into a State Court in

6     connection with the Naissance fight.  And I don't feel like

7     doing that.

8          I think you've got real good lawyers and I think

9     everybody ought to just preserve their rights and run this --

10    and go to State Court and figure out where things go.

11    Conversion doesn't make any sense to me.  I'm not going -- and

12    a poor trustee's going to get stuck here in this situation

13    where we are.

14         I don't know if Mr. Tang's client's right or wrong,

15    but I do think you have your day in court.  Go have your day

16    in court and if you all run the show and the State Court gives

17    you the building, come file in the Houston Division and we'll

18    start this all over again.

19         But I don't know where we are now.  I'm troubled.

20    And the amount of cash, you hear my thoughts on the plan.

21    Maybe another judge will disagree with me, but that's the way

22    I feel about the -- if you're going to -- if you're going to

23    come out there and ask that, then I think at least in either

24    in a disclosure statement or in something in connection with

25    the plan you've got to tell me and it's got to be based more

1    than here's what it's going to take to wind it down.

2         If no one else wants it, I get it, that makes

3    perfect sense.  But if there's a fight about it, then I think

4    people need to have that fight.  And I don't know who's going

5    to fund it, you know.

6         MR. RUFF:  Well, just given the way things have

7    gone, Your Honor, I don't think it would be a consensual plan

8    at this point and, at least as proposed, and so that's why

9    it's an issue.

10        THE COURT:  Oh.

11        MS. HAYWARD:  Your Honor, may I just clarify --

12        THE COURT:  Yeah, maybe I ought to stay quiet and

13   just allow you just to talk, I've been talking a lot here.

14        MS. HAYWARD:  I just want to clarify a couple of

15   points.

16        THE COURT:  Okay.

17        MS. HAYWARD:  Number 1, right now Naissance doesn't

18   control anything with respect to this Debtor.

19        THE COURT:  Agree.

20        MS. HAYWARD:  Okay.  There is a dispute as to

21   whether Mr. Tang can -- actually represents Naissance.  Right?

22        THE COURT:  Correct.

23        MS. HAYWARD:  There is a dispute as to who the

24   proper parties are with respect to Naissance.  So that issue -

25   - and that issue is going to be decided in the State Court --

1           THE COURT:  Uh-huh.

2           MS. HAYWARD:   -- notwithstanding we've got these

3    new lawyers purporting to represent Naissance now coming into

4    this Court filing motions, filing proofs of claim, making

5    demands.  I certainly understand that Naissance cannot move

6    forward with the adversary, but the Debtor can.

7           THE COURT:  Yeah, but here's the problem is that the

8    allegation is fraud by check, or fraud, not fraud by check,

9    fraud.  Right?  That someone signed something fraudulently and

10   it involves Mr. Choudhri.  If it were true that Mr. Choudhri

11   filed a lawsuit where Mr. Pope was representing him and it

12   was -- I'm not saying Mr. Pope would have known about it, but

13   I would have to open up such an inquiry to find out.  If it

14   turned out that that were true, I would stop everything

15   because you -- the Debtor would then have -- the Debtor would

16   have causes of action.

17           It's just going to get really confusing.  There's

18   really serious allegations in there.  Right?  It's not just

19   default under a loan agreement, there's -- there are

20   allegations of fraud, and I think I would have -- if that were

21   the case, based upon the allegations that are made in the

22   adversary proceeding, I may myself have a duty to report

23   certain things, to start inquiries on my own, and I don't feel

24   like doing that.  I don't think I'm -- I don't think I'm there

25   yet (indiscernible) have to figure that out.

1         In other words, if somebody's -- if Mr. Pope filed

2      an adversary proceeding on behalf of Choudhri and Naissance,

3      and it turns out that, and I don't know if it's true or not,

4      I'm using it, if it turns out that the assignment was

5      fraudulently made, now I've got something filed under 9011 in

6      my court where someone claimed to have authority to do

7      something, and that's gets really uncomfortable so we can't

8      proceed, the Debtor can't proceed, Mr. Choudhri can't proceed

9      until I figure out the answer to that question.

10     Those are serious allegations in there, and I don't

11    want to -- I'm not trying a lawsuit with Mr. Choudhri involved

12    if Mr. Choudhri filed something with -- and if Naissance is

13    wrong about your allegations about Mr. Choudhri, then I have

14    to deal with them too.

15     MS. HAYWARD:  Well, Your Honor, it's not Naissance

16    making those allegations.  Right?  It's Ms. Zahire.

17     THE COURT:  Ms. Zahire, you're right.

18     MS. HAYWARD:  It's Ms. Zahire.

19     THE COURT:  If Ms. Zahire came into may court on

20    allegations like that, then I'd have to deal with that too.

21    That, in other words -- but I can't act like someone didn't

22    just say certain things in open court, in Federal Court, and

23    act like I can't -- I have to deal with it.  But there's

24    strong allegations about what happens and the good faith of

25    the filing of the case and if a -- filing of a plan.  It's

1    gets fairly complicated because whoever controls Naissance,

2    they technically control certain things that happen in this

3    case.

4              MS. HAYWARD:  Maybe.

5              THE COURT:  Maybe.  No, I --

6              MS. HAYWARD:  Maybe.

7              THE COURT:   -- agree with you, maybe.

8              MS. HAYWARD:  Maybe, but there's a lot of steps that

9    have to happen to get to that endgame.  Right?  And --

10             THE COURT:  Maybe.

11             MS. HAYWARD:  Maybe.

12             THE COURT:  In other words --

13             MS. HAYWARD:  And --

14             THE COURT: -- what I'm saying is if -- and I don't

15   know if there is or not, and again, I don't -- it's just a

16   really serious allegation that has to get resolved and I think

17   the State Court is already looking into it and is in the best

18   position to resolve it.  But if that gets resolved in a

19   certain way, then this case gets really bad.

20             MR. CONRAD:  (Indiscernible) on behalf of the bank

21   (indiscernible) a little bit.  I don't know if you can hear me

22   okay or not.

23             THE COURT:  All right.

24             MR. CONRAD:  But Charles Conrad on behalf of

25   National Bank of Kuwait.  Just to correct what Ms. Hayward

1      said, I think she said that Naissance isn't involved in this

2      at all.  It's really a fight -- again, we're not involved in

3      this, we're the ones that found -- or was tracking that State

4      Court litigation on the Harris County Court's website, found

5      that an injunction was issued and of course we brought it to

6      the Court's attention.

7              But Naissance as I understand it is the

8      (indiscernible) and its just a question about like who

9      controls it.  Right?  There's an assignment, or purported

10     assignment --

11             THE COURT:  Whether there's $16 million down on the

12     books or not.

13             MR. CONRAD:  Exactly.  But in -- but whether or not

14     they can foreclose on it, but it's who controls it.  And

15     Mr. Choudhri, you know, she right, she filed a lawsuit, or

16     Mr. Pope did back in July, you know, on behalf of Naissance

17     against Ms. Zahire saying that I stopped acting on behalf of

18     Naissance.  But now Ms. Zahire claims that that assignment

19     that Mr. Choudhri relied upon he gave that to us too in, you

20     know, negotiation of the settlement agreement we entered into

21     a year ago.

22             THE COURT:  What I'm saying --

23             MR. CONRAD:  But that was so we -- so --

24             THE COURT:   -- it seems to me everybody ought to

25     keep their powder dry and not use anything that I say in a

1    transcript one way or the other, to be used one way or the

2    other, because that's what I'm saying, I don't know what I

3    don't know.  And I want to be very clear, if anyone were to

4    run to a State Court and say, Lopez insinuated anything, this

5    is the sentence that you quote and say, Lopez is not saying

6    anything one way or the other.  I don't know what I don't

7    know.

8          But I know everybody ought to keep their powder dry

9    and go fight about this issue in State Court to determine what

10   it is because I can't proceed with this case.  I have a $60

11   million loan, does it exist or not?  How do I confirm a plan

12   one way or the other whether that debt exists and then what's

13   the treatment of this claim, whether it gets resolved or not.

14   But that issue will not be resolved because either the debt

15   exists or it doesn't.  It's not an amount -- I can determine

16   the number, someone's got to determine whether it exists or

17   not.

18          Because if Mr. Choudhri's right and that debt

19   doesn't exist, then I will enforce it as a non-enforceable --

20   you know, I can then look at that, I can make that call.  But

21   litigating about what that is, the State Court's already

22   dealing with that and I don't want to -- I don't want to

23   insinuate anything or to imply anything, and I don't know if

24   Ms. Zahire is right or wrong, but I do know things get dicey

25   if I get involved, and it doesn't -- I don't need to.  But the

1    problem is this case cannot proceed.  How do I deal with a $60

2    million debt, how do I deal with your client's debt, how do I

3    deal with the adversary proceeding, how do I deal with any of

4    this?

5            And that's not me skirting the disclosure issues

6    that Ms. Hayward -- I just think -- I've told Ms. Hayward, and

7    I think you should say more.  Right?  But that doesn't mean --

8    that doesn't disqualify you.  I'm not saying -- the trustee

9    hasn't put on any evidence.  Maybe what the trustee's going to

10   try and say -- is going to make me say -- drop my jaw and say,

11   You got it.

12           I don't know.  I'm just saying assuming she wins,

13   I've still got to deal with a really big problem which is what

14   does tomorrow look like.  And I'd rather deal with -- and I'm

15   going to have to deal with tomorrow one way or the other,

16   whether it's -- if they have no counsel or if she shows up

17   tomorrow or this Debtor shows up with counsel tomorrow, I

18   don't know, I just know that I'm going to have to deal with

19   this issue regardless of who is the lawyer representing the

20   Debtor one way or the other, whether it's Ms. Hayward or not.

21   I'm just dealing with the 10,000 foot -- the 10,000 issue.

22           MR. CONRAD:  Your Honor, you're spot on.  Sometimes

23   I take the path of least resistance, and if I have a corporate

24   debtor with no counsel, then --

25           THE COURT:  No, but --

1          MR. CONRAD:   -- it's easier to get a case dismissed
2     but --
3          THE COURT:   -- you have a job to do too.
4          MR. CONRAD:   -- ultimate -- well, that too, and
5     ultimately I just think this case should be dismissed.  The
6     Naissance thing is important not just for the debt, Your
7     Honor.  If the Naissance -- depending on which way it goes,
8     Naissance is actually purportedly one of the members, although
9     I know it's in dispute, one of the members of the direct
10    owner, the Galleria 2425 JV --
11         THE COURT:  JV.
12         MR. CONRAD:   -- of the Debtor.  So the whole
13    authorization of the bankruptcy even being filed is at risk --
14         THE COURT:  Oh, I know that.
15         MR. CONRAD:   -- depending on how that outcome --
16         THE COURT:  But the people -- and again, I'll say
17    this too, I agree with you, I also recognize, which I know
18    Ms. Hayward didn't tell me, is that a lot of times people for
19    bankruptcy and people get to fight about, you know, whether I
20    was the proper party that should have filed it or not, and the
21    cases continue and courts can resolve that issue.  Right?  I
22    get that.  That happens all the time in cases, and we see it
23    all the time.
24         But I agree with you, it's a complicating factor.  I
25    just can't confirm a plan.  I would have to decide that issue

1     to then determine whether I can confirm the plan.  I'd have to

2     decide the ability to file issue, proper filing issue before

3     the --

4           MR. CONRAD:  Which would necessarily I think need a

5     determination on the Naissance, we'll just call it the

6     Naissance dispute --

7           THE COURT:  But that doesn't mean --

8           MR. CONRAD:   -- that's going on in the State Court.

9           THE COURT:   -- and that doesn't mean that at the

10    time that the case was filed that anyone did anything wrong

11    either.  Right?  Because later a court could determine that.

12    I don't want anyone to imply that Ms. Hayward, you know,

13    signed a document that was improper or that she shouldn't

14    have.  I'm not implying that at all.  I'm being really clear

15    about that.  Now I can be quoted on that.

16          MS. HAYWARD:  Thank you, Judge.

17          THE COURT:  I can decide that issue.  Right?  You

18    know people --

19          MS. HAYWARD:  But, Your Honor, we're conflating

20    different entities.

21          THE COURT:  No, no, I agree.

22          MS. HAYWARD:  I mean Naissance does not -- the

23    Naissance entity up here that Mr. Tang purportedly represents,

24    Mr. Pope has represented, does not own an interest in the

25    Debtor, does not own an interest in the JV.

1          THE COURT:  It's collateral.  Right?

2          MS. HAYWARD:  It's collateral, right.  So there's

3    no issue as to whether the Debtor had authority to file.

4          THE COURT:  Agree.

5          MS. HAYWARD:  Okay.  The Debtor had authority to --

6          THE COURT:  Yeah, that's why I'm going there.

7          MS. HAYWARD:  Yeah.  So I just -- I want to make

8    clear that Naissance, as the US Trustee just --

9          THE COURT:  Yeah, yeah, that's right.  And they

10   hadn't foreclosed on their collateral --

11         MS. HAYWARD:  Right.

12         THE COURT:   -- so you don't own it --

13         MS. HAYWARD:  So they don't own -- this entity does

14   not own an interest in any of the Debtor upstream.  And so I

15   just want to make sure --

16         THE COURT:  Wait, no, no, no --

17         MS. HAYWARD:   -- that the Record's clear on that so

18   that, you know, the issue is not -- there should not be an

19   issue as to whether this Debtor had authority to file the

20   case.

21         THE COURT:  Yeah.

22         MR. RUFF:  Well --

23         MR. CONRAD:  That's not exactly clear, Your Honor.

24         THE COURT:  No, no, no, but what I'm saying is I --

25         MR. RUFF:  It's an issue --

1          THE COURT:  What I'm saying is --

2          MR. RUFF:    -- it's unclear.

3          THE COURT:   -- what I can say with confidence based

4     upon what I know, I don't -- I think you all -- there's issues

5     about where Naissance sits and what they're doing and what

6     they have control over, and whether there's a $60 million debt

7     that's owed by this Debtor or not, I think that's an issue.

8     In other words, you know, whether there was a cancellation of

9     debt, did the assignment cancel debt and all that stuff.

10    There was a loan --

11         MS. HAYWARD:  But it wasn't debt to the Debtor, Your

12    Honor.

13         THE COURT:  I know, but there's issues --

14         MS. HAYWARD:  So the Debtor would never owe that

15    debt.

16         THE COURT:  The mezz debt?

17         MS. HAYWARD:  Right.  The mezz debt is at a higher

18    level, the Debtor does not have any privity --

19         THE COURT:  No, no, no, but what I'm saying is but

20    then -- but in other words if the debt exists, then they would

21    have a right to foreclose on their collateral, don't you

22    think?

23         MS. HAYWARD:  Which is the JV, higher up.

24         THE COURT:  Right?  But then --

25         MS. HAYWARD:  Right?

1          THE COURT:   -- but then that could -- essentially

2      it could have a domino effect that could come find me.   I

3      agree with you, this case can -- this case -- those debts are

4      at a higher level.

5          MS. HAYWARD:   And would never trickle down to the

6      Debtor.

7          THE COURT:   That I don't know.   I don't know about

8      that.   But you may be right about that.   I just don't have

9      evidence about that one way or the other.

10         MS. HAYWARD:   Right.   But I mean but that's -- I

11     mean it's a mezz debt that is secured by equity interests in

12     entities above the deck.

13         MR. CONRAD:   That's not correct.   It's a debt

14     secured by equity in the Debtor itself.   So the Debtor has --

15         THE COURT:   That's what you're -- that's what I'm

16     saying, I don't know --

17         MR. CONRAD:   Right.

18         THE COURT:   -- because people have been fighting

19     about that and I don't know the answer to that question.

20     That's an issue that would have to get -- someone would have

21     to make a call about whether is this Debtor involved in that

22     collateral package one way or the other.   I don't know, that's

23     a secured creditor fight that people can have --

24         MR. WETWISKA:   That's --

25         THE COURT:   -- people have that all the time.

1    Right?

2                MS. HAYWARD:  Sure.

3                THE COURT:  Is this part of the DIP package or not.

4                Counsel, I know you wanted to say something.

5                MR. WETWISKA:  But, no, Your Honor, it's just that

6    this Galleria 2425 who NBK has been dealing with in litigation

7    for over 2 years, and throughout that entire 2-year time

8    period Ms. -- what's her last name, Azeema Zahire never

9    stepped up into that lawsuit to say, Oh, hey, I have something

10   to do with Naissance and Naissance doesn't want to go forward

11   or Naissance has some issue with Galleria 2425.

12               Okay.  That's for a 2-year time period, and that's

13   because Mr. Choudhri, who's my client, was spending money out

14   of his own pocket to fund the building during COVID, to fund

15   the building during '21, '22 and through '23, and spent a lot

16   of money that NBK was well aware of.  Okay.  NBK entered into

17   a settlement agreement with 2425.  All right.  Well aware of

18   all of that NBK made those choices.  And then things happened

19   after that settlement agreement was signed.  Still not with

20   Azeema showing up and saying Naissance is going to do

21   something.

22               THE COURT:  Uh-huh.

23               MR. WETWISKA:  I will say by the way none of that

24   happens.  Now Mr. Tang and Mr. Drinnon, who have a 10-year

25   history of litigation against Mr. Choudhri, it's very

1    personal.  You heard Mr. Drinnon in the last hearing say he

2    gets hired because he has some speciality in suing

3    Mr. Choudhri.  That's what he said on the Record.

4              THE COURT:  I remember.

5              MR. WETWISKA:  And that's because he represents

6    Asama Abdulateef (phonetic) who has -- whatever personal

7    issues between Mr. Choudhri and Mr. Abdulateef have been going

8    back to 2009.  My point that I'm getting to, Your Honor, is

9    this is just flame throwing.  What is happening here is

10   Mr. Tang and Mr. Drinnon are like, Oh, wait, we have -- let's

11   throw onto the fire, let's create these issues, let's get

12   Azeema, and unfortunately the Court doesn't have all the

13   background.

14             THE COURT:  But here's the question, do I need all

15   the background or do I realize that this Debtor has 50 grand

16   or, you know, 90 grand and these issues are going to swallow

17   it all up --

18             MR. WETWISKA:  No, but I don't -- and I don't think

19   that's the case because I don't think these issues are going

20   to swallow it up.

21             THE COURT:  Well, let me just -- I -- well, that's -

22   - you and I can just disagree on that --

23             MR. WETWISKA:  Well, the --

24             THE COURT:   -- because I don't think I can keep

25   this case going, as a matter of bankruptcy law I think they've

1   got to pay interest to that secured creditor while the case is

2   going, and that's going to swallow it up in a month, month and

3   a half.  You won't make it to 2024 if I say you've got to pay

4   interest to that secured creditor while this -- while these

5   issues get resolved.  Because I'm not letting that plan go

6   forward --

7                MR. WETWISKA:  But what --

8                THE COURT:    -- because you've got to market test

9   it.  In other words, math wins on this one.

10               MR. WETWISKA:  Okay.  Well, if it's -- it can be

11  market tested, we can do it, but let me ask the Court this

12  question, we may not have power but what if there is at least

13  some court ordered mediation with respect to --

14               THE COURT:  I don't order mediation among parties, I

15  just don't.  I don't.  I don't force them in large cases,

16  small cases, medium cases.  I don't force people --

17               MR. WETWISKA:  It's just that --

18               THE COURT:    -- to mediation.

19               MR. WETWISKA:   -- this one issue is because someone

20  says it's not their signature after 4 years --

21               THE COURT:  I'm not so --

22               MR. WETWISKA:   -- is now throwing a wrench --

23               THE COURT:    -- it's not.  There's been a wrench --

24               MR. WETWISKA:   -- in what would otherwise --

25               THE COURT:    -- I guess what I've been saying is

1    there's been a wrench since the beginning of this case on

2    money.  Well before they showed up.  This plan can't go

3    forward.  And the problem is, is that the litigation now can't

4    go forward.  I agree with you, there's a wrench, but the

5    wrench got thrown -- the State Court has said nothing can

6    happen, and that's what I mean.

7         The State Court issued the order, that's what froze

8    everything in my opinion.  It complicated everything.  The

9    State Court freezing -- I agree, she doesn't have power, but

10   no one can do anything without her now.

11        MR. CONRAD:  And our concern is the freezing, like

12   how long.  I mean I know the trial setting --

13        THE COURT:  I can't --

14        MR. CONRAD:  -- according to Mr. Pope is in

15   January.

16        THE COURT:  -- in other words now I have cash

17   collateral issues.

18        MR. CONRAD:  Right.  And it could be, you know,

19   continued, there could be an appeal, I mean this could be --

20        THE COURT:  I have adequate protection issues of the

21   building itself and the loan.

22        MS. HAYWARD:  But, Your Honor, to the extent that

23   Ms. Zahire or anyone else want to come in and try to bid for

24   the equity in the Debtor, I mean that is certainly something

25   available to people to do.  But the timing here is clearly

1    suspect.

2              THE COURT:  On a lot of fronts.

3              MS. HAYWARD:  On a lot of fronts.  But the timing

4    here between NBK, and I'll represent to Your Honor that this

5    is something that would come out through discovery, but I'm

6    not sure that NBK and these lawyers here aren't working

7    together --

8              MR. WETWISKA:  That's ridiculous.

9              MS. HAYWARD:   -- to get to where we are right now.

10   And --

11             THE COURT:  They may be.  I don't know.

12             MS. HAYWARD:  But that -- but that's a problem, Your

13   Honor.  A problem because we have lawyers who we don't know

14   whether they actually represent the entities they're

15   purporting to represent.

16             THE COURT:  That's what they say about you,

17   Ms. Hayward.

18             MS. HAYWARD:  Well --

19             THE COURT:  That's the problem.  Right?

20             MS. HAYWARD:  But --

21             THE COURT:  Right?  In other words, they're saying

22   who is -- who is representing Galleria 2425 Owner and who's

23   looking for loss -- litigation.  Are they -- who is looking

24   for potential causes of action on behalf of Galleria 2425,

25   who's analyzing those potential lawsuits?

1    MS. HAYWARD:  Your Honor, I am, and I filed one on

2 behalf of the Debtor against NBK.

3    THE COURT:  Yeah, all right.  You know where I'm

4 going.  I don't want to go there.

5    MS. HAYWARD:  But Your Honor stated at the last

6 hearing there was no (indiscernible).  Your Honor had a list

7 of payments disclosing a SOFA to a management company.  There

8 was no evidence of fraud presented to the Court.  There was no

9 evidence of wrongdoing presented to the Court.  That's where

10 we go back to, and here we are now at a status conference

11 later and it's like those same issues keep percolating even

12 though there's no evidence in the Record of any of it.

13    Again, this idea -- of course Mr. Choudhri controls

14 this Debtor.  This is a single asset case, it's a family-run

15 business, and there's no reason why this Debtor shouldn't be

16 able to try to reorganize.  Your Honor recognized that trying

17 to save equity is a valid reorganization purpose.  And, you

18 know, I've got all of these creditors now coming in here and

19 trying to throw wrenches into things, and I understand.  But

20 there are mechanisms under the Bankruptcy Code to address

21 these issues.

22    And if Your Honor wants and equity auction, we can

23 do an equity auction.

24    THE COURT:  You don't have the money for it, to

25 continue that plus the litigation, plus they're going to have

1     to get interest if we do all that.  That's the problem.

2            MS. HAYWARD:  Your Honor, we have a plan on file --

3            THE COURT:  Your plan --

4            MS. HAYWARD:   -- that is confirmable in my

5     opinion --

6            THE COURT:  I understand you think --

7            MS. HAYWARD:   -- if it's market -- if we market

8     test it with Your Honor.

9            THE COURT:  Who's going to pay for that market

10    testing while you pay interest to that secured creditor?

11           MS. HAYWARD:  Well, Your Honor, I don't believe the

12    Code states that interest -- as long as a plan is on file, it

13    has to be confirmed within a certain amount of time.

14           THE COURT: Oh, no, no, but, yeah, but you --

15           MS. HAYWARD:  Right?

16           THE COURT:  You're -- how are -- Ms. Hayward, I --

17           Folks, I -- you filed a plan that has a number on a

18    wind down issue.  If you try that issue, it would require

19    market testing.  Market testing would require several months

20    to market test, so you would have to then not just reach out

21    to 1 party, you would have to then reach it, figure something

22    out like hire a realtor, like go out and really shop this

23    thing and figure out, Anybody want this building, and what are

24    you willing to pay for it.

25           And in the meantime someone would have to pay -- I

1     would require NBK to get paid during that period, at least

2     interest on the loan.  Like we're not -- this isn't like a 30-

3     day plan.  It just can't happen that way.  I know it got filed

4     really fast, because I know that's what the Code says, and you

5     were smart and you got in there, you had to pay interest so

6     you didn't -- but how do you then -- but your plan isn't

7     seeking to pay them.

8             Your plan isn't, you know, I'm going to sell the

9     assets to someone.  You're selling it for wind down value, for

10    wind down costs is exactly what you're doing.  In other words,

11    Choudhri's entity is going to put up -- and there's nothing

12    wrong with that, I'm not saying he did anything wrong, what

13    I'm saying is somebody's putting up an amount of money, so

14    what it would take to get through this case.  Right?  To wind

15    this issue.

16            There's a pot of money in there.  The question is,

17    is someone willing to put more in there and how do we then

18    resolve all of these issues until that goes there.  I'm

19    looking at the pledge agreement too, and that pledge agreement

20    has a lot of issues in there as to what is collateral or not,

21    102-5.  There's a lot of issues to get fought, and 50, you

22    know, 70 grand, how many grand's going to get taken for 1

23    month of interest to your client?

24            MS. HAYWARD:  Your Honor --

25            THE COURT:  I don't have anything to qualify it in

1    State Court issues.  I don't know.  There's just a lot of

2    confusing stuff, and my gut tells me that I need to dismiss

3    this case and let you all go figure this out in State Court,

4    because there's not enough here, and there's real concerns

5    that I have, and the concerns that I have are going to cost a

6    lot of time and money to address, and I'd rather let everybody

7    go to State Court, figure all these issues out and take it

8    there because NBK's going to need interest payments if we're

9    going to go really sort all this out.

10         And I don't know if we have the time or money to do

11    it.  That's the issue.  We were already on the verge of no

12    cash on the interest and we're going to get into adequate

13    protection on a building with no loan payments with an entity

14    that hasn't been paid in a long time.  You're going to run out

15    of money real fast, and that's the question.

16         I'm not saying they need to go foreclose.  I mean

17    whatever rights people have under state law they have, and I

18    don't want to cast dispersions one way or the other, or make

19    any -- make findings one way or the other.  But it just seems

20    to me that you just look at the big picture issue.

21         I don't -- and I don't want somebody coming back to

22    me, because I would really dismiss it out hand -- outright,

23    that this Debtor didn't have a right to file and Ms. Hayward

24    did anything wrong.  I think that would be a silly waste of

25    time and money.  I wouldn't even hear it.  I wouldn't even

1    hear the lawsuit, I'd just dismiss it right away.  I wouldn't
2    even take it up.  The question of that would be ridiculous to
3    me based upon everything that I know.

4         I just think you all need to go to State Court and
5    go decide the Naissance issue, go decide the State Court
6    issues, the issues I think Mr. Choudhri deserves.  He's got
7    obviously a great lawyer and I think these issues can get
8    sorted out in State Court one way or the other.  But this
9    bankruptcy case is going to essentially be on freeze for the
10   next 5 months until I decide some of these issues.

11        Did someone file something in my court that implies
12   other stuff?  Did someone represent to me that they were the
13   mezz lender under oath and they really weren't the mezz -- in
14   control of the mezz lender?  I don't know how I proceed
15   without that, without going forward.

16        Those are like serious allegations, and I think they
17   were set in front of me, but I don't -- but I don't -- right
18   now I've got to like deal with stuff like this and I can't go
19   forward without it.  So I think the easiest thing for me to do
20   is to protect everyone and just dismiss the case.  You know, I
21   think the case can -- you know, if parties want to come back
22   after this issue is decided, file it in the Houston Division
23   and a judge can take it up.

24        But right now there's nothing to do and I'm going to
25   freeze everything anyway, so I don't know -- I don't know what

1    people are -- what people could do.  We can't go forward.

2               MS. HAYWARD:  Your Honor, may I just make a --

3               THE COURT:  Yeah --

4               MS. HAYWARD:   -- a couple of points?

5               THE COURT:  Yeah, absolutely.

6               MS. HAYWARD:  Okay.  Number 1, I hear Your Honor

7    about the market testing.  I'm not sure that I quite agree

8    with it respectfully --

9               THE COURT:  I understand.

10              MS. HAYWARD:   -- in that this is a cram down plan

11   based on collateral value and undisputed collateral value.

12   Right?  We have a building that has an appraisal that NBK

13   commissioned that sets a value of that building.

14              MR. CONRAD:  Okay.  Can I rebut that real quick?

15              THE COURT:  No, no, no --

16              MR. CONRAD:  That's not --

17              THE COURT:   -- what -- let me -- I know people have

18   to -- but let me just throw a hypothetical at you.  Okay?

19              MS. HAYWARD:  Yes, Your Honor.

20              THE COURT:  Say someone comes in and says, I want to

21   pay 50 million bucks, I'm just making up a number, 100

22   million --

23              MS. HAYWARD:  Okay.

24              THE COURT:   -- bucks, okay, I'm making up a number.

25              MS. HAYWARD:  Then Your Honor's going to value the

1     building.

2          THE COURT:  No, no, but I'm saying but who --

3     somebody has to go out there and figure out whether someone

4     wants to put more money in, because then that pays them more,

5     even if -- even under a cram down plan they get paid, they get

6     paid more of their money.  Right?  In other words there's a

7     cram down plan and if you're going to cram someone down,

8     you're not going to pay them 100 percent on the effective

9     date, then to me you've got to market test because you can't

10    just say, Here's the value of the collateral, here's how much

11    money somebody's going to put in, either you want it, you've

12    got to put more in.

13         It's got to be market tested.  Maybe someone wants

14    to pay the -- maybe the -- someone has to look out for the

15    estate and say, I want to pay my creditors as much as

16    possible, here's an amount of money that, right, yeah, you're

17    crammed down under, you know, 506 crams you down and you just

18    lose on that point, but boy, I've got you 70 percent and not

19    the other part.

20         MS. HAYWARD:  But, Your Honor, if that's the case,

21    then it goes to the value of the collateral.  Right?  I mean

22    Your Honor decides the value of the collateral and typically

23    you have --

24         THE COURT:  And the --

25         MS. HAYWARD:   -- competing appraisals.

1          THE COURT:  You have competing appraisals, right.

2     But who's then going to determine the amount of money that --

3     who owns this thing at the end of the day?

4          MS. HAYWARD:  Well, but again, that's why the plan -

5     - the plan proposes, as filed, right --

6          THE COURT:  Uh-huh.

7          MS. HAYWARD:   -- bifurcate the debt to NBK --

8          THE COURT:  Uh-huh.

9          MS. HAYWARD:   -- and to put $2-1/2 million in t

10     stabilize the building and then millions of dollars get paid

11     to creditors from --

12          THE COURT:  What if somebody wants to put 10 in,

13     what if somebody wants to put more money in?  In other words

14     how do we know --

15          MS. HAYWARD:  But the Bankruptcy Code doesn't -- I

16     mean that's why the -- that's a competing plan, isn't it --

17          THE COURT:  It's not --

18          MS. HAYWARD:   -- Judge?

19          THE COURT:   -- no.  No.  No.

20          MS. HAYWARD:  How is that -- that's a competing --

21     because the money going in is not the money going to

22     creditors.  The money going in is what's needed to fund the

23     plan.  The plan proposes certain treatment to creditors.

24          THE COURT:  What's NBK's distribution under the

25     plan?

1              MS. HAYWARD:  I don't know off the --

2              THE COURT:  Assuming you win on everything.

3              MS. HAYWARD:   -- off the top of my head I don't,

4     but it's --

5              THE COURT:  Less than full?

6              MS. HAYWARD:  Less than -- no, under and 1111(b)

7     election we believe it does pay them in the full amount of

8     the --

9              THE COURT:  I don't know --

10             MS. HAYWARD:   -- settled debt.

11             THE COURT:   -- they get to choose 1111(b) election,

12    so let's just say there's no 1111(b) election.

13             MS. HAYWARD:  Okay.  It still pays them -- it pays

14    the full value of their secured claim certainly.

15             THE COURT:  Over how many years?

16             MS. HAYWARD:  Your Honor, I've slept a little bit

17    since I prepared the plan, but I don't think it's --

18             THE COURT:  I haven't slept in 3 weeks.

19             MS. HAYWARD:  I have no doubt, Your Honor.  Your

20    Honor, I can pull a number --

21             THE COURT:  No, I'm just saying -- say somebody

22    wants to come in and say, I want to pay it, I want to pay it

23    all now.

24             MS. HAYWARD:  Your Honor, I think it was a 10-year

25    interest --

1          THE COURT:  10-year.  Say somebody wants to come in

2     and pay it in 2?  Right?  Like that's the -- it's -- that's

3     the point, you've got to -- you can't just propose, Here's

4     what we're going to do and here's -- my insider entity is

5     going to own this company, but --

6          MS. HAYWARD:  But --

7          THE COURT:   -- Ms. Hayward, you're never going to

8     get me there.  You're never going to get me there, and I know

9     I'm right on this one.  We can just agree to disagree.  But I

10    know that this case can't go forward as drafted, and I know

11    that they'd be entitled to interest to it while this issue

12    gets decided.

13         And I'm not even going to ask the questions about

14    decisions that were made in connection with the settlement.

15    There's just so many things, so many questions that I would

16    have to get decided.  Right?  There's a settlement agreement,

17    someone puts in a lot of money, but then also doesn't pay a

18    lot of taxes, decisions that were made then just -- there's

19    just so much going on, we're just never going to get there in

20    a month, month and a half.

21         I'm looking at the, Page 2.  Let me just take a look

22    at something.

23         (Pause in the proceedings.)

24         THE COURT:  Well, I think whoever they are I think

25    under 1112 the Court, on request of a party-in-interest, but

1    105 says -- 105 says that nothing prevents the Court from

2    considering things based on the circumstances, where we are,

3    where the Court finds itself is Galleria 2425 Owner, LLC was

4    filed on July 5 to avoid a foreclosure.  Nothing wrong with

5    that, it happens all the time in Bankruptcy Court.

6         Based upon the Court's review the petition was filed

7    by the manager, of course heard no evidence that the manager

8    didn't have authority, corporate authority to file.  The

9    manager then filed a disclosure statement and a plan.

10        MS. HAYWARD:  Your Honor, I believe Mr. Choudhri

11   signed the disclosure statement.

12        THE COURT:  Mr. Choudhri signed the disclosure

13   statement.  Are you sure about that?  Let's find out.  I'm

14   going to look it up real quick.  Disclosure statement.

15        (Pause in the proceedings.)

16        THE COURT:  Oh, he sure did.  I take that back.

17   Mr. Choudhri filed, the owner, the manager.  Well, I guess

18   there's 2 managers.

19        MS. HAYWARD:  Yes, Your Honor.

20        THE COURT:  Is the manager who filed --

21        MS. HAYWARD:  Your Honor, the corporate resolution

22   that was signed prior to the petition date pointed to both

23   Mr. Choudhri and Mr. Darjeen (phonetic) as the managers of

24   the -- and is designated officers for purposes of the

25   bankruptcy filing.

1           THE COURT:  All right.  No, I find nothing wrong
2       with that based upon what I have in front of me.  Mr. Darjeen
3       filed the plan, signed the plan.
4           MS. HAYWARD:  Yes, Your Honor.
5           THE COURT:  I don't want to ask that -- I think -- I
6       like Mr. Darjeen a lot.  Mr. Darjeen I think is a good man and
7       I'm not going to ask him.  When the petition was filed by
8       Mr. Darjeen, Mr. Darjeen filed a Chapter 11 plan.  And I'm
9       sure he's well familiar with the intricacies of that Chapter
10      11 plan and everything in it and what the Section 1129
11      standards are in connection with plan confirmation.  I'm sure
12      he's well familiar with that.
13          Mr. Choudhri filed the disclosure statement.  The
14      Debtor filed with approximately, I don't know, $56,000 worth
15      of cash.  As of the last MOR filed the Debtor probably has
16      135,000 in cash minus 20,000, a little over 20,000 that the
17      Debtor is required for a utility deposit that is still -- to
18      my knowledge has not been provided yet to utilities, which
19      means that the lights could be shut off at any moment.  But
20      that's a quick remedy.
21          State Court, in an unrelated case involving
22      Ms. Zahire and Naissance and Mr. Choudhri, issued a temporary
23      injunction on September 21, not allowing a party to an
24      adversary proceeding to proceed.  So it's like there are
25      additional matters set before the status -- I mean if there is

1    a question as to who owns Naissance, Naissance is a lender to

2    Galleria 2425 JV, LLC.  There's a dispute about who the owner

3    is and whether there were statements made.

4         There was an assignment under fraud.  The Court

5    makes no findings about that one way or the other, just based

6    on the temporary injunction, that's what it says.  I would

7    note that there were statements made in this Court in

8    connection with the cash collateral hearing as to whether that

9    was the case or not as well.

10        There's a pledge agreement as well, and the

11   underlying loan between Naissance and Galleria 2425, at least

12   on its face purports to provide this Debtor as 100 percent of

13   it being the collateral, 100 percent equity interest as

14   collateral on its face.  Whether parties can dispute that or

15   not, I'm just saying what it says on its face.

16        So the Court finds itself, whether there's going to

17   be additional hearings in adversary between Galleria 2425.

18   Naissance is a defendant in this case, but it can't proceed

19   because the other Naissance, Ms. Zahire, has indicated, at

20   least verbally to this Court, that they don't intend to

21   proceed with the adversary and have filed a motion confirming

22   that they can proceed in another court to exercise their

23   rights under the temporary injunction.

24        So the underlying adversary proceed that is pending

25   before the Court -- well, that just breaches the confidential

1    settlement agreement between NBK and other -- the Debtor and

2    other parties, tortious interference with business relation,

3    fraudulent inducement, so it's really serious, and a

4    fraudulent conveyance action.  There's not enough money to

5    proceed with that lawsuit based upon where the Court is, and

6    administrative costs, and I believe in lawyers who do good

7    work and have followed the Code should be paid.

8         This case quickly runs into a situation where there

9    is a plan on file, there's a disclosure statement on file,

10   this Court is not comfortable proceeding with that with --

11   based on all the issues that are proceeding in this case.

12   There are issues about ownership of the Debtor's parent which

13   may or may not affect the underlying lawsuit here.  It sounds

14   like there was a freeze put in by the State Court.

15        But there's time and then there's money.  There

16   would need to be a judicial determination, a contested

17   confirmation hearing.  And litigation, the litigation can't

18   continue which freezes the Court.  There would need to be a

19   contested confirmation hearing.  And there's not enough money

20   to do all of that.

21        And there's State Court issues involving fraud.

22   This Court could take them up.  But really the State Court's

23   already in the best position to deal with many of these

24   issues, and the parties are essentially asking the Court to

25   allow them to proceed in State Court.  Whether Ms. Zahire has

1     any right to anything, whether she's done everything right, I

2     don't -- I have no idea and are making no findings one way or

3     the other about what Ms. Zahire's rights are.  If it turns out

4     that she didn't have a right to do any of what she did, that's

5     going to be a real problem, and I think the State Court would

6     be in a position to address those issues here.

7          (Pause in the proceedings.)

8          THE COURT:  The Court's already held a hearing on a

9     motion to dismiss the case based upon, among other things, the

10    amount of money it would take to continue this case.  The

11    Court denied it based on the evidence presented to the Court

12    at the time.

13         NBK now seeks and files objections along with the

14    United States Trustee as to whether Ms. Hayward's qualified to

15    serve as Debtor's counsel under Section 327 of the Bankruptcy

16    Code.  The Court has not taken that issue up.

17         But for this case to continue there's going to have

18    to be a lot of money.  I'm going to have to require NBK to get

19    paid interest.  There's just not enough money in the budget,

20    this Debtor is going to run out of money really fast.  And the

21    Court's in the position where it's going to have to take it

22    all, or none, even if we're going to take it up all and deal

23    with allegations where somebody has made a representation to

24    this Court, or potentially made -- maybe say potentially made

25    representations to this Court that could be really tricky.

1        Interest on the loan to NBK at the non-default rate

2   is about $353,000 a month.  On the default based on the

3   evidence presented at the cash collateral, it was about

4   $447,000 a month.  The only way this case survives is if I

5   don't require NBK to be paid any interest on that loan pending

6   the resolution of State Court matters, the matters of plan

7   confirmation, and I'm unwilling to do that, which makes this

8   case immediately administratively insolvent.

9        No way this place could proceed.  The Court would

10  have to deal with serious allegations that were made in this

11  Court.  The Court would have to deal with whether there's

12  certain debt, whether this Debtor is subject to certain -- is

13  collateral under the debt, who the owner, who controls the

14  parent, what the parent wants to do, a lot going on here.

15       The allegations that are alleged, the Court would

16  have to really do a lot of finding and it would require a lot

17  more investigation.  I don't know.  Mr. Choudhri's involved in

18  litigation at the State Court level involving Naissance

19  alleging some strong allegations, I don't need to get into

20  them because I don't want to, but here Mr. Choudhri is listed

21  as an unsecured creditor to the tune of $960,000.  He also

22  controls a number of entities that are owed nmoney, and

23  Mr. Darjon (sic) filed these under penalty of perjury,

24  assuming he did his diligence.  He's a good man.

25       The Debtor has filed a plan but that plan cannot

1    proceed, not with all the pending allegations that are going,

2    not with all the required time and cost that would be

3    existent, including a market test of what the Debtor's

4    proposing to do, which is to allow the equity interest in this

5    Debtor to proceed to an insider.  And I mentioned on the first

6    day that that would need to be market tested because it

7    involves an insider, and there's a lot of fights going on.

8    And all that tells me is there would need to be funds payable

9    to deal with that litigation, and all it's going to eat into

10   is potential recovery.

11        A lot of investigations that would need to happen.

12   I think in closed cases, especially with the amount of money

13   involved and the amount of time and money involved, someone

14   would need to get me comfortable that they've looked into

15   these issues to make sure that unsecured claims are due and

16   proper, that they shouldn't be questioned, the amount of any

17   of them.

18        I raised a lot of issues about preference claims,

19   and I think they don't need to be brought in every case.  I

20   think someone just has to look at them to see what the issue

21   is there.  The issue here is that the allowed Class 7, the

22   allowed interest of the equity and interest on it are going to

23   be cancelled and they're going to be reissued to a new equity

24   holder based on a $2.5 million contribution.  For $2.5 million

25   you could own this company.

1          And that's what they want to go forward on, and I'm

2     not going to allow them to do it.  Where did that number come

3     from?  Based on this, is there a better number out there?  Is

4     there someone willing to put more money in to pay unsecured

5     creditors more money, general unsecured claims.  This milks

6     large general unsecured claims here as well.

7          This isn't a 2-party dispute.  There's a lot of

8     parties involved in this case, and I don't think you can do

9     any of that, and we can't get there without paying any

10    interest on at least several months of interest to Bank of

11    Kuwait.  I would have to revisit my entire cash collateral

12    order, I would have to revisit adequate protection to a

13    secured creditor while the State Court litigation plays itself

14    out, while allegations about fraud are taken out, some of

15    which could play -- find themselves here in front of this

16    Court based on representations that were made to me.

17          All of that, the timing of this case, the fact that

18    a plan could not even be considered until well into early

19    2024, the fact that I would require -- if to do that I would

20    require interest payments to be going to the secured creditor,

21    not just because this is a single asset real estate case, as

22    you can file a plan where you could pay interest, but in this

23    case based on all these allegations and all this confusion and

24    all this -- and the investigations that would need to go

25    forward, the secured creditor I think would be entitled to a

1    plan, because you can't confirm this plan quickly.

2          You can't get quickly to plan confirmation based

3    upon the issues that I've identified.  And there would have to

4    be investigations.  All right.  Some Court's going to have to

5    do it.  The State Court's already taking it up.  And this

6    Debtor is in no position to pay one month, or even a half a

7    month of interest to secured creditor.  Secured creditor

8    hadn't been paid in quite some time.

9          I don't -- before the Court spends the time and the

10   expense questioning, and I would note that the only way

11   secured creditor -- you know, while the Court spends the time

12   and the money taking up lawyer fees where Ms. Hayward would

13   have to defend herself, and I believe in her success, will

14   have a right to be paid.

15         Maybe she wins, maybe she loses.  If she loses, then

16   this case gets immediately dismissed, I've got to give --

17   because to then take time to go find new counsel, and you

18   still have to pay interest.  But if Ms. Hayward wins they've

19   now taken enough money.  This Debtor doesn't have enough money

20   to pay even a half a month of interest on the secured loan and

21   it would take until early 2024 to go deal with that.

22         I'm dismissing this case effective today under

23   Section 1112(b) for cause.  I would also note that this case

24   was filed in Victoria.  In connection with this I don't see a

25   connection with Victoria as well.  The cost to transfer this

1     case to the Houston Division and potentially assign the Chief

2     Judge to go find a new -- yeah, I'd still would need to pay

3     interest.  There's a lot of moving pieces here.

4          Maybe I would have transferred it to myself, I'd

5     note that, that I think I have the ability to do that in

6     certain cases.  And I'd just note that if this case does get

7     refiled I think the Houston Division is probably the right

8     division based upon the way the local rules have now been

9     amended to read.  I find nothing wrong with the filing.  I

10    find Ms. Hayward and done nothing wrong.

11         I don't think Mr. Pope has done anything wrong, but

12    I would tell Mr. Pope, I hold you in great regard.  I think

13    you've got to come to me and tell me if something gets filed

14    on, because I hold you in such high regard.  You appear in

15    front of me routinely, that means you've got to show up and

16    tell me stuff when stuff happens sooner.  I don't like hearing

17    it from third parties.  It makes me wonder stuff.  But

18    sometimes it's just a timing issue, so I don't want to read

19    too much into that.

20         This case cannot proceed without interest being paid

21    based on the investigation.  And I know I'm repeating myself.

22    I'm just stressing the issues here.

23         I make no finding about Mr. Choudhri, I make no

24    finding about Ms. Zahire.  Everybody has their rights.  I'm

25    going to let you all deal with this stuff in State Court.

1    The Court comes back, I make no findings about the
2    settlement agreement, the validity of the settlement
3    agreement, where things stand and who has a right to and what
4    the circumstances were, whether the allegations in the
5    adversary proceeding had merit, whether they have no merit,
6    the circumstances why payments weren't made during the
7    pandemic, why tax claims were allowed to accrue at such a
8    level, whether people could have done more.  I know the
9    lawyers didn't do anything wrong, and I'll leave it there.
10    I've never done this, I hope to never do it again,
11    but I think it's the right call in connection with this case,
12    and so that's my ruling, I've done it on my own.
13    MS. HAYWARD:  Your Honor, may the Debtor request
14    that Your Honor defer entry of an order for 10 days to see if
15    the parties can reach a resolution on the Naissance issue to
16    allow this case to move forward?
17    THE COURT:  No, I'm going to issue my order, and
18    then I'm going to let you all -- if you reach something, just
19    file something and ask me to reconsider, and I'll do it.
20    MS. HAYWARD:  I would also, Your Honor, just so that
21    the Record is very clear, I apologize --
22    THE COURT:  Uh-huh.
23    MS. HAYWARD:   -- that to the extent that --
24    THE COURT:  That was a contact issue, that wasn't me
25    rolling my eyes or anything, I was just -- I apologize, I know

1    it made you --

2         MS. HAYWARD:  Great, Your Honor.  I thought you were

3    rolling your eyes at me and I was going to stop.

4         THE COURT:  No, no, no, I appreciate it.  No, no,

5    no, no, I appreciate it.  That was just a contact issue.  I

6    apologize, I want to be really clear about that.

7         MS. HAYWARD:  I just want, for the Record, to say

8    that to the extent that -- and I appreciate Your Honor's

9    concern about payment of fees in this case, but one thing I

10   will tell Your Honor is that I have committed to this case and

11   so I see that as my risk.  Okay.  And I just want to make sure

12   the Record reflects that.  Number 2 --

13        THE COURT:  I agree.  No, I know, you're -- you

14   don't -- you don't abandon ship.  I know that about you, and I

15   know that you would have done your -- fulfilled your ethical,

16   and what you would consider to be your duty to your clients.

17   I'm doing this, not you.

18        MS. HAYWARD:  Yes, I understand, Your Honor.  I also

19   believe I take cases that -- I believe in justice.  Okay.  I

20   believe in justice and I fight for justice.  I also want to

21   point out that to the extent that interest payments were

22   required to be paid to NBK, there's obviously a dispute as to

23   the amount of that debt.  And so the $350,000 number that Your

24   Honor has stated I believe would be based upon a calculation

25   of the stated loan documents rather than the settlement

1   amount --

2           THE COURT:  No, no, no, I agree.

3           MS. HAYWARD:   -- which would be very different.

4           THE COURT:  I agree.  I agree with you there.  I'm

5   just saying when you're dealing with a debtor who has like

6   100,000 in cash maybe, I don't know, let's just say 110, that

7   number's going to get swallowed up in a month or 2 regardless

8   of what it is, and that doesn't even allow for admin costs to

9   be considered.  I agree with you, the loan documents say 350

10  and there was a settlement agreement, but people are fighting

11  about the settlement agreement, where there's interference

12  about the settlement agreement.

13          I've got to come up with a number one way, and I'm

14  not letting lawyers -- I've got it, lawyers take their risk

15  and I'm not -- those are administrative costs as well of the

16  estate and the answer isn't zero while -- say that number --

17  say we've even allocated 80,000, 100,000 under the settlement

18  agreement, you -- one month it's still done.

19          MS. HAYWARD:  Unless, Your Honor, someone is willing

20  to put in additional money to fund that to get to

21  confirmation, which I believe we stated at the motion to

22  dismiss hearing that Mr. Choudhri was willing to fund money to

23  keep this case going.

24          THE COURT:  Right.  But that's going to require then

25  looking into Choudhri.  And that's what I mean, it's a

1      revolving door.

2              MS. HAYWARD:  Your Honor, I will tell the Court that

3      Mr. Choudhri here has nothing to hide, and welcomes his --

4              THE COURT:  I'm not saying he does.

5              MS. HAYWARD:   -- day in court.

6              THE COURT:  I'm not saying he doesn't.  I'm not

7      saying he does, I'm not saying he doesn't.  I just think it's

8      required in every case, especially with -- there's a case

9      where unsecured creditors are going to get paid X amount, and

10     you have an unsecured creditor -- an insecure claim for

11     $960,000 stated on the books.  I think somebody gets to look

12     at that.

13             MS. HAYWARD:  Well, Your Honor --

14             THE COURT:  And it just makes your request -- plus

15     potential preference issues, plus -- and they could all be

16     legit is what I'm saying.  But now there's allegations of

17     fraud flowing out there and there's allegations of other stuff

18     going on.  It just takes a lot of time and money to get to the

19     right answer, that's what I mean.  That's all I'm saying.  I'm

20     not implying anything.

21             I don't want anyone to run to a State Court and say,

22     Lopez is implying -- I'm just saying all of that takes time

23     and money, and the minute I start opening up the door and

24     saying, What are the admin costs in this case, what is NBK

25     supposed to get paid, we've run out of money and it happens in

the nmonth of November.  What are we doing?  We don't get to

plan confirmation, plus the market testing that I'm going to

require, plus a contested confirmation.  It just -- you look

at it, there's -- the minute I open up interest on any amount

you're done, this case is administratively proceeding.

And the adversary proceeding cannot proceed, which

has really strong allegations that may be Mr. Choudhri wins

all or them.  I can't -- Naissance I don't know whether they

would come in or not, but the Debtor and Mr. Choudhri maybe

they win all of that stuff.  I don't know.  But there's got to

be money for it though.

MS. HAYWARD:  Understood, Your Honor.  I also just

want to point out that under the plan unsecured creditors are

getting paid.  All of the claims with respect to the building

are paid in full early in the plan --

THE COURT:  Uh-huh.

MS. HAYWARD:   -- and then the Debtor is paying

another several million dollars on account of the NBK

deficiency and the other creditor claims that are out there.

THE COURT:  Uh-huh.

MS. HAYWARD:  Plus paying NBK monthly.

THE COURT:  For 10 years.

MS. HAYWARD:  Yes, but with an amortization, it's

not --

THE COURT:  No, no, I agree.

1          MS. HAYWARD:   -- it's not, you know --

2          THE COURT:  But what I'm saying --

3          MS. HAYWARD:   -- negative amortization.

4          THE COURT:  That's what I'm saying, it's the 2.5

5     mil.  Right?  But if somebody injects 10 million, you've got a

6     whole different animal.

7          MS. HAYWARD:  Well, I get Your Honor, I hear that

8     that's Your Honor's position, I don't -- I respectfully

9     disagree.

10          THE COURT:  I know you do.

11          MS. HAYWARD:  I mean I think that under the Code I'm

12     entitled to bifurcate claims and come up with a plan that

13     proposes something to pay creditors.

14          THE COURT:  I just think when you -- you know, but

15     you talk to insiders.  We're talking about what happens to the

16     equity interest, I'm not talking about bifurcation of claims,

17     I'm talking about equity interest.

18          MS. HAYWARD:  Yes, Your Honor, and equity --

19     somebody is coming in and willing to fund the $2-1/2 million

20     that is needed in order for the building to be stabilized.  So

21     they are fronting the payments that are going to creditors.

22     If Your Honor looks at the projections --

23          THE COURT:  No, I'm looking at all that.

24          MS. HAYWARD:   -- the building runs at a deficit for

25     the next 2 years.

1          THE COURT:  Well --

2          MS. HAYWARD:  So that's the --

3          THE COURT:   -- we're just going to agree to

4     disagree, Ms. Hayward.  I got it, it's -- I'm not saying --

5     it's really smart, it's just not market tested.  It's really

6     smart on paper, it checks all the boxes.  This checks -- it

7     checks all the boxes.  I got you.  You're going to run out of

8     money.  You won't get there.  You won't get to plan

9     confirmation.  You can't even survive on a contested plan

10    confirmation based on the amount of money that we've got here.

11    You don't.  You don't, because they're going to have pay

12    interest till we get there.

13          I'm going to have to figure out what's happening in

14    the adversary proceeding.  And if somebody lied to me on the

15    stand, I'm not saying anybody did, but if somebody did, it

16    turns out that something happened, somebody lied to me on the

17    stand, things get really uncomfortable around here.  And I

18    think everybody ought to go figure all that stuff out in State

19    Court.

20          And I don't put any weight to what Mr. Drinnon told

21    me.  I don't put any weight to what Mr. Tang told me.  I don't

22    put any weight to anything else.  I haven't taken a lick of

23    evidence.  It's just like a pleading, people get to say stuff.

24    I take it seriously though.  We have to think of it here, but

25    that's not happening.  Those are allegations that the lawyers

1    have ethical duties to make statements in front of Court that

2    are based on ethical duties, but I don't know.

3         But we -- somebody's going to have to then tell me,

4    We looked at insider claims based on all these allegations and

5    we find no evidence, somebody's going to have to -- like

6    that's what happens in cases.  That's what I mean, somebody's

7    going to have to tell me, I looked at the insider issues and,

8    yeah, I'm aware of all these allegations that are being made

9    and we think they're clean.

10        That's what I mean, somebody's got to do that.

11   That's the independent fiduciary part.  And I'm not saying you

12   haven't done it, I'm saying that's what would be required for

13   me to then make the finding that the plan was filed in good

14   faith and without, by any means, forbidden by law.  And I

15   can't make that finding because that's going to require time

16   and money, again, because there's allegations out there and

17   I've got to, someone's going to have to deal with them, and

18   it could be me, or someone's going to have present a report to

19   me or some testimony.  And they did, maybe Mr. Darjon is the

20   guy to do it.  That's going to require time and money and

21   that's going to require interest, that's what I mean so.

22        MS. HAYWARD:  Then I would ask Your Honor to enter

23   an order that the Debtor must come up with -- either file some

24   kind of subordinated DIP motion or something and start paying

25   interest in a certain amount.  I mean, again, Your Honor,

1    we're trying to save this asset.

2              THE COURT:  No, I know, and you can --

3              MS. HAYWARD:  If this case gets dismissed because of

4    Mr. Tang and Mr. Drinnon --

5              THE COURT:  It's not being dismissed for Mr. Tang

6    and Mr. Drinnon, it's dismissed -- it's being dismissed for

7    far more than that.  If that's the case, you haven't heard me.

8    I'm saying we -- it's going to take time and money to resolve

9    a lot of issues, and it's entirely based on me saying no

10   interest to NBK.  Not 1, not 1, not 1/2, not 100, not 200

11   grand, nothing.

12             And if that's the case, then no money -- no

13   administrative costs to you, or to anyone else who works on

14   this case.  Or to anyone else who would be hired to provide

15   valuation testimony.  And I'm unwilling to do that.  I'm

16   unwilling to do that.  And the plan proposes, you know, that

17   an insider is going to receive -- is going to make a $2-1/2

18   million contribution and they're going to get the equity.  And

19   that's going to require some time and work to get me

20   comfortable.

21             If that's the case, then that's going to require

22   interest payments.  People are entitled to adequate

23   protection.  And everything hinges on me holding everything

24   and not doing anything until I decide this issue, and we run

25   out of money really fast, and I'm unwilling to do it.

1          So you have my reasons, they'll be on the Record,

2     and I'll just enter an order saying for the reasons stated on

3     the Record this case is dismissed.  And it's not about

4     Mr. Tang, it's about the allegations.  It's about allegations,

5     it's about interest, time, market testing under a plan, a

6     lawyer who's willing to go out there and risk not being paid,

7     but that doesn't mean that there's not an administrative

8     expense.

9          I don't know.  And I do know we can't proceed on the

10    adversary because of Naissance, and that issue has to get

11    resolved.  And I have an adversary proceeding right now where

12    all 3 are still there, and that can't proceed.  There's a

13    State Court injunction saying Naissance can't proceed.  I

14    don't -- why don't you all go fight about it.  Maybe they come

15    back -- it's just a freeze, but you can't -- but the problem

16    is they freeze the whole thing because they're involved in it.

17         So that's my ruling.  Thank you.

18         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

19    (Hearing adjourned 11:40 a.m.)

20

21

22

23

24

25                         * * * * *

1           I certify that the foregoing is a correct transcript

2      to the best of my ability produced from the electronic sound

3      recording of the proceedings in the above-entitled matter.

4        /S./  MARY D. HENRY

5      CERTIFIED BY THE AMERICAN ASSOCIATION OF

6      ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

7      JUDICIAL TRANSCRIBERS OF TEXAS, LLC

8      JTT TRANSCRIPT #67838

9      DATE FILED:  NOVEMBER 7, 2023

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 3



1                    REPORTER'S RECORD
                  VOLUME 1 OF 1 VOLUME
2
            TRIAL COURT CAUSE NO. 2023-22748
3

4                              )
   GALLERIA 2425 OWNER,        ) IN THE DISTRICT COURT
5  L.L.C.                      )
                               )
6  VS.                         ) OF HARRIS COUNTY, TEXAS
                               )
7  NATIONAL BANK OF KUWAIT,    )
   S.A.K.P., NEW YORK BRANCH   ) 281ST JUDICIAL DISTRICT
8

9

10

11            -------------------------------

12                    MOTION HEARING

13             10:23 A.M. TO 2:54 P.M.

14            -------------------------------

15

16

17

18       On the 29th day of November, 2023, the following

19  proceedings came on to be heard in the above-entitled

20  and numbered cause before the Honorable Christine Weems,

21  Judge presiding, held in Houston, Harris County, Texas;

22       Proceedings reported by machine shorthand.

23

24                  Kathleen Miller, CSR #739
                    Official Court Reporter
25                  Harris County, Texas

```
 1                    I N D E X

 2           VOLUME 1 of 1 VOLUMES

 3                (MOTION HEARING)

 4                                     Page Vol.
```

```
 5   Appearances...........................   3    1

 6   Proceedings...........................   5    1

 7

 8   Adjournment...........................  128    1

 9   Court Reporter's Certificate..........  128    1
```

```
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    A P P E A R A N C E S

 2    FOR THE PLAINTIFF:

 3         Mr. James Q. Pope
           State Bar No. 24048738
 4         The Pope Law Firm
           6161 Savoy Drive, Suite 1125
 5         Houston, Texas  77036
           Phone:  713-449-4481
 6         Email:  Jamesp@thepopelawfirm.com

 7         Mr. Matias Adrogué
           State Bar No. 24012192
 8         Matías J. Adrogué PLLC
           1629 W Alabama Street
 9         Houston, Texas 77006 
           Phone: 713-425-7270
10         Email: Mja@mjalawyer.com

11         Ms. Jennifer L. MacGeorge
           State Bar No. 24093627
12         MacGeorge Law Firm, PLLC
           701 Tillery Street, Suite 12
13         Austin, TX 78702
           Phone:  512-215-4129
14         Email: Info@jlm-law.com

15         Mr. Jerry C. Alexander
           Passman & Jones
16         State Bar No. 00993500
           1201 Elm Street, Suite 2500
17         Dallas, Texas  75270
           Phone:  214-742-3579
18         Email: Alexanderj@passmanjones.com

19

20

21

22

23

24

25
```

02:44PM (line 7)
02:44PM (line 7)
02:44PM (line 11)

Unofficial Copy Office of Marilyn Burgess District Clerk

```
 1  FOR THE DEFENDANT NATIONAL BANK OF KUWAIT, S.A.K.P., NEW
    YORK BRANCH:
 2
        Mr. Charles C. Conrad
 3      State Bar No. 24040721
        Ms. Elizabeth Klingensmith
 4      State Bar No. 24046496
        Mr. Ryan Steinbrunner
 5      State Bar No. 24093201
        Pillsbury Winthrop Shaw Pittman LLP
 6      Two Houston Center
        909 Fannin, Suite 2000
 7      Houston, Texas  77010-1018
        Phone:  713-276-7600
 8      Email:  Charles.conrad@pillsburylaw.com
                Liz.klingensmith@pillsburylaw.com
 9              Ryan.steinbrunner@pillsburylaw.com

10

11  FOR THE DEFENDANT RODNEY DRINNON:

12      Mr. Rodney L. Drinnon
        State Bar No. 24047841
13      McCathern Houston
        2000 West Loop South, Suite 1850
14      Houston, Texas  77027
        Phone:  832-533-8689
15      Email:  Rdrinnon@mccathernlaw.com

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 10:23AM | 1 | P R O C E E D I N G S |
| 10:23AM | 2 | THE COURT:  Go on the record.  2023-22748, |
| 10:23AM | 3 | *Galleria 2425 Owner, LLC v. National Bank of Kuwait*. |
| 10:23AM | 4 | Counsel, please make your appearances for |
| 10:23AM | 5 | the record. |
| 10:23AM | 6 | MR. ADROGUÉ:  Matias Adrogué representing |
| 10:23AM | 7 | plaintiffs, along with several cocounsel. |
| 10:23AM | 8 | MR. CHOUDHRI:  Ali Choudhri. |
| 10:23AM | 9 | MS. MACGEORGE:  Jennifer MacGeorge. |
| 10:23AM | 10 | MR. POPE:  James Pope, P-O-P-E, and Jerry |
| 10:23AM | 11 | Alexander, who has stepped out of the room. |
| 10:24AM | 12 | THE COURT:  Okay. |
| 10:24AM | 13 | MR. CONRAD:  And Charles Conrad, Ryan |
| 10:24AM | 14 | Steinbrunner, and Liz Klingensmith for National Bank of |
| 10:24AM | 15 | Kuwait. |
| 10:24AM | 16 | MR. DRINNON:  Rodney Drinnon, McCathern |
| 10:24AM | 17 | Houston, on behalf of Rodney Drinnon. |
| 10:24AM | 18 | Judge, just to be clear, did Mr. Choudhri |
| 10:24AM | 19 | appear for himself? |
| 10:24AM | 20 | THE COURT:  I -- well, Mr. Choudhri |
| 10:24AM | 21 | individually is not a party. |
| 10:24AM | 22 | MR. DRINNON:  He just became a party about |
| 10:24AM | 23 | 20 minutes ago. |
| 10:24AM | 24 | THE COURT:  Did I miss something? |
| 10:24AM | 25 | MR. DRINNON:  Apparently. |

10:24AM 1               THE COURT:  Great.

10:24AM 2               MR. DRINNON:  Just want to make sure he is

10:24AM 3 a party.

10:24AM 4               THE COURT:  Well, that I don't have.  What

10:24AM 5 was filed?

10:24AM 6               MR. DRINNON:  Mr. Choudhri.

10:24AM 7               THE COURT:  You can approach, Mr. Choudhri,

10:24AM 8 because I do see that there were some things that were

10:24AM 9 filed this morning like the response.  I haven't gotten

10:24AM 10 to look at it yet.  I literally just saw it.

10:24AM 11               All right.  Have a seat, sir.  Give me a

10:24AM 12 few moments to look at this.  So --

10:25AM 13               MR. CHOUDHRI:  Your Honor, I did want to

10:25AM 14 mention what was filed is slightly different than what I

10:25AM 15 handed you, because I brought an older copy.

10:25AM 16               THE COURT:  Okay.

10:25AM 17               MR. CHOUDHRI:  So I am -- I should have a

10:25AM 18 printout in a few minutes for the current copy.

10:25AM 19               THE COURT:  Let me just check to see.  Have

10:25AM 20 you seen this?  It's a petition in intervention, Bonnie.

10:25AM 21 Yeah, I was talking to you.  You didn't realize.

10:25AM 22               THE CLERK:  Yes, ma'am.

10:25AM 23               THE COURT:  Has that been accepted because

10:25AM 24 I don't see it?

10:25AM 25               THE CLERK:  Everything for this case has

10:25AM  1    been accepted.  I will take a look.

10:25AM  2                   THE COURT:  Give us a second to take a

10:25AM  3    look.

10:26AM  4                   Well, let me ask you this, Mr. Choudhri,

10:26AM  5    because based on your petition in intervention, it seems

10:26AM  6    like you are only intervening for the fraud cause of

10:26AM  7    action against Azeemeh Zaheer only; is that right?

10:26AM  8                   MR. CHOUDHRI:  And the Bank of Kuwait for

10:26AM  9    interference.  That's what my --

10:26AM 10                   THE COURT:  Okay.  That's all I saw on

10:26AM 11    there.

10:26AM 12                   MR. CHOUDHRI:  Correct, ma'am.

10:26AM 13                   THE COURT:  So that is what the new

10:26AM 14    version --

10:26AM 15                   MR. CONRAD:  It is not on the new version

10:26AM 16    either, on the filed copy.

10:26AM 17                   THE COURT:  Okay.  Well, let me see when I

10:26AM 18    get it.

10:26AM 19                   THE CLERK:  I don't have it.

10:26AM 20                   MR. CONRAD:  You only listed one defendant.

10:26AM 21                   (Discussion off the record.)

10:26AM 22                   THE COURT:  That, I, unfortunately, still

10:26AM 23    don't have yet, because what I am looking at literally

10:26AM 24    lists two parties for you, which is -- well, three,

10:26AM 25    Galleria 2425 intervenor plaintiff; Ali Choudhri, so

10:27AM 1   you; and then the Defendant Azeemeh Zaheer.  That is it

10:27AM 2   that is on this version.  I don't have a version that

10:27AM 3   lists the National Bank of Kuwait as a party to your

10:27AM 4   intervention.

10:27AM 5               MR. CHOUDHRI:  I believe they're a party in

10:27AM 6   the case.

10:27AM 7               THE COURT:  They are a party in the case,

10:27AM 8   but it doesn't appear that you made any allegations

10:27AM 9   against National Bank of Kuwait in your intervention.

10:27AM 10  So just because they're a party in your case doesn't

10:27AM 11  mean they are a party to your claim, and that is what

10:27AM 12  I'm trying to figure out.

10:27AM 13              MR. CHOUDHRI:  May I e-mail this, Your

10:27AM 14  Honor, to --

10:27AM 15              THE COURT:  E-mail it directly to the

10:27AM 16  clerk.  Make sure you CC all of the parties involved,

10:27AM 17  Mr. Choudhri.

10:27AM 18              MR. CHOUDHRI:  Yes, ma'am.

10:27AM 19              MR. DRINNON:  It has to be filed correctly,

10:27AM 20  too, Judge.

10:27AM 21              THE COURT:  It has got to be filed.  Yeah.

10:27AM 22              MR. CHOUDHRI:  This is the filed.

10:27AM 23              MR. DRINNON:  I just want to make sure.

10:27AM 24  There's a little bit of forum shopping is going on

10:27AM 25  actually.

10:27AM 1                    THE REPORTER:  I can't hear you.

10:27AM 2                    MR. ADROGUÉ:  Counsel, we're here for

10:27AM 3   something else.  I don't know why you want to --

10:27AM 4                    MR. DRINNON:  Because I want to make sure

10:27AM 5   that I know exactly where the parties are with this,

10:28AM 6   because when I filed my counterclaims and the

10:28AM 7   third-party claims, I want to make sure I know exactly

10:28AM 8   who the parties are.

10:28AM 9                    MR. ADROGUÉ:  That is fine.

10:28AM 10                   MR. DRINNON:  That is not --

10:28AM 11                   MR. ADROGUÉ:  He --

10:28AM 12                   THE REPORTER:  I cannot take you both.

10:28AM 13                   THE COURT:  Hold on, everybody.  One at a

10:28AM 14  time.  Slow down.  Mr. Drinnon, speak up.

10:28AM 15                   MR. DRINNON:  Yeah.  So I don't know why I

10:28AM 16  got interrupted.  My issue, Judge, is I think there has

10:28AM 17  been forum shopping that has been going on.

10:28AM 18                   Yesterday they filed, apparently, another

10:28AM 19  action in the Naissance case against the National Bank

10:28AM 20  of Kuwait.  It has been my understanding.  So what I

10:28AM 21  think they want to try to do is pit you against Judge

10:28AM 22  Moran downstairs.

10:28AM 23                   THE COURT:  Judge -- which Judge?

10:28AM 24                   MR. DRINNON:  Judge --

10:28AM 25                   MR. CONRAD:  It's the 80th.

10:28AM 1          MR. ADROGUÉ:  Judge Manor.

10:28AM 2          THE COURT:  Judge Manor.  I was going to

10:28AM 3  say, I didn't know who you were talking about for a

10:28AM 4  second there.

10:28AM 5          MR. DRINNON:  Sorry.  I have another Judge

10:28AM 6  Moran in the federal.

10:28AM 7          And so, I just wanted to point that out.  I

10:28AM 8  thought that was kind of a unique thing today.  And

10:28AM 9  then, I haven't received any type of response to my

10:29AM 10 current motion.  Now, apparently they're filing things

10:29AM 11 last ten seconds here, so I am betting there is

10:29AM 12 something there that I haven't seen.

10:29AM 13         THE COURT:  So, yeah, apparently, they

10:29AM 14 filed a response to your motion today at, like, 8:00.

10:29AM 15         MR. DRINNON:  Yeah.  Do you have a hard

10:29AM 16 copy of that, Judge, so I can take a look at?

10:29AM 17         THE COURT:  I just got it electronically.

10:29AM 18 It literally just popped up this morning.

10:29AM 19         MR. ADROGUÉ:  May I respond to those

10:29AM 20 allegations, Your Honor?

10:29AM 21         THE COURT:  Well, first off, let's talk

10:29AM 22 about, whether or not -- so the thing that you filed

10:29AM 23 this morning --

10:29AM 24         MR. ADROGUÉ:  The response to his motion

10:29AM 25 for emergency discovery?

10:29AM   1              THE COURT:  Yeah.

10:29AM   2              MR. ADROGUÉ:  The first thing I want to

10:29AM   3   point out, Your Honor, is that last Wednesday before

10:29AM   4   Thanksgiving -- excuse me, Counsel.

10:29AM   5              MR. DRINNON:  Do we have the motion or not?

10:29AM   6              MR. ADROGUÉ:  Last week before

10:29AM   7   Thanksgiving, you ordered him to give us proper notice,

10:29AM   8   which is five days' notice of -- that this hearing was

10:30AM   9   actually going to go forward this morning.

10:30AM  10              Yesterday, late afternoon, right after 5:00

10:30AM  11   p.m., Mr. Drinnon gave us a notice of hearing that he

10:30AM  12   intended to still go forward on his motion for emergency

10:30AM  13   discovery this morning.

10:30AM  14              So, this morning we didn't think this

10:30AM  15   hearing was going to go forward.  This morning, we filed

10:30AM  16   our response in opposition to his request for discovery,

10:30AM  17   and we listed numerous issues that we had brought up on

10:30AM  18   Wednesday, but we're ready to argue here today.

10:30AM  19   That's -- that's that issue.

10:30AM  20              The other issue is, Your Honor, the

10:30AM  21   allegations that we are forum shopping, what counsel is

10:30AM  22   not telling you is that we had another hearing in front

10:30AM  23   of Judge Manor on Monday -- we do have a transcript of

10:30AM  24   that -- and we were talking to the Judge to try to

10:30AM  25   figure out because we felt her TI hearing sort of

10:31AM 1  hogtied us, because her clients -- their client is in

10:31AM 2  Europe, and we can't do anything without --

10:31AM 3                  THE COURT:  You said which client -- who

10:31AM 4  are you referring to?

10:31AM 5                  MR. ADROGUÉ:  Azeemeh.  Azeemeh is in

10:31AM 6  Europe, and the TI hearing says he can't do anything

10:31AM 7  without confirming with Azeemeh.  She is in Europe.  So

10:31AM 8  I told Judge Manor, and all this is on the record,

10:31AM 9  Judge, we're sort of at a standstill, what can we do,

10:31AM 10 what can he do with Naissance Galleria?

10:31AM 11                 And Judge Manor said, In this court, you

10:31AM 12 can act for him and he can act.  So based on that, we

10:31AM 13 did this -- this morning -- this morning --

10:31AM 14                 THE COURT:  Wait.  You said "in this

10:31AM 15 court," are you referring to this --

10:31AM 16                 MR. ADROGUÉ:  In Manor's court, yes.

10:31AM 17 Because we were afraid we were going to be violating

10:31AM 18 their order in other courts.  And so this morning, we

10:31AM 19 filed a second amended petition in Naissance Galleria

10:31AM 20 court in Manor's court, adding the Bank of Kuwait.

10:32AM 21                 THE COURT:  But isn't there already a

10:32AM 22 Naissance versus Bank of Kuwait case?

10:32AM 23                 MR. DRINNON:  Uh-huh.

10:32AM 24                 THE COURT:  That's in the 129th?

10:32AM 25                 MR. ADROGUÉ:  Not by us.  We didn't file

10:32AM  1  that.  And that's the other thing, Your Honor, we didn't

10:32AM  2  file, "we" being these lawyers didn't file --

10:32AM  3  THE COURT:  Right.  So why didn't you just

10:32AM  4  intervene in that case that already exists?

10:32AM  5  MR. ADROGUÉ:  Because we're not allowed to,

10:32AM  6  because we can't do anything without Azeemeh, who is in

10:32AM  7  Europe, in other courts.  She just --

10:32AM  8  THE COURT:  You literally just said that

10:32AM  9  you have permission.

10:32AM  10  MR. ADROGUÉ:  To work in that court, Your

10:32AM  11  Honor.  We have a transcript of it.  I understand it is

10:32AM  12  confusing, but the issue is -- frankly, the issue has

10:32AM  13  been Tang and this gentleman, Drinnon, they have filed

10:32AM  14  three lawsuits representing Naissance Galleria when they

10:32AM  15  never had permission to.  They think they do, but they

10:32AM  16  don't.  And so that is why on Monday in front of Judge

10:32AM  17  Manor I was saying, Judge, tell us what we can and can't

10:32AM  18  do.

10:32AM  19  And Judge Manor said:  In this court, you

10:32AM  20  represent Naissance Galleria.  You can act on their

10:32AM  21  behalf.  So that's why in Manor's court, we added the

10:33AM  22  bank to try to prevent the foreclosure again.

10:33AM  23  I don't think I can file an intervention in

10:33AM  24  the 127th, Your Honor --

10:33AM  25  THE COURT:  Is it 127th or 129th?

10:33AM 1          MR. ADROGUÉ:  29th, I'm sorry, 129th.

10:33AM 2          -- because Drinnon and Tang are, right now,

10:33AM 3  attorney of record for Naissance Galleria in the 129th

10:33AM 4  and in the 157th.  But, my client has never hired them

10:33AM 5  to file those lawsuits in the 129th and 157th.  So we

10:33AM 6  have we're in front you in this court properly with the

10:33AM 7  lawyers that he wants, and then we're in Judge Manor's

10:33AM 8  court, sorry, for Naissance Galleria, with the lawyers

10:33AM 9  he wants.

10:33AM 10          And we added them to the -- to the lawsuit

10:33AM 11 because, frankly, as you know, we are doing everything

10:33AM 12 we can to prevent the foreclosure, and that's what we

10:33AM 13 do.  It is not forum shopping, because Naissance

10:33AM 14 Galleria has its own claim against the bank as set forth

10:34AM 15 in our petition.

10:34AM 16          Moreover, it doesn't affect Drinnon or his

10:34AM 17 client at all, and I don't know why Drinnon keeps

10:34AM 18 wanting to -- I feel like tattletaling all the judges on

10:34AM 19 what is going on in every other court with regards to

10:34AM 20 what we're doing.

10:34AM 21          We did this morning at, like, I guess,

10:34AM 22 10:00 a.m., send a second amended petition, added them.

10:34AM 23 But that's not before you.  It's a temporary restraining

10:34AM 24 order we may try to get, if we need to get, depending

10:34AM 25 what happens here, Your Honor, for the different entity

10:34AM 1   of Naissance Galleria.

10:34AM 2                   Is there something comical that I should be

10:34AM 3   aware of?

10:34AM 4                   MR. DRINNON:   Yeah.   Because, one, my name

10:34AM 5   is Mr. Drinnon.   And two, Judge, I prefer to be referred

10:34AM 6   to as Mr. Drinnon not Drinnon and Tang.   And the other

10:34AM 7   part of it, Judge, is that why we have to quote/unquote

10:34AM 8   tattle on them is because they're taking actions that

10:34AM 9   are directly against what several other judges have

10:34AM 10  talked about.

10:34AM 11                  I am only here today with a motion to get

10:34AM 12  the discovery so I can get the -- the actual facts of

10:35AM 13  what they claimed against me as an individual defendant,

10:35AM 14  because they like to sue lawyers.

10:35AM 15                  So my issue here today, Judge, is that they

10:35AM 16  can play fast and loose with whatever they want, and you

10:35AM 17  brought up -- you actually asked the penultimate

10:35AM 18  question in this case:   Do you have a court order that

10:35AM 19  specifically says that Azeemeh Zaheer cannot act on

10:35AM 20  behalf of Naissance, LLC?   And they couldn't produce it.

10:35AM 21                  So -- and they have brought up the same

10:35AM 22  issue last time downstairs, and Judge Manor specifically

10:35AM 23  said the same thing.   We are going to set a TI hearing

10:35AM 24  for December 6th, which is what we're doing, to figure

10:35AM 25  that out.

10:35AM  1          Now, today, Judge, you gave -- you were the

10:35AM  2  one that set the hearing.  Everyone was here.  They all

10:35AM  3  knew it was at 10:00.  We had to adjust the time and

10:35AM  4  everything else.  I sent a notice just to be careful,

10:35AM  5  because I was concerned that they would try to pull some

10:35AM  6  shenanigans.  They did.  That's okay.

10:35AM  7          I am here to argue this motion today,

10:35AM  8  Judge, about judgment or discovery under the TCPA, for

10:35AM  9  the corporate representative of 2425 Galleria, and for

10:36AM 10  Ali Choudhri individually as well, because he signed the

10:36AM 11  actual verification on the complaint where they sued me.

10:36AM 12          Mr. Adrogué tried to claim that they

10:36AM 13  accidentally sued me.  It was a mistake.  Except that he

10:36AM 14  doesn't recall the telephone calls that I had with

10:36AM 15  Mr. Pope, nor does he recall the 19 times that my name

10:36AM 16  is mentioned in the pleading.  So the whole point of it,

10:36AM 17  Judge, is that all I want to do today, is I want to get

10:36AM 18  some depositions really quickly so that I can get --

10:36AM 19  lock down Mr. Choudhri's testimony, because he tends to

10:36AM 20  lie under oath, and --

10:36AM 21          THE COURT:  Well, let's -- let's not be

10:36AM 22  slinging around that.

10:36AM 23          MR. DRINNON:  Well, no, I -- Judge, I can

10:36AM 24  prove it.  That would be the thing.  If I -- in fact,

10:36AM 25  there has been a court adjudication now twice that he

10:36AM 1   has defrauded in an HREP case, which is 2013 -- I can

10:36AM 2   give you the cite with regards to the jury find --

10:36AM 3                 MR. ADROGUÉ:  I object to the relevance of

10:36AM 4   counsel -- and he does this in every courtroom.

10:36AM 5                 THE COURT:  Regardless of whether or not

10:36AM 6   you need his testimony under oath is a separate issue as

10:36AM 7   to whether or not what his previous testimony in other

10:36AM 8   cases has been.  So let's stick to the issues, because,

10:37AM 9   ultimately, I agree with you to the extent that you

10:37AM 10  can't escape an anti-SLAPP motion just by dismissing

10:37AM 11  them.

10:37AM 12                So even though you're -- the allegation is

10:37AM 13  that you dismissed Mr. Drinnon from the lawsuit, he had

10:37AM 14  filed his anti-SLAPP motion before you have done the

10:37AM 15  dismissal.  I mean, the law is what it is.  The

10:37AM 16  anti-SLAPP survives.  Just because you dismissed him

10:37AM 17  doesn't get you -- doesn't mean that he can't pursue it.

10:37AM 18                MR. ADROGUÉ:  Can I respond to that?

10:37AM 19                THE COURT:  You may.

10:37AM 20                MR. ADROGUÉ:  It's -- back up.  First of

10:37AM 21  all, as you know, Naissance Galleria is in the other

10:37AM 22  court, and Galleria Owner is in this court, so I

10:37AM 23  misspoke something a moment ago.

10:37AM 24                But with regards to his motion, if you are

10:37AM 25  going to allow that -- you are ordering him to give us

10:37AM 1   notice as proper notice, then let me argue that.  We

10:37AM 2   filed a response, and in that response, there is a

10:37AM 3   couple of things that are important.

10:37AM 4            The -- the petition did accidentally name

10:37AM 5   them in the party as -- as parties, as defendants.

10:38AM 6            MR. DRINNON:  Can I get --

10:38AM 7            MR. ADROGUÉ:  Allow me to speak, Counsel.

10:38AM 8            MR. DRINNON:  Can I get a copy of --

10:38AM 9            THE COURT:  Hold on.  Just please let --

10:38AM 10  you will get your opportunity to speak, Mr. Drinnon.  I

10:38AM 11  am going to let Mr. Adrogué speak.  You had your

10:38AM 12  opportunity, Mr. Drinnon.  Mr. Adrogué is going to have

10:38AM 13  an opportunity.

10:38AM 14            MR. DRINNON:  I think the speaking is fine,

10:38AM 15  Judge.  I just want to get a copy so I can see what they

10:38AM 16  are saying.

10:38AM 17            MR. ADROGUÉ:  So around 8:00 p.m. on the

10:38AM 18  14th, they were added in the party section of the

10:38AM 19  petition, and that is it.

10:38AM 20            THE COURT:  Do you have a copy of the

10:38AM 21  response that you filed?

10:38AM 22            MR. ADROGUÉ:  Do we have a hard copy?

10:38AM 23            MS. MACGEORGE:  Not printed, Your Honor.

10:38AM 24  It was filed just before we came here.

10:38AM 25            THE COURT:  Because it looks like it was

10:38AM  1  filed at 8:41 a.m.  That is the time stamp on it.

10:38AM  2                  MR. ADROGUÉ:  Yes, because we didn't know

10:38AM  3  the hearing was going to go forward but we can --

10:38AM  4                  THE COURT:  Well, at that point, you did,

10:38AM  5  because the notice of hearing went out yesterday.

10:38AM  6                  MR. ADROGUÉ:  We weren't sure if you were

10:38AM  7  going to accept it.  I guess you accepted it.

10:38AM  8                  THE COURT:  I didn't accept anything.

10:38AM  9  That's what the clerks do.

10:38AM 10                  MR. ADROGUÉ:  I'm sorry.

10:38AM 11                  THE COURT:  So it is here.  Did you --

10:38AM 12  because I don't have a laptop in front of me, so can

10:38AM 13  someone provide a laptop and show him the motion and the

10:39AM 14  response?

10:39AM 15                  MR. DRINNON:  I have got a laptop if you

10:39AM 16  give me time, Your Honor.

10:39AM 17                  MR. ADROGUÉ:  He can log into the system.

10:39AM 18  He does it every time in Manor's court, and I can --

10:39AM 19                  THE COURT:  It doesn't matter.  As long as

10:39AM 20  he can see it.  You don't have a hard copy.  You can

10:39AM 21  pull it up, fine.

10:39AM 22                  MR. ADROGUÉ:  Do you want me to continue or

10:39AM 23  should I wait, Your Honor?

10:39AM 24                  THE COURT:  Wait a second.

10:39AM 25                  MR. ADROGUÉ:  Yes, Your Honor.

10:40AM 1          MR. POPE:  Your Honor, if I may, I have a
10:40AM 2  hard copy of the response.

10:40AM 3          THE COURT:  Okay.  Great.  Give it to Mr.
10:40AM 4  Drinnon.  That would be wonderful.

10:40AM 5          MR. POPE:  Would Your Honor also like a
10:40AM 6  copy?

10:40AM 7          THE COURT:  No, I have got it.  I can pull
10:40AM 8  it up, but it just came up this morning.

10:41AM 9          I am going to -- please sit down for a
10:41AM 10  moment, Mr. Adrogué.  I am going to give Mr. Drinnon a
10:41AM 11  moment to look at that.

10:41AM 12          While I am doing that, I'm going to take up
10:41AM 13  a couple other things on my 10:00 docket because I want
10:41AM 14  them to have an opportunity to review it since it was
10:41AM 15  just filed.

10:42AM 16  (Proceedings recessed from 10:42 to 11:29.)

11:29AM 17          THE COURT:  All right.  Let us continue,
11:33AM 18  then.  Let's go on the record.

11:33AM 19          We are back on the record after a longer
11:33AM 20  break than intended, but I cleared everybody else out of
11:33AM 21  the way so that nobody else would wait.  That being
11:33AM 22  said, that means the rest of the day is for y'all.
11:34AM 23  Let's talk about whatever we need to talk about.

11:34AM 24          So, I don't see the petition in
11:34AM 25  intervention here.  You have had an opportunity to look

11:34AM   1   at their response; is that right, Mr. Drinnon?

11:34AM   2                   MR. DRINNON:  I have.  Thank you, Your

11:34AM   3   Honor.

11:34AM   4                   THE COURT:  Okay.  Great.  Then, the --

11:34AM   5                   MR. DRINNON:  So do I start with my motion

11:34AM   6   then, Judge?

11:34AM   7                   THE COURT:  Yes, you start with your

11:34AM   8   motion.  Have a seat, Mr. Adrogué.

11:34AM   9                   MR. DRINNON:  Your Honor, so I am here

11:34AM  10   before you today in my own capacity after filing a TCPA

11:34AM  11   motion with regard to a complaint that was filed against

11:34AM  12   me -- or petition that was filed against me last week or

11:34AM  13   week before last.

11:34AM  14                   Just to go over a little of the facts very

11:34AM  15   quickly, just very quickly, so you understand why I am

11:34AM  16   here today, is that I represent Azeemeh Zaheer in other

11:34AM  17   cases with regard to -- and I am not appearing for her

11:34AM  18   in this case currently.  I want to be very clear with

11:34AM  19   that today.

11:34AM  20                   THE COURT:  Right.  You are here solely in

11:34AM  21   your own capacity.

11:34AM  22                   MR. DRINNON:  I am here solely in my own

11:34AM  23   capacity.  We were in another hearing, and then one of

11:34AM  24   Mr. Choudhri's --

11:35AM  25                   THE COURT:  I just realized like Mr. Pope

11:35AM 1   is not here, and Mr. Choudhri is not here.

11:35AM 2                    MR. DRINNON:  Yeah.  Good point.

11:35AM 3                    (Brief pause.)

11:35AM 4                    THE COURT:  And still missing Mr. Pope.

11:35AM 5                    MR. ADROGUÉ:  I think, Your Honor, he is

11:35AM 6   downstairs in the clerk's office dealing with the

11:35AM 7   intervention.

11:35AM 8                    THE COURT:  Are you okay to proceed?

11:35AM 9                    MR. ADROGUÉ:  On this matter, yes.  Yes, we

11:35AM 10  are.

11:35AM 11                   THE COURT:  Right.  Because y'all are kind

11:35AM 12  of handling --

11:35AM 13                   MR. ADROGUÉ:  Yes, Your Honor.

11:35AM 14                   THE COURT:  All right.  Great.

11:35AM 15                   Mr. Drinnon, I apologize.

11:35AM 16                   MR. DRINNON:  No apology necessary, Judge.

11:35AM 17       On October 11th of 2023, I was contacted by

11:35AM 18  Ms. Zaheer about appearing for her in a case captioned

11:35AM 19  *Naissance Galleria v. Azeemeh Zaheer*, 2023-43755,

11:36AM 20  pending in the 80th District Court.  Going with that,

11:36AM 21  and I appeared in counsel, I think, in that case, then,

11:36AM 22  with Mr. Tang, and with Mr. Khawaja, Omar Khawaja.

11:36AM 23                   Prior to the 11th of October, I was not

11:36AM 24  involved in any of the present disputes with regard to

11:36AM 25  Galleria 2425, or any of the other parties in this case,

11:36AM   1   or in the case down in the 80th.

11:36AM   2              I agreed to go ahead and appear on behalf

11:36AM   3   of Ms. Zaheer, and I also agreed to appear in the United

11:36AM   4   States Bankruptcy Court also on behalf Ms. Zaheer, who

11:36AM   5   had requested me to make appearance for Naissance, LLC.

11:36AM   6   I made my first appearance on October 12th, so you are

11:36AM   7   talking about a little bit less than a month ago, or

11:36AM   8   little bit more than a month ago in the bankruptcy case.

11:36AM   9              I participated in an expedited remote

11:36AM   10  status conference in front of Judge Lopez, but prior to

11:37AM   11  that, I wasn't involved in any other proceedings in the

11:37AM   12  bankruptcy court.

11:37AM   13             And then we -- I was not involved in the

11:37AM   14  filing of National Bank of Kuwait's October 6th letter,

11:37AM   15  so I don't have anything to do with that with regard to

11:37AM   16  those issues.  On October 31st with the assistance of

11:37AM   17  bankruptcy counsel, a man by the name Aaron Power, we

11:37AM   18  filed, basically, a motion for leave to the Court to go

11:37AM   19  ahead and to lift the stay following the order that you

11:37AM   20  saw in the TI from downstairs in the 80th District

11:37AM   21  Court.

11:37AM   22             We believe we have a good faith basis to do

11:37AM   23  that.  It was done in the capacity -- all of these

11:37AM   24  things were done in the capacity as the lawyer for

11:37AM   25  either Ms. Azeemeh Zaheer, who was acting, and we

11:37AM 1   believe is the direct manager and member of Naissance,

11:37AM 2   LLC.  So we did -- everything was in my capacity with

11:37AM 3   regard to those issues.

11:37AM 4               For some reason, at a hearing later, I

11:37AM 5   was -- I appeared at, nor was our motion set for hearing

11:38AM 6   in front of the bankruptcy court, Judge Lopez, in his

11:38AM 7   infinite wisdom, decided to go ahead and dismiss the

11:38AM 8   bankruptcy that was for other reasons other than, I

11:38AM 9   believe, our motion.  I didn't attend the hearing, but

11:38AM 10  then it was actually on a motion to employ Ms. Hayward.

11:38AM 11              On November 13th, I appeared in the state

11:38AM 12  court case following the receipt of a late notice of --

11:38AM 13              THE COURT:  When you say "state court," I

11:38AM 14  am going to keep asking you to specify which state court

11:38AM 15  case you are talking about, because, clearly, there are

11:38AM 16  several of them.

11:38AM 17              MR. DRINNON:  Right.  In this one, which is

11:38AM 18  the key here, going forward.  And I'll be blunt with

11:38AM 19  you, sorry, it's Judge Manor's.

11:38AM 20              THE COURT:  Yeah, that is not here.

11:38AM 21              MR. DRINNON:  So she terminated the hearing

11:38AM 22  because the plaintiff's counsel had properly failed to

11:38AM 23  serve Ms. Zaheer, and during -- in an anteroom,

11:38AM 24  Ms. Hayward says threatened to file suit against

11:38AM 25  Drinnon, individually, and in his capacity despite me

11:38AM  1   and my -- enacting my -- just for my client.

11:39AM  2                On November 14th, we knew it was coming.

11:39AM  3   So at that point she foreshadowed what was about to

11:39AM  4   happen.  On November 14th, Mr. Pope followed through on

11:39AM  5   Hayward's threat and filed the amended petition, in this

11:39AM  6   case, and then added me as a party and also added

11:39AM  7   Mr. Tang as a party, while asserting four previously

11:39AM  8   identified claims and causes of action against me.

11:39AM  9                On November 15th, I ended up obtaining a

11:39AM 10   copy because we were watching.  We knew that -- what

11:39AM 11   Mr. Choudhri tends to like -- I will say this before --

11:39AM 12   he has sued lawyers in the past.  There is a case that I

11:39AM 13   can cite for you, which is *Jetall Companies, Inc. v.*

11:39AM 14   *Johnson*, it is 2020 West -- or WL 6435778.  It's here

11:39AM 15   pending.  There was a court of appeals decision, Mike

11:39AM 16   Ballasses was sued by Mr. Choudhri and then

11:40AM 17   Mr. Ballasses filed almost the virtually identical suit

11:40AM 18   to -- in order to get dismissed out of the case,

11:40AM 19   according to, obviously, the statute.  He was successful

11:40AM 20   under the TCPA.  He received attorneys' fees and

11:40AM 21   expenses.

11:40AM 22                So you would think that they would know, at

11:40AM 23   least one would know, that you shouldn't sue lawyers for

11:40AM 24   doing their job.  But apparently, they haven't learned

11:40AM 25   their lesson.

11:40AM 1          So here is where it gets interesting.  So I
11:40AM 2  obtained a copy of it on November 15th.  I called
11:40AM 3  Mr. Pope immediately, who was the only signatory on the
11:40AM 4  petition.  I asked him to dismiss me immediately.  Say,
11:40AM 5  Look, it's a TCPA violation.  What are you doing?
11:40AM 6          And he said, I can't right now.  I'll give
11:40AM 7  you a call in the morning.  I said, You have until 10:00
11:40AM 8  a.m. the following morning to dismiss me with prejudice.
11:40AM 9  And he said, Okay.  I'll get back to you.  I'll get back
11:40AM 10 to you.
11:40AM 11         We have witnesses.  I have entire group of
11:40AM 12 us.  We don't tape record conversations between
11:40AM 13 attorneys, but we had more than one attorney in the
11:41AM 14 room.
11:41AM 15         On November 15th, I called him again, and
11:41AM 16 confirmed that he had signed the amended petition.  I
11:41AM 17 asked him to reconsider, and he said he would get back
11:41AM 18 to me.
11:41AM 19         On November 16th, I contacted Mr. Pope --
11:41AM 20 actually, I contacted Mr. Pope.  Mr. Pope called me on
11:41AM 21 11/15.  He confirmed that he would not reconsider adding
11:41AM 22 me as a -- as a defendant.  He said that he, quote, I
11:41AM 23 stand by filing it, in reference to the amended
11:41AM 24 petition.  And clearly, he was not willing to dismiss me
11:41AM 25 with prejudice, which is the outcome under the TCPA.  In

11:41AM 1   other words, that is the -- the remedy that I get under

11:41AM 2   the TCPA.

11:41AM 3           And so I was like, All right.  So we went

11:41AM 4   ahead.  We worked through the night.  We had also

11:41AM 5   notified -- there are two instances -- so with regards

11:41AM 6   to certain issues, we believe we have to notify our

11:41AM 7   carrier with regard to being sued for $50 million, which

11:41AM 8   is what he sued me for, which is a little bit more than

11:42AM 9   my net worth, Judge, just to be honest with you, so we

11:42AM 10  were a little concerned, and so we went ahead and we

11:42AM 11  filed our TCPA motion.

11:42AM 12          However, I -- we were just going to go

11:42AM 13  ahead and, kind of, working through any of this, and

11:42AM 14  Mr. Pope e-mails me, basically, at about three -- I said

11:42AM 15  2:35, and he said -- we actually called the Court at

11:42AM 16  2:00, got a date from the clerk, saying, I asked for a

11:42AM 17  date of more than 21 but less than 60 days to get a

11:42AM 18  hearing on my TCPA motion.  She provided me -- was kind

11:42AM 19  enough to provide me with December 12th.  I accepted

11:42AM 20  that.  And then I sent the notice of the filing of our

11:42AM 21  TCPA motion, haven't yet filed it, Judge, but I sent the

11:42AM 22  notice to opposing counsel at 2:00.

11:42AM 23          So at 3:43 p.m., or sorry, 35 minutes

11:43AM 24  later, I received an e-mail from Mr. Pope saying I am

11:43AM 25  amending the petition in this case to remove you both as

11:43AM   1    named Defendants.  He did not, however, indicate that he

11:43AM   2    was going to remove me with prejudice, which is what I

11:43AM   3    insisted that he do.  So he didn't do that.

11:43AM   4              Eight minutes later, I went ahead and filed

11:43AM   5    my TCPA motion that we had already lined up to be filed

11:43AM   6    anyway.  It was filed at 3:43 on November 16th, and I

11:43AM   7    acted in my legal capacity.  In all of these instances,

11:43AM   8    I never acted in my personal capacity, but now I'm

11:43AM   9    representing -- in my legal a capacity, actually,

11:43AM  10    representing myself.

11:43AM  11              At 5:08, so it was long after, Galleria

11:43AM  12    2425 filed its second amended petition, an emergency

11:43AM  13    application for temporary restraining order, purportedly

11:43AM  14    removing me as a defendant.  The second amended

11:43AM  15    petition, however, did not dismiss me with prejudice

11:43AM  16    pursuant to the CPRC, which is what I insisted on.

11:43AM  17              At 6:10 p.m. -- this is the most important

11:43AM  18    part, Judge -- as 6:10, Galleria 2425 filed the unsworn

11:44AM  19    declaration of Ali Choudhri, and we call it the Choudhri

11:44AM  20    declaration, where he declared under penalty of perjury

11:44AM  21    the accuracy of the facts and events set forth in the

11:44AM  22    amended petition but not in the second amended petition.

11:44AM  23    So he -- actually, he doubled down and actually filed

11:44AM  24    late his facts swearing to in the amended petition,

11:44AM  25    which makes him now liable for whatever they said.

11:44AM 1           Choudhri -- so I continued to represent

11:44AM 2   Ms. Zaheer going forward.

11:44AM 3           So then after that, Judge, we had our

11:44AM 4   motion on file, pursuant to the CPRC, and in it, I want

11:44AM 5   to point out, there has been some bandy about that

11:44AM 6   Mr. Pope accidentally added me to the second amended

11:44AM 7   petition.  In other words, he just simply, Oh, my

11:44AM 8   goodness, he added me to just the named parties.

11:44AM 9   However --

11:44AM 10          THE COURT:  You mean the amended petition,

11:44AM 11  not the second amended petition?

11:44AM 12          MR. DRINNON:  Right.  Correct.  Remember,

11:44AM 13  it's the first amended petition, Judge.

11:44AM 14          THE COURT:  Right.  You had said "second."

11:44AM 15  I just wanted to make sure I am clear on the record.

11:45AM 16          MR. DRINNON:  First amended petition.

11:45AM 17  Second, I'm not in there.  I will candidly admit that.

11:45AM 18          THE COURT:  All right.

11:45AM 19          MR. DRINNON:  But there were 25 mentions of

11:45AM 20  my name, and they have claimed I did as follows.  It

11:45AM 21  says that Drinnon conspired with NBK, and Zaheer and

11:45AM 22  Tang to, quote, create havoc and further disrupted the

11:45AM 23  bankruptcy case, close quote.  That Drinnon acted in

11:45AM 24  direct violation of Judge Manor's temporary injunction

11:45AM 25  by appearing on behalf of Naissance in the bankruptcy

11:45AM 1    proceeding.

11:45AM 2                    As a result of this conspiracy by the

11:45AM 3    Defendants, including me, the emergency status

11:45AM 4    conference requested by NBK resulted in the dismissal of

11:45AM 5    the bankruptcy case.

11:45AM 6                    That Drinnon, quote, works tirelessly to

11:45AM 7    get the bankruptcy dismissed.  That a, quote, backroom

11:45AM 8    deal, closed quote, exists between Zaheer, Drinnon,

11:45AM 9    Tang, and NBK.

11:45AM 10                   Drinnon was involved in the filing of the

11:45AM 11   lawsuit on June 23rd -- 26 of 2023 on behalf of

11:45AM 12   Naissance Galleria, LLC.

11:45AM 13                   Judge, if you recall, I didn't get involved

11:45AM 14   in this case until October 11th of 2023.

11:45AM 15                   So how I could get involved in a case that

11:46AM 16   I hadn't been involved in yet for over four months, I

11:46AM 17   don't know.  Choudhri is still the manager of Naissance,

11:46AM 18   they claim that.  Drinnon's admission that he represents

11:46AM 19   Abdullatif in other matters.  Drinnon is working in

11:46AM 20   concert with NBK, Zaheer, and Tang to seize the building

11:46AM 21   at 2425 West Loop, quote, by any means necessary.

11:46AM 22                   Driving force behind Drinnon's efforts is

11:46AM 23   Abdullatif.  In other words, they're blaming a former

11:46AM 24   client -- or, current client of mine for all of these

11:46AM 25   terrible acts that apparently I am doing or that I have

11:46AM  1   done in the course of representing Zaheer.

11:46AM  2              Drinnon's motion for relief contained many

11:46AM  3   misrepresentations.  So my TCPA motion is a -- I am

11:46AM  4   lying in it, I suppose, or a fallacy.

11:46AM  5              The bankruptcy court dismissed the

11:46AM  6   bankruptcy and corresponding adversary action solely

11:46AM  7   because of Drinnon's motion for relief, which we have

11:46AM  8   proven isn't true.  Choudhri conducted his real estate

11:46AM  9   business through special purpose entities, such as 2425.

11:47AM 10   And that is what allows him to act, not in his

11:47AM 11   individual capacity, it's one of the reasons we're

11:47AM 12   asking for his individual deposition, because he

11:47AM 13   actually signed the -- the -- the verification.

11:47AM 14              He says Choudhri runs Jetall Companies,

11:47AM 15   Inc., to provide -- these are all in his pleadings, by

11:47AM 16   the way.  Choudhri runs Jetall Companies, Inc., to

11:47AM 17   provide management services to entities for the purpose

11:47AM 18   of running real estate investments.  Abdullatif has

11:47AM 19   sponsored litigation against Choudhri in several dozen

11:47AM 20   cases which that is my client.  Abdullatif is financing

11:47AM 21   the litigation expenses of Zaheer in the takeover of

11:47AM 22   2425 Galleria.

11:47AM 23              So the claim is, is that my current client

11:47AM 24   that I represent, Abdullatif, is financing Zaheer, so

11:47AM 25   apparently paying me to finance Zaheer to go ahead and

11:47AM  1    take over the 2425 building.

11:47AM  2                  It says that Drinnon has entered into an

11:47AM  3    enterprise course of action to destroy Choudhri's

11:47AM  4    businesses.

11:47AM  5                  Drinnon is aiming to take possession of the

11:47AM  6    building located at 2425 West Loop.

11:48AM  7                  Drinnon wants to extort money from

11:48AM  8    Choudhri.

11:48AM  9                  Drinnon and his -- or Abdullatif and his

11:48AM  10   associates used firearms to hold Choudhri and his

11:48AM  11   associates hostage.

11:48AM  12                  Abdullatif retained Wayne Dolcefino to

11:48AM  13   publish on the internet a number of hidden pieces on

11:48AM  14   Choudhri.

11:48AM  15                  Abdullatif, with the assistance of Drinnon

11:48AM  16   has made several false claims against Choudhri.

11:48AM  17                  Drinnon tortiously interfered with a

11:48AM  18   contract with NBK causing damages of $50 million.

11:48AM  19                  Drinnon made false accusations about

11:48AM  20   Galleria 2425's ownership assets, management, and

11:48AM  21   decision-making abilities.

11:48AM  22                  Drinnon has conspired to interfere with

11:48AM  23   Galleria's 2425 bankruptcy case.

11:48AM  24                  And, Judge, apparently, I have done all

11:48AM  25   that in 25 days since coming onto this particular case.

| | | |
|---|---|---|
| 11:48AM | 1 | So the issue here, Judge, becomes, I filed |
| 11:48AM | 2 | the TCPA motion.  They're claiming, I think, or at least |
| 11:48AM | 3 | the beginning -- or attempting to claim that because |
| 11:48AM | 4 | they have now nonsuited me through the individual -- the |
| 11:49AM | 5 | second amended complaint where they did take Mr. Tang |
| 11:49AM | 6 | and my's name off of the complaint, going forward, that |
| 11:49AM | 7 | that is a nonsuit.  Regardless if it is or not -- and |
| 11:49AM | 8 | frankly, I don't care, so to be blunt with you -- is |
| 11:49AM | 9 | that *McDonald Oilfield Operations, LLC, v. 3B* |
| 11:49AM | 10 | *Inspection*, it is a case that we gave you last time. |
| 11:49AM | 11 | So, remember, Judge, I handed you a number of cases, |
| 11:49AM | 12 | because I knew what they were going to argue.  It is |
| 11:49AM | 13 | pretty simple.  Is that the TCPA -- holding that a TCPA |
| 11:49AM | 14 | motion to dismiss seeking dismissal with prejudice and |
| 11:49AM | 15 | attorneys' fees, costs and sanctions, constituted a |
| 11:49AM | 16 | pending claim for relief -- for affirmative relief |
| 11:49AM | 17 | within the meaning of Rule 162. |
| 11:49AM | 18 | 162 is basically used when you have a |
| 11:49AM | 19 | motion for summary judgment, for example, if you have -- |
| 11:49AM | 20 | you know, if you file a motion for summary judgment, it |
| 11:49AM | 21 | gets dismissed, it doesn't mean that the counterclaims |
| 11:49AM | 22 | that the other party has don't continue to exist. |
| 11:49AM | 23 | So if we survive, for my claims under the |
| 11:49AM | 24 | TCPA, clearly survive what is happening here, and that |
| 11:50AM | 25 | means that they are subject to statute CPRC 27, et |

11:50AM 1   sequen- -- I am going to quote you a few --

11:50AM 2                THE REPORTER:  I couldn't understand what

11:50AM 3   you said.

11:50AM 4                MR. DRINNON:  Et sequentas.  Sorry.  My

11:50AM 5   Latin was a little rusty.

11:50AM 6                But, going on with regard to those issues,

11:50AM 7   is that now the statute applies.  Okay?  The statute is

11:50AM 8   very, very clear.  It specifically says that I am

11:50AM 9   entitled -- under 27.006, that I am entitled to have

11:50AM 10  reasonable discovery within the limitations going

11:50AM 11  forward.

11:50AM 12               It's not limited to them.  And I'll tell

11:50AM 13  you why in a minute.  It is not limited to them, because

11:50AM 14  I am the movant.  The movant also gets discovery,

11:50AM 15  because he is a party.  That's what it says, any party

11:50AM 16  may seek discovery with regard to these issues.

11:50AM 17               So I am as a party going forward, and I am

11:50AM 18  certainly a party to that motion that's going forward.

11:50AM 19  I am seeking limited discovery from the corporate

11:50AM 20  representative of Galleria 2425, and Mr. Choudhri,

11:51AM 21  individually, who decided to go ahead and post fact go

11:51AM 22  ahead and verify a petition apparently they had already

11:51AM 23  superseded, but he, nevertheless, filed it with regard

11:51AM 24  to the first amended petition.  Which begs the question,

11:51AM 25  I don't even know if the second amended petition is even

11:51AM 1   verified going forward.

11:51AM 2               So in any event, Judge, with regard to

11:51AM 3   those issues, then, it turns back to -- I am going to

11:51AM 4   sit down for a second just to read it.  It is on my

11:51AM 5   computer, Judge.  24.5, 24.005 and 24.006 allow for

11:51AM 6   the -- the discovery of any party, and why it does this,

11:51AM 7   is that I can also have affirmative defenses, so if they

11:51AM 8   bring up, and their standard is that they are going to

11:51AM 9   have to produce, basically, clear evidence -- let me

11:51AM 10  make sure that I have got the standard correct here.

11:51AM 11              They have to provide specific evidence,

11:52AM 12  clear and specific evidence, that a prima facie case for

11:52AM 13  each essential element of the claim in question exists.

11:52AM 14  So they have to do that.

11:52AM 15              But the other part, Judge, is that I can

11:52AM 16  also when or if they try to do that, I can raise

11:52AM 17  affirmative grounds, meaning an affirmative defense, or

11:52AM 18  other grounds on which the moving party is entitled a

11:52AM 19  judgment of law, and that is 27.005(d).  So that gets me

11:52AM 20  there.  So where I need to -- what I want, is that I

11:52AM 21  think I am entitled to discovery to ask why these folks,

11:52AM 22  even in light of the fact that Mr. Choudhri has been

11:52AM 23  censured through Jetall Companies, and that Jetall

11:52AM 24  Companies was put into bankruptcy, or at least there is

11:52AM 25  a bankruptcy motion to where they are seeking to obtain

11:52AM  1   judgment for that on the HREP bankruptcy, is that I am

11:52AM  2   entitled to determine what facts they were basing their

11:52AM  3   claims against me individually, and whether or not they

11:52AM  4   have any evidence that I was acting extracontractually

11:52AM  5   outside of my scope as the legal representation with

11:53AM  6   regard to Ms. Zaheer.

11:53AM  7            Now, Judge, the case law is pretty clear.

11:53AM  8   Those depositions are limited.  And I don't want broad

11:53AM  9   sweeping.  I don't need it.  I have done enough

11:53AM  10  depositions with regard to those issues.  But I need it

11:53AM  11  on these issues.  I need it on the four corners of the

11:53AM  12  allegations that are made inside of the first amended

11:53AM  13  petition and limited to those claims that they have

11:53AM  14  asserted against me and the facts that are allegedly

11:53AM  15  supporting those claims.  Because if he does come up

11:53AM  16  with some clear, convincing evidence, which I -- I would

11:53AM  17  posit is impossible, but if he does, I get the chance to

11:53AM  18  at least have the evidence on the other side of that.

11:53AM  19            And, Judge, I am asking you to do this,

11:53AM  20  obviously, before December 12th.  Now that Mr. Choudhri

11:53AM  21  has become a party, this actually makes it a little bit

11:53AM  22  easier.  We have had terrible times going ahead and

11:53AM  23  serving Mr. Choudhri with subpoenas in the past.

11:53AM  24  There's a lot of other issues I can go into with

11:53AM  25  Judge -- well, we will get to that afterwards, but we

11:53AM 1    don't need to serve him anymore because now he is a

11:54AM 2    party.

11:54AM 3              So my whole issue, Judge, is that he has

11:54AM 4    now submitted himself to the authority of the Court, and

11:54AM 5    you can order, I would request, two three-hour

11:54AM 6    depositions for the corporate representative, and they

11:54AM 7    have to identify who it is at least three days in

11:54AM 8    advance, and then Mr. Choudhri for three hours.  If they

11:54AM 9    are going to make Mr. Choudhri both, then it's six hours

11:54AM 10   with Mr. Choudhri.  That's the way it goes.

11:54AM 11             Now, I have also moved for the deposition

11:54AM 12   of Mr. Pope.

11:54AM 13             THE COURT:  Why do you need three hours on

11:54AM 14   something where you're saying it's a very, very limited

11:54AM 15   and narrow deposition?  I don't understand why you

11:54AM 16   necessarily would need three hours, assuming that

11:54AM 17   Mr. Choudhri was going to sit for the corporate

11:54AM 18   representative as well -- for Galleria 2425, because he

11:54AM 19   has previously testified as corporate representative of

11:54AM 20   Galleria 2425, why would you need six hours with him on

11:54AM 21   what you're telling me and you're asserting to the Court

11:54AM 22   is a very limited deposition?

11:54AM 23             MR. DRINNON:  Well, it's a limited

11:54AM 24   deposition limited to the facts that he's alleged

11:54AM 25   against me in that thing.  Have you seen how many

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

11:54AM 1    lawyers he has?

11:55AM 2                    THE COURT:  I'm aware.

11:55AM 3                    MR. DRINNON:  Okay.  So the whole point of

11:55AM 4    it, Judge, is that I have done these a few times, maybe,

11:55AM 5    15 or 16.  And one, there will be questions, and,

11:55AM 6    frankly, I would ask to be able to do it in the jury

11:55AM 7    room, because there will be questions that he won't

11:55AM 8    answer.  He will be evasive.  There will be umpteen

11:55AM 9    objections from umpteen lawyers with regard to going

11:55AM 10   forward.  They will make a spectacle of it, and all I

11:55AM 11   want to do is get to the facts.

11:55AM 12                   So my issue, Judge, is if you want to start

11:55AM 13   with three hours total, great.  You can make -- you can

11:55AM 14   be the judge.  We can do it in your ready room.  We will

11:55AM 15   do it anywhere you want.

11:55AM 16                   THE COURT:  I get to be the judge because I

11:55AM 17   am the judge.

11:55AM 18                   MR. DRINNON:  No, no, no.  You can be the

11:55AM 19   judge of whether or not I need more -- three or more

11:55AM 20   hours because, even as a layperson, you would be able

11:55AM 21   to understand why.  What I am saying here, is that,

11:55AM 22   Judge -- you're elected, Judge, I mean, we're good.  But

11:55AM 23   the whole point of it is, is that -- is that all I am

11:55AM 24   asking for is if they are going to sue lawyers, and they

11:55AM 25   are going to keep suing lawyers -- so, now, Judge, you

11:55AM  1  know we're getting in to where, you're repeatedly suing
11:56AM  2  people that have sued you over and over and over again.
11:56AM  3  And now, it's, basically, a threat --
11:56AM  4          THE COURT:  Okay.  But the issue -- okay.
11:56AM  5  So but you, also, want to take Mr. Pope's deposition,
11:56AM  6  and I think the hard part that we get into there is, how
11:56AM  7  do we not get into a whole lot of work product privilege
11:56AM  8  issues?
11:56AM  9          MR. DRINNON:  And that's what -- I was
11:56AM  10  about to address that, Judge.  With regard to Mr. Pope,
11:56AM  11  I would put off on that until after we have the
11:56AM  12  depositions with regard to either Mr. Choudhri, or
11:56AM  13  whoever the corporate representative of 2425 is with
11:56AM  14  regard to those issues.  And if it turns out that he
11:56AM  15  doesn't have any evidence with regard to those issues, I
11:56AM  16  don't need Mr. Pope.
11:56AM  17          But the whole point of this is this, Judge.
11:56AM  18  If he comes in there and he says, I didn't tell James
11:56AM  19  Pope to write that, then I got a problem.  So then we
11:56AM  20  will come back to you.  But my issue is, is that I just
11:56AM  21  want to know, because I have been doing this now for,
11:56AM  22  you know, you have seen my motion, I have been doing
11:56AM  23  this now for 12 years.  He has never sued me, and I have
11:56AM  24  respected that.  They have never brought suit against me
11:56AM  25  individually, but when they did it this time -- you

11:56AM  1  know, and we are getting down to, you know, desperation

11:57AM  2  time, I think, you can't start suing lawyers, because

11:57AM  3  you put my family at risk.  You put my firm at risk.

11:57AM  4  You put my profession at risk.  And you put me at risk.

11:57AM  5  And he has got to stop that, and that's what the TCPA is

11:57AM  6  designed to do.  I get limited discovery, Judge.  I am

11:57AM  7  not asking for the world.

11:57AM  8           THE COURT:  All right.  Mr. Adrogué.

11:57AM  9           MR. ADROGUÉ:  Yes, Your Honor.  He got into

11:57AM  10  a lot of things I don't -- I didn't think he would, but

11:57AM  11  let me address some of them.

11:57AM  12           With regard to the whole bankruptcy thing,

11:57AM  13  Judge Manor signed the TI saying that anything he did as

11:57AM  14  manager of that -- the Naissance Galleria that his

11:57AM  15  client would have to prove.  That's important, I keep

11:57AM  16  bringing that up, because as you know last time we were

11:57AM  17  here on Wednesday before Thanksgiving, the bankruptcy

11:57AM  18  attorney Melissa explained to you that Mr. Tang and this

11:58AM  19  gentleman filed petitions in federal court saying they

11:58AM  20  represent Naissance Galleria, which that, along with

11:58AM  21  some other things, ended up getting the bankruptcy

11:58AM  22  dismissed.

11:58AM  23           We told Judge Manor about it.  And Judge

11:58AM  24  Manor said, No, he's in charge, but he has to do

11:58AM  25  everything confirming with by them.  So I think that is

11:58AM 1  an important point that I want to make sure we're clear.

11:58AM 2  That's Number 1.

11:58AM 3           Number 2, the lawsuit included Drinnon and

11:58AM 4  Tang was filed on 11/14, okay, around 8:00 p.m.  And

11:58AM 5  they apparently had conversations, which I wasn't privy

11:58AM 6  the to, but I do have the e-mail here, on 11/16 at 3:35

11:58AM 7  p.m., and James Pope sends an e-mail to David and

11:58AM 8  Rodney, and this is attached as an exhibit to my motion.

11:58AM 9           "I have talked with Rodney earlier today,

11:58AM 10 but did not get a chance to speak to David.  I am

11:58AM 11 amending the petition in this case to remove you both as

11:58AM 12 named defendants.  I am working on the amendment now and

11:59AM 13 will have it filed as soon as possible."

11:59AM 14           So Mr. Pope tells both of them, I spoke to

11:59AM 15 Rodney, and I told him I am amending the petition, so,

11:59AM 16 hey, everyone, essentially, cool their jets, a lawsuit

11:59AM 17 is there.  This is important.  They were added in the

11:59AM 18 lawsuit, apparently, in the back section.  They are

11:59AM 19 saying -- citation was never requested and, obviously,

11:59AM 20 service was never attempted.  Okay?

11:59AM 21           So, then at 3:43, Drinnon files his TCPA

11:59AM 22 motion, and then an hour and 25 minutes later, Counsel

11:59AM 23 Pope removes Drinnon and Tang from the petition.  And

11:59AM 24 under Rule 162, and there's a lot of case law we cited,

11:59AM 25 when you amend a petition, it's equivalent to a nonsuit,

11:59AM 1  and in my motion I put in there, Your Honor, Texas

11:59AM 2  Supreme Court, 2011, it says, when a court signs an

12:00PM 3  order granting a nonsuit, it is just an administerial

12:00PM 4  act.  That is *Klein v. Hernandez*, Texas, 2010.

12:00PM 5            So, as of November 16th at 5:08 p.m., they

12:00PM 6  are not parties to the lawsuit.  Citations were never

12:00PM 7  requested.  They never were served.

12:00PM 8            So now, our position strongly has been

12:00PM 9  before Thanksgiving, and still, they're not part of the

12:00PM 10 lawsuit.  So now the question is, well, they filed this

12:00PM 11 motion seeking affirmative relief.  Why shouldn't that

12:00PM 12 be heard?

12:00PM 13           There is a Verizon Del, Inc., that says --

12:00PM 14           THE COURT:  What case do you have that says

12:00PM 15 that just taking them off of a pleading constitutes a

12:00PM 16 nonsuit?

12:00PM 17           MR. ADROGUÉ:  I have several, Your Honor.

12:00PM 18 It's in my motion.  A removal --

12:00PM 19           THE COURT:  You mean your response?

12:00PM 20           MR. ADROGUÉ:  In my response.  On page 3,

12:00PM 21 and starting on paragraph 8, it starts there, omitting a

12:00PM 22 party from an amended petition effectually nonsuits the

12:00PM 23 party, *Randolph v. Jackson Walker,* 29 S.W.3rd 271, Court

12:01PM 24 of Appeals 14, 2000.

12:01PM 25           And then below that, in Paragraph 9 and 10,

12:01PM  1  there is Texas Supreme Court cases.  Removal of a party

12:01PM  2  in an amended petition is indicative of an intention to

12:01PM  3  nonsuit the removed party, *American Petrofina, Inc.,*

12:01PM  4  *v. --*

12:01PM  5          THE COURT:  What is your response to the

12:01PM  6  fact he already filed his anti-SLAPP motion?

12:01PM  7          MR. ADROGUÉ:  My response is this --

12:01PM  8          THE COURT:  Your anti-- I think it is --

12:01PM  9  my understanding is that with anti-SLAPP, it survives

12:01PM 10  you nonsuiting.  You don't get to get around an

12:01PM 11  anti-SLAPP by just nonsuiting a case.

12:01PM 12          MR. ADROGUÉ:  Well, but if you -- what he

12:01PM 13  is seeking is a dismissal of the suit.  That's already

12:01PM 14  been -- that has already happened.

12:01PM 15          So the question is:  What is there, if

12:01PM 16  anything, to do?  There is a case *Verizon Del, Inc. v.*

12:01PM 17  *Covad Comms,* 377 F.3rd, Ninth Circuit, 2004, it says --

12:01PM 18          THE COURT:  What do have you got in Texas?

12:01PM 19          MR. ADROGUÉ:  I understand that, but I

12:02PM 20  think this gives a us a lot of guidance.

12:02PM 21          THE COURT:  No.  I am asking you what you

12:02PM 22  got in Texas.

12:02PM 23          MR. ADROGUÉ:  I think it is applying Texas

12:02PM 24  law.

12:02PM 25          THE COURT:  All right.  What is the case

12:02PM 1  again?

12:02PM 2           MR. ADROGUÉ:  *Verizon Del, Inc., v. Covad*

12:02PM 3  *Comms*, and it's 377 F.3d 1081, page 1091.

12:02PM 4           And it states, in part, a plaintiff who

12:02PM 5  amends to delete any cause of action after an anti-SLAPP

12:02PM 6  motion has been filed will become liable for attorneys'

12:02PM 7  fees and sanctions attributable to the action.

12:02PM 8           So if anything is going to be considered,

12:02PM 9  is going to be any attorneys' fees and sanctions, if

12:02PM 10 necessary, for that one hour and 25 minutes that -- for

12:02PM 11 one hour and 25 minutes that his motion was filed, and

12:03PM 12 they were removed from the lawsuit.  But most

12:03PM 13 importantly is, Mr. Pope spoke to him on the phone, or I

12:03PM 14 think on the phone, and said, I am going to amend the

12:03PM 15 petition and remove you, and he did that.

12:03PM 16           And so it appears that Mr. Drinnon is --

12:03PM 17 just wants to jump on this TCPA wagon when it's

12:03PM 18 important to say he was -- citation, none of that was

12:03PM 19 sought.  If they really wanted to go after him, they

12:03PM 20 would have requested citation and moved forward.

12:03PM 21           THE COURT:  But the second you sue

12:03PM 22 somebody, that becomes a public record.  So, I mean, you

12:03PM 23 don't have to serve people.  People agree to waive

12:03PM 24 service all the time.  People make appearances without

12:03PM 25 ever being served in lawsuits.

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

12:03PM 1            MR. ADROGUÉ:  Your Honor, as you know, just

12:03PM 2    because you file a lawsuit, you make a claim, doesn't --

12:03PM 3    people get sued all the time, Your Honor.  Just because

12:03PM 4    it is public record, what does that mean?

12:03PM 5            THE COURT:  It means that you literally

12:03PM 6    have sued someone.  You've paid money to add someone to

12:03PM 7    a lawsuit.

12:03PM 8            MR. ADROGUÉ:  But an hour and 25 minutes

12:03PM 9    later, I mean, the case was dismissed.

12:04PM 10           THE COURT:  Right.  But he still -- I mean,

12:04PM 11   he still had to do things in response to that.

12:04PM 12           MR. ADROGUÉ:  But not -- Your Honor, I

12:04PM 13   don't think he has a right, when this lawyer tells him,

12:04PM 14   I am amending the petition, I am taking you out of the

12:04PM 15   lawsuit, eight minutes after that e-mail, he decides to

12:04PM 16   file the anti-SLAPP.  And that is --

12:04PM 17           THE COURT:  What I am looking at,

12:04PM 18   regardless of what they negotiated or agreed upon, at

12:04PM 19   the end of the day, what am I looking at?  I am looking

12:04PM 20   at lawsuit was filed and they remained a party.

12:04PM 21           MR. ADROGUÉ:  And dismissed.

12:04PM 22           THE COURT:  He filed the anti-SLAPP

12:04PM 23   motion --

12:04PM 24           MR. ADROGUÉ:  Yes.

12:04PM 25           THE COURT:  -- and then he was dismissed --

12:04PM 1  I will say this.  A petition was filed that left him off

12:04PM 2  of it.  So if I just look at that, which is -- I mean --

12:04PM 3              MR. ADROGUÉ:  He is not part of the lawsuit

12:04PM 4  anymore.

12:04PM 5              THE COURT:  But he is at the time he filed

12:04PM 6  his anti-SLAPP motion.

12:04PM 7              MR. ADROGUÉ:  Yes, but as we stated in

12:04PM 8  the --

12:04PM 9              THE COURT:  So, yes is the answer.  At the

12:04PM 10 time he filed the anti-SLAPP motion, he's still part of

12:04PM 11 the lawsuit.

12:04PM 12             MR. ADROGUÉ:  Yes.

12:04PM 13             THE COURT:  So regardless of what they

12:04PM 14 agreed upon -- because you will admit that if Mr. Pope

12:05PM 15 never filed -- Mr. Pope could have sent that e-mail, but

12:05PM 16 he could have never filed that amended petition, right?

12:05PM 17             MR. ADROGUÉ:  Then he is still part of the

12:05PM 18 lawsuit.

12:05PM 19             THE COURT:  Right.

12:05PM 20             MR. ADROGUÉ:  But he --

12:05PM 21             THE COURT:  Right.  So but he has a right

12:05PM 22 until that petition was filed.

12:05PM 23             MR. ADROGUÉ:  Right.

12:05PM 24             THE COURT:  And we want to say that the

12:05PM 25 amended petition that took his name off of it

12:05PM 1    constitutes a dismissal, at the time he filed his

12:05PM 2    anti-SLAPP motion, he's still in the lawsuit.

12:05PM 3                MR. ADROGUÉ:  That is fine, but now he is

12:05PM 4    not part of the lawsuit.  And something he misstated --

12:05PM 5                THE COURT:  Right.  But an anti-SLAPP --

12:05PM 6    what case law do you have that an anti-SLAPP survives a

12:05PM 7    dismissal that's in Texas?  Because the case you cited

12:05PM 8    to was a federal case in California.  I want a Texas

12:05PM 9    case that applies Texas law.

12:05PM 10               MS. MACGEORGE:  Your Honor, the anti-SLAPP

12:05PM 11   motion itself can survive the nonsuit.  However, the

12:05PM 12   merits of our underlying cause of action are mooted.

12:05PM 13   And I have a case, *Mobley v. Mobley* out of the Texas --

12:05PM 14               THE COURT:  We aren't talking about the

12:05PM 15   merits of your underlying cause of action against him.

12:05PM 16   We are literally talking about the anti-SLAPP motion

12:06PM 17   that he filed.

12:06PM 18               MR. ADROGUÉ:  That goes into exactly what

12:06PM 19   she is saying, is that there is no cause of action

12:06PM 20   against him, so what discovery, if any, is he going to

12:06PM 21   get?  Moreover, he mischaracterizes to the Court with

12:06PM 22   regards to this verification that my client signed.  The

12:06PM 23   one he signed, the unsworn declaration of Ali says, I

12:06PM 24   here swear that the plaintiff's first amended petition

12:06PM 25   and emergency application is correct.  The one filed on

12:06PM 1 November 16th.  So my client swore to everything filed

12:06PM 2 on November 16th petition, which removed them from the

12:06PM 3 lawsuit.  So that's what he's not telling this Court.

12:06PM 4 He swore to an affidavit for a November 16th petition,

12:06PM 5 and this was filed on 11/16 at 6:02 p.m.

12:06PM 6             THE COURT:  I mean, you do kind of throw it

12:06PM 7 into a flux because he doesn't refer to the second

12:06PM 8 amended petition.

12:06PM 9             MR. ADROGUÉ:  He doesn't, because there was

12:06PM 10 no -- despite what he thinks, there was no ill intent.

12:06PM 11 There was a miscommunication.  They were in, and they

12:06PM 12 were out.  Citation was never --

12:06PM 13             THE COURT:  Right.  I know, but you admit

12:06PM 14 that, like, it should have said second amended petition.

12:07PM 15             MR. ADROGUÉ:  I don't -- yes, Your Honor,

12:07PM 16 I'm sorry.  I didn't mean to interrupt.  I agree.  I

12:07PM 17 think that --

12:07PM 18             MR. POPE:  If I may, Your Honor.

12:07PM 19             MR. ADROGUÉ:  -- the labeling of these

12:07PM 20 pleadings should be a little bit better.

12:07PM 21             MR. POPE:  If I may.

12:07PM 22             MR. ADROGUÉ:  Yes.

12:07PM 23             MR. DRINNON:  Judge, how many lawyers are

12:07PM 24 we going to have going?

12:07PM 25             THE COURT:  He has hired all of these

12:07PM 1  lawyers, and they're all licensed.  I mean, the same way

12:07PM 2  Mr. Conrad brought a team of lawyers, you could have

12:07PM 3  brought anybody you wanted to come hang out with you,

12:07PM 4  Mr. Drinnon.  I am going to allow Mr. Pope an

12:07PM 5  opportunity to speak here.

12:07PM 6           MR. POPE:  Thank you, Your Honor.  Just to

12:07PM 7  clear up a couple of things.  The naming of second

12:07PM 8  amended petition is a term of art that we are calling

12:07PM 9  that petition.  It doesn't have the words "second

12:07PM 10 amended petition" on the name of that document, so the

12:07PM 11 unsworn declaration has the same name as the document so

12:07PM 12 there isn't any confusion.

12:07PM 13          This is, actually, probably the fourth

12:07PM 14 amended petition, but for whatever reason, they have

12:07PM 15 elected to call it the second amended petition, and we

12:07PM 16 just keep going with that so we are not confused about

12:07PM 17 which one we are talking about.  So if we are being

12:07PM 18 technical this is not even the second amended, so the

12:07PM 19 unsworn declaration made a point to reference the title

12:08PM 20 of the document at the time, so when you're looking at

12:08PM 21 the document with the timestamp, you know which one he

12:08PM 22 is declaring about.

12:08PM 23          I wanted to clear that up so that we -- the

12:08PM 24 second amended petition was months ago.  This was a

12:08PM 25 fourth amended petition that we are referring to as a

12:08PM  1   second amended petition.

12:08PM  2               THE COURT:  Well, then, to your credit, you

12:08PM  3   need to keep putting the dates you file things, because

12:08PM  4   the whole reason we title things is to alleviate

12:08PM  5   confusion.

12:08PM  6               MR. POPE:  Understood, Your Honor.

12:08PM  7               THE COURT:  And it sounds like you are just

12:08PM  8   drumming it up and causing more of it.  So to your

12:08PM  9   credit by putting the file date on it, but it appears

12:08PM 10   that that's what was intended.  The unsworn affidavit --

12:08PM 11   the unsworn declaration of Mr. Choudhri goes to the

12:08PM 12   second amended petition.

12:08PM 13               MR. POPE:  And if I could provide some more

12:08PM 14   clarity and maybe move us --

12:08PM 15               THE COURT:  I don't know.  Maybe, you can.

12:08PM 16   Let's see.

12:08PM 17               MR. POPE:  We are arguing the TCPA, which

12:08PM 18   is not set until the 12th.  What we are here for

12:08PM 19   today --

12:08PM 20               THE COURT:  Is whether or not he gets to do

12:08PM 21   discovery.

12:08PM 22               MR. POPE:  -- is whether or not he can do

12:08PM 23   discovery, and what we're not talking about is the

12:08PM 24   standards that there be good cause.  There has been no

12:08PM 25   good cause shown for him to have discovery here today.

12:08PM 1   And generally, when that discovery is issued in these

12:08PM 2   type of situations, it's for the nonmovant so we can

12:09PM 3   reply to the TCPA motion.  That's what we should be

12:09PM 4   discussing.  Not the TCPA motion.  That's on December

12:09PM 5   12th.

12:09PM 6           We are getting lost in the cloud of the

12:09PM 7   TCPA, and we will all have an opportunity to inform this

12:09PM 8   Court and wow you with all of our legal arguments on the

12:09PM 9   12th of December.  However, for today, the emergency

12:09PM 10  motion to compel discovery should be denied, because,

12:09PM 11  one, there is no emergency.

12:09PM 12          The emergency was created by him imposing a

12:09PM 13  hearing date before he even filed his motion on a date

12:09PM 14  that was entirely too close when he had two months he

12:09PM 15  could have pushed that out.  So he picked an earlier

12:09PM 16  date to create an emergency to get him here today.  That

12:09PM 17  is Number 1.

12:09PM 18          Number 2 is, there is no good cause shown

12:09PM 19  as to why he needs a deposition.  There is no cause

12:09PM 20  shown maybe, why we may need one, and the case law will

12:09PM 21  show that the nonmovant is generally the party who has

12:09PM 22  the depositions.  So the request should simply be

12:09PM 23  denied, and we can argue the rest of this TCPA motion on

12:09PM 24  the 12th.  And if we are to resume conversations, we

12:10PM 25  should be limited to the emergency motion to conduct

12:10PM 1    discovery that is before the Court today.

12:10PM 2              MS. MACGEORGE:  And, Your Honor, if I may

12:10PM 3    direct you, in our motion response in Section B,

12:10PM 4    beginning on page 4 at paragraph 15, this is where the

12:10PM 5    arguments begin for what Mr. Pope was just laying out

12:10PM 6    for the Court.

12:10PM 7              In the TCPA motion, it's a lot like a no

12:10PM 8    evidence motion for summary judgment.  When the movant

12:10PM 9    files it, they have a threshold pleading that they have

12:10PM 10   to establish, and then the burden shifts to the

12:10PM 11   nonmovant to establish the prima facie elements of the

12:10PM 12   merits of their claim.  However, we have now nonsuited

12:10PM 13   Mr. Drinnon, and the merits are also mooted under the

12:10PM 14   *Mobley v. Mobley* case, out of the Texas Court of

12:10PM 15   Appeals.  That is 506 S.W.3d 87.

12:10PM 16             THE COURT:  Is that in your motion?

12:10PM 17             MS. MACGEORGE:  That particular case is not

12:10PM 18   in the motion, but there are many others to support this

12:10PM 19   contention.  So, Mr. Drinnon, as movant, had the

12:11PM 20   responsibility to establish his motion as a

12:11PM 21   preponderance of evidence.  That's the standard he has

12:11PM 22   to meet.  And once he establishes that in his pleadings,

12:11PM 23   then, under *Serafine v. Blunt*, that's 466 S.W.3d 352 at

12:11PM 24   page 357, out of the Texas Court of Appeals in Austin,

12:11PM 25   2015.

12:11PM  1          So when that happens, the burden is going

12:11PM  2    to shift to the nonmovant, and then if you look through

12:11PM  3    the case law, where discovery -- so the TCPA stays all

12:11PM  4    discovery.  It stays discovery on the merits of the

12:11PM  5    underlying cause of action.  If discovery is awarded

12:11PM  6    later on, it is limited -- and this is in Paragraph 21

12:11PM  7    of our response -- it is limited to evidence related to

12:11PM  8    the TCPA motion to dismiss and establishing by the

12:11PM  9    preponderance of the evidence that the legal action is

12:11PM 10    based on, relates to, or is in response to the parties'

12:12PM 11    exercise of the right to petition, which is what Mr.

12:12PM 12    Drinnon pled is being violated in his motion to dismiss.

12:12PM 13          So the movant's burden is easily met by his

12:12PM 14    pleadings, and that -- after that, the burden shifts to

12:12PM 15    us to establish the elements of whatever underlying

12:12PM 16    cause of action we maintain, which right now, we don't

12:12PM 17    maintain one.  So there is no scope of discovery that

12:12PM 18    would be relevant to our underlying merits.  But even

12:12PM 19    so, there is no evidence that he can get from us, that

12:12PM 20    he would need discovery from us, to establish the

12:12PM 21    elements of our cause of action, which is why in

12:12PM 22    Paragraph 19 -- and I did reference it wrong in the

12:12PM 23    motion.  In Paragraph 21, I say that it is Paragraph 18.

12:12PM 24    It is actually 19.

12:12PM 25          So the case law for this in Paragraph 19 is

12:12PM  1   that, normally, the nonmovant seeks discovery under the

12:12PM  2   TCPA, and this happens in the appeals court in Dallas

12:13PM  3   for *In re SPEX Group, U.S., LLC*, and then each time you

12:13PM  4   see a case where limited scope of discovery has been

12:13PM  5   awarded, you can see case after case in Paragraph 19,

12:13PM  6   that it is always the nonmovant that gets the discovery,

12:13PM  7   because it is the nonmovant that carries the burden.

12:13PM  8          So to the extent that Mr. Drinnon is

12:13PM  9   claiming he has some kind of burden to carry that he

12:13PM 10   can't prove without discovery, it is just -- that is not

12:13PM 11   how the TCPA works, and discovery is stayed per the

12:13PM 12   statute under 27.003(c).

12:13PM 13          So in this case, you know -- and we also

12:13PM 14   mentioned that this emergency is wholly self-inflicted.

12:13PM 15   Those arguments are listed beginning at paragraph 26 in

12:13PM 16   our response.

12:13PM 17          But essentially, it's important for this

12:13PM 18   Court to understand that in his pleadings, there is no

12:13PM 19   good cause shown.  He has to show good cause under the

12:14PM 20   TCPA to get past the stay for discovery.  And there has

12:14PM 21   been no good cause pled or shown here today why Mr.

12:14PM 22   Drinnon, to prove his own attorneys' fees, and to prove

12:14PM 23   that sanctions are awarded, which is what we're limited

12:14PM 24   to, since the case -- the merits of the underlying case

12:14PM 25   have been mooted, so we're limited only to his motion,

12:14PM 1   what survives in his motion is attorneys' fees and

12:14PM 2   sanctions.  And so we're limited to discovery only for

12:14PM 3   attorneys' fees and whether sanctions are imposed, and

12:14PM 4   he can't get attorneys' fees testimony about his

12:14PM 5   attorneys' fees that he has incurred through us.

12:14PM 6           THE COURT:  So do I understand you're

12:14PM 7   saying that you can see that he has made -- he has met

12:14PM 8   his burden of the TCPA, and that you don't have to make

12:14PM 9   a prima facie case, because there is no prima facie case

12:14PM 10  to make because that case is now moot, so literally,

12:14PM 11  we're just going to talk about the issue of what his

12:14PM 12  attorneys' fees are and what the sanctions are?

12:14PM 13          MS. MACGEORGE:  No.  He has to establish

12:14PM 14  good cause under the statute.

12:14PM 15          THE COURT:  Not discovery.  I'm not talking

12:14PM 16  about the discovery.  I'm talking about --

12:14PM 17          MS. MACGEORGE:  He still has to establish

12:14PM 18  his claim that his right to petition was violated.  He

12:14PM 19  still has to prove that.  And he can -- but he can't get

12:15PM 20  discovery from us related to that.  So he does have to

12:15PM 21  prove that his motion is still valid and based in the

12:15PM 22  law, and has, like, an ability to prevail.  If he can't

12:15PM 23  prevail on his motion, because his right to petition, he

12:15PM 24  doesn't prove that his right to petition --

12:15PM 25          THE COURT:  Right.  But do I understand you

12:15PM 1   to say that to the extent the burden shifts to you, if

12:15PM 2   he is able to meet that threshold, you don't make a

12:15PM 3   prima facie case because there is not one for you to

12:15PM 4   make.

12:15PM 5           MS. MACGEORGE:  No.  We would have to

12:15PM 6   establish -- that's our burden to establish that his

12:15PM 7   right to petition was not violated.

12:15PM 8           THE COURT:  No.  You are not listening to

12:15PM 9   me.  What I am asking you is this:  If he meets that

12:15PM 10  threshold, do I understand your position, based on

12:15PM 11  literally what you just said, that you can't make a

12:15PM 12  prima facie case for your cause of action because it is

12:15PM 13  now a moot point because you have allegedly dismissed

12:15PM 14  him?

12:15PM 15          MS. MACGEORGE:  We have dismissed -- we

12:15PM 16  have nonsuited --

12:15PM 17          THE COURT:  Is the answer "yes" or "no"?

12:15PM 18          MS. MACGEORGE:  I am not sure I understand.

12:15PM 19          MR. ADROGUÉ:  You're right.  There is no

12:15PM 20  cause of action.

12:15PM 21          THE COURT:  There is no cause of action for

12:16PM 22  you to make a prima facie case.  So if he makes his --

12:16PM 23  so what you're saying is, if he meets his burden, that

12:16PM 24  is it.

12:16PM 25          MS. MACGEORGE:  If discovery would be

12:16PM  1  allowed in this case --

12:16PM  2            THE COURT:  I am not talking about

12:16PM  3  discovery.  No.  You're not listening to me.  I am

12:16PM  4  talking about a very specific issue based on what you

12:16PM  5  just said.

12:16PM  6            If he makes -- hold on.  Look at me because

12:16PM  7  I am talking to you.  You say you don't understand.  I

12:16PM  8  want to make sure you understand.

12:16PM  9            Do I understand you because of what you

12:16PM 10  just said, that if -- I am not saying he did, not even

12:16PM 11  talking about the need of discovery -- if he makes,

12:16PM 12  right, if he meets his burden to say that what y'all

12:16PM 13  filed, the time you filed it infringes on his abilities,

12:16PM 14  right to petition, right, it would ordinarily shift the

12:16PM 15  burden to you to make a prima facie case, and you are

12:16PM 16  telling me there is not a prima facie case to make

12:16PM 17  because you have dismissed him; is that correct?

12:16PM 18            MS. MACGEORGE:  No.  The burden shifts to

12:16PM 19  us to disprove his TCPA allegations, not -- not the

12:16PM 20  underlying cause of action.  His TCPA is that we

12:17PM 21  violated his rights of petition.  And then, when he

12:17PM 22  establishes by a preponderance of the evidence in his

12:17PM 23  pleadings and evidence that we violated that, that

12:17PM 24  burden to disprove that claim shifts to us.  And we

12:17PM 25  still have to establish that, and that's happening on

12:17PM 1    December 12th.

12:17PM 2              THE COURT:  Well, doesn't that really

12:17PM 3    happen all at the same time, because while he is proving

12:17PM 4    it, you are trying to disprove it, and then this Court

12:17PM 5    is making a determination as to whether or not he's met

12:17PM 6    his preponderance?  I mean, it is not like it happens

12:17PM 7    separately.  He makes his case, you cross, and then if

12:17PM 8    that happens, then it's my understanding under the TCPA,

12:17PM 9    then great.  If he meets that threshold, and by a

12:17PM 10   preponderance of the evidence, then it shifts to you to

12:17PM 11   survive, to say that, Oh, well, we have made a prima

12:17PM 12   facie case of why -- you know, even if it does infringe

12:17PM 13   upon his right to petition, you're saying that you don't

12:17PM 14   have a cause of action to make a prima facie case for.

12:18PM 15             MS. MACGEORGE:  No.  I see the disconnect

12:18PM 16   here.  All of the case law that is related to when the

12:18PM 17   burden shifts all talks about it happening in the

12:18PM 18   pleadings, the pleadings for the motion.  His burden, he

12:18PM 19   can shift it in the pleadings, just like a no evidence

12:18PM 20   motion for summary judgment.  And it even references

12:18PM 21   Texas Rule 166(a) when it talks about the evidence that

12:18PM 22   is required, and how it needs to be presented for the

12:18PM 23   purpose of TCPA.

12:18PM 24             So just like in a no evidence motion for

12:18PM 25   summary judgment, all he has to do is say, Hey, this

12:18PM 1  happened, and then the burden shifts to us, and we have

12:18PM 2  to disprove it.  So, no, I don't believe that the burden

12:18PM 3  shifts simultaneously.

12:18PM 4              MR. DRINNON:  May I finally chime in,

12:18PM 5  Judge?

12:18PM 6              THE COURT:  You may.

12:18PM 7              MR. DRINNON:  She said that, I just

12:18PM 8  admitted that I have met my burden, that's what she

12:18PM 9  said, I think, previously, which I think is important.

12:18PM 10             But the other part is this.  They ignore

12:18PM 11 27.005(d).  27.005(d) says notwithstanding the

12:18PM 12 provisions of subsection C, meaning they have to bring

12:18PM 13 clear and specific evidence of prima facie, the Court

12:19PM 14 shall dismiss a legal action against a moving party if

12:19PM 15 the moving party establishes an affirmative defense or

12:19PM 16 other grounds on which moving party is entitled to

12:19PM 17 judgment as a matter of law.

12:19PM 18             I gave very specific reasons as to why I

12:19PM 19 want this limited discovery.  And very -- and I gave

12:19PM 20 four issues with regard to emergency motions.

12:19PM 21             Now, I am going to get into other claims

12:19PM 22 with regard to other issues.  There have been --

12:19PM 23 Mr. Choudhri has manufactured evidence in the past in

12:19PM 24 other lawsuits, and he has been found liable by a jury

12:19PM 25 and by an arbitration board with regard to those issues.

12:19PM 1          MR. ADROGUÉ:  Objection, relevance.

12:19PM 2          MR. DRINNON:  I am about to give you

12:19PM 3   relevance.  My whole point of it is that the issue here

12:19PM 4   why I need this expedited discovery, is I need to know

12:19PM 5   what information they had fixed right then that they

12:19PM 6   thought that I was liable for, basically, you know, four

12:19PM 7   causes of action with 25 paragraphs worth of pleadings

12:19PM 8   against me.

12:19PM 9          If it is nothing, Judge, then, I would have

12:20PM 10  an affirmative defense even of frivolous lawsuit.  I

12:20PM 11  would have affirmative defenses to get anything else

12:20PM 12  dismissed.  I would have affirmative defense for

12:20PM 13  vexatious litigation.  I would have affirmative defense

12:20PM 14  for fraud.  I would have an affirmative defense for all

12:20PM 15  of these things.

12:20PM 16         So my issue is that the burden keeps

12:20PM 17  shifting.  Like, she is correct.  The burden shifts to

12:20PM 18  them, and it shifts back to me.  So my issue is, I get

12:20PM 19  to know what they are going to say before we come to

12:20PM 20  that hearing.  And all I am asking for, Judge, good

12:20PM 21  Lord, is three hours now, with either the corporate

12:20PM 22  representative, and Mr. Choudhri, with regard to those

12:20PM 23  issues, in your -- in your jury room, to go over what

12:20PM 24  facts they have to support the outrageous claims against

12:20PM 25  me, and that is it.

12:20PM   1          So I don't think -- and why they are

12:20PM   2   fighting so hard is because they lied.  So that's it.

12:20PM   3   So, let's see.  That's all I am asking, Judge, is put

12:20PM   4   their feet to the fire for the first time in a long

12:20PM   5   time, and actually make Choudhri --  Mr. Choudhri, or

12:20PM   6   some corporate representative that they have to get

12:21PM   7   ready, that give me three days of notice who it is --

12:21PM   8          Am I speaking too fast?  Okay.  Sorry.

12:21PM   9          That I know who it is, and I get this over

12:21PM  10   with, because they just don't --  I just don't get

12:21PM  11   attorneys' fees, and I just don't get sanctions, which I

12:21PM  12   think should be probably between 5 and 10 percent of

12:21PM  13   whatever they claimed against me.  But what I get, most

12:21PM  14   importantly, is I get a dismissal with prejudice.

12:21PM  15          In fact, the case that I have, which is

12:21PM  16   *Gaskamp v. WSP USA, Inc.*, which I cited and I handed it

12:21PM  17   to you last week, which is 596 S.W.2d -- or S.W.3d,

12:21PM  18   rather, 457, Houston Division, 2020.  "Motions to

12:21PM  19   dismiss under the Texas Citizens Participation Act

12:21PM  20   survive nonsuit because, unlike a nonsuit, the TCPA

12:21PM  21   motion to dismiss might also allow the movant to obtain

12:21PM  22   a dismissal with prejudice, attorneys' fees, and

12:21PM  23   sanctions."

12:22PM  24          They want to forget that attorneys' fees

12:22PM  25   with prejudice.  Why, Judge?  Because they want to sue

12:22PM  1   me again.  And I am tired of this.  I'm sorry.  I'm

12:22PM  2   frustrated.  I shouldn't be shouting at the Court.  But

12:22PM  3   I'm just tired of this.  So give us our three hours of

12:22PM  4   depositions.  Give us whatever amount of time you think

12:22PM  5   is relevant.  We will limit it to the four corners of

12:22PM  6   the complaint that they issued against me, and let's get

12:22PM  7   on down the road.

12:22PM  8               MR. ADROGUÉ:  Your Honor, brief response.

12:22PM  9               Once he filed -- one second and I'll let

12:22PM 10   you speak.

12:22PM 11               Once he filed that motion, all other

12:22PM 12   discovery is stayed, and the rules and law is clear,

12:22PM 13   which we put in our response.  Any discovery that will

12:22PM 14   be allowed would be limited to his right to petition.

12:22PM 15   What he is asking the Court is he wants to get into the

12:22PM 16   whole merits of the case, and go into everything,

12:22PM 17   when -- when it is not proper, when discovery should

12:22PM 18   only be limited to whether or not he has a right to

12:22PM 19   petition or not.

12:22PM 20               MR. DRINNON:  It is limited to what is set

12:22PM 21   forth in my -- in my -- my motion.  That's not -- it is

12:23PM 22   not limited to what's set forth in the petition.  My

12:23PM 23   motion specifically set out 25 instances where they

12:23PM 24   claim that I was -- I did wrongdoing.  Show me.  Prove

12:23PM 25   it.

12:23PM   1            MR. ADROGUÉ:  Your Honor, one other thing
12:23PM   2  is, I understand that when he filed the motion to
12:23PM   3  dismiss a lawsuit was pending, but his own personal
12:23PM   4  actions has highlighted this lawsuit and everything.
12:23PM   5  He -- he's -- he's made more of an issue of this than it
12:23PM   6  is.  But moreover, he's trying to rush this TCPA in by
12:23PM   7  December 12th.
12:23PM   8            THE COURT:  Well, I mean, the problem with
12:23PM   9  the TCPA is that I have got a limited amount of time to
12:23PM  10  rule on these things.  These things actually kind of
12:23PM  11  have to be rushed.
12:23PM  12            MR. ADROGUÉ:  You can do it up to 120 days.
12:23PM  13            MR. DRINNON:  And I picked the date --
12:23PM  14            MR. ADROGUÉ:  Allow me to speak, Counsel.
12:23PM  15  Case law is they should be set within 60.  There's cases
12:23PM  16  that says 90, even 120 days.  And what he is trying to
12:23PM  17  do, in all candor, is quickly get a bunch of discovery
12:24PM  18  so that he can use this in the other pending lawsuits.
12:24PM  19            MR. DRINNON:  No.  It's about me.  It -- I
12:24PM  20  don't care about the other lawsuits, Judge.  They
12:24PM  21  haven't sued me in the other pending lawsuits.  What I
12:24PM  22  care about is what they claim that I did, and if -- and
12:24PM  23  if you're going to sue me, if you're going to sue me,
12:24PM  24  and you are going to bring me into this, and you are
12:24PM  25  going to put my family into this, and for two days I had

12:24PM 1  to worry about being sued for $50 million, yeah, I might

12:24PM 2  be a little -- little upset.

12:24PM 3               The other part, Judge, is I also called the

12:24PM 4  Court.  I followed exactly your procedures.  I asked

12:24PM 5  your clerk, who was very, very kind to me.  I said

12:24PM 6  between 21 and 60 days, which is what she said, and gave

12:24PM 7  me December 12th.  I very much appreciated it and filed

12:24PM 8  my motion.

12:24PM 9               THE COURT:  But there is already something

12:24PM 10 else.  We already have something else for December 12th.

12:24PM 11 Y'all have something filed for December 12th, right?

12:24PM 12              MR. DRINNON:  Mine won't take long, as long

12:24PM 13 as I have discovery.

12:24PM 14              MR. CHOUDHRI:  Your Honor, if I may?

12:24PM 15              THE COURT:  Just so that you are aware,

12:24PM 16 Mr. Choudhri, I do see your petition has been -- is in

12:24PM 17 here now.  But, to be clear, your petition is just

12:25PM 18 against -- a fraud claim against Azeemeh Zaheer.

12:25PM 19              MR. DRINNON:  It has nothing to do with

12:25PM 20 this, at least --

12:25PM 21              THE COURT:  I'm just telling you that that

12:25PM 22 is your -- that is the extent of your petition.  It

12:25PM 23 doesn't file -- that is all it is.

12:25PM 24              MR. CHOUDHRI:  I understand, Your Honor.  I

12:25PM 25 believe on paragraph -- or on paragraph 13, I have

12:25PM 1    claims against the Bank of Kuwait.

12:25PM 2                THE COURT:  You don't list them as a party.

12:25PM 3    So regardless, if they are not listed as one of the

12:25PM 4    parties, your parties in your petition just say

12:25PM 5    plaintiff, Galleria 2425, Intervenor Ali Choudhri,

12:25PM 6    Defendant Azeemeh Zaheer.

12:25PM 7                MR. CHOUDHRI:  I understand, Your Honor.

12:25PM 8                THE COURT:  That is it.  And your only

12:25PM 9    causes of action is for fraud, and you mention National

12:25PM 10   Bank of Kuwait in Paragraph 13.  You don't have them as

12:25PM 11   a party to your -- to your specific petition.

12:25PM 12               MR. CHOUDHRI:  I understand, Your Honor.  I

12:25PM 13   am happy to fix that.

12:25PM 14               THE COURT:  I'm just telling you what it

12:25PM 15   says.

12:25PM 16               MR. CHOUDHRI:  If I may, Your Honor,

12:25PM 17   address the Court?

12:25PM 18               THE COURT:  About what?

12:25PM 19               MR. CHOUDHRI:  I wanted to respond to some

12:26PM 20   of the things that were said, Your Honor, and Mr.

12:26PM 21   Drinnon has taken about 30 minutes giving background

12:26PM 22   about all these other cases, and fraud, and lying, and

12:26PM 23   his family and all these things.  And I think it is very

12:26PM 24   important for me to -- there is always two sides, and

12:26PM 25   there is a history here.

12:26PM 1          Mr. Drinnon has sued my father, my late

12:26PM 2    father.  He has sued my sister, who is a physician, and

12:26PM 3    her deceased partner, and his kids.  Mr. Drinnon has

12:26PM 4    sponsored litigation with my ex-wife, and brought a

12:26PM 5    lawsuit in Harris County that went on for eight years

12:26PM 6    where I couldn't even get remarried.  And they had

12:26PM 7    injunctions and lis pendens over and over.

12:26PM 8          And, Your Honor, I want you to be aware

12:26PM 9    there is a whole history.  He talks about a HREP, and

12:26PM 10   bankruptcy, and these other cases.  When he says that,

12:26PM 11   it is really important the facts come out.  And I have

12:26PM 12   -- I may not be opposed to discovery and taking his

12:26PM 13   deposition, and if he wants to take my deposition, I am

12:26PM 14   here.  I am in this case.  And I want the facts to come

12:26PM 15   out, Your Honor, because there is a lot of history here,

12:27PM 16   and there's a lot of torture that I went through.

12:27PM 17         And Mr. Drinnon was also taking pictures

12:27PM 18   and videos of people in the courtroom, by the way, okay,

12:27PM 19   to intimidate them.  My mom has been sued.  My father.

12:27PM 20   By the way, he mentioned guys and guns.  This man, Dward

12:27PM 21   Darjean, who has been working for me for 20 years, he

12:27PM 22   came in my office, and his client came to my office with

12:27PM 23   15 guys and guns, in May 2012, a week after I lost my

12:27PM 24   dad.  There is a lot of history here.  There is a lot of

12:27PM 25   rumors that people have heard, but the facts are the

12:27PM 1   facts.

12:27PM 2                   And what Mr. Drinnon isn't telling you is

12:27PM 3   how involved he is, and how many lenders he has

12:27PM 4   contacted.  Why he doesn't want to give communications

12:27PM 5   between the Bank of Kuwait and him is pretty obvious.

12:27PM 6   There is a lot I -- I have become aware of.  I have

12:27PM 7   investigated.  This is -- I haven't sued him for 12

12:27PM 8   years, that is true.  He has been suing me and my family

12:27PM 9   over and over and over again.

12:27PM 10                  And by the way, I also have a witness here

12:27PM 11  who witnessed him telling the jury before closing

12:28PM 12  argument to Google me, and, Your Honor, also, in another

12:28PM 13  case, I have Jim -- Mr. Wetwiska here, who got a

12:28PM 14  mistrial twice from a judge, where he went to the jury

12:28PM 15  and said there is a whole reason -- there is whole Wayne

12:28PM 16  Dolcefino section of Mr. Choudhri.  All you got to do is

12:28PM 17  Google him.  He said that on the record to a jury, Your

12:28PM 18  Honor.  This has to stop.  There is a lot going on here.

12:28PM 19  There is a lot.

12:28PM 20                  By the way, when he talks about fraud and

12:28PM 21  this and that.  Mr. Drinnon, I'm trying to settle a

12:28PM 22  matter with Osama Abdullatif that has been going on for

12:28PM 23  15 years.  Osama Abdullatif and I are in a big dispute

12:28PM 24  and Mr. Drinnon has represented him in countless

12:28PM 25  hearings and countless cases, and when I am talking to

12:28PM  1   him to try to settle, Mr. Osama Abdullatif -- Mr.

12:28PM  2   Drinnon threatened Jim Wetwiska with a bar grievance and

12:28PM  3   a lawsuit, that he was going to file a lawsuit against

12:28PM  4   Mr. Wetwiska.

12:28PM  5            So what they have done is they have

12:28PM  6   intimidated people who are helping me.  They have

12:28PM  7   intimidated people.  He has sponsored litigation.  I can

12:28PM  8   prove it, Your Honor.  He has sponsored litigation.  He

12:29PM  9   has committed barratry.  He has sponsored litigation.

12:29PM 10            MR. DRINNON:  Barratry?

12:29PM 11            MR. CHOUDHRI:  Can I please finish?  I did

12:29PM 12   night interrupt you, Mr. Drinnon.

12:29PM 13            MR. DRINNON:  Oh, no.  I want you to

12:29PM 14   finish.

12:29PM 15            MR. CHOUDHRI:  Please don't interrupt me.

12:29PM 16            MR. DRINNON:  Please finish.

12:29PM 17            MR. CHOUDHRI:  Your Honor, here is an

12:29PM 18   e-mail that he sent to one of my lenders saying that he

12:29PM 19   has a judgment against me individually for $7.5 million.

12:29PM 20   Not true.  That lender is not doing business with me.

12:29PM 21   He has contacted all of my lenders.  He has subpoenaed

12:29PM 22   all of my lenders.

12:29PM 23            Hang on.  By the way, Your Honor, I want

12:29PM 24   you to know something.  What he wants is he has his own

12:29PM 25   motivation.  If you read that TCPA that you have, Your

12:29PM 1   Honor, if you read the proposed order, Line 2, he wants

12:29PM 2   a finding by you to find that I am an alterego of

12:29PM 3   Galleria 2425.  That is his proposed order of TCPA.

12:29PM 4   That is shameless.  It is completely shameless.

12:29PM 5          It's not even in front of you.  But that is

12:29PM 6   what he puts, because he misleads courts and judges.  He

12:29PM 7   thinks judges are not smart, and they're very smart.

12:29PM 8   And you are very fair.  And you read everything.  And

12:30PM 9   there is a lot here, and there is a lot of evidence that

12:30PM 10  is going to come out.  And there is a reason that

12:30PM 11  Pillsbury did not accept -- the registered agent refused

12:30PM 12  to accept a subpoena of communication between Pillsbury

12:30PM 13  and Mr. Drinnon.

12:30PM 14         And Mr. Drinnon talks about October 13th,

12:30PM 15  yet he stands up here and tells you about HREP and all

12:30PM 16  these other cases and how I lied.  Let's put him on the

12:30PM 17  stand, Your Honor, for his emergency relief.  Let's put

12:30PM 18  him on the stand, and I would like to have him sworn in

12:30PM 19  for this TI, because I want the facts to come out.

12:30PM 20         I have been living this nightmare.  He has

12:30PM 21  met with Wayne Dolcefino.  He has hired Wayne Dolcefino

12:30PM 22  to do hit videos about me and intimidate other judges.

12:30PM 23  I have seen judges send Wayne Dolcefino videos on a

12:30PM 24  What's App group message.  That is also improper.

12:30PM 25         MR. DRINNON:  How did he see that?

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

12:30PM 1        MR. CHOUDHRI:  Can I finish, Mr. Drinnon?

12:30PM 2        Mr. Drinnon has actively contacted people I

12:30PM 3  am doing business with.  What he is engaged in is

12:30PM 4  organized crime, is racketeering, is Lanham Act.  Lanham

12:30PM 5  Act is unfair competition.  And that is what he has

12:31PM 6  done, and he has participated in it.

12:31PM 7        And the bazaarest thing, Judge Manor said,

12:31PM 8  I don't understand Mr. Drinnon and Mr. Tang, I don't

12:31PM 9  know why you guys don't want to stop the foreclosure.

12:31PM 10  And by the way, we did go to mediation, we did try to

12:31PM 11  resolve things.  Mr. Drinnon also -- so I just want you

12:31PM 12  to have a timeline real quick.

12:31PM 13        I went to Pakistan and I got married in

12:31PM 14  2010.  I got divorced in 2012.  A week after I lost my

12:31PM 15  dad, I was under attack by Mr. Drinnon and his client.

12:31PM 16  I have affidavits.  I have witnesses in the room that

12:31PM 17  they witnessed these people.  I went through hell.  And

12:31PM 18  they changed the narrative.  They made the narrative

12:31PM 19  against me, and I want the facts to come out, and I am

12:31PM 20  tired because the fact is, is he has bullied everybody.

12:31PM 21        He has intimidated my lawyers.  He has

12:31PM 22  called my lawyers, and recorded my lawyers, and said he

12:31PM 23  was going to file a bar complaint and file a lawsuit

12:31PM 24  against her.  His -- and Mr. Drinnon has my hard drive

12:31PM 25  with all my confidential attorney/client privilege, and

12:31PM 1    I can prove it, Your Honor.  He has it from Chris Wyatt.

12:32PM 2    Chris Wyatt was a paralegal who worked for me and fed

12:32PM 3    him information.  He has my entire hard drive and he

12:32PM 4    should be -- he can represent himself, but he cannot

12:32PM 5    represent any other party, because he should be

12:32PM 6    disqualified.

12:32PM 7           I will be bringing a motion for

12:32PM 8    disqualification of Mr. Drinnon and Mr. Tang.  Mr. Tang

12:32PM 9    represented me in nine cases -- in nine cases.  I

12:32PM 10   have --

12:32PM 11          THE COURT:  Yeah, but you wouldn't be

12:32PM 12   bringing it here, because, apparently, Mr. Tang is not

12:32PM 13   in front of me.  So I feel like we are straying way far.

12:32PM 14          MR. CONRAD:  Actually, that's a perfect

12:32PM 15   segue, and I'm sorry, because you have brought this in.

12:32PM 16          THE COURT:  Hold on.

12:32PM 17          MR. CONRAD:  Look, we have sat here.  This

12:32PM 18   is a pretty discrete issue, and I do agree.  He just

12:32PM 19   filed an amended petition in the 80th court under

12:32PM 20   Naissance Galleria against the National Bank of Kuwait,

12:32PM 21   alleging every single -- almost exactly the carbon copy

12:32PM 22   that's before Your Honor in this court, and set it for

12:32PM 23   hearing at 3:00 today for a TRO.

12:33PM 24          And so there -- I mean, he just said, Look,

12:33PM 25   I can't believe Judge Manor -- that's Judge Manor,

12:33PM  1   right, the 80th court.  Mr. Choudhri just said, like,

12:33PM  2   look, I can't belive they are not, like, you know,

12:33PM  3   trying to stop the foreclosure.  Remember, we were here

12:33PM  4   last week.  I asked them:  Are you filing a TRO?  They

12:33PM  5   went for 45 minutes or so, you know, to try to figure

12:33PM  6   out, are we going to do a TRO, or are we going to do a

12:33PM  7   temporary injunction?  I brought that up, right?

12:33PM  8             They said, all right.  We are going with

12:33PM  9   the TI, and we proceeded.  We did not go forward with

12:33PM  10  the TRO.  So just this morning at, like, 10:00 a.m.

12:33PM  11  right when this hearing started with Mr. Drinnon's

12:33PM  12  motion, they filed us.  And it's the exact same thing.

12:33PM  13  Literally, they just changed Naissance Galleria.  But

12:33PM  14  the relief -- I mean, there are a few different causes

12:33PM  15  of action that are additional in this case, but,

12:33PM  16  literally, I mean, I'm just asking because the Court

12:33PM  17  asked for a status conference on this issue today.  I

12:33PM  18  mean, I think that this is a limited issue.  Obviously,

12:33PM  19  we're not involved with this -- Mr. Drinnon and the

12:34PM  20  issues with the Galleria 2425 on this motion.  But, I

12:34PM  21  think we're getting pretty far afield.  I just wanted to

12:34PM  22  correct some of what Mr. Choudhri just said.

12:34PM  23             MR. ADROGUÉ:  And, Your Honor, we did file

12:34PM  24  that in the 80th because we were in front of Judge

12:34PM  25  Manor -- let me briefly.

12:34PM 1           Naissance Galleria filed that.  We were in

12:34PM 2  front of Judge Manor on Monday, and we were expressing

12:34PM 3  the frustration we were having with not being able to

12:34PM 4  find Azeemeh, who is -- who is hiding in Europe, because

12:34PM 5  she is supposed to work with Ali on Naissance Galleria.

12:34PM 6  And then we said, what can we do?

12:34PM 7           She is, like, well Naissance Galleria, Ali

12:34PM 8  works for Naissance, he can do whatever you want him to

12:34PM 9  do in this court.  And so we decided to file, amend the

12:34PM 10 petition and add the Bank of Kuwait in there, because we

12:34PM 11 are doing everything legally possible.  "We" being

12:34PM 12 Naissance Galleria are doing whatever we can to prevent

12:34PM 13 the foreclosure.

12:34PM 14          And in the petition -- in the petition, it

12:35PM 15 sets forth why we think Naissance Galleria is an

12:35PM 16 affected party by the effect of the foreclosure.  I know

12:35PM 17 counsel is going to disagree with me, and he will argue

12:35PM 18 that.  But that is a true statement, that we did file

12:35PM 19 in the 80th District this morning, and we have a TRO set

12:35PM 20 for this afternoon, because we need to prevent the

12:35PM 21 foreclosure.

12:35PM 22          And, again, just to remind you, Judge, that

12:35PM 23 the bankruptcy was filed, and the bank filed a motion to

12:35PM 24 dismiss in bankruptcy, but that was denied.  So it

12:35PM 25 appeared that a plan was going to be confirmed under

12:35PM 1    Chapter 11 until the Halloween -- well, it is true.  The

12:35PM 2    Halloween motion filed by Naissance Galleria,

12:35PM 3    unauthorized filed, and then they filed a letter to the

12:35PM 4    bankruptcy court.

12:35PM 5              THE COURT:  Have you looked at the

12:35PM 6    temporary injunction, the actual temporary injunction

12:35PM 7    you want the Judge to sign in the 80th?

12:36PM 8              MR. ADROGUÉ:  The temporary restraining

12:36PM 9    order or injunction?

12:36PM 10             THE COURT:  No.  The temporary injunction

12:36PM 11   order.  Have you actually looked at the order?

12:36PM 12             MR. ADROGUÉ:  We have.  Let me see if I can

12:36PM 13   pull it up real quick.

12:36PM 14             THE COURT:  Because it basically -- it's

12:36PM 15   got the style of this case on it.

12:36PM 16             MR. CONRAD:  I can show you some other

12:36PM 17   things that they refer to.  It's a carbon copy.

12:36PM 18             MR. CHOUDHRI:  Your Honor, if I can just

12:36PM 19   address one thing I want to clarify, is that in the

12:36PM 20   80th, Naissance is the party.  In this case, Naissance

12:36PM 21   is not the party.  And we brought -- Naissance brought

12:36PM 22   the process server, and we had a TI set, and the process

12:36PM 23   server that served here, and Judge Manor found that she

12:36PM 24   was dodging service.  Mr. Tang said that it was thrown

12:36PM 25   to her.

12:36PM  1            So the problem we had is, we wanted

12:36PM  2  Ms. Zaheer to be here for this TI, and she has been --

12:36PM  3  she is in Europe, and knew that the hearing was going on

12:37PM  4  in the other court, and that we are trying to serve her.

12:37PM  5            THE COURT:  But ultimately, at the end of

12:37PM  6  the day -- I understand there is a whole lot of related

12:37PM  7  litigation going on, but at the end of the day,

12:37PM  8  Naissance is not before me.

12:37PM  9            MR. CHOUDHRI:  That is correct.  You're

12:37PM 10  absolutely right.

12:37PM 11            THE COURT:  In this case.

12:37PM 12            MR. DRINNON:  Not yet.  Yeah.

12:37PM 13            THE COURT:  Lord.  All right.  Well, at

12:37PM 14  this moment, I can only look -- I am not going to

12:37PM 15  predict the future, and I am not going to guess what

12:37PM 16  anybody is going to do.  I'm just saying, at this

12:37PM 17  second, Naissance is not before me.  They are not a

12:37PM 18  party in front of me.

12:37PM 19            I understand that there is parallel

12:37PM 20  litigation, but ultimately, at the end of the day, I

12:37PM 21  have had an extensive temporary injunction hearing, like

12:37PM 22  a year-and-a-half ago, on this case.

12:37PM 23            MR. CHOUDHRI:  Different matter, Your

12:37PM 24  Honor.  Different circumstance, different situation.

12:37PM 25  And I have the evidence.  And I can --

12:37PM 1          THE COURT:  Ultimately, at the end of the

12:37PM 2 day, the issue with this case, the foreclosure in this

12:37PM 3 case was predicated on Galleria 2425's failure to pay

12:38PM 4 under the note.  And so ultimately, in the -- the

12:38PM 5 original temporary injunction that was awarded, that was

12:38PM 6 why part and parcel of it was that it required Galleria

12:38PM 7 2425 -- and I am being very specific when I am saying

12:38PM 8 this because separate party than you, Mr.  Choudhri --

12:38PM 9 but Galleria 2425 was required to put money into the

12:38PM 10 registry of the Court as well as do all of these things

12:38PM 11 to buy time until we got to a hearing where it

12:38PM 12 miraculously settles because I would not grant a

12:38PM 13 continuance because it was preferentially set.

12:38PM 14          MR. CHOUDHRI:  You are correct.

12:38PM 15          THE COURT:  So I understand what you are

12:38PM 16 saying that you feel like that this is different, but

12:38PM 17 ultimately, ultimately, the issues in this case, I feel

12:38PM 18 like -- and this is this case, the 2023 case, not the

12:38PM 19 2021, 2021 -- 2021 case.  Ultimately, I think the 2023

12:39PM 20 issues still come down to money.  Your damages are

12:39PM 21 monetary.

12:39PM 22          MR. CHOUDHRI:  Your Honor, it's property,

12:39PM 23 and this property is unique.  And it is a different

12:39PM 24 circumstance and I want to just clarify something.

12:39PM 25          THE COURT:  Right now you can't talk about

12:39PM 1  this, because that is not part of your suit.  Your suit

12:39PM 2  is just against Azeemeh.

12:39PM 3              MR. CHOUDHRI:  And the bank for

12:39PM 4  interfering --

12:39PM 5              THE COURT:  But it is not.  And until you

12:39PM 6  correct it, I am telling you right now, what your

12:39PM 7  petition in intervention is for, is a fraud case against

12:39PM 8  Azeemeh Zaheer.  I don't know if I said that right.

12:39PM 9              MR. DRINNON:  Zaheer.

12:39PM 10             THE COURT:  Zaheer.  So that is what it is,

12:39PM 11 and so right now --

12:39PM 12             MR. CHOUDHRI:  I thought I made claims,

12:39PM 13 Your Honor.  I'm sorry.

12:39PM 14             THE COURT:  I am just saying, when you

12:39PM 15 listed who the parties are that you are concerned about,

12:39PM 16 it is Galleria 2425, it is yourself, and it's

12:39PM 17 Ms. Zaheer, and that is it.  So until that is fixed, you

12:39PM 18 don't have a claim against them.  You can say whatever

12:39PM 19 you want, but ultimately, right now you don't have a

12:39PM 20 claim against -- against Galleria -- or against National

12:40PM 21 Bank of Kuwait individually, sir.

12:40PM 22             MR. CHOUDHRI:  Maybe I made a mistake.  I

12:40PM 23 was intervening in the case, and they are in the case,

12:40PM 24 and on paragraph 13, I have made a claim against them

12:40PM 25 for interfering with my interests and my rights against

12:40PM  1    the National Bank of Kuwait.

12:40PM  2              THE COURT:  We need things to be clear

12:40PM  3    here, because, as you can see, when you do not make

12:40PM  4    things clear, confusion happens.  So I'm just telling

12:40PM  5    you, as I read it, I don't read it as a claim against

12:40PM  6    National Bank of Kuwait.  I read it as what you have

12:40PM  7    made a claim against is just Ms. Zaheer.

12:40PM  8              MR. CHOUDHRI:  My understanding, Your

12:40PM  9    Honor, is that it is a conspiracy between Ms. Zaheer --

12:40PM 10              THE COURT:  You didn't plead conspiracy,

12:40PM 11    though.  That is the problem.  Your pleading, your

12:40PM 12    intervention is for fraud, and, I mean, promissory

12:40PM 13    estoppel.  And you literally say here, the word damaged

12:40PM 14    from defendant singular, and all throughout here, it is

12:41PM 15    defendant singular, and so the only defendant that you

12:41PM 16    reference is Azeemeh Zaheer.  So I'm just telling you

12:41PM 17    what the pleading in its very plain language says,

12:41PM 18    Mr. Choudhri.

12:41PM 19              MR. CHOUDHRI:  Is that the last pleading

12:41PM 20    that is filed, Your Honor?

12:41PM 21              THE COURT:  It is the only one that I got

12:41PM 22    in here.

12:41PM 23              MS. MACGEORGE:  And, Your Honor, to

12:41PM 24    clarify, what is -- you know, what is different, it is

12:41PM 25    not just about money in this case.  As with any

12:41PM 1   breach-of-contract claim, you are going to end up having

12:41PM 2   to determine whether a prior breach or excuse is there,

12:41PM 3   right?  And so this is a lender liability case.  This is

12:41PM 4   about whether the lender is doing something that is

12:41PM 5   prohibited under the lender liability laws.  And if that

12:41PM 6   is the case, then there is a prior breach, and there is

12:41PM 7   excuse, and there is all these other things that are

12:41PM 8   brought up in this case.

12:41PM 9           So it is not just about whether -- whether

12:41PM 10  the mortgage payments were paid.  It is also about

12:41PM 11  whether there was actions by the National Bank of

12:41PM 12  Kuwait, and any other parties acting in concert with

12:42PM 13  them, to -- to create a situation where we're excused

12:42PM 14  from performance, where -- where there is damages on our

12:42PM 15  side.

12:42PM 16          MR. CONRAD:  Just real quick.  I know Mr.

12:42PM 17  Drinnon is sitting here waiting for a ruling.

12:42PM 18          THE COURT:  Everybody is waiting for

12:42PM 19  things.  Go head, Mr. Conrad.

12:42PM 20          MR. CONRAD:  Just like, look, you heard

12:42PM 21  this from April to July 5th.  What was new after July?

12:42PM 22  What did they say?  Mr. Wetwiska said:  All we needed

12:42PM 23  was more time.  We will fix it.  Right?  That was the

12:42PM 24  Paul Caldwell issue.  It was the issues about all these

12:42PM 25  people calling me.  Right?  I mean, this is a planned

12:42PM  1  attack that they have constantly.  This is all this is,

12:42PM  2  is a circus that they create, throughout this entire

12:42PM  3  court system, and that is why we're moving for sanctions

12:42PM  4  in order to show cause.  But, I digress.

12:42PM  5           All of this, you know, has been considered

12:42PM  6  with those status conferences that we had before Your

12:42PM  7  Honor repeatedly.  I asked for them, because they were

12:43PM  8  calling -- they had agents or people calling me from six

12:43PM  9  ways from Sunday trying to plant seeds so they could

12:43PM  10  create more evidence, quote/unquote, that the bank was

12:43PM  11  doing something improper.  And I came to your court and

12:43PM  12  said:  What do we do with this?

12:43PM  13           I constantly informed Mr. Wetwiska about

12:43PM  14  all these issues.  There was nothing hiding.  All we

12:43PM  15  wanted was for them to perform the settlement agreement.

12:43PM  16  They didn't.  They have never paid.  They don't pay

12:43PM  17  taxes.  They don't pay anything.  They just want more

12:43PM  18  time.  It is all about leverage.  It is leverage,

12:43PM  19  leverage, leverage.  That is the only thing that they

12:43PM  20  have with respect to -- that is why they want this

12:43PM  21  building.  They have nothing else.

12:43PM  22           These claims, to quote like my grandfather,

12:43PM  23  will fall apart like a two-dollar suitcase as soon as

12:43PM  24  this -- you know, if foreclosure goes forward.  There is

12:43PM  25  no basis whatsoever behind them.

12:43PM   1              MR. POPE:  If I --

12:43PM   2              MR. CONRAD:  Again -- hold on.

12:43PM   3              The key issue right here is that the Court

12:43PM   4    has considered all this, granted them the time, over our

12:43PM   5    objections, you will recall, back in April we said

12:43PM   6    absolutely not.  What is new?  They filed bankruptcy.

12:44PM   7    Guess what?  They got another 90 to 120 days, right?

12:44PM   8    Because of the stay, that is automatic.

12:44PM   9              Yes, we filed a motion to dismiss.  The

12:44PM  10    bankruptcy was dismissed on November 1st at the status

12:44PM  11    conference by Judge Lopez.  I think Your Honor has all

12:44PM  12    the transcripts from those three hearings, and you said

12:44PM  13    you wanted to go back and review all of them.

12:44PM  14              I think it is very clear the reasons and

12:44PM  15    the concerns that he had.  It wasn't about Mr. Tang.  It

12:44PM  16    wasn't about Mr. Drinnon.  There were a litany of other

12:44PM  17    things.  And so what is new?  The only thing that they

12:44PM  18    are asking for here in this whole TI, which we talked

12:44PM  19    about last week, is that their bankruptcy case got

12:44PM  20    dismissed.  That's it.

12:44PM  21              And they didn't appeal it.  And Mr. -- and

12:44PM  22    Ms. Hayward is not here today, which is interesting, but

12:44PM  23    I think -- I digress again, but she didn't file an

12:44PM  24    appeal.

12:44PM  25              If the issue was, look, there is some

12:44PM  1    conspiracy, whatever, what is the damage?  What is the

12:45PM  2    harm?  The harm is that their bankruptcy case got

12:45PM  3    dismissed, right?  That's it.  And that they don't have

12:45PM  4    the stay anymore.  Why didn't they appeal the bankruptcy

12:45PM  5    case?  If all of this was the issue that they have, that

12:45PM  6    Judge Lopez got apparently confused, why not appeal?

12:45PM  7    Why not seek an additional stay from either the district

12:45PM  8    court judge there in federal court, or by Mr. -- or by

12:45PM  9    Judge Lopez in the bankruptcy court.

12:45PM  10            They are coming to you to do this.  There

12:45PM  11   is no basis.  And then they are probably going to go

12:45PM  12   right back and file another bankruptcy again after this.

12:45PM  13            I mean, it -- it never ends.  The only

12:45PM  14   thing that I said last week, again, is it's time to rip

12:45PM  15   the Band-Aid off, because we have to move forward.

12:45PM  16   There is no basis for a claim.  And you're 100 percent

12:45PM  17   right.  What I said about leverage, it is all about

12:45PM  18   money.  These are all money damages.

12:45PM  19            If they want to move forward with their

12:45PM  20   claims, fine.  You know we will tee them up.  We do have

12:45PM  21   those set for hearing on the 12th currently.  And so --

12:45PM  22   but we are going to be filing 91a claims, probably, on

12:45PM  23   these new claims, which are specious, which were flatly

12:46PM  24   ridiculous, honestly.

12:46PM  25            And so they are doing -- like they said it

12:46PM 1  themselves, they are doing everything that they can to

12:46PM 2  stop -- to do the foreclosure, and that is expressly

12:46PM 3  what the Court ordered them not to do.  The Court said

12:46PM 4  the bank can go forward on July 5th, you know, with

12:46PM 5  that -- with the foreclosure until they filed the

12:46PM 6  bankruptcy.

12:46PM 7            One last thing.  Okay?  I am going to put

12:46PM 8  my tinfoil hat on right now, okay, so, just huge ask for

12:46PM 9  us, right?  Remember the July 5th hearing, there was a

12:46PM 10 couple different -- Mr. Tang came.  Mr. Pope was there.

12:46PM 11 Right?  This was the TRO, last ditch attempt to get a

12:46PM 12 TRO by Galleria 2425 and Mr. Pope.

12:46PM 13            Mr. Tang walks in.  Mr. Pope says, Oh,

12:46PM 14 great, who are you?  He's like, I represent Naissance

12:46PM 15 Galleria.  Oh, okay.  Well, you go first, right?

12:46PM 16 Because you're getting -- you are wanting the same thing

12:47PM 17 I want, which is a foreclosure -- I mean, to stop the

12:47PM 18 foreclosure.

12:47PM 19            If they had such a big problem with

12:47PM 20 Mr. Tang advocating on behalf of Naissance Galleria --

12:47PM 21 again, this is the 129th case, but you were the

12:47PM 22 ancillary judge that day, this is with Judge Gomez.

12:47PM 23 Mr. Tang is walking in here.  Mr. Pope is here, he says

12:47PM 24 you go first, because we want the same thing.  I got my

12:47PM 25 tinfoil hat on right now, right?

12:47PM 1              What are we talking about?  You denied

12:47PM 2   that -- on that -- that motion, that TRO.  But now, we

12:47PM 3   have another TRO by Naissance Galleria in the ancillary

12:47PM 4   court at 3:00 p.m. today, but if you sign an order today

12:47PM 5   that says the bank can fore- -- that's our proposed

12:47PM 6   order -- can foreclose on December 5th or any other time

12:47PM 7   after that, I am almost certain, I can't speak -- we

12:47PM 8   will go talk to the ancillary judge but I am pretty

12:47PM 9   sure we're going to go forward with that foreclosure on

12:48PM 10  December 5th.

12:48PM 11             But if you punt this, that's what they

12:48PM 12  want, and that's why I stood up, I'm sorry, Your Honor,

12:48PM 13  and inter- -- and stopped Mr. Drinnon, because I was

12:48PM 14  concerned that it was a tactical decision to string this

12:48PM 15  hearing out today so I couldn't -- we couldn't have an

12:48PM 16  order from Your Honor -- or a ruling from Your Honor.

12:48PM 17  And I am not saying you are going to make a ruling

12:48PM 18  today.  But I think it actually needs to be a ruling

12:48PM 19  today, and it is almost imperative, given these tactics

12:48PM 20  that they are taking, and trying to get a total second

12:48PM 21  bite at the apple, even copying the same proposed order,

12:48PM 22  and filing it in that other case.

12:48PM 23             If that is not a second bite at the apple,

12:48PM 24  I don't know what is.  And so that is why I stood up

12:48PM 25  because I felt like, and it was -- this was a tactical

12:48PM 1  decision to delay this hearing as much as possible, so

12:48PM 2  that other hearing could go forward.

12:48PM 3                    MS. MACGEORGE:  Just to address that, Your

12:48PM 4  Honor --

12:48PM 5                    MR. DRINNON:  Judge, I just want to finish

12:48PM 6  because I want to go.  Is that --

12:48PM 7                    MS. MACGEORGE:  But with --

12:48PM 8                    THE COURT:  Hold on.  I'll let Mr. Drinnon

12:49PM 9  go.

12:49PM 10                   MR. DRINNON:  With all due respect, Judge,

12:49PM 11 I am done.  There is no more arguing about my motion.

12:49PM 12 You have everything that I can possibly tell you, that I

12:49PM 13 have told you.  I have another hearing that I have to

12:49PM 14 actually be at.  I was going to ask to be excused, and,

12:49PM 15 please, if they -- if everybody can make their

12:49PM 16 arguments, I assume you can rule however you are going

12:49PM 17 to rule.  That is fine.  However you want to do it.  But

12:49PM 18 I just want to -- of course, they are going to have to

12:49PM 19 sit through me, and I appreciate that, too.  But I just

12:49PM 20 want to be done, if we are going -- my motion is over.

12:49PM 21 I don't have anything else I can dazzle you with.

12:49PM 22                   THE COURT:  Court denies the motion for

12:49PM 23 emergency discovery.

12:49PM 24                   MR. DRINNON:  Okay.  We will take up the --

12:49PM 25                   MS. MACGEORGE:  Your Honor, we intend to

12:49PM 1  call Mr. Drinnon as a witness during this TI, so we

12:49PM 2  would like to have him sworn in.

12:49PM 3           THE COURT:  You are -- at this point, no.

12:49PM 4  We are going to take a recess and be in recess for about

12:49PM 5  45 minutes.  Now that I know that you are here until

12:50PM 6  3:00 anyway, I need a break.  Take a break.  Let's just

12:50PM 7  say we're in recess until about 1:55.

12:50PM 8           Mr. Drinnon, you are excused.

12:50PM 9           MR. DRINNON:  Thank you.

12:50PM 10          MR. ADROGUÉ:  Your Honor, we have no

12:50PM 11 intention of dragging this on.  We had hoped that TCPA

12:50PM 12 would disappear, so in response to counsel's comment, we

12:50PM 13 are ready to go on the TI.  We have been.  So we

12:50PM 14 didn't --

12:50PM 15          THE COURT:  Let me -- let me look at a few

12:50PM 16 things.  All right.  Y'all are all excused.  Until --

12:50PM 17 the rest of you on the TI come back at 1:45.

12:50PM 18          MR. ALEXANDER:  Your Honor --

12:50PM 19          THE COURT:  Yes.

12:50PM 20          MR. ALEXANDER:  -- my name is Jerry

12:50PM 21 Alexander.  I have something for the Court that I have

12:50PM 22 already given to counsel for the bank.  It deals with

12:50PM 23 the temporary injunction hearing, if you would like to

12:50PM 24 see it.  These are three things.  Thank you.

12:50PM 25          THE COURT:  Thank you.

12:50PM   1              MR. DRINNON:  Off the record, Judge?

12:50PM   2              MS. MACGEORGE:  Your Honor, one last --

12:50PM   3              THE COURT:  This has been handed to -- you

12:50PM   4  have given a copy -- okay.  Y'all have a copy.

12:50PM   5              MR. CONRAD:  Yes.

12:50PM   6              MS. MACGEORGE:  Your Honor, one last issue.

12:50PM   7  Mr. Drinnon was taking photographs and videos from your

12:51PM   8  courtroom this morning of the witness -- of the

12:51PM   9  audience.  And this woman here, and she can testify to

12:51PM  10  it, if you would like, but she -- I think it's an

12:51PM  11  intimidation tactic or at least for the purpose of

12:51PM  12  harassment.

12:51PM  13              MR. DRINNON:  I was actually going to and

12:51PM  14  then --

12:51PM  15              THE COURT REPORTER:  I need you to not

12:51PM  16  speak over --

12:51PM  17              THE COURT:  Everybody needs to stop.

12:51PM  18              MR. DRINNON:  I was going to, Judge, but

12:51PM  19  then I realized there is a specific prohibition against

12:51PM  20  television or taking video.

12:51PM  21              THE COURT:  You cannot take photographs in

12:51PM  22  the courtroom.

12:51PM  23              MR. DRINNON:  That is right, and I didn't.

12:51PM  24              THE COURT:  Can't take video.

12:51PM  25              UNIDENTIFIED SPEAKER:  Your Honor, I

12:51PM 1  witnessed him first taking a photo.  I got up because I

12:51PM 2  didn't know what to do, to which he then smiled,

12:51PM 3  proceeded to follow me with his device, and then sat

12:51PM 4  back down, sent it to somebody, because I saw his

12:51PM 5  motion.  Proceeded to laugh.  Looked back to me.  To

12:51PM 6  first --

12:51PM 7             THE COURT:  I don't even know who you are.

12:51PM 8             UNIDENTIFIED SPEAKER:  I understand, and I

12:51PM 9  don't think he needs to know or anyone, but it is the

12:51PM 10 fact --

12:51PM 11            THE COURT:  If you are going to talk and

12:51PM 12 you are going to be on the record, you are putting

12:51PM 13 yourself -- so now you have to tell us who you are,

12:52PM 14 ma'am.

12:52PM 15            MR. DRINNON:  Yeah, go for it.

12:52PM 16            THE COURT:  Because I don't know who you

12:52PM 17 are, and you are not under oath.  So we are in recess

12:52PM 18 until 1:45.

12:52PM 19            MR. DRINNON:  Thank you.

12:52PM 20            THE COURT:  You are excused, Mr. Drinnon.

12:52PM 21 There should be not photographs.  If I find out there

12:52PM 22 were photographs taken in the courtroom, I will sanction

12:52PM 23 you accordingly.  Do you understand that?

12:52PM 24            MR. DRINNON:  I do.

01:49PM 25 (Proceedings recessed at 12:52 and reconvened at 2:10.)

02:10PM  1          THE COURT:  Y'all can be seated.  I apologize

02:10PM  2  for the delay.  I know you all have places to go.

02:10PM  3  Ultimately, the issue about who controls Naissance is

02:10PM  4  not in front of me, not of my concern, not a party in

02:10PM  5  this case, as I see it right now.  I understand that

02:10PM  6  there are other lawsuits out there involving Naissance

02:10PM  7  that purports to foreclose against Galleria 2425.  None

02:11PM  8  of them are in front of me.  They are in my other

02:11PM  9  courts, not my concern right now.

02:11PM  10 Ultimately, my concern at the end of the day is this

02:11PM  11 case, which is, basically, essentially the same thing as

02:11PM  12 the first case, which is the 2021 action that we -- not

02:11PM  13 litigated to trial, but came very darn close, and we

02:11PM  14 have had multiple hearings about.

02:11PM  15 I have looked at your documents that you provided me,

02:11PM  16 Mr. Alexander.  The arguments you make in your brief

02:11PM  17 appear to me to be a lot of the exact same arguments

02:11PM  18 that were made the first time we argued this in the 2021

02:11PM  19 matter.

02:11PM  20 So all of that seems to relitigate things that were --

02:11PM  21 we did, like, five, ten days of testimony.  I mean,

02:11PM  22 Mr. Choudhri was on the stand extensively when we talked

02:11PM  23 about the first temporary injunction.  We had a very

02:11PM  24 long, very thorough temporary injunction hearing, the

02:12PM  25 first time in the 2021 matter.  I feel like in this

02:12PM 1   case, the 2023 case is essentially the same as the 2021

02:12PM 2   matter with the slightly little additional twist of

02:12PM 3   dealing with Ms. Zaheer, because she was not a party in

02:12PM 4   the 2021 litigation.

02:12PM 5   I don't know what y'all intend to do, or how you intend

02:12PM 6   to do it, but at this point, I don't know -- let me ask

02:12PM 7   you this.  What testimony do you intend to put on?

02:12PM 8                MR. ALEXANDER:  The testimony I would put

02:12PM 9   on would be, I would ask Mr. Wetwiska to come on and

02:12PM 10  talk about some post settlement agreement things that

02:12PM 11  happened.  I would ask --

02:12PM 12               THE COURT:  Are these things I have not

02:12PM 13  already heard?

02:12PM 14               MR. ALEXANDER:  I don't -- you probably

02:12PM 15  have heard those, but we would like a record anyway.

02:12PM 16               THE COURT:  There has been a record every

02:12PM 17  single time we have had a hearing in this case.

02:13PM 18               MR. ALEXANDER:  We would like a record so

02:13PM 19  that if the Court the denies our relief, we could go to

02:13PM 20  another court, the appellate court, and, perhaps, they

02:13PM 21  will give us a stay.

02:13PM 22               I was just -- I was just told that you

02:13PM 23  hadn't heard evidence.  You had heard attorney

02:13PM 24  arguments.

02:13PM 25               THE COURT:  Right.  An attorney who has a

02:13PM 1   duty of candor to the Court.  So if I have to put him

02:13PM 2   under oath every time to make him be truthful to me, we

02:13PM 3   have a bigger problem here.  Do you agree with me,

02:13PM 4   Ms. MacGeorge?

02:13PM 5            MS. MACGEORGE:  I agree, Your Honor, but we

02:13PM 6   just need the evidence to actually exist in the Court's

02:13PM 7   record.

02:13PM 8            THE COURT:  It is in the Court's record

02:13PM 9   because he said it in open court.  Now, unless you are

02:13PM 10  trying to say that he lied to me in open court earlier,

02:13PM 11  I am sure that's not what you are saying, that Mr.

02:13PM 12  Wetwiska would ever lie to this Court.  And why is there

02:13PM 13  a concern that we need his testimony under oath as to

02:13PM 14  what he has openly represented to this Court on the

02:13PM 15  record when he has a duty of candor to this Court?

02:13PM 16           MS. MACGEORGE:  I am not saying that, Your

02:13PM 17  Honor.

02:13PM 18           THE COURT:  Then why do I need it under

02:14PM 19  oath?

02:14PM 20           MS. MACGEORGE:  It's just -- it is part of

02:14PM 21  the evidentiary hearing.  That is our understanding, is

02:14PM 22  that we need to have it as presented in our TI hearing,

02:14PM 23  as part of the evidence.

02:14PM 24           THE COURT:  Then anything he has said is,

02:14PM 25  essentially, an admission, right?  He is -- is there any

02:14PM  1   reason why the Court should not take what Mr. Wetwiska

02:14PM  2   has told me in other hearings as not truthful?

02:14PM  3              MS. MACGEORGE:  No, Your Honor.

02:14PM  4              THE COURT:  Mr. Alexander, is there

02:14PM  5   something that I don't know?

02:14PM  6              MR. ALEXANDER:  You may not be -- you may

02:14PM  7   not have an e-mail that I was going to introduce, but I

02:14PM  8   don't know what -- I don't know what the Court knows.  I

02:14PM  9   am sure Mr. Wetwiska told the truth to you every time he

02:14PM 10   spoke to you.

02:14PM 11              THE COURT:  I would hope so.

02:14PM 12              MR. ALEXANDER:  No.  I am sure he did.

02:14PM 13              THE COURT:  Because I have had a lot of

02:14PM 14   hearings about this case, a lot of hearings, and it has

02:14PM 15   been assured that every single one of those hearings

02:14PM 16   took place on the record because of the continuing

02:14PM 17   issues and problems, the fact that I know lawyers don't

02:14PM 18   get along in this case.  I have made sure that

02:14PM 19   everything was on the record.  And so I am going to hold

02:15PM 20   all of the attorneys in this matter, and remind you that

02:15PM 21   you all have a duty of candor to the Court.

02:15PM 22              MR. ALEXANDER:  Absolutely.

02:15PM 23              THE COURT:  And you, too, Mr. Choudhri, as

02:15PM 24   you represent yourself, anything you tell this Court,

02:15PM 25   you have a duty whether you're under oath or not --

02:15PM  1            MR. CHOUDHRI:  Yes, Your Honor.

02:15PM  2            THE COURT:  -- to be truthful and candid to

02:15PM  3  this Court.  Do you understand that?

02:15PM  4            MR. CHOUDHRI:  Absolutely.

02:15PM  5            THE COURT:  All right.

02:15PM  6            MR. POPE:  If I can help them just a little

02:15PM  7  bit, Your Honor, because I was present at some of those

02:15PM  8  hearings, and the e-mails that he does have, that he

02:15PM  9  wants to present, not only did -- the Court not -- has

02:15PM  10  not heard, has not heard testimony about.

02:15PM  11            THE COURT:  Well, give it to me, then.  Let

02:15PM  12  me see.

02:15PM  13            MR. POPE:  But it also helps to tie in the

02:15PM  14  Azeemeh Zaheer situation so you can understand why that

02:15PM  15  is something to be heard today.

02:15PM  16            THE COURT:  Well, the problem is that

02:15PM  17  Azeemeh Zaheer is not in front of me, so I can't do

02:15PM  18  anything involving her.  Let me see the e-mail.

02:16PM  19  Don't -- just give it to me.  I just want to see.

02:16PM  20            Do you have a copy for opposing counsel?

02:16PM  21            MR. POPE:  Yes, Your Honor, we do.

02:16PM  22            THE COURT:  You do.

02:16PM  23            MR. POPE:  May I approach?

02:16PM  24            THE COURT:  You may.  Who is

02:17PM  25  Texascountry@protonmail.com.

02:17PM   1              MR. CHOUDHRI:  That is my e-mail address,
02:17PM   2  Your Honor.
02:17PM   3              MR. ADROGUÉ:  That is his e-mail.  And you
02:17PM   4  can tell there, Your Honor --
02:17PM   5              THE COURT:  Then why did you need to e-mail
02:17PM   6  it to yourself?
02:17PM   7              MR. CHOUDHRI:  I e-mailed it to my Jetall
02:17PM   8  Companies where sometimes my staff.
02:17PM   9              THE COURT:  You need to speak up just a
02:17PM  10  little bit, Mr. Choudhri.
02:17PM  11              MR. CHOUDHRI:  I forwarded that e-mail to
02:17PM  12  my Jetallcompanies.com email address, Your Honor,
02:17PM  13  because I tend to keep mostly everything in my
02:17PM  14  Jetallcompanies email address.
02:17PM  15              MR. ADROGUÉ:  Ms. Zaheer had had proton
02:18PM  16  e-mail because its is a private e-mail that only she
02:18PM  17  had, and she forwarded that communication to him because
02:18PM  18  of the importance of it.
02:18PM  19              THE COURT:  Mr. Conrad, have you seen this
02:18PM  20  e-mail before?
02:18PM  21              MR. CONRAD:  No.  But I would draw the
02:18PM  22  Court's attention, and, of course, we assert objections
02:18PM  23  on this.  And this is a 2020 -- or purports to be, let
02:18PM  24  me make the record clear, a 2021 e-mail chain, right,
02:18PM  25  well before the foreclosure proceeding even started.

02:18PM 1  Again, this was prior to the settlement discussions, and

02:18PM 2  all those claims had been dismissed with prejudice.  And

02:18PM 3  if they had known about this -- I mean, Mr. Choudhri

02:18PM 4  just testified or represented in open court that he is

02:18PM 5  Texascountry@protonmail.com, but he got this,

02:18PM 6  purportedly, from Azeemeh at Naissance Capital back in

02:18PM 7  2021.

02:18PM 8              THE COURT:  So what is the importance of

02:18PM 9  this?

02:19PM 10             MR. ALEXANDER:  Your Honor, the importance

02:19PM 11 of this is, under limited liability law, especially, the

02:19PM 12 laws of New York, control is an important thing.

02:19PM 13             I also gave the Court a list of sixteen

02:19PM 14 clauses in that New York loan agreement, and Bank of

02:19PM 15 Kuwait chose that law, that are control points,

02:19PM 16 including who could be and not be the manager of the

02:19PM 17 building.  There is, then, an example of the Bank of

02:19PM 18 Kuwait exercising that clause to exercise control over

02:19PM 19 the borrower.  She was not a good manager of the

02:19PM 20 building.

02:19PM 21             THE COURT:  This is in 2021, though.  I

02:19PM 22 mean, everything about this case, about the 2023

02:19PM 23 litigation, involves what has happened since the

02:19PM 24 settlement was entered into, the purported allegations

02:19PM 25 by Galleria 2425 of alleged misconduct on behalf of

02:19PM 1  National Bank of Kuwait in interfering with y'all's

02:19PM 2  ability to settle the case, to get the funding you need,

02:20PM 3  to make the payment to settle the case and resolve it.

02:20PM 4              MR. ALEXANDER:  There will be testimony

02:20PM 5  about that.

02:20PM 6              THE COURT:  Right.  But this is a 2021

02:20PM 7  e-mail.  Why do I care?  Everything about the 2023

02:20PM 8  litigation -- and I am not here to relitigate anything

02:20PM 9  about 2022.  If I am here about the 2023 litigation,

02:20PM 10 your allegations in the 2023 litigation are everything

02:20PM 11 that has happened since the settlement.  And more

02:20PM 12 importantly, your allegations to prevent the foreclosure

02:20PM 13 are alleging conspiracy between Naissance and National

02:20PM 14 Bank of Kuwait --

02:20PM 15             MR. CHOUDHRI:  No, Your Honor.

02:20PM 16             THE COURT:  -- involving the bankruptcy.

02:20PM 17 I am telling you what I just read,

02:20PM 18 Mr. Choudhri.

02:20PM 19             Then, why do I need to hear about what

02:20PM 20 happened in 2021?

02:20PM 21             MR. ALEXANDER:  Because that is a

02:20PM 22 connection between the Bank of Kuwait and Azeemeh

02:20PM 23 Zaheer.

02:20PM 24             THE COURT:  So?

02:20PM 25             MR. ALEXANDER:  So Azeemeh Zaheer was the

02:20PM 1  one that found Mr. Choudhri originally --

02:20PM 2                THE COURT:  So?

02:20PM 3                MR. ALEXANDER:  -- to make the loan.

02:20PM 4                THE COURT:  Okay.  But that is not the

02:20PM 5  issue.  I don't think that this is relevant to what is

02:21PM 6  going on.  What else are you planning to present, if

02:21PM 7  given the opportunity, that I have not already heard,

02:21PM 8  relating to the 2023 litigation and your basis for an

02:21PM 9  injunction on just the 2023 litigation claims?

02:21PM 10               I am not reliving the TI that I heard,

02:21PM 11  literally, for days over a year ago --

02:21PM 12               MR. ALEXANDER:  May I?

02:21PM 13               THE COURT:  -- year-and-a-half ago.  It was

02:21PM 14  almost two years ago.

02:21PM 15               MR. ALEXANDER:  May I approach and ask if

02:21PM 16  you have seen this?

02:21PM 17               THE COURT:  Sure.  Make sure you give a

02:21PM 18  copy of it to Mr. Conrad, though.

02:21PM 19               MR. ALEXANDER:  I will.

02:21PM 20               MR. POPE:  That's the same one.

02:21PM 21               MR. CONRAD:  Judge, actually, while they're

02:21PM 22  scrambling to find evidence, which is not going to

02:21PM 23  exist.

02:21PM 24               MR. ALEXANDER:  We are not scrambling to

02:21PM 25  find evidence, Counsel.

02:21PM   1              MR. CONRAD:  So just to be very clear, so

02:21PM   2  what is it?  Why we are here, and I think the Court

02:21PM   3  keeps coming back to this point, what is the underlying

02:21PM   4  basis for the temporary injunction that they are asking

02:21PM   5  for here?  It's they're saying that there was an

02:21PM   6  interference with their bankruptcy case, and their

02:21PM   7  bankruptcy case got dismissed.

02:21PM   8              There is a conspiracy, you know, claim, in

02:22PM   9  their second amended petition.  We went over it a

02:22PM  10  million times, about is it the first or the second?  The

02:22PM  11  second is apparently the live one, right?

02:22PM  12              THE COURT:  Right.

02:22PM  13              MR. CONRAD:  Conspiracy is not a standalone

02:22PM  14  cause of action.  Everybody knows that.  It is a black

02:22PM  15  letter Texas Supreme Court law.  It is not a standalone

02:22PM  16  act.  It is a derivative claim.  It is a claim that has

02:22PM  17  to be on top of some underlying tort.

02:22PM  18              So let's go through the torts, you know, or

02:22PM  19  the claims that are here.  They have got breach of

02:22PM  20  contract, settlement agreement, that's Number 1.

02:22PM  21  Nothing about the bankruptcy case.

02:22PM  22              Count Number 2, tortious interference with

02:22PM  23  the contract.  And it says, Azeemeh Zaheer tortiously

02:22PM  24  interfered with plaintiff, that's Galleria 2425's

02:22PM  25  contract with NBK in the bankruptcy proceeding.  It

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

02:22PM 1    doesn't say we, you know, did anything about it.  It

02:22PM 2    says Azeemeh interfered with their relationship with us.

02:22PM 3    How would we interfere with ourselves, our own contract?

02:23PM 4              THE COURT:  We can focus just on the ones

02:23PM 5    that involve any kind of injunctive relief --

02:23PM 6              MR. CONRAD:  Correct.

02:23PM 7              THE COURT:  -- because the ones that

02:23PM 8    involve money damages, I don't care about, because it is

02:23PM 9    not proper for an injunction, right?

02:23PM 10             MR. CONRAD:  They are all money damages,

02:23PM 11   just to be very clear.  I go through one by one, every

02:23PM 12   one of them has money damages.  This lender liability,

02:23PM 13   which is apparently why Mr. Alexander is here to talk

02:23PM 14   about.  But that whole Count Number 2 is a $50 million

02:23PM 15   claim.  It has actual money damages on there.

02:23PM 16             I'm just focusing on the ones -- the only

02:23PM 17   ones that talk about Ms. Zaheer and the bankruptcy,

02:23PM 18   these are the underlying tort claims that would support,

02:23PM 19   allegedly, a TI, why we're even here today, are the

02:23PM 20   tortious interference claims.  None of the rest of them,

02:23PM 21   the fraud, the breach of contract, the fraudulent

02:23PM 22   conveyance, the business disparagement, I mean, none of

02:23PM 23   those -- the breach of good faith and fair dealing, the

02:23PM 24   unjust enrichment, none of those have anything to do

02:23PM 25   with bankruptcy case.

02:23PM 1                    THE COURT:  Well, even a tortious

02:23PM 2      interference claim, I read it just down to money

02:24PM 3      damages.

02:24PM 4                    MR. CONRAD:  That is right.  Both of them

02:24PM 5      are.  And by the way, there is no allegation that the

02:24PM 6      bank did anything wrong there with respect to the

02:24PM 7      bankruptcy.  Again, which is the basis of their TI,

02:24PM 8      right?  It is just saying Ms. Zaheer did it.  She

02:24PM 9      interfered with Galleria 2425, the plaintiff's

02:24PM 10     relationship with the bank, by interfering in the

02:24PM 11     bankruptcy.

02:24PM 12                    There is nothing here.  We don't need to

02:24PM 13     hear evidence today.  Their pleadings are insufficient,

02:24PM 14     period, black and white, to warrant any type of

02:24PM 15     injunction.  There just isn't.  There is no there there.

02:24PM 16     There is nothing.

02:24PM 17                    So on that basis alone, we don't need to

02:24PM 18     hear -- I mean, I understand they are going to scramble

02:24PM 19     for evidence or whatever they are going to put up here,

02:24PM 20     but you have already considered all of this.  They are

02:24PM 21     either money damages, which they can make those claims,

02:24PM 22     or they have no basis for us as an underlying tort.

02:24PM 23     They have nothing.

02:24PM 24                    THE COURT:  Response.

02:24PM 25                    MR. ALEXANDER:  Your Honor, this is a

02:24PM  1   one-of-a-kind building.  It's an I.M. Pei building.

02:25PM  2   It's eleven stories tall.

02:25PM  3              THE COURT:  I am very familiar with all of

02:25PM  4   this.  You don't need to talk to me about the building.

02:25PM  5   I have been involved in this litigation a lot longer

02:25PM  6   than you have been involved in this litigation, Mr.

02:25PM  7   Alexander.

02:25PM  8              MR. ALEXANDER:  Absolutely.  Absolutely.

02:25PM  9              THE COURT:  I have heard a lot about the

02:25PM 10   building.  I have seen pictures of the building.  I

02:25PM 11   don't need to know about the building.  I know about the

02:25PM 12   building.

02:25PM 13              MR. ALEXANDER:  The best offer that they

02:25PM 14   got during the settlement agreement period was from a

02:25PM 15   gentleman in Hong Kong who wanted that building because

02:25PM 16   it was an I.M. Pei building, because they were both --

02:25PM 17   is I.M. Pei Korean or Chinese?  I can't remember.  But

02:25PM 18   they're the same nationality.  It's a very, very, very

02:25PM 19   important building.  And we can stop this foreclosure,

02:25PM 20   and we can keep this fallout from occurring, about

02:25PM 21   whether there is a big lawsuit over lender liability,

02:25PM 22   because we can't go back to bankruptcy court until the

02:25PM 23   state courts decide the Naissance issue that was set in

02:26PM 24   January.

02:26PM 25              THE COURT:  I know.  I read it.

02:26PM 1          MR. ALEXANDER:  That's what he said.

02:26PM 2    That's what he said.  The Naissance situation was

02:26PM 3    mentioned 70 times in that record.

02:26PM 4          What the Bank of Kuwait did, was they wrote

02:26PM 5    a letter to the Judge after they lost their motion to

02:26PM 6    dismiss, fair up, square, they lost their motion to

02:26PM 7    dismiss the bankruptcy in the bankruptcy court.

02:26PM 8          THE COURT:  That is not how I read it.

02:26PM 9          MR. ALEXANDER:  They did.

02:26PM 10         THE COURT:  Sir, I have read it.  Like when

02:26PM 11   I say I -- I am going to sit back and read this stuff,

02:26PM 12   I've read it.  All right?

02:26PM 13         MR. ALEXANDER:  You read it -- did you read

02:26PM 14   for the first -- their motion to dismiss?

02:26PM 15         THE COURT:  I read the three things that

02:26PM 16   were given to me.

02:26PM 17         Don't shake your head at me, Mr. Choudhri.

02:26PM 18   I can see you.  It may not be apparent on the record,

02:26PM 19   but I can literally see you standing in front of me.

02:26PM 20   All right.

02:26PM 21         MR. ALEXANDER:  Sit down.  Sit down.

02:26PM 22         THE COURT:  You might not like what I have

02:26PM 23   to say, but, please, don't disrespect me by openly -- I

02:26PM 24   took the time to read it for a reason.  I knew y'all

02:26PM 25   would disagree as to what actually was said.

02:27PM 1            MR. ALEXANDER:  There was a motion to
02:27PM 2  dismiss the bankruptcy --
02:27PM 3            THE COURT:  I am very aware.
02:27PM 4            MR. ALEXANDER:  -- filed by the Bank of
02:27PM 5  Kuwait --
02:27PM 6            THE COURT:  I know.
02:27PM 7            MR. ALEXANDER:  -- that was heard by the
02:27PM 8  Court before in another hearing, in the motion to
02:27PM 9  dismiss hearing.
02:27PM 10            THE COURT:  Right.  The same hearing where
02:27PM 11  they talked about the cash collection.  They were
02:27PM 12  talking about the motion to dismiss.  I read it,
02:27PM 13  Mr. Alexander.  I am not kidding you.
02:27PM 14            MR. ALEXANDER:  I am not --
02:27PM 15            THE COURT:  They know.  They have been in
02:27PM 16  front of me.  I try to read all the stuff.  I don't just
02:27PM 17  say that because I have got so much spare time on my
02:27PM 18  hands.
02:27PM 19            MR. ALEXANDER:  No, you don't.
02:27PM 20            THE COURT:  I do it because I know you guys
02:27PM 21  are not going to agree about anything that was said, and
02:27PM 22  so I am going to read it for myself and characterize it
02:27PM 23  for myself, what the lawyers say, what the judge has
02:27PM 24  said.
02:27PM 25            MR. ALEXANDER:  I think what the Court

02:27PM 1   read, the Court read the transcript from the status

02:27PM 2   conference where he dismissed the bankruptcy.

02:27PM 3                    THE COURT:  No.  I read three things.

02:27PM 4   Right?  One of them was the hearing about cash

02:27PM 5   collection where they had extensive -- Mr. Choudhri

02:28PM 6   testified, and they had extensive discussion as to

02:28PM 7   whether or not, and the Court was concerned about

02:28PM 8   whether or not there was going to be enough cash to do

02:28PM 9   what he said to do, and they were concerned about how

02:28PM 10  involved Mr. Choudhri was in all these different

02:28PM 11  entities.

02:28PM 12                   And, in fact, there were provisions in

02:28PM 13  there where he was concerned about how you could have,

02:28PM 14  like, three parties in an agreement, and two of them are

02:28PM 15  allegedly controlled by Mr. Choudhri.  That's where he

02:28PM 16  talked about the motion to dismiss.  And, in fact, made

02:28PM 17  a point of saying, because Ms. -- oh --

02:28PM 18                   MS. MACGEORGE:  MacGeorge.

02:28PM 19                   THE COURT:  Yes.  Somebody wanted to talk

02:28PM 20  about the dismissal, first.  Actually, I think it might

02:28PM 21  have been your counsel, and the Judge wanted to hear the

02:28PM 22  cash collection issue first.  That's the one I read.

02:28PM 23  And then I read a status conference after that, and then

02:28PM 24  I read the final one after that where it said, you know

02:28PM 25  what, this is in state court.  Let the state court

02:28PM   1   figure it out.  Because he didn't know who to believe or

02:28PM   2   what to believe or who had power or what, and that's

02:28PM   3   fine.  But he also had extreme concerns about the cash.

02:29PM   4   And where the cash was going to come from, and who was

02:29PM   5   going to pay for what to happen.

02:29PM   6                  MR. ALEXANDER:  And the plan, we made

02:29PM   7   provisions for that, and he did not dismiss the plan

02:29PM   8   after the first hearing.

02:29PM   9                  The plan was dismissed, the bankruptcy was

02:29PM  10   dismissed at the third hearing, which was a status

02:29PM  11   conference, which was the day after what we call the

02:29PM  12   Halloween motion, or the emergency motion, was filed by

02:29PM  13   Mr. Drinnon that said, they control Naissance, and they

02:29PM  14   control -- therefore, they might control the bankruptcy,

02:29PM  15   and that's what -- that's what started the waterfall.

02:29PM  16                  Before that --

02:29PM  17                  THE COURT:  But Mr. Drinnon --

02:29PM  18                  MR. ALEXANDER:  Before that --

02:29PM  19                  THE COURT:  -- did not represent the

02:29PM  20   National Bank of Kuwait, correct?

02:29PM  21                  MR. ALEXANDER:  He did not.  But the

02:29PM  22   National Bank of Kuwait before that had invited them in

02:29PM  23   by saying to the judge, Judge, you ought to know what is

02:30PM  24   going on --

02:30PM  25                  THE COURT:  Just like I said, and you

02:30PM 1   weren't at the last hearing so you didn't hear me say

02:30PM 2   this, Mr. Alexander, but at the last hearing we had the

02:30PM 3   Wednesday before Thanksgiving, I do not think it was

02:30PM 4   inappropriate for them to point out that there is some

02:30PM 5   dispute or concern over who actually has controlling

02:30PM 6   authority to run Naissance when Naissance, I believe,

02:30PM 7   was a party to that bankruptcy.

02:30PM 8            I don't think they -- because somebody over

02:30PM 9   on this side kept -- I believe it was Ms. MacGeorge kept

02:30PM 10  referring to it as throwing a grenade into the

02:30PM 11  bankruptcy -- no, no, it was the bankruptcy lawyer,

02:30PM 12  sorry -- kept referring to it as throwing a grenade into

02:30PM 13  the bankruptcy proceeding.  At the same time, I don't

02:30PM 14  think it was inappropriate, because I think it is fully

02:30PM 15  appropriate if there is litigation involving a company,

02:30PM 16  and there are issues over who controls the company,

02:30PM 17  whether it's Mr. Choudhri, or Ms. Zaheer.

02:30PM 18           And so, which set of lawyers actually has

02:30PM 19  control over what Naissance has -- is doing, I don't

02:31PM 20  think it was inappropriate for them to tell the

02:31PM 21  bankruptcy court, Hey, just so you know, Judge, they

02:31PM 22  just -- this is what's happening, and that's a question,

02:31PM 23  because we don't know who we should be dealing with

02:31PM 24  here.

02:31PM 25           MR. ALEXANDER:  Naissance was not the

02:31PM 1    debtor.  Galleria 2425, LLC, was the debtor.  And they

02:31PM 2    said, Oh, this -- look at this, this could be some big

02:31PM 3    terrible thing and it couldn't be.  It's not.

02:31PM 4                Then, next --

02:31PM 5                THE COURT:  If they are not a debtor, then

02:31PM 6    how else can Naissance file suit to prevent -- at the

02:31PM 7    end of --

02:31PM 8                MR. ALEXANDER:  They are not the debtor.

02:31PM 9    The debtor --

02:31PM 10               THE COURT:  They're a debtor.

02:31PM 11               MR. ALEXANDER:  They are somebody whose

02:31PM 12   position would be wiped out, if there is a foreclosure,

02:31PM 13   yes.  But they're not who was in bankruptcy at all.

02:31PM 14               THE COURT:  Are you saying Naissance had no

02:31PM 15   interest at all in the bankruptcy?

02:31PM 16               MR. ALEXANDER:  No.  Naissance had an

02:31PM 17   interest in the bankruptcy.

02:31PM 18               THE COURT:  So, then, why would it not be

02:31PM 19   important for the judge, the bankruptcy judge, to know

02:32PM 20   that there is a question or concern over who controlled

02:32PM 21   that entity?

02:32PM 22               MR. ALEXANDER:  It doesn't have -- it does

02:32PM 23   not have the kind of interest that is important to the

02:32PM 24   bankruptcy lawsuit.

02:32PM 25               THE COURT:  Apparently the judge thought so

02:32PM 1   because that was one of the reasons why -- one of the

02:32PM 2   reasons why the judge stopped the bankruptcy.

02:32PM 3                MR. ALEXANDER:  No.  Let me give you a

02:32PM 4   contrast here.

02:32PM 5                The people --

02:32PM 6                THE COURT:  I think Ms. MacGeorge wants to

02:32PM 7   say something to you.

02:32PM 8                MR. ALEXANDER:  Well, I guess want to hear

02:32PM 9   it.

02:32PM 10               (Counsel confer off the record.)

02:32PM 11               MR. CONRAD:  I can clarify this for you in,

02:32PM 12  like, one minute if you want to hear it.

02:32PM 13               THE COURT:  I love to hear one minute.

02:32PM 14               MR. CONRAD:  All right.  Naissance is the

02:32PM 15  collateral owner, because all the shares of Galleria

02:32PM 16  2425 JV, which is the parent company of the entity here,

02:32PM 17  have been pledged, and so they have the right, Naissance

02:32PM 18  Galleria has the right to foreclose on those shares,

02:32PM 19  which means it can have the right to control this

02:33PM 20  entity.  Right?

02:33PM 21               And there is a dispute between Ms. Zaheer

02:33PM 22  and Choudhri about who controls it, right, because this

02:33PM 23  assignment was either forged or it wasn't.  Okay?

02:33PM 24  That's that dispute.  So it does have -- the United

02:33PM 25  States trustee, who is part of the bankruptcy, they are

02:33PM 1   automatically always in bankruptcies --

02:33PM 2           THE COURT:  Mr. Roth?

02:33PM 3           MR. CONRAD:  That is right.  They're

02:33PM 4   concerned about, like, what the guardrails are, and

02:33PM 5   making sure that there is capacity issues, okay?  And so

02:33PM 6   he actually filed an objection to Ms. Hayward's

02:33PM 7   application.  Part and parcel with this was some

02:33PM 8   questions about the capacity of the debtor.

02:33PM 9           And so we found this as I stated last

02:33PM 10  week, again, like a couple of days after that September

02:33PM 11  22nd hearing on the motion to dismiss, and saw --

02:33PM 12  because we track the other cases, because there is so

02:33PM 13  much going on, just to see where our name is going to

02:33PM 14  come up, or where our client's name is going to come up,

02:33PM 15  and we tracked it and we found it.  We did.  We brought

02:33PM 16  it to the attention of the bankruptcy court because it

02:33PM 17  is a potential issue.  That is it, period.

02:34PM 18          But Mr. Alexander, I know, was wanting to

02:34PM 19  get into, you know, basically what Ms. Hayward said to

02:34PM 20  you last week, which is exactly the same thing.  He is

02:34PM 21  not answering the fundamental question.  There is not a

02:34PM 22  basis for this TI, period, on the pleadings.  It just

02:34PM 23  doesn't get there.  There is no reason to hear evidence

02:34PM 24  in this.  I mean, you have legal grounds of everything

02:34PM 25  that they are looking for is money damages, and their --

02:34PM 1  their underlying tort is just with Ms. Zaheer, and it is

02:34PM 2  her that's making these alleged, you know, tortious

02:34PM 3  interference acts with the bank, apparently, with their

02:34PM 4  relationship with the bank, that, you know, messed up

02:34PM 5  the bankruptcy there.  And I don't even know if that is

02:34PM 6  a claim, just to be honest with you.  So I don't even

02:34PM 7  know what that is, but there are certainly no damages

02:34PM 8  here.

02:34PM 9           They didn't file an appeal, but these

02:34PM 10 causes of action are insufficient to even have a basis

02:34PM 11 for a TI.  It just doesn't warrant evidence in this

02:34PM 12 case.  I have got an order here, Your Honor, that denies

02:35PM 13 their TRO.  It also is an order to show cause on

02:35PM 14 sanctions.  I mean, I think we are there.  And I would

02:35PM 15 like to approach Your Honor, if I may, with the order.

02:35PM 16           MR. ALEXANDER:  Your Honor --

02:35PM 17           MS. MACGEORGE:  Did we get a copy?

02:35PM 18           MR. CONRAD:  I did.

02:35PM 19           MR. ALEXANDER:  Let me read you what was

02:35PM 20 filed wrongfully by the people that Mr. Drinnon has said

02:35PM 21 they represent, Naissance.  He said:  Based on the

02:35PM 22 authority granted to her by the temporary injunction,

02:35PM 23 Ms. Zaheer intends to exercise remedies under the

02:35PM 24 applicable loan documents that would place her in

02:35PM 25 control of the debtor.

02:35PM 1          We asked the Court at the 80th, who entered
02:35PM 2  this, we read that to her, and said is that what the
02:35PM 3  Court meant?
02:35PM 4          The Court said:  All right.  So, I have
02:35PM 5  reviewed the temporary injunction, and I have not given
02:35PM 6  Azeemeh Zaheer the authority to act in any way as
02:35PM 7  management for Naissance except for when Mr. Choudhri as
02:35PM 8  proposed manager for Naissance is going to do something,
02:35PM 9  they have to agree.
02:36PM 10          So she said this did not give her the power
02:36PM 11  to come in there and say, I control Naissance, I am
02:36PM 12  going to do this, I am going to do something to the
02:36PM 13  debtor.
02:36PM 14          That's how the ball got rolling down the
02:36PM 15  hill, and it benefited the Bank of Kuwait.
02:36PM 16          THE COURT:  Okay.  But here is the problem.
02:36PM 17          MR. ALEXANDER:  And it shouldn't --
02:36PM 18          THE COURT:  That still doesn't address Mr.
02:36PM 19  Conrad's concern, which is something that we have been
02:36PM 20  trying to talk about from the beginning is, I am looking
02:36PM 21  at your second amended petition filed on November 16th,
02:36PM 22  okay?  You have got -- of your causes of action, you
02:36PM 23  have only got -- your conspiracy action is the one where
02:36PM 24  you're asking for the injunctive relief.
02:36PM 25          The question I have for you is:  What of

02:36PM 1   your causes of action that are applicable to the

02:36PM 2   National Bank of Kuwait -- because it's right.  It is

02:37PM 3   not just like you can't be -- usually, if you are a part

02:37PM 4   of a conspiracy, then you also make an allegation that

02:37PM 5   that person was also involved in some kind of underlying

02:37PM 6   tort or wrongdoing, right?

02:37PM 7           MR. ALEXANDER:  Yes.

02:37PM 8           THE COURT:  You haven't made an allegation

02:37PM 9   against the National Bank of Kuwait that they have done

02:37PM 10  something other than the conspiracy claim.

02:37PM 11          MR. ALEXANDER:  We have made the

02:37PM 12  allegation.  It may not be as clear as it should be at

02:37PM 13  this time, but we have made the allegation that they

02:37PM 14  tortiously interfered with everything we ever tried to

02:37PM 15  do to hold onto this building, and that was what they

02:37PM 16  also did --

02:37PM 17          THE COURT:  See, the difference of that is,

02:37PM 18  like, your tortious interference with contract, Count 2,

02:37PM 19  damages, money.  $50 million.  Well, if the damages are

02:37PM 20  money, then injunctive relief is not proper.  Right?

02:37PM 21  Your tortious interference with business relations,

02:37PM 22  right?

02:37PM 23          MR. ALEXANDER:  There is --

02:37PM 24          THE COURT:  The interference by defendants

02:37PM 25  damaged plaintiffs in amounts to be determined after

02:37PM 1  discovery, which again, would be money.  So --

02:37PM 2               MR. ALEXANDER:  There is also --

02:38PM 3               THE COURT:  All right.  Then, that is just

02:38PM 4  money.

02:38PM 5               MR. ALEXANDER:  There is also --

02:38PM 6               THE COURT:  But when I am looking to your

02:38PM 7  cause of action where it goes and talks about the

02:38PM 8  bankruptcy, and there -- and some kind of -- I just see

02:38PM 9  that in your conspiracy claim that almost everything

02:38PM 10 else is money, amounts to be determined, amounts to be

02:38PM 11 recovered in the state court, you know, amounts to be

02:38PM 12 determined after discovery.  That's all money.

02:38PM 13              The amount of unjust enrichment, you know,

02:38PM 14 the difference between what NBK would have been owed

02:38PM 15 under the confidential settlement agreement and the true

02:38PM 16 value of the building, that is money.  So other than

02:38PM 17 conspiracy --

02:38PM 18              MR. ALEXANDER:  There is an entire body of

02:38PM 19 law that says each piece of real estate is unique.

02:38PM 20              THE COURT:  But you didn't plead it.

02:38PM 21 Because you didn't plead it, your temporary injunction

02:38PM 22 is denied at this time.  Based on what -- the way you

02:38PM 23 have pled it, you don't give me grounds.

02:38PM 24              MR. ALEXANDER:  Well, we would like a trial

02:39PM 25 amendment.

02:39PM 1          MR. ADROGUÉ:  Your Honor, hold on.

02:39PM 2          THE COURT:  I would like for you to file

02:39PM 3  something.  If you are going to make an injunction, you

02:39PM 4  know my ruling.  Do whatever you need to do.

02:39PM 5          MR. ADROGUÉ:  Paragraph 104 talks about

02:39PM 6  irreparable harm, discussing the case law and the real

02:39PM 7  estate.  Your Honor, just like anything money -- I mean,

02:39PM 8  I have stopped foreclosures on individuals on their

02:39PM 9  personal houses.  Any kind of real estate is unique, and

02:39PM 10 so courts don't want a person to be kicked out of their

02:39PM 11 house because it is a unique piece of real estate.  If

02:39PM 12 you boil down to it, Your Honor, everything is about

02:39PM 13 money, because a house can be replaced, a car --

02:39PM 14         THE COURT:  Right.  But that is your

02:39PM 15 application for temporary restraining order, and it is

02:39PM 16 one of the things we talked about.  We are not here on a

02:39PM 17 TRO.  We are here on a TI.  Maybe you need to replead

02:39PM 18 things.

02:39PM 19         MR. CONRAD:  Just to be clear.  Let me --

02:39PM 20 and I understand the Court's ruling, and if you can sign

02:39PM 21 an order, that would be great.  But just real quick, I

02:39PM 22 don't want there to be confusion, because everything

02:39PM 23 that they have pled in these other causes of action,

02:40PM 24 which are absolutely for money damages, is everything

02:40PM 25 that they argued previously from April through July 5th.

02:40PM 1    This was Mr. Wetwiska's testimony as an officer of the

02:40PM 2    Court.  You said, I am going to hold you to this, no

02:40PM 3    more TROs, no more injunctions.  All you said is that

02:40PM 4    you needed more time.  That is exactly -- I think,

02:40PM 5    almost exact words, and over our objection over the

02:40PM 6    bank's objection, that time was granted, and given them

02:40PM 7    to July 5th.  And, then, they have now had more time

02:40PM 8    since the bankruptcy.

02:40PM 9            So the only thing that is supporting the TI

02:40PM 10   today is this new allegation about interference with a

02:40PM 11   bankruptcy, this conspiracy about the bankruptcy, and

02:40PM 12   it's just -- the pleadings on that part -- everything

02:40PM 13   else has been considered by this Court, repeatedly, and

02:40PM 14   rejected and denied.

02:40PM 15           The only thing new is about this bankruptcy

02:40PM 16   interference allegation.  That is it.  And the pleadings

02:40PM 17   as they are -- and I don't think that they are ever

02:41PM 18   going to be able to fix.  That is not an amendable

02:41PM 19   thing, because it is not a course of -- cause of action

02:41PM 20   to interfere with alleged bankruptcy proceeding.

02:41PM 21           Their remedy was an appeal, if that was the

02:41PM 22   case, in the bankruptcy.  They didn't file one.  This

02:41PM 23   isn't an appellate -- effectively, what they are asking

02:41PM 24   the Court to do is be an appellate court of what the

02:41PM 25   bankruptcy court didn't do.  They are asking for,

02:41PM  1  effectively, a stay that they could have gotten in the

02:41PM  2  bankruptcy court with this injunction hearing.  That is

02:41PM  3  just wildly inappropriate.  There is no basis for it.

02:41PM  4  There is no cause of action.  There can't be any cause

02:41PM  5  of action, because there is no -- what is the harm?

02:41PM  6              They lost the bankruptcy court case, and

02:41PM  7  they could have appealed that.  They didn't.  And so

02:41PM  8  that's why this order should be granted.  There is

02:41PM  9  nothing that can fix it.

02:41PM  10              MR. ADROGUÉ:  Your Honor, Paragraph 98 of

02:41PM  11  our petition.  Your Honor, Paragraph 104 was under the

02:41PM  12  temporary restraining order section, but Paragraph 98 is

02:41PM  13  under the application for temporary injunction, and

02:41PM  14  it -- and there it says, in part, the equity of the

02:41PM  15  plaintiff will be wiped out.  The plaintiff will have no

02:42PM  16  assets, no adequate remedy at law, to return or retrieve

02:42PM  17  the assets or its values.

02:42PM  18              THE COURT:  I understand that, but,

02:42PM  19  ultimately, at the end of the day, that goes back to an

02:42PM  20  issue that I heard in 2021.

02:42PM  21              The Court has ruled.  Do whatever y'all

02:42PM  22  need to.

02:42PM  23              MR. CONRAD:  May we have the signed order,

02:42PM  24  Your Honor?

02:42PM  25              MR. CHOUDHRI:  Your Honor --

02:42PM  1                    THE COURT:  Do you have this electronically

02:42PM  2  filed?

02:42PM  3                    MR. CONRAD:  Yes, we do.

02:42PM  4                    MR. ADROGUÉ:  No, Your Honor, their

02:42PM  5  order --

02:42PM  6                    MS. MACGEORGE:  We have objections to their

02:42PM  7  order, Your Honor.

02:42PM  8                    MR. ADROGUÉ:  Many objections.  That order

02:42PM  9  in front of them, the bottom of the first paragraph,

02:42PM 10  they are trying to get you to give them authority

02:42PM 11  permitted to foreclose on the property.  I just think

02:42PM 12  whatever inherent rights they have --

02:42PM 13                    THE COURT:  I am just going to deny the TI.

02:42PM 14  Y'all do -- both sides do whatever y'all need to do.

02:42PM 15                    MR. ALEXANDER:  Your Honor, may we have a

02:42PM 16  bill?

02:42PM 17                    THE COURT:  I'm sorry?

02:42PM 18                    MR. ADROGUÉ:  And this -- sorry, Your

02:42PM 19  Honor.  We heard you are going to deny --

02:42PM 20                    THE COURT:  I'm just hearing too many

02:42PM 21  people talking to me at once.  Mr. Adrogué.

02:43PM 22                    MR. ADROGUÉ:  I heard you deny the TI, Your

02:43PM 23  Honor.  I understand you're not going to sign the order

02:43PM 24  they presented you; is that correct?

02:43PM 25                    THE COURT:  Correct.

02:43PM  1              MR. ADROGUÉ:  Okay.

02:43PM  2              THE COURT:  Literally, the Court is going

02:43PM  3    to enter an order that just says I am denying the

02:43PM  4    temporary injunction at this time.  Y'all do whatever

02:43PM  5    you need to do.

02:43PM  6              With regards to your show cause, the Court

02:43PM  7    is not ruling on your show cause and your order for

02:43PM  8    motion for sanctions at this time.

02:43PM  9              MR. CONRAD:  Is there one simple -- just

02:43PM 10    one thing.  We have a hearing in, allegedly, 17 minutes

02:43PM 11    now.  So, I mean, the only thing, you can take out or

02:43PM 12    cross out Paragraphs 2, 3, and 4, because the first

02:43PM 13    paragraph just says that the TI is denied.

02:43PM 14              MR. ADROGUÉ:  Your Honor, he is -- he

02:43PM 15    slipped in there the words --

02:43PM 16              THE COURT:  I am just going to type it up

02:43PM 17    right now while I am sitting right in front of you where

02:43PM 18    it says I just deny the temporary injunction, and that's

02:43PM 19    it.

02:43PM 20              All right.  Everything else --

02:43PM 21              MR. ALEXANDER:  Can you put without

02:43PM 22    prejudice in there?

02:43PM 23              THE COURT:  I'm just going to deny it, just

02:44PM 24    assumes without prejudice.  I am not going to say it.

02:44PM 25    Y'all figure out what you need to do.

02:44PM 1          Apparently, y'all have to get ready for a

02:44PM 2  hearing in 16 minutes.

02:44PM 3          MS. KLINGENSMITH:  Your Honor, is it

02:44PM 4  possible to get a printed copy of your denial of the

02:44PM 5  temporary injunction?

02:44PM 6          THE COURT:  I don't know.  Bonnie, is it?

02:44PM 7          THE CLERK:  No, Your Honor.  It has to go

02:44PM 8  through an approval process before -- after you sign it.

02:44PM 9          MR. STEINBRUNNER:  That is why we wanted to

02:44PM 10  have something that was just a hand copy.  Obviously, we

02:44PM 11  are going to present this to Judge Reeder, and we just

02:44PM 12  don't want there to be a misrepresentation of what this

02:44PM 13  Court has done.

02:44PM 14          THE COURT:  Judge Reeder can call me if she

02:44PM 15  has a question.  She knows how to find me.

02:44PM 16          MR. CHOUDHRI:  Your Honor, may I speak?

02:44PM 17          THE COURT:  Mr. Choudhri, is there

02:44PM 18  something you want to say?  If you want to, feel free, I

02:44PM 19  am just typing now.

02:44PM 20          MR. CHOUDHRI:  Thank you, Your Honor.

02:44PM 21  First of all, I want to really thank you for your time

02:44PM 22  for hearing us.

02:44PM 23          I did want to mention some things as I was

02:45PM 24  sitting here I would like to express to you.  The reason

02:45PM 25  that -- that the events after the settlement -- the

02:45PM 1    settlement was entered because you compelled Mona

02:45PM 2    Dajani's deposition.  And that e-mail that I handed Your

02:45PM 3    Honor, I had e-mailed that to Mr. Conrad before.  And

02:45PM 4    Mr. Wetwiska came in here right before the trial in

02:45PM 5    September, when we were going to go to trial in the pref

02:45PM 6    setting, and you -- you were kind enough to compel the

02:45PM 7    deposition of Mona Dajani, and the key people at the

02:45PM 8    Bank of Kuwait that I met with and spoke to.

02:45PM 9                    And right after that is when the bank

02:45PM 10   wanted to settle.  We did, then, end up settling.  I am

02:45PM 11   a party to that settlement.  I signed the settlement

02:45PM 12   individually, on the behalf of -- and on behalf of

02:45PM 13   Naissance, and the borrower, and the contents of that

02:45PM 14   settlement are confidential.  And in the bankruptcy

02:45PM 15   court, Your Honor, Mr. Conrad, or his associate or

02:45PM 16   partner, the deposition was confidential, and he -- with

02:46PM 17   -- Melissa Hayward represented me as a corporate rep for

02:46PM 18   the deposition that took place in September of this

02:46PM 19   year.  And in that deposition, it was very clear that

02:46PM 20   the contents of the settlement are to remain

02:46PM 21   confidential, and Mr. Conrad agreed on the record.

02:46PM 22                    Yet, after that deposition, he filed that

02:46PM 23   deposition in the contents of the settlement publicly in

02:46PM 24   the bankruptcy hearing, in the filings, and it's in the

02:46PM 25   bankruptcy record.

02:46PM  1        So, Your Honor, I just want to clarify that
02:46PM  2   there have been -- there is a pattern of this, and the
02:46PM  3   reason we wanted the communications of Mr. Conrad, or
02:46PM  4   Pillsbury, or Bank of Kuwait, and Azeemeh Zaheer, and
02:46PM  5   Rodney Drinnon, because I am very confident we can prove
02:46PM  6   that.  And Mr. Drinnon, we wanted -- he's a witness.  We
02:46PM  7   wanted him to be testifying for the TI, and he,
02:46PM  8   obviously, doesn't want to be here and he left, and we
02:46PM  9   wanted to swear him in.
02:46PM  10       And I just wanted to say that, that I do
02:46PM  11  feel that there really -- the Bank of Kuwait, there
02:46PM  12  really is things that have happened, not just from the
02:47PM  13  settlement, but it has been a pattern.  Even when the
02:47PM  14  property was posted -- you have been here the whole
02:47PM  15  time.  When the property was posted for foreclosure,
02:47PM  16  people who had contacted Mr. Conrad, he told them it was
02:47PM  17  going to be posted in the future.
02:47PM  18       I have his own e-mails, that I have and Mr.
02:47PM  19  Wetwiska has, where he's telling the public that the
02:47PM  20  property is going to be posted in the future, and he
02:47PM  21  shouldn't have done that.
02:47PM  22       And that pattern has been a repetitive
02:47PM  23  pattern, and we had the right to file a bankruptcy, and
02:47PM  24  we did, and we had a plan that was confirmable.  Yes,
02:47PM  25  Your Honor, there were definitely challenges with that

02:47PM 1    where -- where the funding is coming.

02:47PM 2                THE COURT:  Are you trying to say that Mr.

02:47PM 3    Conrad did something improper?

02:47PM 4                MR. CHOUDHRI:  I'm sorry?

02:47PM 5                THE COURT:  Are you trying to say that Mr.

02:47PM 6    Conrad did something improper?

02:47PM 7                MR. CHOUDHRI:  On behalf of the Bank of

02:47PM 8    Kuwait, Your Honor.  I don't --

02:47PM 9                THE COURT:  I just want to make sure that I

02:47PM 10   understand you correctly, that you are making an

02:47PM 11   accusation that an officer of this Court is -- is acting

02:47PM 12   improperly, because you're saying that Mr. Conrad is

02:48PM 13   doing things that you think are wrong or actionable

02:48PM 14   conduct.

02:48PM 15               MR. CHOUDHRI:  Well, Your Honor, what I am

02:48PM 16   saying, and I want to be very clear --

02:48PM 17               THE COURT:  No.  You want to be very

02:48PM 18   careful, sir.

02:48PM 19               MR. CHOUDHRI:  Absolutely.

02:48PM 20               THE COURT:  Remember, just because you are

02:48PM 21   not under oath, you are representing yourself.  As I

02:48PM 22   have said before, you have a duty of candor to this

02:48PM 23   Court, so I would be really careful about what you say

02:48PM 24   here --

02:48PM 25               MR. CHOUDHRI:  100 percent.


                Kathleen K. Miller, Official Court Reporter, CSR #739
                  281st Judicial District Court, Harris County, Texas

02:48PM 1          THE COURT:  -- right, and accusations that

02:48PM 2  you make because it is one thing to say that you believe

02:48PM 3  that a party is doing something; it is another thing to

02:48PM 4  say a lawyer, with an obligation to not act improperly,

02:48PM 5  is engaging in improper conduct.  And that is what I

02:48PM 6  heard you to say, sir.  Is that what you meant?

02:48PM 7          MR. CHOUDHRI:  Let me just clarify what I

02:48PM 8  said.

02:48PM 9          THE COURT:  Okay.  That's why I want to

02:48PM 10  give you that opportunity, Mr. Choudhri.

02:48PM 11          MR. CHOUDHRI:  Yes, Your Honor.  Sorry to

02:48PM 12  interrupt.  I an sorry for shaking my head earlier.  I

02:48PM 13  didn't mean any disrespect.

02:48PM 14          THE COURT:  No, I understand.

02:48PM 15          MR. CHOUDHRI:  It is just there is a lot

02:48PM 16  going on in here.

02:48PM 17          Mr. Conrad represents the Bank of Kuwait.

02:48PM 18  So when I say "Mr. Conrad," I am speaking that Mr.

02:49PM 19  Conrad sent an e-mail to Mr. Wetwiska, that I read, that

02:49PM 20  was forwarded to me, and that e-mail is where Mr. Conrad

02:49PM 21  told -- he stated in that e-mail, and I have that e-mail

02:49PM 22  here, he told third parties that the Bank of Kuwait is

02:49PM 23  going to post the property for foreclosure in the

02:49PM 24  future.  I, then, spoke to some of these third parties,

02:49PM 25  and they told me that they are under the impression from

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

02:49PM 1  the Bank of Kuwait, Mr. Conrad/Bank of Kuwait -- on

02:49PM 2  behalf of the Bank of Kuwait -- I don't want -- I am not

02:49PM 3  suggesting Mr. Conrad has done anything wrong

02:49PM 4  personally.  What I am saying is, on behalf of the Bank

02:49PM 5  of Kuwait, there is an --

02:49PM 6              THE COURT:  Right.  But I have heard all

02:49PM 7  this before, because that is why we had all of these

02:49PM 8  hearings in March and in April where we had continued

02:49PM 9  conversations, and why we had status conferences to make

02:49PM 10 sure what -- because Galleria 2425 and its counsel were

02:49PM 11 alleging that improper things were being told.  That's

02:49PM 12 why we had hearings on the record to have confirmation

02:50PM 13 and understanding of what could and could not be told to

02:50PM 14 people.  So I believe all of that has been properly

02:50PM 15 addressed in this Court in that case.

02:50PM 16             MR. CHOUDHRI:  I would disagree, Your

02:50PM 17 Honor.  There is a settlement agreement.  They have

02:50PM 18 breached the settlement agreement.  There is a pattern.

02:50PM 19 They continue to do this.  They did it after the

02:50PM 20 bankruptcy.

02:50PM 21             THE COURT:  I understand that.  In your

02:50PM 22 breach of the settlement agreement, you have asked for

02:50PM 23 money damages, and because you have asked for money

02:50PM 24 damages, injunctive relief is not proper.  So you have

02:50PM 25 to look at how the case has been pled.

02:50PM 1                    I am going to finish this order.

02:50PM 2                    MR. CONRAD:  And we have an agreed order

02:50PM 3    that we have an agreement on.

02:50PM 4                    THE COURT:  Agreed?

02:50PM 5                    MR. CONRAD:  I mean, agreed to form only.

02:50PM 6                    THE COURT:  Yeah.  They agreed to form

02:50PM 7    only.

02:50PM 8                    MR. CONRAD:  Yeah.

02:50PM 9                    MR. ADROGUÉ:  We scratched everything out,

02:50PM 10   and it just says denied without merit.

02:50PM 11                   MS. MACGEORGE:  Without merit is gone.  It

02:50PM 12   is just denied.

02:50PM 13                   THE COURT:  I will make one other change to

02:50PM 14   this, because it should say "the second amended

02:50PM 15   petition," because the amended petition has been

02:51PM 16   replaced with the second amended petition.

02:51PM 17                   Is there anything else?

02:51PM 18                   MR. CHOUDHRI:  Your Honor, I would just ask

02:51PM 19   you to allow us an opportunity to have witnesses and put

02:51PM 20   on witnesses and evidence for our TI.

02:51PM 21                   I am -- I personally have signed several

02:51PM 22   million dollars of tax liens, and the money that was in

02:51PM 23   the registry of the Court was assigned to them.  I did

02:51PM 24   everything I could to make this work, and I would just

02:51PM 25   ask Your Honor to really consider that, and I believe

02:51PM 1   the property is unique, and we pled it.  And I really

02:51PM 2   would ask Your Honor to at least allow us an

02:52PM 3   opportunity, because things are just not making sense.

02:52PM 4                   And that e-mail, by the way, them

02:52PM 5   controlling my -- Azeemeh Zaheer is my fiduciary.  She

02:52PM 6   was managing the borrower on my behalf.  Why Mona

02:52PM 7   Dajani, on behalf of Pillsbury for the bank, is

02:52PM 8   e-mailing them and telling her --

02:52PM 9                   THE COURT:  Sir, that is in 2021.  That

02:52PM 10  goes way before anything that we are talking about in

02:52PM 11  this litigation.  Here is the tough part.  You have got

02:52PM 12  to separate the other case that -- which is hard,

02:52PM 13  because it is all in front of me, but you have got to

02:52PM 14  separate that other case from this case.  This case

02:52PM 15  deals with pretty much everything after y'all got into a

02:52PM 16  settlement agreement.

02:52PM 17                  So a lot of the things that you are talking

02:52PM 18  about are things that I heard in the first TI, when we

02:52PM 19  did it the first time.  I am not saying that you don't

02:52PM 20  get a TI.  You don't get one based on the petition that

02:52PM 21  is in front of me.

02:52PM 22                  MR. CHOUDHRI:  Would you allow us to have a

02:52PM 23  trial amendment and come back this week?  It is really

02:52PM 24  important, Your Honor.

02:52PM 25                  THE COURT:  Not -- I am out the rest of

02:53PM 1    this week.  I am here next week.

02:53PM 2                MR. CHOUDHRI:  Monday?

02:53PM 3                THE COURT:  I'm just saying this.  At this

02:53PM 4    point, y'all do whatever you need to do, but I think I

02:53PM 5    have made myself clear on the record, that I can't --

02:53PM 6    there can't be a TI based on how this is pled.  The

02:53PM 7    pleadings do not support injunctive relief.

02:53PM 8                If you amend, follow that.  I have

02:53PM 9    procedures for an emergency hearing.  We will take it up

02:53PM 10   then about the possibility.  But right now, there is

02:53PM 11   nothing for me to consider in that regard.

02:53PM 12               Do whatever you need to do, Mr. Choudhri.

02:53PM 13   You have got plenty of lawyers to advise you in that

02:53PM 14   regard.  Do you understand me?

02:53PM 15               MR. CHOUDHRI:  Thank you, Your Honor.  Is

02:53PM 16   it possible to ask for the -- for the discovery between

02:53PM 17   the -- Pillsbury and Mr. Drinnon?

02:53PM 18               THE COURT:  That is not properly before me.

02:53PM 19               MR. CHOUDHRI:  Thank you, Your Honor.  I

02:53PM 20   would ask if you can give us a date, the earliest date

02:53PM 21   for the TI, if we can, at least, have a setting, maybe,

02:53PM 22   Monday, Your Honor, please.

02:53PM 23               THE COURT:  Until you file something, I

02:53PM 24   don't have anything to set.

02:53PM 25               MR. CHOUDHRI:  Okay.

02:53PM  1                    THE COURT:  Do you understand?

02:54PM  2                    MR. CHOUDHRI:  We will file --

02:54PM  3                    THE COURT:  Do whatever you need to do,

02:54PM  4  sir.

02:54PM  5                    MR. CHOUDHRI:  Thank you, Your Honor.

02:54PM  6                    THE COURT:  But I am just telling you, the

02:54PM  7  Court is not foreclosing the option.  Just based on what

02:54PM  8  I have right now, I have ruled.

02:54PM  9                    MR. CHOUDHRI:  I understand.  And I

02:54PM 10  appreciate that, and I appreciate you-all's time.  And

02:54PM 11  I'm sorry if I was too passionate today.  I do

02:54PM 12  apologize.

02:54PM 13                    THE COURT:  I understand.  This case has

02:54PM 14  been going on for a long time.

         15                    (Proceedings adjourned at 2:54 p.m.)

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

```
 1                    REPORTER'S CERTIFICATE
 2   THE STATE OF TEXAS  )
     COUNTY OF HARRIS    )
 3
 4       I, Kathleen K. Miller, Official Court Reporter in
 5   and for the 281st District Court, Harris County, State
 6   of Texas, do hereby certify that the above and foregoing
 7   contains a true and correct transcription of all
 8   portions of evidence and other proceedings requested in
 9   writing by counsel for the parties to be included in
10   this volume of the Reporter's Record, Volume 1, in the
11   above-styled and numbered cause, all of which occurred
12   in open court or in chambers and were reported by me.
13       I further certify that this Reporter's Record,
14   Volume 1 of the proceedings truly and correctly
15   references the exhibits, if any, admitted by the
16   respective parties.
17       I further certify that the total cost for the
18   preparation of this Reporter's Record is $_____ and
19   was paid by _____.
20       WITNESS MY OFFICIAL HAND this the 30th day of
21   November, 2023.
22
23                         /s/Kathleen K. Miller
                           Kathleen K. Miller, Texas CSR 739
24                         Expiration Date: 04/30/25
                           Official Court Reporter
25                         281st Judicial District Court
                           Harris County, Texas
```

# #

**#739** [1] - 1:24

# $

**$50** [5] - 27:7, 32:18, 64:1, 99:14, 112:19

# /

**/s/Kathleen** [1] - 129:23

# 0

**00993500** [1] - 3:16
**04/30/25** [1] - 129:24

# 1

**1** [13] - 1:1, 2:2, 2:5, 2:6, 2:8, 2:9, 41:2, 51:17, 98:20, 129:10, 129:14
**10** [2] - 42:25, 61:12
**100** [2] - 82:16, 122:25
**104** [2] - 114:5, 116:11
**1081** [1] - 44:3
**1091** [1] - 44:3
**10:00** [5] - 14:22, 16:3, 20:13, 26:7, 72:10
**10:23** [1] - 1:13
**10:42** [1] - 20:16
**11** [1] - 74:1
**11/14** [1] - 41:4
**11/15** [1] - 26:21
**11/16** [2] - 41:6, 48:5
**1125** [1] - 3:4
**11:29** [1] - 20:16
**11th** [3] - 22:17, 22:23, 30:14
**12** [3] - 3:12, 39:23, 67:7
**120** [3] - 63:12, 63:16, 81:7
**1201** [1] - 3:16
**127th** [2] - 13:24, 13:25
**128** [2] - 2:8, 2:9
**129th** [6] - 12:24, 13:25, 14:1, 14:3, 14:5, 83:21
**12:52** [1] - 88:25
**12th** [13] - 23:6, 27:19, 36:20, 50:18, 51:5, 51:9, 51:24, 58:1, 63:7, 64:7, 64:10, 64:11, 82:21
**13** [3] - 64:25, 65:10, 77:24
**13th** [2] - 24:11, 69:14
**14** [1] - 42:24
**14th** [3] - 18:18, 25:2, 25:4
**15** [4] - 38:5, 52:4, 66:23, 67:23
**157th** [2] - 14:4, 14:5
**15th** [3] - 25:9, 26:2, 26:15
**16** [2] - 38:5, 119:2
**162** [3] - 33:17, 33:18, 41:24
**1629** [1] - 3:8
**166(a** [1] - 58:21

**16th** [7] - 26:19, 28:6, 42:5, 48:1, 48:2, 48:4, 111:21
**17** [1] - 118:10
**18** [1] - 53:23
**1850** [1] - 4:13
**19** [5] - 16:15, 53:22, 53:24, 53:25, 54:5
**1:45** [2] - 86:17, 88:18
**1:55** [1] - 86:7
**1st** [1] - 81:10

# 2

**2** [7] - 41:3, 51:18, 69:1, 98:22, 99:14, 112:18, 118:12
**20** [2] - 5:23, 66:21
**2000** [3] - 4:6, 4:13, 42:24
**2004** [1] - 43:17
**2010** [2] - 42:4, 70:14
**2011** [1] - 42:2
**2012** [2] - 66:23, 70:14
**2013** [1] - 17:1
**2015** [1] - 52:25
**2020** [3] - 25:14, 61:18, 94:23
**2021** [15] - 76:19, 89:12, 89:18, 89:25, 90:1, 90:4, 94:24, 95:7, 95:21, 96:6, 96:20, 116:20, 126:9
**2022** [1] - 96:9
**2023** [14] - 1:18, 22:17, 30:11, 30:14, 76:18, 76:19, 90:1, 95:22, 96:7, 96:9, 96:10, 97:8, 97:9, 129:21
**2023-22748** [2] - 1:2, 5:2
**2023-43755** [1] - 22:19
**21** [4] - 27:17, 53:6, 53:23, 64:6
**214-742-3579** [1] - 3:17
**22nd** [1] - 109:11
**23rd** [1] - 30:11
**24.005** [1] - 35:5
**24.006** [1] - 35:5
**24.5** [1] - 35:5
**24012192** [1] - 3:7
**24040721** [1] - 4:3
**24046496** [1] - 4:4
**24047841** [1] - 4:12
**24048738** [1] - 3:3
**24093201** [1] - 4:5
**24093627** [1] - 3:11
**2425** [30] - 1:4, 5:3, 7:25, 16:9, 22:25, 28:12, 28:18, 30:21, 31:9, 31:22, 32:1, 32:6, 32:23, 34:20, 37:18, 37:20, 39:13, 65:5, 69:3, 72:20, 76:7, 76:9, 77:16, 83:12, 89:7, 95:25, 100:9, 107:1, 108:16, 124:10
**2425's** [3] - 32:20, 76:3, 98:24
**25** [8] - 29:19, 32:25, 41:22, 44:10, 44:11, 45:8, 60:7, 62:23
**2500** [1] - 3:16
**26** [2] - 30:11, 54:15
**27** [1] - 33:25
**27.003(c)** [1] - 54:12

**27.005(d** [1] - 59:11
**27.005(d)** [2] - 35:19, 59:11
**27.006** [1] - 34:9
**271** [1] - 42:23
**281st** [2] - 129:5, 129:25
**281ST** [1] - 1:7
**29** [1] - 42:23
**29th** [2] - 1:18, 14:1
**2:00** [2] - 27:16, 27:22
**2:10** [1] - 88:25
**2:35** [1] - 27:15
**2:54** [2] - 1:13, 128:15

# 3

**3** [3] - 2:5, 42:20, 118:12
**30** [1] - 66:21
**30th** [1] - 129:20
**31st** [1] - 23:16
**35** [1] - 27:23
**352** [1] - 52:23
**357** [1] - 52:24
**377** [2] - 43:17, 44:3
**3:00** [3] - 71:23, 84:4, 86:6
**3:35** [1] - 41:6
**3:43** [3] - 27:23, 28:6, 41:21
**3B** [1] - 33:9

# 4

**4** [2] - 52:4, 118:12
**45** [2] - 72:5, 86:5
**457** [1] - 61:18
**466** [1] - 52:23

# 5

**5** [2] - 2:6, 61:12
**506** [1] - 52:15
**512-215-4129** [1] - 3:13
**596** [1] - 61:17
**5:00** [1] - 11:10
**5:08** [2] - 28:11, 42:5
**5th** [7] - 79:21, 83:4, 83:9, 84:6, 84:10, 114:25, 115:7

# 6

**60** [3] - 27:17, 63:15, 64:6
**6161** [1] - 3:4
**6435778** [1] - 25:14
**6:02** [1] - 48:5
**6:10** [2] - 28:17, 28:18
**6th** [2] - 15:24, 23:14

# 7

**7.5** [1] - 68:19
**70** [1] - 102:3
**701** [1] - 3:12

**713-276-7600** [1] - 4:7
**713-425-7270** [1] - 3:9
**713-449-4481** [1] - 3:5
**739** [1] - 129:23
**75270** [1] - 3:17
**77006** [1] - 3:9
**77010-1018** [1] - 4:7
**77027** [1] - 4:14
**77036** [1] - 3:5
**78702** [1] - 3:13

---

**8**

**8** [1] - 42:21
**80th** [11] - 9:25, 22:20, 23:1, 23:20,
71:19, 72:1, 72:24, 73:19, 74:7, 74:20,
111:1
**832-533-8689** [1] - 4:14
**87** [1] - 52:15
**8:00** [3] - 10:14, 18:17, 41:4
**8:41** [1] - 19:1

---

**9**

**9** [1] - 42:25
**90** [2] - 63:16, 81:7
**909** [1] - 4:6
**91a** [1] - 82:22
**98** [2] - 116:10, 116:12

---

**A**

**a** [421] - 5:21, 5:22, 6:3, 6:11, 6:17, 6:18,
6:20, 7:1, 7:2, 8:2, 8:3, 8:5, 8:7, 8:10,
8:11, 8:24, 9:13, 10:3, 10:8, 10:14,
10:15, 10:16, 11:11, 11:23, 12:9,
12:19, 12:21, 13:11, 14:22, 14:23,
15:11, 15:18, 15:23, 16:4, 16:13,
16:25, 17:6, 17:23, 18:2, 18:8, 18:15,
18:20, 18:22, 19:12, 19:13, 19:15,
19:20, 19:24, 20:1, 20:5, 20:9, 20:10,
20:13, 20:19, 21:8, 21:10, 21:11,
21:14, 22:18, 23:7, 23:8, 23:17, 23:18,
23:22, 24:4, 24:10, 24:12, 25:6, 25:7,
25:9, 25:12, 25:15, 26:2, 26:5, 26:7,
26:22, 27:8, 27:10, 27:16, 27:17, 28:9,
28:14, 30:2, 30:7, 30:15, 30:23, 31:3,
31:4, 32:13, 32:17, 33:7, 33:10, 33:11,
33:13, 33:15, 33:18, 33:20, 34:1, 34:5,
34:13, 34:15, 34:17, 34:18, 34:22,
35:4, 35:12, 35:18, 35:25, 36:21,
36:24, 37:1, 37:14, 37:22, 37:23, 38:4,
38:10, 38:20, 39:3, 39:7, 39:19, 40:10,
41:10, 41:16, 41:24, 41:25, 42:2, 42:3,
42:13, 42:15, 42:18, 42:21, 43:1,
43:11, 43:13, 43:16, 43:20, 44:4,
44:22, 45:2, 45:7, 45:13, 45:20, 46:1,
46:21, 47:1, 47:6, 47:8, 47:13, 48:4,
48:7, 48:11, 48:20, 49:2, 49:7, 49:8,
49:19, 49:24, 49:25, 51:12, 51:13,
51:19, 52:7, 52:9, 52:20, 54:4, 55:9,
56:2, 56:11, 56:13, 56:22, 57:4, 57:15,
57:16, 57:22, 58:5, 58:9, 58:11, 58:14,
58:19, 58:24, 59:14, 59:17, 59:24,
61:4, 61:14, 61:20, 61:22, 62:18, 63:3,
63:9, 63:17, 64:2, 64:18, 65:2, 65:11,
65:25, 66:2, 66:4, 66:9, 66:15, 66:16,
66:23, 66:24, 67:6, 67:10, 67:13,
67:14, 67:15, 67:17, 67:18, 67:19,
67:21, 67:23, 68:2, 68:3, 68:19, 69:2,
69:9, 69:10, 69:12, 69:23, 70:12,
70:14, 70:23, 71:2, 71:7, 71:14, 71:18,
71:23, 72:4, 72:6, 72:14, 72:17, 72:18,
73:18, 73:19, 73:23, 73:25, 74:3,
74:17, 74:22, 75:6, 75:17, 75:22,
76:11, 76:12, 76:23, 77:7, 77:18,
77:19, 77:22, 77:24, 78:5, 78:7, 78:9,
79:2, 79:3, 79:6, 79:13, 79:17, 79:25,
80:2, 80:23, 81:9, 81:16, 82:16, 83:9,
83:11, 83:17, 83:19, 84:14, 84:16,
84:17, 84:18, 84:20, 84:23, 84:25,
86:1, 86:4, 86:6, 86:15, 87:4, 87:19,
88:1, 89:4, 89:17, 89:23, 90:3, 90:15,
90:16, 90:17, 90:18, 90:21, 90:25,
91:3, 91:13, 91:15, 92:13, 92:14,
92:21, 92:25, 93:6, 93:20, 94:9, 94:16,
94:23, 94:24, 95:13, 95:19, 96:6,
96:21, 97:11, 97:13, 97:17, 98:8, 98:9,
98:13, 98:14, 98:15, 98:16, 99:14,
99:19, 100:1, 100:25, 101:1, 101:5,
101:9, 101:14, 101:18, 101:21, 102:5,
102:24, 103:1, 104:17, 104:23,
105:10, 106:7, 106:10, 106:12,
106:15, 106:22, 107:5, 107:10,
107:12, 107:20, 108:3, 108:21,
109:10, 109:17, 109:21, 110:6,
110:10, 110:11, 110:17, 112:3, 112:4,
113:24, 114:10, 114:11, 114:13,
114:16, 114:17, 115:10, 115:19,
116:1, 117:15, 118:10, 119:1, 119:4,
119:10, 119:12, 119:15, 120:11,
120:17, 121:2, 121:6, 121:13, 121:22,
121:23, 121:24, 122:22, 123:3, 123:4,
123:15, 124:17, 124:18, 126:15,
126:17, 126:20, 126:22, 127:6,
127:20, 127:21, 128:14, 129:7
**A** [3] - 3:1
**A.M** [1] - 1:13
**a.m** [4] - 14:22, 19:1, 26:8, 72:10
**Aaron** [1] - 23:17
**Abdullatif** [11] - 30:19, 30:23, 31:18,
31:20, 31:24, 32:9, 32:12, 32:15,
67:22, 67:23, 68:1
**abilities** [2] - 32:21, 57:13
**ability** [2] - 55:22, 96:2
**able** [5] - 38:6, 38:20, 56:2, 73:3, 115:18
**about** [112] - 5:22, 10:3, 10:22, 15:10,
16:8, 20:23, 22:18, 23:7, 24:15, 25:3,
27:14, 29:5, 32:19, 39:10, 40:23,
47:14, 47:16, 49:16, 49:17, 49:22,
50:23, 55:4, 55:11, 55:16, 57:2, 57:4,
57:11, 58:17, 58:21, 60:2, 63:19,
63:20, 63:22, 64:1, 65:18, 65:21,
65:22, 66:9, 67:20, 69:14, 69:15,
69:22, 76:25, 77:15, 78:25, 79:4, 79:9,
79:10, 79:24, 80:13, 80:18, 81:15,
81:16, 81:19, 82:17, 84:1, 85:11, 86:4,
86:7, 89:3, 89:14, 89:23, 90:10, 92:14,
93:10, 95:3, 95:22, 96:5, 96:7, 96:9,
96:19, 98:10, 98:21, 99:1, 99:8, 99:14,
99:17, 101:4, 101:9, 101:11, 101:20,
103:11, 103:12, 103:21, 104:4, 104:7,
104:9, 104:13, 104:16, 104:20, 105:3,
108:22, 109:4, 109:8, 111:20, 113:7,
114:5, 114:12, 114:16, 115:10,
115:11, 115:15, 122:23, 126:10,
126:18, 127:10
**above** [3] - 1:19, 129:6, 129:11
**above-entitled** [1] - 1:19
**above-styled** [1] - 129:11
**absolutely** [8] - 75:10, 81:6, 92:22,
93:4, 101:8, 114:24, 122:19
**accept** [4] - 19:7, 19:8, 69:11, 69:12
**accepted** [4] - 6:23, 7:1, 19:7, 27:19
**accidentally** [3] - 16:13, 18:4, 29:6
**according** [1] - 25:19
**accordingly** [1] - 88:23
**accuracy** [1] - 28:21
**accusation** [1] - 122:11
**accusations** [2] - 32:19, 123:1
**Act** [2] - 70:4, 70:5
**act** [10] - 12:12, 13:20, 15:19, 31:10,
42:4, 61:19, 98:16, 111:6, 123:4
**acted** [3] - 28:7, 28:8, 29:23
**acting** [4] - 23:25, 36:4, 79:12, 122:11
**action** [34] - 7:7, 9:19, 25:8, 31:6, 32:3,
44:5, 44:7, 47:12, 47:15, 47:19, 53:5,
53:9, 53:16, 53:21, 56:12, 56:20,
56:21, 57:20, 58:14, 59:14, 60:7, 65:9,
72:15, 89:12, 98:14, 110:10, 111:22,
111:23, 112:1, 113:7, 114:23, 115:19,
116:4, 116:5
**actionable** [1] - 122:13
**actions** [3] - 15:8, 63:4, 79:11
**actively** [1] - 70:2
**acts** [2] - 30:25, 110:3
**actual** [4] - 15:12, 16:11, 74:6, 99:15
**actually** [27] - 8:25, 11:9, 15:17, 24:10,
26:20, 27:15, 28:9, 28:23, 31:13,
36:21, 49:13, 53:24, 61:5, 63:10,
71:14, 74:11, 84:18, 85:14, 87:13,
91:6, 97:21, 102:25, 104:20, 106:5,
106:18, 109:6
**add** [2] - 45:6, 73:10
**added** [6] - 13:21, 14:10, 14:22, 18:18,
25:6, 29:6, 29:8, 41:17
**adding** [2] - 12:20, 26:21
**additional** [3] - 72:15, 82:7, 90:2
**address** [9] - 39:10, 40:11, 65:17,
74:19, 85:3, 94:1, 94:12, 94:14,

111:18

**addressed** [1] - 124:15
**adequate** [1] - 116:16
**adjourned** [1] - 128:15
**adjournment**............................ [1] - 2:8
**adjudication** [1] - 16:25
**adjust** [1] - 16:3
**administerial** [1] - 42:3
**admission** [2] - 30:18, 91:25
**admit** [3] - 29:17, 46:14, 48:13
**admitted** [2] - 59:8, 129:15
**ADROGUÉ** [77] - 5:6, 9:2, 9:9, 9:11,
    10:1, 10:19, 10:24, 11:2, 11:6, 12:5,
    12:16, 12:25, 13:5, 13:10, 14:1, 17:3,
    17:18, 17:20, 18:7, 18:17, 18:22, 19:2,
    19:6, 19:10, 19:17, 19:22, 19:25, 22:5,
    22:9, 22:13, 40:9, 42:17, 42:20, 43:7,
    43:12, 43:19, 43:23, 44:2, 45:1, 45:8,
    45:12, 45:21, 45:24, 46:3, 46:7, 46:12,
    46:17, 46:20, 46:23, 47:3, 47:18, 48:9,
    48:15, 48:19, 48:22, 56:19, 60:1, 62:8,
    63:1, 63:12, 63:14, 72:23, 74:8, 74:12,
    86:10, 94:3, 94:15, 114:1, 114:5,
    116:10, 117:4, 117:8, 117:18, 117:22,
    118:1, 118:14, 125:9
**Adrogué** [3] - 3:7, 3:8, 5:6
**adrogué** [7] - 16:12, 18:11, 18:12,
    20:10, 21:8, 40:8, 117:21
**advance** [1] - 37:8
**adversary** [1] - 31:6
**advise** [1] - 127:13
**advocating** [1] - 83:20
**affect** [1] - 14:16
**affected** [1] - 73:16
**affidavit** [2] - 48:4, 50:10
**affidavits** [1] - 70:16
**affirmative** [11] - 33:16, 35:7, 35:17,
    42:11, 59:15, 60:10, 60:11, 60:12,
    60:13, 60:14
**afield** [1] - 72:21
**afraid** [1] - 12:17
**after** [30] - 11:10, 20:19, 21:10, 28:11,
    29:3, 39:11, 44:5, 44:19, 45:15, 53:14,
    54:5, 66:23, 70:14, 79:21, 82:12, 84:7,
    102:5, 104:23, 104:24, 105:8, 105:11,
    109:10, 112:25, 113:12, 119:8,
    119:25, 120:9, 120:22, 124:19, 126:15
**afternoon** [2] - 11:10, 73:20
**afterwards** [1] - 36:25
**again** [16] - 13:22, 26:15, 39:2, 44:1,
    62:1, 67:9, 73:22, 81:2, 81:23, 82:12,
    82:14, 83:21, 95:1, 100:7, 109:10,
    113:1
**against** [45] - 7:7, 8:9, 9:19, 9:21, 14:14,
    15:9, 15:13, 21:11, 21:12, 24:24, 25:8,
    31:19, 32:16, 36:3, 36:14, 37:25,
    39:24, 47:15, 47:20, 59:14, 60:8,
    60:24, 61:13, 62:6, 64:18, 65:1, 68:3,
    68:19, 70:19, 70:24, 71:20, 77:2, 77:7,
    77:18, 77:20, 77:24, 77:25, 78:5, 78:7,

87:19, 89:7, 112:9
**agent** [1] - 69:11
**agents** [1] - 80:8
**ago** [9] - 5:23, 17:23, 23:7, 23:8, 49:24,
    75:22, 97:11, 97:13, 97:14
**agree** [6] - 17:9, 44:23, 48:16, 71:18,
    91:3, 91:5, 103:21, 111:9
**agreed** [9] - 23:2, 23:3, 45:18, 46:14,
    120:21, 125:2, 125:4, 125:5, 125:6
**agreement** [12] - 80:15, 90:10, 95:14,
    98:20, 101:14, 104:14, 113:15,
    124:17, 124:18, 124:22, 125:3, 126:16
**ahead** [11] - 23:2, 23:19, 24:7, 27:4,
    27:10, 27:13, 28:4, 31:25, 34:21,
    34:22, 36:22
**Aid** [1] - 82:15
**aiming** [1] - 32:5
**Alabama** [1] - 3:8
**ALEXANDER** [52] - 86:18, 86:20, 90:8,
    90:14, 90:18, 92:6, 92:12, 92:22,
    95:10, 96:4, 96:21, 96:25, 97:3, 97:12,
    97:15, 97:19, 97:24, 100:25, 101:8,
    101:13, 102:1, 102:9, 102:13, 102:21,
    103:1, 103:4, 103:7, 103:14, 103:19,
    103:25, 105:6, 105:18, 105:21,
    106:25, 107:8, 107:11, 107:16,
    107:22, 108:3, 108:8, 110:16, 110:19,
    111:17, 112:7, 112:11, 112:23, 113:2,
    113:5, 113:18, 113:24, 117:15, 118:21
**Alexander** [10] - 3:15, 5:11, 86:21,
    89:16, 92:4, 99:13, 101:7, 103:13,
    106:2, 109:18
**Alexanderj@passmanjones.com** [1] -
    3:18
**Ali** [8] - 5:8, 7:25, 16:10, 28:19, 47:23,
    65:5, 73:5, 73:7
**all** [96] - 6:11, 7:10, 8:16, 12:8, 14:17,
    14:18, 16:2, 16:17, 17:21, 20:17,
    22:14, 23:23, 27:3, 28:7, 29:18, 30:24,
    31:15, 32:24, 38:10, 38:23, 40:8,
    43:25, 44:24, 45:3, 48:25, 49:1, 51:7,
    51:8, 53:3, 58:3, 58:16, 58:17, 58:25,
    60:14, 60:20, 61:3, 62:11, 63:17,
    64:23, 65:22, 65:23, 67:16, 68:21,
    68:22, 69:15, 70:25, 72:8, 75:13,
    76:10, 78:14, 79:7, 79:22, 79:24, 80:1,
    80:5, 80:14, 80:18, 81:4, 81:11, 81:13,
    82:5, 82:17, 82:18, 85:10, 86:16, 89:2,
    89:20, 92:20, 92:21, 93:5, 95:2, 99:10,
    100:20, 101:3, 102:12, 102:20,
    103:16, 104:10, 107:13, 107:15,
    108:14, 108:15, 111:4, 113:3, 113:12,
    115:3, 118:20, 119:21, 124:6, 124:7,
    124:14, 126:13, 129:7, 129:11
**all's** [1] - 128:10
**allegation** [8] - 17:12, 100:5, 112:4,
    112:8, 112:12, 112:13, 115:10, 115:16
**allegations** [8] - 8:8, 10:20, 11:21,
    36:12, 57:19, 95:24, 96:10, 96:12
**alleged** [4] - 37:24, 95:25, 110:2, 115:20

**allegedly** [5] - 36:14, 56:13, 99:19,
    104:15, 118:10
**alleging** [3] - 71:21, 96:13, 124:11
**alleviate** [1] - 50:4
**allow** [9] - 17:25, 18:7, 35:5, 49:4,
    61:21, 63:14, 125:19, 126:2, 126:22
**allowed** [2] - 13:5, 57:1, 62:14
**allows** [1] - 31:10
**almost** [7] - 25:17, 71:21, 84:7, 84:19,
    97:14, 113:9, 115:5
**alone** [1] - 100:17
**along** [3] - 5:7, 40:20, 92:18
**already** [13] - 12:21, 13:4, 28:5, 34:22,
    43:6, 43:13, 43:14, 64:9, 64:10, 86:22,
    90:13, 97:7, 100:20
**also** [29] - 20:5, 23:3, 23:4, 25:6, 27:4,
    34:14, 35:7, 35:16, 37:11, 39:5, 52:13,
    54:13, 61:21, 64:3, 66:17, 67:10,
    67:12, 69:24, 70:11, 79:10, 93:13,
    95:13, 105:3, 110:13, 112:4, 112:5,
    112:16, 113:2, 113:5
**alterego** [1] - 69:2
**always** [3] - 54:6, 65:24, 109:1
**am** [112] - 6:17, 7:23, 10:11, 15:11, 16:7,
    18:11, 20:9, 20:10, 20:12, 21:9, 21:15,
    21:17, 21:22, 24:14, 27:24, 29:15,
    30:25, 31:3, 34:1, 34:8, 34:9, 34:14,
    34:17, 34:19, 35:3, 35:21, 36:1, 36:19,
    38:17, 38:21, 38:23, 40:6, 41:10,
    41:12, 41:15, 43:21, 44:14, 45:14,
    45:17, 45:19, 49:4, 56:9, 56:18, 57:2,
    57:3, 57:7, 57:10, 59:21, 60:2, 60:20,
    61:3, 61:8, 62:1, 65:13, 66:13, 66:14,
    67:25, 69:2, 70:3, 70:19, 75:14, 75:15,
    76:7, 77:6, 77:14, 83:7, 84:7, 84:8,
    84:17, 85:11, 91:11, 91:16, 92:9,
    92:12, 92:19, 96:8, 96:9, 96:17, 97:10,
    101:3, 102:11, 103:3, 103:13, 103:14,
    103:22, 111:11, 111:12, 111:20,
    113:6, 115:2, 117:13, 118:3, 118:16,
    118:17, 118:24, 119:19, 120:10,
    121:5, 122:15, 123:18, 124:2, 124:4,
    125:1, 125:21, 126:19, 126:25, 127:1,
    128:6
**amend** [4] - 41:25, 44:14, 73:9, 127:8
**amendable** [1] - 115:18
**amended** [41] - 12:19, 14:22, 25:5,
    26:16, 26:23, 28:12, 28:14, 28:22,
    28:24, 29:6, 29:10, 29:11, 29:13,
    29:16, 33:5, 34:24, 34:25, 36:12,
    42:22, 43:2, 46:16, 46:25, 47:24, 48:8,
    48:14, 49:8, 49:10, 49:14, 49:15,
    49:18, 49:24, 49:25, 50:1, 50:12,
    71:19, 98:9, 111:21, 125:14, 125:15,
    125:16
**amending** [4] - 27:25, 41:11, 41:15,
    45:14
**amendment** [3] - 41:12, 113:25, 126:23
**amends** [1] - 44:5
**American** [1] - 43:3

amount [3] - 62:4, 63:9, 113:13
amounts [4] - 112:25, 113:10, 113:11
an [90] - 6:15, 13:23, 15:13, 17:1, 17:10, 18:13, 20:14, 20:25, 23:9, 24:23, 27:24, 28:12, 32:2, 35:17, 41:1, 41:7, 41:8, 41:22, 42:2, 42:3, 42:22, 43:2, 43:10, 44:5, 45:8, 47:5, 47:6, 48:4, 49:4, 51:7, 51:15, 51:16, 55:22, 59:15, 59:25, 60:10, 60:14, 63:5, 68:17, 69:2, 71:19, 73:15, 75:21, 81:23, 82:7, 84:4, 84:15, 87:10, 90:25, 91:25, 92:7, 95:12, 95:17, 97:8, 98:5, 99:9, 100:22, 101:1, 101:16, 104:14, 107:16, 109:6, 110:9, 110:12, 110:13, 112:4, 112:8, 113:18, 114:3, 114:21, 115:1, 115:18, 115:21, 115:23, 115:24, 116:19, 118:3, 119:8, 122:10, 122:11, 123:4, 123:12, 123:19, 124:5, 125:2, 125:3, 125:19, 126:2, 127:9
ancillary [3] - 83:22, 84:3, 84:8
another [12] - 9:18, 10:5, 11:22, 21:23, 67:12, 81:7, 82:12, 84:3, 85:13, 90:20, 103:8, 123:3
answer [3] - 38:8, 46:9, 56:17
answering [1] - 109:21
anteroom [1] - 24:23
anti [17] - 17:10, 17:14, 17:16, 43:6, 43:8, 43:9, 43:11, 44:5, 45:16, 45:22, 46:6, 46:10, 47:2, 47:5, 47:6, 47:10, 47:16
anti-SLAPP [16] - 17:10, 17:14, 17:16, 43:6, 43:9, 43:11, 44:5, 45:16, 45:22, 46:6, 46:10, 47:2, 47:5, 47:6, 47:10, 47:16
any [29] - 8:8, 10:9, 22:24, 22:25, 23:11, 27:13, 30:21, 34:15, 35:2, 35:6, 36:4, 39:15, 44:5, 44:9, 47:20, 49:12, 62:13, 71:5, 78:25, 79:12, 84:6, 91:25, 99:5, 100:14, 111:6, 114:9, 116:4, 123:13, 129:15
anybody [2] - 49:3, 75:16
anymore [3] - 37:1, 46:4, 82:4
anyone [1] - 88:9
anything [24] - 12:2, 12:6, 13:6, 19:8, 23:15, 40:13, 43:16, 44:8, 60:11, 80:17, 85:21, 91:24, 92:24, 93:18, 96:8, 99:1, 99:24, 100:6, 103:21, 114:7, 124:3, 125:17, 126:10, 127:24
anyway [3] - 28:6, 86:6, 90:15
anywhere [1] - 38:15
apart [1] - 80:23
apologize [3] - 22:15, 89:1, 128:12
apology [1] - 22:16
App [1] - 69:24
apparent [1] - 102:18
apparently [8] - 5:25, 9:18, 10:10, 10:13, 25:24, 30:25, 31:25, 32:24, 34:22, 41:5, 41:18, 71:12, 82:6, 98:11, 99:13, 107:25, 110:3, 119:1
appeal [6] - 81:21, 81:24, 82:4, 82:6,

110:9, 115:21
appealed [1] - 116:7
appeals [5] - 25:15, 42:24, 52:15, 52:24, 54:2
appear [5] - 5:19, 8:8, 23:2, 23:3, 89:17
appearance [2] - 23:5, 23:6
appearances [2] - 5:4, 44:24
Appearances...........................[1] - 2:5
appeared [4] - 22:21, 24:5, 24:11, 73:25
appearing [3] - 21:17, 22:18, 29:25
appears [2] - 44:16, 50:9
appellate [3] - 90:20, 115:23, 115:24
apple [2] - 84:21, 84:23
applicable [2] - 110:24, 112:1
application [5] - 28:13, 47:25, 109:7, 114:15, 116:13
applies [2] - 34:7, 47:9
applying [1] - 43:23
appreciate [3] - 85:19, 128:10
appreciated [1] - 64:7
approach [4] - 6:7, 93:23, 97:15, 110:15
appropriate [1] - 106:15
approval [1] - 119:8
April [4] - 79:21, 81:5, 114:25, 124:8
arbitration [1] - 59:25
are [187] - 7:6, 8:7, 8:11, 9:5, 9:8, 11:21, 12:4, 12:15, 14:2, 14:11, 15:9, 15:23, 17:24, 17:25, 18:3, 18:16, 20:19, 21:20, 22:8, 22:10, 22:11, 23:6, 24:15, 26:5, 27:5, 31:15, 33:25, 35:8, 35:25, 36:8, 36:12, 36:14, 37:9, 38:24, 38:25, 40:1, 41:18, 42:6, 47:12, 47:16, 48:23, 49:8, 49:16, 49:17, 49:25, 50:7, 50:17, 50:18, 51:6, 51:24, 52:13, 52:18, 54:15, 54:23, 55:3, 55:12, 56:8, 57:15, 58:4, 60:19, 61:1, 63:24, 64:15, 65:3, 66:25, 67:23, 68:6, 69:7, 69:8, 71:13, 72:2, 72:4, 72:6, 72:8, 72:14, 72:15, 73:11, 73:12, 75:4, 75:17, 76:14, 76:15, 76:20, 77:15, 77:23, 79:1, 79:7, 81:18, 82:10, 82:11, 82:18, 82:22, 82:23, 82:25, 83:1, 83:14, 83:16, 84:1, 84:17, 84:20, 85:16, 85:18, 85:20, 86:3, 86:4, 86:5, 86:8, 86:13, 86:16, 86:24, 88:7, 88:11, 88:12, 88:13, 88:17, 88:20, 89:6, 89:8, 90:12, 91:9, 91:11, 95:15, 96:10, 96:13, 97:6, 97:24, 98:2, 98:4, 98:19, 99:10, 99:18, 99:19, 100:5, 100:13, 100:18, 100:19, 100:20, 103:21, 104:14, 106:16, 107:5, 107:8, 107:11, 107:14, 108:25, 109:4, 109:25, 110:7, 110:10, 110:14, 112:1, 112:3, 112:19, 113:4, 114:16, 114:17, 114:24, 115:17, 115:23, 115:25, 117:10, 117:19, 119:11, 120:14, 120:20, 122:2, 122:5, 122:10, 122:13, 122:20, 122:21, 123:25, 126:3, 126:10, 126:17, 126:18
aren't [1] - 47:14
argue [6] - 11:18, 16:7, 18:1, 33:12,

51:23, 73:17
argued [2] - 89:18, 114:25
arguing [2] - 50:17, 85:11
argument [1] - 67:12
arguments [7] - 51:8, 52:5, 54:15, 85:16, 89:16, 89:17, 90:24
around [4] - 16:22, 18:17, 41:4, 43:10
art [1] - 49:8
as [87] - 8:3, 14:11, 14:14, 15:6, 15:13, 16:10, 17:6, 17:21, 18:1, 18:5, 19:19, 23:24, 25:6, 25:7, 26:22, 27:25, 28:14, 28:18, 29:20, 30:2, 31:9, 34:17, 36:5, 37:18, 37:19, 38:20, 40:13, 40:16, 41:8, 41:11, 41:13, 42:5, 45:1, 46:7, 49:11, 49:25, 51:19, 52:19, 52:20, 58:5, 59:17, 59:18, 64:12, 64:13, 65:2, 65:3, 65:10, 76:10, 78:3, 78:5, 78:6, 78:25, 80:23, 85:1, 86:1, 89:5, 89:11, 90:1, 91:13, 91:22, 91:23, 92:2, 92:23, 100:22, 102:25, 104:6, 106:10, 106:12, 109:9, 111:6, 111:7, 112:12, 115:1, 115:17, 119:23, 120:17, 122:21
ask [14] - 7:4, 35:21, 38:6, 83:8, 85:14, 90:6, 90:9, 90:11, 97:15, 125:18, 125:25, 126:2, 127:16, 127:20
asked [4] - 15:17, 26:4, 26:17, 27:16, 64:4, 72:4, 72:17, 80:7, 111:1, 124:22, 124:23
asking [16] - 24:14, 31:12, 36:19, 38:24, 40:7, 43:21, 56:9, 60:20, 61:3, 62:15, 72:16, 81:18, 98:4, 111:24, 115:23, 115:25
assert [1] - 94:22
asserted [1] - 36:14
asserting [2] - 25:7, 37:21
assets [3] - 32:20, 116:16, 116:17
assigned [1] - 125:23
assignment [1] - 108:23
assistance [2] - 23:16, 32:15
associate [1] - 120:15
associates [2] - 32:10, 32:11
assume [1] - 85:16
assumes [1] - 118:24
assuming [1] - 37:16
assured [1] - 92:15
at [106] - 6:10, 6:12, 7:23, 9:13, 10:14, 10:16, 12:9, 14:17, 14:21, 16:3, 19:1, 19:4, 20:11, 21:1, 24:4, 24:5, 25:3, 25:22, 27:14, 27:15, 27:22, 27:23, 28:6, 28:11, 28:17, 30:21, 32:6, 33:2, 35:24, 36:18, 37:7, 40:3, 40:4, 41:6, 41:21, 42:5, 45:17, 45:18, 45:19, 45:20, 46:2, 46:5, 46:9, 47:1, 48:5, 49:20, 52:4, 52:23, 54:15, 57:6, 58:3, 62:2, 64:20, 71:23, 72:10, 74:5, 74:11, 75:5, 75:7, 75:13, 75:16, 75:20, 76:1, 81:10, 84:4, 84:21, 84:23, 85:14, 86:3, 86:15, 86:17, 87:11, 88:25, 89:10, 89:15, 90:6, 93:7, 95:6, 102:17, 105:10, 106:1, 106:2, 106:13, 107:2,

107:6, 107:13, 107:15, 111:1, 111:21, 112:12, 113:22, 116:16, 116:19, 117:21, 118:4, 118:8, 120:7, 124:25, 126:2, 127:3, 127:21, 128:15

**attached** [1] - 41:8
**attack** [2] - 70:15, 80:1
**attempt** [1] - 83:11
**attempted** [1] - 41:20
**attempting** [1] - 33:3
**attend** [1] - 24:9
**attention** [2] - 94:22, 109:16
**attorney** [5] - 14:3, 26:13, 40:18, 90:23, 90:25
**attorney/client** [1] - 70:25
**attorneys** [2] - 26:13, 92:20
**attorneys'** [13] - 25:20, 33:15, 44:6, 44:9, 54:22, 55:1, 55:3, 55:4, 55:5, 55:12, 61:11, 61:22, 61:24
**attributable** [1] - 44:7
**audience** [1] - 87:9
**Austin** [2] - 3:13, 52:24
**authority** [5] - 37:4, 106:6, 110:22, 111:6, 117:10
**automatic** [1] - 81:8
**automatically** [1] - 109:1
**awarded** [4] - 53:5, 54:5, 54:23, 76:5
**aware** [6] - 15:3, 38:2, 64:15, 66:8, 67:6, 103:3
**Azeemeh** [26] - 7:7, 8:1, 12:5, 12:7, 13:6, 15:19, 21:16, 22:19, 23:25, 64:18, 65:6, 73:4, 77:2, 77:8, 78:16, 93:14, 93:17, 95:6, 96:22, 96:25, 98:23, 99:2, 111:6, 121:4, 126:5

## B

**B** [1] - 52:3
**back** [21] - 17:20, 20:19, 26:9, 26:17, 35:3, 39:20, 41:18, 60:18, 81:5, 81:13, 82:12, 86:17, 88:4, 88:5, 95:6, 98:3, 101:22, 102:11, 116:19, 126:23
**background** [1] - 65:21
**backroom** [1] - 30:7
**ball** [1] - 111:14
**Ballasses** [2] - 25:16, 25:17
**Band** [1] - 82:15
**Band-Aid** [1] - 82:15
**bandy** [1] - 29:5
**bank** [17] - 13:22, 14:14, 65:1, 67:5, 73:10, 73:23, 77:3, 80:10, 83:4, 84:5, 86:22, 100:6, 100:10, 110:3, 110:4, 120:9, 126:7
**Bank** [36] - 5:3, 5:14, 7:8, 8:3, 8:9, 9:19, 12:20, 12:22, 23:14, 65:10, 71:20, 77:21, 78:1, 78:6, 79:11, 95:14, 95:17, 96:1, 96:14, 96:22, 102:4, 103:4, 105:20, 105:22, 111:15, 112:2, 112:9, 120:8, 121:4, 121:11, 122:7, 123:17, 123:22, 124:1, 124:2, 124:4
**BANK** [2] - 1:7, 4:1

**bank's** [1] - 115:6
**bankruptcies** [1] - 109:1
**Bankruptcy** [1] - 23:4
**bankruptcy** [75] - 23:8, 23:12, 23:17, 24:6, 24:8, 29:23, 29:25, 30:5, 30:7, 31:5, 31:6, 32:23, 35:24, 35:25, 36:1, 40:12, 40:17, 40:21, 66:10, 73:23, 73:24, 74:4, 81:6, 81:10, 81:19, 82:2, 82:4, 82:9, 82:12, 83:6, 96:16, 98:6, 98:7, 98:21, 98:25, 99:17, 99:25, 100:7, 100:11, 101:22, 102:7, 103:2, 104:2, 105:9, 105:14, 106:7, 106:11, 106:13, 106:21, 107:13, 107:15, 107:17, 107:19, 107:24, 108:2, 108:25, 109:16, 110:5, 113:8, 115:8, 115:11, 115:15, 115:20, 115:22, 115:25, 116:2, 116:6, 120:14, 120:24, 120:25, 121:23, 124:20
**Bar** [8] - 3:3, 3:7, 3:11, 3:16, 4:3, 4:4, 4:5, 4:12
**bar** [2] - 68:2, 70:23
**barratry** [1] - 68:9
**Barratry** [1] - 68:10
**based** [11] - 7:5, 12:12, 53:10, 55:21, 56:10, 57:4, 110:21, 113:22, 126:20, 127:6, 128:7
**basically** [9] - 23:18, 27:14, 33:18, 35:9, 39:3, 60:6, 74:14, 89:11, 109:19
**basing** [1] - 36:2
**basis** [12] - 23:22, 80:25, 82:11, 82:16, 97:8, 98:4, 100:7, 100:17, 100:22, 109:22, 110:10, 116:3
**bazaarest** [1] - 70:7
**became** [1] - 5:22
**because** [147] - 6:8, 6:15, 6:23, 7:5, 7:23, 8:10, 9:4, 9:6, 11:25, 12:1, 12:17, 13:5, 13:6, 14:2, 14:11, 14:13, 15:4, 15:8, 15:14, 16:5, 16:10, 16:19, 17:8, 17:16, 18:25, 19:2, 19:5, 19:12, 20:13, 22:11, 24:15, 24:22, 25:10, 31:7, 31:12, 33:3, 33:12, 34:13, 34:15, 36:15, 37:1, 37:18, 38:7, 38:16, 38:20, 39:21, 40:2, 40:16, 45:2, 45:3, 46:14, 47:7, 48:7, 48:9, 50:3, 51:10, 54:7, 55:9, 55:10, 55:23, 56:3, 56:12, 56:13, 57:6, 57:9, 57:17, 58:3, 61:2, 61:10, 61:20, 61:25, 66:15, 69:6, 69:19, 70:20, 71:5, 71:12, 71:15, 72:16, 72:24, 73:4, 73:10, 73:20, 74:14, 76:8, 76:12, 76:13, 77:1, 78:3, 80:7, 81:8, 82:15, 83:16, 83:24, 84:13, 84:25, 85:6, 88:1, 88:4, 88:16, 90:3, 91:9, 92:13, 92:16, 93:7, 94:13, 94:16, 94:17, 96:21, 99:7, 99:8, 101:15, 101:16, 101:22, 103:17, 103:20, 104:17, 105:1, 106:8, 106:14, 106:23, 108:1, 108:15, 108:22, 109:12, 109:16, 112:2, 113:21, 114:11, 114:13, 114:22, 115:19, 116:5, 118:12, 120:1, 121:5, 122:12, 122:20,

123:2, 124:7, 124:10, 124:23, 125:14, 125:15, 126:3, 126:13
**become** [3] - 36:21, 44:6, 67:6
**becomes** [2] - 33:1, 44:22
**been** [51] - 6:23, 7:1, 9:17, 9:20, 13:13, 16:25, 17:8, 29:5, 30:16, 35:22, 39:21, 39:22, 42:8, 43:14, 44:6, 50:24, 54:4, 54:21, 54:25, 59:22, 59:24, 64:16, 66:19, 66:21, 67:8, 67:22, 69:20, 75:2, 80:5, 86:13, 87:3, 90:16, 92:15, 95:2, 101:5, 101:6, 103:15, 104:21, 108:17, 111:19, 113:14, 115:13, 121:2, 121:13, 121:14, 121:22, 124:14, 124:25, 125:15, 128:14
**before** [34] - 1:20, 11:3, 11:6, 14:23, 17:14, 18:24, 21:10, 21:13, 25:11, 36:20, 40:17, 42:9, 51:13, 52:1, 60:19, 67:11, 71:22, 75:8, 77:17, 80:6, 94:20, 94:25, 103:8, 105:16, 105:18, 105:22, 106:3, 119:8, 120:3, 120:4, 122:22, 124:7, 126:10, 127:18
**begin** [1] - 52:5
**beginning** [4] - 33:3, 52:4, 54:15, 111:20
**begs** [1] - 34:24
**behalf** [16] - 5:17, 13:21, 15:20, 23:2, 23:4, 29:25, 30:11, 83:20, 95:25, 120:12, 122:7, 124:2, 124:4, 126:6, 126:7
**behind** [2] - 30:22, 80:25
**being** [11] - 13:2, 20:21, 27:7, 44:25, 49:17, 53:12, 64:1, 73:3, 73:11, 76:7, 124:11
**believe** [15] - 8:5, 23:22, 24:1, 24:9, 27:6, 59:2, 64:25, 71:25, 105:1, 105:2, 106:6, 106:9, 123:2, 124:14, 125:25
**belive** [1] - 72:2
**below** [1] - 42:25
**benefited** [1] - 111:15
**best** [1] - 101:13
**better** [1] - 48:20
**betting** [1] - 10:11
**between** [12] - 26:12, 30:8, 61:12, 64:6, 67:5, 69:12, 78:9, 96:13, 96:22, 108:21, 113:14, 127:16
**big** [4] - 67:23, 83:19, 101:21, 107:2
**bigger** [1] - 91:3
**bill** [1] - 117:16
**bit** [8] - 8:24, 23:7, 23:8, 27:8, 36:21, 48:20, 93:7, 94:10
**bite** [2] - 84:21, 84:23
**black** [2] - 98:14, 100:14
**blaming** [1] - 30:23
**Blunt** [1] - 52:23
**blunt** [2] - 24:18, 33:8
**board** [1] - 59:25
**body** [1] - 113:18
**boil** [1] - 114:12
**Bonnie** [2] - 6:20, 119:6
**borrower** [3] - 95:19, 120:13, 126:6

**both** [8] - 9:12, 27:25, 37:9, 41:11, 41:14, 100:4, 101:16, 117:14
**bottom** [1] - 117:9
**BRANCH** [2] - 1:7, 4:1
**breach** [7] - 79:1, 79:2, 79:6, 98:19, 99:21, 99:23, 124:22
**breach-of-contract** [1] - 79:1
**breached** [1] - 124:18
**break** [3] - 20:20, 86:6
**brief** [3] - 22:3, 62:8, 89:16
**briefly** [1] - 72:25
**bring** [3] - 35:8, 59:12, 63:24
**bringing** [3] - 40:16, 71:7, 71:12
**broad** [1] - 36:8
**brought** [14] - 6:15, 11:17, 15:17, 15:21, 39:24, 49:2, 49:3, 66:4, 71:15, 72:7, 74:21, 79:8, 109:15
**building** [18] - 30:20, 32:1, 32:6, 80:21, 95:17, 95:20, 101:1, 101:4, 101:10, 101:11, 101:12, 101:15, 101:16, 101:19, 112:15, 113:16
**bullied** [1] - 70:20
**bunch** [1] - 63:17
**burden** [21] - 52:10, 53:1, 53:13, 53:14, 54:7, 54:9, 55:8, 56:1, 56:6, 56:23, 57:12, 57:15, 57:18, 57:24, 58:17, 58:18, 59:1, 59:2, 59:8, 60:16, 60:17
**business** [5] - 31:9, 68:20, 70:3, 99:22, 112:21
**businesses** [1] - 32:4
**but** [134] - 8:8, 11:18, 12:21, 13:12, 13:15, 14:4, 14:23, 17:24, 19:3, 20:8, 20:20, 23:10, 24:9, 25:24, 26:13, 27:17, 27:21, 28:8, 28:22, 29:19, 34:6, 34:23, 35:15, 36:10, 36:17, 36:25, 38:22, 39:4, 39:5, 39:17, 39:20, 39:25, 40:10, 40:24, 41:6, 41:10, 43:12, 43:19, 44:12, 44:21, 45:8, 45:10, 45:12, 46:5, 46:7, 46:15, 46:20, 46:21, 47:3, 47:5, 48:13, 49:14, 50:9, 52:18, 53:18, 54:17, 55:19, 55:25, 59:10, 61:13, 62:2, 63:3, 63:6, 64:9, 64:17, 66:25, 69:5, 71:4, 71:11, 72:13, 72:15, 72:20, 73:18, 73:24, 75:5, 75:7, 75:20, 76:9, 76:16, 77:5, 77:19, 80:4, 81:22, 81:23, 82:22, 83:21, 84:2, 84:4, 84:8, 84:11, 84:18, 85:7, 85:17, 85:19, 87:10, 87:18, 88:9, 89:13, 90:6, 90:15, 91:5, 92:7, 93:13, 94:21, 95:5, 96:6, 97:4, 99:14, 100:20, 101:17, 102:19, 102:23, 105:3, 105:17, 105:21, 106:2, 107:13, 109:18, 110:7, 110:9, 111:16, 112:13, 113:6, 113:20, 114:14, 114:21, 116:12, 116:18, 121:13, 124:6, 126:13, 127:4, 127:10, 128:6
**buy** [1] - 76:11
**by** [58] - 1:22, 12:25, 17:10, 22:17, 23:17, 25:16, 26:23, 29:25, 30:2, 30:4, 30:21, 31:15, 40:25, 43:11, 50:9, 51:12, 53:8, 53:13, 57:22, 58:9, 59:24,

59:25, 63:6, 66:18, 66:20, 67:10, 67:20, 68:23, 69:2, 70:10, 70:15, 73:16, 74:2, 79:11, 81:11, 82:8, 83:12, 84:3, 95:25, 99:11, 100:5, 100:10, 102:23, 103:4, 103:7, 104:15, 105:12, 105:23, 110:20, 110:22, 112:24, 115:13, 126:4, 129:9, 129:12, 129:15, 129:19

# C

**C** [5] - 3:1, 3:15, 4:2, 5:1, 59:12
**Caldwell** [1] - 79:24
**California** [1] - 47:8
**call** [26] - 26:7, 28:19, 49:15, 86:1, 105:11, 119:14
**called** [6] - 26:2, 26:15, 26:20, 27:15, 64:3, 70:22
**calling** [4] - 49:8, 79:25, 80:8
**calls** [1] - 16:14
**came** [9] - 1:19, 18:24, 20:8, 66:22, 80:11, 83:10, 89:13, 120:4
**can** [94] - 6:7, 10:16, 12:9, 12:10, 12:12, 13:17, 13:20, 13:23, 14:12, 15:12, 15:16, 16:18, 16:23, 17:1, 17:18, 18:6, 18:8, 18:15, 19:3, 19:12, 19:17, 19:18, 19:20, 20:7, 25:13, 35:7, 35:15, 35:16, 36:24, 37:5, 38:13, 38:14, 38:18, 47:11, 50:15, 50:22, 51:2, 51:23, 53:19, 54:5, 55:7, 55:19, 58:19, 63:12, 63:18, 68:7, 68:11, 70:1, 71:1, 71:4, 73:6, 73:8, 73:12, 74:12, 74:16, 74:18, 75:14, 75:25, 77:18, 78:3, 83:1, 83:4, 84:5, 84:6, 85:12, 85:15, 85:16, 85:21, 87:9, 89:1, 93:6, 93:14, 94:4, 99:4, 100:21, 101:19, 101:20, 102:18, 102:19, 107:6, 108:11, 108:19, 114:13, 114:20, 116:9, 118:11, 118:21, 119:14, 121:5, 127:20, 127:21
**can't** [26] - 9:1, 12:2, 12:6, 13:6, 13:17, 17:10, 17:17, 26:6, 40:2, 54:10, 55:4, 55:19, 55:22, 56:11, 71:25, 72:2, 76:25, 84:7, 87:24, 93:17, 101:17, 101:22, 112:3, 116:4, 127:5, 127:6
**candid** [1] - 93:2
**candidly** [1] - 29:17
**candor** [5] - 63:17, 91:1, 91:15, 92:21, 122:22
**cannot** [4] - 9:12, 15:19, 71:4, 87:21
**capacity** [13] - 21:10, 21:21, 21:23, 23:23, 23:24, 24:2, 24:25, 28:7, 28:8, 28:9, 31:11, 109:5, 109:8
**Capital** [1] - 95:6
**captioned** [1] - 22:18
**car** [1] - 114:13
**carbon** [2] - 71:21, 74:17
**care** [5] - 33:8, 63:20, 63:22, 96:7, 99:8
**careful** [3] - 16:4, 122:18, 122:23
**carrier** [1] - 27:7
**carries** [1] - 54:7

**carry** [1] - 54:9
**case** [120] - 6:25, 8:6, 8:7, 8:10, 9:19, 12:22, 13:4, 15:18, 17:1, 21:18, 22:18, 22:21, 22:25, 23:1, 23:8, 24:12, 24:15, 25:6, 25:12, 25:18, 27:25, 29:23, 30:5, 30:14, 30:15, 32:23, 32:25, 33:10, 35:12, 36:7, 41:11, 41:24, 42:14, 43:11, 43:16, 43:25, 45:9, 47:6, 47:7, 47:8, 47:9, 47:13, 51:20, 52:14, 52:17, 53:3, 53:25, 54:4, 54:5, 54:13, 54:24, 55:9, 55:10, 56:3, 56:12, 56:22, 57:1, 57:15, 57:16, 58:7, 58:12, 58:14, 58:16, 61:15, 62:16, 63:15, 66:14, 67:13, 72:15, 74:15, 74:20, 75:11, 75:22, 76:2, 76:3, 76:17, 76:18, 76:19, 77:7, 77:23, 78:25, 79:3, 79:6, 79:8, 81:19, 82:2, 82:5, 83:21, 84:22, 89:5, 89:11, 89:12, 90:1, 90:17, 92:14, 92:18, 95:22, 96:2, 96:3, 98:6, 98:7, 98:21, 99:25, 110:12, 114:6, 115:22, 116:6, 124:15, 124:25, 126:12, 126:14, 128:13
**cases** [13] - 17:8, 21:17, 31:20, 33:11, 43:1, 63:15, 65:22, 66:10, 67:25, 69:16, 71:9, 109:12
**cash** [6] - 103:11, 104:4, 104:8, 104:22, 105:3, 105:4
**CAUSE** [1] - 1:2
**cause** [32] - 1:20, 7:6, 44:5, 47:12, 47:15, 47:19, 50:24, 50:25, 51:18, 51:19, 53:5, 53:16, 53:21, 54:19, 54:21, 55:14, 56:12, 56:20, 56:21, 57:20, 58:14, 80:4, 98:14, 110:13, 113:7, 115:19, 116:4, 118:6, 118:7, 129:11
**causes** [8] - 25:8, 60:7, 65:9, 72:14, 110:10, 111:22, 112:1, 114:23
**causing** [2] - 32:18, 50:8
**CC** [1] - 8:16
**censured** [1] - 35:23
**Center** [1] - 4:6
**certain** [2] - 27:6, 84:7
**certainly** [2] - 34:18, 110:7
**CERTIFICATE** [1] - 129:1
**Certificate............** [1] - 2:9
**certify** [3] - 129:6, 129:13, 129:17
**chain** [1] - 94:24
**challenges** [1] - 121:25
**chambers** [1] - 129:12
**chance** [2] - 36:17, 41:10
**change** [1] - 125:13
**changed** [2] - 70:18, 72:13
**Chapter** [1] - 74:1
**characterize** [1] - 103:22
**charge** [1] - 40:24
**Charles** [2] - 4:2, 5:13
**charles.conrad@pillsburylaw.com** [1] - 4:8
**check** [1] - 6:19
**chime** [1] - 59:4

**Chinese** [1] - 101:17
**chose** [1] - 95:15
**CHOUDHRI** [56] - 5:8, 6:13, 6:17, 7:8, 7:12, 8:5, 8:13, 8:18, 8:22, 64:14, 64:24, 65:7, 65:12, 65:16, 65:19, 68:11, 68:15, 68:17, 70:1, 74:18, 75:9, 75:23, 76:14, 76:22, 77:3, 77:12, 77:22, 78:8, 78:19, 93:1, 93:4, 94:1, 94:7, 94:11, 96:15, 116:25, 119:16, 119:20, 122:4, 122:7, 122:15, 122:19, 122:25, 123:7, 123:11, 123:15, 124:16, 125:18, 126:22, 127:2, 127:15, 127:19, 127:25, 128:2, 128:5, 128:9
**Choudhri** [61] - 5:8, 5:18, 5:20, 6:6, 6:7, 7:4, 7:25, 8:17, 16:10, 22:1, 25:11, 25:16, 28:19, 29:1, 30:17, 31:8, 31:14, 31:16, 31:19, 32:8, 32:10, 32:14, 32:16, 34:20, 35:22, 36:20, 36:23, 37:8, 37:9, 37:10, 37:17, 39:12, 50:11, 59:23, 60:22, 61:5, 64:16, 65:5, 67:16, 72:1, 72:22, 76:8, 78:18, 89:22, 92:23, 94:10, 95:3, 96:18, 97:1, 102:17, 104:5, 104:10, 104:15, 106:17, 108:22, 111:7, 119:17, 123:10, 127:12
**Choudhri's** [3] - 16:19, 21:24, 32:3
**Chris** [2] - 71:1, 71:2
**Christine** [1] - 1:20
**circuit** [1] - 43:17
**circumstance** [2] - 75:24, 76:24
**circus** [1] - 80:2
**citation** [4] - 41:19, 44:18, 44:20, 48:12
**citations** [1] - 42:6
**cite** [2] - 17:2, 25:13
**cited** [3] - 41:24, 47:7, 61:16
**citizens** [1] - 61:19
**claim** [30] - 8:11, 14:14, 16:12, 30:18, 31:23, 33:3, 33:16, 35:13, 45:2, 52:12, 55:18, 57:24, 62:24, 63:22, 64:18, 77:18, 77:20, 77:24, 78:5, 78:7, 79:1, 82:16, 98:8, 98:16, 99:15, 100:2, 110:6, 112:10, 113:9
**claimed** [3] - 15:13, 29:20, 61:13
**claiming** [2] - 33:2, 54:9
**claims** [21] - 9:7, 25:8, 32:16, 33:23, 36:3, 36:13, 36:15, 59:21, 60:24, 65:1, 77:12, 80:22, 82:20, 82:22, 82:23, 95:2, 97:9, 98:19, 99:18, 99:20, 100:21
**clarify** [6] - 74:19, 76:24, 78:24, 108:11, 121:1, 123:7
**clarity** [1] - 50:14
**clause** [1] - 95:18
**clauses** [1] - 95:14
**clear** [25] - 5:18, 21:18, 29:15, 34:8, 35:9, 35:12, 36:7, 36:16, 41:1, 49:7, 49:23, 59:13, 62:12, 64:17, 78:2, 78:4, 81:14, 94:24, 98:1, 99:11, 112:12, 114:19, 120:19, 122:16, 127:5
**cleared** [1] - 20:20

**clearly** [3] - 24:15, 26:24, 33:24
**CLERK** [4] - 6:22, 6:25, 7:19, 119:7
**clerk** [3] - 8:16, 27:16, 64:5
**clerk's** [1] - 22:6
**clerks** [1] - 19:9
**client** [14] - 12:1, 12:3, 14:4, 14:17, 25:1, 30:24, 31:20, 31:23, 40:15, 47:22, 48:1, 66:22, 70:15
**client's** [1] - 109:14
**clients** [1] - 12:1
**close** [3] - 29:3, 51:14, 89:13
**closed** [1] - 30:8
**closing** [1] - 67:11
**cloud** [1] - 51:6
**cocounsel** [1] - 5:7
**collateral** [1] - 108:15
**collection** [3] - 103:11, 104:5, 104:22
**come** [17] - 36:15, 39:20, 49:3, 60:19, 66:11, 66:14, 69:10, 69:19, 70:19, 76:20, 86:17, 90:9, 105:4, 109:14, 111:11, 126:23
**comes** [1] - 39:18
**comical** [1] - 15:2
**coming** [5] - 25:2, 32:25, 82:10, 98:3, 122:1
**comment** [1] - 86:12
**committed** [1] - 68:9
**Comms** [2] - 43:17, 44:3
**communication** [2] - 69:12, 94:17
**communications** [2] - 67:4, 121:3
**Companies** [3] - 31:14, 31:16, 35:23, 35:24, 94:8
**companies** [1] - 25:13
**company** [3] - 106:15, 106:16, 108:16
**compel** [2] - 51:10, 120:6
**compelled** [1] - 120:1
**competition** [1] - 70:5
**complaint** [6] - 16:11, 21:11, 33:5, 33:6, 62:6, 70:23
**completely** [1] - 69:4
**computer** [1] - 35:5
**concern** [7] - 89:4, 89:9, 89:10, 91:13, 106:5, 107:20, 111:19
**concerned** [8] - 16:5, 27:10, 77:15, 84:14, 104:7, 104:9, 104:13, 109:4
**concerns** [2] - 81:15, 105:3
**concert** [2] - 30:20, 79:12
**conduct** [3] - 51:25, 122:14, 123:5
**conducted** [1] - 31:8
**confer** [1] - 108:10
**conference** [7] - 23:10, 30:4, 72:17, 81:11, 104:2, 104:23, 105:11
**conferences** [2] - 80:6, 124:9
**confident** [1] - 121:5
**confidential** [5] - 70:25, 113:15, 120:14, 120:16, 120:21
**confirmable** [1] - 121:24
**confirmation** [1] - 124:12
**confirmed** [3] - 26:16, 26:21, 73:25

**confirming** [2] - 12:7, 40:25
**confused** [2] - 49:16, 82:6
**confusing** [1] - 13:12
**confusion** [4] - 49:12, 50:5, 78:4, 114:22
**connection** [1] - 96:22
**Conrad** [19] - 4:2, 5:13, 49:2, 79:19, 94:19, 97:18, 120:3, 120:15, 120:21, 121:3, 121:16, 122:3, 122:6, 122:12, 123:17, 123:18, 123:19, 123:20, 124:3
**CONRAD** [29] - 5:13, 7:15, 7:20, 9:25, 71:14, 71:17, 74:16, 79:16, 79:20, 81:2, 87:5, 94:21, 97:21, 98:1, 98:13, 99:6, 99:10, 100:4, 108:11, 108:14, 109:3, 110:18, 114:19, 116:23, 117:3, 118:9, 125:2, 125:5, 125:8
**Conrad's** [1] - 111:19
**Conrad/Bank** [1] - 124:1
**consider** [2] - 125:25, 127:11
**considered** [5] - 44:8, 80:5, 81:4, 100:20, 115:13
**conspiracy** [13] - 30:2, 78:9, 78:10, 82:1, 96:13, 98:8, 98:13, 111:23, 112:4, 112:10, 113:9, 113:17, 115:11
**conspired** [2] - 29:21, 32:22
**constantly** [2] - 80:1, 80:13
**constituted** [1] - 33:15
**constitutes** [2] - 42:15, 47:1
**contacted** [4] - 22:17, 26:19, 26:20, 67:4, 68:21, 70:2, 121:16
**contained** [1] - 31:2
**contains** [1] - 129:7
**contention** [1] - 52:19
**contents** [3] - 120:13, 120:20, 120:23
**continuance** [1] - 76:13
**continue** [4] - 19:22, 20:17, 33:22, 124:19
**continued** [2] - 29:1, 124:8
**continuing** [1] - 92:16
**contract** [8] - 32:18, 79:1, 98:20, 98:23, 98:25, 99:3, 99:21, 112:18
**contrast** [1] - 108:4
**control** [10] - 95:12, 95:15, 95:18, 105:13, 105:14, 106:19, 108:19, 110:25, 111:11
**controlled** [2] - 104:15, 107:20
**controlling** [2] - 106:5, 126:5
**controls** [3] - 89:3, 106:16, 108:22
**conversations** [4] - 26:12, 41:5, 51:24, 124:19
**conveyance** [1] - 99:22
**convincing** [1] - 36:16
**cool** [1] - 41:16
**copy** [26] - 6:15, 6:18, 7:16, 10:16, 18:8, 18:15, 18:20, 18:22, 19:20, 20:2, 20:6, 25:10, 26:2, 71:21, 74:17, 87:4, 93:20, 97:18, 110:17, 119:4, 119:10
**copying** [1] - 84:21
**corners** [2] - 36:11, 62:5
**corporate** [9] - 16:9, 34:19, 37:6, 37:17,

37:19, 39:13, 60:21, 61:6, 120:17
**correct** [15] - 7:12, 29:12, 35:10, 47:25,
57:17, 60:17, 72:22, 75:9, 76:14, 77:6,
99:6, 105:20, 117:24, 117:25, 129:7
**correctly** [3] - 8:19, 122:10, 129:14
**corresponding** [1] - 31:6
**cost** [1] - 129:17
**costs** [1] - 33:15
**could** [17] - 30:15, 46:15, 46:16, 49:2,
50:13, 51:15, 80:9, 85:2, 90:19, 95:16,
104:13, 107:2, 116:1, 116:7, 124:13,
125:24
**couldn't** [6] - 15:20, 34:2, 66:6, 84:15,
107:3
**counsel** [20] - 5:4, 9:2, 11:4, 11:21,
17:4, 18:7, 22:21, 23:17, 24:22, 27:22,
41:22, 63:14, 73:17, 86:22, 93:20,
97:25, 104:21, 108:10, 124:10, 129:9
**counsel's** [1] - 86:12
**count** [1] - 98:22
**Count** [2] - 99:14, 112:18
**counterclaims** [2] - 9:6, 33:21
**countless** [2] - 67:24, 67:25
**County** [5] - 1:21, 1:25, 66:5, 129:5,
129:25
**COUNTY** [2] - 1:6, 129:2
**couple** [5] - 18:3, 20:13, 49:7, 83:10,
109:10
**course** [5] - 31:1, 32:3, 85:18, 94:22,
115:19
**COURT** [248] - 1:2, 1:4, 5:2, 5:12, 5:20,
5:24, 6:1, 6:4, 6:7, 6:16, 6:19, 6:23,
7:2, 7:10, 7:13, 7:17, 7:22, 8:7, 8:15,
8:21, 9:13, 9:23, 10:2, 10:13, 10:17,
10:21, 11:1, 12:3, 12:14, 12:21, 12:24,
13:3, 13:8, 13:25, 16:21, 17:5, 17:19,
18:9, 18:20, 18:25, 19:4, 19:8, 19:11,
19:19, 19:24, 20:3, 20:7, 20:17, 21:4,
21:7, 21:20, 21:25, 22:4, 22:8, 22:11,
22:14, 24:13, 24:20, 29:10, 29:14,
29:18, 37:13, 38:2, 38:16, 39:4, 40:8,
42:14, 42:19, 43:5, 43:8, 43:18, 43:21,
43:25, 44:21, 45:5, 45:10, 45:17,
45:22, 45:25, 46:5, 46:9, 46:13, 46:19,
46:21, 46:24, 47:5, 47:14, 48:6, 48:13,
48:25, 50:2, 50:7, 50:15, 50:20, 52:16,
55:6, 55:15, 55:25, 56:8, 56:17, 56:21,
57:2, 58:2, 59:6, 63:8, 64:9, 64:15,
64:21, 65:2, 65:8, 65:14, 65:18, 71:11,
71:16, 74:5, 74:10, 74:14, 75:5, 75:11,
75:13, 76:1, 76:15, 76:25, 77:5, 77:10,
77:14, 78:2, 78:10, 78:21, 79:18, 85:8,
85:22, 86:3, 86:15, 86:19, 86:25, 87:3,
87:15, 87:17, 87:21, 87:24, 88:7,
88:11, 88:16, 88:20, 89:1, 90:12,
90:16, 90:25, 91:8, 91:18, 91:24, 92:4,
92:11, 92:13, 92:23, 93:2, 93:5, 93:11,
93:16, 93:22, 93:24, 94:5, 94:9, 94:19,
95:8, 95:21, 96:6, 96:16, 96:24, 97:2,
97:4, 97:13, 97:17, 98:12, 99:4, 99:7,

100:1, 100:24, 101:3, 101:9, 101:25,
102:8, 102:10, 102:15, 102:22, 103:3,
103:6, 103:10, 103:15, 103:20, 104:3,
104:19, 105:17, 105:19, 105:25,
107:5, 107:10, 107:14, 107:18,
107:25, 108:6, 108:13, 109:2, 111:16,
111:18, 112:8, 112:17, 112:24, 113:3,
113:6, 113:20, 114:2, 114:14, 116:18,
117:1, 117:13, 117:17, 117:20,
117:25, 118:2, 118:16, 118:23, 119:6,
119:14, 119:17, 122:2, 122:5, 122:9,
122:17, 122:20, 123:1, 123:9, 123:14,
124:6, 124:21, 125:4, 125:6, 125:13,
126:9, 126:25, 127:3, 127:18, 127:23,
128:1, 128:3, 128:6, 128:13
**court** [75] - 12:11, 12:15, 12:16, 12:20,
13:10, 13:19, 13:21, 14:6, 14:8, 14:19,
15:18, 16:25, 17:22, 19:18, 22:20,
23:12, 24:6, 24:12, 24:13, 24:14,
25:15, 31:5, 40:19, 42:2, 42:23, 48:3,
51:8, 52:14, 52:24, 54:2, 58:4, 71:19,
71:22, 72:1, 73:9, 74:4, 75:4, 80:3,
80:11, 81:3, 82:8, 82:9, 84:4, 85:22,
90:20, 91:9, 91:10, 91:12, 91:14,
91:15, 92:24, 93:3, 95:4, 101:22,
102:7, 104:25, 106:21, 109:16,
113:11, 115:13, 115:24, 115:25,
116:2, 116:6, 119:13, 120:15, 122:11,
122:23, 124:15, 129:12
**Court** [51] - 1:24, 2:9, 23:4, 23:18,
23:21, 27:15, 37:4, 37:21, 42:2, 43:1,
47:21, 52:1, 52:6, 54:18, 59:13, 62:2,
62:15, 64:4, 65:17, 72:16, 76:10, 83:3,
86:21, 90:19, 91:1, 92:1, 92:8, 92:21,
93:9, 95:13, 98:2, 98:15, 103:8,
103:25, 104:1, 104:7, 111:1, 111:3,
111:4, 115:2, 115:24, 116:21, 118:2,
118:6, 125:23, 128:7, 128:9, 129:4,
129:24, 129:25
**Court's** [4] - 91:6, 91:8, 94:22, 114:20
**courtroom** [5] - 17:4, 66:18, 87:8,
87:22, 88:22
**courts** [6] - 12:18, 13:7, 69:6, 89:9,
101:23, 114:10
**Covad** [2] - 43:17, 44:2
**CPRC** [3] - 28:16, 29:4, 33:25
**create** [5] - 29:22, 51:16, 79:13, 80:2,
80:10
**created** [1] - 51:12
**credit** [2] - 50:2, 50:9
**crime** [1] - 70:4
**cross** [2] - 58:7, 118:12
**CSR** [2] - 1:24, 129:23
**current** [4] - 6:18, 10:10, 30:24, 31:23
**currently** [2] - 21:18, 82:21

**Dajani** [2] - 120:7, 126:7
**Dajani's** [1] - 120:2
**Dallas** [2] - 3:17, 54:2
**damage** [1] - 82:1
**damaged** [2] - 78:13, 112:25
**damages** [17] - 32:18, 76:20, 79:14,
82:18, 99:8, 99:10, 99:12, 99:15,
100:3, 100:21, 109:25, 110:7, 112:19,
114:24, 124:23, 124:24
**Darjean** [1] - 66:21
**darn** [1] - 89:13
**Date** [1] - 129:24
**date** [9] - 27:16, 27:17, 50:9, 51:13,
51:16, 63:13, 127:20
**dates** [1] - 50:3
**David** [2] - 41:7, 41:10
**day** [12] - 1:18, 20:22, 45:19, 75:6, 75:7,
75:20, 76:2, 83:22, 89:10, 105:11,
116:19, 129:20
**days** [12] - 27:17, 32:25, 37:7, 61:7,
63:12, 63:16, 63:25, 64:6, 81:7, 89:21,
97:11, 109:10
**days'** [1] - 11:8
**dazzle** [1] - 85:21
**deal** [1] - 30:8
**dealing** [4] - 22:6, 90:3, 99:23, 106:23
**deals** [2] - 86:22, 126:15
**debtor** [9] - 107:1, 107:5, 107:8, 107:9,
107:10, 109:8, 110:25, 111:13
**deceased** [1] - 66:3
**December** [12] - 15:24, 27:19, 36:20,
51:4, 51:9, 58:1, 63:7, 64:7, 64:10,
64:11, 84:6, 84:10
**decide** [1] - 101:23
**decided** [3] - 24:7, 34:21, 73:9
**decides** [1] - 45:15
**decision** [4] - 25:15, 32:21, 84:14, 85:1
**decision-making** [1] - 32:21
**declaration** [6] - 28:19, 28:20, 47:23,
49:11, 49:19, 50:11
**declared** [1] - 28:20
**declaring** [1] - 49:22
**defendant** [7] - 7:20, 15:13, 26:22,
28:14, 78:14, 78:15
**DEFENDANT** [2] - 4:1, 4:11
**Defendant** [2] - 8:1, 65:6
**Defendants** [2] - 28:1, 30:3
**defendants** [3] - 18:5, 41:12, 112:24
**defense** [6] - 35:17, 59:15, 60:10, 60:12,
60:13, 60:14
**defenses** [2] - 35:7, 60:11
**definitely** [1] - 121:25
**defrauded** [1] - 17:1
**Del** [3] - 42:13, 43:16, 44:2
**delay** [2] - 85:1, 89:2
**delete** [1] - 44:5
**denial** [1] - 119:4
**denied** [9] - 51:10, 51:23, 73:24, 84:1,
113:22, 115:14, 118:13, 125:10,

## D

**D** [2] - 2:1, 5:1
**dad** [2] - 66:24, 70:15

125:12

**denies** [3] - 85:22, 90:19, 110:12
**deny** [5] - 117:13, 117:19, 117:22, 118:18, 118:23
**denying** [1] - 118:3
**depending** [1] - 14:24
**deposition** [16] - 31:12, 37:11, 37:15, 37:22, 37:24, 39:5, 51:19, 66:13, 120:2, 120:7, 120:16, 120:18, 120:19, 120:22, 120:23
**depositions** [7] - 16:18, 36:8, 36:10, 37:6, 39:12, 51:22, 62:4
**derivative** [1] - 98:16
**designed** [1] - 40:6
**desperation** [1] - 40:1
**despite** [2] - 24:25, 48:10
**destroy** [1] - 32:3
**determination** [1] - 58:5
**determine** [2] - 36:2, 79:2
**determined** [3] - 112:25, 113:10, 113:12
**device** [1] - 88:3
**did** [57] - 5:18, 5:24, 6:13, 12:13, 14:21, 16:6, 18:4, 19:4, 19:11, 24:2, 28:1, 28:15, 29:20, 33:5, 39:25, 40:13, 41:10, 44:15, 53:22, 57:10, 62:24, 63:22, 68:11, 69:11, 69:25, 70:10, 72:9, 72:23, 73:18, 79:22, 89:21, 92:12, 93:9, 94:5, 99:1, 100:6, 100:8, 102:4, 102:9, 102:13, 105:7, 105:19, 105:21, 109:15, 110:17, 110:18, 111:10, 112:16, 119:23, 120:10, 121:24, 122:3, 122:6, 124:19, 125:23, 126:19
**didn't** [32] - 6:21, 10:3, 11:14, 12:25, 13:1, 13:2, 13:3, 19:2, 19:8, 24:9, 28:3, 30:13, 39:18, 40:10, 48:16, 78:10, 80:16, 81:21, 81:23, 82:4, 86:14, 87:23, 88:2, 105:1, 106:1, 110:9, 113:20, 113:21, 115:22, 115:25, 116:7, 123:13
**difference** [2] - 112:17, 113:14
**different** [11] - 6:14, 14:25, 72:14, 75:23, 75:24, 76:16, 76:23, 78:24, 83:10, 104:10
**digress** [1] - 80:4, 81:23
**direct** [3] - 24:1, 29:24, 52:3
**directly** [2] - 8:15, 15:9
**disagree** [3] - 73:17, 102:25, 124:16
**disappear** [1] - 86:12
**disconnect** [1] - 58:15
**discovery** [50] - 10:25, 11:13, 11:16, 15:12, 16:8, 34:10, 34:14, 34:16, 34:19, 35:6, 35:21, 40:6, 47:20, 50:21, 50:23, 50:25, 51:1, 51:10, 52:1, 53:3, 53:4, 53:5, 53:17, 53:20, 54:1, 54:4, 54:6, 54:10, 54:11, 54:20, 55:2, 55:15, 55:16, 55:20, 56:25, 57:3, 57:11, 59:19, 60:4, 62:12, 62:13, 62:17, 63:17, 64:13, 66:12, 85:23, 113:1, 113:12, 127:16

**discrete** [1] - 71:18
**discussing** [2] - 51:4, 114:6
**discussion** [2] - 7:21, 104:6
**discussions** [1] - 95:1
**dismiss** [23] - 24:7, 26:4, 26:8, 26:24, 28:15, 33:14, 53:8, 53:12, 59:14, 61:19, 61:21, 63:3, 73:24, 81:9, 102:6, 102:7, 102:14, 103:2, 103:9, 103:12, 104:16, 105:7, 109:11
**dismissal** [9] - 17:15, 30:4, 33:14, 43:13, 47:1, 47:7, 61:14, 61:22, 104:20
**dismissed** [22] - 17:13, 17:16, 25:18, 30:7, 31:5, 33:21, 40:22, 45:9, 45:21, 45:25, 56:13, 56:15, 57:17, 60:12, 81:10, 81:20, 82:3, 95:2, 98:7, 104:2, 105:9, 105:10
**dismissing** [1] - 17:10
**disparagement** [1] - 99:22
**disprove** [4] - 57:19, 57:24, 58:4, 59:2
**dispute** [4] - 67:23, 106:5, 108:21, 108:24
**disputes** [1] - 22:24
**disqualification** [1] - 71:8
**disqualified** [1] - 71:6
**disrespect** [2] - 102:23, 123:13
**disrupted** [1] - 29:22
**district** [3] - 22:20, 73:19, 82:7
**DISTRICT** [2] - 1:4, 1:7
**District** [3] - 23:20, 129:5, 129:25
**ditch** [1] - 83:11
**division** [1] - 61:18
**divorced** [1] - 70:14
**do** [121] - 6:8, 9:21, 10:15, 11:5, 11:23, 12:2, 12:6, 12:9, 12:10, 13:6, 13:15, 13:18, 14:13, 15:18, 16:17, 18:20, 18:22, 19:9, 19:22, 21:5, 23:15, 23:22, 28:3, 35:14, 35:16, 36:19, 37:13, 38:6, 38:11, 38:14, 38:15, 39:7, 40:6, 40:24, 41:6, 42:14, 43:16, 43:18, 45:11, 47:6, 48:6, 50:20, 50:22, 55:6, 55:25, 56:10, 57:9, 58:25, 63:12, 63:17, 64:16, 64:19, 67:16, 69:22, 71:18, 72:6, 73:6, 73:8, 73:9, 75:16, 76:10, 78:3, 80:12, 82:10, 82:20, 83:2, 83:3, 85:17, 88:2, 88:23, 88:24, 90:5, 90:6, 90:7, 91:3, 91:18, 93:3, 93:17, 93:20, 93:21, 93:22, 96:7, 96:19, 99:24, 103:20, 104:8, 104:9, 106:3, 111:8, 111:12, 112:15, 114:4, 115:24, 115:25, 116:21, 117:1, 117:3, 117:14, 118:4, 118:5, 118:25, 121:10, 124:19, 127:4, 127:7, 127:12, 127:14, 128:1, 128:3, 128:11, 129:6
**docket** [1] - 20:13
**document** [4] - 49:10, 49:11, 49:20, 49:21
**documents** [2] - 89:15, 110:24
**dodging** [1] - 74:24
**does** [12] - 16:15, 17:4, 19:18, 35:6,

36:15, 36:17, 45:4, 55:20, 58:12, 93:8, 107:22, 108:24
**doesn't** [23] - 8:8, 8:10, 14:16, 16:14, 17:17, 19:19, 33:21, 39:15, 45:2, 48:7, 48:9, 49:9, 55:24, 58:2, 64:23, 67:4, 99:1, 107:22, 109:23, 110:11, 111:18, 121:8
**doing** [20] - 14:11, 14:20, 15:24, 20:12, 25:24, 26:5, 30:25, 39:21, 39:22, 68:20, 70:3, 73:11, 73:12, 79:4, 80:11, 82:25, 83:1, 106:19, 122:13, 123:3
**Dolcefino** [5] - 32:12, 67:16, 69:21, 69:23
**dollar** [1] - 80:23
**dollars** [1] - 125:22
**don't** [94] - 6:4, 6:24, 7:19, 7:23, 8:2, 9:3, 9:15, 13:16, 13:23, 14:17, 19:12, 19:20, 20:24, 23:15, 26:12, 30:17, 33:8, 33:22, 34:25, 36:8, 36:9, 37:1, 37:15, 39:16, 40:10, 43:10, 44:23, 45:13, 48:15, 50:15, 53:16, 55:8, 56:2, 57:7, 58:13, 59:2, 61:1, 61:10, 61:11, 63:20, 65:2, 65:10, 68:15, 70:8, 70:9, 77:8, 77:18, 77:19, 78:5, 80:16, 80:17, 82:3, 84:24, 85:21, 88:7, 88:9, 88:16, 90:5, 90:6, 90:14, 92:5, 92:8, 92:17, 93:19, 97:5, 99:8, 100:12, 100:17, 101:4, 101:11, 102:17, 102:23, 103:16, 103:19, 106:8, 106:13, 106:19, 106:23, 110:5, 110:6, 113:23, 114:10, 114:22, 115:17, 119:6, 119:12, 122:8, 124:2, 126:19, 126:20, 127:24
**done** [15] - 17:14, 23:23, 23:24, 31:1, 32:24, 36:9, 38:4, 68:5, 70:6, 85:11, 85:20, 112:9, 119:13, 121:21, 124:3
**doubled** [1] - 28:23
**down** [15] - 9:14, 16:19, 20:9, 23:1, 28:23, 35:4, 40:1, 62:7, 76:20, 88:4, 100:2, 102:21, 111:14, 114:12
**downstairs** [4] - 9:22, 15:22, 22:6, 23:20
**dozen** [1] - 31:19
**dragging** [1] - 86:11
**draw** [1] - 94:21
**DRINNON** [64] - 4:11, 5:16, 5:22, 5:25, 6:2, 6:6, 8:19, 8:23, 9:4, 9:10, 9:15, 9:24, 10:5, 10:15, 11:5, 12:23, 15:4, 16:23, 18:6, 18:8, 18:14, 19:15, 21:2, 21:5, 21:9, 21:22, 22:2, 22:16, 24:17, 24:21, 29:12, 29:16, 29:19, 34:4, 37:23, 38:3, 38:18, 39:9, 48:23, 59:4, 59:7, 60:2, 62:20, 63:13, 63:19, 64:12, 64:19, 68:10, 68:13, 68:16, 69:25, 75:12, 77:9, 85:5, 85:10, 85:24, 86:9, 87:1, 87:13, 87:18, 87:23, 88:15, 88:19, 88:24
**Drinnon** [77] - 4:12, 5:16, 5:17, 9:14, 11:11, 13:13, 14:2, 14:16, 14:17, 15:5, 15:6, 17:13, 18:10, 18:12, 20:4, 20:10,

21:1, 22:15, 24:25, 29:21, 29:23, 30:6,
30:8, 30:10, 30:19, 32:2, 32:5, 32:7,
32:9, 32:15, 32:17, 32:19, 32:22, 41:3,
41:21, 41:23, 44:16, 49:4, 52:13,
52:19, 53:12, 54:8, 54:22, 65:21, 66:1,
66:3, 66:17, 67:2, 67:21, 67:24, 68:2,
68:12, 69:13, 69:14, 70:1, 70:2, 70:8,
70:11, 70:15, 70:24, 71:8, 72:19,
79:17, 81:16, 84:13, 85:8, 86:1, 86:8,
87:7, 88:20, 105:13, 105:17, 110:20,
121:5, 121:6, 127:17
**Drinnon's** [5] - 30:18, 30:22, 31:2, 31:7,
72:11
**Drive** [1] - 3:4
**drive** [2] - 70:24, 71:3
**driving** [1] - 30:22
**drumming** [1] - 50:8
**due** [1] - 85:10
**during** [3] - 24:23, 86:1, 101:14
**duty** [5] - 91:1, 91:15, 92:21, 92:25,
122:22
**Dward** [1] - 66:20

### E

**e** [31] - 8:13, 8:15, 27:14, 27:24, 41:6,
41:7, 45:15, 46:15, 68:18, 92:7, 93:8,
93:18, 94:1, 94:3, 94:5, 94:7, 94:11,
94:16, 94:20, 94:24, 96:7, 120:2,
120:3, 121:18, 123:19, 123:20,
123:21, 126:4, 126:8
**E** [5] - 2:1, 3:1, 5:1
**e-mail** [25] - 8:13, 8:15, 27:14, 41:6,
41:7, 45:15, 46:15, 68:18, 92:7, 93:18,
94:1, 94:3, 94:5, 94:11, 94:16, 94:20,
94:24, 96:7, 120:2, 123:19, 123:20,
123:21, 126:4
**e-mailed** [2] - 94:7, 120:3
**e-mailing** [1] - 126:8
**e-mails** [3] - 27:14, 93:8, 121:18
**each** [3] - 35:13, 54:3, 113:19
**earlier** [4] - 41:9, 51:15, 91:10, 123:12
**earliest** [1] - 127:20
**easier** [1] - 36:22
**easily** [1] - 53:13
**effect** [1] - 73:16
**effectively** [2] - 115:23, 116:1
**effectually** [1] - 42:22
**efforts** [1] - 30:22
**eight** [3] - 28:4, 45:15, 66:5
**either** [7] - 7:16, 23:25, 39:12, 60:21,
82:7, 100:21, 108:23
**elected** [2] - 38:22, 49:15
**electronically** [2] - 10:17, 117:1
**element** [1] - 35:13
**elements** [3] - 52:11, 53:15, 53:21
**eleven** [1] - 101:2
**Elizabeth** [1] - 4:3
**Elm** [1] - 3:16
**else** [15] - 9:3, 16:4, 20:20, 20:21, 60:11,

64:10, 80:21, 85:21, 97:6, 107:6,
113:10, 115:13, 118:20, 125:17
**email** [2] - 94:12, 94:14
**Email** [6] - 3:6, 3:10, 3:14, 3:18, 4:8,
4:15
**emergency** [16] - 10:25, 11:12, 28:12,
30:3, 47:25, 51:9, 51:11, 51:12, 51:16,
51:25, 54:14, 59:20, 69:17, 85:23,
105:12, 127:9
**employ** [1] - 24:10
**enacting** [1] - 25:1
**end** [10] - 45:19, 75:5, 75:7, 75:20, 76:1,
79:1, 89:10, 107:7, 116:19, 120:10
**ended** [2] - 25:9, 40:21
**ends** [1] - 82:13
**engaged** [1] - 70:3
**engaging** [1] - 123:5
**enough** [4] - 27:19, 36:9, 104:8, 120:6
**enrichment** [2] - 99:24, 113:13
**enter** [1] - 118:3
**entered** [4] - 32:2, 95:24, 111:1, 120:1
**enterprise** [1] - 32:3
**entire** [4] - 26:11, 71:3, 80:2, 113:18
**entirely** [1] - 51:14
**entities** [3] - 31:9, 31:17, 104:11
**entitled** [7] - 1:19, 34:9, 35:18, 35:21,
36:2, 59:16
**entity** [4] - 14:25, 107:21, 108:16,
108:20
**equity** [1] - 116:14
**equivalent** [1] - 41:25
**escape** [1] - 17:10
**especially** [1] - 95:11
**essential** [1] - 35:13
**essentially** [5] - 41:16, 54:17, 89:11,
90:1, 91:25
**establish** [10] - 52:10, 52:11, 52:20,
53:15, 53:20, 55:13, 55:17, 56:6,
57:25
**establishes** [3] - 52:22, 57:22, 59:15
**establishing** [1] - 53:8
**estate** [6] - 31:8, 31:18, 113:19, 114:7,
114:9, 114:11
**estoppel** [1] - 78:13
**et** [1] - 33:25
**Et** [1] - 34:4
**Europe** [6] - 12:2, 12:6, 12:7, 13:7, 73:4,
75:3
**evasive** [1] - 38:8
**even** [24] - 17:12, 34:25, 35:22, 38:20,
49:18, 51:13, 53:18, 57:10, 58:12,
58:20, 60:10, 63:16, 66:6, 69:5, 84:21,
88:7, 94:25, 99:19, 100:1, 110:5,
110:6, 110:10, 121:13
**event** [1] - 35:2
**events** [2] - 28:21, 119:25
**ever** [4] - 44:25, 91:12, 112:14, 115:17
**every** [9] - 14:19, 17:4, 19:18, 71:21,
90:16, 91:2, 92:9, 92:15, 99:11

**everybody** [7] - 9:13, 20:20, 70:20,
79:18, 85:15, 87:17, 98:14
**everyone** [2] - 16:2, 41:16
**everything** [28] - 6:25, 14:11, 16:4, 24:2,
40:25, 48:1, 62:16, 63:4, 69:8, 73:11,
83:1, 85:12, 92:19, 94:13, 95:22, 96:7,
96:10, 109:24, 112:14, 113:9, 114:12,
114:22, 114:24, 115:12, 118:20,
125:9, 125:24, 126:15
**evidence** [34] - 35:9, 35:11, 35:12, 36:4,
36:16, 36:18, 39:15, 52:8, 52:21, 53:7,
53:9, 53:19, 57:22, 57:23, 58:10,
58:19, 58:21, 58:24, 59:13, 59:23,
69:9, 75:25, 80:10, 90:23, 91:6, 91:23,
97:22, 97:25, 100:13, 100:19, 109:23,
110:1, 125:20, 129:8
**evidentiary** [1] - 91:21
**ex** [1] - 66:4
**ex-wife** [1] - 66:4
**exact** [3] - 72:12, 89:17, 115:5
**exactly** [7] - 9:5, 9:7, 47:18, 64:4, 71:21,
109:20, 115:4
**example** [2] - 33:19, 95:17
**except** [2] - 16:13, 111:7
**excuse** [3] - 11:4, 79:2, 79:7
**excused** [5] - 79:13, 85:14, 86:8, 86:16,
88:20
**exercise** [3] - 53:11, 95:18, 110:23
**exercising** [1] - 95:18
**exhibit** [1] - 41:8
**exhibits** [1] - 129:15
**exist** [3] - 33:22, 91:6, 97:23
**exists** [3] - 13:4, 30:8, 35:13
**expedited** [2] - 23:9, 60:4
**expenses** [2] - 25:21, 31:21
**Expiration** [1] - 129:24
**explained** [1] - 40:18
**express** [1] - 119:24
**expressing** [1] - 73:2
**expressly** [1] - 83:2
**extensive** [2] - 75:21, 104:5, 104:6
**extensively** [1] - 89:22
**extent** [4] - 17:9, 54:8, 56:1, 64:22
**extort** [1] - 32:7
**extracontractually** [1] - 36:4
**extreme** [1] - 105:3

### F

**F.3d** [1] - 44:3
**F.3rd** [1] - 43:17
**facie** [12] - 35:12, 52:11, 55:9, 56:3,
56:12, 56:22, 57:15, 57:16, 58:12,
58:14, 59:13
**fact** [10] - 16:24, 34:21, 35:22, 43:6,
61:15, 70:20, 88:10, 92:17, 104:12,
104:16
**facts** [15] - 15:12, 21:14, 28:21, 28:24,
36:2, 36:14, 37:24, 38:11, 60:24,
66:11, 66:14, 66:25, 67:1, 69:19,

70:19

**failed** [1] - 24:22
**failure** [1] - 76:3
**fair** [3] - 69:8, 99:23, 102:6
**faith** [2] - 23:22, 99:23
**fall** [1] - 80:23
**fallacy** [1] - 31:4
**fallout** [1] - 101:20
**false** [2] - 32:16, 32:19
**familiar** [1] - 101:3
**family** [4] - 40:3, 63:25, 65:23, 67:8
**Fannin** [1] - 4:6
**far** [2] - 71:13, 72:21
**fast** [2] - 15:16, 61:8
**father** [3] - 66:1, 66:2, 66:19
**fed** [1] - 71:2
**federal** [4] - 10:6, 40:19, 47:8, 82:8
**feel** [7] - 14:18, 71:13, 76:16, 76:17, 89:25, 119:18, 121:11
**fees** [13] - 25:20, 33:15, 44:7, 44:9, 54:22, 55:1, 55:3, 55:4, 55:5, 55:12, 61:11, 61:22, 61:24
**feet** [1] - 61:4
**felt** [2] - 11:25, 84:25
**few** [6] - 6:12, 6:18, 34:1, 38:4, 72:14, 86:15
**fiduciary** [1] - 126:5
**fighting** [1] - 61:2
**figure** [6] - 8:12, 11:25, 15:24, 72:5, 105:1, 118:25
**file** [28] - 12:25, 13:2, 13:23, 14:5, 24:24, 29:4, 33:20, 45:2, 45:16, 50:3, 50:9, 64:23, 68:3, 70:23, 72:23, 73:9, 73:18, 81:23, 82:12, 107:6, 110:9, 114:2, 115:22, 121:23, 127:23, 128:2
**filed** [82] - 6:5, 6:9, 6:14, 7:16, 8:19, 8:21, 8:22, 9:6, 9:18, 10:14, 10:22, 11:15, 12:19, 13:13, 17:14, 18:2, 18:21, 18:24, 19:1, 20:15, 21:11, 21:12, 23:18, 25:5, 25:17, 27:11, 27:21, 28:4, 28:5, 28:6, 28:12, 28:18, 28:23, 33:1, 34:23, 40:19, 41:4, 41:13, 42:10, 43:6, 44:6, 44:11, 45:20, 45:22, 46:1, 46:5, 46:10, 46:15, 46:16, 46:22, 47:1, 47:17, 47:25, 48:1, 48:5, 51:13, 57:13, 62:9, 62:11, 63:2, 64:7, 64:11, 71:19, 72:12, 73:1, 73:23, 74:2, 74:3, 78:20, 81:6, 81:9, 83:5, 103:4, 105:12, 109:6, 110:20, 111:21, 117:2, 120:22
**files** [2] - 41:21, 52:9
**filing** [9] - 10:10, 21:10, 23:14, 26:23, 27:20, 30:10, 72:4, 82:22, 84:22
**filings** [1] - 120:24
**final** [1] - 104:24
**finally** [1] - 59:4
**finance** [1] - 31:25
**financing** [2] - 31:20, 31:24
**find** [7] - 17:2, 69:2, 73:4, 88:21, 97:22, 97:25, 119:15
**finding** [1] - 69:2

**fine** [7] - 9:9, 18:14, 19:21, 47:3, 82:20, 85:17, 105:3
**finish** [6] - 68:11, 68:14, 68:16, 70:1, 85:5, 125:1
**fire** [1] - 61:4
**firearms** [1] - 32:10
**firm** [1] - 40:3
**Firm** [2] - 3:4, 3:12
**first** [28] - 10:21, 11:2, 17:20, 23:6, 29:13, 29:16, 34:24, 36:12, 47:24, 61:4, 83:15, 83:24, 88:1, 88:6, 89:12, 89:18, 89:23, 89:25, 98:10, 102:14, 104:20, 104:22, 105:8, 117:9, 118:12, 119:21, 126:18, 126:19
**five** [2] - 11:8, 89:21
**fix** [4] - 65:13, 79:23, 115:18, 116:9
**fixed** [2] - 60:5, 77:17
**flatly** [1] - 82:23
**flux** [1] - 48:7
**focus** [1] - 99:4
**focusing** [1] - 99:16
**folks** [1] - 35:21
**follow** [2] - 88:3, 127:8
**followed** [2] - 25:4, 64:4
**following** [4] - 1:18, 23:19, 24:12, 26:8
**follows** [1] - 29:20
**for** [192] - 5:4, 5:14, 5:19, 6:18, 6:25, 7:6, 7:8, 7:24, 9:2, 10:3, 10:25, 11:12, 11:16, 12:12, 14:3, 14:8, 14:25, 15:24, 16:8, 16:9, 20:9, 20:22, 21:17, 22:18, 23:5, 23:18, 23:24, 24:4, 24:5, 24:8, 25:1, 25:13, 25:23, 27:7, 27:8, 27:16, 28:13, 28:25, 30:16, 30:24, 31:2, 31:7, 31:12, 31:17, 33:16, 33:19, 33:20, 33:23, 35:4, 35:5, 35:12, 36:1, 37:6, 37:8, 37:11, 37:17, 37:18, 38:24, 39:21, 39:23, 40:7, 44:6, 44:10, 48:4, 49:14, 50:18, 50:25, 51:2, 51:9, 52:5, 52:6, 52:8, 53:25, 54:3, 54:17, 54:20, 55:2, 56:3, 56:12, 56:21, 58:14, 58:18, 58:20, 58:22, 58:24, 60:6, 60:12, 60:14, 60:20, 61:4, 63:25, 64:1, 64:10, 64:11, 65:9, 65:24, 66:5, 66:21, 67:7, 67:22, 68:19, 69:17, 69:19, 71:2, 71:7, 71:22, 71:23, 72:5, 72:17, 73:8, 73:20, 75:2, 77:3, 77:7, 77:25, 78:12, 79:17, 79:18, 80:3, 80:7, 80:15, 81:18, 82:16, 82:21, 83:8, 85:22, 86:4, 86:21, 86:22, 87:11, 88:15, 89:2, 93:20, 97:8, 97:11, 98:4, 98:5, 99:9, 100:19, 100:22, 102:14, 102:24, 103:22, 103:23, 105:5, 105:7, 106:4, 106:20, 107:19, 108:11, 109:22, 109:25, 110:11, 111:7, 111:8, 111:24, 111:25, 114:2, 114:15, 114:24, 115:25, 116:3, 116:13, 118:7, 118:8, 119:1, 119:21, 119:22, 120:17, 121:7, 121:15, 123:12, 123:23, 124:22, 124:23, 125:20, 126:7, 127:9, 127:11, 127:16, 127:21, 128:14, 129:5, 129:9, 129:17

**FOR** [3] - 3:2, 4:1, 4:11
**force** [1] - 30:22
**fore** [1] - 84:5
**foreclose** [4] - 84:6, 89:7, 108:18, 117:11
**foreclosing** [1] - 128:7
**foreclosure** [20] - 13:22, 14:12, 70:9, 72:3, 73:13, 73:16, 73:21, 76:2, 80:24, 83:2, 83:5, 83:17, 83:18, 84:9, 94:25, 96:12, 101:19, 107:12, 121:15, 123:23
**foreclosures** [1] - 114:8
**foregoing** [1] - 129:6
**foreshadowed** [1] - 25:3
**forged** [1] - 108:23
**forget** [1] - 61:24
**form** [2] - 125:5, 125:6
**former** [1] - 30:23
**forth** [5] - 14:14, 28:21, 62:21, 62:22, 73:15
**forum** [4] - 8:24, 9:17, 11:21, 14:13
**forward** [20] - 11:9, 11:12, 11:15, 19:3, 24:18, 29:2, 33:6, 34:11, 34:17, 34:18, 35:1, 38:10, 44:20, 72:9, 80:24, 82:15, 82:19, 83:4, 84:9, 85:2
**forwarded** [3] - 94:11, 94:17, 123:20
**found** [5] - 59:24, 74:23, 97:1, 109:9, 109:15
**four** [6] - 25:7, 30:16, 36:11, 59:20, 60:6, 62:5
**fourth** [2] - 49:13, 49:25
**frankly** [4] - 13:12, 14:11, 33:8, 38:6
**fraud** [7] - 7:6, 60:14, 64:18, 65:9, 65:22, 67:20, 77:7, 78:12, 99:21
**fraudulent** [1] - 99:21
**free** [1] - 119:18
**frivolous** [1] - 60:10
**from** [37] - 17:13, 20:16, 23:20, 27:16, 27:24, 32:7, 34:19, 38:9, 41:23, 42:22, 44:12, 48:2, 53:19, 53:20, 55:20, 67:14, 71:1, 78:14, 79:14, 79:21, 80:8, 80:9, 81:12, 82:7, 84:16, 87:7, 95:6, 101:14, 101:20, 104:1, 105:4, 111:20, 114:25, 121:12, 123:25, 126:14
**front** [20] - 11:22, 13:16, 14:6, 19:12, 23:10, 24:6, 69:5, 71:13, 72:24, 73:2, 75:18, 89:4, 89:8, 93:17, 102:19, 103:16, 117:9, 118:17, 126:13, 126:21
**frustrated** [1] - 62:2
**frustration** [1] - 73:3
**fully** [1] - 106:14
**fundamental** [1] - 109:21
**funding** [2] - 96:2, 122:1
**further** [3] - 29:22, 129:13, 129:17
**future** [4] - 75:15, 121:17, 121:20, 123:24

## G

**G** [1] - 5:1
**GALLERIA** [1] - 1:4

**Galleria** [53] - 5:3, 7:25, 12:10, 12:19, 13:14, 13:20, 14:3, 14:8, 14:14, 15:1, 16:9, 17:21, 17:22, 22:19, 22:25, 28:11, 28:18, 30:12, 31:22, 32:20, 34:20, 37:18, 37:20, 40:14, 40:20, 65:5, 69:3, 71:20, 72:13, 72:20, 73:1, 73:5, 73:7, 73:12, 73:15, 74:2, 76:3, 76:6, 76:9, 77:16, 77:20, 83:12, 83:15, 83:20, 84:3, 89:7, 95:25, 98:24, 100:9, 107:1, 108:15, 108:18, 124:10

**Galleria's** [1] - 32:23

**Gaskamp** [1] - 61:16

**gave** [7] - 11:11, 16:1, 33:10, 59:18, 59:19, 64:6, 95:13

**generally** [2] - 51:1, 51:21

**gentleman** [3] - 13:13, 40:19, 101:15

**get** [63] - 7:18, 14:24, 15:11, 15:12, 16:17, 16:18, 17:17, 18:6, 18:8, 18:10, 18:15, 25:18, 26:9, 26:17, 27:1, 27:17, 30:7, 30:13, 30:15, 36:17, 36:25, 38:11, 38:16, 38:19, 39:7, 40:6, 41:10, 43:10, 45:3, 47:21, 51:16, 53:19, 54:20, 55:4, 55:19, 59:21, 60:11, 60:18, 61:6, 61:9, 61:10, 61:11, 61:13, 61:14, 62:6, 62:15, 63:17, 66:6, 83:11, 84:20, 92:18, 96:2, 109:19, 109:23, 110:17, 117:10, 119:1, 119:4, 126:20

**gets** [6] - 26:1, 33:21, 34:14, 35:19, 50:20, 54:6

**getting** [6] - 39:1, 40:1, 40:21, 51:6, 72:21, 83:16

**give** [24] - 6:11, 7:2, 11:7, 17:2, 17:25, 19:16, 20:3, 20:10, 26:6, 60:2, 61:7, 62:3, 62:4, 67:4, 90:21, 93:11, 93:19, 97:17, 108:3, 111:10, 113:23, 117:10, 123:10, 127:20

**given** [7] - 84:19, 86:22, 87:4, 97:7, 102:16, 111:5, 115:6

**gives** [1] - 43:20

**giving** [1] - 65:21

**go** [40] - 5:2, 11:9, 11:12, 11:15, 19:3, 20:18, 21:14, 23:2, 23:18, 24:7, 27:12, 31:25, 34:21, 36:24, 44:19, 60:23, 62:16, 70:10, 72:9, 79:19, 81:13, 82:11, 83:4, 83:15, 83:24, 84:8, 84:9, 85:2, 85:6, 85:9, 86:13, 88:15, 89:2, 90:19, 98:18, 99:11, 101:22, 119:7, 120:5

**goes** [7] - 37:10, 47:18, 50:11, 80:24, 113:7, 116:19, 126:19

**going** [121] - 8:24, 9:17, 10:2, 11:9, 11:15, 12:17, 14:19, 15:23, 17:25, 18:11, 18:12, 19:3, 19:7, 20:9, 20:10, 20:12, 22:20, 24:14, 24:18, 27:12, 28:2, 29:2, 33:6, 33:12, 34:1, 34:6, 34:10, 34:17, 34:18, 35:1, 35:3, 35:8, 36:22, 37:9, 37:17, 38:9, 38:24, 38:25, 44:8, 44:9, 44:14, 47:20, 48:24, 49:4, 49:16, 53:1, 55:11, 59:21, 60:19, 63:23, 63:24, 63:25, 67:18, 67:22,

68:3, 69:10, 70:23, 72:6, 72:8, 73:17, 73:25, 75:3, 75:7, 75:14, 75:15, 75:16, 79:1, 82:11, 82:22, 83:7, 84:9, 84:17, 85:14, 85:16, 85:18, 85:20, 86:4, 87:13, 87:18, 88:11, 88:12, 92:7, 92:19, 97:6, 97:22, 100:18, 100:19, 102:11, 103:21, 103:22, 104:8, 105:4, 105:5, 105:24, 109:13, 109:14, 111:8, 111:12, 114:3, 115:2, 115:18, 117:13, 117:19, 117:23, 118:2, 118:16, 118:23, 118:24, 119:11, 120:5, 121:17, 121:20, 123:16, 123:23, 125:1, 128:14

**Gomez** [1] - 83:22

**gone** [1] - 125:11

**good** [13] - 22:2, 23:22, 38:22, 50:24, 50:25, 51:18, 54:19, 54:21, 55:14, 60:20, 95:19, 99:23

**goodness** [1] - 29:8

**Google** [2] - 67:12, 67:17

**got** [39] - 8:21, 9:16, 10:17, 19:15, 20:7, 27:16, 35:10, 39:19, 40:5, 40:9, 43:18, 43:22, 63:9, 67:13, 67:16, 70:13, 70:14, 74:15, 76:11, 78:21, 81:7, 81:19, 82:2, 82:6, 83:24, 88:1, 95:5, 98:7, 98:19, 101:14, 103:17, 110:12, 111:14, 111:22, 111:23, 126:11, 126:13, 126:15, 127:13

**gotten** [2] - 6:9, 116:1

**grandfather** [1] - 80:22

**grant** [1] - 76:12

**granted** [4] - 81:4, 110:22, 115:6, 116:8

**granting** [1] - 42:3

**great** [8] - 6:1, 20:3, 21:4, 22:14, 38:13, 58:9, 83:14, 114:21

**grenade** [2] - 106:10, 106:12

**grievance** [1] - 68:2

**grounds** [5] - 35:17, 35:18, 59:16, 109:24, 113:23

**group** [3] - 26:11, 54:3, 69:24

**guardrails** [1] - 109:4

**guess** [5] - 14:21, 19:7, 75:15, 81:7, 108:8

**guidance** [1] - 43:20

**guns** [2] - 66:20, 66:23

**guys** [4] - 66:20, 66:23, 70:9, 103:20

---

**H**

**had** [60] - 11:17, 11:22, 13:15, 16:3, 16:14, 17:13, 18:11, 20:25, 23:5, 24:22, 26:13, 26:16, 27:4, 28:5, 29:3, 29:14, 34:22, 36:22, 41:5, 45:11, 51:14, 52:19, 60:5, 63:25, 66:6, 74:22, 75:1, 75:21, 80:6, 80:8, 81:15, 83:19, 86:11, 89:14, 89:23, 90:17, 90:23, 92:13, 94:15, 94:17, 95:2, 95:3, 104:5, 104:6, 105:2, 105:3, 105:22, 106:2, 107:14, 107:16, 115:7, 120:3, 121:16, 121:23, 121:24, 124:7, 124:8, 124:9,

124:12

**hadn't** [2] - 30:16, 90:23

**half** [2] - 75:22, 97:13

**Halloween** [3] - 74:1, 74:2, 105:12

**hand** [1] - 119:10

**HAND** [1] - 129:20

**handed** [5] - 6:15, 33:11, 61:16, 87:3, 120:2

**handling** [1] - 22:12

**hands** [1] - 103:18

**hang** [2] - 49:3, 68:23

**happen** [3] - 25:4, 58:3, 105:5

**happened** [7] - 43:14, 59:1, 90:11, 95:23, 96:11, 96:20, 121:12

**happening** [4] - 33:24, 57:25, 58:17, 106:22

**happens** [6] - 14:25, 53:1, 54:2, 58:6, 58:8, 78:4

**happy** [1] - 65:13

**harassment** [1] - 87:12

**hard** [9] - 10:15, 18:22, 19:20, 20:2, 39:6, 61:2, 70:24, 71:3, 126:12

**harm** [4] - 82:2, 114:6, 116:5

**HARRIS** [2] - 1:6, 129:2

**Harris** [5] - 1:21, 1:25, 66:5, 129:5, 129:25

**has** [125] - 5:11, 6:23, 6:25, 8:19, 8:21, 9:16, 9:17, 9:20, 13:12, 14:4, 14:14, 16:25, 17:1, 17:8, 25:12, 29:5, 31:18, 32:2, 32:16, 32:22, 33:22, 35:22, 36:21, 37:3, 37:19, 38:1, 39:23, 40:5, 40:24, 42:8, 43:14, 44:6, 45:13, 46:21, 48:25, 49:11, 50:24, 51:21, 52:21, 54:4, 54:9, 54:19, 54:20, 55:5, 55:7, 55:13, 55:17, 55:19, 55:22, 58:25, 59:23, 59:24, 62:18, 63:4, 64:16, 64:19, 65:21, 66:1, 66:2, 66:3, 66:19, 66:21, 67:3, 67:8, 67:18, 67:22, 67:24, 68:7, 68:8, 68:9, 68:19, 68:21, 68:24, 69:20, 69:21, 70:2, 70:5, 70:6, 70:20, 70:21, 70:24, 71:1, 71:3, 75:2, 80:5, 81:4, 81:11, 87:3, 90:16, 90:25, 91:14, 91:15, 91:24, 92:2, 92:14, 93:9, 93:10, 95:23, 96:11, 98:16, 99:12, 99:15, 103:23, 106:5, 106:18, 106:19, 108:18, 110:20, 115:13, 116:21, 119:7, 119:13, 119:15, 121:13, 121:19, 121:22, 124:3, 124:14, 124:25, 125:15, 128:13

**hat** [2] - 83:8, 83:25

**have** [274] - 6:4, 6:11, 6:17, 6:19, 7:19, 7:23, 8:2, 10:5, 10:15, 11:5, 11:23, 13:9, 13:11, 13:13, 14:6, 15:7, 15:9, 15:18, 15:21, 17:14, 18:12, 18:20, 18:22, 19:12, 19:15, 19:20, 20:1, 20:7, 20:14, 20:25, 21:2, 21:8, 23:15, 23:22, 26:7, 26:11, 27:6, 29:20, 30:25, 31:7, 32:24, 33:4, 33:18, 33:19, 34:9, 35:7, 35:9, 35:10, 35:11, 35:14, 36:4, 36:9, 36:13, 36:18, 36:22, 37:7, 37:11,

37:25, 38:4, 39:2, 39:11, 39:15, 39:21, 39:22, 39:23, 39:24, 40:15, 41:6, 41:9, 41:13, 42:14, 42:17, 43:18, 44:20, 44:23, 45:6, 46:15, 46:16, 47:6, 47:13, 48:14, 48:24, 49:2, 49:9, 49:14, 50:25, 51:7, 51:15, 52:9, 52:12, 54:25, 55:8, 55:20, 56:5, 56:13, 56:15, 56:16, 57:17, 57:25, 58:11, 58:14, 59:1, 59:8, 59:12, 59:22, 60:9, 60:11, 60:12, 60:13, 60:14, 60:24, 61:6, 61:15, 63:9, 63:11, 64:10, 64:11, 64:13, 64:25, 65:10, 66:11, 66:25, 67:6, 67:10, 67:13, 68:5, 68:6, 68:25, 69:18, 69:20, 69:23, 70:12, 70:16, 71:10, 71:15, 71:17, 73:19, 74:5, 74:11, 74:12, 75:21, 75:25, 77:18, 77:19, 77:24, 78:6, 80:1, 80:16, 80:20, 80:21, 82:3, 82:5, 82:15, 82:20, 84:3, 84:15, 85:12, 85:13, 85:18, 85:21, 86:2, 86:10, 86:13, 86:21, 87:4, 88:13, 89:2, 89:14, 89:15, 90:12, 90:15, 90:17, 91:1, 91:3, 91:22, 92:7, 92:13, 92:18, 92:21, 92:25, 93:8, 93:20, 94:19, 97:7, 97:16, 98:19, 99:24, 100:20, 100:22, 100:23, 101:5, 101:6, 101:9, 101:10, 102:10, 102:22, 103:15, 103:17, 104:13, 104:21, 107:22, 107:23, 108:17, 108:19, 108:24, 109:24, 110:10, 110:12, 111:4, 111:5, 111:9, 111:19, 111:22, 111:23, 111:25, 112:9, 112:11, 112:13, 113:14, 113:23, 114:8, 114:23, 115:7, 116:1, 116:7, 116:15, 116:23, 117:1, 117:6, 117:12, 117:15, 118:10, 119:1, 119:10, 121:2, 121:12, 121:14, 121:18, 121:21, 122:22, 123:21, 124:6, 124:12, 124:17, 124:22, 124:23, 124:24, 125:2, 125:3, 125:19, 125:21, 126:11, 126:13, 126:22, 127:5, 127:8, 127:13, 127:21, 127:24, 128:8

**haven't** [8] - 6:9, 10:9, 10:12, 25:24, 27:21, 63:21, 67:7, 112:8
**having** [2] - 73:3, 79:1
**havoc** [1] - 29:22
**Hayward** [5] - 24:10, 24:24, 81:22, 109:19, 120:17
**Hayward's** [2] - 25:5, 109:6
**he's** [12] - 37:24, 40:24, 46:10, 47:2, 48:3, 58:5, 63:5, 63:6, 83:14, 121:6, 121:19
**head** [3] - 79:19, 102:17, 123:12
**hear** [10] - 9:1, 96:19, 100:13, 100:18, 104:21, 106:1, 108:8, 108:12, 108:13, 109:23
**heard** [21] - 1:19, 42:12, 66:25, 79:20, 90:13, 90:15, 90:23, 93:10, 93:15, 97:7, 97:10, 101:9, 103:7, 116:20, 117:19, 117:22, 123:6, 124:6, 126:18
**hearing** [50] - 11:8, 11:11, 11:15, 11:22, 11:25, 12:6, 15:23, 16:2, 19:3, 19:5,

21:23, 24:4, 24:5, 24:9, 24:21, 27:18, 51:13, 60:20, 71:23, 72:11, 75:3, 75:21, 76:11, 82:21, 83:9, 84:15, 85:1, 85:2, 85:13, 86:23, 89:24, 90:17, 91:21, 91:22, 103:8, 103:9, 103:10, 104:4, 105:8, 105:10, 106:1, 106:2, 109:11, 116:2, 117:20, 118:10, 119:2, 119:22, 120:24, 127:9
**HEARING** [2] - 1:12, 2:3
**hearings** [10] - 67:25, 81:12, 89:14, 92:2, 92:14, 92:15, 93:8, 124:8, 124:12
**held** [1] - 1:21
**hell** [1] - 70:17
**help** [1] - 93:6
**helping** [1] - 68:6
**helps** [1] - 93:13
**her** [15] - 11:25, 12:1, 21:17, 22:18, 66:3, 70:24, 74:25, 75:4, 93:18, 110:2, 110:22, 110:24, 111:2, 111:10, 126:8
**here** [90] - 9:2, 10:11, 11:18, 14:25, 15:11, 15:15, 16:2, 16:7, 18:24, 19:11, 20:25, 21:9, 21:16, 21:20, 21:22, 22:7, 24:18, 24:20, 25:14, 26:1, 33:1, 33:24, 35:10, 38:21, 40:17, 41:6, 47:24, 49:5, 50:18, 50:25, 51:16, 54:21, 58:16, 60:3, 64:17, 65:25, 66:14, 66:15, 66:24, 67:10, 67:13, 67:18, 68:17, 69:9, 69:15, 71:12, 71:17, 72:3, 74:23, 75:2, 78:3, 78:13, 78:14, 78:22, 79:17, 81:3, 81:18, 81:22, 83:23, 86:5, 87:9, 91:3, 96:8, 96:9, 98:2, 98:5, 98:19, 99:13, 99:19, 100:12, 100:19, 106:24, 108:4, 108:16, 110:8, 110:12, 111:16, 114:16, 114:17, 119:24, 120:4, 121:8, 121:14, 122:24, 123:16, 123:22, 126:11, 127:1
**hereby** [1] - 129:6
**Hernandez** [1] - 42:4
**Hey** [2] - 58:25, 106:21
**hey** [1] - 41:16
**hidden** [1] - 32:13
**hiding** [2] - 73:4, 80:14
**highlighted** [1] - 63:4
**hill** [1] - 111:15
**him** [42] - 11:7, 12:12, 17:16, 17:25, 19:13, 26:4, 26:15, 26:17, 28:25, 31:10, 37:1, 37:20, 41:15, 44:13, 44:19, 45:13, 46:1, 47:15, 47:20, 50:25, 51:12, 51:16, 56:14, 57:17, 67:5, 67:7, 67:11, 67:17, 67:24, 68:1, 69:16, 69:18, 71:3, 73:8, 86:2, 88:1, 91:1, 91:2, 94:17, 121:7, 121:9
**himself** [3] - 5:19, 37:4, 71:4
**hired** [1] - 14:4, 48:25, 69:21
**his** [73] - 10:24, 11:12, 11:16, 14:16, 17:6, 17:7, 17:14, 17:24, 24:6, 24:25, 28:24, 31:8, 31:10, 31:12, 31:15, 32:9, 32:10, 40:14, 41:21, 43:6, 44:11, 46:6, 46:25, 47:1, 51:13, 52:20, 52:22,

53:12, 53:13, 54:18, 54:22, 54:25, 55:1, 55:4, 55:8, 55:11, 55:18, 55:21, 55:23, 55:24, 56:6, 56:22, 56:23, 57:12, 57:13, 57:19, 57:20, 57:21, 57:22, 58:6, 58:7, 58:13, 58:18, 62:14, 63:3, 65:23, 66:3, 66:12, 66:22, 68:24, 69:3, 69:17, 70:15, 70:24, 88:3, 88:4, 91:13, 94:3, 120:15, 121:18
**history** [4] - 65:25, 66:9, 66:15, 66:24
**hit** [1] - 69:22
**hogtied** [1] - 12:1
**hold** [11] - 9:13, 18:9, 32:10, 57:6, 71:16, 81:2, 85:8, 92:19, 112:15, 114:1, 115:2
**holding** [1] - 33:13
**honest** [2] - 27:9, 110:6
**honestly** [1] - 82:24
**Hong** [1] - 101:15
**Honor** [118] - 6:13, 8:14, 10:20, 11:3, 11:20, 13:1, 13:11, 13:24, 14:25, 18:23, 19:16, 19:23, 19:25, 20:1, 20:5, 21:3, 21:9, 22:5, 22:13, 40:9, 42:1, 42:17, 45:1, 45:3, 45:12, 47:10, 48:15, 48:18, 49:6, 50:6, 52:2, 62:8, 63:1, 64:14, 64:24, 65:7, 65:12, 65:16, 65:20, 66:8, 66:15, 67:12, 67:18, 68:8, 68:17, 68:23, 69:1, 69:17, 71:1, 71:22, 72:23, 74:18, 75:24, 76:22, 77:13, 78:9, 78:20, 78:23, 80:7, 81:11, 84:12, 84:16, 85:4, 85:25, 86:10, 86:18, 87:2, 87:6, 87:25, 91:5, 91:17, 92:3, 93:1, 93:7, 93:21, 94:2, 94:4, 94:12, 95:10, 96:15, 100:25, 110:12, 110:15, 110:16, 114:1, 114:7, 114:12, 116:10, 116:11, 116:24, 116:25, 117:4, 117:7, 117:15, 117:19, 117:23, 118:14, 119:3, 119:7, 119:16, 119:20, 120:3, 120:15, 121:1, 121:25, 122:8, 122:15, 123:11, 124:17, 125:18, 125:25, 126:2, 126:24, 127:15, 127:19, 127:22, 128:5
**Honorable** [1] - 1:20
**hope** [1] - 92:11
**hoped** [1] - 86:11
**hostage** [1] - 32:11
**hour** [5] - 37:5, 41:22, 44:10, 44:11, 45:8
**hours** [9] - 37:8, 37:9, 37:13, 37:16, 37:20, 38:13, 38:20, 60:21, 62:3
**house** [2] - 114:11, 114:13
**houses** [1] - 114:9
**Houston** [9] - 1:21, 3:5, 3:9, 4:6, 4:7, 4:13, 4:14, 5:17, 61:18
**how** [20] - 30:15, 37:25, 39:6, 48:23, 54:11, 58:22, 67:3, 69:16, 69:25, 90:5, 99:3, 102:8, 104:9, 104:13, 107:6, 111:14, 119:15, 124:25, 127:6
**however** [9] - 27:12, 28:1, 28:15, 29:9, 47:11, 51:9, 52:12, 85:16, 85:17
**HREP** [4] - 17:1, 36:1, 66:9, 69:15

**huge** [1] - 83:8
**huh** [1] - 12:23

---

**I**

**I** [748] - 2:1, 5:1, 5:20, 5:24, 6:4, 6:8, 6:9, 6:10, 6:13, 6:14, 6:15, 6:17, 6:21, 6:24, 7:1, 7:10, 7:17, 7:19, 7:22, 7:23, 8:2, 8:5, 8:13, 8:23, 9:1, 9:3, 9:4, 9:5, 9:6, 9:7, 9:12, 9:15, 9:16, 9:20, 10:2, 10:3, 10:5, 10:7, 10:9, 10:11, 10:12, 10:16, 10:17, 10:19, 11:2, 12:8, 13:11, 13:17, 13:23, 14:4, 14:17, 14:18, 14:21, 15:2, 15:5, 15:11, 15:12, 16:4, 16:5, 16:7, 16:14, 16:17, 16:18, 16:23, 16:24, 17:1, 17:3, 17:9, 17:15, 17:18, 17:22, 18:6, 18:8, 18:10, 18:14, 18:15, 19:7, 19:8, 19:12, 19:15, 19:18, 19:23, 20:1, 20:7, 20:9, 20:10, 20:12, 20:13, 20:20, 20:24, 21:2, 21:5, 21:9, 21:15, 21:16, 21:17, 21:18, 21:22, 21:25, 22:5, 22:15, 22:17, 22:21, 22:23, 23:2, 23:3, 23:6, 23:9, 23:11, 23:13, 23:15, 24:4, 24:5, 24:8, 24:9, 24:11, 24:13, 25:9, 25:11, 25:12, 26:1, 26:2, 26:4, 26:6, 26:7, 26:11, 26:15, 26:16, 26:19, 26:20, 26:22, 27:1, 27:3, 27:12, 27:14, 27:16, 27:19, 27:20, 27:21, 27:24, 28:2, 28:4, 28:6, 28:8, 28:16, 29:1, 29:4, 29:15, 29:17, 29:20, 30:13, 30:15, 30:16, 30:25, 31:3, 31:4, 31:24, 32:24, 33:1, 33:2, 33:8, 33:11, 33:12, 34:1, 34:2, 34:8, 34:9, 34:14, 34:17, 34:19, 34:25, 35:3, 35:7, 35:10, 35:15, 35:16, 35:20, 35:21, 36:1, 36:4, 36:8, 36:9, 36:10, 36:11, 36:16, 36:17, 36:19, 36:24, 37:5, 37:11, 37:15, 38:4, 38:6, 38:10, 38:16, 38:19, 38:21, 38:22, 38:23, 39:6, 39:9, 39:11, 39:15, 39:18, 39:19, 39:20, 39:21, 39:22, 39:23, 40:2, 40:6, 40:10, 40:15, 40:25, 41:1, 41:5, 41:6, 41:9, 41:10, 41:12, 41:14, 41:15, 42:1, 42:17, 43:8, 43:19, 43:21, 43:23, 44:13, 44:14, 44:22, 45:9, 45:10, 45:12, 45:14, 45:17, 45:19, 46:1, 46:2, 47:8, 47:13, 47:23, 48:6, 48:13, 48:15, 48:16, 48:18, 48:21, 49:1, 49:4, 49:23, 50:13, 50:15, 52:2, 53:22, 53:23, 55:6, 55:25, 56:9, 56:10, 56:18, 57:2, 57:3, 57:7, 57:9, 57:10, 58:6, 58:15, 59:2, 59:4, 59:7, 59:8, 59:9, 59:18, 59:19, 59:21, 60:2, 60:4, 60:6, 60:9, 60:10, 60:12, 60:13, 60:14, 60:18, 60:20, 61:1, 61:3, 61:8, 61:9, 61:10, 61:11, 61:13, 61:14, 61:15, 61:16, 62:1, 62:2, 62:24, 63:2, 63:8, 63:9, 63:13, 63:19, 63:21, 63:22, 63:25, 64:1, 64:3, 64:4, 64:5, 64:7, 64:13, 64:14, 64:16, 64:24, 64:25, 65:7, 65:12, 65:16, 65:19, 65:23, 66:6, 66:8, 66:11, 66:12, 66:13, 66:14, 66:16, 66:23, 67:6, 67:7, 67:10, 67:13, 67:23, 67:25, 68:7, 68:11, 68:13, 68:23, 69:2, 69:16, 69:18, 69:19, 69:20, 69:23, 70:1, 70:2, 70:8, 70:11, 70:13, 70:14, 70:15, 70:16, 70:17, 70:19, 71:1, 71:7, 71:9, 71:13, 71:18, 71:24, 71:25, 72:2, 72:4, 72:7, 72:14, 72:16, 72:17, 72:18, 72:20, 72:21, 73:16, 74:12, 74:16, 74:18, 74:19, 75:6, 75:14, 75:15, 75:19, 75:20, 75:25, 76:7, 76:12, 76:15, 76:17, 76:19, 76:24, 77:6, 77:8, 77:12, 77:14, 77:22, 77:24, 78:5, 78:6, 78:12, 78:21, 79:16, 79:25, 80:4, 80:7, 80:11, 80:13, 81:1, 81:11, 81:14, 81:23, 82:13, 82:14, 82:17, 83:7, 83:14, 83:17, 83:24, 84:7, 84:8, 84:12, 84:13, 84:15, 84:17, 84:18, 84:24, 84:25, 85:5, 85:6, 85:11, 85:12, 85:13, 85:14, 85:16, 85:18, 85:19, 85:21, 86:5, 86:6, 86:21, 87:10, 87:13, 87:15, 87:18, 87:19, 87:23, 87:25, 88:1, 88:4, 88:7, 88:8, 88:16, 88:21, 88:22, 88:24, 89:1, 89:2, 89:5, 89:15, 89:21, 89:25, 90:5, 90:6, 90:8, 90:9, 90:11, 90:12, 90:14, 90:22, 91:1, 91:5, 91:11, 91:16, 91:18, 92:5, 92:7, 92:8, 92:11, 92:12, 92:13, 92:17, 92:18, 92:19, 93:6, 93:7, 93:17, 93:19, 93:23, 94:7, 94:11, 94:13, 94:21, 95:3, 95:13, 95:21, 96:7, 96:8, 96:9, 96:17, 96:19, 97:5, 97:7, 97:10, 97:12, 97:15, 97:19, 98:2, 98:8, 99:9, 99:11, 99:22, 100:2, 100:18, 101:3, 101:5, 101:9, 101:10, 101:11, 101:17, 101:25, 102:8, 102:10, 102:11, 102:15, 102:18, 102:19, 102:22, 102:23, 102:24, 103:3, 103:6, 103:12, 103:13, 103:14, 103:16, 103:17, 103:20, 103:22, 103:25, 104:3, 104:20, 104:22, 104:23, 104:24, 104:25, 106:3, 106:6, 106:8, 106:9, 106:13, 106:14, 106:19, 106:8, 106:8, 108:11, 108:13, 109:9, 109:18, 109:24, 110:5, 110:6, 110:12, 110:14, 110:15, 110:18, 111:4, 111:5, 111:11, 111:12, 111:20, 111:25, 113:6, 113:8, 114:2, 114:7, 114:8, 114:20, 114:21, 115:2, 115:4, 115:17, 116:18, 116:20, 117:13, 117:22, 117:23, 118:3, 118:11, 118:16, 118:17, 118:18, 118:24, 119:6, 119:16, 119:18, 119:21, 119:23, 119:24, 120:2, 120:3, 120:8, 120:10, 120:11, 121:1, 121:5, 121:10, 121:18, 122:8, 122:9, 122:15, 122:16, 122:21, 122:23, 123:5, 123:7, 123:9, 123:12, 123:14, 123:18, 123:19, 123:21, 123:24, 124:2, 124:4, 124:6, 124:14, 124:16, 124:21, 125:1, 125:5, 125:13, 125:18, 125:21, 125:23, 125:24, 125:25, 126:1, 126:18, 126:19, 126:25, 127:1, 127:4, 127:5, 127:8, 127:19, 127:23, 128:6, 128:8, 128:9, 128:10, 128:11, 128:13, 129:4, 129:13, 129:17

**i** [2] - 117:11, 122:9

**I'll** [7] - 24:18, 26:6, 26:9, 34:12, 62:9, 85:8

**I'm** [30] - 8:12, 14:1, 19:10, 20:12, 28:8, 29:17, 38:2, 48:16, 55:15, 55:16, 62:1, 62:3, 64:21, 65:14, 67:21, 71:15, 72:16, 75:16, 77:13, 78:4, 78:16, 84:12, 99:16, 117:17, 117:20, 118:23, 122:4, 127:3, 128:11

**I've** [1] - 102:12

**I.M** [3] - 101:1, 101:16, 101:17

**identical** [1] - 25:17

**identified** [1] - 25:8

**identify** [1] - 37:7

**if** [107] - 14:24, 16:24, 17:24, 19:6, 19:15, 20:1, 30:13, 33:7, 33:19, 33:20, 33:23, 34:25, 35:7, 35:16, 36:15, 36:17, 37:8, 38:12, 38:24, 39:14, 39:18, 43:12, 43:15, 44:8, 44:9, 44:19, 46:2, 46:14, 47:20, 48:18, 48:21, 49:17, 50:13, 51:24, 52:2, 53:2, 53:5, 55:22, 56:1, 56:9, 56:22, 56:23, 56:25, 57:6, 57:10, 57:11, 57:12, 58:7, 58:9, 58:12, 59:14, 60:9, 63:22, 63:23, 64:14, 65:3, 65:16, 66:13, 68:25, 69:1, 74:12, 74:18, 77:8, 79:5, 80:24, 81:1, 81:25, 82:5, 82:19, 83:19, 84:4, 84:11, 84:23, 85:15, 85:20, 86:23, 87:10, 88:11, 88:21, 90:19, 91:1, 93:6, 95:3, 96:9, 97:6, 97:15, 106:15, 107:5, 107:12, 108:12, 110:5, 110:15, 112:3, 112:19, 114:3, 114:11, 114:20, 115:21, 119:14, 119:18, 127:8, 127:20, 127:21, 128:11, 129:15

**ignore** [1] - 59:10

**ill** [1] - 48:10

**immediately** [2] - 26:3, 26:4

**imperative** [1] - 84:19

**importance** [3] - 94:18, 95:8, 95:10

**important** [15] - 18:3, 28:17, 40:15, 41:1, 41:17, 44:18, 54:17, 59:9, 65:24, 66:11, 95:12, 101:19, 107:19, 107:23, 126:24

**importantly** [3] - 44:13, 61:14, 96:12

**imposed** [1] - 55:3

**imposing** [1] - 51:12

**impossible** [1] - 36:17

**impression** [1] - 123:25

**improper** [6] - 69:24, 80:11, 122:3, 122:6, 123:5, 124:11

**improperly** [2] - 122:12, 123:4

**IN** [1] - 1:4

**In** [1] - 54:3

**in** [375] - 1:19, 1:21, 6:18, 6:20, 7:5, 8:5, 8:7, 8:9, 8:10, 9:19, 10:6, 11:16, 11:22, 12:1, 12:5, 12:7, 12:11, 12:14, 12:16, 12:18, 12:19, 12:20, 12:24,

13:4, 13:6, 13:7, 13:10, 13:16, 13:19,
13:21, 13:23, 14:3, 14:4, 14:5, 14:6,
14:7, 14:15, 14:19, 15:18, 16:16,
16:24, 17:1, 17:4, 17:7, 17:21, 17:22,
18:2, 18:5, 18:18, 19:12, 19:18, 20:24,
21:10, 21:16, 21:18, 21:20, 21:22,
21:23, 22:6, 22:18, 22:20, 22:21,
22:24, 22:25, 23:1, 23:3, 23:8, 23:9,
23:10, 23:11, 23:13, 23:20, 23:23,
23:24, 24:2, 24:6, 24:11, 24:17, 24:23,
24:25, 25:5, 25:12, 25:18, 26:7, 26:13,
26:23, 26:25, 27:25, 28:7, 28:8, 28:9,
28:21, 28:22, 28:24, 29:4, 29:7, 29:17,
29:23, 29:25, 30:4, 30:10, 30:14,
30:15, 30:16, 30:19, 30:23, 31:1, 31:4,
31:10, 31:15, 31:19, 31:21, 32:25,
34:13, 35:2, 35:13, 35:22, 36:23, 37:7,
37:25, 38:6, 38:14, 39:1, 39:18, 40:19,
40:24, 41:11, 41:17, 41:18, 42:1,
42:18, 42:20, 42:25, 43:2, 43:18,
43:22, 44:4, 44:25, 45:11, 46:7, 47:2,
47:7, 47:8, 48:11, 51:1, 51:6, 52:3,
52:7, 52:16, 52:18, 52:22, 52:24, 53:6,
53:10, 53:12, 53:21, 53:22, 53:23,
53:25, 54:2, 54:5, 54:13, 54:15, 54:18,
55:1, 55:21, 57:1, 57:22, 58:17, 58:19,
58:24, 59:4, 59:23, 60:23, 61:4, 61:15,
62:13, 62:21, 62:22, 63:6, 63:17,
63:18, 63:21, 64:16, 65:4, 65:10, 66:5,
66:14, 66:18, 66:22, 66:23, 67:12,
67:23, 67:24, 69:5, 69:18, 70:3, 70:6,
70:13, 70:14, 70:16, 71:9, 71:13,
71:15, 71:19, 71:22, 72:15, 72:24,
73:1, 73:4, 73:9, 73:10, 73:14, 73:19,
73:24, 74:7, 74:19, 74:20, 75:3, 75:4,
75:11, 75:18, 76:2, 76:4, 76:17, 77:7,
77:23, 78:17, 78:22, 78:25, 79:8,
79:12, 80:4, 81:5, 81:18, 82:8, 82:9,
83:13, 83:23, 84:3, 84:22, 86:2, 86:4,
86:7, 86:12, 87:21, 88:17, 88:22, 89:4,
89:8, 89:16, 89:18, 89:25, 90:3, 90:17,
91:6, 91:8, 91:9, 91:10, 91:22, 92:2,
92:18, 92:20, 93:13, 93:17, 94:13,
95:4, 95:6, 95:14, 95:21, 96:1, 96:10,
96:20, 98:8, 98:25, 100:10, 101:5,
101:6, 101:15, 101:23, 102:3, 102:7,
102:19, 103:8, 103:15, 104:10,
104:12, 104:14, 104:16, 104:25,
105:22, 107:13, 107:15, 107:17,
108:11, 109:1, 109:24, 110:11,
110:24, 111:6, 111:11, 112:5, 112:25,
113:9, 113:11, 114:23, 115:22, 116:1,
116:14, 116:20, 117:9, 118:10,
118:15, 118:17, 118:22, 119:2, 120:4,
120:5, 120:14, 120:18, 120:19,
120:23, 120:24, 121:9, 121:17,
121:20, 123:5, 123:16, 123:21,
123:23, 124:8, 124:15, 124:21,
125:22, 126:9, 126:10, 126:13,
126:18, 126:21, 127:11, 127:13,
129:4, 129:8, 129:9, 129:10, 129:12

**inappropriate** [4] - 106:4, 106:14, 106:20, 116:3
**Inc** [8] - 25:13, 31:15, 31:16, 42:13, 43:3, 43:16, 44:2, 61:16
**included** [2] - 41:3, 129:9
**including** [2] - 30:3, 95:16
**incurred** [1] - 55:5
**indicate** [1] - 28:1
**indicative** [1] - 43:2
**individual** [4] - 15:13, 31:11, 31:12, 33:4
**individually** [9] - 5:21, 16:10, 24:25, 34:21, 36:3, 39:25, 68:19, 77:21, 120:12
**individuals** [1] - 114:8
**infinite** [1] - 24:7
**inflicted** [1] - 54:14
**info@jlm** [1] - 3:14
**info@jlm-law.com** [1] - 3:14
**inform** [1] - 51:7
**information** [2] - 60:5, 71:3
**informed** [1] - 80:13
**infringe** [1] - 58:12
**infringes** [1] - 57:13
**inherent** [1] - 117:12
**injunction** [24] - 29:24, 72:7, 74:6, 74:9, 74:10, 75:21, 76:5, 86:23, 89:23, 89:24, 97:9, 98:4, 99:9, 100:15, 110:22, 111:5, 113:21, 114:3, 116:2, 116:13, 118:4, 118:18, 119:5
**injunctions** [2] - 66:7, 115:3
**injunctive** [5] - 99:5, 111:24, 112:20, 124:24, 127:7
**inside** [1] - 36:12
**insisted** [2] - 28:3, 28:16
**inspection** [1] - 33:10
**instances** [3] - 27:5, 28:7, 62:23
**insufficient** [2] - 100:13, 110:10
**intend** [4] - 85:25, 90:5, 90:7
**intended** [3] - 11:12, 20:20, 50:10
**intends** [1] - 110:23
**intent** [1] - 48:10
**intention** [2] - 43:2, 86:11
**inter** [1] - 84:13
**interest** [3] - 107:15, 107:17, 107:23
**interesting** [2] - 26:1, 81:22
**interests** [1] - 77:25
**interfere** [3] - 32:22, 99:3, 115:20
**interfered** [5] - 32:17, 98:24, 99:2, 100:9, 112:14
**interference** [11] - 7:9, 98:6, 98:22, 99:20, 100:2, 110:3, 112:18, 112:21, 112:24, 115:10, 115:16
**interfering** [4] - 77:4, 77:25, 96:1, 100:10
**internet** [1] - 32:13
**interrupt** [4] - 48:16, 68:12, 68:15, 123:12
**interrupted** [1] - 9:16

**intervene** [1] - 13:4
**intervening** [2] - 7:6, 77:23
**Intervenor** [1] - 65:5
**intervenor** [1] - 7:25
**intervention** [9] - 6:20, 7:5, 8:4, 8:9, 13:23, 20:25, 22:7, 77:7, 78:12
**intimidate** [2] - 66:19, 69:22
**intimidated** [3] - 68:6, 68:7, 70:21
**intimidation** [1] - 87:11
**into** [20] - 19:17, 32:2, 35:24, 36:24, 39:6, 39:7, 40:9, 47:18, 48:7, 59:21, 62:15, 62:16, 63:24, 63:25, 76:9, 95:24, 106:10, 106:12, 109:19, 126:15
**introduce** [1] - 92:7
**investigated** [1] - 67:7
**investments** [1] - 31:18
**invited** [1] - 105:22
**involve** [2] - 99:5, 99:8
**involved** [14] - 8:16, 22:24, 23:11, 23:13, 30:10, 30:13, 30:15, 30:16, 67:3, 72:19, 101:5, 101:6, 104:10, 112:5
**involves** [1] - 95:23
**involving** [4] - 89:6, 93:18, 96:16, 106:15
**irreparable** [1] - 114:6
**is** [612] - 5:21, 6:2, 6:14, 7:7, 7:13, 7:15, 7:24, 8:1, 8:2, 8:11, 8:22, 8:24, 9:9, 9:10, 9:16, 9:21, 10:11, 11:3, 11:8, 11:20, 11:21, 11:22, 12:1, 12:5, 12:7, 12:8, 13:6, 13:11, 13:12, 13:16, 13:25, 14:13, 14:19, 15:2, 15:5, 15:7, 15:8, 15:15, 15:24, 16:16, 16:17, 17:1, 17:6, 17:12, 17:15, 17:21, 17:22, 18:2, 18:12, 18:14, 18:19, 19:1, 19:11, 20:22, 21:1, 21:16, 22:1, 22:5, 24:1, 24:17, 24:20, 25:12, 25:13, 25:14, 26:1, 26:25, 27:1, 27:8, 28:2, 28:16, 28:17, 30:17, 30:19, 30:22, 31:3, 31:10, 31:20, 31:23, 31:24, 32:5, 33:7, 33:8, 33:10, 33:12, 33:13, 33:18, 33:24, 34:7, 34:13, 34:15, 34:25, 35:4, 35:7, 35:8, 35:15, 35:18, 35:19, 35:20, 35:24, 36:1, 36:7, 36:17, 37:1, 37:3, 37:7, 37:22, 38:4, 38:11, 38:12, 38:21, 38:23, 38:24, 39:6, 39:13, 39:17, 39:20, 40:5, 40:25, 41:8, 41:17, 42:3, 42:4, 42:10, 42:13, 43:1, 43:2, 43:5, 43:7, 43:8, 43:9, 43:13, 43:15, 43:16, 43:23, 43:25, 44:8, 44:9, 44:13, 44:16, 45:4, 45:16, 46:2, 46:3, 46:5, 46:9, 46:17, 47:3, 47:19, 47:20, 47:25, 49:8, 49:13, 49:18, 49:22, 50:4, 50:18, 50:20, 50:22, 50:23, 51:1, 51:11, 51:17, 51:18, 51:19, 51:21, 52:1, 52:4, 52:15, 52:16, 52:17, 53:1, 53:5, 53:6, 53:7, 53:9, 53:10, 53:11, 53:12, 53:13, 53:17, 53:19, 53:21, 53:23, 53:24, 53:25, 54:6, 54:7, 54:8, 54:10, 54:11, 54:14, 54:18, 54:23, 55:1, 55:9, 55:10,

55:21, 56:2, 56:3, 56:9, 56:12, 56:17,
56:19, 56:21, 56:23, 56:24, 57:16,
57:17, 57:20, 58:3, 58:5, 58:6, 58:16,
58:22, 58:25, 59:9, 59:10, 59:16, 60:3,
60:4, 60:9, 60:16, 60:17, 60:18, 60:21,
60:25, 61:2, 61:3, 61:7, 61:9, 61:14,
61:15, 61:17, 62:5, 62:12, 62:15,
62:17, 62:20, 62:21, 63:2, 63:6, 63:9,
63:15, 63:16, 63:17, 63:22, 64:3, 64:6,
64:9, 64:16, 64:17, 64:22, 64:23, 65:8,
65:9, 65:23, 65:24, 65:25, 66:2, 66:9,
66:11, 66:15, 66:24, 67:2, 67:3, 67:5,
67:6, 67:7, 67:8, 67:15, 67:16, 67:18,
67:19, 68:5, 68:17, 68:20, 68:24, 69:3,
69:4, 69:5, 69:9, 69:10, 69:24, 70:3,
70:4, 70:5, 70:20, 71:12, 71:18, 72:18,
73:4, 73:5, 73:7, 73:15, 73:17, 73:18,
74:1, 74:19, 74:20, 74:21, 75:1, 75:3,
75:6, 75:8, 75:9, 75:16, 75:17, 75:19,
76:16, 76:18, 76:23, 77:1, 77:2, 77:5,
77:7, 77:10, 77:16, 77:17, 78:7, 78:9,
78:11, 78:12, 78:14, 78:16, 78:19,
78:20, 78:21, 78:24, 79:2, 79:3, 79:4,
79:6, 79:7, 79:9, 79:10, 79:14, 79:17,
79:18, 79:25, 80:1, 80:2, 80:3, 80:18,
80:19, 80:20, 80:24, 81:3, 81:6, 81:8,
81:14, 81:17, 81:19, 81:22, 81:25,
82:1, 82:2, 82:11, 82:14, 82:16, 82:17,
83:2, 83:17, 83:21, 83:22, 83:23,
84:19, 84:23, 84:24, 85:6, 85:11,
85:17, 85:20, 86:20, 87:19, 87:23,
88:9, 89:3, 89:10, 89:11, 89:12, 90:1,
91:8, 91:12, 91:20, 91:21, 91:24,
91:25, 92:4, 93:15, 93:16, 93:17,
93:24, 94:1, 94:3, 94:16, 94:23, 95:4,
95:8, 95:11, 95:12, 95:17, 95:21, 96:6,
96:21, 97:4, 97:5, 97:22, 98:2, 98:3,
98:8, 98:10, 98:11, 98:13, 98:14,
98:15, 98:16, 99:8, 99:13, 99:14,
100:4, 100:5, 100:7, 100:8, 100:12,
100:15, 100:16, 100:25, 101:17,
101:21, 102:8, 104:25, 105:23, 106:4,
106:14, 106:15, 106:19, 106:22,
107:12, 107:20, 107:23, 108:14,
108:16, 108:21, 108:25, 109:3, 109:5,
109:12, 109:13, 109:14, 109:17,
109:20, 109:21, 109:23, 109:25,
110:1, 110:5, 110:7, 110:13, 111:2,
111:8, 111:16, 111:19, 111:20,
111:23, 111:25, 112:2, 112:17,
112:20, 112:23, 113:2, 113:3, 113:5,
113:10, 113:16, 113:18, 113:19,
113:22, 114:9, 114:11, 114:12,
114:14, 114:15, 114:24, 115:3, 115:4,
115:9, 115:10, 115:15, 115:16,
115:18, 115:19, 115:24, 116:2, 116:3,
116:4, 116:5, 116:8, 116:12, 117:24,
118:2, 118:7, 118:9, 118:13, 118:14,
119:3, 119:6, 119:9, 119:17, 120:9,
121:2, 121:12, 121:20, 122:1, 122:11,
122:12, 123:2, 123:3, 123:5, 123:6,

123:15, 123:20, 123:22, 124:4, 124:5,
124:7, 124:17, 124:18, 124:24,
125:11, 125:12, 125:17, 126:1, 126:5,
126:7, 126:9, 126:11, 126:12, 126:13,
126:21, 126:23, 127:6, 127:10,
127:15, 127:18, 128:7, 129:18
**isn't** [6] - 12:21, 31:8, 49:12, 67:2,
100:15, 115:23
**issue** [34] - 9:16, 11:19, 11:20, 13:12,
15:15, 15:22, 17:6, 33:1, 37:3, 38:12,
39:4, 39:20, 55:11, 57:4, 60:3, 60:16,
60:18, 63:5, 71:18, 72:17, 72:18, 76:2,
79:24, 81:3, 81:25, 82:5, 87:6, 89:3,
97:5, 101:23, 104:22, 109:17, 116:20
**issued** [2] - 51:1, 62:6
**issues** [26] - 11:17, 17:8, 23:16, 24:3,
27:6, 34:6, 34:16, 35:3, 36:10, 36:11,
36:24, 39:8, 39:14, 39:15, 59:20,
59:22, 59:25, 60:23, 72:20, 76:17,
76:20, 79:24, 80:14, 92:17, 106:16,
109:5
**it's** [41] - 6:20, 9:25, 14:23, 17:20, 24:19,
25:14, 26:5, 29:13, 31:11, 34:12, 37:9,
37:14, 37:23, 39:3, 41:25, 42:18, 44:3,
44:17, 51:2, 52:7, 54:17, 58:8, 63:19,
69:5, 72:12, 74:14, 74:17, 76:22,
77:16, 82:14, 87:10, 91:20, 98:5,
101:1, 101:2, 101:18, 106:17, 107:3,
112:2, 115:12, 120:24
**its** [6] - 14:14, 28:12, 78:17, 94:16,
116:17, 124:10
**itself** [1] - 47:11

---

# J

**J** [1] - 3:8
**Jackson** [1] - 42:23
**James** [4] - 3:3, 5:10, 39:18, 41:7
**jamesp@thepopelawfirm.com** [1] - 3:6
**January** [1] - 101:24
**Jennifer** [2] - 3:11, 5:9
**Jerry** [3] - 3:15, 5:10, 86:20
**Jetall** [6] - 25:13, 31:14, 31:16, 35:23,
94:7
**Jetallcompanies** [1] - 94:14
**Jetallcompanies.com** [1] - 94:12
**jets** [1] - 41:16
**Jim** [2] - 67:13, 68:2
**job** [1] - 25:24
**Johnson** [1] - 25:14
**Jones** [1] - 3:15
**Judge** [91] - 1:21, 5:18, 8:20, 9:16, 9:21,
9:23, 9:24, 10:1, 10:2, 10:5, 10:16,
11:23, 11:24, 12:8, 12:9, 12:11, 13:16,
13:17, 13:19, 14:7, 15:5, 15:7, 15:15,
15:22, 16:1, 16:8, 16:17, 16:23, 18:15,
21:6, 22:16, 23:10, 24:6, 24:19, 27:9,
27:21, 28:18, 29:3, 29:13, 29:24,
30:13, 32:24, 33:1, 33:11, 35:2, 35:5,
35:15, 36:7, 36:19, 36:25, 37:3, 38:4,

38:12, 38:22, 38:25, 39:17, 40:6,
40:13, 40:23, 48:23, 59:5, 60:9, 60:20,
61:3, 61:25, 64:3, 70:7, 71:25, 72:24,
73:2, 73:22, 74:7, 74:23, 81:11, 82:6,
82:9, 83:22, 85:10, 87:1, 87:18, 97:21,
102:5, 104:21, 105:23, 106:21,
119:11, 119:14
**judge** [17] - 38:14, 38:16, 38:17, 38:19,
39:10, 63:20, 67:14, 82:8, 83:22, 84:8,
85:5, 103:23, 105:23, 107:19, 107:25,
108:2
**judges** [6] - 14:18, 15:9, 69:6, 69:7,
69:22, 69:23
**judgment** [10] - 16:8, 33:19, 33:20,
35:19, 36:1, 52:8, 58:20, 58:25, 59:17,
68:19
**Judicial** [1] - 129:25
**JUDICIAL** [1] - 1:7
**July** [6] - 79:21, 83:4, 83:9, 114:25,
115:7
**jump** [1] - 44:17
**June** [1] - 30:11
**jury** [7] - 17:2, 38:6, 59:24, 60:23, 67:11,
67:14, 67:17
**just** [152] - 5:18, 5:22, 6:2, 6:10, 6:19,
8:10, 8:23, 10:7, 10:17, 10:18, 13:3,
13:7, 13:8, 16:4, 17:10, 17:16, 18:9,
18:15, 18:24, 20:8, 20:15, 21:14,
21:15, 21:25, 25:1, 27:9, 27:12, 29:7,
29:8, 29:15, 35:4, 39:20, 42:3, 42:15,
43:11, 44:17, 45:1, 45:3, 46:2, 49:6,
49:16, 50:7, 52:5, 54:10, 55:11, 56:11,
57:5, 57:10, 58:19, 58:24, 59:7, 61:10,
61:11, 62:3, 64:15, 64:17, 64:21, 65:4,
65:14, 70:11, 71:18, 71:24, 72:1,
72:10, 72:13, 72:16, 72:21, 72:22,
73:22, 74:18, 75:16, 76:24, 77:2,
77:14, 78:4, 78:7, 78:16, 78:25, 79:9,
79:16, 79:20, 80:17, 83:8, 85:3, 85:5,
85:18, 85:19, 86:6, 90:22, 91:6, 91:20,
93:6, 93:19, 94:9, 95:4, 96:17, 97:9,
98:1, 99:4, 99:11, 99:16, 100:2, 100:8,
100:15, 103:16, 105:25, 106:21,
106:22, 109:13, 109:22, 110:1, 110:6,
110:11, 112:3, 113:3, 113:8, 114:7,
114:19, 114:21, 115:12, 116:3,
117:11, 117:13, 117:20, 118:3, 118:9,
118:13, 118:16, 118:18, 118:23,
119:10, 119:11, 119:19, 121:1,
121:10, 121:12, 122:9, 122:20, 123:7,
123:15, 125:10, 125:12, 125:18,
125:24, 126:3, 127:3, 128:6, 128:7
**JV** [1] - 108:16

---

# K

**K** [3] - 129:4, 129:23, 129:23
**Kathleen** [3] - 1:24, 129:4, 129:23
**keep** [7] - 24:14, 38:25, 40:15, 49:16,
50:3, 94:13, 101:20

**keeps** [3] - 14:17, 60:16, 98:3
**kept** [3] - 106:9, 106:12
**key** [3] - 24:18, 81:3, 120:7
**Khawaja** [2] - 22:22
**kicked** [1] - 114:10
**kidding** [1] - 103:13
**kids** [1] - 66:3
**kind** [15] - 10:8, 22:11, 27:13, 27:18, 48:6, 54:9, 63:10, 64:5, 99:5, 101:1, 107:23, 112:5, 113:8, 114:9, 120:6
**Klein** [1] - 42:4
**Klingensmith** [2] - 4:3, 5:14
**KLINGENSMITH** [1] - 119:3
**knew** [6] - 16:3, 25:2, 25:10, 33:12, 75:3, 102:24
**know** [80] - 9:3, 9:5, 9:7, 9:15, 10:3, 14:11, 14:17, 17:21, 19:2, 25:22, 25:23, 30:17, 33:20, 34:25, 39:1, 39:21, 39:22, 40:1, 40:16, 45:1, 48:13, 49:21, 50:15, 54:13, 58:12, 60:4, 60:6, 60:19, 61:9, 68:24, 70:9, 72:2, 72:5, 73:16, 77:8, 78:24, 79:16, 80:5, 80:24, 82:20, 83:4, 84:24, 86:5, 88:2, 88:7, 88:9, 88:16, 89:2, 90:5, 90:6, 92:5, 92:8, 92:17, 98:8, 98:18, 99:1, 101:11, 101:25, 103:6, 103:15, 103:20, 104:24, 105:1, 105:23, 106:21, 106:23, 107:19, 109:18, 109:19, 110:2, 110:4, 110:5, 110:7, 113:11, 113:13, 114:4, 119:6
**known** [1] - 95:3
**knows** [3] - 92:8, 98:14, 119:15
**Kong** [1] - 101:15
**Korean** [1] - 101:17
**KUWAIT** [2] - 1:7, 4:1
**Kuwait** [39] - 5:3, 5:15, 7:8, 8:3, 8:9, 9:20, 12:20, 12:22, 65:1, 65:10, 67:5, 71:20, 73:10, 77:21, 78:1, 78:6, 79:12, 95:15, 95:18, 96:1, 96:14, 96:22, 102:4, 103:5, 105:20, 105:22, 111:15, 112:2, 112:9, 120:8, 121:4, 121:11, 122:8, 123:17, 123:22, 124:1, 124:2, 124:5
**Kuwait's** [1] - 23:14

## L

**L** [2] - 3:11, 4:12
**L.L.C** [1] - 1:5
**labeling** [1] - 48:19
**language** [1] - 78:17
**Lanham** [2] - 70:4
**laptop** [3] - 19:12, 19:13, 19:15
**last** [21] - 10:11, 11:3, 11:6, 15:22, 21:12, 21:13, 33:10, 40:16, 61:17, 72:4, 78:19, 81:19, 82:14, 83:7, 83:11, 87:2, 87:6, 106:1, 106:2, 109:9, 109:20
**late** [4] - 11:10, 24:12, 28:24, 66:1
**later** [6] - 24:4, 27:24, 28:4, 41:22, 45:9,

53:6
**Latin** [1] - 34:5
**laugh** [1] - 88:5
**law** [21] - 17:15, 35:19, 36:7, 41:24, 43:24, 47:6, 47:9, 51:20, 53:3, 53:25, 55:22, 58:16, 59:17, 62:12, 63:15, 95:11, 95:15, 98:15, 113:19, 114:6, 116:16
**Law** [2] - 3:4, 3:12
**law.com** [1] - 3:14
**laws** [2] - 79:5, 95:12
**lawsuit** [24] - 14:10, 17:13, 30:11, 41:3, 41:16, 41:18, 42:6, 42:10, 44:12, 45:2, 45:7, 45:15, 45:20, 46:3, 46:11, 46:18, 47:2, 47:4, 48:3, 60:10, 63:3, 63:4, 66:5, 68:3, 70:23, 101:21, 107:24
**lawsuits** [8] - 13:14, 14:5, 44:25, 59:24, 63:18, 63:20, 63:21, 89:6
**lawyer** [4] - 23:24, 45:13, 106:11, 123:4
**lawyers** [21] - 13:2, 14:7, 14:8, 15:14, 25:12, 25:23, 38:1, 38:9, 38:24, 38:25, 40:2, 48:23, 49:1, 49:2, 70:21, 70:22, 92:17, 103:23, 106:18, 127:13
**laying** [1] - 52:5
**layperson** [1] - 38:20
**learned** [1] - 25:24
**least** [9] - 25:23, 33:2, 35:24, 36:18, 37:7, 64:20, 87:11, 126:2, 127:21
**leave** [1] - 23:18
**left** [2] - 46:1, 121:8
**legal** [2] - 28:7, 28:9, 36:5, 51:8, 53:9, 59:14, 109:24
**legally** [1] - 73:11
**lender** [6] - 68:20, 79:3, 79:4, 79:5, 99:12, 101:21
**lenders** [1] - 67:3, 68:18, 68:21, 68:22
**less** [2] - 23:7, 27:17
**lesson** [1] - 25:25
**let** [24] - 6:19, 7:4, 7:17, 18:1, 18:9, 18:11, 20:17, 35:9, 40:11, 62:9, 72:25, 74:12, 85:8, 86:15, 90:6, 93:11, 93:18, 94:23, 104:25, 108:3, 110:19, 114:19, 123:7
**let's** [13] - 10:21, 16:21, 17:8, 20:18, 20:23, 50:16, 61:3, 62:6, 69:16, 69:17, 86:6, 98:18
**letter** [4] - 23:14, 74:3, 98:15, 102:5
**leverage** [5] - 80:18, 80:19, 82:17
**liability** [5] - 79:3, 79:5, 95:11, 99:12, 101:21
**liable** [4] - 28:25, 44:6, 59:24, 60:6
**licensed** [1] - 49:1
**lie** [2] - 16:20, 91:12
**lied** [3] - 61:2, 69:16, 91:10
**liens** [1] - 125:22
**lift** [1] - 23:19
**light** [1] - 35:22
**like** [55] - 6:9, 7:6, 10:14, 14:18, 14:21, 15:14, 18:25, 20:5, 21:25, 25:11, 27:3, 48:14, 50:7, 52:7, 55:22, 58:6, 58:19,

58:24, 60:17, 69:18, 71:13, 72:1, 72:2, 72:10, 73:7, 75:21, 76:16, 76:18, 79:20, 80:22, 80:23, 82:25, 83:14, 84:25, 86:2, 86:23, 87:10, 89:21, 89:25, 90:15, 90:18, 102:10, 102:22, 104:14, 105:25, 108:12, 109:4, 109:10, 110:15, 112:3, 112:18, 113:24, 114:2, 114:7, 119:24
**limit** [1] - 62:5
**limitations** [1] - 34:10
**limited** [25] - 34:12, 34:13, 34:19, 36:8, 36:13, 37:14, 37:22, 37:23, 37:24, 40:6, 51:25, 53:6, 53:7, 54:4, 54:23, 54:25, 55:2, 59:19, 62:14, 62:18, 62:20, 62:22, 63:9, 72:18, 95:11
**Line** [1] - 69:1
**lined** [1] - 28:5
**lis** [1] - 66:7
**list** [2] - 65:2, 95:13
**listed** [5] - 7:20, 11:17, 54:15, 65:3, 77:15
**listening** [2] - 56:8, 57:3
**lists** [2] - 7:24, 8:3
**litany** [1] - 81:16
**literally** [14] - 6:10, 7:23, 10:18, 13:8, 45:5, 47:16, 55:10, 56:11, 72:13, 72:16, 78:13, 97:11, 102:19, 118:2
**litigated** [1] - 89:13
**litigation** [20] - 31:19, 31:21, 60:13, 66:4, 68:7, 68:8, 68:9, 75:7, 75:20, 90:4, 95:23, 96:8, 96:9, 96:10, 97:8, 97:9, 101:5, 101:6, 106:15, 126:11
**little** [14] - 8:24, 21:14, 23:7, 23:8, 27:8, 27:10, 34:5, 36:21, 48:20, 64:2, 90:2, 93:6, 94:10
**live** [1] - 98:11
**living** [1] - 69:20
**Liz** [1] - 5:14
**liz.klingensmith@pillsburylaw.com** [1] - 4:8
**LLC** [8] - 5:3, 15:20, 23:5, 24:2, 30:12, 33:9, 54:3, 107:1
**LLP** [1] - 4:5
**loan** [3] - 95:14, 97:3, 110:24
**located** [1] - 32:6
**lock** [1] - 16:19
**log** [1] - 19:17
**long** [7] - 19:19, 28:11, 61:4, 64:12, 89:24, 128:14
**longer** [2] - 20:19, 101:5
**look** [20] - 6:10, 6:12, 7:1, 7:3, 10:16, 20:11, 20:25, 26:5, 46:2, 53:2, 57:6, 71:17, 71:24, 72:2, 75:14, 79:20, 81:25, 86:15, 107:2, 124:25
**looked** [4] - 74:5, 74:11, 88:5, 89:15
**looking** [8] - 7:23, 45:17, 45:19, 49:20, 109:25, 111:20, 113:6
**looks** [1] - 18:25
**Loop** [1] - 4:13
**loop** [2] - 30:21, 32:6

**loose** [1] - 15:16
**Lopez** [5] - 23:10, 24:6, 81:11, 82:6, 82:9
**Lord** [2] - 60:21, 75:13
**lost** [6] - 51:6, 66:23, 70:14, 102:5, 102:6, 116:6
**lot** [23] - 36:24, 39:7, 40:10, 41:24, 43:20, 52:7, 66:15, 66:16, 66:24, 67:6, 67:18, 67:19, 69:9, 75:6, 89:17, 92:13, 92:14, 101:5, 101:9, 123:15, 126:17
**love** [1] - 108:13
**lying** [2] - 31:4, 65:22

## M

**ma'am** [4] - 6:22, 7:12, 8:18, 88:14
**MacGeorge** [7] - 3:11, 3:12, 5:9, 91:4, 104:18, 106:9, 108:6
**MACGEORGE** [27] - 5:9, 18:23, 47:10, 52:2, 52:17, 55:13, 55:17, 56:5, 56:15, 56:18, 56:25, 57:18, 58:15, 78:23, 85:3, 85:7, 85:25, 87:2, 87:6, 91:5, 91:16, 91:20, 92:3, 104:18, 110:17, 117:6, 125:11
**machine** [1] - 1:22
**made** [22] - 8:8, 23:6, 32:16, 32:19, 36:12, 49:19, 55:7, 58:11, 63:5, 70:18, 77:12, 77:22, 77:24, 78:7, 89:18, 92:18, 104:16, 105:6, 112:8, 112:11, 112:13, 127:5
**mail** [25] - 8:13, 8:15, 27:24, 41:6, 41:7, 45:15, 46:15, 68:18, 92:7, 93:18, 94:1, 94:3, 94:5, 94:11, 94:16, 94:20, 94:24, 96:7, 120:2, 123:19, 123:20, 123:21, 126:4
**mailed** [2] - 94:7, 120:3
**mailing** [1] - 126:8
**mails** [3] - 27:14, 93:8, 121:18
**maintain** [2] - 53:16, 53:17
**make** [43] - 5:4, 6:2, 8:16, 8:23, 9:4, 9:7, 23:5, 29:15, 35:10, 37:9, 38:10, 38:13, 41:1, 44:24, 45:2, 55:8, 55:10, 56:2, 56:4, 56:11, 56:22, 57:8, 57:15, 57:16, 58:14, 61:5, 78:3, 84:17, 85:15, 89:16, 91:2, 94:24, 96:3, 97:3, 97:17, 100:21, 112:4, 114:3, 122:9, 123:2, 124:9, 125:13, 125:24
**makes** [6] - 28:25, 36:21, 56:22, 57:6, 57:11, 58:7
**making** [6] - 32:21, 58:5, 109:5, 110:2, 122:10, 126:3
**man** [2] - 23:17, 66:20
**management** [3] - 31:17, 32:20, 111:7
**manager** [6] - 24:1, 30:17, 40:14, 95:16, 95:19, 111:8
**managing** [1] - 126:6
**Manor** [17] - 10:1, 10:2, 11:23, 12:8, 12:11, 13:17, 13:19, 15:22, 40:13, 40:23, 40:24, 70:7, 71:25, 72:25, 73:2, 74:23

**Manor's** [7] - 12:16, 12:20, 13:21, 14:7, 19:18, 24:19, 29:24
**manufactured** [1] - 59:23
**many** [7] - 31:2, 37:25, 48:23, 52:18, 67:3, 117:8, 117:20
**March** [1] - 124:8
**married** [1] - 70:13
**Matias** [2] - 3:7, 5:6
**matter** [9] - 19:19, 22:9, 59:17, 67:22, 75:23, 89:19, 89:25, 90:2, 92:20
**matters** [1] - 30:19
**Matías** [1] - 3:8
**may** [27] - 8:13, 10:19, 14:24, 17:19, 20:1, 34:16, 48:18, 48:21, 51:20, 52:2, 59:4, 59:6, 64:14, 65:16, 66:12, 92:6, 93:23, 93:24, 97:12, 97:15, 102:18, 110:15, 112:12, 116:23, 117:15, 119:16
**May** [1] - 66:23
**maybe** [7] - 38:4, 50:14, 50:15, 51:20, 77:22, 114:17, 127:21
**McCathern** [2] - 4:13, 5:16
**McDonald** [1] - 33:9
**me** [132] - 6:11, 6:19, 7:4, 7:17, 11:4, 15:13, 16:11, 16:13, 18:1, 18:7, 19:12, 19:16, 19:22, 21:12, 23:5, 24:25, 25:6, 25:8, 26:4, 26:8, 26:18, 26:20, 26:22, 26:24, 27:8, 27:14, 27:18, 27:19, 28:2, 28:14, 28:15, 29:6, 29:8, 30:3, 31:25, 33:4, 35:9, 35:19, 36:3, 36:14, 37:21, 37:25, 39:23, 39:24, 40:4, 40:11, 56:9, 57:3, 57:6, 57:16, 60:8, 60:18, 60:25, 61:7, 61:13, 62:1, 62:6, 62:24, 63:14, 63:19, 63:21, 63:23, 63:24, 64:5, 64:7, 65:24, 66:21, 67:8, 67:12, 68:6, 68:15, 68:19, 68:20, 69:22, 70:19, 71:2, 71:9, 71:13, 72:25, 73:17, 74:12, 75:8, 75:17, 75:18, 79:25, 80:8, 85:19, 86:15, 88:3, 88:5, 89:4, 89:8, 89:15, 89:17, 90:6, 91:2, 91:3, 91:10, 92:2, 93:11, 93:12, 93:17, 93:18, 93:19, 94:24, 101:4, 102:16, 102:17, 102:19, 102:23, 103:16, 106:1, 108:3, 110:19, 113:23, 114:19, 117:21, 119:14, 119:15, 120:17, 123:7, 123:20, 123:25, 126:13, 126:21, 127:11, 127:14, 127:18, 129:12
**mean** [36] - 8:11, 17:15, 17:17, 29:10, 33:21, 38:22, 42:19, 44:22, 45:4, 45:9, 45:10, 46:2, 48:6, 48:16, 49:1, 58:6, 63:8, 71:24, 72:14, 72:16, 72:18, 78:12, 79:25, 82:13, 83:17, 89:21, 95:3, 95:22, 99:22, 100:18, 109:24, 110:14, 114:7, 118:11, 123:13, 125:5
**meaning** [3] - 33:17, 35:17, 59:12
**means** [5] - 20:22, 30:21, 33:25, 45:5, 108:19
**meant** [2] - 111:3, 123:6
**mediation** [1] - 70:10
**meet** [2] - 52:22, 56:2

**meets** [4] - 56:9, 56:23, 57:12, 58:9
**Melissa** [2] - 40:18, 120:17
**member** [1] - 24:1
**mention** [3] - 6:14, 65:9, 119:23
**mentioned** [4] - 16:16, 54:14, 66:20, 102:3
**mentions** [1] - 29:19
**merit** [2] - 125:10, 125:11
**merits** [8] - 47:12, 47:15, 52:12, 52:13, 53:4, 53:18, 54:24, 62:16
**message** [1] - 69:24
**messed** [1] - 110:4
**met** [6] - 53:13, 55:7, 58:5, 59:8, 69:21, 120:8
**might** [5] - 61:21, 64:1, 102:22, 104:20, 105:14
**Mike** [1] - 25:15
**Miller** [4] - 1:24, 129:4, 129:23, 129:23
**million** [8] - 27:7, 32:18, 64:1, 68:19, 98:10, 99:14, 112:19, 125:22
**mine** [2] - 30:24, 64:12
**minute** [3] - 34:13, 108:12, 108:13
**minutes** [14] - 5:23, 6:18, 27:23, 28:4, 41:22, 44:10, 44:11, 45:8, 45:15, 65:21, 72:5, 86:5, 118:10, 119:2
**miraculously** [1] - 76:12
**mischaracterizes** [1] - 47:21
**miscommunication** [1] - 48:11
**misconduct** [1] - 95:25
**misleads** [1] - 69:6
**misrepresentation** [1] - 119:12
**misrepresentations** [1] - 31:3
**miss** [1] - 5:24
**missing** [1] - 22:4
**misspoke** [1] - 17:23
**misstated** [1] - 47:4
**mistake** [2] - 16:13, 77:22
**mistrial** [1] - 67:14
**mja@mjalawyer.com** [1] - 3:10
**Mobley** [4] - 47:13, 52:14
**mom** [1] - 66:19
**moment** [4] - 17:23, 20:10, 20:11, 75:14
**moments** [1] - 6:12
**Mona** [3] - 120:1, 120:7, 126:6
**Monday** [5] - 11:23, 13:16, 73:2, 127:2, 127:22
**monetary** [1] - 76:21
**money** [27] - 32:7, 45:6, 76:9, 76:20, 78:25, 82:18, 99:8, 99:10, 99:12, 99:15, 100:2, 100:21, 109:25, 112:19, 112:20, 113:1, 113:4, 113:10, 113:12, 113:16, 114:7, 114:13, 114:24, 124:23, 125:22
**month** [2] - 23:7, 23:8
**months** [3] - 30:16, 49:24, 51:14
**moot** [2] - 55:10, 56:13
**mooted** [3] - 47:12, 52:13, 54:25
**Moran** [2] - 9:22, 10:6
**more** [18] - 23:8, 26:13, 27:8, 27:17,

38:19, 50:8, 50:13, 63:5, 79:23, 80:10, 80:17, 85:11, 96:11, 115:3, 115:4, 115:7

**moreover** [3] - 14:16, 47:21, 63:6

**morning** [17] - 6:9, 10:18, 10:23, 11:9, 11:13, 11:14, 11:15, 12:13, 12:18, 14:21, 20:8, 26:7, 26:8, 72:10, 73:19, 87:8

**mortgage** [1] - 79:10

**most** [3] - 28:17, 44:12, 61:13

**mostly** [1] - 94:13

**motion** [97] - 10:10, 10:14, 10:24, 11:5, 11:12, 15:11, 16:7, 17:10, 17:14, 17:24, 19:13, 21:5, 21:8, 21:11, 23:18, 24:5, 24:9, 24:10, 27:11, 27:18, 27:21, 28:5, 29:4, 31:2, 31:3, 31:7, 33:2, 33:14, 33:19, 33:20, 34:18, 35:25, 39:22, 41:8, 41:22, 42:1, 42:11, 42:18, 43:6, 44:6, 44:11, 45:23, 46:6, 46:10, 47:2, 47:11, 47:16, 51:3, 51:4, 51:10, 51:13, 51:23, 52:3, 52:7, 52:8, 52:16, 52:18, 52:20, 53:8, 53:12, 53:23, 54:25, 55:1, 55:21, 55:23, 58:18, 58:20, 58:24, 61:21, 62:11, 62:21, 62:23, 63:2, 64:8, 71:7, 72:12, 72:20, 73:23, 74:2, 81:9, 84:2, 85:11, 85:20, 85:22, 88:5, 102:5, 102:6, 102:14, 103:1, 103:8, 103:12, 104:16, 105:12, 109:11, 118:8

**MOTION** [2] - 1:12, 2:3

**motions** [2] - 59:20, 61:18

**motivation** [1] - 68:25

**movant's** [2] - 34:14, 52:8, 52:19, 61:21

**movant's** [1] - 53:13

**move** [3] - 50:14, 82:15, 82:19

**moved** [2] - 37:11, 44:20

**moving** [5] - 35:18, 59:14, 59:15, 59:16, 80:3

**Mr** [190] - 3:3, 3:15, 4:2, 4:4, 5:18, 5:20, 6:6, 6:7, 7:4, 8:17, 9:14, 11:11, 15:5, 15:6, 16:12, 16:15, 16:19, 17:13, 18:10, 18:11, 18:12, 20:3, 20:10, 21:1, 21:8, 21:24, 21:25, 22:1, 22:4, 22:15, 22:22, 25:4, 25:7, 25:11, 25:16, 25:17, 26:3, 26:19, 26:20, 27:14, 27:24, 29:6, 33:5, 34:20, 35:22, 36:20, 36:23, 37:8, 37:9, 37:10, 37:12, 37:17, 39:5, 39:10, 39:12, 39:16, 40:8, 40:18, 41:14, 44:13, 44:16, 46:14, 46:15, 49:2, 49:4, 50:11, 52:5, 52:13, 52:19, 53:11, 54:8, 54:21, 59:23, 60:22, 61:5, 64:16, 65:20, 66:1, 66:3, 66:17, 67:2, 67:13, 67:16, 67:21, 67:24, 68:1, 68:4, 68:12, 69:13, 69:14, 70:1, 70:2, 70:8, 70:11, 70:15, 70:24, 71:8, 71:12, 72:1, 72:11, 72:19, 72:22, 74:24, 76:8, 78:18, 79:16, 79:19, 79:22, 80:13, 81:15, 81:16, 81:21, 82:8, 83:10, 83:12, 83:13, 83:20, 83:23, 84:13, 85:8, 86:1, 86:8, 87:7, 88:20, 89:16, 89:22, 90:9,

91:11, 92:1, 92:4, 92:9, 92:23, 94:10, 94:19, 95:3, 96:18, 97:1, 97:18, 99:13, 101:6, 102:17, 103:13, 104:5, 104:10, 104:15, 105:13, 105:17, 106:2, 106:17, 109:2, 109:18, 110:20, 111:7, 111:18, 115:1, 117:21, 119:17, 120:3, 120:4, 120:15, 120:21, 121:3, 121:6, 121:16, 121:18, 122:2, 122:5, 122:12, 123:10, 123:17, 123:18, 123:19, 123:20, 124:1, 124:3, 127:12, 127:17

**MR** [294] - 5:6, 5:8, 5:10, 5:13, 5:16, 5:22, 5:25, 6:2, 6:6, 6:13, 6:17, 7:8, 7:12, 7:15, 7:20, 8:5, 8:13, 8:18, 8:19, 8:22, 8:23, 9:2, 9:4, 9:9, 9:10, 9:11, 9:15, 9:24, 9:25, 10:1, 10:5, 10:15, 10:19, 10:24, 11:2, 11:5, 11:6, 12:5, 12:16, 12:23, 12:25, 13:5, 13:10, 14:1, 15:4, 16:23, 17:3, 17:18, 17:20, 18:6, 18:7, 18:8, 18:14, 18:17, 18:22, 19:2, 19:6, 19:10, 19:15, 19:17, 19:22, 19:25, 20:1, 20:5, 21:2, 21:5, 21:9, 21:22, 22:2, 22:5, 22:9, 22:13, 22:16, 24:17, 24:21, 29:12, 29:16, 29:19, 34:4, 37:23, 38:3, 38:18, 39:9, 40:9, 42:17, 42:20, 43:7, 43:12, 43:19, 43:23, 44:2, 45:1, 45:8, 45:12, 45:21, 45:24, 46:3, 46:7, 46:12, 46:17, 46:20, 46:23, 47:3, 47:18, 48:9, 48:15, 48:18, 48:19, 48:21, 48:22, 48:23, 49:6, 50:6, 50:13, 50:17, 50:22, 56:19, 59:4, 59:7, 60:1, 60:2, 62:8, 62:20, 63:1, 63:12, 63:13, 63:14, 63:19, 64:12, 64:14, 64:19, 64:24, 65:7, 65:12, 65:16, 65:19, 68:10, 68:11, 68:13, 68:15, 68:16, 68:17, 69:25, 70:1, 71:14, 71:17, 72:23, 74:8, 74:12, 74:16, 74:18, 75:9, 75:12, 75:23, 76:14, 76:22, 77:3, 77:9, 77:12, 77:22, 78:8, 78:19, 79:16, 79:20, 81:1, 81:2, 85:5, 85:10, 85:24, 86:9, 86:10, 86:18, 86:20, 87:1, 87:5, 87:13, 87:18, 87:23, 88:15, 88:19, 88:24, 90:8, 90:14, 90:18, 92:6, 92:12, 92:22, 93:1, 93:4, 93:6, 93:13, 93:21, 93:23, 94:1, 94:3, 94:7, 94:11, 94:15, 94:21, 95:10, 96:4, 96:15, 96:21, 96:25, 97:3, 97:12, 97:15, 97:19, 97:20, 97:21, 97:24, 98:1, 98:13, 99:6, 99:10, 100:4, 100:25, 101:8, 101:13, 102:1, 102:9, 102:13, 102:21, 103:1, 103:4, 103:7, 103:14, 103:19, 103:25, 105:6, 105:18, 105:21, 106:25, 107:8, 107:11, 107:16, 107:22, 108:3, 108:8, 108:11, 108:14, 109:3, 110:16, 110:18, 110:19, 111:17, 112:7, 112:11, 112:23, 113:2, 113:5, 113:18, 113:24, 114:1, 114:5, 114:19, 116:10, 116:23, 116:25, 117:3, 117:4, 117:8, 117:15, 117:18, 117:22, 118:1, 118:9, 118:14, 118:21, 119:9, 119:16, 119:20, 122:4, 122:7, 122:15, 122:19,

122:25, 123:7, 123:11, 123:15, 124:16, 125:2, 125:5, 125:8, 125:9, 125:18, 126:22, 127:2, 127:15, 127:19, 127:25, 128:2, 128:5, 128:9

**mr** [2] - 3:7, 4:12

**Ms** [30] - 3:11, 4:3, 22:18, 23:3, 23:4, 23:25, 24:10, 24:23, 24:24, 29:2, 36:6, 75:2, 77:17, 78:7, 78:9, 81:22, 90:3, 91:4, 94:15, 99:17, 100:8, 104:17, 106:9, 106:17, 108:6, 108:21, 109:6, 109:19, 110:1, 110:23

**MS** [28] - 5:9, 18:23, 47:10, 52:2, 52:17, 55:13, 55:17, 56:5, 56:15, 56:18, 56:25, 57:18, 58:15, 78:23, 85:3, 85:7, 85:25, 87:2, 87:6, 91:5, 91:16, 91:20, 92:3, 104:18, 110:17, 117:6, 119:3, 125:11

**much** [5] - 64:7, 85:1, 103:17, 109:13, 126:15

**multiple** [1] - 89:14

**my** [102] - 7:9, 9:6, 9:16, 9:20, 10:9, 14:4, 15:4, 15:15, 16:15, 20:13, 21:5, 21:10, 21:22, 23:6, 24:2, 25:1, 27:9, 27:18, 28:5, 28:7, 28:8, 28:9, 29:7, 29:20, 31:3, 31:20, 31:23, 33:23, 35:4, 36:5, 37:3, 38:12, 39:20, 39:22, 40:3, 40:4, 41:8, 42:1, 42:18, 42:20, 43:7, 43:9, 47:22, 48:1, 58:8, 59:8, 60:3, 60:16, 60:18, 62:21, 62:22, 63:25, 64:8, 66:1, 66:2, 66:4, 66:13, 66:19, 66:22, 66:23, 67:8, 68:18, 68:21, 68:22, 70:14, 70:21, 70:22, 70:24, 70:25, 71:3, 77:25, 78:8, 80:22, 83:8, 83:24, 85:11, 85:20, 86:20, 89:4, 89:8, 89:9, 89:10, 94:1, 94:7, 94:8, 94:12, 94:13, 103:17, 114:4, 123:12, 126:5, 126:6

**My** [2] - 34:4, 66:19

**MY** [1] - 129:20

**my's** [1] - 33:6

**myself** [4] - 28:10, 103:22, 103:23, 127:5

# N

**N** [3] - 2:1, 3:1, 5:1

**Naissance** [58] - 9:19, 12:10, 12:19, 12:22, 13:14, 13:20, 14:3, 14:8, 14:13, 15:1, 15:20, 17:21, 22:19, 23:5, 24:1, 29:25, 30:12, 30:17, 40:14, 40:20, 71:20, 72:13, 73:1, 73:5, 73:7, 73:8, 73:12, 73:15, 74:2, 74:20, 74:21, 75:8, 75:17, 83:14, 83:20, 84:3, 89:3, 89:6, 95:6, 96:13, 101:23, 102:2, 105:13, 106:6, 106:19, 106:25, 107:6, 107:14, 107:16, 108:14, 108:17, 110:21, 111:7, 111:8, 111:18, 111:11, 120:13

**name** [12] - 15:4, 16:15, 18:4, 23:17, 29:20, 33:6, 46:25, 49:10, 49:11, 86:20, 109:13, 109:14

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

**named** [3] - 28:1, 29:8, 41:12
**naming** [1] - 49:7
**narrative** [2] - 70:18
**narrow** [1] - 37:15
**National** [18] - 5:3, 5:14, 8:3, 8:9, 9:19, 23:14, 65:9, 71:20, 77:20, 78:1, 78:6, 79:11, 96:1, 96:13, 105:20, 105:22, 112:2, 112:9
**NATIONAL** [2] - 1:7, 4:1
**nationality** [1] - 101:18
**NBK** [7] - 29:21, 30:4, 30:9, 30:20, 32:18, 98:25, 113:14
**necessarily** [1] - 37:16
**necessary** [3] - 22:16, 30:21, 44:10
**need** [44] - 14:24, 17:6, 20:23, 35:20, 36:9, 36:10, 36:11, 37:1, 37:13, 37:16, 37:20, 38:19, 39:16, 50:3, 51:20, 53:20, 57:11, 60:4, 73:20, 78:2, 86:6, 87:15, 91:6, 91:13, 91:18, 91:22, 94:5, 94:9, 96:2, 96:19, 100:12, 100:17, 101:4, 101:11, 114:4, 114:17, 116:22, 117:14, 118:5, 118:25, 127:4, 127:12, 128:3
**needed** [1] - 79:22, 115:4
**needs** [5] - 51:19, 58:22, 84:18, 87:17, 88:9
**negotiated** [1] - 45:18
**net** [1] - 27:9
**never** [14] - 13:15, 14:4, 28:8, 39:23, 39:24, 41:19, 41:20, 42:6, 42:7, 46:15, 46:16, 48:12, 80:16, 82:13
**nevertheless** [1] - 34:23
**new** [8] - 7:13, 7:15, 79:21, 81:6, 81:17, 82:23, 115:10, 115:15
**New** [2] - 95:12, 95:14
**NEW** [2] - 1:7, 4:1
**next** [2] - 107:4, 127:1
**night** [2] - 27:4, 68:12
**nightmare** [1] - 69:20
**nine** [2] - 71:9
**Ninth** [1] - 43:17
**NO** [1] - 1:2
**no** [69] - 16:23, 20:7, 22:16, 38:18, 40:24, 43:21, 47:19, 48:10, 50:24, 51:11, 51:18, 51:19, 52:7, 53:17, 53:19, 54:18, 54:21, 55:9, 55:13, 56:5, 56:8, 56:17, 56:19, 56:21, 57:3, 57:18, 58:15, 58:19, 58:24, 59:2, 63:19, 68:13, 74:10, 80:25, 82:11, 82:16, 85:11, 86:3, 86:10, 92:3, 92:12, 94:21, 96:15, 100:5, 100:15, 100:22, 103:19, 104:3, 106:11, 107:14, 107:16, 108:3, 109:23, 110:7, 115:2, 115:3, 116:3, 116:4, 116:5, 116:15, 116:16, 117:4, 119:7, 122:17, 123:14
**No** [8] - 3:3, 3:7, 3:11, 3:16, 4:3, 4:4, 4:5, 4:12
**nobody** [1] - 20:21
**none** [5] - 44:18, 89:7, 99:20, 99:22, 99:24

**nonmovant** [7] - 51:2, 51:21, 52:11, 53:2, 54:1, 54:6, 54:7
**nonsuit** [8] - 33:7, 41:25, 42:3, 42:16, 43:3, 47:11, 61:20
**nonsuited** [3] - 33:4, 52:12, 56:16
**nonsuiting** [2] - 43:10, 43:11
**nonsuits** [1] - 42:22
**nor** [2] - 16:15, 24:5
**normally** [1] - 54:1
**not** [182] - 5:21, 7:15, 9:10, 10:22, 11:5, 11:22, 12:25, 13:5, 14:13, 14:23, 15:6, 16:21, 17:5, 17:7, 18:23, 21:17, 22:1, 22:23, 23:13, 24:20, 26:21, 26:24, 28:1, 28:15, 28:22, 29:11, 29:17, 31:10, 33:7, 34:12, 34:13, 36:3, 38:19, 39:7, 40:7, 41:10, 42:6, 42:9, 45:12, 46:3, 47:4, 48:3, 49:16, 49:18, 50:18, 50:20, 50:22, 50:23, 51:4, 52:17, 54:10, 55:15, 56:3, 56:7, 56:8, 56:18, 57:2, 57:3, 57:10, 57:16, 57:19, 58:5, 58:6, 62:17, 62:18, 62:19, 62:21, 62:22, 65:3, 66:12, 68:20, 69:5, 69:7, 69:11, 71:12, 72:2, 72:9, 72:19, 73:3, 74:21, 75:8, 75:12, 75:14, 75:15, 75:17, 76:12, 76:18, 77:1, 77:5, 78:3, 78:25, 79:9, 81:6, 81:22, 82:6, 82:7, 83:3, 84:17, 84:23, 87:15, 88:17, 88:21, 89:4, 89:9, 89:12, 90:3, 90:12, 91:11, 91:16, 92:1, 92:2, 92:6, 92:7, 92:25, 93:9, 93:10, 93:17, 95:16, 95:19, 96:8, 97:4, 97:7, 97:10, 97:22, 97:24, 98:13, 98:15, 99:9, 102:8, 102:18, 102:22, 103:13, 103:14, 103:21, 104:7, 104:8, 105:7, 105:19, 105:21, 106:3, 106:25, 107:3, 107:5, 107:8, 107:13, 107:18, 107:23, 109:21, 111:5, 111:10, 112:3, 112:12, 112:20, 114:16, 115:18, 115:19, 117:23, 118:7, 118:24, 121:12, 122:21, 123:4, 124:2, 124:13, 124:24, 126:3, 126:19, 126:25, 127:7, 127:18, 128:7
**note** [1] - 76:4
**nothing** [10] - 60:9, 64:19, 80:14, 80:21, 98:21, 100:12, 100:16, 100:23, 116:9, 127:11
**notice** [11] - 11:7, 11:8, 11:11, 16:4, 18:1, 19:5, 24:12, 27:20, 27:22, 61:7
**notified** [1] - 27:5
**notify** [1] - 27:6
**notwithstanding** [1] - 59:11
**November** [16] - 1:18, 24:11, 25:2, 25:4, 25:9, 26:2, 26:15, 26:19, 28:6, 42:5, 48:1, 48:2, 48:4, 81:10, 111:21, 129:21
**now** [47] - 10:10, 14:2, 16:1, 16:25, 26:6, 28:8, 28:25, 33:4, 34:7, 36:7, 36:20, 37:1, 37:4, 37:11, 38:25, 39:3, 39:21, 39:23, 41:12, 42:8, 42:10, 47:3, 52:12, 53:16, 55:10, 56:13, 59:21,

60:21, 64:17, 76:25, 77:6, 77:11, 77:19, 83:8, 83:25, 84:2, 86:5, 88:13, 89:5, 89:9, 91:9, 115:7, 118:11, 118:17, 119:19, 127:10, 128:8
**number** [2] - 32:13, 33:11
**Number** [7] - 41:2, 41:3, 51:17, 51:18, 98:20, 98:22, 99:14
**numbered** [1] - 1:20, 129:11
**numerous** [1] - 11:17

**O**

**O** [1] - 5:1
**oath** [8] - 16:20, 17:6, 88:17, 91:2, 91:13, 91:19, 92:25, 122:21
**object** [1] - 17:3
**objection** [4] - 60:1, 109:6, 115:5, 115:6
**objections** [5] - 38:9, 81:5, 94:22, 117:6, 117:8
**obligation** [1] - 123:4
**obtain** [2] - 35:25, 61:21
**obtained** [1] - 26:2
**obtaining** [1] - 25:9
**obvious** [1] - 67:5
**obviously** [6] - 25:19, 36:20, 41:19, 72:18, 119:10, 121:8
**occurred** [1] - 129:11
**occurring** [1] - 101:20
**October** [7] - 22:17, 22:23, 23:6, 23:14, 23:16, 30:14, 69:14
**OF** [6] - 1:1, 1:7, 1:6, 4:1, 129:2, 129:2
**of** [449] - 1:18, 2:2, 5:3, 5:11, 5:14, 5:17, 7:6, 7:8, 8:3, 8:9, 8:16, 8:24, 9:20, 10:8, 10:9, 10:16, 11:8, 11:11, 11:23, 11:25, 12:9, 12:20, 12:22, 13:11, 13:16, 14:3, 15:1, 15:3, 15:7, 15:12, 15:20, 16:9, 16:16, 17:3, 17:5, 17:20, 18:3, 18:8, 18:18, 18:20, 19:5, 19:12, 20:2, 20:20, 20:22, 21:14, 21:23, 22:12, 22:17, 22:23, 22:24, 22:25, 23:3, 23:10, 23:14, 23:16, 23:23, 24:1, 24:6, 24:12, 24:16, 25:8, 25:15, 25:18, 26:2, 26:11, 27:13, 27:17, 27:20, 28:7, 28:19, 28:20, 28:21, 29:19, 29:24, 29:25, 30:2, 30:4, 30:10, 30:11, 30:14, 30:17, 30:24, 31:1, 31:7, 31:11, 31:18, 31:21, 32:3, 32:5, 32:13, 32:15, 32:18, 33:6, 33:11, 33:17, 34:20, 35:6, 35:13, 35:19, 35:22, 36:5, 36:11, 36:12, 36:18, 36:24, 37:4, 37:12, 37:19, 38:3, 38:10, 38:19, 38:23, 39:7, 39:13, 39:17, 40:10, 40:11, 40:14, 41:14, 41:24, 42:5, 42:9, 42:15, 42:24, 43:1, 43:2, 43:13, 43:20, 44:5, 44:18, 45:14, 45:18, 45:19, 46:2, 46:3, 46:10, 46:13, 46:17, 46:25, 47:4, 47:12, 47:13, 47:15, 47:19, 47:23, 48:6, 48:19, 48:25, 49:2, 49:7, 49:8, 49:10, 49:20, 50:8, 50:11, 51:2, 51:6, 51:8, 51:9, 51:23, 52:11, 52:12, 52:14, 52:21,

52:24, 53:4, 53:5, 53:7, 53:9, 53:11,
53:15, 53:16, 53:17, 53:21, 54:4, 54:9,
54:24, 55:8, 55:11, 56:12, 56:20,
56:21, 57:9, 57:11, 57:20, 57:21,
57:22, 58:10, 58:12, 58:14, 58:16,
58:23, 59:12, 59:13, 59:17, 60:3, 60:7,
60:10, 60:15, 61:7, 61:12, 62:1, 62:3,
62:4, 62:5, 62:16, 63:5, 63:9, 63:10,
63:17, 64:22, 65:1, 65:3, 65:9, 65:10,
65:20, 66:15, 66:16, 66:18, 66:24,
67:5, 67:6, 67:16, 68:18, 68:21, 68:22,
69:2, 69:3, 69:5, 69:9, 69:12, 71:8,
71:13, 71:20, 72:15, 72:22, 72:24,
73:2, 73:10, 73:16, 74:15, 75:5, 75:6,
75:7, 75:18, 75:20, 76:1, 76:6, 76:10,
77:1, 77:21, 78:1, 78:6, 79:1, 79:11,
80:5, 81:8, 81:13, 81:16, 82:5, 83:20,
85:18, 86:11, 86:17, 87:8, 87:11, 89:4,
89:8, 89:10, 89:17, 89:20, 89:21, 90:2,
91:1, 91:15, 91:20, 91:23, 92:13,
92:14, 92:15, 92:16, 92:20, 92:21,
93:7, 93:17, 94:18, 94:22, 95:8, 95:11,
95:12, 95:13, 95:14, 95:16, 95:17,
95:19, 95:25, 96:1, 96:14, 96:22,
97:18, 98:14, 98:17, 98:19, 99:5,
99:12, 99:20, 99:21, 99:22, 99:23,
99:24, 100:4, 100:7, 100:14, 100:20,
101:1, 101:3, 101:10, 102:4, 102:19,
103:4, 103:16, 104:4, 104:14, 104:17,
105:20, 105:22, 106:18, 107:7,
107:23, 108:1, 108:15, 108:16,
108:25, 109:8, 109:10, 109:16,
109:24, 110:10, 110:25, 111:15,
111:22, 111:25, 112:1, 112:2, 112:4,
112:5, 112:9, 112:17, 113:7, 113:8,
113:13, 113:16, 113:18, 113:19,
114:9, 114:10, 114:11, 114:16,
114:23, 115:1, 115:19, 115:24, 116:4,
116:5, 116:10, 116:14, 116:19, 117:9,
118:17, 119:4, 119:12, 119:21, 120:7,
120:8, 120:12, 120:13, 120:18,
120:20, 120:23, 121:2, 121:3, 121:4,
121:11, 122:7, 122:11, 122:22,
123:17, 123:22, 123:24, 124:1, 124:2,
124:4, 124:5, 124:7, 124:13, 124:14,
124:22, 125:22, 125:23, 126:7,
126:13, 126:17, 126:21, 126:25,
127:13, 129:6, 129:7, 129:8, 129:10,
129:11, 129:14, 129:18, 129:20
**off** [10] - 7:21, 10:21, 33:6, 39:11, 42:15,
46:1, 46:25, 82:15, 87:1, 108:10
**offer** [1] - 101:13
**office** [3] - 22:6, 66:22
**officer** [2] - 115:1, 122:11
**OFFICIAL** [1] - 129:20
**Official** [3] - 1:24, 129:4, 129:24
**oh** [7] - 29:7, 58:11, 68:13, 83:13, 83:15,
104:17, 107:2
**oilfield** [1] - 33:9
**Okay** [1] - 111:16

**okay** [29] - 5:12, 6:16, 7:10, 7:17, 16:6,
20:3, 21:4, 22:8, 26:9, 34:7, 38:3,
39:4, 41:4, 41:20, 61:8, 66:18, 83:7,
83:8, 83:15, 85:24, 87:4, 97:4, 108:23,
109:5, 111:22, 118:1, 123:9, 127:25
**older** [1] - 6:15
**Omar** [1] - 22:22
**omitting** [1] - 42:21
**On** [1] - 1:18
**on** [188] - 1:19, 5:2, 5:17, 7:5, 7:10, 7:15,
7:16, 8:2, 8:24, 9:13, 9:17, 11:12,
11:17, 11:23, 12:8, 12:12, 13:16,
13:20, 14:18, 14:19, 15:8, 15:19,
16:11, 18:9, 18:17, 19:1, 20:13, 20:18,
20:19, 22:9, 22:17, 23:2, 23:4, 23:6,
23:16, 24:10, 24:11, 25:2, 25:4, 25:9,
26:2, 26:3, 26:15, 26:19, 26:20, 27:18,
28:6, 28:16, 29:4, 29:15, 29:25, 30:11,
32:13, 34:6, 35:4, 35:18, 36:1, 36:11,
36:18, 37:13, 37:20, 39:11, 40:17,
41:4, 41:6, 41:12, 42:20, 42:21, 44:13,
44:14, 44:17, 47:25, 48:2, 48:5, 49:10,
50:9, 51:4, 51:8, 51:13, 51:23, 52:4,
53:4, 53:6, 53:10, 55:23, 56:10, 57:4,
57:6, 57:13, 57:25, 59:16, 62:7, 63:10,
64:25, 66:5, 67:17, 67:18, 67:22,
68:23, 69:16, 69:18, 69:23, 71:16,
72:17, 72:20, 73:2, 73:5, 74:15, 75:3,
75:7, 75:22, 76:3, 77:24, 79:14, 81:2,
81:10, 82:21, 82:22, 83:4, 83:8, 83:20,
83:25, 84:2, 84:6, 84:9, 85:8, 86:11,
86:13, 86:17, 88:12, 89:22, 90:7, 90:9,
91:14, 92:16, 92:19, 94:23, 95:25,
97:6, 97:9, 98:17, 99:4, 99:15, 99:16,
100:17, 102:18, 103:17, 105:24,
106:9, 108:18, 109:11, 109:13,
109:22, 110:13, 110:21, 111:21,
113:22, 114:1, 114:8, 114:16, 114:17,
115:12, 117:11, 118:7, 120:12,
120:21, 122:7, 123:16, 124:1, 124:4,
124:12, 125:3, 125:20, 126:6, 126:7,
126:20, 127:5, 127:6, 128:7, 128:14
**once** [4] - 52:22, 62:9, 62:11, 117:21
**one** [52] - 7:20, 9:13, 15:4, 16:2, 21:23,
24:17, 25:23, 26:13, 31:11, 38:5,
44:10, 44:11, 47:23, 47:25, 49:17,
49:21, 51:11, 51:20, 53:17, 56:3, 62:9,
63:1, 65:3, 68:18, 74:19, 78:21, 83:7,
87:2, 87:6, 92:15, 97:1, 97:20, 98:11,
99:11, 99:12, 101:1, 104:4, 104:22,
104:24, 108:1, 108:12, 108:13,
111:23, 114:16, 115:22, 118:9,
118:10, 123:2, 125:13, 126:20
**one-of-a-kind** [1] - 101:1
**ones** [4] - 99:4, 99:7, 99:16, 99:17
**only** [24] - 7:6, 7:7, 7:20, 15:11, 26:3,
54:25, 55:2, 62:18, 65:8, 75:14, 78:15,
78:21, 80:19, 81:17, 82:13, 93:9,
94:16, 99:16, 111:23, 115:9, 115:15,
118:11, 125:5, 125:7

**onto** [2] - 32:25, 112:15
**open** [4] - 91:9, 91:10, 95:4, 129:12
**openly** [2] - 91:14, 102:23
**operations** [1] - 33:9
**opportunity** [11] - 18:10, 18:12, 18:13,
20:14, 20:25, 49:5, 51:7, 97:7, 123:10,
125:19, 126:3
**opposed** [1] - 66:12
**opposing** [2] - 27:22, 93:20
**opposition** [1] - 11:16
**option** [1] - 128:7
**or** [87] - 10:22, 11:5, 13:25, 14:16, 16:8,
17:5, 17:7, 19:22, 21:12, 22:25, 23:1,
23:7, 25:14, 27:23, 30:24, 30:25, 31:4,
32:9, 33:2, 33:3, 33:7, 35:16, 35:17,
35:24, 36:3, 38:5, 38:19, 39:12, 44:13,
45:18, 50:20, 50:22, 53:10, 54:21,
56:17, 58:5, 59:15, 61:5, 61:17, 62:18,
62:19, 64:25, 72:5, 72:6, 74:9, 77:20,
79:2, 80:8, 82:8, 84:6, 84:16, 87:11,
87:20, 88:9, 90:5, 92:25, 94:23, 95:4,
98:10, 98:18, 100:19, 100:22, 101:17,
104:7, 104:8, 105:1, 105:2, 105:12,
106:5, 106:17, 107:20, 108:23,
109:14, 112:6, 116:16, 116:17,
118:11, 120:15, 121:3, 121:4, 122:13,
129:12
**order** [34] - 12:18, 14:24, 15:18, 23:19,
25:18, 28:13, 37:5, 42:3, 69:1, 69:3,
74:9, 74:11, 80:4, 84:4, 84:6, 84:16,
84:21, 110:12, 110:13, 110:15,
114:15, 114:21, 116:8, 116:12,
116:23, 117:5, 117:7, 117:8, 117:23,
118:3, 118:7, 125:1, 125:2
**ordered** [2] - 11:7, 83:3
**ordering** [1] - 17:25
**ordinarily** [1] - 57:14
**organized** [1] - 70:4
**original** [1] - 76:5
**originally** [1] - 97:1
**Osama** [3] - 67:22, 67:23, 68:1
**other** [60] - 11:20, 12:18, 13:1, 13:7,
14:19, 15:6, 15:9, 17:7, 17:21, 20:13,
21:16, 22:25, 23:11, 24:8, 27:1, 29:7,
30:19, 30:23, 33:22, 35:15, 35:18,
36:18, 36:24, 40:21, 59:10, 59:16,
59:21, 59:22, 59:24, 62:11, 63:1,
63:18, 63:20, 63:21, 64:3, 65:22,
66:10, 69:16, 69:22, 71:5, 74:16, 75:4,
79:7, 79:12, 81:16, 84:6, 84:22, 85:2,
89:6, 89:8, 92:2, 109:12, 112:10,
113:16, 114:23, 125:13, 126:12,
126:14, 129:8
**others** [1] - 52:18
**ought** [1] - 105:23
**our** [31] - 11:16, 14:15, 24:5, 24:9, 27:6,
27:11, 27:20, 29:3, 42:8, 47:12, 51:8,
52:3, 53:7, 53:18, 53:21, 54:16, 56:6,
62:3, 62:13, 79:14, 81:4, 84:5, 90:19,
91:21, 91:22, 99:3, 109:13, 109:14,

115:5, 116:11, 125:20
**ourselves** [1] - 99:3
**out** [39] - 5:11, 8:12, 10:7, 11:3, 11:25, 15:25, 19:5, 20:20, 25:18, 29:5, 39:14, 45:14, 47:13, 48:12, 49:3, 51:15, 52:5, 52:14, 52:24, 62:23, 66:11, 66:15, 69:10, 69:19, 70:19, 72:6, 84:15, 88:21, 89:6, 105:1, 106:4, 107:12, 114:10, 116:15, 118:11, 118:12, 118:25, 125:9, 126:25
**outcome** [1] - 26:25
**outrageous** [1] - 60:24
**outside** [1] - 36:5
**over** [27] - 21:14, 30:16, 32:1, 39:2, 60:23, 61:9, 66:7, 67:9, 81:4, 85:20, 87:16, 95:18, 97:11, 98:9, 101:21, 106:5, 106:8, 106:16, 106:19, 107:20, 115:5
**owed** [1] - 113:14
**own** [9] - 14:14, 21:10, 21:21, 21:22, 54:22, 63:3, 68:24, 99:3, 121:18
**Owner** [1] - 5:3
**owner** [2] - 17:22, 108:15
**OWNER** [1] - 1:4
**ownership** [1] - 32:20

## P

**P** [3] - 3:1, 5:1
**P.M** [1] - 1:13
**p.m** [10] - 11:11, 18:17, 27:23, 28:17, 41:4, 41:7, 42:5, 48:5, 84:4, 128:15
**Page** [1] - 2:4
**page** [4] - 42:20, 44:3, 52:4, 52:24
**paid** [4] - 45:6, 79:10, 80:16, 129:19
**Pakistan** [1] - 70:13
**Paragraph** [8] - 42:25, 53:6, 53:22, 53:23, 53:25, 54:5, 65:10, 116:11
**paragraph** [12] - 42:21, 52:4, 53:23, 54:15, 64:25, 77:24, 114:5, 116:10, 116:12, 117:9, 118:13
**paragraphs** [2] - 60:7, 118:12
**paralegal** [1] - 71:2
**parallel** [1] - 75:19
**parcel** [2] - 76:6, 109:7
**parent** [1] - 108:16
**part** [22] - 15:7, 28:18, 35:15, 39:6, 42:9, 44:4, 46:3, 46:10, 46:17, 47:4, 59:10, 64:3, 76:6, 77:1, 91:20, 91:23, 108:25, 109:7, 112:3, 115:12, 116:14, 126:11
**participated** [2] - 23:9, 70:6
**participation** [1] - 61:19
**particular** [2] - 32:25, 52:17
**parties** [17] - 7:24, 8:16, 9:5, 9:8, 18:5, 22:25, 29:8, 42:6, 65:4, 77:15, 79:12, 104:14, 123:22, 123:24, 129:9, 129:16
**parties'** [1] - 53:10
**partner** [2] - 66:3, 120:16
**party** [44] - 5:21, 5:22, 6:3, 8:3, 8:5, 8:7, 8:10, 8:11, 9:7, 18:5, 18:18, 25:6,

25:7, 33:22, 34:15, 34:17, 34:18, 35:6, 35:18, 36:21, 37:2, 42:22, 42:23, 43:1, 43:3, 45:20, 51:21, 59:14, 59:15, 59:16, 65:2, 65:11, 71:5, 73:16, 74:20, 74:21, 75:18, 76:8, 89:4, 90:3, 106:7, 120:11, 123:3
**passionate** [1] - 128:11
**Passman** [1] - 3:15
**past** [4] - 25:12, 36:23, 54:20, 59:23
**pattern** [5] - 121:2, 121:13, 121:22, 121:23, 124:18
**Paul** [1] - 79:24
**pause** [1] - 22:3
**pay** [4] - 76:3, 80:16, 80:17, 105:5
**paying** [1] - 31:25
**payment** [1] - 96:3
**payments** [1] - 79:10
**Pei** [3] - 101:1, 101:16, 101:17
**penalty** [1] - 28:20
**pendens** [1] - 66:7
**pending** [6] - 22:20, 25:15, 33:16, 63:3, 63:18, 63:21
**penultimate** [1] - 15:17
**people** [19] - 39:2, 44:23, 44:24, 45:3, 66:18, 66:25, 68:6, 68:7, 70:2, 70:17, 79:25, 80:8, 108:5, 110:20, 117:21, 120:7, 121:16, 124:14
**per** [1] - 54:11
**percent** [3] - 61:12, 82:16, 122:25
**perfect** [1] - 71:14
**perform** [1] - 80:15
**performance** [1] - 79:14
**perhaps** [1] - 90:20
**period** [4] - 100:14, 101:14, 109:17, 109:22
**perjury** [1] - 28:20
**permission** [2] - 13:9, 13:15
**permitted** [1] - 117:11
**person** [2] - 112:5, 114:10
**personal** [3] - 28:8, 63:3, 114:9
**personally** [2] - 124:4, 125:21
**petition** [82] - 6:20, 7:5, 12:19, 14:15, 14:22, 18:4, 18:19, 20:24, 21:12, 25:5, 26:4, 26:16, 26:24, 27:25, 28:12, 28:15, 28:22, 28:24, 29:7, 29:10, 29:11, 29:13, 29:16, 34:22, 34:24, 34:25, 36:13, 41:11, 41:15, 41:23, 41:25, 42:22, 43:2, 44:15, 45:14, 46:1, 46:16, 46:22, 46:25, 47:24, 48:2, 48:4, 48:8, 48:14, 49:8, 49:9, 49:10, 49:14, 49:15, 49:24, 49:25, 50:1, 50:12, 53:11, 55:18, 55:23, 55:24, 56:7, 57:14, 57:21, 58:13, 62:14, 62:19, 62:22, 64:16, 64:17, 64:22, 65:4, 65:11, 71:19, 73:10, 73:14, 77:7, 98:9, 111:21, 116:11, 125:15, 125:16, 126:20
**petitions** [1] - 40:19
**Petrofina** [1] - 43:3
**Phone** [6] - 3:5, 3:9, 3:13, 3:17, 4:7,

4:14
**phone** [2] - 44:13, 44:14
**photo** [1] - 88:1
**photographs** [4] - 87:7, 87:21, 88:21, 88:22
**physician** [1] - 66:2
**picked** [2] - 51:15, 63:13
**pictures** [2] - 66:17, 101:10
**piece** [2] - 113:19, 114:11
**pieces** [1] - 32:13
**Pillsbury** [6] - 4:5, 69:11, 69:12, 121:4, 126:7, 127:17
**pit** [1] - 9:21
**Pittman** [1] - 4:5
**place** [3] - 92:16, 110:24, 120:18
**places** [1] - 89:2
**plain** [1] - 78:17
**plaintiff** [6] - 7:25, 44:4, 65:5, 98:24, 116:15
**PLAINTIFF** [1] - 3:2
**plaintiff's** [3] - 24:22, 47:24, 100:9
**plaintiffs** [2] - 5:7, 112:25
**plan** [5] - 73:25, 105:6, 105:7, 105:9, 121:24
**planned** [1] - 79:25
**planning** [1] - 97:6
**plant** [1] - 80:9
**play** [1] - 15:16
**plead** [3] - 78:10, 113:20, 113:21
**pleading** [6] - 16:16, 42:15, 52:9, 78:11, 78:17, 78:19
**pleadings** [15] - 31:15, 48:20, 52:22, 53:14, 54:18, 57:23, 58:18, 58:19, 60:7, 100:13, 109:22, 115:12, 115:16, 127:7
**please** [9] - 5:4, 18:9, 20:9, 68:11, 68:15, 68:16, 85:15, 102:23, 127:22
**pled** [7] - 53:12, 54:21, 113:23, 114:23, 124:25, 126:1, 127:6
**pledged** [1] - 108:17
**plenty** [1] - 127:13
**PLLC** [2] - 3:8, 3:12
**point** [20] - 10:7, 11:3, 16:16, 19:4, 22:2, 25:3, 29:5, 38:3, 38:23, 39:17, 41:1, 49:19, 56:13, 60:3, 86:3, 90:6, 98:3, 104:17, 106:4, 127:4
**points** [1] - 95:15
**Pope** [30] - 3:3, 3:4, 5:10, 16:15, 21:25, 22:4, 25:4, 26:3, 26:19, 26:20, 27:14, 27:24, 29:6, 37:12, 39:10, 39:16, 39:19, 41:7, 41:14, 41:23, 44:13, 46:14, 46:15, 49:4, 52:5, 83:10, 83:12, 83:13, 83:23
**POPE** [17] - 5:10, 20:1, 20:5, 48:18, 48:21, 49:6, 50:6, 50:13, 50:17, 50:22, 81:1, 93:6, 93:13, 93:21, 93:23, 97:20
**Pope's** [1] - 39:5
**popped** [1] - 10:18
**portions** [1] - 129:8
**posit** [1] - 36:17

**position** [3] - 42:8, 56:10, 107:12
**possession** [1] - 32:5
**possibility** [1] - 127:10
**possible** [5] - 41:13, 73:11, 85:1, 119:4, 127:16
**possibly** [1] - 85:12
**post** [3] - 34:21, 90:10, 123:23
**posted** [4] - 121:14, 121:15, 121:17, 121:20
**potential** [1] - 109:17
**power** [3] - 23:17, 105:2, 111:10
**predicated** [1] - 76:3
**predict** [1] - 75:15
**pref** [1] - 120:5
**prefer** [1] - 15:5
**preferentially** [1] - 76:13
**prejudice** [11] - 26:8, 26:25, 28:2, 28:15, 33:14, 61:14, 61:22, 61:25, 95:2, 118:22, 118:24
**preparation** [1] - 129:18
**preponderance** [5] - 52:21, 53:9, 57:22, 58:6, 58:10
**present** [5] - 22:24, 93:7, 93:9, 97:6, 119:11
**presented** [3] - 58:22, 91:22, 117:24
**presiding** [1] - 1:21
**pretty** [7] - 33:13, 36:7, 67:5, 71:18, 72:21, 84:8, 126:15
**prevail** [2] - 55:22, 55:23
**prevent** [6] - 13:22, 14:12, 73:12, 73:20, 96:12, 107:6
**previous** [1] - 17:7
**previously** [4] - 25:7, 37:19, 59:9, 114:25
**prima** [12] - 35:12, 52:11, 55:9, 56:3, 56:12, 56:22, 57:15, 57:16, 58:11, 58:14, 59:13
**printed** [2] - 18:23, 119:4
**printout** [1] - 6:18
**prior** [5] - 22:23, 23:10, 79:2, 79:6, 95:1
**private** [1] - 94:16
**privilege** [2] - 39:7, 70:25
**privy** [1] - 41:5
**probably** [5] - 49:13, 61:12, 82:11, 82:22, 90:14
**problem** [8] - 39:19, 63:8, 75:1, 78:11, 83:19, 91:3, 93:16, 111:16
**problems** [1] - 92:17
**procedures** [2] - 64:4, 127:9
**proceed** [1] - 22:8
**proceeded** [3] - 72:9, 88:3, 88:5
**proceeding** [5] - 30:1, 94:25, 98:25, 106:13, 115:20
**proceedings** [4] - 1:19, 23:11, 129:8, 129:14
**Proceedings** [4] - 1:22, 20:16, 88:25, 128:15
**Proceedings**...........................[1] - 2:6
**process** [3] - 74:22, 119:8

**produce** [2] - 15:20, 35:9
**product** [1] - 39:7
**profession** [1] - 40:4
**prohibited** [1] - 79:5
**prohibition** [1] - 87:19
**promissory** [1] - 78:12
**proper** [6] - 11:7, 18:1, 62:17, 99:9, 112:20, 124:24
**properly** [4] - 14:6, 24:22, 124:14, 127:18
**property** [8] - 76:22, 76:23, 117:11, 121:14, 121:15, 121:20, 123:23, 126:1
**proposed** [5] - 69:1, 69:3, 84:5, 84:21, 111:8
**proton** [1] - 94:15
**prove** [12] - 16:24, 40:15, 54:10, 54:22, 55:19, 55:21, 55:24, 62:24, 68:8, 71:1, 121:5
**proven** [1] - 31:8
**provide** [6] - 19:13, 27:19, 31:15, 31:17, 35:11, 50:13
**provided** [2] - 27:18, 89:15
**proving** [1] - 58:3
**provisions** [3] - 59:12, 104:12, 105:7
**public** [3] - 44:22, 45:4, 121:19
**publicly** [1] - 120:23
**publish** [1] - 32:13
**pull** [4] - 16:5, 19:21, 20:7, 74:13
**punt** [1] - 84:11
**purported** [1] - 95:24
**purportedly** [2] - 28:13, 95:6
**purports** [2] - 89:7, 94:23
**purpose** [4] - 31:9, 31:17, 58:23, 87:11
**pursuant** [2] - 28:16, 29:4
**pursue** [1] - 17:17
**pushed** [1] - 74:1
**put** [20] - 35:24, 39:11, 40:3, 40:4, 42:1, 61:3, 62:13, 63:25, 69:16, 69:17, 76:9, 83:7, 90:7, 90:8, 91:1, 100:19, 118:21, 125:19
**puts** [1] - 69:6
**putting** [3] - 50:3, 50:9, 88:12

**Q**

**Q** [1] - 3:3
**question** [10] - 15:18, 34:24, 35:13, 42:10, 43:15, 106:22, 107:20, 109:21, 111:25, 119:15
**questions** [3] - 38:5, 38:7, 109:8
**quick** [4] - 70:12, 74:13, 79:16, 114:21
**quickly** [4] - 16:18, 21:15, 63:17
**quote** [9] - 26:22, 29:22, 29:23, 30:6, 30:7, 30:8, 30:21, 34:1, 80:22
**quote/unquote** [2] - 15:7, 80:10

**R**

**R** [2] - 3:1, 5:1
**racketeering** [1] - 70:4

**raise** [1] - 35:16
**Randolph** [1] - 42:23
**rather** [1] - 61:18
**rdrinnon@mccathernlaw.com** [1] - 4:15
**re** [1] - 54:3
**read** [30] - 35:4, 68:25, 69:1, 69:8, 78:5, 78:6, 96:17, 100:2, 101:25, 102:8, 102:10, 102:11, 102:12, 102:13, 102:15, 102:24, 103:12, 103:16, 103:22, 104:1, 104:3, 104:22, 104:23, 104:24, 110:19, 111:2, 123:19
**ready** [5] - 11:18, 38:14, 61:7, 86:13, 122:1
**real** [10] - 31:8, 31:18, 70:12, 74:13, 79:16, 113:19, 114:6, 114:9, 114:11, 114:21
**realize** [1] - 6:21
**realized** [2] - 21:25, 87:19
**really** [11] - 16:18, 44:19, 58:2, 66:11, 119:21, 121:11, 121:12, 122:23, 125:25, 126:1, 126:23
**reason** [12] - 24:4, 49:14, 50:4, 67:15, 69:10, 92:1, 102:24, 109:23, 119:24, 121:3
**reasonable** [1] - 34:10
**reasons** [6] - 24:8, 31:11, 59:18, 81:14, 108:1, 108:2
**recall** [4] - 16:14, 16:15, 30:13, 81:5
**receipt** [1] - 24:12
**received** [3] - 10:9, 25:20, 27:24
**recess** [3] - 86:4, 86:7, 88:17
**recessed** [2] - 20:16, 88:25
**reconsider** [2] - 26:17, 26:21
**reconvened** [1] - 88:25
**record** [30] - 5:2, 5:5, 7:21, 12:8, 14:3, 20:18, 20:19, 26:12, 29:15, 44:22, 45:4, 67:17, 87:1, 88:12, 90:15, 90:16, 90:18, 91:7, 91:8, 91:15, 92:16, 92:19, 94:24, 102:3, 102:18, 108:10, 120:21, 120:25, 124:12, 127:5
**Record** [3] - 129:10, 129:13, 129:18
**RECORD** [1] - 1:1
**recorded** [1] - 70:22
**recovered** [1] - 113:11
**Reeder** [2] - 119:11, 119:14
**refer** [2] - 48:7, 74:17
**reference** [4] - 26:23, 49:19, 53:22, 78:16
**references** [2] - 58:20, 129:15
**referred** [1] - 15:5
**referring** [5] - 12:4, 12:15, 49:25, 106:10, 106:12
**refused** [1] - 69:11
**regard** [24] - 21:11, 21:17, 22:24, 23:15, 24:3, 27:7, 34:6, 34:16, 34:23, 35:2, 36:6, 36:10, 38:9, 39:10, 39:12, 39:14, 39:15, 40:12, 59:20, 59:22, 59:25, 60:22, 127:11, 127:14
**regardless** [5] - 17:5, 33:7, 45:18,

46:13, 65:3
**regards** [6] - 14:19, 17:2, 17:24, 27:5, 47:22, 118:6
**registered** [1] - 69:11
**registry** [2] - 76:10, 125:23
**rejected** [1] - 115:14
**related** [4] - 53:7, 55:20, 58:16, 75:6
**relates** [1] - 53:10
**relating** [1] - 97:8
**relations** [1] - 112:21
**relationship** [3] - 99:2, 100:10, 110:4
**relevance** [3] - 17:3, 60:1, 60:3
**relevant** [3] - 53:18, 62:5, 97:5
**relief** [13] - 31:2, 31:7, 33:16, 42:11, 69:17, 72:14, 90:19, 99:5, 111:24, 112:20, 124:24, 127:7
**relitigate** [2] - 89:20, 96:8
**reliving** [1] - 97:10
**remain** [1] - 120:20
**remained** [1] - 45:20
**remarried** [1] - 66:6
**remedies** [1] - 110:23
**remedy** [3] - 27:1, 115:21, 116:16
**remember** [6] - 29:12, 33:11, 72:3, 83:9, 101:17, 122:20
**remind** [2] - 73:22, 92:20
**remote** [1] - 23:9
**removal** [2] - 42:18, 43:1
**remove** [4] - 27:25, 28:2, 41:11, 44:15
**removed** [3] - 43:3, 44:12, 48:2
**removes** [1] - 41:23
**removing** [1] - 28:14
**rep** [1] - 120:17
**repeatedly** [3] - 39:1, 80:7, 115:13
**repetitive** [1] - 121:22
**replaced** [2] - 114:13, 125:16
**replead** [1] - 114:17
**reply** [1] - 51:3
**reported** [2] - 1:22, 129:12
**REPORTER** [4] - 9:1, 9:12, 34:2, 87:15
**Reporter** [3] - 1:24, 129:4, 129:24
**REPORTER'S** [2] - 1:1, 129:1
**Reporter's** [4] - 2:9, 129:10, 129:13, 129:18
**represent** [11] - 13:20, 21:16, 29:1, 31:24, 40:20, 71:4, 71:5, 83:14, 92:24, 105:19, 110:21
**representation** [1] - 36:5
**representative** [8] - 16:9, 34:20, 37:6, 37:18, 37:19, 39:13, 60:22, 61:6
**represented** [5] - 67:24, 71:9, 91:14, 95:4, 120:17
**representing** [6] - 5:6, 13:14, 28:9, 28:10, 31:1, 122:21
**represents** [2] - 30:18, 123:17
**request** [3] - 11:16, 37:5, 51:22
**requested** [6] - 23:5, 30:4, 41:19, 42:7, 44:20, 129:8
**required** [2] - 58:22, 76:6, 76:9

**resolve** [2] - 70:11, 96:3
**respect** [3] - 80:20, 85:10, 100:6
**respected** [1] - 39:24
**respective** [1] - 129:16
**respond** [3] - 10:19, 17:18, 65:19
**response** [24] - 6:9, 10:9, 10:14, 10:24, 11:16, 18:2, 18:21, 19:14, 20:2, 21:1, 42:19, 42:20, 43:5, 43:7, 45:11, 52:3, 53:7, 53:10, 54:16, 62:8, 62:13, 86:12, 100:24
**responsibility** [1] - 52:20
**rest** [5] - 20:22, 51:23, 86:17, 99:20, 126:25
**restraining** [5] - 14:23, 28:13, 74:8, 114:15, 116:12
**result** [1] - 30:2
**resulted** [1] - 30:4
**resume** [1] - 51:24
**retained** [1] - 32:12
**retrieve** [1] - 116:16
**return** [1] - 116:16
**review** [2] - 20:14, 81:13
**reviewed** [1] - 111:5
**ridiculous** [1] - 82:24
**right** [110] - 6:11, 7:7, 11:10, 13:3, 14:2, 20:17, 21:1, 21:20, 22:11, 22:14, 24:17, 26:6, 27:3, 29:12, 29:14, 29:18, 40:8, 43:25, 45:10, 45:13, 46:16, 46:19, 46:21, 46:23, 47:5, 48:13, 53:11, 53:16, 55:18, 55:23, 55:24, 55:25, 56:7, 56:19, 57:12, 57:14, 58:13, 60:5, 62:14, 62:18, 64:11, 72:1, 72:7, 72:8, 72:11, 75:10, 75:13, 76:25, 77:6, 77:8, 77:11, 77:19, 79:3, 79:23, 79:25, 81:3, 81:7, 82:3, 82:12, 82:17, 83:8, 83:9, 83:11, 83:15, 83:25, 86:16, 87:23, 89:5, 89:9, 90:25, 91:25, 93:5, 94:24, 96:6, 98:11, 98:12, 99:9, 100:4, 100:8, 102:12, 102:20, 103:10, 104:4, 108:14, 108:17, 108:18, 108:19, 108:20, 108:22, 109:3, 111:4, 112:2, 112:6, 112:20, 112:22, 113:3, 114:14, 118:17, 118:20, 120:4, 120:9, 121:23, 123:1, 124:6, 127:10, 128:8
**rights** [3] - 57:21, 77:25, 117:12
**rip** [1] - 82:14
**risk** [4] - 40:3, 40:4
**road** [1] - 62:7
**RODNEY** [1] - 4:11
**Rodney** [7] - 4:12, 5:16, 5:17, 41:8, 41:9, 41:15, 121:5
**rolling** [1] - 111:14
**room** [5] - 5:11, 26:14, 38:7, 38:14, 60:23, 70:16
**Roth** [1] - 109:2
**rule** [4] - 41:24, 63:10, 85:16, 85:17
**Rule** [2] - 33:17, 58:21
**ruled** [2] - 116:21, 128:8
**rules** [1] - 62:12
**ruling** [7] - 79:17, 84:16, 84:17, 84:18,

114:4, 114:20, 118:7
**rumors** [1] - 66:25
**run** [1] - 106:6
**running** [1] - 31:18
**runs** [2] - 31:14, 31:16
**rush** [1] - 63:6
**rushed** [1] - 63:11
**rusty** [1] - 34:5
**Ryan** [2] - 4:4, 5:13
**ryan.steinbrunner@pillsburylaw.com** [1] - 4:9

## S

**S** [2] - 3:1, 5:1
**S.A.K.P.** [2] - 1:7, 4:1
**S.W.2d** [1] - 61:17
**S.W.3d** [3] - 52:15, 52:23, 61:17
**S.W.3rd** [1] - 42:23
**said** [69] - 12:3, 12:11, 12:14, 13:8, 13:19, 15:23, 20:22, 26:6, 26:7, 26:9, 26:17, 26:22, 27:14, 27:15, 28:25, 29:14, 34:3, 40:24, 44:14, 48:14, 56:11, 57:5, 57:10, 59:7, 59:9, 64:5, 64:6, 65:20, 67:15, 67:17, 70:7, 70:22, 71:24, 72:1, 72:8, 72:22, 73:6, 74:24, 77:8, 79:22, 80:12, 81:5, 81:12, 82:14, 82:17, 82:25, 83:3, 91:9, 91:24, 102:1, 102:2, 102:25, 103:21, 103:24, 104:9, 104:24, 105:13, 105:25, 107:2, 109:19, 110:20, 110:21, 111:2, 111:4, 111:10, 115:2, 115:3, 122:22, 123:8
**same** [17] - 15:21, 15:23, 49:1, 49:11, 58:3, 72:12, 83:16, 83:24, 84:21, 89:11, 89:17, 90:1, 97:20, 101:18, 103:10, 106:13, 109:20
**sanction** [1] - 88:22
**sanctions** [12] - 33:15, 44:7, 44:9, 54:23, 55:2, 55:3, 55:12, 61:11, 61:23, 80:3, 110:14, 118:8
**sat** [2] - 71:17, 88:3
**Savoy** [1] - 3:4
**saw** [5] - 6:10, 7:10, 23:20, 88:4, 109:11
**Say** [1] - 26:4
**say** [38] - 10:3, 24:13, 25:11, 44:18, 46:1, 46:24, 53:23, 56:1, 57:7, 57:12, 58:11, 58:25, 60:19, 65:4, 77:18, 78:13, 79:22, 86:7, 91:10, 99:1, 102:11, 102:23, 103:17, 103:23, 106:1, 108:7, 111:11, 118:24, 119:18, 121:10, 122:2, 122:5, 122:23, 123:2, 123:4, 123:6, 123:18, 125:14
**saying** [32] - 13:17, 18:16, 27:16, 27:24, 37:14, 38:21, 40:13, 40:19, 41:19, 47:19, 55:7, 56:23, 57:10, 58:13, 68:18, 75:16, 76:7, 76:16, 77:14, 84:17, 91:11, 91:16, 98:5, 100:8, 104:17, 105:23, 107:14, 122:12, 122:16, 124:4, 126:19, 127:3
**says** [30] - 12:6, 15:19, 24:24, 29:21,

31:14, 32:2, 34:8, 34:15, 39:18, 42:2, 42:13, 42:14, 43:17, 47:23, 59:11, 63:16, 65:15, 66:10, 78:17, 83:13, 83:23, 84:5, 98:23, 99:2, 113:19, 116:14, 118:3, 118:13, 118:18, 125:10
**scope** [1] - 36:5, 53:17, 54:4
**scramble** [1] - 100:18
**scrambling** [2] - 97:22, 97:24
**scratched** [1] - 125:9
**seat** [2] - 6:11, 21:8
**seated** [1] - 89:1
**second** [35] - 7:2, 10:4, 12:19, 14:22, 19:24, 28:12, 28:14, 28:22, 29:6, 29:11, 29:14, 29:17, 33:5, 34:25, 35:4, 44:21, 48:7, 48:14, 49:7, 49:9, 49:15, 49:18, 49:24, 50:1, 50:12, 62:9, 75:17, 84:20, 84:23, 98:9, 98:10, 98:11, 111:21, 125:14, 125:16
**seconds** [1] - 10:11
**section** [4] - 18:18, 41:18, 67:16, 116:12
**Section** [1] - 52:3
**see** [27] - 6:8, 6:19, 6:24, 7:17, 18:15, 19:20, 20:24, 50:16, 54:4, 54:5, 55:7, 58:15, 61:3, 64:16, 69:25, 74:12, 78:3, 86:24, 89:5, 93:12, 93:18, 93:19, 102:18, 102:19, 109:13, 112:17, 113:8
**seeds** [1] - 80:9
**seek** [2] - 34:16, 82:7
**seeking** [5] - 33:14, 34:19, 35:25, 42:11, 43:13
**seeks** [1] - 54:1
**seems** [2] - 7:5, 89:20
**seen** [8] - 6:20, 10:12, 37:25, 39:22, 69:23, 94:19, 97:16, 101:10
**segue** [1] - 71:15
**seize** [1] - 30:20
**self** [1] - 54:14
**self-inflicted** [1] - 54:14
**send** [2] - 14:22, 69:23
**sends** [1] - 41:7
**sense** [1] - 126:3
**sent** [7] - 16:4, 27:20, 27:21, 46:15, 68:18, 88:4, 123:19
**separate** [4] - 17:6, 76:8, 126:12, 126:14
**separately** [1] - 58:7
**September** [3] - 109:10, 120:5, 120:18
**sequen** [1] - 34:1
**sequentas** [1] - 34:4
**Serafine** [1] - 52:23
**serve** [4] - 24:23, 37:1, 44:23, 75:4
**served** [3] - 42:7, 44:25, 74:23
**server** [2] - 74:22, 74:23
**service** [3] - 41:20, 44:24, 74:24
**services** [1] - 31:17
**serving** [1] - 36:23
**set** [18] - 14:14, 15:23, 16:2, 24:5, 28:21, 50:18, 62:20, 62:22, 62:23, 63:15, 71:22, 73:19, 74:22, 76:13, 82:21, 101:23, 106:18, 127:24
**sets** [1] - 73:15

**setting** [2] - 120:6, 127:21
**settle** [5] - 67:21, 68:1, 96:2, 96:3, 120:10
**settlement** [20] - 80:15, 90:10, 95:1, 95:24, 96:11, 98:20, 101:14, 113:15, 119:25, 120:1, 120:11, 120:14, 120:20, 120:23, 121:13, 124:17, 124:18, 124:22, 126:16
**settles** [1] - 76:12
**settling** [1] - 120:10
**several** [7] - 5:7, 15:9, 24:16, 31:19, 32:16, 42:17, 125:21
**shake** [1] - 102:17
**shaking** [1] - 123:12
**shall** [1] - 59:14
**shameless** [1] - 69:4
**shares** [2] - 108:15, 108:18
**Shaw** [1] - 4:5
**shenanigans** [1] - 16:6
**shift** [3] - 53:2, 57:14, 58:19
**shifting** [1] - 60:17
**shifts** [11] - 52:10, 53:14, 56:1, 57:18, 57:24, 58:10, 58:17, 59:1, 59:3, 60:17, 60:18
**shopping** [4] - 8:24, 9:17, 11:21, 14:13
**shorthand** [1] - 1:22
**should** [20] - 6:17, 15:2, 19:23, 48:14, 48:20, 51:3, 51:10, 51:22, 51:25, 61:12, 62:17, 63:15, 71:4, 71:5, 88:21, 92:1, 106:23, 112:12, 116:8, 125:14
**shouldn't** [5] - 25:23, 42:11, 62:2, 111:17, 121:21
**shouting** [1] - 62:2
**show** [9] - 19:13, 51:21, 54:19, 62:24, 74:16, 80:4, 110:13, 118:6, 118:7
**shown** [5] - 50:25, 51:18, 51:20, 54:19, 54:21
**side** [3] - 36:18, 79:15, 106:9
**sides** [2] - 65:24, 117:14
**sign** [5] - 74:7, 84:4, 114:20, 117:23, 119:8
**signatory** [1] - 26:3
**signed** [9] - 16:10, 26:16, 31:13, 40:13, 47:22, 47:23, 116:23, 120:11, 125:21
**signs** [1] - 42:2
**simple** [2] - 33:13, 118:9
**simply** [2] - 29:7, 51:22
**simultaneously** [1] - 59:3
**since** [6] - 20:14, 32:25, 54:24, 95:23, 96:11, 115:8
**single** [3] - 71:21, 90:17, 92:15
**singular** [2] - 78:14, 78:15
**sir** [7] - 6:11, 77:21, 102:10, 122:18, 123:6, 126:9, 128:4
**sister** [1] - 66:2
**sit** [7] - 20:9, 35:4, 37:17, 85:19, 102:11, 102:21
**sitting** [3] - 79:17, 118:17, 119:24
**situation** [4] - 75:24, 79:13, 93:14, 102:2

**situations** [1] - 51:2
**six** [3] - 37:9, 37:20, 80:8
**sixteen** [1] - 95:13
**SLAPP** [16] - 17:10, 17:14, 17:16, 43:6, 43:9, 43:11, 44:5, 45:16, 45:22, 46:6, 46:10, 47:2, 47:5, 47:6, 47:10, 47:16
**slightly** [2] - 6:14, 90:2
**slinging** [1] - 16:22
**slipped** [1] - 118:15
**slow** [1] - 9:14
**smart** [2] - 69:7
**smiled** [1] - 88:2
**so** [206] - 6:12, 6:17, 7:13, 7:25, 8:10, 9:15, 9:20, 10:7, 10:11, 10:13, 10:16, 10:22, 11:14, 12:7, 12:12, 12:18, 13:3, 13:16, 13:21, 14:5, 15:12, 15:15, 15:21, 16:16, 16:18, 17:8, 17:12, 17:22, 18:15, 18:17, 19:11, 19:12, 20:21, 20:24, 21:5, 21:9, 21:15, 23:6, 23:15, 24:2, 24:21, 25:3, 25:22, 26:1, 27:3, 27:5, 27:9, 27:10, 27:23, 28:3, 28:11, 28:23, 29:1, 29:3, 30:15, 31:3, 31:23, 31:24, 33:1, 33:8, 33:11, 33:23, 34:17, 35:2, 35:7, 35:14, 35:19, 35:20, 40:25, 41:14, 41:15, 41:21, 42:5, 42:8, 42:10, 43:15, 44:8, 44:16, 44:22, 46:2, 46:9, 46:13, 46:21, 47:20, 48:1, 48:3, 49:10, 49:11, 49:16, 49:17, 49:18, 49:20, 49:23, 50:8, 51:2, 51:15, 51:22, 52:19, 53:1, 53:3, 53:13, 53:17, 53:19, 53:25, 54:8, 54:13, 54:25, 55:2, 55:6, 55:10, 55:20, 56:22, 56:23, 58:24, 59:2, 60:16, 60:18, 61:1, 61:2, 61:3, 62:3, 63:18, 64:15, 65:3, 68:5, 70:11, 71:13, 71:24, 72:5, 72:10, 73:9, 73:24, 75:1, 76:4, 76:15, 77:10, 77:11, 77:17, 78:4, 78:15, 78:16, 79:3, 79:9, 80:9, 81:17, 82:21, 82:25, 83:8, 84:15, 84:24, 85:1, 86:1, 86:12, 86:13, 88:13, 88:17, 89:20, 90:18, 91:1, 92:11, 92:19, 93:14, 93:17, 95:8, 96:24, 97:2, 98:1, 98:18, 100:17, 103:17, 103:22, 106:1, 106:18, 106:21, 107:18, 107:25, 108:17, 108:24, 109:5, 109:9, 109:12, 110:6, 111:4, 111:10, 113:1, 113:16, 114:10, 115:9, 116:7, 118:11, 121:1, 122:23, 123:18, 124:14, 124:24, 126:17
**So** [1] - 96:25
**solely** [3] - 21:20, 21:22, 31:6
**some** [25] - 6:8, 16:5, 16:18, 24:4, 29:5, 36:16, 40:11, 40:21, 50:13, 54:9, 61:6, 65:19, 72:22, 74:16, 81:25, 90:10, 93:7, 98:17, 106:4, 107:2, 109:7, 112:5, 113:8, 119:23, 123:24
**somebody** [5] - 44:22, 88:4, 104:19, 106:8, 107:11
**someone** [3] - 19:13, 45:6
**something** [29] - 5:24, 9:3, 10:12, 15:2,

17:23, 37:14, 47:4, 64:9, 64:10, 64:11,
68:24, 76:24, 79:4, 80:11, 86:21, 92:5,
93:15, 108:7, 111:8, 111:12, 111:19,
112:10, 114:3, 119:10, 119:18, 122:3,
122:6, 123:3, 127:23
**sometimes** [1] - 94:8
**soon** [2] - 41:13, 80:23
**sorry** [20] - 10:5, 14:1, 14:8, 19:10,
24:19, 27:23, 34:4, 48:16, 61:8, 62:1,
71:15, 77:13, 84:12, 106:12, 117:17,
117:18, 122:4, 123:11, 123:12, 128:11
**sort** [2] - 11:25, 12:9
**sought** [1] - 44:19
**sounds** [1] - 50:7
**South** [1] - 4:13
**spare** [1] - 103:17
**speak** [12] - 9:14, 18:7, 18:10, 18:11,
41:10, 49:5, 62:10, 63:14, 84:7, 87:16,
94:9, 119:16
**SPEAKER** [2] - 87:25, 88:8
**speaking** [3] - 18:14, 61:8, 123:18
**special** [1] - 31:9
**specific** [8] - 35:11, 35:12, 57:4, 59:13,
59:18, 65:11, 76:7, 87:19
**specifically** [4] - 15:19, 15:22, 34:8,
62:23
**specify** [1] - 24:14
**specious** [1] - 82:23
**spectacle** [1] - 38:10
**SPEX** [1] - 54:3
**spoke** [5] - 41:14, 44:13, 92:10, 120:8,
123:24
**sponsored** [5] - 31:19, 66:4, 68:7, 68:8,
68:9
**square** [1] - 102:6
**staff** [1] - 94:8
**stamp** [1] - 19:1
**stand** [4] - 26:23, 69:17, 69:18, 89:22
**standalone** [2] - 98:13, 98:15
**standard** [3] - 35:8, 35:10, 52:21
**standards** [1] - 50:24
**standing** [1] - 102:19
**stands** [1] - 69:15
**standstill** [1] - 12:9
**start** [4] - 21:5, 21:7, 38:12, 40:2
**started** [3] - 72:11, 94:25, 105:15
**starting** [1] - 42:21
**starts** [1] - 42:21
**State** [9] - 3:3, 3:7, 3:11, 3:16, 4:3, 4:4,
4:5, 4:12, 129:5
**state** [7] - 24:11, 24:13, 24:14, 101:23,
104:25, 113:11
**STATE** [1] - 129:2
**stated** [3] - 46:7, 109:9, 123:21
**statement** [1] - 73:18
**States** [2] - 23:4, 108:25
**states** [1] - 44:4
**status** [9] - 23:10, 30:3, 72:17, 80:6,
81:10, 104:1, 104:23, 105:10, 124:9

**statute** [6] - 25:19, 33:25, 34:7, 54:12,
55:14
**stay** [7] - 23:19, 54:20, 81:8, 82:4, 82:7,
90:21, 116:1
**stayed** [2] - 54:11, 62:12
**stays** [2] - 53:3, 53:4
**Steinbrunner** [2] - 4:4, 5:14
**STEINBRUNNER** [1] - 119:9
**stepped** [1] - 5:11
**stick** [1] - 17:8
**still** [16] - 7:22, 11:12, 22:4, 30:17, 42:9,
45:10, 45:11, 46:10, 46:17, 47:2,
55:17, 55:19, 55:21, 57:25, 76:20,
111:18
**stood** [2] - 84:12, 84:24
**stop** [8] - 40:5, 67:18, 70:9, 72:3, 83:2,
83:17, 87:17, 101:19
**stopped** [3] - 84:13, 108:2, 114:8
**stories** [1] - 101:2
**straying** [1] - 71:13
**Street** [3] - 3:8, 3:12, 3:16
**string** [1] - 84:14
**strongly** [1] - 42:8
**stuff** [2] - 102:11, 103:16
**style** [1] - 74:15
**styled** [1] - 129:11
**subject** [1] - 33:25
**submitted** [1] - 37:4
**subpoena** [1] - 69:12
**subpoenaed** [1] - 68:21
**subpoenas** [1] - 36:23
**subsection** [1] - 59:12
**successful** [1] - 25:19
**such** [2] - 31:9, 83:19
**sue** [7] - 15:14, 25:23, 38:24, 44:21,
61:25, 63:23
**sued** [16] - 16:11, 16:13, 25:12, 25:16,
27:7, 27:8, 39:2, 39:23, 45:3, 45:6,
63:21, 64:1, 66:1, 66:2, 66:19, 67:7
**suggesting** [1] - 124:3
**suing** [4] - 38:25, 39:1, 40:2, 67:8
**suit** [7] - 24:24, 25:17, 39:24, 43:13,
77:1, 107:6
**suitcase** [1] - 80:23
**Suite** [5] - 3:4, 3:12, 3:16, 4:6, 4:13
**summary** [5] - 33:19, 33:20, 52:8,
58:20, 58:25
**Sunday** [1] - 80:9
**superseded** [1] - 34:23
**support** [4] - 52:18, 60:24, 99:18, 127:7
**supporting** [2] - 36:15, 115:9
**suppose** [1] - 31:4
**supposed** [1] - 73:5
**Supreme** [3] - 42:2, 43:1, 98:15
**sure** [21] - 6:2, 8:16, 8:23, 9:4, 9:7, 19:6,
29:15, 35:10, 41:1, 56:18, 57:8, 84:9,
91:11, 92:9, 92:12, 92:18, 97:17,
109:5, 122:9, 124:10
**survive** [5] - 33:23, 33:24, 47:11, 58:11,

61:20
**survives** [4] - 17:16, 43:9, 47:6, 55:1
**swear** [2] - 47:24, 121:9
**swearing** [1] - 28:24
**sweeping** [1] - 36:9
**swore** [2] - 48:1, 48:4
**sworn** [2] - 69:18, 86:2
**system** [2] - 19:17, 80:3

---

## T

**tactic** [1] - 87:11
**tactical** [2] - 84:14, 84:25
**tactics** [1] - 84:19
**take** [19] - 7:1, 7:2, 9:12, 10:16, 20:12,
32:1, 32:5, 33:5, 39:5, 64:12, 66:13,
85:24, 86:4, 86:6, 87:21, 87:24, 92:1,
118:11, 127:9
**taken** [2] - 65:21, 88:22
**takeover** [1] - 31:21
**taking** [9] - 15:8, 42:15, 45:14, 66:12,
66:17, 84:20, 87:7, 87:20, 88:1
**talk** [9] - 10:21, 20:23, 55:11, 76:25,
84:8, 88:11, 90:10, 99:13, 99:17,
101:4, 104:19, 111:20
**talked** [7] - 15:10, 41:9, 81:18, 89:22,
103:11, 104:16, 114:16
**talking** [6] - 6:21, 10:3, 11:24, 23:7,
24:15, 47:14, 47:16, 49:17, 50:23,
55:15, 55:16, 57:2, 57:4, 57:7, 57:11,
67:25, 84:1, 103:12, 117:21, 126:10,
126:17
**talks** [7] - 58:17, 58:21, 66:9, 67:20,
69:14, 113:7, 114:5
**tall** [1] - 101:2
**Tang** [22] - 13:13, 14:2, 15:6, 22:22,
25:7, 29:22, 30:9, 30:20, 33:5, 40:18,
41:4, 41:23, 70:8, 71:8, 71:12, 74:24,
81:15, 83:10, 83:13, 83:20, 83:23
**tape** [1] - 26:12
**tattle** [1] - 15:8
**tattletaling** [1] - 14:18
**tax** [1] - 125:22
**taxes** [1] - 80:17
**TCPA** [40] - 16:8, 21:10, 25:20, 26:5,
26:25, 27:2, 27:11, 27:18, 27:21, 28:5,
31:3, 33:2, 33:13, 33:24, 40:5, 41:21,
44:17, 50:17, 51:3, 51:4, 51:7, 51:23,
52:7, 53:3, 53:8, 54:2, 54:11, 54:20,
55:8, 57:19, 57:20, 58:8, 58:23, 61:20,
63:6, 63:9, 68:25, 69:3, 86:11
**team** [1] - 49:2
**technical** [1] - 49:18
**tee** [1] - 82:20
**telephone** [1] - 16:14
**television** [1] - 87:20
**tell** [8] - 13:17, 34:12, 39:18, 85:12,
88:13, 92:24, 94:4, 94:4, 106:20
**telling** [15] - 11:22, 37:21, 48:3, 57:16,
64:21, 65:14, 67:2, 67:11, 77:6, 78:4,

78:16, 96:17, 121:19, 126:8, 128:6

**tells** [3] - 41:14, 45:13, 69:15

**temporary** [23] - 14:23, 28:13, 29:24, 72:7, 74:6, 74:8, 74:10, 75:21, 76:5, 86:23, 89:23, 89:24, 98:4, 110:22, 111:5, 113:21, 114:15, 116:12, 116:13, 118:4, 118:18, 119:5

**ten** [2] - 10:11, 89:21

**tend** [1] - 94:13

**tends** [2] - 16:19, 25:11

**term** [1] - 49:8

**terminated** [1] - 24:21

**terrible** [3] - 30:25, 36:22, 107:3

**testified** [3] - 37:19, 95:4, 104:6

**testify** [1] - 87:9

**testifying** [1] - 121:7

**testimony** [11] - 16:19, 17:6, 17:7, 55:4, 89:21, 90:7, 90:8, 91:13, 93:10, 96:4, 115:1

**TEXAS** [2] - 1:6, 129:2

**Texas** [25] - 1:21, 1:25, 3:5, 3:9, 3:17, 4:7, 4:14, 42:1, 42:4, 43:1, 43:18, 43:22, 43:23, 47:7, 47:8, 47:9, 47:13, 52:14, 52:24, 58:21, 61:19, 98:15, 129:6, 129:23, 129:25

**Texascountry@protonmail.com** [2] - 93:25, 95:5

**than** [14] - 6:14, 20:20, 23:7, 23:8, 24:8, 26:13, 27:8, 27:17, 63:5, 76:8, 101:6, 112:10, 113:16

**thank** [10] - 21:2, 49:6, 86:24, 86:25, 88:19, 119:20, 119:21, 127:15, 127:19, 128:5

**Thank** [1] - 86:9

**Thanksgiving** [5] - 11:4, 11:7, 40:17, 42:9, 106:3

**that** [641] - 6:4, 6:8, 6:23, 7:7, 7:13, 7:22, 8:1, 8:2, 8:8, 8:11, 9:5, 9:9, 9:10, 9:17, 10:7, 10:8, 10:12, 10:16, 10:22, 11:3, 11:8, 11:11, 11:17, 11:19, 11:21, 11:22, 11:24, 12:12, 13:1, 13:4, 13:8, 13:10, 13:16, 14:7, 15:2, 15:7, 15:8, 15:15, 15:18, 15:19, 15:25, 16:2, 16:5, 16:12, 16:13, 16:14, 16:15, 16:17, 16:18, 16:22, 16:24, 16:25, 17:9, 17:13, 17:17, 17:18, 17:25, 18:1, 18:2, 18:3, 18:19, 18:21, 19:4, 20:4, 20:11, 20:12, 20:21, 20:22, 21:1, 21:11, 21:12, 21:16, 21:19, 22:20, 22:21, 23:11, 23:15, 23:19, 23:23, 24:8, 24:20, 25:3, 25:10, 25:12, 25:22, 25:23, 26:16, 26:21, 26:22, 27:1, 27:20, 28:1, 28:3, 28:5, 29:3, 29:5, 29:17, 29:21, 29:23, 30:6, 30:7, 30:15, 30:18, 30:25, 31:10, 31:20, 31:23, 31:24, 32:2, 32:25, 33:3, 33:6, 33:7, 33:9, 33:10, 33:13, 33:21, 33:22, 33:24, 33:25, 34:7, 34:8, 34:9, 34:18, 35:7, 35:8, 35:10, 35:12, 35:14, 35:15, 35:16, 35:19, 35:20, 35:22, 35:23,

36:1, 36:4, 36:12, 36:13, 36:14, 36:18, 36:20, 36:25, 37:3, 37:16, 37:24, 37:25, 38:4, 38:7, 38:21, 38:23, 39:2, 39:6, 39:10, 39:11, 39:14, 39:19, 39:20, 39:24, 40:5, 40:13, 40:14, 40:16, 40:18, 40:20, 40:25, 41:1, 42:4, 42:11, 42:13, 42:14, 42:15, 42:25, 43:9, 43:14, 43:19, 44:10, 44:11, 44:15, 44:16, 44:18, 44:22, 45:4, 45:5, 45:11, 45:15, 45:16, 46:1, 46:2, 46:14, 46:15, 46:16, 46:22, 46:24, 46:25, 47:3, 47:6, 47:9, 47:17, 47:18, 47:19, 47:22, 47:24, 48:14, 48:17, 49:8, 49:9, 49:10, 49:16, 49:23, 49:25, 50:10, 50:24, 51:1, 51:14, 51:15, 51:16, 51:21, 52:1, 52:9, 52:15, 52:16, 52:17, 52:22, 53:1, 53:9, 53:14, 53:17, 53:19, 53:23, 54:1, 54:6, 54:7, 54:8, 54:9, 54:10, 54:14, 54:18, 54:23, 55:5, 55:7, 55:8, 55:10, 55:18, 55:19, 55:20, 55:21, 55:24, 56:1, 56:2, 56:6, 56:9, 56:11, 56:23, 57:10, 57:12, 57:17, 57:20, 57:23, 57:24, 57:25, 58:2, 58:8, 58:9, 58:11, 58:13, 58:16, 58:21, 59:2, 59:7, 59:8, 60:3, 60:5, 60:6, 60:16, 60:20, 60:25, 61:6, 61:7, 61:9, 61:15, 61:24, 62:6, 62:11, 62:13, 62:24, 63:2, 63:9, 63:16, 63:18, 63:22, 64:15, 64:21, 64:22, 64:23, 65:8, 65:13, 65:20, 66:5, 66:10, 66:16, 66:25, 67:8, 67:17, 67:21, 67:22, 68:3, 68:18, 68:20, 68:25, 69:2, 69:3, 69:4, 69:5, 69:9, 69:10, 69:24, 69:25, 70:5, 70:16, 72:7, 72:15, 72:18, 72:24, 73:1, 73:18, 73:22, 73:24, 73:25, 74:17, 74:19, 74:23, 74:24, 75:3, 75:4, 75:9, 75:19, 76:5, 76:6, 76:16, 77:1, 77:8, 77:10, 77:15, 77:17, 78:9, 78:11, 78:15, 78:19, 78:20, 78:21, 79:4, 79:5, 79:7, 79:23, 80:1, 80:2, 80:3, 80:6, 80:10, 80:19, 80:20, 81:3, 81:8, 81:15, 81:17, 81:19, 82:2, 82:3, 82:5, 82:14, 83:1, 83:2, 83:5, 83:22, 84:2, 84:5, 84:7, 84:9, 84:14, 84:20, 84:22, 84:23, 84:24, 85:2, 85:3, 85:6, 85:12, 85:13, 85:17, 85:19, 86:5, 86:11, 86:21, 87:23, 88:23, 89:5, 89:7, 89:12, 89:15, 89:18, 89:20, 90:10, 90:19, 90:22, 91:10, 91:11, 91:13, 91:16, 91:21, 91:22, 92:5, 92:7, 92:15, 92:17, 92:18, 92:20, 93:3, 93:8, 93:14, 93:16, 94:1, 94:3, 94:11, 94:16, 94:17, 95:4, 95:14, 95:15, 95:18, 96:5, 96:11, 96:21, 97:1, 97:4, 97:5, 97:7, 97:10, 98:4, 98:5, 98:14, 98:16, 98:19, 99:5, 99:7, 99:14, 99:17, 99:18, 100:4, 100:5, 100:17, 101:13, 101:15, 101:23, 102:3, 102:8, 102:15, 103:7, 103:17, 103:21, 104:23, 104:24, 105:7, 105:13, 105:16, 105:18, 105:22, 106:4, 106:7, 107:20, 107:21, 107:23, 108:1,

108:24, 109:3, 109:5, 109:10, 109:17, 109:25, 110:4, 110:5, 110:7, 110:12, 110:20, 110:24, 111:2, 111:18, 111:19, 112:1, 112:4, 112:5, 112:9, 112:13, 112:15, 112:17, 113:3, 113:9, 113:16, 113:19, 114:14, 114:21, 114:23, 114:25, 115:3, 115:4, 115:6, 115:9, 115:12, 115:16, 115:17, 115:18, 115:21, 116:1, 116:2, 116:7, 116:9, 116:18, 116:19, 116:20, 117:8, 117:24, 118:3, 118:13, 119:9, 119:10, 119:25, 120:2, 120:3, 120:8, 120:9, 120:11, 120:13, 120:18, 120:19, 120:22, 121:1, 121:6, 121:10, 121:11, 121:12, 121:18, 121:19, 121:21, 121:22, 121:24, 121:25, 122:2, 122:5, 122:9, 122:10, 122:11, 122:12, 122:13, 123:1, 123:2, 123:3, 123:5, 123:6, 123:10, 123:18, 123:19, 123:20, 123:21, 123:22, 123:25, 124:7, 124:11, 124:14, 124:15, 124:21, 125:3, 125:22, 125:25, 126:4, 126:9, 126:10, 126:12, 126:14, 126:17, 126:18, 126:19, 126:20, 127:5, 127:8, 127:11, 127:13, 127:18, 128:10, 129:6, 129:13, 129:17

**That** [1] - 19:1

**that's** [60] - 7:9, 7:10, 11:19, 12:24, 13:1, 13:21, 14:12, 14:23, 16:6, 19:9, 34:15, 34:18, 37:10, 39:9, 40:5, 40:15, 41:2, 43:13, 47:7, 48:3, 50:10, 51:3, 51:4, 52:21, 52:23, 56:6, 57:25, 59:8, 61:2, 61:3, 62:21, 71:14, 71:22, 71:25, 81:20, 82:3, 84:5, 84:11, 84:12, 91:11, 97:20, 98:20, 98:24, 102:1, 102:2, 104:15, 104:22, 105:2, 105:15, 106:22, 108:24, 110:2, 111:14, 113:12, 116:8, 118:18, 123:9, 124:11

**THE** [258] - 1:4, 3:2, 4:1, 4:11, 5:2, 5:12, 5:20, 5:24, 6:1, 6:4, 6:7, 6:16, 6:19, 6:22, 6:23, 6:25, 7:2, 7:10, 7:13, 7:17, 7:19, 7:22, 8:7, 8:15, 8:21, 9:1, 9:12, 9:13, 9:23, 10:2, 10:13, 10:17, 10:21, 11:1, 12:3, 12:14, 12:21, 12:24, 13:3, 13:8, 13:25, 16:21, 17:5, 17:19, 18:9, 18:20, 18:25, 19:4, 19:8, 19:11, 19:19, 19:24, 20:3, 20:7, 20:17, 21:4, 21:7, 21:20, 21:25, 22:4, 22:8, 22:11, 22:14, 24:13, 24:20, 29:10, 29:14, 29:18, 34:2, 37:13, 38:2, 38:16, 39:4, 40:8, 42:14, 42:19, 43:5, 43:8, 43:18, 43:21, 43:25, 44:21, 45:5, 45:10, 45:17, 45:22, 45:25, 46:5, 46:9, 46:13, 46:19, 46:21, 46:24, 47:5, 47:14, 48:6, 48:13, 48:25, 50:2, 50:7, 50:15, 50:20, 52:16, 55:6, 55:15, 55:25, 56:8, 56:17, 56:21, 57:2, 58:2, 59:6, 63:8, 64:9, 64:15, 64:21, 65:2, 65:8, 65:14, 65:18, 71:11, 71:16, 74:5, 74:10, 74:14, 75:5, 75:11, 75:13, 76:1, 76:15, 76:25, 77:5, 77:10, 77:14, 78:2, 78:10, 78:21, 79:18, 85:8,

85:22, 86:3, 86:15, 86:19, 86:25, 87:3,
87:15, 87:17, 87:21, 87:24, 88:7,
88:11, 88:16, 88:20, 89:1, 90:12,
90:16, 90:25, 91:8, 91:18, 91:24, 92:4,
92:11, 92:13, 92:23, 93:2, 93:5, 93:11,
93:16, 93:22, 93:24, 94:5, 94:9, 94:19,
95:8, 95:21, 96:6, 96:16, 96:24, 97:2,
97:4, 97:13, 97:17, 98:12, 99:4, 99:7,
100:1, 100:24, 101:3, 101:9, 101:25,
102:8, 102:10, 102:15, 102:22, 103:3,
103:6, 103:10, 103:15, 103:20, 104:3,
104:19, 105:17, 105:19, 105:25,
107:5, 107:10, 107:14, 107:18,
107:25, 108:6, 108:13, 109:2, 111:16,
111:18, 112:8, 112:17, 112:24, 113:3,
113:6, 113:20, 114:2, 114:14, 116:18,
117:1, 117:13, 117:17, 117:20,
117:25, 118:2, 118:16, 118:23, 119:6,
119:7, 119:14, 119:17, 122:2, 122:5,
122:9, 122:17, 122:20, 123:1, 123:9,
123:14, 124:6, 124:21, 125:4, 125:6,
125:13, 126:9, 126:25, 127:3, 127:18,
127:23, 128:1, 128:3, 128:6, 128:13,
129:2

**their** [33] - 12:1, 12:18, 13:20, 21:1,
25:24, 25:25, 35:8, 36:2, 41:16, 52:12,
61:4, 81:19, 82:2, 82:19, 85:15, 98:6,
98:9, 99:2, 100:7, 100:13, 102:5,
102:6, 102:14, 109:25, 110:1, 110:3,
110:13, 114:8, 114:10, 115:21, 117:4,
117:6

**them** [47] - 14:4, 14:10, 14:22, 15:8,
17:11, 18:5, 20:14, 24:16, 34:12,
34:13, 40:11, 40:25, 41:14, 42:15,
48:2, 60:18, 65:2, 65:10, 66:19, 72:4,
77:18, 77:24, 79:13, 80:7, 80:15,
80:25, 81:4, 81:13, 82:20, 83:3, 89:8,
93:6, 99:12, 99:20, 100:4, 104:4,
104:14, 105:22, 106:4, 106:20, 115:6,
117:9, 117:10, 121:16, 125:23, 126:4,
126:8

**themselves** [1] - 83:1

**then** [65] - 8:1, 10:9, 14:7, 18:1, 20:18,
21:4, 21:6, 21:23, 22:21, 23:13, 24:10,
25:6, 25:16, 27:20, 29:3, 35:3, 37:8,
37:9, 39:19, 41:21, 41:22, 42:25,
45:25, 46:17, 50:2, 52:10, 52:23, 53:2,
54:3, 57:21, 58:4, 58:7, 58:8, 58:9,
58:10, 59:1, 60:5, 60:9, 73:6, 74:3,
79:6, 82:11, 87:14, 87:19, 88:2, 88:3,
91:18, 91:24, 93:11, 94:5, 95:17,
96:19, 104:23, 107:4, 107:5, 107:18,
112:4, 112:20, 113:3, 115:7, 120:10,
123:24, 127:10

**there** [160] - 6:8, 7:11, 9:16, 10:4, 10:11,
10:12, 12:21, 15:2, 16:25, 18:2, 24:15,
25:12, 25:15, 27:5, 29:5, 29:17, 29:19,
35:20, 35:24, 38:5, 38:7, 38:8, 39:6,
39:18, 41:17, 42:1, 42:13, 42:21, 43:1,
43:15, 43:16, 47:19, 48:9, 48:10,

48:11, 49:12, 50:24, 51:11, 51:18,
51:19, 52:18, 53:17, 53:19, 54:18,
54:20, 55:9, 56:3, 56:19, 56:21, 57:16,
59:22, 64:9, 65:24, 65:25, 66:9, 66:15,
66:24, 67:6, 67:15, 67:18, 67:19, 69:9,
69:10, 71:24, 72:14, 73:10, 75:6,
75:19, 79:2, 79:6, 79:7, 79:11, 79:14,
80:14, 80:24, 81:16, 81:25, 82:8,
82:10, 82:16, 83:9, 83:10, 85:11,
87:19, 88:21, 89:6, 90:16, 91:12,
91:25, 92:4, 94:4, 95:17, 96:4, 98:5,
98:8, 99:15, 100:5, 100:6, 100:12,
100:15, 100:16, 101:21, 103:1, 104:8,
104:12, 104:13, 106:4, 106:15,
106:16, 107:12, 107:20, 108:21,
109:5, 109:12, 109:21, 109:23, 110:5,
110:7, 110:14, 111:11, 112:23, 113:2,
113:5, 113:8, 113:18, 114:22, 116:3,
116:4, 116:5, 116:8, 116:14, 118:9,
118:15, 118:22, 119:12, 119:17,
121:2, 121:11, 121:25, 123:15, 124:5,
124:17, 124:18, 125:17, 127:6, 127:10

**there's** [5] - 8:24, 36:24, 41:24, 63:15,
66:16

**therefore** [1] - 105:14

**these** [37] - 13:2, 23:23, 28:7, 30:24,
31:15, 34:16, 35:21, 36:11, 38:4,
48:19, 48:25, 51:1, 60:15, 63:10,
65:22, 65:23, 66:10, 69:16, 70:17,
76:10, 79:7, 79:24, 80:14, 80:22,
82:18, 82:23, 84:19, 86:24, 90:12,
99:18, 104:10, 110:2, 110:9, 114:23,
124:7

**They** [1] - 103:15

**they** [199] - 8:7, 8:11, 9:18, 9:21, 10:13,
13:13, 13:14, 13:15, 15:13, 15:14,
15:15, 15:16, 15:20, 15:21, 16:2, 16:5,
16:6, 16:11, 16:12, 18:15, 18:18,
25:22, 25:24, 28:25, 29:20, 30:18,
33:4, 33:5, 33:12, 33:25, 34:22, 35:7,
35:8, 35:11, 35:14, 35:16, 35:25, 36:2,
36:3, 36:13, 37:6, 37:8, 38:10, 38:24,
39:24, 39:25, 40:19, 41:5, 41:17,
41:18, 42:5, 42:7, 42:10, 44:12, 44:19,
45:18, 45:20, 46:13, 48:11, 49:14,
52:9, 59:10, 59:12, 60:5, 60:19, 60:24,
61:1, 61:2, 61:6, 61:10, 61:13, 61:24,
61:25, 62:6, 62:23, 63:15, 63:20,
63:22, 65:3, 66:6, 68:5, 68:6, 70:17,
70:18, 72:2, 72:4, 72:8, 72:12, 72:13,
74:3, 74:17, 75:17, 77:23, 79:22, 80:1,
80:2, 80:7, 80:8, 80:9, 80:16, 80:17,
80:19, 80:20, 80:21, 81:6, 81:7, 81:17,
81:21, 82:3, 82:4, 82:5, 82:10, 82:11,
82:19, 82:25, 83:1, 83:5, 83:19, 84:11,
84:20, 85:15, 85:18, 89:8, 90:20, 95:3,
98:4, 98:19, 99:10, 100:18, 100:19,
100:20, 100:21, 100:22, 100:23,
101:13, 101:16, 102:4, 102:5, 102:6,
102:9, 103:11, 103:15, 104:5, 104:6,

104:9, 105:13, 105:14, 106:8, 106:21,
107:1, 107:5, 107:8, 107:11, 108:17,
108:25, 109:25, 110:9, 110:21, 111:9,
112:9, 112:13, 112:15, 114:23,
114:25, 115:7, 115:17, 115:22,
115:23, 115:25, 116:1, 116:6, 116:7,
117:10, 117:12, 117:24, 123:25,
124:17, 124:19, 125:6

**they're** [15] - 8:5, 8:10, 10:10, 15:8,
30:23, 33:2, 42:9, 49:1, 69:7, 97:21,
98:5, 101:18, 107:10, 107:13, 109:3

**thing** [29] - 10:8, 10:22, 11:2, 13:1,
15:23, 16:24, 37:25, 40:12, 63:1, 70:7,
72:12, 74:19, 80:19, 81:17, 82:14,
83:7, 83:16, 83:24, 89:11, 95:12,
107:3, 109:20, 115:9, 115:15, 115:19,
118:10, 118:11, 123:2, 123:3

**things** [40] - 6:8, 10:10, 18:3, 20:13,
23:24, 40:10, 40:21, 45:11, 49:7, 50:3,
50:4, 60:15, 63:10, 65:20, 65:23,
70:11, 74:17, 76:10, 78:2, 78:4, 79:7,
79:19, 81:17, 86:16, 86:24, 89:20,
90:10, 90:12, 102:15, 104:3, 114:16,
114:18, 119:23, 121:12, 122:13,
124:11, 126:3, 126:17, 126:18

**think** [53] - 9:16, 9:21, 11:14, 13:15,
13:23, 18:14, 22:5, 22:21, 25:22, 33:2,
35:21, 39:6, 40:2, 40:10, 40:25, 43:8,
43:20, 43:23, 44:14, 45:13, 48:17,
59:9, 61:1, 61:12, 62:4, 65:23, 72:18,
72:21, 73:15, 76:19, 81:11, 81:14,
81:23, 84:18, 87:10, 88:9, 97:5, 98:2,
103:25, 104:20, 106:3, 106:8, 106:14,
106:20, 108:6, 110:14, 115:4, 115:17,
117:11, 122:13, 127:4

**thinks** [2] - 48:10, 69:7

**third** [4] - 9:7, 105:10, 123:22, 123:24

**third-party** [1] - 9:7

**this** [261] - 6:9, 6:12, 6:20, 6:25, 7:4, 8:2,
8:13, 8:22, 9:5, 10:18, 10:23, 11:8,
11:9, 11:13, 11:14, 11:15, 12:8, 12:11,
12:13, 12:14, 12:15, 12:18, 13:13,
13:19, 14:6, 14:21, 15:18, 16:7, 17:4,
17:22, 20:8, 21:18, 22:9, 22:25, 24:17,
25:5, 25:11, 27:13, 27:25, 28:17, 30:2,
30:14, 32:25, 35:6, 36:19, 36:21,
39:17, 39:21, 39:23, 39:25, 40:18,
41:8, 41:11, 41:17, 42:10, 43:7, 43:20,
44:17, 45:13, 46:1, 47:22, 48:3, 48:5,
49:13, 49:18, 49:24, 51:7, 51:23, 52:4,
52:18, 53:6, 53:25, 54:2, 54:13, 54:14,
54:17, 56:9, 57:1, 58:4, 58:25, 59:10,
59:19, 60:4, 61:9, 62:1, 62:3, 63:4,
63:5, 63:6, 63:18, 63:24, 63:25, 64:20,
66:14, 66:20, 67:7, 67:18, 67:21,
69:19, 69:20, 71:15, 71:17, 71:22,
72:10, 72:11, 72:15, 72:17, 72:18,
72:19, 72:20, 73:9, 73:19, 73:20,
74:15, 74:20, 75:2, 75:11, 75:14,
75:16, 75:22, 76:2, 76:8, 76:16, 76:17,

76:18, 76:23, 77:1, 78:25, 79:3, 79:8, 79:21, 79:25, 80:1, 80:2, 80:5, 80:12, 80:20, 80:24, 81:4, 81:18, 82:5, 82:10, 82:12, 83:11, 83:21, 83:22, 84:11, 84:14, 84:25, 85:1, 86:1, 86:3, 86:11, 87:3, 87:8, 87:9, 89:5, 89:10, 89:18, 89:25, 90:6, 90:7, 90:17, 91:12, 91:14, 91:15, 92:14, 92:18, 92:20, 89:18, 93:3, 94:19, 94:23, 95:1, 95:3, 95:5, 95:9, 95:11, 95:21, 95:22, 96:6, 97:5, 97:16, 98:3, 99:12, 100:20, 100:25, 101:4, 101:5, 101:6, 101:19, 101:20, 102:11, 104:25, 106:2, 106:9, 106:22, 107:2, 108:11, 108:19, 108:22, 109:7, 109:9, 109:22, 109:24, 110:11, 111:2, 111:10, 111:12, 112:13, 112:15, 113:22, 115:1, 115:2, 115:10, 115:11, 115:13, 115:15, 115:22, 116:2, 116:8, 117:1, 117:18, 118:4, 118:8, 119:11, 119:12, 120:18, 121:2, 122:11, 122:22, 124:7, 124:15, 124:19, 125:1, 125:14, 125:24, 126:11, 126:14, 126:23, 127:1, 127:3, 127:6, 128:13, 129:10, 129:13, 129:18, 129:20

**thorough** [1] - 89:24

**those** [26] - 10:19, 14:5, 23:16, 24:3, 34:6, 35:3, 36:8, 36:10, 36:13, 36:15, 39:14, 39:15, 54:15, 59:25, 60:22, 80:6, 81:12, 82:21, 90:15, 92:15, 93:7, 95:2, 99:23, 99:24, 100:21, 108:18

**though** [4] - 17:12, 78:11, 95:21, 97:18

**thought** [4] - 10:8, 60:6, 77:12, 107:25

**threat** [2] - 25:5, 39:3

**threatened** [2] - 24:24, 68:2

**three** [18] - 7:24, 13:14, 27:14, 37:5, 37:7, 37:8, 37:13, 37:16, 38:13, 38:19, 60:21, 61:7, 62:3, 81:12, 86:24, 102:15, 104:3, 104:14

**three-hour** [1] - 37:5

**threshold** [4] - 52:9, 56:2, 56:10, 58:9

**through** [15] - 25:4, 27:4, 27:13, 31:9, 33:4, 35:23, 53:2, 55:5, 66:16, 70:17, 85:19, 98:18, 99:11, 114:25, 119:8

**throughout** [2] - 78:14, 80:2

**throw** [1] - 48:6

**throwing** [2] - 106:10, 106:12

**thrown** [1] - 74:24

**TI** [30] - 11:25, 12:6, 15:23, 23:20, 40:13, 69:19, 72:9, 74:22, 75:2, 81:18, 86:1, 86:13, 86:17, 91:22, 97:10, 99:19, 100:7, 109:22, 110:11, 114:17, 115:9, 117:13, 117:22, 118:13, 121:7, 125:20, 126:18, 126:20, 127:6, 127:21

**tie** [1] - 93:13

**Tillery** [1] - 3:12

**time** [49] - 9:14, 15:22, 16:3, 19:1, 19:16, 19:18, 33:10, 39:25, 40:2, 40:16, 44:24, 45:3, 46:5, 46:10, 47:1, 49:20, 54:3, 57:13, 58:3, 61:4, 61:5, 62:4, 63:9, 76:11, 79:23, 80:18, 81:4,

82:14, 84:6, 89:18, 89:25, 90:17, 91:2, 92:9, 102:24, 103:17, 106:13, 112:13, 113:22, 115:4, 115:6, 115:7, 118:4, 118:8, 119:21, 121:15, 126:19, 128:10, 128:14

**timeline** [1] - 70:12

**times** [5] - 16:15, 36:22, 38:4, 98:10, 102:3

**timestamp** [1] - 49:21

**tinfoil** [2] - 83:8, 83:25

**tired** [3] - 62:1, 62:3, 70:20

**tirelessly** [1] - 30:6

**title** [2] - 49:19, 50:4

**TO** [1] - 1:13

**to** [830] - 1:19, 5:18, 6:2, 6:10, 6:12, 6:13, 6:19, 6:21, 7:2, 8:3, 8:11, 8:12, 8:14, 8:15, 8:19, 8:21, 8:23, 9:3, 9:4, 9:7, 9:21, 10:2, 10:7, 10:9, 10:14, 10:19, 10:24, 11:2, 11:7, 11:9, 11:12, 11:15, 11:16, 11:18, 11:24, 12:4, 12:15, 12:17, 13:5, 13:10, 13:15, 13:22, 14:5, 14:10, 14:12, 14:18, 14:19, 14:24, 15:5, 15:6, 15:7, 15:11, 15:14, 15:23, 15:24, 16:3, 16:4, 16:5, 16:7, 16:12, 16:17, 16:19, 17:2, 17:3, 17:7, 17:8, 17:9, 17:18, 17:24, 17:25, 18:7, 18:10, 18:11, 18:12, 18:15, 19:3, 19:7, 19:22, 20:3, 20:9, 20:10, 20:11, 20:12, 20:14, 20:16, 20:23, 20:25, 21:11, 21:14, 21:17, 21:18, 22:8, 22:23, 22:24, 23:2, 23:3, 23:5, 23:10, 23:15, 23:18, 23:19, 23:22, 24:3, 24:7, 24:10, 24:14, 24:22, 24:24, 25:3, 25:11, 25:18, 25:19, 26:4, 26:8, 26:9, 26:10, 26:17, 26:18, 26:23, 26:24, 27:6, 27:7, 27:9, 27:12, 27:17, 27:19, 27:22, 27:25, 28:2, 28:5, 28:16, 28:24, 29:1, 29:4, 29:5, 29:6, 29:8, 29:15, 29:22, 30:6, 30:20, 31:10, 31:15, 31:16, 31:17, 31:25, 32:3, 32:5, 32:7, 32:10, 32:12, 32:22, 33:3, 33:8, 33:12, 33:14, 33:22, 33:25, 34:1, 34:6, 34:9, 34:12, 34:13, 34:16, 34:18, 34:21, 34:24, 35:2, 35:3, 35:4, 35:8, 35:9, 35:11, 35:14, 35:16, 35:20, 35:21, 35:25, 36:2, 36:6, 36:10, 36:13, 36:17, 36:19, 36:25, 37:1, 37:4, 37:7, 37:9, 37:17, 37:21, 37:24, 38:6, 38:9, 38:11, 38:12, 38:16, 38:21, 38:24, 38:25, 39:1, 39:5, 39:10, 39:12, 39:14, 39:15, 39:19, 39:20, 39:21, 40:1, 40:5, 40:6, 40:12, 40:15, 40:18, 40:24, 41:1, 41:6, 41:7, 41:8, 41:10, 41:11, 41:14, 41:25, 42:6, 43:2, 43:5, 43:10, 43:16, 44:5, 44:7, 44:8, 44:9, 44:13, 44:14, 44:17, 44:18, 44:19, 44:23, 45:6, 45:11, 45:15, 46:24, 47:8, 47:20, 47:21, 47:22, 48:1, 48:4, 48:7, 48:16, 48:24, 49:3, 49:4, 49:5, 49:6, 49:15, 49:19, 49:23, 49:25, 50:2, 50:3, 50:4, 50:8,

50:11, 50:20, 50:25, 51:3, 51:7, 51:10, 51:16, 51:19, 51:24, 51:25, 52:10, 52:11, 52:18, 52:20, 52:22, 53:2, 53:7, 53:8, 53:10, 53:11, 53:12, 53:14, 53:15, 53:18, 53:20, 54:8, 54:9, 54:18, 54:19, 54:20, 54:22, 54:24, 54:25, 55:2, 55:8, 55:10, 55:11, 55:13, 55:17, 55:18, 55:19, 55:20, 55:22, 55:23, 55:24, 56:1, 56:2, 56:3, 56:5, 56:6, 56:7, 56:8, 56:22, 57:3, 57:7, 57:8, 57:12, 57:14, 57:15, 57:16, 57:18, 57:19, 57:24, 57:25, 58:4, 58:5, 58:10, 58:11, 58:13, 58:14, 58:16, 58:22, 58:25, 59:1, 59:2, 59:12, 59:16, 59:18, 59:20, 59:21, 59:22, 59:25, 60:2, 60:4, 60:11, 60:17, 60:18, 60:19, 60:22, 60:23, 60:24, 61:4, 61:6, 61:17, 61:18, 61:21, 61:24, 61:25, 62:5, 62:14, 62:15, 62:18, 62:20, 62:22, 63:2, 63:6, 63:9, 63:11, 63:12, 63:14, 63:16, 63:23, 63:24, 63:25, 64:1, 64:5, 64:17, 64:19, 65:11, 65:13, 65:19, 65:24, 66:8, 66:12, 66:13, 66:14, 66:19, 66:22, 67:4, 67:12, 67:14, 67:16, 67:17, 67:18, 67:21, 67:25, 68:1, 68:3, 68:13, 68:18, 68:24, 69:2, 69:10, 69:12, 69:18, 69:19, 69:22, 70:9, 70:10, 70:12, 70:13, 70:19, 70:23, 72:3, 72:5, 72:6, 72:21, 73:3, 73:5, 73:8, 73:9, 73:12, 73:17, 73:20, 73:22, 73:23, 73:25, 74:3, 74:7, 74:17, 74:19, 74:25, 75:2, 75:4, 75:14, 75:15, 75:16, 76:3, 76:9, 76:11, 76:20, 76:24, 78:2, 78:23, 79:1, 79:2, 79:13, 79:21, 80:4, 80:9, 80:11, 80:15, 80:20, 80:22, 81:7, 81:9, 81:13, 82:10, 82:11, 82:14, 82:15, 82:19, 82:22, 83:1, 83:2, 83:3, 83:7, 83:11, 83:17, 84:8, 84:9, 84:14, 84:17, 84:18, 84:20, 85:1, 85:3, 85:5, 85:6, 85:13, 85:14, 85:17, 85:18, 85:20, 85:25, 86:2, 86:4, 86:12, 86:13, 86:22, 86:23, 87:3, 87:9, 87:13, 87:15, 87:17, 87:18, 88:2, 88:3, 88:4, 88:5, 88:9, 88:11, 88:12, 88:13, 89:2, 89:7, 89:13, 89:17, 89:20, 90:5, 90:6, 90:7, 90:9, 90:19, 91:1, 91:2, 91:6, 91:10, 91:12, 91:13, 91:14, 91:15, 91:22, 92:7, 92:9, 92:10, 92:19, 92:21, 93:2, 93:9, 93:11, 93:13, 93:15, 93:19, 94:5, 94:6, 94:7, 94:9, 94:11, 94:13, 94:17, 94:23, 95:1, 95:18, 96:2, 96:3, 96:8, 96:12, 96:19, 97:3, 97:5, 97:6, 97:8, 97:18, 97:22, 97:24, 98:1, 98:3, 98:17, 99:11, 99:13, 99:24, 100:2, 100:6, 100:12, 100:14, 100:17, 100:18, 100:19, 101:4, 101:11, 101:22, 102:5, 102:6, 102:11, 102:14, 102:16, 102:23, 102:24, 102:25, 103:1, 103:8, 103:12, 103:16, 103:21, 103:22, 104:6, 104:8, 104:9, 104:16, 104:19, 104:21, 105:1, 105:2, 105:4, 105:5,

105:23, 106:4, 106:6, 106:7, 106:10, 106:12, 106:20, 107:6, 107:19, 107:23, 108:6, 108:7, 108:8, 108:12, 108:13, 108:18, 108:19, 109:6, 109:11, 109:13, 109:14, 109:16, 109:18, 109:19, 109:23, 110:6, 110:10, 110:13, 110:15, 110:22, 110:23, 111:2, 111:6, 111:8, 111:9, 111:11, 111:12, 111:20, 112:1, 112:14, 112:15, 112:25, 113:6, 113:10, 113:11, 114:2, 114:3, 114:4, 114:10, 114:12, 114:17, 114:19, 114:22, 115:2, 115:7, 115:18, 115:20, 115:24, 116:16, 116:19, 116:22, 117:6, 117:10, 117:11, 117:13, 117:14, 117:19, 117:21, 117:23, 118:3, 118:5, 118:6, 118:16, 118:23, 118:24, 118:25, 119:1, 119:4, 119:7, 119:9, 119:11, 119:12, 119:15, 119:18, 119:21, 119:23, 119:24, 120:3, 120:5, 120:6, 120:8, 120:10, 120:11, 120:20, 121:1, 121:7, 121:8, 121:9, 121:10, 121:17, 121:20, 121:23, 122:2, 122:5, 122:9, 122:16, 122:17, 122:22, 123:2, 123:3, 123:4, 123:6, 123:9, 123:11, 123:19, 123:20, 123:23, 123:24, 124:9, 124:12, 124:13, 124:19, 124:25, 125:1, 125:5, 125:6, 125:13, 125:19, 125:23, 125:24, 125:25, 126:2, 126:12, 126:13, 126:22, 127:4, 127:11, 127:12, 127:13, 127:16, 127:24, 128:3, 129:9

**today** [31] - 10:8, 10:14, 11:18, 15:11, 15:15, 16:1, 16:7, 16:17, 21:10, 21:16, 21:19, 41:9, 50:19, 50:25, 51:9, 51:16, 52:1, 54:21, 71:23, 72:17, 81:22, 84:4, 84:15, 84:18, 84:19, 93:15, 99:19, 100:13, 115:10, 128:11
**told** [13] - 12:8, 40:23, 41:15, 85:13, 90:22, 92:2, 92:9, 121:16, 123:21, 123:22, 123:25, 124:11, 124:13
**too** [7] - 8:20, 51:14, 61:8, 85:19, 92:23, 117:20, 128:11
**took** [4] - 46:25, 92:16, 102:24, 120:18
**top** [1] - 98:17
**tort** [5] - 98:17, 99:18, 100:22, 110:1, 112:6
**tortious** [6] - 98:22, 99:20, 100:1, 110:2, 112:18, 112:21
**tortiously** [3] - 32:17, 98:23, 112:14
**torts** [1] - 98:18
**torture** [1] - 66:16
**total** [3] - 38:13, 84:20, 129:17
**tough** [1] - 126:11
**track** [1] - 109:12
**tracked** [1] - 109:15
**transcript** [3] - 11:23, 13:11, 104:1
**transcription** [1] - 129:7
**transcripts** [1] - 81:12

**trial** [5] - 89:13, 113:24, 120:4, 120:5, 126:23
**TRIAL** [1] - 1:2
**tried** [2] - 16:12, 112:14
**TRO** [11] - 71:23, 72:4, 72:6, 72:10, 73:19, 83:11, 83:12, 84:2, 84:3, 110:13, 114:17
**TROs** [1] - 115:3
**true** [7] - 31:8, 67:8, 68:20, 73:18, 74:1, 113:15, 129:7
**truly** [1] - 129:14
**trustee** [1] - 108:25
**truth** [1] - 92:9
**truthful** [3] - 91:2, 92:2, 93:2
**try** [10] - 9:21, 11:24, 13:22, 14:24, 16:5, 35:16, 68:1, 70:10, 72:5, 103:16
**trying** [14] - 8:12, 58:4, 63:6, 63:16, 67:21, 72:3, 75:4, 80:9, 84:20, 91:10, 111:20, 117:10, 122:2, 122:5
**turns** [2] - 35:3, 39:14
**twice** [2] - 16:25, 67:14
**twist** [1] - 90:2
**two** [10] - 7:24, 15:5, 27:5, 37:5, 51:14, 63:25, 65:24, 80:23, 97:14, 104:14
**Two** [1] - 4:6
**two-dollar** [1] - 80:23
**TX** [1] - 3:13
**type** [4] - 10:9, 51:2, 100:14, 118:16
**typing** [1] - 119:19

**U**

**U.S** [1] - 54:3
**uh** [1] - 12:23
**uh-huh** [1] - 12:23
**ultimately** [12] - 17:9, 75:5, 75:20, 76:1, 76:4, 76:17, 76:19, 77:19, 89:3, 89:10, 116:19
**umpteen** [2] - 38:8, 38:9
**unauthorized** [1] - 74:3
**under** [35] - 16:8, 16:20, 17:6, 25:20, 26:25, 27:1, 28:20, 33:23, 34:9, 41:24, 52:13, 52:23, 54:1, 54:12, 54:19, 55:14, 58:8, 61:19, 70:15, 71:19, 73:25, 76:4, 79:5, 88:17, 91:2, 91:13, 91:18, 92:25, 95:11, 110:23, 113:15, 116:11, 116:13, 122:21, 123:25
**underlying** [13] - 47:12, 47:15, 53:5, 53:15, 53:18, 54:24, 57:20, 98:3, 98:17, 99:18, 100:22, 110:1, 112:5
**understand** [38] - 13:11, 21:15, 34:2, 37:15, 38:21, 43:19, 54:18, 55:6, 55:25, 56:10, 56:18, 57:7, 57:9, 63:2, 64:24, 65:7, 65:12, 70:8, 75:6, 75:19, 76:15, 88:8, 88:23, 89:5, 93:3, 93:14, 100:18, 114:20, 116:18, 117:23, 122:10, 123:14, 124:21, 127:14, 128:1, 128:9, 128:13
**understanding** [6] - 9:20, 43:9, 58:8, 78:8, 91:21, 124:13

**understood** [1] - 50:6
**unfair** [1] - 70:5
**unfortunately** [1] - 7:22
**UNIDENTIFIED** [2] - 87:25, 88:8
**unique** [6] - 10:8, 76:23, 113:19, 114:9, 114:11, 126:1
**United** [2] - 23:3, 108:24
**unjust** [2] - 99:24, 113:13
**unless** [1] - 91:9
**unlike** [1] - 61:20
**unsworn** [6] - 28:18, 47:23, 49:11, 49:19, 50:10, 50:11
**until** [16] - 26:7, 30:14, 39:11, 46:22, 50:18, 74:1, 76:11, 77:5, 77:17, 83:5, 86:5, 86:7, 86:16, 88:18, 101:22, 127:23
**up** [39] - 9:14, 10:18, 11:17, 15:17, 15:21, 17:20, 19:21, 20:8, 20:12, 25:9, 28:5, 35:8, 36:15, 40:16, 40:21, 49:7, 49:23, 50:8, 63:12, 69:15, 72:7, 74:13, 79:1, 79:8, 82:20, 84:12, 84:24, 85:24, 88:1, 94:9, 100:19, 102:6, 109:14, 110:4, 118:16, 120:10, 127:9
**upon** [3] - 45:18, 46:14, 58:13
**upset** [1] - 64:2
**us** [32] - 7:2, 11:7, 11:11, 12:1, 12:25, 13:17, 17:25, 20:17, 26:12, 43:20, 50:14, 53:15, 53:19, 53:20, 55:5, 55:20, 57:19, 57:24, 59:1, 62:3, 62:4, 72:12, 83:9, 88:13, 90:21, 99:2, 100:22, 119:22, 125:19, 126:2, 126:22, 127:20
**USA** [1] - 61:16
**use** [1] - 63:18
**used** [2] - 32:10, 33:18
**usually** [1] - 112:3

**V**

**v** [13] - 5:3, 22:19, 25:13, 33:9, 42:4, 42:23, 43:4, 43:16, 44:2, 47:13, 52:14, 52:23, 61:16
**valid** [1] - 55:21
**value** [1] - 113:16
**values** [1] - 116:17
**verification** [3] - 16:11, 31:13, 47:22
**verified** [1] - 35:1
**verify** [1] - 34:22
**Verizon** [3] - 42:13, 43:16, 44:2
**version** [4] - 7:14, 7:15, 8:2
**versus** [1] - 12:22
**very** [34] - 21:14, 21:15, 21:18, 34:8, 37:14, 37:22, 57:4, 59:18, 59:19, 64:5, 64:7, 65:23, 69:7, 69:8, 76:7, 78:17, 81:14, 89:13, 89:23, 89:24, 98:1, 99:11, 101:3, 101:18, 103:3, 120:19, 121:5, 122:16, 122:17
**vexatious** [1] - 60:13
**video** [2] - 87:20, 87:24
**videos** [4] - 66:18, 69:22, 69:23, 87:7

**violated** [5] - 53:12, 55:18, 56:7, 57:21, 57:23
**violating** [1] - 12:17
**violation** [2] - 26:5, 29:24
**virtually** [1] - 25:17
**Vol** [1] - 2:4
**VOLUME** [3] - 1:1, 2:2
**Volume** [2] - 129:10, 129:14
**volume** [1] - 129:10
**VOLUMES** [1] - 2:2
**VS** [1] - 1:6

# W

**W** [1] - 3:8
**wagon** [1] - 44:17
**wait** [4] - 12:14, 19:23, 19:24, 20:21
**waiting** [2] - 79:17, 79:18
**waive** [1] - 44:23
**Walker** [1] - 42:23
**walking** [1] - 83:23
**walks** [1] - 83:13
**want** [72] - 6:2, 6:13, 8:23, 9:3, 9:4, 9:7, 9:21, 11:2, 15:16, 16:17, 18:15, 19:22, 20:13, 21:18, 29:4, 35:20, 36:8, 38:11, 38:12, 38:15, 39:5, 39:21, 41:1, 46:24, 47:8, 57:8, 59:19, 61:24, 61:25, 66:8, 66:14, 67:4, 68:13, 68:23, 69:19, 70:9, 70:11, 70:19, 73:8, 74:7, 74:19, 76:24, 77:19, 80:17, 80:20, 82:19, 83:17, 83:24, 84:12, 85:5, 85:6, 85:17, 85:18, 85:20, 93:19, 108:8, 108:12, 114:10, 114:22, 119:12, 119:18, 119:21, 119:23, 121:1, 121:8, 122:9, 122:16, 122:17, 123:9, 124:2
**wanted** [20] - 10:7, 29:15, 44:19, 49:3, 49:23, 65:19, 72:21, 75:1, 80:15, 81:13, 101:15, 104:19, 104:21, 119:9, 120:10, 121:3, 121:6, 121:7, 121:9, 121:10
**wanting** [3] - 14:18, 83:16, 109:18
**wants** [10] - 14:7, 14:9, 32:7, 44:17, 62:15, 66:13, 68:24, 69:1, 93:9, 108:6
**warrant** [2] - 100:14, 110:11
**was** [185] - 6:5, 6:14, 6:21, 10:2, 10:8, 11:8, 11:15, 13:17, 16:2, 16:3, 16:5, 16:13, 18:24, 18:25, 19:3, 20:14, 21:11, 21:12, 22:17, 22:23, 23:13, 23:23, 23:25, 24:2, 24:5, 24:8, 24:10, 25:2, 25:3, 25:15, 25:16, 25:19, 26:3, 26:24, 27:3, 27:18, 28:2, 28:6, 28:11, 30:10, 34:5, 35:24, 36:4, 37:17, 39:9, 41:4, 41:19, 41:20, 44:11, 44:18, 45:9, 45:20, 45:25, 46:1, 46:22, 47:8, 48:5, 48:9, 48:10, 48:11, 48:12, 49:24, 50:10, 51:12, 51:14, 52:5, 55:18, 56:7, 60:6, 62:24, 63:3, 64:5, 66:17, 68:3, 70:15, 70:23, 71:2, 73:23, 73:24, 73:25, 74:24, 75:3, 76:3, 76:5, 76:6, 76:9, 76:13, 77:23, 79:11, 79:21,

79:23, 79:24, 80:10, 80:14, 80:15, 81:10, 81:25, 82:5, 83:9, 83:10, 83:11, 84:13, 84:14, 84:25, 85:14, 87:7, 87:13, 87:18, 89:22, 90:3, 90:22, 92:7, 92:19, 93:7, 95:1, 95:19, 95:24, 96:25, 97:13, 98:5, 101:14, 101:16, 101:23, 102:2, 102:4, 102:25, 103:1, 103:7, 103:21, 104:4, 104:7, 104:8, 104:10, 104:13, 105:4, 105:9, 105:10, 105:11, 105:12, 106:3, 106:7, 106:9, 106:11, 106:14, 106:20, 106:25, 107:1, 107:13, 108:1, 108:23, 109:7, 109:18, 110:19, 112:5, 112:15, 115:1, 115:6, 115:21, 116:11, 119:10, 119:23, 120:1, 120:16, 120:19, 121:14, 121:15, 121:16, 121:24, 123:20, 125:22, 125:23, 126:6, 128:11, 129:19
**wasn't** [5] - 23:11, 41:5, 81:15, 81:16, 108:23
**watching** [1] - 25:10
**waterfall** [1] - 105:15
**way** [16] - 20:21, 31:16, 37:10, 49:1, 66:18, 66:20, 67:10, 67:20, 68:23, 70:10, 71:13, 100:5, 111:6, 113:22, 126:4, 126:10
**Wayne** [5] - 32:12, 67:15, 69:21, 69:23
**ways** [1] - 80:9
**We** [1] - 64:10
**we** [266] - 11:5, 11:14, 11:15, 11:17, 11:21, 11:22, 11:23, 11:24, 11:25, 12:2, 12:9, 12:12, 12:17, 12:18, 12:25, 13:1, 13:2, 13:6, 13:11, 13:17, 13:21, 14:5, 14:10, 14:11, 14:12, 14:21, 14:24, 15:7, 15:23, 16:3, 18:1, 18:22, 18:24, 19:2, 19:3, 19:6, 20:19, 20:23, 21:23, 22:9, 23:13, 23:17, 23:22, 23:25, 24:2, 25:2, 25:10, 26:11, 26:12, 26:13, 27:3, 27:4, 27:6, 27:9, 27:10, 27:12, 27:15, 28:5, 28:19, 29:3, 31:7, 33:10, 33:23, 36:22, 36:25, 38:14, 39:6, 39:7, 39:11, 39:19, 40:1, 40:16, 40:23, 41:24, 46:7, 46:24, 47:14, 47:16, 48:24, 49:8, 49:15, 49:16, 49:17, 49:23, 49:25, 50:4, 50:17, 50:18, 51:2, 51:3, 51:6, 51:7, 51:20, 51:23, 51:24, 52:12, 53:16, 54:13, 56:5, 56:15, 57:20, 57:23, 57:24, 58:11, 59:1, 60:19, 62:5, 62:13, 70:10, 71:13, 71:17, 72:3, 72:6, 72:8, 72:9, 72:23, 72:24, 73:1, 73:2, 73:3, 73:6, 73:9, 73:10, 73:11, 73:12, 73:15, 73:18, 73:19, 73:20, 74:12, 74:21, 74:22, 75:1, 75:4, 76:11, 78:2, 79:22, 79:23, 80:6, 80:12, 80:14, 81:5, 81:9, 81:18, 82:15, 82:20, 82:22, 83:24, 84:1, 84:2, 84:7, 84:15, 85:20, 85:24, 85:25, 86:1, 86:4, 86:10, 86:11, 86:12, 86:13, 88:17, 89:12, 89:13, 89:18, 89:21, 89:22, 89:23, 90:15, 90:17, 90:18, 90:19, 91:2, 91:5, 91:13, 91:22,

93:21, 94:22, 97:24, 98:2, 98:9, 99:1, 99:3, 99:4, 100:12, 100:17, 101:19, 101:20, 101:22, 105:6, 105:11, 106:2, 106:23, 106:9, 109:12, 109:15, 110:14, 110:17, 111:1, 111:2, 111:19, 112:11, 112:13, 112:14, 113:24, 114:16, 114:17, 116:23, 117:3, 117:6, 117:15, 117:19, 118:10, 119:9, 119:10, 119:11, 120:5, 120:10, 121:3, 121:5, 121:6, 121:8, 121:23, 121:24, 124:7, 124:8, 124:9, 124:12, 125:2, 125:3, 125:9, 126:1, 126:10, 126:18, 127:21, 128:2
**we're** [24] - 9:2, 11:18, 12:9, 13:5, 14:6, 14:7, 14:20, 15:24, 31:11, 38:22, 39:1, 41:1, 50:23, 54:23, 54:25, 55:2, 55:11, 72:19, 72:21, 79:13, 80:3, 84:9, 86:7, 99:19
**Wednesday** [4] - 11:3, 11:18, 40:17, 106:3
**week** [14] - 11:6, 21:12, 21:13, 61:17, 66:23, 70:14, 72:4, 81:19, 82:14, 109:10, 109:20, 126:23, 127:1
**Weems** [1] - 1:20
**well** [32] - 5:20, 6:4, 7:4, 7:17, 7:24, 10:21, 16:10, 16:21, 16:23, 19:4, 36:25, 37:18, 37:23, 42:10, 43:12, 50:2, 58:2, 58:11, 63:8, 73:7, 74:1, 75:13, 76:10, 83:15, 93:11, 93:16, 94:25, 100:1, 108:8, 112:19, 113:24, 122:15
**went** [11] - 19:5, 27:3, 27:10, 28:4, 66:5, 66:16, 67:14, 70:13, 70:17, 72:5, 98:9
**were** [49] - 6:8, 10:3, 11:24, 12:17, 16:1, 18:18, 19:6, 21:23, 23:24, 25:10, 27:10, 27:12, 29:19, 33:12, 36:2, 40:16, 41:17, 42:6, 42:7, 44:12, 48:11, 48:12, 65:20, 72:3, 72:24, 73:1, 73:2, 73:3, 79:10, 80:7, 81:16, 82:23, 83:21, 88:22, 89:18, 89:20, 101:16, 102:16, 103:11, 104:9, 104:12, 120:5, 120:6, 121:25, 124:10, 124:11, 129:12
**weren't** [2] - 19:6, 106:1
**west** [2] - 25:14, 30:21, 32:6
**West** [1] - 4:13
**wetwiska** [1] - 80:13
**Wetwiska** [11] - 67:13, 68:2, 68:4, 79:22, 90:9, 91:12, 92:1, 92:9, 120:4, 121:19, 123:19
**Wetwiska's** [1] - 115:1
**what** [172] - 6:4, 6:14, 7:9, 7:13, 7:23, 8:11, 9:20, 11:21, 12:9, 12:10, 13:17, 14:12, 14:19, 14:20, 14:25, 15:9, 15:13, 15:24, 17:7, 17:15, 18:15, 19:9, 25:3, 25:10, 26:5, 27:8, 28:2, 28:16, 31:10, 33:12, 33:24, 34:2, 34:15, 35:20, 36:2, 37:21, 38:21, 39:9, 40:5, 42:14, 43:5, 43:12, 43:15, 43:18, 43:21, 43:25, 45:4, 45:17, 45:18, 45:19, 46:13, 47:6, 47:18, 47:20, 48:3,

48:10, 50:10, 50:18, 50:23, 51:3, 52:5,
53:11, 54:23, 55:1, 55:11, 55:12, 56:9,
56:11, 56:23, 57:4, 57:9, 57:12, 59:8,
60:5, 60:19, 60:23, 61:13, 62:15,
62:20, 63:16, 63:21, 63:22, 64:6,
65:14, 65:18, 67:2, 68:5, 68:24, 69:6,
70:3, 70:5, 72:22, 73:6, 75:15, 76:15,
77:6, 77:10, 78:6, 78:17, 78:24, 79:21,
79:22, 80:12, 81:6, 81:7, 81:17, 82:1,
82:17, 83:3, 84:1, 84:11, 84:24, 88:2,
90:5, 90:7, 91:11, 91:14, 92:1, 92:8,
95:8, 95:23, 96:17, 96:19, 97:5, 97:6,
98:2, 98:3, 102:1, 102:2, 102:4,
102:22, 102:25, 103:23, 103:25,
104:9, 104:25, 105:2, 105:5, 105:11,
105:15, 105:23, 106:19, 109:4,
109:19, 110:7, 110:19, 111:2, 111:25,
112:15, 113:14, 113:22, 115:23,
115:24, 116:5, 118:25, 119:12,
122:15, 122:23, 123:5, 123:6, 123:7,
124:4, 124:10, 124:13, 128:7
**what's** [2] - 62:22, 106:22
**What's** [1] - 69:24
**whatever** [20] - 15:16, 20:23, 28:25,
49:14, 53:15, 61:13, 62:4, 73:8, 73:12,
77:18, 82:1, 100:19, 114:4, 116:21,
117:12, 117:14, 118:4, 127:4, 127:12,
128:3
**whatsoever** [1] - 80:25
**when** [42] - 7:17, 9:6, 13:14, 24:13,
33:18, 35:16, 39:25, 41:25, 42:2,
44:17, 45:13, 49:20, 51:1, 51:14, 52:8,
53:1, 57:21, 58:16, 58:21, 62:17, 63:2,
66:10, 67:20, 67:25, 72:11, 76:7,
77:14, 78:3, 89:22, 91:15, 102:10,
106:6, 111:7, 113:6, 120:5, 120:9,
121:13, 121:15, 123:18, 126:18
**where** [37] - 9:5, 16:11, 26:1, 28:20,
33:5, 35:20, 35:25, 37:14, 39:1, 52:4,
53:3, 54:4, 62:23, 66:6, 67:14, 76:11,
79:13, 79:14, 94:8, 103:10, 104:2,
104:5, 104:13, 104:15, 104:24, 105:4,
109:13, 109:14, 111:23, 113:7,
118:17, 121:19, 122:1, 123:20, 124:8
**whether** [20] - 10:22, 17:5, 17:7, 36:3,
38:19, 50:20, 50:22, 55:3, 58:5, 62:18,
79:2, 79:4, 79:9, 79:11, 92:25, 101:21,
104:7, 104:8, 106:17
**which** [62] - 7:24, 9:23, 11:8, 12:3,
15:24, 17:1, 24:14, 24:17, 25:13,
26:25, 27:7, 27:8, 28:2, 28:16, 28:25,
31:7, 31:20, 34:24, 35:18, 36:16,
40:20, 41:5, 46:2, 48:2, 49:17, 49:21,
50:17, 53:11, 53:16, 53:21, 54:23,
59:9, 59:16, 61:11, 61:15, 61:16,
61:17, 62:13, 64:6, 81:18, 81:22,
82:23, 83:17, 88:2, 89:11, 89:12,
97:22, 99:13, 100:7, 100:21, 105:10,
105:11, 106:18, 108:16, 108:19,
109:20, 111:19, 113:1, 114:24,

126:12, 129:11
**while** [5] - 20:12, 25:7, 58:3, 97:21,
118:17
**white** [1] - 100:14
**who** [45] - 5:11, 9:8, 10:3, 12:3, 13:6,
23:4, 23:25, 26:3, 34:21, 37:7, 44:4,
51:21, 61:7, 61:9, 64:5, 66:2, 66:21,
67:11, 67:13, 68:6, 71:2, 73:4, 77:15,
83:14, 88:7, 88:13, 88:16, 89:3, 90:25,
93:24, 95:16, 101:15, 105:1, 105:2,
105:4, 106:5, 106:16, 106:23, 107:13,
107:20, 108:22, 108:25, 111:1, 121:16
**whoever** [1] - 39:13
**whole** [17] - 16:16, 37:3, 38:3, 38:23,
39:7, 39:17, 40:12, 50:4, 60:3, 62:16,
66:9, 67:15, 75:6, 81:18, 99:14,
121:14
**wholly** [1] - 54:14
**whose** [1] - 107:11
**why** [56] - 9:3, 9:15, 13:3, 13:16, 13:21,
14:17, 15:7, 21:15, 34:13, 35:6, 35:21,
37:13, 37:15, 37:20, 38:21, 42:11,
51:19, 51:20, 53:21, 54:21, 58:12,
59:18, 60:4, 61:1, 61:25, 67:4, 70:9,
73:15, 76:6, 80:3, 80:20, 82:4, 82:6,
82:7, 84:12, 84:24, 91:12, 91:18, 92:1,
93:14, 94:5, 96:7, 96:19, 98:2, 99:13,
99:19, 107:18, 108:1, 108:2, 116:8,
119:9, 123:9, 124:7, 124:9, 124:12,
126:6
**wife** [1] - 66:4
**wildly** [1] - 116:3
**will** [37] - 7:1, 18:10, 25:11, 29:17,
36:25, 38:5, 38:7, 38:8, 38:10, 38:14,
39:20, 41:13, 44:6, 46:1, 46:14, 51:7,
51:20, 62:5, 62:13, 71:7, 71:17, 79:23,
80:23, 81:5, 82:20, 84:8, 85:24, 88:22,
92:1, 96:4, 97:19, 116:15, 125:13,
127:9, 128:2
**willing** [1] - 26:24
**Winthrop** [1] - 4:5
**wiped** [2] - 107:12, 116:15
**wisdom** [1] - 24:7
**with** [155] - 5:7, 9:5, 12:7, 12:10, 14:6,
14:8, 14:19, 15:11, 15:16, 16:14, 17:2,
17:9, 17:24, 21:5, 21:7, 21:11, 21:17,
21:18, 22:6, 22:20, 22:22, 22:24,
23:15, 23:16, 24:2, 24:18, 26:8, 26:25,
27:5, 27:7, 27:9, 27:19, 28:2, 28:15,
29:21, 30:20, 32:15, 32:17, 32:18,
32:22, 33:8, 33:14, 34:6, 34:16, 34:23,
35:2, 36:5, 36:10, 36:16, 36:23, 36:24,
37:10, 37:20, 38:9, 38:13, 39:10,
39:12, 39:13, 39:15, 40:12, 40:20,
40:25, 41:9, 43:9, 47:21, 49:3, 49:16,
49:21, 51:8, 59:20, 59:22, 59:25, 60:7,
60:21, 60:22, 61:10, 61:14, 61:22,
61:25, 63:8, 64:19, 66:4, 66:22, 67:22,
68:2, 68:20, 69:21, 70:3, 70:25, 72:8,
72:9, 72:11, 72:19, 72:20, 73:3, 73:5,

73:17, 76:2, 77:25, 78:25, 79:12, 80:6,
80:12, 80:20, 82:19, 83:4, 83:5, 83:19,
83:22, 84:9, 85:7, 85:10, 85:21, 86:22,
88:3, 90:2, 90:3, 91:3, 95:2, 96:1,
98:6, 98:22, 98:24, 98:25, 99:2, 99:3,
99:25, 100:6, 100:9, 100:10, 101:3,
106:23, 109:7, 110:1, 110:3, 110:4,
110:6, 110:15, 112:14, 112:18,
112:21, 115:10, 115:20, 116:2, 118:6,
120:8, 120:16, 121:25, 123:4, 125:16,
126:15
**within** [3] - 33:17, 34:10, 63:15
**without** [9] - 12:2, 12:7, 13:6, 44:24,
54:10, 118:21, 118:24, 125:10, 125:11
**WITNESS** [1] - 129:20
**witness** [4] - 67:10, 86:1, 87:8, 121:6
**witnessed** [3] - 67:11, 70:17, 88:1
**witnesses** [4] - 26:11, 70:16, 125:19,
125:20
**WL** [1] - 25:14
**woman** [1] - 87:9
**won't** [2] - 38:7, 64:12
**wonderful** [1] - 20:4
**word** [1] - 78:13
**words** [6] - 27:1, 29:7, 30:23, 49:9,
115:5, 118:15
**work** [4] - 13:10, 39:7, 73:5, 125:24
**worked** [2] - 27:4, 71:2
**working** [4] - 27:13, 30:19, 41:12, 66:21
**works** [3] - 30:6, 54:11, 73:8
**world** [1] - 40:7
**worry** [1] - 64:1
**worth** [2] - 27:9, 60:7
**would** [66] - 16:5, 16:24, 20:4, 20:5,
20:21, 25:22, 25:23, 26:17, 26:21,
36:16, 37:5, 37:16, 37:20, 38:6, 38:20,
39:11, 40:10, 40:15, 44:20, 53:18,
53:20, 56:5, 56:25, 57:14, 60:9, 60:11,
60:12, 60:13, 60:14, 62:14, 69:18,
76:12, 86:2, 86:12, 86:23, 87:10, 90:8,
90:9, 90:11, 90:15, 90:18, 91:12,
92:11, 94:21, 99:3, 99:18, 102:25,
107:12, 107:18, 110:14, 110:24,
113:1, 113:14, 113:24, 114:2, 114:21,
119:24, 122:23, 124:16, 125:18,
125:24, 126:2, 126:22, 127:20
**wouldn't** [1] - 71:11
**wow** [1] - 51:8
**write** [1] - 39:19
**writing** [1] - 129:9
**wrong** [4] - 53:22, 100:6, 122:13, 124:3
**wrongdoing** [2] - 62:24, 112:6
**wrongfully** [1] - 110:20
**wrote** [1] - 102:4
**WSP** [1] - 61:16
**Wyatt** [2] - 71:1, 71:2

## X

**X** [1] - 2:1

Produced by O'Brien & Levine Court Reporting Solutions

# Y

**y'all** [17] - 20:22, 22:11, 57:12, 64:11, 86:16, 87:4, 89:1, 90:5, 102:24, 116:21, 117:14, 118:4, 118:25, 119:1, 126:15, 127:4

**y'all's** [1] - 96:1

**yeah** [15] - 6:21, 8:21, 9:15, 10:13, 10:15, 11:1, 15:4, 22:2, 24:20, 64:1, 71:11, 75:12, 88:15, 125:6, 125:8

**year** [4] - 75:22, 97:11, 97:13, 120:19

**year-and-a-half** [2] - 75:22, 97:13

**years** [6] - 39:23, 66:5, 66:21, 67:8, 67:23, 97:14

**Yes** [3] - 93:21, 117:3, 123:11

**yes** [25] - 6:22, 8:18, 12:16, 19:2, 19:25, 21:7, 22:9, 22:13, 40:9, 45:24, 46:7, 46:9, 46:12, 48:15, 48:22, 56:17, 81:9, 86:19, 87:5, 93:1, 104:19, 107:13, 112:7, 121:24

**yesterday** [3] - 9:18, 11:10, 19:5

**yet** [7] - 6:10, 7:23, 27:21, 30:16, 69:15, 75:12, 120:22

**YORK** [2] - 1:7, 4:1

**York** [2] - 95:12, 95:14

**you're** [21] - 17:12, 37:14, 37:21, 38:22, 39:1, 49:20, 55:6, 56:19, 56:23, 57:3, 58:13, 63:23, 75:9, 82:16, 83:16, 92:25, 111:24, 117:23, 122:12

**you've** [1] - 45:6

**you-all's** [1] - 128:10

**your** [65] - 5:4, 7:5, 8:3, 8:9, 8:10, 8:11, 10:14, 18:10, 18:11, 21:7, 21:21, 38:14, 42:19, 43:5, 43:8, 47:15, 50:2, 50:8, 52:16, 56:10, 56:12, 60:23, 64:4, 64:5, 64:16, 64:17, 64:22, 65:4, 65:8, 65:11, 76:20, 77:1, 77:6, 78:11, 80:11, 87:7, 89:15, 89:16, 96:10, 96:12, 97:8, 102:17, 104:21, 111:21, 111:22, 111:23, 112:1, 112:18, 112:21, 113:6, 113:9, 113:21, 114:14, 118:6, 118:7, 119:4, 119:21, 124:21

**Your** [118] - 6:13, 8:13, 10:20, 11:3, 11:20, 13:1, 13:10, 13:24, 14:25, 18:23, 19:16, 19:23, 19:25, 20:1, 20:5, 21:2, 21:9, 22:5, 22:13, 40:9, 42:1, 42:17, 45:1, 45:3, 45:12, 47:10, 48:15, 48:18, 49:6, 50:6, 52:2, 62:8, 63:1, 64:14, 64:24, 65:7, 65:12, 65:16, 65:20, 66:8, 66:15, 67:12, 67:17, 68:8, 68:17, 68:23, 68:25, 69:17, 71:1, 71:22, 72:23, 74:18, 75:23, 76:22, 77:13, 78:8, 78:20, 78:23, 80:6, 81:11, 84:12, 84:16, 85:3, 85:25, 86:10, 86:18, 87:2, 87:6, 87:25, 91:5, 91:16, 92:3, 93:1, 93:7, 93:21, 94:2, 94:4, 94:12, 95:10, 96:15, 100:25, 110:12, 110:15, 110:16, 114:1, 114:7, 114:12, 116:10, 116:11, 116:24, 116:25, 117:4, 117:7, 117:15, 117:18, 117:22, 118:14, 119:3, 119:7, 119:16, 119:20, 120:2, 120:15, 121:1, 121:25, 122:8, 122:15, 123:11, 124:16, 125:18, 125:25, 126:2, 126:24, 127:15, 127:19, 127:22, 128:5

**yourself** [5] - 77:16, 88:13, 92:24, 94:6, 122:21

# Z

**Zaheer** [45] - 7:7, 8:1, 15:19, 21:16, 22:18, 22:19, 23:3, 23:4, 23:25, 24:23, 29:2, 29:21, 30:8, 30:20, 31:1, 31:21, 31:24, 31:25, 36:6, 64:18, 65:6, 75:2, 77:8, 77:9, 77:10, 77:17, 78:7, 78:9, 78:16, 90:3, 93:14, 93:17, 94:15, 96:23, 96:25, 98:23, 99:17, 100:8, 106:17, 108:21, 110:1, 110:23, 111:6, 121:4, 126:5

# .

**.** [1] - 3:9

12/5/2023 8:51 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82229936
By: Patricia Gonzalez
Filed: 12/4/2023 9:55 PM

## CAUSE NO. 2023-22748

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC, <br>    Plaintiff, | § <br> § <br> § | IN THE DISTRICT COURT OF |
| v. | § <br> § <br> § | HARRIS COUNTY, TEXAS |
| NATIONAL BANK OF KUWAIT, <br> S.A.K.P., NEW YORK BRANCH, | § <br> § <br> § <br> § <br> § | |
|    Defendant. | § | 281ST JUDICIAL DISTRICT |

### NATIONAL BANK OF KUWAIT'S
### RESPONSE TO ALI CHOUDHRI'S EMERGENCY APPLICATION
### FOR TEMPORARY RESTRAINING ORDER

National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") files this Response to Ali

Choudhri's Emergency Application for Temporary Restraining Order, respectfully showing as

follows:

**I.**

There is no basis to grant Ali Choudhri's ("Choudhri") application for temporary

restraining order to prevent the foreclosure of the commercial property located at 2425 West Loop

South, Houston, Texas 77027 (the "Property"). The Court should reject Choudhri's application

outright for several, independent reasons.

First, Choudhri has no standing to seek injunctive relief from the Court. The Property is

solely owned by Galleria 2425 Owner, LLC ("Galleria") – not Choudhri. Galleria is wholly owned

by an incorporated joint venture, Galleria 2425 JV, LLC ("Galleria JV"). And Galleria JV is

directly owned by two more companies, Galleria West Loop Investments II, LLC and Naissance

Capital Real Estate, LLC ("NCRE"), and NCRE is the managing member. Choudhri's only

interest, if any, is a far-removed equity interest at some unknown level. There can be no doubt that

he individually has zero interest in the actual ownership of the Property. Accordingly, he

completely lacks standing to seek any injunctive relief as a matter of law.

Second, Galleria, the sole owner of the Property, has already been denied multiple TROs from the Court – the last of which the Court denied just five (5) days ago on November 29, 2023. And Choudhri and Galleria have pled the same basis for injunctive relief – namely, that NBK has allegedly breached its confidentiality obligation in the parties' August 2022 Settlement Agreement (the "Settlement Agreement"). While these allegations are wholly without merit and are completely devoid of any evidence, this Court previously found these claims are not grounds that warrant injunctive relief given that they only seek monetary damages:

> **THE COURT: But when I am looking to your cause of action where it goes and talks about the bankruptcy, and there -- and some kind of -- I just see that in your conspiracy claim that almost everything else is money, amounts to be determined, amounts to be recovered in the state court, you know, amounts to be determined after discovery. That's all money. The amount of unjust enrichment, you know, the difference between what NBK would have been owed under the confidential settlement agreement and the true value of the building, that is money. So other than conspiracy –**
>
> **MR. ALEXANDER: There is an entire body of law that says each piece of real estate is unique.**
>
> **THE COURT: But you didn't plead it. Because you didn't plead it, your temporary injunction is denied at this time. Based on what -- the way you have pled it, you don't give me grounds.[1]**

After the Court denied Galleria's request for a temporary injunction, Galleria immediately appealed that order to the Fourteenth Court of Appeals seeking a writ of injunction and filing a motion for an emergency to stay the foreclosure. On December 4, 2023, the Fourteenth Court of Appeals appellate court also rejected Galleria's request for injunction stating it "has not established that it is entitled to injunctive relief."[2] There are no new allegations in Choudhri's TRO that would lead this Court to a different conclusion now.[3]

---

[1]    **Exhibit A** at 113:6-23.

[2]    *See* **Exhibit B**.

[3]    In fact, just minutes after this Court denied Galleria's temporary injunction, Galleria's counsel filed a copy and paste TRO in 80th district court against NBK on behalf of Naissance Galleria, LLC ("Naissance"). While

4875-4481-3973.v1

Third, the Court has already heard Galleria's (and now Choudhri's) arguments with respect to the breach of Settlement Agreement and, in fact, granted Galleria over three additional months to perform its obligations under a settlement agreement in order to avoid the foreclosure of the Property.

More specifically, Galleria's first state court action, Cause No. 2021-63370, was presumably resolved via the Settlement Agreement and, if Galleria failed to perform its obligations under that agreement, NBK would be free to foreclose on the Property. But after Galleria failed to honor its settlement obligations, Galleria filed this lawsuit, Cause No. 2023-22758, against NBK asserting a claim that NBK breached the Settlement Agreement, and Galleria sought injunctive relief to enjoin NBK from foreclosing so that Galleria could have more time to comply with the Settlement Agreement. At a hearing on April 12, 2023, the Court effectively granted Galleria's request for injunctive relief when it ordered that Galleria had until July 3, 2023 to perform its settlement obligations otherwise NBK could foreclose on the Property on July 5, 2023. However, the Court warned Galleria that "**there will not be any TROs to enjoin the foreclosure**" otherwise "**we're going to talk about sanctions for the cost of everybody's time.**"[4]

After Galleria failed to perform its settlement obligations, for a second time, it filed two more TRO applications that the Court denied on July 3 and July 5, 2023, respectively. Less than five (5) minutes after the July 5 order was issued, and instead of filing an appeal, Galleria elected instead to file for chapter 11 bankruptcy to effectively appeal the Court's decision through an automatic stay.

---

Galleria's attorneys filed that application on behalf of Naissance without any authority to do so and in violation of a temporary injunction, that application was also denied by the ancillary court on November 29, 2023.

[4]   **Exhibit C**, April 12, 2023 Hearing Transcript at 77:3-5; 79:3-6.

4875-4481-3973.v1

However, as the Court is aware, at a status conference before the Bankruptcy Court on November 1, 2023, the Honorable Christopher Lopez dismissed Galleria's bankruptcy case finding that it could not proceed for numerous reasons, including, principally, that Galleria has insufficient funds rendering the case "administratively insolvent."

As this Court knows, Galleria chose to not appeal the dismissal of its bankruptcy case, and because it was dismissed, NBK re-noticed its intent to sell the property at public auction for December 5, 2023. Then, Galleria decided to go back to the Court filing an amended petition and seeking yet another temporary injunction. Since the Court's denial of Galleria's requested injunction on July 5, 2023, the only new claim that Galleria added was a specious claim against NBK for "conspiracy", alleging NBK somehow conspired to have Galleria's bankruptcy case dismissed by apparently trying to "confuse" Judge Lopez by referencing ongoing litigation involving the control over Galleria's mezzanine lender, Naissance Galleria, LLC ("Naissance"). While this was and remains a nonsensical allegation, Galleria made these same arguments before Judge Lopez and he rejected them.[5]

Further, and in any event, Galleria did not (and could not) plead an underlying tort in connection with this "conspiracy" claim, and so on November 29, 2023, the Court denied Galleria's latest temporary injunction request on the face of the pleadings. Indeed, all of its causes of action, which had been repeatedly rejected by the Court, pled only monetary damages and did not, as the Court found, warrant the issuance of an injunction.

---

[5] As the Court also knows, at the end of the status conference before the Bankruptcy Court, Galleria attempted to challenge Judge Lopez's decision by making the suggestion that his decision might have been improperly influenced by the issues surrounding an ongoing lawsuit that involved the control over the Galleria's mezzanine lender, Naissance. However, that was a non-sequitur, and Judge Lopez flatly rejected this very argument saying, "it's being dismissed for far more than that. If that's the case, [Galleria] haven't heard me." After Judge Lopez's order of dismissal was entered, Galleria could have filed an appeal to the United States District Court within fourteen (14) days, and it could have sought that the bankruptcy stay be reinstituted pending that appeal, but it did not.

4875-4481-3973.v1

Presently, nothing has changed since the Court determined that NBK could foreclose on the property on July 5, 2023 and then again on November 29, 2023. Nor does Choudhri's TRO seek anything but money damages or, equally important, make any allegations this Court has not already heard. The Court has a long history with this case and knew quite well that Galleria had no basis to seek an injunction to prevent the December 5, 2023 foreclosure. This last and final attempt to undue the Court's orders should be rejected at all at all costs and Choudhri's application should be denied.

## II.
## ARGUMENT AND AUTHORITIES

**A.    Choudhri Has No Standing To Seek A TRO With Respect To The Property.**

Galleria is the sole owner of the Property. Choudhri has no ownership interest in the Property and, nor does he personally have an ownership interest in Galleria JV, who is the sole owner of Galleria. Based upon these undisputed facts alone, Choudhri's request should be denied. Yet, assuming he even has some interest in the ownership chain of Galleria (which there is zero evidence in Choudhri's pleading, NBK would respectfully show that Galleria JV only maintains an equity interest in Galleria – it has no direct ownership in the Property. For example, the May 23, 2018, Galleria JV LLC Agreement (the "JV Agreement")[6] states, specifically, that its "sole purpose" is to "acquire, own, hold, and maintain equity interests in [Galleria]":

---

[6]   **Exhibit D**.

**Section 2.7.     Entity Covenants.** Capitalized terms used but not defined in this Section shall have the meanings defined in that certain Mezzanine Loan Agreement (the "**Loan Agreement**") between the Company and Naissance Galleria, LLC, a Cayman Islands limited liability company (the "**Lender**"), pursuant to which the Company will become indebted to the Lender in the amount of approximately $16,100,000 (the "**Loan**"). Borrower hereby represents and warrants to, and covenants with, Lender that since the date of its formation and at all times on and after the date hereof and until such time as the Obligations shall be paid and performed in full:

(a)     *Single Purpose of Borrower.* The sole purpose of Borrower is to (1) acquire, own, hold, and maintain equity interests in Mortgage Borrower (the "**Equity Interests**"); (2) serve as the borrower and perform its obligations under the Loan Documents in connection with the Loan; (3) serve as the sole member of Mortgage Borrower and deal with Mortgage Borrower to the extent permitted under the Loan Documents and the documents evidencing or securing the Mortgage Loan to Mortgage Borrower, and (4) subject to Section 2.7(b), to engage in any other business or activity that may be incidental, proper, advisable or convenient to accomplish the foregoing purposes (including, without limitation, obtaining financing therefor) and that is not forbidden by the law of any jurisdiction in which Borrower engages in that business.

(b)     *Single Purpose Entity/Separateness.* Until the Loan is paid in full, Borrower shall remain a Single

The JV Agreement further states that Galleria JV does not own "any asset" other than its

equity interest in Galleria:

(b)     *Single Purpose Entity/Separateness.* Until the Loan is paid in full, Borrower shall remain a Single Purpose Entity.   A "Single Purpose Entity" means a limited liability company which contains provisions in its organizational documents similar to the provisions set forth in this Section 2.7(b).   At all times since its formation and thereafter, Borrower:

    (i)     was, and will be, organized solely for the purpose of owning 100% of the direct or indirect Equity Interests;

    (ii)     has not, and will not, engage in any business unrelated to the ownership of 100% of the direct or indirect Equity Interests;

    (iii)     has not and will not own any asset or property other than 100% of the direct or indirect Equity Interests;

As stated above, Galleria JV is wholly owned by Naissance Capital Real Estate, LLC and

Galleria West Loop Investments II, LLC.  Yet, even if Choudhri could show that he personally has

some sort of equity interest in the chain of companies that owns Galleria – it would not be any

evidence or proof that Choudhri actually has direct ownership interest in Property. As such, he has

no basis to seek damages for irreparable injury to that Property. *See Forrest Prop. Mgmt., Inc. v. Forrest*, No. 10-09-00338-CV, 2010 WL 2869820, at *3 (Tex. App.—Waco July 21, 2010, no pet.) ("Clint's interest in the partnership is that of a limited partner in Forrest Cleburne Properties, L.P., and he has no direct ownership interest in the real property at all. Because Clint's interest is not an interest in real estate, we do not consider the evidence regarding the unique nature of that real estate to be evidence of an irreparable injury or of the existence of an inadequate remedy at law.")(emphasis added)(*citing N. Cypress Med. Ctr. Operating Co.,* 296 S.W.3d at 175 (limited partner's shares of the limited partnership not sufficient to constitute a unique interest in real estate.); *see also, e.g., Doerwald v. MBank Fort Worth, N.A.,* 740 S.W.2d 86, 90–91 (Tex.App.— Fort Worth 1987, no writ) (applicant failed to prove irreparable injury or inadequate remedy at law from foreclosure where applicant did not own equity interest in property).

On this basis alone, the Court should absolutely deny Choudhri's application for TRO.

**B.     Choudhri, Like Galleria, Has Never Pled A Basis For Injunctive Relief.**

"The decision whether to grant a preliminary injunction is within the discretion of the court, but it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden." *Lee v. Verizon Communications Inc.*, 3:12-CV-4834-D, 2012 WL 6089041, at *2 (N.D. Tex. Dec. 7, 2012) (quoting *John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, 861 F.Supp.2d 792, 794 (N.D. Tex. 2012) (citing *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985))).

As stated herein, Choudhri has no interest in the Property and therefore is limited to seeking only monetary damages. But Choudhri, just like Galleria, has also never pled any allegations or causes of action seeking anything but monetary damages. Choudhri has, instead, pled the following as his damages: "Intervenor-Plaintiff is presently seeking monetary relief over $1,000,000" (Relief

7

Sought); "Zaheer and NBK have interfered with Intervenor-Plaintiff's rights and interests as it pertains to the [Property]" (Count 1 – Fraud); "Intervenor-Plaintiff seeks to recover damages from the Defendant for such detrimental reliance in this suit") (Count 2 – Promissory Estoppel); and "Intervenor-Plaintiff's expectation were undermined by NBK's failure to deal fairly and in good faith during the initial negotiations that ultimately led to the execution of a confidential settlement agreement concerning the Property" (Count 3 – Equitable Estoppel).

In other words, the fact that the matter involves the foreclosure of real estate does not warrant injunctive relief when there is an adequate remedy at law. *See Sw. Sav. & Loan Ass'n v. Mullaney Const. Co., Inc.*, 771 S.W.2d 205, 207 (Tex. App.–El Paso 1989, no writ) ("Matters involving the foreclosure of real estate generally concern remedies of law. Equity can intervene, but only where there is an inadequate remedy of law established by the evidence, and the <u>mere fact that the subject matter is real estate does not satisfy this requirement</u>.") (emphasis added). Because Choudhri has an adequate remedy at law (nor has he even pled anything except money damages), an injunction is not warranted.

Moreover, all of Choudhri's allegations concern NBK's purported breach of the Settlement Agreement. As this Court knows, this issue is not new and has been the subject of the previous TROs this Court heard before deciding NBK could foreclose on the Property back on July 5, 2023. Indeed, Galleria's own counsel represented to the Court that it only ever needed more time to comply with the Settlement Agreement, and that if Galleria could not meet its obligations, NBK could "kick them out", stating specifically that:

> And the reason for the 60 to 90, that gives me the cover -- the ability to recover from the breach that occurred .... 60 to 90 days, that's it. **If you want to kick them out after that time, kick them out**.[7]

---

[7]    Exhibit C at 45:8-17.

## PRAYER

For the forgoing reasons, NBK prays that the Court deny Choudhri's TRO in its entirety. NBK also respectfully prays that this Court sanction Choudhri and dismiss his claims and award NBK its costs as well as reasonable and necessary attorney fees and grant it all other relief to which it is entitled.

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:   */s/ Charles Conrad*

Charles C. Conrad
State Bar No. 24040721
Elizabeth Klingensmith
State Bar No. 24046496
Ryan Steinbrunner
State Bar No. 24093201
Two Houston Center
909 Fannin, Suite 2000
Houston, Texas 77010-1018
Telephone: (713) 276-7600
Facsimile: (281) 276-7634
charles.conrad@pillsburylaw.com
liz.klingensmith@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

***Attorneys for National Bank of Kuwait, S.A.K.P., New York Branch***

## CERTIFICATE OF SERVICE

In accordance with Rule 21 of the Texas Rules of Civil Procedure, I certify that on this 4th day of December 2023, a true and correct copy of the foregoing document was served on all counsel of record through electronic service.

*/s/ Charles C. Conrad*
Charles C. Conrad

4875-4481-3973.v1

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 82229936
Filing Code Description: No Fee Documents
Filing Description: NBK Response to Ali Choudhri's Emergency
Application for Temporary Restraining Order
Status as of 12/5/2023 9:05 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 12/5/2023 8:51:26 AM | SENT |
| Jerry CAlexander | | alexanderj@passmanjones.com | 12/5/2023 8:51:26 AM | SENT |
| Ruth NVera | | verar@passmanjones.com | 12/5/2023 8:51:26 AM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 12/5/2023 8:51:26 AM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 12/5/2023 8:51:26 AM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 12/5/2023 8:51:26 AM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 12/5/2023 8:51:26 AM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 12/5/2023 8:51:26 AM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 12/5/2023 8:51:26 AM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 12/5/2023 8:51:26 AM | SENT |
| David Clark | | dclark@mccathernlaw.com | 12/5/2023 8:51:26 AM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 12/5/2023 8:51:26 AM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 12/5/2023 8:51:26 AM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 12/5/2023 8:51:26 AM | SENT |
| Clouthier Law | | info@clouthierlaw.com | 12/5/2023 8:51:26 AM | SENT |
| Gage Fender | | gage@clouthierlaw.com | 12/5/2023 8:51:26 AM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 12/5/2023 8:51:26 AM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/5/2023 8:51:26 AM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 12/5/2023 8:51:26 AM | SENT |
| Ali Choudhri | | ali@jetallcompanies.com | 12/5/2023 8:51:26 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

# EXHIBIT A

1               REPORTER'S RECORD
               VOLUME 1 OF 1 VOLUME
2
           TRIAL COURT CAUSE NO. 2023-22748
3

4                          )
   GALLERIA 2425 OWNER,    ) IN THE DISTRICT COURT
5  L.L.C.                  )
                           )
6  VS.                     ) OF HARRIS COUNTY, TEXAS
                           )
7  NATIONAL BANK OF KUWAIT,)
   S.A.K.P., NEW YORK BRANCH ) 281ST JUDICIAL DISTRICT
8

9

10

11          -------------------------------

12               MOTION HEARING

13          10:23 A.M. TO 2:54 P.M.

14          -------------------------------

15

16

17

18       On the 29th day of November, 2023, the following

19   proceedings came on to be heard in the above-entitled

20   and numbered cause before the Honorable Christine Weems,

21   Judge presiding, held in Houston, Harris County, Texas;

22       Proceedings reported by machine shorthand.

23

24           Kathleen Miller, CSR #739
              Official Court Reporter
25             Harris County, Texas


       Kathleen K. Miller, Official Court Reporter, CSR #739
        281st Judicial District Court, Harris County, Texas

```
 1                    I N D E X

 2              VOLUME 1 of 1 VOLUMES

 3                 (MOTION HEARING)

 4                                        Page Vol.
```

```
 5   Appearances...........................    3    1

 6   Proceedings...........................    5    1

 7

 8   Adjournment...........................  128    1

 9   Court Reporter's Certificate..........  128    1
```

```
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3        Mr. James Q. Pope
          State Bar No. 24048738
 4        The Pope Law Firm
          6161 Savoy Drive, Suite 1125
 5        Houston, Texas  77036
          Phone:  713-449-4481
 6        Email:  Jamesp@thepopelawfirm.com

 7        Mr. Matias Adrogué
          State Bar No. 24012192
 8        Matías J. Adrogué PLLC
          1629 W Alabama Street
 9        Houston, Texas 77006
          Phone: 713-425-7270
10        Email: Mja@mjalawyer.com

11        Ms. Jennifer L. MacGeorge
          State Bar No. 24093627
12        MacGeorge Law Firm, PLLC
          701 Tillery Street, Suite 12
13        Austin, TX 78702
          Phone:  512-215-4129
14        Email: Info@jlm-law.com

15        Mr. Jerry C. Alexander
          Passman & Jones
16        State Bar No. 00993500
          1201 Elm Street, Suite 2500
17        Dallas, Texas  75270
          Phone: 214-742-3579
18        Email: Alexanderj@passmanjones.com

19

20

21

22

23

24

25
```

02:44PM (lines 7, 8, 11)

```
 1   FOR THE DEFENDANT NATIONAL BANK OF KUWAIT, S.A.K.P., NEW
     YORK BRANCH:
 2
          Mr. Charles C. Conrad
 3        State Bar No. 24040721
          Ms. Elizabeth Klingensmith
 4        State Bar No. 24046496
          Mr. Ryan Steinbrunner
 5        State Bar No. 24093201
          Pillsbury Winthrop Shaw Pittman LLP
 6        Two Houston Center
          909 Fannin, Suite 2000
 7        Houston, Texas  77010-1018
          Phone:  713-276-7600
 8        Email:  Charles.conrad@pillsburylaw.com
                  Liz.klingensmith@pillsburylaw.com
 9                Ryan.steinbrunner@pillsburylaw.com

10

11   FOR THE DEFENDANT RODNEY DRINNON:

12        Mr. Rodney L. Drinnon
          State Bar No. 24047841
13        McCathern Houston
          2000 West Loop South, Suite 1850
14        Houston, Texas  77027
          Phone:  832-533-8689
15        Email:  Rdrinnon@mccathernlaw.com

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 10:23AM | 1 | P R O C E E D I N G S |
| 10:23AM | 2 | THE COURT:  Go on the record.  2023-22748, |
| 10:23AM | 3 | *Galleria 2425 Owner, LLC v. National Bank of Kuwait.* |
| 10:23AM | 4 | Counsel, please make your appearances for |
| 10:23AM | 5 | the record. |
| 10:23AM | 6 | MR. ADROGUÉ:  Matias Adrogué representing |
| 10:23AM | 7 | plaintiffs, along with several cocounsel. |
| 10:23AM | 8 | MR. CHOUDHRI:  Ali Choudhri. |
| 10:23AM | 9 | MS. MACGEORGE:  Jennifer MacGeorge. |
| 10:23AM | 10 | MR. POPE:  James Pope, P-O-P-E, and Jerry |
| 10:23AM | 11 | Alexander, who has stepped out of the room. |
| 10:24AM | 12 | THE COURT:  Okay. |
| 10:24AM | 13 | MR. CONRAD:  And Charles Conrad, Ryan |
| 10:24AM | 14 | Steinbrunner, and Liz Klingensmith for National Bank of |
| 10:24AM | 15 | Kuwait. |
| 10:24AM | 16 | MR. DRINNON:  Rodney Drinnon, McCathern |
| 10:24AM | 17 | Houston, on behalf of Rodney Drinnon. |
| 10:24AM | 18 | Judge, just to be clear, did Mr. Choudhri |
| 10:24AM | 19 | appear for himself? |
| 10:24AM | 20 | THE COURT:  I -- well, Mr. Choudhri |
| 10:24AM | 21 | individually is not a party. |
| 10:24AM | 22 | MR. DRINNON:  He just became a party about |
| 10:24AM | 23 | 20 minutes ago. |
| 10:24AM | 24 | THE COURT:  Did I miss something? |
| 10:24AM | 25 | MR. DRINNON:  Apparently. |

10:24AM 1          THE COURT:  Great.

10:24AM 2          MR. DRINNON:  Just want to make sure he is

10:24AM 3  a party.

10:24AM 4          THE COURT:  Well, that I don't have.  What

10:24AM 5  was filed?

10:24AM 6          MR. DRINNON:  Mr. Choudhri.

10:24AM 7          THE COURT:  You can approach, Mr. Choudhri,

10:24AM 8  because I do see that there were some things that were

10:24AM 9  filed this morning like the response.  I haven't gotten

10:24AM 10  to look at it yet.  I literally just saw it.

10:24AM 11         All right.  Have a seat, sir.  Give me a

10:24AM 12  few moments to look at this.  So --

10:25AM 13         MR. CHOUDHRI:  Your Honor, I did want to

10:25AM 14  mention what was filed is slightly different than what I

10:25AM 15  handed you, because I brought an older copy.

10:25AM 16         THE COURT:  Okay.

10:25AM 17         MR. CHOUDHRI:  So I am -- I should have a

10:25AM 18  printout in a few minutes for the current copy.

10:25AM 19         THE COURT:  Let me just check to see.  Have

10:25AM 20  you seen this?  It's a petition in intervention, Bonnie.

10:25AM 21  Yeah, I was talking to you.  You didn't realize.

10:25AM 22         THE CLERK:  Yes, ma'am.

10:25AM 23         THE COURT:  Has that been accepted because

10:25AM 24  I don't see it?

10:25AM 25         THE CLERK:  Everything for this case has

10:25AM 1   been accepted.  I will take a look.

10:25AM 2              THE COURT:  Give us a second to take a

10:25AM 3   look.

10:26AM 4              Well, let me ask you this, Mr. Choudhri,

10:26AM 5   because based on your petition in intervention, it seems

10:26AM 6   like you are only intervening for the fraud cause of

10:26AM 7   action against Azeemeh Zaheer only; is that right?

10:26AM 8              MR. CHOUDHRI:  And the Bank of Kuwait for

10:26AM 9   interference.  That's what my --

10:26AM 10             THE COURT:  Okay.  That's all I saw on

10:26AM 11  there.

10:26AM 12             MR. CHOUDHRI:  Correct, ma'am.

10:26AM 13             THE COURT:  So that is what the new

10:26AM 14  version --

10:26AM 15             MR. CONRAD:  It is not on the new version

10:26AM 16  either, on the filed copy.

10:26AM 17             THE COURT:  Okay.  Well, let me see when I

10:26AM 18  get it.

10:26AM 19             THE CLERK:  I don't have it.

10:26AM 20             MR. CONRAD:  You only listed one defendant.

10:26AM 21             (Discussion off the record.)

10:26AM 22             THE COURT:  That, I, unfortunately, still

10:26AM 23  don't have yet, because what I am looking at literally

10:26AM 24  lists two parties for you, which is -- well, three,

10:26AM 25  Galleria 2425 intervenor plaintiff; Ali Choudhri, so

10:27AM 1   you; and then the Defendant Azeemeh Zaheer.  That is it

10:27AM 2   that is on this version.  I don't have a version that

10:27AM 3   lists the National Bank of Kuwait as a party to your

10:27AM 4   intervention.

10:27AM 5           MR. CHOUDHRI:  I believe they're a party in

10:27AM 6   the case.

10:27AM 7           THE COURT:  They are a party in the case,

10:27AM 8   but it doesn't appear that you made any allegations

10:27AM 9   against National Bank of Kuwait in your intervention.

10:27AM 10  So just because they're a party in your case doesn't

10:27AM 11  mean they are a party to your claim, and that is what

10:27AM 12  I'm trying to figure out.

10:27AM 13          MR. CHOUDHRI:  May I e-mail this, Your

10:27AM 14  Honor, to --

10:27AM 15          THE COURT:  E-mail it directly to the

10:27AM 16  clerk.  Make sure you CC all of the parties involved,

10:27AM 17  Mr. Choudhri.

10:27AM 18          MR. CHOUDHRI:  Yes, ma'am.

10:27AM 19          MR. DRINNON:  It has to be filed correctly,

10:27AM 20  too, Judge.

10:27AM 21          THE COURT:  It has got to be filed.  Yeah.

10:27AM 22          MR. CHOUDHRI:  This is the filed.

10:27AM 23          MR. DRINNON:  I just want to make sure.

10:27AM 24  There's a little bit of forum shopping is going on

10:27AM 25  actually.

10:27AM   1              THE REPORTER:  I can't hear you.

10:27AM   2              MR. ADROGUÉ:  Counsel, we're here for

10:27AM   3   something else.  I don't know why you want to --

10:27AM   4              MR. DRINNON:  Because I want to make sure

10:27AM   5   that I know exactly where the parties are with this,

10:28AM   6   because when I filed my counterclaims and the

10:28AM   7   third-party claims, I want to make sure I know exactly

10:28AM   8   who the parties are.

10:28AM   9              MR. ADROGUÉ:  That is fine.

10:28AM  10              MR. DRINNON:  That is not --

10:28AM  11              MR. ADROGUÉ:  He --

10:28AM  12              THE REPORTER:  I cannot take you both.

10:28AM  13              THE COURT:  Hold on, everybody.  One at a

10:28AM  14   time.  Slow down.  Mr. Drinnon, speak up.

10:28AM  15              MR. DRINNON:  Yeah.  So I don't know why I

10:28AM  16   got interrupted.  My issue, Judge, is I think there has

10:28AM  17   been forum shopping that has been going on.

10:28AM  18              Yesterday they filed, apparently, another

10:28AM  19   action in the Naissance case against the National Bank

10:28AM  20   of Kuwait.  It has been my understanding.  So what I

10:28AM  21   think they want to try to do is pit you against Judge

10:28AM  22   Moran downstairs.

10:28AM  23              THE COURT:  Judge -- which Judge?

10:28AM  24              MR. DRINNON:  Judge --

10:28AM  25              MR. CONRAD:  It's the 80th.

10:28AM 1              MR. ADROGUÉ:  Judge Manor.

10:28AM 2              THE COURT:  Judge Manor.  I was going to

10:28AM 3    say, I didn't know who you were talking about for a

10:28AM 4    second there.

10:28AM 5              MR. DRINNON:  Sorry.  I have another Judge

10:28AM 6    Moran in the federal.

10:28AM 7              And so, I just wanted to point that out.  I

10:28AM 8    thought that was kind of a unique thing today.  And

10:28AM 9    then, I haven't received any type of response to my

10:29AM 10   current motion.  Now, apparently they're filing things

10:29AM 11   last ten seconds here, so I am betting there is

10:29AM 12   something there that I haven't seen.

10:29AM 13             THE COURT:  So, yeah, apparently, they

10:29AM 14   filed a response to your motion today at, like, 8:00.

10:29AM 15             MR. DRINNON:  Yeah.  Do you have a hard

10:29AM 16   copy of that, Judge, so I can take a look at?

10:29AM 17             THE COURT:  I just got it electronically.

10:29AM 18   It literally just popped up this morning.

10:29AM 19             MR. ADROGUÉ:  May I respond to those

10:29AM 20   allegations, Your Honor?

10:29AM 21             THE COURT:  Well, first off, let's talk

10:29AM 22   about, whether or not -- so the thing that you filed

10:29AM 23   this morning --

10:29AM 24             MR. ADROGUÉ:  The response to his motion

10:29AM 25   for emergency discovery?

10:29AM   1              THE COURT:  Yeah.

10:29AM   2              MR. ADROGUÉ:  The first thing I want to

10:29AM   3   point out, Your Honor, is that last Wednesday before

10:29AM   4   Thanksgiving -- excuse me, Counsel.

10:29AM   5              MR. DRINNON:  Do we have the motion or not?

10:29AM   6              MR. ADROGUÉ:  Last week before

10:29AM   7   Thanksgiving, you ordered him to give us proper notice,

10:29AM   8   which is five days' notice of -- that this hearing was

10:30AM   9   actually going to go forward this morning.

10:30AM  10              Yesterday, late afternoon, right after 5:00

10:30AM  11   p.m., Mr. Drinnon gave us a notice of hearing that he

10:30AM  12   intended to still go forward on his motion for emergency

10:30AM  13   discovery this morning.

10:30AM  14              So, this morning we didn't think this

10:30AM  15   hearing was going to go forward.  This morning, we filed

10:30AM  16   our response in opposition to his request for discovery,

10:30AM  17   and we listed numerous issues that we had brought up on

10:30AM  18   Wednesday, but we're ready to argue here today.

10:30AM  19   That's -- that's that issue.

10:30AM  20              The other issue is, Your Honor, the

10:30AM  21   allegations that we are forum shopping, what counsel is

10:30AM  22   not telling you is that we had another hearing in front

10:30AM  23   of Judge Manor on Monday -- we do have a transcript of

10:30AM  24   that -- and we were talking to the Judge to try to

10:30AM  25   figure out because we felt her TI hearing sort of

10:31AM 1   hogtied us, because her clients -- their client is in

10:31AM 2   Europe, and we can't do anything without --

10:31AM 3                    THE COURT:  You said which client -- who

10:31AM 4   are you referring to?

10:31AM 5                    MR. ADROGUÉ:  Azeemeh.  Azeemeh is in

10:31AM 6   Europe, and the TI hearing says he can't do anything

10:31AM 7   without confirming with Azeemeh.  She is in Europe.  So

10:31AM 8   I told Judge Manor, and all this is on the record,

10:31AM 9   Judge, we're sort of at a standstill, what can we do,

10:31AM 10  what can he do with Naissance Galleria?

10:31AM 11                   And Judge Manor said, In this court, you

10:31AM 12  can act for him and he can act.  So based on that, we

10:31AM 13  did this -- this morning -- this morning --

10:31AM 14                   THE COURT:  Wait.  You said "in this

10:31AM 15  court," are you referring to this --

10:31AM 16                   MR. ADROGUÉ:  In Manor's court, yes.

10:31AM 17  Because we were afraid we were going to be violating

10:31AM 18  their order in other courts.  And so this morning, we

10:31AM 19  filed a second amended petition in Naissance Galleria

10:31AM 20  court in Manor's court, adding the Bank of Kuwait.

10:32AM 21                   THE COURT:  But isn't there already a

10:32AM 22  Naissance versus Bank of Kuwait case?

10:32AM 23                   MR. DRINNON:  Uh-huh.

10:32AM 24                   THE COURT:  That's in the 129th?

10:32AM 25                   MR. ADROGUÉ:  Not by us.  We didn't file

10:32AM 1    that.  And that's the other thing, Your Honor, we didn't

10:32AM 2    file, "we" being these lawyers didn't file --

10:32AM 3                    THE COURT:  Right.  So why didn't you just

10:32AM 4    intervene in that case that already exists?

10:32AM 5                    MR. ADROGUÉ:  Because we're not allowed to,

10:32AM 6    because we can't do anything without Azeemeh, who is in

10:32AM 7    Europe, in other courts.  She just --

10:32AM 8                    THE COURT:  You literally just said that

10:32AM 9    you have permission.

10:32AM 10                   MR. ADROGUÉ:  To work in that court, Your

10:32AM 11   Honor.  We have a transcript of it.  I understand it is

10:32AM 12   confusing, but the issue is -- frankly, the issue has

10:32AM 13   been Tang and this gentleman, Drinnon, they have filed

10:32AM 14   three lawsuits representing Naissance Galleria when they

10:32AM 15   never had permission to.  They think they do, but they

10:32AM 16   don't.  And so that is why on Monday in front of Judge

10:32AM 17   Manor I was saying, Judge, tell us what we can and can't

10:32AM 18   do.

10:32AM 19                   And Judge Manor said:  In this court, you

10:32AM 20   represent Naissance Galleria.  You can act on their

10:32AM 21   behalf.  So that's why in Manor's court, we added the

10:33AM 22   bank to try to prevent the foreclosure again.

10:33AM 23                   I don't think I can file an intervention in

10:33AM 24   the 127th, Your Honor --

10:33AM 25                   THE COURT:  Is it 127th or 129th?

10:33AM  1             MR. ADROGUÉ:   29th, I'm sorry, 129th.

10:33AM  2             -- because Drinnon and Tang are, right now,

10:33AM  3  attorney of record for Naissance Galleria in the 129th

10:33AM  4  and in the 157th.  But, my client has never hired them

10:33AM  5  to file those lawsuits in the 129th and 157th.  So we

10:33AM  6  have we're in front you in this court properly with the

10:33AM  7  lawyers that he wants, and then we're in Judge Manor's

10:33AM  8  court, sorry, for Naissance Galleria, with the lawyers

10:33AM  9  he wants.

10:33AM  10            And we added them to the -- to the lawsuit

10:33AM  11  because, frankly, as you know, we are doing everything

10:33AM  12  we can to prevent the foreclosure, and that's what we

10:33AM  13  do.  It is not forum shopping, because Naissance

10:33AM  14  Galleria has its own claim against the bank as set forth

10:34AM  15  in our petition.

10:34AM  16            Moreover, it doesn't affect Drinnon or his

10:34AM  17  client at all, and I don't know why Drinnon keeps

10:34AM  18  wanting to -- I feel like tattletaling all the judges on

10:34AM  19  what is going on in every other court with regards to

10:34AM  20  what we're doing.

10:34AM  21            We did this morning at, like, I guess,

10:34AM  22  10:00 a.m., send a second amended petition, added them.

10:34AM  23  But that's not before you.  It's a temporary restraining

10:34AM  24  order we may try to get, if we need to get, depending

10:34AM  25  what happens here, Your Honor, for the different entity

10:34AM 1  of Naissance Galleria.

10:34AM 2             Is there something comical that I should be

10:34AM 3  aware of?

10:34AM 4             MR. DRINNON:  Yeah.  Because, one, my name

10:34AM 5  is Mr. Drinnon.  And two, Judge, I prefer to be referred

10:34AM 6  to as Mr. Drinnon not Drinnon and Tang.  And the other

10:34AM 7  part of it, Judge, is that why we have to quote/unquote

10:34AM 8  tattle on them is because they're taking actions that

10:34AM 9  are directly against what several other judges have

10:34AM 10 talked about.

10:34AM 11            I am only here today with a motion to get

10:34AM 12 the discovery so I can get the -- the actual facts of

10:35AM 13 what they claimed against me as an individual defendant,

10:35AM 14 because they like to sue lawyers.

10:35AM 15            So my issue here today, Judge, is that they

10:35AM 16 can play fast and loose with whatever they want, and you

10:35AM 17 brought up -- you actually asked the penultimate

10:35AM 18 question in this case:  Do you have a court order that

10:35AM 19 specifically says that Azeemeh Zaheer cannot act on

10:35AM 20 behalf of Naissance, LLC?  And they couldn't produce it.

10:35AM 21            So -- and they have brought up the same

10:35AM 22 issue last time downstairs, and Judge Manor specifically

10:35AM 23 said the same thing.  We are going to set a TI hearing

10:35AM 24 for December 6th, which is what we're doing, to figure

10:35AM 25 that out.

10:35AM 1           Now, today, Judge, you gave -- you were the

10:35AM 2 one that set the hearing.  Everyone was here.  They all

10:35AM 3 knew it was at 10:00.  We had to adjust the time and

10:35AM 4 everything else.  I sent a notice just to be careful,

10:35AM 5 because I was concerned that they would try to pull some

10:35AM 6 shenanigans.  They did.  That's okay.

10:35AM 7           I am here to argue this motion today,

10:35AM 8 Judge, about judgment or discovery under the TCPA, for

10:35AM 9 the corporate representative of 2425 Galleria, and for

10:36AM 10 Ali Choudhri individually as well, because he signed the

10:36AM 11 actual verification on the complaint where they sued me.

10:36AM 12           Mr. Adrogué tried to claim that they

10:36AM 13 accidentally sued me.  It was a mistake.  Except that he

10:36AM 14 doesn't recall the telephone calls that I had with

10:36AM 15 Mr. Pope, nor does he recall the 19 times that my name

10:36AM 16 is mentioned in the pleading.  So the whole point of it,

10:36AM 17 Judge, is that all I want to do today, is I want to get

10:36AM 18 some depositions really quickly so that I can get --

10:36AM 19 lock down Mr. Choudhri's testimony, because he tends to

10:36AM 20 lie under oath, and --

10:36AM 21           THE COURT:  Well, let's -- let's not be

10:36AM 22 slinging around that.

10:36AM 23           MR. DRINNON:  Well, no, I -- Judge, I can

10:36AM 24 prove it.  That would be the thing.  If I -- in fact,

10:36AM 25 there has been a court adjudication now twice that he

10:36AM  1   has defrauded in an HREP case, which is 2013 -- I can

10:36AM  2   give you the cite with regards to the jury find --

10:36AM  3                   MR. ADROGUÉ:  I object to the relevance of

10:36AM  4   counsel -- and he does this in every courtroom.

10:36AM  5                   THE COURT:  Regardless of whether or not

10:36AM  6   you need his testimony under oath is a separate issue as

10:36AM  7   to whether or not what his previous testimony in other

10:36AM  8   cases has been.  So let's stick to the issues, because,

10:37AM  9   ultimately, I agree with you to the extent that you

10:37AM 10   can't escape an anti-SLAPP motion just by dismissing

10:37AM 11   them.

10:37AM 12                   So even though you're -- the allegation is

10:37AM 13   that you dismissed Mr. Drinnon from the lawsuit, he had

10:37AM 14   filed his anti-SLAPP motion before you have done the

10:37AM 15   dismissal.  I mean, the law is what it is.  The

10:37AM 16   anti-SLAPP survives.  Just because you dismissed him

10:37AM 17   doesn't get you -- doesn't mean that he can't pursue it.

10:37AM 18                   MR. ADROGUÉ:  Can I respond to that?

10:37AM 19                   THE COURT:  You may.

10:37AM 20                   MR. ADROGUÉ:  It's -- back up.  First of

10:37AM 21   all, as you know, Naissance Galleria is in the other

10:37AM 22   court, and Galleria Owner is in this court, so I

10:37AM 23   misspoke something a moment ago.

10:37AM 24                   But with regards to his motion, if you are

10:37AM 25   going to allow that -- you are ordering him to give us

10:37AM 1   notice as proper notice, then let me argue that.  We

10:37AM 2   filed a response, and in that response, there is a

10:37AM 3   couple of things that are important.

10:37AM 4            The -- the petition did accidentally name

10:37AM 5   them in the party as -- as parties, as defendants.

10:38AM 6            MR. DRINNON:  Can I get --

10:38AM 7            MR. ADROGUÉ:  Allow me to speak, Counsel.

10:38AM 8            MR. DRINNON:  Can I get a copy of --

10:38AM 9            THE COURT:  Hold on.  Just please let --

10:38AM 10  you will get your opportunity to speak, Mr. Drinnon.  I

10:38AM 11  am going to let Mr. Adrogué speak.  You had your

10:38AM 12  opportunity, Mr. Drinnon.  Mr. Adrogué is going to have

10:38AM 13  an opportunity.

10:38AM 14           MR. DRINNON:  I think the speaking is fine,

10:38AM 15  Judge.  I just want to get a copy so I can see what they

10:38AM 16  are saying.

10:38AM 17           MR. ADROGUÉ:  So around 8:00 p.m. on the

10:38AM 18  14th, they were added in the party section of the

10:38AM 19  petition, and that is it.

10:38AM 20           THE COURT:  Do you have a copy of the

10:38AM 21  response that you filed?

10:38AM 22           MR. ADROGUÉ:  Do we have a hard copy?

10:38AM 23           MS. MACGEORGE:  Not printed, Your Honor.

10:38AM 24  It was filed just before we came here.

10:38AM 25           THE COURT:  Because it looks like it was

10:38AM  1   filed at 8:41 a.m.  That is the time stamp on it.

10:38AM  2                   MR. ADROGUÉ:  Yes, because we didn't know

10:38AM  3   the hearing was going to go forward but we can --

10:38AM  4                   THE COURT:  Well, at that point, you did,

10:38AM  5   because the notice of hearing went out yesterday.

10:38AM  6                   MR. ADROGUÉ:  We weren't sure if you were

10:38AM  7   going to accept it.  I guess you accepted it.

10:38AM  8                   THE COURT:  I didn't accept anything.

10:38AM  9   That's what the clerks do.

10:38AM  10                   MR. ADROGUÉ:  I'm sorry.

10:38AM  11                   THE COURT:  So it is here.  Did you --

10:38AM  12   because I don't have a laptop in front of me, so can

10:38AM  13   someone provide a laptop and show him the motion and the

10:39AM  14   response?

10:39AM  15                   MR. DRINNON:  I have got a laptop if you

10:39AM  16   give me time, Your Honor.

10:39AM  17                   MR. ADROGUÉ:  He can log into the system.

10:39AM  18   He does it every time in Manor's court, and I can --

10:39AM  19                   THE COURT:  It doesn't matter.  As long as

10:39AM  20   he can see it.  You don't have a hard copy.  You can

10:39AM  21   pull it up, fine.

10:39AM  22                   MR. ADROGUÉ:  Do you want me to continue or

10:39AM  23   should I wait, Your Honor?

10:39AM  24                   THE COURT:  Wait a second.

10:39AM  25                   MR. ADROGUÉ:  Yes, Your Honor.

10:40AM  1          MR. POPE:  Your Honor, if I may, I have a

10:40AM  2   hard copy of the response.

10:40AM  3          THE COURT:  Okay.  Great.  Give it to Mr.

10:40AM  4   Drinnon.  That would be wonderful.

10:40AM  5          MR. POPE:  Would Your Honor also like a

10:40AM  6   copy?

10:40AM  7          THE COURT:  No, I have got it.  I can pull

10:40AM  8   it up, but it just came up this morning.

10:41AM  9          I am going to -- please sit down for a

10:41AM  10  moment, Mr. Adrogué.  I am going to give Mr. Drinnon a

10:41AM  11  moment to look at that.

10:41AM  12          While I am doing that, I'm going to take up

10:41AM  13  a couple other things on my 10:00 docket because I want

10:41AM  14  them to have an opportunity to review it since it was

10:41AM  15  just filed.

10:42AM  16  (Proceedings recessed from 10:42 to 11:29.)

11:29AM  17          THE COURT:  All right.  Let us continue,

11:33AM  18  then.  Let's go on the record.

11:33AM  19          We are back on the record after a longer

11:33AM  20  break than intended, but I cleared everybody else out of

11:33AM  21  the way so that nobody else would wait.  That being

11:33AM  22  said, that means the rest of the day is for y'all.

11:34AM  23  Let's talk about whatever we need to talk about.

11:34AM  24          So, I don't see the petition in

11:34AM  25  intervention here.  You have had an opportunity to look

11:34AM 1    at their response; is that right, Mr. Drinnon?

11:34AM 2                    MR. DRINNON:  I have.  Thank you, Your

11:34AM 3    Honor.

11:34AM 4                    THE COURT:  Okay.  Great.  Then, the --

11:34AM 5                    MR. DRINNON:  So do I start with my motion

11:34AM 6    then, Judge?

11:34AM 7                    THE COURT:  Yes, you start with your

11:34AM 8    motion.  Have a seat, Mr. Adrogué.

11:34AM 9                    MR. DRINNON:  Your Honor, so I am here

11:34AM 10   before you today in my own capacity after filing a TCPA

11:34AM 11   motion with regard to a complaint that was filed against

11:34AM 12   me -- or petition that was filed against me last week or

11:34AM 13   week before last.

11:34AM 14                    Just to go over a little of the facts very

11:34AM 15   quickly, just very quickly, so you understand why I am

11:34AM 16   here today, is that I represent Azeemeh Zaheer in other

11:34AM 17   cases with regard to -- and I am not appearing for her

11:34AM 18   in this case currently.  I want to be very clear with

11:34AM 19   that today.

11:34AM 20                    THE COURT:  Right.  You are here solely in

11:34AM 21   your own capacity.

11:34AM 22                    MR. DRINNON:  I am here solely in my own

11:34AM 23   capacity.  We were in another hearing, and then one of

11:34AM 24   Mr. Choudhri's --

11:35AM 25                    THE COURT:  I just realized like Mr. Pope

11:35AM 1    is not here, and Mr. Choudhri is not here.

11:35AM 2                    MR. DRINNON:  Yeah.  Good point.

11:35AM 3                    (Brief pause.)

11:35AM 4                    THE COURT:  And still missing Mr. Pope.

11:35AM 5                    MR. ADROGUÉ:  I think, Your Honor, he is

11:35AM 6    downstairs in the clerk's office dealing with the

11:35AM 7    intervention.

11:35AM 8                    THE COURT:  Are you okay to proceed?

11:35AM 9                    MR. ADROGUÉ:  On this matter, yes.  Yes, we

11:35AM 10   are.

11:35AM 11                   THE COURT:  Right.  Because y'all are kind

11:35AM 12   of handling --

11:35AM 13                   MR. ADROGUÉ:  Yes, Your Honor.

11:35AM 14                   THE COURT:  All right.  Great.

11:35AM 15                   Mr. Drinnon, I apologize.

11:35AM 16                   MR. DRINNON:  No apology necessary, Judge.

11:35AM 17           On October 11th of 2023, I was contacted by

11:35AM 18   Ms. Zaheer about appearing for her in a case captioned

11:35AM 19   *Naissance Galleria v. Azeemeh Zaheer*, 2023-43755,

11:36AM 20   pending in the 80th District Court.  Going with that,

11:36AM 21   and I appeared in counsel, I think, in that case, then,

11:36AM 22   with Mr. Tang, and with Mr. Khawaja, Omar Khawaja.

11:36AM 23           Prior to the 11th of October, I was not

11:36AM 24   involved in any of the present disputes with regard to

11:36AM 25   Galleria 2425, or any of the other parties in this case,

11:36AM 1    or in the case down in the 80th.

11:36AM 2              I agreed to go ahead and appear on behalf

11:36AM 3    of Ms. Zaheer, and I also agreed to appear in the United

11:36AM 4    States Bankruptcy Court also on behalf Ms. Zaheer, who

11:36AM 5    had requested me to make appearance for Naissance, LLC.

11:36AM 6    I made my first appearance on October 12th, so you are

11:36AM 7    talking about a little bit less than a month ago, or

11:36AM 8    little bit more than a month ago in the bankruptcy case.

11:36AM 9              I participated in an expedited remote

11:36AM 10   status conference in front of Judge Lopez, but prior to

11:37AM 11   that, I wasn't involved in any other proceedings in the

11:37AM 12   bankruptcy court.

11:37AM 13             And then we -- I was not involved in the

11:37AM 14   filing of National Bank of Kuwait's October 6th letter,

11:37AM 15   so I don't have anything to do with that with regard to

11:37AM 16   those issues.  On October 31st with the assistance of

11:37AM 17   bankruptcy counsel, a man by the name Aaron Power, we

11:37AM 18   filed, basically, a motion for leave to the Court to go

11:37AM 19   ahead and to lift the stay following the order that you

11:37AM 20   saw in the TI from downstairs in the 80th District

11:37AM 21   Court.

11:37AM 22             We believe we have a good faith basis to do

11:37AM 23   that.  It was done in the capacity -- all of these

11:37AM 24   things were done in the capacity as the lawyer for

11:37AM 25   either Ms. Azeemeh Zaheer, who was acting, and we

11:37AM  1  believe is the direct manager and member of Naissance,

11:37AM  2  LLC.  So we did -- everything was in my capacity with

11:37AM  3  regard to those issues.

11:37AM  4          For some reason, at a hearing later, I

11:37AM  5  was -- I appeared at, nor was our motion set for hearing

11:38AM  6  in front of the bankruptcy court, Judge Lopez, in his

11:38AM  7  infinite wisdom, decided to go ahead and dismiss the

11:38AM  8  bankruptcy that was for other reasons other than, I

11:38AM  9  believe, our motion.  I didn't attend the hearing, but

11:38AM  10 then it was actually on a motion to employ Ms. Hayward.

11:38AM  11         On November 13th, I appeared in the state

11:38AM  12 court case following the receipt of a late notice of --

11:38AM  13         THE COURT:  When you say "state court," I

11:38AM  14 am going to keep asking you to specify which state court

11:38AM  15 case you are talking about, because, clearly, there are

11:38AM  16 several of them.

11:38AM  17         MR. DRINNON:  Right.  In this one, which is

11:38AM  18 the key here, going forward.  And I'll be blunt with

11:38AM  19 you, sorry, it's Judge Manor's.

11:38AM  20         THE COURT:  Yeah, that is not here.

11:38AM  21         MR. DRINNON:  So she terminated the hearing

11:38AM  22 because the plaintiff's counsel had properly failed to

11:38AM  23 serve Ms. Zaheer, and during -- in an anteroom,

11:38AM  24 Ms. Hayward says threatened to file suit against

11:38AM  25 Drinnon, individually, and in his capacity despite me

11:38AM 1   and my -- enacting my -- just for my client.

11:39AM 2              On November 14th, we knew it was coming.

11:39AM 3   So at that point she foreshadowed what was about to

11:39AM 4   happen.  On November 14th, Mr. Pope followed through on

11:39AM 5   Hayward's threat and filed the amended petition, in this

11:39AM 6   case, and then added me as a party and also added

11:39AM 7   Mr. Tang as a party, while asserting four previously

11:39AM 8   identified claims and causes of action against me.

11:39AM 9              On November 15th, I ended up obtaining a

11:39AM 10  copy because we were watching.  We knew that -- what

11:39AM 11  Mr. Choudhri tends to like -- I will say this before --

11:39AM 12  he has sued lawyers in the past.  There is a case that I

11:39AM 13  can cite for you, which is *Jetall Companies, Inc. v.*

11:39AM 14  *Johnson*, it is 2020 West -- or WL 6435778.  It's here

11:39AM 15  pending.  There was a court of appeals decision, Mike

11:39AM 16  Ballasses was sued by Mr. Choudhri and then

11:40AM 17  Mr. Ballasses filed almost the virtually identical suit

11:40AM 18  to -- in order to get dismissed out of the case,

11:40AM 19  according to, obviously, the statute.  He was successful

11:40AM 20  under the TCPA.  He received attorneys' fees and

11:40AM 21  expenses.

11:40AM 22              So you would think that they would know, at

11:40AM 23  least one would know, that you shouldn't sue lawyers for

11:40AM 24  doing their job.  But apparently, they haven't learned

11:40AM 25  their lesson.

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

11:40AM 1          So here is where it gets interesting.  So I
11:40AM 2  obtained a copy of it on November 15th.  I called
11:40AM 3  Mr. Pope immediately, who was the only signatory on the
11:40AM 4  petition.  I asked him to dismiss me immediately.  Say,
11:40AM 5  Look, it's a TCPA violation.  What are you doing?
11:40AM 6          And he said, I can't right now.  I'll give
11:40AM 7  you a call in the morning.  I said, You have until 10:00
11:40AM 8  a.m. the following morning to dismiss me with prejudice.
11:40AM 9  And he said, Okay.  I'll get back to you.  I'll get back
11:40AM 10 to you.
11:40AM 11         We have witnesses.  I have entire group of
11:40AM 12 us.  We don't tape record conversations between
11:40AM 13 attorneys, but we had more than one attorney in the
11:41AM 14 room.
11:41AM 15         On November 15th, I called him again, and
11:41AM 16 confirmed that he had signed the amended petition.  I
11:41AM 17 asked him to reconsider, and he said he would get back
11:41AM 18 to me.
11:41AM 19         On November 16th, I contacted Mr. Pope --
11:41AM 20 actually, I contacted Mr. Pope.  Mr. Pope called me on
11:41AM 21 11/15.  He confirmed that he would not reconsider adding
11:41AM 22 me as a -- as a defendant.  He said that he, quote, I
11:41AM 23 stand by filing it, in reference to the amended
11:41AM 24 petition.  And clearly, he was not willing to dismiss me
11:41AM 25 with prejudice, which is the outcome under the TCPA.  In

11:41AM 1   other words, that is the -- the remedy that I get under

11:41AM 2   the TCPA.

11:41AM 3                  And so I was like, All right.  So we went

11:41AM 4   ahead.  We worked through the night.  We had also

11:41AM 5   notified -- there are two instances -- so with regards

11:41AM 6   to certain issues, we believe we have to notify our

11:41AM 7   carrier with regard to being sued for $50 million, which

11:41AM 8   is what he sued me for, which is a little bit more than

11:42AM 9   my net worth, Judge, just to be honest with you, so we

11:42AM 10  were a little concerned, and so we went ahead and we

11:42AM 11  filed our TCPA motion.

11:42AM 12                  However, I -- we were just going to go

11:42AM 13  ahead and, kind of, working through any of this, and

11:42AM 14  Mr. Pope e-mails me, basically, at about three -- I said

11:42AM 15  2:35, and he said -- we actually called the Court at

11:42AM 16  2:00, got a date from the clerk, saying, I asked for a

11:42AM 17  date of more than 21 but less than 60 days to get a

11:42AM 18  hearing on my TCPA motion.  She provided me -- was kind

11:42AM 19  enough to provide me with December 12th.  I accepted

11:42AM 20  that.  And then I sent the notice of the filing of our

11:42AM 21  TCPA motion, haven't yet filed it, Judge, but I sent the

11:42AM 22  notice to opposing counsel at 2:00.

11:42AM 23                  So at 3:43 p.m., or sorry, 35 minutes

11:43AM 24  later, I received an e-mail from Mr. Pope saying I am

11:43AM 25  amending the petition in this case to remove you both as

11:43AM 1    named Defendants.  He did not, however, indicate that he

11:43AM 2    was going to remove me with prejudice, which is what I

11:43AM 3    insisted that he do.  So he didn't do that.

11:43AM 4              Eight minutes later, I went ahead and filed

11:43AM 5    my TCPA motion that we had already lined up to be filed

11:43AM 6    anyway.  It was filed at 3:43 on November 16th, and I

11:43AM 7    acted in my legal capacity.  In all of these instances,

11:43AM 8    I never acted in my personal capacity, but now I'm

11:43AM 9    representing -- in my legal a capacity, actually,

11:43AM 10   representing myself.

11:43AM 11             At 5:08, so it was long after, Galleria

11:43AM 12   2425 filed its second amended petition, an emergency

11:43AM 13   application for temporary restraining order, purportedly

11:43AM 14   removing me as a defendant.  The second amended

11:43AM 15   petition, however, did not dismiss me with prejudice

11:43AM 16   pursuant to the CPRC, which is what I insisted on.

11:43AM 17             At 6:10 p.m. -- this is the most important

11:43AM 18   part, Judge -- as 6:10, Galleria 2425 filed the unsworn

11:44AM 19   declaration of Ali Choudhri, and we call it the Choudhri

11:44AM 20   declaration, where he declared under penalty of perjury

11:44AM 21   the accuracy of the facts and events set forth in the

11:44AM 22   amended petition but not in the second amended petition.

11:44AM 23   So he -- actually, he doubled down and actually filed

11:44AM 24   late his facts swearing to in the amended petition,

11:44AM 25   which makes him now liable for whatever they said.

11:44AM 1          Choudhri -- so I continued to represent

11:44AM 2 Ms. Zaheer going forward.

11:44AM 3          So then after that, Judge, we had our

11:44AM 4 motion on file, pursuant to the CPRC, and in it, I want

11:44AM 5 to point out, there has been some bandy about that

11:44AM 6 Mr. Pope accidentally added me to the second amended

11:44AM 7 petition.  In other words, he just simply, Oh, my

11:44AM 8 goodness, he added me to just the named parties.

11:44AM 9 However --

11:44AM 10          THE COURT:  You mean the amended petition,

11:44AM 11 not the second amended petition?

11:44AM 12          MR. DRINNON:  Right.  Correct.  Remember,

11:44AM 13 it's the first amended petition, Judge.

11:44AM 14          THE COURT:  Right.  You had said "second."

11:44AM 15 I just wanted to make sure I am clear on the record.

11:45AM 16          MR. DRINNON:  First amended petition.

11:45AM 17 Second, I'm not in there.  I will candidly admit that.

11:45AM 18          THE COURT:  All right.

11:45AM 19          MR. DRINNON:  But there were 25 mentions of

11:45AM 20 my name, and they have claimed I did as follows.  It

11:45AM 21 says that Drinnon conspired with NBK, and Zaheer and

11:45AM 22 Tang to, quote, create havoc and further disrupted the

11:45AM 23 bankruptcy case, close quote.  That Drinnon acted in

11:45AM 24 direct violation of Judge Manor's temporary injunction

11:45AM 25 by appearing on behalf of Naissance in the bankruptcy

11:45AM  1  proceeding.

11:45AM  2            As a result of this conspiracy by the

11:45AM  3  Defendants, including me, the emergency status

11:45AM  4  conference requested by NBK resulted in the dismissal of

11:45AM  5  the bankruptcy case.

11:45AM  6            That Drinnon, quote, works tirelessly to

11:45AM  7  get the bankruptcy dismissed.  That a quote, backroom

11:45AM  8  deal, closed quote, exists between Zaheer, Drinnon,

11:45AM  9  Tang, and NBK.

11:45AM  10           Drinnon was involved in the filing of the

11:45AM  11 lawsuit on June 23rd -- 26 of 2023 on behalf of

11:45AM  12 Naissance Galleria, LLC.

11:45AM  13           Judge, if you recall, I didn't get involved

11:45AM  14 in this case until October 11th of 2023.

11:45AM  15           So how I could get involved in a case that

11:46AM  16 I hadn't been involved in yet for over four months, I

11:46AM  17 don't know.  Choudhri is still the manager of Naissance,

11:46AM  18 they claim that.  Drinnon's admission that he represents

11:46AM  19 Abdullatif in other matters.  Drinnon is working in

11:46AM  20 concert with NBK, Zaheer, and Tang to seize the building

11:46AM  21 at 2425 West Loop, quote, by any means necessary.

11:46AM  22           Driving force behind Drinnon's efforts is

11:46AM  23 Abdullatif.  In other words, they're blaming a former

11:46AM  24 client -- or, current client of mine for all of these

11:46AM  25 terrible acts that apparently I am doing or that I have

11:46AM 1 done in the course of representing Zaheer.

11:46AM 2          Drinnon's motion for relief contained many

11:46AM 3 misrepresentations.  So my TCPA motion is a -- I am

11:46AM 4 lying in it, I suppose, or a fallacy.

11:46AM 5          The bankruptcy court dismissed the

11:46AM 6 bankruptcy and corresponding adversary action solely

11:46AM 7 because of Drinnon's motion for relief, which we have

11:46AM 8 proven isn't true.  Choudhri conducted his real estate

11:46AM 9 business through special purpose entities, such as 2425.

11:47AM 10 And that is what allows him to act, not in his

11:47AM 11 individual capacity, it's one of the reasons we're

11:47AM 12 asking for his individual deposition, because he

11:47AM 13 actually signed the -- the -- the verification.

11:47AM 14          He says Choudhri runs Jetall Companies,

11:47AM 15 Inc., to provide -- these are all in his pleadings, by

11:47AM 16 the way.  Choudhri runs Jetall Companies, Inc., to

11:47AM 17 provide management services to entities for the purpose

11:47AM 18 of running real estate investments.  Abdullatif has

11:47AM 19 sponsored litigation against Choudhri in several dozen

11:47AM 20 cases which that is my client.  Abdullatif is financing

11:47AM 21 the litigation expenses of Zaheer in the takeover of

11:47AM 22 2425 Galleria.

11:47AM 23          So the claim is, is that my current client

11:47AM 24 that I represent, Abdullatif, is financing Zaheer, so

11:47AM 25 apparently paying me to finance Zaheer to go ahead and

11:47AM  1  take over the 2425 building.

11:47AM  2             It says that Drinnon has entered into an

11:47AM  3  enterprise course of action to destroy Choudhri's

11:47AM  4  businesses.

11:47AM  5             Drinnon is aiming to take possession of the

11:47AM  6  building located at 2425 West Loop.

11:48AM  7             Drinnon wants to extort money from

11:48AM  8  Choudhri.

11:48AM  9             Drinnon and his -- or Abdullatif and his

11:48AM 10  associates used firearms to hold Choudhri and his

11:48AM 11  associates hostage.

11:48AM 12             Abdullatif retained Wayne Dolcefino to

11:48AM 13  publish on the internet a number of hidden pieces on

11:48AM 14  Choudhri.

11:48AM 15             Abdullatif, with the assistance of Drinnon

11:48AM 16  has made several false claims against Choudhri.

11:48AM 17             Drinnon tortiously interfered with a

11:48AM 18  contract with NBK causing damages of $50 million.

11:48AM 19             Drinnon made false accusations about

11:48AM 20  Galleria 2425's ownership assets, management, and

11:48AM 21  decision-making abilities.

11:48AM 22             Drinnon has conspired to interfere with

11:48AM 23  Galleria's 2425 bankruptcy case.

11:48AM 24             And, Judge, apparently, I have done all

11:48AM 25  that in 25 days since coming onto this particular case.

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

11:48AM 1          So the issue here, Judge, becomes, I filed

11:48AM 2 the TCPA motion.  They're claiming, I think, or at least

11:48AM 3 the beginning -- or attempting to claim that because

11:48AM 4 they have now nonsuited me through the individual -- the

11:49AM 5 second amended complaint where they did take Mr. Tang

11:49AM 6 and my's name off of the complaint, going forward, that

11:49AM 7 that is a nonsuit.  Regardless if it is or not -- and

11:49AM 8 frankly, I don't care, so to be blunt with you -- is

11:49AM 9 that *McDonald Oilfield Operations, LLC, v. 3B*

11:49AM 10 *Inspection*, it is a case that we gave you last time.

11:49AM 11 So, remember, Judge, I handed you a number of cases,

11:49AM 12 because I knew what they were going to argue.  It is

11:49AM 13 pretty simple.  Is that the TCPA -- holding that a TCPA

11:49AM 14 motion to dismiss seeking dismissal with prejudice and

11:49AM 15 attorneys' fees, costs and sanctions, constituted a

11:49AM 16 pending claim for relief -- for affirmative relief

11:49AM 17 within the meaning of Rule 162.

11:49AM 18          162 is basically used when you have a

11:49AM 19 motion for summary judgment, for example, if you have --

11:49AM 20 you know, if you file a motion for summary judgment, it

11:49AM 21 gets dismissed, it doesn't mean that the counterclaims

11:49AM 22 that the other party has don't continue to exist.

11:49AM 23          So if we survive, for my claims under the

11:49AM 24 TCPA, clearly survive what is happening here, and that

11:50AM 25 means that they are subject to statute CPRC 27, et

11:50AM 1  sequen- -- I am going to quote you a few --

11:50AM 2              THE REPORTER:  I couldn't understand what

11:50AM 3  you said.

11:50AM 4              MR. DRINNON:  Et sequentas.  Sorry.  My

11:50AM 5  Latin was a little rusty.

11:50AM 6              But, going on with regard to those issues,

11:50AM 7  is that now the statute applies.  Okay?  The statute is

11:50AM 8  very, very clear.  It specifically says that I am

11:50AM 9  entitled -- under 27.006, that I am entitled to have

11:50AM 10 reasonable discovery within the limitations going

11:50AM 11 forward.

11:50AM 12             It's not limited to them.  And I'll tell

11:50AM 13 you why in a minute.  It is not limited to them, because

11:50AM 14 I am the movant.  The movant also gets discovery,

11:50AM 15 because he is a party.  That's what it says, any party

11:50AM 16 may seek discovery with regard to these issues.

11:50AM 17             So I am as a party going forward, and I am

11:50AM 18 certainly a party to that motion that's going forward.

11:50AM 19 I am seeking limited discovery from the corporate

11:50AM 20 representative of Galleria 2425, and Mr. Choudhri,

11:51AM 21 individually, who decided to go ahead and post fact go

11:51AM 22 ahead and verify a petition apparently they had already

11:51AM 23 superseded, but he, nevertheless, filed it with regard

11:51AM 24 to the first amended petition.  Which begs the question,

11:51AM 25 I don't even know if the second amended petition is even

11:51AM  1    verified going forward.

11:51AM  2              So in any event, Judge, with regard to

11:51AM  3    those issues, then, it turns back to -- I am going to

11:51AM  4    sit down for a second just to read it.  It is on my

11:51AM  5    computer, Judge.  24.5, 24.005 and 24.006 allow for

11:51AM  6    the -- the discovery of any party, and why it does this,

11:51AM  7    is that I can also have affirmative defenses, so if they

11:51AM  8    bring up, and their standard is that they are going to

11:51AM  9    have to produce, basically, clear evidence -- let me

11:51AM  10   make sure that I have got the standard correct here.

11:51AM  11             They have to provide specific evidence,

11:52AM  12   clear and specific evidence, that a prima facie case for

11:52AM  13   each essential element of the claim in question exists.

11:52AM  14   So they have to do that.

11:52AM  15             But the other part, Judge, is that I can

11:52AM  16   also when or if they try to do that, I can raise

11:52AM  17   affirmative grounds, meaning an affirmative defense, or

11:52AM  18   other grounds on which the moving party is entitled a

11:52AM  19   judgment of law, and that is 27.005(d).  So that gets me

11:52AM  20   there.  So where I need to -- what I want, is that I

11:52AM  21   think I am entitled to discovery to ask why these folks,

11:52AM  22   even in light of the fact that Mr. Choudhri has been

11:52AM  23   censured through Jetall Companies, and that Jetall

11:52AM  24   Companies was put into bankruptcy, or at least there is

11:52AM  25   a bankruptcy motion to where they are seeking to obtain

11:52AM 1  judgment for that on the HREP bankruptcy, is that I am

11:52AM 2  entitled to determine what facts they were basing their

11:52AM 3  claims against me individually, and whether or not they

11:52AM 4  have any evidence that I was acting extracontractually

11:52AM 5  outside of my scope as the legal representation with

11:53AM 6  regard to Ms. Zaheer.

11:53AM 7             Now, Judge, the case law is pretty clear.

11:53AM 8  Those depositions are limited.  And I don't want broad

11:53AM 9  sweeping.  I don't need it.  I have done enough

11:53AM 10  depositions with regard to those issues.  But I need it

11:53AM 11  on these issues.  I need it on the four corners of the

11:53AM 12  allegations that are made inside of the first amended

11:53AM 13  petition and limited to those claims that they have

11:53AM 14  asserted against me, and the facts that are allegedly

11:53AM 15  supporting those claims.  Because if he does come up

11:53AM 16  with some clear, convincing evidence, which I -- I would

11:53AM 17  posit is impossible, but if he does, I get the chance to

11:53AM 18  at least have the evidence on the other side of that.

11:53AM 19             And, Judge, I am asking you to do this,

11:53AM 20  obviously, before December 12th.  Now that Mr. Choudhri

11:53AM 21  has become a party, this actually makes it a little bit

11:53AM 22  easier.  We have had terrible times going ahead and

11:53AM 23  serving Mr. Choudhri with subpoenas in the past.

11:53AM 24  There's a lot of other issues I can go into with

11:53AM 25  Judge -- well, we will get to that afterwards, but we

11:53AM   1   don't need to serve him anymore because now he is a

11:54AM   2   party.

11:54AM   3              So my whole issue, Judge, is that he has

11:54AM   4   now submitted himself to the authority of the Court, and

11:54AM   5   you can order, I would request, two three-hour

11:54AM   6   depositions for the corporate representative, and they

11:54AM   7   have to identify who it is at least three days in

11:54AM   8   advance, and then Mr. Choudhri for three hours.  If they

11:54AM   9   are going to make Mr. Choudhri both, then it's six hours

11:54AM  10   with Mr. Choudhri.  That's the way it goes.

11:54AM  11              Now, I have also moved for the deposition

11:54AM  12   of Mr. Pope.

11:54AM  13              THE COURT:  Why do you need three hours on

11:54AM  14   something where you're saying it's a very, very limited

11:54AM  15   and narrow deposition?  I don't understand why you

11:54AM  16   necessarily would need three hours, assuming that

11:54AM  17   Mr. Choudhri was going to sit for the corporate

11:54AM  18   representative as well -- for Galleria 2425, because he

11:54AM  19   has previously testified as corporate representative of

11:54AM  20   Galleria 2425, why would you need six hours with him on

11:54AM  21   what you're telling me and you're asserting to the Court

11:54AM  22   is a very limited deposition?

11:54AM  23              MR. DRINNON:  Well, it's a limited

11:54AM  24   deposition limited to the facts that he's alleged

11:54AM  25   against me in that thing.  Have you seen how many

11:54AM 1    lawyers he has?

11:55AM 2                THE COURT:  I'm aware.

11:55AM 3                MR. DRINNON:  Okay.  So the whole point of

11:55AM 4    it, Judge, is that I have done these a few times, maybe,

11:55AM 5    15 or 16.  And one, there will be questions, and,

11:55AM 6    frankly, I would ask to be able to do it in the jury

11:55AM 7    room, because there will be questions that he won't

11:55AM 8    answer.  He will be evasive.  There will be umpteen

11:55AM 9    objections from umpteen lawyers with regard to going

11:55AM 10   forward.  They will make a spectacle of it, and all I

11:55AM 11   want to do is get to the facts.

11:55AM 12               So my issue, Judge, is if you want to start

11:55AM 13   with three hours total, great.  You can make -- you can

11:55AM 14   be the judge.  We can do it in your ready room.  We will

11:55AM 15   do it anywhere you want.

11:55AM 16               THE COURT:  I get to be the judge because I

11:55AM 17   am the judge.

11:55AM 18               MR. DRINNON:  No, no, no.  You can be the

11:55AM 19   judge of whether or not I need more -- three or more

11:55AM 20   hours because, even as a layperson, you would be able

11:55AM 21   to understand why.  What I am saying here, is that,

11:55AM 22   Judge -- you're elected, Judge, I mean, we're good.  But

11:55AM 23   the whole point of it is, is that -- is that all I am

11:55AM 24   asking for is if they are going to sue lawyers, and they

11:55AM 25   are going to keep suing lawyers -- so, now, Judge, you

11:55AM 1   know we're getting in to where, you're repeatedly suing

11:56AM 2   people that have sued you over and over and over again.

11:56AM 3   And now, it's, basically, a threat --

11:56AM 4              THE COURT:  Okay.  But the issue -- okay.

11:56AM 5   So but you, also, want to take Mr. Pope's deposition,

11:56AM 6   and I think the hard part that we get into there is, how

11:56AM 7   do we not get into a whole lot of work product privilege

11:56AM 8   issues?

11:56AM 9              MR. DRINNON:  And that's what -- I was

11:56AM 10  about to address that, Judge.  With regard to Mr. Pope,

11:56AM 11  I would put off on that until after we have the

11:56AM 12  depositions with regard to either Mr. Choudhri, or

11:56AM 13  whoever the corporate representative of 2425 is with

11:56AM 14  regard to those issues.  And if it turns out that he

11:56AM 15  doesn't have any evidence with regard to those issues, I

11:56AM 16  don't need Mr. Pope.

11:56AM 17             But the whole point of this is this, Judge.

11:56AM 18  If he comes in there and he says, I didn't tell James

11:56AM 19  Pope to write that, then I got a problem.  So then we

11:56AM 20  will come back to you.  But my issue is, is that I just

11:56AM 21  want to know, because I have been doing this now for,

11:56AM 22  you know, you have seen my motion, I have been doing

11:56AM 23  this now for 12 years.  He has never sued me, and I have

11:56AM 24  respected that.  They have never brought suit against me

11:56AM 25  individually, but when they did it this time -- you

11:56AM 1  know, and we are getting down to, you know, desperation

11:57AM 2  time, I think, you can't start suing lawyers, because

11:57AM 3  you put my family at risk.  You put my firm at risk.

11:57AM 4  You put my profession at risk.  And you put me at risk.

11:57AM 5  And he has got to stop that, and that's what the TCPA is

11:57AM 6  designed to do.  I get limited discovery, Judge.  I am

11:57AM 7  not asking for the world.

11:57AM 8           THE COURT:  All right.  Mr. Adrogué.

11:57AM 9           MR. ADROGUÉ:  Yes, Your Honor.  He got into

11:57AM 10 a lot of things I don't -- I didn't think he would, but

11:57AM 11 let me address some of them.

11:57AM 12          With regard to the whole bankruptcy thing,

11:57AM 13 Judge Manor signed the TI saying that anything he did as

11:57AM 14 manager of that -- the Naissance Galleria that his

11:57AM 15 client would have to prove.  That's important, I keep

11:57AM 16 bringing that up, because as you know last time we were

11:57AM 17 here on Wednesday before Thanksgiving, the bankruptcy

11:57AM 18 attorney Melissa explained to you that Mr. Tang and this

11:58AM 19 gentleman filed petitions in federal court saying they

11:58AM 20 represent Naissance Galleria, which that, along with

11:58AM 21 some other things, ended up getting the bankruptcy

11:58AM 22 dismissed.

11:58AM 23          We told Judge Manor about it.  And Judge

11:58AM 24 Manor said, No, he's in charge, but he has to do

11:58AM 25 everything confirming with by them.  So I think that is

11:58AM  1  an important point that I want to make sure we're clear.

11:58AM  2  That's Number 1.

11:58AM  3           Number 2, the lawsuit included Drinnon and

11:58AM  4  Tang was filed on 11/14, okay, around 8:00 p.m.  And

11:58AM  5  they apparently had conversations, which I wasn't privy

11:58AM  6  the to, but I do have the e-mail here, on 11/16 at 3:35

11:58AM  7  p.m., and James Pope sends an e-mail to David and

11:58AM  8  Rodney, and this is attached as an exhibit to my motion.

11:58AM  9           "I have talked with Rodney earlier today,

11:58AM 10  but did not get a chance to speak to David.  I am

11:58AM 11  amending the petition in this case to remove you both as

11:58AM 12  named defendants.  I am working on the amendment now and

11:59AM 13  will have it filed as soon as possible."

11:59AM 14           So Mr. Pope tells both of them, I spoke to

11:59AM 15  Rodney, and I told him I am amending the petition, so,

11:59AM 16  hey, everyone, essentially, cool their jets, a lawsuit

11:59AM 17  is there.  This is important.  They were added in the

11:59AM 18  lawsuit, apparently, in the back section.  They are

11:59AM 19  saying -- citation was never requested and, obviously,

11:59AM 20  service was never attempted.  Okay?

11:59AM 21           So, then at 3:43, Drinnon files his TCPA

11:59AM 22  motion, and then an hour and 25 minutes later, Counsel

11:59AM 23  Pope removes Drinnon and Tang from the petition.  And

11:59AM 24  under Rule 162, and there's a lot of case law we cited,

11:59AM 25  when you amend a petition, it's equivalent to a nonsuit,

11:59AM 1 and in my motion I put in there, Your Honor, Texas

11:59AM 2 Supreme Court, 2011, it says, when a court signs an

12:00PM 3 order granting a nonsuit, it is just an administerial

12:00PM 4 act.  That is *Klein v. Hernandez*, Texas, 2010.

12:00PM 5          So, as of November 16th at 5:08 p.m., they

12:00PM 6 are not parties to the lawsuit.  Citations were never

12:00PM 7 requested.  They never were served.

12:00PM 8          So now, our position strongly has been

12:00PM 9 before Thanksgiving, and still, they're not part of the

12:00PM 10 lawsuit.  So now the question is, well, they filed this

12:00PM 11 motion seeking affirmative relief.  Why shouldn't that

12:00PM 12 be heard?

12:00PM 13          There is a Verizon Del, Inc., that says --

12:00PM 14          THE COURT:  What case do you have that says

12:00PM 15 that just taking them off of a pleading constitutes a

12:00PM 16 nonsuit?

12:00PM 17          MR. ADROGUÉ:  I have several, Your Honor.

12:00PM 18 It's in my motion.  A removal --

12:00PM 19          THE COURT:  You mean your response?

12:00PM 20          MR. ADROGUÉ:  In my response.  On page 3,

12:00PM 21 and starting on paragraph 8, it starts there, omitting a

12:00PM 22 party from an amended petition effectually nonsuits the

12:00PM 23 party, *Randolph v. Jackson Walker,* 29 S.W.3rd 271, Court

12:01PM 24 of Appeals 14, 2000.

12:01PM 25          And then below that, in Paragraph 9 and 10,

12:01PM  1  there is Texas Supreme Court cases.  Removal of a party

12:01PM  2  in an amended petition is indicative of an intention to

12:01PM  3  nonsuit the removed party, *American Petrofina, Inc.,*

12:01PM  4  *v. --*

12:01PM  5          THE COURT:  What is your response to the

12:01PM  6  fact he already filed his anti-SLAPP motion?

12:01PM  7          MR. ADROGUÉ:  My response is this --

12:01PM  8          THE COURT:  Your anti-- I think it is --

12:01PM  9  my understanding is that with anti-SLAPP, it survives

12:01PM 10  you nonsuiting.  You don't get to get around an

12:01PM 11  anti-SLAPP by just nonsuiting a case.

12:01PM 12          MR. ADROGUÉ:  Well, but if you -- what he

12:01PM 13  is seeking is a dismissal of the suit.  That's already

12:01PM 14  been -- that has already happened.

12:01PM 15          So the question is:  What is there, if

12:01PM 16  anything, to do?  There is a case *Verizon Del, Inc. v.*

12:01PM 17  *Covad Comms*, 377 F.3rd, Ninth Circuit, 2004, it says --

12:01PM 18          THE COURT:  What do have you got in Texas?

12:01PM 19          MR. ADROGUÉ:  I understand that, but I

12:02PM 20  think this gives a us a lot of guidance.

12:02PM 21          THE COURT:  No.  I am asking you what you

12:02PM 22  got in Texas.

12:02PM 23          MR. ADROGUÉ:  I think it is applying Texas

12:02PM 24  law.

12:02PM 25          THE COURT:  All right.  What is the case

12:02PM 1   again?

12:02PM 2          MR. ADROGUÉ:  *Verizon Del, Inc., v. Covad*

12:02PM 3   *Comms*, and it's 377 F.3d 1081, page 1091.

12:02PM 4          And it states, in part, a plaintiff who

12:02PM 5   amends to delete any cause of action after an anti-SLAPP

12:02PM 6   motion has been filed will become liable for attorneys'

12:02PM 7   fees and sanctions attributable to the action.

12:02PM 8          So if anything is going to be considered,

12:02PM 9   is going to be any attorneys' fees and sanctions, if

12:02PM 10  necessary, for that one hour and 25 minutes that -- for

12:02PM 11  one hour and 25 minutes that his motion was filed, and

12:03PM 12  they were removed from the lawsuit.  But most

12:03PM 13  importantly is, Mr. Pope spoke to him on the phone, or I

12:03PM 14  think on the phone, and said, I am going to amend the

12:03PM 15  petition and remove you, and he did that.

12:03PM 16         And so it appears that Mr. Drinnon is --

12:03PM 17  just wants to jump on this TCPA wagon when it's

12:03PM 18  important to say he was -- citation, none of that was

12:03PM 19  sought.  If they really wanted to go after him, they

12:03PM 20  would have requested citation and moved forward.

12:03PM 21         THE COURT:  But the second you sue

12:03PM 22  somebody, that becomes a public record.  So, I mean, you

12:03PM 23  don't have to serve people.  People agree to waive

12:03PM 24  service all the time.  People make appearances without

12:03PM 25  ever being served in lawsuits.

12:03PM 1          MR. ADROGUÉ:  Your Honor, as you know, just

12:03PM 2    because you file a lawsuit, you make a claim, doesn't --

12:03PM 3    people get sued all the time, Your Honor.  Just because

12:03PM 4    it is public record, what does that mean?

12:03PM 5          THE COURT:  It means that you literally

12:03PM 6    have sued someone.  You've paid money to add someone to

12:03PM 7    a lawsuit.

12:03PM 8          MR. ADROGUÉ:  But an hour and 25 minutes

12:03PM 9    later, I mean, the case was dismissed.

12:04PM 10         THE COURT:  Right.  But he still -- I mean,

12:04PM 11   he still had to do things in response to that.

12:04PM 12         MR. ADROGUÉ:  But not -- Your Honor, I

12:04PM 13   don't think he has a right, when this lawyer tells him,

12:04PM 14   I am amending the petition, I am taking you out of the

12:04PM 15   lawsuit, eight minutes after that e-mail, he decides to

12:04PM 16   file the anti-SLAPP.  And that is --

12:04PM 17         THE COURT:  What I am looking at,

12:04PM 18   regardless of what they negotiated or agreed upon, at

12:04PM 19   the end of the day, what am I looking at?  I am looking

12:04PM 20   at lawsuit was filed and they remained a party.

12:04PM 21         MR. ADROGUÉ:  And dismissed.

12:04PM 22         THE COURT:  He filed the anti-SLAPP

12:04PM 23   motion --

12:04PM 24         MR. ADROGUÉ:  Yes.

12:04PM 25         THE COURT:  -- and then he was dismissed --

12:04PM 1   I will say this.  A petition was filed that left him off

12:04PM 2   of it.  So if I just look at that, which is -- I mean --

12:04PM 3                   MR. ADROGUÉ:  He is not part of the lawsuit

12:04PM 4   anymore.

12:04PM 5                   THE COURT:  But he is at the time he filed

12:04PM 6   his anti-SLAPP motion.

12:04PM 7                   MR. ADROGUÉ:  Yes, but as we stated in

12:04PM 8   the --

12:04PM 9                   THE COURT:  So, yes is the answer.  At the

12:04PM 10  time he filed the anti-SLAPP motion, he's still part of

12:04PM 11  the lawsuit.

12:04PM 12                  MR. ADROGUÉ:  Yes.

12:04PM 13                  THE COURT:  So regardless of what they

12:04PM 14  agreed upon -- because you will admit that if Mr. Pope

12:05PM 15  never filed -- Mr. Pope could have sent that e-mail, but

12:05PM 16  he could have never filed that amended petition, right?

12:05PM 17                  MR. ADROGUÉ:  Then he is still part of the

12:05PM 18  lawsuit.

12:05PM 19                  THE COURT:  Right.

12:05PM 20                  MR. ADROGUÉ:  But he --

12:05PM 21                  THE COURT:  Right.  So but he has a right

12:05PM 22  until that petition was filed.

12:05PM 23                  MR. ADROGUÉ:  Right.

12:05PM 24                  THE COURT:  And we want to say that the

12:05PM 25  amended petition that took his name off of it

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

12:05PM  1   constitutes a dismissal, at the time he filed his

12:05PM  2   anti-SLAPP motion, he's still in the lawsuit.

12:05PM  3                  MR. ADROGUÉ:  That is fine, but now he is

12:05PM  4   not part of the lawsuit.  And something he misstated --

12:05PM  5                  THE COURT:  Right.  But an anti-SLAPP --

12:05PM  6   what case law do you have that an anti-SLAPP survives a

12:05PM  7   dismissal that's in Texas?  Because the case you cited

12:05PM  8   to was a federal case in California.  I want a Texas

12:05PM  9   case that applies Texas law.

12:05PM  10                 MS. MACGEORGE:  Your Honor, the anti-SLAPP

12:05PM  11  motion itself can survive the nonsuit.  However, the

12:05PM  12  merits of our underlying cause of action are mooted.

12:05PM  13  And I have a case, *Mobley v. Mobley* out of the Texas --

12:05PM  14                 THE COURT:  We aren't talking about the

12:05PM  15  merits of your underlying cause of action against him.

12:05PM  16  We are literally talking about the anti-SLAPP motion

12:06PM  17  that he filed.

12:06PM  18                 MR. ADROGUÉ:  That goes into exactly what

12:06PM  19  she is saying, is that there is no cause of action

12:06PM  20  against him, so what discovery, if any, is he going to

12:06PM  21  get?  Moreover, he mischaracterizes to the Court with

12:06PM  22  regards to this verification that my client signed.  The

12:06PM  23  one he signed, the unsworn declaration of Ali says, I

12:06PM  24  here swear that the plaintiff's first amended petition

12:06PM  25  and emergency application is correct.  The one filed on

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

12:06PM 1   November 16th.  So my client swore to everything filed

12:06PM 2   on November 16th petition, which removed them from the

12:06PM 3   lawsuit.  So that's what he's not telling this Court.

12:06PM 4   He swore to an affidavit for a November 16th petition,

12:06PM 5   and this was filed on 11/16 at 6:02 p.m.

12:06PM 6           THE COURT:  I mean, you do kind of throw it

12:06PM 7   into a flux because he doesn't refer to the second

12:06PM 8   amended petition.

12:06PM 9           MR. ADROGUÉ:  He doesn't, because there was

12:06PM 10  no -- despite what he thinks, there was no ill intent.

12:06PM 11  There was a miscommunication.  They were in, and they

12:06PM 12  were out.  Citation was never --

12:06PM 13          THE COURT:  Right.  I know, but you admit

12:06PM 14  that, like, it should have said second amended petition.

12:07PM 15          MR. ADROGUÉ:  I don't -- yes, Your Honor,

12:07PM 16  I'm sorry.  I didn't mean to interrupt.  I agree.  I

12:07PM 17  think that --

12:07PM 18          MR. POPE:  If I may, Your Honor.

12:07PM 19          MR. ADROGUÉ:  -- the labeling of these

12:07PM 20  pleadings should be a little bit better.

12:07PM 21          MR. POPE:  If I may.

12:07PM 22          MR. ADROGUÉ:  Yes.

12:07PM 23          MR. DRINNON:  Judge, how many lawyers are

12:07PM 24  we going to have going?

12:07PM 25          THE COURT:  He has hired all of these

12:07PM   1   lawyers, and they're all licensed.  I mean, the same way

12:07PM   2   Mr. Conrad brought a team of lawyers, you could have

12:07PM   3   brought anybody you wanted to come hang out with you,

12:07PM   4   Mr. Drinnon.  I am going to allow Mr. Pope an

12:07PM   5   opportunity to speak here.

12:07PM   6             MR. POPE:  Thank you, Your Honor.  Just to

12:07PM   7   clear up a couple of things.  The naming of second

12:07PM   8   amended petition is a term of art that we are calling

12:07PM   9   that petition.  It doesn't have the words "second

12:07PM  10   amended petition" on the name of that document, so the

12:07PM  11   unsworn declaration has the same name as the document so

12:07PM  12   there isn't any confusion.

12:07PM  13             This is, actually, probably the fourth

12:07PM  14   amended petition, but for whatever reason, they have

12:07PM  15   elected to call it the second amended petition, and we

12:07PM  16   just keep going with that so we are not confused about

12:07PM  17   which one we are talking about.  So if we are being

12:07PM  18   technical this is not even the second amended, so the

12:07PM  19   unsworn declaration made a point to reference the title

12:08PM  20   of the document at the time, so when you're looking at

12:08PM  21   the document with the timestamp, you know which one he

12:08PM  22   is declaring about.

12:08PM  23             I wanted to clear that up so that we -- the

12:08PM  24   second amended petition was months ago.  This was a

12:08PM  25   fourth amended petition that we are referring to as a

12:08PM  1   second amended petition.

12:08PM  2              THE COURT:  Well, then, to your credit, you

12:08PM  3   need to keep putting the dates you file things, because

12:08PM  4   the whole reason we title things is to alleviate

12:08PM  5   confusion.

12:08PM  6              MR. POPE:  Understood, Your Honor.

12:08PM  7              THE COURT:  And it sounds like you are just

12:08PM  8   drumming it up and causing more of it.  So to your

12:08PM  9   credit by putting the file date on it, but it appears

12:08PM  10  that that's what was intended.  The unsworn affidavit --

12:08PM  11  the unsworn declaration of Mr. Choudhri goes to the

12:08PM  12  second amended petition.

12:08PM  13             MR. POPE:  And if I could provide some more

12:08PM  14  clarity and maybe move us --

12:08PM  15             THE COURT:  I don't know.  Maybe, you can.

12:08PM  16  Let's see.

12:08PM  17             MR. POPE:  We are arguing the TCPA, which

12:08PM  18  is not set until the 12th.  What we are here for

12:08PM  19  today --

12:08PM  20             THE COURT:  Is whether or not he gets to do

12:08PM  21  discovery.

12:08PM  22             MR. POPE:  -- is whether or not he can do

12:08PM  23  discovery, and what we're not talking about is the

12:08PM  24  standards that there be good cause.  There has been no

12:08PM  25  good cause shown for him to have discovery here today.

12:08PM 1  And generally, when that discovery is issued in these

12:08PM 2  type of situations, it's for the nonmovant so we can

12:09PM 3  reply to the TCPA motion.  That's what we should be

12:09PM 4  discussing.  Not the TCPA motion.  That's on December

12:09PM 5  12th.

12:09PM 6           We are getting lost in the cloud of the

12:09PM 7  TCPA, and we will all have an opportunity to inform this

12:09PM 8  Court and wow you with all of our legal arguments on the

12:09PM 9  12th of December.  However, for today, the emergency

12:09PM 10 motion to compel discovery should be denied, because,

12:09PM 11 one, there is no emergency.

12:09PM 12          The emergency was created by him imposing a

12:09PM 13 hearing date before he even filed his motion on a date

12:09PM 14 that was entirely too close when he had two months he

12:09PM 15 could have pushed that out.  So he picked an earlier

12:09PM 16 date to create an emergency to get him here today.  That

12:09PM 17 is Number 1.

12:09PM 18          Number 2 is, there is no good cause shown

12:09PM 19 as to why he needs a deposition.  There is no cause

12:09PM 20 shown maybe, why we may need one, and the case law will

12:09PM 21 show that the nonmovant is generally the party who has

12:09PM 22 the depositions.  So the request should simply be

12:09PM 23 denied, and we can argue the rest of this TCPA motion on

12:09PM 24 the 12th.  And if we are to resume conversations, we

12:10PM 25 should be limited to the emergency motion to conduct

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

12:10PM 1    discovery that is before the Court today.

12:10PM 2              MS. MACGEORGE:  And, Your Honor, if I may

12:10PM 3    direct you, in our motion response in Section B,

12:10PM 4    beginning on page 4 at paragraph 15, this is where the

12:10PM 5    arguments begin for what Mr. Pope was just laying out

12:10PM 6    for the Court.

12:10PM 7              In the TCPA motion, it's a lot like a no

12:10PM 8    evidence motion for summary judgment.  When the movant

12:10PM 9    files it, they have a threshold pleading that they have

12:10PM 10   to establish, and then the burden shifts to the

12:10PM 11   nonmovant to establish the prima facie elements of the

12:10PM 12   merits of their claim.  However, we have now nonsuited

12:10PM 13   Mr. Drinnon, and the merits are also mooted under the

12:10PM 14   *Mobley v. Mobley* case, out of the Texas Court of

12:10PM 15   Appeals.  That is 506 S.W.3d 87.

12:10PM 16             THE COURT:  Is that in your motion?

12:10PM 17             MS. MACGEORGE:  That particular case is not

12:10PM 18   in the motion, but there are many others to support this

12:10PM 19   contention.  So, Mr. Drinnon, as movant, had the

12:11PM 20   responsibility to establish his motion as a

12:11PM 21   preponderance of evidence.  That's the standard he has

12:11PM 22   to meet.  And once he establishes that in his pleadings,

12:11PM 23   then, under *Serafine v. Blunt*, that's 466 S.W.3d 352 at

12:11PM 24   page 357, out of the Texas Court of Appeals in Austin,

12:11PM 25   2015.

12:11PM 1            So when that happens, the burden is going

12:11PM 2 to shift to the nonmovant, and then if you look through

12:11PM 3 the case law, where discovery -- so the TCPA stays all

12:11PM 4 discovery.  It stays discovery on the merits of the

12:11PM 5 underlying cause of action.  If discovery is awarded

12:11PM 6 later on, it is limited -- and this is in Paragraph 21

12:11PM 7 of our response -- it is limited to evidence related to

12:11PM 8 the TCPA motion to dismiss and establishing by the

12:11PM 9 preponderance of the evidence that the legal action is

12:11PM 10 based on, relates to, or is in response to the parties'

12:12PM 11 exercise of the right to petition, which is what Mr.

12:12PM 12 Drinnon pled is being violated in his motion to dismiss.

12:12PM 13            So the movant's burden is easily met by his

12:12PM 14 pleadings, and that -- after that, the burden shifts to

12:12PM 15 us to establish the elements of whatever underlying

12:12PM 16 cause of action we maintain, which right now, we don't

12:12PM 17 maintain one.  So there is no scope of discovery that

12:12PM 18 would be relevant to our underlying merits.  But even

12:12PM 19 so, there is no evidence that he can get from us, that

12:12PM 20 he would need discovery from us, to establish the

12:12PM 21 elements of our cause of action, which is why in

12:12PM 22 Paragraph 19 -- and I did reference it wrong in the

12:12PM 23 motion.  In Paragraph 21, I say that it is Paragraph 18.

12:12PM 24 It is actually 19.

12:12PM 25            So the case law for this in Paragraph 19 is

12:12PM 1  that, normally, the nonmovant seeks discovery under the

12:12PM 2  TCPA, and this happens in the appeals court in Dallas

12:13PM 3  for *In re SPEX Group, U.S., LLC*, and then each time you

12:13PM 4  see a case where limited scope of discovery has been

12:13PM 5  awarded, you can see case after case in Paragraph 19,

12:13PM 6  that it is always the nonmovant that gets the discovery,

12:13PM 7  because it is the nonmovant that carries the burden.

12:13PM 8           So to the extent that Mr. Drinnon is

12:13PM 9  claiming he has some kind of burden to carry that he

12:13PM 10 can't prove without discovery, it is just -- that is not

12:13PM 11 how the TCPA works, and discovery is stayed per the

12:13PM 12 statute under 27.003(c).

12:13PM 13          So in this case, you know -- and we also

12:13PM 14 mentioned that this emergency is wholly self-inflicted.

12:13PM 15 Those arguments are listed beginning at paragraph 26 in

12:13PM 16 our response.

12:13PM 17          But essentially, it's important for this

12:13PM 18 Court to understand that in his pleadings, there is no

12:13PM 19 good cause shown.  He has to show good cause under the

12:14PM 20 TCPA to get past the stay for discovery.  And there has

12:14PM 21 been no good cause pled or shown here today why Mr.

12:14PM 22 Drinnon, to prove his own attorneys' fees, and to prove

12:14PM 23 that sanctions are awarded, which is what we're limited

12:14PM 24 to, since the case -- the merits of the underlying case

12:14PM 25 have been mooted, so we're limited only to his motion,

12:14PM 1   what survives in his motion is attorneys' fees and

12:14PM 2   sanctions.  And so we're limited to discovery only for

12:14PM 3   attorneys' fees and whether sanctions are imposed, and

12:14PM 4   he can't get attorneys' fees testimony about his

12:14PM 5   attorneys' fees that he has incurred through us.

12:14PM 6              THE COURT:  So do I understand you're

12:14PM 7   saying that you can see that he has made -- he has met

12:14PM 8   his burden of the TCPA, and that you don't have to make

12:14PM 9   a prima facie case, because there is no prima facie case

12:14PM 10  to make because that case is now moot, so literally,

12:14PM 11  we're just going to talk about the issue of what his

12:14PM 12  attorneys' fees are and what the sanctions are?

12:14PM 13             MS. MACGEORGE:  No.  He has to establish

12:14PM 14  good cause under the statute.

12:14PM 15             THE COURT:  Not discovery.  I'm not talking

12:14PM 16  about the discovery.  I'm talking about --

12:14PM 17             MS. MACGEORGE:  He still has to establish

12:14PM 18  his claim that his right to petition was violated.  He

12:14PM 19  still has to prove that.  And he can -- but he can't get

12:15PM 20  discovery from us related to that.  So he does have to

12:15PM 21  prove that his motion is still valid and based in the

12:15PM 22  law, and has, like, an ability to prevail.  If he can't

12:15PM 23  prevail on his motion, because his right to petition, he

12:15PM 24  doesn't prove that his right to petition --

12:15PM 25             THE COURT:  Right.  But do I understand you

12:15PM  1    to say that to the extent the burden shifts to you, if

12:15PM  2    he is able to meet that threshold, you don't make a

12:15PM  3    prima facie case because there is not one for you to

12:15PM  4    make.

12:15PM  5            MS. MACGEORGE:  No.  We would have to

12:15PM  6    establish -- that's our burden to establish that his

12:15PM  7    right to petition was not violated.

12:15PM  8            THE COURT:  No.  You are not listening to

12:15PM  9    me.  What I am asking you is this:  If he meets that

12:15PM  10   threshold, do I understand your position, based on

12:15PM  11   literally what you just said, that you can't make a

12:15PM  12   prima facie case for your cause of action because it is

12:15PM  13   now a moot point because you have allegedly dismissed

12:15PM  14   him?

12:15PM  15           MS. MACGEORGE:  We have dismissed -- we

12:15PM  16   have nonsuited --

12:15PM  17           THE COURT:  Is the answer "yes" or "no"?

12:15PM  18           MS. MACGEORGE:  I am not sure I understand.

12:15PM  19           MR. ADROGUÉ:  You're right.  There is no

12:15PM  20   cause of action.

12:15PM  21           THE COURT:  There is no cause of action for

12:16PM  22   you to make a prima facie case.  So if he makes his --

12:16PM  23   so what you're saying is, if he meets his burden, that

12:16PM  24   is it.

12:16PM  25           MS. MACGEORGE:  If discovery would be

12:16PM  1  allowed in this case --

12:16PM  2              THE COURT:  I am not talking about

12:16PM  3  discovery.  No.  You're not listening to me.  I am

12:16PM  4  talking about a very specific issue based on what you

12:16PM  5  just said.

12:16PM  6              If he makes -- hold on.  Look at me because

12:16PM  7  I am talking to you.  You say you don't understand.  I

12:16PM  8  want to make sure you understand.

12:16PM  9              Do I understand you because of what you

12:16PM 10  just said, that if -- I am not saying he did, not even

12:16PM 11  talking about the need of discovery -- if he makes,

12:16PM 12  right, if he meets his burden to say that what y'all

12:16PM 13  filed, the time you filed it infringes on his abilities,

12:16PM 14  right to petition, right, it would ordinarily shift the

12:16PM 15  burden to you to make a prima facie case, and you are

12:16PM 16  telling me there is not a prima facie case to make

12:16PM 17  because you have dismissed him; is that correct?

12:16PM 18              MS. MACGEORGE:  No.  The burden shifts to

12:16PM 19  us to disprove his TCPA allegations, not -- not the

12:16PM 20  underlying cause of action.  His TCPA is that we

12:17PM 21  violated his rights of petition.  And then, when he

12:17PM 22  establishes by a preponderance of the evidence in his

12:17PM 23  pleadings and evidence that we violated that, that

12:17PM 24  burden to disprove that claim shifts to us.  And we

12:17PM 25  still have to establish that, and that's happening on

12:17PM 1 December 12th.

12:17PM 2 THE COURT: Well, doesn't that really

12:17PM 3 happen all at the same time, because while he is proving

12:17PM 4 it, you are trying to disprove it, and then this Court

12:17PM 5 is making a determination as to whether or not he's met

12:17PM 6 his preponderance? I mean, it is not like it happens

12:17PM 7 separately. He makes his case, you cross, and then if

12:17PM 8 that happens, then it's my understanding under the TCPA,

12:17PM 9 then great. If he meets that threshold, and by a

12:17PM 10 preponderance of the evidence, then it shifts to you to

12:17PM 11 survive, to say that, Oh, well, we have made a prima

12:17PM 12 facie case of why -- you know, even if it does infringe

12:17PM 13 upon his right to petition, you're saying that you don't

12:17PM 14 have a cause of action to make a prima facie case for.

12:18PM 15 MS. MACGEORGE: No. I see the disconnect

12:18PM 16 here. All of the case law that is related to when the

12:18PM 17 burden shifts all talks about it happening in the

12:18PM 18 pleadings, the pleadings for the motion. His burden, he

12:18PM 19 can shift it in the pleadings, just like a no evidence

12:18PM 20 motion for summary judgment. And it even references

12:18PM 21 Texas Rule 166(a) when it talks about the evidence that

12:18PM 22 is required, and how it needs to be presented for the

12:18PM 23 purpose of TCPA.

12:18PM 24 So just like in a no evidence motion for

12:18PM 25 summary judgment, all he has to do is say, Hey, this

12:18PM  1   happened, and then the burden shifts to us, and we have

12:18PM  2   to disprove it.  So, no, I don't believe that the burden

12:18PM  3   shifts simultaneously.

12:18PM  4           MR. DRINNON:  May I finally chime in,

12:18PM  5   Judge?

12:18PM  6           THE COURT:  You may.

12:18PM  7           MR. DRINNON:  She said that, I just

12:18PM  8   admitted that I have met my burden, that's what she

12:18PM  9   said, I think, previously, which I think is important.

12:18PM 10           But the other part is this.  They ignore

12:18PM 11   27.005(d).  27.005(d) says notwithstanding the

12:18PM 12   provisions of subsection C, meaning they have to bring

12:18PM 13   clear and specific evidence of prima facie, the Court

12:19PM 14   shall dismiss a legal action against a moving party if

12:19PM 15   the moving party establishes an affirmative defense or

12:19PM 16   other grounds on which moving party is entitled to

12:19PM 17   judgment as a matter of law.

12:19PM 18           I gave very specific reasons as to why I

12:19PM 19   want this limited discovery.  And very -- and I gave

12:19PM 20   four issues with regard to emergency motions.

12:19PM 21           Now, I am going to get into other claims

12:19PM 22   with regard to other issues.  There have been --

12:19PM 23   Mr. Choudhri has manufactured evidence in the past in

12:19PM 24   other lawsuits, and he has been found liable by a jury

12:19PM 25   and by an arbitration board with regard to those issues.

12:19PM 1          MR. ADROGUÉ:  Objection, relevance.

12:19PM 2          MR. DRINNON:  I am about to give you

12:19PM 3  relevance.  My whole point of it is that the issue here

12:19PM 4  why I need this expedited discovery, is I need to know

12:19PM 5  what information they had fixed right then that they

12:19PM 6  thought that I was liable for, basically, you know, four

12:19PM 7  causes of action with 25 paragraphs worth of pleadings

12:19PM 8  against me.

12:19PM 9          If it is nothing, Judge, then, I would have

12:20PM 10 an affirmative defense even of frivolous lawsuit.  I

12:20PM 11 would have affirmative defenses to get anything else

12:20PM 12 dismissed.  I would have affirmative defense for

12:20PM 13 vexatious litigation.  I would have affirmative defense

12:20PM 14 for fraud.  I would have an affirmative defense for all

12:20PM 15 of these things.

12:20PM 16         So my issue is that the burden keeps

12:20PM 17 shifting.  Like, she is correct.  The burden shifts to

12:20PM 18 them, and it shifts back to me.  So my issue is, I get

12:20PM 19 to know what they are going to say before we come to

12:20PM 20 that hearing.  And all I am asking for, Judge, good

12:20PM 21 Lord, is three hours now, with either the corporate

12:20PM 22 representative, and Mr. Choudhri, with regard to those

12:20PM 23 issues, in your -- in your jury room, to go over what

12:20PM 24 facts they have to support the outrageous claims against

12:20PM 25 me, and that is it.


Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

12:20PM   1            So I don't think -- and why they are

12:20PM   2    fighting so hard is because they lied.  So that's it.

12:20PM   3    So, let's see.  That's all I am asking, Judge, is put

12:20PM   4    their feet to the fire for the first time in a long

12:20PM   5    time, and actually make Choudhri --  Mr. Choudhri, or

12:20PM   6    some corporate representative that they have to get

12:21PM   7    ready, that give me three days of notice who it is --

12:21PM   8            Am I speaking too fast?  Okay.  Sorry.

12:21PM   9            That I know who it is, and I get this over

12:21PM  10    with, because they just don't --  I just don't get

12:21PM  11    attorneys' fees, and I just don't get sanctions, which I

12:21PM  12    think should be probably between 5 and 10 percent of

12:21PM  13    whatever they claimed against me.  But what I get, most

12:21PM  14    importantly, is I get a dismissal with prejudice.

12:21PM  15            In fact, the case that I have, which is

12:21PM  16    *Gaskamp v. WSP USA, Inc.*, which I cited and I handed it

12:21PM  17    to you last week, which is 596 S.W.2d -- or S.W.3d,

12:21PM  18    rather, 457, Houston Division, 2020.  "Motions to

12:21PM  19    dismiss under the Texas Citizens Participation Act

12:21PM  20    survive nonsuit because, unlike a nonsuit, the TCPA

12:21PM  21    motion to dismiss might also allow the movant to obtain

12:21PM  22    a dismissal with prejudice, attorneys' fees, and

12:21PM  23    sanctions."

12:22PM  24            They want to forget that attorneys' fees

12:22PM  25    with prejudice.  Why, Judge?  Because they want to sue

12:22PM 1   me again.  And I am tired of this.  I'm sorry.  I'm

12:22PM 2   frustrated.  I shouldn't be shouting at the Court.  But

12:22PM 3   I'm just tired of this.  So give us our three hours of

12:22PM 4   depositions.  Give us whatever amount of time you think

12:22PM 5   is relevant.  We will limit it to the four corners of

12:22PM 6   the complaint that they issued against me, and let's get

12:22PM 7   on down the road.

12:22PM 8               MR. ADROGUÉ:  Your Honor, brief response.

12:22PM 9               Once he filed -- one second and I'll let

12:22PM 10  you speak.

12:22PM 11              Once he filed that motion, all other

12:22PM 12  discovery is stayed, and the rules and law is clear,

12:22PM 13  which we put in our response.  Any discovery that will

12:22PM 14  be allowed would be limited to his right to petition.

12:22PM 15  What he is asking the Court is he wants to get into the

12:22PM 16  whole merits of the case, and go into everything,

12:22PM 17  when -- when it is not proper, when discovery should

12:22PM 18  only be limited to whether or not he has a right to

12:22PM 19  petition or not.

12:22PM 20              MR. DRINNON:  It is limited to what is set

12:22PM 21  forth in my -- in my -- my motion.  That's not -- it is

12:23PM 22  not limited to what's set forth in the petition.  My

12:23PM 23  motion specifically set out 25 instances where they

12:23PM 24  claim that I was -- I did wrongdoing.  Show me.  Prove

12:23PM 25  it.

12:23PM 1          MR. ADROGUÉ:  Your Honor, one other thing
12:23PM 2   is, I understand that when he filed the motion to
12:23PM 3   dismiss a lawsuit was pending, but his own personal
12:23PM 4   actions has highlighted this lawsuit and everything.
12:23PM 5   He -- he's -- he's made more of an issue of this than it
12:23PM 6   is.  But moreover, he's trying to rush this TCPA in by
12:23PM 7   December 12th.
12:23PM 8          THE COURT:  Well, I mean, the problem with
12:23PM 9   the TCPA is that I have got a limited amount of time to
12:23PM 10  rule on these things.  These things actually kind of
12:23PM 11  have to be rushed.
12:23PM 12         MR. ADROGUÉ:  You can do it up to 120 days.
12:23PM 13         MR. DRINNON:  And I picked the date --
12:23PM 14         MR. ADROGUÉ:  Allow me to speak, Counsel.
12:23PM 15  Case law is they should be set within 60.  There's cases
12:23PM 16  that says 90, even 120 days.  And what he is trying to
12:23PM 17  do, in all candor, is quickly get a bunch of discovery
12:24PM 18  so that he can use this in the other pending lawsuits.
12:24PM 19         MR. DRINNON:  No.  It's about me.  It -- I
12:24PM 20  don't care about the other lawsuits, Judge.  They
12:24PM 21  haven't sued me in the other pending lawsuits.  What I
12:24PM 22  care about is what they claim that I did, and if -- and
12:24PM 23  if you're going to sue me, if you're going to sue me,
12:24PM 24  and you are going to bring me into this, and you are
12:24PM 25  going to put my family into this, and for two days I had

12:24PM  1    to worry about being sued for $50 million, yeah, I might

12:24PM  2    be a little -- little upset.

12:24PM  3              The other part, Judge, is I also called the

12:24PM  4    Court.  I followed exactly your procedures.  I asked

12:24PM  5    your clerk, who was very, very kind to me.  I said

12:24PM  6    between 21 and 60 days, which is what she said, and gave

12:24PM  7    me December 12th.  I very much appreciated it and filed

12:24PM  8    my motion.

12:24PM  9              THE COURT:  But there is already something

12:24PM 10    else.  We already have something else for December 12th.

12:24PM 11    Y'all have something filed for December 12th, right?

12:24PM 12              MR. DRINNON:  Mine won't take long, as long

12:24PM 13    as I have discovery.

12:24PM 14              MR. CHOUDHRI:  Your Honor, if I may?

12:24PM 15              THE COURT:  Just so that you are aware,

12:24PM 16    Mr. Choudhri, I do see your petition has been -- is in

12:24PM 17    here now.  But, to be clear, your petition is just

12:25PM 18    against -- a fraud claim against Azeemeh Zaheer.

12:25PM 19              MR. DRINNON:  It has nothing to do with

12:25PM 20    this, at least --

12:25PM 21              THE COURT:  I'm just telling you that that

12:25PM 22    is your -- that is the extent of your petition.  It

12:25PM 23    doesn't file -- that is all it is.

12:25PM 24              MR. CHOUDHRI:  I understand, Your Honor.  I

12:25PM 25    believe on paragraph -- or on paragraph 13, I have

12:25PM 1    claims against the Bank of Kuwait.

12:25PM 2              THE COURT:  You don't list them as a party.

12:25PM 3    So regardless, if they are not listed as one of the

12:25PM 4    parties, your parties in your petition just say

12:25PM 5    plaintiff, Galleria 2425, Intervenor Ali Choudhri,

12:25PM 6    Defendant Azeemeh Zaheer.

12:25PM 7              MR. CHOUDHRI:  I understand, Your Honor.

12:25PM 8              THE COURT:  That is it.  And your only

12:25PM 9    causes of action is for fraud, and you mention National

12:25PM 10   Bank of Kuwait in Paragraph 13.  You don't have them as

12:25PM 11   a party to your -- to your specific petition.

12:25PM 12             MR. CHOUDHRI:  I understand, Your Honor.  I

12:25PM 13   am happy to fix that.

12:25PM 14             THE COURT:  I'm just telling you what it

12:25PM 15   says.

12:25PM 16             MR. CHOUDHRI:  If I may, Your Honor,

12:25PM 17   address the Court?

12:25PM 18             THE COURT:  About what?

12:25PM 19             MR. CHOUDHRI:  I wanted to respond to some

12:26PM 20   of the things that were said, Your Honor, and Mr.

12:26PM 21   Drinnon has taken about 30 minutes giving background

12:26PM 22   about all these other cases, and fraud, and lying, and

12:26PM 23   his family and all these things.  And I think it is very

12:26PM 24   important for me to -- there is always two sides, and

12:26PM 25   there is a history here.

12:26PM 1          Mr. Drinnon has sued my father, my late

12:26PM 2    father.  He has sued my sister, who is a physician, and

12:26PM 3    her deceased partner, and his kids.  Mr. Drinnon has

12:26PM 4    sponsored litigation with my ex-wife, and brought a

12:26PM 5    lawsuit in Harris County that went on for eight years

12:26PM 6    where I couldn't even get remarried.  And they had

12:26PM 7    injunctions and lis pendens over and over.

12:26PM 8          And, Your Honor, I want you to be aware

12:26PM 9    there is a whole history.  He talks about a HREP, and

12:26PM 10   bankruptcy, and these other cases.  When he says that,

12:26PM 11   it is really important the facts come out.  And I have

12:26PM 12   -- I may not be opposed to discovery and taking his

12:26PM 13   deposition, and if he wants to take my deposition, I am

12:26PM 14   here.  I am in this case.  And I want the facts to come

12:26PM 15   out, Your Honor, because there is a lot of history here,

12:27PM 16   and there's a lot of torture that I went through.

12:27PM 17         And Mr. Drinnon was also taking pictures

12:27PM 18   and videos of people in the courtroom, by the way, okay,

12:27PM 19   to intimidate them.  My mom has been sued.  My father.

12:27PM 20   By the way, he mentioned guys and guns.  This man, Dward

12:27PM 21   Darjean, who has been working for me for 20 years, he

12:27PM 22   came in my office, and his client came to my office with

12:27PM 23   15 guys and guns, in May 2012, a week after I lost my

12:27PM 24   dad.  There is a lot of history here.  There is a lot of

12:27PM 25   rumors that people have heard, but the facts are the

12:27PM 1    facts.

12:27PM 2                     And what Mr. Drinnon isn't telling you is

12:27PM 3    how involved he is, and how many lenders he has

12:27PM 4    contacted.  Why he doesn't want to give communications

12:27PM 5    between the Bank of Kuwait and him is pretty obvious.

12:27PM 6    There is a lot I -- I have become aware of.  I have

12:27PM 7    investigated.  This is -- I haven't sued him for 12

12:27PM 8    years, that is true.  He has been suing me and my family

12:27PM 9    over and over and over again.

12:27PM 10                    And by the way, I also have a witness here

12:27PM 11   who witnessed him telling the jury before closing

12:28PM 12   argument to Google me, and, Your Honor, also, in another

12:28PM 13   case, I have Jim -- Mr. Wetwiska here, who got a

12:28PM 14   mistrial twice from a judge, where he went to the jury

12:28PM 15   and said there is a whole reason -- there is whole Wayne

12:28PM 16   Dolcefino section of Mr. Choudhri.  All you got to do is

12:28PM 17   Google him.  He said that on the record to a jury, Your

12:28PM 18   Honor.  This has to stop.  There is a lot going on here.

12:28PM 19   There is a lot.

12:28PM 20                    By the way, when he talks about fraud and

12:28PM 21   this and that.  Mr. Drinnon, I'm trying to settle a

12:28PM 22   matter with Osama Abdullatif that has been going on for

12:28PM 23   15 years.  Osama Abdullatif and I are in a big dispute

12:28PM 24   and Mr. Drinnon has represented him in countless

12:28PM 25   hearings and countless cases, and when I am talking to

12:28PM  1    him to try to settle, Mr. Osama Abdullatif -- Mr.

12:28PM  2    Drinnon threatened Jim Wetwiska with a bar grievance and

12:28PM  3    a lawsuit, that he was going to file a lawsuit against

12:28PM  4    Mr. Wetwiska.

12:28PM  5              So what they have done is they have

12:28PM  6    intimidated people who are helping me.  They have

12:28PM  7    intimidated people.  He has sponsored litigation.  I can

12:28PM  8    prove it, Your Honor.  He has sponsored litigation.  He

12:29PM  9    has committed barratry.  He has sponsored litigation.

12:29PM  10             MR. DRINNON:  Barratry?

12:29PM  11             MR. CHOUDHRI:  Can I please finish?  I did

12:29PM  12   night interrupt you, Mr. Drinnon.

12:29PM  13             MR. DRINNON:  Oh, no.  I want you to

12:29PM  14   finish.

12:29PM  15             MR. CHOUDHRI:  Please don't interrupt me.

12:29PM  16             MR. DRINNON:  Please finish.

12:29PM  17             MR. CHOUDHRI:  Your Honor, here is an

12:29PM  18   e-mail that he sent to one of my lenders saying that he

12:29PM  19   has a judgment against me individually for $7.5 million.

12:29PM  20   Not true.  That lender is not doing business with me.

12:29PM  21   He has contacted all of my lenders.  He has subpoenaed

12:29PM  22   all of my lenders.

12:29PM  23             Hang on.  By the way, Your Honor, I want

12:29PM  24   you to know something.  What he wants is he has his own

12:29PM  25   motivation.  If you read that TCPA that you have, Your

12:29PM 1   Honor, if you read the proposed order, Line 2, he wants

12:29PM 2   a finding by you to find that I am an alterego of

12:29PM 3   Galleria 2425.  That is his proposed order of TCPA.

12:29PM 4   That is shameless.  It is completely shameless.

12:29PM 5            It's not even in front of you.  But that is

12:29PM 6   what he puts, because he misleads courts and judges.  He

12:29PM 7   thinks judges are not smart, and they're very smart.

12:29PM 8   And you are very fair.  And you read everything.  And

12:30PM 9   there is a lot here, and there is a lot of evidence that

12:30PM 10  is going to come out.  And there is a reason that

12:30PM 11  Pillsbury did not accept -- the registered agent refused

12:30PM 12  to accept a subpoena of communication between Pillsbury

12:30PM 13  and Mr. Drinnon.

12:30PM 14           And Mr. Drinnon talks about October 13th,

12:30PM 15  yet he stands up here and tells you about HREP and all

12:30PM 16  these other cases and how I lied.  Let's put him on the

12:30PM 17  stand, Your Honor, for his emergency relief.  Let's put

12:30PM 18  him on the stand, and I would like to have him sworn in

12:30PM 19  for this TI, because I want the facts to come out.

12:30PM 20           I have been living this nightmare.  He has

12:30PM 21  met with Wayne Dolcefino.  He has hired Wayne Dolcefino

12:30PM 22  to do hit videos about me and intimidate other judges.

12:30PM 23  I have seen judges send Wayne Dolcefino videos on a

12:30PM 24  What's App group message.  That is also improper.

12:30PM 25           MR. DRINNON:  How did he see that?

12:30PM  1            MR. CHOUDHRI:  Can I finish, Mr. Drinnon?

12:30PM  2            Mr. Drinnon has actively contacted people I

12:30PM  3  am doing business with.  What he is engaged in is

12:30PM  4  organized crime, is racketeering, is Lanham Act.  Lanham

12:30PM  5  Act is unfair competition.  And that is what he has

12:31PM  6  done, and he has participated in it.

12:31PM  7            And the bazaarest thing, Judge Manor said,

12:31PM  8  I don't understand Mr. Drinnon and Mr. Tang, I don't

12:31PM  9  know why you guys don't want to stop the foreclosure.

12:31PM 10  And by the way, we did go to mediation, we did try to

12:31PM 11  resolve things.  Mr. Drinnon also -- so I just want you

12:31PM 12  to have a timeline real quick.

12:31PM 13            I went to Pakistan and I got married in

12:31PM 14  2010.  I got divorced in 2012.  A week after I lost my

12:31PM 15  dad, I was under attack by Mr. Drinnon and his client.

12:31PM 16  I have affidavits.  I have witnesses in the room that

12:31PM 17  they witnessed these people.  I went through hell.  And

12:31PM 18  they changed the narrative.  They made the narrative

12:31PM 19  against me, and I want the facts to come out, and I am

12:31PM 20  tired because the fact is, is he has bullied everybody.

12:31PM 21            He has intimidated my lawyers.  He has

12:31PM 22  called my lawyers, and recorded my lawyers, and said he

12:31PM 23  was going to file a bar complaint and file a lawsuit

12:31PM 24  against her.  His -- and Mr. Drinnon has my hard drive

12:31PM 25  with all my confidential attorney/client privilege, and

12:31PM 1    I can prove it, Your Honor.  He has it from Chris Wyatt.

12:32PM 2    Chris Wyatt was a paralegal who worked for me and fed

12:32PM 3    him information.  He has my entire hard drive and he

12:32PM 4    should be -- he can represent himself, but he cannot

12:32PM 5    represent any other party, because he should be

12:32PM 6    disqualified.

12:32PM 7         I will be bringing a motion for

12:32PM 8    disqualification of Mr. Drinnon and Mr. Tang.  Mr. Tang

12:32PM 9    represented me in nine cases -- in nine cases.  I

12:32PM 10   have --

12:32PM 11        THE COURT:  Yeah, but you wouldn't be

12:32PM 12   bringing it here, because, apparently, Mr. Tang is not

12:32PM 13   in front of me.  So I feel like we are straying way far.

12:32PM 14        MR. CONRAD:  Actually, that's a perfect

12:32PM 15   segue, and I'm sorry, because you have brought this in.

12:32PM 16        THE COURT:  Hold on.

12:32PM 17        MR. CONRAD:  Look, we have sat here.  This

12:32PM 18   is a pretty discrete issue, and I do agree.  He just

12:32PM 19   filed an amended petition in the 80th court under

12:32PM 20   Naissance Galleria against the National Bank of Kuwait,

12:32PM 21   alleging every single -- almost exactly the carbon copy

12:32PM 22   that's before Your Honor in this court, and set it for

12:32PM 23   hearing at 3:00 today for a TRO.

12:33PM 24        And so there -- I mean, he just said, Look,

12:33PM 25   I can't believe Judge Manor -- that's Judge Manor,

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

12:33PM  1   right, the 80th court.  Mr. Choudhri just said, like,

12:33PM  2   look, I can't belive they are not, like, you know,

12:33PM  3   trying to stop the foreclosure.  Remember, we were here

12:33PM  4   last week.  I asked them:  Are you filing a TRO?  They

12:33PM  5   went for 45 minutes or so, you know, to try to figure

12:33PM  6   out, are we going to do a TRO, or are we going to do a

12:33PM  7   temporary injunction?  I brought that up, right?

12:33PM  8           They said, all right.  We are going with

12:33PM  9   the TI, and we proceeded.  We did not go forward with

12:33PM 10   the TRO.  So just this morning at, like, 10:00 a.m.

12:33PM 11   right when this hearing started with Mr. Drinnon's

12:33PM 12   motion, they filed us.  And it's the exact same thing.

12:33PM 13   Literally, they just changed Naissance Galleria.  But

12:33PM 14   the relief -- I mean, there are a few different causes

12:33PM 15   of action that are additional in this case, but,

12:33PM 16   literally, I mean, I'm just asking because the Court

12:33PM 17   asked for a status conference on this issue today.  I

12:33PM 18   mean, I think that this is a limited issue.  Obviously,

12:33PM 19   we're not involved with this -- Mr. Drinnon and the

12:34PM 20   issues with the Galleria 2425 on this motion.  But, I

12:34PM 21   think we're getting pretty far afield.  I just wanted to

12:34PM 22   correct some of what Mr. Choudhri just said.

12:34PM 23           MR. ADROGUÉ:  And, Your Honor, we did file

12:34PM 24   that in the 80th because we were in front of Judge

12:34PM 25   Manor -- let me briefly.

12:34PM   1              Naissance Galleria filed that.  We were in
12:34PM   2    front of Judge Manor on Monday, and we were expressing
12:34PM   3    the frustration we were having with not being able to
12:34PM   4    find Azeemeh, who is -- who is hiding in Europe, because
12:34PM   5    she is supposed to work with Ali on Naissance Galleria.
12:34PM   6    And then we said, what can we do?
12:34PM   7              She is, like, well Naissance Galleria, Ali
12:34PM   8    works for Naissance, he can do whatever you want him to
12:34PM   9    do in this court.  And so we decided to file, amend the
12:34PM  10    petition and add the Bank of Kuwait in there, because we
12:34PM  11    are doing everything legally possible.  "We" being
12:34PM  12    Naissance Galleria are doing whatever we can to prevent
12:34PM  13    the foreclosure.
12:34PM  14              And in the petition -- in the petition, it
12:35PM  15    sets forth why we think Naissance Galleria is an
12:35PM  16    affected party by the effect of the foreclosure.  I know
12:35PM  17    counsel is going to disagree with me, and he will argue
12:35PM  18    that.  But that is a true statement, that we did file
12:35PM  19    in the 80th District this morning, and we have a TRO set
12:35PM  20    for this afternoon, because we need to prevent the
12:35PM  21    foreclosure.
12:35PM  22              And, again, just to remind you, Judge, that
12:35PM  23    the bankruptcy was filed, and the bank filed a motion to
12:35PM  24    dismiss in bankruptcy, but that was denied.  So it
12:35PM  25    appeared that a plan was going to be confirmed under

12:35PM  1   Chapter 11 until the Halloween -- well, it is true.  The

12:35PM  2   Halloween motion filed by Naissance Galleria,

12:35PM  3   unauthorized filed, and then they filed a letter to the

12:35PM  4   bankruptcy court.

12:35PM  5              THE COURT:  Have you looked at the

12:35PM  6   temporary injunction, the actual temporary injunction

12:35PM  7   you want the Judge to sign in the 80th?

12:36PM  8              MR. ADROGUÉ:  The temporary restraining

12:36PM  9   order or injunction?

12:36PM  10             THE COURT:  No.  The temporary injunction

12:36PM  11  order.  Have you actually looked at the order?

12:36PM  12             MR. ADROGUÉ:  We have.  Let me see if I can

12:36PM  13  pull it up real quick.

12:36PM  14             THE COURT:  Because it basically -- it's

12:36PM  15  got the style of this case on it.

12:36PM  16             MR. CONRAD:  I can show you some other

12:36PM  17  things that they refer to.  It's a carbon copy.

12:36PM  18             MR. CHOUDHRI:  Your Honor, if I can just

12:36PM  19  address one thing I want to clarify, is that in the

12:36PM  20  80th, Naissance is the party.  In this case, Naissance

12:36PM  21  is not the party.  And we brought -- Naissance brought

12:36PM  22  the process server, and we had a TI set, and the process

12:36PM  23  server that served here, and Judge Manor found that she

12:36PM  24  was dodging service.  Mr. Tang said that it was thrown

12:36PM  25  to her.

12:36PM 1              So the problem we had is, we wanted

12:36PM 2 Ms. Zaheer to be here for this TI, and she has been --

12:36PM 3 she is in Europe, and knew that the hearing was going on

12:37PM 4 in the other court, and that we are trying to serve her.

12:37PM 5              THE COURT:  But ultimately, at the end of

12:37PM 6 the day -- I understand there is a whole lot of related

12:37PM 7 litigation going on, but at the end of the day,

12:37PM 8 Naissance is not before me.

12:37PM 9              MR. CHOUDHRI:  That is correct.  You're

12:37PM 10 absolutely right.

12:37PM 11              THE COURT:  In this case.

12:37PM 12              MR. DRINNON:  Not yet.  Yeah.

12:37PM 13              THE COURT:  Lord.  All right.  Well, at

12:37PM 14 this moment, I can only look -- I am not going to

12:37PM 15 predict the future, and I am not going to guess what

12:37PM 16 anybody is going to do.  I'm just saying, at this

12:37PM 17 second, Naissance is not before me.  They are not a

12:37PM 18 party in front of me.

12:37PM 19              I understand that there is parallel

12:37PM 20 litigation, but ultimately, at the end of the day, I

12:37PM 21 have had an extensive temporary injunction hearing, like

12:37PM 22 a year-and-a-half ago, on this case.

12:37PM 23              MR. CHOUDHRI:  Different matter, Your

12:37PM 24 Honor.  Different circumstance, different situation.

12:37PM 25 And I have the evidence.  And I can --

12:37PM   1          THE COURT:  Ultimately, at the end of the
12:37PM   2    day, the issue with this case, the foreclosure in this
12:37PM   3    case was predicated on Galleria 2425's failure to pay
12:38PM   4    under the note.  And so ultimately, in the -- the
12:38PM   5    original temporary injunction that was awarded, that was
12:38PM   6    why part and parcel of it was that it required Galleria
12:38PM   7    2425 -- and I am being very specific when I am saying
12:38PM   8    this because separate party than you, Mr.  Choudhri --
12:38PM   9    but Galleria 2425 was required to put money into the
12:38PM   10   registry of the Court as well as do all of these things
12:38PM   11   to buy time until we got to a hearing where it
12:38PM   12   miraculously settles because I would not grant a
12:38PM   13   continuance because it was preferentially set.
12:38PM   14          MR. CHOUDHRI:  You are correct.
12:38PM   15          THE COURT:  So I understand what you are
12:38PM   16   saying that you feel like that this is different, but
12:38PM   17   ultimately, ultimately, the issues in this case, I feel
12:38PM   18   like -- and this is this case, the 2023 case, not the
12:38PM   19   2021, 2021 -- 2021 case.  Ultimately, I think the 2023
12:39PM   20   issues still come down to money.  Your damages are
12:39PM   21   monetary.
12:39PM   22          MR. CHOUDHRI:  Your Honor, it's property,
12:39PM   23   and this property is unique.  And it is a different
12:39PM   24   circumstance and I want to just clarify something.
12:39PM   25          THE COURT:  Right now you can't talk about

12:39PM   1   this, because that is not part of your suit.  Your suit

12:39PM   2   is just against Azeemeh.

12:39PM   3                  MR. CHOUDHRI:  And the bank for

12:39PM   4   interfering --

12:39PM   5                  THE COURT:  But it is not.  And until you

12:39PM   6   correct it, I am telling you right now, what your

12:39PM   7   petition in intervention is for, is a fraud case against

12:39PM   8   Azeemeh Zaheer.  I don't know if I said that right.

12:39PM   9                  MR. DRINNON:  Zaheer

12:39PM  10                  THE COURT:  Zaheer.  So that is what it is,

12:39PM  11   and so right now --

12:39PM  12                  MR. CHOUDHRI:  I thought I made claims,

12:39PM  13   Your Honor.  I'm sorry.

12:39PM  14                  THE COURT:  I am just saying, when you

12:39PM  15   listed who the parties are that you are concerned about,

12:39PM  16   it is Galleria 2425, it is yourself, and it's

12:39PM  17   Ms. Zaheer, and that is it.  So until that is fixed, you

12:39PM  18   don't have a claim against them.  You can say whatever

12:39PM  19   you want, but ultimately, right now you don't have a

12:39PM  20   claim against -- against Galleria -- or against National

12:40PM  21   Bank of Kuwait individually, sir.

12:40PM  22                  MR. CHOUDHRI:  Maybe I made a mistake.  I

12:40PM  23   was intervening in the case, and they are in the case,

12:40PM  24   and on paragraph 13, I have made a claim against them

12:40PM  25   for interfering with my interests and my rights against

12:40PM 1    the National Bank of Kuwait.

12:40PM 2                THE COURT:  We need things to be clear

12:40PM 3    here, because, as you can see, when you do not make

12:40PM 4    things clear, confusion happens.  So I'm just telling

12:40PM 5    you, as I read it, I don't read it as a claim against

12:40PM 6    National Bank of Kuwait.  I read it as what you have

12:40PM 7    made a claim against is just Ms. Zaheer.

12:40PM 8                MR. CHOUDHRI:  My understanding, Your

12:40PM 9    Honor, is that it is a conspiracy between Ms. Zaheer --

12:40PM 10               THE COURT:  You didn't plead conspiracy,

12:40PM 11   though.  That is the problem.  Your pleading, your

12:40PM 12   intervention is for fraud, and, I mean, promissory

12:40PM 13   estoppel.  And you literally say here, the word damaged

12:40PM 14   from defendant singular, and all throughout here, it is

12:41PM 15   defendant singular, and so the only defendant that you

12:41PM 16   reference is Azeemeh Zaheer.  So I'm just telling you

12:41PM 17   what the pleading in its very plain language says,

12:41PM 18   Mr. Choudhri.

12:41PM 19               MR. CHOUDHRI:  Is that the last pleading

12:41PM 20   that is filed, Your Honor?

12:41PM 21               THE COURT:  It is the only one that I got

12:41PM 22   in here.

12:41PM 23               MS. MACGEORGE:  And, Your Honor, to

12:41PM 24   clarify, what is -- you know, what is different, it is

12:41PM 25   not just about money in this case.  As with any

12:41PM 1 breach-of-contract claim, you are going to end up having

12:41PM 2 to determine whether a prior breach or excuse is there,

12:41PM 3 right?  And so this is a lender liability case.  This is

12:41PM 4 about whether the lender is doing something that is

12:41PM 5 prohibited under the lender liability laws.  And if that

12:41PM 6 is the case, then there is a prior breach, and there is

12:41PM 7 excuse, and there is all these other things that are

12:41PM 8 brought up in this case.

12:41PM 9          So it is not just about whether -- whether

12:41PM 10 the mortgage payments were paid.  It is also about

12:41PM 11 whether there was actions by the National Bank of

12:41PM 12 Kuwait, and any other parties acting in concert with

12:42PM 13 them, to -- to create a situation where we're excused

12:42PM 14 from performance, where -- where there is damages on our

12:42PM 15 side.

12:42PM 16          MR. CONRAD:  Just real quick.  I know Mr.

12:42PM 17 Drinnon is sitting here waiting for a ruling.

12:42PM 18          THE COURT:  Everybody is waiting for

12:42PM 19 things.  Go head, Mr. Conrad.

12:42PM 20          MR. CONRAD:  Just like, look, you heard

12:42PM 21 this from April to July 5th.  What was new after July?

12:42PM 22 What did they say?  Mr. Wetwiska said:  All we needed

12:42PM 23 was more time.  We will fix it.  Right?  That was the

12:42PM 24 Paul Caldwell issue.  It was the issues about all these

12:42PM 25 people calling me.  Right?  I mean, this is a planned

12:42PM 1  attack that they have constantly.  This is all this is,

12:42PM 2  is a circus that they create, throughout this entire

12:42PM 3  court system, and that is why we're moving for sanctions

12:42PM 4  in order to show cause.  But, I digress.

12:42PM 5              All of this, you know, has been considered

12:42PM 6  with those status conferences that we had before Your

12:42PM 7  Honor repeatedly.  I asked for them, because they were

12:43PM 8  calling -- they had agents or people calling me from six

12:43PM 9  ways from Sunday trying to plant seeds so they could

12:43PM 10 create more evidence, quote/unquote, that the bank was

12:43PM 11 doing something improper.  And I came to your court and

12:43PM 12 said:  What do we do with this?

12:43PM 13             I constantly informed Mr. Wetwiska about

12:43PM 14 all these issues.  There was nothing hiding.  All we

12:43PM 15 wanted was for them to perform the settlement agreement.

12:43PM 16 They didn't.  They have never paid.  They don't pay

12:43PM 17 taxes.  They don't pay anything.  They just want more

12:43PM 18 time.  It is all about leverage.  It is leverage,

12:43PM 19 leverage, leverage.  That is the only thing that they

12:43PM 20 have with respect to -- that is why they want this

12:43PM 21 building.  They have nothing else.

12:43PM 22             These claims, to quote like my grandfather,

12:43PM 23 will fall apart like a two-dollar suitcase as soon as

12:43PM 24 this -- you know, if foreclosure goes forward.  There is

12:43PM 25 no basis whatsoever behind them.

12:43PM   1          MR. POPE:  If I --

12:43PM   2          MR. CONRAD:  Again -- hold on.

12:43PM   3          The key issue right here is that the Court

12:43PM   4  has considered all this, granted them the time, over our

12:43PM   5  objections, you will recall, back in April we said

12:43PM   6  absolutely not.  What is new?  They filed bankruptcy.

12:44PM   7  Guess what?  They got another 90 to 120 days, right?

12:44PM   8  Because of the stay, that is automatic.

12:44PM   9          Yes, we filed a motion to dismiss.  The

12:44PM  10  bankruptcy was dismissed on November 1st at the status

12:44PM  11  conference by Judge Lopez.  I think Your Honor has all

12:44PM  12  the transcripts from those three hearings, and you said

12:44PM  13  you wanted to go back and review all of them.

12:44PM  14          I think it is very clear the reasons and

12:44PM  15  the concerns that he had.  It wasn't about Mr. Tang.  It

12:44PM  16  wasn't about Mr. Drinnon.  There were a litany of other

12:44PM  17  things.  And so what is new?  The only thing that they

12:44PM  18  are asking for here in this whole TI, which we talked

12:44PM  19  about last week, is that their bankruptcy case got

12:44PM  20  dismissed.  That's it.

12:44PM  21          And they didn't appeal it.  And Mr. -- and

12:44PM  22  Ms. Hayward is not here today, which is interesting, but

12:44PM  23  I think -- I digress again, but she didn't file an

12:44PM  24  appeal.

12:44PM  25          If the issue was, look, there is some

12:44PM 1  conspiracy, whatever, what is the damage?  What is the
12:45PM 2  harm?  The harm is that their bankruptcy case got
12:45PM 3  dismissed, right?  That's it.  And that they don't have
12:45PM 4  the stay anymore.  Why didn't they appeal the bankruptcy
12:45PM 5  case?  If all of this was the issue that they have, that
12:45PM 6  Judge Lopez got apparently confused, why not appeal?
12:45PM 7  Why not seek an additional stay from either the district
12:45PM 8  court judge there in federal court, or by Mr. -- or by
12:45PM 9  Judge Lopez in the bankruptcy court.
12:45PM 10          They are coming to you to do this.  There
12:45PM 11 is no basis.  And then they are probably going to go
12:45PM 12 right back and file another bankruptcy again after this.
12:45PM 13          I mean, it -- it never ends.  The only
12:45PM 14 thing that I said last week, again, is it's time to rip
12:45PM 15 the Band-Aid off, because we have to move forward.
12:45PM 16 There is no basis for a claim.  And you're 100 percent
12:45PM 17 right.  What I said about leverage, it is all about
12:45PM 18 money.  These are all money damages.
12:45PM 19          If they want to move forward with their
12:45PM 20 claims, fine.  You know we will tee them up.  We do have
12:45PM 21 those set for hearing on the 12th currently.  And so --
12:45PM 22 but we are going to be filing 91a claims, probably, on
12:45PM 23 these new claims, which are specious, which were flatly
12:46PM 24 ridiculous, honestly.
12:46PM 25          And so they are doing -- like they said it

12:46PM 1  themselves, they are doing everything that they can to

12:46PM 2  stop -- to do the foreclosure, and that is expressly

12:46PM 3  what the Court ordered them not to do.  The Court said

12:46PM 4  the bank can go forward on July 5th, you know, with

12:46PM 5  that -- with the foreclosure until they filed the

12:46PM 6  bankruptcy.

12:46PM 7              One last thing.  Okay?  I am going to put

12:46PM 8  my tinfoil hat on right now, okay, so, just huge ask for

12:46PM 9  us, right?  Remember the July 5th hearing, there was a

12:46PM 10 couple different -- Mr. Tang came.  Mr. Pope was there.

12:46PM 11 Right?  This was the TRO, last ditch attempt to get a

12:46PM 12 TRO by Galleria 2425 and Mr. Pope.

12:46PM 13             Mr. Tang walks in.  Mr. Pope says, Oh,

12:46PM 14 great, who are you?  He's like, I represent Naissance

12:46PM 15 Galleria.  Oh, okay.  Well, you go first, right?

12:46PM 16 Because you're getting -- you are wanting the same thing

12:47PM 17 I want, which is a foreclosure -- I mean, to stop the

12:47PM 18 foreclosure.

12:47PM 19             If they had such a big problem with

12:47PM 20 Mr. Tang advocating on behalf of Naissance Galleria --

12:47PM 21 again, this is the 129th case, but you were the

12:47PM 22 ancillary judge that day, this is with Judge Gomez.

12:47PM 23 Mr. Tang is walking in here.  Mr. Pope is here, he says

12:47PM 24 you go first, because we want the same thing.  I got my

12:47PM 25 tinfoil hat on right now, right?

12:47PM  1          What are we talking about?  You denied

12:47PM  2  that -- on that -- that motion, that TRO.  But now, we

12:47PM  3  have another TRO by Naissance Galleria in the ancillary

12:47PM  4  court at 3:00 p.m. today, but if you sign an order today

12:47PM  5  that says the bank can fore- -- that's our proposed

12:47PM  6  order -- can foreclose on December 5th or any other time

12:47PM  7  after that, I am almost certain, I can't speak -- we

12:47PM  8  will go talk to the ancillary judge but I am pretty

12:47PM  9  sure we're going to go forward with that foreclosure on

12:48PM  10  December 5th.

12:48PM  11          But if you punt this, that's what they

12:48PM  12  want, and that's why I stood up, I'm sorry, Your Honor,

12:48PM  13  and inter- -- and stopped Mr. Drinnon, because I was

12:48PM  14  concerned that it was a tactical decision to string this

12:48PM  15  hearing out today so I couldn't -- we couldn't have an

12:48PM  16  order from Your Honor -- or a ruling from Your Honor.

12:48PM  17  And I am not saying you are going to make a ruling

12:48PM  18  today.  But I think it actually needs to be a ruling

12:48PM  19  today, and it is almost imperative, given these tactics

12:48PM  20  that they are taking, and trying to get a total second

12:48PM  21  bite at the apple, even copying the same proposed order,

12:48PM  22  and filing it in that other case.

12:48PM  23          If that is not a second bite at the apple,

12:48PM  24  I don't know what is.  And so that is why I stood up

12:48PM  25  because I felt like, and it was -- this was a tactical

12:48PM 1   decision to delay this hearing as much as possible, so

12:48PM 2   that other hearing could go forward.

12:48PM 3                 MS. MACGEORGE:  Just to address that, Your

12:48PM 4   Honor --

12:48PM 5                 MR. DRINNON:  Judge, I just want to finish

12:48PM 6   because I want to go.  Is that --

12:48PM 7                 MS. MACGEORGE:  But with --

12:48PM 8                 THE COURT:  Hold on.  I'll let Mr. Drinnon

12:49PM 9   go.

12:49PM 10                 MR. DRINNON:  With all due respect, Judge,

12:49PM 11  I am done.  There is no more arguing about my motion.

12:49PM 12  You have everything that I can possibly tell you, that I

12:49PM 13  have told you.  I have another hearing that I have to

12:49PM 14  actually be at.  I was going to ask to be excused, and,

12:49PM 15  please, if they -- if everybody can make their

12:49PM 16  arguments, I assume you can rule however you are going

12:49PM 17  to rule.  That is fine.  However you want to do it.  But

12:49PM 18  I just want to -- of course, they are going to have to

12:49PM 19  sit through me, and I appreciate that, too.  But I just

12:49PM 20  want to be done, if we are going -- my motion is over.

12:49PM 21  I don't have anything else I can dazzle you with.

12:49PM 22                 THE COURT:  Court denies the motion for

12:49PM 23  emergency discovery.

12:49PM 24                 MR. DRINNON:  Okay.  We will take up the --

12:49PM 25                 MS. MACGEORGE:  Your Honor, we intend to

12:49PM 1  call Mr. Drinnon as a witness during this TI, so we

12:49PM 2  would like to have him sworn in.

12:49PM 3           THE COURT:  You are -- at this point, no.

12:49PM 4  We are going to take a recess and be in recess for about

12:49PM 5  45 minutes.  Now that I know that you are here until

12:50PM 6  3:00 anyway, I need a break.  Take a break.  Let's just

12:50PM 7  say we're in recess until about 1:55.

12:50PM 8           Mr. Drinnon, you are excused.

12:50PM 9           MR. DRINNON:  Thank you.

12:50PM 10          MR. ADROGUÉ:  Your Honor, we have no

12:50PM 11 intention of dragging this on.  We had hoped that TCPA

12:50PM 12 would disappear, so in response to counsel's comment, we

12:50PM 13 are ready to go on the TI.  We have been.  So we

12:50PM 14 didn't --

12:50PM 15          THE COURT:  Let me -- let me look at a few

12:50PM 16 things.  All right.  Y'all are all excused.  Until --

12:50PM 17 the rest of you on the TI come back at 1:45.

12:50PM 18          MR. ALEXANDER:  Your Honor --

12:50PM 19          THE COURT:  Yes.

12:50PM 20          MR. ALEXANDER:  -- my name is Jerry

12:50PM 21 Alexander.  I have something for the Court that I have

12:50PM 22 already given to counsel for the bank.  It deals with

12:50PM 23 the temporary injunction hearing, if you would like to

12:50PM 24 see it.  These are three things.  Thank you.

12:50PM 25          THE COURT:  Thank you.

12:50PM  1          MR. DRINNON:  Off the record, Judge?

12:50PM  2          MS. MACGEORGE:  Your Honor, one last --

12:50PM  3          THE COURT:  This has been handed to -- you

12:50PM  4  have given a copy -- okay.  Y'all have a copy.

12:50PM  5          MR. CONRAD:  Yes.

12:50PM  6          MS. MACGEORGE:  Your Honor, one last issue.

12:50PM  7  Mr. Drinnon was taking photographs and videos from your

12:51PM  8  courtroom this morning of the witness -- of the

12:51PM  9  audience.  And this woman here, and she can testify to

12:51PM  10  it, if you would like, but she -- I think it's an

12:51PM  11  intimidation tactic or at least for the purpose of

12:51PM  12  harassment.

12:51PM  13          MR. DRINNON:  I was actually going to and

12:51PM  14  then --

12:51PM  15          THE COURT REPORTER:  I need you to not

12:51PM  16  speak over --

12:51PM  17          THE COURT:  Everybody needs to stop.

12:51PM  18          MR. DRINNON:  I was going to, Judge, but

12:51PM  19  then I realized there is a specific prohibition against

12:51PM  20  television or taking video.

12:51PM  21          THE COURT:  You cannot take photographs in

12:51PM  22  the courtroom.

12:51PM  23          MR. DRINNON:  That is right, and I didn't.

12:51PM  24          THE COURT:  Can't take video.

12:51PM  25          UNIDENTIFIED SPEAKER:  Your Honor, I

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

12:51PM 1  witnessed him first taking a photo.  I got up because I

12:51PM 2  didn't know what to do, to which he then smiled,

12:51PM 3  proceeded to follow me with his device, and then sat

12:51PM 4  back down, sent it to somebody, because I saw his

12:51PM 5  motion.  Proceeded to laugh.  Looked back to me.  To

12:51PM 6  first --

12:51PM 7            THE COURT:  I don't even know who you are.

12:51PM 8            UNIDENTIFIED SPEAKER:  I understand, and I

12:51PM 9  don't think he needs to know or anyone, but it is the

12:51PM 10  fact --

12:51PM 11            THE COURT:  If you are going to talk and

12:51PM 12  you are going to be on the record, you are putting

12:51PM 13  yourself -- so now you have to tell us who you are,

12:52PM 14  ma'am.

12:52PM 15            MR. DRINNON:  Yeah, go for it.

12:52PM 16            THE COURT:  Because I don't know who you

12:52PM 17  are, and you are not under oath.  So we are in recess

12:52PM 18  until 1:45.

12:52PM 19            MR. DRINNON:  Thank you.

12:52PM 20            THE COURT:  You are excused, Mr. Drinnon.

12:52PM 21  There should be not photographs.  If I find out there

12:52PM 22  were photographs taken in the courtroom, I will sanction

12:52PM 23  you accordingly.  Do you understand that?

12:52PM 24            MR. DRINNON:  I do.

01:49PM 25  (Proceedings recessed at 12:52 and reconvened at 2:10.)

02:10PM 1          THE COURT:  Y'all can be seated.  I apologize

02:10PM 2    for the delay.  I know you all have places to go.

02:10PM 3    Ultimately, the issue about who controls Naissance is

02:10PM 4    not in front of me, not of my concern, not a party in

02:10PM 5    this case, as I see it right now.  I understand that

02:10PM 6    there are other lawsuits out there involving Naissance

02:10PM 7    that purports to foreclose against Galleria 2425.  None

02:11PM 8    of them are in front of me.  They are in my other

02:11PM 9    courts, not my concern right now.

02:11PM 10   Ultimately, my concern at the end of the day is this

02:11PM 11   case, which is, basically, essentially the same thing as

02:11PM 12   the first case, which is the 2021 action that we -- not

02:11PM 13   litigated to trial, but came very darn close, and we

02:11PM 14   have had multiple hearings about.

02:11PM 15   I have looked at your documents that you provided me,

02:11PM 16   Mr. Alexander.  The arguments you make in your brief

02:11PM 17   appear to me to be a lot of the exact same arguments

02:11PM 18   that were made the first time we argued this in the 2021

02:11PM 19   matter.

02:11PM 20   So all of that seems to relitigate things that were --

02:11PM 21   we did, like, five, ten days of testimony.  I mean,

02:11PM 22   Mr. Choudhri was on the stand extensively when we talked

02:11PM 23   about the first temporary injunction.  We had a very

02:11PM 24   long, very thorough temporary injunction hearing, the

02:12PM 25   first time in the 2021 matter.  I feel like in this

02:12PM 1   case, the 2023 case is essentially the same as the 2021

02:12PM 2   matter with the slightly little additional twist of

02:12PM 3   dealing with Ms. Zaheer, because she was not a party in

02:12PM 4   the 2021 litigation.

02:12PM 5   I don't know what y'all intend to do, or how you intend

02:12PM 6   to do it, but at this point, I don't know -- let me ask

02:12PM 7   you this.  What testimony do you intend to put on?

02:12PM 8           MR. ALEXANDER:  The testimony I would put

02:12PM 9   on would be, I would ask Mr. Wetwiska to come on and

02:12PM 10  talk about some post settlement agreement things that

02:12PM 11  happened.  I would ask --

02:12PM 12          THE COURT:  Are these things I have not

02:12PM 13  already heard?

02:12PM 14          MR. ALEXANDER:  I don't -- you probably

02:12PM 15  have heard those, but we would like a record anyway.

02:12PM 16          THE COURT:  There has been a record every

02:12PM 17  single time we have had a hearing in this case.

02:13PM 18          MR. ALEXANDER:  We would like a record so

02:13PM 19  that if the Court the denies our relief, we could go to

02:13PM 20  another court, the appellate court, and, perhaps, they

02:13PM 21  will give us a stay.

02:13PM 22          I was just -- I was just told that you

02:13PM 23  hadn't heard evidence.  You had heard attorney

02:13PM 24  arguments.

02:13PM 25          THE COURT:  Right.  An attorney who has a

02:13PM 1    duty of candor to the Court.  So if I have to put him

02:13PM 2    under oath every time to make him be truthful to me, we

02:13PM 3    have a bigger problem here.  Do you agree with me,

02:13PM 4    Ms. MacGeorge?

02:13PM 5                MS. MACGEORGE:  I agree, Your Honor, but we

02:13PM 6    just need the evidence to actually exist in the Court's

02:13PM 7    record.

02:13PM 8                THE COURT:  It is in the Court's record

02:13PM 9    because he said it in open court.  Now, unless you are

02:13PM 10   trying to say that he lied to me in open court earlier,

02:13PM 11   I am sure that's not what you are saying, that Mr.

02:13PM 12   Wetwiska would ever lie to this Court.  And why is there

02:13PM 13   a concern that we need his testimony under oath as to

02:13PM 14   what he has openly represented to this Court on the

02:13PM 15   record when he has a duty of candor to this Court?

02:13PM 16               MS. MACGEORGE:  I am not saying that, Your

02:13PM 17   Honor.

02:13PM 18               THE COURT:  Then why do I need it under

02:14PM 19   oath?

02:14PM 20               MS. MACGEORGE:  It's just -- it is part of

02:14PM 21   the evidentiary hearing.  That is our understanding, is

02:14PM 22   that we need to have it as presented in our TI hearing,

02:14PM 23   as part of the evidence.

02:14PM 24               THE COURT:  Then anything he has said is,

02:14PM 25   essentially, an admission, right?  He is -- is there any

02:14PM 1    reason why the Court should not take what Mr. Wetwiska

02:14PM 2    has told me in other hearings as not truthful?

02:14PM 3                    MS. MACGEORGE:  No, Your Honor.

02:14PM 4                    THE COURT:  Mr. Alexander, is there

02:14PM 5    something that I don't know?

02:14PM 6                    MR. ALEXANDER:  You may not be -- you may

02:14PM 7    not have an e-mail that I was going to introduce, but I

02:14PM 8    don't know what -- I don't know what the Court knows.  I

02:14PM 9    am sure Mr. Wetwiska told the truth to you every time he

02:14PM 10   spoke to you.

02:14PM 11                   THE COURT:  I would hope so.

02:14PM 12                   MR. ALEXANDER:  No.  I am sure he did.

02:14PM 13                   THE COURT:  Because I have had a lot of

02:14PM 14   hearings about this case, a lot of hearings, and it has

02:14PM 15   been assured that every single one of those hearings

02:14PM 16   took place on the record because of the continuing

02:14PM 17   issues and problems, the fact that I know lawyers don't

02:14PM 18   get along in this case.  I have made sure that

02:14PM 19   everything was on the record.  And so I am going to hold

02:15PM 20   all of the attorneys in this matter, and remind you that

02:15PM 21   you all have a duty of candor to the Court.

02:15PM 22                   MR. ALEXANDER:  Absolutely.

02:15PM 23                   THE COURT:  And you, too, Mr. Choudhri, as

02:15PM 24   you represent yourself, anything you tell this Court,

02:15PM 25   you have a duty whether you're under oath or not --

02:15PM 1              MR. CHOUDHRI:  Yes, Your Honor.

02:15PM 2              THE COURT:  -- to be truthful and candid to

02:15PM 3  this Court.  Do you understand that?

02:15PM 4              MR. CHOUDHRI:  Absolutely.

02:15PM 5              THE COURT:  All right.

02:15PM 6              MR. POPE:  If I can help them just a little

02:15PM 7  bit, Your Honor, because I was present at some of those

02:15PM 8  hearings, and the e-mails that he does have, that he

02:15PM 9  wants to present, not only did -- the Court not -- has

02:15PM 10 not heard, has not heard testimony about.

02:15PM 11             THE COURT:  Well, give it to me, then.  Let

02:15PM 12 me see.

02:15PM 13             MR. POPE:  But it also helps to tie in the

02:15PM 14 Azeemeh Zaheer situation so you can understand why that

02:15PM 15 is something to be heard today.

02:15PM 16             THE COURT:  Well, the problem is that

02:15PM 17 Azeemeh Zaheer is not in front of me, so I can't do

02:15PM 18 anything involving her.  Let me see the e-mail.

02:16PM 19 Don't -- just give it to me.  I just want to see.

02:16PM 20             Do you have a copy for opposing counsel?

02:16PM 21             MR. POPE:  Yes, Your Honor, we do.

02:16PM 22             THE COURT:  You do.

02:16PM 23             MR. POPE:  May I approach?

02:16PM 24             THE COURT:  You may.  Who is

02:17PM 25 Texascountry@protonmail.com.

02:17PM 1                    MR. CHOUDHRI:  That is my e-mail address,

02:17PM 2  Your Honor.

02:17PM 3                    MR. ADROGUÉ:  That is his e-mail.  And you

02:17PM 4  can tell there, Your Honor --

02:17PM 5                    THE COURT:  Then why did you need to e-mail

02:17PM 6  it to yourself?

02:17PM 7                    MR. CHOUDHRI:  I e-mailed it to my Jetall

02:17PM 8  Companies where sometimes my staff.

02:17PM 9                    THE COURT:  You need to speak up just a

02:17PM 10 little bit, Mr. Choudhri.

02:17PM 11                   MR. CHOUDHRI:  I forwarded that e-mail to

02:17PM 12 my Jetallcompanies.com email address, Your Honor,

02:17PM 13 because I tend to keep mostly everything in my

02:17PM 14 Jetallcompanies email address.

02:17PM 15                   MR. ADROGUÉ:  Ms. Zaheer had had proton

02:18PM 16 e-mail because its is a private e-mail that only she

02:18PM 17 had, and she forwarded that communication to him because

02:18PM 18 of the importance of it.

02:18PM 19                   THE COURT:  Mr. Conrad, have you seen this

02:18PM 20 e-mail before?

02:18PM 21                   MR. CONRAD:  No.  But I would draw the

02:18PM 22 Court's attention, and, of course, we assert objections

02:18PM 23 on this.  And this is a 2020 -- or purports to be, let

02:18PM 24 me make the record clear, a 2021 e-mail chain, right,

02:18PM 25 well before the foreclosure proceeding even started.

02:18PM 1    Again, this was prior to the settlement discussions, and

02:18PM 2    all those claims had been dismissed with prejudice.  And

02:18PM 3    if they had known about this -- I mean, Mr. Choudhri

02:18PM 4    just testified or represented in open court that he is

02:18PM 5    Texascountry@protonmail.com, but he got this,

02:18PM 6    purportedly, from Azeemeh at Naissance Capital back in

02:18PM 7    2021.

02:18PM 8                    THE COURT:  So what is the importance of

02:18PM 9    this?

02:19PM 10                   MR. ALEXANDER:  Your Honor, the importance

02:19PM 11   of this is, under limited liability law, especially, the

02:19PM 12   laws of New York, control is an important thing.

02:19PM 13                   I also gave the Court a list of sixteen

02:19PM 14   clauses in that New York loan agreement, and Bank of

02:19PM 15   Kuwait chose that law, that are control points,

02:19PM 16   including who could be and not be the manager of the

02:19PM 17   building.  There is, then, an example of the Bank of

02:19PM 18   Kuwait exercising that clause to exercise control over

02:19PM 19   the borrower.  She was not a good manager of the

02:19PM 20   building.

02:19PM 21                   THE COURT:  This is in 2021, though.  I

02:19PM 22   mean, everything about this case, about the 2023

02:19PM 23   litigation, involves what has happened since the

02:19PM 24   settlement was entered into, the purported allegations

02:19PM 25   by Galleria 2425 of alleged misconduct on behalf of

02:19PM  1  National Bank of Kuwait in interfering with y'all's

02:19PM  2  ability to settle the case, to get the funding you need,

02:20PM  3  to make the payment to settle the case and resolve it.

02:20PM  4              MR. ALEXANDER:  There will be testimony

02:20PM  5  about that.

02:20PM  6              THE COURT:  Right.  But this is a 2021

02:20PM  7  e-mail.  Why do I care?  Everything about the 2023

02:20PM  8  litigation -- and I am not here to relitigate anything

02:20PM  9  about 2022.  If I am here about the 2023 litigation,

02:20PM  10  your allegations in the 2023 litigation are everything

02:20PM  11  that has happened since the settlement.  And more

02:20PM  12  importantly, your allegations to prevent the foreclosure

02:20PM  13  are alleging conspiracy between Naissance and National

02:20PM  14  Bank of Kuwait --

02:20PM  15              MR. CHOUDHRI:  No, Your Honor.

02:20PM  16              THE COURT:  -- involving the bankruptcy.

02:20PM  17              I am telling you what I just read,

02:20PM  18  Mr. Choudhri.

02:20PM  19              Then, why do I need to hear about what

02:20PM  20  happened in 2021?

02:20PM  21              MR. ALEXANDER:  Because that is a

02:20PM  22  connection between the Bank of Kuwait and Azeemeh

02:20PM  23  Zaheer.

02:20PM  24              THE COURT:  So?

02:20PM  25              MR. ALEXANDER:  So Azeemeh Zaheer was the

02:20PM  1   one that found Mr. Choudhri originally --

02:20PM  2              THE COURT:  So?

02:20PM  3              MR. ALEXANDER:  -- to make the loan.

02:20PM  4              THE COURT:  Okay.  But that is not the

02:20PM  5   issue.  I don't think that this is relevant to what is

02:21PM  6   going on.  What else are you planning to present, if

02:21PM  7   given the opportunity, that I have not already heard,

02:21PM  8   relating to the 2023 litigation and your basis for an

02:21PM  9   injunction on just the 2023 litigation claims?

02:21PM  10              I am not reliving the TI that I heard,

02:21PM  11  literally, for days over a year ago --

02:21PM  12              MR. ALEXANDER:  May I?

02:21PM  13              THE COURT:  -- year-and-a-half ago.  It was

02:21PM  14  almost two years ago.

02:21PM  15              MR. ALEXANDER:  May I approach and ask if

02:21PM  16  you have seen this?

02:21PM  17              THE COURT:  Sure.  Make sure you give a

02:21PM  18  copy of it to Mr. Conrad, though.

02:21PM  19              MR. ALEXANDER:  I will.

02:21PM  20              MR. POPE:  That's the same one.

02:21PM  21              MR. CONRAD:  Judge, actually, while they're

02:21PM  22  scrambling to find evidence, which is not going to

02:21PM  23  exist.

02:21PM  24              MR. ALEXANDER:  We are not scrambling to

02:21PM  25  find evidence, Counsel.

02:21PM  1               MR. CONRAD:  So just to be very clear, so

02:21PM  2    what is it?  Why we are here, and I think the Court

02:21PM  3    keeps coming back to this point, what is the underlying

02:21PM  4    basis for the temporary injunction that they are asking

02:21PM  5    for here?  It's they're saying that there was an

02:21PM  6    interference with their bankruptcy case, and their

02:21PM  7    bankruptcy case got dismissed.

02:21PM  8               There is a conspiracy, you know, claim, in

02:22PM  9    their second amended petition.  We went over it a

02:22PM  10   million times, about is it the first or the second?  The

02:22PM  11   second is apparently the live one, right?

02:22PM  12              THE COURT:  Right.

02:22PM  13              MR. CONRAD:  Conspiracy is not a standalone

02:22PM  14   cause of action.  Everybody knows that.  It is a black

02:22PM  15   letter Texas Supreme Court law.  It is not a standalone

02:22PM  16   act.  It is a derivative claim.  It is a claim that has

02:22PM  17   to be on top of some underlying tort.

02:22PM  18              So let's go through the torts, you know, or

02:22PM  19   the claims that are here.  They have got breach of

02:22PM  20   contract, settlement agreement, that's Number 1.

02:22PM  21   Nothing about the bankruptcy case.

02:22PM  22              Count Number 2, tortious interference with

02:22PM  23   the contract.  And it says, Azeemeh Zaheer tortiously

02:22PM  24   interfered with plaintiff, that's Galleria 2425's

02:22PM  25   contract with NBK in the bankruptcy proceeding.  It

02:22PM  1    doesn't say we, you know, did anything about it.  It

02:22PM  2    says Azeemeh interfered with their relationship with us.

02:22PM  3    How would we interfere with ourselves, our own contract?

02:23PM  4                    THE COURT:  We can focus just on the ones

02:23PM  5    that involve any kind of injunctive relief --

02:23PM  6                    MR. CONRAD:  Correct.

02:23PM  7                    THE COURT:  -- because the ones that

02:23PM  8    involve money damages, I don't care about, because it is

02:23PM  9    not proper for an injunction, right?

02:23PM  10                   MR. CONRAD:  They are all money damages,

02:23PM  11   just to be very clear.  I go through one by one, every

02:23PM  12   one of them has money damages.  This lender liability,

02:23PM  13   which is apparently why Mr. Alexander is here to talk

02:23PM  14   about.  But that whole Count Number 2 is a $50 million

02:23PM  15   claim.  It has actual money damages on there.

02:23PM  16                   I'm just focusing on the ones -- the only

02:23PM  17   ones that talk about Ms. Zaheer and the bankruptcy,

02:23PM  18   these are the underlying tort claims that would support,

02:23PM  19   allegedly, a TI, why we're even here today, are the

02:23PM  20   tortious interference claims.  None of the rest of them,

02:23PM  21   the fraud, the breach of contract, the fraudulent

02:23PM  22   conveyance, the business disparagement, I mean, none of

02:23PM  23   those -- the breach of good faith and fair dealing, the

02:23PM  24   unjust enrichment, none of those have anything to do

02:23PM  25   with bankruptcy case.

02:23PM 1                    THE COURT:  Well, even a tortious

02:23PM 2  interference claim, I read it just down to money

02:24PM 3  damages.

02:24PM 4                    MR. CONRAD:  That is right.  Both of them

02:24PM 5  are.  And by the way, there is no allegation that the

02:24PM 6  bank did anything wrong there with respect to the

02:24PM 7  bankruptcy.  Again, which is the basis of their TI,

02:24PM 8  right?  It is just saying Ms. Zaheer did it.  She

02:24PM 9  interfered with Galleria 2425, the plaintiff's

02:24PM 10 relationship with the bank, by interfering in the

02:24PM 11 bankruptcy.

02:24PM 12                    There is nothing here.  We don't need to

02:24PM 13 hear evidence today.  Their pleadings are insufficient,

02:24PM 14 period, black and white, to warrant any type of

02:24PM 15 injunction.  There just isn't.  There is no there there.

02:24PM 16 There is nothing.

02:24PM 17                    So on that basis alone, we don't need to

02:24PM 18 hear -- I mean, I understand they are going to scramble

02:24PM 19 for evidence or whatever they are going to put up here,

02:24PM 20 but you have already considered all of this.  They are

02:24PM 21 either money damages, which they can make those claims,

02:24PM 22 or they have no basis for us as an underlying tort.

02:24PM 23 They have nothing.

02:24PM 24                    THE COURT:  Response.

02:24PM 25                    MR. ALEXANDER:  Your Honor, this is a

Kathleen K. Miller, Official Court Reporter, CSR #739
281st Judicial District Court, Harris County, Texas

02:24PM  1   one-of-a-kind building.  It's an I.M. Pei building.

02:25PM  2   It's eleven stories tall.

02:25PM  3            THE COURT:  I am very familiar with all of

02:25PM  4   this.  You don't need to talk to me about the building.

02:25PM  5   I have been involved in this litigation a lot longer

02:25PM  6   than you have been involved in this litigation, Mr.

02:25PM  7   Alexander.

02:25PM  8            MR. ALEXANDER:  Absolutely.  Absolutely.

02:25PM  9            THE COURT:  I have heard a lot about the

02:25PM  10  building.  I have seen pictures of the building.  I

02:25PM  11  don't need to know about the building.  I know about the

02:25PM  12  building.

02:25PM  13            MR. ALEXANDER:  The best offer that they

02:25PM  14  got during the settlement agreement period was from a

02:25PM  15  gentleman in Hong Kong who wanted that building because

02:25PM  16  it was an I.M. Pei building, because they were both --

02:25PM  17  is I.M. Pei Korean or Chinese?  I can't remember.  But

02:25PM  18  they're the same nationality.  It's a very, very, very

02:25PM  19  important building.  And we can stop this foreclosure,

02:25PM  20  and we can keep this fallout from occurring, about

02:25PM  21  whether there is a big lawsuit over lender liability,

02:25PM  22  because we can't go back to bankruptcy court until the

02:25PM  23  state courts decide the Naissance issue that was set in

02:26PM  24  January.

02:26PM  25            THE COURT:  I know.  I read it.

02:26PM 1          MR. ALEXANDER:  That's what he said.

02:26PM 2   That's what he said.  The Naissance situation was

02:26PM 3   mentioned 70 times in that record.

02:26PM 4          What the Bank of Kuwait did, was they wrote

02:26PM 5   a letter to the Judge after they lost their motion to

02:26PM 6   dismiss, fair up, square, they lost their motion to

02:26PM 7   dismiss the bankruptcy in the bankruptcy court.

02:26PM 8          THE COURT:  That is not how I read it.

02:26PM 9          MR. ALEXANDER:  They did.

02:26PM 10          THE COURT:  Sir, I have read it.  Like when

02:26PM 11   I say I -- I am going to sit back and read this stuff,

02:26PM 12   I've read it.  All right?

02:26PM 13          MR. ALEXANDER:  You read it -- did you read

02:26PM 14   for the first -- their motion to dismiss?

02:26PM 15          THE COURT:  I read the three things that

02:26PM 16   were given to me.

02:26PM 17          Don't shake your head at me, Mr. Choudhri.

02:26PM 18   I can see you.  It may not be apparent on the record,

02:26PM 19   but I can literally see you standing in front of me.

02:26PM 20   All right.

02:26PM 21          MR. ALEXANDER:  Sit down.  Sit down.

02:26PM 22          THE COURT:  You might not like what I have

02:26PM 23   to say, but, please, don't disrespect me by openly -- I

02:26PM 24   took the time to read it for a reason.  I knew y'all

02:26PM 25   would disagree as to what actually was said.

02:27PM 1                    MR. ALEXANDER:  There was a motion to
02:27PM 2  dismiss the bankruptcy --
02:27PM 3                    THE COURT:  I am very aware.
02:27PM 4                    MR. ALEXANDER:  -- filed by the Bank of
02:27PM 5  Kuwait --
02:27PM 6                    THE COURT:  I know.
02:27PM 7                    MR. ALEXANDER:  -- that was heard by the
02:27PM 8  Court before in another hearing, in the motion to
02:27PM 9  dismiss hearing.
02:27PM 10                    THE COURT:  Right.  The same hearing where
02:27PM 11  they talked about the cash collection.  They were
02:27PM 12  talking about the motion to dismiss.  I read it,
02:27PM 13  Mr. Alexander.  I am not kidding you.
02:27PM 14                    MR. ALEXANDER:  I am not --
02:27PM 15                    THE COURT:  They know.  They have been in
02:27PM 16  front of me.  I try to read all the stuff.  I don't just
02:27PM 17  say that because I have got so much spare time on my
02:27PM 18  hands.
02:27PM 19                    MR. ALEXANDER:  No, you don't.
02:27PM 20                    THE COURT:  I do it because I know you guys
02:27PM 21  are not going to agree about anything that was said, and
02:27PM 22  so I am going to read it for myself and characterize it
02:27PM 23  for myself, what the lawyers say, what the judge has
02:27PM 24  said.
02:27PM 25                    MR. ALEXANDER:  I think what the Court

02:27PM 1  read, the Court read the transcript from the status

02:27PM 2  conference where he dismissed the bankruptcy.

02:27PM 3          THE COURT:  No.  I read three things.

02:27PM 4  Right?  One of them was the hearing about cash

02:27PM 5  collection where they had extensive -- Mr. Choudhri

02:28PM 6  testified, and they had extensive discussion as to

02:28PM 7  whether or not, and the Court was concerned about

02:28PM 8  whether or not there was going to be enough cash to do

02:28PM 9  what he said to do, and they were concerned about how

02:28PM 10 involved Mr. Choudhri was in all these different

02:28PM 11 entities.

02:28PM 12         And, in fact, there were provisions in

02:28PM 13 there where he was concerned about how you could have,

02:28PM 14 like, three parties in an agreement, and two of them are

02:28PM 15 allegedly controlled by Mr. Choudhri.  That's where he

02:28PM 16 talked about the motion to dismiss.  And, in fact, made

02:28PM 17 a point of saying, because Ms. -- oh --

02:28PM 18         MS. MACGEORGE:  MacGeorge.

02:28PM 19         THE COURT:  Yes.  Somebody wanted to talk

02:28PM 20 about the dismissal, first.  Actually, I think it might

02:28PM 21 have been your counsel, and the Judge wanted to hear the

02:28PM 22 cash collection issue first.  That's the one I read.

02:28PM 23 And then I read a status conference after that, and then

02:28PM 24 I read the final one after that where it said, you know

02:28PM 25 what, this is in state court.  Let the state court

02:28PM  1  figure it out.  Because he didn't know who to believe or

02:28PM  2  what to believe or who had power or what, and that's

02:28PM  3  fine.  But he also had extreme concerns about the cash.

02:29PM  4  And where the cash was going to come from, and who was

02:29PM  5  going to pay for what to happen.

02:29PM  6              MR. ALEXANDER:  And the plan, we made

02:29PM  7  provisions for that, and he did not dismiss the plan

02:29PM  8  after the first hearing.

02:29PM  9              The plan was dismissed, the bankruptcy was

02:29PM  10  dismissed at the third hearing, which was a status

02:29PM  11  conference, which was the day after what we call the

02:29PM  12  Halloween motion, or the emergency motion, was filed by

02:29PM  13  Mr. Drinnon that said, they control Naissance, and they

02:29PM  14  control -- therefore, they might control the bankruptcy,

02:29PM  15  and that's what -- that's what started the waterfall.

02:29PM  16              Before that --

02:29PM  17              THE COURT:  But Mr. Drinnon --

02:29PM  18              MR. ALEXANDER:  Before that --

02:29PM  19              THE COURT:  -- did not represent the

02:29PM  20  National Bank of Kuwait, correct?

02:29PM  21              MR. ALEXANDER:  He did not.  But the

02:29PM  22  National Bank of Kuwait before that had invited them in

02:29PM  23  by saying to the judge, Judge, you ought to know what is

02:30PM  24  going on --

02:30PM  25              THE COURT:  Just like I said, and you

02:30PM 1   weren't at the last hearing so you didn't hear me say
02:30PM 2   this, Mr. Alexander, but at the last hearing we had the
02:30PM 3   Wednesday before Thanksgiving, I do not think it was
02:30PM 4   inappropriate for them to point out that there is some
02:30PM 5   dispute or concern over who actually has controlling
02:30PM 6   authority to run Naissance when Naissance, I believe,
02:30PM 7   was a party to that bankruptcy.
02:30PM 8            I don't think they -- because somebody over
02:30PM 9   on this side kept -- I believe it was Ms. MacGeorge kept
02:30PM 10  referring to it as throwing a grenade into the
02:30PM 11  bankruptcy -- no, no, it was the bankruptcy lawyer,
02:30PM 12  sorry -- kept referring to it as throwing a grenade into
02:30PM 13  the bankruptcy proceeding.  At the same time, I don't
02:30PM 14  think it was inappropriate, because I think it is fully
02:30PM 15  appropriate if there is litigation involving a company,
02:30PM 16  and there are issues over who controls the company,
02:30PM 17  whether it's Mr. Choudhri, or Ms. Zaheer.
02:30PM 18            And so, which set of lawyers actually has
02:30PM 19  control over what Naissance has -- is doing, I don't
02:31PM 20  think it was inappropriate for them to tell the
02:31PM 21  bankruptcy court, Hey, just so you know, Judge, they
02:31PM 22  just -- this is what's happening, and that's a question,
02:31PM 23  because we don't know who we should be dealing with
02:31PM 24  here.
02:31PM 25            MR. ALEXANDER:  Naissance was not the

02:31PM 1    debtor.  Galleria 2425, LLC, was the debtor.  And they

02:31PM 2    said, Oh, this -- look at this, this could be some big

02:31PM 3    terrible thing and it couldn't be.  It's not.

02:31PM 4               Then, next --

02:31PM 5               THE COURT:  If they are not a debtor, then

02:31PM 6    how else can Naissance file suit to prevent -- at the

02:31PM 7    end of --

02:31PM 8               MR. ALEXANDER:  They are not the debtor.

02:31PM 9    The debtor --

02:31PM 10              THE COURT:  They're a debtor.

02:31PM 11              MR. ALEXANDER:  They are somebody whose

02:31PM 12   position would be wiped out, if there is a foreclosure,

02:31PM 13   yes.  But they're not who was in bankruptcy at all.

02:31PM 14              THE COURT:  Are you saying Naissance had no

02:31PM 15   interest at all in the bankruptcy?

02:31PM 16              MR. ALEXANDER:  No.  Naissance had an

02:31PM 17   interest in the bankruptcy.

02:31PM 18              THE COURT:  So, then, why would it not be

02:31PM 19   important for the judge, the bankruptcy judge, to know

02:32PM 20   that there is a question or concern over who controlled

02:32PM 21   that entity?

02:32PM 22              MR. ALEXANDER:  It doesn't have -- it does

02:32PM 23   not have the kind of interest that is important to the

02:32PM 24   bankruptcy lawsuit.

02:32PM 25              THE COURT:  Apparently the judge thought so

02:32PM 1    because that was one of the reasons why -- one of the

02:32PM 2    reasons why the judge stopped the bankruptcy.

02:32PM 3                    MR. ALEXANDER:  No.  Let me give you a

02:32PM 4    contrast here.

02:32PM 5                    The people --

02:32PM 6                    THE COURT:  I think Ms. MacGeorge wants to

02:32PM 7    say something to you.

02:32PM 8                    MR. ALEXANDER:  Well, I guess want to hear

02:32PM 9    it.

02:32PM 10                   (Counsel confer off the record.)

02:32PM 11                   MR. CONRAD:  I can clarify this for you in,

02:32PM 12   like, one minute if you want to hear it.

02:32PM 13                   THE COURT:  I love to hear one minute.

02:32PM 14                   MR. CONRAD:  All right.  Naissance is the

02:32PM 15   collateral owner, because all the shares of Galleria

02:32PM 16   2425 JV, which is the parent company of the entity here,

02:32PM 17   have been pledged, and so they have the right, Naissance

02:32PM 18   Galleria has the right to foreclose on those shares,

02:32PM 19   which means it can have the right to control this

02:33PM 20   entity.  Right?

02:33PM 21                   And there is a dispute between Ms. Zaheer

02:33PM 22   and Choudhri about who controls it, right, because this

02:33PM 23   assignment was either forged or it wasn't.  Okay?

02:33PM 24   That's that dispute.  So it does have -- the United

02:33PM 25   States trustee, who is part of the bankruptcy, they are

02:33PM   1   automatically always in bankruptcies --

02:33PM   2            THE COURT:  Mr. Roth?

02:33PM   3            MR. CONRAD:  That is right.  They're

02:33PM   4   concerned about, like, what the guardrails are, and

02:33PM   5   making sure that there is capacity issues, okay?  And so

02:33PM   6   he actually filed an objection to Ms. Hayward's

02:33PM   7   application.  Part and parcel with this was some

02:33PM   8   questions about the capacity of the debtor.

02:33PM   9            And so we found this as I stated last

02:33PM  10   week, again, like a couple of days after that September

02:33PM  11   22nd hearing on the motion to dismiss, and saw --

02:33PM  12   because we track the other cases, because there is so

02:33PM  13   much going on, just to see where our name is going to

02:33PM  14   come up, or where our client's name is going to come up,

02:33PM  15   and we tracked it and we found it.  We did.  We brought

02:33PM  16   it to the attention of the bankruptcy court because it

02:33PM  17   is a potential issue.  That is it, period.

02:34PM  18            But Mr. Alexander, I know, was wanting to

02:34PM  19   get into, you know, basically what Ms. Hayward said to

02:34PM  20   you last week, which is exactly the same thing.  He is

02:34PM  21   not answering the fundamental question.  There is not a

02:34PM  22   basis for this TI, period, on the pleadings.  It just

02:34PM  23   doesn't get there.  There is no reason to hear evidence

02:34PM  24   in this.  I mean, you have legal grounds of everything

02:34PM  25   that they are looking for is money damages, and their --

02:34PM 1 their underlying tort is just with Ms. Zaheer, and it is

02:34PM 2 her that's making these alleged, you know, tortious

02:34PM 3 interference acts with the bank, apparently, with their

02:34PM 4 relationship with the bank, that, you know, messed up

02:34PM 5 the bankruptcy there.  And I don't even know if that is

02:34PM 6 a claim, just to be honest with you.  So I don't even

02:34PM 7 know what that is, but there are certainly no damages

02:34PM 8 here.

02:34PM 9             They didn't file an appeal, but these

02:34PM 10 causes of action are insufficient to even have a basis

02:34PM 11 for a TI.  It just doesn't warrant evidence in this

02:34PM 12 case.  I have got an order here, Your Honor, that denies

02:35PM 13 their TRO.  It also is an order to show cause on

02:35PM 14 sanctions.  I mean, I think we are there.  And I would

02:35PM 15 like to approach Your Honor, if I may, with the order.

02:35PM 16             MR. ALEXANDER:  Your Honor --

02:35PM 17             MS. MACGEORGE:  Did we get a copy?

02:35PM 18             MR. CONRAD:  I did.

02:35PM 19             MR. ALEXANDER:  Let me read you what was

02:35PM 20 filed wrongfully by the people that Mr. Drinnon has said

02:35PM 21 they represent, Naissance.  He said:  Based on the

02:35PM 22 authority granted to her by the temporary injunction,

02:35PM 23 Ms. Zaheer intends to exercise remedies under the

02:35PM 24 applicable loan documents that would place her in

02:35PM 25 control of the debtor.

02:35PM 1          We asked the Court at the 80th, who entered

02:35PM 2   this, we read that to her, and said is that what the

02:35PM 3   Court meant?

02:35PM 4          The Court said:  All right.  So, I have

02:35PM 5   reviewed the temporary injunction, and I have not given

02:35PM 6   Azeemeh Zaheer the authority to act in any way as

02:35PM 7   management for Naissance except for when Mr. Choudhri as

02:35PM 8   proposed manager for Naissance is going to do something,

02:35PM 9   they have to agree.

02:36PM 10          So she said this did not give her the power

02:36PM 11   to come in there and say, I control Naissance, I am

02:36PM 12   going to do this, I am going to do something to the

02:36PM 13   debtor.

02:36PM 14          That's how the ball got rolling down the

02:36PM 15   hill, and it benefited the Bank of Kuwait.

02:36PM 16          THE COURT:  Okay.  But here is the problem.

02:36PM 17          MR. ALEXANDER:  And it shouldn't --

02:36PM 18          THE COURT:  That still doesn't address Mr.

02:36PM 19   Conrad's concern, which is something that we have been

02:36PM 20   trying to talk about from the beginning is, I am looking

02:36PM 21   at your second amended petition filed on November 16th,

02:36PM 22   okay?  You have got -- of your causes of action, you

02:36PM 23   have only got -- your conspiracy action is the one where

02:36PM 24   you're asking for the injunctive relief.

02:36PM 25          The question I have for you is:  What of

02:36PM 1  your causes of action that are applicable to the

02:36PM 2  National Bank of Kuwait -- because it's right.  It is

02:37PM 3  not just like you can't be -- usually, if you are a part

02:37PM 4  of a conspiracy, then you also make an allegation that

02:37PM 5  that person was also involved in some kind of underlying

02:37PM 6  tort or wrongdoing, right?

02:37PM 7              MR. ALEXANDER:  Yes.

02:37PM 8              THE COURT:  You haven't made an allegation

02:37PM 9  against the National Bank of Kuwait that they have done

02:37PM 10 something other than the conspiracy claim.

02:37PM 11             MR. ALEXANDER:  We have made the

02:37PM 12 allegation.  It may not be as clear as it should be at

02:37PM 13 this time, but we have made the allegation that they

02:37PM 14 tortiously interfered with everything we ever tried to

02:37PM 15 do to hold onto this building, and that was what they

02:37PM 16 also did --

02:37PM 17             THE COURT:  See, the difference of that is,

02:37PM 18 like, your tortious interference with contract, Count 2,

02:37PM 19 damages, money.  $50 million.  Well, if the damages are

02:37PM 20 money, then injunctive relief is not proper.  Right?

02:37PM 21 Your tortious interference with business relations,

02:37PM 22 right?

02:37PM 23             MR. ALEXANDER:  There is --

02:37PM 24             THE COURT:  The interference by defendants

02:37PM 25 damaged plaintiffs in amounts to be determined after

02:37PM  1  discovery, which again, would be money.  So --

02:37PM  2              MR. ALEXANDER:  There is also --

02:38PM  3              THE COURT:  All right.  Then, that is just

02:38PM  4  money.

02:38PM  5              MR. ALEXANDER:  There is also --

02:38PM  6              THE COURT:  But when I am looking to your

02:38PM  7  cause of action where it goes and talks about the

02:38PM  8  bankruptcy, and there -- and some kind of -- I just see

02:38PM  9  that in your conspiracy claim that almost everything

02:38PM 10  else is money, amounts to be determined, amounts to be

02:38PM 11  recovered in the state court, you know, amounts to be

02:38PM 12  determined after discovery.  That's all money.

02:38PM 13              The amount of unjust enrichment, you know,

02:38PM 14  the difference between what NBK would have been owed

02:38PM 15  under the confidential settlement agreement and the true

02:38PM 16  value of the building, that is money.  So other than

02:38PM 17  conspiracy --

02:38PM 18              MR. ALEXANDER:  There is an entire body of

02:38PM 19  law that says each piece of real estate is unique.

02:38PM 20              THE COURT:  But you didn't plead it.

02:38PM 21  Because you didn't plead it, your temporary injunction

02:38PM 22  is denied at this time.  Based on what -- the way you

02:38PM 23  have pled it, you don't give me grounds.

02:38PM 24              MR. ALEXANDER:  Well, we would like a trial

02:39PM 25  amendment.

02:39PM  1          MR. ADROGUÉ:  Your Honor, hold on.

02:39PM  2          THE COURT:  I would like for you to file

02:39PM  3  something.  If you are going to make an injunction, you

02:39PM  4  know my ruling.  Do whatever you need to do.

02:39PM  5          MR. ADROGUÉ:  Paragraph 104 talks about

02:39PM  6  irreparable harm, discussing the case law and the real

02:39PM  7  estate.  Your Honor, just like anything money -- I mean,

02:39PM  8  I have stopped foreclosures on individuals on their

02:39PM  9  personal houses.  Any kind of real estate is unique, and

02:39PM 10  so courts don't want a person to be kicked out of their

02:39PM 11  house because it is a unique piece of real estate.  If

02:39PM 12  you boil down to it, Your Honor, everything is about

02:39PM 13  money, because a house can be replaced, a car --

02:39PM 14          THE COURT:  Right.  But that is your

02:39PM 15  application for temporary restraining order, and it is

02:39PM 16  one of the things we talked about.  We are not here on a

02:39PM 17  TRO.  We are here on a TI.  Maybe you need to replead

02:39PM 18  things.

02:39PM 19          MR. CONRAD:  Just to be clear.  Let me --

02:39PM 20  and I understand the Court's ruling, and if you can sign

02:39PM 21  an order, that would be great.  But just real quick, I

02:39PM 22  don't want there to be confusion, because everything

02:39PM 23  that they have pled in these other causes of action,

02:40PM 24  which are absolutely for money damages, is everything

02:40PM 25  that they argued previously from April through July 5th.

02:40PM 1  This was Mr. Wetwiska's testimony as an officer of the

02:40PM 2  Court.  You said, I am going to hold you to this, no

02:40PM 3  more TROs, no more injunctions.  All you said is that

02:40PM 4  you needed more time.  That is exactly -- I think,

02:40PM 5  almost exact words, and over our objection, over the

02:40PM 6  bank's objection, that time was granted, and given them

02:40PM 7  to July 5th.  And, then, they have now had more time

02:40PM 8  since the bankruptcy.

02:40PM 9          So the only thing that is supporting the TI

02:40PM 10  today is this new allegation about interference with a

02:40PM 11  bankruptcy, this conspiracy about the bankruptcy, and

02:40PM 12  it's just -- the pleadings on that part -- everything

02:40PM 13  else has been considered by this Court, repeatedly, and

02:40PM 14  rejected and denied.

02:40PM 15          The only thing new is about this bankruptcy

02:40PM 16  interference allegation.  That is it.  And the pleadings

02:40PM 17  as they are -- and I don't think that they are ever

02:41PM 18  going to be able to fix.  That is not an amendable

02:41PM 19  thing, because it is not a course of -- cause of action

02:41PM 20  to interfere with alleged bankruptcy proceeding.

02:41PM 21          Their remedy was an appeal, if that was the

02:41PM 22  case, in the bankruptcy.  They didn't file one.  This

02:41PM 23  isn't an appellate -- effectively, what they are asking

02:41PM 24  the Court to do is be an appellate court of what the

02:41PM 25  bankruptcy court didn't do.  They are asking for,

02:41PM 1   effectively, a stay that they could have gotten in the

02:41PM 2   bankruptcy court with this injunction hearing.  That is

02:41PM 3   just wildly inappropriate.  There is no basis for it.

02:41PM 4   There is no cause of action.  There can't be any cause

02:41PM 5   of action, because there is no -- what is the harm?

02:41PM 6                    They lost the bankruptcy court case, and

02:41PM 7   they could have appealed that.  They didn't.  And so

02:41PM 8   that's why this order should be granted.  There is

02:41PM 9   nothing that can fix it.

02:41PM 10                   MR. ADROGUÉ:  Your Honor, Paragraph 98 of

02:41PM 11  our petition.  Your Honor, Paragraph 104 was under the

02:41PM 12  temporary restraining order section, but Paragraph 98 is

02:41PM 13  under the application for temporary injunction, and

02:41PM 14  it -- and there it says, in part, the equity of the

02:42PM 15  plaintiff will be wiped out.  The plaintiff will have no

02:42PM 16  assets, no adequate remedy at law, to return or retrieve

02:42PM 17  the assets or its values.

02:42PM 18                   THE COURT:  I understand that, but,

02:42PM 19  ultimately, at the end of the day, that goes back to an

02:42PM 20  issue that I heard in 2021.

02:42PM 21                   The Court has ruled.  Do whatever y'all

02:42PM 22  need to.

02:42PM 23                   MR. CONRAD:  May we have the signed order,

02:42PM 24  Your Honor?

02:42PM 25                   MR. CHOUDHRI:  Your Honor --

02:42PM 1                    THE COURT:  Do you have this electronically

02:42PM 2  filed?

02:42PM 3                    MR. CONRAD:  Yes, we do.

02:42PM 4                    MR. ADROGUÉ:  No, Your Honor, their

02:42PM 5  order --

02:42PM 6                    MS. MACGEORGE:  We have objections to their

02:42PM 7  order, Your Honor.

02:42PM 8                    MR. ADROGUÉ:  Many objections.  That order

02:42PM 9  in front of them, the bottom of the first paragraph,

02:42PM 10 they are trying to get you to give them authority

02:42PM 11 permitted to foreclose on the property.  I just think

02:42PM 12 whatever inherent rights they have --

02:42PM 13                   THE COURT:  I am just going to deny the TI.

02:42PM 14 Y'all do -- both sides do whatever y'all need to do.

02:42PM 15                   MR. ALEXANDER:  Your Honor, may we have a

02:42PM 16 bill?

02:42PM 17                   THE COURT:  I'm sorry?

02:42PM 18                   MR. ADROGUÉ:  And this -- sorry, Your

02:42PM 19 Honor.  We heard you are going to deny --

02:42PM 20                   THE COURT:  I'm just hearing too many

02:42PM 21 people talking to me at once.  Mr. Adrogué.

02:43PM 22                   MR. ADROGUÉ:  I heard you deny the TI, Your

02:43PM 23 Honor.  I understand you're not going to sign the order

02:43PM 24 they presented you; is that correct?

02:43PM 25                   THE COURT:  Correct.

02:43PM   1              MR. ADROGUÉ:  Okay.

02:43PM   2              THE COURT:  Literally, the Court is going

02:43PM   3    to enter an order that just says I am denying the

02:43PM   4    temporary injunction at this time.  Y'all do whatever

02:43PM   5    you need to do.

02:43PM   6              With regards to your show cause, the Court

02:43PM   7    is not ruling on your show cause and your order for

02:43PM   8    motion for sanctions at this time.

02:43PM   9              MR. CONRAD:  Is there one simple -- just

02:43PM  10    one thing.  We have a hearing in, allegedly, 17 minutes

02:43PM  11    now.  So, I mean, the only thing, you can take out or

02:43PM  12    cross out Paragraphs 2, 3, and 4, because the first

02:43PM  13    paragraph just says that the TI is denied.

02:43PM  14              MR. ADROGUÉ:  Your Honor, he is -- he

02:43PM  15    slipped in there the words --

02:43PM  16              THE COURT:  I am just going to type it up

02:43PM  17    right now while I am sitting right in front of you where

02:43PM  18    it says I just deny the temporary injunction, and that's

02:43PM  19    it.

02:43PM  20              All right.  Everything else --

02:43PM  21              MR. ALEXANDER:  Can you put without

02:43PM  22    prejudice in there?

02:43PM  23              THE COURT:  I'm just going to deny it, just

02:44PM  24    assumes without prejudice.  I am not going to say it.

02:44PM  25    Y'all figure out what you need to do.

02:44PM 1          Apparently, y'all have to get ready for a

02:44PM 2   hearing in 16 minutes.

02:44PM 3          MS. KLINGENSMITH:  Your Honor, is it

02:44PM 4   possible to get a printed copy of your denial of the

02:44PM 5   temporary injunction?

02:44PM 6          THE COURT:  I don't know.  Bonnie, is it?

02:44PM 7          THE CLERK:  No, Your Honor.  It has to go

02:44PM 8   through an approval process before -- after you sign it.

02:44PM 9          MR. STEINBRUNNER:  That is why we wanted to

02:44PM 10  have something that was just a hand copy.  Obviously, we

02:44PM 11  are going to present this to Judge Reeder, and we just

02:44PM 12  don't want there to be a misrepresentation of what this

02:44PM 13  Court has done.

02:44PM 14          THE COURT:  Judge Reeder can call me if she

02:44PM 15  has a question.  She knows how to find me.

02:44PM 16          MR. CHOUDHRI:  Your Honor, may I speak?

02:44PM 17          THE COURT:  Mr. Choudhri, is there

02:44PM 18  something you want to say?  If you want to, feel free, I

02:44PM 19  am just typing now.

02:44PM 20          MR. CHOUDHRI:  Thank you, Your Honor.

02:44PM 21  First of all, I want to really thank you for your time

02:44PM 22  for hearing us.

02:44PM 23          I did want to mention some things as I was

02:45PM 24  sitting here I would like to express to you.  The reason

02:45PM 25  that -- that the events after the settlement -- the

02:45PM 1  settlement was entered because you compelled Mona

02:45PM 2  Dajani's deposition.  And that e-mail that I handed Your

02:45PM 3  Honor, I had e-mailed that to Mr. Conrad before.  And

02:45PM 4  Mr. Wetwiska came in here right before the trial in

02:45PM 5  September, when we were going to go to trial in the pref

02:45PM 6  setting, and you -- you were kind enough to compel the

02:45PM 7  deposition of Mona Dajani, and the key people at the

02:45PM 8  Bank of Kuwait that I met with and spoke to.

02:45PM 9         And right after that is when the bank

02:45PM 10 wanted to settle.  We did, then, end up settling.  I am

02:45PM 11 a party to that settlement.  I signed the settlement

02:45PM 12 individually, on the behalf of -- and on behalf of

02:45PM 13 Naissance, and the borrower, and the contents of that

02:45PM 14 settlement are confidential.  And in the bankruptcy

02:45PM 15 court, Your Honor, Mr. Conrad, or his associate or

02:45PM 16 partner, the deposition was confidential, and he -- with

02:46PM 17 -- Melissa Hayward represented me as a corporate rep for

02:46PM 18 the deposition that took place in September of this

02:46PM 19 year.  And in that deposition, it was very clear that

02:46PM 20 the contents of the settlement are to remain

02:46PM 21 confidential, and Mr. Conrad agreed on the record.

02:46PM 22         Yet, after that deposition, he filed that

02:46PM 23 deposition in the contents of the settlement publicly in

02:46PM 24 the bankruptcy hearing, in the filings, and it's in the

02:46PM 25 bankruptcy record.

02:46PM 1          So, Your Honor, I just want to clarify that

02:46PM 2    there have been -- there is a pattern of this, and the

02:46PM 3    reason we wanted the communications of Mr. Conrad, or

02:46PM 4    Pillsbury, or Bank of Kuwait, and Azeemeh Zaheer, and

02:46PM 5    Rodney Drinnon, because I am very confident we can prove

02:46PM 6    that.  And Mr. Drinnon, we wanted -- he's a witness.  We

02:46PM 7    wanted him to be testifying for the TI, and he,

02:46PM 8    obviously, doesn't want to be here and he left, and we

02:46PM 9    wanted to swear him in.

02:46PM 10          And I just wanted to say that, that I do

02:46PM 11   feel that there really -- the Bank of Kuwait, there

02:46PM 12   really is things that have happened, not just from the

02:47PM 13   settlement, but it has been a pattern.  Even when the

02:47PM 14   property was posted -- you have been here the whole

02:47PM 15   time.  When the property was posted for foreclosure,

02:47PM 16   people who had contacted Mr. Conrad, he told them it was

02:47PM 17   going to be posted in the future.

02:47PM 18          I have his own e-mails, that I have and Mr.

02:47PM 19   Wetwiska has, where he's telling the public that the

02:47PM 20   property is going to be posted in the future, and he

02:47PM 21   shouldn't have done that.

02:47PM 22          And that pattern has been a repetitive

02:47PM 23   pattern, and we had the right to file a bankruptcy, and

02:47PM 24   we did, and we had a plan that was confirmable.  Yes,

02:47PM 25   Your Honor, there were definitely challenges with that

02:47PM 1    where -- where the funding is coming.

02:47PM 2                    THE COURT:  Are you trying to say that Mr.

02:47PM 3    Conrad did something improper?

02:47PM 4                    MR. CHOUDHRI:  I'm sorry?

02:47PM 5                    THE COURT:  Are you trying to say that Mr.

02:47PM 6    Conrad did something improper?

02:47PM 7                    MR. CHOUDHRI:  On behalf of the Bank of

02:47PM 8    Kuwait, Your Honor.  I don't --

02:47PM 9                    THE COURT:  I just want to make sure that I

02:47PM 10   understand you correctly, that you are making an

02:47PM 11   accusation that an officer of this Court is -- is acting

02:47PM 12   improperly, because you're saying that Mr. Conrad is

02:48PM 13   doing things that you think are wrong or actionable

02:48PM 14   conduct.

02:48PM 15                   MR. CHOUDHRI:  Well, Your Honor, what I am

02:48PM 16   saying, and I want to be very clear --

02:48PM 17                   THE COURT:  No.  You want to be very

02:48PM 18   careful, sir.

02:48PM 19                   MR. CHOUDHRI:  Absolutely.

02:48PM 20                   THE COURT:  Remember, just because you are

02:48PM 21   not under oath, you are representing yourself.  As I

02:48PM 22   have said before, you have a duty of candor to this

02:48PM 23   Court, so I would be really careful about what you say

02:48PM 24   here --

02:48PM 25                   MR. CHOUDHRI:  100 percent.

02:48PM  1          THE COURT:  -- right, and accusations that
02:48PM  2  you make because it is one thing to say that you believe
02:48PM  3  that a party is doing something; it is another thing to
02:48PM  4  say a lawyer, with an obligation to not act improperly,
02:48PM  5  is engaging in improper conduct.  And that is what I
02:48PM  6  heard you to say, sir.  Is that what you meant?
02:48PM  7          MR. CHOUDHRI:  Let me just clarify what I
02:48PM  8  said.
02:48PM  9          THE COURT:  Okay.  That's why I want to
02:48PM  10  give you that opportunity, Mr. Choudhri.
02:48PM  11          MR. CHOUDHRI:  Yes, Your Honor.  Sorry to
02:48PM  12  interrupt.  I an sorry for shaking my head earlier.  I
02:48PM  13  didn't mean any disrespect.
02:48PM  14          THE COURT:  No, I understand.
02:48PM  15          MR. CHOUDHRI:  It is just there is a lot
02:48PM  16  going on in here.
02:48PM  17          Mr. Conrad represents the Bank of Kuwait.
02:48PM  18  So when I say "Mr. Conrad," I am speaking that Mr.
02:49PM  19  Conrad sent an e-mail to Mr. Wetwiska, that I read, that
02:49PM  20  was forwarded to me, and that e-mail is where Mr. Conrad
02:49PM  21  told -- he stated in that e-mail, and I have that e-mail
02:49PM  22  here, he told third parties that the Bank of Kuwait is
02:49PM  23  going to post the property for foreclosure in the
02:49PM  24  future.  I, then, spoke to some of these third parties,
02:49PM  25  and they told me that they are under the impression from

02:49PM 1    the Bank of Kuwait, Mr. Conrad/Bank of Kuwait -- on

02:49PM 2    behalf of the Bank of Kuwait -- I don't want -- I am not

02:49PM 3    suggesting Mr. Conrad has done anything wrong

02:49PM 4    personally.  What I am saying is, on behalf of the Bank

02:49PM 5    of Kuwait, there is an --

02:49PM 6                THE COURT:  Right.  But I have heard all

02:49PM 7    this before, because that is why we had all of these

02:49PM 8    hearings in March and in April where we had continued

02:49PM 9    conversations, and why we had status conferences to make

02:49PM 10   sure what -- because Galleria 2425 and its counsel were

02:49PM 11   alleging that improper things were being told.  That's

02:49PM 12   why we had hearings on the record to have confirmation

02:50PM 13   and understanding of what could and could not be told to

02:50PM 14   people.  So I believe all of that has been properly

02:50PM 15   addressed in this Court in that case.

02:50PM 16               MR. CHOUDHRI:  I would disagree, Your

02:50PM 17   Honor.  There is a settlement agreement.  They have

02:50PM 18   breached the settlement agreement.  There is a pattern.

02:50PM 19   They continue to do this.  They did it after the

02:50PM 20   bankruptcy.

02:50PM 21               THE COURT:  I understand that.  In your

02:50PM 22   breach of the settlement agreement, you have asked for

02:50PM 23   money damages, and because you have asked for money

02:50PM 24   damages, injunctive relief is not proper.  So you have

02:50PM 25   to look at how the case has been pled.

02:50PM  1          I am going to finish this order.

02:50PM  2          MR. CONRAD:  And we have an agreed order

02:50PM  3  that we have an agreement on.

02:50PM  4          THE COURT:  Agreed?

02:50PM  5          MR. CONRAD:  I mean, agreed to form only.

02:50PM  6          THE COURT:  Yeah.  They agreed to form

02:50PM  7  only.

02:50PM  8          MR. CONRAD:  Yeah.

02:50PM  9          MR. ADROGUÉ:  We scratched everything out,

02:50PM 10  and it just says denied without merit.

02:50PM 11          MS. MACGEORGE:  Without merit is gone.  It

02:50PM 12  is just denied.

02:50PM 13          THE COURT:  I will make one other change to

02:50PM 14  this, because it should say "the second amended

02:50PM 15  petition," because the amended petition has been

02:51PM 16  replaced with the second amended petition.

02:51PM 17          Is there anything else?

02:51PM 18          MR. CHOUDHRI:  Your Honor, I would just ask

02:51PM 19  you to allow us an opportunity to have witnesses and put

02:51PM 20  on witnesses and evidence for our TI.

02:51PM 21          I am -- I personally have signed several

02:51PM 22  million dollars of tax liens, and the money that was in

02:51PM 23  the registry of the Court was assigned to them.  I did

02:51PM 24  everything I could to make this work, and I would just

02:51PM 25  ask Your Honor to really consider that, and I believe

02:51PM   1   the property is unique, and we pled it.  And I really

02:51PM   2   would ask Your Honor to at least allow us an

02:52PM   3   opportunity, because things are just not making sense.

02:52PM   4              And that e-mail, by the way, them

02:52PM   5   controlling my -- Azeemeh Zaheer is my fiduciary.  She

02:52PM   6   was managing the borrower on my behalf.  Why Mona

02:52PM   7   Dajani, on behalf of Pillsbury for the bank, is

02:52PM   8   e-mailing them and telling her --

02:52PM   9              THE COURT:  Sir, that is in 2021.  That

02:52PM   10  goes way before anything that we are talking about in

02:52PM   11  this litigation.  Here is the tough part.  You have got

02:52PM   12  to separate the other case that -- which is hard,

02:52PM   13  because it is all in front of me, but you have got to

02:52PM   14  separate that other case from this case.  This case

02:52PM   15  deals with pretty much everything after y'all got into a

02:52PM   16  settlement agreement.

02:52PM   17             So a lot of the things that you are talking

02:52PM   18  about are things that I heard in the first TI, when we

02:52PM   19  did it the first time.  I am not saying that you don't

02:52PM   20  get a TI.  You don't get one based on the petition that

02:52PM   21  is in front of me.

02:52PM   22             MR. CHOUDHRI:  Would you allow us to have a

02:52PM   23  trial amendment and come back this week?  It is really

02:52PM   24  important, Your Honor.

02:52PM   25             THE COURT:  Not -- I am out the rest of

02:53PM 1    this week.  I am here next week.

02:53PM 2                MR. CHOUDHRI:  Monday?

02:53PM 3                THE COURT:  I'm just saying this.  At this

02:53PM 4    point, y'all do whatever you need to do, but I think I

02:53PM 5    have made myself clear on the record, that I can't --

02:53PM 6    there can't be a TI based on how this is pled.  The

02:53PM 7    pleadings do not support injunctive relief.

02:53PM 8                If you amend, follow that.  I have

02:53PM 9    procedures for an emergency hearing.  We will take it up

02:53PM 10   then about the possibility.  But right now, there is

02:53PM 11   nothing for me to consider in that regard.

02:53PM 12               Do whatever you need to do, Mr. Choudhri.

02:53PM 13   You have got plenty of lawyers to advise you in that

02:53PM 14   regard.  Do you understand me?

02:53PM 15               MR. CHOUDHRI:  Thank you, Your Honor.  Is

02:53PM 16   it possible to ask for the -- for the discovery between

02:53PM 17   the -- Pillsbury and Mr. Drinnon?

02:53PM 18               THE COURT:  That is not properly before me.

02:53PM 19               MR. CHOUDHRI:  Thank you, Your Honor.  I

02:53PM 20   would ask if you can give us a date, the earliest date

02:53PM 21   for the TI, if we can, at least, have a setting, maybe,

02:53PM 22   Monday, Your Honor, please.

02:53PM 23               THE COURT:  Until you file something, I

02:53PM 24   don't have anything to set.

02:53PM 25               MR. CHOUDHRI:  Okay.

02:53PM  1                    THE COURT:  Do you understand?

02:54PM  2                    MR. CHOUDHRI:  We will file --

02:54PM  3                    THE COURT:  Do whatever you need to do,

02:54PM  4  sir.

02:54PM  5                    MR. CHOUDHRI:  Thank you, Your Honor.

02:54PM  6                    THE COURT:  But I am just telling you, the

02:54PM  7  Court is not foreclosing the option.  Just based on what

02:54PM  8  I have right now, I have ruled.

02:54PM  9                    MR. CHOUDHRI:  I understand.  And I

02:54PM  10  appreciate that, and I appreciate you-all's time.  And

02:54PM  11  I'm sorry if I was too passionate today.  I do

02:54PM  12  apologize.

02:54PM  13                    THE COURT:  I understand.  This case has

02:54PM  14  been going on for a long time.

       15                    (Proceedings adjourned at 2:54 p.m.)

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25

```
 1                    REPORTER'S CERTIFICATE
 2   THE STATE OF TEXAS   )
     COUNTY OF HARRIS     )
 3
 4       I, Kathleen K. Miller, Official Court Reporter in
 5   and for the 281st District Court, Harris County, State
 6   of Texas, do hereby certify that the above and foregoing
 7   contains a true and correct transcription of all
 8   portions of evidence and other proceedings requested in
 9   writing by counsel for the parties to be included in
10   this volume of the Reporter's Record, Volume 1, in the
11   above-styled and numbered cause, all of which occurred
12   in open court or in chambers and were reported by me.
13       I further certify that this Reporter's Record,
14   Volume 1 of the proceedings truly and correctly
15   references the exhibits, if any, admitted by the
16   respective parties.
17       I further certify that the total cost for the
18   preparation of this Reporter's Record is $_____ and
19   was paid by _____.
20       WITNESS MY OFFICIAL HAND this the 30th day of
21   November, 2023.
22
23                       /s/Kathleen K. Miller
                         _____
                         Kathleen K. Miller, Texas CSR 739
24                       Expiration Date: 04/30/25
                         Official Court Reporter
25                       281st Judicial District Court
                         Harris County, Texas
```

# #

**#739** [1] - 1:24

# $

**$50** [5] - 27:7, 32:18, 64:1, 99:14, 112:19

# /

**/s/Kathleen** [1] - 129:23

# 0

**00993500** [1] - 3:16
**04/30/25** [1] - 129:24

# 1

**1** [13] - 1:1, 2:2, 2:5, 2:6, 2:8, 2:9, 41:2, 51:17, 98:20, 129:10, 129:14
**10** [2] - 42:25, 61:12
**100** [2] - 82:16, 122:25
**104** [2] - 114:5, 116:11
**1081** [1] - 44:3
**1091** [1] - 44:3
**10:00** [5] - 14:22, 16:3, 20:13, 26:7, 72:10
**10:23** [1] - 1:13
**10:42** [1] - 20:16
**11** [1] - 74:1
**11/14** [1] - 41:4
**11/15** [1] - 26:21
**11/16** [2] - 41:6, 48:5
**1125** [1] - 3:4
**11:29** [1] - 20:16
**11th** [3] - 22:17, 22:23, 30:14
**12** [3] - 3:12, 39:23, 67:7
**120** [3] - 63:12, 63:16, 81:7
**1201** [1] - 3:16
**127th** [2] - 13:24, 13:25
**128** [2] - 2:8, 2:9
**129th** [6] - 12:24, 13:25, 14:1, 14:3, 14:5, 83:21
**12:52** [1] - 88:25
**12th** [13] - 23:6, 27:19, 36:20, 50:18, 51:5, 51:9, 51:24, 58:1, 63:7, 64:7, 64:10, 64:11, 82:21
**13** [3] - 64:25, 65:10, 77:24
**13th** [2] - 24:11, 69:14
**14** [1] - 42:24
**14th** [3] - 18:18, 25:2, 25:4
**15** [4] - 38:5, 52:4, 66:23, 67:23
**157th** [2] - 14:4, 14:5
**15th** [3] - 25:9, 26:2, 26:15
**16** [2] - 38:5, 119:2
**162** [3] - 33:17, 33:18, 41:24
**1629** [1] - 3:8
**166(a** [1] - 58:21

# 2

**16th** [7] - 26:19, 28:6, 42:5, 48:1, 48:2, 48:4, 111:21
**17** [1] - 118:10
**18** [1] - 53:23
**1850** [1] - 4:13
**19** [5] - 16:15, 53:22, 53:24, 53:25, 54:5
**1:45** [2] - 86:17, 88:18
**1:55** [1] - 86:7
**1st** [1] - 81:10

# 2

**2** [7] - 41:3, 51:18, 69:1, 98:22, 99:14, 112:18, 118:12
**20** [2] - 5:23, 66:21
**2000** [3] - 4:6, 4:13, 42:24
**2004** [1] - 43:17
**2010** [2] - 42:4, 70:14
**2011** [1] - 42:2
**2012** [2] - 66:23, 70:14
**2013** [1] - 17:1
**2015** [1] - 52:25
**2020** [3] - 25:14, 61:18, 94:23
**2021** [15] - 76:19, 89:12, 89:18, 89:25, 90:1, 90:4, 94:24, 95:7, 95:21, 96:6, 96:20, 116:20, 126:9
**2022** [1] - 96:9
**2023** [14] - 1:18, 22:17, 30:11, 30:14, 76:18, 76:19, 90:1, 95:22, 96:7, 96:9, 96:10, 97:8, 97:9, 129:21
**2023-22748** [2] - 1:2, 5:2
**2023-43755** [1] - 22:19
**21** [4] - 27:17, 53:6, 53:23, 64:6
**214-742-3579** [1] - 3:17
**22nd** [1] - 109:11
**23rd** [1] - 30:11
**24.005** [1] - 35:5
**24.006** [1] - 35:5
**24.5** [1] - 35:5
**24012192** [1] - 3:7
**24040721** [1] - 4:3
**24046496** [1] - 4:4
**24047841** [1] - 4:12
**24048738** [1] - 3:3
**24093201** [1] - 4:5
**24093627** [1] - 3:11
**2425** [30] - 1:4, 5:3, 7:25, 16:9, 22:25, 28:12, 28:18, 30:21, 31:9, 31:22, 32:1, 32:6, 32:23, 34:20, 37:18, 37:20, 39:13, 65:5, 69:3, 72:20, 76:7, 76:9, 77:16, 83:12, 89:7, 95:25, 100:9, 107:1, 108:16, 124:10
**2425's** [3] - 32:20, 76:3, 98:24
**25** [8] - 29:19, 32:25, 41:22, 44:10, 44:11, 45:8, 60:7, 62:23
**2500** [1] - 3:16
**26** [2] - 30:11, 54:15
**27** [1] - 33:25
**27.003(c)** [1] - 54:12

# 3

**27.005(d** [1] - 59:11
**27.005(d)** [2] - 35:19, 59:11
**27.006** [1] - 34:9
**271** [1] - 42:23
**281st** [2] - 129:5, 129:25
**281ST** [1] - 1:7
**29** [1] - 42:23
**29th** [2] - 1:18, 14:1
**2:00** [2] - 27:16, 27:22
**2:10** [1] - 88:25
**2:35** [1] - 27:15
**2:54** [2] - 1:13, 128:15

# 3

**3** [3] - 2:5, 42:20, 118:12
**30** [1] - 65:21
**30th** [1] - 129:20
**31st** [1] - 23:16
**35** [1] - 27:23
**352** [1] - 52:23
**357** [1] - 52:24
**377** [2] - 43:17, 44:3
**3:00** [3] - 71:23, 84:4, 86:6
**3:35** [1] - 41:6
**3:43** [3] - 27:23, 28:6, 41:21
**3B** [1] - 33:9

# 4

**4** [2] - 52:4, 118:12
**45** [2] - 72:5, 86:5
**457** [1] - 61:18
**466** [1] - 52:23

# 5

**5** [2] - 2:6, 61:12
**506** [1] - 52:15
**512-215-4129** [1] - 3:13
**596** [1] - 61:17
**5:00** [1] - 11:10
**5:08** [2] - 28:11, 42:5
**5th** [7] - 79:21, 83:4, 83:9, 84:6, 84:10, 114:25, 115:7

# 6

**60** [3] - 27:17, 63:15, 64:6
**6161** [1] - 3:4
**6435778** [1] - 25:14
**6:02** [1] - 48:5
**6:10** [2] - 28:17, 28:18
**6th** [2] - 15:24, 23:14

# 7

**7.5** [1] - 68:19
**70** [1] - 102:3
**701** [1] - 3:12

**713-276-7600** [1] - 4:7
**713-425-7270** [1] - 3:9
**713-449-4481** [1] - 3:5
**739** [1] - 129:23
**75270** [1] - 3:17
**77006** [1] - 3:9
**77010-1018** [1] - 4:7
**77027** [1] - 4:14
**77036** [1] - 3:5
**78702** [1] - 3:13

---

**8**

**8** [1] - 42:21
**80th** [11] - 9:25, 22:20, 23:1, 23:20,
71:19, 72:1, 72:24, 73:19, 74:7, 74:20,
111:1
**832-533-8689** [1] - 4:14
**87** [1] - 52:15
**8:00** [3] - 10:14, 18:17, 41:4
**8:41** [1] - 19:1

---

**9**

**9** [1] - 42:25
**90** [2] - 63:16, 81:7
**909** [1] - 4:6
**91a** [1] - 82:22
**98** [2] - 116:10, 116:12

---

**A**

**a** [421] - 5:21, 5:22, 6:3, 6:11, 6:17, 6:18,
6:20, 7:1, 7:2, 8:2, 8:3, 8:5, 8:7, 8:10,
8:11, 8:24, 9:13, 10:3, 10:8, 10:14,
10:15, 10:16, 11:11, 11:23, 12:9,
12:19, 12:21, 13:11, 14:22, 14:23,
15:11, 15:18, 15:23, 16:4, 16:13,
16:25, 17:6, 17:23, 18:2, 18:8, 18:15,
18:20, 18:22, 19:12, 19:13, 19:15,
19:20, 19:24, 20:1, 20:5, 20:9, 20:10,
20:13, 20:19, 21:8, 21:10, 21:11,
21:14, 22:18, 23:7, 23:8, 23:17, 23:18,
23:22, 24:4, 24:10, 24:12, 25:6, 25:7,
25:9, 25:12, 25:15, 26:2, 26:5, 26:7,
26:22, 27:8, 27:10, 27:16, 27:17, 28:9,
28:14, 30:2, 30:7, 30:15, 30:23, 31:3,
31:4, 32:13, 32:17, 33:7, 33:10, 33:11,
33:13, 33:15, 33:18, 33:20, 34:1, 34:5,
34:13, 34:15, 34:17, 34:18, 34:22,
35:4, 35:12, 35:18, 35:25, 36:21,
36:24, 37:1, 37:14, 37:22, 37:23, 38:4,
38:10, 38:20, 39:3, 39:7, 39:19, 40:10,
41:10, 41:16, 41:24, 41:25, 42:2, 42:3,
42:13, 42:15, 42:18, 42:21, 43:1,
43:11, 43:13, 43:16, 43:20, 44:4,
44:22, 45:2, 45:7, 45:13, 45:20, 46:1,
46:21, 47:1, 47:6, 47:8, 47:13, 48:4,
48:7, 48:11, 48:20, 49:2, 49:7, 49:8,
49:19, 49:24, 49:25, 51:12, 51:13,

51:19, 52:7, 52:9, 52:20, 54:4, 55:9,
56:2, 56:11, 56:13, 56:22, 57:4, 57:15,
57:16, 57:22, 58:5, 58:9, 58:11, 58:14,
58:19, 58:24, 59:14, 59:17, 59:24,
61:4, 61:14, 61:20, 61:22, 62:18, 63:3,
63:9, 63:17, 64:2, 64:18, 65:2, 65:11,
65:25, 66:2, 66:4, 66:9, 66:15, 66:16,
66:23, 66:24, 67:6, 67:10, 67:13,
67:14, 67:15, 67:17, 67:18, 67:19,
67:21, 67:23, 68:2, 68:3, 68:19, 69:2,
69:9, 69:10, 69:12, 69:23, 70:12,
70:14, 70:23, 71:2, 71:7, 71:14, 71:18,
71:23, 72:4, 72:6, 72:14, 72:17, 72:18,
73:18, 73:19, 73:23, 73:25, 74:3,
74:17, 74:22, 75:6, 75:17, 75:22,
76:11, 76:12, 76:23, 77:7, 77:18,
77:19, 77:22, 77:24, 78:5, 78:7, 78:9,
79:2, 79:3, 79:6, 79:13, 79:17, 79:25,
80:2, 80:23, 81:9, 81:16, 82:16, 83:9,
83:11, 83:17, 83:19, 84:14, 84:16,
84:17, 84:18, 84:20, 84:23, 84:25,
86:1, 86:4, 86:6, 86:15, 87:4, 87:19,
88:1, 89:4, 89:17, 89:23, 90:3, 90:15,
90:16, 90:17, 90:18, 90:21, 90:25,
91:3, 91:13, 91:15, 92:13, 92:14,
92:21, 92:25, 93:6, 93:20, 94:9, 94:16,
94:23, 94:24, 95:13, 95:19, 96:6,
96:21, 97:11, 97:13, 97:17, 98:8, 98:9,
98:13, 98:14, 98:15, 98:16, 99:14,
99:19, 100:1, 100:25, 101:1, 101:5,
101:9, 101:14, 101:18, 101:21, 102:5,
102:24, 103:1, 104:17, 104:23,
105:10, 106:7, 106:10, 106:12,
106:15, 106:22, 107:5, 107:10,
107:12, 107:20, 108:3, 108:21,
109:10, 109:17, 109:21, 110:6,
110:10, 110:11, 110:17, 112:3, 112:4,
113:24, 114:10, 114:11, 114:13,
114:16, 114:17, 115:10, 115:19,
116:1, 117:15, 118:10, 119:1, 119:4,
119:10, 119:12, 119:15, 120:11,
120:17, 121:2, 121:6, 121:13, 121:22,
121:23, 121:24, 122:22, 123:3, 123:4,
123:15, 124:17, 124:18, 126:15,
126:17, 126:20, 126:22, 127:6,
127:20, 127:21, 128:14, 129:7
**A** [3] - 3:1
**A.M** [1] - 1:13
**a.m** [4] - 14:22, 19:1, 26:8, 72:10
**Aaron** [1] - 23:17
**Abdullatif** [11] - 30:19, 30:23, 31:18,
31:20, 31:24, 32:9, 32:12, 32:15,
67:22, 67:23, 68:1
**abilities** [2] - 32:21, 57:13
**ability** [2] - 55:22, 96:2
**able** [5] - 38:6, 38:20, 56:2, 73:3, 115:18
**about** [112] - 5:22, 10:3, 10:22, 15:10,
16:8, 20:23, 22:18, 23:7, 24:15, 25:3,
27:14, 29:5, 32:19, 39:10, 40:23,
47:14, 47:16, 49:16, 49:17, 49:22,

50:23, 55:4, 55:11, 55:16, 57:2, 57:4,
57:11, 58:17, 58:21, 60:2, 63:19,
63:20, 63:22, 64:1, 65:18, 65:21,
65:22, 66:9, 67:20, 69:14, 69:15,
69:22, 76:25, 77:15, 78:25, 79:4, 79:9,
79:10, 79:24, 80:13, 80:18, 81:15,
81:16, 81:19, 82:17, 84:1, 85:11, 86:4,
86:7, 89:3, 89:14, 89:23, 90:10, 92:14,
93:10, 95:3, 95:22, 96:5, 96:7, 96:9,
96:19, 98:10, 98:21, 99:1, 99:8, 99:14,
99:17, 101:4, 101:9, 101:11, 101:20,
103:11, 103:12, 103:21, 104:4, 104:7,
104:9, 104:13, 104:16, 104:20, 105:3,
108:22, 109:4, 109:8, 111:20, 113:7,
114:5, 114:12, 114:16, 115:10,
115:11, 115:15, 122:23, 126:10,
126:18, 127:10
**above** [1] - 1:19, 129:6, 129:11
**above-entitled** [1] - 1:19
**above-styled** [1] - 129:11
**absolutely** [8] - 75:10, 81:6, 92:22,
93:4, 101:8, 114:24, 122:19
**accept** [4] - 19:7, 19:8, 69:11, 69:12
**accepted** [4] - 6:23, 7:1, 19:7, 27:19
**accidentally** [3] - 16:13, 18:4, 29:6
**according** [1] - 25:19
**accordingly** [1] - 88:23
**accuracy** [1] - 28:21
**accusation** [1] - 122:11
**accusations** [2] - 32:19, 123:1
**Act** [2] - 70:4, 70:5
**act** [10] - 12:12, 13:20, 15:19, 31:10,
42:4, 61:19, 98:16, 111:6, 123:4
**acted** [3] - 28:7, 28:8, 29:23
**acting** [4] - 23:25, 36:4, 79:12, 122:11
**action** [34] - 7:7, 9:19, 25:8, 31:6, 32:3,
44:5, 44:7, 47:12, 47:15, 47:19, 53:5,
53:9, 53:16, 53:21, 56:12, 56:20,
56:21, 57:20, 58:14, 59:14, 60:7, 65:9,
72:15, 89:12, 98:14, 110:10, 111:22,
111:23, 112:1, 113:7, 114:23, 115:19,
116:4, 116:5
**actionable** [1] - 122:13
**actions** [3] - 15:8, 63:4, 79:11
**actively** [1] - 70:2
**acts** [2] - 30:25, 110:3
**actual** [4] - 15:12, 16:11, 74:6, 99:15
**actually** [27] - 8:25, 11:9, 15:17, 24:10,
26:20, 27:15, 28:9, 28:23, 31:13,
36:21, 49:13, 53:24, 61:5, 63:10,
71:14, 74:11, 84:18, 85:14, 87:13,
91:6, 97:21, 102:25, 104:20, 106:5,
106:18, 109:6
**add** [2] - 45:6, 73:10
**added** [6] - 13:21, 14:10, 14:22, 18:18,
25:6, 29:6, 29:8, 41:17
**adding** [2] - 12:20, 26:21
**additional** [3] - 72:15, 82:7, 90:2
**address** [9] - 39:10, 40:11, 65:17,
74:19, 85:3, 94:1, 94:12, 94:14,

111:18

**addressed** [1] - 124:15
**adequate** [1] - 116:16
**adjourned** [1] - 128:15
**adjournment**............................ [1] - 2:8
**adjudication** [1] - 16:25
**adjust** [1] - 16:3
**administerial** [1] - 42:3
**admission** [2] - 30:18, 91:25
**admit** [3] - 29:17, 46:14, 48:13
**admitted** [2] - 59:8, 129:15
**ADROGUÉ** [77] - 5:6, 9:2, 9:9, 9:11,
  10:1, 10:19, 10:24, 11:2, 11:6, 12:5,
  12:16, 12:25, 13:5, 13:10, 14:1, 17:3,
  17:18, 17:20, 18:7, 18:17, 18:22, 19:2,
  19:6, 19:10, 19:17, 19:22, 19:25, 22:5,
  22:9, 22:13, 40:9, 42:17, 42:20, 43:7,
  43:12, 43:19, 43:23, 44:2, 45:1, 45:8,
  45:12, 45:21, 45:24, 46:3, 46:7, 46:12,
  46:17, 46:20, 46:23, 47:3, 47:18, 48:9,
  48:15, 48:19, 48:22, 56:19, 60:1, 62:8,
  63:1, 63:12, 63:14, 72:23, 74:8, 74:12,
  86:10, 94:3, 94:15, 114:1, 114:5,
  116:10, 117:4, 117:8, 117:18, 117:22,
  118:1, 118:14, 129:5
**Adrogué** [3] - 3:7, 3:8, 5:6
**adrogué** [7] - 16:12, 18:11, 18:12,
  20:10, 21:8, 40:8, 117:21
**advance** [1] - 37:8
**adversary** [1] - 31:6
**advise** [1] - 127:13
**advocating** [1] - 83:20
**affect** [1] - 14:16
**affected** [1] - 73:16
**affidavit** [2] - 48:4, 50:10
**affidavits** [1] - 70:16
**affirmative** [11] - 33:16, 35:7, 35:17,
  42:11, 59:15, 60:10, 60:11, 60:12,
  60:13, 60:14
**afield** [1] - 72:21
**afraid** [1] - 12:17
**after** [30] - 11:10, 20:19, 21:10, 28:11,
  29:3, 39:11, 44:5, 44:19, 45:15, 53:14,
  54:5, 66:23, 70:14, 79:21, 82:12, 84:7,
  102:5, 104:23, 104:24, 105:8, 105:11,
  109:10, 112:25, 113:12, 119:8,
  119:25, 120:9, 120:22, 124:19, 126:15
**afternoon** [2] - 11:10, 73:20
**afterwards** [1] - 36:25
**again** [16] - 13:22, 26:15, 39:2, 44:1,
  62:1, 67:9, 73:22, 81:2, 81:23, 82:12,
  82:14, 83:21, 95:1, 100:7, 109:10,
  113:1
**against** [45] - 7:7, 8:9, 9:19, 9:21, 14:14,
  15:9, 15:13, 21:11, 21:12, 24:24, 25:8,
  31:19, 32:16, 36:3, 36:14, 37:25,
  39:24, 47:15, 47:20, 59:14, 60:8,
  60:24, 61:13, 62:6, 64:18, 65:1, 68:3,
  68:19, 70:19, 70:24, 71:20, 77:2, 77:7,
  77:18, 77:20, 77:24, 77:25, 78:5, 78:7,

87:19, 89:7, 112:9
**agent** [1] - 69:11
**agents** [1] - 80:8
**ago** [9] - 5:23, 17:23, 23:7, 23:8, 49:24,
  75:22, 97:11, 97:13, 97:14
**agree** [6] - 17:9, 44:23, 48:16, 71:18,
  91:3, 91:5, 103:21, 111:9
**agreed** [9] - 23:2, 23:3, 45:18, 46:14,
  120:21, 125:2, 125:4, 125:5, 125:6
**agreement** [12] - 80:15, 90:10, 95:14,
  98:20, 101:14, 104:14, 113:15,
  124:17, 124:18, 124:22, 125:3, 126:16
**ahead** [11] - 23:2, 23:19, 24:7, 27:4,
  27:10, 27:13, 28:4, 31:25, 34:21,
  34:22, 36:22
**Aid** [1] - 82:15
**aiming** [1] - 32:5
**Alabama** [1] - 3:8
**ALEXANDER** [52] - 86:18, 86:20, 90:8,
  90:14, 90:18, 92:6, 92:12, 92:22,
  95:10, 96:4, 96:21, 96:25, 97:3, 97:12,
  97:15, 97:19, 97:24, 100:25, 101:8,
  101:13, 102:1, 102:9, 102:13, 102:21,
  103:1, 103:4, 103:7, 103:14, 103:19,
  103:25, 105:6, 105:18, 105:21,
  106:25, 107:8, 107:11, 107:16,
  107:22, 108:3, 108:8, 110:16, 110:19,
  111:17, 112:7, 112:11, 112:23, 113:2,
  113:5, 113:18, 113:24, 117:15, 118:21
**Alexander** [10] - 3:15, 5:11, 86:21,
  89:16, 92:4, 99:13, 101:7, 103:13,
  106:2, 109:18
**Alexanderj@passmanjones.com** [1] -
  3:18
**Ali** [8] - 5:8, 7:25, 16:10, 28:19, 47:23,
  65:5, 73:5, 73:7
**all** [96] - 6:11, 7:10, 8:16, 12:8, 14:17,
  14:18, 16:2, 16:17, 17:21, 20:17,
  22:14, 23:23, 27:3, 28:7, 29:18, 30:24,
  31:15, 32:24, 38:10, 38:23, 40:8,
  43:25, 44:24, 45:3, 48:25, 49:1, 51:7,
  51:8, 53:3, 58:3, 58:16, 58:17, 58:25,
  60:14, 60:20, 61:3, 62:11, 63:17,
  64:23, 65:22, 65:23, 67:16, 68:21,
  68:22, 69:15, 70:25, 72:8, 75:13,
  76:10, 78:14, 79:7, 79:22, 79:24, 80:1,
  80:5, 80:14, 80:18, 81:4, 81:11, 81:13,
  82:5, 82:17, 82:18, 85:10, 86:16, 89:2,
  89:20, 92:20, 92:21, 93:5, 95:2, 99:10,
  100:20, 101:3, 102:12, 102:20,
  103:16, 104:10, 107:13, 107:15,
  108:14, 108:15, 111:4, 113:3, 113:12,
  115:3, 118:20, 119:21, 124:6, 124:7,
  124:14, 126:13, 129:7, 129:11
**all's** [1] - 128:10
**allegation** [8] - 17:12, 100:5, 112:4,
  112:8, 112:12, 112:13, 115:10, 115:16
**allegations** [8] - 8:8, 10:20, 11:21,
  36:12, 57:19, 95:24, 96:10, 96:12
**alleged** [4] - 37:24, 95:25, 110:2, 115:20

**allegedly** [5] - 36:14, 56:13, 99:19,
  104:15, 118:10
**alleging** [3] - 71:21, 96:13, 124:11
**alleviate** [1] - 50:4
**allow** [9] - 17:25, 18:7, 35:5, 49:4,
  61:21, 63:14, 125:19, 126:2, 126:22
**allowed** [3] - 13:5, 57:1, 62:14
**allows** [1] - 31:10
**almost** [7] - 25:17, 71:21, 84:7, 84:19,
  97:14, 113:9, 115:5
**alone** [1] - 100:17
**along** [3] - 5:7, 40:20, 92:18
**already** [13] - 12:21, 13:4, 28:5, 34:22,
  43:6, 43:13, 43:14, 64:9, 64:10, 86:22,
  90:13, 97:7, 100:20
**also** [29] - 20:5, 23:3, 23:4, 25:6, 27:4,
  34:14, 35:7, 35:16, 37:11, 39:5, 52:13,
  54:13, 61:21, 64:3, 66:17, 67:10,
  67:12, 69:24, 70:11, 79:10, 93:13,
  95:13, 105:3, 110:13, 112:4, 112:5,
  112:16, 113:2, 113:5
**alterego** [1] - 69:2
**always** [3] - 54:6, 65:24, 109:1
**am** [112] - 6:17, 7:23, 10:11, 15:11, 16:7,
  18:11, 20:9, 20:10, 20:12, 21:9, 21:15,
  21:17, 21:22, 24:14, 27:24, 29:15,
  30:25, 31:3, 34:1, 34:8, 34:9, 34:14,
  34:17, 34:19, 35:3, 35:21, 36:1, 36:19,
  38:17, 38:21, 38:23, 40:6, 41:10,
  41:12, 41:15, 43:21, 44:14, 45:14,
  45:17, 45:19, 49:4, 56:9, 56:18, 57:2,
  57:3, 57:7, 57:10, 59:21, 60:2, 60:20,
  61:3, 61:8, 62:1, 65:13, 66:13, 66:14,
  67:25, 69:2, 70:3, 70:19, 75:14, 75:15,
  76:7, 77:6, 77:14, 83:7, 84:7, 84:8,
  84:17, 85:11, 91:11, 91:16, 92:9,
  92:12, 92:19, 96:8, 96:9, 96:17, 97:10,
  101:3, 102:11, 103:3, 103:13, 103:14,
  103:22, 111:11, 111:12, 111:20,
  113:6, 115:2, 117:13, 118:3, 118:16,
  118:17, 118:24, 119:19, 120:10,
  121:5, 122:15, 123:18, 124:2, 124:4,
  125:1, 125:21, 126:19, 126:25, 127:1,
  128:6
**amend** [4] - 41:25, 44:14, 73:9, 127:8
**amendable** [1] - 115:18
**amended** [41] - 12:19, 14:22, 25:5,
  26:16, 26:23, 28:12, 28:14, 28:22,
  28:24, 29:6, 29:10, 29:11, 29:13,
  29:16, 33:5, 34:24, 34:25, 36:12,
  42:22, 43:2, 46:16, 46:25, 47:24, 48:8,
  48:14, 49:8, 49:10, 49:14, 49:15,
  49:18, 49:24, 49:25, 50:1, 50:12,
  71:19, 98:9, 111:21, 125:14, 125:15,
  125:16
**amending** [4] - 27:25, 41:11, 41:15,
  45:14
**amendment** [3] - 41:12, 113:25, 126:23
**amends** [1] - 44:5
**American** [1] - 43:3

**amount** [3] - 62:4, 63:9, 113:13
**amounts** [4] - 112:25, 113:10, 113:11
**an** [90] - 6:15, 13:23, 15:13, 17:1, 17:10,
18:13, 20:14, 20:25, 23:9, 24:23,
27:24, 28:12, 32:2, 35:17, 41:1, 41:7,
41:8, 41:22, 42:2, 42:3, 42:22, 43:2,
43:10, 44:5, 45:8, 47:5, 47:6, 48:4,
49:4, 51:7, 51:15, 51:16, 55:22, 59:15,
59:25, 60:10, 60:14, 63:5, 68:17, 69:2,
71:19, 73:15, 75:21, 81:23, 82:7, 84:4,
84:15, 87:10, 90:25, 91:25, 92:7,
95:12, 95:17, 97:8, 98:5, 99:9, 100:22,
101:1, 101:16, 104:14, 107:16, 109:6,
110:9, 110:12, 110:13, 112:4, 112:8,
113:18, 114:3, 114:21, 115:1, 115:18,
115:21, 115:23, 115:24, 116:19,
118:3, 119:8, 122:10, 122:11, 123:4,
123:12, 123:19, 124:5, 125:2, 125:3,
125:19, 126:2, 127:9
**ancillary** [3] - 83:22, 84:3, 84:8
**another** [12] - 9:18, 10:5, 11:22, 21:23,
67:12, 81:7, 82:12, 84:3, 85:13, 90:20,
103:8, 123:3
**answer** [3] - 38:8, 46:9, 56:17
**answering** [1] - 109:21
**anteroom** [1] - 24:23
**anti** [17] - 17:10, 17:14, 17:16, 43:6,
43:8, 43:9, 43:11, 44:5, 45:16, 45:22,
46:6, 46:10, 47:2, 47:5, 47:6, 47:10,
47:16
**anti-SLAPP** [16] - 17:10, 17:14, 17:16,
43:6, 43:9, 43:11, 44:5, 45:16, 45:22,
46:6, 46:10, 47:2, 47:5, 47:6, 47:10,
47:16
**any** [29] - 8:8, 10:9, 22:24, 22:25, 23:11,
27:13, 30:21, 34:15, 35:2, 35:6, 36:4,
39:15, 44:5, 44:9, 47:20, 49:12, 62:13,
71:5, 78:25, 79:12, 84:6, 91:25, 99:5,
100:14, 111:6, 114:9, 116:4, 123:13,
129:15
**anybody** [2] - 49:3, 75:16
**anymore** [3] - 37:1, 46:4, 82:4
**anyone** [1] - 88:9
**anything** [24] - 12:2, 12:6, 13:6, 19:8,
23:15, 40:13, 43:16, 44:8, 60:11,
80:17, 85:21, 91:24, 92:24, 93:18,
96:8, 99:1, 99:24, 100:6, 103:21,
114:7, 124:3, 125:17, 126:10, 127:24
**anyway** [3] - 28:6, 86:6, 90:15
**anywhere** [1] - 38:15
**apart** [1] - 80:23
**apologize** [3] - 22:15, 89:1, 128:12
**apology** [1] - 22:16
**App** [1] - 69:24
**apparent** [1] - 102:18
**apparently** [8] - 5:25, 9:18, 10:10,
10:13, 25:24, 30:25, 31:25, 32:24,
34:22, 41:5, 41:18, 71:12, 82:6, 98:11,
99:13, 107:25, 110:3, 119:1
**appeal** [6] - 81:21, 81:24, 82:4, 82:6,

110:9, 115:21
**appealed** [1] - 116:7
**appeals** [5] - 25:15, 42:24, 52:15, 52:24,
54:2
**appear** [5] - 5:19, 8:8, 23:2, 23:3, 89:17
**appearance** [2] - 23:5, 23:6
**appearances** [2] - 5:4, 44:24
**Appearances**..........................[1] - 2:5
**appeared** [4] - 22:21, 24:5, 24:11, 73:25
**appearing** [3] - 21:17, 22:18, 29:25
**appears** [2] - 44:16, 50:9
**appellate** [3] - 90:20, 115:23, 115:24
**apple** [2] - 84:21, 84:23
**applicable** [2] - 110:24, 112:1
**application** [5] - 28:13, 47:25, 109:7,
114:15, 116:13
**applies** [2] - 34:7, 47:9
**applying** [1] - 43:23
**appreciate** [3] - 85:19, 128:10
**appreciated** [1] - 64:7
**approach** [4] - 6:7, 93:23, 97:15, 110:15
**appropriate** [1] - 106:15
**approval** [1] - 119:8
**April** [4] - 79:21, 81:5, 114:25, 124:8
**arbitration** [1] - 59:25
**are** [187] - 7:6, 8:7, 8:11, 9:5, 9:8, 11:21,
12:4, 12:15, 14:2, 14:11, 15:9, 15:23,
17:24, 17:25, 18:3, 18:16, 20:19,
21:20, 22:8, 22:10, 22:11, 23:6, 24:15,
26:5, 27:5, 31:15, 33:25, 35:8, 35:25,
36:8, 36:12, 36:14, 37:9, 38:24, 38:25,
40:1, 41:18, 42:6, 47:12, 47:16, 48:23,
49:8, 49:16, 49:17, 49:25, 50:7, 50:17,
50:18, 51:6, 51:24, 52:13, 52:18,
54:15, 54:23, 55:3, 55:12, 56:8, 57:15,
58:4, 60:19, 61:1, 63:24, 64:15, 65:3,
66:25, 67:23, 68:6, 69:7, 69:8, 71:13,
72:2, 72:4, 72:6, 72:8, 72:14, 72:15,
73:11, 73:12, 75:4, 75:17, 76:14,
76:15, 76:20, 77:15, 77:23, 79:1, 79:7,
81:18, 82:10, 82:11, 82:18, 82:22,
82:23, 82:25, 83:1, 83:14, 83:16, 84:1,
84:17, 84:20, 85:16, 85:18, 85:20,
86:3, 86:4, 86:5, 86:8, 86:13, 86:16,
86:24, 88:7, 88:11, 88:12, 88:13,
88:17, 88:20, 89:6, 89:8, 90:12, 91:9,
91:11, 95:15, 96:10, 96:13, 97:6,
97:24, 98:2, 98:4, 98:19, 99:10, 99:18,
99:19, 100:5, 100:13, 100:18, 100:19,
100:20, 103:21, 104:14, 106:16,
107:5, 107:8, 107:11, 107:14, 108:25,
109:4, 109:25, 110:7, 110:10, 110:14,
112:1, 112:3, 112:19, 114:3, 114:16,
114:17, 114:24, 115:17, 115:23,
115:25, 117:10, 117:19, 119:11,
120:14, 120:20, 122:2, 122:5, 122:10,
122:13, 122:20, 122:21, 123:25,
126:3, 126:10, 126:17, 126:18
**aren't** [1] - 47:14
**argue** [6] - 11:18, 16:7, 18:1, 33:12,

51:23, 73:17
**argued** [2] - 89:18, 114:25
**arguing** [2] - 50:17, 85:11
**argument** [1] - 67:12
**arguments** [7] - 51:8, 52:5, 54:15,
85:16, 89:16, 89:17, 90:24
**around** [4] - 16:22, 18:17, 41:4, 43:10
**art** [1] - 49:8
**as** [87] - 8:3, 14:11, 14:14, 15:6, 15:13,
16:10, 17:6, 17:21, 18:1, 18:5, 19:19,
23:24, 25:6, 25:7, 26:22, 27:25, 28:14,
28:18, 29:20, 30:2, 31:9, 34:17, 36:5,
37:18, 37:19, 38:20, 40:13, 40:16,
41:8, 41:11, 41:13, 42:5, 45:1, 46:7,
49:11, 49:25, 51:19, 52:19, 52:20,
58:5, 59:17, 59:18, 64:12, 64:13, 65:2,
65:3, 65:10, 76:10, 78:3, 78:5, 78:6,
78:25, 80:23, 85:1, 86:1, 89:5, 89:11,
90:1, 91:13, 91:22, 91:23, 92:2, 92:23,
100:22, 102:25, 104:6, 106:10,
106:12, 109:9, 111:6, 111:7, 112:12,
115:1, 115:17, 119:23, 120:17, 122:21
**ask** [14] - 7:4, 35:21, 38:6, 83:8, 85:14,
90:6, 90:9, 90:11, 97:15, 125:18,
125:25, 126:2, 127:16, 127:20
**asked** [15] - 15:17, 26:4, 26:17, 27:16,
64:4, 72:4, 72:17, 80:7, 111:1, 124:22,
124:23
**asking** [16] - 24:14, 31:12, 36:19, 38:24,
40:7, 43:21, 56:9, 60:20, 61:3, 62:15,
72:16, 81:18, 98:4, 111:24, 115:23,
115:25
**assert** [1] - 94:22
**asserted** [1] - 36:14
**asserting** [2] - 25:7, 37:21
**assets** [3] - 32:20, 116:16, 116:17
**assigned** [1] - 125:23
**assignment** [1] - 108:23
**assistance** [2] - 23:16, 32:15
**associate** [1] - 120:15
**associates** [2] - 32:10, 32:11
**assume** [1] - 85:16
**assumes** [1] - 118:24
**assuming** [1] - 37:16
**assured** [1] - 92:15
**at** [106] - 6:10, 6:12, 7:23, 9:13, 10:14,
10:16, 12:9, 14:17, 14:21, 16:3, 19:1,
19:4, 20:11, 21:1, 24:4, 24:5, 25:3,
25:22, 27:14, 27:15, 27:22, 27:23,
28:6, 28:11, 28:17, 30:21, 32:6, 33:2,
35:24, 36:18, 37:7, 40:3, 40:4, 41:6,
41:21, 42:5, 45:17, 45:18, 45:19,
45:20, 46:2, 46:5, 46:9, 47:1, 48:5,
49:20, 52:4, 52:23, 54:15, 57:6, 58:3,
62:2, 64:20, 71:23, 72:10, 74:5, 74:11,
75:5, 75:7, 75:13, 75:16, 75:20, 76:1,
81:10, 84:4, 84:21, 84:23, 85:14, 86:3,
86:15, 86:17, 87:11, 88:25, 89:10,
89:15, 90:6, 93:7, 95:6, 102:17,
105:10, 106:1, 106:2, 106:13, 107:2,

107:6, 107:13, 107:15, 111:1, 111:21, 112:12, 113:22, 116:16, 116:19, 117:21, 118:4, 118:8, 120:7, 124:25, 126:2, 127:3, 127:21, 128:15

**attached** [1] - 41:8
**attack** [2] - 70:15, 80:1
**attempt** [1] - 83:11
**attempted** [1] - 41:20
**attempting** [1] - 33:3
**attend** [1] - 24:9
**attention** [2] - 94:22, 109:16
**attorney** [5] - 14:3, 26:13, 40:18, 90:23, 90:25
**attorney/client** [1] - 70:25
**attorneys** [2] - 26:13, 92:20
**attorneys'** [13] - 13:23, 35:13, 44:6, 44:9, 54:22, 55:1, 55:3, 55:4, 55:5, 55:12, 61:11, 61:22, 61:24
**attributable** [1] - 44:7
**audience** [1] - 87:9
**Austin** [2] - 3:13, 52:24
**authority** [5] - 37:4, 106:6, 110:22, 111:6, 117:10
**automatic** [1] - 81:8
**automatically** [1] - 109:1
**awarded** [4] - 53:5, 54:5, 54:23, 76:5
**aware** [6] - 15:3, 38:2, 64:15, 66:8, 67:6, 103:3
**Azeemeh** [26] - 7:7, 8:1, 12:5, 12:7, 13:6, 15:19, 21:16, 22:19, 23:25, 64:18, 65:6, 73:4, 77:2, 77:8, 78:16, 93:14, 93:17, 95:6, 96:22, 96:25, 98:23, 99:2, 111:6, 121:4, 126:5

**B**

**B** [1] - 52:3
**back** [21] - 17:20, 20:19, 26:9, 26:17, 35:3, 39:20, 41:18, 60:18, 81:5, 81:13, 82:12, 86:17, 88:4, 88:5, 95:6, 98:3, 101:22, 102:11, 116:19, 126:23
**background** [1] - 65:21
**backroom** [1] - 30:7
**ball** [1] - 111:14
**Ballasses** [2] - 25:16, 25:17
**Band** [1] - 82:15
**Band-Aid** [1] - 82:15
**bandy** [1] - 29:5
**bank** [17] - 13:22, 14:14, 65:1, 67:5, 73:10, 73:23, 77:3, 80:10, 83:4, 84:5, 86:22, 100:6, 100:10, 110:3, 110:4, 120:9, 126:7
**Bank** [36] - 5:3, 5:14, 7:8, 8:3, 8:9, 9:19, 12:20, 12:22, 23:14, 65:10, 71:20, 77:21, 78:1, 78:6, 79:11, 95:14, 95:17, 96:1, 96:14, 96:22, 102:4, 103:4, 105:20, 105:22, 111:15, 112:2, 112:9, 120:8, 121:4, 121:11, 122:7, 123:17, 123:22, 124:1, 124:2, 124:4
**BANK** [2] - 1:7, 4:1

**bank's** [1] - 115:6
**bankruptcies** [1] - 109:1
**Bankruptcy** [1] - 23:4
**bankruptcy** [75] - 23:8, 23:12, 23:17, 24:6, 24:8, 29:23, 29:25, 30:5, 30:7, 31:5, 31:6, 32:23, 35:24, 35:25, 36:1, 40:12, 40:17, 40:21, 66:10, 73:23, 73:24, 74:4, 81:6, 81:10, 81:19, 82:2, 82:4, 82:9, 82:12, 83:6, 96:16, 98:6, 98:7, 98:21, 98:25, 99:17, 99:25, 100:7, 100:11, 101:22, 102:7, 103:2, 104:2, 105:9, 105:14, 106:7, 106:11, 106:13, 106:21, 107:13, 107:15, 107:17, 107:19, 107:24, 108:2, 108:25, 109:16, 110:5, 113:8, 115:8, 115:11, 115:15, 115:20, 115:22, 115:25, 116:2, 116:6, 120:14, 120:24, 120:25, 121:23, 124:20
**Bar** [8] - 3:3, 3:7, 3:11, 3:16, 4:3, 4:4, 4:5, 4:12
**bar** [2] - 68:2, 70:23
**barratry** [1] - 68:9
**Barratry** [1] - 68:10
**based** [11] - 7:5, 12:12, 53:10, 55:21, 56:10, 57:4, 110:21, 113:22, 126:20, 127:6, 128:7
**basically** [9] - 23:18, 27:14, 33:18, 35:9, 39:3, 60:6, 74:14, 89:11, 109:19
**basing** [1] - 36:2
**basis** [12] - 23:22, 80:25, 82:11, 82:16, 97:8, 98:4, 100:7, 100:17, 100:22, 109:22, 110:10, 116:3
**bazaarest** [1] - 70:7
**became** [1] - 5:22
**because** [147] - 6:8, 6:15, 6:23, 7:5, 7:23, 8:10, 9:4, 9:6, 11:25, 12:1, 12:17, 13:5, 13:6, 14:2, 14:11, 14:13, 15:4, 15:8, 15:14, 16:5, 16:10, 16:19, 17:8, 17:16, 18:25, 19:2, 19:5, 19:12, 20:13, 22:11, 24:15, 24:22, 25:10, 31:7, 31:12, 33:3, 33:12, 34:13, 34:15, 36:15, 37:1, 37:18, 38:7, 38:16, 38:20, 39:21, 40:2, 40:16, 45:2, 45:3, 46:14, 47:7, 48:7, 48:9, 50:3, 51:10, 54:7, 55:9, 55:10, 55:23, 56:3, 56:12, 56:13, 57:6, 57:9, 57:17, 58:3, 61:2, 61:10, 61:20, 61:25, 66:15, 69:6, 69:19, 70:20, 71:5, 71:12, 71:15, 72:16, 72:24, 73:4, 73:10, 73:20, 74:14, 76:8, 76:12, 76:13, 77:1, 78:3, 80:7, 81:8, 82:15, 83:16, 83:24, 84:13, 84:25, 85:6, 88:1, 88:4, 88:16, 90:3, 91:9, 92:13, 92:16, 93:7, 94:13, 94:16, 94:17, 96:21, 99:7, 99:8, 101:15, 101:16, 101:22, 103:17, 103:20, 104:17, 105:1, 106:8, 106:14, 106:23, 108:1, 108:15, 108:22, 109:12, 109:16, 112:2, 113:21, 114:11, 114:13, 114:22, 115:19, 116:5, 118:12, 120:1, 121:5, 122:12, 122:20,

123:2, 124:7, 124:10, 124:23, 125:14, 125:15, 126:3, 126:13
**become** [3] - 36:21, 44:6, 67:6
**becomes** [2] - 33:1, 44:22
**been** [51] - 6:23, 7:1, 9:17, 9:20, 13:13, 16:25, 17:8, 29:5, 30:16, 35:22, 39:21, 39:22, 42:8, 43:14, 44:6, 50:24, 54:4, 54:21, 54:25, 59:22, 59:24, 64:16, 66:19, 66:21, 67:8, 67:22, 69:20, 75:2, 80:5, 86:13, 87:3, 90:16, 92:15, 95:2, 101:5, 101:6, 103:15, 104:21, 108:17, 111:19, 113:14, 115:13, 121:2, 121:13, 121:14, 122:22, 124:14, 124:25, 125:15, 128:14
**before** [34] - 1:20, 11:3, 11:6, 14:23, 17:14, 18:24, 21:10, 21:13, 25:11, 36:20, 40:17, 42:9, 51:13, 52:1, 60:19, 67:11, 71:22, 75:8, 77:17, 80:6, 94:20, 94:25, 103:8, 105:16, 105:18, 105:22, 106:3, 119:8, 120:3, 120:4, 122:22, 124:7, 126:10, 127:18
**begin** [1] - 52:5
**beginning** [4] - 33:3, 52:4, 54:15, 111:20
**begs** [1] - 34:24
**behalf** [16] - 5:17, 13:21, 15:20, 23:2, 23:4, 29:25, 30:11, 83:20, 95:25, 120:12, 122:7, 124:2, 124:4, 126:6, 126:7
**behind** [2] - 30:22, 80:25
**being** [15] - 13:2, 20:21, 27:7, 44:25, 49:17, 53:12, 64:1, 73:3, 73:11, 76:7, 124:11
**believe** [15] - 8:5, 23:22, 24:1, 24:9, 27:6, 59:2, 64:25, 71:25, 105:1, 105:2, 106:6, 106:9, 123:2, 124:14, 125:25
**belive** [1] - 72:2
**below** [1] - 42:25
**benefited** [1] - 111:15
**best** [1] - 101:13
**better** [1] - 48:20
**betting** [1] - 10:11
**between** [12] - 26:12, 30:8, 61:12, 64:6, 67:5, 69:12, 78:9, 96:13, 96:22, 108:21, 113:14, 127:16
**big** [4] - 67:23, 83:19, 101:21, 107:2
**bigger** [1] - 91:3
**bill** [1] - 117:16
**bit** [8] - 8:24, 23:7, 23:8, 27:8, 36:21, 48:20, 93:7, 94:10
**bite** [2] - 84:21, 84:23
**black** [2] - 98:14, 100:14
**blaming** [1] - 30:23
**Blunt** [1] - 52:23
**blunt** [2] - 24:18, 33:8
**board** [1] - 59:25
**body** [1] - 113:18
**boil** [1] - 114:12
**Bonnie** [2] - 6:20, 119:6
**borrower** [3] - 95:19, 120:13, 126:6

**both** [8] - 9:12, 27:25, 37:9, 41:11, 41:14, 100:4, 101:16, 117:14
**bottom** [1] - 117:9
**BRANCH** [2] - 1:7, 4:1
**breach** [7] - 79:1, 79:2, 79:6, 98:19, 99:21, 99:23, 124:22
**breach-of-contract** [1] - 79:1
**breached** [1] - 124:18
**break** [3] - 20:20, 86:6
**brief** [3] - 22:3, 62:8, 89:16
**briefly** [1] - 72:25
**bring** [3] - 35:8, 59:12, 63:24
**bringing** [3] - 40:16, 71:7, 71:12
**broad** [1] - 36:8
**brought** [14] - 6:15, 11:17, 15:17, 15:21, 39:24, 49:2, 49:3, 66:4, 71:15, 72:7, 74:21, 79:8, 109:15
**building** [18] - 30:20, 32:1, 32:6, 80:21, 95:17, 95:20, 101:1, 101:4, 101:10, 101:11, 101:12, 101:15, 101:16, 101:19, 112:15, 113:16
**bullied** [1] - 70:20
**bunch** [1] - 63:17
**burden** [21] - 52:10, 53:1, 53:13, 53:14, 54:7, 54:9, 55:8, 56:1, 56:6, 56:23, 57:12, 57:15, 57:18, 57:24, 58:17, 58:18, 59:1, 59:2, 59:8, 60:16, 60:17
**business** [5] - 31:9, 68:20, 70:3, 99:22, 112:21
**businesses** [1] - 32:4
**but** [134] - 8:8, 11:18, 12:21, 13:12, 13:15, 14:4, 14:23, 17:24, 19:3, 20:8, 20:20, 23:10, 24:9, 25:24, 26:13, 27:17, 27:21, 28:8, 28:22, 29:19, 34:6, 34:23, 35:15, 36:10, 36:17, 36:25, 38:22, 39:4, 39:5, 39:17, 39:20, 39:25, 40:10, 40:24, 41:6, 41:10, 43:12, 43:19, 44:12, 44:21, 45:8, 45:10, 45:12, 46:5, 46:7, 46:15, 46:20, 46:21, 47:3, 47:5, 48:13, 49:14, 50:9, 52:18, 53:18, 54:17, 55:19, 55:25, 59:10, 61:13, 62:2, 63:3, 63:6, 64:9, 64:17, 66:25, 69:5, 71:4, 71:11, 72:13, 72:15, 72:20, 73:18, 73:24, 75:5, 75:7, 75:20, 76:9, 76:16, 77:5, 77:19, 80:4, 81:22, 81:23, 82:22, 83:21, 84:2, 84:4, 84:8, 84:11, 84:18, 85:7, 85:17, 85:19, 87:10, 87:18, 88:9, 89:13, 90:6, 90:15, 91:5, 92:7, 93:13, 94:21, 95:5, 96:6, 97:4, 99:14, 100:20, 101:17, 102:19, 102:23, 105:3, 105:17, 105:21, 106:2, 107:13, 109:18, 110:7, 110:9, 111:16, 112:13, 113:6, 113:20, 114:14, 114:21, 116:12, 116:18, 121:13, 124:6, 126:13, 127:4, 127:10, 128:6
**buy** [1] - 76:11
**by** [58] - 1:22, 12:25, 17:10, 22:17, 23:17, 25:16, 26:23, 29:25, 30:2, 30:4, 30:21, 31:15, 40:25, 43:11, 50:9, 51:12, 53:8, 53:13, 57:22, 58:9, 59:24,

59:25, 63:6, 66:18, 66:20, 67:10, 67:20, 68:23, 69:2, 70:10, 70:15, 73:16, 74:2, 79:11, 81:11, 82:8, 83:12, 84:3, 95:25, 99:11, 100:5, 100:10, 102:23, 103:4, 103:7, 104:15, 105:12, 105:23, 110:20, 110:22, 112:24, 115:13, 126:4, 129:9, 129:12, 129:15, 129:19

# C

**C** [5] - 3:1, 3:15, 4:2, 5:1, 59:12
**Caldwell** [1] - 79:24
**California** [1] - 47:8
**call** [6] - 26:7, 28:19, 49:15, 86:1, 105:11, 119:14
**called** [6] - 26:2, 26:15, 26:20, 27:15, 64:3, 70:22
**calling** [4] - 49:8, 79:25, 80:8
**calls** [1] - 16:14
**came** [9] - 1:19, 18:24, 20:8, 66:22, 80:11, 83:10, 89:13, 120:4
**can** [94] - 6:7, 10:16, 12:9, 12:10, 12:12, 13:17, 13:20, 13:23, 14:12, 15:12, 15:16, 16:18, 16:23, 17:1, 17:18, 18:6, 18:8, 18:15, 19:3, 19:12, 19:17, 19:18, 19:20, 20:7, 25:13, 35:7, 35:15, 35:16, 36:24, 37:5, 38:13, 38:14, 38:18, 47:11, 50:15, 50:22, 51:2, 51:23, 53:19, 54:5, 55:7, 55:19, 58:19, 63:12, 63:18, 68:7, 68:11, 70:1, 71:1, 71:4, 73:6, 73:8, 73:12, 74:12, 74:16, 74:18, 75:14, 75:25, 77:18, 78:3, 83:1, 83:4, 84:5, 84:6, 85:12, 85:15, 85:16, 85:21, 87:9, 89:1, 93:6, 93:14, 94:4, 99:4, 100:21, 101:19, 101:20, 102:18, 102:19, 107:6, 108:11, 108:19, 114:13, 114:20, 116:9, 118:11, 118:21, 119:14, 121:5, 127:20, 127:21
**can't** [26] - 9:1, 12:2, 12:6, 13:6, 13:17, 17:10, 17:17, 26:6, 40:2, 54:10, 55:4, 55:19, 55:22, 56:11, 71:25, 72:2, 76:25, 84:7, 87:24, 93:17, 101:17, 101:22, 112:3, 116:4, 127:5, 127:6
**candid** [1] - 93:2
**candidly** [1] - 29:17
**candor** [5] - 63:17, 91:1, 91:15, 92:21, 122:22
**cannot** [4] - 9:12, 15:19, 71:4, 87:21
**capacity** [13] - 21:10, 21:21, 21:23, 23:23, 23:24, 24:2, 24:25, 28:7, 28:8, 28:9, 31:11, 109:5, 109:8
**Capital** [1] - 95:6
**captioned** [1] - 22:18
**car** [1] - 114:13
**carbon** [2] - 71:21, 74:17
**care** [5] - 33:8, 63:20, 63:22, 96:7, 99:8
**careful** [3] - 16:4, 122:18, 122:23
**carrier** [1] - 27:7
**carries** [1] - 54:7

**carry** [1] - 54:9
**case** [120] - 6:25, 8:6, 8:7, 8:10, 9:19, 12:22, 13:4, 15:18, 17:1, 21:18, 22:18, 22:21, 22:25, 23:1, 23:8, 24:12, 24:15, 25:6, 25:12, 25:18, 27:25, 29:23, 30:5, 30:14, 30:15, 32:23, 32:25, 33:10, 35:12, 36:7, 41:11, 41:24, 42:14, 43:11, 43:16, 43:25, 45:9, 47:6, 47:7, 47:8, 47:9, 47:13, 51:20, 52:14, 52:17, 53:3, 53:25, 54:4, 54:5, 54:13, 54:24, 55:9, 55:10, 56:3, 56:12, 56:22, 57:1, 57:15, 57:16, 58:7, 58:12, 58:14, 58:16, 61:15, 62:16, 63:15, 66:14, 67:13, 72:15, 74:15, 74:20, 75:11, 75:22, 76:2, 76:3, 76:17, 76:18, 76:19, 77:7, 77:23, 78:25, 79:3, 79:6, 79:8, 81:19, 82:2, 82:5, 83:21, 84:22, 89:5, 89:11, 89:12, 90:1, 90:17, 92:14, 92:18, 95:22, 96:2, 96:3, 98:6, 98:7, 98:21, 99:25, 110:12, 114:6, 115:22, 116:6, 124:15, 124:25, 126:12, 126:14, 128:13
**cases** [13] - 17:8, 21:17, 31:20, 33:11, 43:1, 63:15, 65:22, 66:10, 67:25, 69:16, 71:9, 109:12
**cash** [6] - 103:11, 104:4, 104:8, 104:22, 105:3, 105:4
**CAUSE** [1] - 1:2
**cause** [32] - 1:20, 7:6, 44:5, 47:12, 47:15, 47:19, 50:24, 50:25, 51:18, 51:19, 53:5, 53:16, 53:21, 54:19, 54:21, 55:14, 56:12, 56:20, 56:21, 57:20, 58:14, 80:4, 98:14, 110:13, 113:7, 115:19, 116:4, 118:6, 118:7, 129:11
**causes** [8] - 25:8, 60:7, 65:9, 72:14, 110:10, 111:22, 112:1, 114:23
**causing** [2] - 32:18, 50:8
**CC** [1] - 8:16
**censured** [1] - 35:23
**Center** [1] - 4:6
**certain** [2] - 27:6, 84:7
**certainly** [2] - 34:18, 110:7
**CERTIFICATE** [1] - 129:1
**Certificate...........** [1] - 2:9
**certify** [3] - 129:6, 129:13, 129:17
**chain** [1] - 94:24
**challenges** [1] - 121:25
**chambers** [1] - 129:12
**chance** [2] - 36:17, 41:10
**change** [1] - 125:13
**changed** [2] - 70:18, 72:13
**Chapter** [1] - 74:1
**characterize** [1] - 103:22
**charge** [1] - 40:24
**Charles** [2] - 4:2, 5:13
**charles.conrad@pillsburylaw.com** [1] - 4:8
**check** [1] - 6:19
**chime** [1] - 59:4

**Chinese** [1] - 101:17
**chose** [1] - 95:15
**CHOUDHRI** [56] - 5:8, 6:13, 6:17, 7:8,
7:12, 8:5, 8:13, 8:18, 8:22, 64:14,
64:24, 65:7, 65:12, 65:16, 65:19,
68:11, 68:15, 68:17, 70:1, 74:18, 75:9,
75:23, 76:14, 76:22, 77:3, 77:12,
77:22, 78:8, 78:19, 93:1, 93:4, 94:1,
94:7, 94:11, 96:15, 116:25, 119:16,
119:20, 122:4, 122:7, 122:15, 122:19,
122:25, 123:7, 123:11, 123:15,
124:16, 125:18, 126:22, 127:2,
127:15, 127:19, 127:25, 128:2, 128:5,
128:9
**Choudhri** [61] - 5:8, 5:18, 5:20, 6:6, 6:7,
7:4, 7:25, 8:17, 16:10, 22:1, 25:11,
25:16, 28:19, 29:1, 30:17, 31:8, 31:14,
31:16, 31:19, 32:8, 32:10, 32:14,
32:16, 34:20, 35:22, 36:20, 36:23,
37:8, 37:9, 37:10, 37:17, 39:12, 50:11,
59:23, 60:22, 61:5, 64:16, 65:5, 67:16,
72:1, 72:22, 76:8, 78:18, 89:22, 92:23,
94:10, 95:3, 96:18, 97:1, 102:17,
104:5, 104:10, 104:15, 106:17,
108:22, 111:7, 119:17, 123:10, 127:12
**Choudhri's** [3] - 16:19, 21:24, 32:3
**Chris** [2] - 71:1, 71:2
**Christine** [1] - 1:20
**circuit** [1] - 43:17
**circumstance** [2] - 75:24, 76:24
**circus** [1] - 80:2
**citation** [4] - 41:19, 44:18, 44:20, 48:12
**citations** [1] - 42:6
**cite** [2] - 17:2, 25:13
**cited** [3] - 41:24, 47:7, 61:16
**citizens** [1] - 61:19
**claim** [30] - 8:11, 14:14, 16:12, 30:18,
31:23, 33:3, 33:16, 35:13, 45:2, 52:12,
55:18, 57:24, 62:24, 63:22, 64:18,
77:18, 77:20, 77:24, 78:5, 78:7, 79:1,
82:16, 98:8, 98:16, 99:15, 100:2,
110:6, 112:10, 113:9
**claimed** [3] - 15:13, 29:20, 61:13
**claiming** [2] - 33:2, 54:9
**claims** [21] - 9:7, 25:8, 32:16, 33:23,
36:3, 36:13, 36:15, 59:21, 60:24, 65:1,
77:12, 80:22, 82:20, 82:22, 82:23,
95:2, 97:9, 98:19, 99:18, 99:20,
100:21
**clarify** [6] - 74:19, 76:24, 78:24, 108:11,
121:1, 123:7
**clarity** [1] - 50:14
**clause** [1] - 95:18
**clauses** [1] - 95:14
**clear** [25] - 5:18, 21:18, 29:15, 34:8,
35:9, 35:12, 36:7, 36:16, 41:1, 49:7,
49:23, 59:13, 62:12, 64:17, 78:2, 78:4,
81:14, 94:24, 98:1, 99:11, 112:12,
114:19, 120:19, 122:16, 127:5
**cleared** [1] - 20:20

**clearly** [3] - 24:15, 26:24, 33:24
**CLERK** [4] - 6:22, 6:25, 7:19, 119:7
**clerk** [3] - 8:16, 27:16, 64:5
**clerk's** [1] - 22:6
**clerks** [1] - 19:9
**client** [14] - 12:1, 12:3, 14:4, 14:17,
25:1, 30:24, 31:20, 31:23, 40:15,
47:22, 48:1, 66:22, 70:15
**client's** [1] - 109:14
**clients** [1] - 12:1
**close** [3] - 22:3, 51:14, 89:13
**closed** [1] - 30:8
**closing** [1] - 67:11
**cloud** [1] - 51:6
**cocounsel** [1] - 5:7
**collateral** [1] - 108:15
**collection** [3] - 103:11, 104:5, 104:22
**come** [17] - 36:15, 39:20, 49:3, 60:19,
66:11, 66:14, 69:10, 69:19, 70:19,
76:20, 86:17, 90:9, 105:4, 109:14,
111:11, 126:23
**comes** [1] - 39:18
**comical** [1] - 15:2
**coming** [5] - 25:2, 32:25, 82:10, 98:3,
122:1
**comment** [1] - 86:12
**committed** [1] - 68:9
**Comms** [2] - 43:17, 44:3
**communication** [2] - 69:12, 94:17
**communications** [2] - 67:4, 121:3
**Companies** [5] - 31:14, 31:16, 35:23,
35:24, 94:8
**companies** [1] - 25:13
**company** [3] - 106:15, 106:16, 108:16
**compel** [2] - 51:10, 120:6
**compelled** [1] - 120:1
**competition** [1] - 70:5
**complaint** [6] - 16:11, 21:11, 33:5, 33:6,
62:6, 70:23
**completely** [1] - 69:4
**computer** [1] - 35:5
**concern** [7] - 89:4, 89:9, 89:10, 91:13,
106:5, 107:20, 111:19
**concerned** [8] - 16:5, 27:10, 77:15,
84:14, 104:7, 104:9, 104:13, 109:4
**concerns** [2] - 81:15, 105:3
**concert** [2] - 30:20, 79:12
**conduct** [3] - 51:25, 122:14, 123:5
**conducted** [1] - 31:8
**confer** [1] - 108:10
**conference** [7] - 23:10, 30:4, 72:17,
81:11, 104:2, 104:23, 105:11
**conferences** [2] - 80:6, 124:9
**confident** [1] - 121:5
**confidential** [5] - 70:25, 113:15, 120:14,
120:16, 120:21
**confirmable** [1] - 121:24
**confirmation** [1] - 124:12
**confirmed** [3] - 26:16, 26:21, 73:25

**confirming** [2] - 12:7, 40:25
**confused** [2] - 49:16, 82:6
**confusing** [1] - 13:12
**confusion** [4] - 49:12, 50:5, 78:4,
114:22
**connection** [1] - 96:22
**Conrad** [19] - 4:2, 5:13, 49:2, 79:19,
94:19, 97:18, 120:3, 120:15, 120:21,
121:3, 121:16, 122:3, 122:6, 122:12,
123:17, 123:18, 123:19, 123:20, 124:3
**CONRAD** [29] - 5:13, 7:15, 7:20, 9:25,
71:14, 71:17, 74:16, 79:16, 79:20,
81:2, 87:5, 94:21, 97:21, 98:1, 98:13,
99:6, 99:10, 100:4, 108:11, 108:14,
109:3, 110:18, 114:19, 116:23, 117:3,
118:9, 125:2, 125:5, 125:8
**Conrad's** [1] - 111:19
**Conrad/Bank** [1] - 124:1
**consider** [2] - 125:25, 127:11
**considered** [5] - 44:8, 80:5, 81:4,
100:20, 115:13
**conspiracy** [13] - 30:2, 78:9, 78:10,
82:1, 96:13, 98:8, 98:13, 111:23,
112:4, 112:10, 113:9, 113:17, 115:11
**conspired** [2] - 29:21, 32:22
**constantly** [2] - 80:1, 80:13
**constituted** [1] - 33:15
**constitutes** [2] - 42:15, 47:1
**contacted** [5] - 22:17, 26:19, 26:20,
67:4, 68:21, 70:2, 121:16
**contained** [1] - 31:2
**contains** [1] - 129:7
**contention** [1] - 52:19
**contents** [3] - 120:13, 120:20, 120:23
**continuance** [1] - 76:13
**continue** [4] - 19:22, 20:17, 33:22,
124:19
**continued** [2] - 29:1, 124:8
**continuing** [1] - 92:16
**contract** [8] - 32:18, 79:1, 98:20, 98:23,
98:25, 99:3, 99:21, 112:18
**contrast** [1] - 108:4
**control** [10] - 95:12, 95:15, 95:18,
105:13, 105:14, 106:19, 108:19,
110:25, 111:11
**controlled** [2] - 104:15, 107:20
**controlling** [2] - 106:5, 126:5
**controls** [3] - 89:3, 106:16, 108:22
**conversations** [4] - 26:12, 41:5, 51:24,
124:9
**conveyance** [1] - 99:22
**convincing** [1] - 36:16
**cool** [1] - 41:16
**copy** [25] - 6:15, 6:18, 7:16, 10:16, 18:8,
18:15, 18:20, 18:22, 19:20, 20:2, 20:6,
25:10, 26:2, 71:21, 74:17, 87:4, 93:20,
97:18, 110:17, 119:4, 119:10
**copying** [1] - 84:21
**corners** [2] - 36:11, 62:5
**corporate** [9] - 16:9, 34:19, 37:6, 37:17,

37:19, 39:13, 60:21, 61:6, 120:17
**correct** [15] - 7:12, 29:12, 35:10, 47:25, 57:17, 60:17, 72:22, 75:9, 76:14, 77:6, 99:6, 105:20, 117:24, 117:25, 129:7
**correctly** [3] - 8:19, 122:10, 129:14
**corresponding** [1] - 31:6
**cost** [1] - 129:17
**costs** [1] - 33:15
**could** [17] - 30:15, 46:15, 46:16, 49:2, 50:13, 51:15, 80:9, 85:2, 90:19, 95:16, 104:13, 107:2, 116:1, 116:7, 124:13, 125:24
**couldn't** [6] - 15:20, 34:2, 66:6, 84:15, 107:3
**counsel** [20] - 5:4, 9:2, 11:4, 11:21, 17:4, 18:7, 22:21, 23:17, 24:22, 27:22, 41:22, 63:14, 73:17, 86:22, 93:20, 97:25, 104:21, 108:10, 124:10, 129:9
**counsel's** [1] - 86:12
**count** [1] - 98:22
**Count** [2] - 99:14, 112:18
**counterclaims** [2] - 9:6, 33:21
**countless** [2] - 67:24, 67:25
**County** [5] - 1:21, 1:25, 66:5, 129:5, 129:25
**COUNTY** [2] - 1:6, 129:2
**couple** [5] - 18:3, 20:13, 49:7, 83:10, 109:10
**course** [5] - 31:1, 32:3, 85:18, 94:22, 115:19
**COURT** [248] - 1:2, 1:4, 5:2, 5:12, 5:20, 5:24, 6:1, 6:4, 6:7, 6:16, 6:19, 6:23, 7:2, 7:10, 7:13, 7:17, 7:22, 8:7, 8:15, 8:21, 9:13, 9:23, 10:2, 10:13, 10:17, 10:21, 11:1, 12:3, 12:14, 12:21, 12:24, 13:3, 13:8, 13:25, 16:21, 17:5, 17:19, 18:9, 18:20, 18:25, 19:4, 19:8, 19:11, 19:19, 19:24, 20:3, 20:7, 20:17, 21:4, 21:7, 21:20, 21:25, 22:4, 22:8, 22:11, 22:14, 24:13, 24:20, 29:10, 29:14, 29:18, 37:13, 38:2, 38:16, 39:4, 40:8, 42:14, 42:19, 43:5, 43:8, 43:18, 43:21, 43:25, 44:21, 45:5, 45:10, 45:17, 45:22, 45:25, 46:5, 46:9, 46:13, 46:19, 46:21, 46:24, 47:5, 47:14, 48:6, 48:13, 48:25, 50:2, 50:7, 50:15, 50:20, 52:16, 55:6, 55:15, 55:25, 56:8, 56:17, 56:21, 57:2, 58:2, 59:6, 63:8, 64:9, 64:15, 64:21, 65:2, 65:8, 65:14, 65:18, 71:11, 71:16, 74:5, 74:10, 74:14, 75:5, 75:11, 75:13, 76:1, 76:15, 76:25, 77:5, 77:10, 77:14, 78:2, 78:10, 78:21, 79:18, 85:8, 85:22, 86:3, 86:15, 86:19, 86:25, 87:3, 87:15, 87:17, 87:21, 87:24, 88:7, 88:11, 88:16, 88:20, 89:1, 90:12, 90:16, 90:25, 91:8, 91:18, 91:24, 92:4, 92:11, 92:13, 92:23, 93:2, 93:5, 93:11, 93:16, 93:22, 93:24, 94:5, 94:9, 94:19, 95:8, 95:21, 96:6, 96:16, 96:24, 97:2, 97:4, 97:13, 97:17, 98:12, 99:4, 99:7,

100:1, 100:24, 101:3, 101:9, 101:25, 102:8, 102:10, 102:15, 102:22, 103:3, 103:6, 103:10, 103:15, 103:20, 104:3, 104:19, 105:17, 105:19, 105:25, 107:5, 107:10, 107:14, 107:18, 107:25, 108:6, 108:13, 109:2, 111:16, 111:18, 112:8, 112:17, 112:24, 113:3, 113:6, 113:20, 114:2, 114:14, 116:18, 117:1, 117:13, 117:17, 117:20, 117:25, 118:2, 118:16, 118:23, 119:6, 119:14, 119:17, 122:2, 122:5, 122:9, 122:17, 122:20, 123:1, 123:9, 123:14, 124:6, 124:21, 125:4, 125:6, 125:13, 126:9, 126:25, 127:3, 127:18, 127:23, 128:1, 128:3, 128:6, 128:13
**court** [75] - 12:11, 12:15, 12:16, 12:20, 13:10, 13:19, 13:21, 14:6, 14:8, 14:19, 15:18, 16:25, 17:22, 19:18, 22:20, 23:12, 24:6, 24:12, 24:13, 24:14, 25:15, 31:5, 40:19, 42:2, 42:23, 48:3, 51:8, 52:14, 52:24, 54:2, 58:4, 71:19, 71:22, 72:1, 73:9, 74:4, 75:4, 80:3, 80:11, 81:3, 82:8, 82:9, 84:4, 85:22, 90:20, 91:9, 91:10, 91:12, 91:14, 91:15, 92:24, 93:3, 95:4, 101:22, 102:7, 104:25, 106:21, 109:16, 113:11, 115:13, 115:24, 115:25, 116:2, 116:6, 119:13, 120:15, 122:11, 122:23, 124:15, 129:12
**Court** [51] - 1:24, 2:9, 23:4, 23:18, 23:21, 27:15, 37:4, 37:21, 42:2, 43:1, 47:21, 52:1, 52:6, 54:18, 59:13, 62:2, 62:15, 64:4, 65:17, 72:16, 76:10, 83:3, 86:21, 90:19, 91:1, 92:1, 92:8, 92:21, 93:9, 95:13, 98:2, 98:15, 103:8, 103:25, 104:1, 104:7, 111:1, 111:3, 111:4, 115:2, 115:24, 116:21, 118:2, 118:6, 125:23, 128:7, 129:4, 129:5, 129:24, 129:25
**Court's** [4] - 91:6, 91:8, 94:22, 114:20
**courtroom** [5] - 17:4, 66:18, 87:8, 87:22, 88:22
**courts** [6] - 12:18, 13:7, 69:6, 89:9, 101:23, 114:10
**Covad** [2] - 43:17, 44:2
**CPRC** [3] - 28:16, 29:4, 33:25
**create** [5] - 29:22, 51:16, 79:13, 80:2, 80:10
**created** [1] - 51:12
**credit** [2] - 50:2, 50:9
**crime** [1] - 70:4
**cross** [2] - 58:7, 118:12
**CSR** [2] - 1:24, 129:23
**current** [4] - 6:18, 10:10, 30:24, 31:23
**currently** [2] - 21:18, 82:21

---

# D

**D** [2] - 2:1, 5:1
**dad** [2] - 66:24, 70:15

**Dajani** [2] - 120:7, 126:7
**Dajani's** [1] - 120:2
**Dallas** [2] - 3:17, 54:2
**damage** [1] - 82:1
**damaged** [2] - 78:13, 112:25
**damages** [17] - 32:18, 76:20, 79:14, 82:18, 99:8, 99:10, 99:12, 99:15, 100:3, 100:21, 109:25, 110:7, 112:19, 114:24, 124:23, 124:24
**Darjean** [1] - 66:21
**darn** [1] - 89:13
**Date** [1] - 129:24
**date** [9] - 27:16, 27:17, 50:9, 51:13, 51:16, 63:13, 127:20
**dates** [1] - 50:3
**David** [2] - 41:7, 41:10
**day** [12] - 1:18, 20:22, 45:19, 75:6, 75:7, 75:20, 76:2, 83:22, 89:10, 105:11, 116:19, 129:20
**days** [12] - 27:17, 32:25, 37:7, 61:7, 63:12, 63:16, 63:25, 64:6, 81:7, 89:21, 97:11, 109:10
**days'** [1] - 11:8
**dazzle** [1] - 85:21
**deal** [1] - 30:8
**dealing** [4] - 22:6, 90:3, 99:23, 106:23
**deals** [2] - 86:22, 126:15
**debtor** [9] - 107:1, 107:5, 107:8, 107:9, 107:10, 109:8, 110:25, 111:13
**deceased** [1] - 66:3
**December** [12] - 15:24, 27:19, 36:20, 51:4, 51:9, 58:1, 63:7, 64:7, 64:10, 64:11, 84:6, 84:10
**decide** [1] - 101:23
**decided** [3] - 24:7, 34:21, 73:9
**decides** [1] - 45:15
**decision** [4] - 25:15, 32:21, 84:14, 85:1
**decision-making** [1] - 32:21
**declaration** [6] - 28:19, 28:20, 47:23, 49:11, 49:19, 50:11
**declared** [1] - 28:20
**declaring** [1] - 49:22
**defendant** [7] - 7:20, 15:13, 26:22, 28:14, 78:14, 78:15
**DEFENDANT** [2] - 4:1, 4:11
**Defendant** [2] - 8:1, 65:6
**Defendants** [2] - 28:1, 30:3
**defendants** [3] - 18:5, 41:12, 112:24
**defense** [5] - 35:17, 59:15, 60:10, 60:12, 60:13, 60:14
**defenses** [2] - 35:7, 60:11
**definitely** [1] - 121:25
**defrauded** [1] - 17:1
**Del** [3] - 42:13, 43:16, 44:2
**delay** [2] - 85:1, 89:2
**delete** [1] - 44:5
**denial** [1] - 119:4
**denied** [9] - 51:10, 51:23, 73:24, 84:1, 113:22, 115:14, 118:13, 125:10,

125:12

**denies** [3] - 85:22, 90:19, 110:12
**deny** [5] - 117:13, 117:19, 117:22, 118:18, 118:23
**denying** [1] - 118:3
**depending** [1] - 14:24
**deposition** [16] - 31:12, 37:11, 37:15, 37:22, 37:24, 39:5, 51:19, 66:13, 120:2, 120:7, 120:16, 120:18, 120:19, 120:22, 120:23
**depositions** [7] - 16:18, 36:8, 36:10, 37:6, 39:12, 51:22, 62:4
**derivative** [1] - 98:16
**designed** [1] - 40:6
**desperation** [1] - 40:1
**despite** [2] - 24:25, 48:10
**destroy** [1] - 32:3
**determination** [1] - 58:5
**determine** [2] - 36:2, 79:2
**determined** [3] - 112:25, 113:10, 113:12
**device** [1] - 88:3
**did** [57] - 5:18, 5:24, 6:13, 12:13, 14:21, 16:6, 18:4, 19:4, 19:11, 24:2, 28:1, 28:15, 29:20, 33:5, 39:25, 40:13, 41:10, 44:15, 53:22, 57:10, 62:24, 63:22, 68:11, 69:11, 69:25, 70:10, 72:9, 72:23, 73:18, 79:22, 89:21, 92:12, 93:9, 94:5, 99:1, 100:6, 100:8, 102:4, 102:9, 102:13, 105:7, 105:19, 105:21, 109:15, 110:17, 110:18, 111:10, 112:16, 119:23, 120:10, 121:24, 122:3, 122:6, 124:19, 125:23, 126:19
**didn't** [32] - 6:21, 10:3, 11:14, 12:25, 13:1, 13:2, 13:3, 19:2, 19:8, 24:9, 28:3, 30:13, 39:18, 40:10, 48:16, 78:10, 80:16, 81:21, 81:23, 82:4, 86:14, 87:23, 88:2, 105:1, 106:1, 110:9, 113:20, 113:21, 115:22, 115:25, 116:7, 123:13
**difference** [2] - 112:17, 113:14
**different** [11] - 6:14, 14:25, 72:14, 75:23, 75:24, 76:16, 76:23, 78:24, 83:10, 104:10
**digress** [1] - 80:4, 81:23
**direct** [3] - 24:1, 29:24, 52:3
**directly** [2] - 8:15, 15:9
**disagree** [3] - 73:17, 102:25, 124:16
**disappear** [1] - 86:12
**disconnect** [1] - 58:15
**discovery** [50] - 10:25, 11:13, 11:16, 15:12, 16:8, 34:10, 34:14, 34:16, 34:19, 35:6, 35:21, 40:6, 47:20, 50:21, 50:23, 50:25, 51:1, 51:10, 52:1, 53:3, 53:4, 53:5, 53:17, 53:20, 54:1, 54:4, 54:6, 54:10, 54:11, 54:20, 55:2, 55:15, 55:16, 55:20, 56:25, 57:3, 57:11, 59:19, 60:4, 62:12, 62:13, 62:17, 63:17, 64:13, 66:12, 85:23, 113:1, 113:12, 127:16

**discrete** [1] - 71:18
**discussing** [2] - 51:4, 114:6
**discussion** [2] - 7:21, 104:6
**discussions** [1] - 95:1
**dismiss** [23] - 24:7, 26:4, 26:8, 26:24, 28:15, 33:14, 53:8, 53:12, 59:14, 61:19, 61:21, 63:3, 73:24, 81:9, 102:6, 102:7, 102:14, 103:2, 103:9, 103:12, 104:16, 105:7, 109:11
**dismissal** [9] - 17:15, 30:4, 33:14, 43:13, 47:1, 47:7, 61:14, 61:22, 104:20
**dismissed** [22] - 17:13, 17:16, 25:18, 30:7, 31:5, 33:21, 40:22, 45:9, 45:21, 45:25, 56:13, 56:15, 57:17, 60:12, 81:10, 81:20, 82:3, 95:2, 98:7, 104:2, 105:9, 105:10
**dismissing** [1] - 17:10
**disparagement** [1] - 99:22
**disprove** [4] - 57:19, 57:24, 58:4, 59:2
**dispute** [4] - 67:23, 106:5, 108:21, 108:24
**disputes** [1] - 22:24
**disqualification** [1] - 71:8
**disqualified** [1] - 71:6
**disrespect** [2] - 102:23, 123:13
**disrupted** [1] - 29:22
**district** [3] - 22:20, 73:19, 82:7
**DISTRICT** [2] - 1:4, 1:7
**District** [3] - 23:20, 129:5, 129:25
**ditch** [1] - 83:11
**division** [1] - 61:18
**divorced** [1] - 70:14
**do** [121] - 6:8, 9:21, 10:15, 11:5, 11:23, 12:2, 12:6, 12:9, 12:10, 13:6, 13:15, 13:18, 14:13, 15:18, 16:17, 18:20, 18:22, 19:9, 19:22, 21:5, 23:15, 23:22, 28:3, 35:14, 35:16, 36:19, 37:13, 38:6, 38:11, 38:14, 38:15, 39:7, 40:6, 40:24, 41:6, 42:14, 43:16, 43:18, 45:11, 47:6, 48:6, 50:20, 50:22, 55:6, 55:25, 56:10, 57:9, 58:25, 63:12, 63:17, 64:16, 64:19, 67:16, 69:22, 71:18, 72:6, 73:6, 73:8, 73:9, 75:16, 76:10, 78:3, 80:12, 82:10, 82:20, 83:2, 83:3, 85:17, 88:2, 88:23, 88:24, 90:5, 90:6, 90:7, 91:3, 91:18, 93:3, 93:17, 93:20, 93:21, 93:22, 96:7, 96:19, 99:24, 103:20, 104:8, 104:9, 106:3, 111:8, 111:12, 112:15, 114:4, 115:24, 115:25, 116:21, 117:1, 117:3, 117:14, 118:4, 118:5, 118:25, 121:10, 124:19, 127:4, 127:7, 127:12, 127:14, 128:1, 128:3, 128:11, 129:6
**docket** [1] - 20:13
**document** [4] - 49:10, 49:11, 49:20, 49:21
**documents** [2] - 89:15, 110:24
**dodging** [1] - 74:24
**does** [12] - 16:15, 17:4, 19:18, 35:6,

36:15, 36:17, 45:4, 55:20, 58:12, 93:8, 107:22, 108:24
**doesn't** [23] - 8:8, 8:10, 14:16, 16:14, 17:17, 19:19, 33:21, 39:15, 45:2, 48:7, 48:9, 49:9, 55:24, 58:2, 64:23, 67:4, 99:1, 107:22, 109:23, 110:11, 111:18, 121:8
**doing** [20] - 14:11, 14:20, 15:24, 20:12, 25:24, 26:5, 30:25, 39:21, 39:22, 68:20, 70:3, 73:11, 73:12, 79:4, 80:11, 82:25, 83:1, 106:19, 122:13, 123:3
**Dolcefino** [5] - 32:12, 67:16, 69:21, 69:23
**dollar** [1] - 80:23
**dollars** [1] - 125:22
**don't** [94] - 6:4, 6:24, 7:19, 7:23, 8:2, 9:3, 9:15, 13:16, 13:23, 14:17, 19:12, 19:20, 20:24, 23:15, 26:12, 30:17, 33:8, 33:22, 34:25, 36:8, 36:9, 37:1, 37:15, 39:16, 40:10, 43:10, 44:23, 45:13, 48:15, 50:15, 53:16, 55:8, 56:2, 57:7, 58:13, 59:2, 61:1, 61:10, 61:11, 63:20, 65:2, 65:10, 68:15, 70:8, 70:9, 77:8, 77:18, 77:19, 78:5, 80:16, 80:17, 82:3, 84:24, 85:21, 88:7, 88:9, 88:16, 90:5, 90:6, 90:14, 92:5, 92:8, 92:17, 93:19, 97:5, 99:8, 100:12, 100:17, 101:4, 101:11, 102:17, 102:23, 103:16, 103:19, 106:8, 106:13, 106:19, 106:23, 110:5, 110:6, 113:23, 114:10, 114:22, 115:17, 119:6, 119:12, 122:8, 124:2, 126:19, 126:20, 127:24
**done** [15] - 17:14, 23:23, 23:24, 31:1, 32:24, 36:9, 38:4, 68:5, 70:6, 85:11, 85:20, 112:9, 119:13, 121:21, 124:3
**doubled** [1] - 28:23
**down** [15] - 9:14, 16:19, 20:9, 23:1, 28:23, 35:4, 40:1, 62:7, 76:20, 88:4, 100:2, 102:21, 111:14, 114:12
**downstairs** [4] - 9:22, 15:22, 22:6, 23:20
**dozen** [1] - 31:19
**dragging** [1] - 86:11
**draw** [1] - 94:21
**DRINNON** [64] - 4:11, 5:16, 5:22, 5:25, 6:2, 6:6, 8:19, 8:23, 9:4, 9:10, 9:15, 9:24, 10:5, 10:15, 11:5, 12:23, 15:4, 16:23, 18:6, 18:8, 18:14, 19:15, 21:2, 21:5, 21:9, 21:22, 22:2, 22:16, 24:17, 24:21, 29:12, 29:16, 29:19, 34:4, 37:23, 38:3, 38:18, 39:9, 48:23, 59:4, 59:7, 60:2, 62:20, 63:13, 63:19, 64:12, 64:19, 68:10, 68:13, 68:16, 69:25, 75:12, 77:9, 85:5, 85:10, 85:24, 86:9, 87:1, 87:13, 87:18, 87:23, 88:15, 88:19, 88:24
**Drinnon** [77] - 4:12, 5:16, 5:17, 9:14, 11:11, 13:13, 14:2, 14:16, 14:17, 15:5, 15:6, 17:13, 18:10, 18:12, 20:4, 20:10,

21:1, 22:15, 24:25, 29:21, 29:23, 30:6, 30:8, 30:10, 30:19, 32:2, 32:5, 32:7, 32:9, 32:15, 32:17, 32:19, 32:22, 41:3, 41:21, 41:23, 44:16, 49:4, 52:13, 52:19, 53:12, 54:8, 54:22, 65:21, 66:1, 66:3, 66:17, 67:2, 67:21, 67:24, 68:2, 68:12, 69:13, 69:14, 70:1, 70:2, 70:8, 70:11, 70:15, 70:24, 71:8, 72:19, 79:17, 81:16, 84:13, 85:8, 86:1, 86:8, 87:7, 88:20, 105:13, 105:17, 110:20, 121:5, 121:6, 127:17

**Drinnon's** [5] - 30:18, 30:22, 31:2, 31:7, 72:11

**Drive** [1] - 3:4

**drive** [2] - 70:24, 71:3

**driving** [1] - 30:22

**drumming** [1] - 50:8

**due** [1] - 85:10

**during** [3] - 24:23, 86:1, 101:14

**duty** [5] - 91:1, 91:15, 92:21, 92:25, 122:22

**Dward** [1] - 66:20

## E

**e** [31] - 8:13, 8:15, 27:14, 27:24, 41:6, 41:7, 45:15, 46:15, 68:18, 92:7, 93:8, 93:18, 94:1, 94:3, 94:5, 94:7, 94:11, 94:16, 94:20, 94:24, 96:7, 120:2, 120:3, 121:18, 123:19, 123:20, 123:21, 126:4, 126:8

**E** [5] - 2:1, 3:1, 5:1

**e-mail** [25] - 8:13, 8:15, 27:14, 41:6, 41:7, 45:15, 46:15, 68:18, 92:7, 93:18, 94:1, 94:3, 94:5, 94:11, 94:16, 94:20, 94:24, 96:7, 120:2, 123:19, 123:20, 123:21, 126:4

**e-mailed** [2] - 94:7, 120:3

**e-mailing** [1] - 126:8

**e-mails** [3] - 27:14, 93:8, 121:18

**each** [3] - 35:13, 54:3, 113:19

**earlier** [4] - 41:9, 51:15, 91:10, 123:12

**earliest** [1] - 127:20

**easier** [1] - 36:22

**easily** [1] - 53:13

**effect** [1] - 73:16

**effectively** [2] - 115:23, 116:1

**effectually** [1] - 42:22

**efforts** [1] - 30:22

**eight** [3] - 28:4, 45:15, 66:5

**either** [7] - 7:16, 23:25, 39:12, 60:21, 82:7, 100:21, 108:23

**elected** [2] - 38:22, 49:15

**electronically** [2] - 10:17, 117:1

**element** [1] - 35:13

**elements** [3] - 52:11, 53:15, 53:21

**eleven** [1] - 101:2

**Elizabeth** [1] - 4:3

**Elm** [1] - 3:16

**else** [15] - 9:3, 16:4, 20:20, 20:21, 60:11,
64:10, 80:21, 85:21, 97:6, 107:6, 113:10, 115:13, 118:20, 125:17

**email** [2] - 94:12, 94:14

**Email** [6] - 3:6, 3:10, 3:14, 3:18, 4:8, 4:15

**emergency** [16] - 10:25, 11:12, 28:12, 30:3, 47:25, 51:9, 51:11, 51:12, 51:16, 51:25, 54:14, 59:20, 69:17, 85:23, 105:12, 127:9

**employ** [1] - 24:10

**enacting** [1] - 25:1

**end** [10] - 45:19, 75:5, 75:7, 75:20, 76:1, 79:1, 89:10, 107:7, 116:19, 120:10

**ended** [2] - 25:9, 40:21

**ends** [1] - 82:13

**engaged** [1] - 70:3

**engaging** [1] - 123:5

**enough** [4] - 27:19, 36:9, 104:8, 120:6

**enrichment** [2] - 99:24, 113:13

**enter** [1] - 118:3

**entered** [4] - 32:2, 95:24, 111:1, 120:1

**enterprise** [1] - 32:3

**entire** [4] - 26:11, 71:3, 80:2, 113:18

**entirely** [1] - 51:14

**entities** [3] - 31:9, 31:17, 104:11

**entitled** [7] - 1:19, 34:9, 35:18, 35:21, 36:2, 59:16

**entity** [4] - 14:25, 107:21, 108:16, 108:20

**equity** [1] - 116:14

**equivalent** [1] - 41:25

**escape** [1] - 17:10

**especially** [1] - 95:11

**essential** [1] - 35:13

**essentially** [5] - 41:16, 54:17, 89:11, 90:1, 91:25

**establish** [10] - 52:10, 52:11, 52:20, 53:15, 53:20, 55:13, 55:17, 56:6, 57:25

**establishes** [3] - 52:22, 57:22, 59:15

**establishing** [1] - 53:8

**estate** [6] - 31:8, 31:18, 113:19, 114:7, 114:9, 114:11

**estoppel** [1] - 78:13

**et** [1] - 33:25

**Et** [1] - 34:4

**Europe** [6] - 12:2, 12:6, 12:7, 13:7, 73:4, 75:3

**evasive** [1] - 38:8

**even** [24] - 17:12, 34:25, 35:22, 38:20, 49:18, 51:13, 53:18, 57:10, 58:12, 58:20, 60:10, 63:16, 66:6, 69:5, 84:21, 88:7, 94:25, 99:19, 100:1, 110:5, 110:6, 110:10, 121:13

**event** [1] - 35:2

**events** [2] - 28:21, 119:25

**ever** [4] - 44:25, 91:12, 112:14, 115:17

**every** [9] - 14:19, 17:4, 19:18, 71:21, 90:16, 91:2, 92:9, 92:15, 99:11

**everybody** [7] - 9:13, 20:20, 70:20, 79:18, 85:15, 87:17, 98:14

**everyone** [2] - 16:2, 41:16

**everything** [28] - 6:25, 14:11, 16:4, 24:2, 40:25, 48:1, 62:16, 63:4, 69:8, 73:11, 83:1, 85:12, 92:19, 94:13, 95:22, 96:7, 96:10, 109:24, 112:14, 113:9, 114:12, 114:22, 114:24, 115:12, 118:20, 125:9, 125:24, 126:15

**evidence** [34] - 35:9, 35:11, 35:12, 36:4, 36:16, 36:18, 39:15, 52:8, 52:21, 53:7, 53:9, 53:19, 57:22, 57:23, 58:10, 58:19, 58:21, 58:24, 59:13, 59:23, 69:9, 75:25, 80:10, 90:23, 91:6, 91:23, 97:22, 97:25, 100:13, 100:19, 109:23, 110:13, 125:20, 129:8

**evidentiary** [1] - 91:21

**ex** [1] - 66:4

**ex-wife** [1] - 66:4

**exact** [3] - 72:12, 89:17, 115:5

**exactly** [7] - 9:5, 9:7, 47:18, 64:4, 71:21, 109:20, 115:4

**example** [2] - 33:19, 95:17

**except** [2] - 16:13, 111:7

**excuse** [3] - 11:4, 79:2, 79:7

**excused** [5] - 79:13, 85:14, 86:8, 86:16, 88:20

**exercise** [3] - 53:11, 95:18, 110:23

**exercising** [1] - 95:18

**exhibit** [1] - 41:8

**exhibits** [1] - 129:15

**exist** [3] - 33:22, 91:6, 97:23

**exists** [3] - 13:4, 30:8, 35:13

**expedited** [2] - 23:9, 60:4

**expenses** [2] - 25:21, 31:21

**Expiration** [1] - 129:24

**explained** [1] - 40:18

**express** [1] - 119:24

**expressing** [1] - 73:2

**expressly** [1] - 83:2

**extensive** [2] - 75:21, 104:5, 104:6

**extensively** [1] - 89:22

**extent** [4] - 17:9, 54:8, 56:1, 64:22

**extort** [1] - 32:7

**extracontractually** [1] - 36:4

**extreme** [1] - 105:3

## F

**F.3d** [1] - 44:3

**F.3rd** [1] - 43:17

**facie** [12] - 35:12, 52:11, 55:9, 56:3, 56:12, 56:22, 57:15, 57:16, 58:12, 58:14, 59:13

**fact** [10] - 16:24, 34:21, 35:22, 43:6, 61:15, 70:20, 88:10, 92:17, 104:12, 104:16

**facts** [15] - 15:12, 21:14, 28:21, 28:24, 36:2, 36:14, 37:24, 38:11, 60:24, 66:11, 66:14, 66:25, 67:1, 69:19,

70:19

**failed** [1] - 24:22
**failure** [1] - 76:3
**fair** [3] - 69:8, 99:23, 102:6
**faith** [2] - 23:22, 99:23
**fall** [1] - 80:23
**fallacy** [1] - 31:4
**fallout** [1] - 101:20
**false** [2] - 32:16, 32:19
**familiar** [1] - 101:3
**family** [4] - 40:3, 63:25, 65:23, 67:8
**Fannin** [1] - 4:6
**far** [2] - 71:13, 72:21
**fast** [2] - 15:16, 61:8
**father** [3] - 66:1, 66:2, 66:19
**fed** [1] - 71:2
**federal** [4] - 10:6, 40:19, 47:8, 82:8
**feel** [7] - 14:18, 71:13, 76:16, 76:17, 89:25, 119:18, 121:11
**fees** [13] - 25:20, 33:15, 44:7, 44:9, 54:22, 55:1, 55:3, 55:4, 55:5, 55:12, 61:11, 61:22, 61:24
**feet** [1] - 61:4
**felt** [2] - 11:25, 84:25
**few** [6] - 6:12, 6:18, 34:1, 38:4, 72:14, 86:15
**fiduciary** [1] - 126:5
**fighting** [1] - 61:2
**figure** [6] - 8:12, 11:25, 15:24, 72:5, 105:1, 118:25
**file** [28] - 12:25, 13:2, 13:23, 14:5, 24:24, 29:4, 33:20, 45:2, 45:16, 50:3, 50:9, 64:23, 68:3, 70:23, 72:23, 73:9, 73:18, 81:23, 82:12, 107:6, 110:9, 114:2, 115:22, 121:23, 127:23, 128:2
**filed** [82] - 6:5, 6:9, 6:14, 7:16, 8:19, 8:21, 8:22, 9:6, 9:18, 10:14, 10:22, 11:15, 12:19, 13:13, 17:14, 18:2, 18:21, 18:24, 19:1, 20:15, 21:11, 21:12, 23:18, 25:5, 25:17, 27:11, 27:21, 28:4, 28:5, 28:6, 28:12, 28:18, 28:23, 33:1, 34:23, 40:19, 41:4, 41:13, 42:10, 43:6, 44:6, 44:11, 45:20, 45:22, 46:1, 46:5, 46:10, 46:15, 46:16, 46:22, 47:1, 47:17, 47:25, 48:1, 48:5, 51:13, 57:13, 62:9, 62:11, 63:2, 64:7, 64:11, 71:19, 72:12, 73:1, 73:23, 74:2, 74:3, 78:20, 81:6, 81:9, 83:5, 103:4, 105:12, 109:6, 110:20, 111:21, 117:2, 120:22
**files** [2] - 41:21, 52:9
**filing** [9] - 10:10, 21:10, 23:14, 26:23, 27:20, 30:10, 72:4, 82:22, 84:22
**filings** [1] - 120:24
**final** [1] - 104:24
**finally** [1] - 59:4
**finance** [1] - 31:25
**financing** [2] - 31:20, 31:24
**find** [7] - 17:2, 69:2, 73:4, 88:21, 97:22, 97:25, 119:15
**finding** [1] - 69:2

**fine** [7] - 9:9, 18:14, 19:21, 47:3, 82:20, 85:17, 105:3
**finish** [6] - 68:11, 68:14, 68:16, 70:1, 85:5, 125:1
**fire** [1] - 61:4
**firearms** [1] - 32:10
**firm** [1] - 40:3
**Firm** [2] - 3:4, 3:12
**first** [28] - 10:21, 11:2, 17:20, 23:6, 29:13, 29:16, 34:24, 36:12, 47:24, 61:4, 83:15, 83:24, 88:1, 88:6, 89:12, 89:18, 89:23, 89:25, 98:10, 102:14, 104:20, 104:22, 105:8, 117:9, 118:12, 119:21, 126:18, 126:19
**five** [2] - 11:8, 89:21
**fix** [4] - 65:13, 79:23, 115:18, 116:9
**fixed** [2] - 60:5, 77:17
**flatly** [1] - 82:23
**flux** [1] - 48:7
**focus** [1] - 99:4
**focusing** [1] - 99:16
**folks** [1] - 35:21
**follow** [2] - 88:3, 127:8
**followed** [2] - 25:4, 64:4
**following** [4] - 1:18, 23:19, 24:12, 26:8
**follows** [1] - 29:20
**for** [192] - 5:4, 5:14, 5:19, 6:18, 6:25, 7:6, 7:8, 7:24, 9:2, 10:3, 10:25, 11:12, 11:16, 12:12, 14:3, 14:8, 14:25, 15:24, 16:8, 16:9, 20:9, 20:22, 21:17, 22:18, 23:5, 23:18, 23:24, 24:4, 24:5, 24:8, 25:1, 25:13, 25:23, 27:7, 27:8, 27:16, 28:13, 28:25, 30:16, 30:24, 31:2, 31:7, 31:12, 31:17, 33:16, 33:19, 33:20, 33:23, 35:4, 35:5, 35:12, 36:1, 37:6, 37:8, 37:11, 37:17, 37:18, 38:24, 39:21, 39:23, 40:7, 44:6, 44:10, 48:4, 49:14, 50:18, 50:25, 51:2, 51:9, 52:5, 52:6, 52:8, 53:25, 54:3, 54:17, 54:20, 55:2, 56:3, 56:12, 56:21, 58:14, 58:18, 58:20, 58:22, 58:24, 60:6, 60:12, 60:14, 60:20, 61:4, 63:25, 64:1, 64:10, 64:11, 65:9, 65:24, 66:5, 66:21, 67:7, 67:22, 68:19, 69:17, 69:19, 71:2, 71:7, 71:22, 71:23, 72:5, 72:17, 73:8, 73:20, 75:2, 77:3, 77:7, 77:25, 78:12, 79:17, 79:18, 80:3, 80:7, 80:15, 81:18, 82:16, 82:21, 83:8, 85:22, 86:4, 86:21, 86:22, 87:11, 88:15, 89:2, 93:20, 97:8, 97:11, 98:4, 98:5, 99:9, 100:19, 100:22, 102:14, 102:24, 103:22, 103:23, 105:5, 105:7, 106:4, 106:20, 107:19, 108:11, 109:22, 109:25, 110:11, 111:7, 111:8, 111:24, 111:25, 114:2, 114:15, 114:24, 115:25, 116:3, 116:13, 118:7, 118:8, 119:1, 119:21, 119:22, 120:17, 121:7, 121:15, 123:12, 123:23, 124:22, 124:23, 125:20, 126:7, 127:9, 127:11, 127:16, 127:21, 128:14, 129:5, 129:9, 129:17

**FOR** [3] - 3:2, 4:1, 4:11
**force** [1] - 30:22
**fore** [1] - 84:5
**foreclose** [4] - 84:6, 89:7, 108:18, 117:11
**foreclosing** [1] - 128:7
**foreclosure** [20] - 13:22, 14:12, 70:9, 72:3, 73:13, 73:16, 73:21, 76:2, 80:24, 83:2, 83:5, 83:17, 83:18, 84:9, 94:25, 96:12, 101:19, 107:12, 121:15, 123:23
**foreclosures** [1] - 114:8
**foregoing** [1] - 129:6
**foreshadowed** [1] - 25:3
**forged** [1] - 108:23
**forget** [1] - 61:24
**form** [2] - 125:5, 125:6
**former** [1] - 30:23
**forth** [5] - 14:14, 28:21, 62:21, 62:22, 73:15
**forum** [4] - 8:24, 9:17, 11:21, 14:13
**forward** [20] - 11:9, 11:12, 11:15, 19:3, 24:18, 29:2, 33:6, 34:11, 34:17, 34:18, 35:1, 38:10, 44:20, 72:9, 80:24, 82:15, 82:19, 83:4, 84:9, 85:2
**forwarded** [3] - 94:11, 94:17, 123:20
**found** [5] - 59:24, 74:23, 97:1, 109:9, 109:15
**four** [6] - 25:7, 30:16, 36:11, 59:20, 60:6, 62:5
**fourth** [2] - 49:13, 49:25
**frankly** [4] - 13:12, 14:11, 33:8, 38:6
**fraud** [7] - 7:6, 60:14, 64:18, 65:9, 65:22, 67:20, 77:7, 78:12, 99:21
**fraudulent** [1] - 99:21
**free** [1] - 119:18
**frivolous** [1] - 60:10
**from** [37] - 17:13, 20:16, 23:20, 27:16, 27:24, 32:7, 34:19, 38:9, 41:23, 42:22, 44:12, 48:2, 53:19, 53:20, 55:20, 67:14, 71:1, 78:14, 79:14, 79:21, 80:8, 80:9, 81:12, 82:7, 84:16, 87:7, 95:6, 101:14, 101:20, 104:1, 105:4, 111:20, 114:25, 121:12, 123:25, 126:14
**front** [20] - 11:22, 13:16, 14:6, 19:12, 23:10, 24:6, 69:5, 71:13, 72:24, 73:2, 75:18, 89:4, 89:8, 93:17, 102:19, 103:16, 117:9, 118:17, 126:13, 126:21
**frustrated** [1] - 62:2
**frustration** [1] - 73:3
**fully** [1] - 106:14
**fundamental** [1] - 109:21
**funding** [2] - 96:2, 122:1
**further** [3] - 29:22, 129:13, 129:17
**future** [4] - 75:15, 121:17, 121:20, 123:24

---

## G

**G** [1] - 5:1
**GALLERIA** [1] - 1:4

**Galleria** [53] - 5:3, 7:25, 12:10, 12:19, 13:14, 13:20, 14:3, 14:8, 14:14, 15:1, 16:9, 17:21, 17:22, 22:19, 22:25, 28:11, 28:18, 30:12, 31:22, 32:20, 34:20, 37:18, 37:20, 40:14, 40:20, 65:5, 69:3, 71:20, 72:13, 72:20, 73:1, 73:5, 73:7, 73:12, 73:15, 74:2, 76:3, 76:6, 76:9, 77:16, 77:20, 83:12, 83:15, 83:20, 84:3, 89:7, 95:25, 98:24, 100:9, 107:1, 108:15, 108:18, 124:10

**Galleria's** [1] - 32:23

**Gaskamp** [1] - 61:16

**gave** [7] - 11:11, 16:1, 33:10, 59:18, 59:19, 64:6, 95:13

**generally** [2] - 51:1, 51:21

**gentleman** [3] - 13:13, 40:19, 101:15

**get** [63] - 7:18, 14:24, 15:11, 15:12, 16:17, 16:18, 17:17, 18:6, 18:8, 18:10, 18:15, 25:18, 26:9, 26:17, 27:1, 27:17, 30:7, 30:13, 30:15, 36:17, 36:25, 38:11, 38:16, 39:6, 39:7, 40:6, 41:10, 43:10, 45:3, 47:21, 51:16, 53:19, 54:20, 55:4, 55:19, 59:21, 60:11, 60:18, 61:6, 61:9, 61:10, 61:11, 61:13, 61:14, 62:6, 62:15, 63:17, 66:6, 83:11, 84:20, 92:18, 96:2, 109:19, 109:23, 110:17, 117:10, 119:1, 119:4, 126:20

**gets** [6] - 26:1, 33:21, 34:14, 35:19, 50:20, 54:6

**getting** [6] - 39:1, 40:1, 40:21, 51:6, 72:21, 83:16

**give** [24] - 6:11, 7:2, 11:7, 17:2, 17:25, 19:16, 20:3, 20:10, 26:6, 60:2, 61:7, 62:3, 62:4, 67:4, 90:21, 93:11, 93:19, 97:17, 108:3, 111:10, 113:23, 117:10, 123:10, 127:20

**given** [7] - 84:19, 86:22, 87:4, 97:7, 102:16, 111:5, 115:6

**gives** [1] - 43:20

**giving** [1] - 65:21

**go** [40] - 5:2, 11:9, 11:12, 11:15, 19:3, 20:18, 21:14, 23:2, 23:18, 24:7, 27:12, 31:25, 34:21, 36:24, 44:19, 60:23, 62:16, 70:10, 72:9, 79:19, 81:13, 82:11, 83:4, 83:15, 83:24, 84:8, 84:9, 85:2, 85:6, 85:9, 86:13, 88:15, 89:2, 90:19, 98:18, 99:11, 101:22, 119:7, 120:5

**goes** [7] - 37:10, 47:18, 50:11, 80:24, 113:7, 116:19, 126:10

**going** [121] - 8:24, 9:17, 10:2, 11:9, 11:15, 12:17, 14:19, 15:23, 17:25, 18:11, 18:12, 19:3, 19:7, 20:9, 20:10, 20:12, 22:20, 24:14, 24:18, 27:12, 28:2, 29:2, 33:6, 33:12, 34:1, 34:6, 34:10, 34:17, 34:18, 35:1, 35:3, 35:8, 36:22, 37:9, 37:17, 38:9, 38:24, 38:25, 44:8, 44:9, 44:14, 47:20, 48:24, 49:4, 49:16, 53:1, 55:11, 59:21, 60:19, 63:23, 63:24, 63:25, 67:18, 67:22,

68:3, 69:10, 70:23, 72:6, 72:8, 73:17, 73:25, 75:3, 75:7, 75:14, 75:15, 75:16, 79:1, 82:11, 82:22, 83:7, 84:9, 84:17, 85:14, 85:16, 85:18, 85:20, 86:4, 87:13, 87:18, 88:11, 88:12, 92:7, 92:19, 97:6, 97:22, 100:18, 100:19, 102:11, 103:21, 103:22, 104:8, 105:4, 105:5, 105:24, 109:13, 109:14, 111:8, 111:12, 114:3, 115:2, 115:18, 117:13, 117:19, 117:23, 118:2, 118:16, 118:23, 118:24, 119:11, 120:5, 121:17, 121:20, 123:16, 123:23, 125:1, 128:14

**Gomez** [1] - 83:22

**gone** [1] - 125:11

**good** [13] - 22:2, 23:22, 38:22, 50:24, 50:25, 51:18, 54:19, 54:21, 55:14, 60:20, 95:19, 99:23

**goodness** [1] - 29:8

**Google** [2] - 67:12, 67:17

**got** [39] - 8:21, 9:16, 10:17, 19:15, 20:7, 27:16, 35:10, 39:19, 40:5, 40:9, 43:18, 43:22, 63:9, 67:13, 67:16, 70:13, 70:14, 74:15, 76:11, 78:21, 81:7, 81:19, 82:2, 82:6, 83:24, 88:1, 95:5, 98:7, 98:19, 101:14, 103:17, 110:12, 111:14, 111:22, 111:23, 126:11, 126:13, 126:15, 127:13

**gotten** [2] - 6:9, 116:1

**grandfather** [1] - 80:22

**grant** [1] - 76:12

**granted** [4] - 81:4, 110:22, 115:6, 116:8

**granting** [1] - 42:3

**great** [8] - 6:1, 20:3, 21:4, 22:14, 38:13, 58:9, 83:14, 114:21

**grenade** [2] - 106:10, 106:12

**grievance** [1] - 68:2

**grounds** [5] - 35:17, 35:18, 59:16, 109:24, 113:23

**group** [3] - 26:11, 54:3, 69:24

**guardrails** [1] - 109:4

**guess** [5] - 14:21, 19:7, 75:15, 81:7, 108:8

**guidance** [1] - 43:20

**guns** [2] - 66:20, 66:23

**guys** [4] - 66:20, 66:23, 70:9, 103:20

**H**

**had** [60] - 11:17, 11:22, 13:15, 16:3, 16:14, 17:13, 18:11, 20:25, 23:5, 24:22, 26:13, 26:16, 27:4, 28:5, 29:3, 29:14, 34:22, 36:22, 41:5, 45:11, 51:14, 52:19, 60:5, 63:25, 66:6, 74:22, 75:1, 75:21, 80:6, 80:8, 81:15, 83:19, 86:11, 89:14, 89:23, 90:17, 90:23, 92:13, 94:15, 94:17, 95:2, 95:3, 104:5, 104:6, 105:2, 105:3, 105:22, 106:2, 107:14, 107:16, 115:7, 120:3, 121:16, 121:23, 121:24, 124:7, 124:8, 124:9,

124:12

**hadn't** [2] - 30:16, 90:23

**half** - 75:22, 97:13

**Halloween** [3] - 74:1, 74:2, 105:12

**hand** [1] - 119:10

**HAND** [1] - 129:20

**handed** [5] - 6:15, 33:11, 61:16, 87:3, 120:2

**handling** - 22:12

**hands** [1] - 103:18

**hang** - 49:3, 68:23

**happen** [2] - 25:4, 58:3, 105:5

**happened** [7] - 43:14, 59:1, 90:11, 95:23, 96:11, 96:20, 121:12

**happening** [4] - 33:24, 57:25, 58:17, 106:22

**happens** [6] - 14:25, 53:1, 54:2, 58:6, 58:8, 78:4

**happy** [1] - 65:13

**harassment** [1] - 87:12

**hard** [9] - 10:15, 18:22, 19:20, 20:2, 39:6, 61:2, 70:24, 71:3, 126:12

**harm** [4] - 82:2, 114:6, 116:5

**HARRIS** [2] - 1:6, 129:2

**Harris** [5] - 1:21, 1:25, 66:5, 129:5, 129:25

**has** [125] - 5:11, 6:23, 6:25, 8:19, 8:21, 9:16, 9:17, 9:20, 13:12, 14:4, 14:14, 16:25, 17:1, 17:8, 25:12, 29:5, 31:18, 32:2, 32:16, 32:22, 33:22, 35:22, 36:21, 37:3, 37:19, 38:1, 39:23, 40:5, 40:24, 42:8, 43:14, 44:6, 45:13, 46:21, 48:25, 49:11, 50:24, 51:21, 52:21, 54:4, 54:9, 54:19, 54:20, 55:5, 55:7, 55:13, 55:17, 55:19, 55:22, 58:25, 59:23, 59:24, 62:18, 63:4, 64:16, 64:19, 65:21, 66:1, 66:2, 66:3, 66:19, 66:21, 67:3, 67:8, 67:18, 67:22, 67:24, 68:7, 68:8, 68:9, 68:19, 68:21, 68:24, 69:20, 69:21, 70:2, 70:5, 70:6, 70:20, 70:21, 70:24, 71:1, 71:3, 75:2, 80:5, 81:4, 81:11, 87:3, 90:16, 90:25, 91:14, 91:15, 91:24, 92:2, 92:14, 93:9, 93:10, 95:23, 96:11, 98:16, 99:12, 99:15, 103:23, 106:5, 106:18, 106:19, 108:18, 110:20, 115:13, 116:21, 119:7, 119:13, 119:15, 121:13, 121:19, 121:22, 124:3, 124:14, 124:25, 125:15, 128:13

**hat** [2] - 83:8, 83:25

**have** [274] - 6:4, 6:11, 6:17, 6:19, 7:19, 7:23, 8:2, 10:5, 10:15, 11:5, 11:23, 13:9, 13:11, 13:13, 14:6, 15:7, 15:9, 15:18, 15:21, 17:14, 18:12, 18:20, 18:22, 19:12, 19:15, 19:22, 20:1, 20:7, 20:14, 20:25, 21:2, 21:8, 23:15, 23:22, 26:7, 26:11, 27:6, 29:20, 30:25, 31:7, 32:24, 33:4, 33:18, 33:19, 34:9, 35:7, 35:9, 35:10, 35:11, 35:14, 36:4, 36:9, 36:13, 36:18, 36:22, 37:7, 37:11,

37:25, 38:4, 39:2, 39:11, 39:15, 39:21, 39:22, 39:23, 39:24, 40:15, 41:6, 41:9, 41:13, 42:14, 42:17, 43:18, 44:20, 44:23, 45:6, 46:15, 46:16, 47:6, 47:13, 48:14, 48:24, 49:2, 49:9, 49:14, 50:25, 51:7, 51:15, 52:9, 52:12, 54:25, 55:8, 55:20, 56:5, 56:13, 56:15, 56:16, 57:17, 57:25, 58:11, 58:14, 59:1, 59:8, 59:12, 59:22, 60:9, 60:11, 60:12, 60:13, 60:14, 60:24, 61:6, 61:15, 63:9, 63:11, 64:10, 64:11, 64:13, 64:25, 65:10, 66:11, 66:25, 67:6, 67:10, 67:13, 68:5, 68:6, 68:25, 69:18, 69:20, 69:23, 70:12, 70:16, 71:10, 71:15, 71:17, 73:19, 74:5, 74:11, 74:12, 75:21, 75:25, 77:18, 77:19, 77:24, 78:6, 80:1, 80:16, 80:20, 80:21, 82:3, 82:5, 82:15, 82:20, 84:3, 84:15, 85:12, 85:13, 85:18, 85:21, 86:2, 86:10, 86:13, 86:21, 87:4, 88:13, 89:2, 89:14, 89:15, 90:12, 90:15, 90:17, 91:1, 91:3, 91:22, 92:7, 92:13, 92:18, 92:21, 92:25, 93:8, 93:20, 94:19, 97:7, 97:16, 98:19, 99:24, 100:20, 100:22, 100:23, 101:5, 101:6, 101:9, 101:10, 102:10, 102:22, 103:15, 103:17, 104:13, 104:21, 107:22, 107:23, 108:17, 108:19, 108:24, 109:24, 110:10, 110:12, 111:4, 111:5, 111:9, 111:19, 111:22, 111:23, 111:25, 112:9, 112:11, 112:13, 113:14, 113:23, 114:8, 114:23, 115:7, 116:1, 116:7, 116:15, 116:23, 117:1, 117:6, 117:12, 117:15, 118:10, 119:1, 119:10, 121:2, 121:12, 121:14, 121:18, 121:21, 122:22, 123:21, 124:6, 124:12, 124:17, 124:22, 124:23, 124:24, 125:2, 125:3, 125:19, 125:21, 126:11, 126:13, 126:22, 127:5, 127:8, 127:13, 127:21, 127:24, 128:8

**haven't** [8] - 6:9, 10:9, 10:12, 25:24, 27:21, 63:21, 67:7, 112:8
**having** [2] - 73:3, 79:1
**havoc** [1] - 29:22
**Hayward** [5] - 24:10, 24:24, 81:22, 109:19, 120:17
**Hayward's** [2] - 25:5, 109:6
**he's** [12] - 37:24, 40:24, 46:10, 47:2, 48:3, 58:5, 63:5, 63:6, 83:14, 121:6, 121:19
**head** [3] - 79:19, 102:17, 123:12
**hear** [10] - 9:1, 96:19, 100:13, 100:18, 104:21, 106:1, 108:8, 108:12, 108:13, 109:23
**heard** [21] - 1:19, 42:12, 66:25, 79:20, 90:13, 90:15, 90:23, 93:10, 93:15, 97:7, 97:10, 101:9, 103:7, 116:20, 117:19, 117:22, 123:6, 124:6, 126:18
**hearing** [50] - 11:8, 11:11, 11:15, 11:22, 11:25, 12:6, 15:23, 16:2, 19:3, 19:5,

21:23, 24:4, 24:5, 24:9, 24:21, 27:18, 51:13, 60:20, 71:23, 72:11, 75:3, 75:21, 76:11, 82:21, 83:9, 84:15, 85:1, 85:2, 85:13, 86:23, 89:24, 90:17, 91:21, 91:22, 103:8, 103:9, 103:10, 104:4, 105:8, 105:10, 106:1, 106:2, 109:11, 116:2, 117:20, 118:10, 119:2, 119:22, 120:24, 127:9
**HEARING** [2] - 1:12, 2:3
**hearings** [10] - 67:25, 81:12, 89:14, 92:2, 92:14, 92:15, 93:8, 124:8, 124:12
**held** [1] - 1:21
**hell** [1] - 70:17
**help** [1] - 93:6
**helping** [1] - 68:6
**helps** [1] - 93:13
**her** [15] - 11:25, 12:1, 21:17, 22:18, 66:3, 70:24, 74:25, 75:4, 93:18, 110:2, 110:22, 110:24, 111:2, 111:10, 126:8
**here** [90] - 9:2, 10:11, 11:18, 14:25, 15:11, 15:15, 16:2, 16:7, 18:24, 19:11, 20:25, 21:9, 21:16, 21:20, 21:22, 22:7, 24:18, 24:20, 25:14, 26:1, 33:1, 33:24, 35:10, 38:21, 40:17, 41:6, 47:24, 49:5, 50:18, 50:25, 51:16, 54:21, 58:16, 60:3, 64:17, 65:25, 66:14, 66:15, 66:24, 67:10, 67:13, 67:18, 68:17, 69:9, 69:15, 71:12, 71:17, 72:3, 74:23, 75:2, 78:3, 78:13, 78:14, 78:22, 79:17, 81:3, 81:18, 81:22, 83:23, 86:5, 87:9, 91:3, 96:8, 96:9, 98:2, 98:5, 98:19, 99:13, 99:19, 100:12, 100:19, 106:24, 108:4, 108:16, 110:8, 110:12, 111:16, 114:16, 114:17, 119:24, 120:4, 121:8, 121:14, 122:24, 123:16, 123:22, 126:11, 127:1
**hereby** [1] - 129:6
**Hernandez** [1] - 42:4
**Hey** [2] - 58:25, 106:21
**hey** [1] - 41:16
**hidden** [1] - 32:13
**hiding** [2] - 73:4, 80:14
**highlighted** [1] - 63:4
**hill** [1] - 111:15
**him** [42] - 11:7, 12:12, 17:16, 17:25, 19:13, 26:4, 26:15, 26:17, 28:25, 31:10, 37:1, 37:20, 41:15, 44:13, 44:19, 45:13, 46:1, 47:15, 47:20, 50:25, 51:12, 51:16, 56:14, 57:17, 67:5, 67:7, 67:11, 67:17, 67:24, 68:1, 69:16, 69:18, 71:3, 73:8, 86:2, 88:1, 91:1, 91:2, 94:17, 121:7, 121:9
**himself** [3] - 5:19, 37:4, 71:4
**hired** [1] - 14:4, 48:25, 69:21
**his** [73] - 10:24, 11:12, 11:16, 14:16, 17:6, 17:7, 17:14, 17:24, 24:6, 24:25, 28:24, 31:8, 31:10, 31:12, 31:15, 32:9, 32:10, 40:14, 41:21, 43:6, 44:11, 46:6, 46:25, 47:1, 51:13, 52:20, 52:22,

53:12, 53:13, 54:18, 54:22, 54:25, 55:1, 55:4, 55:8, 55:11, 55:18, 55:21, 55:23, 55:24, 56:6, 56:22, 56:23, 57:12, 57:13, 57:19, 57:20, 57:21, 57:22, 58:6, 58:7, 58:13, 58:18, 62:14, 63:3, 65:23, 66:3, 66:12, 66:22, 68:24, 69:3, 69:17, 70:15, 70:24, 88:3, 88:4, 91:13, 94:3, 120:15, 121:18
**history** [4] - 65:25, 66:9, 66:15, 66:24
**hit** [1] - 69:22
**hogtied** [1] - 12:1
**hold** [11] - 9:13, 18:9, 32:10, 57:6, 71:16, 81:2, 85:8, 92:19, 112:15, 114:1, 115:2
**holding** [1] - 33:13
**honest** [2] - 27:9, 110:6
**honestly** [1] - 82:24
**Hong** [1] - 101:15
**Honor** [118] - 6:13, 8:14, 10:20, 11:3, 11:20, 13:1, 13:11, 13:24, 14:25, 18:23, 19:16, 19:23, 19:25, 20:1, 20:5, 21:3, 21:9, 22:5, 22:13, 40:9, 42:1, 42:17, 45:1, 45:3, 45:12, 47:10, 48:15, 48:18, 49:6, 50:6, 52:2, 62:8, 63:1, 64:14, 64:24, 65:7, 65:12, 65:16, 65:20, 66:8, 66:15, 67:12, 67:18, 68:8, 68:17, 68:23, 69:1, 69:17, 71:1, 71:22, 72:23, 74:18, 75:24, 76:22, 77:13, 78:9, 78:20, 78:23, 80:7, 81:11, 84:12, 84:16, 85:4, 85:25, 86:10, 86:18, 87:2, 87:6, 87:25, 91:5, 91:17, 92:3, 93:1, 93:7, 93:21, 94:2, 94:4, 94:12, 95:10, 96:15, 100:25, 110:12, 110:15, 110:16, 114:1, 114:7, 114:12, 116:10, 116:11, 116:24, 116:25, 117:4, 117:7, 117:15, 117:19, 117:23, 118:14, 119:3, 119:7, 119:16, 119:20, 120:3, 120:15, 121:1, 121:25, 122:8, 122:15, 123:11, 124:17, 125:18, 125:25, 126:2, 126:24, 127:15, 127:19, 127:22, 128:5
**Honorable** [1] - 1:20
**hope** [1] - 92:11
**hoped** [1] - 86:11
**hostage** [1] - 32:11
**hour** [5] - 37:5, 41:22, 44:10, 44:11, 45:8
**hours** [9] - 37:8, 37:9, 37:13, 37:16, 37:20, 38:13, 38:20, 60:21, 62:3
**house** [2] - 114:11, 114:13
**houses** [1] - 114:9
**Houston** [9] - 1:21, 3:5, 3:9, 4:6, 4:7, 4:13, 4:14, 5:17, 61:18
**how** [20] - 30:15, 37:25, 39:6, 48:23, 54:11, 58:22, 67:3, 69:16, 69:25, 90:5, 99:3, 102:8, 104:9, 104:13, 107:6, 111:14, 119:15, 124:25, 127:6
**however** [9] - 27:12, 28:1, 28:15, 29:9, 47:11, 51:9, 52:12, 85:16, 85:17
**HREP** [4] - 17:1, 36:1, 66:9, 69:15

huge [1] - 83:8
huh [1] - 12:23

---

# I

I [748] - 2:1, 5:1, 5:20, 5:24, 6:4, 6:8, 6:9,
6:10, 6:13, 6:14, 6:15, 6:17, 6:21,
6:24, 7:1, 7:10, 7:17, 7:19, 7:22, 7:23,
8:2, 8:5, 8:13, 8:23, 9:1, 9:3, 9:4, 9:5,
9:6, 9:7, 9:12, 9:15, 9:16, 9:20, 10:2,
10:3, 10:5, 10:7, 10:9, 10:11, 10:12,
10:16, 10:17, 10:19, 11:2, 12:8, 13:11,
13:17, 13:23, 14:4, 14:17, 14:18, 14:21,
15:2, 15:5, 15:11, 15:12, 16:4, 16:5,
16:7, 16:14, 16:17, 16:18, 16:23,
16:24, 17:1, 17:3, 17:9, 17:15, 17:18,
17:22, 18:6, 18:8, 18:10, 18:14, 18:15,
19:7, 19:8, 19:12, 19:15, 19:18, 19:23,
20:1, 20:7, 20:9, 20:10, 20:12, 20:13,
20:20, 20:24, 21:2, 21:5, 21:9, 21:15,
21:16, 21:17, 21:18, 21:22, 21:25,
22:5, 22:15, 22:17, 22:21, 22:23, 23:2,
23:3, 23:6, 23:9, 23:11, 23:13, 23:15,
24:4, 24:5, 24:8, 24:9, 24:11, 24:13,
25:9, 25:11, 25:12, 26:1, 26:2, 26:4,
26:6, 26:7, 26:11, 26:15, 26:16, 26:19,
26:20, 26:22, 27:1, 27:3, 27:12, 27:14,
27:16, 27:19, 27:20, 27:21, 27:24,
28:2, 28:4, 28:6, 28:8, 28:16, 29:1,
29:4, 29:15, 29:17, 29:20, 30:13,
30:15, 30:16, 30:25, 31:3, 31:4, 31:24,
32:24, 33:1, 33:2, 33:8, 33:11, 33:12,
34:1, 34:2, 34:8, 34:9, 34:14, 34:17,
34:19, 34:25, 35:3, 35:7, 35:10, 35:15,
35:16, 35:20, 35:21, 36:1, 36:4, 36:8,
36:9, 36:10, 36:11, 36:16, 36:17,
36:19, 36:24, 37:5, 37:11, 37:15, 38:4,
38:6, 38:10, 38:16, 38:19, 38:21,
38:22, 38:23, 39:6, 39:9, 39:11, 39:15,
39:18, 39:19, 39:20, 39:21, 39:22,
39:23, 40:2, 40:6, 40:10, 40:15, 40:25,
41:1, 41:5, 41:6, 41:9, 41:10, 41:12,
41:14, 41:15, 42:1, 42:17, 43:8, 43:19,
43:21, 43:23, 44:13, 44:14, 44:22,
45:9, 45:10, 45:12, 45:14, 45:17,
45:19, 46:1, 46:2, 47:8, 47:13, 47:23,
48:6, 48:13, 48:15, 48:16, 48:18,
48:21, 49:1, 49:4, 49:23, 50:13, 50:15,
52:2, 53:22, 53:23, 55:6, 55:25, 56:9,
56:10, 56:18, 57:2, 57:3, 57:7, 57:9,
57:10, 58:6, 58:15, 59:2, 59:4, 59:7,
59:8, 59:9, 59:18, 59:19, 59:21, 60:2,
60:4, 60:6, 60:9, 60:10, 60:12, 60:13,
60:14, 60:18, 60:20, 61:1, 61:3, 61:8,
61:9, 61:10, 61:11, 61:13, 61:14,
61:15, 61:16, 62:1, 62:2, 62:24, 63:2,
63:8, 63:9, 63:13, 63:19, 63:21, 63:22,
63:25, 64:1, 64:3, 64:4, 64:5, 64:7,
64:13, 64:14, 64:16, 64:24, 64:25,
65:7, 65:12, 65:16, 65:19, 65:23, 66:6,
66:8, 66:11, 66:12, 66:13, 66:14,
66:16, 66:23, 67:6, 67:7, 67:10, 67:13,
67:23, 67:25, 68:7, 68:11, 68:13,
68:23, 69:2, 69:16, 69:18, 69:19,
69:20, 69:23, 70:1, 70:2, 70:8, 70:11,
70:13, 70:14, 70:15, 70:16, 70:17,
70:19, 71:1, 71:7, 71:9, 71:13, 71:18,
71:24, 71:25, 72:2, 72:4, 72:7, 72:14,
72:16, 72:17, 72:18, 72:20, 72:21,
73:16, 74:12, 74:16, 74:18, 74:19,
75:6, 75:14, 75:15, 75:19, 75:20,
75:25, 76:7, 76:12, 76:15, 76:17,
76:19, 76:24, 77:6, 77:8, 77:12, 77:14,
77:22, 77:24, 78:5, 78:6, 78:12, 78:21,
79:16, 79:25, 80:4, 80:7, 80:11, 80:13,
81:1, 81:11, 81:14, 81:23, 82:13,
82:14, 82:17, 83:7, 83:14, 83:17,
83:24, 84:7, 84:8, 84:12, 84:13, 84:15,
84:17, 84:18, 84:24, 84:25, 85:5, 85:6,
85:11, 85:12, 85:13, 85:14, 85:16,
85:18, 85:19, 85:21, 86:5, 86:6, 86:21,
87:10, 87:13, 87:15, 87:18, 87:19,
87:23, 87:25, 88:1, 88:4, 88:7, 88:8,
88:16, 88:21, 88:22, 88:24, 89:1, 89:2,
89:5, 89:15, 89:21, 89:25, 90:5, 90:6,
90:8, 90:9, 90:11, 90:12, 90:14, 90:22,
91:1, 91:5, 91:11, 91:16, 91:18, 92:5,
92:7, 92:8, 92:11, 92:12, 92:13, 92:17,
92:18, 92:19, 93:6, 93:7, 93:17, 93:19,
93:23, 94:7, 94:11, 94:13, 94:21, 95:3,
95:13, 95:21, 96:7, 96:8, 96:9, 96:17,
96:19, 97:5, 97:7, 97:10, 97:12, 97:15,
97:19, 98:2, 98:8, 99:11, 99:22, 100:2,
100:18, 101:3, 101:5, 101:9, 101:10,
101:11, 101:17, 101:25, 102:8,
102:10, 102:11, 102:15, 102:18,
102:19, 102:22, 102:23, 102:24,
103:3, 103:6, 103:12, 103:13, 103:14,
103:16, 103:17, 103:20, 103:22,
103:25, 104:3, 104:20, 104:22,
104:23, 104:24, 105:25, 106:3, 106:6,
106:8, 106:9, 106:13, 106:14, 106:19,
108:6, 108:8, 108:11, 108:13, 109:9,
109:18, 109:24, 110:5, 110:6, 110:12,
110:14, 110:15, 110:18, 111:4, 111:5,
111:11, 111:12, 111:20, 111:25,
113:6, 113:8, 114:2, 114:7, 114:8,
114:20, 114:21, 115:2, 115:4, 115:17,
116:18, 116:20, 117:13, 117:22,
117:23, 118:3, 118:11, 118:16,
118:17, 118:18, 118:24, 119:6,
119:16, 119:18, 119:21, 119:23,
119:24, 120:2, 120:3, 120:8, 120:10,
120:11, 121:1, 121:5, 121:10, 121:18,
122:8, 122:9, 122:15, 122:16, 122:21,
122:23, 123:5, 123:7, 123:9, 123:12,
123:14, 123:18, 123:19, 123:21,
123:24, 124:2, 124:4, 124:6, 124:14,
124:16, 124:21, 125:1, 125:5, 125:13,
125:18, 125:21, 125:23, 125:24,
125:25, 126:1, 126:18, 126:19,
126:25, 127:1, 127:4, 127:5, 127:8,
127:19, 127:23, 128:6, 128:8, 128:9,
128:10, 128:11, 128:13, 129:4,
129:13, 129:17
i [2] - 117:11, 122:9
I'll [7] - 24:18, 26:6, 26:9, 34:12, 62:9,
85:8
I'm [30] - 8:12, 14:1, 19:10, 20:12, 28:8,
29:17, 38:2, 48:16, 55:15, 55:16, 62:1,
62:3, 64:21, 65:14, 67:21, 71:15,
72:16, 75:16, 77:13, 78:4, 78:16,
84:12, 99:16, 117:17, 117:20, 118:23,
122:4, 127:3, 128:11
I've [1] - 102:12
I.M [3] - 101:1, 101:16, 101:17
identical [1] - 25:17
identified [1] - 25:8
identify [1] - 37:7
if [107] - 14:24, 16:24, 17:24, 19:6,
19:15, 20:1, 30:13, 33:7, 33:19, 33:20,
33:23, 34:25, 35:7, 35:16, 36:15,
36:17, 37:8, 38:12, 38:24, 39:14,
39:18, 43:12, 43:15, 44:8, 44:9, 44:19,
46:2, 46:14, 47:20, 48:18, 48:21,
49:17, 50:13, 51:24, 52:2, 53:2, 53:5,
55:22, 56:1, 56:9, 56:22, 56:23, 56:25,
57:6, 57:10, 57:11, 57:12, 58:7, 58:9,
58:12, 59:14, 60:9, 63:22, 63:23,
64:14, 65:3, 65:16, 66:13, 68:25, 69:1,
74:12, 74:18, 77:8, 79:5, 80:24, 81:1,
81:25, 82:5, 82:19, 83:19, 84:4, 84:11,
84:23, 85:15, 85:20, 86:23, 87:10,
88:11, 88:21, 90:19, 91:1, 93:6, 95:3,
96:9, 97:6, 97:15, 106:15, 107:5,
107:12, 108:12, 110:5, 110:15, 112:3,
112:19, 114:3, 114:11, 114:20,
115:21, 119:14, 119:18, 127:8,
127:20, 127:21, 128:11, 129:15
ignore [1] - 59:10
ill [1] - 48:10
immediately [2] - 26:3, 26:4
imperative [1] - 84:19
importance [3] - 94:18, 95:8, 95:10
important [15] - 18:3, 28:17, 40:15,
41:1, 41:17, 44:18, 54:17, 59:9, 65:24,
66:11, 95:12, 101:19, 107:19, 107:23,
126:24
importantly [3] - 44:13, 61:14, 96:12
imposed [1] - 55:3
imposing [1] - 51:12
impossible [1] - 36:17
impression [1] - 123:25
improper [6] - 69:24, 80:11, 122:3,
122:6, 123:5, 124:11
improperly [2] - 122:12, 123:4
IN [1] - 1:4
In [1] - 54:3
in [375] - 1:19, 1:21, 6:18, 6:20, 7:5, 8:5,
8:7, 8:9, 8:10, 9:19, 10:6, 11:16,
11:22, 12:1, 12:5, 12:7, 12:11, 12:14,
12:16, 12:18, 12:19, 12:20, 12:24,

13:4, 13:6, 13:7, 13:10, 13:16, 13:19,
13:21, 13:23, 14:3, 14:4, 14:5, 14:6,
14:7, 14:15, 14:19, 15:18, 16:16,
16:24, 17:1, 17:4, 17:7, 17:21, 17:22,
18:2, 18:5, 18:18, 19:12, 19:18, 20:24,
21:10, 21:16, 21:18, 21:20, 21:22,
21:23, 22:6, 22:18, 22:20, 22:21,
22:24, 22:25, 23:1, 23:3, 23:8, 23:9,
23:10, 23:11, 23:13, 23:20, 23:23,
23:24, 24:2, 24:6, 24:11, 24:17, 24:23,
24:25, 25:5, 25:12, 25:18, 26:7, 26:13,
26:23, 26:25, 27:25, 28:7, 28:8, 28:9,
28:21, 28:22, 28:24, 29:4, 29:7, 29:17,
29:23, 29:25, 30:4, 30:10, 30:14,
30:15, 30:16, 30:19, 30:23, 31:1, 31:4,
31:10, 31:15, 31:19, 31:21, 32:25,
34:13, 35:2, 35:13, 35:22, 36:23, 37:7,
37:25, 38:6, 38:14, 39:1, 39:18, 40:19,
40:24, 41:11, 41:17, 41:18, 42:1,
42:18, 42:20, 42:25, 43:2, 43:18,
43:22, 44:4, 44:25, 45:11, 46:7, 47:2,
47:7, 47:8, 48:11, 51:1, 51:6, 52:3,
52:7, 52:16, 52:18, 52:22, 52:24, 53:6,
53:10, 53:12, 53:21, 53:22, 53:23,
53:25, 54:2, 54:5, 54:13, 54:15, 54:18,
55:1, 55:21, 57:1, 57:22, 58:17, 58:19,
58:24, 59:4, 59:23, 60:23, 61:4, 61:15,
62:13, 62:21, 62:22, 63:6, 63:17,
63:18, 63:21, 64:16, 65:4, 65:10, 66:5,
66:14, 66:18, 66:22, 66:23, 67:12,
67:23, 67:24, 69:5, 69:18, 70:3, 70:6,
70:13, 70:14, 70:16, 71:9, 71:13,
71:15, 71:19, 71:22, 72:15, 72:24,
73:1, 73:4, 73:9, 73:10, 73:14, 73:19,
73:24, 74:7, 74:19, 74:20, 75:3, 75:4,
75:11, 75:18, 76:2, 76:4, 76:17, 77:7,
77:23, 78:17, 78:22, 78:25, 79:8,
79:12, 80:4, 81:5, 81:18, 82:8, 82:9,
83:13, 83:23, 84:3, 84:22, 86:2, 86:4,
86:7, 86:12, 87:21, 88:17, 88:22, 89:4,
89:8, 89:16, 89:18, 89:25, 90:3, 90:17,
91:6, 91:8, 91:9, 91:10, 91:12, 92:2,
92:18, 92:20, 93:13, 93:17, 94:13,
95:4, 95:6, 95:14, 95:21, 96:1, 96:10,
96:20, 98:8, 98:25, 100:10, 101:5,
101:6, 101:15, 101:23, 102:3, 102:7,
102:19, 103:8, 103:15, 104:10,
104:12, 104:14, 104:16, 104:25,
105:22, 107:13, 107:15, 107:17,
108:11, 109:1, 109:24, 110:11,
110:24, 111:6, 111:11, 112:5, 112:25,
113:9, 113:11, 114:23, 115:22, 116:1,
116:14, 116:20, 117:9, 118:10,
118:15, 118:17, 118:22, 119:2, 120:4,
120:5, 120:14, 120:18, 120:19,
120:23, 120:24, 121:9, 121:17,
121:20, 123:5, 123:16, 123:21,
123:23, 124:8, 124:15, 124:21,
125:22, 126:9, 126:10, 126:13,
126:18, 126:21, 127:11, 127:13,
129:4, 129:8, 129:9, 129:10, 129:12

**inappropriate** [4] - 106:4, 106:14,
106:20, 116:3
**Inc** [8] - 25:13, 31:15, 31:16, 42:13,
43:3, 43:16, 44:2, 61:16
**included** [2] - 41:3, 129:9
**including** [2] - 30:3, 95:16
**incurred** [1] - 55:5
**indicate** [1] - 28:1
**indicative** [1] - 43:2
**individual** [4] - 15:13, 31:11, 31:12,
33:4
**individually** [9] - 5:21, 16:10, 24:25,
34:21, 36:3, 39:25, 68:19, 77:21,
120:12
**individuals** [1] - 114:8
**infinite** [1] - 24:7
**inflicted** [1] - 54:14
**info@jlm** [1] - 3:14
**info@jlm-law.com** [1] - 3:14
**inform** [1] - 51:7
**information** [2] - 60:5, 71:3
**informed** [1] - 80:13
**infringe** [1] - 58:12
**infringes** [1] - 57:13
**inherent** [1] - 117:12
**injunction** [24] - 29:24, 72:7, 74:6, 74:9,
74:10, 75:21, 76:5, 86:23, 89:23,
89:24, 97:9, 98:4, 99:9, 100:15,
110:22, 111:5, 113:21, 114:3, 116:2,
116:13, 118:4, 118:18, 119:5
**injunctions** [3] - 66:7, 115:3
**injunctive** [5] - 99:5, 111:24, 112:20,
124:24, 127:7
**inside** [1] - 30:12
**insisted** [2] - 28:3, 28:16
**inspection** [1] - 33:10
**instances** [3] - 27:5, 28:7, 62:23
**insufficient** [2] - 100:13, 110:10
**intend** [4] - 85:25, 90:5, 90:7
**intended** [3] - 11:12, 20:20, 50:10
**intends** [1] - 110:23
**intent** [1] - 48:10
**intention** [2] - 43:2, 86:11
**inter** [1] - 44:13
**interest** [3] - 107:15, 107:17, 107:23
**interesting** [2] - 26:1, 81:22
**interests** [1] - 77:25
**interfere** [1] - 32:22, 99:3, 115:20
**interfered** [5] - 32:17, 98:24, 99:2,
100:9, 112:14
**interference** [11] - 7:9, 98:6, 98:22,
99:20, 100:2, 110:3, 112:18, 112:21,
112:24, 115:10, 115:16
**interfering** [4] - 77:4, 77:25, 96:1,
100:10
**internet** [1] - 32:13
**interrupt** [4] - 48:16, 68:12, 68:15,
123:12
**interrupted** [1] - 9:16

**intervene** [1] - 13:4
**intervening** [2] - 7:6, 77:23
**Intervenor** [1] - 65:5
**intervenor** [1] - 7:25
**intervention** [9] - 6:20, 7:5, 8:4, 8:9,
13:23, 20:25, 22:7, 77:7, 78:12
**intimidate** [2] - 66:19, 69:22
**intimidated** [3] - 68:6, 68:7, 70:21
**intimidation** [1] - 87:11
**into** [20] - 19:17, 32:2, 35:24, 36:24,
39:6, 39:7, 40:9, 47:18, 48:7, 59:21,
62:15, 62:16, 63:24, 63:25, 76:9,
95:24, 106:10, 106:12, 109:19, 126:15
**introduce** [1] - 92:7
**investigated** [1] - 67:7
**investments** [1] - 31:18
**invited** [1] - 105:22
**involve** [2] - 99:5, 99:8
**involved** [14] - 8:16, 22:24, 23:11,
23:13, 30:10, 30:13, 30:15, 30:16,
67:3, 72:19, 101:5, 101:6, 104:10,
112:5
**involves** [1] - 95:23
**involving** [4] - 89:6, 93:18, 96:16,
106:15
**irreparable** [1] - 114:6
**is** [612] - 5:21, 6:2, 6:14, 7:7, 7:13, 7:15,
7:24, 8:1, 8:2, 8:11, 8:22, 8:24, 9:9,
9:10, 9:16, 9:21, 10:11, 11:3, 11:8,
11:20, 11:21, 11:22, 12:1, 12:5, 12:7,
12:8, 13:6, 13:11, 13:12, 13:16, 13:25,
14:13, 14:19, 15:2, 15:5, 15:7, 15:8,
15:15, 15:24, 16:16, 16:17, 17:1, 17:6,
17:12, 17:15, 17:21, 17:22, 18:2,
18:12, 18:14, 18:19, 19:1, 19:11,
20:22, 21:1, 21:16, 22:1, 22:5, 24:1,
24:17, 24:20, 25:12, 25:13, 25:14,
26:1, 26:25, 27:1, 27:8, 28:2, 28:16,
28:17, 30:17, 30:19, 30:22, 31:3,
31:10, 31:20, 31:23, 31:24, 32:5, 33:7,
33:8, 33:10, 33:12, 33:13, 33:18,
33:24, 34:7, 34:13, 34:15, 34:25, 35:4,
35:7, 35:8, 35:15, 35:18, 35:19, 35:20,
35:24, 36:1, 36:7, 36:17, 37:1, 37:3,
37:7, 37:22, 38:4, 38:11, 38:12, 38:21,
38:23, 38:24, 39:6, 39:13, 39:17,
39:20, 40:5, 40:25, 41:8, 41:17, 42:3,
42:4, 42:10, 42:13, 43:1, 43:2, 43:5,
43:7, 43:8, 43:9, 43:13, 43:15, 43:16,
43:23, 43:25, 44:8, 44:9, 44:13, 44:16,
45:4, 45:16, 46:2, 46:3, 46:5, 46:9,
46:17, 47:3, 47:19, 47:20, 47:25, 49:8,
49:13, 49:18, 49:22, 50:4, 50:18,
50:20, 50:22, 50:23, 51:1, 51:11,
51:17, 51:18, 51:19, 51:21, 52:1, 52:4,
52:15, 52:16, 52:17, 53:1, 53:5, 53:6,
53:7, 53:9, 53:10, 53:11, 53:12, 53:13,
53:17, 53:19, 53:21, 53:23, 53:24,
53:25, 54:6, 54:7, 54:8, 54:10, 54:11,
54:14, 54:18, 54:23, 55:1, 55:9, 55:10,

55:21, 56:2, 56:3, 56:9, 56:12, 56:17, 56:19, 56:21, 56:23, 56:24, 57:16, 57:17, 57:20, 58:3, 58:5, 58:6, 58:16, 58:22, 58:25, 59:9, 59:10, 59:16, 60:3, 60:4, 60:9, 60:16, 60:17, 60:18, 60:21, 60:25, 61:2, 61:3, 61:7, 61:9, 61:14, 61:15, 61:17, 62:5, 62:12, 62:15, 62:17, 62:20, 62:21, 63:2, 63:6, 63:9, 63:15, 63:16, 63:17, 63:22, 64:3, 64:6, 64:9, 64:16, 64:17, 64:22, 64:23, 65:8, 65:9, 65:23, 65:24, 65:25, 66:2, 66:9, 66:11, 66:15, 66:24, 67:2, 67:3, 67:5, 67:6, 67:7, 67:8, 67:15, 67:16, 67:18, 67:19, 68:5, 68:17, 68:20, 68:24, 69:3, 69:4, 69:5, 69:9, 69:10, 69:24, 70:3, 70:4, 70:5, 70:20, 71:12, 71:18, 72:18, 73:4, 73:5, 73:7, 73:15, 73:17, 73:18, 74:1, 74:19, 74:20, 74:21, 75:1, 75:3, 75:6, 75:8, 75:9, 75:16, 75:17, 75:19, 76:16, 76:18, 76:23, 77:1, 77:2, 77:5, 77:7, 77:10, 77:16, 77:17, 78:7, 78:9, 78:11, 78:12, 78:14, 78:16, 78:19, 78:20, 78:21, 78:24, 79:2, 79:3, 79:4, 79:6, 79:7, 79:9, 79:10, 79:14, 79:17, 79:18, 79:25, 80:1, 80:2, 80:3, 80:18, 80:19, 80:20, 80:24, 81:3, 81:6, 81:8, 81:14, 81:17, 81:19, 81:22, 81:25, 82:1, 82:2, 82:11, 82:14, 82:16, 82:17, 83:2, 83:17, 83:21, 83:22, 83:23, 84:19, 84:23, 84:24, 85:6, 85:11, 85:17, 85:20, 86:20, 87:19, 87:23, 88:9, 89:3, 89:10, 89:11, 89:12, 90:1, 91:8, 91:12, 91:20, 91:21, 91:24, 91:25, 92:4, 93:15, 93:16, 93:17, 93:24, 94:1, 94:3, 94:16, 94:23, 95:4, 95:8, 95:11, 95:12, 95:17, 95:21, 96:6, 96:21, 97:4, 97:5, 97:22, 98:2, 98:3, 98:8, 98:10, 98:11, 98:13, 98:14, 98:15, 98:16, 99:8, 99:13, 99:14, 100:4, 100:5, 100:7, 100:8, 100:12, 100:15, 100:16, 100:25, 101:17, 101:21, 102:8, 104:25, 105:23, 106:4, 106:14, 106:15, 106:19, 106:22, 107:12, 107:20, 107:23, 108:14, 108:16, 108:21, 108:25, 109:3, 109:5, 109:12, 109:13, 109:14, 109:17, 109:20, 109:21, 109:23, 109:25, 110:1, 110:5, 110:7, 110:13, 111:2, 111:8, 111:16, 111:19, 111:20, 111:23, 111:25, 112:2, 112:17, 112:20, 112:23, 113:2, 113:3, 113:5, 113:10, 113:16, 113:18, 113:19, 113:22, 114:9, 114:11, 114:12, 114:14, 114:15, 114:24, 115:3, 115:4, 115:9, 115:10, 115:15, 115:16, 115:18, 115:19, 115:24, 116:2, 116:3, 116:4, 116:5, 116:8, 116:12, 117:24, 118:2, 118:7, 118:9, 118:13, 118:14, 119:3, 119:6, 119:9, 119:17, 120:9, 121:2, 121:12, 121:20, 122:1, 122:11, 122:12, 123:2, 123:3, 123:5, 123:6,

123:15, 123:20, 123:22, 124:4, 124:5, 124:7, 124:17, 124:18, 124:24, 125:11, 125:12, 125:17, 126:1, 126:5, 126:7, 126:9, 126:11, 126:12, 126:13, 126:21, 126:23, 127:6, 127:10, 127:15, 127:18, 128:7, 129:18

**isn't** [6] - 12:21, 31:8, 49:12, 67:2, 100:15, 115:23

**issue** [34] - 9:16, 11:19, 11:20, 13:12, 15:15, 15:22, 17:6, 33:1, 37:3, 38:12, 39:4, 39:20, 55:11, 57:4, 60:3, 60:16, 60:18, 63:5, 71:18, 72:17, 72:18, 76:2, 79:24, 81:3, 81:25, 82:5, 87:6, 89:3, 97:5, 101:23, 104:22, 109:17, 116:20

**issued** [2] - 51:1, 62:6

**issues** [26] - 11:17, 17:8, 23:16, 24:3, 27:6, 34:6, 34:16, 35:3, 36:10, 36:11, 36:24, 39:8, 39:14, 39:15, 59:20, 59:22, 59:25, 60:23, 72:20, 76:17, 76:20, 79:24, 80:14, 92:17, 106:16, 109:5

**it's** [41] - 6:20, 9:25, 14:23, 17:20, 24:19, 25:14, 26:5, 29:13, 31:11, 34:12, 37:9, 37:14, 37:23, 39:3, 41:25, 42:18, 44:3, 44:17, 51:2, 52:7, 54:17, 58:8, 63:19, 69:5, 72:12, 74:14, 74:17, 76:22, 77:16, 82:14, 87:10, 91:20, 98:5, 101:1, 101:2, 101:18, 106:17, 107:3, 112:2, 115:12, 120:24

**its** [6] - 14:14, 28:12, 78:17, 94:16, 116:17, 124:10

**itself** [1] - 47:11

## J

**J** [1] - 3:8
**Jackson** [1] - 42:23
**James** [4] - 3:3, 5:10, 39:18, 41:7
**jamesp@thepopelawfirm.com** [1] - 3:6
**January** [1] - 101:24
**Jennifer** [2] - 3:11, 5:9
**Jerry** [3] - 3:15, 5:10, 86:20
**Jetall** [6] - 25:13, 31:14, 31:16, 35:23, 94:7
**Jetallcompanies** [1] - 94:14
**Jetallcompanies.com** [1] - 94:12
**jets** [1] - 41:16
**Jim** [2] - 67:13, 68:2
**job** [1] - 25:24
**Johnson** [1] - 25:14
**Jones** [1] - 3:15
**Judge** [91] - 1:21, 5:18, 8:20, 9:16, 9:21, 9:23, 9:24, 10:1, 10:2, 10:5, 10:16, 11:23, 11:24, 12:8, 12:9, 12:11, 13:16, 13:17, 13:19, 14:7, 15:5, 15:7, 15:15, 15:22, 16:1, 16:8, 16:17, 16:23, 18:15, 21:6, 22:16, 23:10, 24:6, 24:19, 27:9, 27:21, 28:18, 29:3, 29:13, 29:24, 30:13, 32:24, 33:1, 33:11, 35:2, 35:5, 35:15, 36:7, 36:19, 36:25, 37:3, 38:4,

38:12, 38:22, 38:25, 39:17, 40:6, 40:13, 40:23, 48:23, 59:5, 60:9, 60:20, 61:3, 61:25, 64:3, 70:7, 71:25, 72:24, 73:2, 73:22, 74:7, 74:23, 81:11, 82:6, 82:9, 83:22, 85:10, 87:1, 87:18, 97:21, 102:5, 104:21, 105:23, 106:21, 119:11, 119:14

**judge** [17] - 38:14, 38:16, 38:17, 38:19, 39:10, 63:20, 67:14, 82:8, 83:22, 84:8, 85:5, 103:23, 105:23, 107:19, 107:25, 108:2

**judges** [6] - 14:18, 15:9, 69:6, 69:7, 69:22, 69:23

**judgment** [10] - 16:8, 33:19, 33:20, 35:19, 36:1, 52:8, 58:20, 58:25, 59:17, 68:19

**Judicial** [1] - 129:25

**JUDICIAL** [1] - 1:7

**July** [6] - 79:21, 83:4, 83:9, 114:25, 115:7

**jump** [1] - 44:17

**June** [1] - 30:11

**jury** [7] - 17:2, 38:6, 59:24, 60:23, 67:11, 67:14, 67:17

**just** [152] - 5:18, 5:22, 6:2, 6:10, 6:19, 8:10, 8:23, 10:7, 10:17, 10:18, 13:3, 13:7, 13:8, 16:4, 17:10, 17:16, 18:9, 18:15, 18:24, 20:8, 20:15, 21:14, 21:15, 21:25, 25:1, 27:9, 27:12, 29:7, 29:8, 29:15, 35:4, 39:20, 42:3, 42:15, 43:11, 44:17, 45:1, 45:3, 46:2, 49:6, 49:16, 50:7, 52:5, 54:10, 55:11, 56:11, 57:5, 57:10, 58:19, 58:24, 59:7, 61:10, 61:11, 62:3, 64:15, 64:17, 64:21, 65:4, 65:14, 70:11, 71:18, 71:24, 72:1, 72:10, 72:13, 72:16, 72:21, 72:22, 73:22, 74:18, 75:16, 76:24, 77:2, 77:14, 78:4, 78:7, 78:16, 78:25, 79:9, 79:16, 79:20, 80:17, 83:8, 85:3, 85:5, 85:18, 85:19, 86:6, 90:22, 91:6, 91:20, 93:6, 93:19, 94:9, 95:4, 96:17, 97:9, 98:1, 99:4, 99:11, 99:16, 100:2, 100:8, 100:15, 103:16, 105:25, 106:21, 106:22, 109:13, 109:22, 110:1, 110:6, 110:11, 112:3, 113:3, 113:8, 114:7, 114:19, 114:21, 115:12, 116:3, 117:11, 117:13, 117:20, 118:3, 118:9, 118:13, 118:16, 118:18, 118:23, 119:10, 119:11, 119:19, 121:1, 121:10, 121:12, 122:9, 122:20, 123:7, 123:15, 125:10, 125:12, 125:18, 125:24, 126:3, 127:3, 128:6, 128:7

**JV** [1] - 108:16

## K

**K** [3] - 129:4, 129:23, 129:23
**Kathleen** [3] - 1:24, 129:4, 129:23
**keep** [7] - 24:14, 38:25, 40:15, 49:16, 50:3, 94:13, 101:20

**keeps** [3] - 14:17, 60:16, 98:3
**kept** [3] - 106:9, 106:12
**key** [3] - 24:18, 81:3, 120:7
**Khawaja** [2] - 22:22
**kicked** [1] - 114:10
**kidding** [1] - 103:13
**kids** [1] - 66:3
**kind** [15] - 10:8, 22:11, 27:13, 27:18, 48:6, 54:9, 63:10, 64:5, 99:5, 101:1, 107:23, 112:5, 113:8, 114:9, 120:6
**Klein** [1] - 42:4
**Klingensmith** [2] - 4:3, 5:14
**KLINGENSMITH** [1] - 119:3
**knew** [6] - 16:3, 25:2, 25:10, 33:12, 75:3, 102:24
**know** [80] - 9:3, 9:5, 9:7, 9:15, 10:3, 14:11, 14:17, 17:21, 19:2, 25:22, 25:23, 30:17, 33:20, 34:25, 39:1, 39:21, 39:22, 40:1, 40:16, 45:1, 48:13, 49:21, 50:15, 54:13, 58:12, 60:4, 60:6, 60:19, 61:9, 68:24, 70:9, 72:2, 72:5, 73:16, 77:8, 78:24, 79:16, 80:5, 80:24, 82:20, 83:4, 84:24, 86:5, 88:2, 88:7, 88:9, 88:16, 89:2, 90:5, 90:6, 92:5, 92:8, 92:17, 98:8, 98:18, 99:1, 101:11, 101:25, 103:6, 103:15, 103:20, 104:24, 105:1, 105:23, 106:21, 106:23, 107:19, 109:18, 109:19, 110:2, 110:4, 110:5, 110:7, 113:11, 113:13, 114:4, 119:6
**known** [1] - 95:3
**knows** [3] - 92:8, 98:14, 119:15
**Kong** [1] - 101:15
**Korean** [1] - 101:17
**KUWAIT** [2] - 1:7, 4:1
**Kuwait** [39] - 5:3, 5:15, 7:8, 8:3, 8:9, 9:20, 12:20, 12:22, 65:1, 65:10, 67:5, 71:20, 73:10, 77:21, 78:1, 78:6, 79:12, 95:15, 95:18, 96:1, 96:14, 96:22, 102:4, 103:5, 105:20, 105:22, 111:15, 112:2, 112:9, 120:8, 121:4, 121:11, 122:8, 123:17, 123:22, 124:1, 124:2, 124:5
**Kuwait's** [1] - 23:14

## L

**L** [2] - 3:11, 4:12
**L.L.C** [1] - 1:5
**labeling** [1] - 48:19
**language** [1] - 78:17
**Lanham** [2] - 70:4
**laptop** [3] - 19:12, 19:13, 19:15
**last** [21] - 10:11, 11:3, 11:6, 15:22, 21:12, 21:13, 33:10, 40:16, 61:17, 72:4, 78:19, 81:19, 82:14, 83:7, 83:11, 87:2, 87:6, 106:1, 106:2, 109:9, 109:20
**late** [4] - 11:10, 24:12, 28:24, 66:1
**later** [6] - 24:4, 27:24, 28:4, 41:22, 45:9,
53:6
**Latin** [1] - 34:5
**laugh** [1] - 88:5
**law** [21] - 17:15, 35:19, 36:7, 41:24, 43:24, 47:6, 47:9, 51:20, 53:3, 53:25, 55:22, 58:16, 59:17, 62:12, 63:15, 95:11, 95:15, 98:15, 113:19, 114:6, 116:16
**Law** [2] - 3:4, 3:12
**law.com** [1] - 3:14
**laws** [2] - 79:5, 95:12
**lawsuit** [14] - 14:10, 17:13, 30:11, 41:3, 41:16, 41:18, 42:6, 42:10, 44:12, 45:2, 45:7, 45:15, 45:20, 46:3, 46:11, 46:18, 47:2, 47:4, 48:3, 60:10, 63:3, 63:4, 66:5, 68:3, 70:23, 101:21, 107:24
**lawsuits** [8] - 13:14, 14:5, 44:25, 59:24, 63:18, 63:20, 63:21, 89:6
**lawyer** [4] - 23:24, 45:13, 106:11, 123:4
**lawyers** [21] - 13:2, 14:7, 14:8, 15:14, 25:12, 25:23, 38:1, 38:9, 38:24, 38:25, 40:2, 48:23, 49:1, 49:2, 70:21, 70:22, 92:17, 103:23, 106:18, 127:13
**laying** [1] - 52:5
**layperson** [1] - 38:20
**learned** [1] - 25:24
**least** [9] - 25:23, 33:2, 35:24, 36:18, 37:7, 64:20, 87:11, 126:2, 127:21
**leave** [1] - 23:18
**left** [2] - 46:1, 121:8
**legal** [7] - 28:7, 28:9, 36:5, 51:8, 53:9, 59:14, 109:24
**legally** [1] - 73:11
**lender** [6] - 68:20, 79:3, 79:4, 79:5, 99:12, 101:21
**lenders** [1] - 67:3, 68:18, 68:21, 68:22
**less** [2] - 23:7, 27:17
**lesson** [1] - 25:25
**let** [24] - 6:19, 7:4, 7:17, 18:1, 18:9, 18:11, 20:17, 35:9, 40:11, 62:9, 72:25, 74:12, 85:8, 86:15, 90:6, 93:11, 93:18, 94:23, 104:25, 108:3, 110:19, 114:19, 123:7
**let's** [13] - 10:21, 16:21, 17:8, 20:18, 20:23, 50:16, 61:3, 62:6, 69:16, 69:17, 86:6, 98:18
**letter** [4] - 23:14, 74:3, 98:15, 102:5
**leverage** [5] - 80:18, 80:19, 82:17
**liability** [5] - 79:3, 79:5, 95:11, 99:12, 101:21
**liable** [4] - 28:25, 44:6, 59:24, 60:6
**licensed** [1] - 49:1
**lie** [2] - 16:20, 91:12
**lied** [3] - 61:2, 69:16, 91:10
**liens** [1] - 125:22
**lift** [1] - 23:19
**light** [1] - 35:22
**like** [55] - 6:9, 7:6, 10:14, 14:18, 14:21, 15:14, 18:25, 20:5, 21:25, 25:11, 27:3, 48:14, 50:7, 52:7, 55:22, 58:6, 58:19,
58:24, 60:17, 69:18, 71:13, 72:1, 72:2, 72:10, 73:7, 75:21, 76:16, 76:18, 79:20, 80:22, 80:23, 82:25, 83:14, 84:25, 86:2, 86:23, 87:10, 89:21, 89:25, 90:15, 90:18, 102:10, 102:22, 104:14, 105:25, 108:12, 109:4, 109:10, 110:15, 112:3, 112:18, 113:24, 114:2, 114:7, 119:24
**limit** [1] - 62:5
**limitations** [1] - 34:10
**limited** [25] - 34:12, 34:13, 34:19, 36:8, 36:13, 37:14, 37:22, 37:23, 37:24, 40:6, 51:25, 53:6, 53:7, 54:4, 54:23, 54:25, 55:2, 59:19, 62:14, 62:18, 62:20, 62:22, 63:9, 72:18, 95:11
**Line** [1] - 69:1
**lined** [1] - 28:5
**lis** [1] - 66:7
**list** [2] - 65:2, 95:13
**listed** [5] - 7:20, 11:17, 54:15, 65:3, 77:15
**listening** [2] - 56:8, 57:3
**lists** [2] - 7:24, 8:3
**litany** [1] - 81:16
**literally** [14] - 6:10, 7:23, 10:18, 13:8, 45:5, 47:16, 55:10, 56:11, 72:13, 72:16, 78:13, 97:11, 102:19, 118:2
**litigated** [1] - 89:13
**litigation** [20] - 31:19, 31:21, 60:13, 66:4, 68:7, 68:8, 68:9, 75:7, 75:20, 90:4, 95:23, 96:8, 96:9, 96:10, 97:8, 97:9, 101:5, 101:6, 106:15, 126:11
**little** [14] - 8:24, 21:14, 23:7, 23:8, 27:8, 27:10, 34:5, 36:21, 48:20, 64:2, 90:2, 93:6, 94:10
**live** [1] - 98:11
**living** [1] - 69:20
**Liz** [1] - 5:14
**liz.klingensmith@pillsburylaw.com** [1] - 4:8
**LLC** [8] - 5:3, 15:20, 23:5, 24:2, 30:12, 33:9, 54:3, 107:1
**LLP** [1] - 4:5
**loan** [3] - 95:14, 97:3, 110:24
**located** [1] - 32:6
**lock** [1] - 16:19
**log** [1] - 19:17
**long** [7] - 19:19, 28:11, 61:4, 64:12, 89:24, 128:14
**longer** [2] - 20:19, 101:5
**look** [20] - 6:10, 6:12, 7:1, 7:3, 10:16, 20:11, 20:25, 26:5, 46:2, 53:2, 57:6, 71:17, 71:24, 72:2, 75:14, 79:20, 81:25, 86:15, 107:2, 124:25
**looked** [4] - 74:5, 74:11, 88:5, 89:15
**looking** [8] - 7:23, 45:17, 45:19, 49:20, 109:25, 111:20, 113:6
**looks** [1] - 18:25
**Loop** [1] - 4:13
**loop** [2] - 30:21, 32:6

**loose** [1] - 15:16
**Lopez** [5] - 23:10, 24:6, 81:11, 82:6, 82:9
**Lord** [2] - 60:21, 75:13
**lost** [6] - 51:6, 66:23, 70:14, 102:5, 102:6, 116:6
**lot** [23] - 36:24, 39:7, 40:10, 41:24, 43:20, 52:7, 66:15, 66:16, 66:24, 67:6, 67:18, 67:19, 69:9, 75:6, 89:17, 92:13, 92:14, 101:5, 101:9, 123:15, 126:17
**love** [1] - 108:13
**lying** [2] - 31:4, 65:22

**M**

**ma'am** [4] - 6:22, 7:12, 8:18, 88:14
**MacGeorge** [7] - 3:11, 3:12, 5:9, 91:4, 104:18, 106:9, 108:6
**MACGEORGE** [27] - 5:9, 18:23, 47:10, 52:2, 52:17, 55:13, 55:17, 56:5, 56:15, 56:18, 56:25, 57:18, 58:15, 78:23, 85:3, 85:7, 85:25, 87:2, 87:6, 91:5, 91:16, 91:20, 92:3, 104:18, 110:17, 117:6, 125:11
**machine** [1] - 1:22
**made** [22] - 8:8, 23:6, 32:16, 32:19, 36:12, 49:19, 55:7, 58:11, 63:5, 70:18, 77:12, 77:22, 77:24, 78:7, 89:18, 92:18, 104:16, 105:6, 112:8, 112:11, 112:13, 127:5
**mail** [25] - 8:13, 8:15, 27:24, 41:6, 41:7, 45:15, 46:15, 68:18, 92:7, 93:18, 94:1, 94:3, 94:5, 94:11, 94:16, 94:20, 94:24, 96:7, 120:2, 123:19, 123:20, 123:21, 126:4
**mailed** [2] - 94:7, 120:3
**mailing** [1] - 126:8
**mails** [3] - 27:14, 93:8, 121:18
**maintain** [2] - 53:16, 53:17
**make** [43] - 5:4, 6:2, 8:16, 8:23, 9:4, 9:7, 23:5, 29:15, 35:10, 37:9, 38:10, 38:13, 41:1, 44:24, 45:2, 55:8, 55:10, 56:2, 56:4, 56:11, 56:22, 57:8, 57:15, 57:16, 58:14, 61:5, 78:3, 84:17, 85:15, 89:16, 91:2, 94:24, 96:3, 97:3, 97:17, 100:21, 112:4, 114:3, 122:9, 123:2, 124:9, 125:13, 125:24
**makes** [6] - 28:25, 36:21, 56:22, 57:6, 57:11, 58:7
**making** [6] - 32:21, 58:5, 109:5, 110:2, 122:10, 126:3
**man** [2] - 23:17, 66:20
**management** [3] - 31:17, 32:20, 111:7
**manager** [6] - 24:1, 30:17, 40:14, 95:16, 95:19, 111:8
**managing** [1] - 126:6
**Manor** [17] - 10:1, 10:2, 11:23, 12:8, 12:11, 13:17, 13:19, 15:22, 40:13, 40:23, 40:24, 70:7, 71:25, 72:25, 73:2, 74:23

**Manor's** [7] - 12:16, 12:20, 13:21, 14:7, 19:18, 24:19, 29:24
**manufactured** [1] - 59:23
**many** [7] - 31:2, 37:25, 48:23, 52:18, 67:3, 117:8, 117:20
**March** [1] - 124:8
**married** [1] - 70:13
**Matias** [2] - 3:7, 5:6
**matter** [9] - 19:19, 22:9, 59:17, 67:22, 75:23, 89:19, 89:25, 90:2, 92:20
**matters** [1] - 30:19
**Matías** [1] - 3:8
**may** [27] - 8:13, 10:19, 14:24, 17:19, 20:1, 34:16, 48:18, 48:21, 51:20, 52:2, 59:4, 59:6, 64:14, 65:16, 66:12, 92:6, 93:23, 93:24, 97:12, 97:15, 102:18, 110:15, 112:12, 116:23, 117:15, 119:16
**May** [1] - 66:23
**maybe** [7] - 38:4, 50:14, 50:15, 51:20, 77:22, 114:17, 127:21
**McCathern** [2] - 4:13, 5:16
**McDonald** [1] - 33:9
**me** [132] - 6:11, 6:19, 7:4, 7:17, 11:4, 15:13, 16:11, 16:13, 18:1, 18:7, 19:12, 19:16, 19:22, 21:12, 23:5, 24:25, 25:6, 25:8, 26:4, 26:8, 26:18, 26:20, 26:22, 26:24, 27:8, 27:14, 27:18, 27:19, 28:2, 28:14, 28:15, 29:6, 29:8, 30:3, 31:25, 33:4, 35:9, 35:19, 36:3, 36:14, 37:21, 37:25, 39:23, 39:24, 40:4, 40:11, 56:9, 57:3, 57:6, 57:16, 60:8, 60:18, 60:25, 61:7, 61:13, 62:1, 62:6, 62:24, 63:14, 63:19, 63:21, 63:23, 63:24, 64:5, 64:7, 65:24, 66:21, 67:8, 67:12, 68:6, 68:15, 68:19, 68:20, 69:22, 70:19, 71:2, 71:9, 71:13, 72:25, 73:17, 74:12, 75:8, 75:17, 75:18, 79:25, 80:8, 85:19, 86:15, 88:3, 88:5, 89:4, 89:8, 89:15, 89:17, 90:6, 91:2, 91:3, 91:10, 92:2, 93:11, 93:12, 93:17, 93:18, 93:19, 94:24, 101:4, 102:16, 102:17, 102:19, 102:23, 103:16, 106:1, 108:3, 110:19, 113:23, 114:19, 117:21, 119:14, 119:15, 120:17, 123:7, 123:20, 123:25, 126:13, 126:21, 127:11, 127:14, 127:18, 129:12
**mean** [36] - 8:11, 17:15, 17:17, 29:10, 33:21, 38:22, 42:19, 44:22, 45:4, 45:9, 45:10, 46:2, 48:6, 48:16, 49:1, 58:6, 63:8, 71:24, 72:14, 72:16, 72:18, 78:12, 79:25, 82:13, 83:17, 89:21, 95:3, 95:22, 99:22, 100:18, 109:24, 110:14, 114:7, 118:11, 123:13, 125:5
**meaning** [3] - 33:17, 35:17, 59:12
**means** [5] - 20:22, 30:21, 33:25, 45:5, 108:19
**meant** [2] - 111:3, 123:6
**mediation** [1] - 70:10
**meet** [2] - 52:22, 56:2

**meets** [4] - 56:9, 56:23, 57:12, 58:9
**Melissa** [2] - 40:18, 120:17
**member** [1] - 24:1
**mention** [3] - 6:14, 65:9, 119:23
**mentioned** [4] - 16:16, 54:14, 66:20, 102:3
**mentions** [1] - 29:19
**merit** [2] - 125:10, 125:11
**merits** [8] - 47:12, 47:15, 52:12, 52:13, 53:4, 53:18, 54:24, 62:16
**message** [1] - 69:24
**messed** [1] - 110:4
**met** [6] - 53:13, 55:7, 58:5, 59:8, 69:21, 120:8
**might** [5] - 61:21, 64:1, 102:22, 104:20, 105:14
**Mike** [1] - 25:15
**Miller** [4] - 1:24, 129:4, 129:23, 129:23
**million** [8] - 27:7, 32:18, 64:1, 68:19, 98:10, 99:14, 112:19, 125:22
**mine** [2] - 30:24, 64:12
**minute** [3] - 34:13, 108:12, 108:13
**minutes** [14] - 5:23, 6:18, 27:23, 28:4, 41:22, 44:10, 44:11, 45:8, 45:15, 65:21, 72:5, 86:5, 118:10, 119:2
**miraculously** [1] - 76:12
**mischaracterizes** [1] - 47:21
**miscommunication** [1] - 48:11
**misconduct** [1] - 95:25
**misleads** [1] - 69:6
**misrepresentation** [1] - 119:12
**misrepresentations** [1] - 31:3
**miss** [1] - 5:24
**missing** [1] - 22:4
**misspoke** [1] - 17:23
**misstated** [1] - 47:4
**mistake** [2] - 16:13, 77:22
**mistrial** [1] - 67:14
**mja@mjalawyer.com** [1] - 3:10
**Mobley** [4] - 47:13, 52:14
**mom** [1] - 66:19
**moment** [4] - 17:23, 20:10, 20:11, 75:14
**moments** [1] - 6:12
**Mona** [3] - 120:1, 120:7, 126:6
**Monday** [5] - 11:23, 13:16, 73:2, 127:2, 127:22
**monetary** [1] - 76:21
**money** [27] - 32:7, 45:6, 76:9, 76:20, 78:25, 82:18, 99:8, 99:10, 99:12, 99:15, 100:2, 100:21, 109:25, 112:19, 112:20, 113:1, 113:4, 113:10, 113:12, 113:16, 114:7, 114:13, 114:24, 124:23, 125:22
**month** [2] - 23:7, 23:8
**months** [3] - 30:16, 49:24, 51:14
**moot** [2] - 55:10, 56:13
**mooted** [3] - 47:12, 52:13, 54:25
**Moran** [2] - 9:22, 10:6
**more** [18] - 23:8, 26:13, 27:8, 27:17,

38:19, 50:8, 50:13, 63:5, 79:23, 80:10, 80:17, 85:11, 96:11, 115:3, 115:4, 115:7

**moreover** [3] - 14:16, 47:21, 63:6

**morning** [17] - 6:9, 10:18, 10:23, 11:9, 11:13, 11:14, 11:15, 12:13, 12:18, 14:21, 20:8, 26:7, 26:8, 72:10, 73:19, 87:8

**mortgage** [1] - 79:10

**most** [3] - 28:17, 44:12, 61:13

**mostly** [1] - 94:13

**motion** [97] - 10:10, 10:14, 10:24, 11:5, 11:12, 15:11, 16:7, 17:10, 17:14, 17:24, 19:13, 21:5, 21:8, 21:11, 23:18, 24:5, 24:9, 24:10, 27:11, 27:18, 27:21, 28:5, 29:4, 31:2, 31:3, 31:7, 33:2, 33:14, 33:19, 33:20, 34:18, 35:25, 39:22, 41:8, 41:22, 42:1, 42:11, 42:18, 43:6, 44:6, 44:11, 45:23, 46:6, 46:10, 47:2, 47:11, 47:16, 51:3, 51:4, 51:10, 51:13, 51:23, 51:25, 52:3, 52:7, 52:8, 52:16, 52:18, 52:20, 53:8, 53:12, 53:23, 54:25, 55:1, 55:21, 55:23, 58:18, 58:20, 58:24, 61:21, 62:11, 62:21, 62:23, 63:2, 64:8, 71:7, 72:12, 72:20, 73:23, 74:2, 81:9, 84:2, 85:11, 85:20, 85:22, 88:5, 102:5, 102:6, 102:14, 103:1, 103:8, 103:12, 104:16, 105:12, 109:11, 118:8

**MOTION** [2] - 1:12, 2:3

**motions** [2] - 59:20, 61:18

**motivation** [1] - 68:25

**movant's** [5] - 34:14, 52:8, 52:19, 61:21

**movant's** [1] - 53:13

**move** [3] - 50:14, 82:15, 82:19

**moved** [2] - 37:11, 44:20

**moving** [5] - 35:18, 59:14, 59:15, 59:16, 80:3

**Mr** [190] - 3:3, 3:15, 4:2, 4:4, 5:18, 5:20, 6:6, 6:7, 7:4, 8:17, 9:14, 11:11, 15:5, 15:6, 16:12, 16:15, 16:19, 17:13, 18:10, 18:11, 18:12, 20:3, 20:10, 21:1, 21:8, 21:24, 21:25, 22:1, 22:4, 22:15, 22:22, 25:4, 25:7, 25:11, 25:16, 25:17, 26:3, 26:19, 26:20, 27:14, 27:24, 29:6, 33:5, 34:20, 35:22, 36:20, 36:23, 37:8, 37:9, 37:10, 37:12, 37:17, 39:5, 39:10, 39:12, 39:16, 40:8, 40:18, 41:14, 44:13, 44:16, 46:14, 46:15, 49:2, 49:4, 50:11, 52:5, 52:13, 52:19, 53:11, 54:8, 54:21, 59:23, 60:22, 61:5, 64:16, 65:20, 66:1, 66:3, 66:17, 67:2, 67:13, 67:16, 67:21, 67:24, 68:1, 68:4, 68:12, 69:13, 69:14, 70:1, 70:2, 70:8, 70:11, 70:15, 70:24, 71:8, 71:12, 72:1, 72:11, 72:19, 72:22, 74:24, 76:8, 78:18, 79:16, 79:19, 79:22, 80:13, 81:15, 81:16, 81:21, 82:8, 83:10, 83:12, 83:13, 83:20, 83:23, 84:13, 85:8, 86:1, 86:8, 87:7, 88:20, 89:16, 89:22, 90:9,

91:11, 92:1, 92:4, 92:9, 92:23, 94:10, 94:19, 95:3, 96:18, 97:1, 97:18, 99:13, 101:6, 102:17, 103:13, 104:5, 104:10, 104:15, 105:13, 105:17, 106:2, 106:17, 109:2, 109:18, 110:20, 111:7, 111:18, 115:1, 117:21, 119:17, 120:3, 120:4, 120:15, 120:21, 121:3, 121:6, 121:16, 121:18, 122:2, 122:5, 122:12, 123:10, 123:17, 123:18, 123:19, 123:20, 124:1, 124:3, 127:12, 127:17

**MR** [294] - 5:6, 5:8, 5:10, 5:13, 5:16, 5:22, 5:25, 6:2, 6:6, 6:13, 6:17, 7:8, 7:12, 7:15, 7:20, 8:5, 8:13, 8:18, 8:19, 8:22, 8:23, 9:2, 9:4, 9:9, 9:10, 9:11, 9:15, 9:24, 9:25, 10:1, 10:5, 10:15, 10:19, 10:24, 11:2, 11:5, 11:6, 12:5, 12:16, 12:23, 12:25, 13:5, 13:10, 14:1, 15:4, 16:23, 17:3, 17:18, 17:20, 18:6, 18:7, 18:8, 18:14, 18:17, 18:22, 19:2, 19:6, 19:10, 19:15, 19:17, 19:22, 19:25, 20:1, 20:5, 21:2, 21:5, 21:9, 21:22, 22:2, 22:5, 22:9, 22:13, 22:16, 24:17, 24:21, 29:12, 29:16, 29:19, 34:4, 37:23, 38:3, 38:18, 39:9, 40:9, 42:17, 42:20, 43:7, 43:12, 43:19, 43:23, 44:2, 45:1, 45:8, 45:12, 45:21, 45:24, 46:3, 46:7, 46:12, 46:17, 46:20, 46:23, 47:3, 47:18, 48:9, 48:15, 48:18, 48:19, 48:21, 48:22, 48:23, 49:6, 50:6, 50:13, 50:17, 50:22, 56:19, 59:4, 59:7, 60:1, 60:2, 62:8, 62:20, 63:1, 63:12, 63:13, 63:14, 63:19, 64:12, 64:14, 64:19, 64:24, 65:7, 65:12, 65:16, 65:19, 68:10, 68:11, 68:13, 68:15, 68:16, 68:17, 69:25, 70:1, 71:14, 71:17, 72:23, 74:8, 74:12, 74:16, 74:18, 75:9, 75:12, 75:23, 76:14, 76:22, 77:3, 77:9, 77:12, 77:22, 78:8, 78:19, 79:16, 79:20, 81:1, 81:2, 85:5, 85:10, 85:24, 86:9, 86:10, 86:18, 86:20, 87:1, 87:5, 87:13, 87:18, 87:23, 88:15, 88:19, 88:24, 90:8, 90:14, 90:18, 92:6, 92:12, 92:22, 93:1, 93:4, 93:6, 93:13, 93:21, 93:23, 94:1, 94:3, 94:7, 94:11, 94:15, 94:21, 95:10, 96:4, 96:15, 96:21, 96:25, 97:3, 97:12, 97:15, 97:19, 97:20, 97:21, 97:24, 98:1, 98:13, 99:6, 99:10, 100:4, 100:25, 101:8, 101:13, 102:1, 102:9, 102:13, 102:21, 103:1, 103:4, 103:7, 103:14, 103:19, 103:25, 105:6, 105:18, 105:21, 106:25, 107:8, 107:11, 107:16, 107:22, 108:3, 108:8, 108:11, 108:14, 109:3, 110:16, 110:18, 110:19, 111:17, 112:7, 112:11, 112:23, 113:2, 113:5, 113:18, 113:24, 114:1, 114:5, 114:19, 116:10, 116:23, 116:25, 117:3, 117:4, 117:8, 117:15, 117:18, 117:22, 118:1, 118:9, 118:14, 118:21, 119:9, 119:16, 119:20, 122:4, 122:7, 122:15, 122:19,

122:25, 123:7, 123:11, 123:15, 124:16, 125:2, 125:5, 125:8, 125:9, 125:18, 126:22, 127:2, 127:15, 127:19, 127:25, 128:2, 128:5, 128:9

**mr** [2] - 3:7, 4:12

**Ms** [30] - 3:11, 4:3, 22:18, 23:3, 23:4, 23:25, 24:10, 24:23, 24:24, 29:2, 36:6, 75:2, 77:17, 78:7, 78:9, 81:22, 90:3, 91:4, 94:15, 99:17, 100:8, 104:17, 106:9, 106:17, 108:6, 108:21, 109:6, 109:19, 110:1, 110:23

**MS** [28] - 5:9, 18:23, 47:10, 52:2, 52:17, 55:13, 55:17, 56:5, 56:15, 56:18, 56:25, 57:18, 58:15, 78:23, 85:3, 85:7, 85:25, 87:2, 87:6, 91:5, 91:16, 91:20, 92:3, 104:18, 110:17, 117:6, 119:3, 125:1

**much** [5] - 64:7, 85:1, 103:17, 109:13, 126:15

**multiple** [1] - 89:14

**my** [102] - 7:9, 9:6, 9:16, 9:20, 10:9, 14:4, 15:4, 15:15, 16:15, 20:13, 21:5, 21:10, 21:22, 23:6, 24:2, 25:1, 27:9, 27:18, 28:5, 28:7, 28:8, 28:9, 29:7, 29:20, 31:3, 31:20, 31:23, 33:23, 35:4, 36:5, 37:3, 38:12, 39:20, 39:22, 40:3, 40:4, 41:8, 42:1, 42:18, 42:20, 43:7, 43:9, 47:22, 48:1, 58:8, 59:8, 60:3, 60:16, 60:18, 62:21, 62:22, 63:25, 64:8, 66:1, 66:2, 66:4, 66:13, 66:19, 66:22, 66:23, 67:8, 68:18, 68:21, 68:22, 70:14, 70:21, 70:22, 70:24, 70:25, 71:3, 77:25, 78:8, 80:22, 83:8, 83:24, 85:11, 85:20, 86:20, 89:4, 89:8, 89:9, 89:10, 94:1, 94:7, 94:8, 94:12, 94:13, 103:17, 114:4, 123:12, 126:5, 126:6

**My** [2] - 34:4, 66:19

**MY** [1] - 129:20

**my's** [1] - 33:6

**myself** [4] - 28:10, 103:22, 103:23, 127:5

## N

**N** [3] - 2:1, 3:1, 5:1

**Naissance** [58] - 9:19, 12:10, 12:19, 12:22, 13:14, 13:20, 14:3, 14:8, 14:13, 15:1, 15:20, 17:21, 22:19, 23:5, 24:1, 29:25, 30:12, 30:17, 40:14, 40:20, 71:20, 72:13, 73:1, 73:5, 73:7, 73:8, 73:12, 73:15, 74:2, 74:20, 74:21, 75:8, 75:17, 83:14, 83:20, 84:3, 89:3, 89:6, 95:6, 96:13, 101:23, 102:2, 105:13, 106:6, 106:19, 106:25, 107:6, 107:14, 107:16, 108:14, 108:17, 110:21, 111:7, 111:8, 111:18, 111:11, 120:13

**name** [12] - 15:4, 16:15, 18:4, 23:17, 29:20, 33:6, 46:25, 49:10, 49:11, 86:20, 109:13, 109:14

**named** [3] - 28:1, 29:8, 41:12
**naming** [1] - 49:7
**narrative** [2] - 70:18
**narrow** [1] - 37:15
**National** [18] - 5:3, 5:14, 8:3, 8:9, 9:19, 23:14, 65:9, 71:20, 77:20, 78:1, 78:6, 79:11, 96:1, 96:13, 105:20, 105:22, 112:2, 112:9
**NATIONAL** [2] - 1:7, 4:1
**nationality** [1] - 101:18
**NBK** [7] - 29:21, 30:4, 30:9, 30:20, 32:18, 98:25, 113:14
**necessarily** [1] - 37:16
**necessary** [3] - 22:16, 30:21, 44:10
**need** [44] - 14:24, 17:6, 20:23, 35:20, 36:9, 36:10, 36:11, 37:1, 37:13, 37:16, 37:20, 38:19, 39:16, 50:3, 51:20, 53:20, 57:11, 60:4, 73:20, 78:2, 86:6, 87:15, 91:6, 91:13, 91:18, 91:22, 94:5, 94:9, 96:2, 96:19, 100:12, 100:17, 101:4, 101:11, 114:4, 114:17, 116:22, 117:14, 118:5, 118:25, 127:4, 127:12, 128:3
**needed** [2] - 79:22, 115:4
**needs** [5] - 51:19, 58:22, 84:18, 87:17, 88:9
**negotiated** [1] - 45:18
**net** [1] - 27:9
**never** [14] - 13:15, 14:4, 28:8, 39:23, 39:24, 41:19, 41:20, 42:6, 42:7, 46:15, 46:16, 48:12, 80:16, 82:13
**nevertheless** [1] - 34:23
**new** [8] - 7:13, 7:15, 79:21, 81:6, 81:17, 82:23, 115:10, 115:15
**New** [2] - 95:12, 95:14
**NEW** [2] - 1:7, 4:1
**next** [2] - 107:4, 127:1
**night** [2] - 27:4, 68:12
**nightmare** [1] - 69:20
**nine** [2] - 71:9
**Ninth** [1] - 43:17
**NO** [1] - 1:2
**no** [69] - 16:23, 20:7, 22:16, 38:18, 40:24, 43:21, 47:19, 48:10, 50:24, 51:11, 51:18, 51:19, 52:7, 53:17, 53:19, 54:18, 54:21, 55:9, 55:13, 56:5, 56:8, 56:17, 56:19, 56:21, 57:3, 57:18, 58:15, 58:19, 58:24, 59:2, 63:19, 68:13, 74:10, 80:25, 82:11, 82:16, 85:11, 86:3, 86:10, 92:3, 92:12, 94:21, 96:15, 100:5, 100:15, 100:22, 103:19, 104:3, 106:11, 107:14, 107:16, 108:3, 109:23, 110:7, 115:2, 115:3, 116:3, 116:4, 116:5, 116:15, 116:16, 117:4, 119:7, 122:17, 123:14
**No** [8] - 3:3, 3:7, 3:11, 3:16, 4:3, 4:4, 4:5, 4:12
**nobody** [1] - 20:21
**none** [5] - 44:18, 89:7, 99:20, 99:22, 99:24

**nonmovant** [7] - 51:2, 51:21, 52:11, 53:2, 54:1, 54:6, 54:7
**nonsuit** [8] - 33:7, 41:25, 42:3, 42:16, 43:3, 47:11, 61:20
**nonsuited** [3] - 33:4, 52:12, 56:16
**nonsuiting** [2] - 43:10, 43:11
**nonsuits** [1] - 42:22
**nor** [2] - 16:15, 24:5
**normally** [1] - 54:1
**not** [182] - 5:21, 7:15, 9:10, 10:22, 11:5, 11:22, 12:25, 13:5, 14:13, 14:23, 15:6, 16:21, 17:5, 17:7, 18:23, 21:17, 22:1, 22:23, 23:13, 24:20, 26:21, 26:24, 28:1, 28:15, 28:22, 29:11, 29:17, 31:10, 33:7, 34:12, 34:13, 36:3, 38:19, 39:7, 40:7, 41:10, 42:6, 42:9, 45:12, 46:3, 47:4, 48:3, 49:16, 49:18, 50:18, 50:20, 50:22, 50:23, 51:4, 52:17, 54:10, 55:15, 56:3, 56:7, 56:8, 56:18, 57:2, 57:3, 57:10, 57:16, 57:19, 58:5, 58:6, 62:17, 62:18, 62:19, 62:21, 62:22, 65:3, 66:12, 68:20, 69:5, 69:7, 69:11, 71:12, 72:2, 72:9, 72:19, 73:3, 74:21, 75:8, 75:12, 75:14, 75:15, 75:17, 76:12, 76:18, 77:1, 77:5, 78:3, 78:25, 79:9, 81:6, 81:22, 82:6, 82:7, 83:3, 84:17, 84:23, 87:15, 88:17, 88:21, 89:4, 89:9, 89:12, 90:3, 90:12, 91:11, 91:16, 92:1, 92:2, 92:6, 92:7, 92:25, 93:9, 93:10, 93:17, 95:16, 95:19, 96:8, 97:4, 97:7, 97:10, 97:22, 97:24, 98:13, 98:15, 99:9, 100:8, 102:18, 102:22, 103:13, 103:14, 103:21, 104:7, 104:8, 105:7, 105:19, 105:21, 106:3, 106:25, 107:3, 107:5, 107:8, 107:13, 107:18, 107:23, 109:21, 111:5, 111:10, 112:3, 112:12, 112:20, 114:16, 115:18, 115:19, 117:23, 118:7, 118:24, 121:12, 122:21, 123:4, 124:2, 124:13, 124:24, 126:3, 126:19, 126:25, 127:7, 127:18, 128:7
**note** [1] - 76:4
**nothing** [10] - 60:9, 64:19, 80:14, 80:21, 98:21, 100:12, 100:16, 100:23, 116:9, 127:11
**notice** [11] - 11:7, 11:8, 11:11, 16:4, 18:1, 19:5, 24:12, 27:20, 27:22, 61:7
**notified** [1] - 27:5
**notify** [1] - 27:6
**notwithstanding** [1] - 59:11
**November** [16] - 1:18, 24:11, 25:2, 25:4, 25:9, 26:2, 26:15, 26:19, 28:6, 42:5, 48:1, 48:2, 48:4, 81:10, 111:21, 129:21
**now** [47] - 10:10, 14:2, 16:1, 16:25, 26:6, 28:8, 28:25, 33:4, 34:7, 36:7, 36:20, 37:1, 37:4, 37:11, 38:25, 39:3, 39:21, 39:23, 41:12, 42:8, 42:10, 47:3, 52:12, 53:16, 55:10, 56:13, 59:21,

60:21, 64:17, 76:25, 77:6, 77:11, 77:19, 83:8, 83:25, 84:2, 86:5, 88:13, 89:5, 89:9, 91:9, 115:7, 118:11, 118:17, 119:19, 127:10, 128:8
**number** [2] - 32:13, 33:11
**Number** [7] - 41:2, 41:3, 51:17, 51:18, 98:20, 98:22, 99:14
**numbered** [1] - 1:20, 129:11
**numerous** [1] - 11:17

## O

**O** [1] - 5:1
**oath** [8] - 16:20, 17:6, 88:17, 91:2, 91:13, 91:19, 92:25, 122:21
**object** [1] - 17:3
**objection** [4] - 60:1, 109:6, 115:5, 115:6
**objections** [5] - 38:9, 81:5, 94:22, 117:6, 117:8
**obligation** [1] - 123:4
**obtain** [2] - 35:25, 61:21
**obtained** [1] - 26:2
**obtaining** [1] - 25:9
**obvious** [1] - 67:5
**obviously** [6] - 25:19, 36:20, 41:19, 72:18, 119:10, 121:8
**occurred** [1] - 129:11
**occurring** [1] - 101:20
**October** [7] - 22:17, 22:23, 23:6, 23:14, 23:16, 30:14, 69:14
**OF** [6] - 1:1, 1:7, 1:6, 4:1, 129:2, 129:2
**of** [449] - 1:18, 2:2, 5:3, 5:11, 5:14, 5:17, 7:6, 7:8, 8:3, 8:9, 8:16, 8:24, 9:20, 10:8, 10:9, 10:16, 11:8, 11:11, 11:23, 11:25, 12:9, 12:20, 12:22, 13:11, 13:16, 14:3, 15:1, 15:3, 15:7, 15:12, 15:20, 16:9, 16:16, 17:3, 17:5, 17:20, 18:3, 18:8, 18:18, 18:20, 19:5, 19:12, 20:2, 20:20, 20:22, 21:14, 21:23, 22:12, 22:17, 22:23, 22:24, 22:25, 23:3, 23:10, 23:14, 23:16, 23:23, 24:1, 24:6, 24:12, 24:16, 25:8, 25:15, 25:18, 26:2, 26:11, 27:13, 27:17, 27:20, 28:7, 28:19, 28:20, 28:21, 29:19, 29:24, 29:25, 30:2, 30:4, 30:10, 30:11, 30:14, 30:17, 30:24, 31:1, 31:7, 31:11, 31:18, 31:21, 32:3, 32:5, 32:13, 32:15, 32:18, 33:6, 33:11, 33:17, 34:20, 35:6, 35:13, 35:19, 35:22, 36:5, 36:11, 36:12, 36:18, 36:24, 37:4, 37:12, 37:19, 38:3, 38:10, 38:19, 38:23, 39:7, 39:13, 39:17, 40:10, 40:11, 40:14, 41:14, 41:24, 42:5, 42:9, 42:15, 42:24, 43:1, 43:2, 43:13, 43:20, 44:5, 44:18, 45:14, 45:18, 45:19, 46:2, 46:3, 46:10, 46:13, 46:17, 46:25, 47:4, 47:12, 47:13, 47:15, 47:19, 47:23, 48:6, 48:19, 48:25, 49:2, 49:7, 49:8, 49:10, 49:20, 50:8, 50:11, 51:2, 51:6, 51:8, 51:9, 51:23, 52:11, 52:12, 52:14, 52:21,

52:24, 53:4, 53:5, 53:7, 53:9, 53:11,
53:15, 53:16, 53:17, 53:21, 54:4, 54:9,
54:24, 55:8, 55:11, 56:12, 56:20,
56:21, 57:9, 57:11, 57:20, 57:21,
57:22, 58:10, 58:12, 58:14, 58:16,
58:23, 59:12, 59:13, 59:17, 60:3, 60:7,
60:10, 60:15, 61:7, 61:12, 62:1, 62:3,
62:4, 62:5, 62:16, 63:5, 63:9, 63:10,
63:17, 64:22, 65:1, 65:3, 65:9, 65:10,
65:20, 66:15, 66:16, 66:18, 66:24,
67:5, 67:6, 67:16, 68:18, 68:21, 68:22,
69:2, 69:3, 69:5, 69:9, 69:12, 71:8,
71:13, 71:20, 72:15, 72:22, 72:24,
73:2, 73:10, 73:16, 74:15, 75:5, 75:6,
75:7, 75:18, 75:20, 76:1, 76:6, 76:10,
77:1, 77:21, 78:1, 78:6, 79:1, 79:11,
80:5, 81:8, 81:13, 81:16, 82:5, 83:20,
85:18, 86:11, 86:17, 87:8, 87:11, 89:4,
89:8, 89:10, 89:17, 89:20, 89:21, 90:2,
91:1, 91:15, 91:20, 91:23, 92:13,
92:14, 92:15, 92:16, 92:20, 92:21,
93:7, 93:17, 94:18, 94:22, 95:8, 95:11,
95:12, 95:13, 95:14, 95:16, 95:17,
95:19, 95:25, 96:1, 96:14, 96:22,
97:18, 98:14, 98:17, 98:19, 99:5,
99:12, 99:20, 99:21, 99:22, 99:23,
99:24, 100:4, 100:7, 100:14, 100:20,
101:1, 101:3, 101:10, 102:4, 102:19,
103:4, 103:16, 104:4, 104:14, 104:17,
105:20, 105:22, 106:18, 107:7,
107:23, 108:1, 108:15, 108:16,
108:25, 109:8, 109:10, 109:16,
109:24, 110:10, 110:25, 111:15,
111:22, 111:25, 112:1, 112:2, 112:4,
112:5, 112:9, 112:17, 113:7, 113:8,
113:13, 113:16, 113:18, 113:19,
114:9, 114:10, 114:11, 114:16,
114:23, 115:1, 115:19, 115:24, 116:4,
116:5, 116:10, 116:14, 116:19, 117:9,
118:17, 119:4, 119:12, 119:21, 120:7,
120:8, 120:12, 120:13, 120:18,
120:20, 120:23, 121:2, 121:3, 121:4,
121:11, 122:7, 122:11, 122:22,
123:17, 123:22, 123:24, 124:1, 124:2,
124:4, 124:5, 124:7, 124:13, 124:14,
124:22, 125:22, 125:23, 126:7,
126:13, 126:17, 126:21, 126:25,
127:13, 129:6, 129:7, 129:8, 129:10,
129:11, 129:14, 129:18, 129:20
**off** [10] - 7:21, 10:21, 33:6, 39:11, 42:15,
46:1, 46:25, 82:15, 87:1, 108:10
**offer** [1] - 101:13
**office** [3] - 22:6, 66:22
**officer** [2] - 115:1, 122:11
**OFFICIAL** [1] - 129:20
**Official** [3] - 1:24, 129:4, 129:24
**oh** [7] - 29:7, 58:11, 68:13, 83:13, 83:15,
104:17, 107:2
**oilfield** [1] - 33:9
**Okay** [1] - 111:16

**okay** [29] - 5:12, 6:16, 7:10, 7:17, 16:6,
20:3, 21:4, 22:8, 26:9, 34:7, 38:3,
39:4, 41:4, 41:20, 61:8, 66:18, 83:7,
83:8, 83:15, 85:24, 87:4, 97:4, 108:23,
109:5, 111:22, 118:1, 123:9, 127:25
**older** [1] - 6:15
**Omar** [1] - 22:22
**omitting** [1] - 42:21
**On** [1] - 1:18
**on** [188] - 1:19, 5:2, 5:17, 7:5, 7:10, 7:15,
7:16, 8:2, 8:24, 9:13, 9:17, 11:12,
11:17, 11:23, 12:8, 12:12, 13:16,
13:20, 14:18, 14:19, 15:8, 15:19,
16:11, 18:9, 18:17, 19:1, 20:13, 20:18,
20:19, 22:9, 22:17, 23:2, 23:4, 23:6,
23:16, 24:10, 24:11, 25:2, 25:4, 25:9,
26:2, 26:3, 26:15, 26:19, 26:20, 27:18,
28:6, 28:16, 29:4, 29:15, 29:25, 30:11,
32:13, 34:6, 35:4, 35:18, 36:1, 36:11,
36:18, 37:13, 37:20, 39:11, 40:17,
41:4, 41:6, 41:12, 42:20, 42:21, 44:13,
44:14, 44:17, 47:25, 48:2, 48:5, 49:10,
50:9, 51:4, 51:8, 51:13, 51:23, 52:4,
53:4, 53:6, 53:10, 55:23, 56:10, 57:4,
57:6, 57:13, 57:25, 59:16, 62:7, 63:10,
64:25, 66:5, 67:17, 67:18, 67:22,
68:23, 69:16, 69:18, 69:23, 71:16,
72:17, 72:20, 73:2, 73:5, 74:15, 75:3,
75:7, 75:22, 76:3, 77:24, 79:14, 81:2,
81:10, 82:21, 82:22, 83:4, 83:8, 83:20,
83:25, 84:2, 84:6, 84:9, 85:8, 86:11,
86:13, 86:17, 88:12, 89:22, 90:7, 90:9,
91:14, 92:16, 92:19, 94:23, 95:25,
97:6, 97:9, 98:17, 99:4, 99:15, 99:16,
100:17, 102:18, 103:17, 105:24,
106:9, 108:18, 109:11, 109:13,
109:22, 110:13, 110:21, 111:21,
113:22, 114:1, 114:8, 114:16, 114:17,
115:12, 117:11, 118:7, 120:12,
120:21, 122:7, 123:16, 124:1, 124:4,
124:12, 125:3, 125:20, 126:6, 126:7,
126:20, 127:5, 127:6, 128:7, 128:14
**once** [4] - 52:22, 62:9, 62:11, 117:21
**one** [52] - 7:20, 9:13, 15:4, 16:2, 21:23,
24:17, 25:23, 26:13, 31:11, 38:5,
44:10, 44:11, 47:23, 47:25, 49:17,
49:21, 51:11, 51:20, 53:17, 56:3, 62:9,
63:1, 65:3, 68:18, 74:19, 78:21, 83:7,
87:2, 87:6, 92:15, 97:1, 97:20, 98:11,
99:11, 99:12, 101:1, 104:4, 104:22,
104:24, 108:1, 108:12, 108:13,
111:23, 114:16, 115:22, 118:9,
118:10, 123:2, 125:13, 126:20
**one-of-a-kind** [1] - 101:1
**ones** [4] - 99:4, 99:7, 99:16, 99:17
**only** [24] - 7:6, 7:7, 7:20, 15:11, 26:3,
54:25, 55:2, 62:18, 65:8, 75:14, 78:15,
78:21, 80:19, 81:17, 82:13, 93:9,
94:16, 99:16, 111:23, 115:9, 115:15,
118:11, 125:5, 125:7

**onto** [2] - 32:25, 112:15
**open** [4] - 91:9, 91:10, 95:4, 129:12
**openly** [2] - 91:14, 102:23
**operations** [1] - 33:9
**opportunity** [11] - 18:10, 18:12, 18:13,
20:14, 20:25, 49:5, 51:7, 97:7, 123:10,
125:19, 126:3
**opposed** [1] - 66:12
**opposing** [2] - 27:22, 93:20
**opposition** [1] - 11:16
**option** [1] - 128:7
**or** [87] - 10:22, 11:5, 13:25, 14:16, 16:8,
17:5, 17:7, 19:22, 21:12, 22:25, 23:1,
23:7, 25:14, 27:23, 30:24, 30:25, 31:4,
32:9, 33:2, 33:3, 33:7, 35:16, 35:17,
35:24, 36:3, 38:5, 38:19, 39:12, 44:13,
45:18, 50:20, 50:22, 53:10, 54:21,
56:17, 58:5, 59:15, 61:5, 61:17, 62:18,
62:19, 64:25, 72:5, 72:6, 74:9, 77:20,
79:2, 80:8, 82:8, 84:6, 84:16, 87:11,
87:20, 88:9, 90:5, 92:25, 94:23, 95:4,
98:10, 98:18, 100:19, 100:22, 101:17,
104:7, 104:8, 105:1, 105:2, 105:12,
106:5, 106:17, 107:20, 108:23,
109:14, 112:6, 116:16, 116:17,
118:11, 120:15, 121:3, 121:4, 122:13,
129:12
**order** [34] - 12:18, 14:24, 15:18, 23:19,
25:18, 28:13, 37:5, 42:3, 69:1, 69:3,
74:9, 74:11, 80:4, 84:4, 84:6, 84:16,
84:21, 110:12, 110:13, 110:15,
114:15, 114:21, 116:8, 116:12,
116:23, 117:5, 117:7, 117:8, 117:23,
118:3, 118:7, 125:1, 125:2
**ordered** [2] - 11:7, 83:3
**ordering** [1] - 17:25
**ordinarily** [1] - 57:14
**organized** [1] - 70:4
**original** [1] - 76:5
**originally** [1] - 97:1
**Osama** [3] - 67:22, 67:23, 68:1
**other** [60] - 11:20, 12:18, 13:1, 13:7,
14:19, 15:6, 15:9, 17:7, 17:21, 20:13,
21:16, 22:25, 23:11, 24:8, 27:1, 29:7,
30:19, 30:23, 33:22, 35:15, 35:18,
36:18, 36:24, 40:21, 59:10, 59:16,
59:21, 59:22, 59:24, 62:11, 63:1,
63:18, 63:20, 63:21, 64:3, 65:22,
66:10, 69:16, 69:22, 71:5, 74:16, 75:4,
79:7, 79:12, 81:16, 84:6, 84:22, 85:2,
89:6, 89:8, 92:2, 109:12, 112:10,
113:16, 114:23, 125:13, 126:12,
126:14, 129:8
**others** [1] - 52:18
**ought** [1] - 105:23
**our** [31] - 11:16, 14:15, 24:5, 24:9, 27:6,
27:11, 27:20, 29:3, 42:8, 47:12, 51:8,
52:3, 53:7, 53:18, 53:21, 54:16, 56:6,
62:3, 62:13, 79:14, 81:4, 84:5, 90:19,
91:21, 91:22, 99:3, 109:13, 109:14,

115:5, 116:11, 125:20
**ourselves** [1] - 99:3
**out** [39] - 5:11, 8:12, 10:7, 11:3, 11:25,
15:25, 19:5, 20:20, 25:18, 29:5, 39:14,
45:14, 47:13, 48:12, 49:3, 51:15, 52:5,
52:14, 52:24, 62:23, 66:11, 66:15,
69:10, 69:19, 70:19, 72:6, 84:15,
88:21, 89:6, 105:1, 106:4, 107:12,
114:10, 116:15, 118:11, 118:12,
118:25, 125:9, 126:25
**outcome** [1] - 26:25
**outrageous** [1] - 60:24
**outside** [1] - 36:5
**over** [27] - 21:14, 30:16, 32:1, 39:2,
60:23, 61:9, 66:7, 67:9, 81:4, 85:20,
87:16, 95:18, 97:11, 98:9, 101:21,
106:5, 106:8, 106:16, 106:19, 107:20,
115:5
**owed** [1] - 113:14
**own** [9] - 14:14, 21:10, 21:21, 21:22,
54:22, 63:3, 68:24, 99:3, 121:18
**Owner** [1] - 5:3
**owner** [2] - 17:22, 108:15
**OWNER** [1] - 1:4
**ownership** [1] - 32:20

**P**

**P** [3] - 3:1, 5:1
**P.M** [1] - 1:13
**p.m** [10] - 11:11, 18:17, 27:23, 28:17,
41:4, 41:7, 42:5, 48:5, 84:4, 128:15
**Page** [1] - 2:4
**page** [4] - 42:20, 44:3, 52:4, 52:24
**paid** [4] - 45:6, 79:10, 80:16, 129:19
**Pakistan** [1] - 70:13
**Paragraph** [8] - 42:25, 53:6, 53:22,
53:23, 53:25, 54:5, 65:10, 116:11
**paragraph** [12] - 42:21, 52:4, 53:23,
54:15, 64:25, 77:24, 114:5, 116:10,
116:12, 117:9, 118:13
**paragraphs** [2] - 60:7, 118:12
**paralegal** [1] - 71:2
**parallel** [1] - 75:19
**parcel** [2] - 76:6, 109:7
**parent** [1] - 108:16
**part** [22] - 15:7, 28:18, 35:15, 39:6, 42:9,
44:4, 46:3, 46:10, 46:17, 47:4, 59:10,
64:3, 76:6, 77:1, 91:20, 91:23, 108:25,
109:7, 112:3, 115:12, 116:14, 126:11
**participated** [2] - 23:9, 70:6
**participation** [1] - 61:19
**particular** [2] - 32:25, 52:17
**parties** [17] - 7:24, 8:16, 9:5, 9:8, 18:5,
22:25, 29:8, 42:6, 65:4, 77:15, 79:12,
104:14, 123:22, 123:24, 129:9, 129:16
**parties'** [1] - 53:10
**partner** [2] - 66:3, 120:16
**party** [44] - 5:21, 5:22, 6:3, 8:3, 8:5, 8:7,
8:10, 8:11, 9:7, 18:5, 18:18, 25:6,

25:7, 33:22, 34:15, 34:17, 34:18, 35:6,
35:18, 36:21, 37:2, 42:22, 42:23, 43:1,
43:3, 45:20, 51:21, 59:14, 59:15,
59:16, 65:2, 65:11, 71:5, 73:16, 74:20,
74:21, 75:18, 76:8, 89:4, 90:3, 106:7,
120:11, 123:3
**passionate** [1] - 128:11
**Passman** [1] - 3:15
**past** [4] - 25:12, 36:23, 54:20, 59:23
**pattern** [5] - 121:2, 121:13, 121:22,
121:23, 124:18
**Paul** [1] - 79:24
**pause** [1] - 22:3
**pay** [4] - 76:3, 80:16, 80:17, 105:5
**paying** [1] - 31:25
**payment** [1] - 96:3
**payments** [1] - 79:10
**Pei** [3] - 101:1, 101:16, 101:17
**penalty** [1] - 28:20
**pendens** [1] - 66:7
**pending** [6] - 22:20, 25:15, 33:16, 63:3,
63:18, 63:21
**penultimate** [1] - 15:17
**people** [19] - 39:2, 44:23, 44:24, 45:3,
66:18, 66:25, 68:6, 68:7, 70:2, 70:17,
79:25, 80:8, 108:5, 110:20, 117:21,
120:7, 121:16, 124:14
**per** [1] - 54:11
**percent** [3] - 61:12, 82:16, 122:25
**perfect** [1] - 71:14
**perform** [1] - 80:15
**performance** [1] - 79:14
**perhaps** [1] - 90:20
**period** [4] - 100:14, 101:14, 109:17,
109:22
**perjury** [1] - 28:20
**permission** [2] - 13:9, 13:15
**permitted** [1] - 117:11
**person** [2] - 112:5, 114:10
**personal** [3] - 28:8, 63:3, 114:9
**personally** [2] - 124:4, 125:21
**petition** [82] - 6:20, 7:5, 12:19, 14:15,
14:22, 18:4, 18:19, 20:24, 21:12, 25:5,
26:4, 26:16, 26:24, 27:25, 28:12,
28:15, 28:22, 28:24, 29:7, 29:10,
29:11, 29:13, 29:16, 34:22, 34:24,
34:25, 36:13, 41:11, 41:15, 41:23,
41:25, 42:22, 43:2, 44:15, 45:14, 46:1,
46:16, 46:22, 46:25, 47:24, 48:2, 48:4,
48:8, 48:14, 49:8, 49:9, 49:10, 49:14,
49:15, 49:24, 49:25, 50:1, 50:12,
53:11, 55:18, 55:23, 55:24, 56:7,
57:14, 57:21, 58:13, 62:14, 62:19,
62:22, 64:16, 64:17, 64:22, 65:4,
65:11, 71:19, 73:10, 73:14, 77:7, 98:9,
111:21, 116:11, 125:15, 125:16,
126:20
**petitions** [1] - 40:19
**Petrofina** [1] - 43:3
**Phone** [6] - 3:5, 3:9, 3:13, 3:17, 4:7,

4:14
**phone** [2] - 44:13, 44:14
**photo** [1] - 88:1
**photographs** [4] - 87:7, 87:21, 88:21,
88:22
**physician** [1] - 66:2
**picked** [2] - 51:15, 63:13
**pictures** [2] - 66:17, 101:10
**piece** [2] - 113:19, 114:11
**pieces** [1] - 32:13
**Pillsbury** [6] - 4:5, 69:11, 69:12, 121:4,
126:7, 127:17
**pit** [1] - 9:21
**Pittman** [1] - 4:5
**place** [3] - 92:16, 110:24, 120:18
**places** [1] - 89:2
**plain** [1] - 78:17
**plaintiff** [6] - 7:25, 44:4, 65:5, 98:24,
116:15
**PLAINTIFF** [1] - 3:2
**plaintiff's** [3] - 24:22, 47:24, 100:9
**plaintiffs** [2] - 5:7, 112:25
**plan** [5] - 73:25, 105:6, 105:7, 105:9,
121:24
**planned** [1] - 79:25
**planning** [1] - 97:6
**plant** [1] - 80:9
**play** [1] - 15:16
**plead** [3] - 78:10, 113:20, 113:21
**pleading** [6] - 16:16, 42:15, 52:9, 78:11,
78:17, 78:19
**pleadings** [15] - 31:15, 48:20, 52:22,
53:14, 54:18, 57:23, 58:18, 58:19,
60:7, 100:13, 109:22, 115:12, 115:16,
127:7
**please** [9] - 5:4, 18:9, 20:9, 68:11,
68:15, 68:16, 85:15, 102:23, 127:22
**pled** [7] - 53:12, 54:21, 113:23, 114:23,
124:25, 126:1, 127:6
**pledged** [1] - 108:17
**plenty** [1] - 127:13
**PLLC** [2] - 3:8, 3:12
**point** [20] - 10:7, 11:3, 16:16, 19:4, 22:2,
25:3, 29:5, 38:3, 38:23, 39:17, 41:1,
49:19, 56:13, 60:3, 86:3, 90:6, 98:3,
104:17, 106:4, 127:4
**points** [1] - 95:15
**Pope** [30] - 3:3, 3:4, 5:10, 16:15, 21:25,
22:4, 25:4, 26:3, 26:19, 26:20, 27:14,
27:24, 29:6, 37:12, 39:10, 39:16,
39:19, 41:7, 41:14, 41:23, 44:13,
46:14, 46:15, 49:4, 52:5, 83:10, 83:12,
83:13, 83:23
**POPE** [17] - 5:10, 20:1, 20:5, 48:18,
48:21, 49:6, 50:6, 50:13, 50:17, 50:22,
81:1, 93:6, 93:13, 93:21, 93:23, 97:20
**Pope's** [1] - 39:5
**popped** [1] - 10:18
**portions** [1] - 129:8
**posit** [1] - 36:17

position [3] - 42:8, 56:10, 107:12
possession [1] - 32:5
possibility [1] - 127:10
possible [5] - 41:13, 73:11, 85:1, 119:4, 127:16
possibly [1] - 85:12
post [3] - 34:21, 90:10, 123:23
posted [4] - 121:14, 121:15, 121:17, 121:20
potential [1] - 109:17
power [3] - 23:17, 105:2, 111:10
predicated [1] - 76:3
predict [1] - 75:15
pref [1] - 120:5
prefer [1] - 15:5
preferentially [1] - 76:13
prejudice [11] - 26:8, 26:25, 28:2, 28:15, 33:14, 61:14, 61:22, 61:25, 95:2, 118:22, 118:24
preparation [1] - 129:18
preponderance [5] - 52:21, 53:9, 57:22, 58:6, 58:10
present [5] - 22:24, 93:7, 93:9, 97:6, 119:11
presented [3] - 58:22, 91:22, 117:24
presiding [1] - 1:21
pretty [7] - 33:13, 36:7, 67:5, 71:18, 72:21, 84:8, 126:15
prevail [2] - 55:22, 55:23
prevent [6] - 13:22, 14:12, 73:12, 73:20, 96:12, 107:6
previous [1] - 17:7
previously [4] - 25:7, 37:19, 59:9, 114:25
prima [12] - 35:12, 52:11, 55:9, 56:3, 56:12, 56:22, 57:15, 57:16, 58:11, 58:14, 59:13
printed [2] - 18:23, 119:4
printout [1] - 6:18
prior [5] - 22:23, 23:10, 79:2, 79:6, 95:1
private [1] - 94:16
privilege [2] - 39:7, 70:25
privy [1] - 41:5
probably [5] - 49:13, 61:12, 82:11, 82:22, 90:14
problem [8] - 39:19, 63:8, 75:1, 78:11, 83:19, 91:3, 93:16, 111:16
problems [1] - 92:17
procedures [2] - 64:4, 127:9
proceed [1] - 22:8
proceeded [3] - 72:9, 88:3, 88:5
proceeding [5] - 30:1, 94:25, 98:25, 106:13, 115:20
proceedings [4] - 1:19, 23:11, 129:8, 129:14
Proceedings [4] - 1:22, 20:16, 88:25, 128:15
Proceedings.......................... [1] - 2:6
process [3] - 74:22, 119:8

produce [2] - 15:20, 35:9
product [1] - 39:7
profession [1] - 40:4
prohibited [1] - 79:5
prohibition [1] - 87:19
promissory [1] - 78:12
proper [6] - 11:7, 18:1, 62:17, 99:9, 112:20, 124:24
properly [4] - 14:6, 24:22, 124:14, 127:18
property [8] - 76:22, 76:23, 117:11, 121:14, 121:15, 121:20, 123:23, 126:1
proposed [5] - 69:1, 69:3, 84:5, 84:21, 111:8
proton [1] - 94:15
prove [12] - 16:24, 40:15, 54:10, 54:22, 55:19, 55:21, 55:24, 62:24, 68:8, 71:1, 121:5
proven [1] - 31:8
provide [6] - 19:13, 27:19, 31:15, 31:17, 35:11, 50:13
provided [2] - 27:18, 89:15
proving [1] - 58:3
provisions [3] - 59:12, 104:12, 105:7
public [3] - 44:22, 45:4, 121:19
publicly [1] - 120:23
publish [1] - 32:13
pull [6] - 16:5, 19:21, 20:7, 74:13
punt [1] - 84:11
purported [1] - 95:24
purportedly [2] - 28:13, 95:6
purports [2] - 89:7, 94:23
purpose [4] - 31:9, 31:17, 58:23, 87:11
pursuant [2] - 28:16, 29:4
pursue [1] - 17:17
pushed [1] - 17:17
put [20] - 35:24, 39:11, 40:3, 40:4, 42:1, 61:3, 62:13, 63:25, 69:16, 69:17, 76:9, 83:7, 90:7, 90:8, 91:1, 100:19, 118:21, 125:19
puts [1] - 69:6
putting [3] - 50:3, 50:9, 88:12

**Q**

Q [1] - 3:3
question [10] - 15:18, 34:24, 35:13, 42:10, 43:15, 106:22, 107:20, 109:21, 111:25, 119:15
questions [3] - 38:5, 38:7, 109:8
quick [4] - 70:12, 74:13, 79:16, 114:21
quickly [4] - 16:18, 21:15, 63:17
quote [9] - 26:22, 29:22, 29:23, 30:6, 30:7, 30:8, 30:21, 34:1, 80:22
quote/unquote [2] - 15:7, 80:10

**R**

R [2] - 3:1, 5:1
racketeering [1] - 70:4

raise [1] - 35:16
Randolph [1] - 42:23
rather [1] - 61:18
rdrinnon@mccathernlaw.com [1] - 4:15
re [1] - 54:3
read [30] - 35:4, 68:25, 69:1, 69:8, 78:5, 78:6, 96:17, 100:2, 101:25, 102:8, 102:10, 102:11, 102:12, 102:13, 102:15, 102:24, 103:12, 103:16, 103:22, 104:1, 104:3, 104:22, 104:23, 104:24, 110:19, 111:2, 123:19
ready [5] - 11:18, 38:14, 61:7, 86:13, 110:1
real [10] - 31:8, 31:18, 70:12, 74:13, 79:16, 113:19, 114:6, 114:9, 114:11, 114:21
realize [1] - 6:21
realized [2] - 21:25, 87:19
really [11] - 16:18, 44:19, 58:2, 66:11, 112:19, 121:11, 121:12, 122:23, 125:25, 126:1, 126:23
reason [6] - 24:4, 49:14, 50:4, 67:15, 69:10, 92:1, 102:24, 109:23, 119:24, 121:3
reasonable [1] - 34:10
reasons [6] - 24:8, 31:11, 59:18, 81:14, 108:1, 108:2
recall [4] - 16:14, 16:15, 30:13, 81:5
receipt [1] - 24:12
received [3] - 10:9, 25:20, 27:24
recess [4] - 86:4, 86:7, 88:17
recessed [2] - 20:16, 88:25
reconsider [2] - 26:17, 26:21
reconvened [1] - 88:25
record [30] - 5:2, 5:5, 7:21, 12:8, 14:3, 20:18, 20:19, 26:12, 29:15, 44:22, 45:4, 67:17, 87:1, 88:12, 90:15, 90:16, 90:18, 91:7, 91:8, 91:15, 92:16, 92:19, 94:24, 102:3, 102:18, 108:10, 120:21, 120:25, 124:12, 127:5
Record [3] - 129:10, 129:13, 129:18
RECORD [1] - 1:1
recorded [1] - 70:22
recovered [1] - 113:11
Reeder [2] - 119:11, 119:14
refer [2] - 48:7, 74:17
reference [4] - 26:23, 49:19, 53:22, 78:16
references [2] - 58:20, 129:15
referred [1] - 15:5
referring [5] - 12:4, 12:15, 49:25, 106:10, 106:12
refused [1] - 69:11
regard [24] - 21:11, 21:17, 22:24, 23:15, 24:3, 27:7, 34:6, 34:16, 34:23, 35:2, 36:6, 36:10, 38:9, 39:10, 39:12, 39:14, 39:15, 40:12, 59:20, 59:22, 59:25, 60:22, 127:11, 127:14
regardless [5] - 17:5, 33:7, 45:18,

46:13, 65:3
**regards** [6] - 14:19, 17:2, 17:24, 27:5, 47:22, 118:6
**registered** [1] - 69:11
**registry** [2] - 76:10, 125:23
**rejected** [1] - 115:14
**related** [4] - 53:7, 55:20, 58:16, 75:6
**relates** [1] - 53:10
**relating** [1] - 97:8
**relations** [1] - 112:21
**relationship** [3] - 99:2, 100:10, 110:4
**relevance** [3] - 17:3, 60:1, 60:3
**relevant** [3] - 53:18, 62:5, 97:5
**relief** [13] - 31:2, 31:7, 33:16, 42:11, 69:17, 72:14, 90:19, 99:5, 111:24, 112:20, 124:24, 127:7
**relitigate** [2] - 89:20, 96:8
**reliving** [1] - 97:10
**remain** [1] - 120:20
**remained** [1] - 45:20
**remarried** [1] - 66:6
**remedies** [1] - 110:23
**remedy** [3] - 27:1, 115:21, 116:16
**remember** [6] - 29:12, 33:11, 72:3, 83:9, 101:17, 122:20
**remind** [2] - 73:22, 92:20
**remote** [1] - 23:9
**removal** [2] - 42:18, 43:1
**remove** [4] - 27:25, 28:2, 41:11, 44:15
**removed** [3] - 43:3, 44:12, 48:2
**removes** [1] - 41:23
**removing** [1] - 28:14
**rep** [1] - 120:17
**repeatedly** [3] - 39:1, 80:7, 115:13
**repetitive** [1] - 121:22
**replaced** [2] - 114:13, 125:16
**replead** [1] - 114:17
**reply** [1] - 51:3
**reported** [2] - 1:22, 129:12
**REPORTER** [4] - 9:1, 9:12, 34:2, 87:15
**Reporter** [3] - 1:24, 129:4, 129:24
**REPORTER'S** [2] - 1:1, 129:1
**Reporter's** [4] - 2:9, 129:10, 129:13, 129:18
**represent** [11] - 13:20, 21:16, 29:1, 31:24, 40:20, 71:4, 71:5, 83:14, 92:24, 105:19, 110:21
**representation** [1] - 36:5
**representative** [8] - 16:9, 34:20, 37:6, 37:18, 37:19, 39:13, 60:22, 61:6
**represented** [5] - 67:24, 71:9, 91:14, 95:4, 120:17
**representing** [6] - 5:6, 13:14, 28:9, 28:10, 31:1, 122:21
**represents** [2] - 30:18, 123:17
**request** [3] - 11:16, 37:5, 51:22
**requested** [6] - 23:5, 30:4, 41:19, 42:7, 44:20, 129:8
**required** [3] - 58:22, 76:6, 76:9

**resolve** [2] - 70:11, 96:3
**respect** [3] - 80:20, 85:10, 100:6
**respected** [1] - 39:24
**respective** [1] - 129:16
**respond** [3] - 10:19, 17:18, 65:19
**response** [24] - 6:9, 10:9, 10:14, 10:24, 11:16, 18:2, 18:21, 19:14, 20:2, 21:1, 42:19, 42:20, 43:5, 43:7, 45:11, 52:3, 53:7, 53:10, 54:16, 62:8, 62:13, 86:12, 100:24
**responsibility** [1] - 52:20
**rest** [5] - 20:22, 51:23, 86:17, 99:20, 126:25
**restraining** [5] - 14:23, 28:13, 74:8, 114:15, 116:12
**result** [1] - 30:2
**resulted** [1] - 30:4
**resume** [1] - 51:24
**retained** [1] - 32:12
**retrieve** [1] - 116:16
**return** [1] - 116:16
**review** [2] - 20:14, 81:13
**reviewed** [1] - 111:5
**ridiculous** [1] - 82:24
**right** [110] - 6:11, 7:7, 11:10, 13:3, 14:2, 20:17, 21:1, 21:20, 22:11, 22:14, 24:17, 26:6, 27:3, 29:12, 29:14, 29:18, 40:8, 43:25, 45:10, 45:13, 46:16, 46:19, 46:21, 46:23, 47:5, 48:13, 53:11, 53:16, 55:18, 55:23, 55:24, 55:25, 56:7, 56:19, 57:12, 57:14, 58:13, 60:5, 62:14, 62:18, 64:11, 72:1, 72:7, 72:8, 72:11, 75:10, 75:13, 76:25, 77:6, 77:8, 77:11, 77:19, 79:3, 79:23, 79:25, 81:3, 81:7, 82:3, 82:12, 82:17, 83:8, 83:9, 83:11, 83:15, 83:25, 86:16, 87:23, 89:5, 89:9, 90:25, 91:25, 93:5, 94:24, 96:6, 98:11, 98:12, 99:9, 100:4, 100:8, 102:12, 102:20, 103:10, 104:4, 108:14, 108:17, 108:18, 108:19, 108:20, 108:22, 109:3, 111:4, 112:2, 112:6, 112:20, 112:22, 113:3, 114:14, 118:17, 118:20, 120:4, 120:9, 121:23, 123:1, 124:6, 127:10, 128:8
**rights** [3] - 57:21, 77:25, 117:12
**rip** [1] - 82:14
**risk** [4] - 40:3, 40:4
**road** [1] - 62:7
**RODNEY** [1] - 4:11
**Rodney** [7] - 4:12, 5:16, 5:17, 41:8, 41:9, 41:15, 121:5
**rolling** [1] - 111:14
**room** [5] - 5:11, 26:14, 38:7, 38:14, 60:23, 70:16
**Roth** [1] - 109:2
**rule** [4] - 41:24, 63:10, 85:16, 85:17
**Rule** [2] - 33:17, 58:21
**ruled** [2] - 116:21, 128:8
**rules** [1] - 62:12
**ruling** [7] - 79:17, 84:16, 84:17, 84:18,

114:4, 114:20, 118:7
**rumors** [1] - 66:25
**run** [1] - 106:6
**running** [1] - 31:18
**runs** [2] - 31:14, 31:16
**rush** [1] - 63:6
**rushed** [1] - 63:11
**rusty** [1] - 34:5
**Ryan** [2] - 4:4, 5:13
**ryan.steinbrunner@pillsburylaw.com** [1] - 4:9

## S

**S** [2] - 3:1, 5:1
**S.A.K.P.** [2] - 1:7, 4:1
**S.W.2d** [1] - 61:17
**S.W.3d** [3] - 52:15, 52:23, 61:17
**S.W.3rd** [1] - 42:23
**said** [69] - 12:3, 12:11, 12:14, 13:8, 13:19, 15:23, 20:22, 26:6, 26:7, 26:9, 26:17, 26:22, 27:14, 27:15, 28:25, 29:14, 34:3, 40:24, 44:14, 48:14, 56:11, 57:5, 57:10, 59:7, 59:9, 64:5, 64:6, 65:20, 67:15, 67:17, 70:7, 70:22, 71:24, 72:1, 72:8, 72:22, 73:6, 74:24, 77:8, 79:22, 80:12, 81:5, 81:12, 82:14, 82:17, 82:25, 83:3, 91:9, 91:24, 102:1, 102:2, 102:25, 103:21, 103:24, 104:9, 104:24, 105:13, 105:25, 107:2, 109:19, 110:20, 110:21, 111:2, 111:4, 111:10, 115:2, 115:3, 122:22, 123:8
**same** [17] - 15:21, 15:23, 49:1, 49:11, 58:3, 72:12, 83:16, 83:24, 84:21, 89:11, 89:17, 90:1, 97:20, 101:18, 103:10, 106:13, 109:20
**sanction** [1] - 88:22
**sanctions** [12] - 33:15, 44:7, 44:9, 54:23, 55:2, 55:3, 55:12, 61:11, 61:23, 80:3, 110:14, 118:8
**sat** [2] - 71:17, 88:3
**Savoy** [1] - 3:4
**saw** [5] - 6:10, 7:10, 23:20, 88:4, 109:11
**Say** [1] - 26:4
**say** [38] - 10:3, 24:13, 25:11, 44:18, 46:1, 46:24, 53:23, 56:1, 57:7, 57:12, 58:11, 58:25, 60:19, 65:4, 77:18, 78:13, 79:22, 86:7, 91:10, 99:1, 102:11, 102:23, 103:17, 103:23, 106:1, 108:7, 111:11, 118:24, 119:18, 121:10, 122:2, 122:5, 122:23, 123:2, 123:4, 123:6, 123:18, 125:14
**saying** [32] - 13:17, 18:16, 27:16, 27:24, 37:14, 38:21, 40:13, 40:19, 41:19, 47:19, 55:7, 56:23, 57:10, 58:13, 68:18, 75:16, 76:7, 76:16, 77:14, 84:17, 91:11, 91:16, 98:5, 100:8, 104:17, 105:23, 107:14, 122:12, 122:16, 124:4, 126:19, 127:3
**says** [30] - 12:6, 15:19, 24:24, 29:21,

**scope** [1] - 36:5, 53:17, 54:4
**scramble** [1] - 100:18
**scrambling** [2] - 97:22, 97:24
**scratched** [1] - 125:9
**seat** [2] - 6:11, 21:8
**seated** [1] - 89:1
**second** [35] - 7:2, 10:4, 12:19, 14:22, 19:24, 28:12, 28:14, 28:22, 29:6, 29:11, 29:14, 29:17, 33:5, 34:25, 35:4, 44:21, 48:7, 48:14, 49:7, 49:9, 49:15, 49:18, 49:24, 50:1, 50:12, 62:9, 75:17, 84:20, 84:23, 98:9, 98:10, 98:11, 111:21, 125:14, 125:16
**seconds** [1] - 10:11
**section** [4] - 18:18, 41:18, 67:16, 116:12
**Section** [1] - 52:3
**see** [27] - 6:8, 6:19, 6:24, 7:17, 18:15, 19:20, 20:24, 50:16, 54:4, 54:5, 55:7, 58:15, 61:3, 64:16, 69:25, 74:12, 78:3, 86:24, 89:5, 93:12, 93:18, 93:19, 102:18, 102:19, 109:13, 112:17, 113:8
**seeds** [1] - 80:9
**seek** [2] - 34:16, 82:7
**seeking** [5] - 33:14, 34:19, 35:25, 42:11, 43:13
**seeks** [1] - 54:1
**seems** [2] - 7:5, 89:20
**seen** [8] - 6:20, 10:12, 37:25, 39:22, 69:23, 94:19, 97:16, 101:10
**segue** [1] - 71:15
**seize** [1] - 30:20
**self** [1] - 54:14
**self-inflicted** [1] - 54:14
**send** [2] - 14:22, 69:23
**sends** [1] - 41:7
**sense** [1] - 126:3
**sent** [7] - 16:4, 27:20, 27:21, 46:15, 68:18, 88:4, 123:19
**separate** [4] - 17:6, 76:8, 126:12, 126:14
**separately** [1] - 58:7
**September** [3] - 109:10, 120:5, 120:18
**sequen** [1] - 34:1
**sequentas** [1] - 34:4
**Serafine** [1] - 52:23
**serve** [4] - 24:23, 37:1, 44:23, 75:4
**served** [3] - 42:7, 44:25, 74:23
**server** [2] - 74:22, 74:23
**service** [3] - 41:20, 44:24, 74:24
**services** [1] - 31:17
**serving** [1] - 36:23
**set** [18] - 14:14, 15:23, 16:2, 24:5, 28:21, 50:18, 62:20, 62:22, 62:23, 63:15, 71:22, 73:19, 74:22, 76:13, 82:21, 101:23, 106:18, 127:24
**sets** [1] - 73:15

**setting** [2] - 120:6, 127:21
**settle** [5] - 67:21, 68:1, 96:2, 96:3, 120:10
**settlement** [20] - 80:15, 90:10, 95:1, 95:24, 96:11, 98:20, 101:14, 113:15, 119:25, 120:1, 120:11, 120:14, 120:20, 120:23, 121:13, 124:17, 124:18, 124:22, 126:16
**settles** [1] - 76:12
**settling** [1] - 120:10
**several** [7] - 5:7, 15:9, 24:16, 31:19, 32:16, 42:17, 125:21
**shake** [1] - 102:17
**shaking** [1] - 123:12
**shall** [1] - 59:14
**shameless** [1] - 69:4
**shares** [2] - 108:15, 108:18
**Shaw** [1] - 4:5
**shenanigans** [1] - 16:6
**shift** [3] - 53:2, 57:14, 58:19
**shifting** [1] - 60:17
**shifts** [11] - 52:10, 53:14, 56:1, 57:18, 57:24, 58:10, 58:17, 59:1, 59:3, 60:17, 60:18
**shopping** [4] - 8:24, 9:17, 11:21, 14:13
**shorthand** [1] - 1:22
**should** [20] - 6:17, 15:2, 19:23, 48:14, 48:20, 51:3, 51:10, 51:22, 51:25, 61:12, 62:17, 63:15, 71:4, 71:5, 88:21, 92:1, 106:23, 112:12, 116:8, 125:14
**shouldn't** [5] - 25:23, 42:11, 62:2, 111:17, 121:21
**shouting** [1] - 62:2
**show** [9] - 19:13, 51:21, 54:19, 62:24, 74:16, 80:4, 110:13, 118:6, 118:7
**shown** [5] - 50:25, 51:18, 51:20, 54:19, 54:21
**side** [3] - 36:18, 79:15, 106:9
**sides** [2] - 65:24, 117:14
**sign** [5] - 74:7, 84:4, 114:20, 117:23, 119:8
**signatory** [1] - 26:3
**signed** [9] - 16:10, 26:16, 31:13, 40:13, 47:22, 47:23, 116:23, 120:11, 125:21
**signs** [1] - 42:2
**simple** [2] - 33:13, 118:9
**simply** [2] - 29:7, 51:22
**simultaneously** [1] - 59:3
**since** [6] - 20:14, 32:25, 54:24, 95:23, 96:11, 115:8
**single** [3] - 71:21, 90:17, 92:15
**singular** [2] - 78:14, 78:15
**sir** [7] - 6:11, 77:21, 102:10, 122:18, 123:6, 126:9, 128:4
**sister** [1] - 66:2
**sit** [7] - 20:9, 35:4, 37:17, 85:19, 102:11, 102:21
**sitting** [3] - 79:17, 118:17, 119:24
**situation** [4] - 75:24, 79:13, 93:14, 102:2

**situations** [1] - 51:2
**six** [3] - 37:9, 37:20, 80:8
**sixteen** [1] - 95:13
**SLAPP** [16] - 17:10, 17:14, 17:16, 43:6, 43:9, 43:11, 44:5, 45:16, 45:22, 46:6, 46:10, 47:2, 47:5, 47:6, 47:10, 47:16
**slightly** [2] - 6:14, 90:2
**slinging** [1] - 16:22
**slipped** [1] - 118:15
**slow** [1] - 9:14
**smart** [2] - 69:7
**smiled** [1] - 88:2
**so** [206] - 6:12, 6:17, 7:13, 7:25, 8:10, 9:15, 9:20, 10:7, 10:11, 10:13, 10:16, 10:22, 11:14, 12:7, 12:12, 12:18, 13:3, 13:16, 13:21, 14:5, 15:12, 15:15, 15:21, 16:16, 16:18, 17:8, 17:12, 17:22, 18:15, 18:17, 19:11, 19:12, 20:21, 20:24, 21:5, 21:9, 21:15, 23:6, 23:15, 24:2, 24:21, 25:3, 25:22, 26:1, 27:3, 27:5, 27:9, 27:10, 27:23, 28:3, 28:11, 28:23, 29:1, 29:3, 30:15, 31:3, 31:23, 31:24, 33:1, 33:8, 33:11, 33:23, 34:17, 35:2, 35:7, 35:14, 35:19, 35:20, 37:3, 38:3, 38:12, 38:25, 39:5, 39:19, 40:25, 41:14, 41:15, 41:21, 42:5, 42:8, 42:10, 43:15, 44:8, 44:16, 44:22, 46:2, 46:9, 46:13, 46:21, 47:20, 48:1, 48:3, 49:10, 49:11, 49:16, 49:17, 49:18, 49:20, 49:23, 50:8, 51:2, 51:15, 51:22, 52:19, 53:1, 53:3, 53:13, 53:17, 53:19, 53:25, 54:8, 54:13, 54:25, 55:2, 55:6, 55:10, 55:20, 56:22, 56:23, 58:24, 59:2, 60:16, 60:18, 61:1, 61:2, 61:3, 62:3, 63:18, 64:15, 65:3, 68:5, 70:11, 71:13, 71:24, 72:5, 72:10, 73:9, 73:24, 75:1, 76:4, 76:15, 77:10, 77:11, 77:17, 78:4, 78:15, 78:16, 79:3, 79:9, 80:9, 81:17, 82:21, 82:25, 83:8, 84:15, 84:24, 85:1, 86:1, 86:12, 86:13, 88:13, 88:17, 89:20, 90:18, 91:1, 92:11, 92:19, 93:14, 93:17, 95:8, 96:24, 97:2, 98:1, 98:18, 100:17, 103:17, 103:22, 106:1, 106:18, 106:21, 107:18, 107:25, 108:17, 108:24, 109:5, 109:9, 109:12, 110:6, 111:4, 111:10, 113:1, 113:16, 114:10, 115:9, 116:7, 118:11, 121:1, 122:23, 123:18, 124:14, 124:24, 126:17
**So** [1] - 96:25
**solely** [3] - 21:20, 21:22, 31:6
**some** [25] - 6:8, 16:5, 16:18, 24:4, 29:5, 36:16, 40:11, 40:21, 50:13, 54:9, 61:6, 65:19, 72:22, 74:16, 81:25, 90:10, 93:7, 98:17, 106:4, 107:2, 109:7, 112:5, 113:8, 119:23, 123:24
**somebody** [5] - 44:22, 88:4, 104:19, 106:8, 107:11
**someone** [3] - 19:13, 45:6
**something** [29] - 5:24, 9:3, 10:12, 15:2,

17:23, 37:14, 47:4, 64:9, 64:10, 64:11, 68:24, 76:24, 79:4, 80:11, 86:21, 92:5, 93:15, 108:7, 111:8, 111:12, 111:19, 112:10, 114:3, 119:10, 119:18, 122:3, 122:6, 123:3, 127:23

**sometimes** [1] - 94:8

**soon** [2] - 41:13, 80:23

**sorry** [20] - 10:5, 14:1, 14:8, 19:10, 24:19, 27:23, 34:4, 48:16, 61:8, 62:1, 71:15, 77:13, 84:12, 106:12, 117:17, 117:18, 122:4, 123:11, 123:12, 128:11

**sort** [2] - 11:25, 12:9

**sought** [1] - 44:19

**sounds** [1] - 50:7

**South** [1] - 4:13

**spare** [1] - 103:17

**speak** [12] - 9:14, 18:7, 18:10, 18:11, 41:10, 49:5, 62:10, 63:14, 84:7, 87:16, 94:9, 119:16

**SPEAKER** [2] - 87:25, 88:8

**speaking** [3] - 18:14, 61:8, 123:18

**special** [1] - 31:9

**specific** [8] - 35:11, 35:12, 57:4, 59:13, 59:18, 65:11, 76:7, 87:19

**specifically** [4] - 15:19, 15:22, 34:8, 62:23

**specify** [1] - 24:14

**specious** [1] - 82:23

**spectacle** [1] - 38:10

**SPEX** [1] - 54:3

**spoke** [5] - 41:14, 44:13, 92:10, 120:8, 123:24

**sponsored** [5] - 31:19, 66:4, 68:7, 68:8, 68:9

**square** [1] - 102:6

**staff** [1] - 94:8

**stamp** [1] - 19:1

**stand** [4] - 26:23, 69:17, 69:18, 89:22

**standalone** [2] - 98:13, 98:15

**standard** [2] - 35:8, 35:10, 52:21

**standards** [1] - 50:24

**standing** [1] - 102:19

**stands** [1] - 69:15

**standstill** [1] - 12:9

**start** [4] - 21:5, 21:7, 38:12, 40:2

**started** [3] - 72:11, 94:25, 105:15

**starting** [1] - 42:21

**starts** [1] - 42:21

**State** [9] - 3:3, 3:7, 3:11, 3:16, 4:3, 4:4, 4:5, 4:12, 129:5

**state** [7] - 24:11, 24:13, 24:14, 101:23, 104:25, 113:11

**STATE** [1] - 129:2

**stated** [3] - 46:7, 109:9, 123:21

**statement** [1] - 73:18

**States** [2] - 23:4, 108:25

**states** [1] - 44:4

**status** [9] - 23:10, 30:3, 72:17, 80:6, 81:10, 104:1, 104:23, 105:10, 124:9

**statute** [6] - 25:19, 33:25, 34:7, 54:12, 55:14

**stay** [7] - 23:19, 54:20, 81:8, 82:4, 82:7, 90:21, 116:1

**stayed** [2] - 54:11, 62:12

**stays** [2] - 53:3, 53:4

**Steinbrunner** [2] - 4:4, 5:14

**STEINBRUNNER** [1] - 119:9

**stepped** [1] - 5:11

**stick** [1] - 17:8

**still** [16] - 7:22, 11:12, 22:4, 30:17, 42:9, 45:10, 45:11, 46:10, 46:17, 47:2, 55:17, 55:19, 55:21, 57:25, 76:20, 111:18

**stood** [2] - 84:12, 84:24

**stop** [8] - 40:5, 67:18, 70:9, 72:3, 83:2, 83:17, 87:17, 101:19

**stopped** [3] - 84:13, 108:2, 114:8

**stories** [1] - 101:2

**straying** [1] - 71:13

**Street** [3] - 3:8, 3:12, 3:16

**string** [1] - 84:14

**strongly** [1] - 42:8

**stuff** [2] - 102:11, 103:16

**style** [1] - 74:15

**styled** [1] - 129:11

**subject** [1] - 33:25

**submitted** [1] - 37:4

**subpoena** [1] - 69:12

**subpoenaed** [1] - 68:21

**subpoenas** [1] - 36:23

**subsection** [1] - 59:12

**successful** [1] - 25:19

**such** [2] - 31:9, 83:19

**sue** [7] - 15:14, 25:23, 38:24, 44:21, 61:25, 63:23

**sued** [16] - 16:11, 16:13, 25:12, 25:16, 27:7, 27:8, 39:2, 39:23, 45:3, 45:6, 63:21, 64:1, 66:1, 66:2, 66:19, 67:7

**suggesting** [1] - 124:3

**suing** [4] - 38:25, 39:1, 40:2, 67:8

**suit** [7] - 24:24, 25:17, 39:24, 43:13, 77:1, 107:6

**suitcase** [1] - 80:23

**Suite** [5] - 3:4, 3:12, 3:16, 4:6, 4:13

**summary** [5] - 33:19, 33:20, 52:8, 58:20, 58:25

**Sunday** [1] - 80:9

**superseded** [1] - 34:23

**support** [4] - 52:18, 60:24, 99:18, 127:7

**supporting** [2] - 36:15, 115:9

**suppose** [1] - 31:4

**supposed** [1] - 73:5

**Supreme** [3] - 42:2, 43:1, 98:15

**sure** [21] - 6:2, 8:16, 8:23, 9:4, 9:7, 19:6, 29:15, 35:10, 41:1, 56:18, 57:8, 84:9, 91:11, 92:9, 92:12, 92:18, 97:17, 109:5, 122:9, 124:10

**survive** [5] - 33:23, 33:24, 47:11, 58:11, 61:20

**survives** [4] - 17:16, 43:9, 47:6, 55:1

**swear** [2] - 47:24, 121:9

**swearing** [1] - 28:24

**sweeping** [1] - 36:9

**swore** [2] - 48:1, 48:4

**sworn** [2] - 69:18, 86:2

**system** [2] - 19:17, 80:3

---

## T

**tactic** [1] - 87:11

**tactical** [2] - 84:14, 84:25

**tactics** [1] - 84:19

**take** [19] - 7:1, 7:2, 9:12, 10:16, 20:12, 32:1, 32:5, 33:5, 39:5, 64:12, 66:13, 85:24, 86:4, 86:6, 87:21, 87:24, 92:1, 118:11, 127:9

**taken** [2] - 65:21, 88:22

**takeover** [1] - 31:21

**taking** [9] - 15:8, 42:15, 45:14, 66:12, 66:17, 84:20, 87:7, 87:20, 88:1

**talk** [9] - 10:21, 20:23, 55:11, 76:25, 84:8, 88:11, 90:10, 99:13, 99:17, 101:4, 104:19, 111:20

**talked** [7] - 15:10, 41:9, 81:18, 89:22, 103:11, 104:16, 114:16

**talking** [23] - 6:21, 10:3, 11:24, 23:7, 24:15, 47:14, 47:16, 49:17, 50:23, 55:15, 55:16, 57:2, 57:4, 57:7, 57:11, 67:25, 84:1, 103:12, 117:21, 126:10, 126:17

**talks** [7] - 58:17, 58:21, 66:9, 67:20, 69:14, 113:7, 114:5

**tall** [1] - 101:2

**Tang** [22] - 13:13, 14:2, 15:6, 22:22, 25:7, 29:22, 30:9, 30:20, 33:5, 40:18, 41:4, 41:23, 70:8, 71:8, 71:12, 74:24, 81:15, 83:10, 83:13, 83:20, 83:23

**tape** [1] - 26:12

**tattle** [1] - 15:8

**tattletaling** [1] - 14:18

**tax** [1] - 125:22

**taxes** [1] - 80:17

**TCPA** [40] - 16:8, 21:10, 25:20, 26:5, 26:25, 27:2, 27:11, 27:18, 27:21, 28:5, 31:3, 33:2, 33:13, 33:24, 40:5, 41:21, 44:17, 50:17, 51:3, 51:4, 51:7, 51:23, 52:7, 53:3, 53:8, 54:2, 54:11, 54:20, 55:8, 57:19, 57:20, 58:8, 58:23, 61:20, 63:6, 63:9, 68:25, 69:3, 86:11

**team** [1] - 49:2

**technical** [1] - 49:18

**tee** [1] - 82:20

**telephone** [1] - 16:14

**television** [1] - 87:20

**tell** [8] - 13:17, 34:12, 39:18, 85:12, 88:13, 92:24, 94:4, 94:4, 106:20

**telling** [15] - 11:22, 37:21, 48:3, 57:16, 64:21, 65:14, 67:2, 67:11, 77:6, 78:4,

78:16, 96:17, 121:19, 126:8, 128:6
**tells** [3] - 41:14, 45:13, 69:15
**temporary** [23] - 14:23, 28:13, 29:24, 72:7, 74:6, 74:8, 74:10, 75:21, 76:5, 86:23, 89:23, 89:24, 98:4, 110:22, 111:5, 113:21, 114:15, 116:12, 116:13, 118:4, 118:18, 119:5
**ten** [2] - 10:11, 89:21
**tend** [1] - 94:13
**tends** [2] - 16:19, 25:11
**term** [1] - 49:8
**terminated** [1] - 24:21
**terrible** [3] - 30:25, 36:22, 107:3
**testified** [3] - 37:19, 95:4, 104:6
**testify** [1] - 87:9
**testifying** [1] - 121:7
**testimony** [11] - 16:19, 17:6, 17:7, 55:4, 89:21, 90:7, 90:8, 91:13, 93:10, 96:4, 115:1
**TEXAS** [2] - 1:6, 129:2
**Texas** [25] - 1:21, 1:25, 3:5, 3:9, 3:17, 4:7, 4:14, 42:1, 42:4, 43:1, 43:18, 43:22, 43:23, 47:7, 47:8, 47:9, 47:13, 52:14, 52:24, 58:21, 61:19, 98:15, 129:6, 129:23, 129:25
**Texascountry@protonmail.com** [2] - 93:25, 95:5
**than** [14] - 6:14, 20:20, 23:7, 23:8, 24:8, 26:13, 27:8, 27:17, 63:5, 76:8, 101:6, 112:10, 113:16
**thank** [10] - 21:2, 49:6, 86:24, 86:25, 88:19, 119:20, 119:21, 127:15, 127:19, 128:5
**Thank** [1] - 86:9
**Thanksgiving** [5] - 11:4, 11:7, 40:17, 42:9, 106:3
**that** [641] - 6:4, 6:8, 6:23, 7:7, 7:13, 7:22, 8:1, 8:2, 8:8, 8:11, 9:5, 9:9, 9:10, 9:17, 10:7, 10:8, 10:12, 10:16, 10:22, 11:3, 11:8, 11:11, 11:17, 11:19, 11:21, 11:22, 11:24, 12:12, 13:1, 13:4, 13:8, 13:10, 13:16, 14:7, 15:2, 15:7, 15:8, 15:15, 15:18, 15:19, 15:25, 16:2, 16:5, 16:12, 16:13, 16:14, 16:15, 16:17, 16:18, 16:22, 16:24, 16:25, 17:9, 17:13, 17:17, 17:18, 17:25, 18:1, 18:2, 18:3, 18:19, 18:21, 19:4, 20:4, 20:11, 20:12, 20:21, 20:22, 21:1, 21:11, 21:12, 21:16, 21:19, 22:20, 22:21, 23:11, 23:15, 23:19, 23:23, 24:8, 24:20, 25:3, 25:10, 25:12, 25:22, 25:23, 26:16, 26:21, 26:22, 27:1, 27:20, 28:1, 28:3, 28:5, 29:3, 29:5, 29:17, 29:21, 29:23, 30:6, 30:7, 30:15, 30:18, 30:25, 31:10, 31:20, 31:23, 31:24, 32:2, 32:25, 33:3, 33:6, 33:7, 33:9, 33:10, 33:13, 33:21, 33:22, 33:24, 33:25, 34:7, 34:8, 34:9, 34:18, 35:7, 35:8, 35:10, 35:12, 35:14, 35:15, 35:16, 35:19, 35:20, 35:22, 35:23,

36:1, 36:4, 36:12, 36:13, 36:14, 36:18, 36:20, 36:25, 37:3, 37:16, 37:24, 37:25, 38:4, 38:7, 38:21, 38:23, 39:2, 39:6, 39:10, 39:11, 39:14, 39:19, 39:20, 39:24, 40:5, 40:13, 40:14, 40:16, 40:18, 40:20, 40:25, 41:1, 42:4, 42:11, 42:13, 42:14, 42:15, 42:25, 43:9, 43:14, 43:19, 44:10, 44:11, 44:15, 44:16, 44:18, 44:22, 45:4, 45:5, 45:11, 45:15, 45:16, 46:1, 46:2, 46:14, 46:15, 46:16, 46:22, 46:24, 46:25, 47:3, 47:6, 47:9, 47:17, 47:18, 47:19, 47:22, 47:24, 48:14, 48:17, 49:8, 49:9, 49:10, 49:16, 49:23, 49:25, 50:10, 50:24, 51:1, 51:14, 51:15, 51:16, 51:21, 52:1, 52:9, 52:15, 52:16, 52:17, 52:22, 53:1, 53:9, 53:14, 53:17, 53:19, 53:23, 54:1, 54:6, 54:7, 54:8, 54:9, 54:10, 54:14, 54:18, 54:23, 55:5, 55:7, 55:8, 55:10, 55:18, 55:19, 55:20, 55:21, 55:24, 56:1, 56:2, 56:6, 56:9, 56:11, 56:23, 57:10, 57:12, 57:17, 57:20, 57:23, 57:24, 57:25, 58:2, 58:8, 58:9, 58:11, 58:13, 58:16, 58:21, 59:2, 59:7, 59:8, 60:3, 60:5, 60:6, 60:16, 60:20, 60:25, 61:6, 61:7, 61:9, 61:15, 61:24, 62:6, 62:11, 62:13, 62:24, 63:2, 63:9, 63:16, 63:18, 63:22, 64:15, 64:21, 64:22, 64:23, 65:8, 65:13, 65:20, 66:5, 66:10, 66:16, 66:25, 67:8, 67:17, 67:21, 67:22, 68:3, 68:18, 68:20, 68:25, 69:2, 69:3, 69:4, 69:5, 69:9, 69:10, 69:24, 69:25, 70:5, 70:16, 72:7, 72:15, 72:18, 72:24, 73:1, 73:18, 73:22, 73:24, 73:25, 74:17, 74:19, 74:23, 74:24, 75:3, 75:4, 75:9, 75:19, 76:5, 76:6, 76:16, 77:1, 77:8, 77:10, 77:15, 77:17, 78:9, 78:11, 78:15, 78:19, 78:20, 78:21, 79:4, 79:5, 79:7, 79:23, 80:1, 80:2, 80:3, 80:6, 80:10, 80:19, 80:20, 81:3, 81:8, 81:15, 81:17, 81:19, 82:2, 82:3, 82:5, 82:14, 83:1, 83:2, 83:5, 83:22, 84:2, 84:5, 84:7, 84:9, 84:14, 84:20, 84:22, 84:23, 84:24, 85:2, 85:3, 85:6, 85:12, 85:13, 85:17, 85:19, 86:5, 86:11, 86:21, 87:23, 88:23, 89:5, 89:7, 89:12, 89:15, 89:18, 89:20, 90:10, 90:19, 90:22, 91:10, 91:11, 91:13, 91:16, 91:21, 91:22, 92:5, 92:7, 92:15, 92:17, 92:18, 92:20, 93:3, 93:8, 93:14, 93:16, 94:1, 94:3, 94:11, 94:16, 94:17, 95:4, 95:14, 95:15, 95:18, 96:5, 96:11, 96:21, 97:1, 97:4, 97:5, 97:7, 97:10, 98:4, 98:5, 98:14, 98:16, 98:19, 99:5, 99:7, 99:14, 99:17, 99:18, 100:4, 100:5, 100:17, 101:13, 101:15, 101:23, 102:3, 102:8, 102:15, 103:7, 103:17, 103:21, 104:23, 104:24, 105:7, 105:13, 105:16, 105:18, 105:22, 106:4, 106:7, 107:20, 107:21, 107:23, 108:1,

108:24, 109:3, 109:5, 109:10, 109:17, 109:25, 110:4, 110:5, 110:7, 110:12, 110:20, 110:24, 111:2, 111:18, 111:19, 112:1, 112:4, 112:5, 112:9, 112:13, 112:15, 112:17, 113:3, 113:9, 113:16, 113:19, 114:14, 114:21, 114:23, 114:25, 115:3, 115:4, 115:6, 115:9, 115:12, 115:16, 115:17, 115:18, 115:21, 116:1, 116:2, 116:7, 116:9, 116:18, 116:19, 116:20, 117:8, 117:24, 118:3, 118:13, 119:9, 119:10, 119:25, 120:2, 120:3, 120:8, 120:9, 120:11, 120:13, 120:18, 120:19, 120:22, 121:1, 121:6, 121:10, 121:11, 121:12, 121:18, 121:19, 121:21, 121:22, 121:24, 121:25, 122:2, 122:5, 122:9, 122:10, 122:11, 122:12, 122:13, 123:1, 123:2, 123:3, 123:5, 123:6, 123:10, 123:18, 123:19, 123:20, 123:21, 123:22, 123:25, 124:7, 124:11, 124:14, 124:15, 124:21, 125:3, 125:22, 125:25, 126:4, 126:9, 126:10, 126:12, 126:14, 126:17, 126:18, 126:19, 126:20, 127:5, 127:8, 127:11, 127:13, 127:18, 128:10, 129:6, 129:13, 129:17
**That** [1] - 19:1
**that's** [60] - 7:9, 7:10, 11:19, 12:24, 13:1, 13:21, 14:12, 14:23, 16:6, 19:9, 34:15, 34:18, 37:10, 39:9, 40:5, 40:15, 41:2, 43:13, 47:7, 48:3, 50:10, 51:3, 51:4, 52:21, 52:23, 56:6, 57:25, 59:8, 61:2, 61:3, 62:21, 71:14, 71:22, 71:25, 81:20, 82:3, 84:5, 84:11, 84:12, 91:11, 97:20, 98:20, 98:24, 102:1, 102:2, 104:15, 104:22, 105:2, 105:15, 106:22, 108:24, 110:2, 111:14, 113:12, 116:8, 118:18, 123:9, 124:11
**THE** [258] - 1:4, 3:2, 4:1, 4:11, 5:2, 5:12, 5:20, 5:24, 6:1, 6:4, 6:7, 6:16, 6:19, 6:22, 6:23, 6:25, 7:2, 7:10, 7:13, 7:17, 7:19, 7:22, 8:7, 8:15, 8:21, 9:1, 9:12, 9:13, 9:23, 10:2, 10:13, 10:17, 10:21, 11:1, 12:3, 12:14, 12:21, 12:24, 13:3, 13:8, 13:25, 16:21, 17:5, 17:19, 18:9, 18:20, 18:25, 19:4, 19:8, 19:11, 19:19, 19:24, 20:3, 20:7, 20:17, 21:4, 21:7, 21:20, 21:25, 22:4, 22:8, 22:11, 22:14, 24:13, 24:20, 29:10, 29:14, 29:18, 34:2, 37:13, 38:2, 38:16, 39:4, 40:8, 42:14, 42:19, 43:5, 43:8, 43:18, 43:21, 43:25, 44:21, 45:5, 45:10, 45:17, 45:22, 45:25, 46:5, 46:9, 46:13, 46:19, 46:21, 46:24, 47:5, 47:14, 48:6, 48:13, 48:25, 50:2, 50:7, 50:15, 50:20, 52:16, 55:6, 55:15, 55:25, 56:8, 56:17, 56:21, 57:2, 58:2, 59:6, 63:8, 64:9, 64:15, 64:21, 65:2, 65:8, 65:14, 65:18, 71:11, 71:16, 74:5, 74:10, 74:14, 75:5, 75:11, 75:13, 76:1, 76:15, 76:25, 77:5, 77:10, 77:14, 78:2, 78:10, 78:21, 79:18, 85:8,

85:22, 86:3, 86:15, 86:19, 86:25, 87:3,
87:15, 87:17, 87:21, 87:24, 88:7,
88:11, 88:16, 88:20, 89:1, 90:12,
90:16, 90:25, 91:8, 91:18, 91:24, 92:4,
92:11, 92:13, 92:23, 93:2, 93:5, 93:11,
93:16, 93:22, 93:24, 94:5, 94:9, 94:19,
95:8, 95:21, 96:6, 96:16, 96:24, 97:2,
97:4, 97:13, 97:17, 98:12, 99:4, 99:7,
100:1, 100:24, 101:3, 101:9, 101:25,
102:8, 102:10, 102:15, 102:22, 103:3,
103:6, 103:10, 103:15, 103:20, 104:3,
104:19, 105:17, 105:19, 105:25,
107:5, 107:10, 107:14, 107:18,
107:25, 108:6, 108:13, 109:2, 111:16,
111:18, 112:8, 112:17, 112:24, 113:3,
113:6, 113:20, 114:2, 114:14, 116:18,
117:1, 117:13, 117:17, 117:20,
117:25, 118:2, 118:16, 118:23, 119:6,
119:7, 119:14, 119:17, 122:2, 122:5,
122:9, 122:17, 122:20, 123:1, 123:9,
123:14, 124:6, 124:21, 125:4, 125:6,
125:13, 126:9, 126:25, 127:3, 127:18,
127:23, 128:1, 128:3, 128:6, 128:13,
129:2

**their** [33] - 12:1, 12:18, 13:20, 21:1,
25:24, 25:25, 35:8, 36:2, 41:16, 52:12,
61:4, 81:19, 82:2, 82:19, 85:15, 98:6,
98:9, 99:2, 100:7, 100:13, 102:5,
102:6, 102:14, 109:25, 110:1, 110:3,
110:13, 114:8, 114:10, 115:21, 117:4,
117:6

**them** [47] - 14:4, 14:10, 14:22, 15:8,
17:11, 18:5, 20:14, 24:16, 34:12,
34:13, 40:11, 40:25, 41:14, 42:15,
48:2, 60:18, 65:2, 65:10, 66:19, 72:4,
77:18, 77:24, 79:13, 80:7, 80:15,
80:25, 81:4, 81:13, 82:20, 83:3, 89:8,
93:6, 99:12, 99:20, 100:4, 104:4,
104:14, 105:22, 106:4, 106:20, 115:6,
117:9, 117:10, 121:16, 125:23, 126:4,
126:8

**themselves** [1] - 83:1

**then** [65] - 8:1, 10:9, 14:7, 18:1, 20:18,
21:4, 21:6, 21:23, 22:21, 23:13, 24:10,
25:6, 25:16, 27:20, 29:3, 35:3, 37:8,
37:9, 39:19, 41:21, 41:22, 42:25,
45:25, 46:17, 50:2, 52:10, 52:23, 53:2,
54:3, 57:21, 58:4, 58:7, 58:8, 58:9,
58:10, 59:1, 60:5, 60:9, 73:6, 74:3,
79:6, 82:11, 87:14, 87:19, 88:2, 88:3,
91:18, 91:24, 93:11, 94:5, 95:17,
96:19, 104:23, 107:4, 107:5, 107:18,
112:4, 112:20, 113:3, 115:7, 120:10,
123:24, 127:10

**there** [160] - 6:8, 7:11, 9:16, 10:4, 10:11,
10:12, 12:21, 15:2, 16:25, 18:2, 24:15,
25:12, 25:15, 27:5, 29:5, 29:17, 29:19,
35:20, 35:24, 38:5, 38:7, 38:8, 39:6,
39:18, 41:17, 42:1, 42:13, 42:21, 43:1,
43:15, 43:16, 47:19, 48:9, 48:10,

48:11, 49:12, 50:24, 51:11, 51:18,
51:19, 52:18, 53:17, 53:19, 54:18,
54:20, 55:9, 56:3, 56:19, 56:21, 57:16,
59:22, 64:9, 65:24, 65:25, 66:9, 66:15,
66:24, 67:6, 67:15, 67:18, 67:19, 69:9,
69:10, 71:24, 72:14, 73:10, 75:6,
75:19, 79:2, 79:6, 79:7, 79:11, 79:14,
80:14, 80:24, 81:16, 81:25, 82:8,
82:10, 82:16, 83:9, 83:10, 85:11,
87:19, 88:21, 89:6, 90:16, 91:12,
91:25, 92:4, 94:4, 95:17, 96:4, 98:5,
98:8, 99:15, 100:5, 100:6, 100:12,
100:15, 100:16, 101:21, 103:1, 104:8,
104:12, 104:13, 106:4, 106:15,
106:16, 107:12, 107:20, 108:21,
109:5, 109:12, 109:21, 109:23, 110:5,
110:7, 110:14, 111:11, 112:23, 113:2,
113:5, 113:8, 113:18, 114:22, 116:3,
116:4, 116:5, 116:8, 116:14, 118:9,
118:15, 118:22, 119:12, 119:17,
121:2, 121:11, 121:25, 123:15, 124:5,
124:17, 124:18, 125:17, 127:6, 127:10

**there's** [5] - 8:24, 36:24, 41:24, 63:15,
66:16

**therefore** [1] - 105:14

**these** [37] - 13:2, 23:23, 28:7, 30:24,
31:15, 34:16, 35:21, 36:11, 38:4,
48:19, 48:25, 51:1, 60:16, 63:10,
65:22, 65:23, 66:10, 69:16, 70:17,
76:10, 79:7, 79:24, 80:14, 80:22,
82:18, 82:23, 84:19, 86:24, 90:12,
99:18, 104:10, 110:2, 110:9, 114:23,
123:24, 124:7

**They** [1] - 103:15

**they** [199] - 8:7, 8:11, 9:18, 9:21, 10:13,
13:13, 13:14, 13:15, 15:13, 15:14,
15:15, 15:16, 15:20, 15:21, 16:2, 16:5,
16:6, 16:11, 16:12, 18:15, 18:18,
25:22, 25:24, 28:25, 29:20, 30:18,
33:4, 33:5, 33:12, 33:25, 34:22, 35:7,
35:8, 35:11, 35:14, 35:16, 35:25, 36:2,
36:3, 36:13, 37:6, 37:8, 38:10, 38:24,
39:24, 39:25, 40:19, 41:5, 41:17,
41:18, 42:5, 42:7, 42:10, 44:12, 44:19,
45:18, 45:20, 46:13, 48:11, 49:14,
52:9, 59:10, 59:12, 60:5, 60:19, 60:24,
61:1, 61:2, 61:6, 61:10, 61:13, 61:24,
61:25, 62:6, 62:23, 63:15, 63:20,
63:22, 65:3, 66:6, 68:5, 68:6, 70:17,
70:18, 72:2, 72:4, 72:8, 72:12, 72:13,
74:3, 74:17, 75:17, 77:23, 79:22, 80:1,
80:2, 80:7, 80:8, 80:9, 80:16, 80:17,
80:19, 80:20, 80:21, 81:6, 81:7, 81:17,
81:21, 82:3, 82:4, 82:5, 82:10, 82:11,
82:19, 82:25, 83:1, 83:5, 83:19, 84:11,
84:20, 85:15, 85:18, 89:8, 90:20, 95:3,
98:4, 98:19, 99:10, 100:18, 100:19,
100:20, 100:21, 100:22, 100:23,
101:13, 101:16, 102:4, 102:5, 102:6,
102:9, 103:11, 103:15, 104:5, 104:6,

104:9, 105:13, 105:14, 106:8, 106:21,
107:1, 107:5, 107:8, 107:11, 108:17,
108:25, 109:25, 110:9, 110:21, 111:9,
112:9, 112:13, 112:15, 114:23,
114:25, 115:7, 115:17, 115:22,
115:23, 115:25, 116:1, 116:6, 116:7,
117:10, 117:12, 117:24, 123:25,
124:17, 124:19, 125:6

**they're** [15] - 8:5, 8:10, 10:10, 15:8,
30:23, 33:2, 42:9, 49:1, 69:7, 97:21,
98:5, 101:18, 107:10, 107:13, 109:3

**thing** [29] - 10:8, 10:22, 11:2, 13:1,
15:23, 16:24, 37:25, 40:12, 63:1, 70:7,
72:12, 74:19, 80:19, 81:17, 82:14,
83:7, 83:16, 83:24, 89:11, 95:12,
107:3, 109:20, 115:9, 115:15, 115:19,
118:10, 118:11, 123:2, 123:3

**things** [40] - 6:8, 10:10, 18:3, 20:13,
23:24, 40:10, 40:21, 45:11, 49:7, 50:3,
50:4, 60:15, 63:10, 65:20, 65:23,
70:11, 74:17, 76:10, 78:2, 78:4, 79:7,
79:19, 81:17, 86:16, 86:24, 89:20,
90:10, 90:12, 102:15, 104:3, 114:16,
114:18, 119:23, 121:12, 122:13,
124:11, 126:3, 126:17, 126:18

**think** [53] - 9:16, 9:21, 11:14, 13:15,
13:23, 18:14, 22:5, 22:21, 25:22, 33:2,
35:21, 39:6, 40:2, 40:10, 40:25, 43:8,
43:20, 43:23, 44:14, 45:13, 48:17,
59:9, 61:1, 61:12, 62:4, 65:23, 72:18,
72:21, 73:15, 76:19, 81:11, 81:14,
81:23, 84:18, 87:10, 88:9, 97:5, 98:2,
103:25, 104:20, 106:3, 106:8, 106:14,
106:20, 108:6, 110:14, 115:4, 115:17,
117:11, 122:13, 127:4

**thinks** [2] - 48:10, 69:7

**third** [4] - 9:7, 105:10, 123:22, 123:24

**third-party** [1] - 9:7

**this** [261] - 6:9, 6:12, 6:20, 6:25, 7:4, 8:2,
8:13, 8:22, 9:5, 10:18, 10:23, 11:8,
11:9, 11:13, 11:14, 11:15, 12:8, 12:11,
12:13, 12:14, 12:15, 12:18, 13:13,
13:19, 14:6, 14:21, 15:18, 16:7, 17:4,
17:22, 20:8, 21:18, 22:9, 22:25, 24:17,
25:5, 25:11, 27:13, 27:25, 28:17, 30:2,
30:14, 32:25, 35:6, 36:19, 36:21,
39:17, 39:21, 39:23, 39:25, 40:18,
41:8, 41:11, 41:17, 42:10, 43:7, 43:20,
44:17, 45:13, 46:1, 47:22, 48:3, 48:5,
49:13, 49:18, 49:24, 51:7, 51:23, 52:4,
52:18, 53:6, 53:25, 54:2, 54:13, 54:14,
54:17, 56:9, 57:1, 58:4, 58:25, 59:10,
59:19, 60:4, 61:9, 62:1, 62:3, 63:4,
63:5, 63:6, 63:18, 63:24, 63:25, 64:20,
66:14, 66:20, 67:7, 67:18, 67:21,
69:19, 69:20, 71:15, 71:17, 71:22,
72:10, 72:11, 72:15, 72:17, 72:18,
72:19, 72:20, 73:9, 73:19, 73:20,
74:15, 74:20, 75:2, 75:11, 75:14,
75:16, 75:22, 76:2, 76:8, 76:16, 76:17,

76:18, 76:23, 77:1, 78:25, 79:3, 79:8, 79:21, 79:25, 80:1, 80:2, 80:5, 80:12, 80:20, 80:24, 81:4, 81:18, 82:5, 82:10, 82:12, 83:11, 83:21, 83:22, 84:11, 84:14, 84:25, 85:1, 86:1, 86:3, 86:11, 87:3, 87:8, 87:9, 89:5, 89:10, 89:18, 89:25, 90:6, 90:7, 90:17, 91:12, 91:14, 91:15, 92:14, 92:18, 92:20, 92:24, 93:3, 94:19, 94:23, 95:1, 95:3, 95:5, 95:9, 95:11, 95:21, 95:22, 96:6, 97:5, 97:16, 98:3, 99:12, 100:20, 100:25, 101:4, 101:5, 101:6, 101:19, 101:20, 102:11, 104:25, 106:2, 106:9, 106:22, 107:2, 108:11, 108:19, 108:22, 109:7, 109:9, 109:22, 109:24, 110:11, 111:2, 111:10, 111:12, 112:13, 112:15, 113:22, 115:1, 115:2, 115:10, 115:11, 115:13, 115:15, 115:22, 116:2, 116:8, 117:1, 117:18, 118:4, 118:8, 119:11, 119:12, 120:18, 121:2, 122:11, 122:22, 124:7, 124:15, 124:19, 125:1, 125:14, 125:24, 126:11, 126:14, 126:23, 127:1, 127:3, 127:6, 128:13, 129:10, 129:13, 129:18, 129:20

**thorough** [1] - 89:24

**those** [26] - 10:19, 14:5, 23:16, 24:3, 34:6, 35:3, 36:8, 36:10, 36:13, 36:15, 39:14, 39:15, 54:15, 59:25, 60:22, 80:6, 81:12, 82:21, 90:15, 92:15, 93:7, 95:2, 99:23, 99:24, 100:21, 108:18

**though** [4] - 17:12, 78:11, 95:21, 97:18

**thought** [4] - 10:8, 60:6, 77:12, 107:25

**threat** [2] - 25:5, 39:3

**threatened** [2] - 24:24, 68:2

**three** [18] - 7:24, 13:14, 27:14, 37:5, 37:7, 37:8, 37:13, 37:16, 38:13, 38:19, 60:21, 61:7, 62:3, 81:12, 86:24, 102:15, 104:3, 104:14

**three-hour** [1] - 37:5

**threshold** [4] - 52:9, 56:2, 56:10, 58:9

**through** [15] - 25:4, 27:4, 27:13, 31:9, 33:4, 35:23, 53:2, 55:5, 66:16, 70:17, 85:19, 98:18, 99:11, 114:25, 119:8

**throughout** [2] - 78:14, 80:2

**throw** [1] - 48:6

**throwing** [2] - 106:10, 106:12

**thrown** [1] - 74:24

**TI** [30] - 11:25, 12:6, 15:23, 23:20, 40:13, 69:19, 72:9, 74:22, 75:2, 81:18, 86:1, 86:13, 86:17, 91:22, 97:10, 99:19, 100:7, 109:22, 110:11, 114:17, 115:9, 117:13, 117:22, 118:13, 121:7, 125:20, 126:18, 126:20, 127:6, 127:21

**tie** [1] - 93:13

**Tillery** [1] - 3:12

**time** [49] - 9:14, 15:22, 16:3, 19:1, 19:16, 19:18, 33:10, 39:25, 40:2, 40:16, 44:24, 45:3, 46:5, 46:10, 47:1, 49:20, 54:3, 57:13, 58:3, 61:4, 61:5, 62:4, 63:9, 76:11, 79:23, 80:18, 81:4,

82:14, 84:6, 89:18, 89:25, 90:17, 91:2, 92:9, 102:24, 103:17, 106:13, 112:13, 113:22, 115:4, 115:6, 115:7, 118:4, 118:8, 119:21, 121:15, 126:19, 128:10, 128:14

**timeline** [1] - 70:12

**times** [5] - 16:15, 36:22, 38:4, 98:10, 102:3

**timestamp** [1] - 49:21

**tinfoil** [2] - 83:8, 83:25

**tired** [3] - 62:1, 62:3, 70:20

**tirelessly** [1] - 30:6

**title** [2] - 49:19, 50:4

**TO** [1] - 1:13

**to** [830] - 1:19, 5:18, 6:2, 6:10, 6:12, 6:13, 6:19, 6:21, 7:2, 8:3, 8:11, 8:12, 8:14, 8:15, 8:19, 8:21, 8:23, 9:3, 9:4, 9:7, 9:21, 10:2, 10:7, 10:9, 10:14, 10:19, 10:24, 11:2, 11:7, 11:9, 11:12, 11:15, 11:16, 11:18, 11:24, 12:4, 12:15, 12:17, 13:5, 13:10, 13:15, 13:22, 14:5, 14:10, 14:12, 14:18, 14:19, 14:24, 15:5, 15:6, 15:7, 15:11, 15:14, 15:23, 15:24, 16:3, 16:4, 16:5, 16:7, 16:12, 16:17, 16:19, 17:2, 17:3, 17:7, 17:8, 17:9, 17:18, 17:24, 17:25, 18:7, 18:10, 18:11, 18:12, 18:15, 19:3, 19:7, 19:22, 20:3, 20:9, 20:10, 20:11, 20:12, 20:14, 20:16, 20:23, 20:25, 21:11, 21:14, 21:17, 21:18, 22:8, 22:23, 22:24, 23:2, 23:3, 23:5, 23:10, 23:15, 23:18, 23:19, 23:22, 24:3, 24:7, 24:10, 24:14, 24:22, 24:24, 25:3, 25:11, 25:18, 25:19, 26:4, 26:8, 26:9, 26:10, 26:17, 26:18, 26:23, 26:24, 27:6, 27:7, 27:9, 27:12, 27:17, 27:19, 27:22, 27:25, 28:2, 28:5, 28:16, 28:24, 29:1, 29:4, 29:5, 29:6, 29:8, 29:15, 29:22, 30:6, 30:20, 31:10, 31:15, 31:16, 31:17, 31:25, 32:3, 32:5, 32:7, 32:10, 32:12, 32:22, 33:3, 33:8, 33:12, 33:14, 33:22, 33:25, 34:1, 34:6, 34:9, 34:12, 34:13, 34:16, 34:18, 34:21, 34:24, 35:2, 35:3, 35:4, 35:8, 35:9, 35:11, 35:14, 35:16, 35:20, 35:21, 35:25, 36:2, 36:6, 36:10, 36:13, 36:17, 36:19, 36:25, 37:1, 37:4, 37:7, 37:9, 37:17, 37:21, 37:24, 38:6, 38:9, 38:11, 38:12, 38:16, 38:21, 38:24, 38:25, 39:1, 39:5, 39:10, 39:12, 39:14, 39:15, 39:19, 39:20, 39:21, 40:1, 40:5, 40:6, 40:12, 40:15, 40:18, 40:24, 41:1, 41:6, 41:7, 41:8, 41:10, 41:11, 41:14, 41:25, 42:6, 43:2, 43:5, 43:10, 43:16, 44:5, 44:7, 44:8, 44:9, 44:13, 44:14, 44:17, 44:18, 44:19, 44:23, 45:6, 45:11, 45:15, 46:24, 47:8, 47:20, 47:21, 47:22, 48:1, 48:4, 48:7, 48:16, 48:24, 49:3, 49:4, 49:5, 49:6, 49:15, 49:19, 49:23, 49:25, 50:2, 50:3, 50:4, 50:8,

50:11, 50:20, 50:25, 51:3, 51:7, 51:10, 51:16, 51:19, 51:24, 51:25, 52:10, 52:11, 52:18, 52:20, 52:22, 53:2, 53:7, 53:8, 53:10, 53:11, 53:12, 53:14, 53:15, 53:18, 53:20, 54:8, 54:9, 54:18, 54:19, 54:20, 54:22, 54:24, 54:25, 55:2, 55:8, 55:10, 55:11, 55:13, 55:17, 55:18, 55:19, 55:20, 55:22, 55:23, 55:24, 56:1, 56:2, 56:3, 56:5, 56:6, 56:7, 56:8, 56:22, 57:3, 57:7, 57:8, 57:12, 57:14, 57:15, 57:16, 57:18, 57:19, 57:24, 57:25, 58:4, 58:5, 58:10, 58:11, 58:13, 58:14, 58:16, 58:22, 58:25, 59:1, 59:2, 59:12, 59:16, 59:18, 59:20, 59:21, 59:22, 59:25, 60:2, 60:4, 60:11, 60:17, 60:18, 60:19, 60:22, 60:23, 60:24, 61:4, 61:6, 61:17, 61:18, 61:21, 61:24, 61:25, 62:5, 62:14, 62:15, 62:18, 62:20, 62:22, 63:2, 63:6, 63:9, 63:11, 63:12, 63:14, 63:16, 63:23, 63:24, 63:25, 64:1, 64:5, 64:17, 64:19, 65:11, 65:13, 65:19, 65:24, 66:8, 66:12, 66:13, 66:14, 66:19, 66:22, 67:4, 67:12, 67:14, 67:16, 67:17, 67:18, 67:21, 67:25, 68:1, 68:3, 68:13, 68:18, 68:24, 69:2, 69:10, 69:12, 69:18, 69:19, 69:22, 70:9, 70:10, 70:12, 70:13, 70:19, 70:23, 72:3, 72:5, 72:6, 72:21, 73:3, 73:5, 73:8, 73:9, 73:12, 73:17, 73:20, 73:22, 73:23, 73:25, 74:3, 74:7, 74:17, 74:19, 74:25, 75:2, 75:4, 75:14, 75:15, 75:16, 76:3, 76:9, 76:11, 76:20, 76:24, 78:2, 78:23, 79:1, 79:2, 79:13, 79:21, 80:4, 80:9, 80:11, 80:15, 80:20, 80:22, 81:7, 81:9, 81:13, 82:10, 82:11, 82:14, 82:15, 82:19, 82:22, 83:1, 83:2, 83:3, 83:7, 83:11, 83:17, 84:8, 84:9, 84:14, 84:17, 84:18, 84:20, 85:1, 85:3, 85:5, 85:6, 85:13, 85:14, 85:17, 85:18, 85:20, 85:25, 86:2, 86:4, 86:12, 86:13, 86:22, 86:23, 87:3, 87:9, 87:13, 87:15, 87:17, 87:18, 88:2, 88:3, 88:4, 88:5, 88:9, 88:11, 88:12, 88:13, 89:2, 89:7, 89:13, 89:17, 89:20, 90:5, 90:6, 90:7, 90:9, 90:19, 91:1, 91:2, 91:6, 91:10, 91:12, 91:13, 91:14, 91:15, 91:22, 92:7, 92:9, 92:10, 92:19, 92:21, 93:2, 93:9, 93:11, 93:13, 93:15, 93:19, 94:5, 94:6, 94:7, 94:9, 94:11, 94:13, 94:17, 94:23, 95:1, 95:18, 96:2, 96:3, 96:8, 96:12, 96:19, 97:3, 97:5, 97:6, 97:8, 97:18, 97:22, 97:24, 98:1, 98:3, 98:17, 99:11, 99:13, 99:24, 100:2, 100:6, 100:12, 100:14, 100:17, 100:18, 100:19, 101:4, 101:11, 101:22, 102:5, 102:6, 102:11, 102:14, 102:16, 102:23, 102:24, 102:25, 103:1, 103:8, 103:12, 103:16, 103:21, 103:22, 104:6, 104:8, 104:9, 104:16, 104:19, 104:21, 105:1, 105:2, 105:4, 105:5,

105:23, 106:4, 106:6, 106:7, 106:10, 106:12, 106:20, 107:6, 107:19, 107:23, 108:6, 108:7, 108:8, 108:12, 108:13, 108:18, 108:19, 109:6, 109:11, 109:13, 109:14, 109:16, 109:18, 109:19, 109:23, 110:6, 110:10, 110:13, 110:15, 110:22, 110:23, 111:2, 111:6, 111:8, 111:9, 111:11, 111:12, 111:20, 112:1, 112:14, 112:15, 112:25, 113:6, 113:10, 113:11, 114:2, 114:3, 114:4, 114:10, 114:12, 114:17, 114:19, 114:22, 115:2, 115:7, 115:18, 115:20, 115:24, 116:16, 116:19, 116:22, 117:6, 117:10, 117:11, 117:13, 117:14, 117:19, 117:21, 117:23, 118:3, 118:5, 118:6, 118:16, 118:23, 118:24, 118:25, 119:1, 119:4, 119:7, 119:9, 119:11, 119:12, 119:15, 119:18, 119:21, 119:23, 119:24, 120:3, 120:5, 120:6, 120:8, 120:10, 120:11, 120:20, 121:1, 121:7, 121:8, 121:9, 121:10, 121:17, 121:20, 121:23, 122:2, 122:5, 122:9, 122:16, 122:17, 122:22, 123:2, 123:3, 123:4, 123:6, 123:9, 123:11, 123:19, 123:20, 123:23, 123:24, 124:9, 124:12, 124:13, 124:19, 124:25, 125:1, 125:5, 125:6, 125:13, 125:19, 125:23, 125:24, 125:25, 126:2, 126:12, 126:13, 126:22, 127:4, 127:11, 127:12, 127:13, 127:16, 127:24, 128:3, 129:9

**today** [31] - 10:8, 10:14, 11:18, 15:11, 15:15, 16:1, 16:7, 16:17, 21:10, 21:16, 21:19, 41:9, 50:19, 50:25, 51:9, 51:16, 52:1, 54:21, 71:23, 72:17, 81:22, 84:4, 84:15, 84:18, 84:19, 93:15, 99:19, 100:13, 115:10, 128:11
**told** [13] - 12:8, 40:23, 41:15, 85:13, 90:22, 92:2, 92:9, 121:16, 123:21, 123:22, 123:25, 124:11, 124:13
**too** [7] - 8:20, 51:14, 61:8, 85:19, 92:23, 117:20, 128:11
**took** [4] - 46:25, 92:16, 102:24, 120:18
**top** [1] - 98:17
**tort** [5] - 98:17, 99:18, 100:22, 110:1, 112:6
**tortious** [6] - 98:22, 99:20, 100:1, 110:2, 112:18, 112:21
**tortiously** [3] - 32:17, 98:23, 112:14
**torts** [1] - 98:18
**torture** [1] - 66:16
**total** [3] - 38:13, 84:20, 129:17
**tough** [1] - 126:11
**track** [1] - 109:12
**tracked** [1] - 109:15
**transcript** [3] - 11:23, 13:11, 104:1
**transcription** [1] - 129:7
**transcripts** [1] - 81:12

**trial** [5] - 89:13, 113:24, 120:4, 120:5, 126:23
**TRIAL** [1] - 1:2
**tried** [2] - 16:12, 112:14
**TRO** [11] - 71:23, 72:4, 72:6, 72:10, 73:19, 83:11, 83:12, 84:2, 84:3, 110:13, 114:17
**TROs** [1] - 115:3
**true** [7] - 31:8, 67:8, 68:20, 73:18, 74:1, 113:15, 129:7
**truly** [1] - 129:14
**trustee** [1] - 108:25
**truth** [1] - 92:9
**truthful** [3] - 91:2, 92:2, 93:2
**try** [10] - 9:21, 11:24, 13:22, 14:24, 16:5, 35:16, 68:1, 70:10, 72:5, 103:16
**trying** [14] - 8:12, 58:4, 63:6, 63:16, 67:21, 72:3, 75:4, 80:9, 84:20, 91:10, 111:20, 117:10, 122:2, 122:5
**turns** [2] - 35:3, 39:14
**twice** [2] - 16:25, 67:14
**twist** [1] - 90:2
**two** [10] - 7:24, 15:5, 27:5, 37:5, 51:14, 63:25, 65:24, 80:23, 97:14, 104:14
**Two** [1] - 4:6
**two-dollar** [1] - 80:23
**TX** [1] - 3:13
**type** [4] - 10:9, 51:2, 100:14, 118:16
**typing** [1] - 119:19

**U**

**U.S** [1] - 54:3
**uh** [1] - 12:23
**uh-huh** [1] - 12:23
**ultimately** [12] - 17:9, 75:5, 75:20, 76:1, 76:4, 76:17, 76:19, 77:19, 89:3, 89:10, 116:19
**umpteen** [2] - 38:8, 38:9
**unauthorized** [1] - 74:3
**under** [35] - 16:8, 16:20, 17:6, 25:20, 26:25, 27:1, 28:20, 33:23, 34:9, 41:24, 52:13, 52:23, 54:1, 54:12, 54:19, 55:14, 58:8, 61:19, 70:15, 71:19, 73:25, 76:4, 79:5, 88:17, 91:2, 91:13, 91:18, 92:25, 95:11, 110:23, 113:15, 116:11, 116:13, 122:21, 123:25
**underlying** [13] - 47:12, 47:15, 53:5, 53:15, 53:18, 54:24, 57:20, 98:3, 98:17, 99:18, 100:22, 110:1, 112:5
**understand** [38] - 13:11, 21:15, 34:2, 37:15, 38:21, 43:19, 54:18, 55:6, 55:25, 56:10, 56:18, 57:7, 57:8, 57:9, 63:2, 64:24, 65:7, 65:12, 70:8, 75:6, 75:19, 76:15, 88:8, 88:23, 89:5, 93:3, 93:14, 100:18, 114:20, 116:18, 117:23, 122:10, 123:14, 124:21, 127:14, 128:1, 128:9, 128:13
**understanding** [6] - 9:20, 43:9, 58:8, 78:8, 91:21, 124:13

**understood** [1] - 50:6
**unfair** [1] - 70:5
**unfortunately** [1] - 7:22
**UNIDENTIFIED** [2] - 87:25, 88:8
**unique** [6] - 10:8, 76:23, 113:19, 114:9, 114:11, 126:1
**United** [2] - 23:3, 108:24
**unjust** [2] - 99:24, 113:13
**unless** [1] - 91:9
**unlike** [1] - 61:20
**unsworn** [6] - 28:18, 47:23, 49:11, 49:19, 50:10, 50:11
**until** [16] - 26:7, 30:14, 39:11, 46:22, 50:18, 74:1, 76:11, 77:5, 77:17, 83:5, 86:5, 86:7, 86:16, 88:18, 101:22, 127:23
**up** [39] - 9:14, 10:18, 11:17, 15:17, 15:21, 17:20, 19:21, 20:8, 20:12, 25:9, 28:5, 35:8, 36:15, 40:16, 40:21, 49:7, 49:23, 50:8, 63:12, 69:15, 72:7, 74:13, 79:1, 79:8, 82:20, 84:12, 84:24, 85:24, 88:1, 94:9, 100:19, 102:6, 109:14, 110:4, 118:16, 120:10, 127:9
**upon** [3] - 45:18, 46:14, 58:13
**upset** [1] - 64:2
**us** [32] - 7:2, 11:7, 11:11, 12:1, 12:25, 13:17, 17:25, 20:17, 26:12, 43:20, 50:14, 53:15, 53:19, 53:20, 55:5, 55:20, 57:19, 57:24, 59:1, 62:3, 62:4, 72:12, 83:9, 88:13, 90:21, 99:2, 100:22, 119:22, 125:19, 126:2, 126:22, 127:20
**USA** [1] - 61:16
**use** [1] - 63:18
**used** [2] - 32:10, 33:18
**usually** [1] - 112:3

**V**

**v** [13] - 5:3, 22:19, 25:13, 33:9, 42:4, 42:23, 43:4, 43:16, 44:2, 47:13, 52:14, 52:23, 61:16
**valid** [1] - 55:21
**value** [1] - 113:16
**values** [1] - 116:17
**verification** [3] - 16:11, 31:13, 47:22
**verified** [1] - 35:1
**verify** [1] - 34:22
**Verizon** [3] - 42:13, 43:16, 44:2
**version** [4] - 7:14, 7:15, 8:2
**versus** [1] - 12:22
**very** [34] - 21:14, 21:15, 21:18, 34:8, 37:14, 37:22, 57:4, 59:18, 59:19, 64:5, 64:7, 65:23, 69:7, 69:8, 76:7, 78:17, 81:14, 89:13, 89:23, 89:24, 98:1, 99:11, 101:3, 101:18, 103:3, 120:19, 121:5, 122:16, 122:17
**vexatious** [1] - 60:13
**video** [2] - 87:20, 87:24
**videos** [4] - 66:18, 69:22, 69:23, 87:7

**violated** [5] - 53:12, 55:18, 56:7, 57:21, 57:23
**violating** [1] - 12:17
**violation** [2] - 26:5, 29:24
**virtually** [1] - 25:17
**Vol** [1] - 2:4
**VOLUME** [3] - 1:1, 2:2
**Volume** [2] - 129:10, 129:14
**volume** [1] - 129:10
**VOLUMES** [1] - 2:2
**VS** [1] - 1:6

# W

**W** [1] - 3:8
**wagon** [1] - 44:17
**wait** [4] - 12:14, 19:23, 19:24, 20:21
**waiting** [2] - 79:17, 79:18
**waive** [1] - 44:23
**Walker** [1] - 42:23
**walking** [1] - 83:23
**walks** [1] - 83:13
**want** [72] - 6:2, 6:13, 8:23, 9:3, 9:4, 9:7, 9:21, 11:2, 15:16, 16:17, 18:15, 19:22, 20:13, 21:18, 29:4, 35:20, 36:8, 38:11, 38:12, 38:15, 39:5, 39:21, 41:1, 46:24, 47:8, 57:8, 59:19, 61:24, 61:25, 66:8, 66:14, 67:4, 68:13, 68:23, 69:19, 70:9, 70:11, 70:19, 73:8, 74:7, 74:19, 76:24, 77:19, 80:17, 80:20, 82:19, 83:17, 83:24, 84:12, 85:5, 85:6, 85:17, 85:18, 85:20, 93:19, 108:8, 108:12, 114:10, 114:22, 119:12, 119:18, 119:21, 119:23, 121:1, 121:8, 122:9, 122:16, 122:17, 123:9, 124:2
**wanted** [20] - 10:7, 29:15, 44:19, 49:3, 49:23, 65:19, 72:21, 75:1, 80:15, 81:13, 101:15, 104:19, 104:21, 119:9, 120:10, 121:3, 121:6, 121:7, 121:9, 121:10
**wanting** [3] - 14:18, 83:16, 109:18
**wants** [10] - 14:7, 14:9, 32:7, 44:17, 62:15, 66:13, 68:24, 69:1, 93:9, 108:6
**warrant** [2] - 100:14, 110:11
**was** [185] - 6:5, 6:14, 6:21, 10:2, 10:8, 11:8, 11:15, 13:17, 16:2, 16:3, 16:5, 16:13, 18:24, 18:25, 19:3, 20:14, 21:11, 21:12, 22:17, 22:23, 23:13, 23:23, 23:25, 24:2, 24:5, 24:8, 24:10, 25:2, 25:3, 25:15, 25:16, 25:19, 26:3, 26:24, 27:3, 27:18, 28:2, 28:6, 28:11, 30:10, 34:5, 35:24, 36:4, 37:17, 39:9, 41:4, 41:19, 41:20, 44:11, 44:18, 45:9, 45:20, 45:25, 46:1, 46:22, 47:8, 48:5, 48:9, 48:10, 48:11, 48:12, 49:24, 50:10, 51:12, 51:14, 52:5, 55:18, 56:7, 60:6, 62:24, 63:3, 64:5, 66:17, 68:3, 70:15, 70:23, 71:2, 73:23, 73:24, 73:25, 74:24, 75:3, 76:3, 76:5, 76:6, 76:9, 76:13, 77:23, 79:11, 79:21,

79:23, 79:24, 80:10, 80:14, 80:15, 81:10, 81:25, 82:5, 83:9, 83:10, 83:11, 84:13, 84:14, 84:25, 85:14, 87:7, 87:13, 87:18, 89:22, 90:3, 90:22, 92:7, 92:19, 93:7, 95:1, 95:19, 95:24, 96:25, 97:13, 98:5, 101:14, 101:16, 101:23, 102:2, 102:4, 102:25, 103:1, 103:7, 103:21, 104:4, 104:7, 104:8, 104:10, 104:13, 105:4, 105:9, 105:10, 105:11, 105:12, 106:3, 106:7, 106:9, 106:11, 106:14, 106:20, 106:25, 107:1, 107:13, 108:1, 108:23, 109:7, 109:18, 110:19, 112:5, 112:15, 115:1, 115:6, 115:21, 116:11, 119:10, 119:23, 120:1, 120:16, 120:19, 121:14, 121:15, 121:16, 121:24, 123:20, 125:22, 125:23, 126:6, 128:11, 129:19
**wasn't** [5] - 23:11, 41:5, 81:15, 81:16, 108:23
**watching** [1] - 25:10
**waterfall** [1] - 105:15
**way** [16] - 20:21, 31:16, 37:10, 49:1, 66:18, 66:20, 67:10, 67:20, 68:23, 70:10, 71:13, 100:5, 111:6, 113:22, 126:4, 126:10
**Wayne** [5] - 32:12, 67:15, 69:21, 69:23
**ways** [1] - 80:9
**We** [1] - 64:10
**we** [266] - 11:5, 11:14, 11:15, 11:17, 11:21, 11:22, 11:23, 11:24, 11:25, 12:2, 12:9, 12:12, 12:17, 12:18, 12:25, 13:1, 13:2, 13:6, 13:11, 13:17, 13:21, 14:5, 14:10, 14:12, 14:21, 14:24, 15:7, 15:23, 16:3, 18:1, 18:22, 18:24, 19:2, 19:3, 19:6, 20:19, 20:23, 21:23, 22:9, 23:13, 23:17, 23:22, 23:25, 24:2, 25:2, 25:10, 26:11, 26:12, 26:13, 27:3, 27:4, 27:6, 27:9, 27:10, 27:12, 27:15, 28:5, 28:19, 29:3, 31:7, 33:10, 33:23, 36:22, 36:25, 38:14, 39:6, 39:7, 39:11, 39:19, 40:1, 40:16, 40:23, 41:24, 46:7, 46:24, 47:14, 47:16, 48:24, 49:8, 49:15, 49:16, 49:17, 49:23, 49:25, 50:4, 50:17, 50:18, 51:2, 51:3, 51:6, 51:7, 51:20, 51:23, 51:24, 52:12, 53:16, 54:13, 56:5, 56:15, 57:20, 57:23, 57:24, 58:11, 59:1, 60:19, 62:5, 62:13, 70:10, 71:13, 71:17, 72:3, 72:6, 72:8, 72:9, 72:23, 72:24, 73:1, 73:2, 73:3, 73:6, 73:9, 73:10, 73:11, 73:12, 73:15, 73:18, 73:19, 73:20, 74:12, 74:21, 74:22, 75:1, 75:4, 76:11, 78:2, 79:22, 79:23, 80:6, 80:12, 80:14, 81:5, 81:9, 81:18, 82:15, 82:20, 82:22, 83:24, 84:1, 84:2, 84:7, 84:15, 85:20, 85:24, 85:25, 86:1, 86:4, 86:10, 86:11, 86:12, 86:13, 88:17, 89:12, 89:13, 89:18, 89:21, 89:22, 89:23, 90:15, 90:17, 90:18, 90:19, 91:2, 91:5, 91:13, 91:22,

93:21, 94:22, 97:24, 98:2, 98:9, 99:1, 99:3, 99:4, 100:12, 100:17, 101:19, 101:20, 101:22, 105:6, 105:11, 106:2, 106:23, 109:9, 109:12, 109:15, 110:14, 110:17, 111:1, 111:2, 111:19, 112:11, 112:13, 112:14, 113:24, 114:16, 114:17, 116:23, 117:3, 117:6, 117:15, 117:19, 118:10, 119:9, 119:10, 119:11, 120:5, 120:10, 121:3, 121:5, 121:6, 121:8, 121:23, 121:24, 124:7, 124:8, 124:9, 124:12, 125:2, 125:3, 125:9, 126:1, 126:10, 126:18, 127:21, 128:2
**we're** [24] - 9:2, 11:18, 12:9, 13:5, 14:6, 14:7, 14:20, 15:24, 31:11, 38:22, 39:1, 41:1, 50:23, 54:23, 54:25, 55:2, 55:11, 72:19, 72:21, 79:13, 80:3, 84:9, 86:7, 99:19
**Wednesday** [4] - 11:3, 11:18, 40:17, 106:3
**week** [14] - 11:6, 21:12, 21:13, 61:17, 66:23, 70:14, 72:4, 81:19, 82:14, 109:10, 109:20, 126:23, 127:1
**Weems** [1] - 1:20
**well** [32] - 5:20, 6:4, 7:4, 7:17, 7:24, 10:21, 16:10, 16:21, 16:23, 19:4, 36:25, 37:18, 37:23, 42:10, 43:12, 50:2, 58:2, 58:11, 63:8, 73:7, 74:1, 75:13, 76:10, 83:15, 93:11, 93:16, 94:25, 100:1, 108:8, 112:19, 113:24, 122:15
**went** [11] - 19:5, 27:3, 27:10, 28:4, 66:5, 66:16, 67:14, 70:13, 70:17, 72:5, 98:9
**were** [49] - 6:8, 10:3, 11:24, 12:17, 16:1, 18:18, 19:6, 21:23, 23:24, 25:10, 27:10, 27:12, 29:19, 33:12, 36:2, 40:16, 41:17, 42:6, 42:7, 44:12, 48:11, 48:12, 65:20, 72:3, 72:24, 73:1, 73:2, 73:3, 79:10, 80:7, 81:16, 82:23, 83:21, 88:22, 89:18, 89:20, 101:16, 102:16, 103:11, 104:9, 104:12, 120:5, 120:6, 121:25, 124:10, 124:11, 129:12
**weren't** [2] - 19:6, 106:1
**west** [3] - 25:14, 30:21, 32:6
**West** [1] - 4:13
**wetwiska** [1] - 80:13
**Wetwiska** [11] - 67:13, 68:2, 68:4, 79:22, 90:9, 91:12, 92:1, 92:9, 120:4, 121:19, 123:19
**Wetwiska's** [1] - 115:1
**what** [172] - 6:4, 6:14, 7:9, 7:13, 7:23, 8:11, 9:20, 11:21, 12:9, 12:10, 13:17, 14:12, 14:19, 14:20, 14:25, 15:9, 15:13, 15:24, 17:7, 17:15, 18:15, 19:9, 25:3, 25:10, 26:5, 27:8, 28:2, 28:16, 31:10, 33:12, 33:24, 34:2, 34:15, 35:20, 36:2, 37:21, 38:21, 39:9, 40:5, 42:14, 43:5, 43:12, 43:15, 43:18, 43:21, 43:25, 45:4, 45:17, 45:18, 45:19, 46:13, 47:6, 47:18, 47:20, 48:3,

48:10, 50:10, 50:18, 50:23, 51:3, 52:5,
53:11, 54:23, 55:1, 55:11, 55:12, 56:9,
56:11, 56:23, 57:4, 57:9, 57:12, 59:8,
60:5, 60:19, 60:23, 61:13, 62:15,
62:20, 63:16, 63:21, 63:22, 64:6,
65:14, 65:18, 67:2, 68:5, 68:24, 69:6,
70:3, 70:5, 72:22, 73:6, 75:15, 76:15,
77:6, 77:10, 78:6, 78:17, 78:24, 79:21,
79:22, 80:12, 81:6, 81:7, 81:17, 82:1,
82:17, 83:3, 84:1, 84:11, 84:24, 88:2,
90:5, 90:7, 91:11, 91:14, 92:1, 92:8,
95:8, 95:23, 96:17, 96:19, 97:5, 97:6,
98:2, 98:3, 102:1, 102:2, 102:4,
102:22, 102:25, 103:23, 103:25,
104:9, 104:25, 105:2, 105:5, 105:11,
105:15, 105:23, 106:19, 109:4,
109:19, 110:7, 110:19, 111:2, 111:25,
112:15, 113:14, 113:22, 115:23,
115:24, 116:5, 118:25, 119:12,
122:15, 122:23, 123:5, 123:6, 123:7,
124:4, 124:10, 124:13, 128:7
**what's** [2] - 62:22, 106:22
**What's** [1] - 69:24
**whatever** [20] - 15:16, 20:23, 28:25,
49:14, 53:15, 61:13, 62:4, 73:8, 73:12,
77:18, 82:1, 100:19, 114:4, 116:21,
117:12, 117:14, 118:4, 127:4, 127:12,
128:3
**whatsoever** [1] - 80:25
**when** [42] - 7:17, 9:6, 13:14, 24:13,
33:18, 35:16, 39:25, 41:25, 42:2,
44:17, 45:13, 49:20, 51:1, 51:14, 52:8,
53:1, 57:21, 58:16, 58:21, 62:17, 63:2,
66:10, 67:20, 67:25, 72:11, 76:7,
77:14, 78:3, 89:22, 91:15, 102:10,
106:6, 111:7, 113:6, 120:5, 120:9,
121:13, 121:15, 123:18, 126:18
**where** [37] - 9:5, 16:11, 26:1, 28:20,
33:5, 35:20, 35:25, 37:14, 39:1, 52:4,
53:3, 54:4, 62:23, 66:6, 67:14, 76:11,
79:13, 79:14, 94:8, 103:10, 104:2,
104:5, 104:13, 104:15, 104:24, 105:4,
109:13, 109:14, 111:23, 113:7,
118:17, 121:19, 122:1, 123:20, 124:8
**whether** [20] - 10:22, 17:5, 17:7, 36:3,
38:19, 50:20, 50:22, 55:3, 58:5, 62:18,
79:2, 79:4, 79:9, 79:11, 92:25, 101:21,
104:7, 104:8, 106:17
**which** [62] - 7:24, 9:23, 11:8, 12:3,
15:24, 17:1, 24:14, 24:17, 25:13,
26:25, 27:7, 27:8, 28:2, 28:16, 28:25,
31:7, 31:20, 34:24, 35:16, 36:16,
40:20, 41:5, 46:2, 48:2, 49:17, 49:21,
50:17, 53:11, 53:16, 53:21, 54:23,
59:9, 59:16, 61:11, 61:15, 61:16,
61:17, 62:13, 64:6, 81:18, 81:22,
82:23, 83:17, 88:2, 89:11, 89:12,
97:22, 99:13, 100:7, 100:21, 105:10,
105:11, 106:18, 108:16, 108:19,
109:20, 111:19, 113:1, 114:24,

126:12, 129:11
**while** [5] - 20:12, 25:7, 58:3, 97:21,
118:17
**white** [1] - 100:14
**who** [45] - 5:11, 9:8, 10:3, 12:3, 13:6,
23:4, 23:25, 26:3, 34:21, 37:7, 44:4,
51:21, 61:7, 61:9, 64:5, 66:2, 66:21,
67:11, 67:13, 68:6, 71:2, 73:4, 77:15,
83:14, 88:7, 88:13, 88:16, 89:3, 90:25,
93:24, 95:16, 101:15, 105:1, 105:2,
105:4, 106:5, 106:16, 106:23, 107:13,
107:20, 108:22, 108:25, 111:1, 121:16
**whoever** [1] - 39:13
**whole** [17] - 16:16, 37:3, 38:3, 38:23,
39:7, 39:17, 40:12, 50:4, 60:3, 62:16,
66:9, 67:15, 75:6, 81:18, 99:14,
121:14
**wholly** [1] - 54:14
**whose** [1] - 107:11
**why** [56] - 9:3, 9:15, 13:3, 13:16, 13:21,
14:17, 15:7, 21:15, 34:13, 35:6, 35:21,
37:13, 37:15, 37:20, 38:21, 42:11,
51:19, 51:20, 53:21, 54:21, 58:12,
59:18, 60:4, 61:1, 61:25, 67:4, 70:9,
73:15, 76:6, 80:3, 80:20, 82:4, 82:6,
82:7, 84:12, 84:24, 91:12, 91:18, 92:1,
93:14, 94:5, 96:7, 96:19, 98:2, 99:13,
99:19, 107:18, 108:1, 108:2, 116:8,
119:9, 123:9, 124:7, 124:9, 124:12,
126:6
**wife** [1] - 66:4
**wildly** [1] - 116:3
**will** [37] - 7:1, 18:10, 25:11, 29:17,
36:25, 38:5, 38:7, 38:8, 38:10, 38:14,
39:20, 41:13, 44:6, 46:1, 46:14, 51:7,
51:20, 62:5, 62:13, 71:7, 71:17, 79:23,
80:23, 81:5, 82:20, 84:8, 85:24, 88:22,
92:1, 96:4, 97:19, 116:15, 125:13,
127:9, 128:2
**willing** [1] - 26:24
**Winthrop** [1] - 4:5
**wiped** [2] - 107:12, 116:15
**wisdom** [1] - 24:7
**with** [155] - 5:7, 9:5, 12:7, 12:10, 14:6,
14:8, 14:19, 15:11, 15:16, 16:14, 17:2,
17:9, 17:24, 21:5, 21:7, 21:11, 21:17,
21:18, 22:6, 22:20, 22:22, 22:24,
23:15, 23:16, 24:2, 24:18, 26:8, 26:25,
27:5, 27:7, 27:9, 27:19, 28:2, 28:15,
29:21, 30:20, 32:15, 32:17, 32:18,
32:22, 33:8, 33:14, 34:6, 34:16, 34:23,
35:2, 36:5, 36:10, 36:16, 36:23, 36:24,
37:10, 37:20, 38:9, 38:13, 39:10,
39:12, 39:13, 39:15, 40:12, 40:20,
40:25, 41:9, 43:9, 47:21, 49:3, 49:16,
49:21, 51:8, 59:20, 59:22, 59:25, 60:7,
60:21, 60:22, 61:10, 61:14, 61:22,
61:25, 63:8, 64:19, 66:4, 66:22, 67:22,
68:2, 68:20, 69:21, 70:3, 70:25, 72:8,
72:9, 72:11, 72:19, 72:20, 73:3, 73:5,

73:17, 76:2, 77:25, 78:25, 79:12, 80:6,
80:12, 80:20, 82:19, 83:4, 83:5, 83:19,
83:22, 84:9, 85:7, 85:10, 85:21, 86:22,
88:3, 90:2, 90:3, 91:3, 95:2, 96:1,
98:6, 98:22, 98:24, 98:25, 99:2, 99:3,
99:25, 100:6, 100:9, 100:10, 101:3,
106:23, 109:7, 110:1, 110:3, 110:4,
110:6, 110:15, 112:14, 112:18,
112:21, 115:10, 115:20, 116:2, 118:6,
120:8, 120:16, 121:25, 123:4, 125:16,
126:15
**within** [3] - 33:17, 34:10, 63:15
**without** [9] - 12:2, 12:7, 13:6, 44:24,
54:10, 118:21, 118:24, 125:10, 125:11
**WITNESS** [1] - 129:20
**witness** [4] - 67:10, 86:1, 87:8, 121:6
**witnessed** [3] - 67:11, 70:17, 88:1
**witnesses** [4] - 26:11, 70:16, 125:19,
125:20
**WL** [1] - 25:14
**woman** [1] - 87:9
**won't** [2] - 38:7, 64:12
**wonderful** [1] - 20:4
**word** [1] - 78:13
**words** [6] - 27:1, 29:7, 30:23, 49:9,
115:5, 118:15
**work** [4] - 13:10, 39:7, 73:5, 125:24
**worked** [2] - 27:4, 71:2
**working** [4] - 27:13, 30:19, 41:12, 66:21
**works** [3] - 30:6, 54:11, 73:8
**world** [1] - 40:7
**worry** [1] - 64:1
**worth** [2] - 27:9, 60:7
**would** [66] - 16:5, 16:24, 20:4, 20:5,
20:21, 25:22, 25:23, 26:17, 26:21,
36:16, 37:5, 37:16, 37:20, 38:6, 38:20,
39:11, 40:10, 40:15, 44:20, 53:18,
53:20, 56:5, 56:25, 57:14, 60:9, 60:11,
60:12, 60:13, 60:14, 62:14, 69:18,
76:12, 86:2, 86:12, 86:23, 87:10, 90:8,
90:9, 90:11, 90:15, 90:18, 91:12,
92:11, 94:21, 99:3, 99:18, 102:25,
107:12, 107:18, 110:14, 110:24,
113:1, 113:14, 113:24, 114:2, 114:21,
119:24, 122:23, 124:16, 125:18,
125:24, 126:2, 126:22, 127:20
**wouldn't** [1] - 71:11
**wow** [1] - 51:8
**write** [1] - 39:19
**writing** [1] - 129:9
**wrong** [4] - 53:22, 100:6, 122:13, 124:3
**wrongdoing** [2] - 62:24, 112:6
**wrongfully** [1] - 110:20
**wrote** [1] - 102:4
**WSP** [1] - 61:16
**Wyatt** [2] - 71:1, 71:2

---

**X**

**X** [1] - 2:1

# Y

**y'all** [17] - 20:22, 22:11, 57:12, 64:11, 86:16, 87:4, 89:1, 90:5, 102:24, 116:21, 117:14, 118:4, 118:25, 119:1, 126:15, 127:4

**y'all's** [1] - 96:1

**yeah** [15] - 6:21, 8:21, 9:15, 10:13, 10:15, 11:1, 15:4, 22:2, 24:20, 64:1, 71:11, 75:12, 88:15, 125:6, 125:8

**year** [4] - 75:22, 97:11, 97:13, 120:19

**year-and-a-half** [2] - 75:22, 97:13

**years** [6] - 39:23, 66:5, 66:21, 67:8, 67:23, 97:14

**Yes** [3] - 93:21, 117:3, 123:11

**yes** [25] - 6:22, 8:18, 12:16, 19:2, 19:25, 21:7, 22:9, 22:13, 40:9, 45:24, 46:7, 46:9, 46:12, 48:15, 48:22, 56:17, 81:9, 86:19, 87:5, 93:1, 104:19, 107:13, 112:7, 121:24

**yesterday** [3] - 9:18, 11:10, 19:5

**yet** [7] - 6:10, 7:23, 27:21, 30:16, 69:15, 75:12, 120:22

**YORK** [2] - 1:7, 4:1

**York** [2] - 95:12, 95:14

**you're** [21] - 17:12, 37:14, 37:21, 38:22, 39:1, 49:20, 55:6, 56:19, 56:23, 57:3, 58:13, 63:23, 75:9, 82:16, 83:16, 92:25, 111:24, 117:23, 122:12

**you've** [1] - 45:6

**you-all's** [1] - 128:10

**your** [65] - 5:4, 7:5, 8:3, 8:9, 8:10, 8:11, 10:14, 18:10, 18:11, 21:7, 21:21, 38:14, 42:19, 43:5, 43:8, 47:15, 50:2, 50:8, 52:16, 56:10, 56:12, 60:23, 64:4, 64:5, 64:16, 64:17, 64:22, 65:4, 65:8, 65:11, 76:20, 77:1, 77:6, 78:11, 80:11, 87:7, 89:15, 89:16, 96:10, 96:12, 97:8, 102:17, 104:21, 111:21, 111:22, 111:23, 112:1, 112:18, 112:21, 113:6, 113:9, 113:21, 114:14, 118:6, 118:7, 119:4, 119:21, 124:21

**Your** [118] - 6:13, 8:13, 10:20, 11:3, 11:20, 13:1, 13:10, 13:24, 14:25, 18:23, 19:16, 19:23, 19:25, 20:1, 20:5, 21:2, 21:9, 22:5, 22:13, 40:9, 42:1, 42:17, 45:1, 45:3, 45:12, 47:10, 48:15, 48:18, 49:6, 50:6, 52:2, 62:8, 63:1, 64:14, 64:24, 65:7, 65:12, 65:16, 65:20, 66:8, 66:15, 67:12, 67:17, 68:8, 68:17, 68:23, 68:25, 69:17, 71:1, 71:22, 72:23, 74:18, 75:23, 76:22, 77:13, 78:8, 78:20, 78:23, 80:6, 81:11, 84:12, 84:16, 85:3, 85:25, 86:10, 86:18, 87:2, 87:6, 87:25, 91:5, 91:16, 92:3, 93:1, 93:7, 93:21, 94:2, 94:4, 94:12, 95:10, 96:15, 100:25, 110:12, 110:15, 110:16, 114:1, 114:7, 114:12, 116:10, 116:11, 116:24, 116:25, 117:4, 117:7, 117:15, 117:18, 117:22, 118:14, 119:3, 119:7, 119:16, 119:20, 120:2, 120:15, 121:1, 121:25, 122:8, 122:15, 123:11, 124:16, 125:18, 125:25, 126:2, 126:24, 127:15, 127:19, 127:22, 128:5

**yourself** [5] - 77:16, 88:13, 92:24, 94:6, 122:21

# Z

**Zaheer** [45] - 7:7, 8:1, 15:19, 21:16, 22:18, 22:19, 23:3, 23:4, 23:25, 24:23, 29:2, 29:21, 30:8, 30:20, 31:1, 31:21, 31:24, 31:25, 36:6, 64:18, 65:6, 75:2, 77:8, 77:9, 77:10, 77:17, 78:7, 78:9, 78:16, 90:3, 93:14, 93:17, 94:15, 96:23, 96:25, 98:23, 99:17, 100:8, 106:17, 108:21, 110:1, 110:23, 111:6, 121:4, 126:5

# .

**.** [1] - 3:9

# EXHIBIT B

**Petition for Writ of Injunction Denied and Memorandum Opinion filed December 4, 2023.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

---

## NO. 14-23-00911-CV

---

## IN RE GALLERIA 2425 OWNER, LLC, Relator

---

### ORIGINAL PROCEEDING
### WRIT OF INJUNCTION
### 281st District Court
### Harris County, Texas
### Trial Court Cause No. 2023-22748

---

## MEMORANDUM OPINION

On December 1, 2023, relator Galleria 2425 Owner, LLC filed in this court a petition for a writ of injunction.  *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52.  In its petition, relator asks this court to "issue a writ of injunction to enjoin Lender from foreclosing on the Property during the pendency of the interlocutory appeal."

On November 29, 2023, the Honorable Christine Weems, presiding judge of the 281st District Court of Harris County, denied relator's application for a temporary injunction. Foreclosure by the real party in interest, National Bank of Kuwait S.A.K.P., New York Branch, is allegedly scheduled to take place on December 5, 2023.

In addition to filing the petition for a writ of injunction, on December 1, 2023, relator also filed a notice of appeal from the trial court's order denying the temporary injunction. Tex. Civ. Prac. & Rem. Code § 51.014(a)(4). The interlocutory appeal is pending before this court in *Galleria 2425 Owner, LLC v. National Bank of Kuwait, S.A.K.P., New York Branch,* Case No. 14-23-00909-CV.

Thereafter, relator filed a supplemental petition; the real party in interest filed a response in opposition to the petition; and the relator filed a reply.

Relator has not established that it is entitled to injunctive relief. Accordingly, we deny relator's petition for writ of injunction.

PER CURIAM

Panel consists of Justices Bourliot, Zimmerer, and Spain.

2

# **EXHIBIT C**

1        REPORTER'S RECORD

2      CAUSE NO. 2021-63370

3  GALLERIA 2425 OWNER, LLC    )  IN   THE   DISTRICT   COURT  OF
                               )
4  VS.                         )  HARRIS   COUNTY,   T E X A S
                               )
5  NATIONAL BANK OF KUWAIT,    )
   SAKP, NEW YORK BRANCH,      )
6  A BANKING CORPORATION       )
   ORGANIZED UNDER THE LAWS OF )
7  KUWAIT, ACTING THROUGH ITS  )
   NEW YORK BRANCH, AND        )
8  GEORGE M. LEE               )  281ST   JUDICIAL   DISTRICT

9

10

11  _____

12              **HEARING (SEALED)**

13             **APRIL 12, 2023**

14             **VOLUME 1 OF 1**

15  _____

16

17

18      On the 12th day of April, 2023, the following

19  proceedings came on to be held in the above-titled and

20  numbered cause before the Honorable Christine Weems,

21  Judge Presiding, held in Houston, Harris County, Texas.

22

23      Proceedings reported by computerized stenotype

24  machine.

25

1                          **APPEARANCES**

2 Mr. Jim Wetwiska
  Mr. Nicholas E. Petree
3 AKIN GUMP STRAUSS HAUER & FELD LLP
  1111 Louisiana Street, 44th Floor
4 Houston, Texas  77002
  Telephone:  713-220-5800
5 **Counsel for Plaintiff**

6
  Mr. Charles C. Conrad
7 Mr. Ryan Steinbrunner
  PILLSBURY WINTHROP SHAW PITTMAN LLP
8 909 Fannin Street, Suite 2000
  Houston, Texas  77010
9 Telephone:  713-276-7600
  **Counsel for Defendant National Bank of Kuwait**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Unofficial Copy Office of Marilyn Burgess District Clerk

```
 1                    P R O C E E D I N G S
 2               THE COURT:  Cause No. 2021-63370,
 3   Galleria 2425 Owner, LLC, versus National Bank of Kuwait.
 4               Counsel, please make your appearances for
 5   the record.
 6               MR. CONRAD:  Charles Conrad and Ryan
 7   Steinbrunner for the National Bank of Kuwait.
 8               MR. WETWISKA:  Good morning, Your Honor.
 9   Jim Wetwiska and Nick Petree for Galleria 2425.
10               THE COURT:  Petree?
11               MR. PETREE:  Petree.  Yes, Your Honor.
12               THE COURT:  Okay.  We are here on a motion
13   to stay as well as a motion to appoint a receiver.
14               Y'all were chatting and not able to come
15   to any resolution.  Where are we, and what's going on?
16   Because I thought I got rid of y'all.  Don't take that
17   the wrong way.
18               MR. CONRAD:  Understood, Your Honor.
19               And it's the National Bank of Kuwait's
20   motion to lift the stay --
21               THE COURT:  Uh-huh.
22               MR. CONRAD:  -- and also motion to appoint
23   receiver.
24               THE COURT:  Oh, yeah.  I'm sorry.
25               MR. CONRAD:  So I think it makes sense to
```

```
 1  there's new lighting being installed.  And that's all --
 2                  I'm sorry, Your Honor.  I can't do it all
 3  on my own.
 4                  THE COURT:  It takes a village.
 5                  MR. WETWISKA:  Your Honor, all of those
 6  reasons are critical to just getting this done and
 7  keeping this building in the shape it's in.
 8                  And the reason for the 60 to 90, that
 9  gives me the cover -- the ability to recover from the
10  breach that occurred, because as soon as Mr. Caldwell
11  backed out, we then moved on, and we are now in
12  negotiations.  Like I said, we can talk about it.  I can
13  tell the court who they are.  I've disclosed it to NBK
14  and made them aware.  And they're very serious people
15  working with very serious banks.
16                  60 to 90 days, that's it.  If you want to
17  kick them out after that time, kick them out.
18                  THE COURT:  I'm going to give Mr. Conrad
19  an opportunity to respond.  I know he's just dying to.
20                  MR. WETWISKA:  And look, Your Honor, I
21  appreciate everyone's time.  I know it's difficult.  I
22  appreciate their time.  We have been negotiating and
23  working hard.  Okay?  We have a lot of enemies in the
24  world that are always trying to interfere with stuff,
25  making life difficult; but we deal with it.
```

```
 1              MR. CONRAD:  Just -- I think so.  I mean,
 2   I think I understood the court's inclination here.
 3              THE COURT:  I'll say it out loud.  We're
 4   going to talk about sanctions for the cost of everybody's
 5   time -- I mean, not mine.  I'm a civil servant -- but for
 6   other people who are on the billable-hour track.
 7              MR. CONRAD:  Essentially they're getting
 8   more time; so they have until March 20 and now till, I
 9   guess you're saying, the first Tuesday of July, which is
10   over 90 days.
11              THE COURT:  Right, but it's 60 days from
12   when your foreclosure is.  Your foreclosure is set for
13   May.
14              MR. CONRAD:  That's correct.  But to do
15   what?
16              THE COURT:  To get the money.
17              MR. CONRAD:  To pay the settlement --
18              THE COURT:  To pay the settlement --
19              MR. CONRAD:  -- amount?
20              THE COURT:  Yes.
21              MR. CONRAD:  And, again, we're extending
22   the settlement agreement for them to, you know, honor the
23   settlement agreement.
24              THE COURT:  I know, but it's the easiest
25   way to put this case to bed.  Otherwise, I just see that
```

1                   MR. CONRAD:  Well, I want to make sure

2    that's right.

3                   THE COURT:  On the record, there will not

4    be any TROs to enjoin the foreclosure.  Any TRO you try

5    to file is going to end up in front of me, and I know the

6    whole history of this case.

7                   You asked for time.  You got it.  The time

8    comes at a cost.

9                   So to be clear, there's an 80,000-dollar

10   payment that needs to be made by -- I don't know.  By

11   when?  Friday?

12                  MR. WETWISKA:  Monday.

13                  THE COURT:  Monday.

14                  -- by Monday.  And then May 12, there

15   needs to be another 80,000-dollar payment, and then

16   June 12, there's another 80,000-dollar payment.  It

17   doesn't go into the registry of the court.  It goes

18   directly to the National Bank of Kuwait.

19                  MR. WETWISKA:  What is today?

20                  THE COURT:  Today is the 12th.

21                  MR. WETWISKA:  What day of the week is

22   today?  Wednesday?

23                  THE COURT:  Today is Wednesday, sir.

24                  Oh, let me make sure that none of these

25   fall on a weekend.

```
 1  April 18 --
 2                  THE COURT:  And then May 15 and then
 3  June 15.
 4                  MR. PETREE:  Thank you, Your Honor.
 5                  MR. WETWISKA:  Thank you, Your Honor.
 6                  THE COURT:  And then that amount will be
 7  credited against            .
 8                  MR. WETWISKA:  Thank you.
 9                  THE COURT:  So if you make all three
10  payments --
11                  MR. WETWISKA:  -- I get credit.
12                  THE COURT:  -- don't pat yourself on the
13  back too hard.
14
15                  MR. WETWISKA:  Thank you, Your Honor.
16                  THE COURT:  All right.  But any default --
17  no excuses.
18                  We'll have a hearing on the motion to lift
19  the stay, and then we'll have a conversation about, if we
20  need to, a receiver.
21                  MR. WETWISKA:  Okay.  Thank you.
22                  THE COURT:  All right.  Go get it done.
23                  MR. FISHER:  May we be excused?
24                  THE COURT:  Please.
25                  (Proceedings concluded)
```

Unofficial Copy Office of Marilyn Burgess District Clerk

```
 1                    CAUSE NO. 2021-63370

 2  GALLERIA 2425 OWNER, LLC    )  IN   THE   DISTRICT   COURT OF
                                )
 3  VS.                         )  HARRIS  COUNTY,   T E X A S
                                )
 4  NATIONAL BANK OF KUWAIT,    )
    SAKP, NEW YORK BRANCH,      )
 5  A BANKING CORPORATION       )
    ORGANIZED UNDER THE LAWS OF )
 6  KUWAIT, ACTING THROUGH ITS  )
    NEW YORK BRANCH, AND        )
 7  GEORGE M. LEE               )  281ST   JUDICIAL   DISTRICT
    *************************************************************

 8          I, SHEILA R. SKIDMORE, Official Court Reporter
 9  in and for the 281st Judicial District Court of
    Harris County, Texas, do hereby certify that the
10  foregoing contains a true and correct transcription of
    all portions of evidence and other proceedings requested
11  in writing by counsel for the parties to be included in
    this volume of the Reporter's Record in the above-styled
12  and numbered cause, all of which occurred in open court
    or in chambers and were reported by me.
13
            I further certify that the total cost for the
14  preparation of this Reporter's Record is $1,328.00 and
    will be split by AKIN GUMP STRAUSS HAUER & FELD LLP
15  ($664.00) and PILLSBURY WINTHROP SHAW PITTMAN LLP
    ($664.00).
16
            WITNESS MY OFFICIAL HAND this the 19th day of
17  April, 2023.

18

19

20

21                        /s/Sheila R. Skidmore
                          Sheila R. Skidmore, CSR No. 2346
22                        Official Court Reporter
                          281st District Court
23                        Expiration Date:  5-31-2022
                          201 Caroline, 14th Floor
24                        Houston, Texas  77002
                          Tel 832-927-2128
25
```

**<u>EXHIBIT D</u>**

Unofficial Copy Office of Marilyn Burgess District Clerk

Unofficial Copy Office of Marilyn Burgess District Clerk

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## GALLERIA 2425 JV, LLC
*(a Delaware limited liability company)*

May 23, 2018

TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINITIONS** .................................................................................................. **1**
    **Section 1.1.**    Definitions ................................................................... 1
    **Section 1.2.**    Interpretation ................................................................ 8

**ARTICLE II ORGANIZATION** ........................................................................................... **9**
    **Section 2.1.**    Formation. ..................................................................... 9
    **Section 2.2.**    Name. ............................................................................ 9
    **Section 2.3.**    Principal Office. ............................................................ 9
    **Section 2.4.**    Registered Office; Registered Agent. .......................... 10
    **Section 2.5.**    Purpose; Powers. ......................................................... 10
    **Section 2.6.**    Term ............................................................................ 10
    **Section 2.7.**    Entity Covenants ......................................................... 10

**ARTICLE III MEMBERSHIP INTERESTS** ...................................................................... **13**
    **Section 3.1.**    Membership Schedule ................................................. 13
    **Section 3.2.**    Certification of Membership Interests ......................... 13

**ARTICLE IV CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS** ........................... **14**
    **Section 4.1.**    Initial Capital Contributions ....................................... 14
    **Section 4.2.**    Additional Capital Contributions ................................ 14
    **Section 4.3.**    Maintenance of Capital Accounts ............................... 16
    **Section 4.4.**    Succession Upon Transfer .......................................... 16
    **Section 4.5.**    Negative Capital Accounts .......................................... 17
    **Section 4.6.**    No Withdrawals From Capital Accounts ..................... 17
    **Section 4.7.**    Treatment of Loans From Members ............................ 17
    **Section 4.8.**    Modifications .............................................................. 17
    **Section 4.9.**    Company Expenses ...................................................... 17

**ARTICLE V MEMBERS** .................................................................................................... **18**
    **Section 5.1.**    Members Schedule ...................................................... 18
    **Section 5.2.**    Admission of New Members ....................................... 18
    **Section 5.3.**    Representations and Warranties of Members .............. 18
    **Section 5.4.**    No Personal Liability ................................................... 19
    **Section 5.5.**    No Withdrawal ............................................................ 20
    **Section 5.6.**    No Interest in Company Property ................................. 20

**ARTICLE VI ALLOCATIONS** ........................................................................................... **20**
    **Section 6.1.**    Allocation of Net Income and Net Loss ...................... 20
    **Section 6.2.**    Regulatory and Special Allocations ............................ 20
    **Section 6.3.**    Tax Allocations ........................................................... 21
    **Section 6.4.**    Allocations in Respect of Transferred Membership Interests ...................... 22

**ARTICLE VII DISTRIBUTIONS** ....................................................................................... **22**
    **Section 7.1.**    Distributions of Cash Flow and Capital Proceeds. ..... 22
    **Section 7.2.**    Tax Withholding; Withholding Advances .................... 22
    **Section 7.3.**    Distributions in Kind. ................................................. 24

**ARTICLE VIII MANAGEMENT** ........................................................................................ **24**
    **Section 8.1.**    Management of the Company. ..................................... 24
    **Section 8.2.**    Actions Requiring Approval of Members ................... 24
    **Section 8.3.**    Irrevocable Proxy ........................................................ 26

| | | |
|---|---|---|
| **Section 8.4.** | Officers | 26 |
| **Section 8.5.** | Action Without Meeting | 26 |
| **Section 8.6.** | Informational Rights | 26 |
| **Section 8.7.** | Budget | 26 |
| **Section 8.8.** | Deadlock | 27 |
| **Section 8.9.** | Other Activities; Business Opportunities | 28 |
| **ARTICLE IX COMPANY OPERATIONS** | | **28** |
| **Section 9.1.** | Acquisition of Underlying Investment | 28 |
| **Section 9.2.** | Asset Management Fee | 28 |
| **Section 9.3.** | Debt and Equity Placement Fee | 28 |
| **Section 9.4.** | Sale of the Underlying Investment | 28 |
| **Section 9.5.** | Management of Underlying Investment | 29 |
| **ARTICLE X EXCULPATION AND INDEMNIFICATION** | | **30** |
| **Section 10.1.** | Exculpation of Covered Persons | 30 |
| **Section 10.2.** | Liabilities and Duties of Covered Persons | 30 |
| **Section 10.3.** | Indemnification | 31 |
| **Section 10.4.** | Survival | 33 |
| **ARTICLE XI TRANSFER** | | **33** |
| **Section 11.1.** | Restrictions on Transfer | 33 |
| **Section 11.2.** | Permitted Transfers | 34 |
| **ARTICLE XII ACCOUNTING; TAX MATTERS** | | **34** |
| **Section 12.1.** | Financial Statements | 34 |
| **Section 12.2.** | Inspection Rights | 34 |
| **Section 12.3.** | Income Tax Status | 34 |
| **Section 12.4.** | Partnership Representative | 35 |
| **Section 12.5.** | Tax Returns | 35 |
| **Section 12.6.** | Company Funds | 36 |
| **ARTICLE XIII DISSOLUTION AND LIQUIDATION** | | **36** |
| **Section 13.1.** | Events of Dissolution | 36 |
| **Section 13.2.** | Effectiveness of Dissolution | 36 |
| **Section 13.3.** | Liquidation | 36 |
| **Section 13.4.** | Cancellation of Certificate | 37 |
| **Section 13.5.** | Survival of Rights, Duties, and Obligations | 37 |
| **Section 13.6.** | Recourse for Claims | 37 |
| **ARTICLE XIV MISCELLANEOUS** | | **38** |
| **Section 14.1.** | Expenses | 38 |
| **Section 14.2.** | Further Assurances | 38 |
| **Section 14.3.** | Confidentiality | 38 |
| **Section 14.4.** | Notices | 39 |
| **Section 14.5.** | Headings | 39 |
| **Section 14.6.** | Severability | 39 |
| **Section 14.7.** | Entire Agreement | 40 |
| **Section 14.8.** | Successors and Assigns | 40 |
| **Section 14.9.** | No Third-party Beneficiaries | 40 |
| **Section 14.10.** | Amendment | 40 |
| **Section 14.11.** | Waiver | 40 |
| **Section 14.12.** | Governing Law | 40 |
| **Section 14.13.** | Submission to Jurisdiction | 40 |

**Section 14.14.**   WAIVER OF JURY TRIAL ................................................................. 41
**Section 14.15.**   Equitable Remedies ......................................................................... 41
**Section 14.16.**   Attorneys' Fees .............................................................................. 41
**Section 14.17.**   Remedies Cumulative ..................................................................... 41
**Section 14.18.**   Counterparts ................................................................................... 41

Unofficial Copy Office of Marilyn Burgess District Clerk

## AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

This Amended and Restated Limited Liability Company Agreement of Galleria 2425 JV, LLC, a Delaware limited liability company (the "**Company**"), is entered into as of May 23, 2018 (the "**Effective Date**") by and between Galleria West Loop Investments II LLC, a Texas limited liability company (the "**GWLI II Member**"), and Naissance Capital Real Estate, LLC a Delaware limited liability company (the "**Naissance Member**").

<u>PRELIMINARY STATEMENTS</u>

A.  The Company was formed under the laws of the State of Delaware by the filing of a Certificate of Formation (the "**Certificate**") with the Secretary of State of the State of Delaware on April 4, 2018.

B.  This Agreement amends and restates, in its entirety, that certain Limited Liability Company Agreement of the Company dated as of April 4, 2018.

C.  The Members desire to enter into this Agreement to reflect, among other things, the terms, and conditions governing the operation and management of the Company.

<u>AGREEMENT</u>

In consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

**Section 1.1.    Definitions**.  Capitalized terms used herein and not otherwise defined will have the meanings set forth in this <u>Section 1.1</u>:

"**Additional Capital Contribution**" has the meaning set forth in <u>Section 4.2(a)</u>.

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

(a)    crediting to such Capital Account any amount that such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1), and 1.704-2(i); and

(b)    debiting to such Capital Account the items described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5), and (6).

"**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person.  For purposes of this definition, "control," when used with respect to any specified Person, will mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership

interests, by contract or otherwise; and the terms "controlling" and "controlled" will have correlative meanings.

"**Agreement**" means this Amended and Restated Limited Liability Company Agreement, as executed and as it may be amended, modified, supplemented, or restated from time to time, as provided herein.

"**Applicable Law**" means all applicable provisions of: (a) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations, or orders of any Governmental Authority; (b) any consents or approvals of any Governmental Authority; and (c) any orders, decisions, advisory or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

"**Article 8 Matter**" means any action, decision, determination or election by Mortgage Borrower or its member(s) that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Uniform Commercial Code, and all other matters related to any such action, decision, determination or election.

"**Available Cash**" means, for any period of computation, the excess, if any, of (a) the sum of (i) all cash receipts of the Company during that period from whatever source and (ii) any cash reserves of the Company existing at the start of that period less (b) the sum of (i) all cash amounts paid or payable (without duplication) in that period on account of any expenses of any type whatsoever incurred in connection with the Company's business (including capital expenditures, operating expenses, all fees and other amounts payable under the Agreement, taxes, amortization and interest on any indebtedness of the Company or any Subsidiary of the Company, expenses incurred in connection with the satisfaction of any such indebtedness or the incurrence of additional indebtedness or any refinancing of indebtedness, and (ii) any cash reserves as contemplated in the Budget, including revisions to the Budget pursuant to <u>Section 8.7(b)</u>, as determined by the Managing Member in its sole discretion.

"**Bankruptcy**" means, with respect to a Member, the occurrence of any of the following: (a) the filing of an application by such Member for, or a consent to, the appointment of a trustee of such Member's assets; (b) the filing by such Member of a voluntary petition in bankruptcy or the filing of a pleading in any court of record admitting in writing such Member's inability to pay its debts as they come due; (c) the making by such Member of a general assignment for the benefit of such Member's creditors; (d) the filing by such Member of an answer admitting the material allegations of, or such Member's consenting to, or defaulting in answering a bankruptcy petition filed against such Member in any bankruptcy proceeding; or (e) the expiration of sixty (60) days following the entry of an order, judgment or decree by any court of competent jurisdiction adjudicating such Member a bankrupt or appointing a trustee of such Member's assets.

"**BBA**" has the meaning set forth in <u>Section 12.4(a)</u>.

"**BBA Procedures**" has the meaning set forth in <u>Section 12.4(c)</u>.

"**Book Depreciation**" means, with respect to any Company asset for each Fiscal Year, the Company's depreciation, amortization, or other cost recovery deductions determined for federal income tax purposes, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Book Depreciation will be an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; provided that, if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the

asset is positive, Book Depreciation will be determined with reference to such beginning Book Value using any permitted method selected by the Managing Member in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g)(3).

"**Book Value**" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a)     the initial Book Value of any Company asset contributed by a Member to the Company will be the gross Fair Market Value of such Company asset as of the date of such contribution;

(b)     immediately prior to the distribution by the Company of any Company asset to a Member, the Book Value of such asset will be adjusted to its gross Fair Market Value as of the date of such distribution;

(c)     the Book Value of all Company assets will be adjusted to equal their respective gross Fair Market Values, as reasonably determined by the Members, as of the following times:

(i)     the acquisition of an additional Membership Interest by a new or existing Member in consideration for more than a *de minimis* Capital Contribution;

(ii)    the distribution by the Company to a Member of more than a *de minimis* amount of property (other than cash) as consideration for all or a part of such Member's Membership Interest; and

(iii)   the liquidation of the Company within the meaning of Treasury Regulations Section 1.704-1(b)(2)(ii)(g);

provided that, adjustments pursuant to <u>clauses (i)</u> and <u>(ii)</u> above need not be made if the Managing Member reasonably determines that such adjustment is not necessary or appropriate to reflect the relative economic interests of the Members and that the absence of such adjustment does not adversely and disproportionately affect any Member;

(d)     the Book Value of each Company asset will be increased or decreased, as the case may be, to reflect any adjustments to the adjusted tax basis of such Company asset pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(m); provided that, Book Values will not be adjusted pursuant to this <u>paragraph (d)</u> to the extent that an adjustment pursuant to <u>paragraph (c)</u> above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this <u>paragraph (d)</u>; and

(e)     if the Book Value of a Company asset has been determined pursuant to <u>paragraph (a)</u> or adjusted pursuant to <u>paragraphs (c)</u> or <u>(d)</u> above, such Book Value will thereafter be adjusted to reflect the Book Depreciation taken into account with respect to such Company asset for purposes of computing Net Income and Net Losses.

"**Budget**" has the meaning set forth in <u>Section 8.7(a)</u>.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the City of New York are authorized or required to close.

"**Buy-out Price**" has the meaning set forth in Section 8.8(b).

"**Buy-Sell Election Date**" has the meaning set forth in Section 8.8(b).

"**Buy-Sell Offer Notice**" has the meaning set forth in Section 8.8(b).

"**Capital Account**" has the meaning set forth in Section 4.3.

"**Capital Contribution**" means, for any Member, the total amount of cash and cash equivalents and the Book Value of any property actually contributed to the Company by such Member, including, for purposes of clarity, any Additional Capital Contributions.

"**Capital Transaction**" means (i) the sale, exchange, condemnation, casualty loss, or other disposition (whether voluntary or involuntary) of the Underlying Investment or the SPV, but specifically excluding any dispositions of personal property and equipment in the ordinary course of business, (ii) recovery of damage awards and insurance proceeds (other than business or rental interruption insurance proceeds), and/or (iii) net proceeds (if any) from the placement of mortgage debt or other financing upon the Company's property (including the Underlying Investment), or other indebtedness secured by the Underlying Investment or any ownership interest therein, or any refinancing thereof, in each case as expressly permitted pursuant to the terms and provisions of this Agreement.

"**Certificate**" has the meaning set forth in the Preliminary Statements.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company**" has the meaning set forth in the preamble of this Agreement.

"**Company Interest Rate**" has the meaning set forth in Section 7.2(c).

"**Company Lender**" means any Person providing credit or cash to the Company where the indebtedness obligation(s) of the Company is secured by assets of, or equity interests in, the Company.

"**Company Minimum Gain**" means "partnership minimum gain" as defined in Treasury Regulations Section 1.704-2(b)(2), substituting the term "Company" for the term "partnership" as the context requires.

"**Confidential Information**" has the meaning set forth in Section 14.3(a).

"**Contributing Member**" has the meaning set forth in Section 4.2(b).

"**Covered Person**" has the meaning set forth in Section 10.1(a).

"**Cram-Down Contribution**" has the meaning set forth in Section 4.2(c).

"**Default Amount**" has the meaning set forth in Section 4.2(b).

"**Default Loan**" has the meaning set forth in Section 4.2(b).

"**Default Rate**" has the meaning set forth in Section 4.2(b).

"**Delaware Act**" means the Delaware Limited Liability Company Act, Title 6, Chapter 18, §§18-101, et seq, and any successor statute, as it may be amended from time to time.

"**Effective Date**" has the meaning set forth in the preamble of this Agreement.

"**Election Notice**" has the meaning set forth in Section 9.4(c).

"**Electronic Transmission**" means any form of communication not directly involving the physical transmission of paper that creates a record that may be retained, retrieved and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

"**Equity Interest**" has the meaning set forth in Section 8.3.

"**Evoking Member**" has the meaning set forth in Section 9.4(b).

"**Fair Market Value**" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined jointly by the Members.

"**Fiscal Year**" means the calendar year, unless the Company is required to have a taxable year other than the calendar year, in which case Fiscal Year will be the period that conforms to its taxable year.

"**GAAP**" means United States generally accepted accounting principles in effect from time to time.

"**Governmental Authority**" means any federal, state, local, or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations, or orders of such organization or authority have the force of law), or any arbitrator, court, or tribunal of competent jurisdiction.

"**GWLI II Member**" has the meaning set forth in the preamble of this Agreement.

"**Initiating Member**" has the meaning set forth in Section 8.8(b).

"**Lender**" has the meaning set forth in Section 2.7(a).

"**Liquidator**" has the meaning set forth in Section 13.3(a).

"**Loan**" has the meaning set forth in Section 2.7(a).

"**Loan Agreement**" has the meaning set forth in Section 2.7(a).

"**Losses**" has the meaning set forth in Section 10.3(a).

"**Managing Member**" means, initially, the Naissance Member, or such other Member as may be designated or become the Managing Member pursuant to the terms of this Agreement.

"**Member**" means (a) the GWLI II Member and the Naissance Member, and (b) each Person who is hereafter admitted as a member of the Company in accordance with the terms of this Agreement and the Delaware Act. The Members will constitute the "members" (as that term is defined in the Delaware Act) of the Company.

"**Member Nonrecourse Debt**" means "partner nonrecourse debt" as defined in Treasury Regulations Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if the Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulations Section 1.704-2(i)(3).

"**Member Nonrecourse Deduction**" means "partner nonrecourse deduction" as defined in Treasury Regulations Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"**Membership Interest**" means an equity interest in the Company owned by a Member, which ownership is evidence of a Member's right to: (a) a distributive share of Net Income, Net Loss, and other items of income, gain, loss, and deduction of the Company; (b) a distributive share of the assets of the Company; (c) vote on, consent to, or otherwise participate in any decision of the Members; and (d) any and all other benefits that a Member may be entitled; each as further provided in this Agreement and the Delaware Act; provided that, the Membership Interest Percentage of a Member (relative to other Members) may not be determinative with respect to the amount of such Member's distributive share of any assets of the Company.

"**Membership Interest Percentage**" means, with respect to any Member, the fractional portion (expressed as a percentage) of the Membership Interest held by such Member relative to all other Members and, unless otherwise set forth in this Agreement, determined by dividing (i) the Capital Contributions of such Member by (ii) the Capital Contributions of all Members.

"**Members Schedule**" has the meaning set forth in Section 5.1.

"**Naissance Member**" has the meaning set forth in the preamble of this Agreement.

"**Net Income**" and "**Net Loss**" mean, for each Fiscal Year or other period specified in this Agreement, an amount equal to the Company's taxable income or taxable loss, or particular items thereof, determined in accordance with Code Section 703(a) (where, for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code Section 703(a)(1) will be included in taxable income or taxable loss), but with the following adjustments:

(a)     any income realized by the Company that is exempt from federal income taxation, as described in Code Section 705(a)(1)(B), will be added to such taxable income or taxable loss notwithstanding that such income is not includable in gross income;

(b)     any expenditures of the Company described in Code Section 705(a)(2)(B), including any items treated under Treasury Regulations Section 1.704-1(b)(2)(iv)(I) as items described in Code Section 705(a)(2)(B), will be subtracted from such taxable income or taxable loss, notwithstanding that such expenditures are not deductible for federal income tax purposes;

(c)     any gain or loss resulting from any disposition of Company property with respect to which gain or loss is recognized for federal income tax purposes will be computed by reference to the Book Value of the property so disposed, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

(d) any items of depreciation, amortization and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted tax basis will be computed by reference to the property's Book Value (as adjusted for Book Depreciation) in accordance with Treasury Regulations Section 1.704-1(b)(2)(iv)(g);

(e) if the Book Value of any Company property is adjusted as provided in the definition of Book Value, then the amount of such adjustment will be treated as an item of gain or loss and included in the computation of such taxable income or taxable loss; and

(f) to the extent an adjustment to the adjusted tax basis of any Company property pursuant to Code Sections 732(d), 734(b), or 743(b) is required, pursuant to Treasury Regulations Section 1.704 1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts will be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis).

"**Non-Contributing Member**" has the meaning set forth in Section 4.2(b).

"**Non-Managing Members**" means at any time a Member that is not the Managing Member.

"**Nonrecourse Deductions**" has the meaning set forth in Treasury Regulations Section 1.704-2(b).

"**Nonrecourse Liability**" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"**Officers**" has the meaning set forth in Section 8.4.

"**Owner SPV**" has the meaning set forth in Section 2.5(a)(i).

"**Partnership Representative**" has the meaning set forth in Section 12.4(a).

"**Permitted Transfer**" means a Transfer of Membership Interests carried out pursuant to Section 11.2. "**Permitted Transferee**" means a recipient of a Permitted Transfer.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

"**Pledge Agreement**" has the meaning set forth in Section 2.7(a).

"**Property Offer Notice**" has the meaning set forth in Section 9.4(a).

"**Property Sale Election**" has the meaning set forth in Section 9.4(b).

"**Property Sale Notice**" has the meaning set forth in Section 9.4(c).

"**Property Sale Offer**" has the meaning set forth in Section 9.4(b).

"**Purchasing Member**" has the meaning set forth in Section 8.8(d).

"**Regulatory Allocations**" has the meaning set forth in Section 6.2(e).

"**Related Party Agreement**" means any agreement, arrangement, or understanding between the Company and any Member or any Affiliate of a Member or any officer or employee of the Company, as such agreement may be amended, modified, supplemented, or restated in accordance with the terms of this Agreement.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants, and other agents of such Person.

"**Responding Member**" has the meaning set forth in Section 8.8(b).

"**Response Notice**" has the meaning set forth in Section 8.8(c).

"**Securities Act**" means the Securities Act of 1933, as amended, or any successor federal statute, and the rules and regulations thereunder, which will be in effect at the time.

"**Sell-out Price**" has the meaning set forth in Section 8.8(b).

"**Selling Member**" has the meaning set forth in Section 8.8(d).

"**Subsidiary**" means, with respect to any Person, any other Person of which a majority of the outstanding shares or other equity interests having the power to vote for directors or comparable managers are owned, directly or indirectly, by the first Person.

"**Taxing Authority**" has the meaning set forth in Section 7.2(b).

"**Transfer**" means to, directly or indirectly, sell, transfer, assign, pledge, encumber, hypothecate, or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option, or other arrangement or understanding with respect to the sale, transfer, assignment, pledge, encumbrance, hypothecation, or similar disposition. "**Transfer**" when used as a noun will have a correlative meaning. "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

"**Treasury Regulations**" means the final or temporary regulations issued by the United States Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"**Underlying Investment**" has the meaning set forth in Section 2.5(a)(ii).

"**Withholding Advances**" has the meaning set forth in Section 7.2(b).

**Section 1.2.    Interpretation.**

(a)    For purposes of this Agreement:

    (i)    the words "include," "includes," and "including" will be deemed to be followed by the words "without limitation";

    (ii)    the word "or" is not exclusive; and

    (iii)    the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole.

(b)     The definitions given for any defined terms in this Agreement will apply equally to both the singular and plural forms of the terms defined.

(c)     Whenever the context may require, any pronoun will include the corresponding masculine, feminine, and neuter forms.

(d)     Unless the context otherwise requires, references in this Agreement:

(i)     to articles, sections, and exhibits mean the articles and sections of, and exhibits attached to, this Agreement;

(ii)    to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented, and modified from time to time to the extent permitted by the provisions thereof; and

(iii)   to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.

(e)     This Agreement will be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

(f)     The exhibits referred to herein will be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

**ARTICLE II**
**ORGANIZATION**

**Section 2.1.     Formation.**

(a)     The Company was formed pursuant to the provisions of the Delaware Act upon the filing of the Certificate with the Secretary of State of the State of Delaware, and the Members desire to continue such limited liability company pursuant to the Delaware Act and this Agreement.

(b)     This Agreement will constitute the "limited liability company agreement" (as that term is used in the Delaware Act) of the Company.  The rights, powers, duties, obligations, and liabilities of the Members will be determined pursuant to the Delaware Act and this Agreement.  To the extent that the rights, powers, duties, obligations, and liabilities of any Member are different by reason of any provision of this Agreement than they would be under the Delaware Act in the absence of such provision, this Agreement will, to the extent permitted by the Delaware Act, control.

**Section 2.2.     Name**.  The name of the Company is "Galleria 2425 JV, LLC" or such other name or names as may be designated by the Managing Member; provided that, the name will always contain the words "Limited Liability Company" or the abbreviation "L.L.C." or the designation "LLC."  The Managing Member will give prompt notice to the Members of any change to the name of the Company.

**Section 2.3.     Principal Office**.  The principal office of the Company is located at 6501 Westchester Ave., Houston Texas 77005, or such other place as may from time to time be determined by the Managing Member.  The Managing Member will give prompt notice of any such change to each of the Members.

**Section 2.4.    Registered Office; Registered Agent.**

(a)    *Registered Office*.  The registered office of the Company will be the office of the initial registered agent named in the Certificate or such other office (which need not be a place of business of the Company) as the Managing Member may designate from time to time in the manner provided by the Delaware Act and Applicable Law.

(b)    *Registered Agent*.  The registered agent for service of process on the Company in the State of Delaware will be the initial registered agent named in the Certificate or such other Person or Persons as the Managing Member may designate from time to time in the manner provided by the Delaware Act and Applicable Law.

**Section 2.5.    Purpose; Powers.**

(a)    The purposes of the Company are to:

(i)    own (as the sole member) one hundred percent (100%) of the equity ownership interest in Galleria 2425 Owner, LLC, a Delaware limited liability company (including any successors and assigns, the "**Owner SPV**");

(ii)    cause the Owner SPV to acquire real property and improvements located at 2425 West Loop South, Houston, Texas, 77027 (such real property and, the "**Underlying Investment**");

(iii)    directly or indirectly facilitating (A) the renovation, rehabilitation, and installation of improvements to the Underlying Investment, and (B) the operation of the Underlying Investment for the production of a profit;

(iv)    refinancing, selling, or otherwise disposing of, in whole or in part, the Underlying Investment or the SPV;

(v)    causing the Company and the SPV to incur indebtedness to enable the activities set forth in <u>Section 2.5(a)(ii)-(iv)</u>; and

(vi)    engage in any and all activities necessary or incidental to the foregoing clauses, as determined by the Managing Member in its sole discretion.

(b)    The Company will have all the powers necessary or convenient to carry out the purposes for which it is formed, including the powers granted by the Delaware Act.

(c)    The Company may execute, deliver, and perform all contracts, agreements and other undertakings and engage in all activities and transactions as may in the opinion of the Managing Member be necessary or advisable to achieve the purposes of the Company.

**Section 2.6.    Term**.  The term of the Company commenced on the date the Certificate was filed with the Secretary of State of the State of Delaware and will continue in existence perpetually until the Company is dissolved in accordance with the provisions of this Agreement.

**Section 2.7.    Entity Covenants**. Capitalized terms used but not defined in this Section shall have the meanings defined in that certain Mezzanine Loan Agreement (the "**Loan Agreement**") between the Company and Naissance Galleria, LLC, a Cayman Islands limited liability company (the "**Lender**"),

pursuant to which the Company will become indebted to the Lender in the amount of approximately $16,100,000 (the "**Loan**"). Borrower hereby represents and warrants to, and covenants with, Lender that since the date of its formation and at all times on and after the date hereof and until such time as the Obligations shall be paid and performed in full:

(a)     *Single Purpose of Borrower.* The sole purpose of Borrower is to (1) acquire, own, hold, and maintain equity interests in Mortgage Borrower (the "**Equity Interests**"); (2) serve as the borrower and perform its obligations under the Loan Documents in connection with the Loan; (3) serve as the sole member of Mortgage Borrower and deal with Mortgage Borrower to the extent permitted under the Loan Documents and the documents evidencing or securing the Mortgage Loan to Mortgage Borrower, and (4) subject to Section 2.7(b), to engage in any other business or activity that may be incidental, proper, advisable or convenient to accomplish the foregoing purposes (including, without limitation, obtaining financing therefor) and that is not forbidden by the law of any jurisdiction in which Borrower engages in that business.

(b)     *Single Purpose Entity/Separateness.* Until the Loan is paid in full, Borrower shall remain a Single Purpose Entity. A "Single Purpose Entity" means a limited liability company which contains provisions in its organizational documents similar to the provisions set forth in this Section 2.7(b). At all times since its formation and thereafter, Borrower:

(i)     was, and will be, organized solely for the purpose of owning 100% of the direct or indirect Equity Interests;

(ii)     has not, and will not, engage in any business unrelated to the ownership of 100% of the direct or indirect Equity Interests;

(iii)     has not and will not own any asset or property other than 100% of the direct or indirect Equity Interests;

(iv)     to the fullest extent permitted by law, has not and will not engage in, seek or consent to any dissolution, winding up, liquidation, consolidation or merger, in whole or in part, and, except as otherwise expressly permitted by the Loan Agreement or consented to by Lender in writing, has not and will not engage in, seek or consent to any asset sale, transfer of limited liability company interests, or amendment of its certificate of formation or the Loan Agreement;

(v)     has not failed, and will not fail, to correct any known misunderstanding regarding its separate identity;

(vi)     has maintained, and will maintain, its books, records, financial statements, accounting records, bank accounts and other entity documents in its own name and separate from any other Person;

(vii)     has maintained, and will maintain, its books, records, resolutions and agreements as official records;

(viii)     has not commingled, and will not commingle, its funds or other assets with those of any other Person;

(ix)     has held, and will hold, its assets in its own name, and has maintained, and will maintain, its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its assets from those of any other Person;

(x)      has conducted, and will conduct, its business in its name;

(xi)     has filed, and will file, its own tax returns (to the extent required to file any tax returns) and has not and will not file a consolidated federal income tax return with any other Person;

(xii)    is and intends to remain solvent, and has paid and will pay its own debts and liabilities out of its own funds and assets (to the extent of such funds and assets) as the same shall become due, and will give prompt written notice to Lender of the insolvency or bankruptcy filing of Borrower or the death, insolvency or bankruptcy filing of Guarantor;

(xiii)   has done or caused to be done, and will do or cause to be done, all things necessary to observe all limited liability company formalities and preserve its existence and good standing, and, has not, and without the prior written consent of Lender, will not, amend, modify or otherwise change any of the single purpose, separateness or bankruptcy remote provisions or requirements of the Loan Agreement or other organizational documents (except as required by law);

(xiv)    has maintained and will maintain an arms-length relationship with its Affiliates,

(xv)     has and will have no indebtedness other than the Loan and unsecured trade payables in the ordinary course of business relating to the ownership of 100% of the direct or indirect interests in Mortgage Borrower which (i) do not exceed, at any time, $25,000.00 and (ii) are paid within sixty (60) days of the date incurred;

(xvi)    has not and will not assume, guarantee, become obligated for or hold out its credit as being available to satisfy the debts or obligations of any other Person, or the decisions or actions respecting the daily business or affairs of any other Person, except Mortgage Borrower;

(xvii)   has not acquired and will not acquire obligations or securities of any other Person, except Mortgage Borrower;

(xviii)  has allocated and will allocate fairly and reasonably shared expenses, including, without limitation, shared office space, and has maintained and utilized and will maintain and utilize separate stationery, invoices and checks bearing its own name;

(xix)    has not and will not pledge its assets for the benefit of any other Person;

(xx)     has held and identified itself and will hold itself out to the public as a legal entity separate and distinct from any other Person and under its own name;

(xxi)    has not made and will not make loans or advances to any Person;

(xxii)   has not and will not identify itself or any of its Affiliates as a division or part of the other;

(xxiii)  has not entered and will not enter into any transaction, contract or agreement with its members or its Affiliates except in the ordinary course of its business and on terms which are intrinsically fair and are no less favorable to it than would be obtained in a comparable arms-length transaction with an unrelated third party and which are fully disclosed to Lender in writing in advance;

(xxiv)  has paid and will pay the salaries of its own employees from its own funds (to the extent of such funds) and has maintained and intends to maintain a sufficient number of employees in light of its contemplated business operations; provided, however, the foregoing shall not require Member to make additional capital contributions to Borrower;

(xxv)  has maintained and intends to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; provided, however, the foregoing shall not require Member to make additional capital contributions to Borrower;

(xxvi)  other than in connection with the day to day operations of the Property, has not permitted and will not permit any Affiliate independent access to its bank accounts;

(xxvii)  to the fullest extent permitted by law has considered and will consider the interests of Borrower, including its creditors, in connection with all of its limited liability company actions; and

(xxviii)  has caused and will cause its agents and other representatives to act at all times with respect to such entity consistently and in furtherance of the foregoing and in the best interests of such entity.

# ARTICLE III
# MEMBERSHIP INTERESTS

**Section 3.1.    Membership Schedule.**  The aggregate equity ownership interests in the Company will be represented by issued and outstanding Membership Interests, which will initially be in a single type and class.

**Section 3.2.    Certification of Membership Interests**

(a)  The Managing Member may, but will not be required to, issue certificates to the Members representing the Membership Interest and Membership Interest Percentage held by such Member.

(b)  In the event the Managing Member issues certificates representing Membership Interests in accordance with Section 3.2(a), then in addition to any other legend required by Applicable Law, all certificates representing issued and outstanding Membership Interests will bear a legend substantially in the following form:

THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO A LIMITED LIABILITY COMPANY AGREEMENT AMONG THE COMPANY AND ITS MEMBERS, A COPY OF WHICH IS ON FILE AT THE PRINCIPAL EXECUTIVE OFFICE OF THE COMPANY.  NO TRANSFER, SALE, ASSIGNMENT, PLEDGE, HYPOTHECATION, OR OTHER DISPOSITION OF THE MEMBERSHIP INTEREST REPRESENTED

BY THIS CERTIFICATE MAY BE MADE EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF SUCH LIMITED LIABILITY COMPANY AGREEMENT.

THE MEMBERSHIP INTEREST REPRESENTED BY THIS CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS AND MAY NOT BE TRANSFERRED, SOLD, ASSIGNED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED EXCEPT PURSUANT TO (A) A REGISTRATION STATEMENT EFFECTIVE UNDER SUCH ACT AND LAWS, OR (B) AN EXEMPTION FROM REGISTRATION THEREUNDER.

## ARTICLE IV
## CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNTS

**Section 4.1.    Initial Capital Contributions**.  Contemporaneously with the execution of this Agreement, each Member has made an initial contribution of capital to the Company and is deemed to own the Membership Interest Percentage set forth opposite such Member's name on the Members Schedule.  The Managing Member will update the Members Schedule upon the issuance or Transfer of any Membership Interest to any new or existing Member in accordance with this Agreement.  Capital Contributions will be used by the Company (i) to pay expenses of the Company (in accordance with the Budget), (ii) to establish Reserves (as provided herein), and (iii) as otherwise determined by the Managing Member to be related to the object and purpose of the Company (as set forth in Section 2.5(a))

**Section 4.2.    Additional Capital Contributions**

(a)    The Members will make additional in-cash contributions of capital to the Company in proportion to their respective Membership Interest Percentages, as determined by the Managing Member from time to time to be reasonably necessary to pay any operating, capital, or other expenses relating to the business of the Company (such additional contributions of capital, the "**Additional Capital Contributions**"), provided that, such Additional Capital Contributions will not exceed corresponding amounts expressly provided for in the Budget, as it may be amended from time to time.  Upon the Managing Member making such determination for Additional Capital Contributions, the Managing Member will deliver to the Non-Managing Member(s) a written notice of the Company's need for Additional Capital Contributions, which notice will specify in reasonable detail (i) the purpose for such Additional Capital Contributions, (ii) the aggregate amount of such Additional Capital Contributions, (iii) each Member's share of such aggregate amount of Additional Capital Contributions based upon each such Member's Membership Interest Percentage, and (iv) the date (which date will not be less than three (3) Business Days from the date that such notice is given) on which such Additional Capital Contributions will be required to be made by the Members.

(b)    If any Member will fail to timely make, or notifies the other Member(s) that it will not make, all or any portion of any Additional Capital Contribution that such Member is obligated to make under Section 4.2(a), then such Member will be deemed to be a "**Non-Contributing Member**." Any Member who timely makes 100% of the Additional Capital Contribution that such Member is obligated to make under Section 4.2(a) (each, a "**Contributing Member**") will be entitled, but not obligated, to loan to a Non-Contributing Member, by contributing to the Company on its behalf, all or any part of the amount (the "**Default Amount**") that such Non-Contributing Member failed to contribute to the Company (each such loan, a "**Default Loan**").  Such Default

Loan will be treated as an Additional Capital Contribution by the Non-Contributing Member. Each Default Loan will bear interest (compounded monthly on the first day of each calendar month) on the unpaid principal amount thereof from time to time remaining from the date advanced until repaid, at the lesser of (i) 15% per annum, or (ii) the maximum rate permitted at law (the "**Default Rate**"). Each Default Loan will be recourse solely to the Non-Contributing Member's Membership Interest. Default Loans will be repaid out of the distributions that would otherwise be made to the Non-Contributing Member under ARTICLE VII or ARTICLE XIV, as more fully provided for in Section 4.2(d). So long as a Default Loan is outstanding, the Non-Contributing Member will have the right to repay the Default Loan (and interest then due and owing) in whole or in part. Upon the repayment in full of all Default Loans (but not upon their conversion as provided in Section 4.2(c)) made in respect of a Non-Contributing Member (and so long as the Non-Contributing Member is not otherwise a Non-Contributing Member), such Non-Contributing Member will cease to be a Non-Contributing Member.

(c)     At any time after the date six (6) months after a Default Loan is made, at the option of the Contributing Member, (i) such Default Loan will be converted into an Additional Capital Contribution of the Contributing Member in an amount equal to the principal and unpaid interest on such Default Loan pursuant to this Section 4.2(c), (ii) the Non-Contributing Member will be deemed to have received a distribution, pursuant to ARTICLE VII, of an amount equal to the principal and unpaid interest on such Default Loan, (iii) such distribution will be deemed paid to the Contributing Member in repayment of the Default Loan, (iv) such amount will be deemed contributed by the Contributing Member as an Additional Capital Contribution (a "**Cram-Down Contribution**"), and (v) the Contributing Member's Capital Account will be increased by, and the Non-Contributing Member's Capital Account will be decreased by, an amount equal to the principal and unpaid interest on such Default Loan. A Cram-Down Contribution will be deemed an Additional Capital Contribution by the Contributing Member making (or deemed making) such Cram-Down Contribution as of the date such Cram-Down Contribution is made or the date on which such Default Loan is converted to a Cram-Down Contribution. At the time of a Cram-Down Contribution, the Membership Interest Percentage of the Contributing Member will be increased proportionally by the amount of such contribution, thereby diluting the Membership Interest Percentage of the Non-Contributing Member. Once a Cram-Down Contribution has been made (or deemed made), no subsequent payment or tender in respect of the Cram-Down Contribution will affect the Membership Interest Percentages of the Members, as adjusted in accordance with this Section 4.2(c).

(d)     Notwithstanding any other provisions of this Agreement, any amount that otherwise would be paid or distributed to a Non-Contributing Member pursuant to ARTICLE VII will not be paid to the Non-Contributing Member but will be deemed paid and applied on behalf of such Non-Contributing Member (i) first, to accrued and unpaid interest on all Default Loans (in the order of their original maturity date), (ii) second to the principal amount of such Default Loans (in the order of their original maturity date), and (iii) third, to any Additional Capital Contribution of such Non-Contributing Member that has not been paid and is not deemed to have been paid.

(e)     Notwithstanding the foregoing, if a Non-Contributing Member fails to make its Additional Capital Contribution in accordance with Section 4.2(a), the Contributing Member may:

(i)     institute proceedings against the Non-Contributing Member to obtain payment of its portion of the Additional Capital Contributions, together with interest thereon at the Default Rate from the date that such Additional Capital Contribution was due until the date that such Additional Capital Contribution is made, at the cost and expense of the Non-Contributing Member;

(ii)    purchase the Membership Interest of the Non-Contributing Member at a price equal to 85% of the lesser of (i) the price paid by the Non-Contributing Member for its Membership Interest, and (ii) the Fair Market Value of its Membership Interest; or

(iii)    force a sale of the Company to a third party other than an Affiliate of any of the Members on commercially reasonable market terms as reasonably determined by the Contributing Member; provided that, if the Non-Contributing Member pays the unfunded portion of its required Additional Capital Contribution prior to the Contributing Member's election of a forced sale, the Contributing Member will no longer have the right to force a sale of the Company under this <u>Section 4.2(e)(iii)</u>.

(f)    If a Member is characterized as a Non-Contributing Member, then, so long as the Member remains a Non-Contributing Member, it will forfeit and no longer be entitled to any consent or voting rights granted in this Agreement.

(g)    Except as set forth in this <u>Section 4.2</u>, neither Member will be required to make additional Capital Contributions or make loans to the Company.

**Section 4.3.    Maintenance of Capital Accounts**.  The Company will establish and maintain for each Member a separate capital account (a "**Capital Account**") on its books and records in accordance with this <u>Section 4.3</u>.  Each Capital Account will be established and maintained in accordance with the following provisions:

(a)    Each Member's Capital Account will be increased by the amount of:

(i)    such Member's Capital Contributions;

(ii)    any Net Income or other item of income or gain allocated to such Member pursuant to <u>ARTICLE VI</u>; and

(iii)    any liabilities of the Company that are assumed by such Member or secured by any property distributed to such Member.

(b)    Each Member's Capital Account will be decreased by:

(i)    the cash amount or Book Value of any property distributed to such Member pursuant to <u>ARTICLE VII</u> and <u>Section 13.3(c)</u>;

(ii)    the amount of any Net Loss or other item of loss or deduction allocated to such Member pursuant to <u>ARTICLE VI</u>; and

(iii)    the amount of any liabilities of such Member assumed by the Company or that are secured by any property contributed by such Member to the Company.

**Section 4.4.    Succession Upon Transfer**.  In the event that a Membership Interest is Transferred in accordance with the terms of this Agreement, the Transferee will succeed to the Capital Account of the Transferor to the extent it relates to the Transferred Membership Interest and, subject to <u>Section 6.4</u>, will receive allocations and distributions pursuant to <u>ARTICLE VI</u>, <u>ARTICLE VII</u>, and <u>ARTICLE XIII</u> in respect of such Membership Interest.

**Section 4.5.** **Negative Capital Accounts**.  In the event that any Member will have a deficit balance in its Capital Account, such Member will have no obligation, during the term of the Company or upon dissolution or liquidation thereof, to restore such negative balance or make any contributions of capital to the Company by reason thereof, except as may be required by Applicable Law or in respect of any negative balance resulting from a withdrawal of capital or dissolution in contravention of this Agreement.

**Section 4.6.** **No Withdrawals From Capital Accounts**.  No Member will be entitled to withdraw any part of its Capital Account or to receive any distribution from the Company, except as otherwise provided in this Agreement.  No Member, including the Managing Member, will receive any interest, salary, or drawing with respect to its Capital Contributions or its Capital Account, except as otherwise provided in this Agreement.  The Capital Accounts are maintained for the sole purpose of allocating items of income, gain, loss, and deduction among the Members and will have no effect on the amount of any distributions to any Members, in liquidation or otherwise.

**Section 4.7.** **Treatment of Loans From Members**.  Loans by any Member to the Company will not be considered Capital Contributions and will not affect the maintenance of such Member's Capital Account, other than to the extent provided in Section 4.2(c) and Section 4.3(a)(iii), if applicable.

**Section 4.8.** **Modifications**.  The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations Section 1.704-1(b) and will be interpreted and applied in a manner consistent with such Treasury Regulations.  If the Managing Member determines that it is prudent to modify the manner in which the Capital Accounts, or any increases or decreases to the Capital Accounts, are computed in order to comply with such Treasury Regulations, the Managing Member may authorize such modifications.

**Section 4.9.** **Company Expenses**.

(a)      *Expenses Not Borne by the Company*.  The Managing Member will pay, without reimbursement by the Company, all of its own ordinary administrative and overhead expenses in connection with the activities of the Company, including all costs and expenses on account of salaries, wages, bonuses, and other employee benefits.

(b)      *Ongoing Company Expenses*.  On an ongoing basis, except for the expenses provided for in Section 4.9(a), the Company will pay, or reimburse the Managing Member or its Affiliates, as applicable, for the following out-of-pocket expenses:

(i)      any expenses relating to the SPV or the Underlying Investment, including, without limitation, travel expenses, valuation expenses (e.g., costs of independent appraisers), carrying costs and custodial, trustee, record-keeping, and other administrative fees;

(ii)      any and all expenses incurred in connection with the preparation, review, and audit of the Company's reports, tax returns, and related disclosure schedules;

(iii)      any and all fees for attorneys and accountants (including in-house and outside legal and accounting fees and expenses) relating to Company matters;

(iv)      any and all taxes and other governmental charges that may be incurred or payable by the Company;

(v)      any and all reasonable costs and expenses incurred in connection with distributions to Members;

(vi)     any and all reasonable expenses (including in-house and outside legal fees and expenses) of the Company or the Managing Member incurred (A) to comply with any law or regulation related to the activities of the Company, or (B) in connection with any litigation or governmental inquiry, investigation, or proceeding involving the Company, including the amount of any judgments, settlements, or fines paid in connection therewith;

(vii)    any and all costs and expenses incurred in connection with the accounting and reporting requirements of the Company, including back-office overhead (e.g., rent, computer software, and equipment); and

(viii)   any and all reasonable expenses incurred in connection with any amendments, modifications, revisions, or restatements to the constituent documents of the Company.

(c)     *Loan Origination Fees*.  The Company will be permitted to pay an origination fee of up to $160,000 to a Company Lender.

## ARTICLE V
## MEMBERS

**Section 5.1.     Members Schedule**.  The name, address, and Membership Interest Percentage of each member of the Company are set forth on <u>Schedule A</u>, attached hereto (as amended, the "**Members Schedule**").  The Members Schedule will be revised from time to time by the Managing Member to reflect any of the following accomplished in compliance with the terms of this Agreement: (i) the withdrawal or admission of a member of the Company; (ii) any change in the name or address of a Member; and (iii) any change in Membership Interest Percentage of a Member.  A Member can modify their address at any time by providing the Managing Member at least five (5) days advance written notice of the same.

**Section 5.2.     Admission of New Members**

(a)     *Additional Members*.  No Persons will be admitted to the Company as additional members of the Company except as approved by the Managing Member, and the Managing Member may cause the Company to admit any Person as an additional member of the Company upon (i) the issuance of an additional Membership Interest to such Person, or (ii) any Transfer of a Membership Interest made in accordance with <u>ARTICLE XI</u>.

(b)     *Joinder*.  In order for any Person (not already a Member) to be admitted as a member of the Company, whether pursuant to an issuance or Transfer of a Membership Interest, such Person will be required to execute and deliver to the Company a written joinder agreement, the form and substance of which will be determined by the Managing Member in its sole discretion.  Upon the amendment of the Members Schedule by the Managing Member and the satisfaction of any other applicable conditions, including, if a condition, the receipt by the Company of payment for the issuance of the applicable Membership Interest, such Person will simultaneously be (i) admitted as a member of the Company, (ii) deemed listed as such on the books and records of the Company, and (iii) issued his, her, or its Membership Interest.  The Managing Member will adjust the Capital Accounts of the Members, as necessary, upon the admission of any additional Person as a member of the Company.

**Section 5.3.     Representations and Warranties of Members.**  All Members, whether admitted as of the Effective Date or pursuant to <u>Section 5.2</u>, represents and warrants to the Company and the other Members, and acknowledges that:

(a)   the Membership Interests have not been registered under the Securities Act or the securities laws of any other jurisdiction, are issued in reliance upon federal and state exemptions for transactions not involving a public offering, and cannot be disposed of unless (i) they are subsequently registered or exempted from registration under the Securities Act, and (ii) the provisions of this Agreement have been complied with;

(b)   such Member is an "accredited investor" within the meaning of Rule 501 promulgated under the Securities Act, as amended by Section 413(a) of the Dodd-Frank Wall Street Reform and Consumer Protection Act, and agrees that it will not take any action that could have an adverse effect on the availability of the exemption from registration provided by Rule 501 promulgated under the Securities Act with respect to the offer and sale of the Membership Interests;

(c)   such Member's Membership Interest is being acquired for its own account solely for investment purposes and not with a view to resale or distribution thereof;

(d)   such Member has such knowledge and experience in financial and business matters and is capable of evaluating the merits and risks of an investment in the Company and making an informed decision with respect thereto;

(e)   with respect to the tax and other legal aspects of investment in the Company and the acquisition and ownership of a Membership Interest, such Member is relying solely upon the advice of such Member's own tax and legal advisors and not upon any representation by any other Member or representative thereof;

(f)   such Member is able to bear the economic and financial risk of an investment in the Company for an indefinite period of time;

(g)   the execution, delivery, and performance of this Agreement by such Member (i) have been duly authorized and do not require such Member to obtain any consent that has not been obtained, and (ii) will not contravene or result in a default under (A) any provision of any law or regulation applicable to such Member, (B) the Organizational Documents of such Member, or (C) any other agreements or instruments to which such Member is a party or by which such Member is bound;

(h)   this Agreement is valid, binding, and enforceable against such Member in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium, and other similar laws of general applicability relating to or affecting creditors' rights or general equity principles (regardless of whether considered at law or in equity);

(i)   such Member has been duly organized and is validly existing and in good standing under the laws of the state of its organization; and

(j)   there is no suit, action, or proceeding, pending or threatened, against or affecting such Member before or by any court, administrative agency, or other Governmental Authority that (i) brings into question the validity of the transactions contemplated by this Agreement, (ii) would interfere with or impede in any way the ability of such Member to comply with the terms of this Agreement, (iii) could materially and adversely affect such Member or any of its respective properties, assets or Affiliates, or (iv) could materially and adversely affect the legality, validity, or enforceability of this Agreement.

**Section 5.4.    No Personal Liability**.    Except as otherwise provided in the Delaware Act, by Applicable Law, or expressly in this Agreement, no Member will be obligated personally for any debt,

obligation or liability of the Company or other Members, whether arising in contract, tort or otherwise, solely by reason of being a Member.

**Section 5.5.    No Withdrawal**.  So long as a Member continues to hold a Membership Interest, such Member will not have the ability to withdraw or resign as a Member prior to the dissolution and winding up of the Company and any such withdrawal or resignation or attempted withdrawal or resignation by a Member prior to the dissolution or winding up of the Company will be null and void.  As soon as any Person who is a Member ceases to hold a Membership Interest, such Person will no longer be a Member. A Member will not cease to be a Member as a result of the Bankruptcy of such Member or as a result of any other events specified in §18-304 of the Delaware Act.

**Section 5.6.    No Interest in Company Property**.  No real or personal property of the Company will be deemed to be owned by any Member individually, but will be owned by, and title will be vested solely in, the Company.  Without limiting the foregoing, each Member hereby irrevocably waives during the term of the Company any right that such Member may have to maintain any action for partition with respect to the property of the Company.

**ARTICLE VI**
**ALLOCATIONS**

**Section 6.1.    Allocation of Net Income and Net Loss**.  For each Fiscal Year (or portion thereof), except as otherwise provided in this Agreement, Net Income and Net Loss (and, to the extent necessary, individual items of income, gain, loss, or deduction) of the Company will be allocated among the Members in a manner such that, after giving effect to the special allocations set forth in Section 6.2, the Capital Account balance of each Member, immediately after making such allocations, is, as nearly as possible, equal to (a) the distributions that would be made to such Member pursuant to Section 13.3(c) if the Company were dissolved, its affairs wound up and its assets sold for cash equal to their Book Value, all Company liabilities were satisfied (limited with respect to each Nonrecourse Liability to the Book Value of the assets securing such liability) and the net assets of the Company were distributed, in accordance with Section 13.3(c), to the Members immediately after making such allocations, minus (b) such Member's share of Company Minimum Gain and Member Nonrecourse Debt Minimum Gain, computed immediately prior to the hypothetical sale of assets.

**Section 6.2.    Regulatory and Special Allocations**.  Notwithstanding the provisions of Section 6.1:

(a)      If there is a net decrease in Company Minimum Gain (determined according to Treasury Regulations Section 1.704-2(d)(1)) during any Fiscal Year, each Member will be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Treasury Regulations Section 1.704-2(g).  The items to be so allocated will be determined in accordance with Treasury Regulations Sections 1.704-2(f)(6) and 1.704-2(j)(2).  This Section 6.2 is intended to comply with the "minimum gain chargeback" requirement in Treasury Regulations Section 1.704-2(f) and will be interpreted consistently therewith.

(b)      Member Nonrecourse Deductions will be allocated in the manner required by Treasury Regulations Section 1.704-2(i).  Except as otherwise provided in Treasury Regulations Section 1.704-2(i)(4), if there is a net decrease in Member Nonrecourse Debt Minimum Gain during any Fiscal Year, each Member that has a share of such Member Nonrecourse Debt Minimum Gain will be specially allocated Net Income for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to that Member's share of the net decrease in Member Nonrecourse

Debt Minimum Gain. Items to be allocated pursuant to this paragraph will be determined in accordance with Treasury Regulations Sections 1.704-2(i)(4) and 1.704-2(j)(2). This <u>Section 6.2(b)</u> is intended to comply with the "minimum gain chargeback" requirements in Treasury Regulations Section 1.704-2(i)(4) and will be interpreted consistently therewith.

(c)    Nonrecourse Deductions will be allocated to the Members in accordance with their Membership Interest Percentages.

(d)    In the event any Member unexpectedly receives any adjustments, allocations or distributions described in Treasury Regulations Section 1.704-1(b)(2)(ii)(d)(4), (5) or (6), Net Income will be specially allocated to such Member in an amount and manner sufficient to eliminate the Adjusted Capital Account Deficit created by such adjustments, allocations or distributions as quickly as possible. This <u>Section 6.2(d)</u> is intended to comply with the qualified income offset requirement in Treasury Regulations Section 1.704-1(b)(2)(ii)(d) and will be interpreted consistently therewith.

(e)    The allocations set forth in paragraphs (a), (b), (c) and (d) above (the "**Regulatory Allocations**") are intended to comply with certain requirements of the Treasury Regulations under Code Section 704. Notwithstanding any other provisions of this <u>ARTICLE VI</u> (other than the Regulatory Allocations), the Regulatory Allocations will be taken into account in allocating Net Income and Net Losses among Members so that, to the extent possible, the net amount of such allocations of Net Income and Net Losses and other items and the Regulatory Allocations to each Member will be equal to the net amount that would have been allocated to such Member if the Regulatory Allocations had not occurred.

**Section 6.3.    Tax Allocations.**

(a)    Subject to <u>Section 6.3(b)</u>, <u>Section 6.3(c)</u>, and <u>Section 6.3(d)</u>, all income, gains, losses and deductions of the Company will be allocated, for federal, state and local income tax purposes, among the Members in accordance with the allocation of such income, gains, losses and deductions pursuant to <u>Section 6.1</u> and <u>Section 6.2</u>, except that if any such allocation for tax purposes is not permitted by the Code or other Applicable Law, the Company's subsequent income, gains, losses and deductions will be allocated among the Members for tax purposes, to the extent permitted by the Code and other Applicable Law, so as to reflect as nearly as possible the allocation set forth in <u>Section 6.1</u> and <u>Section 6.2</u>.

(b)    Items of Company taxable income, gain, loss and deduction with respect to any property contributed to the capital of the Company will be allocated among the Members in accordance with Code Section 704(c) and the traditional method with curative allocations of Treasury Regulations Section 1.704-3(c), so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its Book Value.

(c)    If the Book Value of any Company asset is adjusted pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(f) as provided in <u>clause (c)</u> of the definition of Book Value, subsequent allocations of items of taxable income, gain, loss and deduction with respect to such asset will take account of any variation between the adjusted basis of such asset for federal income tax purposes and its Book Value in the same manner as under Code Section 704(c).

(d)    Allocations of tax credit, tax credit recapture and any items related thereto will be allocated to the Members according to their interests in such items as determined by the Managing Member taking into account the principles of Treasury Regulations Section 1.704-1(b)(4)(ii).

(e)      Allocations pursuant to this <u>Section 6.3</u> are solely for purposes of federal, state and local taxes and will not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Net Income, Net Losses, distributions, or other items pursuant to any provisions of this Agreement.

**Section 6.4.**    **Allocations in Respect of Transferred Membership Interests**.  In the event of a Transfer of Membership Interests during any Fiscal Year made in compliance with the provisions of <u>ARTICLE XI</u>, Net Income, Net Losses, and other items of income, gain, loss, and deduction of the Company attributable to such Membership Interests for such Fiscal Year will be determined using the interim closing of the books method.

**ARTICLE VII**
**DISTRIBUTIONS**

**Section 7.1.**    **Distributions of Cash Flow and Capital Proceeds.**

(a)      Subject to <u>Section 7.1(b)</u>, any Available Cash of the Company, after allowance for all reasonable costs and expenses incurred by the Company and for such reasonable reserves as contemplated in the Budget, will be distributed to the Members, on at least a quarterly basis, in accordance with their respective Membership Interest Percentages.

(b)      Proceeds from a Capital Transaction will be distributed to the Members in the following order and priority:

    (i)      *first*, to the Members on a *pari passu* basis in proportion to their Membership Interest Percentages until the GWLI II Member receives cumulative distributions in an amount necessary to produce an IRR of seven percent (7%) on its Capital Contributions;

    (ii)     *thereafter*, (i) twenty percent (20%) to the Managing Member, and (ii) eighty percent (80%) to the Members on a *pari passu* basis in proportion to their respective Membership Interest Percentages.

(c)      If a Member has (i) an unpaid Additional Capital Contribution that is overdue, or (ii) an outstanding Default Loan due to another Member, any amount that otherwise would be distributed to such Member pursuant to <u>Section 7.1(a)</u> or <u>ARTICLE XIV</u> (up to the amount of such Additional Capital Contribution or outstanding Default Loan, together with interest accrued thereon) will not be paid to such Member but will be deemed distributed to such Member and applied on behalf of such Member pursuant to <u>Section 4.2(d)</u>.

(d)      Notwithstanding any provision to the contrary contained in this Agreement, the Company will not make any distribution to Members if such distribution would violate §18-607 of the Delaware Act or other Applicable Law.

**Section 7.2.**    **Tax Withholding; Withholding Advances.**

(a)      *Tax Withholding*.  If requested by the Managing Member, each Member will, if able to do so, deliver to the Managing Member:

    (i)      an affidavit in form satisfactory to the Managing Member that the applicable Member (or its members, as the case may be) is not subject to withholding under the provisions of any federal, state, local, foreign, or other Applicable Law;

(ii)     any certificate that the Managing Member may reasonably request with respect to any such laws; and

(iii)    any other form or instrument reasonably requested by the Managing Member relating to any Member's status under such law.

If a Member fails or is unable to deliver to the Managing Member the affidavit described in Section 7.2(a)(i), the Managing Member may withhold amounts from such Member in accordance with Section 7.2(b).

(b)     *Withholding Advances*.  The Company is hereby authorized at all times to make payments ("**Withholding Advances**") with respect to each Member in amounts required to discharge any obligation of the Company (as determined by the Partnership Representative based on the advice of legal or tax counsel to the Company) to withhold or make payments to any federal, state, local, or foreign taxing authority (a "**Taxing Authority**") with respect to any distribution or allocation by the Company of income or gain to such Member and to withhold the same from distributions to such Member. Any funds withheld from a distribution by reason of this Section 7.2(b) will nonetheless be deemed distributed to the Member in question for all purposes under this Agreement.

(c)     *Repayment of Withholding Advances*.  Any Withholding Advance made by the Company to a Taxing Authority on behalf of a Member and not simultaneously withheld from a distribution to that Member will, with interest thereon accruing from the date of payment at a rate equal to the prime rate published in the Wall Street Journal on the date of payment plus two percent (2.0%) per annum (the "**Company Interest Rate**"):

(i)     be promptly repaid to the Company by the Member on whose behalf the Withholding Advance was made (which repayment by the Member will not constitute a Capital Contribution, but will credit the Member's Capital Account if the Managing Member will have initially charged the amount of the Withholding Advance to the Capital Account); or

(ii)    with the consent of the Managing Member, be repaid by reducing the amount of the next succeeding distribution or distributions to be made to such Member (which reduction amount will be deemed to have been distributed to the Member, but which will not further reduce the Member's Capital Account if the Managing Member will have initially charged the amount of the Withholding Advance to the Capital Account).

Interest will cease to accrue from the time the Member on whose behalf the Withholding Advance was made repays such Withholding Advance (and all accrued interest) by either method of repayment described above.

(d)     *Indemnification*.  Each Member hereby agrees to indemnify and hold harmless the Company and the other Members from and against any liability with respect to taxes, interest, or penalties that may be asserted by reason of the Company's failure to deduct and withhold tax on amounts distributable or allocable to such Member.  The provisions of this Section 7.2(d) and the obligations of a Member pursuant to Section 7.2(c) will survive the termination, dissolution, liquidation, and winding up of the Company and the withdrawal of such Member from the Company or Transfer of its Membership Interest.  The Company may pursue and enforce all rights and remedies it may have against each Member under this Section 7.2, including bringing a lawsuit to collect repayment with interest of any Withholding Advances.

(e)  *Overwithholding*.  Neither the Company nor the Managing Member will be liable for any excess taxes withheld in respect of any distribution or allocation of income or gain to a Member.  In the event of an overwithholding, a Member's sole recourse will be to apply for a refund from the appropriate Taxing Authority.

**Section 7.3.  Distributions in Kind.**

(a)  The Managing Member is hereby authorized, as it may reasonably determine, to make distributions to the Members in the form of securities or other property held by the Company.  In any non-cash distribution, the securities or property so distributed will be distributed among the Members in the same proportion and priority as cash equal to the Fair Market Value of such securities or property would be distributed among the Members pursuant to Section 7.1.

(b)  Any distribution of securities will be subject to such conditions and restrictions as the Managing Member determines are required or advisable to ensure compliance with Applicable Law.  In furtherance of the foregoing, the Managing Member may require that the Members execute and deliver such documents as the Managing Member may deem necessary or appropriate to ensure compliance with all federal and state securities laws that apply to such distribution and any further Transfer of the distributed securities, and may appropriately legend the certificates that represent such securities to reflect any restriction on Transfer with respect to such laws.

# ARTICLE VIII
# MANAGEMENT

**Section 8.1.  Management of the Company**.  The business and affairs of the Company will be managed by the Managing Member.  Subject to the provisions of Section 8.2, the Managing Member will have full and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company, and to take all such actions as it deems necessary or appropriate to accomplish the purposes of the Company set forth in Section 2.5; provided that, the Managing Member will manage the Company in accordance with the Budget.  The actions of the Managing Member taken in accordance with the provisions of this Agreement will bind the Company.  No other Member will have any authority or right to act on behalf of or bind the Company, unless otherwise provided herein or unless specifically authorized by the Managing Member pursuant to a resolution expressly authorizing such action which resolution is duly adopted by the Managing Member.

**Section 8.2.  Actions Requiring Approval of Members**.  Notwithstanding anything herein to the contrary, without the unanimous written approval of all Members, the Company will not, and will not enter into any commitment to:

(a)  admit any Person as an additional member, partner, or other economic owner of the Company, the Owner SPV, or any other Subsidiary of the forgoing;

(b)  make any material change to the nature of the business conducted by, or the purpose of, the Company, the Owner SPV, or any other subsidiary of the forgoing;

(c)  form any Subsidiary (other than the Owner SPV);

(d)  wind up, dissolve, or liquidate of the Company, the Owner SPV, or any other Subsidiary of the forgoing, except as otherwise permitted by the organizational documents of any such Person;

(e) sell, lease, or convey of all or substantially all of the assets of the Company, the Owner SPV, or any other Subsidiary of the forgoing, including, without limitation, the Underlying Investment, except as otherwise permitted by the organizational documents of any such Person;

(f) create or entire into any Related Party Agreement, except as otherwise permitted /contemplated by the organizational documents of the creating Person;

(g) consummate a transaction that is not in the ordinary course of the business of the Company, the Owner SPV, or any other Subsidiary of the forgoing, or that is not directly related to the indirect acquisition and ownership of the Underlying Investment;

(h) make any payment (or incurrence of liability) that deviates by more than three percent (3%) from the amount of such payment(s) provided for or contemplated in an applicable annual operating budget of the Company;

(i) extend, modify, renew, amend, or terminate any material contract or agreement pertaining to the day-to-day management of the Underlying Investment;

(j) extend, modify, renew, or amend any loan agreement, or any documents executed in connection with any refinancing transaction involving the Company or the Underlying Investment;

(k) pay, settle, or compromise any legal action (whether actual or threatened in connection with the Underlying Investment, the Company, the Owner SPV, or any other Subsidiary of the Company or the Owner SPV;

(l) commence any federal, state, or foreign bankruptcy, insolvency, reorganization, arrangement, or liquidation proceeding for, or consent to the appointment of a receiver, liquidator, assignee, trustee, conservator, or sequester (or other similar official) of, the Company, the Owner SPV, or any other Subsidiary of the forgoing, or of all or a substantial part of the assets of the Company, the Owner SPV, or any other Subsidiary of the forgoing;

(m) permit the incurrence of indebtedness by the Company, the Owner SPV, or any other Subsidiary of the Company, except as set forth in any applicable and approved budget;

(n) waive or compromise any claim or right the Company, the Owner SPV, or any other Subsidiary of the forgoing may have against an affiliate of a Member;

(o) commence any action or proceeding to appeal ad valorem taxes or special assessments relating to the Underlying Investment, the Company, the Owner SPV, or any other Subsidiary of the Company, the Owner SPV;

(p) condemn the Underlying Investment (or any portion thereof or any interest therein), or the conveyance or an agreement to convey the Property (or any portion thereof or any interest therein) in lieu of condemnation;

(q) make a loan or other extension of credit to any Person;

(r) spend proceeds or other funds received the Company, the Owner SPV, or any other Subsidiary of the forgoing as a result of insurance or condemnation awards except to the extent required by any loan agreement executed by the Company, the Owner SPV, or any other Subsidiary of the forgoing; or

(s)     issue additional Membership Interests.

**Section 8.3.     Irrevocable Proxy**. Solely with respect to Article 8 Matters (as hereinafter defined), the Company hereby irrevocably grants and appoints the Lender, as the Company's true and lawful proxy, for and in Company's name, place and stead to vote the Equity Interests, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to all Article 8 Matters.  The proxy granted and appointed in this <u>Section 8.3</u> shall include the right to sign Company's name (as a member of Mortgage Borrower) to any consent, certificate or other document relating to an Article 8 Matter and the Pledged Securities that applicable law may permit or require, to cause the Pledged Securities to be voted in accordance with the preceding sentence.  Company hereby represents and warrants that there are no other proxies and powers of attorney with respect to an Article 8 Matter that Company may have granted or appointed.  Company will not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged Securities with respect to any Article 8 Matter and any attempt to do so with respect to an Article 8 Matter shall be void and of no effect.  The proxies and powers granted by Company pursuant to this Agreement are coupled with an interest and are given to secure the performance of Company's obligations.

**Section 8.4.     Officers**.  The Managing Member may appoint individuals as officers of the Company (the "**Officers**") as it deems necessary or desirable to carry on the business of the Company and the Managing Member may delegate to such Officers such power and authority as the Managing Member deems advisable.  No Officer is required to also be a Member.  Any individual may hold two or more offices of the Company.  Each Officer will hold office until his successor is designated by the Managing Member or until his earlier death, resignation, or removal.  Any Officer may resign at any time upon written notice to the Managing Member.  Any Officer may be removed by the Managing Member with or without cause at any time.  A vacancy in any office occurring because of death, resignation, removal or otherwise, may, but need not, be filled by the Managing Member.

**Section 8.5.     Action Without Meeting**.  Any matter that is to be voted on, consented to, or approved by Members may be taken without a meeting, without prior notice and without a vote if consented to, in writing or by Electronic Transmission, by a Member or Members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all members entitled to vote thereon were present and voted.  A record will be maintained by the Managing Member of each such action taken by written consent of a Member or Members.

**Section 8.6.     Informational Rights**.  In addition to the information required to be provided pursuant to <u>ARTICLE XII</u>, the Managing Member will keep the other Members reasonably informed on a timely basis of any material fact, information, litigation, employee relations, or other matter that could reasonably be expected to have a material impact on the operations or financial position of the Company, including, but not limited to, any modification of any loan or other financing to the Company.  The Managing Member will provide all material information relating to the Company or the management or operation of the Company as any Member may reasonable request from time to time.

**Section 8.7.     Budget.**

(a)     The initial business plan and annual budgets for the Company through the Fiscal Year ending December 31, 2018 (the "**Budget**"), which have previously been approved by the Members, are attached hereto as <u>Schedule B</u>.  The Budget will include detailed capital and operating expense budgets, cash flow projections (which will include amounts and due dates of all projected calls for Additional Capital Contributions), and profit and loss projections.  The Managing Member will operate the Company in accordance with the Budget.

(b)    At least thirty (30) days before the beginning of each Fiscal Year, the Managing Member will prepare and submit to the Non-Managing Member proposed revisions (including any extensions thereof) to the Budget for such upcoming Fiscal Year.  Not later than seven (7) days following its receipt of the proposed revisions, the Non-Managing Member must, by written notice to the Managing Member, either approve or disapprove the revised Budget.  If the Non-Managing Member will not have responded in writing to the proposed revisions prior to the end of such seven (7)-day period, the Non-Managing Member will be deemed to have approved the revised Budget.  If the Non-Managing Member disapproves of the proposed revisions, then the Members will use good faith efforts to agree on a revised Budget.  The Managing Member will continue to operate the Company in accordance with the existing Budget until a revised Budget is approved by both Members.

**Section 8.8.    Deadlock.**

(a)    If the Members are unable to agree on any of the matters described in <u>Section 8.2</u> and such disagreement continues for sixty (60) days despite good faith deliberations by the Members, then either Member will be entitled to exercise the buy-sell rights set forth in this <u>Section 8.8</u> by delivering a Buy-Sell Offer Notice (as defined herein).

(b)    If a Member wishes to exercise the buy-sell right provided in this <u>Section 8.8</u>, such Member (the "**Initiating Member**") will deliver to the other Member (the "**Responding Member**") written notice (the "**Buy-Sell Offer Notice**") of such election, which notice will include (i) a description of the circumstances that triggered the buy-sell right, and (ii) the purchase price (which will be payable exclusively in cash (unless otherwise agreed)) at which the Initiating Member will (A) purchase all of the Membership Interest owned by the Responding Member (the "**Buy-out Price**") or (B) sell all of its Membership Interest to the Responding Member (the "**Sell-out Price**"), with any difference between the Buy-out Price and the Sell-out Price based solely on each Member's Membership Interest Percentage, without regard to any market discount or premium from differences in such proportionate interests.

(c)    Within thirty (30) days after the Buy-Sell Offer Notice is received (the "**Buy-Sell Election Date**"), the Responding Member will deliver to the Initiating Member a written notice (the "**Response Notice**") stating whether it elects to (i) sell all of its Membership Interest to the Initiating Member for the Buy-out Price, or (ii) buy all of the Membership Interest owned by the Initiating Member for the Sell-out Price.  The failure of the Responding Member to deliver the Response Notice by the Buy-Sell Election Date will be deemed to be an election to sell all of its Membership Interest to the Initiating Member at the Buy-out Price.

(d)    The closing of any purchase and sale of a Membership Interest pursuant to this <u>Section 8.8</u> will take place within thirty (30) days after the Response Notice is delivered or deemed to have been delivered or some other date mutually agreed upon by the parties.  The Buy-out Price or the Sell-out Price, as the case may be, will be paid at closing by wire transfer of immediately available funds to an account designated in writing by the selling Member (the "**Selling Member**").  At the closing, the Selling Member will deliver to the purchasing Member (the "**Purchasing Member**") good and marketable title to its Membership Interest, free and clear of all liens and encumbrances.  Each Member agrees to cooperate and take all actions and execute all documents reasonably necessary or appropriate to reflect the purchase of the Selling Member's Membership Interest by the Purchasing Member.

(e)     If the Purchasing Member defaults in any of its material closing obligations, then the Selling Member will have the option to purchase the Purchasing Member's entire Membership Interest at a price that is equal to 85% of the purchase price payable at the initial closing.

**Section 8.9.     Other Activities; Business Opportunities**.  Nothing contained in this Agreement will prevent any Member, including the Managing Member, or any of its Affiliates from engaging in any other activities or businesses, regardless of whether those activities or businesses are similar to or competitive with the business of the Company.  None of the Members nor any of their Affiliates will be obligated to account to the Company or to the other Member for any profits or income earned or derived from other such activities or businesses.  None of the Members nor any of their Affiliates will be obligated to inform the Company or the other Member of any business opportunity of any type or description.

# ARTICLE IX
# COMPANY OPERATIONS

**Section 9.1.     Acquisition of Underlying Investment.**  On the Effective Date, the Company will cause the SPV to acquire the Underlying Investment free and clear of all liens and encumbrances (excluding any encumbrances previously agreed to in writing by the Members.

**Section 9.2.     Asset Management Fee.**  From and after the Effective Date, the Company will pay the Managing Member an annual asset management fee equal to $175,000, provided the annual asset management fee will be payable to the Managing Member during each Fiscal Year on the first day of each calendar quarter (i.e., January 1st, April 1st, July 1st, and October 1st) and prorated for partial quarters.

**Section 9.3.     Debt and Equity Placement Fee.**  On the Effective Date, the Managing Member will receive a debt and equity placement fee from the Company in an amount equal to $600,000; provided $200,000 will be immediately recontributed to the Company is equity shares.

**Section 9.4.     Sale of the Underlying Investment.**

(a)     *Property Offer Notice*.  If, during the term of this Agreement, the Company, the SPV, or a Member receives a written offer for the purchase of all or any portion of the Underlying Investment from a non-Affiliate of any Member, it will promptly give the other Members written notice of such offer (the "**Property Offer Notice**").  The Property Offer Notice will identify the prospective purchaser, the proposed purchase price, the proposed closing date, the proposed brokerage commission, and any of the other relevant terms of the transaction.  No Member will be authorized to cause the Company or the SPV to accept any such offer to purchase all or any portion of the Underlying Investment unless such offer has been approved by the other Members.

(b)     *Property Sale Election*.  At any time after thirty-six (36) months after the Effective Date, the Managing Member (the "**Evoking Member**") will have the right to unilaterally elect to cause the Company (on behalf of the SPV) to solicit offers (each, a "**Property Sale Offer**") from prospective third party purchasers to buy the Underlying Investment.  Upon determining to solicit Property Sale Offers, the Evoking Member (A) will notify the Members, in writing, of any such election (a "**Property Sale Election**"), and (B) prepare an information package on the Underlying Investment that includes (y) a form sale contract reasonably approved by the Members (to be executed by any such prospective third party purchaser), and (z) the other material terms and conditions on which the Evoking Member is prepared to have the Company (on behalf of the SPV) sell and otherwise dispose of the Underlying Investment.

(c)    *Property Sale Notice*.  If the Company obtains a Property Sale Offer within six (6) months after delivery of a Property Sale Election, and an Evoking Member determines, in its sole discretion, that the Company (on behalf of the SPV) should accept such Property Sale Offer, such Evoking Member will provide written notice ("**Property Sale Notice**") to the Members of its desire to accept such Property Sale Offer.  The non-Evoking Member(s) will have fifteen (15) Business Days from the delivery of any Property Sale Notice to notify the Evoking Member, in writing, of the election (the "**Election Notice**") of the non-Evoking Member(s) to either:

    (i)    approve the Property Sale Offer, in which case the Evoking Member will be authorized to effect a Sale of the Underlying Investment, in the name and on behalf of the SPV, on the terms and subject to the conditions set forth in the applicable Property Sale Offer; or

    (ii)    purchase the Underlying Investment on substantially the same terms and conditions as set forth in the applicable Property Sale Offer (net of any commission that would customarily be payable by the Company or the SPV in the event of a sale of the Underlying Investment to a third party), provided (A) the non-Evoking Member(s) must close such purchase within one hundred twenty (120) days following the Evoking Member's delivery of any Property Sale Notice, and (B) with respect to any obligations under agreement with Company Lenders for which the Evoking Member or any of its Affiliates are liable, the non-Evoking Members must secure the complete and unequivocal release of the Evoking Member and its Affiliates from and against any post-transfer claim(s) by each Company Lender;

    provided that (x) failure to deliver an Election Notice on or before fifteen (15) Business Days from the delivery of any Property Sale Notice will be deemed to be an election of Section 9.4(c)(i), (y) the release set forth in the previous sentence will be a closing condition of any election permitted by this Section 9.4(c)(i), and (z) in order for a Property Sale Offer to be valid, it must be a bona fide, arm's-length, all-cash offer from a third party for the Underlying Investment, and must be accompanied by a signed contract of sale and a good-faith deposit.

(d)    *Default Sale*.  Any failure by non-Evoking Member(s) to effectuate the purchase of the Underlying Investment in accordance with Section 9.4(c)(i) (after such option is elected) will (i) be a material breach of this Agreement, and (ii) result in such Member forever forfeiting its right to act as a managing member of the Company, consent to material actions in accordance with Section 8.2, or initiate any action pursuant to Section 8.8.

## Section 9.5.    **Management of Underlying Investment.**

(a)    Subject to the terms and conditions of this Agreement, the property manager will be engaged to oversee the management of the Underlying Investment.

(a)    The Managing Member may terminate, extend, or modify the property management agreement with the property manager of the Underlying Investment without the prior written consent of any other Member.

(b)    The Company or the SPV will pay a fixed fee to the manager of the Underlying Investment in accordance with a property management agreement.

## ARTICLE X
## EXCULPATION AND INDEMNIFICATION

**Section 10.1.    Exculpation of Covered Persons.**

(a)      *Covered Persons*.  As used herein, the term "**Covered Person**" will mean (i) each Member, including the Managing Member; (ii) each officer, director, stockholder, partner, member, Affiliate, employee, agent or representative of each Member, and each of their Affiliates; and (iii) each employee, agent, or representative of the Company (including all Officers).

(b)      *Standard of Care*.  No Covered Person will be liable to the Company or any other Covered Person for any loss, damage or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in good faith reliance on the provisions of this Agreement, so long as such action or omission does not constitute fraud, gross negligence, willful misconduct or a material breach of this Agreement by such Covered Person or is not made in knowing violation of the provisions of this Agreement.

(c)      *Good Faith Reliance*.  A Covered Person will be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements (including financial statements and information, opinions, reports or statements as to the value or amount of the assets, liabilities, Net Income or Net Losses of the Company or any facts pertinent to the existence and amount of assets from which distributions might properly be paid) of the following Persons or groups: (i) another Member; (ii) one or more Officers or employees of the Company; (iii) any attorney, independent accountant, appraiser or other expert or professional employed or engaged by or on behalf of the Company; or (iv) any other Person selected in good faith by or on behalf of the Company, in each case as to matters that such relying Person reasonably believes to be within such other Person's professional or expert competence.  The preceding sentence will in no way limit any Person's right to rely on information to the extent provided in §18-406 of the Delaware Act.

**Section 10.2.    Liabilities and Duties of Covered Persons.**

(a)      *Limitation of Liability*.  This Agreement is not intended to, and does not, create, or impose any fiduciary duty on any Covered Person.  Furthermore, each of the Members and the Company hereby waives any and all fiduciary duties that, absent such waiver, may be implied by Applicable Law, and in doing so, acknowledges and agrees that the duties and obligation of each Covered Person to each other and to the Company are only as expressly set forth in this Agreement.  The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.

(b)      *Duties*.  Whenever in this Agreement a Covered Person is permitted or required to make a decision (including a decision that is in such Covered Person's "discretion" or under a grant of similar authority or latitude), the Covered Person will be entitled to consider only such interests and factors as such Covered Person desires, including its own interests, and will have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person.  Whenever in this Agreement a Covered Person is permitted or required to make a decision in such Covered Person's "good faith," the Covered Person will act under such express standard and will not be subject to any other or different standard imposed by this Agreement or any other Applicable Law.

**Section 10.3.    Indemnification.**

(a)    *Indemnification.*  To the fullest extent permitted by the Delaware Act, as the same now exists or may hereafter be amended, substituted or replaced (but, in the case of any such amendment, substitution or replacement, only to the extent that such amendment, substitution or replacement permits the Company to provide broader indemnification rights than the Delaware Act permitted the Company to provide prior to such amendment, substitution or replacement), the Company will indemnify, hold harmless, defend, pay and reimburse any Covered Person against any and all losses, claims, damages, judgments, fines or liabilities, including reasonable legal fees or other expenses incurred in investigating or defending against such losses, claims, damages, judgments, fines, or liabilities, and any amounts expended in settlement of any claims (collectively, "**Losses**") to which such Covered Person may become subject by reason of:

   (i)    any act or omission or alleged act or omission performed or omitted to be performed on behalf of the Company, any Member or any direct or indirect Subsidiary of the foregoing in connection with the business of the Company; or

   (ii)    such Covered Person being or acting in connection with the business of the Company as a member, stockholder, Affiliate, manager, director, officer, employee or agent of the Company, any Member, or any of their respective Affiliates, or that such Covered Person is or was serving at the request of the Company as a member, manager, director, officer, employee, or agent of any Person including the Company;

provided that, (x) such Covered Person acted in good faith and in a manner believed by such Covered Person to be in, or not opposed to, the best interests of the Company and, with respect to any criminal proceeding, had no reasonable cause to believe his conduct was unlawful, and (y) such Covered Person's conduct did not constitute fraud, gross negligence, willful misconduct or a material breach of this Agreement by such Covered Person or a knowing violation of the provisions of this Agreement, in either case as determined by a final, nonappealable order of a court of competent jurisdiction. In connection with the foregoing, the termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, will not, of itself, create a presumption that the Covered Person did not act in good faith or, with respect to any criminal proceeding, had reasonable cause to believe that such Covered Person's conduct was unlawful, or that the Covered Person's conduct constituted fraud, gross negligence, willful misconduct or a knowing violation or material breach of this Agreement.

(b)    *Control of Defense.*  Upon a Covered Person's discovery of any claim, lawsuit or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 10.3, the Covered Person will give prompt written notice to the Company of such claim, lawsuit or proceeding, provided that, the failure of the Covered Person to provide such notice will not relieve the Company of any indemnification obligation under this Section 10.3, unless the Company will have been materially prejudiced thereby. Subject to the approval of the disinterested Members, the Company will be entitled to participate in or assume the defense of any such claim, lawsuit, or proceeding at its own expense.  After notice from the Company to the Covered Person of its election to assume the defense of any such claim, lawsuit or proceeding, the Company will not be liable to the Covered Person under this Agreement or otherwise for any legal or other expenses subsequently incurred by the Covered Person in connection with investigating, preparing to defend or defending any such claim, lawsuit or other proceeding.  If the Company does not elect (or fails to elect) to assume the defense of any such claim, lawsuit or proceeding, the Covered Person will have the right to assume the defense of such claim, lawsuit

or proceeding as it deems appropriate, but it will not settle any such claim, lawsuit or proceeding without the consent of the Company (which consent will not be unreasonably withheld, conditioned or delayed).

(c)     *Reimbursement*.  The Company will promptly reimburse (and/or advance to the extent reasonably required) each Covered Person for reasonable legal or other expenses (as incurred) of such Covered Person in connection with investigating, preparing to defend or defending any claim, lawsuit or other proceeding relating to any Losses for which such Covered Person may be indemnified pursuant to this Section 10.3; provided that, if it is finally judicially determined that such Covered Person is not entitled to the indemnification provided by this Section 10.3, then such Covered Person will promptly reimburse the Company for any reimbursed or advanced expenses.

(d)     *Entitlement to Indemnity*.  The indemnification provided by this Section 10.3 will not be deemed exclusive of any other rights to indemnification to which those seeking indemnification may be entitled under any agreement or otherwise.  The provisions of this Section 10.3 will continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 10.3 and will inure to the benefit of the executors, administrators, legatees, and distributees of such Covered Person.

(e)     *Insurance*.  To the extent available on commercially reasonable terms, the Company may purchase, at its expense, insurance to cover Losses covered by the foregoing indemnification provisions and to otherwise cover Losses for any breach or alleged breach by any Covered Person of such Covered Person's duties in such amount and with such deductibles as the Managing Member may reasonably determine; provided that, the failure to obtain such insurance will not affect the right to indemnification of any Covered Person under the indemnification provisions contained herein, including the right to be reimbursed or advanced expenses or otherwise indemnified for Losses hereunder. If any Covered Person recovers any amounts in respect of any Losses from any insurance coverage, then such Covered Person will, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to such Covered Person by the Company in respect of such Losses.

(f)     *Funding of Indemnification Obligation*.  Notwithstanding anything contained herein to the contrary, any indemnity by the Company relating to the matters covered in this Section 10.3 will be provided out of and to the extent of Company assets only, and no Member (unless such Member otherwise agrees in writing) will have personal liability on account thereof or will be required to make additional contributions of capital to the Company to help satisfy such indemnity by the Company.

(g)     *Savings Clause*.  If this Section 10.3 or any portion hereof will be invalidated on any ground by any court of competent jurisdiction, then the Company will nevertheless indemnify and hold harmless each Covered Person pursuant to this Section 10.3 to the fullest extent permitted by any applicable portion of this Section 10.3 that will not have been invalidated and to the fullest extent permitted by Applicable Law.

(h)     *Amendment*.  The provisions of this Section 10.3 will be a contract between the Company, on the one hand, and each Covered Person who served in such capacity at any time while this Section 10.3 is in effect, on the other hand, pursuant to which the Company and each such Covered Person intend to be legally bound.  No amendment, modification, or repeal of this Section 10.3 that adversely affects the rights of a Covered Person to indemnification for Losses incurred or

relating to a state of facts existing prior to such amendment, modification, or repeal will apply in such a way as to eliminate or reduce such Covered Person's entitlement to indemnification for such Losses without the Covered Person's prior written consent.

**Section 10.4.    Survival**.  The provisions of this <u>ARTICLE X</u> will survive the dissolution, liquidation, winding up, and termination of the Company.

## ARTICLE XI
## TRANSFER

**Section 11.1.    Restrictions on Transfer.**

(a)    Except as otherwise provided in this <u>ARTICLE XI</u> or in <u>Section 8.8</u>, no Member will Transfer all or any portion of its Membership Interest without the written consent of the other Member (which consent may be granted or withheld in the sole discretion of the other Member).  No Transfer of a Membership Interest to a Person not already a Member will be deemed completed until the prospective Transferee is admitted as a member of the Company in accordance with <u>Section 5.2(b)</u>.

(b)    Notwithstanding any other provision of this Agreement (including <u>Section 11.2</u>), each Member agrees that it will not Transfer all or any portion of its Membership Interest, and the Company agrees that it will not issue any Membership Interest:

(i)    except as permitted under the Securities Act and other applicable federal or state securities or blue sky laws, and then, with respect to a Transfer of a Membership Interest, only upon delivery to the Company of an opinion of counsel in form and substance satisfactory to the Company to the effect that such Transfer may be effected without registration under the Securities Act;

(ii)    if such Transfer or issuance would cause the Company to be considered a "publicly traded partnership" under Section 7704(b) of the Code within the meaning of Treasury Regulations Section 1.7704-1(h)(1)(ii), including the look-through rule in Treasury Regulations Section 1.7704-1(h)(3);

(iii)    if such Transfer or issuance would affect the Company's existence or qualification as a limited liability company under the Delaware Act;

(iv)    if such Transfer or issuance would cause the Company to lose its status as a partnership for federal income tax purposes;

(v)    if such Transfer or issuance would cause a termination of the Company for federal income tax purposes;

(vi)    if such Transfer or issuance would cause the Company to be required to register as an investment company under the Investment Company Act of 1940, as amended; or

(vii)    if such Transfer or issuance would cause the assets of the Company to be deemed "Plan Assets" as defined under the Employee Retirement Income Security Act of 1974 or its accompanying regulations or result in any "prohibited transaction" thereunder involving the Company.

(c)     Any Transfer or attempted Transfer of a Membership Interest in violation of this Agreement will be null and void, no such Transfer will be recorded on the Company's books and the purported Transferee in any such Transfer will not be treated (and the purported Transferor will continue be treated) as the owner of such Membership Interest for all purposes of this Agreement.

(d)     For the avoidance of doubt, any Transfer of a Membership Interest permitted by this Agreement will be deemed a sale, transfer, assignment, or other disposal of such Membership Interest in its entirety as intended by the parties to such Transfer, and will not be deemed a sale, transfer, assignment, or other disposal of any less than all of the rights and benefits described in the definition of the term "Membership Interest," unless otherwise explicitly agreed to by the parties to such Transfer.

**Section 11.2.     Permitted Transfers**.  The provisions of <u>Section 11.1(a)</u> will not apply to any Transfer by any Member of all or any portion of its Membership Interest to its Affiliate.

**ARTICLE XII**
**ACCOUNTING; TAX MATTERS**

**Section 12.1.     Financial Statements**.  The Managing Member will cause the Company will furnish to each Member the following reports:

(a)     *Annual Financial Statements*.  As soon as available, and in any event within one hundred twenty (120) days after the end of each Fiscal Year, consolidated balance sheets of the Company as at the end of each such Fiscal Year and consolidated statements of income, cash flows and Members' equity for such Fiscal Year, in each case setting forth in comparative form the figures for the previous Fiscal Year.

(b)     *Quarterly Financial Statements*.  As soon as available, and in any event within sixty (60) days after the end of each quarterly accounting period in each Fiscal Year (other than the last fiscal quarter of the Fiscal Year), consolidated balance sheets of the Company as at the end of each such fiscal quarter and for the current Fiscal Year to date and unaudited consolidated statements of income, cash flows and Members' equity for such fiscal quarter and for the current Fiscal Year to date, in each case setting forth in comparative form the figures for the corresponding periods of the previous fiscal quarter.

**Section 12.2.     Inspection Rights**.  Upon reasonable notice from a Member, the Company will afford each Member and its Representatives access during normal business hours to: (a) the Company's properties, offices, plants, and other facilities; (b) the corporate, financial, and similar records, reports, and documents of the Company, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any management letters, and communications with Members (including the Managing Member), and to permit each Member and its Representatives to examine such documents and make copies thereof; and (c) any officers, senior employees and public accountants of the Company, and to afford each Member and its Representatives the opportunity to discuss and advise on the affairs, finances and accounts of the Company with such officers, senior employees, and public accountants (and the Company hereby authorizes said accountants to discuss with such Member and its Representatives such affairs, finances, and accounts).

**Section 12.3.     Income Tax Status**.  It is the intent of this Company and the Members that this Company will be treated as a partnership for U.S., federal, state, and local income tax purposes.  Neither the

Company nor any Member will make an election for the Company to be classified as other than a partnership pursuant to Treasury Regulations Section 301.7701-3.

**Section 12.4.    Partnership Representative**.

(a)    *Appointment*.    The Members hereby appoint the Managing Member as the "partnership representative" (the "**Partnership Representative**") as provided in Code Section 6223(a) (as amended by the Bipartisan Budget Act of 2015 ("**BBA**")).    The Partnership Representative may resign at any time if there is another Managing Member to act as the Partnership Representative.

(b)    *Tax Examinations and Audits*.    The Partnership Representative is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by Taxing Authorities, including resulting administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith.    Each Member agrees that such Member will not independently act with respect to tax audits or tax litigation of the Company, unless previously authorized to do so in writing by the Partnership Representative, which authorization may be withheld by the Partnership Representative in its sole and absolute discretion.    The Partnership Representative shall have sole discretion to determine whether the Company (either on its own behalf or on behalf of the Members) will contest or continue to contest any tax deficiencies assessed or proposed to be assessed by any Taxing Authority.

(c)    *BBA Elections*.    To the extent permitted by applicable law and regulations, the Company will annually elect out of the partnership audit procedures enacted under Section 1101 of the BBA (the "**BBA Procedures**") for tax years beginning on or after January 1, 2018 pursuant to Code Section 6221(b) (as amended by the BBA).    For any year in which applicable law and regulations do not permit the Company to elect out of the BBA Procedures, then within forty-five (45) days of any notice of final partnership adjustment, the Company will elect the alternative procedure under Code Section 6226, as amended by Section 1101 of the BBA, and furnish to the Internal Revenue Service and each Member during the year or years to which the notice of final partnership adjustment relates a statement of the Member's share of any adjustment set forth in the notice of final partnership adjustment.

(d)    *Tax Returns and Tax Deficiencies*.    Each Member agrees that such Member shall not treat any Company item inconsistently on such Member's federal, state, foreign or other income tax return with the treatment of the item on the Company's return.    Any deficiency for taxes imposed on any Member or former Member (including penalties, additions to tax or interest imposed with respect to such taxes and any taxes imposed pursuant to Code Section 6226 as amended by the BBA) will be paid by such Member or former Member, and if required to be paid (and actually paid) by the Company, will be recoverable from such Member as provided in Section 7.2(d).

(e)    *Income Tax Elections*.    Except as otherwise provided herein, the Partnership Representative shall have sole discretion to make any determination regarding income tax elections it deems advisable on behalf of the Company; provided, that the Partnership Representative will make an election under Code Section 754, if requested in writing by another Member.

**Section 12.5.    Tax Returns**.    At the expense of the Company, the Managing Member (or any Officer that it may designate pursuant to Section 8.4) will endeavor to cause the preparation and timely filing (including extensions) of all tax returns required to be filed by the Company pursuant to the Code as well as all other required tax returns in each jurisdiction in which the Company own property or do business. The Managing Member will provide the Non-Managing Member, for its review and comment, copies of

all tax returns prior to the filing thereof. As soon as reasonably possible after the end of each Fiscal Year, the Managing Member or designated Officer will cause to be delivered to each Person who was a Member at any time during such Fiscal Year, IRS Schedule K-1 to Form 1065 and such other information with respect to the Company as may be necessary for the preparation of such Person's federal, state and local income tax returns for such Fiscal Year.

**Section 12.6.    Company Funds**.  All funds of the Company will be deposited in its name, or in such name as may be designated by the Managing Member, in such checking, savings or other accounts, or held in its name in the form of such other investments as will be designated by the Managing Member. The funds of the Company will not be commingled with the funds of any other Person.  All withdrawals of such deposits or liquidations of such investments by the Company will be made exclusively upon the signature or signatures of such Officer or Officers as the Managing Member may designate.

## ARTICLE XIII
## DISSOLUTION AND LIQUIDATION

**Section 13.1.    Events of Dissolution**.  The Company will be dissolved and its affairs wound up only upon the occurrence of any of the following events:

(a)    The determination of the Members to dissolve the Company;

(b)    The Bankruptcy of a Member, unless within ninety (90) days after the occurrence of such Bankruptcy, the other Member agrees in writing to continue the business of the Company;

(c)    At the election of a non-defaulting Member, in its sole discretion, if the other Member breaches any material covenant, duty or obligation under this Agreement (including a Member's obligation to make Additional Capital Contributions pursuant to Section 4.2), which breach remains uncured for ten (10) days after written notice of such breach was received by the defaulting Member;

(d)    The sale, exchange, involuntary conversion, or other disposition or Transfer of all or substantially all the assets of the Company; or

(e)    The entry of a decree of judicial dissolution under §18-802 of the Delaware Act.

**Section 13.2.    Effectiveness of Dissolution**.  Dissolution of the Company will be effective on the day on which the event described in Section 13.1 occurs, but the Company will not terminate until the winding up of the Company has been completed, the assets of the Company have been distributed as provided in Section 13.3 and the Certificate will have been cancelled as provided in Section 13.4.

**Section 13.3.    Liquidation**.  If the Company is dissolved pursuant to Section 13.1, the Company will be liquidated and its business and affairs wound up in accordance with the Delaware Act and the following provisions:

(a)    *Liquidator*.  The Managing Member will act as liquidator to wind up the Company (the "**Liquidator**"), unless the Company is being dissolved pursuant to Section 13.1(b) or Section 13.1(c) based on the Bankruptcy or a breach by the Managing Member, in which case the Liquidator will be the Non-Managing Member.  The Liquidator will have full power and authority to sell, assign, and encumber any or all of the Company's assets and to wind up and liquidate the affairs of the Company in an orderly and business-like manner.

(b)     *Accounting*.  As promptly as possible after dissolution and again after final liquidation, the Liquidator will cause a proper accounting to be made by a recognized firm of certified public accountants of the Company's assets, liabilities and operations through the last day of the calendar month in which the dissolution occurs or the final liquidation is completed, as applicable.

(c)     *Distribution of Proceeds*.  The Liquidator will liquidate the assets of the Company and distribute the proceeds of such liquidation in the following order of priority, unless otherwise required by mandatory provisions of Applicable Law:

    (i)     First, to the payment of all of the Company's debts and liabilities to its creditors (including Members, if applicable) and the expenses of liquidation (including sales commissions incident to any sales of assets of the Company);

    (ii)    Second, to the establishment of and additions to reserves that are determined by the Managing Member to be reasonably necessary for any contingent unforeseen liabilities or obligations of the Company; and

    (iii)   Third, to the Members in accordance with Section 7.1.

(d)     *Discretion of Liquidator*.  Notwithstanding the provisions of Section 13.3(c) that require the liquidation of the assets of the Company, but subject to the order of priorities set forth in Section 13.3(c), if upon dissolution of the Company the Liquidator reasonably determines that an immediate sale of part or all of the Company's assets would be impractical or could cause undue loss to the Members, the Liquidator may defer the liquidation of any assets except those necessary to satisfy Company liabilities and reserves, and may distribute to the Members, in lieu of cash, as tenants in common and in accordance with the provisions of Section 13.3(c), undivided interests in such Company assets as the Liquidator deems not suitable for liquidation. Any such distribution in kind will be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operating of such properties at such time.  For purposes of any such distribution, any property to be distributed will be valued at its Fair Market Value.

**Section 13.4.     Cancellation of Certificate**.  Upon completion of the distribution of the assets of the Company as provided in Section 13.3(c) hereof, the Company will be terminated and the Liquidator will cause the cancellation of the Certificate in the State of Delaware and of all qualifications and registrations of the Company as a foreign limited liability company in jurisdictions other than the State of Delaware and will take such other actions as may be necessary to terminate the Company.

**Section 13.5.     Survival of Rights, Duties, and Obligations**.  Dissolution, liquidation, winding up, or termination of the Company for any reason will not release any party from any Loss that at the time of such dissolution, liquidation, winding up or termination already had accrued to any other party or thereafter may accrue in respect of any act or omission prior to such dissolution, liquidation, winding up or termination.  For the avoidance of doubt, none of the foregoing will replace, diminish, or otherwise adversely affect any Member's right to indemnification pursuant to Section 10.3.

**Section 13.6.     Recourse for Claims**.  Each Member will look solely to the assets of the Company for all distributions with respect to the Company, such Member's Capital Account, and such Member's share of Net Income, Net Loss and other items of income, gain, loss and deduction, and will have no recourse therefor (upon dissolution or otherwise) against the Liquidator or any other Member.

# ARTICLE XIV
# MISCELLANEOUS

**Section 14.1.    Expenses**.   Except as otherwise expressly provided herein, all costs and expenses, including fees and disbursements of counsel, financial advisors and accountants, incurred in connection with the preparation and execution of this Agreement, or any amendment or waiver hereof, and the transactions contemplated hereby will be paid by the Company.

**Section 14.2.    Further Assurances**.   In connection with this Agreement and the transactions contemplated hereby, the Company and each Member hereby agrees, at the request of the Company or any other Member, to execute and deliver such additional documents, instruments, conveyances and assurances and to take such further actions as may be required to carry out the provisions hereof and give effect to the transactions contemplated hereby.

**Section 14.3.    Confidentiality.**

(a)     Each Member acknowledges that during the term of this Agreement, it will have access to and become acquainted with trade secrets, proprietary information and confidential information belonging to the Company and its Affiliates that are not generally known to the public, including, but not limited to, information concerning business plans, financial statements and other information provided pursuant to this Agreement, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists or other business documents that the Company treats as confidential, in any format whatsoever (including oral, written, electronic or any other form or medium) (collectively, "**Confidential Information**"). In addition, each Member acknowledges that: (i) the Company has invested, and continues to invest, substantial time, expense and specialized knowledge in developing its Confidential Information; (ii) the Confidential Information provides the Company with a competitive advantage over others in the marketplace; and (iii) the Company would be irreparably harmed if the Confidential Information were disclosed to competitors or made available to the public.  Without limiting the applicability of any other agreement to which any Member is subject, no Member will, directly or indirectly, disclose or use (other than solely for the purposes of such Member monitoring and analyzing its investment in the Company) at any time, including, without limitation, use for personal, commercial or proprietary advantage or profit, either during its association with the Company or thereafter, any Confidential Information of which such Member is or becomes aware.  Each Member in possession of Confidential Information will take all appropriate steps to safeguard such information and to protect it against disclosure, misuse, espionage, loss, and theft.

(b)     Nothing contained in Section 14.3(a) will prevent any Member from disclosing Confidential Information: (i) upon the order of any court or administrative agency; (ii) upon the request or demand of any regulatory agency or authority having jurisdiction over such Member; (iii) to the extent compelled by legal process or required or requested pursuant to subpoena, interrogatories or other discovery requests; (iv) to the extent necessary in connection with the exercise of any remedy hereunder; (v) to the other Member; (vi) to such Member's Representatives who, in the reasonable judgment of such Member, need to know such Confidential Information and agree to be bound by the provisions of this Section 14.3 as if a Member; or (vii) to any potential Permitted Transferee in connection with a proposed Transfer of Membership Interests from such Member, as long as such Transferee agrees to be bound by the provisions of this Section 14.3 as if a Member; provided that, in the case of clause (i), (ii), or (iii), such Member will notify the Company and other Member of the proposed disclosure as far in advance of such disclosure as practicable (but in no event make any such disclosure before notifying the Company and other

Member) and use reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment satisfactory to the Company, when and if available.

(c)      The restrictions of <u>Section 14.3(a)</u> will not apply to Confidential Information that: (i) is or becomes generally available to the public other than as a result of a disclosure by a Member in violation of this Agreement; (ii) is or has been independently developed or conceived by such Member without use of Confidential Information; or (iii) becomes available to such Member or any of its Representatives on a non-confidential basis from a source other than the Company, the other Member or any of their respective Representatives, provided that, such source is not known by the receiving Member to be bound by a confidentiality agreement regarding the Company.

(d)      The obligations of each Member under this <u>Section 14.3</u> will survive (i) the termination, dissolution, liquidation and winding up of the Company, (ii) the withdrawal of such Member from the Company, and (iii) such Member's Transfer of its Membership Interests.

**Section 14.4.     Notices**.     All notices, requests, consents, claims, demands, waivers and other communications hereunder will be in writing and will be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as will be specified in a notice given in accordance with this <u>Section 14.4</u>):

| | |
|---|---|
| If to the GWLI II Member : | To the applicable address set forth on the Members Schedule |
| If to the Naissance Member: | To the applicable address set forth on the Members Schedule |
| *with a copy to:* | Polsinelli PC<br>2950 N. Harwood Street, Ste. 2100<br>Dallas, TX 75201<br>Attention: Brian A. Bullard<br>E-mail: bbullard@polsinelli.com |

**Section 14.5.     Headings**.  The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision of this Agreement.

**Section 14.6.     Severability**.  If any term or provision of this Agreement is held to be invalid, illegal or unenforceable under Applicable Law in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.  Except as provided in <u>Section 10.3(g)</u>, upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto will negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 14.7. Entire Agreement**. This Agreement, together with the Certificate and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

**Section 14.8. Successors and Assigns**. Subject to the restrictions on Transfers set forth herein, this Agreement will be binding upon and will inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

**Section 14.9. No Third-party Beneficiaries**. Except as provided in ARTICLE X, which will be for the benefit of and enforceable by Covered Persons as described therein, this Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors, and assigns) and nothing herein, express or implied, is intended to or will confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 14.10. Amendment**. No provision of this Agreement may be amended or modified except by an instrument in writing executed by both of the Members. Any such written amendment or modification will be binding upon the Company and each Member. Notwithstanding the foregoing, amendments to the Members Schedule following any new issuance, redemption, repurchase, or Transfer of Membership Interests in accordance with this Agreement may be made by the Managing Member without the consent of or execution by the Members.

**Section 14.11. Waiver**. No waiver by any party of any of the provisions hereof will be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party will operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement will operate or be construed as a waiver thereof, nor will any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. For the avoidance of doubt, nothing contained in this Section 14.1 will diminish any of the explicit and implicit waivers described in this Agreement, including in Section 14.14.

**Section 14.12. Governing Law**. All issues and questions concerning the application, construction, validity, interpretation, and enforcement of this Agreement will be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Delaware.

**Section 14.13. Submission to Jurisdiction**. The parties hereby agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort, or otherwise, will be brought in the United States District Court for the District of Delaware or in the Court of Chancery of the State of Delaware (or, if such court lacks subject matter jurisdiction, in the Superior Court of the State of Delaware), so long as one of such courts will have subject-matter jurisdiction over such suit, action, or proceeding, and that any case of action arising out of this Agreement will be deemed to have arisen from a transaction of business in the State of Delaware. Each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action, or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now

or hereafter have to the laying of the venue of any such suit, action, or proceeding in any such court or that any such suit, action, or proceeding that is brought in any such court has been brought in an inconvenient form. Service of process, summons, notice, or other document by registered mail to the address set forth in <u>Section 14.4</u> will be effective service of process for any suit, action, or other proceeding brought in any such court.

**Section 14.14. WAIVER OF JURY TRIAL**. EACH PARTY HERETO HEREBY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

**Section 14.15. Equitable Remedies**. Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto will, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

**Section 14.16. Attorneys' Fees**. In the event that any party hereto institutes any legal suit, action or proceeding, including arbitration, against another party in respect of a matter arising out of or relating to this Agreement, the prevailing party in the suit, action, or proceeding will be entitled to receive, in addition to all other damages to which it may be entitled, the costs incurred by such party in conducting the suit, action, or proceeding, including reasonable attorneys' fees and expenses and court costs.

**Section 14.17. Remedies Cumulative**. The rights and remedies under this Agreement are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise, except to the extent expressly provided in <u>Section 10.2</u> to the contrary.

**Section 14.18. Counterparts**. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of Electronic Transmission will be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank – signature page follows]*

Limited Liability Company Agreement ~ Galleria 2425 JV, LLC

The parties hereto have caused this Agreement to be executed as of the Effective Date by their respective officers thereunto duly authorized.

**MEMBERS:**

NAISSANCE CAPITAL REAL ESTATE, LLC, a Delaware limited liability company

By: _____
Name: Azeemeh Zaheer
Title: Managing Member

GALLERIA WEST LOOP INVESTMENTS II LLC, a Texas limited liability company

By: GALLERIA WEST LOOP INVESTMENTS, LLC, a
Texas limited liability company, its manager

By: _____
Name: Bradley S. Parker
Title: President

# SCHEDULE A

MEMBERS SCHEDULE

| Member<br>*(Name and Address)* | Initial Capital Contributions | Membership Interest Percentage |
|---|---|---|
| **GWLI II Member :** | | |
| 1614 Sidney Baker Street<br>Kerville, Texas 78028 | $16,000,000 | 98.77% |
| **Naissance Member:** | | |
| 6501 Westchester Ave.<br>Houston Texas 77005 | $200,000 | 1.23% |
| **Totals:** | **$16,200,000** | **100%** |

**SCHEDULE B**

BUDGET

[attached]

Limited Liability Company Agreement ~ Galleria 2425 JV, LLC

# Boxer Property Management
*Property*
*Pro Forma Summary*

|  | Year 1 | |
|  | May-18 | Apr-19 |
|  | **Annual Total** | **PSF** |

| | | |
|---|---:|---:|
| *Rate* | *$21.73* | *$22.18* |
| *Occupied Square Feet* | *259,016* | *259,016* |
| *Occupied Percentage* | *91.41%* | *91.41%* |
| | | |
| **Gross Potential Revenue** | **6,241,332** $ | **22.03** |
| | | |
| Vacancy Loss | (584,177) $ | (2.06) |
| Net Rental Revenue | 5,657,155 $ | 19.96 |
| | | |
| Expense Reimbursements | 1,992,273 $ | 7.03 |
| Building Services / Other Income | 23,634 $ | 0.08 |
| **Total Revenue** | **7,673,063** $ | **27.08** |
| | | |
| **Operating Expenses** | | |
| | | |
| Salaries and Benefits | 264,844 $ | 0.93 |
| General and Administrative | 215,552 $ | 0.76 |
| Repair and Maintenance | 243,569 $ | 0.86 |
| Utilities (Electric) | 368,364 $ | 1.30 |
| Utilities (Non-electric) | 82,174 $ | 0.29 |
| Contract Services | 258,224 $ | 0.91 |
| Controllable Expenses | 1,432,727 $ | 5.06 |
| | | |
| Mgmt Fee | 141,679 $ | 0.50 |
| Property Taxes | 753,500 $ | 2.66 |
| Insurance | 35,420 $ | 0.13 |
| **Total Operating Expenses** | **2,363,325** $ | **8.34** |
| | | |
| **Net Operating Income** | **5,309,738** $ | **18.74** |
| | | |
| **Other Expenses/(Income)** | | |
| | | |
| In-house Leasing Salaries | 36,993 $ | 0.13 |
| In-house Marketing/Advertising | 87,677 $ | 0.31 |
| In-house Leasing/Design & Construction | 69,009 $ | 0.24 |
| In-house Legal | 24,302 $ | 0.09 |
| 3rd Party Professional Fees | 18,809 $ | 0.07 |
| Texas Margin Tax | 74,812 $ | 0.26 |
| **Total Other Expenses/(Income)** | **311,603** $ | **1.10** |
| | | |
| **Net Income Before Interest** | **4,998,135** $ | **17.64** |

Unofficial Copy, Office of Marilyn Burgess District Clerk

Unofficial Copy @ ...pdf...miami...com

**Property**
*Year 1 Pro Forma*

| | May-19 1 | Jun-18 2 | Jul-18 3 | Aug-18 4 | Sep-18 5 | Oct-18 6 | Nov-18 7 | Dec-18 8 | Jan-19 9 | Feb-19 10 | Mar-19 11 | Apr-19 12 | Annual Total | PSF |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Rate* | $21.73 | $21.73 | $21.74 | $21.74 | $21.74 | $21.74 | $21.74 | $21.74 | $21.76 | $22.12 | $22.13 | $22.18 | | |
| *Occupied Square Feet* | 259,016 | 259,016 | 259,016 | 259,016 | 259,016 | 259,016 | 259,016 | 259,016 | 259,016 | 259,016 | 259,016 | 259,016 | | |
| *Occupied Percentage* | 91.41% | 91.41% | 91.41% | 91.41% | 91.41% | 91.41% | 91.41% | 91.41% | 91.41% | 91.41% | 91.41% | 91.41% | | |
| Total Current Rents | 469,129 | 469,129 | 469,248 | 469,248 | 469,248 | 469,248 | 469,248 | 469,248 | 469,641 | 477,524 | 477,575 | 478,669 | 5,657,155 | $ 19.96 |
| Total New Rents | 48,681 | 48,681 | 48,681 | 48,681 | 48,681 | 48,681 | 48,681 | 48,681 | 48,681 | 48,681 | 48,681 | 48,681 | 584,177 | $ 2.06 |
| Vac Loss | | | | | | | | | | | | | | |
| **Gross Potential Revenue** | 517,810 | 517,810 | 517,929 | 517,929 | 517,929 | 517,929 | 517,929 | 517,929 | 518,322 | 526,205 | 526,256 | 527,351 | 6,241,332 | $ 22.03 |
| Rental Allowances | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Vacancy Loss | (48,681) | (48,681) | (48,681) | (48,681) | (48,681) | (48,681) | (48,681) | (48,681) | (48,681) | (48,681) | (48,681) | (48,681) | (584,177) | $ (2.06) |
| Bad Debt Expense | | | | | | | | | | | | | | |
| Net Rental Revenue | 469,129 | 469,129 | 469,248 | 469,248 | 469,248 | 469,248 | 469,248 | 469,248 | 469,641 | 477,524 | 477,575 | 478,669 | 5,657,155 | $ 19.96 |
| Expense Reimbursements | 166,023 | 166,023 | 166,023 | 166,023 | 166,023 | 166,023 | 166,023 | 166,023 | 166,023 | 166,023 | 166,023 | 166,023 | 1,992,273 | $ 7.03 |
| Building Services / Other Income | 1,970 | 1,970 | 1,970 | 1,970 | 1,970 | 1,970 | 1,970 | 1,970 | 1,970 | 1,970 | 1,970 | 1,970 | 23,634 | $ 0.08 |
| **Total Revenue** | 637,121 | 637,121 | 637,240 | 637,240 | 637,240 | 637,240 | 637,240 | 637,240 | 637,633 | 645,517 | 645,567 | 646,661 | 7,673,063 | $ 27.08 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Salaries and Benefits | 20,427 | 20,427 | 20,427 | 30,286 | 20,427 | 20,427 | 20,427 | 20,427 | 20,427 | 20,427 | 30,286 | 20,427 | 264,844 | $ 0.93 |
| General and Administrative | 17,859 | 17,859 | 17,859 | 18,482 | 17,859 | 17,859 | 17,859 | 17,859 | 17,859 | 17,859 | 18,482 | 17,859 | 215,532 | $ 0.76 |
| Repair and Maintenance | 20,297 | 20,297 | 20,297 | 20,297 | 20,297 | 20,297 | 20,297 | 20,297 | 20,297 | 20,297 | 20,297 | 20,297 | 243,569 | $ 0.86 |
| Utilities (Electric) | 30,697 | 30,697 | 30,697 | 30,697 | 30,697 | 30,697 | 30,697 | 30,697 | 30,697 | 30,697 | 30,697 | 30,697 | 368,364 | $ 1.30 |
| Utilities (Non-electric) | 6,848 | 6,848 | 6,848 | 6,848 | 6,848 | 6,848 | 6,848 | 6,848 | 6,848 | 6,848 | 6,848 | 6,848 | 82,174 | $ 0.29 |
| Contract Services | 21,519 | 21,519 | 21,519 | 21,519 | 21,519 | 21,519 | 21,519 | 21,519 | 21,519 | 21,519 | 21,519 | 21,519 | 258,224 | $ 0.91 |
| Mgmt Fee | 11,807 | 11,807 | 11,807 | 11,807 | 11,807 | 11,807 | 11,807 | 11,807 | 11,807 | 11,807 | 11,807 | 11,807 | 141,679 | $ 0.50 |
| Controllable Expenses | 129,453 | 129,453 | 129,453 | 139,936 | 129,453 | 129,453 | 129,453 | 129,453 | 129,453 | 129,453 | 139,936 | 129,453 | 1,574,405 | $ 5.56 |
| Property Taxes | 62,792 | 62,792 | 62,792 | 62,792 | 62,792 | 62,792 | 62,792 | 62,792 | 62,792 | 62,792 | 62,792 | 62,792 | 753,500 | $ 2.66 |
| Insurance | 2,952 | 2,952 | 2,952 | 2,952 | 2,952 | 2,952 | 2,952 | 2,952 | 2,952 | 2,952 | 2,952 | 2,952 | 35,420 | $ 0.13 |
| **Total Operating Expenses** | 195,197 | 195,197 | 195,197 | 205,679 | 195,197 | 195,197 | 195,197 | 195,197 | 195,197 | 195,197 | 205,679 | 195,197 | 2,363,325 | $ 8.34 |
| **Net Operating Income** | 441,925 | 441,925 | 442,044 | 431,561 | 442,044 | 442,044 | 442,044 | 442,044 | 442,437 | 450,320 | 439,888 | 451,465 | 5,309,738 | $ 18.74 |
| **Other Expenses/(Income)** | | | | | | | | | | | | | | |
| In-house Leasing Salaries | 2,846 | 2,846 | 2,846 | 4,268 | 2,846 | 2,846 | 2,846 | 2,846 | 2,846 | 2,846 | 4,268 | 2,846 | 36,993 | $ 0.13 |
| In-house Marketing/Advertising | 6,871 | 6,871 | 6,871 | 9,481 | 6,871 | 6,871 | 6,871 | 6,871 | 6,871 | 6,871 | 9,481 | 6,871 | 87,677 | $ 0.31 |
| In-house Leasing/Design & Construction | 5,308 | 5,308 | 5,308 | 7,963 | 5,308 | 5,308 | 5,308 | 5,308 | 5,308 | 5,308 | 7,963 | 5,308 | 69,009 | $ 0.24 |
| In-house Legal | 1,869 | 1,869 | 1,869 | 2,804 | 1,869 | 1,869 | 1,869 | 1,869 | 1,869 | 1,869 | 2,804 | 1,869 | 24,302 | $ 0.09 |
| 3rd Party Professional Fees | 1,567 | 1,567 | 1,567 | 1,567 | 1,567 | 1,567 | 1,567 | 1,567 | 1,567 | 1,567 | 1,567 | 1,567 | 18,809 | $ 0.07 |
| Texas Margin Tax | 6,234 | 6,234 | 6,234 | 6,234 | 6,234 | 6,234 | 6,234 | 6,234 | 6,234 | 6,234 | 6,234 | 6,234 | 74,812 | $ 0.26 |
| **Total Other Expenses/(Income)** | 24,697 | 24,697 | 24,697 | 32,318 | 24,697 | 24,697 | 24,697 | 24,697 | 24,697 | 24,697 | 32,318 | 24,697 | 311,603 | $ 1.10 |
| **Net Income Before Interest** | 417,228 | 417,228 | 417,347 | 399,244 | 417,347 | 417,347 | 417,347 | 417,347 | 417,740 | 425,623 | 407,570 | 426,768 | 4,998,135 | $ 17.64 |

12/5/2023 9:11 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82231127
By: Patricia Gonzalez
Filed: 12/5/2023 8:40 AM

**CAUSE NO. 2023-22748**

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC,<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§<br>§ | HARRIS COUNTY, TEXAS |
| NATIONAL BANK OF KUWAIT,<br>S.A.K.P., NEW YORK BRANCH, | §<br>§<br>§<br>§ | |
| Defendant. | §<br>§ | 281ST JUDICIAL DISTRICT |

**ORDER ON PLAINTIFF'S FIFTH AMENDED PETITION AND EMERGENCY
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
<u>TEMPORARY INJUNCTION</u>**

HAVING CONSIDERED Plaintiff Galleria 2425 Owner, LLC's Fifth Amended Petition

and Emergency Application for Temporary Restraining Order and Temporary Injunction, any

responses thereto and the argument of counsel, if any, the Court, for the reasons stated on the

record, DENIES Plaintiff's Temporary Injunction.

SIGNED on the _____ day of December 2023.

_____

JUDGE PRESIDING

4881-4866-5237.v2

SUBMITTED AS TO FORM:

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: _____ /s/ Charles Conrad _____
Charles C. Conrad
State Bar No. 24040721
Elizabeth Klingensmith
State Bar No. 24046496
Ryan Steinbrunner
State Bar No. 24093201
Two Houston Center
909 Fannin, Suite 2000
Houston, Texas 77010-1018
Telephone: (713) 276-7600
Facsimile: (281) 276-7634
charles.conrad@pillsburylaw.com
liz.klingensmith@pillsburylaw.com
ryan.steinbrunner@pillsburylaw.com

*Attorneys for National Bank of Kuwait, S.A.K.P., New York Branch*

4881-4866-5237.v2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Jones on behalf of Charles Conrad
Bar No. 24040721
nancy.jones@pillsburylaw.com
Envelope ID: 82231127
Filing Code Description: Proposed Order
Filing Description: Order on Galleria Emergency Application for Temporary Restraining Order and Temporary Injunction
Status as of 12/5/2023 9:16 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 12/5/2023 9:11:06 AM | SENT |
| Jerry CAlexander | | alexanderj@passmanjones.com | 12/5/2023 9:11:06 AM | SENT |
| Ruth NVera | | verar@passmanjones.com | 12/5/2023 9:11:06 AM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 12/5/2023 9:11:06 AM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 12/5/2023 9:11:06 AM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 12/5/2023 9:11:06 AM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 12/5/2023 9:11:06 AM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 12/5/2023 9:11:06 AM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 12/5/2023 9:11:06 AM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 12/5/2023 9:11:06 AM | SENT |
| David Clark | | dclark@mccathernlaw.com | 12/5/2023 9:11:06 AM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 12/5/2023 9:11:06 AM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 12/5/2023 9:11:06 AM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 12/5/2023 9:11:06 AM | SENT |
| Clouthier Law | | info@clouthierlaw.com | 12/5/2023 9:11:06 AM | SENT |
| Gage Fender | | gage@clouthierlaw.com | 12/5/2023 9:11:06 AM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 12/5/2023 9:11:06 AM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/5/2023 9:11:06 AM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 12/5/2023 9:11:06 AM | SENT |
| Ali Choudhri | | ali@jetallcompanies.com | 12/5/2023 9:11:06 AM | SENT |

Cause No. 2023-22748

| GALLERIA 2425 OWNER LLC | § | IN THE DISTRICT COURT OF |
|---|---|---|
| vs. | § | HARRIS COUNTY, TEXAS |
| NATIONAL BANK OF KUWAIT S A | | |
| K P NEW YORK BRANCH | § | 281st JUDICIAL DISTRICT |

---

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER

---

On this day came on to be heard Plaintiff's Application for a Temporary Restraining Order.  After having reviewed the motions, responses and arguments of the parties, the Court finds that Plaintiff's Application for Temporary Restraining Order should be **DENIED**.

It is therefore,

ORDERED, that Plaintiff's Application for a Temporary Restraining Order is **DENIED**.

Signed December 5, 2023.

Ancillary Judge

Unofficial Copy Office of Marilyn Burgess District Clerk

12/5/2023 11:39 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82274750
By: Patricia Gonzalez
Filed: 12/5/2023 11:39 PM

**NO. 2023-22748**

---

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT OF** |
| **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT S A K P** | § | |
| **- NEW YORK BRANCH** | § | |
| **DEFENDANT** | § | **281ˢᵗ JUDICIAL DISTRICT** |

---

### PLAINTIFF'S RESPONSE TO RODNEY DRINNON'S ANTI-SLAPP MOTION

---

1.       Plaintiff, Galleria 2425 Owner, LLC ("Non-Movant"), asks the Court to deny former named party Rodney Drinnon's ("Movant") motion to dismiss under the Texas Citizens Participation Act (codified in Texas Civil Practice & Remedies Code chapter 27).

### I.    Background

2.       On or about November 16th, 2023, defendant moved to dismiss plaintiff's suit under the Texas Citizens Participation Act (TCPA).

3.       Just minutes prior to the filing of Mr. Drinnon's Motion to Dismiss under the TCPA, Mr. James Pope, attorney of record for Plaintiff, had informed Mr. Drinnon in writing that he was amending the pleadings to exclude Mr. Drinnon as a named party.

4.       At no point in time was citation ever issued for Mr. Drinnon, nor was Mr. Drinnon ever served with this suit. As such, Mr. Drinnon, at the time he filed his motion, had no duty to answer, and no possible liability for the lawsuit, as a party must be cited and served before judgment can be rendered against it.

5.      Plaintiff, within two hours of stating it would, did in fact amend the pleadings to remove Drinnon's name from them. The effect of that amendment was to non-suit Drinnon from the claim.

6.      It would seem that Drinnon rushed to file into the case, at a time when neither answer nor appearance was required of him, in order to ensure he became a party to the claims, only to now move for dismissal. Since he has already been removed from the suit, his motion to be dismissed from it is moot.

7.      In his motion, Drinnon also improperly seeks remedies against two individual parties, an attorney James Pope, and Ali Choudhri, who are neither party to this suit, nor are they the parties who added Mr. Drinnon's name to the pleadings.

## II.      Argument & Authorities

### A.  Defendant has not met his burden under the TCPA.

8.      To prevail on a motion to dismiss under the TCPA, a defendant must show by a preponderance of the evidence that the plaintiff's legal action is based on, related to, or in response to the defendant's exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. Tex. Civ. Prac. & Rem. Code §27.005(b); *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). Only after the defendant has met its burden does the burden shift to the plaintiff to establish by clear and specific evidence a prima facie case for each essential element of its claim. Tex. Civ. Prac. & Rem. Code §27.005(c); *In re Lipsky*, 460 S.W.3d at 587.

9.      The Court should deny defendant's motion because defendant has not shown by a preponderance of the evidence that plaintiff's claim for tortious interference, business

2

disparagement, or conspiracy is based on, related to, or in response to the defendant's exercise of a protected right.

10.     In his motion to dismiss, defendant argued that plaintiff's claims for tortious interference, business disparagement, and conspiracy should be dismissed because it is based on, related to, or in response to defendant's exercise of his right to petition. Under the TCPA, a defendant exercises his right to petition when he makes (1) a communication in or pertaining to a judicial proceeding or one of the other proceedings described in Texas Civil Practice & Remedies Code section 27.001(4)(A), (2) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding, (3) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding, (4) a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding, or (5) any other communication that falls within the protection of the right to petition government under the U.S. Constitution or the Texas Constitution. Tex. Civ. Prac. & Rem. Code §27.001(4). A communication includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic, regardless of whether the communication is made or submitted publicly or privately. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015); *see* Tex. Civ. Prac. & Rem. Code §27.001(1).

11.     The statute, however, provides several exemptions from TCPA coverage. Out of an apparent concern that the TCPA applied too broadly, the legislature enacted eight additional exemptions to its coverage in the 2019 session, and added a ninth exemption in the 2023 session.

3

The eight original exemptions took effect Sept. 1, 2019, and apply only to actions filed on or after that date [*see* Acts 2019, 86th Leg., R.S., ch. 378, §§ 11, 12; *e.g., Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 274 n.4 (Tex. App.—Tyler 2021, pet. denied) (noting that because action was filed in 2020, amended version of TCPA applied, including eight additional exemptions to coverage)]. The ninth exemption took effect Sept. 1, 2023, and applies only to actions filed on or after that date [*see* Acts 2023, 88th Leg., R.S., ch. XXX (HB 527), §§ 2, 3].

12.     One important exemption from TCPA coverage is: "A legal action brought under the Deceptive Trade Practices Act, other than an action governed by Section 17.49(a) of that Act." Tex. Civ. Prac. & Rem. Code § 27.010(a)(7) (added by Acts 2019, 86th Leg., R.S., ch. 378 (H.B. 2730)). One violation of the DTPA is to "disparage[e] the goods, services, or business of another by false or misleading representation of facts" which is what Plaintiff's claims for Business disparagement are based on.

13.     A second relevant exemption from TCPA coverages is: "A legal action based on a common law fraud claim." Tex. Civ. Prac. & Rem. Code § 27.010(a)(12) (added by Acts 2019, 86th Leg., R.S., ch. 378 (H.B. 2730)); *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 281–285 (Tex. App.—Tyler 2021, pet. denied) (claims and remedies for unjust enrichment, *civil conspiracy*, and aiding and abetting breach of fiduciary duty are all "based on" underlying common law fraud, so those claims fall within fraud exemption and are outside scope of TCPA)].

14.     Furthermore, movant bears the burden to show that suit was brought against him for his actions constitute an exercise of the right of petition, and actions taken outside of the Court setting, are not subject to the TCPA. *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 283–

4

284, 286–287 (Tex. App.—Dallas 2015, pet. denied) (TCPA applied to claims that arose from employer's statements in contested case hearing before Division of Worker's Compensation because they concerned right to petition; claims based on employer's conduct outside hearing, however, were not subject to TCPA);

15.    If the entire action becomes moot before a TCPA motion is granted, the motion itself is also moot. *Glassdoor, Inc. v. Andra Grp., L.P.*, 575 S.W.3d 523, 530–531 (Tex. 2019). In that case, the Texas Supreme Court stated:

> "Although Glassdoor urges that the Rule 202 petition is moot, it argues that its TCPA motion to dismiss the action is not because the motion includes a request for attorney's fees. We disagree.
>
> We have recognized that a case may become moot as [**15] to some claims or issues, but remain "live" as to others. *State v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018). In *Harper*, we explained the circumstances under which "a claim for attorney's fees 'breathes life' into a suit that has become moot in all other respects." Id. at 7 (quoting *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988)). We held that when a party seeks attorney's fees under a prevailing-party statute like the TCPA, the claim for fees remains a live controversy if the party prevailed before the underlying [*531] claim became moot. *Id*. at 7-8. We addressed the merits of the TCPA motion in Harper because, although the trial court had denied the motion, the court of appeals reversed, and the underlying claims became moot while the motion for rehearing was pending in that court. *Id*. at 8. By contrast, in this case, the trial court denied Glassdoor and Does 1 and 2's TCPA motion to dismiss, and the court of appeals affirmed that order. Thus, regardless of how we would decide the issue, the TCPA movants were not prevailing parties before the underlying Rule 202 petition became moot. We therefore have no choice but to dismiss the case in its entirety."

16.    Plaintiff non-suited Drinnon from this suit prior to his ever prevailing on his TCPA Motion, and as a result, his claim for attorney's fees has become moot.

17.     Even if Drinnon's fees were not impermissible under the case cited above, they are not allowed under the TCPA in all circumstances.  "Because the TCPA authorizes an award of costs and attorney's that were "incurred," a party that was represented pro bono cannot recover an award [*Cruz v. Van Sickle*, 452 S.W.3d 503, 523–525 (Tex. App.—Dallas 2014, pet. denied); see *Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 779–780 (Tex. App.—Dallas 2018, pet. denied) (though defendant was represented by tax-exempt, nonprofit legal services organization, bare allegation by plaintiff that services were provided pro bono was insufficient to overcome defendant's evidentiary submissions as to rates charged)]." 20 Dorsaneo, Texas Litigation Guide § 333.42. Drinnon is pro se in this matter, and as such, has not "incurred" fees, as specifically required by the TCPA.  *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 877–879 (Tex. App.—Dallas 2014, no pet.) (attorney's fees are "incurred" when party is liable for their payment).

18.     Prior to the 2019 amendments to the TCPA, it applied not only when the legal action is based on or in response to a party's exercise of constitutional rights, but also when the action "relates to" that exercise. *See* Acts 2019, 86th Leg., R.S., ch. 378 (H.B. 2730), § 2 (striking "relates to" language from Tex. Civ. Prac. & Rem. Code § 27.003(a)]. This amendment requires a more direct connection between the exercise of the right and the resulting legal action [Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 Tex. Tech L. Rev. 163, 169 (2020) (noting that deletion of "relates to" increased burden on movants seeking dismissal)], and rejects prior authority that the claims need not arise directly from the exercise of that right.

19.     In another case, a series of internal communications about an employee's performance was followed by the decision to terminate the employee. When he sued over the

termination alleging that it was retaliation for filing for worker's compensation, the former employer unsuccessfully moved to dismiss under the TCPA. The court of appeals affirmed, holding that the plaintiff's action was brought in response to the defendant's _conduct_ in terminating the employment, not any _communications_ that preceded it. _Clinical Pathology Labs., Inc. v. Polo_, 632 S.W.3d 35, 43–47 (Tex. App.—El Paso 2020, pet. denied)].

20.     If a TCPA motion to dismiss is granted, the court may award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter that party from bringing similar actions. Tex. Civ. Prac. & Rem. Code § 27.009(a)(2) (as amended by Acts 2019, 86th Leg., R.S., ch. 378 (H.B. 2730)); see _McGibney v. Rauhauser_, 549 S.W.3d 816, 835 (Tex. App.—Fort Worth 2018, pet. denied) (because TCPA authorizes "award" of sanctions, _only monetary sanctions are available_; trial court abuses its discretion in imposing any kind of nonmonetary sanction). It is clear that sanctions and awards are only available against the party who brought the legal action, so Drinnon's attempts to seek remedies against James Pope, as attorney for Plaintiff, and Ali Choudhri individually, who were not parties to this suit at the time Drinnon was added, and who cannot have been parties bringing suit against Drinnon, is impermissible. Interestingly, Mr. Drinnon seeks sanction against attorney James Pope for petitioning this Court on behalf of his client, which is _exactly_ the conduct he appears to complain that he was sued for in his TCPA motion, and seeks damages for under the TCPA. If his claims against Pope are permissible, then it would surely follow that Mr. Pope possesses a right to a recovery of the same fees and sanctions from Mr. Drinnon in return.

21.     In support of plaintiff's claim against the defendant for tortious interference, plaintiff alleged the following: 1) that Drinnon, in concert with others, and fraudulently

7

purporting to act on behalf of Plaintiff, appeared at two separate hearings, and filed a motion in the bankruptcy court, which was also in direct violation of Temporary Injunction Order entered by the 80th Civil District Court in Harris County, Cause No. 2023-43755; 2) that Drinnon, in concert with others, intentionally or negligently mischaracterized the temporary injunction order entered by Judge Manor in order to mislead the bankruptcy court into believing that Judge Manor gave Zaheer control of Plaintiff, when it did not; 3) that Drinnon, acting outside of litigation, engaged in conduct that aided or abetted the bank in its commission of claims giving rise to Plaintiff's lender liability claims.   These claims arise from alleged fraudulent misrepresentations, and conspiracy, which are expressly exempt from the TCPA.

22.      In support of plaintiff's claim against the defendant for business disparagement, plaintiff alleged the following: Drinnon, in concert with others, made or disseminated false accusations and false representations about Plaintiff's ownership interests, management, and decision-making abilities, or in other words, disparagement of Plaintiff's business by false or misleading representation of facts to another, which is a prohibited act under the DTPA, and thus exempt from TCPA coverage by statute.

23.      In support of plaintiff's claim against the defendant for conspiracy, plaintiff alleged the following: 1) Drinnon, in concert with the other defendants have devised a fraudulent scheme in order to engineer a hostile takeover of the 2425 Building, or to otherwise extort money; 2) Drinnon, in concert with the other defendants, under cover of this fraudulent scheme, claimed to be hired by, and to act on behalf of Plaintiff, without Plaintiff's actual approval or authority to act in such a capacity on its behalf; 3) Drinnon, in concert with others, intentionally or negligently mischaracterized the state temporary injunction order, in order to tortiously interfere with Plaintiff's bankruptcy case.

8

24.      Plaintiff's claims are exempt from the TCPA by statute because the claims brought by Plaintiff are express exemptions from the TCPA under Tex. Civ. Prac. & Remedies Code §27.010(a)(1)-(13).

25.      Each of allegations clearly do not fall within the scope of the TCPA because they are not based on, related to, or in response to a communication made by the defendant in the exercise of his right to petition.

### III.     Costs & Sanctions

26.      Under the TCPA, if a court finds that a motion to dismiss is frivolous or solely intended to cause delay, the court can award court costs and attorney fees to the plaintiff. Tex. Civ. Prac. & Rem. Code §27.009(b).

27.      Plaintiff asks the Court to award its costs and attorney fees because defendant's motion is frivolous and solely intended to cause delay. Defendant's motion is moot, because, like a 91A Motion to Dismiss, a plaintiff can non-suit its claims prior to a time when defendant succeeds on its TCPA motion, and if such occurs, the movants TCPA Motion is entirely mooted.

28.      Further, Defendant intentionally rushed to file its motion under TCPA, having prior knowledge that Plaintiff was actively working to amend and remove him from the claim, in a frivolous action, which can only have been done in an effort to cause delay.

### IV.     Conclusion

29.      Movant's TCPA is impermissible because Plaintiff's claims have been mooted prior to movant succeeding on his motion. Further, movant cannot prevail on his TCPA because the Plaintiff's claims are exempted from TCPA coverage by statute. Movant's TCPA claims as to attorney's fees fail, even if they were not mooted, because the TCPA requires movant to have

"incurred" attorney's fees, and movant is pro se, so he has not incurred any fees. Movant's claims as to James Pope and Ali Choudhri fail as a matter of law, because the TCPA only covers parties bringing a claim against the movant, not individual third parties, who themselves are exercising a right of petition.

## V. **Prayer**

30.     For these reasons, plaintiff asks the Court to deny defendant's motion to dismiss under the TCPA and award plaintiff its costs and attorney fees.

Respectfully Submitted,

MacGeorge Law Firm, PLLC
1001 West Loop South, Suite 700
Houston, TX 77027
P: (512) 215-4129
F: (512) 212-5399
jmac@jlm-law.com

By: /s/Jennifer MacGeorge
    Jennifer MacGeorge
    Attorney for Plaintiff
    SBN: 24093627

## CERTIFICATE OF SERVICE

I certify that on December 5, 2023, I served a copy of the foregoing document on the parties of record by electronic service and that the electronic transmission was reported as complete. My e-mail address is jmac@jlm-law.com.

/s/ Jennifer MacGeorge

Jennifer MacGeorge

10

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jennifer MacGeorge
Bar No. 24093627
jmac@jlm-law.com
Envelope ID: 82274750
Filing Code Description: No Fee Documents
Filing Description: Plaintiff's Response to Drinnon's TCPA Motion
Status as of 12/6/2023 8:12 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robin Harrison | | rharrison@hicks-thomas.com | 12/5/2023 11:39:40 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 12/5/2023 11:39:40 PM | SENT |
| Clouthier Law | | info@clouthierlaw.com | 12/5/2023 11:39:40 PM | SENT |
| Gage Fender | | gage@clouthierlaw.com | 12/5/2023 11:39:40 PM | SENT |
| James Quantrele Pope | 24048738 | ecf@thepopelawfirm.com | 12/5/2023 11:39:40 PM | SENT |
| Jennifer LMacGeorge | | jmac@jlm-law.com | 12/5/2023 11:39:40 PM | SENT |
| Jetall Legal | | legal@jetallcompanies.com | 12/5/2023 11:39:40 PM | SENT |
| MacGeorge Law Firm Admin | | service@jlm-law.com | 12/5/2023 11:39:40 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 12/5/2023 11:39:40 PM | SENT |
| Jerry CAlexander | | alexanderj@passmanjones.com | 12/5/2023 11:39:40 PM | SENT |
| Ruth NVera | | verar@passmanjones.com | 12/5/2023 11:39:40 PM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 12/5/2023 11:39:40 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 12/5/2023 11:39:40 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 12/5/2023 11:39:40 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 12/5/2023 11:39:40 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 12/5/2023 11:39:40 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 12/5/2023 11:39:40 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 12/5/2023 11:39:40 PM | SENT |
| Averyll Mauch | | amauch@Mccathernlaw.com | 12/5/2023 11:39:40 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 12/5/2023 11:39:40 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 12/5/2023 11:39:40 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/5/2023 11:39:40 PM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jennifer MacGeorge
Bar No. 24093627
jmac@jlm-law.com
Envelope ID: 82274750
Filing Code Description: No Fee Documents
Filing Description: Plaintiff's Response to Drinnon's TCPA Motion
Status as of 12/6/2023 8:12 AM CST

Case Contacts

| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/5/2023 11:39:40 PM | SENT |
|---|---|---|---|---|
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 12/5/2023 11:39:40 PM | SENT |
| Ali Choudhri | | ali@jetallcompanies.com | 12/5/2023 11:39:40 PM | SENT |

2023-22748

FILE COPY

P2

**Justices**

KEN WISE
KEVIN JEWELL
FRANCES BOURLIOT
JERRY ZIMMERER
CHARLES A. SPAIN
MEAGAN HASSAN
MARGARET "MEG" POISSANT
RANDY WILSON



**Chief Justice**

TRACY CHRISTOPHER

**Clerk**

DEBORAH M. YOUNG, CLERK OF THE COURT
PHONE 713-274-2800

## Fourteenth Court of Appeals

301 Fannin, Suite 245
Houston, Texas 77002

**FILED**
Marilyn Burgess
District Clerk

DEC - 4 2023

Time: _____
By **Katrina Solomon** Harris County, Texas
Deputy

12-04-23

Monday, December 4, 2023

Ryan Steinbrunner
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

Harris County, District Clerk, Civil Division
Harris County District Clerk - Civil
PO Box 4651
Houston, TX 77210-4651
* DELIVERED VIA E-MAIL *

Elizabeth Klingensmith
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

Judge, 281st District Court
Harris County Civil Courthouse
201 Caroline, 14th Floor
Houston, TX 77002
* DELIVERED VIA E-MAIL *

Susan Clouthier
Clouthier Law, PLLC
9950 Woodloch Forest Dr, Suite 1300
The Woodlands, TX 77380
* DELIVERED VIA E-MAIL *

Charles Conrad
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

Kathleen Miller
281ST District Court
Houston, TX 77002
* DELIVERED VIA E-MAIL *

James Quantrele Pope
The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, TX 77036
* DELIVERED VIA E-MAIL *

Gage Fender
Clouthier Law, PLLC
9500 Woodloch Forest Drive #1300
The Woodlands, TX 77380
* DELIVERED VIA E-MAIL *

Court Reporter, 281st District Court
Harris County Civil Courthouse
201 Caroline, 14th Floor
Houston, TX 77002
* DELIVERED VIA E-MAIL *

RE:    Court of Appeals Number: 14-23-00909-CV

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

FILE COPY

Trial Court Case Number:  2023-22748

Style: Galleria 2425 Owner, LLC v. National Bank of Kuwait, S.A.K.P., New York Branch

Please be advised that on this date the Court **DENIED APPELLANT'S** emergency motion to stay in the above cause.

**Panel Consists of Justices Bourliot, Zimmerer and Spain.**

Sincerely,

/s/ Deborah M. Young, Clerk

P3

**Petition for Writ of Injunction Denied and Memorandum Opinion filed December 4, 2023.**



In The

## Fourteenth Court of Appeals

### NO. 14-23-00911-CV

### IN RE GALLERIA 2425 OWNER, LLC, Relator

ORIGINAL PROCEEDING
WRIT OF INJUNCTION
281st District Court
Harris County, Texas
Trial Court Cause No. 2023-22748

## MEMORANDUM OPINION

On December 1, 2023, relator Galleria 2425 Owner, LLC filed in this court a petition for a writ of injunction. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In its petition, relator asks this court to "issue a writ of injunction to enjoin Lender from foreclosing on the Property during the pendency of the interlocutory appeal."

**F I L E D**
Marilyn Burgess
District Clerk

DEC – 4 2023      12-04-23

Time:
**Katrina Solomon**
By
Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

On November 29, 2023, the Honorable Christine Weems, presiding judge of the 281st District Court of Harris County, denied relator's application for a temporary injunction. Foreclosure by the real party in interest, National Bank of Kuwait S.A.K.P., New York Branch, is allegedly scheduled to take place on December 5, 2023.

In addition to filing the petition for a writ of injunction, on December 1, 2023, relator also filed a notice of appeal from the trial court's order denying the temporary injunction. Tex. Civ. Prac. & Rem. Code § 51.014(a)(4). The interlocutory appeal is pending before this court in *Galleria 2425 Owner, LLC v. National Bank of Kuwait, S.A.K.P., New York Branch,* Case No. 14-23-00909-CV.

Thereafter, relator filed a supplemental petition; the real party in interest filed a response in opposition to the petition; and the relator filed a reply.

Relator has not established that it is entitled to injunctive relief. Accordingly, we deny relator's petition for writ of injunction.

PER CURIAM

Panel consists of Justices Bourliot, Zimmerer, and Spain.



FILE COPY

**Justices**

KEN WISE
KEVIN JEWELL
FRANCES BOURLIOT
JERRY ZIMMERER
CHARLES A. SPAIN
MEAGAN HASSAN
MARGARET "MEG" POISSANT
RANDY WILSON

Chief Justice
TRACY CHRISTOPHER

Clerk
DEBORAH M. YOUNG, CLERK OF THE
COURT

PHONE 713-274-2800

# Fourteenth Court of Appeals

301 Fannin, Suite 245
Houston, Texas 77002

Monday, December 4, 2023

# NOTICE OF OPINION DISTRIBUTION

Gage Fender
Clouthier Law, PLLC
9500 Woodloch Forest Drive #1300
The Woodlands, TX 77380
* DELIVERED VIA E-MAIL *

Susan Clouthier
Clouthier Law, PLLC
9950 Woodloch Forest Dr, Suite 1300
The Woodlands, TX 77380
* DELIVERED VIA E-MAIL *

James Quantrele Pope
The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, TX 77036
* DELIVERED VIA E-MAIL *

Harris County,   District Clerk, Civil Division
Harris County District Clerk - Civil
PO Box 4651
Houston, TX 77210-4651
* DELIVERED VIA E-MAIL *

Judge,  281st District Court
Harris County Civil Courthouse
201 Caroline, 14th Floor
Houston, TX 77002
* DELIVERED VIA E-MAIL *

Ryan Steinbrunner
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

Presiding Judge, Eleventh Administrative Judicial Region
Honorable Susan Brown
Presiding Judge, Eleventh Administrative Judicial Region
301 Fannin St.
Houston, TX 77002
* DELIVERED VIA E-MAIL *

Charles Conrad
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

Elizabeth Klingensmith
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

RE:   Court of Appeals Number: 14-23-00911-CV
      Trial Court Case Number: 2023-22748

Style:   In re Galleria 2425 Owner, LLC

Please be advised the Court today issued an opinion which **DENIED** the above cause.

Texas Rule of Appellate Procedure 49 dealing with motions for rehearing and motions for en banc consideration has been revised effective October 1, 2021. A complete copy of the revised rules can be located at TJB | 14th COA | News | TRAP 49 Deadlines Revised effective October 1, 2021 (txcourts.gov).

You may obtain a copy of the Court's opinion and judgment at http://www.txcourts.gov/14thcoa/. On the request of any entity listed in Rule 48.1, a paper copy of the opinion will be mailed to that entity

Sincerely,

/s/ Christle Herrera
Deputy Clerk

FILE COPY

RE: Case No. 23-0978
COA #: 14-23-00909-CV
STYLE: IN RE GALLERIA 2425 OWNER, LLC

DATE: 12/5/2023
TC#: 2023-22748

Today the Supreme Court of Texas denied the Emergency Motion for Stay and denied the petition for writ of injunction in the above-referenced case.

FILED
Marilyn Burgess
District Clerk

DEC - 5 2023

Time: _____
Katrina Solomon
By_____
        Deputy
12-05-23

MR. CHARLES CLAYTON CONRAD
PILLSBURY WINTHROP SHAW PITTMAN, LLP
TWO HOUSTON CENTER
909 FANNIN, SUITE 2000
HOUSTON, TX  77010
* DELIVERED VIA E-MAIL *

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

FILE COPY

RE: Case No. 23-0978
COA #: 14-23-00909-CV
STYLE: IN RE GALLERIA 2425 OWNER, LLC

DATE: 12/5/2023
TC#: 2023-22748

Today the Supreme Court of Texas denied the Emergency Motion for Stay and denied the petition for writ of injunction in the above-referenced case.

MS. ELIZABETH  KLINGENSMITH
HAYNES & BOONE LLP
ONE HOUSTON CENTER
1221 MCKINNEY, SUITE 2100
HOUSTON, TX  77010
* DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978
    COA #: 14-23-00909-CV
STYLE: IN RE GALLERIA 2425 OWNER, LLC

DATE: 12/5/2023
TC#: 2023-22748

Today the Supreme Court of Texas denied the Emergency Motion for Stay and denied the petition for writ of injunction in the above-referenced case.


HON. CHRISTINE  WEEMS
JUDGE, 281ST DISTRICT COURT
201 CAROLINE, 14TH FL
HOUSTON, TX  77002-1901
* DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                              DATE: 12/5/2023
    COA #: 14-23-00909-CV                         TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

    Today the Supreme Court of Texas denied the Emergency
Motion for Stay and denied the petition for writ of
injunction in the above-referenced case.


                    MS. DEBORAH M.  YOUNG (14TH COA)
                    CLERK, FOURTEENTH COURT OF APPEALS
                    301 FANNIN STREET, RM 245
                    HOUSTON, TX  77002
                    * DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                    DATE: 12/5/2023
COA #: 14-23-00909-CV                    TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

Today the Supreme Court of Texas denied the Emergency
Motion for Stay and denied the petition for writ of
injunction in the above-referenced case.



RYAN   STEINBRUNNER

909 FANNIN ST STE 2000
HOUSTON, TX  77010-1028
* DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                         DATE: 12/5/2023
    COA #: 14-23-00909-CV                    TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

     Today the Supreme Court of Texas denied the Emergency
Motion for Stay and denied the petition for writ of
injunction in the above-referenced case.


                    MS. SUSAN JEANNE CLOUTHIER
                    CLOUTHIER LAW, PLLC
                    9950 WOODLOCH FOREST DR
                    SUITE 1300
                    THE WOODLANDS, TX  77380
                    * DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                    DATE: 12/5/2023
   COA #: 14-23-00909-CV                 TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

   Today the Supreme Court of Texas denied the Emergency
Motion for Stay and denied the petition for writ of
injunction in the above-referenced case.




                    DISTRICT CLERK  HARRIS COUNTY
                    HARRIS COUNTY CIVIL COURTHOUSE
                    P.O. BOX 4651
                    HOUSTON, TX  77210
                    * DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                    DATE: 12/5/2023
    COA #: 14-23-00909-CV               TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

Today the Supreme Court of Texas denied the Emergency
Motion for Stay and denied the petition for writ of
injunction in the above-referenced case.


                GAGE S. FENDER
                CLOUTHIER LAW, PLLC
                9950 WOODLOCH FOREST DR., SUITE 1300
                THE WOODLANDS, TX  77380
                * DELIVERED VIA E-MAIL *



FILE COPY

RE: Case No. 23-0978                     DATE: 12/4/2023
COA #: 14-23-00909-CV                     TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

A petition for writ of injunction was filed today in
the above-styled case.  You may file either a response, or a
waiver of response.  If you file a waiver, the Court will
not grant the petition without first requesting a response.
(TEX. R. APP. P. 52.3)  There is no fee for a response or a
waiver.

FILED
Marilyn Burgess
District Clerk
DEC - 4 2023
Time: Katrina Solomon
Harris County, Texas
By_____
Deputy
12-04-23

MR. CHARLES CLAYTON CONRAD
PILLSBURY WINTHROP SHAW PITTMAN, LLP
TWO HOUSTON CENTER
909 FANNIN, SUITE 2000
HOUSTON, TX  77010
* DELIVERED VIA E-MAIL *

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

FILE COPY

RE: Case No. 23-0978                    DATE: 12/4/2023
COA #: 14-23-00909-CV                    TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

       A petition for writ of injunction was filed today in
the above-styled case.  You may file either a response, or a
waiver of response.  If you file a waiver, the Court will
not grant the petition without first requesting a response.
(Tex. R. App. P. 52.3)  There is no fee for a response or a
waiver.



              MS. ELIZABETH  KLINGENSMITH
              HAYNES & BOONE LLP
              ONE HOUSTON CENTER
              1221 MCKINNEY, SUITE 2100
              HOUSTON, TX  77010
              * DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                          DATE: 12/4/2023
COA #: 14-23-00909-CV                         TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

    A petition for writ of injunction was filed today in
the above-styled case.  You may file either a response, or a
waiver of response.  If you file a waiver, the Court will
not grant the petition without first requesting a response.
(TEX. R. APP. P. 52.3)  There is no fee for a response or a
waiver.


           HON. CHRISTINE  WEEMS
           JUDGE, 281ST DISTRICT COURT
           201 CAROLINE, 14TH FL
           HOUSTON, TX  77002-1901
           * DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                    DATE: 12/4/2023
COA #: 14-23-00909-CV                   TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

    A petition for writ of injunction was filed today in
the above-styled case.  You may file either a response, or a
waiver of response.  If you file a waiver, the Court will
not grant the petition without first requesting a response.
(Tex. R. App. P. 52.3)  There is no fee for a response or a
waiver.


           MS. DEBORAH M.  YOUNG (14TH COA)
           CLERK, FOURTEENTH COURT OF APPEALS
           301 FANNIN STREET, RM 245
           HOUSTON, TX  77002
           * DELIVERED VIA E-MAIL *

Unofficial Copy Office of Marilyn Burgess District Court

FILE COPY

RE: Case No. 23-0978                    DATE: 12/4/2023
COA #: 14-23-00909-CV                   TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

A petition for writ of injunction was filed today in
the above-styled case.  You may file either a response, or a
waiver of response.  If you file a waiver, the Court will
not grant the petition without first requesting a response.
(TEX. R. APP. P. 52.3)  There is no fee for a response or a
waiver.


RYAN   STEINBRUNNER

909 FANNIN ST STE 2000
HOUSTON, TX  77010-1028
* DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                    DATE: 12/4/2023
COA #: 14-23-00909-CV                   TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

     A petition for writ of injunction was filed today in
the above-styled case.  You may file either a response, or a
waiver of response.  If you file a waiver, the Court will
not grant the petition without first requesting a response.
(TEX. R. APP. P. 52.3)  There is no fee for a response or a
waiver.


                    MS. SUSAN JEANNE CLOUTHIER
                    CLOUTHIER LAW, PLLC
                    9950 WOODLOCH FOREST DR
                    SUITE 1300
                    THE WOODLANDS, TX  77380
                    * DELIVERED VIA E-MAIL *

FILE COPY

    RE: Case No. 23-0978                    DATE: 12/4/2023
    COA #: 14-23-00909-CV                    TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

    A petition for writ of injunction was filed today in
the above-styled case.  You may file either a response, or a
waiver of response.  If you file a waiver, the Court will
not grant the petition without first requesting a response.
(TEX. R. APP. P. 52.3)  There is no fee for a response or a
waiver.


                    DISTRICT CLERK  HARRIS COUNTY
                    HARRIS COUNTY CIVIL COURTHOUSE
                    P.O. BOX 4651
                    HOUSTON, TX  77210
                    * DELIVERED VIA E-MAIL *

FILE COPY

RE: Case No. 23-0978                          DATE: 12/4/2023
COA #: 14-23-00909-CV                         TC#: 2023-22748
STYLE: IN RE GALLERIA 2425 OWNER, LLC

A petition for writ of injunction was filed today in
the above-styled case.  You may file either a response, or a
waiver of response.  If you file a waiver, the Court will
not grant the petition without first requesting a response.
(TEX. R. APP. P. 52.3)  There is no fee for a response or a
waiver.

GAGE S. FENDER
CLOUTHIER LAW, PLLC
9950 WOODLOCH FOREST DR., SUITE 1300
THE WOODLANDS, TX  77380
* DELIVERED VIA E-MAIL *

12/11/2023 11:54 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82436123
By: Patricia Gonzalez
Filed: 12/11/2023 11:54 AM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT** | § | |
| **S.A.K.P., NEW YORK BRANCH** | § | |
| | § | |
| **Defendant.** | § | **281st JUDICIAL DISTRICT** |

## <u>SUGGESTION OF BANKRUPTCY</u>

You are hereby notified that Galleria 2425 Owner, LLC is currently in an active chapter

11 bankruptcy proceeding.  The information regarding the bankruptcy proceeding is below:

|  |  |
|---|---|
| Case No.: | 23-34815 |
| Chapter: | 11 |
| Date Filed: | 12/05/2023 |
| Location: | Southern District of Texas, Houston Division |
| Judge: | Jeffrey P. Norman |

Section 362 of the Bankruptcy code requires all collection efforts to immediately cease

upon the filing of a voluntary or involuntary bankruptcy petition. 11 U.S.C. § 362(a) provides that

the filing of a bankruptcy petition operates as a stay against the following activities:

(1) the commencement or continuation, including the issuance or employment of process,

of a judicial, administrative, or other action or proceeding against the debtor that was or

could have been commenced before the commencement of the case under this title, or to

recover a claim against the debtor that arose before the commencement of the case under

this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment

obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

It is worth noting that the automatic stay is truly "automatic," in that it takes effect instantly upon the filing of a bankruptcy petition and is effective against most entities, including the debtor, and regardless of whether the entity is aware of the filing. *In re Shapiro*, 124 B.R. 974, 981 (Bankr. E.D. Pa. 1991).

Respectfully Submitted,

/s/ James Q. Pope

_____

James Q. Pope
THE POPE LAW FIRM
TBN: 24048738
6161 Savoy Dr, Suite 1125
Houston, Texas 77036
Phone: 713.449.4481
Fax: 281.657.9693
jamesp@thepopelawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on interested parties by electronic deliver on December 11, 2023, using the court's electronic noticing system.

/s/ James Q. Pope
James Q. Pope



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 82436123
Filing Code Description: No Fee Documents
Filing Description: Suggestion of Bankruptcy
Status as of 12/11/2023 12:49 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jerry CAlexander | | alexanderj@passmanjones.com | 12/11/2023 11:54:29 AM | SENT |
| Ruth NVera | | verar@passmanjones.com | 12/11/2023 11:54:29 AM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 12/11/2023 11:54:29 AM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 12/11/2023 11:54:29 AM | SENT |
| James Quantrele Pope | 24048738 | ecf@thepopelawfirm.com | 12/11/2023 11:54:29 AM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 12/11/2023 11:54:29 AM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 12/11/2023 11:54:29 AM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 12/11/2023 11:54:29 AM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 12/11/2023 11:54:29 AM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 12/11/2023 11:54:29 AM | SENT |
| David Clark | | dclark@mccathernlaw.com | 12/11/2023 11:54:29 AM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 12/11/2023 11:54:29 AM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 12/11/2023 11:54:29 AM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 12/11/2023 11:54:29 AM | SENT |
| Gage Fender | | gage@clouthierlaw.com | 12/11/2023 11:54:29 AM | SENT |
| Jennifer LMacGeorge | | jmac@jlm-law.com | 12/11/2023 11:54:29 AM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 12/11/2023 11:54:29 AM | SENT |
| Jetall Legal | | legal@jetallcompanies.com | 12/11/2023 11:54:29 AM | SENT |
| MacGeorge Law Firm Admin | | service@jlm-law.com | 12/11/2023 11:54:29 AM | SENT |
| Clouthier Law | | info@clouthierlaw.com | 12/11/2023 11:54:29 AM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 12/11/2023 11:54:29 AM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/11/2023 11:54:29 AM | SENT |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 82436123
Filing Code Description: No Fee Documents
Filing Description: Suggestion of Bankruptcy
Status as of 12/11/2023 12:49 PM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/11/2023 11:54:29 AM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 12/11/2023 11:54:29 AM | SENT |
| Ali Choudhri | | ali@jetallcompanies.com | 12/11/2023 11:54:29 AM | SENT |

Associated Case Party: Ali Choudhri

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ali Choudhri | | legal@jetallcompanies.com | 12/11/2023 11:54:29 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

United States Bankruptcy Court
Southern District of Texas



## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed
under Chapter 11 of the United States Bankruptcy Code, entered on
12/05/2023 at 09:54 AM and filed on 12/05/2023.

**Galleria 2425 Owner, LLC**
1001 West Loop South 700
Houston, TX 77027
Tax ID / EIN: 36-4896738

The case was filed by the debtor's attorney:

**James Q. Pope**
The Pope Law Firm
6161 Savoy Drive
Ste 1125
Houston, TX 77036
713-449-4481

The case was assigned case number 23-34815 to Judge Jeffrey P Norman.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against
the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take
other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights
in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our
*Internet* home page http://www.txs.uscourts.gov/ or at the Clerk's Office, United States Bankruptcy Court, PO Box
61010, Houston, TX 77208.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**Nathan Ochsner**
**Clerk, U.S. Bankruptcy Court**

| PACER Service Center |
|---|
| Transaction Receipt |
| 12/11/2023 11:11:42 |

| PACER Login: | popelawinfo | Client Code: | Jetall |
|---|---|---|---|
| Description: | Notice of Filing | Search Criteria: | 23-34815 |
| Billable Pages: | 1 | Cost: | 0.10 |





**CAUSE NO. 2023-22748**

| | | |
|---|---|---|
| GALLERIA 2425 OWNER, LLC | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| ALI CHOUDHRI | § | |
| | § | |
| Intervenor – Plaintiff | § | HARRIS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| NATIONAL BANK OF KUWAIT | § | |
| S.A.K.P., NEW YORK BRANCH | § | |
| and AZEEMEH ZAHEER | § | |
| | § | |
| Defendants. | § | 281ˢᵗ  JUDICIAL DISTRICT |

**ALI CHOUDHRI'S SECOND AMENDED PETITION IN INTERVENTION
AND EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER**

ALI CHOUDHRI ("Intervenor-Plaintiff") files this Second Amended Petition in Intervention and Emergency Application for Temporary Restraining Order against Azeemeh Zaheer (hereinafter referred to individually as "Zaheer", or collectively as "Defendant") and the National Bank of Kuwait, S.A.K.P., New York Branch (hereinafter referred to individually as "NBK", or collectively as "Defendant") and hereby states and alleges the following:

**I.
DISCOVERY PLAN**

1.     Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

**II.
RELIEF SOUGHT**

2.     Pursuant to Texas Rule of Civil Procedure 47(c), Intervenor-Plaintiff is presently seeking monetary relief over $1,000,000.  The damages sought are within the jurisdictional limits of the

Page **1** of **2**

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

Court.

### III.
### PARTIES

3.    Plaintiff Galleria 2425 Owner, LLC ("Plaintiff") is a limited liability company doing business in Texas.

4.    Intervenor-Plaintiff, Ali Choudhri, is an individual who resides in Harris County, Texas.

5.    Defendant, Azeemah Zaheer, is an individual who resides, and may be personally served at 5513 Kansas Street, Houston, Texas 77007.

6.    Defendant, National Bank of Kuwait, S.A.K.P., New York Branch is a banking corporation organized under the laws of Kuwait, acting through its New York Branch.

### IV.
### JURISDICTION AND VENUE

7.    The Court has jurisdiction over the parties and claims which are the subject of this suit.

8.    Venue is mandatory in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.020 because the assignment that forms the basis of this lawsuit constitutes a "major transaction," is in writing, and the parties are in Harris County, Texas. Venue is additionally proper in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.0115 because the Defendant transacted business in and around Harris County, Texas.

### V.
### FACTS

9.    Zaheer and NBK have made false allegations against the Intervenor-Plaintiff, and breached certain terms of their respective agreements/contracts with the Intervenor-Plaintiff.

10.    Intervenor-Plaintiff and NBK previously executed a confidential settlement

agreement. NBK materially breached the terms of the confidential settlement agreement, and upon information and belief, NBK and Zaheer began working together to ensure foreclosure of the property located at 2425 West Loop S., Houston, Texas 77027.

11.     Defendant breached agreements and has committed fraud against the Intervenor-Plaintiff.

## VI.
## CAUSES OF ACTIONS

### FRAUD

12.     The allegations contained in the preceding and subsequent paragraphs are incorporated herein by reference for all purposes.

13.     Zaheer, either directly or through her counsel, has made gross misrepresentations to third parties, including the court in case number 2023-41091 filed in the Harris County District Court, that were blatantly false, concerning her ability or authority to act on behalf of the Plaintiff, and authority of the Intervenor-Plaintiff to act on behalf of the Plaintiff.

14.     Zaheer's statements are untrue, deceptive, and a clear effort of Zaheer to reap benefits of management of the Plaintiff, to which she is not entitled. Zaheer knew the statements, and assertions, were false when she allowed them to be made to third parties and the court. Zaheer is blatantly disregarding the law, the prior assignment and the truth of the matter, which is that she has no power or authority to take any of the recent actions she has taken in the name of the Plaintiff.

15.     Zaheer and NBK have interfered with Intervenor-Plaintiff's rights and interests as it pertains to the property located at 2425 West Loop S., Houston, Texas 77027 (the "Property").

### PROMISSORY ESTOPPEL

16.     The allegations contained in the preceding and subsequent paragraphs are incorporated

herein by reference for all purposes.

17.     Defendant made promises to the Intervenor-Plaintiff, upon which the Intervenor-Plaintiff relied.   Intervenor-Plaintiff's reliance on such promises were foreseeable and Intervenor-Plaintiff detrimentally relied on such promises.  Intervenor-Plaintiff seeks to recover damages from the Defendant for such detrimental reliance in this suit.

### EQUITABLE ESTOPPEL/DETRIMENTAL RELIANCE

18.     The allegations contained in the preceding and subsequent paragraphs are incorporated herein by reference for all purposes.

19.     NBK has a pattern of working in concert with third parties to defraud others, and materially breach contracts or agreements. See United States Marine International/Kuwait, L.L.C. v. National Bank of Kuwait S.A.K. (New York) et al, referenced by case number 1:2020-cv-02101, filed in the United States District Court, Southern District of New York.

    d.     The equities weigh in USMK's favor

        68.     Where, as here, there is a clear case of material fraud and USMK's likelihood of prevailing on the merits is more than probable, there should be no balancing of the equities.

        Case 1:20-cv-02101-PKC   Document 25   Filed 05/13/20   Page 16 of 17

        70.     If this Court does not grant the requested injunction, USMK will have to file a suit for damages in Kuwait against a wholly-owned arm of the Kuwaiti government, KDIPA.  Further, while KDIPA will unquestionably be afforded a fair and impartial trial by this Court, USMK faces exposure of $649,781.83 if KDIPA fraudulently requires NBK to draw on the Guarantee/Standby Letter of Credit, which it has explicitly threatened it will do.

20.     Intervenor-Plaintiff also alleges that its reasonable expectations of NBK were undermined by NBK's breach of its duty of good faith and fair dealing. Intervenor-Plaintiff's expectations were undermined by NBK's failure to deal fairly and in good faith during the initial negotiations that ultimately led to the execution of a confidential settlement agreement concerning the Property that is the subject of the current dispute.

21.     NBK has a history of making representations, upon which parties rely to their detriment, and the Intervenor-Plaintiff has fallen victim to this same pattern of behavior. NBK must have an opportunity to properly litigate this matter, to uncover the true nature of NBK's intent, because "no one should be denied the right to set up truth". See Gulbenkian v. Penn, <u>151 Tex. 412, 418</u>, <u>252 S.W.2d 929, 932</u> (1952).

## TEMPORARY RESTRAINING ORDER AND INJUNCTION

22.     The Intervenor-Plaintiff has and will continue to be damaged and injured by Defendant's conduct in as much as it has had to incur attorney's fees and costs to defend against the wrongful foreclosure of the Property and will lose any interest he has in the Property if NBK is allowed to proceed with the foreclosure sale.

23.     The Intervenor-Plaintiff requires a Temporary Restraining Order, or any other injunctive relief the Court deems necessary, requiring Defendant, or any person or entity acting in concert with them, including but not limited to its attorneys, agents, servants, servicers, trustees, employees, successors, heirs and assigns, to desist and refrain from:

a) Proceeding with the scheduled foreclosure sale of the Property;

b) Entering and taking possession of the property or otherwise interfering with the quiet enjoyment and use of the Property;

c) Proceeding with or attempting to evict anyone from the Property;

d) Attempting to purchase, transfer, assign or collect on the mortgage; and

e) Charging for attorney's fees in connection with this action.

24.     Intervenor-Plaintiff's application is authorized by Tex. Civ. Prac. & Rem. Code § 65.011 because the Intervenor-Plaintiff have alleged a cause of action against the Defendant, and as indicated in this petition, the Intervenor-Plaintiff has shown a probable right of recovery and likelihood of success on the merits, the Intervenor-Plaintiff will suffer imminent, irreparable harm without Court intervention, and there is no adequate remedy at law.

25.     Intervenor-Plaintiff has a probable right to relief. As a direct and proximate result of the Defendant's wrongful actions as alleged, the Intervenor-Plaintiff has suffered and will continue to suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of a temporary restraining order and injunctive relief. There is no necessity for a bond to facilitate the injunctive relief requested.

**VII.**
**PRAYER**

WHEREFORE, Intervenor-Plaintiff respectfully requests that he be awarded damages resulting from Defendant's wrongful acts, costs and fees, along with any other and further relief to which Intervenor-Plaintiff may be justly entitled at law or in equity.

Respectfully Submitted:

Ali Choudhri

**JURAT**

My Name is Ali Choudhri. My office address is 1001 West Loop South, Suite 700, Houston, Texas 77027, and my date of birth is January 24, 1980. I declare under penalty of perjury that the facts and events set forth in this Second Amended Petition in Intervention and Emergency Application for Temporary Restraining Order against Azeemeh Zaheer and the National Bank of Kuwait, S.A.K.P., New York, are within my personal knowledge and are true and correct.

Page **6** of 2

Executed in Harris County, State of Texas, on December 4, 2023

_____
Ali Choudhri

Unofficial Copy Office of Marilyn Burgess District Clerk

P3

Abatement Order filed December 12, 2023



**FILED**
Marilyn Burgess
District Clerk

DEC 1 2 2023

Time: _____
Harris County Texas
By: **Katrina Solomon**
Deputy

In The

## Fourteenth Court of Appeals

NO.  14-23-00909-CV

**GALLERIA 2425 OWNER, LLC, Appellant**

V.

**NATIONAL BANK OF KUWAIT, S.A.K.P., NEW YORK BRANCH,**
**Appellee**

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2023-22748**

### ABATEMENT ORDER

Notice was filed on December 6, 2023, that appellant is in bankruptcy. Tex. R. App. P. 8.1. According to the notice, on December 5, 2023, appellant, Galleria 2425 Owner, LLC, petitioned for voluntary bankruptcy protection in the United States Bankruptcy Court for the Southern District of Texas under case number 23-34815. A bankruptcy suspends the appeal from the date when the bankruptcy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

petition is filed until the appellate court reinstates the appeal in accordance with federal law. Tex. R. App. P. 8.2. Accordingly, we **ORDER** the appeal abated.

When a case has been suspended by a bankruptcy filing, a party may move the appellate court to reinstate the appeal if permitted by federal law or the bankruptcy court. Tex. R. App. P. 8.3. If the bankruptcy court has lifted or terminated the stay, a certified copy of the order must be attached to the motion. *Id.* A party filing a motion to reinstate shall specify what further action, if any, is required from this court when the appeal is reinstated. *See* Tex. R. App. P. 10.1(a).

For administrative purposes only, and without surrendering jurisdiction, the appeal is abated and treated as a closed case until further order of this court.


PER CURIAM

Panel Consists of Justices Bourliot, Zimmerer, and Spain.

2

FILE COPY

**Justices**

KEN WISE
KEVIN JEWELL
FRANCES BOURLIOT
JERRY ZIMMERER
CHARLES A. SPAIN
MEAGAN HASSAN
MARGARET "MEG" POISSANT
RANDY WILSON



**Fourteenth Court of Appeals**

**Chief Justice**
TRACY CHRISTOPHER

**Clerk**
DEBORAH M. YOUNG, CLERK OF THE
COURT
PHONE 713-274-2800

301 Fannin, Suite 245
Houston, Texas 77002

Tuesday, December 12, 2023

# NOTICE OF ORDER DISTRIBUTION

Ryan Steinbrunner
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

Charles Conrad
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

Harris County,   District Clerk, Civil Division
Harris County District Clerk - Civil
PO Box 4651
Houston, TX 77210-4651
* DELIVERED VIA E-MAIL *

Elizabeth Klingensmith
909 Fannin St Ste 2000
Houston, TX 77010-1028
* DELIVERED VIA E-MAIL *

James Quantrele Pope
The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, TX 77036
* DELIVERED VIA E-MAIL *

Judge,  281st District Court
Harris County Civil Courthouse
201 Caroline, 14th Floor
Houston, TX 77002
* DELIVERED VIA E-MAIL *

Gage Fender
Clouthier Law, PLLC
9500 Woodloch Forest Drive #1300
The Woodlands, TX 77380
* DELIVERED VIA E-MAIL *

Susan Clouthier
Clouthier Law, PLLC
9950 Woodloch Forest Dr, Suite 1300
The Woodlands, TX 77380
* DELIVERED VIA E-MAIL *

RE:    Court of Appeals Number:    14-23-00909-CV
       Trial Court Case Number:      2023-22748

Style: Galleria 2425 Owner, LLC
       v.
       National Bank of Kuwait, S.A.K.P., New York Branch

On this date, an order was issued in the above-referenced cause. You may obtain a copy of the Court's order at http://www.txcourts.gov//14thcoa.

Sincerely,

/s/ Juliana Ramirez,
Deputy Clerk

12/17/2023 7:53 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 82647538
By: Bonnie Lugo
Filed: 12/18/2023 12:00 AM

## CAUSE NO. <u>2023-22748</u>

| | | |
|---|---|---|
| **GALLERIA 2425 OWNER, LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **NATIONAL BANK OF KUWAIT,** | § | |
| **S.A.K.P., NEW YORK BRANCH,** | § | |
| | § | |
| *Defendant.* | § | **281ST JUDICIAL DISTRICT** |

## PLAINTIFF'S SIXTH AMENDED PETITION

Galleria 2425 Owner, LLC ("***Plaintiff***") files this Sixth Amended Petition against Defendant National Bank of Kuwait S.A.K.P., New York Branch (individually as "***NBK***", or collectively as "***Defendants***"), and Azeemeh Zaheer (individually as "***Zaheer***", or collectively as "***Defendants***") and, in support, submit the following:

### I.
### DISCOVERY PLAN

1.      Discovery should be conducted pursuant to Level 2 of Rule 190.3 of the Texas Rules of Civil Procedure.

### II.
### PARTIES

2.      Galleria 2425 Owner, LLC ("***Plaintiff***") is a limited liability company doing business in Texas and is the owner of the building located at 2425 West Loop S., Houston, Texas ("***2425 Building***").

Page **1** of 29

3.      National Bank of Kuwait, S.A.K.P., New York Branch ("**NBK**") is a banking corporation organized under the laws of Kuwait, acting through its New York Branch. NBK HAS APPEARED WITH COUNSEL.

4.      Azeemeh Zaheer ("**Zaheer**"), is an individual who resides, and may be personally served at 5513 Kansas Street, Houston, Texas 77007.

### III.
### INTRODUCTION

5.      This suit was originally filed against NBK, a party who has been shown to be willing to engage in bad faith actions, and who repeatedly attempts to make outside deals with third parties, specifically to deprive the plaintiff of its ownership interest in the 2425 Building in any way it can.

6.      Plaintiff, Galleria 2425 Owner, LLC, filed bankruptcy to preserve the asset, which NBK vehemently opposed, and fought to have dismissed from the bankruptcy court. However, at the hearing on NBK's motion to dismiss, Plaintiff was successful in defending against dismissal, and the bankruptcy case moved forward.

7.      Plaintiff promptly proposed a plan in the bankruptcy court, which was characterized as a "really smart" plan that "check[ed] all the boxes" for plan confirmation, according to Judge Lopez.

8.      Then, after NBK lost its motion to dismiss, it filed a letter in the bankruptcy case (Document 77) which made the bankruptcy court aware of litigation that was irrelevant to Galleria 2425 Owner, LLC's pursuit of its ongoing bankruptcy case. The state court litigation referenced by NBK is, in the words of Judge Lopez "an unrelated case involving Ms. Zahire [sic] and Naissance and Mr. Choudhri". The case is about a dispute over control of an entity called

Naissance Galleria, LLC, which is an entity that provided a mezzanine loan to Galleria 2425 Owner, LLC's sole member and is party to an intercreditor agreement with NBK. Upon information and belief, certain of the investors in Naissance Galleria LLC are substantial clients of or investors in NBK. Naissance Galleria LLC was also a party to the very settlement agreement with NBK at issue in this suit. Importantly, Naissance Galleria, LLC does not have any membership in, or control over Galleria 2425 Owner, LLC, or any of its members or managers.

9.      Notably, the state court, in the litigation referenced in NBK's letter to Judge Lopez, did issue a Temporary Injunction, which maintained the status quo of Choudhri's management and control of Naissance Galleria, LLC, but limited any actions that could be taken by Choudhri on behalf of Naissance Galleria, LLC to only those which are also approved by Zaheer, until a trial resolves the issue once and for all.

10.     After the Temporary Injunction was in place establishing Choudhri's control of Naissance Galleria, LLC, Zaheer directed her counsel, while purporting to act for Naissance Galleria, LLC, to appear at two separate hearings in the bankruptcy court, on or about October 12, 2023 and November 1, 2023, and on the eve of a November 1 status conference filed an emergency motion in the bankruptcy court, requesting for Judge Lopez to rule against the state court and find that Zaheer had control of, and could act for Naissance Galleria, LLC. Judge Lopez thereafter sua sponte dismissed the bankruptcy case during the November 1, 2023 status conference.

11.     When the parties to the state court litigation returned to appear before Judge Manor on November 13, 2023, Judge Manor confirmed that her Temporary Injunction did not give Zaheer any right to act as the manager of Naissance Galleria, LLC, and confirmed that Choudhri was in control, subject to Zaheer's approval during the pendency of trial.

12.     All of these actions, gave rise to Judge Lopez's serious concerns about the ability to move forward with the bankruptcy case without resolution in the state court action. Judge Lopez stated, in the Status Conference held on November 1, 2023, the following:

"I don't have anything to qualify it in state court issues. I don't know. There's just a lot of confusing stuff, and my gut tells me that I need to dismiss this case and let you all go figure this out in State Court, because there's not enough here, and there's real concerns that I have…".

13.     However, since Naissance Galleria, LLC has no ownership or control over the Plaintiff or any of its members or managers, these filings and appearances are just a smoke screen. The fact that they were also filed in violation of the Temporary Injunction not only makes these actions unlawful, but there could be no other purpose aside from attempting to cause the dismissal of the bankruptcy case brought by Galleria 2425 Owner, LLC, which is an action that, logically, would be counter to the company's interests.

14.     In its letter inviting the Naissance dispute and Ms. Zaheer's counsel into the bankruptcy proceedings, NBK cleverly attempts to confuse the court by implying that Ms. Zaheer had control of Naissance Galleria, LLC because the order says that management decisions could not be made without her approval. Ms. Zaheer's counsel then accepted NBK's invitation to create confusion and disruption, appearing at the October 13 emergency status conference purporting to represent Naissance Capital LLC.

15.     As this Court has handled cases related to Galleria 2425 Owner, LLC for years, it is well aware that Ms. Zaheer has been entirely absent from any of these proceedings until on or about July 5th, 2023, when Naissance Galleria, LLC appeared, allegedly controlled by Azeemeh

Zaheer, before this Court's ancillary docket, attempting to stop the foreclosure by NBK, at which hearing this Court itself questioned the absence of Ms. Zaheer over the last several years.

16.     Ms. Zaheer signed the assignment giving control over Naissance Galleria, LLC to Mr. Choudhri on July 3rd, 2020. Ms. Zaheer did not make any claims of control over Naissance Galleria, LLC, did not attempt to object to Mr. Choudhri's management of the company for three (3) years. These allegations are absurd, as Ms. Zaheer has been entirely absent from the company's management for years.

17.     As a result of this conspiracy by the defendants, the emergency status conference requested by NBK resulted in the dismissal of the bankruptcy case.

18.     What's interesting is that, if Ms. Zaheer was sincerely the manager of Naissance Galleria, LLC, she would not have worked to have the bankruptcy case dismissed.

19.     Such actions, if they had been taken by a legitimate manager for Naissance Galleria, LLC, would be a breach of fiduciary duty to the company, *unless there was a back room deal NBK*.

20.     Now that NBK has re-posted the 2425 Building for foreclosure, Plaintiff will suffer irreparable harm as a result of the defendants' actions.

## IV.
## FACTUAL BACKGROUND

21.     In 2018, NBK loaned certain funds to Plaintiff.  NBK has continually interfered with the Plaintiff's ability to lease the 2425 Building to produce revenue and Plaintiff's ability to sell the 2425 Building to pay NBK off.  Every time NBK has so interfered, it has then blamed the Plaintiff for its inability supposedly to meet some of the loan terms.

22.     For example, in January 2021, Plaintiff Ali Choudhri, who is vilified by NBK in various pleadings, had serious parties interested in acquiring interests in the building more than enough to clear NBK's debt.  A letter dated January 15, 2021, from SIBS International, and two purchase contracts would have paid off not only NBK, but left the Plaintiff with a great deal of value.  **NBK, rather than facilitate this sale, issued a formal notice of default to the Plaintiff and its intent to accelerate the loan on June 29, 2021**, while the SIBS International deal was in progress, killing that deal.

23.     **The same was true with regard to NBK's interference with the Plaintiff's attempt to lease space in the building to provide revenue so it could operate and make loan payments.**  By August 2021, this situation had become untenable due to NBK's refusal to approve new tenants and new leases, prompting the Plaintiff, on August 13, 2021, to send NBK a detailed letter regarding lease-up and renewal prospects for discussions, none of which, it seemed NBK would approve.

- **Healthcare Service Organization**

  - •Size: 130,000+ RSF – large client requirement in their preliminary planning stages:  •Industry: Healthcare Service Organization •Type of use: Administration Offices •Direct/Sublease •Commencement date: Q3/2023 •Term:5-10 yrs.  They are specifically VERY interested in amenities available, for example: deli, gym, day care, conference center (# of seats), training center (# of seats).

- **Invesco**

  - We met with the team twice and are actively pursuing them for 2425.  They are interested in a 157-month lease term for 208,830 SF of Net Rental Area.

- **Financial Services Firm**

  - Office •AREA: West Houston (610 West, Hwy 290, Beltway 8) •SPACE: Open Concept •SIZE: Approximately 20,000 – 25,000 rsf •PARKING: 5/1000 ratio •OCCUPANCY: Late 2Q22/Early3Q22 •TERM: 36-60 months with

renewal options •This tenant is currently at 24 Greenway on their top floor and have been looking at other A buildings.

♦ **Beyond Finance**

- We are discussing a 68-month lease term for +/- 40,000 rentable SF.

♦ **Banco Affirme**

- We submitted a 64-month lease term for 4,545 SF of Net Rental Area.

♦ **Walls Bank (existing tenant)**

- Renew 3,054 SF of rental space for 60-month term starting January 1, 2022.

♦ **Others (working directly with ownership)**

- ResMed (https://www.resmed.com/en-us/), interested in the entire building, working directly with Dr. Peter Farrell, Founder and Chairman

- Healthstore Holdings (https://www.healthstore.com/), interested in a 15-year term with 80,000 SF in phase 1 and 75,000 SF in 12 months as phase 2.

- Immunicom (https://immunicom.com/), interested in at least two full floors, moving HQ from San Diego, CA

24.    Below is an August 16, 2021 email from counsel for the Plaintiff to NBK

forwarding multiple leases for approval that **NBK had failed to approve or even respond to.**



manny.gardberg@hklaw.com <manny.gardberg@hklaw.com>
To: mona.dajani@pillsburylaw.com
Cc: ali@jetallcompanies.com, Bruce.Merwin@hklaw.com, Charles.Jackson@hklaw.com

Mona, Please see attached. Best, Manny

**Manny Gardberg | Holland & Knight**
Associate
Holland & Knight LLP
811 Main Street, Suite 2500 | Houston, Texas 77002
Phone 713.653.8615 | Fax 713.654.1871
manny.gardberg@hklaw.com | www.hklaw.com

Add to address book | View professional biography

7 attachments

_HK Letter re Notice - 8 13 2021.pdf
52K

_Unanimous Consent - January 2021.pdf
854K

2425 Galleria Owner - Operating Budget 2021 (July).pdf
232K

ttps://mail.google.com/mail/u/0/?ik=37856133f6&view=pt&search=all&permmsgid=msg-f%3A170828057t

/15/22, 8:10 PM                                              Jetall Companies Mail - National Bank of

NBK - 2425WLS Leasing Prospect List.pdf
100K

NBK - Proposal 2021.08.13 final.pdf
562K

PSA - 2425 West Loop South.pdf
535K

Purchase - SIBS - 2425 West Loop South Offer letter Updated.pdf
42K

25.    This lack of approval, or finding obstacles to approve, was not new.  In September 2019, Related Group had reached out to lease the parking garage located at the 2425 Building to be used for overflow, for parking up to 110 spaces.  **NBK's authorized representative Michael Carter would not approve this lease** (note "nbkny" email address below– *i.e.* National Bank of Kuwait, New York Branch), which would have generated a great deal of revenue for the Plaintiff.

From: Michael Carter <Michael.Carter@nbkny.com>
Date: Monday, 23 September 2019 at 13:22
To: Azeemeh Zaheer <azeemeh@naissancecapital.co.uk>, Lisa Walker
<Lisa.Walker@nbkny.com>
Subject: RE: LOI

My primary concern is that the tenant determines when the commencement date is, presumably because they have zoning and building department approvals to complete as well as financing to arrange, which is understandable, however there does not appear to be an outside expiration date for the Commencement date. It appears they could tie up these space permanently without having to pay rent. I think you should have an outside date for Commencement.

26.     The situation became so untenable that in September 2021, Plaintiff initiated a lawsuit against NBK.

27.     In good faith, even during the pendency of this litigation, the Plaintiff was still trying to get tenants into the building and get NBK's approval to do so, so it would not claim additional breaches of loan agreements. **On July 2, 2022, the Plaintiff sent NBK five leases for approval, which NBK did not approve.**

28.     *The parties litigated for eleven (11) months until August 22, 2022, when they entered into a Confidential Settlement Agreement.* **NBK has prevented Plaintiff's successful performance under any and all agreements it has with NBK, including the Confidential Settlement Agreement.**

29.     The Confidential Settlement Agreement permitted a timeframe in which Plaintiff could sell the 2425 Building, or seek refinancing, and Plaintiff was successful in obtaining a buyer for the building.  Upon closing this transaction, Plaintiff would have retained a forty-five (45%) ownership interest in the 2425 Building. However, **NBK again took actions which interfered with the continuation and closing of that transaction, including issuing a notice of foreclosure**

**on March 29, 2023 in breach of the Confidential Settlement Agreement, which Plaintiff believes was done intentionally to prevent the sale.**  The sale would have cleared the NBK debt as it stood at that time and left great value for the Plaintiff.  Plaintiff believes that NBK recognized that greater value and wanted to take it for itself by foreclosure in a "loan to own" gambit.

30.      There are tremendous factual inaccuracies that NBK represents to state and federal courts and they continue into these proceedings.  For example, in its Motion to Dismiss the Plaintiff's Bankruptcy, while it is absolutely true that temporary restraining orders were filed to attempt to prevent a foreclosure by NBK and its takeover of the 2425 Building, NBK fails to note that such requests were also **granted by this Court** based upon showings that **NBK had not allowed the Plaintiff to lease up the building to generate revenue, and had killed at least two transactions that Plaintiff was working on that would have cleared NBK and left value for the Plaintiff.**

31.      Additionally, NBK posted for foreclosure in 2023 early, and against an extended grace period that this Court had given Plaintiff, which silenced the bidding process and interest in the 2425 Building completely.  No one wants to buy a building posted for foreclosure.  **Plaintiff believes that NBK knew this and did it on purpose to prevent the Plaintiff from successfully selling the property and paying off the loan, so NBK could foreclose and take the 2425 Building for itself so it can open a Houston location.**

32.      After NBK's disclosures of the situation created by the Confidential Settlement and the wrongful posting for foreclosure during an extension of that agreement, potential buyers of the property who would otherwise become good prospects to negotiate a sale with Plaintiff, became potential purchasers of the NBK Note and began negotiating with NBK.  NBK interfered with

these potential purchases and with these business relationships.   At least the following were interfered with in this fashion:

a)    Globix Investment,

b)    Ironwood Commercial Realty,

c)    Shah Firm, LLC, and

d)    Jeb Brown Law.

## B.    Azeemeh Zaheer Decides She Wants the Building.

33.    On June 26, 2023, Zaheer, filed a lawsuit in the name of Naissance Galleria, LLC ("*Naissance*"), despite having assigned control over such entity several years prior., in the 157th Judicial District Court in Harris County, Texas referenced by case number 2023-39006 against Brad Parker ("*Parker*") as an initial step in Zaheer's pursuit of a hostile takeover of the 2425 Building.

34.    On July 5, 2023, Zaheer, again acting in the name of Naissance, filed a second lawsuit in the 129th Judicial District Court in Harris County, Texas referenced by case number 2023-41091 against Parker and NBK, to further her hostile takeover attempt of the 2425 Building. Zaheer sought injunctive relief, but that request for an emergency temporary restraining order was denied.

35.    On or about July 5, 2023, Plaintiff commenced a Chapter 11 bankruptcy proceeding in the Southern District of Texas, referenced by case number 23-60036.   NBK sought to dismiss the bankruptcy proceeding, but after a full day evidentiary hearing its motion to dismiss was denied on September 26, 2023.   The Chapter 11 Plan could have been approved and would have substantially reduced the value of NBK's secured debt. So, after its motion to dismiss was denied,

NBK changed tactics and decided to invite Ms. Zaheer and her counsel into the bankruptcy case to cause confusion and disruption. NBK decided it could not allow its debt to be restructured under the bankruptcy code, just as it had decided it could not allow the prior sales of the building that had been lined up by Plaintiff.

**C.   Azeemeh Zaheer is a False Representative of Naissance.**

36.   Azeemeh Zaheer at one time had a business and personal relationship with Ali Choudhri, both of which appeared to have ended mutually for a time. Azeemeh Zaheer sought injunctive relief in the 80th Judicial District Court for Harris County against Naissance Galleria, LLC, which was a mezzanine lender to an LLC ("**LLC**") two steps up in the chain.

37.   Azeemeh Zaheer had signed, as the authorized representative of the Managing Member of Naissance Galleria, LLC an Assignment of the management rights of that LLC to Ali Choudhri. In response, Mr. Choudhri stepped into Naissance's shoes, covered its expenses, and did a miraculous job of negotiating the aforementioned settlement with NBK after the Assignment. Azeemeh Zaheer made this assignment for a number of reasons, but most of them stemmed from her ineffective management of the building and her fear of exposure to NBK and certain individuals affiliated with NBK because of her poor performance.

38.   After Mr. Choudhri received the Assignment and had negotiated the successful settlement with NBK and the building looked as if it might succeed (a period of years), Azeemeh Zaheer decided she wanted to misappropriate the value that Mr. Choudhri had just preserved and to an extent had just created. First, she claimed the Assignment was invalid and sought and received a Temporary Injunction, on September 21, 2023, from the 80th Judicial District Court in Harris County. This Temporary Injunction basically only created a stalemate with respect to the management of Naissance Galleria, LLC to preserve the status quo until a trial in January. Mr.

Choudhri is still the manager of Naissance Galleria, LLC, not Azeemeh Zaheer, although she did have some approval rights under the injunction. Mr. Choudhri, as the manager of Naissance Galleria LLC and is only required to obtain approval from Zaheer for his actions. Zaheer DOES NOT have any control of the entity. Moreover, this was confirmed at a hearing on November 13, 2023 before Judge Manor in the 80th Judicial District Court.

**D.    Azeemeh Decides to Conspire with NBK So It Could Foreclose On the Building.**

39.    After the September 21, 2023 entry of the Temporary Injunction, some ironic, if not strange, events start taking place with respect to Ms. Zaheer and the Plaintiff. First, it is against Azeemeh Zaheer and Naissance's financial interests if NBK forecloses.

40.    Second, on information and belief, Zaheer caused a copy of the Temporary Injunction Entered on September 21, 2023 by the 80th Judicial District Court in Harris County to be sent to counsel for NBK, who used it to interfere with the Plaintiff's ability to reorganize under the bankruptcy code and confirm a chapter 11 plan.

41.    Third, Zaheer's directed her counsel to appear without any forewarning at the October 12, 2023 status conference, in the Bankruptcy Court about the plan, claiming Azeemeh Zaheer now is the manager of Naissance Galleria, LLC and they have been hired by her to represent Naissance Galleria, LLC, all by virtue of the Temporary Injunction.

```
6        MR. DRINNON:  Okay.  I represent Mr. Abdullatif in

7   other cases but not this one.  I tend to get hired because I

8   have sued Mr. Choudhri successfully in numerous

9   jurisdictions and cases . . . .
```

### E.      Zaheer Changes Sides to Make a Deal with the NBK

42.     Progressively, Azeemeh Zaheer's behavior becomes more inexplicable as she: (1) takes the position that the Temporary Injunction put her in charge of Naissance (it did not);[1] (2) that Naissance Galleria, LLC could or had already become the owner of the Debtor building (2425 Galleria Owner, LLC, Plaintiff herein) and as the new owner, they did not wish to pursue claims asserted in the bankruptcy case against NBK by Plaintiff and Naissance for breaching the settlement agreement  and would want to take the bankruptcy in another direction.

43.     This created an environment of confusion for the Bankruptcy Court, which was by Defendants' design, and it was a concerted effort by the Defendants to have the bankruptcy case dismissed, allowing NBK to foreclose.  Defendant NBK would not be impeded by the bankruptcy and Zaheer could tell Mr. Choudhri: "I will not go along with your reorganization plan unless you pay me millions of dollars" while making a deal with NBK to block the Plan of Reorganization in the event no payment was received from Mr. Choudhri.

44.     The Defendants are working in concert, to achieve the same end.  Specifically, the Defendants have devised, and intended to devise, a scheme or artifice to seize the 2425 Building by any means necessary.  Defendants will stop at nothing to see the Plaintiff lose possession of the 2425 Building, and upon information and belief, the driving force behind their efforts is Osama Abdullatif ("*Abdullatif*").

---

[1] At a hearing had in the issuing court (the 80th Judicial District Court) on Monday, November 13, 2023, the Court confirmed her Temporary Injunction Order had not turned control of Naissance over to Zaheer and Zaheer had no authority to authorize attorneys to make the filing and take the action they had on behalf of Naissance Galleria, LLC in the Bankruptcy.

45.     Defendants' scheme has involved false representations of material information, including but not limited to misrepresentations concerning the Plaintiff and the purpose and effects of the Temporary Injunction.

46.     On November 29, 2023, Azeemeh appeared, through counsel, at an emergency hearing where Naissance Galleria, LLC's Application for Temporary Restraining Order was being heard before the Harris County District Court Ancillary Judge.  Naissance Galleria, LLC sought an emergency temporary restraining order, to enjoin NBK from proceeding with the foreclosure sale scheduled for December 5, 2023, in an effort to protect its interests in the 2425 Building. However, Azeemeh, through counsel, argued against entry of the temporary restraining order, and worked alongside NBK to ensure its denial, leaving the 2425 Building subject to foreclosure. Azeemeh's stance is bizarre, considering Azeemeh, improperly acting as manager for Naissance Galleria, LLC, sought an emergency temporary restraining order to stop NBK from foreclosing on the 2425 Building in July 2023[2].

**F.     False Representations by Zaheer's Agents are Successful in Getting Plaintiff's Bankruptcy Dismissed.**

47.     The Bankruptcy Court scheduled a Status Conference for the Plaintiff's Bankruptcy Case for November 1, 2023.  Azeemeh's agents, on October 31, 2023, only hours before the Status Conference, filed an Emergency Motion.  This Motion contained many misrepresentations, some of which follow:

> a)     Even though Zaheer had no right to or standing necessary to file anything on behalf of Naissance, and the Temporary Injunction gave Zaheer no such rights, statements were made in their Emergency Motion directly to the contrary, stating Azeemeh Zaheer was in, Choudhri was out.

---

[2] See Cause No. 2023-41091: Naissance Galleria LLC v. National Bank of Kuwait S.A.K.P., New York Branch, transcript from the July 5, 2023 Temporary Restraining Order hearing is attached.

> b)    The filing stated flatly at one point that the Assignment had been found to be forged – it had not.
>
> c)    The filing stated that, because of the Temporary Injunction, Naissance was now controlled exclusively by Zaheer, who could make Naissance become the Owner of the Bankrupt.  (The issuing court on Monday, November 13, 2023, ruled from the bench it said no such thing.)

These misrepresentations had the desired effect, and the Bankruptcy Court dismissed the Bankruptcy, green-lighting NBK to foreclose.

**G.    Abdullatif is Choudhri's Competitor and Wants to Ruin Him.**

48.    Choudhri has been in the real estate investment and management business for the last 20 years.  The regular course of Choudhri's business involves numerous aspects of real estate development.  These activities include real estate and business acquisitions and dispositions, seeking and obtaining financing, and developing and managing commercial and residential properties.  He regularly raises capital for these activities through the issuance of equity and/or debt.  It is also within his normal course of business to enter into transactions with borrowers, lenders, and investors to support the purchase, development, and operations of real estate properties.

49.    Choudhri at times conducts his real estate investment and management business through the use of special purpose entities, such as Plaintiff Galleria Owner 2425, LLC.  Choudhri runs a management company, Jetall ("***Jetall***"), to provide employees and management services to entities for purposes of operating real estate investments.

50.    Abdullatif has provided financing for numerous third-party claims against Choudhri, including interfering with Choudhri's final divorce proceedings in both Pakistan Supreme Court and Harris County District Court by soliciting Choudhri's ex-wife for her legal claims against Choudhri and/or his entities and to gain access to Choudhri's protected financial

disclosures.  Abdullatif has filed several dozen Lis Pendens against Choudhri, and his properties, and has sponsored litigation against Choudhri in several dozen cases.

51.     Upon information and belief, Abdullatif is also financing the litigation expenses of Zaheer against Choudhri in the dispute over the building owned by Plaintiff.  Abdullatif, Zaheer, and others have all agreed to the enterprise course of action aimed at destroying Choudhri's business, including taking possession of the 2425 Building.

52.     On more than one occasion, Abdullatif resorted to violence and threats against Choudhri and/or his family, friends, and associates.  Mr. Choudhri had another real estate venture involving an entity called Dalio.  Abdullatif was present at Dalio's foreclosure proceeding, where a friend accompanying him assaulted one of Choudhri's lawyers. On another occasion, Abdullatif and his associates used firearms to hold Choudhri, and his associates, hostage.

53.     Abdullatif also formed an association with others in his illegal efforts to destroy Choudhri's business.  These individuals include but are not limited to Chris Wyatt, former paralegal of Jetall ("**Wyatt**").

54.     Wyatt was hired by Jetall in 2019.  In the course of his employment, Wyatt oversaw legal and litigation matters for Jetall.  He was provided confidential information concerning Jetall's and its client's real estate transactions, finances and debt leverage on properties, and litigation management strategies.  As a Jetall representative, Wyatt was regularly involved in and provided access to privileged information and communications, including information subject to attorney-client and work product privileges.  Wyatt signed a non-disclosure agreement at the beginning of his employment prohibiting him from disclosing confidential information and requiring him to return all files upon his termination.

55.     Wyatt's employment at Jetall ended in December 2020.  When he left Jetall, Wyatt stole corporate files including electronic communications and secretly recorded privileged phone communications between Choudhri and his attorneys.

56.     Jetall obtained a restraining order in January 2021 enjoining Wyatt from disclosing or divulging confidential information obtained through his course of employment with Jetall.

57.     Abdullatif met with Wyatt before, during and after Wyatt's departure from Jetall. Abdullatif, directly and through his lawyers, received confidential and privileged information from Wyatt.   This information included but is not limited to illegal recordings of Choudhri's conversations with attorneys.

58.     Upon information and belief, Abdullatif and his lawyers were aware that Wyatt was a former employee of Jetall who was involved in confidential and privileged communications and that a restraining order was entered enjoining Wyatt from disclosing confidential information.

59.     Abdullatif and his agents have used the illegally obtained information and recordings as part of Abdullatif's scheme to destroy Choudhri's business.  Abdullatif retained Wayne Dolcefino ("***Dolcefino***") as a "consultant" to publish on the internet a series of hit pieces on Choudhri.  Dolcefino advertises that his services included "litigation support," and Abdullatif has utilized Dolcefino in the course of his numerous lawsuits asserted against Choudhri and his businesses.

60.     Information illegally obtained from Wyatt is included in many of Dolcefino's hit pieces.  Dolcefino continues to publish these hit pieces on the internet, including videos posted in May 2023.

61.     Abdullatif has made several false claims against his competitor, Choudhri, in many ways, two of the most egregious being:

a)   Hiring Dolcefino to create video "hit pieces" about Choudhri, his business, his marital status, and inappropriate character based upon his actions during that marital status. This video contained "over the top" falsehoods, e.g. that he was still married and had been for years. It was commercial speech designed to designate a competitor (Choudhri) and give Abdullatif a competitive advantage, and was introduced into interstate commerce by release to major television (broadcast and cable) networks and by placing on the internet where it still resides today, making it available to the potential customers and lenders that are competed for; and

b)   Placing multiple improper Lis Pendens on the record title to properties owned by Choudhri or his business entities, which created a double negative effect on Choudhri's ability to conduct business by hampering his ability to find new lenders or renewing existing loans because the security for them was impaired and making it impossible to sell those properties to raise new capital on his own. These Lis Pendens were "over the top" misrepresentations because they were illegal and did not assert valid interests in the subject properties. The Lis Pendens were also introduced into interstate commerce because they were filed of record and were available "online" over the internet to any potential customer for commercial real estate in the Houston area.

## V.
## CAUSES OF ACTION

### COUNT 1:  BREACHES OF CONFIDENTIAL SETTLEMENT AGREEMENT

62.   Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

63.   Plaintiff and NBK reached a valid and enforceable agreement expressly set forth in the Confidential Settlement Agreement.  Pursuant to the Confidential Settlement Agreement, NBK agreed to keep the contents and terms of the parties' agreement completely confidential.  Plaintiff dismissed its very good claims in the Lawsuit against NBK in reliance upon NBK's promise to uphold the confidentiality obligations set forth in the Confidential Settlement Agreement.

64.   NBK breached the Confidential Settlement Agreement by disclosing its contents and terms to third parties in violation of the agreement's express confidentiality provisions.  These

Page **19** of **29**

disclosures prevented Plaintiff from closing on the sale of the 2425 Building and chilled the market for other buyers for Plaintiff's property.  The same is true for NBK's wrongful, early filing of a notice of foreclosure on the 2425 Building, also in violation of the Confidential Settlement Agreement.

65.     Plaintiff hereby sues NBK for these breaches of the Confidential Settlement Agreement, including monetary damages for such breaches and  injunctive relief preventing NBK from foreclosing on the building because Civil Practices & Remedies Code Section 65.011 authorizes injunction relief when: 1) the applicant is entitled to a writ of injunction under the principles of equity and the laws of Texas relating to injunctions. Texas Civil Practices & Remedies Code Section 65.011(3); See Butnaru v. Ford Motor Co., 84 S.W.3rd 198, 210 (Tex. 20002); and 2) when irreparable injury to real or personal is threatened, irrespective of any remedy of law. Tex. Civ. Practice & Remedies Code Section 65.011(5).

66.     Plaintiff requests injunctive relief as allowed pursuant to *CytoGenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex.App.—Houston, [1st Dist.] 2006, pet. denied), and *L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 876 (Tex.App.—Fort Worth 2019, pet. denied) due to Defendant's breach.

## COUNT 2:  <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>

67.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

68.     As alleged, NBK tortiously interfered with the SIBS International contract and the Caldwell Soames Inc. contract, causing damages to the Plaintiff in the net amounts of the contracts which, but for NBK's interference, would have been paid to the Plaintiff.

69.     Zaheer has tortiously interfered with Plaintiff's contract with NBK, and abused process by interfering in Plaintiff's bankruptcy proceeding.

**COUNT 3:** **TORTIOUS INTERFERENCE WITH PROSPECTIVE RELATIONS**

70.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

71.     After NBK's disclosures of the situation created by the confidential settlement and the wrongful posting for foreclosure during a judicial extension of the grace period contained in that agreement, potential buyers of the property who would otherwise have become good prospects to negotiate a sale with Plaintiff, became instead potential purchasers from NBK of the NBK note and began contacting and negotiating or attempting to negotiate with NBK instead of the Plaintiff. NBK interfered with these potential purchasers and with these potential business relationships.  At least the following were interfered with in this fashion:

     a)     Globix Investment,
     b)     Ironwood Commercial Realty,
     c)     Shah Firm, LLC, and
     d)     Jeb Brown Law.

72.     Zaheer have interfered with the Plaintiff's relationship with NBK and/or entered into a relationship with Zaheer and their antics caused the dismissal of Plaintiff's Chapter 11 bankruptcy proceeding, which was otherwise proceeding to a cram-down restructuring under Chapter 11 of the bankruptcy code

73.     This interference by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

## COUNT 4:  COMMON LAW FRAUD/LENDER LIABILITY

74.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

75.     NBK never had any intention of living up to the Confidential Settlement Agreement.  The Plaintiff was winning the lawsuit against NBK, so NBK induced the Plaintiff into dismissing its lawsuit and entering into the Confidential Settlement Agreement which NBK had no intention of living up to.  This fraud works an estoppel against NBK (see Count 6, "ESTOPPEL").  Plaintiff hereby sues NBK for fraud and fraudulent inducement and alleges it constitutes the basis for an action for Lender Liability.

76.     NBK knew at the time it entered into the Confidential Settlement Agreement it would deflect and tortiously interfere with the Plaintiff's attempts to sell the 2425 Building so NBK would be able to foreclose on the building and take all of the value instead of just the value of the amounts otherwise owed at the time.  Plaintiff accordingly sues NBK for its fraud, fraud in the inducement, lender liability, and subsequent interference with the settlement agreement. Plaintiff seeks benefit of the bargain damages for the fraud related to the enforceable contract. Plaintiff requests injunctive relief as allowed pursuant to *CytoGenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex.App.—Houston, [1st Dist.] 2006, pet. denied), and *L Series, L.L.C. v. Holt*, 571 S.W.3d 864, 876 (Tex.App.—Fort Worth 2019, pet. denied) due to Defendant's breach.

## COUNT 5:  FRAUDULENT TRANSFER

77.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

78.     The funds paid by the Plaintiff to NBK:

a)      $801,509.42 paid Plaintiff to NBK on August 27, 2022;

      b)      $80,000 paid by Plaintiff to NBK on April 18, 2023; and

      c)      $80,000 paid by Plaintiff to NBK on May 10, 2023

were fraudulently induced by NBK and were payments for which the Plaintiff received nothing in return and constitute fraudulent conveyances in violation of U.S.C. § 544, 548, and 550 and TEX. BUS. & COMM. CODE §§ 24.001, *et seq.*, for which the Plaintiff hereby sues NBK to recover all such amounts.  In addition, the Loan Agreement between NBK and Plaintiff set aside reserve funds to cover certain events of default related to the anchor tenant. Due to COVID-19, this provision of the Loan Agreement activated, and Plaintiff's loan payments were being drawn down from the reserve funds. However, NBK intentionally depleted Plaintiff's reserve funds, and transferred Plaintiff's funds to itself prior to the time when they were actually due. Plaintiff requests an injunction pursuant to Sec. 24.008.

## COUNT 6:  ESTOPPEL

79.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

80.    NBK is estopped from claiming Plaintiff owes any more than the amount stated and agreed to in the Confidential Settlement Agreement because of its fraud and fraudulent inducement alleged previously.

## COUNT 7:  BUSINESS DISPARAGEMENT

81.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

82.    The posting of the 2425 Building during any negotiation periods and/or the extended grace period when actual buyers were moving toward concluding a deal and when other

potential buyers were expressing interest in the 2425 Building, constituted business disparagement against the Plaintiff for which Plaintiff hereby sues NBK.

83.     The efforts of Zaheer to make false accusations and representations about the Plaintiff's ownership interests, management, and decision-making abilities constituted business disparagement against the Plaintiff for which the Plaintiff hereby sues Zaheer.

84.     The business disparagement by the Defendants damaged Plaintiff in amounts to be determined after discovery, but which exceed the minimum jurisdictional limits of this Honorable Court.

## COUNT 8:  BREACH OF GOOD FAITH AND FAIR DEALING

85.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

86.     Every contract has a duty of good faith and fair dealing engrafted upon it, especially in a lender/borrower relationship, and even more so when the lender is based in the State of New York as NBK is.

87.     NBK breached its duty of good faith and fair dealing by:

    a)      Inducing Plaintiff to dismiss their State Court lawsuit;

    b)      Inducing Plaintiff to enter into the Confidential Settlement Agreement;

    c)      Tortiously interfering with Plaintiff's performance under the Confidential Settlement Agreement;

    d)      Tortiously interfering with third-party contracts;

    e)      Not approving tenant leases or contracts for sale; and

    f)      deflecting buyers so Plaintiff could not sell the 2425 Building.

88.    Plaintiff hereby sues NBK for breach of duty of good faith and fair dealing.  The damages are for the value of the amounts that would have been recovered in the state court litigation and/or the value of the deals lost for leases and/or sales of the 2425 Building.

## COUNT 9:  <u>UNJUST ENRICHMENT</u>

89.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

90.    If NBK is allowed to foreclose on the 2425 Building it will make an unconscionable profit and succeed in its "loan to own" gambit.  The amount of its unjust enrichment for which Plaintiff hereby sues NBK is the difference between what NBK would have been owed (but for its breaches of the Confidential Settlement Agreement) under the Confidential Settlement Agreement and the true value of the building, for which Plaintiff hereby sue NBK.

## COUNT 10:  <u>CONSPIRACY</u>

91.    Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

92.    Defendants agreed to work in concert with each other in order to interfere with Plaintiff's bankruptcy case, and to have it dismissed by making fraudulently claiming Azeemeh had control over Naissance Galleria, LLC.

93.    Defendants acted with the intent to harm plaintiff by disrupting its bankruptcy proceedings and ultimately obtaining a sua-sponte dismissal of such proceeding based upon their allegations

94.    To accomplish the object of their agreement Defendants intentionally or negligently mischaracterized the effect of the state court temporary injunction, in order to confuse and disrupt Plaintiff's bankruptcy case, which resulted in dismissal.

95.     The agreement to engage in this conduct proximately caused injury to plaintiff. Plaintiff's sole asset and its ability to reorganize its affairs under Chapter 11 of the bankruptcy code, has now been posted for foreclosure on December 5th, 2023, instead of being protected through its reorganization proceedings. A foreclosure will irreparably harm Plaintiff.

## COUNT 11:   <u>FEDERAL MISREPRESENTATION OF SERVICES AND UNFAIR COMPETITION UNDER THE LANHAM ACT</u>

96.     Plaintiff repeats and realleges the allegations set forth in all preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

97.     Section 43 of the Lanhan Act provides civil relief to any person damaged by the acts of another with connection to "any goods or services," who uses any "false designation of origin, false, or misleading description of fact, or false or misleading representation of fact" that either is either "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person," or "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a)(1).

98.     To establish a prima facie claim under § 43 of the Lanham Act of 1946, a plaintiff must establish  that: (1) the defendant made a "false or misleading statement of fact," (2) the statement "either deceived or had the capacity to deceive a substantial segment of potential consumers," (3) the deception was "material, in that it is likely to influence the consumer's purchasing decision," (4) the goods, services, or commercial activities must be "in interstate commerce," and finally, (5) "as a result of the statement at issue," there was injury to the plaintiff

Page **26** of **29**

or the plaintiff "is likely to be injured." *IQ Prod. Co. v. Pennzoil Prod. Co*., 305 F.3d 368, 375 (5th Cir. 2002).

99.     NBK and the Plaintiff entered into a settlement agreement in the spring of 2023.  The settlement agreement was confidential. Thereafter, NBK made misleading statements about the confidential settlement agreement that deceived others, the actions were material, the actions were in interstate commerce and resulted in injury to the Plaintiff.  Since the settlement agreement was and may still be confidential, further information about the actions could be argued to be a breach of the confidentiality provisions.

100.     Further, NBK made misleading statements on the potential leases in the building owned by the Plaintiff.  The Plaintiff had numerous potential leases, NBK refused to approve the leases, the actions of NBK were misleading, the actions were deceptive as to both the Plaintiff and the potential leases, the actions were material in influencing the potential tenants in future relations with the Plaintiff, many of the larger proposed tenants were or are national companies in interstate commerce and the actions caused injury to the Plaintiff.

101.     Further, the Plaintiff and principally its owner purchase liens on properties and to purchase properties oftentimes at foreclosure sales, but other times as purchasers from willing sellers. Many of these properties are worth millions of dollars.  Buying properties worth millions of dollars is a very capital-intensive business. Consequently, Choudhri must maintain good reputations to assure that lenders will lend him money and buyers will enter into contracts to purchase their properties since the primary sources of capital necessary to keep this business functioning are capital from lenders and proceeds from the sales of their existing properties.

102.     The capital utilized in the leases and businesses comes from and flows through interstate commerce and at times through international commerce, and the purchasers or some of

their members are oftentimes citizens of states other than Texas or countries other than the United

States of America.

103.    NBK has engaged in false advertising in violation of Section 43(a) of the Lanham

Act as described above and possibly in other ways.

104.    These acts and others were in violation of 15 USC § 1125(a), Section 43a of the

Lanham Act.

## COUNT 12:  ATTORNEYS' FEES

105.    Plaintiff repeats and realleges the allegations set forth in all preceding and

subsequent paragraphs of this Complaint, as if fully set forth herein.

106.    Plaintiff hereby sues Defendants for its reasonable and necessary attorneys' fees

under breach of a written contract under Civil Practice and Remedies Code §38.001, under the fee

shifting agreement of the contract, and under any statutory or common law right to recover same.

## VI. JURY DEMAND

107.    Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## VII. PRAYER

108.    For the reasons set forth above, Plaintiff asks that the Court enter a judgment relief

in the following manners:

        a)      Actual damages including economic injuries & consequential damages;

        b)      Attorney's fees;

        c)      Exemplary damages;

        d)      Prejudgment and post judgment interest;

        e)      Court costs; and

f)      All other relief to which Plaintiff is entitled under both law and equity.

Respectfully submitted,

The Pope Law Firm
6161 Savoy Drive, Suite 1125
Houston, Texas 77036
Ph: 713-449-4481
Fx: 281-657-9693
jamesp@thepopelawfirm.com

By: /s/ James Q. Pope
     James Q. Pope
     TBN: 24048738
     Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on December 17, 2023, a copy of the foregoing was served on interested parties by electronic service using the court's electronic noticing system.

By: /s/ James Q. Pope
     James Q. Pope

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 82647538
Filing Code Description: Amended Filing
Filing Description: Plaintiff Sixth Amended Petition
Status as of 12/18/2023 9:54 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jerry CAlexander | | alexanderj@passmanjones.com | 12/17/2023 7:53:14 PM | SENT |
| Ruth NVera | | verar@passmanjones.com | 12/17/2023 7:53:14 PM | SENT |
| Sheryl Chandler | | chandlers@passmanjones.com | 12/17/2023 7:53:14 PM | SENT |
| James Pope | | jamesp@thepopelawfirm.com | 12/17/2023 7:53:14 PM | SENT |
| James Quantrele Pope | 24048738 | ecf@thepopelawfirm.com | 12/17/2023 7:53:14 PM | SENT |
| Rodney Lee Drinnon | 24047841 | rdrinnon@mccathernlaw.com | 12/17/2023 7:53:14 PM | SENT |
| Robin Harrison | | rharrison@hicks-thomas.com | 12/17/2023 7:53:14 PM | SENT |
| Charles Conrad | | charles.conrad@pillsburylaw.com | 12/17/2023 7:53:14 PM | SENT |
| Nancy Jones | | nancy.jones@pillsburylaw.com | 12/17/2023 7:53:14 PM | SENT |
| Simone Nunez | | snunez@mccathernlaw.com | 12/17/2023 7:53:14 PM | SENT |
| David Clark | | dclark@mccathernlaw.com | 12/17/2023 7:53:14 PM | SENT |
| Danielle Chester | | dchester@mccathernlaw.com | 12/17/2023 7:53:14 PM | SENT |
| Haseeb Dada | | hdada@mccathernlaw.com | 12/17/2023 7:53:14 PM | SENT |
| Averyll  Mauch | | amauch@Mccathernlaw.com | 12/17/2023 7:53:14 PM | SENT |
| Gage Fender | | gage@clouthierlaw.com | 12/17/2023 7:53:14 PM | SENT |
| Jennifer LMacGeorge | | jmac@jlm-law.com | 12/17/2023 7:53:14 PM | SENT |
| Jackie Marlowe | | jmarlowe@hicks-thomas.com | 12/17/2023 7:53:14 PM | SENT |
| Jetall Legal | | legal@jetallcompanies.com | 12/17/2023 7:53:14 PM | SENT |
| MacGeorge Law Firm Admin | | service@jlm-law.com | 12/17/2023 7:53:14 PM | SENT |
| Clouthier Law | | info@clouthierlaw.com | 12/17/2023 7:53:14 PM | SENT |
| Ryan Steinbrunner | | ryan.steinbrunner@pillsburylaw.com | 12/17/2023 7:53:14 PM | SENT |
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/17/2023 7:53:14 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Pope on behalf of James Pope
Bar No. 24048738
jamesp@thepopelawfirm.com
Envelope ID: 82647538
Filing Code Description: Amended Filing
Filing Description: Plaintiff Sixth Amended Petition
Status as of 12/18/2023 9:54 AM CST

Case Contacts

| | | | | |
|---|---|---|---|---|
| Elizabeth Klingensmith | | liz.klingensmith@pillsburylaw.com | 12/17/2023 7:53:14 PM | SENT |
| Angela McGinnis | | angela.mcginnis@pillsburylaw.com | 12/17/2023 7:53:14 PM | SENT |
| Ali Choudhri | | ali@jetallcompanies.com | 12/17/2023 7:53:14 PM | SENT |

Associated Case Party: Ali Choudhri

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Ali Choudhri | | legal@jetallcompanies.com | 12/17/2023 7:53:14 PM | SENT |